JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Emma Mann

## DEFENDANTS
3M COMPANY, A Delaware Corporation

**(b)** County of Residence of First Listed Plaintiff   Lanier County (GA)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Ramsey County (MN)
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Richard R. Schlueter - Childers, Schlueter & Smith, LLC
1932 North Druid Hills Road, Suite 100 - Atlanta, GA 30319
404-419-9500

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S.C. 1332-Diversity

Brief description of cause:
Defective Medical Product

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
11/13/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/: Richard R. Schlueter

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### (VALDOSTA DIVISION)

| | |
|---|---|
| Emma Mann, | |
| Plaintiff, | |
| vs. | |
| | COMPLAINT AND JURY DEMAND |
| 3M COMPANY, A Delaware Corporation, | |
| | Civil Action No.: |
| Defendant. | |

Plaintiff, Emma Mann (referred to as "Plaintiff"), by and through her attorneys, **CHILDERS, SCHLUETER & SMITH, L.L.C.,** on behalf of herself individually, hereby sues the defendant, **3MCOMPANY** (hereinafter referred to as "Defendant") and upon information and belief, at all times hereinafter mentioned, alleges as follows:

## INTRODUCTION

1.      This is an action for damages relating to Defendant's design, research, development, testing, assembling, manufacturing, packaging, labeling, preparing, distributing, marketing, advertising, promoting, supplying, and/or selling the defective product sold under the name, Bair Hugger® hereinafter "Device."

## I.      PARTIES

2.      Plaintiff Emma Mann, is a resident of Lakeland, Georgia and claims damages as set forth below.

3.      Defendant 3M Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in St. Paul, Minnesota.  3M is engaged in the business of researching, developing, designing, licensing, manufacturing,

distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the Bair Hugger. Defendant 3M Company may be served at CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Fulton County, Georgia 30361. Defendant 3M Company has conducted business and derived substantial revenue from within the State of Georgia. Defendant 3M Company is subject to the jurisdiction and venue of the Court

## II.    JURISDICTION AND VENUE

4.     The Action is brought in federal court under 28 U.S.C. § 1332, Diversity of Citizenship. Complete diversity of citizenship exists between the Plaintiffs and the Defendant. Damages in this action exceed $75,000.00.

5.     Venue is proper in United States District Court for the Middle District of Georgia, Valdosta Division pursuant to 28 USC § 1391, because: (a) Plaintiff resides in the Middle District of Georgia, Valdosta Division; (b) a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Georgia, Valdosta Division; and (c) Defendants have sufficient contacts within the Middle District of Georgia, Valdosta Division to subject each of them to personal jurisdiction. Defendants transacted business in or directed at Georgia and its citizens and by commission of tortious acts that caused injury in Georgia and by purposefully availing themselves of the benefits and privileges of Georgia law by regular, continuous and systematic contacts with Georgia.

## III.    SUMMARY OF THE CASE

6.     The Defendant, directly or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold the Bair Hugger.

7.     As a result of the defective design of the Bair Hugger, Plaintiff Emma Mann has

suffered and continues to suffer severe and permanent personal injuries.

8.     On August 29, 2013, the Bair Hugger was used on Plaintiff during the course of Plaintiff's revision total hip arthroplasty surgery, and was subsequently used on Plaintiff again on November 16, 2013 and November 20, 2013 for additional surgical procedures on the same hip. Subsequent to these procedures, and despite best efforts and practices by Plaintiff's physicians, it was discovered that the Plaintiff had become infected with a deep joint infection, and she was admitted to the ICU for treatment of said infection on December 5, 2013.

9.     Because the Bair Hugger was used, contaminants were introduced into Plaintiff's open surgical wound, resulting in antigens to propagate and infect the Plaintiff.

10.     Due to the infection, Plaintiff was required to have multiple surgeries, which included irrigation and debridement, with admittance into the ICU, implementation of a wound vac and more than six week course of IV antibiotics. Plaintiff continues to suffer substantial damages, including but not limited to impaired mobility, making the simple movement of walking a challenge. Moreover, Plaintiff does require additional medical treatment and is at risk for additional procedures.

11.     Plaintiff now suffers and will continue to suffer from permanent damages as a result of the Bair Hugger-induced infection.

12.     The Defendant concealed and continues to conceal its knowledge of the Bair Hugger's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

13.     The Defendant failed to conduct adequate and sufficient post-marketing surveillance after it began marketing, advertising, distributing and selling the Bair Hugger.

14.     As a result of the Defendant's actions and inactions, Plaintiff was injured due to

the use of the Bair Hugger, which has caused and will continue to cause Plaintiff's various injuries and damages. Accordingly, Plaintiff seeks compensatory damages.

## IV. FACTUAL BACKGROUND

15.     More than 50,000 Bair Hugger units are currently in use across the country.

16.     The Bair Hugger consists of a portable heater/blower connected by a flexible hose to a disposable blanket that is positioned over (or in some cases under) surgical patients. The system warms patients during surgery by blowing hot air on a patient's exposed skin.

17.     The hot air produced by Bair Hugger accumulates under the surgical drape covering the patient and escapes from under the surgical drape below the level of the surgical table or at the head end of the surgical table. This escaped air creates air flow currents that flow against the downward air flow of the operating room. As this warmed air rises, it deposits bacteria from the floor of the surgical room into the surgical site.

18.     At some point between 2002 and 2009, the Defendant reduced the efficiency of the air filtration of Bair Hugger blowers. This action reduced the safety of such blowers.

19.     As a result of these actions by the Defendant, the internal airflow paths of Bair Hugger blowers become contaminated with pathogens.

20.     The pathogens contaminating the internal airflow paths of Bair Hugger blowers incubate and proliferate therein.

21.     These pathogens are then expelled from the interior of the Bair Hugger blower by the outward airflow, travel through the hose into the disposable blanket and escape into the operating room.

22.     The Defendant has been aware of the pathogenic contamination of the airflow paths of Bair Hugger blowers since at least 2009.

23. The Defendant has actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries despite their knowledge to the contrary.

24. In a communication to the Food and Drug Administration ("FDA") in September 2000, Defendants represented that the Bair Hugger's filtration system meets HEPA ("High Efficiency Particulate Air") standards. This statement was false at the time Defendants made it and it remains false today. To meet HEPA standards, an air filter must be capable of removing 99.97% of all particles 0.3 microns or larger. The filter of the Bair Hugger, which is marketed as HEPA compliant, is only capable of removing less than 65% of all such particles. When the Defendants made these representations, they had actual knowledge of their falsity.

25. In June of 1997, in a letter to the FDA, the Defendant admitted that "air blown intraoperatively across the surgical wound may result in airborne contamination." The Defendant addressed this flaw in their products by making further misrepresentations to the FDA when they stated that the risk of contamination by air flow is obviated because all "Bair Hugger Blankets designed for use in the operating room feature a tape barrier which prevent [sic] air from migrating toward the surgical site." That statement by the Defendant was and is patently false. A number of Bair Hugger blankets marketed as safe for use in surgeries do not utilize a taped edge at all. Instead, those blankets blow contaminated air directly toward the surgical field. Also, the statement that the taped barrier would contain the contaminated air is false because it ignores the fact that the heated air from the Bair Hugger rises against the general downward airflow of the operating theatre.  The presence of a tape edge does nothing to prevent the Bair Hugger from facilitating the movement of pathogens from the floor of the operating room to the surgical site.  When the Defendant made these representations, they had actual knowledge of their falsity.

5

26.     In their website, www.fawfacts.com/laminar_airflow/ (last visited July 17, 2015),

the Defendant makes the following misrepresentations:

    a.  Contamination mobilized by the convection currents generated by the Bair Hugger cannot reach the surgical site because "[a]ir velocity within the operating room is many times stronger than that of a forced-air warming blanket";

    b.  "The air emerging from the blanket is directed downward by the surgical drape and emerges under the operating room table and is drawn away through the laminar system's return air inlets;"

    c.  "It's been suggested that warm air rising above the Bair Hugger blanket could interfere with the downward laminar flow toward the surgical site. It should be noted that the Bair Hugger warming unit delivers less than one percent of the airflow of a laminar flow system and the momentum of the downward air is far greater than the upward momentum imparted to the air above the blanket."

27.     The statements in the preceding paragraph are false and intentionally misleading. Through these statements, the Defendant disguised the fact that the issue is not the strength of the airflow in a laminar system but the heat of the air generated by the Bair Hugger. The cold air circulated within the operating room, having a higher density than the air heated by the Bair Hugger, falls to the floor which forces the contaminated air at the floor of the operating room, now warmed by the waste heat from the Bair Hugger, to rise into the sterile field and the surgical site. The heated air rises, and is not "drawn away" as the Defendant falsely claims in their advertisement.

28.     In an advertisement that appeared in multiple medical publications as early as 2010, available online at  http://www.fawfacts.com/_asset/zn062p/AJIC.pdf (last visited July 17, 2015), the Defendant made the following false and deliberately misleading claims:

> "While simple logic makes it clear that forced air warming has no impact on laminar conditions, science also supports this. A forced air warming blanket delivers less than one percent of the airflow of a laminar flow system and therefore is unable to affect laminar flow ventilation systems."

As published scientific research, before and after this statement, has demonstrated, this statement

is untrue. The exhaust generated by the Bair Hugger creates convective airflow patterns which disrupt the laminar flow of the operating theater.

29.     In a communication that appeared in *Healthcare Purchasing News* in July of 2012, the Defendant's public relations and communications specialist Greta Deutsch stated "some conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow. These accusations have no factual basis." Again, this statement ignores numerous published studies documenting the adverse effects the Bair Hugger has on laminar airflow.

30.     The publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger should have prompted the Defendant to redesign or discontinue their product. Instead, those criticisms only caused the Defendant to amplify their efforts to champion the Bair Hugger. These publications include, but are not limited to, the following:

   a. Albrecht M, et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2010;39:321-8;

   b. Leaper D, et al. Forced-air warming: a source of airborne contamination in the operating room? *Orthopedic Rev.* 2009;1(2):e28;

   c. McGovern, P.D., et al. Forced-air warming and ultra-clean ventilation do not mix. *J Bone and Joint Surg-Br.* 2011;93-B(11):1537-1544;

   d. Legg, A. et al. Do forced air patient-warming devices disrupt unidirectional downward airflow? *J Bone and Joint Surg-Br.* 2012;94-B:254-6;

   e. Belani, K., et al. Patient warming excess heat: The effects on orthopedic operating room ventilation       performance. *Anesthesia & Analgesia* 2012 (prepublication on-line) 2013;117(2):406-411;

   f. Dasari, K.B., et al. Effect of forced air warming on the performance of operating theatre laminar flow ventilation. *Anaesthesia* 2012;67:244-249.

31.     The effect of these misrepresentations was to mislead healthcare providers about the safety of the Bair Hugger for use in surgical procedures. The Defendant was aware of the falsity of their misrepresentations at the time those misrepresentations were authored.

32.     Rather than alter the design of their product or warn physicians of the dangers associated with the Bair Hugger, as numerous studies confirm, the Defendant has chosen to "double down" on their efforts to promote their defective product.

33.     Plaintiff's physicians relied upon the above representations and advertisements to Plaintiff's detriment. Any reasonable and competent physician would not use a Bair Hugger in an orthopedic implant surgery if they were fully apprised of the dangers and risks associated with doing so. However, through misrepresentations to the public, the medical community, and the FDA, the Defendant actively and knowingly concealed the propensity of these devices to cause infection in orthopedic implant surgeries.

34.     As a result of the failure of the Defendant's Bair Hugger  to maintain the sterility of the surgical area and the Defendant's wrongful conduct in designing, manufacturing, and marketing this defective product, Plaintiff and Plaintiff's physician were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of the Defendants' acts, omissions and misrepresentations.

### V. CAUSES OF ACTION

### COUNT ONE - NEGLIGENCE

35.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

36.     The Defendant owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger.

8

37.     The Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

      a.     Failing to properly and thoroughly test the Bair Hugger before releasing the device to market;

      b.     Failing to properly and thoroughly analyze the data resulting from the pre-market tests of the Bair Hugger;

      c.     Failing to conduct sufficient post-market testing and surveillance of the Bair Hugger;

      d.     Designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the Bair Hugger and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

      e.     Failing to exercise due care when advertising and promoting the Bair Hugger; and

      f.     Negligently continuing to manufacture, market, advertise, and distribute the Bair Hugger after Defendants knew or should have known of its adverse effects.

38.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered from infection, requiring multiple surgical procedures to clean the infected area and remove the hip implant. Consequently, Plaintiff has suffered damages and incurred, and will continue to incur, medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting condition and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

39.     The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate   to punish the Defendant and deter them from similar conduct in the future.

## COUNT TWO - VIOLATION OF GEORGIA'S UNIFORM DECEPTIVE TRADE PRACTICE ACT

40.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

41.     The Defendant has violated and continues to violate Georgia Uniform Deceptive Trade Practice Act: O.C.G.A §§ 10-1-370 through §§ 10-1-390.

42.     The Defendant is a corporation that intentionally sells merchandise, including the Bair Hugger, to consumers, including consumers in Georgia. The Defendant made false statements in their advertisement of the Bair Hugger.

43.     In advertising the Bair Hugger through various means in Georgia, including but not limited to television, radio, internet, the products label, pamphlets and letters, the Defendant made material assertions, representations, or statements of fact which are untrue, deceptive, or misleading.

44.     Similarly, the Defendant also acted with, used, or employed fraud, false pretense, false promise, misrepresentation, misleading statements or deceptive practices with the intent that consumers, including Plaintiff and Plaintiff's physician to rely on said statements or actions in connection with the sale of the merchandise.

45.     Defendant violated the Georgia consumer protection laws through, *inter alia*, the following:

   a. Representing through statements and advertisements that the Bair Hugger has

10

approval, characteristics, uses, or benefits that it does not have;

b.  Representing through statements and advertisements that the Bair Hugger and its filtration system is of a particular standard, qualify, or grade when it differs materially from that representation;

c.  Representing through statements and advertisement that the Bair Hugger has uses, benefits, or characteristics that have been otherwise proven incorrect;

d.  Falsely stating, knowingly or with reason to know, that services or repairs are not needed.

46.     As a direct and proximate result of the Defendant's actions, omissions, and misrepresentations, Plaintiff suffered infection, requiring multiple to clean the infected area and remove the hip implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished qualify of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

47.     The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

### COUNT THREE - STRICT LIABILITY

48.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

49.     The Defendant, or entities under their control, manufactured, sold, distributed,

11

marketed or supplied the Bair Hugger in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

50.    Specifically, the Defendant failed to warn of the injuries suffered by Plaintiff as a result of using the Bair Hugger, and they introduced into the stream of commerce a defectively designed or manufactured product.

51.    The Defendant designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by the Defendants.

52.    Plaintiff and Plaintiff's physicians used the Bair Hugger in a manner normally intended, recommended, promoted and marketed by the Defendant.

53.    The Bair Hugger failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

54.    The propensity of the Bair Hugger's internal air flow passageways, including its non-HEPA compliant filter, to become contaminated with pathogens makes the Bair Hugger unreasonably dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

### A. Strict Liability - Failure to Warn

55.    Plaintiff restates the allegations set forth above as if fully rewritten herein.

56.    Because the Defendant researched, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of

commerce the Bair Hugger and in doing so, directly advertised or marketed the product to the FDA, health care professionals, and consumers, or persons responsible for consumers, they had a duty to warn of the risks associated with the use of the Bair Hugger.

57.     Defendant failed to adequately warn health care professionals and the public, including Plaintiff and Plaintiff's physician, of the true risks of the Bair Hugger, including that the Bair Hugger would circulate contaminated air in the operating room and that the vented heat from Bair Hugger would mobilize floor air contaminated with pathogens into the surgical site, causing deep joint infections, and requiring further treatment, including surgery or amputation.

58.     Defendant failed to provide timely and reasonable warnings regarding the safety and efficacy of the Bair Hugger. Had they done so, proper warnings would have been heeded and no health care professional, including Plaintiff's physicians, would have used Bair Hugger and no patient, including Plaintiff, would have allowed use of the Bair Hugger.

59.     The failure to provide timely and reasonable warnings, instructions, and information regarding the Bair Hugger to Plaintiff or Plaintiff's physician rendered the Bair Hugger unreasonably dangerous.

60.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity of the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalizations, physician care,

monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

61. The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

### B. Strict Liability - Defective Design and Manufacture

62. Plaintiff restates the allegations set forth above as if fully rewritten herein.

63. The design of the Bair Hugger or its component parts, makes the Bair Hugger unreasonably dangerous, taking into consideration the utility of the device and the risk involved in its use.

64. At all times relevant to this action, an economically and technologically feasible safer alternative design existed, which in reasonable medical probability:

    a.   would have prevented or significantly reduced the risk of Plaintiff's infection and subsequent injuries (including additional surgical procedures to clean the infected area and/or remove the implant); and

    b.   would not have impaired the utility of the device.

65. Specifically, the Bair Hugger is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose or its foreseeable risks exceed the benefits associated with its design.

66. The defective condition of the Bair Hugger rendered it unreasonably dangerous or not reasonably safe and the Bair Hugger was in this defective condition at the time it left the hands of the Defendant. The Bair Hugger was expected to and did reach Plaintiff and Plaintiff's physicians without substantial change in the condition in which it was designed, manufactured,

14

labeled, sold, distributed, marketed, promoted, supplied, and otherwise released into the stream of commerce.

67.   Defendant knew or should have known of the danger associated with the use of the Bair Hugger, as well as the defective nature of the Bair Hugger, but have continued to design, manufacture, sell, distribute, market, promote, or supply the Bair Hugger so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Bair Hugger.

68.   As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant.  Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

69.   The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT FOUR - BREACH OF EXPRESS WARRANTY

70.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

71.     The Defendant expressly represented to Plaintiff and other consumers and the medical community that the Bair Hugger was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

72.     The Bair Hugger does not conform to the Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injury.

73.     At all relevant times, the Bair Hugger did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

74.     Plaintiff, other consumers, and the medical community reasonably relied upon the Defendant's express warranties for the Bair Hugger.

75.     At all relevant times, the Bair Hugger was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendant.

76.     Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

77.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of

preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

78.     The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

**COUNT FIVE - BREACH OF IMPLIED WARRANTY**

79.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

80.     The Defendant designed, manufactured, distributed, advertised, promoted and sold the Bair Hugger.

81.     At all relevant times, the Defendant knew of the use for which the Bair Hugger was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

82.     The Defendant was aware that consumers, including Plaintiff, would use the Bair Hugger for treatment in conjunction with orthopedic surgical procedures.

83.     Plaintiff, Plaintiff's physician, and the medical community reasonably relied upon the judgment and sensibility of the Defendant to sell the Bair Hugger only if it was indeed of merchantable quality and safe and fit for its intended use.

84.     The Defendant breached their implied warranty to consumers, including Plaintiff; the Bair Hugger was not of merchantable quality or safe and fit for its intended use.

85.     Consumers, including Plaintiff, Plaintiff's physician, and the medical community reasonably relied upon the Defendant implied warranty for the Bair Hugger.

86.     Plaintiff and Plaintiff's physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

87.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

88.     The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT SIX - NEGLIGENT MISREPRESENTATION

89.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

90.     The Defendant made negligent misrepresentations with respect to  the Bair Hugger including, but not limited to, the following particulars:

18

a.   The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

b.   The Defendant represented the Bair Hugger was safer than other patient warming systems.

91.   Defendant did not exercise reasonable care or competence in obtaining or communicating the information to the public regarding the characteristics and qualities of the Bair Hugger.

92.   Plaintiff and Plaintiff's physicians did, in fact, reasonably rely upon the representations.

93.   As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

94.   The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.   Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them

from similar conduct in the future.

## COUNT SEVEN - FRAUDULENT MISREPRESENTATION

95.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

96.     The Defendant made fraudulent misrepresentations with respect to the Bair

Hugger including, but not limited to, the following particulars:

> a.     The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

> b.     The Defendant represented Bair Hugger was safer than other patient warming systems.

97.      Defendant knew that their representations were false, yet they willfully,

wantonly, and recklessly disregarded their obligation to provide truthful representations

regarding the safety and risks of Bair Hugger to consumers, including Plaintiff, and the medical

community.

98.     The representations were made by Defendant with the intent that doctors and

patients, including Plaintiff, rely upon them.

99.     The Defendant's representations were made with the intent of defrauding and

deceiving Plaintiff, other consumers, and the medical community to induce and encourage the

sale of Bair Hugger.

100.     Plaintiff and Plaintiff's physicians did in fact rely upon the representations. In the

absence of the Defendant's representations, the Bair Hugger would not be used in implantation

surgeries such as the one at issue in this case.

101.     The Defendant's fraudulent representations evidence their callous, reckless, and

willful indifference to the health, safety, and welfare of consumers, including Plaintiff.

102.    As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff has suffered damaged and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

103.    The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.   Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate   to punish the Defendants and deter them from similar conduct in the future.

### COUNT EIGHT - FRAUDULENT CONCEALMENT

104.    Plaintiff restates the allegations set forth above as if fully rewritten herein.

105.    Defendant fraudulently concealed information with respect to the Bair Hugger including, but not limited to, the following particulars:

>    a.    The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger was safe and fraudulently withheld and concealed information about the substantial risk of using Bair Hugger; and

      b.     The Defendant represented that Bair Hugger was safe and safer than other alternative systems and fraudulently concealed information that demonstrated that Bair Hugger was not safer than alternatives available on the market.

106.    The Defendant had sole access to material facts concerning the dangers and unreasonable risks of the Bair Hugger.

107.    The concealment of information by the Defendant about the risks of the Bair Hugger was intentional, and the representations made by Defendant was known by the Defendant to be false.

108.    The concealment of information and the misrepresentations about Bair Hugger was made by the Defendant with the intent that doctors and patients, including Plaintiff and Plaintiff's doctors, rely upon them.

109.    Plaintiff and Plaintiff's physicians relied upon the representations and were unaware of the substantial risks of the Bair Hugger which the Defendant concealed from the public, including Plaintiff and Plaintiff's physicians.

110.    As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the hip implant. Consequently, Plaintiff has suffered damaged and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur

mental and physical pain and suffering and loss of wages and wage earning capacity.

111.   The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.   Defendant's conduct warrants an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

### COUNT NINE – PUNITIVE DAMAGES

112.   Plaintiff restates the allegations set forth above as if fully rewritten herein.

113.   The conduct of Defendant, as set forth herein, above was intentional, willful, wanton, oppressive, malicious, and reckless, evidencing such an entire want of care as to raise the presumption of a conscious indifference to the consequences in that Defendant acted only out of self-interest and personal gain.   Such conduct evidences a specific intent to cause harm to Plaintiff as provided under O.C.G.A. § 51-12-5.1.   Accordingly, punitive damages should be imposed against Defendant pursuant to O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter Defendant from repeating or continuing such unlawful conduct.

**WHEREFORE, Plaintiff prays:**

   (a) That process issue according to law;

   (b) That Defendant be served with a copy of Plaintiff's Complaint and show cause why the prayers for relief requested by Plaintiff herein should not be granted;

   (c) That Plaintiff be granted a **trial by jury** in this matter;

   (d) That the Court enter a judgment against Defendant for all general and compensatory damages allowable to Plaintiff;

(e) That the Court enter a judgment against Defendant for all special damages allowable to Plaintiff;

(f) That the Court enter a judgment against Defendant serving to award Plaintiff punitive damages under the provisions of O.C.G.A. § 51-12-5.1;

(g) That the Court enter a judgment against Defendant for all other relief sought by Plaintiff under this Complaint;

(h) That the costs of this action be cast upon Defendant; and

(i) That the Court grant Plaintiff such further relief which the Court deems just and appropriate.

Dated: November 13, 2015

　　　　　　　　　*/s/ C. Andrew Childers*
**CHILDERS, SCHLUETER & SMITH, LLC**
Richard R. Schlueter
Georgia Bar No. 629420
C. Andrew Childers
Georgia Bar No.: 124398
1932 N. Druid Hills Road, Suite 100
Atlanta, Georgia 30319
(404) 419-9500
rschlueter@cssfirm.com
achilders@cssfirm.com