# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

CURTIS MADDEN,

        Plaintiff,

v.

3M COMPANY,

        Defendant.

Court File No. 0:16-cv-229

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

---

Plaintiff, CURTIS MADDEN, brings this Complaint against Defendant 3M Company ("3M" or "Defendant"), for injuries caused by Defendant's design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying and/or selling the defective device sold under the trade name of Bair Hugger Forced Air Warming device (hereinafter "Bair Hugger" or "Defective Device").

## PARTIES

1.      Plaintiff is a citizen and resident of Oklahoma.

2.      Defendant 3M is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Maplewood, Minnesota. 3M is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its products, including the Bair Hugger.

498731.1

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 insofar as the parties are citizens of different states and the amount in controversy in this matter exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

4.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because a substantial number of the events, actions, or omissions giving rise to the Plaintiff's claims occurred in this district. Moreover, Defendant regularly solicited and engaged in business in this district. Defendant did (and does) business within the state of Minnesota and have had substantial, continuous, and systematic contacts with the state of Minnesota.

## FACTUAL ALLEGATIONS

5.      The Defendant, directly, or through its agents, apparent agents, servants, or employees, designed, manufactured, marketed, advertised, distributed and sold the Bair Hugger.

6.      More than 50,000 Bair Hugger units are currently in use across the country.

7.      The Bair Hugger consists of a portable heater/blower connected by a flexible hose to a disposable blanket that is positioned over (or in some cases under) surgical patients. The system warms patients during surgery by blowing hot air on a patient's exposed skin.

8.      The hot air produced by Bair Hugger accumulates under the surgical drape covering the patient and escapes from under the surgical drape below the level of the surgical table or at the head end of the surgical table. This escaped air creates air flow

currents that flow against the downward air flow of the operating room. As this warmed air rises, it can deposit bacteria from the floor of the surgical room into the surgical site.

9.      Upon information and belief, at some point between 2002 and 2009 the Defendant reduced the efficiency of the air filtration of Bair Hugger blowers. This action reduced the safety of such blowers.

10.     As a result of these actions by the Defendant, the internal airflow paths of Bair Hugger blowers can become contaminated with pathogens.

11.     The contaminating pathogens incubate and proliferate within the internal airflow paths of Bair Hugger blowers.

12.     These pathogens are then expelled from the interior of the Bair Hugger blower by the outward airflow, travel through the hose into the disposable blanket and escape into the operating room.

13.     Upon information and belief, the Defendant has been aware of the pathogenic contamination of the airflow paths of Bair Hugger blowers since at least 2009.

14.     The Defendant has actively and aggressively marketed the Bair Hugger as safe in both general and orthopedic surgeries despite their knowledge to the contrary.

15.     In June of 1997, in a letter to the Food and Drug Administration ("FDA"), the Defendant admitted that "air blown intraoperatively across the surgical wound may result in airborne contamination." The Defendant addressed this flaw in their products by making further misrepresentations to the FDA when they stated that the risk of contamination by air flow is obviated because all "Bair Hugger Blankets designed for use in the operating room feature a tape barrier which prevent [sic] air from migrating toward

the surgical site." That statement by the Defendant was and is patently false. A number of Bair Hugger blankets marketed as safe for use in surgeries do not utilize a taped edge at all. Instead, those blankets blow contaminated air directly toward the surgical field. Also, the statement that the taped barrier would contain the contaminated air is false because it ignores the fact that the heated air from the Bair Hugger rises against the general downward airflow of the operating theatre. The presence of a tape edge does nothing to prevent the Bair Hugger from facilitating the movement of pathogens from the floor of the operating room to the surgical site. When the Defendant made these representations, it had actual knowledge of their falsity.

16.     In a communication to the FDA in September 2000, Defendant represented that the Bair Hugger's filtration system meets HEPA ("High Efficiency Particulate Air") Standards.

17.     Upon information and belief Defendant's September 2000 statement was false at the time Defendant made it and remains false today. To meet HEPA standards, an air filter must be capable of removing 99.97% of all particles 0.3 microns or larger. The filter of the Bair Hugger, which is marketed as HEPA compliant, is capable of removing at most 65% of all such particles.

18.     On Defendant's website, www.fawfacts.com/laminar_airflow/ (last visited September 2, 2015), the Defendant makes the following misrepresentations:

        a.     Contamination mobilized by the convection currents generated by the Bair Hugger cannot reach the surgical site because "[a]ir velocity within the operating room is many times stronger than that of a forced-air warming blanket";

b.    "The air emerging from the blanket is directed downward by the surgical drape and emerges under the operating room table and is drawn away through the laminar system's return air inlets;"

c.    "It's been suggested that warm air rising above the Bair Hugger blanket could interfere with the downward laminar flow toward the surgical site. It should be noted that the Bair Hugger warming unit delivers less than one percent of the airflow of a laminar flow system and the momentum of the downward air is far greater than the upward momentum imparted to the air above the blanket."

19.    Upon information and belief, these statements on Defendant's website, itemized in the preceding paragraph, are false and intentionally misleading. Through these statements, the Defendant disguises the fact that the issue is not the strength of the airflow in a laminar system but the heat of the air generated by the Bair Hugger. The cold air circulated with the operating room, having a higher density than the air heated by the Bair Hugger, falls to the floor which forces the contaminated air at the floor of the operating room, now warmed by the waste heat from the Bair Hugger, to rise into the sterile field and the surgical site. The heated air rises, and is not "drawn away" as the Defendant falsely claim in their advertisement.

20.    In an advertisement that appeared in multiple medical publications as early as 2010, available online at http://www.fawfacts.com/_asset/zn062p/AJIC.pdf (last visited September 2, 2015), the Defendant made the following false and deliberately misleading claims:

"While simple logic makes it clear that forced air warming has no impact on laminar conditions, science also supports this. A forced air warming blanket delivers less than one percent of the airflow of a laminar flow system and therefore is unable to affect laminar flow ventilation systems."

As published scientific research has demonstrated, this statement is untrue. The exhaust generated by the Bair Hugger creates convective airflow patterns which disrupt the laminar flow of the operating theater.

21.     In a communication that appeared in Healthcare Purchasing News in July of 2012, the Defendant's public relations and communications specialist Greta Deutsch stated "some conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow. These accusations have no factual basis." Again, this statement ignores numerous published studies documenting the adverse effects the Bair Hugger has on laminar airflow.

22.     The publication of numerous peer-reviewed studies identifying and documenting the critical safety shortcomings of the Bair Hugger should have prompted the Defendant to redesign or discontinue their product. Instead, those criticisms only caused the Defendant to amplify their efforts to champion the Bair Hugger. These publications include, but are not limited to, the following:

   a.    Albrecht M, et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2010; 39:321-8;

   b.    Leaper D, et al. Forced-air warming: a source of airborne contamination in the operating room? *Orthopedic Rev.* 2009;1(2):e28;

   c.    McGovern, P.D., et al. Forced-air warming and ultra-clean ventilation do not mix. *J Bone and Joint Surg-Br.* 2011;93-B(11):1537-1544;

   d.    Legg, A. et al. Do forced air patient-warming devices disrupt unidirectional downward airflow? *J Bone and Joint Surg-Br.* 2012;94-B:254-6;

     e.     Belani, K., et al. Patient warming excess heat: The effects on orthopedic operating room ventilation performance. *Anesthesia & Analgesia* 2012 (prepublication on-line) 2013;117(2):406-411;

     f.     Dasari, K.B., et al. Effect of forced air warming on the performance of operating theatre laminar flow ventilation. *Anaesthesia* 2012;67:244-249.

23.     These misrepresentations mislead healthcare providers about the safety of the Bair Hugger for use in surgical procedures. The Defendant was aware of the falsity of their misrepresentations at the time those misrepresentations were authored.

24.     Rather than alter the design of their product or warn physicians of the dangers associated with the Bair Hugger, as numerous studies confirm, the Defendant has chosen to "double down" on their efforts to promote their defective product.

25.     Plaintiffs' physicians relied upon the above representations and advertisements to Plaintiff's detriment. However, through misrepresentations to the public, the medical community, and the FDA, the Defendant actively and knowingly concealed the propensity of these devices to cause infection in orthopedic implant surgeries.

26.     As a result of the failure of the Defendant's Bair Hugger to maintain the sterility of the surgical area and the Defendant's wrongful conduct in designing, manufacturing, and marketing this defective product, Plaintiff and Plaintiff's physician were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of the Defendant's acts, omissions and misrepresentations.

## PLAINTIFF'S SPECIFIC EXPERIENCE

27.     As a result of the defective design of the Bair Hugger, Plaintiff has suffered and may continue to suffer severe and permanent personal injuries.

28.     On or about January 15, 2015 the Bair Hugger was used on Plaintiff during the course of Plaintiff's right hip surgery.

29.     Plaintiff subsequently experienced an infection in his right hip.  Plaintiff was forced to undergo a revision surgery as a result of the infection caused by the use of Defendant's forced air warming blanket.

30.     Plaintiff continued to experience pain related to the infection. Plaintiff was forced to undergo surgery for placement of an antibiotic spacer, and ultimately have a surgical revision of his hip in approximately November 2015.

31.     Because the Bair Hugger was used during the surgery for Plaintiff, contaminants were introduced to Plaintiff's open surgical wound, resulting in a severe infection which lead to the injuries, medical care and surgery referenced herein.

32.     Due to the infection, Plaintiff was forced to undergo additional surgical procedures to remove the implant and clean the infected area, and Plaintiff continues to suffer substantial damages, including but not limited to impaired mobility, making the simple movement of walking a challenge.

33.     Plaintiff now suffers and will continue to suffer from permanent damages as a result of the Bair Hugger-induced infection.

34.     The Defendant concealed and continues to conceal its knowledge of the Bair Hugger's unreasonably dangerous risks from Plaintiff, other consumers, and the medical community.

35.     The Defendant failed to conduct adequate and sufficient post-marketing surveillance after they began marketing, advertising, distributing and selling the Bair Hugger.

36.     As a result of the Defendant's actions and inactions, Plaintiff was injured due to the use of the Bair Hugger, which has caused and will continue to cause Plaintiff various injuries and damages. Accordingly, Plaintiff seeks compensatory damages.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

37.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

38.     The Defendant owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger.

39.     The Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a.     Failing to properly and thoroughly test the Bair Hugger before releasing the device to market;

b.     Failing to properly and thoroughly analyze the data resulting from the pre-market tests of the Bair Hugger;

c.     Failing to conduct sufficient post-market testing and surveillance of the Bair Hugger;

d.   Designing, manufacturing, marketing, advertising, distributing, and selling the Bair Hugger to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the Bair Hugger and without proper instructions to avoid the harm which could foreseeably occur as a result of using the device;

e.   Failing to exercise due care when advertising and promoting the Bair Hugger; and

f.   Negligently continuing to manufacture, market, advertise, and distribute the Bair Hugger after Defendant knew or should have known of its adverse effects.

40.   As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional treatment. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.

41.   Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting condition and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and wage earning capacity.

42.   The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT II - VIOLATION OF MINNESOTA'S
## DECEPTIVE TRADE PRACTICES LAWS

43.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

44.     The Defendant has violated and continues to violate Minnesota's Deceptive Trade Practices statutes, Minn. Stat. § 325D.44.

45.     The Defendant is a corporation who intentionally sells merchandise, including the Bair Hugger, to consumers, including consumers in Minnesota.

46.     In advertising the Bair Hugger through various means in Minnesota, including but not limited to television, radio, internet, the products label, pamphlets and letters, the Defendant made material assertions, representations, or statements of fact which are untrue, deceptive, or misleading.

47.     Defendant violated the Minnesota Deceptive Trade Practice Statute through, *inter alia*, the following:

        a.      Representing, through statements and advertisements, that the Bair Hugger has approval, characteristics, uses, or benefits that it does not have;

        b.      Representing through statements and advertisements, that the Bair Hugger and its filtration system is of a particular standard, quality, or grade when it differs materially from that representation;

        c.      Representing, through statements and advertisement, that the Bair Hugger has uses, benefits, or characteristics that have been otherwise proven incorrect;

        d.      Falsely stating, knowingly or with reason to know, that services or repairs are not needed.

48.      As a direct and proximate result of the Defendant's actions, omissions, and misrepresentations, Plaintiff suffered an infection, requiring additional, extensive treatment. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger.

49.      Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished qualify of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

50.      The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff.  Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT III - STRICT LIABILITY FAILURE TO WARN

51.      Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

52.      The Defendant, or entities under their control, manufactured, sold, distributed, marketed or supplied the Bair Hugger in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

53.     Specifically, the Defendant failed to warn of the injuries suffered by Plaintiff as a result of using the Bair Hugger, and they introduced into the stream of commerce a defectively designed or manufactured product.

54.     The Defendant designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by the Defendant.

55.     Plaintiff and Plaintiff's physicians used the Bair Hugger in a manner normally intended, recommended, promoted and marketed by the Defendant.

56.     The Bair Hugger failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

57.     The propensity of the Bair Hugger's internal air flow passageways, including its non-HEPA compliant filter, to become contaminated with pathogens makes the Bair Hugger unreasonably dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

58.     Because the Defendant researched, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce the Bair Hugger and in doing so, directly advertised or marketed the

product to the FDA, health care professionals, and consumers, or persons responsible for consumers, they had a duty to warn of the risks associated with the use of the Bair Hugger.

59.     Defendant failed to adequately warn health care professionals and the public, including Plaintiff and Plaintiff's physician, of the true risks of the Bair Hugger, including that the Bair Hugger would circulate contaminated air in the operating room and that the vented heat from Bair Hugger would mobilize floor air contaminated with pathogens into the surgical site, causing deep joint infections, and requiring further treatment, including surgery or amputation.

60.     Defendant failed to provide timely and reasonable warnings regarding the safety and efficacy of the Bair Hugger. Had they done so, proper warnings would have been heeded and no health care professional, including Plaintiff's physicians, would have used Bair Hugger, and no patient, including Plaintiff, would have allowed use of the Bair Hugger.

61.     The failure to provide timely and reasonable warnings, instructions, and information regarding the Bair Hugger to Plaintiff or Plaintiff's physician rendered the Bair Hugger unreasonably dangerous.

62.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity of the enjoyment of life, a diminished quality of life, increased risk of premature

death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalizations, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage earning capacity.

63. The Defendant's conduct described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT IV - STRICT LIABILITY DEFECTIVE DESIGN AND MANUFACTURE

64. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

65. The Defendant, or entities under their control, manufactured, sold, distributed, marketed or supplied the Bair Hugger in a defective and unreasonably dangerous condition to consumers, including Plaintiff.

66. Specifically, the Defendant failed to warn of the injuries suffered by Plaintiff as a result of using the Bair Hugger, and they introduced into the stream of commerce a defectively designed or manufactured product.

67. The Defendant designed, manufactured, sold, distributed, supplied, marketed or promoted the Bair Hugger, which was expected to reach and did in fact reach consumers,

including Plaintiff, without substantial change in the condition in which it was manufactured and sold by the Defendant.

68.     Plaintiff and Plaintiff's physicians used the Bair Hugger in a manner normally intended, recommended, promoted and marketed by the Defendant.

69.     The Bair Hugger failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

70.     The propensity of the Bair Hugger's internal air flow passageways, including its non-HEPA compliant filter, to become contaminated with pathogens makes the Bair Hugger unreasonably dangerous when used in the way it is ordinarily used and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

71.     The design of the Bair Hugger or its component parts, makes the Bair Hugger unreasonably dangerous, taking into consideration the utility of the device and the risk involved in its use.

72.     At all times relevant to this action, an economically and technologically feasible safer alternative design existed, which in reasonable medical probability:

        a.      would have prevented or significantly reduced the risk of Plaintiff's infection and subsequent injuries (including additional surgical procedures to clean the infected area and/or remove the implant); and

        b.      would not have impaired the utility of the device

73.     Specifically, the Bair Hugger is defective in its design in that it is not reasonably fit, suitable or safe for its intended purpose or its foreseeable risks exceed the benefits associated with its design.

74.     The defective condition of the Bair Hugger rendered it unreasonably dangerous or not reasonably safe and the Bair Hugger was in this defective condition at the time it left the hands of the Defendant. The Bair Hugger was expected to and did reach Plaintiff and Plaintiff's physicians without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied, and otherwise released into the stream of commerce.

75.     Defendant knew or should have known of the danger associated with the use of the Bair Hugger, as well as the defective nature of the Bair Hugger, but have continued to design, manufacture, sell, distribute, market, promote, or supply the Bair Hugger so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Bair Hugger.

76.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for

hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

77.    The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT V - BREACH OF IMPLIED WARRANTY

78.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

79.    The Defendant designed, manufactured, distributed, advertised, promoted and sold the Bair Hugger for use in sterile, surgical environments.

80.    At all relevant times, the Defendant knew of the use for which the Bair Hugger was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

81.    The Defendant was aware that consumers, including Plaintiff, would use the Bair Hugger for treatment in conjunction with orthopedic surgical procedures.

82.    Plaintiff, Plaintiff's physician, and the medical community reasonably relied upon the judgment and sensibility of the Defendant to sell the Bair Hugger only if it was indeed of merchantable quality and safe and fit for its intended use.

83.    The Defendant breached their implied warranty to consumers, including Plaintiff; the Bair Hugger was not of merchantable quality or safe and fit for its intended use.

84.    Consumers, including Plaintiff, Plaintiff's physician, and the medical community reasonably relied upon the Defendant's implied warranty for the Bair Hugger.

85.    Plaintiff and Plaintiff's physician, by the use of reasonable care, would not have discovered the breached warranty and realized its danger.

86.    As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

87.    The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed

by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT VI - NEGLIGENT MISREPRESENTATION

88.     Plaintiff restates the allegations set forth above as if fully rewritten herein.

89.     The Defendant made negligent misrepresentations with respect to the Bair Hugger including, but not limited to, the following particulars:

      a.    The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

      b.    The Defendant represented the Bair Hugger was safer than other patient warming systems.

90.     Defendant did not exercise reasonable care or competence in obtaining or communicating the information to the public regarding the characteristics and qualities of the Bair Hugger.

91.     Plaintiff and Plaintiff's physicians did, in fact, reasonably rely upon the representations.

92.     As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff has suffered damages and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature

death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

93.     Upon information and belief, the Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT VII - FRAUDULENT MISREPRESENTATION

94.     Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

95.     The Defendant made fraudulent misrepresentations with respect to the Bair Hugger including, but not limited to, the following particulars:

a.     The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger has been tested and found to be safe and effective for the warming of patients during orthopedic implant surgery; and

b.     The Defendant represented Bair Hugger was safer than other patient warming systems.

96.     Defendant knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligation to provide truthful representations regarding the safety and risks of Bair Hugger to consumers, including Plaintiff, and the medical community.

97.     The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

98.     The Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of Bair Hugger.

99.     Plaintiff and Plaintiff's physicians did in fact rely upon the representations. In the absence of the Defendant's representations, the Bair Hugger would not be used in implantation surgeries such as the one at issue in this case.

100.    The Defendant's fraudulent representations evidence their callous, reckless, and willful indifference to the health, safety, and welfare of consumers, including Plaintiff.

101.    As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff has suffered damaged and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for

hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

102.    Upon information and belief, the Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## COUNT VIII - FRAUDULENT CONCEALMENT

103.    Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

104.    Defendant fraudulently concealed information with respect to the Bair Hugger including, but not limited to, the following particulars:

   a.    The Defendant represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the Bair Hugger was safe and fraudulently withheld and concealed information about the substantial risk of using Bair Hugger; and

   b.    The Defendant represented that Bair Hugger was safe and safer than other alternative systems and fraudulently concealed information that demonstrated that Bair Hugger was not safer than alternatives available on the market.

105.    The Defendant had sole access to material facts concerning the dangers and unreasonable risks of the Bair Hugger.

106.    The concealment of information by the Defendant about the risks of the Bair Hugger was intentional, and the representations made by Defendant was known by the Defendant to be false.

107.    The concealment of information and the misrepresentations about Bair Hugger were made by the Defendant with the intent that doctors and patients, including Plaintiff and Plaintiff's doctors, rely upon them.

108.    Plaintiff and Plaintiff's physicians relied upon the representations and were unaware of the substantial risks of the Bair Hugger which the Defendant concealed from the public, including Plaintiff and Plaintiff's physicians.

109.    As a direct and proximate result of the Defendant's actions, omissions and misrepresentations, Plaintiff suffered an infection, requiring additional surgical procedures to clean the infected area and/or remove the orthopedic implant. Consequently, Plaintiff has suffered damaged and incurred and will continue to incur medical expenses as a result of using the Bair Hugger. Plaintiff has also suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wage earning capacity.

110.    The Defendant's conduct as described above was committed with knowing, conscious, wanton, willful and deliberate disregard for the value of human life and the

rights and safety of consumers such as Plaintiff. Defendant's conduct warrants, if allowed by the Court upon motion, an award of punitive damages against Defendant in an amount appropriate to punish the Defendant and deter them from similar conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendant, jointly and/or severally, as follows:

1.    For an award of compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00);

2.    For pre-judgment and post-judgment interest on the above general and special damages;

3.    For all other relief that Plaintiff may be entitled to at equity or at law.

4.    For such further and other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and issues so triable.

Dated: February 2, 2016                    **MCSWEENEY/LANGEVIN LLC**

By: *s/ David M. Langevin*
David M. Langevin, #329563
2116 Second Avenue South
Minneapolis, MN 55404
(612) 746-4646
dave@westrikeback.com

***Attorneys for Plaintiff***

498731.1                                            25