## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Actions | MDL No. 15-2666<br>(JNE/FLN)<br><br>**PRETRIAL ORDER NO. 10:**<br>**ESI Production Protocol** |

Pursuant to the parties' joint submission, the Court hereby adopts the following:

## <u>PROTOCOL REGARDING PRODUCTION FORMAT OF ELECTRONICALLY STORED INFORMATION AND HARDCOPY DOCUMENTS</u>

The procedures and protocols outlined herein govern the production of electronically stored information ("ESI") and paper ("hardcopy") documents by the parties during the pendency of this litigation.  Subject to protective orders in this Action, this protocol governs all productions in the matter. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol. The production formats for any other materials will be addressed by the parties after meeting and conferring regarding the specific item or category of items.

The parties acknowledge their duty to work together cooperatively throughout the discovery process.

## I.      DEFINITIONS

A.      "Electronically stored information," or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34, and refers to computer generated information or data of any kind, stored in or on any storage media.

B.     "Native," "Native format," or "Native data format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

C.     "Metadata" means and refers to information about information or data about data, and includes, without limitation: (1) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

D.     Plaintiffs and Defendants 3M Company and Arizant Healthcare, Inc. (collectively "Defendants"), as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" or "Party" respectively solely for the purposes of this Protocol.

E.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term "Document" shall include, but is not limited to, Hard-Copy Documents, Electronic Documents, and ESI as defined herein, writings, drawings, graphs, charts, photographs, sound recordings, video, images, or any other data or data compilations stored in any medium from which information can be obtained.

F.      "Media" means an object or device, real or virtual, including but not limited to a disc, tape, computer, flash drive, server, cloud based storage, virtual machine, or other device on which data is or was stored.

G.      "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

H.      "Searchable Text" or "Extracted Text" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

I.      "And" and "or" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, e.g., "and" shall be construed to mean "and/or."

J.      "Include" and "Including" shall be construed to mean "include but not be limited to" and "including, but not limited to."

K.      "*Walton*" refers to *Tommy Walton v. 3M Company, et al.*, Civil Action No. 4:13-cv-01164, in the United States District Court for the Southern District of Texas.

L.      "*Johnson*" refers to *Timothy Johnson v. 3M Company, et al.*, Civil Action No. 2:14-cv-020440, in the United States District Court for the District of Kansas.

M.      Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

## II.   FORMAT OF PRODUCTION

A.   **Productions made in *Walton* and *Johnson* and productions predating this order**.  The Parties agree that documents produced in *Walton* and *Johnson*, and documents produced prior to the entry of this protocol by the Court, are generally not required to be produced separately again to Plaintiffs in this MDL in a different format, except as previously agreed to by the Parties. The parties will meet and confer regarding any good faith request for production of documents under this paragraph in a different format or with additional metadata. If the Parties cannot reach agreement, any dispute shall be presented to the Court.

B.   **Productions Made in This MDL**. Prospectively, for any additional documents produced in this MDL, Defendants will produce documents in the format(s) as outlined in paragraphs II.C-Q below.

C.   **General Production Format.** All documents produced pursuant to II.B, whether stored as paper or ESI, with the exceptions noted in paragraph D below, will be produced as black-and-white or color (as applicable), single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text and related path provided in document level text files, with load files pursuant to Appendix 1. The parties will meet and confer regarding any good faith request for production of documents under this paragraph in a different format.

4

D.    **Production of Certain Files in Native Format.**

a.    Excel or other spreadsheet files will be produced in native format. Native Excel or other spreadsheet files which are redacted may be produced in .TIFF format.  At the producing party's option, or upon the parties' agreement, native Excel or other spreadsheet files which are redacted shall be redacted by overwriting the data contained in a particular cell, row, column or tab with the word "REDACTED." These documents will be identified as redacted within the "REDACTED" field in the .DAT. The Parties acknowledge that redacting the native may alter the metadata of the produced file; however, the metadata produced subject to paragraph II.P will be the metadata extracted from the original native file.  If an Excel or other spreadsheet file is redacted, an OCR Searchable Text file will be produced for that file.  In the event that a party believes a redacted Excel or other spreadsheet file produced in .TIFF format results in too great a reduction in its usability, the parties shall meet and confer regarding re-production of the file in native format.  If the parties cannot resolve the issue, the parties shall bring the matter to the Court for resolution.

b.    PowerPoint or other presentation files that are identified as having animation, video, or sound will be produced in native format unless redacted.  Native PowerPoint or other presentation files which are redacted may be produced as black-and-white or color (as applicable), single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text and related path provided in document level text files, with load files pursuant to Appendix 1, which shall include all information contained in the original

5

file, including but not limited to speaker notes and "hidden" slides, with any redaction clearly delineated. These documents will be identified as redacted within the "REDACTED" field in the .DAT. If the file contains video or audio components, the video or audio will be produced as native files with appropriate links to the parent document.  If the original of the redacted file produced in .TIFF format contained animation, video, or audio, that fact shall be reflected by the notation "ANIMATION REDACTED," "VIDEO REDACTED," or "AUDIO REDACTED" as applicable, and the resulting video or audio will be produced as native files with appropriate links to the parent document.

        c.     Microsoft Word or other word-processing files shall be produced as black-and-white or color (as applicable), single-page, 300 dpi (minimum) Group IV TIFF images with extracted text, unless they contain tracked changes or comments, in which case they shall instead be produced as native files. Regardless of whether produced as TIFF or native, all files will be produced with extracted text and related path provided in document level text files, with load files pursuant to Appendix 1.  Microsoft Word or other word-processing files which are redacted may be produced as black-and-white or color (as applicable), single-page, 300 dpi (minimum) Group IV TIFF images, with Searchable Text and related path provided in document level text files, with load files pursuant to Appendix 1. All word processing files produced shall include all information contained in the original file, including but not limited to tracked changes, comments, and hidden text, with any redaction clearly delineated. Word processing documents with

redactions will be identified as redacted within the "REDACTED" field in the .DAT. If the file contains video or audio components, the video or audio will be produced as native files with appropriate links to the parent document. If the original of the redacted file produced in .TIFF format contained animation, video, or audio, that fact shall be reflected by the notation "ANIMATION REDACTED," "VIDEO REDACTED," or "AUDIO REDACTED" as applicable, and the resulting video or audio will be produced as native files with appropriate links to the parent document.

      d.    Audio and video files will be produced in native format.  Should redaction be required, the parties will meet and confer promptly to determine a mechanism for accomplishing such redaction.

      E.    **Duplicates**. The Parties are not required to produce exact duplicates of electronic documents. Parties may de-duplicate identical ESI vertically within each custodian or horizontally across custodians, which will be determined as follows:

      a.    Electronic files will be de-duplicated based upon calculated MD5 or SHA1 Hash values. File contents only will be used for MD5 or SHA1 Hash value calculation and will not include operating system metadata (*e.g.*, filename, file dates) values.

      b.    Messaging files will be de-duplicated based upon MD5 or SHA1 Hash values for the message family, including parent object and attachments.

      c.    While duplicates within a document family may be de-duplicated, if the same file exists in isolation, it is to be produced.

       d.     If documents are removed as they are duplicates, the metadata for the produced documents will list the names of everyone who had those documents prior to the documents exclusion as well as the source (such as filename and filepath) for each copy of the document.

       F.     **Color.** Documents or records produced in non-native format and containing color (for example, graphs, pictures, or color marketing materials) will be produced in color. This provision does not apply to documents solely containing color logos, signatures, watermarks, or letterhead. Documents that have already been processed as of the date of approval by the Court of this protocol by the parties need not be re-processed in color.

       G.     **System Files.** Electronic file collection may be "De-NISTed" at the producing party's option, removing commercially available, non-user created operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 Hash values.

       H.     **Time Zone.** Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Greenwich Mean Time (GMT). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an

email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text.

I.      **Dynamic fields.** Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE],") rather than the values for such fields existing at the time the file is processed, or at the producing Party's option may be produced in native format. Documents that have already been processed as of the date of the execution of this protocol need not be re-processed to satisfy this provision.

J.      **Compressed File Types.** Compressed file types (*e.g.*, .zip, .rar) shall be uncompressed for processing.

K.      **Parent-Child Relationships.** The parent-child relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. All parent and child documents shall be produced if any of the parent or child documents are relevant. If the parent or child is privileged, a slip sheet shall be inserted in the production.

L.      **Bates Numbering and Other Unique Identifiers.** Documents produced in native format will be named with a unique Bates number, and the original file name will be identified in the load file. Bates number ranges will be contiguous.  Bates number ranges will not be reused, except with prior written agreement to cover specific

reproduction of selected materials. If documents need to be reproduced due to initial production mishaps, then the replacement documents should have the same Bates ranges as previously used.   For image files (*i.e.*, TIFF images), each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically stamped onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court in this litigation (*i.e.*, Pretrial Order No. 7 or any superseding order), or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in a Protective Order, or materials redacted in accordance with applicable law or Court order, a designation may be electronically stamped onto the document's image at a location that does not obliterate or obscure any information from the source document, other than material being redacted.

M.   **Production Media.** Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), such other readily accessible computer or electronic media as the parties may hereafter agree upon, or electronically via secure file share/FTP (the "Production Media"). Each item of Production Media shall include: (1) the name of the producing party; (2) the production date; (3) a unique production volume, starting with the same Bates prefix used on the documents being produced; (4) name of a technical contact, preferably whoever generated the media item

so that in case of extraction issues, the receiving party has someone to talk with and (5) where feasible, the Bates number range of the materials contained on such Production Media item, or other description of the items. The Production Media shall be accompanied by a transmittal email or letter identifying the aforementioned information.

N.    **Encryption.** To maximize the security of information in transit, any Production Media may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.  The encryption method shall be disclosed prior to data transmission to ensure the receiving party has appropriate access to the encryption technology being used. The producing party will provide a named point of contact, and phone number so that any encryption or data access questions can be quickly and easily resolved**.**

O.    **Electronic Text Files.** For each document, a single text file shall be provided along with the native or image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text shall be extracted directly from the native electronic file where available, unless the document was redacted, an image file, or a physical file. In these instances, a text file created using OCR will be produced in lieu of extracted text.

P.    **Metadata.**

a. The load files accompanying any scanned paper documents will include the following objective coding fields, except that Defendants shall not be required to re-process for the purpose of adding objective coding fields any paper documents that were processed prior to the date the Court approves this protocol:

| Field | Field Description |
|---|---|
| BEGBATES | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item |
| CUSTODIAN | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) |
| BEGATTACH | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family |
| PARENT_BATES | First Bates identifier of parent document<br><br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document.** |
| CHILD_BATES | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments.<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document.** |
| ATTACHMENT_COUNT | Number of attachments of a given parent document (only populated for parent documents) |
| PAGE_COUNT | Number of pages |
| LOCATION | The permanent numeric identifier for a specific box or file for files in 3M's Document Center.  Defendants are not required to provide this field for documents not stored in 3M's Document Center or that have already been processed as of the date of the execution of this protocol. |
| REDACTED | Yes/No |

| Field | Field Description |
|---|---|
| MARGINALIA | Yes/No indication of whether the document at issue contains handwritten notations, notes, or marginalia. |
| TEXTLINK | Link to text file for the document |
| PROD_VOLUME | Production Volume |
| CONFIDENTIALITY | Confidentiality designation for the document pursuant to a Protective Order |
| REDACTED_REASON | Reason for redaction |
| TO | Person(s) to him the document was sent |
| FROM | Person(s) from whom the document was sent |
| CC | Person(s) carbon copied on the document |
| TITLE | The title of the document |
| SUBJECT | The subject line for a scanned e-mail |
| CREATEDATE | Date of the document |
| PAPER | Indication of whether the document is a scanned paper document |
|  | Note:  Defendants' obligation to produce the fields MARGINALIA, TO, FROM, CC, TITLE, SUBJECT, and CREATEDATE is conditioned on and subject to the Parties' cost-sharing arrangement memorialized in Appendix 1. |

b.       All available metadata for ESI shall be produced. The following list identifies the minimum metadata fields that will be included in Load files accompanying ESI, to the extent applicable, available, and/or unredacted:

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| BEGBATES | First Bates identifier of item | First Bates identifier of item |
| ENDBATES | Last Bates identifier of item | Last Bates identifier of item |

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| ATTRANGE | Bates identifier of the first page of the "parent" document to the Bates identifier of the last page of the last attachment "child" document | Bates identifier of the first page of the "parent" document to the Bates identifier of the last page of the last attachment "child" document |
| BEGATTACH | Starting Bates number of a document family | Starting Bates number of a document family |
| ENDATTACH | Ending Bates number of a document family | Ending Bates number of a document family |
| PARENT_BATES | First Bates identifier of parent document / e-mail message.<br><br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document.** | First Bates identifier of parent document / e-mail message.<br><br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document.** |

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| CHILD_BATES | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments.<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document.** | First Bates identifier of "child" attachment(s); may be more than one Bates number listed depending on number of attachments.<br><br>**The CHILD_BATES fields should be populated in each record representing a "parent" document.** |
| ATTACHMENT_COUNT | Number of attachments of a given parent document (only populated for parent documents) | Number of attachments of a given parent document (only populated for parent documents) |
| PAGE_COUNT | Number of pages (TIFF documents only) | Number of pages (TIFF documents only) |
| CUSTODIAN | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) | Custodian designation where appropriate (for documents collected from an archive, the name of the archive will be listed) |

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| DUPLICATE_CUSTODIANS | Other custodians of a deduplicated document, if applicable (for documents collected from an archive, the name of the archive will be listed) | Other custodians of a deduplicated document, if applicable (for documents collected from an archive, the name of the archive will be listed) |
| AUTHOR | Document author from Metadata | n/a |
| FROM | n/a | Contents of this metadata field, or an equivalent |
| TO | n/a | Contents of this metadata field, or an equivalent |
| CC | n/a | Contents of this metadata field, or an equivalent |
| BCC | n/a | Contents of this metadata field, or an equivalent |
| SUBJECT | n/a | Contents of this metadata field, or an equivalent |
| TITLE | Title from a document's properties | n/a |
| IMPORTANCE | n/a | For emails, "High," "Low," or "Normal" (or equivalent if an email client other than Outlook was used) |

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| SENT_DATE_TIME | n/a | The sent date and time of the message in the format MM/DD/YYYY HH:MM. |
| RECEIVED_DATE_TIME | n/a | The date and time the message was received in the format MM/DD/YYYY HH:MM. |
| CREATED_DATE_TIME | The document's creation date and time or operating system creation date and time in the format MM/DD/YYYY HH:MM | n/a |
| MOD_DATE_TIME | Document's last modified dated and time or operating system last modified date and time in the format MM/DD/YYYY HH:MM. | n/a |
| FILE_NAME | Contents of this metadata field, or an equivalent | Contents of this metadata field, or an equivalent |
| FILE_EXTEN | File extension | File extension |
| FILE_SIZE | Size of the file in bytes | Size of the file in bytes |
| FILE_TYPE | Contents of this metadata field, or an equivalent. The use of this value will be consistent across all productions. | "email" |
| FILE_PATH | File path of the document | n/a |

| Field | Field Description for Electronic Documents | Field Description for Emails |
|---|---|---|
| HASH_VALUE | MD5 or SHA1 hash of the document | MD5 or SHA1 hash of the email |
| REDACTED | Yes/No | Yes/No |
| NATIVELINK | Link to native file (if any) | Link to native file (if any) |
| TEXTLINK | Link to text file for the document | Link to text file for the email |
| PROD_VOLUME | Production Volume | Production Volume |
| CONFIDENTIALITY | Confidentiality designation for the document pursuant to a Protective Order | Confidentiality designation for the email pursuant to a Protective Order |
| REDACTED_REASON | Reason for redaction | Reason for redaction |

c.      Such metadata field values will be extracted from the native file and will be produced to the extent available at the time of collection and processing, except that they may be redacted if privileged or information protected by law or Court Order. This list of fields does not create any obligation to create or manually code fields that do not exist as part of the original metadata of the document; or would be burdensome or costly to obtain. The Parties agree to meet and confer if these metadata fields cannot be provided for a particular set of documents or if additional fields of metadata are requested.

Q.      Email Threading. To reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used in this Protocol, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all

attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

## III.    STRUCTURED DATA

The Parties shall meet and confer regarding the production of structured data as needed.

## IV.    OBJECTIONS TO ESI PRODUCTION

A.    If any formatting requirements or other specifications agreed to in this protocol are later determined by the producing party to be not feasible, or unduly burdensome or unreasonably costly, the Parties will promptly meet and confer in order to attempt to agree upon appropriate modifications to the protocol before presenting any such issue to the Court.

B.    Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or agreed to by the requesting party, except that nothing in this paragraph shall prohibit a producing party from producing a document in both native and non-native format. If an issue arises, the issue will only be submitted to the Court after reasonable efforts by the Parties to reach agreement by the meet and confer process.

## V.    AUTHENTICITY AND ADMISSIBILITY

Nothing in this Protocol shall be construed to affect the authenticity or admissibility of any document or data.    All objections to the authenticity and

admissibility of any document or data are preserved and may be asserted at any time.


          IT IS SO ORDERED.

Date: June 15, 2016                          s/ Joan N. Ericksen
                                             JOAN N. ERICKSEN
                                             United States District Judge

# APPENDIX 1: FILE FORMATS

**All load files will be produced in Concordance Load File format and be consistent in layout across productions.**

**A.** **<u>Image Load Files:</u>**  In general, image load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data. This will include a native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format.

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii extension (*e.g.*, ABC001.lfp).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, et. seq.).

- The producing party will provide document level OCR text files to accompany the TIFF format production. Each document's electronic image will convey the same information and image as the original document, except for redactions.  OCR will be run on the redacted document.

- The image load file shall contain one row per TIFF image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.), *i.e.*, a separate volume shall be created for each piece of media delivered.

**B.** **<u>Metadata Load Files:</u>**  In general, metadata load files will meet these requirements. The Parties agree to meet and confer further if meeting these requirements is not reasonably possible.

- The metadata load file shall use the following delimiters:
  - Column Delimiter: Pilcrow - ¶ (ASCII :020)
  - Text Qualifier: Thorn - þ (ASCII :254)
  - New line: Registered sign - ® (ASCII 174)

- The first record shall contain the field names in the order of the data set forth in Section III.O above.

- Metadata fields that are not applicable to a document shall be blank cells.

- All date fields shall be produced in "mm/dd/yyyy HH:MM:SS [AM/PM]" format standardized to Greenwich Mean Time

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (*i.e.*, ABC001.dat).

- The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et seq.*).

- The .dat and .txt files shall be encoded in UTF-8 or UTF-16 coding. Coding shall be consistent across all productions.

**C.      Scanned Hardcopy Documents**[1]**:**

1.      In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized).

2.      OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file. The text file shall contain image keys/Bates numbers for each page.

3.      In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the

---

[1] Plaintiffs have agreed to bear 50% of the actual cost incurred by Defendants' vendor in complying with paragraphs C.4 to C.6 with respect to documents actually produced to Plaintiffs, up to a 25,000 document initial limit and with Plaintiffs' 50% share not to exceed $0.25 per document.  The Parties agree to revisit the cost-sharing arrangement and the requirements of paragraphs C.4 to C.6 with regard to production of additional documents after the 25,000 document initial limit has been reached.  The Parties reserve their rights to withdraw their agreement to these paragraphs, or to request modification to require additional cost-sharing by Plaintiffs, to the extent Defendants are required to scan significant numbers of nonrelevant documents, or to request modification to reduce cost-sharing by Plaintiffs to the extent Plaintiffs contend excessive numbers of non-responsive documents have been produced.

document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the attachment fields.

4.      Each scanned document will be given a title based upon either the subject of the document or title of the document, or upon the appropriate email field, if in fact the document once was an email.

5.      The date of each scanned document will be extracted and produced as metadata, in "mm/dd/yyyy" format, where this can be determined. The time should be set to 00:00:00

6.      The author and recipients of any document should be extracted and listed in the metadata. If the document was originally an email, then the TO, From, CC, Subject and Date fields should be extracted and populated in the same manner as normal email ESI is produced.