UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 2666 (JNE/FLN) |

This Document Relates to **ALL ACTIONS**

### 3M COMPANY'S BRIEF CONCERNING IDENTIFICATION OF AND COLLECTION FROM CUSTODIANS

This Court should reject Plaintiffs' sudden repudiation of the parties' twomonthold agreement on custodians, conclude that 3M has met its obligations under the Federal Rules of Civil Procedure to search for documents, and decline to compel 3M to take any further action with respect to custodial discovery.

This issue is before the Court because Plaintiffs have made a tactical decision to repudiate agreements the parties had reached in June on dozens of discovery issues. As the Court knows, Plaintiffs submitted a 95-item chart of "disputes" to the Court, over 3M's objection, but later confessed to the Court that nearly all of those "disputes" had, in fact, been resolved. The issue of custodians is yet another "dispute" that the parties had reached agreement on months ago – an agreement on which 3M has relied in discovery negotiations and its document production efforts ever since.

Indeed, the parties' agreement on custodians was foundation for the parties' generally successful efforts to complete necessary discovery within the short time frame set out by Pretrial Order No. 4. The parties were able to resolve many other difficult issues, including the collaborative predictive coding protocol, precisely because they had

1

agreed on a list of custodians and a process for supplementing that list.  3M also agreed to produce documents more expansively – even where it had objections to relevance and overbreadth – because its burden was confined to a manageable set of custodians.

Plaintiffs' new position that they are helpless to identify additional custodians is not credible.  Through the *Walton* and *Johnson* cases, Plaintiffs already had more than 100,000 pages of documents, as well as 20 depositions of current and former 3M and Arizant employees.  3M has since produced an additional 1.2 million pages of Bates-numbered documents with extensive metadata.  Despite this enormous, comprehensive production, Plaintiffs have only been able to identify two additional custodians beyond the initial 24 to which the parties agreed. (3M agreed to add these two custodians.)

Even putting aside the parties' agreement, 3M's approach to identifying sources of documents has been more than sufficient to satisfy 3M's discovery obligations.  3M conducted its own due diligence, including custodial interviews, and those efforts confirm the robustness of the present list of 26 agreed custodians.  The list covers all relevant subject areas (product development and design, testing, regulatory affairs, marketing and sales) for all relevant time periods back to the early 1990s, and includes both senior managers and lower-level employees.  3M has also made targeted collections and productions from 30 additional sources.  Plaintiffs have offered no evidence to show that *any* other individual exists whose documents are both available to 3M and likely to contain unique relevant documents that are not in the possession of other custodians or 3M's other sources of production.  To this day, Plaintiffs have identified nothing that is missing from 3M's production or what it has agreed to produce. *See, e.g.*, *Ford Mot. Co.*

*v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (refusing to compel new keyword search solely due to "nefarious speculation" about inadequate ESI production).

Plaintiffs' new insistence that 3M has an undefined, open-ended obligation to search the documents of everyone who conceivably could have a document responsive to their 230 requests is contrary to the proportionality requirement of Rule 26(b).  *See ChriMar Sys. Inc. v. Cisco Sys. Inc.*, 312 F.R.D. 560, 563-64 (N.D. Cal. 2016) (citing "recently revised" Rule 26(b)'s proportionality requirement in sustaining objection to request seeking "information from 'anywhere in the world, without any temporal limitation'").  Plaintiffs' position on 3M's obligations also contrasts sharply with their view of their own obligations.  When it comes to responding to 3M's far smaller number of requests, Plaintiffs object that it is too "burdensome" for them to obtain documents in the possession of any lawyer or client who is not on Plaintiffs' Executive Committee.

For these reasons and the additional reasons below, the Court should require Plaintiffs to adhere to the parties' June 16 agreement on custodians and conclude that 3M has satisfied its obligations under the Federal Rules to search for custodial documents.

### RELEVANT BACKGROUND

#### A. The Parties Agreed to a List of Agreed Custodians and a Procedure for Supplementing that List – Plaintiffs Have Now Reneged.

Under the agreement reached during the parties' in-person meet-and-confer on June 16, 3M agreed with Plaintiffs to treat as a custodian *every* individual who appeared on either party's Rule 26(a) initial disclosures for whom 3M was able to locate custodial files.  This resulted in an initial list of 23 current and former employees of 3M and

3

Arizant that 3M provided to Plaintiffs that same day after the parties' meeting. (3M subsequently added another individual to the list after locating an archive of his email.) The content of the present agreed list is included as an appendix to this brief. Recognizing that discovery is an iterative process and that parties learn more as they go along, 3M further agreed to consider requests from Plaintiffs to add additional custodians. Plaintiffs acknowledged that agreement and process in an email sent on June 22, in which Plaintiffs stated: "As plaintiffs review the documents produced, we reserve the right to identify additional subject areas and/or custodians needed." In addition, the chart of discovery disputes submitted to the Court on June 30 discussed the parties' "23 agreed document custodians" and Plaintiffs did not dispute that agreement.[1]

3M continued its document collection, review, and production pursuant to the parties' agreement. To date, 3M has produced 1.3 million Bates-numbered pages and tens of thousands of associated native electronic files. Through the rest of June, all of July, and the first half of August, Plaintiffs never identified a single additional custodian for 3M to add. When Plaintiffs finally asked on August 17 to add two more custodians to the list, 3M agreed to do so. That same day, however, Plaintiffs reneged on the parties' agreement regarding custodians and were taking the position that 3M had an open-ended responsibility to collect, review, and produce documents responsive to Plaintiffs' hundreds of requests from every possible source at the company.

---

[1] Due to the 12-page limit on this submission, 3M has not filed a supporting declaration. 3M can submit a declaration and other evidence if the Court believes it would be helpful.

4

Plaintiffs' decision to repudiate the parties' agreement took 3M by surprise; Plaintiffs had not expressed dissatisfaction with the agreement for two months. The agreement on custodians was the foundation of other agreements the parties had reached on difficult issues. The parties' predictive coding protocol (Pretrial Order No. 12) is a perfect example. 3M would not and could not have agreed to the protocol if it did not know the "pool" of custodial data to which the protocol would apply. Likewise, 3M stepped back from many of its relevance and overbreadth objections, and decided not to address them to the Court, because its burden was reduced by the parties' agreement on a manageable set of custodians. At bottom, if Plaintiffs had not agreed to a set of custodians and an orderly process for supplementing that list, 3M would have taken a far tougher stance on relevance and breadth in order to avoid an overwhelming discovery burden in the short window provided by Pretrial Order No. 4 for completing discovery.

### B. Plaintiffs Have All the Information They Need to Specifically Identify Any Custodians to Be Added to the Parties' Agreed List.

The parties' June 16 agreement on custodians also made practical sense given the realities of this litigation. In making their initial disclosures, Plaintiffs were not operating on a blank slate. Through *Walton* and *Johnson*, Plaintiffs' counsel had 100,000 pages of 3M's production documents, including more than 100 organizational charts. These documents came from custodians in all relevant areas: product development, testing, regulatory affairs, marketing, and sales. Plaintiffs also took 20 depositions of current and former 3M and Arizant employees, again covering these same subject areas. 3M responded to three sets of interrogatories in each case. While Plaintiffs were not limited

5

to discovery previously taken in those cases, they were well positioned to identify any other individuals from whom they needed documents.

Now, with the subsequent enormous production of 1.2 million additional Bates-numbered pages and associated native files, Plaintiffs could not remain in the dark about any individual of potential significance to the litigation. The fact that after two months Plaintiffs have identified only two additional individuals to be added as custodians only confirms the comprehensiveness of the initial list of custodians.

### C. 3M's Own Investigation Validated the Agreed List of Custodians.

3M did not rely on the parties' initial disclosures alone for the sources for its document collection and production. 3M took additional steps and collected documents from a wide array of other sources to ensure the comprehensiveness of its production.

*First*, 3M undertook extensive internal due diligence to locate custodial ESI for the individuals listed on Plaintiffs' initial disclosures. 3M searched its own email files and archived Arizant email files, and employed a forensic consultant to restore a decommissioned Arizant email server. Through this work, 3M located custodial documents for 23 of the individuals in Plaintiffs' initial disclosures. 3M also undertook an investigation (including interviews of current and former IT support staff) to locate hard drives that could contain old email. Through that investigation, 3M identified an email archive for one more of the individuals in Plaintiffs' initial disclosures.

*Second*, 3M conducted 25 custodian interviews. Based on those interviews, 3M concluded that the group of 24 agreed custodians covered all significant subject areas in the case for all relevant time periods, going back to the early 1990s. In addition to senior

managers, the list includes individuals who did and continue to do the day-to-day work of product engineering, testing, and marketing, including design drafters, marketers, testing technicians, and R&D engineers. 3M also concluded that no individual not listed on the initial list of custodians was likely to have documents that were both (i) available to 3M and (ii) not in the files of one of the agreed custodians.

*Third*, 3M has made and continues to make targeted collections from additional custodians of discrete categories of documents (e.g., exemplar marketing materials), and has collected and/or produced documents from nearly 30 additional sources beyond the 26 current agreed custodians. Those sources' identities have been disclosed to Plaintiffs.

*Fourth*, 3M has produced tens of thousands of documents from noncustodial document sources, including laboratory and regulatory files. These are the primary repositories for the work product of the individuals responsible for designing and testing the Bair Hugger system and ensuring that it complies with regulatory requirements.

## ARGUMENT

**I.    3M'S PROCESS FOR IDENTIFYING CUSTODIANS COMPLIED WITH ITS OBLIGATIONS UNDER THE FEDERAL RULES.**

3M's process for identifying custodians and searching their documents not only met, but exceeded, 3M's obligations under the Federal Rules of Civil Procedure.

*First*, 3M has committed to provide responsive documents from the custodians required by the parties' agreement. The parties agreed that 3M would provide the custodial files for the 24 custodians that Plaintiffs initially identified and for the two that Plaintiffs later added. The federal rules permit, and indeed encourage, parties to come to

such agreements concerning the scope and methods of discovery.  *See* Fed. R. Civ. P. 29; *see also id.* 1993 Adv. Comm. note ("Counsel are encouraged to agree on less expensive and time–consuming methods to obtain information, as through voluntary exchange of documents, use of interviews in lieu of depositions, etc.").  For such agreements to serve "the just, speedy, and inexpensive" resolution of this action, however, they must be enforced.  Here, 3M complied with the parties' agreement and has produced or will produce the agreed custodian files, and Plaintiffs accepted the benefits of the agreement in the form of a vast document production primarily from sources Plaintiffs selected.  Plaintiffs now seek the Court's blessing for reneging and for their demand that 3M perform huge new (and almost certainly redundant) searches and productions.  The Court should enforce the parties' agreement and reject Plaintiffs' overreaching new demands.

*Second*, even absent the agreement, 3M's efforts in gathering documents have been not just reasonable, but comprehensive.  As detailed above, 3M validated the agreed list of custodians, conducted a separate thorough and detailed investigation of possible document sources, and has now produced 1.3 million pages of documents from 55 different sources – more than half of those sources unrelated to the parties' agreed custodians.  These productions include more than 400,000 pages of email.  As provided by Pretrial Order No. 10, the productions also include extensive metadata identifying the sources and recipients of the documents, among other information.

*Third*, Plaintiffs have not provided any factual basis to conclude that any source of documents that 3M has not already tapped contains non-duplicative documents material to this litigation.  The burden is on Plaintiffs to provide some reasonable basis for their

8

assertion that 3M has additional, unproduced documents, and Plaintiffs have failed to do so.  Without such grounds, Plaintiffs are just speculating, and speculation is not enough.  *See Hubbard v.  Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end."); *Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) ("[T]he plaintiffs have not proffered an adequate factual basis for their belief that the current production is deficient.  Their contention that the defendants' production is deficient . . . is too conclusory to provide that basis.").  As one court put it:

> While Plaintiff speculates that Defendant may have additional documentation that it has not produced, there is no evidence to support that supposition at this point.  Defendant's explanation for the manner in which it has produced documents, based on Plaintiff's staggered discovery requests and clarifications, is plausible.  Moreover, defense counsel are surely aware that they are under an ongoing obligation to supplement their discovery responses if additional responsive information is located.

*Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 364 (N.D.  Tex.  2013).  The situation here is the same:  Plaintiffs have not shown that 3M's large document production, taken together with the documents 3M has committed to produce, is incomplete or inadequate.  Plaintiffs' failure to offer support for needing additional document sources is particularly glaring given the substantial information that Plaintiffs' attorneys possessed before MDL discovery began.  *See In re Viagra*, MDL No. 1724 (D. Minn. June 30, 2006), slip op. 2-3 (recognizing significant pre-MDL discovery and placing burden on plaintiffs to inform defendant "whether they believe any additional written discovery is necessary on the issue of the general causation").  Despite their extensive longstanding knowledge,

Plaintiffs here have failed to identify gaps in 3M's production that could affect the expert disclosures and motions on general causation the Court has set for the next MDL phase.

The steps 3M has taken to identify and produce relevant and responsive documents comply with 3M's obligations both under the parties' agreement and under the Rules, and Plaintiffs' speculation about possible additional documents does not justify abrogating the agreement or compelling 3M to conduct a more expansive search. *See, e.g., Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) (mere speculation that computer systems contained "appropriate discovery information" was vague and did not warrant compelling inspection of systems containing voluminous irrelevant topics); *Ford Mot.*, 257 F.R.D. at 427 (refusing to compel a new keyword search solely due to "nefarious speculation" about inadequate production of ESI).

## II.     THE FEDERAL RULES DO NOT REQUIRE 3M TO COLLECT AND REVIEW ALL DOCUMENTS FOR ALL POSSIBLE CUSTODIANS.

The Court should reject Plaintiffs' assertion that 3M should have to perform additional searches of all document custodians who may possibly have responsive documents. Such a process would be unduly burdensome, cumulative, disproportionate to the needs of the MDL, and impossible to complete on the accelerated schedule set by the Court for discovery. The Rules do not require a defendant to exhaust every possible source of documents to respond to discovery. Rule 26(b)'s updated language requires that discovery be "proportional to the needs of the case" in light of a number of factors:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

10

Fed. R. Civ. P. 26(b)(1).  This standard unequivocally does not require what Plaintiffs now demand: a commitment from 3M to search every possible document source anywhere in its worldwide operations for any document that could possibly have some tangential relevance to any issue Plaintiffs have raised or might raise in this litigation.

Most critically, Plaintiffs cannot demonstrate that any additional search would have any "importance" to the litigation because Plaintiffs apparently cannot identify the documents they assert 3M has failed to produce.  Such lack of specificity demonstrates a lack of regard for Rule 26's proportionality requirement.  As one court put it:

> Instead of providing the Defendant with that type of narrowly tailored area of inquiry, the Plaintiff cast a very broad net.  Given counsel's familiarity with the subject matter, the nature of the discovery disputes that have arisen around these issues in past cases, and the case law surrounding the same, counsel clearly could have provided more appropriately tailored areas of inquiry, which are proportional to the needs of this case.

*Beaulieu v. Wells Fargo Bank, N.A.*, No. 615CV2116ORL40GJK, 2016 WL 2944048, at *2 (M.D. Fla. May 18, 2016).  This same failing also bears on the parties' "relative access" to the documents under Rule 26(b).  Because Plaintiffs have not identified any non-duplicative unproduced documents in 3M's possession, they cannot claim that 3M has any better access to any relevant documents than Plaintiffs do.

Finally, Plaintiffs' failure to identify any specific deficiencies in 3M's productions to date renders the potential burden and expense to 3M of additional searching and review nearly limitless.  Plaintiffs have not proposed any specific procedures for additional document collection or explained how such additional productions could be accomplished within the current case schedule.  (To the extent Plaintiffs make any such

11

proposal, 3M will be seeing it for the first time in Plaintiffs' submission.)  Plaintiffs apparently want 3M to continue searching and producing documents until Plaintiffs say "enough."  Such a request does not meet Rule 26(b)'s proportionality requirement.  *See ChriMar*, 312 F.R.D. at 564.

## III. BECAUSE PLAINTIFFS HAVE NOT SHOWN AND CANNOT SHOW ANY DEFICIENCY IN 3M'S PRODUCTION, THE COURT SHOULD NOT REQUIRE ANY FURTHER ACTION BY 3M.

Because 3M has not only provided the document production required by the Rules and agreed to by the parties, but also has far exceeded its obligations for document production, and because Plaintiffs' vague, overbroad and speculative requests for additional unidentified documents are disproportionate both to the likely value of any such documents to the litigation and the expense and burden of searching for them, the Court should decline to order 3M to conduct any additional document production.

## CONCLUSION

The parties reached a reasonable agreement in June on the custodians whose documents 3M would search.  3M corroborated the appropriateness of the agreement by its own internal due diligence.  The agreement also provided the foundation for resolution of other difficult discovery issues, and 3M relied on the agreement in not bringing concerns about the breadth, relevance, and burden of Plaintiffs' 230 document requests to the Court.  For these reasons, this Court should reject Plaintiffs' repudiation of the parties' agreement on custodians, conclude that 3M has met its obligations under that agreement and the Rules to search for documents, and decline to compel 3M to take any further action with respect to custodial discovery.

Dated:  August 30, 2016                             Respectfully submitted,

*s/Bridget M. Ahmann*
Bridget M. Ahmann
MN Atty ID No. 016611x
**Attorneys for Defendants 3M Company and Arizant Healthcare Inc.**
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000  F: (612) 766-1600
bridget.ahmann@faegrebd.com

Jerry W. Blackwell
MN Atty ID No. 0186867
Benjamin W. Hulse
MN Atty ID No. 0390952
Mary S. Young
MN Atty ID No. 0392781
**Attorneys for Defendants 3M Company and Arizant Healthcare Inc.**
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
T: (612) 343-3200  F: (612) 343-3205
blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com

US.107911809.04