UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 2666 (JNE/FLN) |
| This Document Relates to All Actions | **Plaintiffs' Memorandum Concerning Defendants' Obligations Under FRCP to Identify and Search for Custodians and Documents** |

## INTRODUCTION

On August 18, 2016, the Court ordered the parties to brief the following questions:

1. Whether defendants' process for identifying custodians whose documents must be fully searched satisfies defendants' obligations under the Federal Rules of Civil Procedure;

2. If not, what more must defendants do to identify the universe of custodians whose documents must be fully searched; and

3. Regardless of the process, whether the custodians that have been identified fully satisfy defendants' discovery obligations under the Federal Rules of Civil Procedure.

Plaintiffs first discuss their understanding of the process of initial custodian identification and include materials from defendants' initial document production that identify several examples of individuals who have not been identified by defendants as custodians, but who possess highly-relevant information. Plaintiffs then address the legal standard governing defendants' discovery obligations, where defendants have fallen short, and what defendants must do to satisfy those obligations. Regardless of the process defendants used to identify the current list of custodians, the record evidence indisputably shows defendants have not satisfied their obligations under the Federal Rules of Civil Procedure to search and collect all relevant information.

1

**FACTUAL BACKGROUND**

A.   **Initial Process of Custodian Identification.**

On April 29, 2016, defendants served their Rule 26 initial disclosures, which identified only 5 custodians (See Exhibit 1). On April 1, 2016, plaintiffs sent their first Requests for Production of Documents ("RFPs"), while defendants objected and responded on May 12, 2016. Beginning in June, the parties met and conferred on the RFPs multiple times, attempting to identify and agree on relevant custodians for responsive documents. Not once, however, did defendants identify any potential custodians that were responsive to plaintiffs' RFPs other than the handful of custodians identified in their Rule 26 disclosures. Indeed, relying on nothing more than plaintiffs' mere access to documents from *Walton* and *Johnson*, defendants demanded plaintiffs identify any additional custodians.

In the spirit of cooperation, plaintiffs reviewed the limited *Walton* and *Johnson* productions and ultimately identified 39 custodians. On June 15, 2016, defendants asked to remove two custodians from that list because they were related solely to information technology issues. They also identified 24 of plaintiffs identified custodians for whom custodial e-mails were available (Exhibit 2) and another 11 custodians for whom they claimed no custodial e-mails could be located (Exhibit 3). Although the parties agreed, simply for the sake of efficiency, that defendants would search the 24 custodians for whom e-mails were available using the CAR protocol, plaintiffs continued to insist it was defendants' burden to identify relevant custodians in the first instance. In other words, by placing the onus on plaintiffs, defendants were shirking their discovery obligations.

Having exhausted the meet and confer process, plaintiffs noticed a 30(b)(6) deposition for August 16, 2016 on topics related to ESI and fact discovery in order to understand: (1) the issues regarding the 11 custodians for whom defendants could not locate any custodial e-mails;

2

(2) what defendants had done to search for and identify responsive documents; and (3) what non-custodial and non-email sources of documents exist. Defendants objected to the deposition and refused to produce responsive witnesses. After a meet and confer to address those objections, on August 18, 2016, defendants identified an additional 29 sources that were apparently searched on a limited basis (Exhibit 4). Of the 29 sources, 22 are individual custodians which defendants have identified as "limited custodians," that is, they have identified specific documents or sets of documents as being in those custodians' possession and unavailable through other sources and are producing those specific documents, but whom they do not consider "full custodians" subject to a comprehensive search and production. The remaining 7 sources are non-custodial sources, consisting of articles and pages from the 3M website, technical data, and the like. Plaintiffs' attempt to garner a complete understanding of defendants' review and collection process were stymied, causing the need for judicial resolution.

**B.     Initial Document Production Reveals the Inadequacy of Defendants' Search.**

In addition to the foregoing, numerous documents reveal defendants' failure to perform a systematic and thorough search for relevant custodians and documents. **These documents show defendants have not identified, much less searched, the custodial files of key employees who were not only involved in the design and development of the Bair Hugger, but who participated in defendants' systematic attempts to quell concerns about the product and research into alternative designs.** Some of the documents involving these employees were fortuitously captured in defendants' production because the employees sent some of their emails to designated custodians. These gaps in defendants' production, revealed only by happenstance and unpredictable identification of occasional documents from other employees, demonstrate defendants have failed to identify and search the files and e-mails of numerous employees who had first-hand involvement in key events.

3

The following two documents highlight defendants' failures in this regard:

[text redacted]

[redacted]

**The foregoing individuals are but a few of the many employees who should have been identified by 3M and considered full custodians with documents relevant and responsive to plaintiffs RFPs, for they all have personal involvement in issues directly relevant to this litigation.** Absent defendantsø affirmative identification and disclosure of *all* relevant custodians, plaintiffs have no way to determine how many other relevant custodians exist. Accordingly, Plaintiffs have very likely been denied a large pool of responsive documents due to defendantsø failure to conduct a systematic search for all relevant custodians. Although plaintiffs attach as õExhibit 5ö a limited list of unsearched custodians who are likely to possess relevant documents based solely on Plaintiffsø limited review of documents produced to date, only defendants know how many more unidentified custodians remain in this litigation.

## LEGAL STANDARD

### A.     The Obligation to Produce ESI from Relevant Custodians

To satisfy their obligations under the Federal Rules of Civil Procedure, "counsel must take affirmative steps to monitor compliance so that *all* sources of discoverable information are identified and searched." *Zubulake v. UBS Warburg L.L.C.,* 229 F.R.D. 422, 432 (S.D.N.Y.2004) (emphasis added). To meet that burden, defendants must show that they "put into place a systematic, reliable plan to find and produce all relevant documents in this case." *New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 818 (2015). This requires "[t]aking reasonable steps to identify all custodians," *In re Genetically Modified Rice Litig.,* No. 4:06 MD 1811 CDP, 2007 WL 1655757, at *5 (E.D. Mo. June 5, 2007), which includes all individuals likely to possess discoverable documents. As explained in recent commentary:

> Electronically stored information is usually distributed to many more people than paper documents ever were. E-mail "reply all" and "forward" and "cc/bcc" functionality has made the barriers to dissemination much lower. Therefore, custodians of ESI are not just individuals that may have created electronic documents pertinent to a matter, but are also individuals that may have any of this information in their "custody or control."

*See* P. Dubey, eDiscovery for Corporate Counsel § 9:13. *Defining scope of Electronically Stored Information (ESI) in litigation—From record types to custodians and repositories*. Because defendants are the producing party, they must identify the custodians likely to have custody or control of relevant discovery. *See, e.g.*, *Worley v. Avanquest N. Am. Inc.,* No. C 12-04391 WHO (LB), 2013 WL 6576732, at *2 (N.D. Cal. Dec. 13, 2013); *see also California Earthquake Auth. v. Metro. W. Sec., LLC,* No. 2:10-CV-0291 MCE GGH, 2012 WL 5880345, at *5 (E.D. Cal. Nov. 21, 2012) ("[T]he burden to identify appropriate custodians is on [producing party].").

### B.     Rule 26 Proportionality Standard

Rule 26 requires the court to consider, in regard to proportionality, not only the amount of damages at stake, but also the importance of the interests in the case, the parties' access to

relevant information, the parties' resources, how important the discovery is to the issues, and whether the burden of producing the discovery outweighs its likely benefit. *See* Fed. R. Civ. P. 26(b)(1). Though defendants may tout the amended rule as a "new requirement," district courts in this Circuit routinely conclude "the burdens to show undue burden or lack of proportionality have not fundamentally changed compared to the earlier version of the Rule." *See, e.g.*, *Schultz v. Sentinel Ins. Co., Ltd,* 2016 WL 3149686, at *6 (D.S.D. June 3, 2016); *see also Hodges v. Pfizer, Inc.*, 2016 WL 1222229, at *2 (D. Minn. Mar. 28, 2016) (stating the amended rule "does not change the existing responsibilities of the court and the parties to consider proportionality").

Under Rule 26(b)(1), "a party which withholds discoverable electronic information bears the burden of showing its basis for doing so." *Nelson v. Am. Family Mut. Ins. Co.,* 2016 WL 3919973, at *6 (D. Minn. July 18, 2016). "The fact that Defendant may incur even substantial costs . . . does not warrant the entire denial of [a] discovery request." *Id.*; *Webb v. Ethicon Endo-Surgery, Inc.*, 2015 WL 317215, at *7 (D. Minn. Jan. 26, 2015) ("The fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."). After all, when the concept of proportionality was first instituted in 1983, the Advisory Committee noted it was concerned by "the limitations on a financially weak litigant to withstand extensive opposition to a discovery program." *See* Fed. R. Civ. P. 26, 1983 Advisory Committee Notes to Subdivision (b) The Committee also stated, however, that proportionality cannot be measured solely in terms of the money damages at stake and that philosophic, social, or institutional public policy considerations deserve great weight. *See Id*.

## ARGUMENT

### A.   Defendants have neither Searched for nor Identified all Relevant Custodians.

3M has not conducted a systematic search to locate and identify all custodians likely to have relevant information. In particular, it is clear that in contrast to their searches of certain

high-level employees, defendants have made little or no attempt to identify or search the files of knowledgeable lower-level employees who have documents which are clearly responsive to plaintiffs' RFPs. Defendants even acknowledged as much both during the meet and confer on August 17, 2016 and during the in-chambers status conference on August 18, 2016.

At the August 17th meet and confer, defendants disclosed for the first time that 3M had restored an Arizant e-mail server, apparently as it existed at around the time 3M acquired Arizant. Defendants had therefore extracted and were going to subject to the CAR process e-mails from the accounts of the initial 24 custodians identified by plaintiffs. Defendants further stated the 11 additional custodians identified by plaintiffs apparently did not have any active e-mail accounts as of the point in time the server was restored, meaning defendants would not produce their custodial e-mails. As it turns out, defendants had merely searched the e-mail accounts—that is, the inbox, sub-folders, and sent items—of the initial 24 custodians. Defendants had made no attempt whatsoever to search any of the numerous other accounts on the server for e-mails to or from the 24 custodians. Even more troubling, defendants were not searching those other accounts for the e-mails to or from the 11 additional custodians identified by plaintiffs from whom they stated no custodial e-mails existed. Defendants have also not identified whether any older backups or versions of the e-mail server state exist that may have additional e-mails.

Also at the meet and confer on August 17, 2016, defendants disclosed they had a collection of Arizant backup tapes. It was only when specifically questioned about backup tapes that this information came to light. In fact, no mention of even the existence of the backup tapes was made in any of defendants' responses to the RFPs. Defendants have demonstrated no intention of discerning the content of those tapes, much less searching and producing relevant,

8

responsive content. To date, despite requests, plaintiffs have received no further information about the backup tapes.

At both the meet and confer and the status conference, defendants similarly acknowledged they had not even attempted to identify *all* custodial sources of information. Rather, they interviewed and identified a few executives and, based on those interviews, determined the universe of custodians they were going to search. While defendants resort to "proportionality" concerns to defend their search process, the express language of Rule 26(b)(1) proves otherwise:

> [T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

For an action of this magnitude, with well over 600 cases on file and more being filed every day, where aggregate damages could easily end up in the billions of dollars, where defendants have the financial and human capital of a Fortune 100 company, where plaintiffs have no independent access to the information in defendants' possession, where the importance of discovery relating to defendants' knowledge of the increased risk of surgical site infections related to the use of the Bair Hugger system is central to the action, and where defendants have provided no evidence that the expense of discovery outweighs its benefit, the proportionality standard clearly favors plaintiffs.

> **B. Defendants Must Identify Relevant Custodians, Search for and Review related Documents, and Produce Responsive Documents.**

Defendants have abdicated their burden to identify responsive documents. In repeated meet and confer sessions regarding plaintiffs' RFPs, defendants have advocated the untenable position that defendants' burden to respond to such discovery is limited to producing documents from the following sources: (1) the 24 custodians plaintiffs identified for whom e-mails have been located; (2) the seven non-custodial sources defendants identified and (3) certain "limited"

9

documents from other individuals. Inasmuch as Defendants assert they are "happy" to consider adding custodians— who must ultimately be identified by plaintiffs— either as "full custodians" or as custodians only subject to having their e-mails searched, defendants continue to claim they need not do anything more to identify potentially relevant sources of information. But pursuant to the Federal Rules of Civil Procedure it remains defendants' obligation to search for, identify, and produce documents located outside of the e-mails of the already identified sources by inquiring about and identifying other sources of information responsive to plaintiffs' RFPs.

First, defendants should review their own organizational charts identifying areas and department which may have potentially responsive documents to each of plaintiffs' RFPs;

Second, defendants should interview all individuals, not just those at the top echelons of the company, who are named in the organizational charts identified in Step 1 in order to determine their knowledge of or information related to the information and documents requested by plaintiffs RFPs, as well as their knowledge of any other individuals who may have responsive documents;

Third, defendants should search the e-mails, files, and documents of individuals no longer employed in the departments identified in Step 1 in order to determine if responsive documents exist in those e-mails, files, and documents, as well as determine whether there are other individuals identified in those e-mails, files, and documents who may have responsive information;

Fourth, for all individuals so identified, defendants should identify and obtain potentially responsive documents, search such documents, and produce all responsive documents;

Finally, defendants should identify all non-custodial sources which may contain responsive documents, such as shared drives, SharePoint and other similar collaboration services,

messaging systems, databases, etc. and similarly search such sources and produce all responsive documents.

Because plaintiffs do not know what defendants have done and what additional steps they will take, plaintiffs respectfully request the Court order defendants to take corrective action as follows:

1) to conduct a further, diligent search for responsive documents as requested in each group of RFPs;
2) to specify the manner in which such search will be conducted;
3) to identify the custodians defendants determine may have responsive documents;
4) to list the sources of non-custodial information which, after such diligent search, defendants determine may have responsive documents;
5) to aver defendants have then collected all such potentially responsive documents;
6) to certify defendants will produce all responsive documents and the date by which defendants expect such production to be complete.

Without enforcing the foregoing requirements, plaintiffs will be left with only the ability to identify additional custodians by the haphazard chance that an as yet unknown custodian happened to send an e-mail or memo to one of few initially identified custodians. Such fortuitous identification of discoverable sources of information cannot satisfy defendantsø discovery obligations under the FRCP in this case.

Moreover, given the discovery schedule in this case, the sporadic and iterative process envisioned by defendants is simply not feasible as plaintiffs will not only have to review the documents of the initial 24 custodians (whose e-mails have yet to be produced and are unlikely to be produced until October), but they will also have to identify additional custodians based on a review of those initial e-mails, ask defendants to look for and search those additional custodians, review those additional documents, and then again identify additional custodians, and continue that process until all relevant custodians have been exhausted, and yet somehow complete

11

discovery within a 60-90 day timeframe. Defendants' attempt to "slow-play" the discovery process is not envisioned under the rules, and it should be rejected by the Court.

## CONCLUSION

For these reasons, plaintiffs submit the following answers to the questions posed to the Court: (1) defendants' process for identifying custodians whose documents must be fully searched fails to satisfy their discovery obligations under the Federal Rules of Civil Procedure; (2) in order to meet their discovery obligations, defendants must engage in the type of process outlined by plaintiffs in Section I(B) above; and (3) the custodians thus far identified by defendants are woefully inadequate to satisfy defendants' obligations under the Federal Rules.

Dated: August 30, 2016                                  Respectfully submitted,

CIRESI CONLIN L.L.P.                                    MESHBESHER & SPENCE LTD.

/s/Michael V. Ciresi_____                            /s/ Genevieve M. Zimmerman
Michael V. Ciresi (MN #0016949)                         Anthony J. Nemo (MN #221351)
Jan M. Conlin (MN #0192697)                             Genevieve M. Zimmerman (MN #330292)
Ciresi Conlin LLP                                       1616 Park Avenue South
225 S. 6th St., Suite 4600                              Minneapolis, MN 55404
Minneapolis, MN 55402                                   Phone: (612) 339-9121
Phone: 612.361.8202                                     Fax: (612) 339-9188
Email: MVC@CiresiConlin.com                             Email: tnemo@meshbesher.com
       JMC@CiresiConlin.com                                    gzimmerman@meshbesher.com

LEVIN PAPANTONIO, P.A.

/s/ Ben W. Gordon, Jr.
Ben W. Gordon (FL # 882836) – *Pro Hac Vice*
J. Michael Papantonio (FL # 335924)
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: (850) 435-7090
Fax: (850) 436-6090
Email: bgordon@levinlaw.com

*Plaintiffs Co-Lead Counsel*

# EXHIBIT 1

**3Ms' Identification of Relevant Custodians**

**In Defendants' Fed R. Civ. P. 26(a)(1) Initial Disclosure**



# EXHIBIT 2

**24 Custodians Whom Plaintiffs Identified**

**Defendants Have Agreed to Search**



# EXHIBIT 3

## 11 Custodians That Plaintiffs Have Identified Where Defendants Claimed No E-Mails Exist



**EXHIBIT 4**

**29 Additional Sources Identified by 3M on August 18, 2016**

**from Which Limited Documents Have Been Produced**



16

# EXHIBIT 5

**Additional Custodians Identified By Plaintiffs Through Partial Review of Documents**

