1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF MINNESOTA

3     ----------------------------------------------------------
                                  )
4                                 )
      In Re: Bair Hugger Forced Air  )   File No. 15-MD-2666
5     Warming Devices Products     )   (JNE/FLN)
      Liability Litigation         )
6                                  )   September 8, 2016
                                   )   Minneapolis, Minnesota
7                                  )   Courtroom 12W
                                   )   2:37  p.m.
8                                  )
                                   )
9     ----------------------------------------------------------

10              BEFORE THE HONORABLE JOAN N. ERICKSEN
                  UNITED STATES DISTRICT COURT JUDGE
11
                And THE HONORABLE FRANKLIN D. NOEL
12                UNITED STATES MAGISTRATE JUDGE

13
                        **(STATUS CONFERENCE)**
14
      APPEARANCES
15
      FOR THE PLAINTIFFS:         LEVIN PAPANTONIO
16                                Ben W. Gordon, Jr.
                                  316 S. Baylen Street
17                                Suite 600
                                  Pensacola, FL 32502
18
                                  MESHBESHER & SPENCE
19                                Genevieve M. Zimmerman
                                  1616 Park Avenue
20                                Minneapolis, MN  55404

21                                CIRESI CONLIN
                                  Michael Ciresi
22                                Michael Sacchet
                                  225 South 6th Street
23                                Suite 4600
                                  Minneapolis, MN
24
                        (Appearances continued next page)
25

```
 1    FOR THE PLAINTIFFS (cont'd):
                              KIRTLAND AND PACKARD LLP
 2                            Behram V. Parekh
                              2041 Rosecreans Avenue
 3                            Third Floor, Suite 300
                              El Segundo, CA  90245
 4
                              KENNEDY HODGES, LLP
 5                            David W. Hodges
                              711 W. Alabama Street
 6                            Houston, TX 77006

 7                            PRITZKER OLSEN, P.A.
                              David Szerlag
 8                            45 South 7th Street, #2950
                              Minneapolis, MN  55402-1652
 9
                              FARRAR & BALL, LLP
10                            Kyle Farrar
                              1010 Lamar, Suite 1600
11                            Houston, TX  77002

12    FOR THE PLAINTIFFS (APPEARING BY PHONE:)

13                            KENNEDY HODGES, LLP
                              Gabriel Assaad
14                            4409 Montrose Blvd
                              Suite 200
15                            Houston, TX 77006

16                            PETERSON & ASSOCIATES, P.C.
                              Brian Emerson Tadtman
17                            801 W. 47th Street, Suite 107
                              Kansas City, MO  64112
18
                              ANDREWS & THORNTON
19                            Anne Andrews
                              John Thornton
20                            Marco Galindez
                              Lila Razmara
21                            Todd Rudometkin
                              2 Corporate Park, Suite 110
22                            Irvine, CA 92606

23                            BERNSTEIN LIEBHARD LLP
                              Dae Lee
24                            Jessica Keller
                              10 East 40th Street
25                            New York, NY  10016
```

```
 1                                  ENGLISH LUCAS PRIEST & OWSLEY
                                    Bridget Stratton
 2                                  1101 College Street
                                    PO Box 770
 3                                  Bowling Green, KY 42102

 4                                  GOZA & HONNOLD, LLC
                                    Matt Lowrey
 5                                  11181 Overbrook Road, Suite 200
                                    Leawood, KS 66211
 6
                                    GROSSMAN & MOORE, PLLC
 7                                  Emily A. DeVuono
                                    Jennifer Moore
 8                                  401 W. Main Street
                                    Suite 1810
 9                                  Louisville, KY  40202

10                                  HARE WYNN NEWELL & NEWTON
                                    Lynne Reed
11                                  Peggy Little
                                    Massey Building
12                                  2025 Third Avenue North
                                    Suite 800
13                                  Birmingham, AL  35203

14                                  MCEWEN LAW FIRM, LTD
                                    Melissa Schmid
15                                  5850 Blackshire Path
                                    Inver Grove Heights, MN  55076
16
                                    MORGAN & MORGAN, PA
17                                  Michael S. Goetz
                                    Joseph T. Waechter
18                                  Heather Cullen
                                    201 N. Franklin St 7th Floor
19                                  Tampa, FL  33602

20                                  RAIZNER SLANIA, LLP
                                    Jeffrey L. Raizner
21                                  2402 Dunlavy Street
                                    Houston, TX  77006
22
                                    RICHARDSON PATRICK WESTBROOK &
23                                  BRICKMAN LLC
                                    Dan Haltiwanger
24                                  1730 Jackson Street
                                    PO Box 1368
25                                  Barnwell, SC  29812
```

```
 1              FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                           BRIAN LONCAR, PC
                             Brian Loncar
 3                           424 S. Cesar Chavez Blvd
                             Dallas, TX  75201
 4
                             CAPRETZ & ASSOCIATES
 5                           Don K. Ledgard
                             5000 Birch St, Suite 2500
 6                           Newport Beach, ca  92660

 7                           THE LANIER LAW FIRM, PLLC
                             Jason Scott Goldenstein
 8                           126 East 56th Street, 6th floor
                             New York, NY  10022
 9
                             JULIE M. JOCHUM
10                           220 Gause Blvd
                             Slidell, LA  70005
11
                             PAPPAS & HEALY LLC
12                           John J. Pappas
                             221 N. LaSalle St, #3410
13                           Chicago, IL  60601

14                           NEAL RISLEY ELLIOTT, JR.
                             P.O. Box 80136
15                           Baton Rouge, LA  70898

16                           HOUSSIERE DURANT & HOUSSIERE
                             Randal A. Kauffman
17                           1990 Post Oak Blvd Suite 800
                             Houston, TX  77056
18
                             DAVIS & CRUMP, PC
19                           Robert D. Cain, Jr.
                             2601 Fourteenth Street
20                           Gulfpost, MS 39507

21                           LEWIS & CAPLAN
                             Sarah Delahoussaye Call
22                           3631 Canal Street
                             New Orleans, LA  70119
23
                             SKIKOS CRAWFORD SKIKOS&
24                              JOSEPH, LLP
                             Melissa Erin Mielke
25                           One Sansome Street, Suite 2830
                             San Francisco, CA  94104
```

```
1        FOR THE PLAINTIFFS APPEARING BY PHONE:

2
                                    THE OLINDE FIRM, LLC
3                                   Wesley G. Barr
                                    Alfred Olinde, Jr.
4                                   400 Poydras Street
                                    Suite 1980
5                                   New Orleans, LA  70130

6                                   THE RUTH TEAM
                                    Austin Grinder
7                                   842 Ramond Avenue
                                    Suite 200
8                                   Saint Paul, MN  33733-5157

9                                   THE WHITEHEAD LAW FIRM
                                    Anna Katherine Higgins
10                                  3639 Ambassador Caffery
                                    Suite 303
11                                  Lafayette, LA  70503

12                                  ZIMMERMAN REED, PLLP
                                    Jacqueline A. Olson
13                                  Charles Zimmerman
                                    J. Gordon Rudd, Jr.
14                                  1100 IDS Center
                                    80 South Eighth Street
15                                  Minneapolis, MN  55402

16                                  RILEY JACKSON, PC
                                    Jeremiah M. Mosley
17                                  Mary Malea Sellers
                                    3530 Independence Drive
18                                  Birmingham, AL 35209

19                                  TATE LAW GROUP, LLC
                                    Mark Tate
20                                  2 East Bryan Street, Suite 600
                                    Savannah, GA  31328
21
                                    LAW OFFICES OF TRAVIS R. WALKER
22                                  Travis R. Walker
                                    1235 SE Indian Street
23                                  Suite 101
                                    Stuart, FL  34997
24

25
```

```
 1    FOR THE PLAINTIFFS          APPEARING BY PHONE:

 2                                LAW OFFICES OF JAMES S. ROGERS
                                  James Rogers
 3                                Annaliese Abbey
                                  Elizabeth J. McLafferty
 4                                1500 4th Avenue #500
                                  Seattle, WA  98101
 5
                                  LAW OFFICES OF BRIAN TIMOTHY
 6                                MEYERS
                                  Laura Young
 7                                1125 Grand Boulevard, Suite 1610
                                  Kansas City, MO  64106
 8
                                  MURRAY LAW FIRM
 9                                Caroline Whitney Thomas
                                  650 Poydras Street
10                                Suite 2150
                                  New Orleans, LA  70130
11
                                  BROWN & CROUPPEN, PC
12                                Abby Cordray
                                  211 North Broadway, Suite 1600
13                                St. Louis, MO  63102

14                                HAUSFELD LLP
                                  Richard S. Lewis
15                                1700 K St. NW, Suite 650
                                  Washington, DC 20006
16
                                  HURLEY MCKENNA & MERTZ
17                                Brian Holmes
                                  Michael Mertz
18                                Molly Condon
                                  33 North Dearborn Street
19                                Suite 1430
                                  Chicago, IL  60602
20
                                  JOHNSON BECKER, PLLC
21                                Rolf T. Fiebiger
                                  33 South 6th Street
22                                Suite 4530
                                  Minneapolis, MN  55402
23
                                  RILEY & JACKSON, PC
24                                Jeremiah Mosley
                                  Keith Jackson
25                                3530 Independence Drive
                                  Birmingham, AL  35209
```

```
 1      FOR THE PLAINTIFFS          APPEARING BY PHONE:

 2                                  PAGLIALUNGA & HARRIS, PS
                                    Charles Paglialunga
 3                                  1001 4th Avenue, Suite 3200
                                    Seattle, WA  98154
 4
                                    KERSHAW COOK & TALLEY, PC
 5                                  Stuart C. Talley
                                    William A. Kershaw
 6                                  401 Watt Avenue, Suite 1
                                    Sacramento, CA  95864
 7
                                    FITZGERALD LAW GROUP, LLC
 8                                  Kevin M. Fitzgerald
                                    120 Exchange Street, Suite 200
 9                                  Portland, ME  04101

10
        FOR THE DEFENDANTS:         BLACKWELL BURKE P.A.
11                                  Jerry W. Blackwell
                                    Ben Hulse
12                                  431 South Seventh Street
                                    Suite 2500
13                                  Minneapolis, MN  55415

14                                  FAEGRE BAKER DANIELS
                                    Bridget M. Ahmann
15                                  90 South Seventh Street
                                    Suite 2200
16                                  Minneapolis, MN  55402

17

18
        Court Reporter:             MARIA V. WEINBECK, RMR-FCRR
19                                  1005 U.S. Courthouse
                                    300 South Fourth Street
20                                  Minneapolis, Minnesota 55415

21
                 Proceedings recorded by mechanical stenography;
22      transcript produced by computer.

23

24              *     *     *     *     *     *     *

25
```

```
 1                    P R O C E E D I N G S

 2                         (2:37 p.m.)

 3              THE COURT:  Please be seated.  Can the phone

 4    participants hear us?

 5              MAGISTRATE JUDGE NOEL:  Can you hear us on the

 6    phone?  Hello telephone people.  Can the people on the phone

 7    hear us?

 8              THE COURT:  They're probably talking.  It's like

 9    one of those death penalty cases.  They just can't hear us.

10              MAGISTRATE JUDGE NOEL:  Can you hear me now?

11              MR. GORDON:  I heard some background noise a

12    minute ago and then maybe we lost them.

13              MAGISTRATE JUDGE NOEL:  Can you hear me now?

14              UNIDENTIFIED VOICE:  Yes.

15              THE COURT:  All right.  We have the joint proposal

16    on what we ought to talk about today.  Let's just run

17    through that, shall we?

18              The discovery dispute was a big one, and we

19    already talked about that.  So the proposed Plaintiff Fact

20    Sheet, it looks like we do not have issues remaining on that

21    that need to be decided, is that correct?

22              MR. GORDON:  That's correct, Your Honor.  We did

23    reach agreement on the substance of the fact sheet.  And I

24    believe we've reached agreement now on the process for

25    service.
```

1          MS. AHMANN:  Not completely final, but we're

2     getting there.

3          THE COURT:  Okay.  The time, the deadline was

4     August 26th or so, wasn't it?

5          MS. AHMANN:  I can attest that we have been

6     diligently meeting and conferring and going back and forth.

7     We are 99 percent there, but we need to get it finalized as

8     to not the Plaintiff Fact Sheet itself is good.  What we're

9     working on is the process primarily of deficiencies and how

10    those are going to be handled.

11         THE COURT:  Okay.

12         MS. AHMANN:  So we're working on a PTO to enter

13    that.  And we're also doing some background work on exactly

14    how this should be electronically done for secure transfers

15    and that sort of thing.

16         THE COURT:  Okay.

17         MS. AHMANN:  That we won't hold up on.  We can

18    follow up, but we do need to get sign off on deficiencies

19    which we're very, very, close to.  We just didn't have time

20    to finalize it before we came here.

21         MR. GORDON:  So, Your Honor, Ben Gordon for the

22    plaintiffs, pursuant to your agreement last week to give us

23    an extra week, we did reach agreement on the substance of

24    the PFS in all respects, so we're happy to report, but I

25    think the process is just taking a little longer, and we're

1     very close on that.

2              THE COURT:  Do you need our input at all?  Do you

3     need any let's just call it "help" from us?

4              MR. GORDON:  Honestly, Your Honor, I think we're

5     going to get there.  It's just in their court right now, and

6     I think we're very close.

7              MS. AHMANN:  Yes, we're very close.  I don't think

8     we need any help.  It's just a matter of quite frankly of

9     timing.

10             THE COURT:  All right.  Thank you.

11             MS. AHMANN:  Thank you.

12             MR. GORDON:  Thank you, Your Honor.

13             THE COURT:  The new schedule we have agreement on

14     some and not agreement on others.

15             MR. GORDON:  Yes, Your Honor.  Would you like us

16     to address that?

17             THE COURT:  Yes.

18             MR. GORDON:  We halfway -- Ben Gordon for the

19     plaintiffs again -- suspected we would come in here and you

20     would have an order for us already as you did the prior

21     time.

22             But I would agree with you, Your Honor, we do have

23     an agreement on the proposed for an amended pretrial

24     scheduling order.  The primary areas of disagreement from

25     the plaintiff's point of view, Your Honor, are very few.

1        Number one, we, as has been mentioned in the past,

2    we do think a DFS, a Defense Fact Sheet is important, an

3    important component of this, Your Honor, so we added that to

4    our list.  We're flexible somewhat on the date, of course,

5    but in every MDL I've ever worked on, we've had a Defense

6    Fact Sheet.  And however brief that needs to be, we can work

7    on that.  But it is the counterpart to the Plaintiff's Fact

8    Sheet, Your Honor, and we need that in order to prevent the

9    inefficiency of having to have, at this point, 650 and

10   eventually thousands of plaintiffs all having to propound

11   interrogatories about very specific core issues mainly

12   relating to who their clients are.  That is 3M's clients in

13   terms of the machines that are used on individual

14   plaintiffs, because when we get into case specific fact

15   discovery, and we have to make our case and prove our case

16   with respect to the exposure to a particular machine, we

17   need that information, and they have that information.  The

18   easiest way for us to get it is for them to answer a very

19   short Defense Fact Sheet, just like we're doing with the

20   PFS, Your Honor.  So we added that.

21        The next thing we disagree about the most in this

22   proposed amended scheduling order is their proposal to cut

23   off general causation at December 30th.  We've added a date

24   of a very modest extension to January 20th you may see, Your

25   Honor.  That I realize is only three weeks, but it's an

1    important three weeks.  As the Court has heard, and there

2    may be further argument on some of the discovery issues,

3    there's a lot more to be done on general causation.

4            Importantly, 3M has changed the language, I'm not

5    sure exactly why, to say "non case specific causation" for

6    that and moved it up to December 30th.  We would urge the

7    Court to keep it at least to January 20th to give us time to

8    complete the general causation discovery.

9            The next biggest point of contention I think we

10   have is that they would like --

11           THE COURT:  Mr. Gordon, can you explain the

12   significance of those three weeks?  Is it a holiday issue?

13           MR. GORDON:  It's part of that, Your Honor,

14   exactly.  So we think we already are a bit under the gun, if

15   we're being realistic, to get the general causation

16   discovery done by the beginning of the year.  When you add

17   to that the holiday season between say December 20th and

18   January 1st, I think we lose a lot of time there.  So I

19   think most folks are back at work hard by January 2nd, and

20   to try to cut the process off with a trial date of November

21   by the end of this year is just unrealistic, and we'll be

22   coming back seeking more time.

23           I, frankly, think January 20th is pushing it, but

24   we're willing to live with it.  I just want to get as much

25   time into January as we can to finish the process.

1          The next thing I think we have the most heartburn

2     about, Your Honor, in their proposal is the proposal that

3     they get to take the depositions of our experts before they

4     even disclose their experts.  I've never worked on an MDL

5     where that's been the process.  The dates aren't all that

6     different.  Their dates are January 13th.  I would point out

7     that's 14 days after their proposed cut-off for general

8     discovery for our experts' reports, which I think is again

9     pretty tight.  We're going to need a little extra time then.

10    So we've proposed March 1st to produce our expert reports,

11    which still gives us plenty of time to do the rest of the

12    discovery and prepare for trial.

13          We've proposed April 3rd for their expert reports,

14    and then June 2nd for depositions of both sets of experts to

15    be done.  That gives us a 90-day window between March 1st

16    and June 2nd to do that expert process.  Your Honor, they

17    would ask that we produce our expert reports by January

18    13th, and a scant 34 days later they depose our experts

19    before they tell us anything about their experts.  And then

20    they give us their expert reports on March 1st, and we

21    depose their experts by April 1st.

22          I think again that's probably unrealistic when you

23    look at all the schedules of the witnesses and the lawyers

24    involved to try to get all of that done between January and

25    March, so we've proposed March to June and ask that they

1    give us their expert reports before they get to depose our

2    experts.

3

4

5          For the most part, the rest of the order is fairly

6    agreeable.  Most items have been expressly agreed to until

7    you get to number paragraph 20, which is 19 I think on

8    their's and 20 on ours, on the proposal that we discussed in

9    court last time for case specific experts for bellwether

10   cases.

11         We've proposed an approach sort of an answer to

12   Judge Noel's question last time about this issue of do we

13   need to have case specific experts of making it an optional

14   process under which if we believe we need case specific

15   experts to prove our case and we haven't accomplished that

16   already, that we have the option of naming those experts

17   starting in by July 15 of 2017, and then the dates

18   correspond from there.

19         Their verbiage is a little different, and they

20   made it expressly experts for selected bellwether cases

21   beginning that process in May.  And, again, asking for their

22   witnesses' deposition -- their lawyers to be able to take

23   our experts' depositions before they even disclose their

24   case specific rebuttal experts.  Again, we would think to

25   the extent there are case specific experts, they should

1   be -- the plaintiff should disclose their's.  The defense

2   should disclose their's, and then we should take the

3   depositions of both.  Those are the primary areas I wanted

4   to comment on, Your Honor.

5             THE COURT:  All right.  Thank you, Mr. Gordon.

6             Mr. Blackwell?

7             MR. BLACKWELL:  Good afternoon, Your Honors.

8             THE COURT:  Good afternoon.

9             MR. BLACKWELL:  Everyone.  I agree with some of

10  what Mr. Gordon said.  We did agree on most of the dates,

11  but we do have some fairly significant issues of difference.

12            This issue of the Defendant Fact Sheet is one that

13  the Court has already addressed.  This was raised before.

14  It was discussed before.  It was ruled on before.  That

15  there was no need for the plaintiffs to be requiring a

16  Defendant Fact Sheet from the defendants when they can

17  simply ask what they want to ask in discovery.  And as Your

18  Honors have seen already, they certainly have no problems

19  asking for a lot in discovery.  And they can ask that, could

20  have asked that as well.

21            As to wanting to find out from the defendants

22  about the particular machine that the plaintiff was using,

23  that's part of the Plaintiff's Fact Sheet.  It's their case.

24  They're the ones who are claiming that there's a machine we

25  made that's causing the plaintiff to have a surgical site

1    infection.  There is no need to ask us that in Defendant's

2    Fact Sheet, why would 3M know what particular machine or

3    unit that the plaintiff was using at a particular hospital?

4              But the point is, and I think this particular

5    issue previously was argued in fact to Your Honor, Judge

6    Ericksen, and the response to the plaintiffs, well, you can

7    ask what you want in discovery.  There's not a need for a

8    Defendant Fact Sheet for things such as information on the

9    particular machine the plaintiff was using when that is the

10   plaintiff's burden, since there's got to mean something that

11   they start a lawsuit claiming that you made a machine that

12   causes surgical site infection in my client for the

13   plaintiffs.  And that ought to presuppose a couple of things

14   that in fact you've got some evidence as to the fact they

15   were using a particular machine, and you can identify what

16   it was.  And you have some good faith basis based upon

17   competent expert testimony for making that assertion in the

18   first place just to satisfy requirements under Rule 11.  And

19   that factors into some of our other basic areas of

20   disagreement.

21             With respect to the initial expert reports where

22   the plaintiffs would be in favor of some scenario where we

23   either are -- we're disclosing experts simultaneously.  And

24   I would submit, and I can't speak to Mr. Gordon's

25   experience.  I mean he does quite a lot as a source for what

1     the Court should do based on his experience in MDLs.

2               I've got my own, and I've been in many a case

3     where in order for the defendant to know what is the case

4     the defendant is to meet, the defendant is entitled to know

5     who is going to opine as to the plaintiff's expert, what he

6     or she is going to say in writing and both in a deposition,

7     and then you can make an informed decision about what

8     experts you want to then name as a defendant, and what

9     opinions they need to espouse.  And so all that this

10    presupposes is a process where the plaintiffs first --

11              MAGISTRATE JUDGE NOEL:  Can I ask you a question,

12    Mr. Blackwell?  Can you give me some examples where you've

13    gone through, where you actually required depositions before

14    the defendant depositions of the plaintiff's expert before

15    the defendants even required to identify an expert?

16              MR. BLACKWELL:  Yeah, I have, Judge Noel, and

17    actually in federal courts in many parts of the country

18    that's been the case where it is viewed the plaintiffs have

19    the burden of proving their claim with respect to causation.

20    And in some ways, it seems to save the Court time that

21    before the defendant discloses, there is a fulsome

22    understanding of what the plaintiff's assertion in fact is,

23    and as opposed to having to put up an expert who is sort of

24    shooting to some extent in the dark.

25              As to what is the basis for the plaintiff's claim

1    then, we couldn't be more in the dark at this point as to

2    what their basis is for claiming that the Bair Hugger causes

3    surgical site infections.  We didn't get a good sense of it

4    from science day other than looking at computational flow

5    dynamics, those animations that the plaintiffs brought in

6    here, and everything else we've asked them about sort of

7    what was your basis in making this claim in the first place,

8    what you should have had when you started the lawsuit.

9    We've been told every time this is simply premature.

10                THE COURT:  Could you just give me a second?

11                (Off the record Court discussion.)

12                (In open court.)

13                MAGISTRATE JUDGE NOEL:  All right.  Let me just

14   ask one other question on that expert issue.  So my

15   understanding of the current pretrial order number 4 is

16   initial expert reports and disclosures are due on December

17   1st of 2016.  And that by "initial expert," I understand

18   that to be any expert witness that a party is going to call

19   to testify about an issue as to which that party has the

20   burden of proof.  So under these circumstances, nearly all

21   of the initial experts presumably would be on the

22   plaintiff's side.  Although, I suppose if there's some

23   affirmative defense you pled or something that you, the

24   defendant, has the burden of proof on some issue and wants

25   to call an initial expert, you would have to meet that.  But

1    the rebuttal experts then would be experts who are going to

2    be testifying in rebuttal to whatever initial experts have

3    been disclosed; is that your understanding?

4           MR. BLACKWELL:  That is my understanding, Your

5    Honor.  That is.  And, again, everything I said was sort of

6    premised on the idea that we would first be able to discover

7    what opinions the plaintiff's experts are affirmatives

8    espousing and to understand what they are and what the basis

9    for those opinions are and have an opportunity to explore

10   them.

11          THE COURT:  You mean to take to their --

12          MR. BLACKWELL:  Take the depositions.

13          MAGISTRATE JUDGE NOEL:  I guess my only thought on

14   that is ever since I was a lawyer and sort of followed the

15   adage about the best defense being a good defense, so that

16   defendants, even though they responding to things, they are

17   working right away from the beginning and are preparing

18   their case and, presumably, are retaining their experts and

19   sort of getting geared up.  And so I don't, I guess it

20   surprises me, which was more of my question, I've never seen

21   a case where a defendant has actually been given the

22   opportunity to depose the plaintiff's experts before they

23   even have to identify their own experts, because my sense is

24   good defense lawyers probably already have their experts on

25   retainer or at least identified for themselves so that

1    they're ready to go when the time comes.  So --

2              MR. BLACKWELL:  And we obviously have them, and I

3    understand, Your Honor, that I'm swimming upstream on this

4    one, based on Your Honor's own experience, I understand

5    that.  I have many cases where I have been allowed to do it,

6    and we, obviously, you've seen from science day have in mind

7    certain experts and what they may say.

8              MAGISTRATE JUDGE NOEL:  And I understand that

9    you're deposing a bunch of folks from around the world.

10             MR. BLACKWELL:  Yes.

11             MAGISTRATE JUDGE NOEL:  Who have written articles

12   that plaintiffs have been relying on, so you'll have a

13   better sense after that, I would assume, of what their case

14   is based upon.

15             MR. BLACKWELL:  Except they haven't said they

16   necessarily are relying on those motions.  Those are

17   depositions that we have noticed, Your Honor.

18             MAGISTRATE JUDGE NOEL:  Right, that you've

19   identified those folks to depose because they've written

20   articles, right, on this topic?

21             MR. BLACKWELL:  Right, but still, again, there is

22   an over-arching kind of issue and question in the case as

23   to, you know, what the good reliable science says that this

24   forced air warming device causes surgical site infections,

25   and whether there's a reliable scientific methodology for

1    ruling out the other causes.  And what their experts are

2    going to say in that regard and what the basis for those

3    are, we just don't know.  Completely in the dark.  But

4    you've heard the position on that.

5              THE COURT:  This is maybe, well, anyway, I'm not

6    going to preface it.  Do the rules allow you to reserve time

7    if you were desperate to take a deposition after you got the

8    -- could you reserve some hours of your deposition time?

9              MR. BLACKWELL:  Well, there isn't a rule that

10   precludes it.  It would probably be a matter that we'll have

11   to take up with Your Honors to permit it.

12             THE COURT:  Well, if it wasn't going to make it go

13   over your maximum number of hours.  I mean would it be

14   impossible for you to do it if you decided that that was

15   necessary?

16             MR. BLACKWELL:  It would not be impossible, no,

17   Your Honor.

18             MAGISTRATE JUDGE NOEL:  I'm not sure if I'm

19   understanding the Court's question correctly.  Could you, I

20   think what Judge Ericksen is asking is could you notice a

21   deposition of a plaintiff's expert before you disclose your

22   experts?  Ask a certain number hours of questions but not

23   use your full seven, and then come back and finish after

24   you've reviewed all the other reports in the case?

25             MR. BLACKWELL:  Yes, Your Honor, certainly that

1     would be agreeable to us, and I'm also certain that that

2     would be an issue that the plaintiff's would raise to the

3     Court.  Their position would be you're one and done, and

4     we'd have to have an argument around it.  I'm certain of it,

5     you know, but that would be one approach.

6              I mean it will all come out in the wash.

7     Ultimately, in any event, we'll get at it.  But the idea

8     here was that if they're going to be Daubert motions,

9     ultimately, on questions of, first, general causation, which

10    is non case specific.  It's across the board.  Do you have

11    any good science being able to prove that this device causes

12    surgical site infections?  And can you rule out through any

13    reliable methodology other known causes?  It's a general

14    question.  And we know that that is initially the biggest

15    question in the case.  It has been from the beginning, and

16    we went through science day and still is, so we wanted to

17    make sure there's fulsome discovery and an opportunity to

18    explore all of the opinions such that we have meaningful

19    Daubert motions and hearings.  So that was the idea there.

20             But our proposed Daubert date is May 1 of 2017.

21    They proposed June 15th, but we figured by this time, we've

22    given the discovery that would have taken place in the case,

23    they had the burden that the plaintiffs should have had to

24    have proper competent expert testimony before they even

25    filed the lawsuit.  That May 1st should be plenty of time

1     for them to have to come forward to be able to show the

2     Court what they should have had before they filed the

3     lawsuit in the first place.

4            Now, we have some disagreement over the case

5     specific bellwhether expert issues.  And this was a little

6     confusing the last time.  And, Your Honors, I must confess

7     to not completely understanding what the plaintiff's

8     position is because even if they were able to surmount the

9     hurdle relating to general causation, that there is some

10    competent, sufficiently competent science to let them get

11    past the Daubert hurdle in a general sense.

12           There still is the very large question as to

13    whether or not they can prove that the Bair Hugger was the

14    cause in the specific case.  And that's a whole different

15    panoply of consideration that will be plaintiff specific,

16    and you still have the same questions as to whether any

17    expert who opines that in this specific case it was the Bair

18    Hugger has an opinion that's based upon competent and

19    reliable expert facts, opinion.  And that will have to get

20    ferreted out in each individual case because each individual

21    defendant is different, with respect to the case specific

22    opinions.

23           So what we set out here for the experts and

24    selected bellwether cases is to provide some avenue for the

25    Court to be able to preview the expert opinions, not just

1    preview them but to assess them, on a case specific basis.

2    And are these competent and reliable expert opinions that

3    the Bair Hugger was in fact the cause of a particular

4    plaintiff surgical site infection in light of all of the

5    other potential risk factors that relate to a specific

6    plaintiff.  And so we set that out.  I think we're entitled

7    to challenge those specific expert opinions because they're

8    different from general opinions.

9         MAGISTRATE JUDGE NOEL:  Just to be clear though,

10   as I understand the current pretrial order, number four,

11   that's not a line item in the current schedule; is that

12   correct?

13        MR. BLACKWELL:  That is correct, Your Honor.  It

14   is correct, and it was initially raised the last time we

15   were here because it wasn't there.  And in any event, if we

16   ultimately felt that the plaintiff's experts were giving

17   plaintiff specific opinions that weren't real grounded or

18   founded and raised questions that are separate and different

19   from general causation questions, we would be back before

20   Your Honors in any event in that regard to raise those

21   issues just with respect to Your Honors gatekeeping function

22   if the experts' opinions need to be challenged.

23        And so the rest of this you'll see here we set up

24   a hearing data, a proposed one of September 12 of 2017, for

25   Daubert motions on any case specific experts with respect to

1    the bellwether at the very end.  So we proposed a date for

2    those case specific expert assessments.

3          So that's how we're seeing the schedule.  And I

4    think a fundamental divide is that we are working, I think,

5    pretty feverishly to get the question, the general causation

6    question up to the decision line as soon as possible.  And

7    our view is that largely they should have had most of this

8    assembled before they made the claim in the first place, and

9    so that to need, um, kind of well into 2017, or answer all

10   of our discovery requests about the basis for their

11   assertions is simply premature when they started a lawsuit

12   and made the assertions a problem.  And so that's the

13   fundamental thing.  And then fundamentally making sure that

14   we've got -- we attempted to have something built into the

15   schedule where we get to also challenge case specific expert

16   opinions to the extent they're different from the general

17   causation opinions.  Thank you, Your Honor.

18              THE COURT:  Thank you.

19              MR. GORDON:  Your Honors, may I respond briefly?

20              THE COURT:  Go ahead.

21              MR. GORDON:  Thank you.  I'll try to be very

22   succinct.  Ben Gordon again for the plaintiffs.

23          So four main areas I would like to respond to, if

24   I could.  First, as to the timing issue, I did want to add

25   to Your Honors inquiry earlier concerning the holiday issue,

1    which I think is one of the issues that it has taken us a

2    full seven months up to this point to get the level of

3    production, and I've realized we've had some squabbles along

4    the way, but we're seven months into it to get where we are

5    at this point, and I just think that trying to get finished

6    by the end of the year is going to be a tall order, and I

7    want to make sure we have as much time as we can to complete

8    that part of the case.  I think getting into January

9    hopefully will allow us to do that.

10          Number two, on this DFS issue, I probably didn't,

11   I wasn't as clear as I could have been before.  I'm not

12   talking about just meeting our burden of proof to show the

13   Court that a particular plaintiff has been impacted by a

14   particular machine.  We have to meet that burden, and we are

15   doing that through the medical records to the extent that's

16   possible.  Most of the time it is.

17          But in terms of the relationships that the

18   defendant has with the suppliers of these machines, many

19   times the hospitals don't even own the machines, but they

20   know who do.  3M will lease the machines to them or give the

21   machines to them, and we don't have that information from

22   the third parties.  Now, yes, we can do third party

23   discovery, and we're doing it.  We think it would be like it

24   is in most MDLs much more efficient to have 3M who has that

25   information, it's not burdensome, supply that information to

1    us in the form of a very brief and easy to complete Defense

2    Fact Sheet.

3              And I will tell you for what it's worth, Your

4    Honors, that Judge Davis has done that in an MDL here in

5    this district.  Judge Frank has done it in Guidant and

6    Stryker.  Judge Rosenbaum did it in Medtronic.  Judge

7    Tunheim has done it in Levaquin and recently in the

8    Fluoroquinolone case.  In each case, these judges have

9    ordered the defendants to produce a Defense Fact Sheet.

10             How burdensome it has to be and what's in it, we

11   can talk about it.  We can work that out, but it doesn't

12   have to be an act of Congress to get that done.  It can be a

13   very short one or two page form.

14             MAGISTRATE JUDGE NOEL:  Mr. Blackwell correct that

15   the Defendant's Fact Sheet was not a line item in the

16   original pretrial order number 4?

17             MR. GORDON:  Yes, Your Honor, Judge Ericksen shot

18   us down on that.  He's correct on that.

19             THE COURT:  So you still have the ability to ask

20   for that in discovery as we discussed a while ago.

21             MR. GORDON:  Yes, Your Honor.  We can ask, but it

22   will be serial discovery for each plaintiff case

23   specifically in their case unless you're suggesting, Your

24   Honor, that we can ask you for a Defense Fact Sheet,

25   separate and apart from the -- I understand you said we can

1    propound individual interrogatories or a request to produce

2    in each and every plaintiff's case as we're doing.  And to

3    the extent that the MDL, the purpose is for the MDL to be

4    efficient and streamlined, we're trying to use the DFS for

5    that reason, just like we're doing the PFS, Your Honor.

6    Same rationale as the Plaintiff's Fact Sheet to try to

7    minimize the burden on all the parties and the Court.

8              Number three, with respect to the issue of the

9    timing of the depositions, I don't want to beat a dead horse

10   on that, Your Honors, but they're going to have our expert

11   reports.  So for Mr. Blackwell to stand up here and say

12   they're not going to say what their experts are going to say

13   I just don't think is fair.  They're going to have very

14   thorough going Rule 26 reports.  They're going to know what

15   those witnesses will say.  They were here at science day.

16   They have the experts.

17             Mr. Blackwell stood up here at science day and

18   made a big deal of the fact that he believes our entire case

19   is predicated on all of these studies for whom the authors

20   are being deposed very soon.  So they know what our experts

21   are going to say, and they will certainly know by the time

22   we give the Rule 26 reports.

23             Finally, Your Honors, on this issue relating to

24   timing of the fact specific discovery, I think Mr. Blackwell

25   is conflating a couple of issues, and it's not something we

1    briefed for the Court yet, but I think we're going to have

2    to, he's right, at the Daubert stage.

3          But the idea that we have to as plaintiffs prove

4    that in each and every case the Bair Hugger was the sole

5    cause or to the exclusion of each and every individual cause

6    I think he said is ludicrous.  That's not the law, Your

7    Honors.  It's not the law in this district.  I don't think

8    it's the laws in any district that I'm aware of.

9          The law says that we have to prove that the Bair

10   Hugger was a substantial contributing factor in the

11   development of their disease.  And it's my belief at this

12   time that with our general experts and the evidence that

13   we're going to proffer to the Court before we get to this

14   final bellwether stage after the bellwethers are selected,

15   we're going to have that proof, and we're going to have to

16   produce that proffer before the Court.  And we will win

17   those Daubert motions based on the general causation experts

18   that we have.

19         That said, to have the ability to come in in each

20   case and produce additional experts, we embraced it because

21   Mr. Blackwell actually put it in his brief last time.  The

22   reason it wasn't before the Court until then is because Your

23   Honors didn't put it in the original pretrial scheduling

24   order, and we think that's appropriate under the law.  We

25   think we can prove our case without it, but if we're going

 1    to have the opportunity, and the defense wants the

 2    opportunity at our election to produce initial experts to

 3    say we have case specific additional experts to prove that

 4    each and every case was specifically related to the machine,

 5    then we'll do that.  But we don't think it's our burden to

 6    do that.  We don't think we have to do it under the law in

 7    this jurisdiction.

 8            As to timing, the final thing I'll say is the

 9    reason we put June in for the timing in terms of the Daubert

10    reports and all is because if the Court accepts our sort of

11    expert discovery window which runs from roughly March to

12    June, that will put the expert issue, the Daubert issue

13    right in the middle of that window, and we believe the Court

14    would rather have that discovery complete and the parties in

15    order to have the Daubert motions heard then after that, so

16    we put June 15th.  Thank you.

17            MAGISTRATE JUDGE NOEL:  Thank you.

18            MR. BLACKWELL:  Could I have a minute to respond,

19    Your Honor?

20            THE COURT:  Just a second.  June 15th was the

21    original date.  That's in the --

22            MR. GORDON:  I don't have the original order, Your

23    Honor.  It may be.  We did submit a red line.  You're right,

24    Your Honor.  We left that unchanged.

25            THE COURT:  Mr. Blackwell.

1          MR. BLACKWELL:  Your Honor, just briefly, in the

2     event I need to respond to this DFS issue further or at all,

3     I still don't quite get it.  I mean to the extent they're

4     saying that they need discovery from 3M as to which

5     hospitals where the Bair Hugger unit may have been sold, the

6     plaintiff's lawsuit started claiming that the plaintiff used

7     a 3M Bair Hugger in a specific hospital or facility.  That's

8     already in their Plaintiff's Fact Sheets.

9          So I don't know what exactly they're looking for

10    from us that they don't presumably already have in that

11    regard.  It's how they're claims begin claiming that there

12    was a Bair Hugger used in a specific hospital and it caused

13    injury.  And so it's still not clear to me what it is they

14    would be looking for in a DFS.

15          And we will be back before the Court with respect

16    to the discovery.  And I think we have something to submit

17    to the Court tomorrow on our outstanding discovery issues

18    and the chart, and I'll just defer that to bring up those

19    issues then and there, but we certainly don't want to have

20    to wait until we get the plaintiff's expert reports to

21    understand completely what the basis is for the claims that

22    they have made, meaning that we get no other discovery

23    before then about what it's about.  And science day wasn't

24    that.  They didn't discuss really one scientific study on

25    science day.

 1          So, and, Your Honor, I'll defer then discussions

 2    also about what causation is and how it will be defined to

 3    an appropriate point in the case, but substantial

 4    contributing factor should raise eyebrows already.  I mean

 5    this isn't akin to a dose dependent disease.  I mean so

 6    either the Bair Hugger introduced bacteria that caused the

 7    infection or it did not.  And it can't have done it just a

 8    little bit, and so either it did or it didn't.

 9          So we're going to have a real argument over that

10    in terms of what causation means, but I'll defer that to the

11    appropriate time.

12          THE COURT:  All right.  Well, we will issue an

13    order resolving these various positions with respect to the

14    pretrial order.  And let's see what else we have to decide.

15          Amended master complaint and answer.

16          Okay.  The next status conference is October 13th,

17    right?  And I have that as being at 9:30 in the morning?

18          MR. GORDON:  Thanks, Your Honor.  I think we

19    requested that, and we appreciate that, Your Honor.

20          THE COURT:  Now, going forward from November on,

21    will you similarly not like 2:00?  You will similarly not

22    like 2:00.  What's the best --

23          MR. GORDON:  Yes, Your Honor.  I think we had

24    mentioned last time we were hopeful for a lot of the parties

25    who or the lawyers who fly in and fly out that if we can

1   continue to do them in the morning after October, it doesn't

2   have to be as early as 9:30, but the morning is better if

3   possible.

4            MR. BLACKWELL:  And we are simply models of

5   cooperation and flexibility.

6            THE COURT:  All right.  We'll take a look at our

7   schedule.  I don't think that's going to be a problem.

8            MR. GORDON:  Thank you, Your Honor.

9            THE COURT:  Anything else?

10           (Off the record Court discussion.)

11           (In open court.)

12           MAGISTRATE JUDGE NOEL:  Okay.  So with regard to

13   the argument we had earlier regarding the status of the

14   custodians, Mr. Hulse, we're going to ask you to submit to

15   us and give to the plaintiff the list of the 25 custodians

16   you interviewed that you describe in your memo and identify

17   them by name, title, and brief job description.  And if you

18   could get us that say by close of business tomorrow, I can

19   enter an order by Monday as to what we're going do on that

20   issue.

21           MR. HULSE:  Thank you, Your Honor.  I would have

22   had it sooner, but it's something I just need to pull

23   together in a form the Court can use.

24           MAGISTRATE JUDGE NOEL:  Okay.  That's all I have.

25           THE COURT:  That's it.  All right.  We're in

 1    recess.

 2              MS. ZIMMERMAN:  Your Honor, if we could, we have,

 3    I think, one last issue on this.

 4              THE COURT:  All right.  Please be seated.  Court

 5    is in recess.  In out of recess.  We're reconvened.

 6              MS. ZIMMERMAN:  Thank you, Your Honor.  With

 7    respect to, I think, it's the last item on the agenda.  As I

 8    think the Court is aware, we have some depositions starting

 9    in the UK next week.  I think that we're working together

10    with respect to some confidentiality issues and the use of

11    potential documents with some of these witnesses, but it's

12    possible we may need the Court's involvement even in advance

13    of that, and I think the first deposition is the 15th.

14    We're working on it this morning yet.

15              In addition, we had said or we had at the last

16    status conference requested potential insight from the Court

17    on how we might bring potential disputes.  Right now the

18    depositions in the UK are set to go forward on the 15th.

19    There are two back-to-back depositions on the 17th in London

20    and then one on the 22nd, and I don't know what the Court's

21    instruction or preference might be about how to approach the

22    Court for any issues.

23              MAGISTRATE JUDGE NOEL:  Issues that arise during

24    the course of the deposition itself?

25              MS. ZIMMERMAN:  Yes, Your Honor.

1          THE COURT:  What do you propose?

2          MS. ZIMMERMAN:  Well, that's a good question.  The

3    time zone makes it a little bit difficult.  I know that

4    there is at least one deposition.  I think two that are

5    happening in the afternoon in the UK, so perhaps the time

6    zones may not be as significant of an issue.  And hopefully

7    this doesn't become an issue, but in the event that we need

8    to seek court intervention on something, we'd like to --

9          THE COURT:  What are the dates again of your

10   depositions?

11         MS. ZIMMERMAN:  September 15th.  There are two

12   depositions then on Saturday the 17th, and then another

13   deposition on the 22nd.

14         THE COURT:  And the time zone issue is six hours

15   between here and the UK?

16         MS. ZIMMERMAN:  I believe that's correct, Your

17   Honor.  Perhaps we could submit a list of the depositions,

18   the dates, and the times, and inquire by e-mail how the

19   Court would like to have it handled.

20         THE COURT:  It would be seven hours by then after

21   daylight savings time.  I'm not available those times.  I'll

22   be in Europe.  It's not a --

23         MAGISTRATE JUDGE NOEL:  You can stop in.

24         MS. ZIMMERMAN:  You can come watch.

25         MAGISTRATE JUDGE NOEL:  I'm available by

1     telephone.  I can't -- your last suggestion is the best,

2     submit us an e-mail of exactly when these depositions are

3     scheduled, and in the e-mail, tell us what time it is in

4     Minnesota.  And over that weekend, what time it is on the

5     west coast.

6               MS. ZIMMERMAN:  All right, I will do that.  And

7     lastly, Your Honors, I think that the plaintiffs have

8     offered to update the Court on the status of depositions for

9     current and former employees.  I believe that we now have an

10    agreement that November 2nd and November 4th we will go

11    forward with the depositions of Mr. Hanson and Mr. Rock.

12    That's all.  Thank you.

13              THE COURT:  For your depositions on the 15th,

14    17th, and 22nd, what time on the 15th?

15              MS. ZIMMERMAN:  2:30 in the afternoon in London I

16    believe.

17              THE COURT:  What time is it going to be here?

18              MS. ZIMMERMAN:  About 8:00 in the morning.  I'm

19    testing Bridget's memory as well.

20              MS. AHMANN:  It starts at 9:00 in the morning.

21    It's six hours difference.  It starts at 3:00.  So about

22    9:00 start.

23              THE COURT:  Okay.  Well, I'll be available that

24    morning.  But what I was going to ask -- if I have

25    communication, it will only be Internet-type communication,

1    so maybe there's a phone on the Internet in an emergency,

2    but it's going to be tough.

3              MS. ZIMMERMAN:  We certainly hope to avoid that.

4              THE COURT:  Okay.

5              MS. ZIMMERMAN:  Thank you.

6              MR. GORDON:  Your Honor, may I be heard briefly

7    before we go back to recess?  Very briefly, I promise.

8              I don't want to continue to bring up something

9    that I know the Court has already heard but my capable

10   liaison counsel, Dave Szerlag, who deals with all these

11   issues on the individual plaintiffs who file cases in these

12   MDLs made a couple of very good points that I did not make

13   with respect to the DFS, the Defense Fact Sheet.  And, you

14   know, the information we get from the hospital doesn't

15   contain the implant or the machine identification

16   information frequently.  We don't know empirically the model

17   number and the other indicia of authenticity of the machine.

18   Many times the machines are taken out.  They're repurposed

19   by 3M.  They're changed up.  A lot of time we don't have

20   that information.  And to get it, Your Honor, we're going to

21   have to take dozens, possibly hundreds of third party

22   depositions because the hospitals frequently don't know.

23   They punt this to 3M or whoever services the machine.

24              And so, again, under the heading of efficiency,

25   and if Your Honors wanted, I could submit to the defense and

1       to you a very short sample of what we're talking about, a

2       two or three page.  We're not talking about a 25-page PFS

3       like we have, but maybe a two or three page Defense Fact

4       Sheet, so you could see how sort of benign and within their

5       kin the information is.  It's not a burden on them, and we

6       think it's done in every MDL, and we appreciate your

7       considering it.

8                    THE COURT:  Mr. Blackwell?

9                    MR. BLACKWELL:  Your Honor, I feel like this issue

10      is from a Boris Karloff movie, and it's just every time you

11      think it's down, it rises up again and walks back up to the

12      podium and starts talking as it just did.

13                   I'm not, they can see in the medical records which

14      plaintiff was claiming to be using a Bair Hugger device.

15      Their claims are general.  The Bair Hugger causes this.  It

16      doesn't depend on serial numbers, any of that.  None at all.

17      They made this up.  And as far as I know, what this is

18      really leading to is for them to simply want 3M to disclose,

19      you know, where they put Bair Hugger units across the entire

20      United States of America for purposes of perhaps finding

21      additional claimants.

22                   MR. GORDON:  That's outrageous.  I object to that.

23      That's outrageous.

24                   MR. BLACKWELL:  I don't know.  Otherwise, I'm

25      saying I don't know what this is for.  But, Your Honors,

1    this has been addressed and readdressed I think to the end.

2    And, Judge Ericksen, I think you've been clear that to the

3    extent they need information, they can get it through

4    discovery, if they need it in discovery.  And they have no

5    problems asking for what they need.  They've asked for a lot

6    already.

7              THE COURT:  All right.  Does anybody have anything

8    else?

9              MR. HULSE:  I have something different, Your

10   Honors.

11             Thank you.  So we have a deadline to submit a

12   chart of up to four issues to Judge Noel tomorrow.  We've

13   provided our issues to the plaintiffs.  And as of the time

14   that I walked over here, we didn't have a list of issues and

15   don't know what the plaintiff's issues would we.

16   Respectfully, our view is that's a bit of a short

17   turnaround, particularly given that we need to vet

18   internally and with our client.  And so all I wanted to

19   suggest, Your Honor, is assume that we get their issues

20   today, that we extend the deadline for submitting the chart

21   to Your Honor to Monday.  One additional day.  We just think

22   that this is likely too short a turnaround on that.

23             MAGISTRATE JUDGE NOEL:  Who is addressing that on

24   the plaintiff's side?  Ms. Zimmerman?

25             MS. ZIMMERMAN:  Your Honor, if they're asking for

1    an additional day, we got their chart this morning.  We're

2    happy to give them an additional day to Monday.

3              MR. HULSE:  The premise of it being that we get

4    their chart today though.  We need to have more than just

5    getting it the morning of.

6              MS. ZIMMERMAN:  We'll work together on that.

7              MR. HULSE:  Okay.  Can we get --

8              MAGISTRATE JUDGE NOEL:  You can get a date.

9    Tomorrow is Friday, so you want until Monday?

10             MR. HULSE:  Can we get direction from the Court

11   that we'll have their chart by tomorrow morning first thing?

12             MAGISTRATE JUDGE NOEL:  What's the status of the

13   plaintiffs?

14             MS. ZIMMERMAN:  We were receiving followup items

15   to prioritize which of the two to four outstanding issues we

16   were going to put onto the chart, so we're happy to get that

17   to the defendants tomorrow.

18             MR. HULSE:  Can we do it by 10 a.m. tomorrow

19   morning?  I mean we were supposed to submit it tomorrow, and

20   it looks like we weren't even going to get this until --

21             MAGISTRATE JUDGE NOEL:  Judge Ericksen has been

22   telling me that she's fascinated to see some of these

23   discovery disputes that district judges don't often get to

24   see.  We're on a level of minutia that even I haven't seen.

25             THE COURT:  Really it's not like this all the

```
 1    time?

 2                 MR. HULSE:  Your Honor, we just need to know what

 3    their issues are and have time to prepare our response and

 4    vet it with our client and so forth.

 5                 THE COURT:  Why don't you make them have a fight

 6    now?

 7                 MS. ZIMMERMAN:  We'll get it to them by 10:00

 8    tomorrow morning.

 9                 MAGISTRATE JUDGE NOEL:  Call it 10:00, and we'll

10    look for your joint chart on Monday to me.

11                 MR. HULSE:  Very good.  Thank you, Your Honor.

12                 MAGISTRATE JUDGE NOEL:  Okay, thank you.  Now,

13    we're in recess.

14                      (Court adjourned at 3:23 p.m.)

15

16                          *      *      *

17

18          I, Maria V. Weinbeck, certify that the foregoing is

19    a correct transcript from the record of proceedings in the

20    above-entitled matter.

21

22                Certified by:  s/ Maria V. Weinbeck

23                               Maria V. Weinbeck, RMR-FCRR

24

25
```