# Exhibit
# G-1

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Minnesota ▾

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   MDL No. 2666 |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                     Scott Augustine, M.D.
            6581 City West Parkway, Eden Prairie, MN 55344
_____
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A-H.

| Place:  Blackwell Burke P.A., 431 South 7th Street, Suite 2500, Minneapolis, MN 55415 | Date and Time:                   06/21/2016 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/07/2016

CLERK OF COURT

_____          OR          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   3M Company and Arizant Healthcare                         , who issues or requests this subpoena, are:
Benjamin Hulse, Blackwell Burke P.A., 431 South 7th St., Suite 2500, Minneapolis, MN 55415, bhulse@blackwellburke.com, (612) 343-3200

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. MDL No. 2666

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____   on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2) *For Other Discovery.*** A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2) *Command to Produce Materials or Permit Inspection.***
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3) *Quashing or Modifying a Subpoena.***
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2) *Claiming Privilege or Protection.***
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

# DEFINITIONS

1. Dr. Scott Augustine means You and Your employees, agents, officers, directors, representatives, consultants, affiliates, partners, servants, accountants, attorneys and/or any person or entity authorized to act on Your behalf, including any person or entity who served in any such capacity at any time; and means Hot Dog USA, LLC, Hot Dog International, LLC, Augustine Temperature Management LLC, Augustine Team LLC, Augustine BioMedical and Design, LLC, Augustine Biomedical LLC, Stop Surgical Infections, StopSurgicalInfections.org, Orthopedic Infection Advisory and OrthopedicInfectionAdvisory.org, and includes without limitation their predecessor companies, parent companies, subsidiary companies, joint venture partners, and/or affiliate companies, and each of their owners, members, managing members, divisions, employees, agents, officers, directors, representatives, consultants, affiliates, partners, servants, accountants, attorneys and/or any person or entity authorized to act on their behalf, including any person or entity who served in any such capacity at any time.

2. "You" and "Your" refers to and means "Dr. Scott Augustine" as defined in these Definitions.

3. "Person" means any and all natural persons or any business, legal or government entity/entities or association(s) including, without limiting the generality of the foregoing, all individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, municipal corporations, government agencies and any unit of government.

4. "3M Company" means and refers to 3M Company and each of its divisions, employees, agents, officers, directors, representatives, consultants, affiliates, partners, servants, accountants, attorneys and/or anyone authorized to act on their behalf, including any person who served in any such capacity at any time.

5. "Arizant Healthcare" means and refers to Arizant Healthcare Inc. and Arizant, Inc., and any employees, agents, officers, directors, representatives, consultants, affiliates, partners, servants, accountants, attorneys and/or any person or entity authorized to act on their behalf, including any person or entity who served in any such capacity at any time.

6. "Defendants" means "3M Company" and/or "Arizant Healthcare" as defined in these Definitions.

7. "Plaintiff" means every person who has filed a personal injury and/or any other lawsuit, administrative action or other action against 3M Company and/or Arizant Healthcare arising out of or relating to the Bair Hugger warming system, and includes but is not limited to any person or entity authorized to act on the Plaintiff's behalf, such as his/her/their attorney(s). A list of known Plaintiffs as of the date of this subpoena is attached hereto as Exhibit B. Your response should include, but not be limited to documents relating to any Plaintiff identified in Exhibit B.

8.  "Plaintiff's attorney" means any attorney and/or law firm who is representing or has previously represented any "Plaintiff" who has filed a personal injury and/or any other lawsuit or other action against 3M Company and/or Arizant Healthcare arising out of or relating to the Bair Hugger warming system. A list of Plaintiff's law firms who have filed personal injury actions against Defendants relating to the Bair Hugger warming system as of the date of this subpoena is attached hereto as Exhibit C. Your response should include, but not be limited to documents relating to Plaintiff's law firms identified in Exhibit C.

9.  "Plaintiff's expert" means every expert who has been consulted and/or retained by any "Plaintiff" or "Plaintiff's attorney," (as defined in these Requests) whether or not the expert has been disclosed and/or will testify at trial. A list of disclosed Plaintiff's experts as of the date of this subpoena is attached hereto as Exhibit D. Your response should include, but not be limited to documents relating to Plaintiff's experts identified in Exhibit D.

10. "Communication" means, and includes but is not limited to, "correspondence" (as defined in these Requests), and all direct or indirect transmissions of information by any means, written, oral or otherwise.

11. "Correspondence" means, and includes but is not limited to, all letters, notes, e-mails, blogs, text messages, Facebook messages, messages, social media posts, tweets, twitter content, memoranda, press releases or other written, typewritten, printed or reproduced material.

12. "Document" as used in these Requests means and includes, but is not limited to, all written, printed, typed, photostatic, photographed, recorded, telecopied, photocopied, electronic or graphic materials/matter of any kind, however produced or reproduced, whether sent, received or neither, and whether comprised of letters, words, numbers, pictures, sounds or symbols or any combination thereof. Without limiting the generality of the foregoing, the terms "Document" includes without limitation all copies and drafts of any book, pamphlet, binder, periodical, study, article, letter, email, text message, blog, post, memorandum, telegram, telex, report, envelope, intraoffice or interoffice communication, corporate record, record, analysis, account, film, video, handwritten or other note, working paper, transcription, draft, account, ledger, chart, paper, survey, index, tape, disc, photograph, picture, computer printout, computer program and/or data file, microfilm, microfiche, correspondence, mailer, ledger card, business card, diary, calendar, address and/or telephone record, drawing, chart, press release, manuscript, manual, script and/or other data compilation. The term "other data compilation" includes information stored in, or accessible through, computer or other information retrieval systems, whether or not in hard copy form, together with instructions and all other materials necessary to use or interpret such data compilation. If more than one copy of any document exists, and if as a result of handwritten additions and notations, or for any other reason, the copies are not identical, each non-identical copy is a separate document

2

and should be separately produced. "Document" includes all originals, copies, drafts, and both sides of any document(s).

13. "Related to" and "relating to" means directly or indirectly embodying, mentioning, describing, pertaining to, referring to, consisting of, "concerning" (as defined in these Requests), being connected with or reflecting upon a stated subject matter.

14. "Concerning" or "concern" means "related to," "relating to," (as defined in these Requests), containing, evidencing, regarding, referring to, pertaining to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

15. "Bair Hugger warming system" is used to refer to and means, as broadly as possible, whether in the singular or plural, all models of the 3M™ Bair Hugger™ patient warming system and any components and/or parts which may be used with those devices (including but not limited to temperature management units, heaters, filters, hoses, blowers and blankets) and any predecessor, successor, or final or non-final derivation of those devices.

16. "Consultant" means any person who has provided you advice and/or with whom you have conferred, discussed, opined and/or communicated with concerning advice on any topic, whether informally or formally, and whether or not you retained the person.

17. "HotDog Patient Warming System" is used to refer to and means, as broadly as possible, whether in the singular or plural, all models of the HotDog® Patient Warming System and any components and/or parts which may be used with those devices (including but not limited to controllers, blankets, mattresses and accessories) and any predecessor, successor, or final or non-final derivation of those devices.

18. "Health Care Provider" means, and includes but is not limited to, any doctor, physician, physician's assistant, surgeon, nurse practitioner, nurse, any person providing rehabilitation services, chiropractor, audiologist, holistic or homeopathic healer, therapist, or other practitioner of the medical arts, as well as any person providing facilities for the delivery of such services.

19. "Health Care Entity" means, and includes but is not limited to, any hospital, clinic, facility, or place at which a Health Care Provider (as defined in these Requests) provides any service.

20. The "Bair Hugger warming system litigation" shall mean and include any lawsuit alleging personal injury that has been filed against 3M and/or Arizant Healthcare relating to the Bair Hugger warming system. See the list of Plaintiffs attached as Exhibit B. Your response should include, but not be limited to documents relating to Bair Hugger warming system litigation and Plaintiffs identified in Exhibit B.

3

21. "And" means "and/or" and "or" means "and/or." The plural of any word used herein includes the singular and the singular includes the plural. The masculine gender of any word used here includes the feminine. The past tense of a verb used herein includes the present tense, and the present tense includes the past tense.

# REQUESTS

1.     Curriculum Vitae of Brent Augustine.

2.     Curriculum Vitae of Scott Augustine.

3.     Curriculum Vitae of Your Chief Executive Officer ("CEO").

4.     Any social media content (including but not limited to any post, blog, tweet, website and/or email) drafted, created and/or sent by You, any person or entity You sponsor/sponsored, and/or any person who acts/acted on Your behalf or at Your direction, concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, and/or the Defendants.

5.     All documents relating to communications with Your current, former and/or prospective board or advisory board members (including but not limited to communications and correspondence sent to and/or received from Your current, former and/or prospective board members) concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants.

6.     All documents relating to any presentations funded, sponsored, given or supported by You and/or Scott Augustine concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, the Defendants and/or the HotDog Patient Warming System.

7.     All documents, including but not limited to pleadings, depositions, discovery, transcripts, statements under oath and expert witness reports from any lawsuit, arbitration, administrative action, civil action or other proceeding (in any nation or territory) in which You and/or Scott Augustine were a party.

8.     All documents relating to the United States Department of Justice's investigation of Augustine Medical, Inc., Scott Augustine and/or Scott Augustine's guilty plea to Medicare fraud, including but not limited to documents involving TriSpan Health Services, Southern Medical Distributors, defendant Paul Johnson, defendant Timothy Hensley, defendant Phillip Zarlengo, defendant Health and Finance Marketing, defendant Finance Corporation, defendant Randy Benham, Warm-Up Active Wound Therapy, the June 23, 2003 Superseding Indictment, the *USA v. Augustine* Plea Agreement, the *USA v. Augustine* Stipulation of Facts, the United States Department of Health and Human Services' exclusion of Scott Augustine or other persons from participation in any federal healthcare programs and/or the Illinois Department of Healthcare's exclusion of Scott Augustine or other persons from participation in healthcare and family services programs.

9.     All documents relating to Your and/or Scott Augustine's exclusion from participation in any federal or state healthcare program.

10.    All documents relating to any communication and/or correspondence between (i) You and (ii) any current or former patients of any healthcare entity or healthcare provider concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, the Defendants, the HotDog Patient Warming System and/or surgical site infections.

11.    All documents sent to or received from any consultant or third party relating to the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, the Defendants or performance and/or testing of the Bair Hugger warming system or its components, including but not limited to the intake filter.

12.    All documents sent to or received from any consultant or third party relating to the HotDog Patient Warming System, conductive warming, and/or performance or testing of the HotDog Patient Warming System.

13.    All communications, correspondence and other documents relating to Your current and/or past customers and/or distributors (including but not limited to communications and correspondence sent to any current or past customers and/or distributors) which concern the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants.

14.    All documents relating to the following individual and entities, and/or any of their divisions, representatives, affiliates, employees, partners, and/or agents (including communications sent to and received from the following entities) which concern the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, the Defendants, the HotDog Patient Warming System, and/or conductive warming:

   a.  Surgical Care Improvement Project (SCIP)
   b.  Royal College of Surgeons
   c.  United Kingdom Medicines and Healthcare Products Regulatory Agency (MHRA)
   d.  United States Department of Health & Human Services
   e.  United States Food & Drug Administration
   f.  ECRI Institute
   g.  Health Canada
   h.  National Health Service (NHS)
   i.  National Institute for Health and Care Excellence (NICE)
   j.  Association of periOperative Registered Nurses (AORN)
   k.  Centers for Medicare & Medicaid Services (CMS)
   l.  Institute for Healthcare Improvement (IHI)
   m.  Association for Professionals in Infection Control and Epidemiology (APIC)
   n.  Association of Surgical Technologists (AST)
   o.  American Society of PeriAnesthesia Nurses (ASPAN)
   p.  Agency for Healthcare Research and Quality (AHRQ)
   q.  American Society of Anesthesiologists (ASA)
   r.  The Joint Commission
   s.  Dr. Farhad Memarzadeh

6

       t.   Court Square Capital Partners and or/Kurt Hilzinger

15.     All documents You have sent to or received from any newspaper, blog, internet domain, media outlet, media entity, social media outlet (including Twitter, Facebook and Instagram) or social media entity concerning the Bair Hugger warming system, forced air warming and/or the Bair Hugger warming system litigation.

16.     All past and present email distribution lists, and/or email addresses for any person or entity who You, Scott Augustine, Orthopedic Infection Advisory, orthopedicinfectionadvisory.org, Stop Surgical Infections, stopsurgicalinfections.org, and/or anyone acting on Your behalf or at Your direction, sent any documents (including emails) concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, the Defendants, the HotDog Patient Warming System and/or surgical site infections.

17.     All documents, communications and correspondence relating to any healthcare entity or healthcare provider (including but not limited to communications and correspondence You sent to and/or received from any healthcare entity or healthcare provider) which concern the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants.

18.     All communications, correspondence and other documents relating to any journal or publication (including but not limited to communications and correspondence You sent to and/or received from any journal or publication) which concern the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants.

19.     All documents You have sent to and/or received from any newspaper, blog, internet domain, media outlet, media company, social media outlet (including Twitter, Facebook and Instagram) or social media company concerning the HotDog Patient Warming System and/or conductive warming.

20.     All documents relating to and/or reflecting discussions between You and any person (including any entity) concerning the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation, and/or Defendants.

21.     All documents, including documents sent to or received from any person (including any entity), relating to Your and/or Scott Augustine's actual, possible or contemplated service as an expert witness, and/or disclosure as an expert witness in any litigation, lawsuit, arbitration, proceeding or action, including but not limited to the Bair Hugger warming system litigation.

22.     All documents You have sent to or received from any person (including any entity) relating to any Plaintiff.

23.     All documents (other than those produced in response to Request 22 above), relating to any Plaintiff.

24.     All documents You have sent to or received from any Plaintiff's attorney.

25.     All documents (other than those produced in response to Request 24 above), relating to any Plaintiff's attorney.

26.     All documents You have sent to or received from any person (including any entity) relating to any Plaintiff's expert.

27.     All documents (other than those produced in response to Request 26 above), relating to any Plaintiff's expert.

28.     All documents You have sent to or received from any person or entity relating to the possibility of litigation, actual litigation or any litigation, lawsuit, proceeding or other action concerning the Bair Hugger warming system and/or forced air warming.

29.     All documents relating to any engagement letters, retainer agreements, retention agreements or other agreements between (i) Scott Augustine, You, and/or any other person or entity acting on Your behalf and/or at Your direction, and (ii) the law firms of Kennedy Hodges, LLP, Farrar & Ball, and/or any Plaintiff's attorney.

30.     All documents involving, discussing or relating to the design, change in design, and/or alternative design of the Bair Hugger warming system.

31.     All documents relating to any alleged defects, problems or risks concerning the Bair Hugger warming system and/or forced air warming.

32.     All documents relating to complaints concerning the Bair Hugger warming system, including but not limited to correspondence and communications received from and sent to Bair Hugger warming system users (past and present), HotDog Patient Warming System users (past and present), healthcare providers, healthcare entities, patients, and/or any other persons.

33.     All documents concerning any payment, gift, gratuity or compensation, whether contemplated, discussed, promised, or provided, to the individuals who signed the July 16, 2008 Affidavit Under Oath attached as Exhibit E.

34.     All documents concerning Your employment of the following individuals, including but not limited to their personnel files:
        a.  Keith Leland
        b.  Randy Arnold
        c.  Scott Entenman
        d.  Mark Albrecht
        e.  Andreas Deibel

35.     All documents (including photographs and videos) relating to the following videos and/or any subsequent or related videos, including but not limited to documents relating to test

8

conditions, test footage, results, protocols, materials, methods, experiment, set-up, persons present, persons involved, scripts and results:

    a. "Forced-air Patient Warming Causes Vortex that Deposits Contaminants within Surgical Field," which includes video found at https://www.youtube.com/watch?v=3b9BF54apsY

    b. "Airborne Contamination in the Operating Room," which includes video found at https://www.youtube.com/watch?v=31jz3P3eHDU and https://www.youtube.com/watch?annotation_id=annotation_912099&feature=iv&src_vid=31jz3P3eHDU&v=BKFl2rINa9g#t=1s

    c. "Forced-Air Warming Destroys Laminar Air-flow," which includes video found at https://www.youtube.com/watch?v=hdtiBgUFzdc

    d. "Effect of Forced Air Warming on Laminar Airflow" which includes video found at http://www.bing.com/videos/search?q=forced+air+warming+videos&qpvt=forced+air+warming+videos&view=detail&mid=71F79862792D0197E36B71F79862792D0197E36B&FORM=VRDGAR

    e. "Forced Air Warming Compared with Conductive Warming Blanket" which includes video found at http://www.bing.com/videos/search?q=forced+air+warming+videos&qpvt=forced+air+warming+videos&view=detail&mid=7C9DE47388DFC985E2617C9DE47388DFC985E261&rvsmid=71F79862792D0197E36B71F79862792D0197E36B&fsscr=-1485&FORM=VDFSRV

    f. "FAW v. CWB" https://www.youtube.com/watch?v=tfhQe8d8sM8

    g. Any videos posted (at any date and time, whether or not still posted) to http://heat-rises.blogspot.com, hotdogwarming.com, orthopedicinfectionadvisory.org, stopsurgicalinfections.org and/or any other website, web domain and/or internet site that You sponsor, sponsored, financially support, have financially supported, control and/or controlled

    h. Any other videos or photos of any demonstrations or tests of the Bair Hugger warming system, the HotDog Patient Warming System, or any other warming device using smoke, bubbles, steam, or any other airflow tracking mechanism

    i. Any other videos and/or video footage You participated in, funded, sponsored, financially support, control and/or consulted on, whether or not they were completed and/or posted

36.    All documents relating to the sale, lease, market analysis, marketing, advertising, promotion, distribution and/or performance of the HotDog Patient Warming System which concern, relate to, reference and/or mention the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants.

37.    All documents relating to any relationship between You and any person (including any entity) involved in the sale, lease, market analysis, marketing, advertising, promotion and/or distribution of the HotDog Patient Warming System that reference, relate to or concern the Bair Hugger warming system, forced air warming, the Bair Hugger warming system litigation and/or the Defendants including, but not limited to contracts and communications between You and any person (including any entity), and any invoices for services rendered.

38.    All documents relating to any person, healthcare entity or healthcare provider's use, possible use, decision not to use, and/or decision to stop using the Bair Hugger warming system.

39.    All documents relating to any person, healthcare entity or healthcare provider's use, possible use, decision not to use, and/or decision to stop using the HotDog Patient Warming System.

40.    All documents evidencing any person or entity that uses the HotDog Patient Warming System now or has used the HotDog Patient Warming System in the past, including information concerning the years that each person or entity uses and/or has used the HotDog Patient Warming System.

41.    All documents relating to Your claim that the HotDog Patient Warming System is superior to, more effective, equally effective, less risky and/or safer than the Bair Hugger warming system and/or forced air warming.

42.    All documents concerning the infection risk associated with the re-use of conductive warming blankets.

43.    All documents relating to the Blowing Air is Risky ("B.A.I.R.") campaign, including but not limited to test data, test results, underlying data, videos, communications to third parties, internal communications, brochures and publications. Your response should include, but not be limited to, documents related to the campaign exemplar attached as Exhibit F.

44.    All documents relating to the Heat Rises/Hot Air Rising campaign, including but not limited to test data, test results, underlying data, videos, communications to third parties, internal communications, brochures and publications. Your response should include, but not be limited to, documents posted on and/or related to http://heat-rises.blogspot.com/ and campaign exemplar attached as Exhibit G.

45.    All documents relating to the 2010 MedWatch report attached as Exhibit H.

46.    All documents relating to the intake filters used in and filtration concepts for the Bair Hugger warming system.

47.    All documents (including but not limited to any underlying data, communications, funding, payments, materials supplied, test design documents, test results, tests, experiments, photographs, videos and analysis) relating to the following studies:

    a.    Albrecht, M., et al. Forced-air warming blowers: An evaluation of filtration adequacy and airborne contamination emissions in the operating room. *Am J Infect Control* 2011;39:321-28

    b.    Leaper, D., et al. Forced-air warming: A source of airborne contamination in the operating room? *Orthopedic Rev*. 2009;1(2):e28

    c. McGovern, P., et al. Forced-air warming and ultra-clean ventilation do not mix. *J Bone and Joint Surg-Br.* 2011;93(11):1537-44

    d. Legg, A., et al. Do forced air patient-warming devices disrupt unidirectional downward airflow? *J Bone and Joint Surg-Br.* 2012;94-B:254-56

    e. Legg, A., et al. Forced-air patient warming blankets disrupt unidirectional airflow. *Bone Joint J.* 2013;95-B:407-10

    f. Belani, K., et al. Patient warming excess heat: The effects on orthopedic operating room ventilation performance. *Anesth Analg.* 2013;117(2):406-11

    g. Dasari, K., et al. Effect of forced air warming on the performance of operating theatre laminar flow ventilation. *Anaesthesia* 2012;67:244-49

    h. Reed, M., et al. Forced-air warming design: evaluation of intake filtration, internal microbial buildup, and airborne-contamination emissions. *Am Assoc Nurse Anesth. J* 2013;81:275-80

    i. Wood, A., et al. Infection control hazards associated with the use of forced-air warming in operating theatres. *J Hosp Infect.* 2014;1-9

    j. Bernards, A., et al. Persistent *Acinetobacter baumannii*? Look inside your medical equipment. *Infect Control Hosp Epidemiol.* 2004;25:1002-04

    k. Brandt, S., et al. Resistive-polymer versus forced-air warming: comparable efficacy in orthopedic patients. *Anesth Analg.* 2010;110:834-38

    l. Kimberger, O., et al. Resistive polymer versus forced-air warming: comparable heat transfer and core rewarming rates in volunteers. *Anesth Analg.* 2008;107:1621-26

    m. Matsuzaki, Y., et al. Warming by resistive heating maintains perioperative normothermia as well as forced air heating. *Bn J Anaesth.* 2003;90:689-91

48. All documents, including but not limited to any underlying data, communications, funding, payments, materials supplied, design, results, conduct and analysis, relating to any study, test, trial, experiment, research and/or data analysis You sponsored, conducted, performed proposed, attempted, considered, discussed, planned, in process, arranged and/or performed on the Bair Hugger and/or any forced air warming device or product.

49. All documents, including but not limited to any underlying data, communications, funding, payments, materials supplied, design, results, conduct and analysis, relating to any study, test, trial, experiment, research and/or data analysis You sponsored, conducted, performed, proposed, attempted, considered, discussed, planned, in process, arranged and/or performed on the HotDog Patient Warming System and/or any

11

conductive warming device or product.

50.     All documents sent to or received from any forced air warming system manufacturer about the alleged hazards and/or safety risks of forced air warming and/or the Bair Hugger warming system.

51.     All documents sent to or received from the following individuals relating to the Bair Hugger warming system, forced air warming, conductive warming, the HotDog Patient Warming System, Defendants and/or the Bair Hugger litigation:

    a.   Mark Albrecht
    b.   Kiran Dasari
    c.   Robert Gauthier
    d.   Kumar Belani
    e.   Christopher Natscheim
    f.   Mark Litchy
    g.   Mike Reed
    h.   Paul McGovern
    i.   Andrew Legg
    j.   David Leaper
    k.   Andrew Hamer
    l.   Mark Harper
    m.   Keith Leland
    n.   Randy Arnold
    o.   Scott Entenman
    p.   Mark Albrecht
    q.   Andreas Deibel
    r.   Any other person who authored, sponsored and/or published a study concerning the Bair Hugger warming system, forced air warming, a forced air warming device or product and/or the HotDog Patient Warming System

52.     All documents relating to the following:

    a.   Any published study, unpublished study, test, testing performed, trial, experiment, research and/or data analysis You participated in, commissioned, performed, conducted, sponsored, authorized, directed and/or for which You provided any funding, support, personnel or materials concerning the Bair Hugger warming system, forced air warming, and/or any forced air warming device and/or product

    b.   Any other study, test, testing performed, trial, experiment, research and/or data analysis concerning the Bair Hugger warming system, forced air warming, and/or any forced air warming device and/or product.

    c.   Any other study, test, testing performed, trial, experiment and/or data analysis concerning the HotDog Patient Warming System and/or any conductive warming device and/or product.

53.    All documents relating to any calculations, suggested and/or made, to determine any effect on the operating room environment from use of the Bair Hugger warming system, forced air warming, any forced air warming device or product, and/or the HotDog Patient Warming System.

54.    All documents relating to any research, experiments, or tests conducted by You, on Your behalf and/or at Your direction, concerning potential contamination of the airflow paths of Bair Hugger warming system, the creation of convection currents in the operating room, and/or any other alleged safety risk or concern.

55.    Any photographic and/or videographic documentation from smoke and/or bubble studies concerning the Bair Hugger warming system, and/or forced air warming.

56.    All documents concerning any thermal imaging and/or infrared simulations conducted by You, on Your behalf and/or at Your direction.

57.    All documents pertaining to any computational fluid dynamics studies and/or modeling conducted by You, on Your behalf and/or at Your direction.

58.    Produce any and all tests and/or trials, including set-up documents, protocols, videotapes of testing, analysis of tests, summaries of tests, and/or test results themselves, conducted to evaluate the comparative safety and/or performance of the Bair Hugger warming system and the HotDog Patient Warming System.

## EXHIBIT B

**Plaintiffs who have filed cases in** *IN RE: Bair Hugger Forced Air Warming Products Liability Litigation,* **MDL No. 2666:**

Abrams, Glenn, for Estate of Patricia Abrams

Acosta, Lucy M.

Altieri, Kelly

Anderson, Clarice

Anderson, Janice

Anderson, Samuel

Andras, Robert

Armstrong, Raymond and Gloria

Arnette, Kay

Arthur, Stephen

Atchetee, Evon and Linda

Bagdon, Bonnie

Barfield, Claudette

Beck, George

Belcher, Jerry

Bellman, Debra

Berry, Peggy

Bias, Henry

Blanchard, Kevin

Bono, Augustus

Bookman, Calvin

Borroughs, Susan

Bortz, Donna

Bourque, David and Sheryl M.

Bowling, Belinda

Boyd, Johnny

Braithwaite, Mark, for Estate of James Braithwaite

Bray, Arlene

Brockington, Senia

Brown, Bonnie

Brunson, Lucille

Burleson, Willie

Burroughs, Charles and Susan

Butts, Linda

Cagle, Sallie E.

Callahan, Steven

Campbell, Alice

Campbell, William

Cantrell, Randall C.

Cardiel, Marlo

Carmichael, Wilbert

Carter, Kimberlee

Carver, Virginia

Castro, Odilie

Chaix, Judith

Charap, Richard

Chavers, Darryl

Childers, Ruth

Ciappa, Peter and Tanya

Collins, Jeffrey

Colon, Wayne

Colson, Greg

Cowall, Frank

Crawford, Tracy

Critari, Donald

Daniel, Priya

Davis, Ruby

Delago, Luciano

DeLeon, Lino

Dethlefson Jr., John

Devor, David

Donaho, Donald

Donaldson, Glenna

Donley, Donald

Dorsey, Shalanda H.

Edwards, Donna

Elder, Howard Joseph Jr.

Estrada, Robert L.

Evans, Deborah

Farias, Janie

Fisher, Carey A.

Fontenot, Winward J. and Mary

Foriska, Emil G. and Lynn L.

Forsythe, John

Foster, Bruce and Nancy

Frame, Terry E.

Franks II, Charles

Furgason, Gary

Gifford, John

Gilmor, Michael

Glowacki, Janet

Goldberg, Brad J.

Goldfon, Ronald and Nancy

Gomez, Michael

Grabski, Dennis

Green, Irma

Griego, Manuel

Griffith, Daisy

Grushesky, Constance

Guinter, Anita

Guy, Thomas

Hager, Barbara

Haines, Gregory and Valerie

Hamilton, Rebecca

Hardin, Annie F. & William C

Hardison, James

Harper, Melvin

Harrell, Trey

Hart, Patrick

Hartzel, Rex

Harvey, Jeffrey

Hayden, Bradley

Heffernan, James D.

Hernandez, Francisco E.

Hewitt, Susan

Hicks, James

Hodges, Evelyn

Hoesley, John

Hollman, Theresa

Houston, Sandra (Mickey Seigfried included in same complaint)

Hovey, Verl

Hursey, David

Ibsen, Stacy

Irby, Gloria

Irving, Michele

Isom, Edward A.

Iverson, Fred

James, Lorraine

Jeffers, Ronald

Jenkins, Vincent

Jensen, Danny J.

Jindrich, James

Johnson, Carol

Johnson, Kenneth

Johnson, Timothy

Jones, Timothy

Jordon, Leslie and Kurtz, Margaret

Kaelin, Norma

Kahl, Wanda

Karres, James

Kent, Michael

Kiar, Wesley

Klosinsky, Dawn

Knuteson, Jeffrey

Kohout, Richard

Kostera, Mary

Kriner, Floyd

Kuhns, Dolores

Laden, Michelle

Lake, Murray

Lake, Steven John and Bambi Jeanne

Lane, Margaret

Lasater, Timothy and Jeanne

Lawson, Rose

Leblanc, John A.

Lee, Edmond

Lee, James

Lentz, Margaret

Leroux, Larry

Lewis, Robert

Lewis-Mosqueda, Mary

Libby, Barbara

Lichlyter, William

Linscott, Cledia

Little, Veronica

Littrell, Larry

Livingston, Debra

Lockhart Love, Willie

Logan, Michelle

Lorditch, George

Louvier, Christie

Lown-Peters, Jacline

Lucas, George

Luttrall, Jeanne C.

Madden, Curtis

Mady, Keith, statutory representative for and on behalf of the statutory beneficiaries of decedent Walter Mady

Mann, Emma

Marousek, Gary

Martin, Timothy

Maxfield, Rickey

Mayne, Judy

Mayo, Georgina

McCain-Champagne, Tammy

McCann, Steven

McClure, Wanda

McCormick, William

McDougald, Tony

McLane, Cheryl

McLaughlin, Beverly

McMullen, Robert

Medley, Belinda

Meyer, Jill

Milton, Bonnie

Moore, Curtis K. Jr. and Christal

Moraites, Christine A.

Morgan, Tyrone and Taurus

Morgan, Wayne

Moriarty, Bryan

Morris, Gregory

Morris, Nicholas J.

Myers, Jennifer

Naylor, Brenda

Nelson, Gary

Nelson, Robert

New, Mary E.

Newlun, Phyllis

Norris, LaNathan

Norton, Danny

Norton, Raymond

Nottingham, Gerald

Opperman, Margaret

Pack, Holly

Parker, Ronnie

Pease, Allen

Pechon, Louis Jr.

Perkins, Bonnie Fay

Perry, Lola

Peterson, Melvin

Petty, Beatrice C.

Peyton, Lee Edward

Pierce, Patrick

Pillsbury, Richard and Chyrl

Plumley, Spencer

Priest, Mary

Printup, Carmen

Randall, Mary E.

Rednour, Easter

Reed, Tawas

Remice, James

Rhoton, James

Rhymes, Gary

Rich, Pennie

Rinehart, Edward and Kari

Roa Esquibel, Gloria

Robbins, Jennie

Roberson, David A. and Deborah A.

Robertson, Cynthia

Robinson, Anne

Robinson, Ival, Trustee for the Heirs of Linda Robinson, Deceased

Robinson, Max

Rochelle, Lorraine

Rodriguez, Albert, individually and as Interim Trustee for the Estate of Anna Rodriguez

Rodriguez, Linda and Artemio

Rosten, Peter

Roth, Naomi

Russell, Gilbert

Ryan, Marilyn

Rygaard, Martin

Saltel, David

Sanders, Ruby

Schackmann, Renny

Schlueter, Jill and Robert

Schwartz, Bruce

Scott, Robin

Seidl, Cynthia

Seitter, Calvin

Serra, Theresa

Seigfried, Mickey (Sandra Houston included in same complaint)

Singleton, Virginia

Smith, Denita

Smith, Donald

Smith, Richard

Snow, Sharon C.

Sollers, Jerrold

Spillman, Harold

Starnes, Phyllis

Stephan, Thomas

Stewart, Jasmine

Stinson, James

Stone, James

Storckman, Lee

Stradley, Gregory

Stribling, Jeff

Strike, Harry

Stutz, Carl Sr.

Surgeon, Ronald

Sutter, Francis

Suveg, Cheryl

Swiecicki, Bruce

Taylor, Richard

Taylor, Timothy

Templet, Roy

Thomas, Bobby

Thomas, Darryle

Thomas, Randall

Thompson, Mary

Thurman, Carolyn

Toler, Luna

Torok, Terry R.

Turner, Doyal

Ulmer, Mark, et al.

Vann, Sandra

Van Wart, Louis and Marjory

Vernal, Larraine S.

Wagner, Carla J.

Wainner, George Elic

Walters, Betty

Walton, Tommy

Warner, Su B.

Weatherholtz, Anna

Weimer, Margaret

Weimer, Rose

Weiss, Judith

Westenhofer, Robert

Wheeler, Heather

Whiddon, Mary

Whitley, Michael

Wiech, James E.

Williams, Michael

Wiltshire, Carol and Jeff

Wingrove, Theodore

Winter, Nancy

Wolfe, Patsy

Wood, Daniel

Woodyear, Mary A., Individually and Olivia W. Elliot and Maria W. Bowen, Individually, and as Executrixes of the Succession of Edgar C. Woodyear, Jr.

Wright, Andrew

Wright, Larry

Yender, Sheila

Young, Larry

Zahn, Janet

Zaledonis, Ronald

Zeigler, Glynn Jr.

Zurawski, Richard


**Plaintiffs who have filed cases in the District Court of Minnesota for Ramsey County:**

Ayotte, Robert          62-cv-15-7356

Baker, Jeffrey          62-cv-15-5982

Barbee, Jr., George     62-cv-16-304

Blacklock, Laura        62-cv-16-1446

Brown, Wilbur           62-cv-16-172

| | |
|---|---|
| Brunson, Lucille | 62-cv-16-174 |
| Castagnaro, Anthony | 62-cv-15-6796 |
| Caywood, Greg | 62-cv-16-1448 |
| Christian, Charles | 62-cv-15-7671 |
| Crady, Patricia | 62-cv-15-7304 |
| Denman, Marsha | 62-cv-15-6486 |
| Duquette, Edward | 62-cv-15-7364 |
| Duvernay, Peter | 62-cv-15-7363 |
| Enskat, Kim | 62-cv-15-7362 |
| Gaboni, Sr., David | 62-cv-15-6265 |
| Gallegos, Robert | 62-cv-15-6312 |
| Hettich, Richard | 62-cv-16-274 |
| Johnson, Nora | 62-cv-16-177 |
| Jones, Thomasine | 62-cv-15-7670 |
| Keith, James | 62-cv-16-293 |
| Lewis, Oscar | 62-cv-16-180 |
| O'Connell, Kathleen | 62-cv-16-21 |
| Olson, Thomas E. | 62-cv-16-161 |
| Pitman, Timothy | 62-cv-15-7127 |
| Reding, Thomas | 62-cv-15-6848 |
| Roberts, Lee | 62-cv-15-7754 |
| Roman III, Ramon | 62-cv-16-182 |
| Rome, Patricia | 62-cv-16-547 |
| Scribling, Jeff | 62-cv-16-550 |
| Sehnert, Scott | 62-cv-15-4748 |

Shelton, Jennie          62-cv-16-1452

Smith, Curtis            62-cv-16-308

Stevens, Paula           62-cv-16-2181

Stockard, Linda          62-cv-16-277

Story, Hershell          62-cv-15-5906

Tennison, Loyce          62-cv-16-283

Thames, Gregory          62-cv-16-309

Thomas-Smith, Vivian   62-cv-16-67

Tunnell, Mary            62-cv-16-1696

Turner, Dawn             62-cv-15-6267

Walker, Kevin            62-cv-16-1777

Watson Sr., Rex          62-cv-16-284

Wohl, Mary Kate          62-cv-15-6477


**Plaintiffs who have filed cases in various states:**

Childers, Ruth (Harris County, Texas, Case No.: 2015-73957)

Lawson, Rose (Montgomery County, Texas, Case No.: 15-10-10631)

Rodriguez, Linda and Artemio (Lake County, Illinois, Case No.: 15-L-930)

Wiltshire, Carol and Jeff (Madison County, Illinois, Case No.: 15-L-1421)

# EXHIBIT C

***Plaintiff's Law Firms*:**

Andrews & Thornton
Attorney Brian White & Associates, P.C.
Bachus & Schanker, LLC
Bernstein Liebhard LLP
Brown & Crouppen, P.C.
Carlson Lynch Sweet & Kilpela, LLP
Childers, Schlueter & Smith, LLC
Coburn & Greenbaum, PLLC
Ciresi Conlin L.L.P.
Davis & Crump, P.C.
DeGaris Law Group, LLC
DeSanto Morgan & Taylor
Dewsnup, King & Olsen
Farrar & Ball, LLP
Goldenberglaw, PLLC
Goldenberg Heller Antognoli & Rowland, P.C.
Goza & Honnold, LLC
Grey and White Law Firm
Grynkewich Law Offices
Gustafson Gluek PLLC
Hare, Wynn, Newell & Newton, LLP
Hausfeld, LLP
Helmsdale Law, LLP
Holton Law Firm, PLLC
Hopkins Law Firm
Houssiere, Durant & Houssiere, LLP
John J. Hopkins & Associates, P.C.
Johnson Becker, PLLC
Jones Ward PLC
Kennedy Hodges, LLP
Kershaw, Cook & Talley, PC
Kirtland & Packard LLP
KP Law, LLC
Lamothe Law Firm, LLC
Langdon & Emison
Law Offices of James S. Rogers
Law Offices of Todd N. Hendrickson
Law Offices of Tony Seaton, PLLC
Levin Papantonio, P.A.
Lockridge Grindal Nauen PLLP
Martzell Bickford & Centola