UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

MDL No 15-2666 (JNE/FLN)

**AFFIDAVIT OF SCOTT D. AUGUSTINE MD**

This Document Relates to:
All Actions

1. My name is Scott D. Augustine MD. I am Chief Executive Officer of the various entities subject to the discovery served by 3M. In this Affidavit, I shall refer both to myself and to the various Augustine entities as "Augustine" or "we."

2. The facts contained herein are within my personal knowledge (except when stated as being on information and belief) and are true and correct.

3. When we were served with document discovery—first in 2015 and again in 2016—I assigned our general counsel J. Randall Benham to respond appropriately. We did not engage outside counsel to respond to 3M's discovery for one simple reason: we could not afford it. Shortly after we were served with document discovery, Mr. Benham informed me of our obligation to preserve responsive documents. To the best of my knowledge, all responsive documents have been preserved appropriately.

4. Because 3M is our most significant competitor, with approximately 90% of the patient-warming business in the US, my principal concern was that 3M would use

discovery in its product liability cases to inappropriately obtain competitive information about HotDog patient warming, my company's principal product and the most significant competition for 3M's Bair Hugger.

5. Nevertheless, at the request of Mr. Benham, I assembled all of my paper files that were responsive to discovery and provided them to him for review.

6. I also reviewed my emails for any sent to or received from the numerous persons and businesses listed in 3M's discovery. Few, if any, were found. There are multiple reasons for this. Most importantly, the period in which any such emails would have been sent or received was several years in the past. I simply don't keep emails longer than they are useful. I clear my email folder—although not, of course, of any responsive emails since we received the discovery demands.

7. There were also outside influences reducing the chances that any responsive emails would be found. First, our offices were burgled and my computer was stolen approximately 4 or 5 years ago—generally in the time that some of the emails sought would have been generated. While I don't recall specifically when this occurred, a police report was filed. A second computer was stolen subsequently (along with my briefcase) as I was riding a train in the Netherlands. The Dutch police found and returned by briefcase fairly quickly, but my computer was not found.

8. On both of these occasions I was very displeased to discover that my emails had not been "backed-up" to my company's main server. This failure, coupled with several other issues, ultimately led to person responsible for our IT services leaving the company.

9. While it is certainly possible—or even likely—that I exchanged emails with some of the persons or entities listed in 3M's discovery, I no longer have access to those emails.

10. I am aware that Mr. Benham has objected to some of 3M's document demands, primarily on the grounds that the information is proprietary to our businesses and would give 3M unfair competitive advantages. Such documents have not been produced. Other than that, it is my belief that all responsive documents have been produced.

11. From conversations with Mr. Benham, I am aware that 3M believes that our efforts to produce responsive documents has not been adequate. I support Mr. Benham's proposal that our outside law firm, Fredrickson and Byron, review and "re-do" the production—but only if the fees involved are paid by 3M. Our companies cannot afford the cost, and it would be unfair to ask us to bear it.

FURTHER AFFIANT SAYETH NOT

*/s/ Scott D. Augustine MD*

Scott D. Augustine MD