```
 1                    UNITED STATES DISTRICT COURT

 2                      DISTRICT OF MINNESOTA

 3    ------------------------------------------------------------
                                      )
 4                                    )
       In Re: Bair Hugger Forced Air  )   File No. 15-MD-2666
 5     Warming Devices Products       )   (JNE/FLN)
       Liability Litigation           )
 6                                    )   November 17, 2016
                                      )   Minneapolis, Minnesota
 7                                    )   Courtroom 12W
                                      )   10:00 a.m.
 8                                    )
                                      )
 9    ------------------------------------------------------------

10             BEFORE THE HONORABLE JOAN N. ERICKSEN
                 UNITED STATES DISTRICT COURT JUDGE
11
               THE HONORABLE FRANKLIN D. NOEL
12               UNITED STATES MAGISTRATE JUDGE

13           And THE HONORABLE WILLIAM H. LEARY III
                      RAMSEY COUNTY JUDGE
14
                      (STATUS CONFERENCE)
15
      APPEARANCES
16
      FOR THE PLAINTIFFS:
17                                MESHBESHER & SPENCE
                                  Genevieve M. Zimmerman
18                                1616 Park Avenue
                                  Minneapolis, MN  55404
19
                                  CIRESI CONLIN
20                                Jan Conlin
                                  225 South 6th Street
21                                Suite 4600
                                  Minneapolis, MN
22
                                  KIRTLAND AND PACKARD LLP
23                                Behram V. Parekh
                                  2041 Rosecreans Avenue
24                                Third Floor, Suite 300
                                  El Segundo, CA  90245
25
                      (Appearances continued next page)
```

```
 1      FOR THE PLAINTIFFS (cont'd):
                                    KENNEDY HODGES, LLP
 2                                  Gabriel Assaad
                                    4409 Montrose Blvd
 3                                  Suite 200
                                    Houston, TX 77006
 4
                                    KENNEDY HODGES, LLP
 5                                  David W. Hodges
                                    711 W. Alabama Street
 6                                  Houston, TX 77006

 7                                  PRITZKER HAGEMAN, P.A.
                                    Ryan Osterholm
 8                                  45 South 7th Street, #2950
                                    Minneapolis, MN  55402-1652
 9
        FOR THE PLAINTIFFS (APPEARING BY PHONE:)
10
                                    PETERSON & ASSOCIATES, P.C.
11                                  Brian Emerson Tadtman
                                    801 W. 47th Street, Suite 107
12                                  Kansas City, MO  64112

13                                  BERNSTEIN LIEBHARD LLP
                                    Dae Lee
14                                  Jessica Keller
                                    Daniel C. Burke
15                                  10 East 40th Street
                                    New York, NY  10016
16
                                    ENGLISH LUCAS PRIEST & OWSLEY
17                                  Bob Young
                                    Jessica Surber
18                                  1101 College Street
                                    PO Box 770
19                                  Bowling Green, KY 42102

20                                  GROSSMAN & MOORE, PLLC
                                    Emily A. DeVuono
21                                  Jennifer Moore
                                    401 W. Main Street
22                                  Suite 1810
                                    Louisville, KY  40202
23
                                    GRAY & WHITE
24                                  Jacob Levy
                                    713 East Market Street, #200
25                                  Louisville, KY   40202
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              HARE WYNN NEWELL & NEWTON
                                Lynne Reed
 3                              Peggy Little
                                Don McKenna
 4                              Massey Building
                                2025 Third Avenue North
 5                              Suite 800
                                Birmingham, AL  35203
 6
                                MCEWEN LAW FIRM, LTD
 7                              Melissa Schmid
                                5850 Blackshire Path
 8                              Inver Grove Heights, MN  55076

 9                              MORGAN & MORGAN, PA
                                Michael S. Goetz
10                              Joseph T. Waechter
                                Heather Cullen
11                              201 N. Franklin St 7th Floor
                                Tampa, FL  33602
12
                                RAIZNER SLANIA, LLP
13                              Jeffrey L. Raizner
                                2402 Dunlavy Street
14                              Houston, TX  77006

15                              BRIAN LONCAR, PC
                                Brian Loncar
16                              424 S. Cesar Chavez Blvd
                                Dallas, TX  75201
17
                                CAPRETZ & ASSOCIATES
18                              Don K. Ledgard
                                5000 Birch St, Suite 2500
19                              Newport Beach, ca  92660

20                              MICHAEL HINGLE & ASSOCIATES
                                Julie M. Jochum
21                              220 Gause Blvd
                                Slidell, LA  70005
22
                                NEAL RISLEY ELLIOTT, JR.
23                              P.O. Box 80136
                                Baton Rouge, LA  70898
24

25
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              HOUSSIERE DURANT & HOUSSIERE
                                Randall A. Kauffman
 3                              Monica Vaughan
                                1990 Post Oak Blvd Suite 800
 4                              Houston, TX  77056

 5                              DAVIS & CRUMP, PC
                                Martin D. Crump
 6                              Robert D. Cain, Jr.
                                Wes Stevenson
 7                              2601 Fourteenth Street
                                Gulfpost, MS 39507
 8
                                LEWIS & CAPLAN
 9                              Pete Lewis
                                Sarah Delahoussaye Call
10                              3631 Canal Street
                                New Orleans, LA  70119
11
                                SKIKOS CRAWFORD SKIKOS&
12                                 JOSEPH, LLP
                                Melissa Erin Mielke
13                              One Sansome Street, Suite 2830
                                San Francisco, CA  94104
14
                                THE RUTH TEAM
15                              Austin Grinder
                                Steven C. Ruth
16                              842 Ramond Avenue
                                Suite 200
17                              Saint Paul, MN  33733-5157

18                              TATE LAW GROUP, LLC
                                Arlene Nicole
19                              2 East Bryan Street, Suite 600
                                Savannah, GA  31328
20
                                LAW OFFICES OF TRAVIS R. WALKER
21                              Travis R. Walker
                                1235 SE Indian Street
22                              Suite 101
                                Stuart, FL  34997
23
                                LAW OFFICES OF JAMES S. ROGERS
24                              Elizabeth J. McLafferty
                                1500 4th Avenue #500
25                              Seattle, WA  98101
```

```
 1      FOR THE PLAINTIFFS        APPEARING BY PHONE:

 2                                LAW OFFICES OF BRIAN MEYERS
                                  Laura Young
 3                                1125 Grand Boulevard, Suite 1610
                                  Kansas City, MO  64106
 4
                                  MURRAY LAW FIRM
 5                                Caroline Whitney Thomas
                                  650 Poydras Street
 6                                Suite 2150
                                  New Orleans, LA  70130
 7
                                  BROWN & CROUPPEN, PC
 8                                Abby Cordray
                                  211 North Broadway, Suite 1600
 9                                St. Louis, MO  63102

10                                HURLEY MCKENNA & MERTZ
                                  Molly Condon
11                                33 North Dearborn Street
                                  Suite 1430
12                                Chicago, IL  60602

13                                PAGLIALUNGA & HARRIS, PS
                                  James Humann
14                                1001 4th Avenue, Suite 3200
                                  Seattle, WA  98154
15
                                  BACHUS & SCHANKER, LLC
16                                Darin Schanker
                                  J. Kyle Bachus and Kyle Bachus
17                                1400 16th Street
                                  Denver, CO  80202
18
                                  BEASLEY ALLEN
19                                Megan Robinson
                                  218 Commerce Street
20                                Montgomery, AL  36104

21                                CARR & CARR ATTORNEYS
                                  Patrick E. Carr
22                                4416 S. Harvard Avenue
                                  Tulsa, OK  74135
23
                                  HOLLIS LEGAL SOLUTIONS, PPLC
24                                Scott Hollis
                                  6814 Crumpler Boulevard,
25                                Suite 101
                                  Olive Branch, MS  38654
```

```
 1      FOR THE PLAINTIFFS          APPEARING BY PHONE:

 2                                  THE LAW OFFICES OF PETER
                                    ANGELOS, P.C.
 3                                  Craig Silverman
                                    100 North Charles Street
 4                                  Baltimore, MD  21201

 5                                  MCGARTLAND LAW FIRM, PLLC
                                    Lee Ann McGartland
 6                                  1300 South University Drive #500
                                    Fort Worth, TX  76107
 7
                                    MESHBESHER & SPENCE, LTD
 8                                  Holly Sternquist
                                    1616 Park Avenue
 9                                  Minneapolis, MN  55404

10                                  PARKER WAICHMAN, LLP
                                    Michael S. Werner
11                                  Nicole Eisner
                                    59 Maiden Lane
12                                  6th Floor
                                    New York, NY  10038
13
                                    PITTMAN DUTTON & HELLUMS, P.C.
14                                  2001 Park Place #1100
                                    Birmingham, AL  35203
15                                  Chris Hellums
                                    Jonathan S. Mann
16                                  Rebecca Hicks

17                                  PRITZKER HAGEMAN, PA
                                    Wendy Thayer
18                                  PWC Plaza Building
                                    Suite 2950
19                                  45 South Seventh Street
                                    Minneapolis, MN  55402-1652
20
                                    RANDALL J. TROST, P.C.
21                                  Carrie Hancock
                                    Pam Rodriguez
22                                  Randall T. Trost
                                    801 Main Street
23                                  Lynchburg, VA  24504

24                                  SCHNEIDER SCHNEIDER & SCHNEIDER
                                    Scott Haider
25                                  815 Third Avenue South
                                    Fargo, ND  58103
```

```
 1      FOR THE PLAINTIFFS        APPEARING BY PHONE:

 2                                SHELTON LAW GROUP
                                  Rob Shelton
 3                                9300 Shelbyville Road #215C
                                  Louisville, KY  40222
 4
                                  THE MILLER FIRM, LLC
 5                                Tayjes M. Shah
                                  The Sherman Building
 6                                108 Railroad Avenue
                                  Orange, VA  22960
 7
                                  POGUST BRASLOW & MILLROOD, LLC
 8                                Matt Leckman
                                  Jessical Lowe
 9                                8 Tower Bridge, Suite 940
                                  161 Washington Street
10                                Conshohocken, PA  19428

11                                DEGARIS LAW GROUP, LLC
                                  Wayne Rogers, Jr.
12                                2 North 20th Street
                                  Suite 1030
13                                Birmingham, AL  35223

14      FOR THE DEFENDANTS 3M:    BLACKWELL BURKE P.A.
                                  Jerry W. Blackwell
15                                Ben Hulse
                                  Mary Young
16                                431 South Seventh Street
                                  Suite 2500
17                                Minneapolis, MN  55415

18                                FAEGRE BAKER DANIELS
                                  Bridget M. Ahmann
19                                90 South Seventh Street
                                  Suite 2200
20                                Minneapolis, MN  55402

21
        Court Reporter:           MARIA V. WEINBECK, RMR-FCRR
22                                1005 U.S. Courthouse
                                  300 South Fourth Street
23                                Minneapolis, Minnesota 55415

24           Proceedings recorded by mechanical stenography;
        transcript produced by computer.
25
                    *     *     *     *     *     *     *
```

```
 1                      P R O C E E D I N G S

 2                        (10:15 a.m.)

 3             THE COURT:  Good morning.  Please be seated.  All

 4     right.  We have all of your appearances.  We have the joint

 5     agenda.  I know that you will be back in court at 1:00 this

 6     afternoon.  I have a thought about the December meeting.

 7     How do you -- should we have a conference in December or

 8     should we forget it?  How about that for hitting you with

 9     something that you weren't -- Ms. Zimmerman?  They're

10     thinking, they're thinking.

11             MR. BLACKWELL:  Go ahead, Genevieve.

12             MS. ZIMMERMAN:  I think in light of the upcoming

13     discovery cut-off, it may well be worth our time to continue

14     and have a conference if the Court has it scheduled, and if

15     that works for you.

16             MR. BLACKWELL:  And my thought was perhaps we

17     could wait and see a little bit whether we have an issue

18     with respect to the items she brings.

19             THE COURT:  All right.  Perfect.  Now, it's on the

20     calendar, and I'm ready to go.  I just didn't want to make

21     you come in if there was a point.

22             All right.  Well, let's just run through the

23     agenda.  Number one is the pretrial order with the amended

24     scheduling order.  Is there anything to discuss about that

25     now?
```

1          MR. BLACKWELL:  No, Your Honor.

2          MS. ZIMMERMAN:  No, Your Honor.

3          THE COURT:  I didn't think so.  And then the

4     plaintiff fact sheets.  Ms. Zimmerman?

5          MS. ZIMMERMAN:  Just briefly for the benefit of

6     those folks that are on the telephone, we have now rolled

7     out an electronic portal where the plaintiff's attorneys

8     will be able to submit the information for the fact sheets

9     online.  Those passwords, I think, have been submitted,

10    logins and passwords have been submitted or instructions to

11    get those.  And counsel on the phone I think should be

12    advised that they will be due December 26th for any case

13    that had been filed prior to September 27th, and then just

14    follow the pretrial order for other deadlines going forward.

15         THE COURT:  In view of the fact that you were

16    primarily saying that for the benefit of the folks on the

17    phone, could someone on the phone unmute and just confirm

18    that you were able to hear that?

19         MS. THAYER:  Wendy Thayer here.  Yes, we heard

20    that.

21         THE COURT:  Okay, thanks very much.

22         MS. ZIMMERMAN:  And if anyone has any questions,

23    the Pritzker firm here in Minneapolis has been helping to

24    handle the logins.

25         THE COURT:  Excellent.  You all got my order on

1    the bellwether?

2              MS. ZIMMERMAN:  Yes, Your Honor.

3              MR. BLACKWELL:  Yes, Your Honor.  Could I?

4              THE COURT:  My view was that someone had to make a

5    decision, so I thought it might as well be me.

6              MR. BLACKWELL:  Could I just raise just a small

7    matter with respect to it?

8              THE COURT:  Okay.

9              MR. BLACKWELL:  And I'm glad to see Judge Leary

10   here too.  Good morning, Your Honor.  This relates to

11   coordination with respect to the Ramsey County cases that

12   ought to be included.  It might require a little

13   coordination.  The plaintiff's leadership committee in the

14   Ramsey County State Court case is not the same as the

15   leadership here, and so there may be a bit of coordination

16   between them with respect to picking the bellwether.

17             And the second item relates to the plaintiff's

18   fact sheets.  Presently there's not an order in Ramsey

19   County with respect to creating those.  And that would be

20   another coordination matter that perhaps Judge Leary could

21   work with Your Honors with respect to that to coordinate

22   between the two courts.

23             JUDGE LEARY:  Can I ask, Ms. Zimmerman, are you

24   part of that group?

25             MS. ZIMMERMAN:  Yes, Your Honor, and I can

1    represent to all of the judges here that there is actually a

2    resolution about leadership in Ramsey County, and I have

3    been tasked as the liaison or lead counsel for Ramsey County

4    cases.  So we're happy to use the same fact sheet if that

5    would facilitate things.  I think that probably makes a lot

6    of sense.  There's no reason to do something different.

7    There isn't an order yet in Ramsey County that those be

8    submitted on the same time frame, but we can do that.

9              MR. BLACKWELL:  Right, and my comment was more

10   just major housekeeping that Ms. Zimmerman is the liasion as

11   you say, but the rest of the group is not necessarily the

12   same from the plaintiff's leadership group.  I understand

13   there were one or two other firms in Ramsey.

14             MS. ZIMMERMAN:  Initially, there were a couple of

15   other firms, and there was an interim group of lead counsel

16   of four firms.  At least one of those firms has dismissed

17   the Ramsey County cases and refiled for the part of the MDL.

18   And as I understand it, the other two firms are happy to

19   follow the will of the Court.

20             JUDGE LEARY:  I would request, Mr. Blackwell and

21   Ms. Zimmerman, if you feel that there are orders that need

22   issue out of Ramsey County, then speak with each other,

23   submit a proposed order in that regard, and I'll take a look

24   at it.

25             MR. BLACKWELL:  Yes, we'll do that.  We just

1    wanted to make sure it was consonant in Ramsey Court and

2    Federal Court here, so.

3           THE COURT:  Let me explain some of the reasoning

4    behind the way my order separated out the MDLs from the

5    Ramsey County cases for the initial random selection that I

6    will do.

7           In order to -- well, we had discussed making the

8    Ramsey County cases part of the bellwether pool, and

9    statistically it wouldn't work.  There just wouldn't be

10   enough chance.  If we have roughly 50 cases in Ramsey County

11   and roughly a thousand cases here, if we just put them in

12   that big pool, they wouldn't -- you wouldn't necessarily get

13   what you want.  You know, and you really want some

14   bellwether cases possibly in Ramsey County, so that you can

15   see how they go.  So that's the only reason that they're

16   separated out.

17          And with that as background, and with what Judge

18   Leary has said, and the fact that, Ms. Zimmerman, you're in

19   both of the leadership positions, it seems that any issues

20   there should be able to be worked out on the housekeeping

21   end of things.

22          MS. ZIMMERMAN:  Absolutely.

23          THE COURT:  Okay.

24          MR. BLACKWELL:  Thank you, Your Honor.

25          THE COURT:  Yes, thanks very much.  And speaking

1    of numbers, that's the next item on our agenda.  So 892?

2              MS. YOUNG:  Your Honor, this was as of Friday.

3              THE COURT:  Hold on, hold on.  I skipped a page.

4    It's because that was a Freudian skip.  Judge Noel, do you

5    want to take this one?

6              MAGISTRATE JUDGE NOEL:  So this is the foreign

7    discovery that is the followup to what happened in the UK.

8    Who wants to, Ms. Ahmann?

9              MS. AHMANN:  Yes.  Thank you, Your Honors.  As an

10   update, we have reached an agreement with one of the authors

11   McGovern who will appear voluntarily and a consent order has

12   been entered, and his deposition has been confirmed with the

13   date of December 9th, and plaintiffs have been advised of

14   that.

15             As to the remaining study authors, there was a

16   hearing in the High Court, and the Court did issue an order

17   ordering those witnesses.  There's four of them to appear,

18   and we're working on dates with regard to those four.  And I

19   have been in communication with the plaintiff that there's

20   tentative dates that I just found out this morning are still

21   in limbo, but we're trying to get those firmed up for two of

22   them.  But the plan is to have the depositions take place

23   from a period of November 30th to December 8th, and there

24   will be the four authors sometime in that period.

25             THE COURT:  Let me ask this question as I read the

1    joint report.  You indicate that the High Court in London

2    ordered that the testimony be limited to facts and not

3    include expert testimony.  I thought all these folks had

4    were expert opinions.  What do they know about facts?

5           MS. AHMANN:  Well, and that is the whole issue.

6    We want to know the facts about the studies, so we're not

7    going to be asking them opinion questions about the studies.

8    We're going to be asking questions about how the studies

9    were, you know, what the protocols were, how they were

10   carried out, and we laid that out to the High Court because

11   the Court was concerned particularly in the UK about it

12   being expert discovery, which they wouldn't have allowed, so

13   that was part of the argument to the High Court.  And so

14   they are facts.  It really relates to how the studies were

15   done, what the numbers were rather than, quite frankly,

16   opinions based upon those numbers.

17          MAGISTRATE JUDGE NOEL:  So a question arises

18   regarding, first of all, I'm not sure I understand what

19   concerns a London court has about expert testimony.  Is that

20   not a thing in England?

21          MS. AHMANN:  That's exactly right.  There is case

22   law there, particularly with regard to foreign matters, so

23   there is case law there, which did not allow expert

24   discovery based -- expert opinions, so that was something we

25   had to tell the Court that that's not what we were after.

1           (Unidentified telephone speaker heard).

2           MS. AHMANN:  Somebody needs to mute.

3           MAGISTRATE JUDGE NOEL:  So then how are they

4    defining experts?  As I understand it, these studies are

5    scientific studies these authors did and offered opinions

6    about what this data shows.  They can't testify to their own

7    opinions about their own studies?  Or just they can't

8    testify about how this might relate to claims in this case

9    or these multi-district cases?

10          MS. AHMANN:  Right, I think they can't extrapolate

11   out and that's not necessarily what we're asking them to do.

12   We're asking them about their studies and what the protocols

13   were and what the findings were, but that doesn't mean

14   that's expert.  So we're not going to ask them to

15   extrapolate out.

16          THE COURT:  That's -- I'm happy to go to England

17   and straighten them out.  But so my understanding of the

18   expert -- well, here's how I imagine that the UK Court is

19   defining an expert.  It would be a person who is giving an

20   expert opinion on the result that should be reached in the

21   case at issue.  So the depositions could fully explore what

22   those witnesses did in their own study, and you wouldn't

23   have -- you wouldn't have objections if there was something

24   that sounded like an opinion as long as it was talking just

25   about their own study.  But it's where it strays over into

1    what we now allow in the United States as to the opinion on

2    the ultimate issue.

3              MS. AHMANN:  That is my understanding.  And they

4    have, they call them examiners, so there will be an examiner

5    there to make sure, you know, that things are done according

6    to what would be allowed in the UK, so.

7              THE COURT:  Do you have any choice about the

8    examiner?  Is that someone appointed by the Court?

9              MS. AHMANN:  No, you hire the examiner.

10             MAGISTRATE JUDGE NOEL:  And is the examiner a

11   lawyer, a solicitor or a barrister or just a scientific

12   person?

13             MS. AHMANN:  No, I think it's a barrister as

14   opposed to a solicitor.  Any other questions on the form?

15   Thank you.

16             Do the plaintiffs have any observations on it

17   regarding the foreign depositions?

18             MS. ZIMMERMAN:  Yes, Your Honor.

19             MAGISTRATE JUDGE NOEL:  Ms. Zimmerman?

20             MS. ZIMMERMAN:  So it is our understanding, and we

21   have very much taken a back seat approach to the depositions

22   in the UK and let the defendants kind of push forward on

23   that issue.

24             It is our understanding that these are not

25   discovery depositions either, so the process on what exactly

1    we're going to be learning here I think is something we have

2    yet to figure out.  So these are supposedly, as we

3    understand it, trial depositions, and they're going to be

4    limited, I gather, to the facts and the methods and the

5    conclusions reached in the particular studies that have been

6    identified.  But I think that there are some limitations on

7    what kind of questions can even be asked of these witnesses

8    about their studies, at least that's my understanding.

9              MS. AHMANN:  Yes.

10             MAGISTRATE JUDGE NOEL:  But the plaintiffs intend

11   or it's the plaintiffs plan to have lawyers present for

12   these depositions.

13             MS. ZIMMERMAN:  Absolutely, Your Honor.

14             MAGISTRATE JUDGE NOEL:  And will you be asking

15   questions?

16             MS. ZIMMERMAN:  Yes, we well.

17             MAGISTRATE JUDGE NOEL:  Okay.

18             MS. ZIMMERMAN:  And pursuant to the High Court's

19   order, we all had to identify the documents that we would

20   question the witness about as of yesterday.  I think that

21   they need the documents 14 days before any depositions go

22   forward.

23             MAGISTRATE JUDGE NOEL:  Okay.

24

25

 1          MS. ZIMMERMAN:  One additional matter, we learned

 2    during the deposition of Mr. Van Duren I think in the last

 3    week or so, that the research of Mr. Harper, and he was the

 4    subject of the voluntary cancelled deposition back in

 5    September, we learned that he was and is actually on the 3M

 6    advisory board, so the plaintiffs are investigating our

 7    options with respect to rescheduling that deposition while

 8    we are in the UK.

 9          MAGISTRATE JUDGE NOEL:  I had one other question

10    actually for -- I'm sorry, were you done, Ms. Zimmerman?

11          MS. ZIMMERMAN:  Yes, Your Honor.

12          MAGISTRATE JUDGE NOEL:  There was -- hold on one

13    second.  Never mind, it relates to a different matter.

14    Scratch that.

15          JUDGE LEARY:  May I ask a couple of questions?

16          THE COURT:  Judge Leary, would you come up here so

17    that the people on the phone are able to hear you?

18          JUDGE LEARY:  I'm still a little bit confused

19    about the parameters of these foreign depositions.  And if

20    you're going to go to England to take them, I think as far

21    as I'm concerned, I would want to have a clear understanding

22    of whether that's going to be productive.  And it seems to

23    me from what I've heard so far is nobody is really certain

24    what can be asked or what will be allowed to be answered.

25    So my question is this, I'm going to call them authors

1    instead of experts, with regard to the authors of these

2    articles, let's assume an author reaches four conclusions.

3    Will you be allowed to ask with regard to conclusion one

4    what were the facts you relied upon in coming to this

5    conclusion?  Can that be asked?

6              MS. AHMANN:  Oh, I would believe that's a fact.

7    Yes, that's a fact question, Your Honor.

8              JUDGE LEARY:  Okay.  So when you're talking about

9    extrapolation, you're talking about taking information from

10   the author's article and then applying it more directly or

11   directly or indirectly to the litigation here, correct?

12             MS. AHMANN:  Yeah, I think we're allowed to ask

13   questions about the study, how it was conducted, what the

14   findings were, but.

15             JUDGE LEARY:  Okay, but you can ask questions

16   about the nexus between the conclusions and the study and

17   the other information they might have relied on?

18             MS. AHMANN:  I believe so.  I mean I have to say

19   that I'm not, you know, I didn't do the argument before the

20   High Court, but we did an argument and submitted information

21   to show them that this is what we were -- this is what we

22   were asking about and that it wasn't expert testimony and

23   the Court was satisfied.

24             We submitted questions.  We submitted requests for

25   documents which by and large they rejected, but we submitted

1       questions, and for the most part, or topics, those were

2       allowed by the High Court.

3              And so there is an idea I mean where exactly that

4       boundary is going to be, I can't tell you, and I don't quite

5       frankly know if anybody can tell you.  But the questions and

6       the general topic areas were something that the High Court

7       had at the time of the hearing.

8              JUDGE LEARY:  Well, I'll just make this

9       observation.  It does seem to me to be worthwhile if either

10      sides of this litigation can get together and reach some

11      sort of agreement as to the parameters in which they

12      understand the depositions of these authors will be taken,

13      and maybe in advance submit it to the examiner.  And so you

14      know before you go across the ocean where you are rather

15      than, I mean at this point in time my impression is you

16      don't know where you are, in terms of what you'll be able to

17      allow to ask these authors.

18             MS. AHMANN:  Well, I mean I agree with you, and we

19      will.  We'll make that effort to talk with the plaintiffs

20      but --

21             MR. BLACKWELL:  It might be helpful to Your Honors

22      if after this hearing today we gave Your Honor a copy of the

23      High Court's order that does spell out what we can and can't

24      go into in the deposition in some detail.

25             JUDGE LEARY:  Well, yeah, again, I'll make my own

 1     observation.  Those individuals who are going to -- those

 2     authors who are going to be presented are subject to the

 3     laws of England.  They're not subject -- we don't -- my

 4     court, District Court, Federal District Court doesn't have

 5     any jurisdiction over them.  So you can send that to us, but

 6     that still doesn't necessarily solve the problem in terms of

 7     what are the parameters of what you can ask?  So you can

 8     send the opinion of the High Court as to this, that, or the

 9     other thing, but I don't feel I'm in a position to say, you

10     know, based on this order, you can ask this, that or the

11     other thing.  I think you need to talk between yourselves,

12     either sides of the party, to try to reach an understanding

13     as to what you think the parameters of that opinion are and

14     then try to clarify it.

15              MR. BLACKWELL:  Even after we have agreed with

16     respect to that, there's an examiner there that still ends

17     up in front of the High Court in London, which will

18     ultimately be at least the arbiter in the UK about what we

19     can and can't do, but we've got plenty of ground to cover

20     with these studies in terms of what they did, who was

21     involved, what were the considerations, what things weren't

22     considered, how did you reach the findings you reached in

23     your study, which is ground central for us, you know.

24              JUDGE LEARY:  And you're saying that the order out

25     of England allows you to ask those questions.

1          MR. BLACKWELL:  Yes, that kind of factual

2     exploration, yes.

3          JUDGE LEARY:  Okay, good, thank you.

4          MAGISTRATE JUDGE NOEL:  Anything else with respect

5     to the foreign discovery?

6          MR. BLACKWELL:  No, Your Honor.

7          MS. ZIMMERMAN:  One last thing, I think the

8     plaintiffs want to make clear that we are reserving all of

9     our rights and arguments with respect to the admissibility

10    and use of these depositions down the road.

11         MAGISTRATE JUDGE NOEL:  Let me ask this, which

12    actually Judge Ericksen raised is are these authors that

13    we're talking about are the folks whose studies came up

14    during science day?  Some of them?

15         MR. BLACKWELL:  Yes, Your Honor.

16         MS. ZIMMERMAN:  Some of them.  The plaintiffs

17    didn't use any of these studies during science day.

18         MAGISTRATE JUDGE NOEL:  That's my question, I

19    guess.  So these folks, these studies are or are not studies

20    that your testifying experts at trial are going to be

21    relying upon?

22         MS. ZIMMERMAN:  You know, at this point, I don't

23    know what they will rely on.  I mean we have --

24         MR. BLACKWELL:  Your Honor, I hope they rely on

25    them because they're in the Plaintiff's Complaint, and so

1    these would be the studies that they have cited in their

2    long form Complaint that support their theories that the

3    Bair Hugger causes surgical site infection, so we wanted to

4    get to these study authors.  There weren't a whole lot of

5    studies discussed by the plaintiffs on science day.  I think

6    there maybe was one.  But these studies are in their

7    Complaint, and these are authors of the studies they were

8    relying on in the Complaint, so we wanted to get to the

9    foundation for the opinions that they espoused in their

10   studies.

11             MAGISTRATE JUDGE NOEL:  Okay.

12             MS. ZIMMERMAN:  It is our expectation that they

13   will certainly be studies that the experts will have

14   considered, and they've come up in the number of the

15   depositions that have been taken thus far.  But, I think

16   that this case is a case that we're building on science that

17   we're going to disagree about as we go forward.  But the

18   experts that we're going to bring into court are going to

19   have additional testing that they've done, and they will be

20   looking at these including these peer reviewed studies that

21   Mr. Blackwell references and that these depositions are

22   scheduled to explore in some way.  But they are all peer

23   reviewed studies as well.  So the fact that the plaintiffs

24   and defense attorneys are going to come in and do another

25   review of the studies, I guess is what we think we can do.

1     MAGISTRATE JUDGE NOEL:  Okay.  Was there something

2     one of your colleagues wanted to?

3          MS. CONLIN:  No, I was just going to say that, you

4     know, there is a belief that these studies may be relied on

5     by some of the experts on both sides.  My expectation is

6     that 3M's experts are going to say these studies aren't what

7     they say they are, and I think that's the factual

8     exploration that they're going after in the UK.

9          MAGISTRATE JUDGE NOEL:  Okay, thank you.  That

10    does bring us then to the numbers that Judge Ericksen was

11    going to inquire about.  Who has that information?

12         MR. OSTERHOLM:  Your Honor, we actually have an

13    updated number.  There are currently 916 cases filed into

14    the MDL.

15         THE COURT:  I thought we were closer to a

16    thousand.  And did you want to stay here for the state cases

17    too?  Overview of related State Court proceedings?

18         MR. OSTERHOLM:  My colleague Ms. Zimmerman may be

19    in a better position to answer that.

20         MS. ZIMMERMAN:  I don't think that there are any

21    updates other than what is reflected in the joint report,

22    but we're happy to talk to the Court about that.  I believe

23    that there are still 47 or 50 odd cases assigned to Judge

24    Leary, and then the other cases that are in different

25    jurisdictions in Illinois, Texas.  There's a new case in

1    Montana, and then Iowa and Canada.

2              THE COURT:  I thought that a few minutes ago I

3    heard that some of the Ramsey County cases were dismissed

4    and filed as part of the MDL, so wouldn't that change the

5    number?

6              MS. ZIMMERMAN:  It happened months and months ago,

7    so this number, I think, is accurate.

8              MS. YOUNG:  Good morning, Your Honor.  Just a

9    brief update on the Iowa State Court case.  That has been

10   removed to Federal Court and will be tagged to the MDL

11   shortly.  And then we had done a review of the docket

12   recently and noticed there are a number of dismissals.  I

13   think five without prejudice, and one with prejudice.  And

14   we aren't getting notice of all of those because we haven't

15   appeared in every individual case, and so I would ask that

16   either plaintiff's liaison counsel or someone do give us

17   service copies of stipulations for dismissal going forward.

18             THE COURT:  Did we not send you a list of all the

19   cases back when we were trying to clean up the docket?

20             MS. YOUNG:  I don't believe so.

21             THE COURT:  All right.  So plaintiff's liaison

22   counsel will make sure that you're informed on all of those?

23             MR. OSTERHOLM:  Yes, yes, we can go ahead and do

24   that.

25             MAGISTRATE JUDGE NOEL:  Those dismissals though

1    are not settlements.  Those are dismissals because some

2    discovery was made during the course of the thing that there

3    is no case.

4         MS. YOUNG:  We were asked to sign one stipulation

5    for dismissal with prejudice but don't have any

6    understanding as to the basis for any of the dismissals.

7         MAGISTRATE JUDGE NOEL:  Okay.

8         THE COURT:  Thank you.  Nothing new in Canada.

9         MS. YOUNG:  No, Your Honors, the only update on

10   Canada is that the plaintiff's counsel there has asked for a

11   case status conference, and we expect that would happen in

12   the early part of 2017.

13        MR. HULSE:  Your Honors, could I say a quick

14   statement on the *Lawson* case in Texas?

15        THE COURT:  Yes.

16        MR. HULSE:  Just some learnings we're having from

17   the *Lawson* case, which is a case where there is also a med

18   mal claim against the doctor and the hospital.

19        THE COURT:  Did you say "learnings?"

20        MR. HULSE:  "Learnings," yeah, I think that that

21   will be useful.  In that case there's been a real struggle

22   with product identification, and our conclusion from this is

23   that this is going to be a persistent issue in these cases

24   where the medical records don't include a clear

25   identification of a Bair Hugger.  And so what we're getting

1     into is --

2                 THE COURT:  Could I just interrupt you right

3     there?

4                 MR. HULSE:  Yes, sure.

5                 THE COURT:  Are you saying something different

6     from what plaintiff's counsel has mentioned in connection

7     with some of the discovery disputes that it's the brand or

8     the model of Bair Hugger?  Or are you saying --

9                 MR. HULSE:  Whether a Bair Hugger warming unit was

10    actually used at all in a surgery.  And so I just want to

11    highlight this as something that through the bellwether

12    process that we're likely, if the Lawson case, which is the

13    only case that's sort of proceeding through the medical

14    records part of the case right now is an indication of

15    something that we're all going have to grapple with as part

16    of that discovery that we do on the bellwether cases.  So

17    it's --

18                MAGISTRATE JUDGE NOEL:  Is it an issue of whether

19    there was a warming device used or whether the warming

20    device that was used was made by 3M subsidiaries.

21                MR. HULSE:  The latter, Your Honor, exactly.

22    That's right, and what we found --

23                MAGISTRATE JUDGE NOEL:  How many other makers out

24    there are they that are making warming devices?  Forced air

25    warming devices?

1          MR. HULSE:  Several others like Stryker.

2    Augustine, of course, has a warming device.  And warming is

3    not always used too.  And, of course, the patient themselves

4    they're out at the time, and so they don't have a

5    recollection, and then medical records can be, as we found,

6    have been conflicting in terms of what warming is used.

7          There's also pre-operative warming that's often

8    used, and a 3M device, the Bair Paws device is often used in

9    pre-warming.  That's a blower that connects to a gown and

10   that can cause confusion in the -- in the sort of the

11   determination that this is a Bair Hugger case.  It may be

12   that there's a mistake like there appeared to be in this

13   case about what the 3M, at what stage a 3M device was used.

14   Basically, you've got an indication that a 3M device was

15   used pre-operatively, and then unclear records about whether

16   a 3M device was used operatively.

17          THE COURT:  Or post-operatively to warm up the

18   surgeon who was cold from operating in a cold room.

19          MR. HULSE:  Absolutely.  You have the potential

20   for 3M products warming at all three stages:  Pre, intra and

21   post.  And so, again, I just wanted to raise it with Your

22   Honors, Judge Leary, it's an issue that we are likely to

23   contend with in cases going forward.

24          MAGISTRATE JUDGE NOEL:  So is the defendant

25   developing some strategy or plan to sort of figure out a way

1    to address that more broadly in all the cases in an

2    efficient, targeted way?  Or are you just sort of taking it

3    see how it goes?

4              MR. HULSE:  Our conclusion is the only real way to

5    address it is with through discovery of the medical

6    providers.  And it will in some cases like the Lawson case

7    require depositions of like nurses, and so forth.  But

8    there's no way based on our records, I mean all we can know

9    is whether there is a Bair Hugger device, warming air

10   devices at the hospital, but that doesn't necessarily mean

11   that it was used and that there aren't other companies'

12   devices.

13             And so that's as far as we can take it from that

14   point forward.  It involves, it's going to require discovery

15   of medical records and potentially depositions, to the

16   extent that the medical records don't tell you, depositions

17   of the nurses who are on staff at the time to say, yes, a

18   Bair Hugger was actually used during that surgery.

19             MAGISTRATE JUDGE NOEL:  Wasn't this the topic of a

20   prior discovery conference regarding the plaintiffs wanting

21   to get your list of what hospitals had your which models?

22             MR. HULSE:  It was related to that, Your Honor,

23   but part of the point that we made is you cannot draw that

24   conclusion just from the fact that there may have been a

25   Bair Hugger assigned to that, that went to that hospital.

 1          MAGISTRATE JUDGE NOEL:  Are the plaintiffs'

 2     lawyers in Lawson represented anywhere in our leadership

 3     team here or no?

 4          MR. HULSE:  No.

 5          MS. ZIMMERMAN:  No, Your Honor.

 6          MAGISTRATE JUDGE NOEL:  Okay, thank you.

 7          MR. HULSE:  Thanks, Your Honors.

 8          MAGISTRATE JUDGE NOEL Ms. Zimmerman, did you want

 9     to say anything on these issues.

10          MS. ZIMMERMAN:  Just that we are not experiencing

11     that as a difficulty.  I mean it can be problematic, and

12     there is a lot of variation from medical records from one

13     hospital to another.  But there are some records where it

14     will actually say, they'll have a little logo Bair Hugger

15     with the little bear on it, and the nurse or whoever checks

16     it off.

17          We can find it in billing reports.  I mean there

18     are actually reports that we find now.  We don't have the

19     serial number for the actual heating unit most of the time,

20     and I believe that that's going to be information that's

21     going to be in the custody of the defendants.  But at least

22     we are not seeing that this is an issue with respect to the

23     filings in either Ramsey County or the MDL.  And I do know

24     that defendants have submitted letters to various attorneys

25     who have filed cases where I assume based on a customer list

1    or something, the defendants are of a belief that there was

2    no Bair Hugger in that particular hospital.

3           So I think that if there was a sense by the

4    defendants that a majority or a large number of cases either

5    in Ramsey County or before this Court, we're involving

6    hospitals that didn't have Bair Huggers, I suspect we would

7    be getting a lot of these letters because I've seen the

8    letters that do go out.

9           THE COURT:  What are the other companies that make

10   forced air?

11          MS. ZIMMERMAN:  There are a few.  There's a

12   company called Smiths Medical, I believe.  There is another

13   Stryker has a smaller market share, but they have another

14   product that is forced air warming.  But to my

15   understanding, forced air warming made by 3M and the Arizant

16   Company, the Bair Hugger, is over 90 percent of the market

17   share.

18          THE COURT:  Okay.

19          MR. BLACKWELL:  And Augustine makes the HotDog

20   that's in some hospitals.

21          THE COURT:  No, no, it was just I didn't realize

22   that there were other companies that made also the forced

23   air warming blanket.  So do you know when there's a form

24   with a picture of a little bear for the nurse to check, is

25   it like kleenex?  You know, maybe there's Puffs or

```
 1      something, and do they --
 2                  MS. ZIMMERMAN:  That could be.
 3                  THE COURT:  Who knows, yeah, but I guess you'll
 4      find out.
 5                  MS. CONLIN:  Actually, Your Honor, most hospitals
 6      are single source suppliers.  In other words, that once
 7      you're in at a hospital, they're not choosing amongst
 8      various models.
 9                  THE COURT:  That makes sense.
10                  MS. CONLIN:  And, you know, some of these other
11      companies have -- they don't have, they may have products on
12      the market, but they're not necessarily forced air warming.
13                  THE COURT:  Okay.
14                  MR. BLACKWELL:  And our point really is a straight
15      forward one that if we're going to pick a bellwether case
16      where the claim is that the Bair Hugger causes SSIs when
17      used during surgeries, we want to make sure we've got
18      positive ID that there's a Bair Hugger being used in the
19      surgery.  And there is some fuzziness, as the Lawson case
20      indicates, that that may not be the case simply because it's
21      in a pleading or the Bair Huggers were at a hospital,
22      generally.
23                  MS. ZIMMERMAN:  I suspect we'll take that up at
24      the appropriate time down the road.
25                  THE COURT:  If you find out before December 28th
```

1    that some cases shouldn't be in the pool, let me know, would

2    you?

3              MS. ZIMMERMAN:  Absolutely.  And to the extent

4    that the Court is interested, there are other warming

5    products that are not forced air like the Augustine product

6    and other kind of --

7              THE COURT:  I know that.  I just, when one of you

8    lawyers said that there are other forced air warming things,

9    that was, I perhaps should have known that.  I just was not

10   aware of that.  I didn't remember that from science day.

11             Number 5 then, additional pretrial orders, nothing

12   there.  Discovery, you'll be -- well, let's, Ms. Zimmerman?

13             MS. ZIMMERMAN:  Thank you, Your Honor.

14             Starting out with number 6, the status of

15   discovery, we in the joint report reflected the fact that

16   there have been some ongoing issues with respect to the

17   privilege log.  It is our expectation that that issue will

18   likely come to a head in time for the status conference in

19   December, so that's my expectation at this point.

20             With respect to the Computer Assisted Review, the

21   CAR protocol, which was stipulated to and entered by this

22   Court, the plaintiffs request that the Court be made aware

23   of the fact that we still don't have any of these documents.

24   This hasn't been done, hasn't been, none of the car protocol

25   has been implemented, so we are getting some e-mails but the

1      actual agreed upon process to identify the electronically

2      stored information has not yet commenced, and we have even

3      as of this morning no date by which these are going to be

4      completed.

5              And so what I'd like to do, you know, we've had

6      Mr. Ciresi has taken a couple of deposition in the last few

7      weeks, as has Ms. Conlin.  We have left these depositions

8      open pending review of the documents that are going to be

9      produced pursuant to the CAR protocol.  But we're at this

10     point I think 63 days away from the close of general

11     causation discovery.  And so I'd like to have my colleague

12     Mr. Parekh come up to talk a little bit more in detail about

13     the specifics of what we have and where we're at.  But given

14     the deadlines in this case, we really request that there be

15     a deadline by which these CAR protocol documents be

16     produced.

17             MAGISTRATE JUDGE NOEL:  So whose more appropriate

18     to respond to this question, you or your colleague?  And the

19     question is what's your response to my understanding from

20     reading this statement the defendants contend some of that

21     delay is caused by the collaborative process that the

22     protocol calls for, and that the plaintiffs have some

23     responsibility for the delay?

24             MS. ZIMMERMAN:  I think that Mr. Parekh is

25     prepared to handle this as well.

1          MR. PAREKH:  So, just to clarify a little bit, the

2     CAR protocol does call for a collaborative effort, and we're

3     in the process of that collaborative effort, so there is

4     parts of it that are going forward.  The initial process was

5     that there would be an identification of random documents.

6     The plaintiffs would get to review those documents and turn

7     those around back to the defendants within 14 days, which we

8     did.

9          The part of the delay on the CAR protocol actually

10    stems from much further back in time, which is when we had

11    the dispute over the custodian issue, defendants

12    unilaterally stopped this process and that led to weeks of

13    delay where nothing happened over protests by plaintiffs

14    that we should continue with that process even with that

15    dispute outstanding.

16         At this point, we've finished step one, I believe,

17    I think, as of today, which is the initial seed set of

18    documents, and then the next step is that we need to do some

19    iterations to hit the 80 percent, sort of the satisfaction

20    level that we've all agreed to.

21         The issue is the turnaround time on some of these

22    things has been taking a significant amount of time from

23    defendant's side.  I mean we've tried to turn things around

24    as fast as possible from the plaintiffs' side, and we have.

25    But, I mean just as one example, you know, we sent a list of

1    documents that we said from a log that we thought should be

2    included as relevant documents when defendants had

3    identified them as irrelevant documents.  It took

4    approximately two weeks for us to get a copy of those

5    documents back to us so that we could actually review them,

6    and then we turned those around in, I believe, four days at

7    this point.  They came in on Friday, and we turned them

8    around.

9         So it's just, it's taking longer than we believe

10   it should, but I think having a deadline by which all of

11   these documents must be produced would be helpful in terms

12   of spurring the process along.  Deadlines make people work

13   harder and work more efficiently, and so that's what we were

14   asking for.

15        MAGISTRATE JUDGE NOEL:  And do you have a proposed

16   deadline in mine that you would suggest?

17        MR. PAREKH:  We think having discovery completed

18   by the December 15th conference would be -- I think would

19   allow us enough time between now and then to get everything

20   done.

21        MAGISTRATE JUDGE NOEL:  Okay.  Mr. Hulse?

22        MR. PAREKH:  The documents received by plaintiffs.

23        MR. HULSE:  Your Honors, the plaintiffs here

24   insisted on a collaborative process.  The process that we

25   agreed to bakes in multiple two week iterations for them to

1    review and challenge each stage that we run at in order to

2    achieve 80 percent.

3              I agree, we haven't always moved as fast as we

4    could.  You've seen our position that we think the majority

5    of this owes to the plaintiffs.  We have produced a very,

6    very substantial amount of e-mail both between the prior CAR

7    process that was done for the prior litigation, but much

8    more so through key word searches that we've agreed upon

9    with plaintiffs.  And our belief is that much of what is

10   going to be produced out of this process is, just to put a

11   word on it, going to be "junk" because we have agreed on for

12   this purpose extremely broad relevance criteria that's going

13   to generate a lot of stuff that just relates to Bair Hugger

14   in some sense.

15             That said, I think the plaintiffs know, and Mr.

16   Parekh knows that finishing this process by a date in

17   December given these 14 day challenge procedures that

18   they've requested and they got here is not realistic.  We

19   all have a discovery cut-off right now at the end of January

20   that we have to abide by, obviously, but arbitrarily moving

21   that up is simply not realistic.

22             Now, before we came in here today, Mr. Parekh and

23   I, Mr. Parekh made clear to me the position he was going to

24   express, but we did have a very productive discussion about

25   things we could do, agreements that we could reach to

38

1    streamline this protocol that we agreed to to move through

2    the remainder of the process far more quickly than the

3    protocol would provide.

4         If we are able to implement that, finish our

5    discussion and implement it, my suggestion would be that we

6    come back, Your Honors, within two weeks when we have

7    significantly moved now the -- now that we've got the

8    training set agreed, move the rest of the process forward.

9    And if the plaintiffs are dissatisfied at that point with

10   the progress of things, then absolutely they should take it

11   up with Your Honors about whether something additional needs

12   to be ordered.

13        But I don't think that is what they're asking for

14   today, at least in front of the Court in terms of deadline

15   is realistic or can be accomplished under the existing

16   protocol.  And the only way we would have a prayer of doing

17   that is rescinding the protocol to eliminate the

18   collaborative portions of it.

19        MAGISTRATE JUDGE NOEL:  If the Court were inclined

20   to impose a deadline, and I don't know whether it is or

21   isn't, but if it were, what deadline would you suggest the

22   Court impose?

23        MR. HULSE:  Simply the discovery close date.

24   Obviously, if the plaintiffs conclusion that there was

25   something that was material to them that they needed before

1    a deposition they took, I assume that they will as they've

2    said raise that with the Court.  But as in any large scale

3    litigation, there is going to be ongoing document production

4    through the end of discovery.  We have produced nearly all

5    of everything else in addition to the nearly a million pages

6    of e-mail and attachments that we've produced.

7            The plaintiffs have had no problem using e-mail,

8    using plenty of e-mail in the depositions that they've taken

9    so far.  And like I said, we believe that it is what has

10   actually been produced is the most important stuff and what

11   much of what is likely to be produced in the remainder of

12   this process is of minimal relevance at best.  But, again,

13   it's, I think, it's simply not compatible with the protocol

14   as we have it today to get this process fully completed by a

15   month from now.

16           MAGISTRATE JUDGE NOEL:  Okay.  Thank you.

17           THE COURT:  Mr. Parekh, would you say that you

18   actually made a motion for a December 15th deadline such

19   that it has to be ruled on?

20           MR. PAREKH:  Yes, Your Honor, we would make a

21   formal motion.

22           THE COURT:  Okay, well, all right.  So if there's

23   a motion, the motion is denied because we've got the

24   collaborative process.  If somebody is not following it as

25   they're supposed to be following it, let us know in the

1    interim, and we can hopefully have a more -- it would be a

2    more effective way for the Court to intervene rather than

3    what strikes me right now, I mean I feel hard pressed to

4    say, okay, we said discovery ending now.  Now this part has

5    to end on December 15th.

6            So I'm not going to order that but, obviously, as

7    you're going through, have in mind everything that you've

8    all talked about today, and come to us in the course of the

9    process.  You know if they say they're supposed to get

10   something done in two weeks and they don't get it done, then

11   let us know.

12           MR. PAREKH:  Your Honor, our only concern is that

13   when we agreed to the two-week time frame that was months

14   ago and now that we're sort of that the initial process

15   didn't start for about three months, that the protocol was

16   entered.

17           THE COURT:  Well, when, stage 1 of the iterative

18   process often takes the longest, so you're there, and I

19   would prefer to see how things go from here on rather than

20   jump in right now with a sledgehammer.

21           MR. PAREKH:  I understand, Your Honor.  Thank you.

22           THE COURT:  Other discovery issues?  You will be

23   meeting?  Meeting and conferring.  Okay, so you'll be at

24   1:00, would you like to be in Judge Noel's courtroom?  Is

25   that what you're planning?

 1          MS. ZIMMERMAN:  Wherever the Court would prefer.

 2          THE COURT:  Let's say Judge Noel's courtroom.

 3          Okay.  Deposition update.

 4          MS. ZIMMERMAN:  There is one additional issue with

 5     respect to the depositions, and this arises out of the

 6     deposition of Mark Albrecht, which was done in two parts.

 7     The second part concluded on Saturday afternoon.  The

 8     defendants used the full seven hours, and the witness

 9     declined to continue to offer testimony.  Mr. Gordon, Corey

10     Gordon suggested that he may be bringing a motion to the

11     Court to require or seek an order to have Mr. Albrecht

12     appear for additional deposition.  I think he said he has a

13     couple additional hours.

14          The plaintiffs, additionally, and I don't know if

15     that is a motion you intend to bring or not, but the

16     plaintiffs have not yet had an opportunity to question

17     Mr. Albrecht at all.

18          MAGISTRATE JUDGE NOEL:  I'm sorry, ten seconds of

19     context, who is Mr. Albrecht?

20          MS. ZIMMERMAN:  He is a former employee of the

21     Arizant and Augustine company.

22          MR. BLACKWELL:  He's an author of several of the

23     studies that are at issue.

24          THE COURT:  He's a U.S. study author.

25          MS. ZIMMERMAN:  He is, and he lives here in

1    Minnesota.

2              THE COURT:  One more time.  You want more hours?

3              MR. BLACKWELL:  Yes, Your Honor.  And this is,

4    assume Ms. Zimmerman is simply teeing it up today, but we do

5    intend to come to the Court with a specific proposal for how

6    much more time we need, and what we'd like to cover.  This

7    is the first deposition we've come upon where our seven

8    hours was up, and we still have other ground yet to cover,

9    and plaintiffs need to ask questions also.  He's a very

10   central researcher and witness.

11             MAGISTRATE JUDGE NOEL:  Is he represented by

12   counsel?

13             MS. ZIMMERMAN:  No, he's not.

14             MAGISTRATE JUDGE NOEL:  He just said, "I'm done,"

15   at seven hours because he's read the rule?

16             MR. BLACKWELL:  That's correct.  He's pretty

17   savvy.

18             THE COURT:  Do the plaintiffs intend to take his

19   deposition then separately?

20             MS. ZIMMERMAN:  We do expect to notice his

21   deposition.  We certainly don't expect we would take seven

22   hours, but we do object to defendants getting more than

23   seven hours for his deposition.  And we've taken at this

24   point some of the most key 3M employees, Mr. Ciresi and

25   Ms. Conlin have taken in the last few weeks, in less than

1    seven hours, and we certainly could have gone over seven

2    hours.  But the point of the rule is that there is a limited

3    period of time, and we have to focus our time and our

4    attention.  And we think that with respect to Mr. Albrecht

5    that the seven hours has come and gone, and we may have some

6    questions if we decide to notice his deposition, but that

7    there is no reason that 3M be allowed additional time with

8    this witness.

9              MR. BLACKWELL:  This is my point about jumping the

10   gun on this.  We haven't even petitioned the Court to

11   explain why we need to do this yet, yet we want to do it

12   properly and formally.  And the plaintiffs have -- we should

13   have a fair opportunity to respond to that, but so the Court

14   can see what we've covered and have some sense of what is

15   yet to be covered, and we'd like to be able to present that

16   to the Court in the proper fashion.

17             THE COURT:  All right.  We're warned that a motion

18   may be forthcoming.  Get ready for it.

19             MR. BLACKWELL:  Thank you, Your Honor.

20             THE COURT:  Well, unless I've skipped ahead again,

21   I'm on page 10, which is the signature page.

22             All right.  Let me ask about the December time,

23   and this has to do with your flight schedules.  I'm not sure

24   why we set 10:00.  I think I picked that because I thought

25   you needed time to get into town or something.  9, 9:30, 10?

```
 1            MS. ZIMMERMAN:  That's fine with the plaintiffs,
 2    Your Honor.
 3            THE COURT:  So if we say, let's say 9:30, but I
 4    don't want to just do that if it's going to mean that people
 5    have to flight in the night before whereas otherwise they
 6    wouldn't.
 7            MS. ZIMMERMAN:  It's going to be fine, Your Honor.
 8    I think anyone who would have to fly in probably has to fly
 9    in the night before anyway, and an earlier hearing may
10    actually facilitate departure later in that day.
11            THE COURT:  Because originally we had it in the
12    afternoon.  So let me just -- all right.  Well, let's say
13    9:30.  I was looking at the 10:00, and I thought, well,
14    that's an odd time.  I wonder how that happened.
15            MR. BLACKWELL:  And, Your Honors, I will say I
16    will not be here on December 15th.  I have to choose on that
17    date between this Court and my wife.  And as she will be in
18    Saint Kitts, I must be with her.  So I will not be here.
19            THE COURT:  So now you're not even being
20    excessively uxorious.
21            MR. BLACKWELL:  Not at all, Your Honor.  So I
22    won't be here.  My hope is that it won't be necessary, but
23    we'll see.
24            MAGISTRATE JUDGE NOEL:  I would just observe you
25    have a table full of qualified colleagues so.
```

1              THE COURT:  There's only one empty chair.  That's

2     for the really qualified person.

3              MR. BLACKWELL:  Yes, Your Honor.  I couldn't agree

4     more, and they also hope it won't be necessary.

5              THE COURT:  All right.  Thank you all.  We're in

6     recess.

7              MAGISTRATE JUDGE NOEL:  We'll see you all at 1:00

8     in 9W.

9              (Court adjourned at 11:07 a.m.)

10

11                        *     *     *

12

13

14         I, Maria V. Weinbeck, certify that the foregoing is

15    a correct transcript from the record of proceedings in the

16    above-entitled matter.

17

18              Certified by:   *s/ Maria V. Weinbeck*

19                        Maria V. Weinbeck, RMR-FCRR

20

21

22

23

24

25