## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

This Document Relates To:
All Actions

MDL No. 15-2666 (JNE/FLN)

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF
DOCUMENTS ON AUGUSTINE'S
PRIVILEGE LOG**

## INTRODUCTION

This Court should compel Dr. Scott Augustine and the entities he controls
(collectively, "Augustine")[1] to produce documents identified on Augustine's two most
recent privilege logs, because Augustine has failed to establish that the withheld
communications were made in connection with an attorney-client or "expert" consulting
relationship, as Augustine was required to do under this Court's November 23, 2016
Order, ECF No. 148 ("11.23.2016 Order"). Augustine's responses to that Order—an
updated privilege log and three-page affidavit—continue his improper stonewalling, and
are deficient in five specific respects.[2]

---

[1] In this brief, "Augustine" refers to: Dr. Scott Augustine, Augustine Biomedical and
Design, Augustine Temperature Management, Hot Dog International, Hot Dog USA,
Orthopedic Infection Advisory, and Stop Surgical Infection. *See* ECF No. 178 at 1 n.1.
[2] In emails of January 11 and January 17, 2017, counsel for Defendants requested a meet
and confer with counsel for Augustine and asked that Augustine provide supplemental
information as set forth herein. Counsel for Augustine has not provided any substantive
response to these requests, but instead suggested we confer with David Hodges.
Defendants do not believe this is a proper response, because the issue concerns
Augustine's privilege log. In any event, Mr. Hodges is not available to meet before
filing.

*First*, the affidavit Augustine provided does not describe any attorney-client or consulting relationship.  Instead, it describes a *business* relationship wherein Augustine sought out the law firm of Kennedy Hodges as a partner in its effort to compete with Defendants and fuel years of litigation against them.  Augustine tellingly avers that its communications with Kennedy Hodges were all "consistent with [its] two goals": to "stop Bair Hugger" and to "promote the use of" his competing product, the "HotDog." (Exh. A, Scott Augustine Dec. 12, 2016 Aff. ¶ 8.)   Those entries, moreover, are consistent with recently produced documents showing Augustine and his counsel soliciting potential plaintiffs and referring them to Kennedy Hodges. Viewed collectively, these documents (*see* Exh. B, Sept. 27, 2016 Scott Augustine Presentation, Augustine_0028804; Exhs. C-G, Emails Produced by S. Augustine, Augustine_0015613, 0015695, 0015599, 0015690, and 0015667) show that Augustine's goals were *business* goals, making his communications with Kennedy Hodges business communications. And because communications with one's business partner are not privileged, Augustine cannot withhold them.  *See U.S. v. Diageo, Inc.*, 2003 WL 1950262, at *1 (D. Minn. Feb. 20, 2003) (Doty, J.).

*Second*, even assuming there was initially an attorney-client or consultancy relationship in 2009, it ended long before the communications that are now being withheld were sent. The key to this conclusion is Augustine's statement, under oath, that it has been "several years since Kennedy Hodges has performed any legal services for Augustine."  (Exh. A, Augustine Aff. ¶ 10.)  That being true, Augustine's privilege log should not contain any entries for recent years.  But it does: the December 22, 2016

privilege log, Augustine's most recent, *only* includes entries for the last few years (2013 –
2015).  (Exh. H, Scott Augustine Dec. 22, 2016 Privilege Log.)  Augustine cannot aver
that Kennedy Hodges has not been its lawyers for "several years," while in the same
breath logging such communications as protected from disclosure on its privilege log.
*See Bible Faith Lutheran Church of India, Inc. v. Ass'n of Free Lutheran Congregations
Mission Corp.*, 1991 WL 1301309, at *2 (D. Minn. Mar. 5, 1991) (Noel, J.) (because
there was "no attorney client relationship" in place at the relevant time, finding that
withheld tape was "not privileged and is discoverable").

    *Third*, Augustine cannot establish that he served as a non-testifying expert so as to
invoke the attorney-work product protection.  Augustine's privilege log—which
withholds numerous documents from production on the basis that he was a "non-
testifying expert" for Kennedy Hodges in connection with the *Walton* action[3]—is *directly
contrary* to prior representations of the Kennedy Hodges firm itself.  In the *Walton*
action, Kennedy Hodges represented to the court that it had "had no contact or
communications with Dr. Augustine relative to this case" aside from one phone call.
(Exh. I, *Walton* Order, at 1.)  Augustine's latest privilege log, however, withholds
numerous documents because, he says, he *was* consulting with Kennedy Hodges at that
time, on the *Walton* case.  Augustine cannot be believed, especially because *prior*
versions of his privilege log did *not* claim this expert-consulting relationship as to these
very same documents.  In light of these inconsistencies, Augustine has simply not met his

---

[3] *See* Exh. I, Order, *Walton v. 3M Co.*, No. 4:13-cv-01164 (S.D. Tex. May 19, 2015),
ECF No. 120.

burden to show a consulting relationship and the accompanying protection of the work-product doctrine.

*Fourth*, the privilege log Augustine provided does not explain how the communications Augustine is withholding were related to the *solicitation or receipt* of legal advice.  Not all communications with lawyers are privileged.  Only those that are exchanged in connection with soliciting or receiving legal advice are.  There is nothing on Augustine's two privilege logs that explains how the withheld communications were sent in connection with the rendering of any legal advice. This too, defeats any claim of privilege.  *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977) (law firm's memorandum was not privileged because it did "little more than reveal the relationship between the parties, the purpose for which Law Firm had been engaged, and the steps which the Firm intended to take in discharging its obligation").

*Finally*, Augustine's privilege log fails to contain the specificity and detail required by Rule 26 and this Court's November 23, 2016 Order.  It lumps many entries together without specifying what the claimed privilege is. It uses vague and boilerplate language.  And it has constantly changed the description of the documents and what the claimed privilege is.  Augustine has had at least three chances to get his privilege log right, and has repeatedly failed to do so.

For each of these reasons, Augustine has failed to satisfy his burden that the attorney-client privilege and/or work-product protections apply.  Accordingly, Defendants ask that the Court order Augustine to produce (1) all of the documents on his August 17, 2016 privilege log; and (2) documents reflected in the first 84 entries on its

December 22, 2016 privilege log.[4]   In the alternative, if the Court has any doubt, Defendants request that the Court order Augustine to produce the withheld documents for an *in-camera* inspection, with the Court to determine if the privilege or work-product protections apply.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is well acquainted with the background of Defendants' efforts to extract information from Dr. Augustine and his related entities, and Defendants will not recite the entirety of that history again here.   There are, however, key facts that show the lengths to which Augustine, its in-house counsel Randy Benham, and Kennedy Hodges have gone to stonewall Defendants by improperly claiming an attorney-client and/or consulting relationship that never existed.   Here is what we know now:

In July 2009, Augustine began a relationship with Kennedy Hodges.   (Exh. A, Augustine Aff. ¶ 4.)   Augustine claims that this was an "attorney-client relationship," *see id.*, but his affidavit and the privilege log bear no indicia of that.[5]   There is no

---

[4] Augustine's August 17, 2016 privilege log is attached as Exhibit J, and the December 22, 2016 privilege log is attached as Exhibit H.   Ten documents that were initially on Exhibit J are omitted from Exhibit H, and Augustine has not explained whether he waives claims of privilege as to those ten entries.   To the extent he presses his claims of privilege for both logs, Defendants seek production of ***all*** 23 documents on Exhibit J, and of the first 84 documents on Exhibit H, all of which claim protection based on an attorney-client or consultant relationship with the Kennedy Hodges law firm.

[5] Despite this Court's order that Augustine identify the beginning and end dates of any attorney-client or consulting relationship with Kennedy Hodges (11.23.2016 Order ¶ 4), Augustine did not attempt to do that.   Augustine did not look in its files, call anyone at Kennedy Hodges, or do anything else to figure out if there was an attorney-client relationship. Instead, it just relied on an affidavit of its general counsel, filed over a year

engagement letter.  There is no retainer or other evidence that Augustine ever paid Kennedy Hodges for legal services.  Most importantly, the general description Augustine provides shows that it engaged Kennedy Hodges as a *business partner*, not legal adviser.

Augustine specifically avers that there were "multiple" purposes for his retention of Kennedy Hodges: (1) to "learn about product liability litigation"; (2) to "understand why personal injury firms virtually never filed cases on behalf of patients injured by surgical infections," and (3) to "educate Kennedy Hodges" about forced-air warming. (Exh. A, Augustine Aff. ¶¶ 4-7.)  Notably, Augustine never avers that he engaged Kennedy Hodges to solicit legal advice—instead, it was *Augustine* providing the advice to Kennedy Hodges about "the risks of forced-air warming," so that Kennedy Hodges could go about "pursuing litigation against forced-air warming companies" (Exh. A, Augustine Aff. ¶ 8).  And, of course, that is exactly what it did.

For example, Kennedy Hodges represented plaintiff Timothy Walton in the first lawsuit ever filed against Arizant and 3M alleging the same theories about the Bair Hugger system alleged in this Court (the "*Walton* Action").  The *Walton* Action was venued in the United States District Court for the Southern District of Texas.  In the *Walton* Action, Defendants sought discovery of communications with Augustine, which Kennedy Hodges resisted on grounds of privilege.  To support its privilege claims, Kennedy Hodges represented in part that "they have had *no contact or communications with Dr. Augustine* relative to this case," other than one telephone call.  (Exh. I, *Walton*

---

ago in the *Walton* action, as well as what Mr. Benham told Augustine about what Kennedy Hodges represented to the *Walton* court.

Order, at 1) (emphasis added).  The Court relied upon that representation, and denied Defendants' motion to compel.

Nor was the *Walton* Action the only case in which Augustine or his counsel solicited plaintiffs or referred them to Kennedy Hodges.  In early 2014, for example, Augustine's counsel Randy Benham solicited putative plaintiff Rosie Bartel ("Ms. Bartel"), writing that he had "communicated by email with David Hodges, the Texas attorney who filed the first case against Bair Hugger.  When he responds, I will introduce the two of you by email. . . ."  (Exh. D, Feb. 3, 2014 Email, Augustine_0015695.)  Benham was persistent, offering to introduce attorney Hodges to Ms. Bartel in numerous emails.  (Exh. C, Feb. 3, 2014 Email, Augustine_0015613; Exh. G, July 28, 2015 Email, Augustine_0015667.)   Benham even suggested adding a link to Ms. Bartel's website, entitled "Feel Like Suing?," with links to plaintiffs' law firms, including Kennedy Hodges.  (Exh. F, May 21, 2014 Email, Augustine_0015690.)  Ms. Bartel connected with Kennedy Hodges, but did not initially bring suit because Hodges believed the "statute of limitations [had] run out on [her] claim."   (Exh. E, Feb. 6, 2014 Email, Augustine_0015599.)

Later, however, Ms. Bartel had a change of heart, and again emailed Augustine's counsel to ask who she should talk to "about suing."  (Exh. F, May 21, 2014 Email.)  Here was Augustine's counsel's response (highlighting is added):

> Rosie, I would suggest you talk to David Hodges at the Kennedy Hodges firm in Houston.  He is the first lawyer who became interested in the research.  He filed the first cases, and he knows more about this than anyone.  As much as anyone in his line of work can be trusted, I think he can.  (I know that sounds harsh, but your tragedy is his business.)

(Exh. F, May 21, 2014 Email.)  Tellingly, Augustine's counsel wrote that "your tragedy is [Kennedy Hodges'] business."   And there were other solicitations to doctors and hospitals: in numerous letters and PowerPoint presentations, Augustine and its counsel sought to get hospitals and doctors (1) to switch to Augustine's competing system, (*see* Exh. K, Scott Augustine Ltrs. to Hospitals, Augustine_0027067) and (2) to hire Kennedy Hodges to bring a "wave of new litigation," as shown in this slide (see Exh. B, Augustine Presentation, at Augustine_0028863):



In light of Augustine's actions, on April 6, 2015, Defendants served subpoenas on Augustine seeking production of documents.  In his initial response to that subpoena, Augustine's counsel claimed that responsive documents were privileged, but refused to produce any privilege log, instead asserting a blanket privilege to an unspecified number of documents.   (*See* Exh. L, Apr. 15, 2015 Ltr. from R. Benham.) That required Defendants to contact this Court for the first time, and ask that Augustine be compelled to produce responsive documents and a privilege log if necessary.

In opposition to that motion, Augustine's general counsel Randy Benham *repeated* the representation that Kennedy Hodges had "no contact or communications with Dr. Augustine" relative to the *Walton* case (other than one phone call), and averred, in addition, that there had been "no such communications regarding *Johnson* [another Kennedy Hodges lawsuit against Defendants] at all." (Exh. M, Randy Benham Sept. 29, 2015 Aff. ¶ 13.)   Benham also swore, under oath, that all communications between Augustine and Kennedy Hodges "involved only myself (acting a [sic] general counsel) and Kennedy Hodges's attorneys."   (*Id.* ¶ 14.)   Both statements would later contradict Augustine's December 22, 2016 privilege log.

In response to Defendants' motion, the Court ordered Augustine, in part, to provide a privilege log in compliance with Rule 26.   (*See* Order, *3M Co. v. Augustine*, No. 15-cv-64, JNE-FLN, (Nov. 4, 2015), ECF No. 45 at 9.)   But Augustine did not do so. On January 6, 2016, Augustine provided a short privilege log (see Aff. of B. Ahmann ¶ 15), which failed to satisfy Rule 26 because it did not describe the entries in sufficient detail so as to allow Defendants to evaluate the claims of privilege.   (*See* Exh. N, Scott Augustine January 6, 2016 Privilege Log.)

Defendants then made multiple additional requests that Augustine supplement his privilege log to comply with Rule 26.   On August 17, 2016, Augustine served a second privilege log, (*see* Aff. of B. Ahmann ¶ 11), and that log claimed privilege as to the same 23 documents (*see* Exh. J hereto.)   Again, however, the log was insufficiently descriptive and otherwise failed to comply with Rule 26.

To combat Augustine's continuing efforts to obstruct discovery, Defendants moved the Court for an order that Augustine produce a sworn statement concerning his relationship with Kennedy Hodges and a sufficiently detailed privilege log that complied with Rule 26. On November 23, 2016, the Court granted Defendants' motion and ordered Augustine to provide a privilege log with "detail sufficient to permit Defendants and the Court to evaluate his claim of privilege," as well as a "sworn statement identifying (1) the beginning and ending dates of any periods during which he claims an attorney-client or litigation consultant relationship with the Kennedy Hodges law firm and (2) the general nature of the representation or consultancy." (11.23.2016 Order, at 4.)

On December 12, 2016, Augustine served on Defendants a sworn affidavit purporting to comply with the Court's Order (*see* Exh. A, Augustine Aff. hereto). It totaled 11 paragraphs, many of which were not based on Augustine's own personal knowledge but on prior affidavits or representations of others. For example, Augustine did not do anything to determine when his "attorney-client relationship" with Kennedy Hodges began; he relied on a representation from Augustine's general counsel, Randy Benham, about what Kennedy Hodges told the *Walton* court in 2015. Still, Augustine pegged the beginning of the attorney-client relationship at July 6, 2009. (*Id*. ¶ 4.)

As for the "nature of the representation," Augustine described three purposes for which he engaged Kennedy Hodges: (1) to "learn about product liability litigation"; (2) to "understand why personal injury firms virtually never filed cases on behalf of patients injured by surgical infections," and (3) to "educate Kennedy Hodges" about forced-air warming. (*Id.* ¶¶ 4-7.) Augustine averred that this relationship continued "for several

10

years" (*id.* ¶ 8), but also represented that it has been "several years since Kennedy Hodges has performed any legal services for Augustine." (*Id.* ¶ 10.)

Augustine also purported to describe a non-testifying expert/"consultancy" relationship with Kennedy Hodges, which he claimed began "considerably before Kennedy Hodges filed the *Walton* case in Texas," (i.e., considerably before 2013). (*Id* ¶ 8.) This, of course, directly contradicted what Kennedy Hodges told the *Walton* court—that Augustine "had no contact or communications with Dr. Augustine relative to this case."

Finally, on December 22, 2016, Augustine served his third privilege log on Defendants. (Exh. H; Aff. of B. Ahmann ¶ 9.) This latest privilege log (the "December Log") is notable in a number of respects:

- The December Log includes more than 100 entries that were not identified on prior privilege logs;

- The December Log claims protection for work in connection with the *Walton* and *Johnson* actions, contrary to Kennedy Hodges' and Benham's representations to the *Walton* court and to this Court that there was no such relationship with Augustine in connection with those cases;

- The December Log claims attorney-client privilege for the years of 2013-2015, despite Augustine's affidavit's claim that it had not asked for any legal work in "several years."

- Ten entries from prior logs are *not* included on the December Log, but Augustine still has not produced them;

- The December Log changes the description of the "subject matter" and "claims of privilege" as to numerous entries; and

- The December Log lumps numerous emails together into one entry and uses vague, canned, and boilerplate language to describe them.

Augustine's recently provided affidavit and privilege log continue his pattern of baseless stonewalling.  For the reasons set forth below, the Court should conclude that Augustine has failed to meet its burden to show that the withheld communications are privileged, and should order Augustine to produce them.

## ARGUMENT

I.   **THE COURT SHOULD ORDER PRODUCTION OF THE DOCUMENTS WITHHELD BY AUGUSTINE BECAUSE HE FAILED TO MEET HIS BURDEN OF PROVING THE ATTORNEY-CLIENT PRIVILEGE OR WORK-PRODUCT DOCTRINE APPLIES.**

Augustine bears the burden of proving that his communications with the Kennedy Hodges law firm are protected by the attorney-client privilege and/or the work-product doctrine.  *See Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) ("The party asserting the attorney-client privilege or the work product doctrine bears the burden to provide a factual basis for its assertions.").  "The scope of the privilege should be strictly confined within the narrowest possible limits."  *United States v. Lawless*, 709 F.2d 485, 485 (7th Cir. 1983); *see also Prevue Pet Products, Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D. Ill. 2001).  Where a party withholding documents from discovery based on a claim of privilege fails to meet the burden of establishing that privilege, the party must produce the withheld documents. *See, e.g.*, *United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113-14 (S.D.N.Y. 2005) (granting motion to compel where defendant failed to establish the privilege); *Bible Faith Lutheran Church of India, Inc. v. Ass'n of Free Lutheran Congregations Mission Corp.*, 1991 WL 1301309, at *2 (D. Minn. Mar. 5, 1991) (Noel, J.) (same).

There are five reasons Augustine has failed to meet this burden, each of which is explained below.   Any one of these reasons is an independent basis for rejecting Augustine's claims of privilege and ordering him to produce the documents identified on Exhibit J (the August Log) and the first 84 documents on Exhibit H (the December Log).

### A.   Augustine Has Shown, At Most, That The Withheld Communications Were Made In Connection With A Business Partnership, Not An Attorney-Client Relationship.

The first reason the Court should grant this motion is that Augustine has not established that the withheld communications were made in connection with any attorney-client relationship.   At most, Augustine has established that he and Kennedy Hodges had a non-privileged business relationship, wherein Augustine partnered with Kennedy Hodges to compete with Defendants and fuel years of litigation against them.

It is well established that business communications—even with an attorney—are not privileged.   The Eighth Circuit addressed this issue, for example, in *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977), in which it held that a memorandum and report prepared by a law firm as part of an internal investigation for a client were not protected by the attorney-client privilege.   The information which the client claimed was protected did "little more than reveal the relationship between the parties, the purpose for which Law Firm had been engaged, and the steps which the Firm intended to take in discharging its obligation" to the client.   *Id.*   What's more, the client had hired the law firm not to provide legal services or advice, but instead "for the purpose of making an investigation of facts and to make business recommendations with respect to the future conduct of [the client] in such areas as the results of the investigation might

suggest." *Id.* Because the communications made were at most in connection with a business relationship, they were not protected. *See also U.S. v. Diageo, Inc.*, 2003 WL 1950262, at *1 (D. Minn. Feb. 20, 2003) (Doty, J.) (communications made "for the purpose of providing business advice" were "not privileged").

In this case, all Augustine's affidavit establishes, at most, is that he engaged Kennedy Hodges for purposes of furthering a business partnership. Augustine identifies three reasons for which he engaged Kennedy Hodges: (1) to "learn about product liability litigation"; (2) to "understand why personal injury firms virtually never filed cases on behalf of patients injured by surgical infections," and (3) to "educate Kennedy Hodges" about forced-air warming. (Exh A. ¶¶ 4-7.) Each of these purposes furthers Augustine's business strategy of promoting litigation against Defendants, not the provision of legal advice or representation to Augustine or his entities.

For example, Augustine tellingly avers that his communications with Kennedy Hodges were all "consistent with [its] two goals": to "stop Bair Hugger" and to "promote the use of" his competing product, the "HotDog." (*Id.* ¶ 8.) Those are business goals, making his communications with Kennedy Hodges non-privileged business communications. This conclusion is all the more apparent because of the last purpose Augustine identifies—to *educate the law firm*, not vice versa. (*See id.* ¶ 7.) In an attorney-client relationship, the client does not normally hire a law firm to educate it, but that *is* what would happen if a company wanted to partner with a law firm to sue its competitor—precisely what Augustine and Kennedy Hodges repeatedly did.

Augustine's recently produced documents confirm that this was, in fact, a business partnership.  For example, Augustine uses the litigation it and Kennedy Hodges generated to promote the HotDog product: over 80 pages of letters to hospitals and doctors identifying this "Multi-District Litigation" as a reason to switch from the Bair Hugger to the HotDog. (Exh. K, Ltrs. to Hospitals).  Augustine sends regular e-newsletters to explain "the implications of [this] lawsuit and why it will help HotDog patient warming." (Exh. O, Apr. 23, 2013 Scott Augustine E-Newsletter, Augustine_0031412.)  Augustine even tells numerous hospitals and doctors that they could be brought in as parties to the litigation and faced with the "learned intermediary" defense.  *Id.*  The seven concluding slides in a September 2016 PowerPoint presentation confirm that using litigation to promote his competing product *remains* Augustine's central business purpose.  (*See* Exh. B, Augustine Presentation, at Augustine_0028858, 0028860, and 0028861).  Here are but three of those slides:



Augustine's emails also show that its business was predicated on referrals of putative clients to Kennedy Hodges.  In early 2014, for example, Augustine's counsel Randy Benham solicited putative plaintiff Ms. Bartel, persistently referring her to Kennedy Hodges.  Here are but a few such solicitations (highlighting is added to each):

Rosie, I have communicated by email with David Hodges, the Texas attorney who filed the first case against Bair Hugger. When he responds, I will introduce the two of you by email—but then I need to remove myself from the conversation. Your conversations with David will only be privileged if no third parties are included.

Enjoy Arizona...

Randy

(Exh. D, Feb. 3, 2014 Email.)   Unsure if Ms. Bartel had reached Kennedy Hodges,

Benham followed up:

Have you and David Hodges made contact? I think he is helping another lawyer file a case against Bair Hugger, so he may be swamped.

Randy

(Exh. C., Feb. 3, 2014 Email.)   And weeks later, Benham got more specific, requesting

that Ms. Bartel add Kennedy Hodges' name to her website:

On Wednesday, May 21, 2014, J Randall Benham <rbenham@augbiomed.com> wrote:
Rosie,

It was nice to talk with you yesterday.  Your energy always invigorates me.

You mentioned an interest in adding legal resources to the web site.  As I said, we have identified several lawyers around the country who seem to be aware of the risks of forced-air warming in orthopedic surgery.

If you approve, we could add the following to the site in the Resources section:

**Feel Like Suing?**

(Exh. F, May 21, 2014 Email.)   Later in the same email, Benham again identified

Kennedy Hodges.  *Id.*

Perhaps most tellingly, when Ms. Bartel emailed Benham a year later to ask who

she should talk to "about suing," Benham again made a referral to Kennedy Hodges:

Rosie, I would suggest you talk to David Hodges at the Kennedy Hodges firm in Houston. He is the first lawyer who became interested in the research.  He filed the first cases, and he knows more about this than anyone.  As much as anyone in his line of work can be trusted, I think he can.  (I know that sounds harsh, but your tragedy is his business.)

(Exh. G, July 28, 2015 Email.)  Each of these solicitations shows that the real relationship

between Augustine and Kennedy Hodges was not one of attorney and client, but of

business partners: Augustine benefitted by having lawsuits brought against its direct competitor (*see also* Exh. K, Ltrs. to Hospitals), and Kennedy Hodges benefitted by receiving potential clients as referrals.  That is precisely why Benham wrote that "your tragedy is *his **business**.*" (Exh. G, July 28, 2015 Email, emphasis added). That business relationship is best shown by the following slide, in which Augustine solicits plaintiffs for a "wave of new litigation," and in doing so specifically identifies Kennedy Hodges (*see* Exh. B, Augustine Presentation, at Augustine_0028863):



If there were any remaining doubt about whether this was a business relationship, and not a legal one, it is dispelled by what Augustine has *not* shared with Defendants or the Court: any reference to an engagement letter, payment for legal services, or other evidence of an attorney-client relationship.  If, for example, Augustine actually *had* engaged Kennedy Hodges to provide legal services, it is standard practice, and strongly suggested in Texas, to send an engagement letter, outlining the rate for legal services and

other terms of the relationship.  *See, e.g.*, Tex. R. Prof. Cond. 1.04(c) ("When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.").  But nowhere on Augustine's privilege logs is there any reference to an engagement letter, retainer agreement, or other indicia of legal services.   And Augustine has not produced any such documents. That is telling.  Augustine had a chance to provide that information on its most recent privilege log, but it is simply not there.

Thus, just as the Eighth Circuit held in *Diversified Industries*, and just as Judge Doty concluded in *Diageo*, this Court should order production of the documents on Exhibit J (the August Privilege Log) and the first 84 documents on Exhibit H (the December Privilege Log), because they are all non-privileged communications between business partners.

### B.     Any Putative Attorney-Client Relationship Ended "Several Years" Before The Period For Which Augustine Is Withholding Documents As Privileged.

The second reason the Court should grant this motion is that, even assuming there was initially an attorney-client relationship between Augustine and Kennedy Hodges, it ended long before the communications that are now being withheld were sent.

On this issue, the chronology outlined in Augustine's affidavit is determinative. Augustine avers that any attorney-client relationship began in 2009 (Exh. A, Augustine Aff. ¶ 4), but by December 2016—when Augustine completed the affidavit—it had "been several years since Kennedy Hodges ha[d] performed legal services for Augustine."  (*Id.* ¶ 10.)  That being the case, Augustine's privilege log should *not* have contained any

18

entries for the last "several years"—whatever that span may be. But under any definition, it does; the December Log's entries with respect to Kennedy Hodges are *only* for the years 2013 to 2015. By contrast, his privilege logs list *no* documents from 2009 to 2012, the first three years of the claimed period of representation.

Augustine offers no explanation for how communications with Kennedy Hodges between 2013 and 2015 can possibly be privileged, when for the "several years" before December 2016, the firm was doing no work for Augustine. Augustine's own affidavit demonstrates that his communications with Kennedy Hodges between 2013 and 2015 cannot possibly be protected by the attorney-client privilege. *See, e.g.*, *Bible Faith Lutheran Church of India, Inc. v. Ass'n of Free Lutheran Congregations Mission Corp.*, 1991 WL 1301309, at *2 (D. Minn. Mar. 5, 1991) (Noel, J.) (because there was "no attorney client relationship" in place at the relevant time, finding that withheld tape was "not privileged and is discoverable").

**C.   There Was Never A Consulting Relationship Between Augustine and Kennedy Hodges, As Augustine's Lawyers Have Repeatedly Sworn To Two Different Federal Courts.**

As an alternative ground for withholding documents, Augustine has taken the new, bold tack of claiming that they are protected by the attorney-work product doctrine, because he was purportedly a non-testifying expert "consultant" for Kennedy Hodges in connection with the *Walton* Action. (*See* Exh. A, Augustine Aff. ¶¶ 8-11.) Augustine cannot meet his burden to prove that, however, because his own lawyers, and Augustine's prior privilege logs, directly contradict that claim.

19

First, in a May 19, 2015 Order in the *Walton* Action, Kennedy Hodges represented that it had "had no contact or communications with Dr. Augustine relative to this case" aside from one phone call.  (Exh. I, *Walton* Order at 1.)  Augustine's general counsel Randy Benham reiterated this fact in connection with the September 2015 opposition to Defendants' motion to compel, averring that Kennedy Hodges had "no contact or communications with Dr. Augustine" relative to the *Walton* case.  (Exh. M, Benham Aff. ¶ 13.)  Benham also averred that there had been "no [expert consultant] communications regarding *Johnson* at all," *id.*, and that all communications between Augustine and Kennedy Hodges "involved only myself (acting a [sic] general counsel) and Kennedy Hodges's attorneys."  (*Id.* ¶ 14.)

Augustine's December Log is directly contrary to these statements.  There are *fifty-nine* entries on that log that are purportedly privileged because of "Augustine Role as Non-testifying expert" in the *Walton* case.  Likewise, *fifty-one* entries mention the *Johnson* case.  Here is a screen shot of but one of these entries (highlighting is added):

| | | Email | 6-15-15 | Assaad | Benham | | Walton (possibly Johnson and MDL)/ literature | Hodges Work Product related to Augustine Role as Non-testifying expert; Benham work product related to same |
|---|---|---|---|---|---|---|---|---|

(Exh. H.)  Augustine can hardly claim that his communications with Kennedy Hodges are protected as expert work product in *Walton* or *Johnson* when Kennedy Hodges denies

that it ever communicated in writing with Augustine about these cases, and when Benham has more recently confirmed as much.[6]

If there were any doubt on this issue, it is dispelled by the change in how Augustine has characterized its privilege claims across its three privilege logs: entries on the January and August 2016 logs are *not* described in terms of a "consulting" relationship, while the *very same* entries on the December Log *are*.  This is best illustrated by tracking a single entry across all three logs—the entry for May 22, 2013. Here is that entry described on the January 2016 log (Exh. N.):

| | | Email series | 5/22/13 | R. Benham, D. Hodges | R. Benham, D. Hodges | G. Assaad, S. Augustine | Litigation | Attorney/Client, work product |
|---|---|---|---|---|---|---|---|---|

Note that there is no reference to a consulting relationship.  That same entry is described in slightly more (but still insufficient) detail in the August 2016 log (Exh. J):

| | | Email series | 5/22/13 | R. Benham, D. Hodges | R. Benham, D. Hodges | G. Assaad, S. Augustine | Litigation: sharing information regarding potential product liability, unfair competition and/or other claims | Attorney/Client: Benham/Augustine; Hodges-Assaad/Benham-Augustine.  Work product: all attorneys |
|---|---|---|---|---|---|---|---|---|

Again, there is no reference to a consulting relationship.

But when the same entry is described on the December 22, 2016 log, suddenly there *is* a reference to serving as a "non-testifying expert" in the *Walton* case (Exh. H):

---

[6] Augustine's December 22, 2016 privilege log also asserts work product protection for "Benham work product" related to Augustine's supposed role as a "non-testifying expert."  (Exh. H.)  But this is one further layer of fantasy: if *Augustine* was not a litigation consulting expert on the *Walton* matter, then *Augustine's attorney* cannot have been performing any work in connection with such a (non-existent) role.

| | | Email stream | 5-22-13 2:35 pm | Hodges | Benham | Assaad, S. Augustine | Walton, potential Bair Hugger litigation/analysis of legal and fact issues, communications | Hodges Work Product related to Augustine Role as Non-testifying expert; Benham work product related to same.  Attorney-client privilege based on Hodges-Augustine relationship.  Attorney-client privilege based on Benham-Augustine relationship; Benham work product individually |
| | | | 5-22-13 12:04 pm | Benham | Hodges | Assaad, S. Augustine | | |

Augustine knew how to claim something was protected by a "litigation consulting relationship"—that is what it did in the very first entry of the August 2016 log—but it did not initially do that.   Only when faced with court-ordered production has it re-characterized other entries as being purportedly protected by a "consulting" relationship.

Augustine cannot be believed, especially given the direct contradictions with representations by Kennedy Hodges and Benham.  Augustine has simply failed to satisfy his burden to show that any entries on Exhibits H or J fall within a litigation consulting relationship and are thus protected by the work-product doctrine.

### D.    Augustine Has Not Established That The Communications Being Withheld Were Made In Connection With The Solicitation Or Receipt of Legal Advice.

There is yet a fourth reason that the Court should grant this motion to compel: Augustine has failed to explain how the communications it is withholding were related to the *solicitation or receipt* of legal advice.

As this Court recognized in *Bible Faith Lutheran Church of India, Inc. v. Ass'n of Free Lutheran Congregations Mission Corp.*, 1991 WL 1301309, at *2 (D. Minn. Mar. 5, 1991), not all communications with lawyers are privileged.   Rather, only those communications that are made "for the purpose of securing legal advice" are.  *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977).   Stated another way, the

attorney-client privilege attaches "only to those confidential communications which are necessary for the client to obtain informed legal representation." *In re Grand Jury Proceedings*, 402 F. Supp. 2d 1066, 1067 (D. Minn. 2005).

All of the entries on Exhibit J (the August Log), and the first 84 entries on Exhibit H (the December Log), fail to meet this standard. Indeed, the phrase "seeking legal advice"—or any synonymous phrase—is not found *once* on Exhibit H. Without more, Augustine's canned recitations of "attorney-client privilege" are just insufficient to meet his burden of establishing the privilege. For this additional reason, its claims of privilege should be rejected.

### E.   Augustine's Privilege Log Fails To Comply With Rule 26.

Finally, Augustine's failure to comply with the Court's order to provide a privilege log compliant with Rule 26 justifies rejection of his claims of attorney-client privilege and work-product protection. *See, e.g.*, *Williams v. Taser Int'l*, 274 F.R.D. 694, 697 (N.D. Ga. 2008) (party's repeated bad-faith failure to provide an adequate privilege log waived the privilege, finding log "wholly inadequate to allow Plaintiffs or the Court to evaluate the validity of the assertions").

The Court here reached beyond the privilege log obligations automatically imposed by Rule 26 and expressly ***ordered*** Augustine to provide full, Rule 26-compliant privilege log entries for any documents he withheld based on privilege or work product. See 11.23.16 Order at 4 ("Any material Augustine believes is confidential and proprietary can be included in a privilege log that comports with Rule 26 of the Federal Rules of Civil Procedure.") Rule 26(b)(5)(A) provides:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)**   expressly make the claim; and

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Augustine has failed in several ways to follow the Court's order to comply with Rule 26. First, Augustine failed to specify the basis of the claim of privilege or other protection for each individual communication, instead lumping all of the privileges together and preventing Defendants and the Court from knowing which privilege(s) he claims for each email in the stream.  This problem is real: for example, entry 37 describes an email stream that contains nine individual emails with various dates in July 2013. Augustine's log lumps all the emails together, asserting "Hodges Work Product related to Augustine Role as Non-testifying expert; Benham work product related to same. Attorney client privilege based on Hodges-Augustine relationship. Attorney-client privilege based on Benham-Augustine relationship."  (Exh. H.)  This description is both inadequate and unhelpful:  Mr. Benham is only on one of the emails, Dr. Augustine isn't on any of them, and from the single aggregate description it is impossible to tell whether protection is claimed based on Augustine's role as a litigation-consultant or on the attorney-client privilege.

Second, both the descriptions on Augustine's December 22, 2016 privilege log and the bases he offers for withholding the documents are vague and useless boilerplate.

Indeed, many of the descriptions in Augustine's December 2016 privilege log are actually *more* vague and *less* informative than those in his previous logs. For example, Augustine's full descriptions in his latest privilege log of the "subject matter" of his communications with Kennedy Hodges consist of such brief and cryptic entries as "FDA 1997," "Hepa," "depos," "literature," "communications," and (ironically) "privilege." (Exh. H.) Defendants are entitled to a log that will enable them "to assess the claim" of privilege, Rule 26(b)(5)(A)(ii), but Augustine's vague entries do not permit that.

Third, Augustine has made significant and unexplained alterations in his subject matter descriptions. Most prominently, Augustine's December Log wholly abandons the "unfair competition claims" that featured in the subject matter description of *every entry* of his August 17, 2016 privilege log. (Exh. H.) The December Log then substitutes new, entirely different and often less informative descriptions for the repeated entries. Neither Augustine's affidavit nor Benham's offers any explanation for these changes.

Augustine has had at least three chances to get his privilege log right, and he has repeatedly failed to do so. His descriptions of documents and his claimed bases for protection remain opaque and do not permit either Defendants or the Court to make an intelligent and informed evaluation of his claims of privilege and work-product protection. For this final reason, Augustine's claims of privilege should be rejected.

## II.     IN THE ALTERNATIVE, THE COURT SHOULD ORDER AUGUSTINE TO SUBMIT THE DOCUMENTS REFERENCED IN EXHIBITS A AND B FOR *IN-CAMERA INSPECTION.*

In the alternative, the Court should order an *in-camera* inspection of the entries on Augustine's privilege log, so the Court may assess whether Augustine is properly applying the privileges.

Under Federal Rule of Evidence 104(a), the Court must decide any "preliminary question," including about whether "a privilege exists."  For years, courts have conducted *in-camera* inspections to determine if the privilege should be applied—indeed, that is what the courts did in *Diversified Industries,* see 572 F.2d at 599, and *Diageo*, see 2003 WL 1950262, at *1. In the event the Court is not conclusively persuaded, Defendants respectfully suggest that an *in-camera* review will resolve these issues once and for all.

## CONCLUSION

For the reasons set forth above, Defendants urge the Court to grant their motion and to order Augustine to produce (1) the 23 Kennedy-Hodges-related documents listed on his privilege log of August 17, 2016, as well as (2) the 84 Kennedy-Hodges-related documents listed on his privilege log of December 22, 2016.  In the alternative, the Court should order an *in-camera* inspection so it can assess whether Augustine has properly withheld documents on the basis of the attorney-client privilege and attorney work-product doctrines.

Dated:  January 19, 2017

Respectfully submitted,

_s/Bridget M. Ahmann_

Bridget M. Ahmann
MN Atty ID No. 016611x
M. Joseph Winebrenner
MN Atty ID No. 0387889
**Attorneys for Defendants 3M Company
and Arizant Healthcare Inc.**
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000    F: (612) 766-1600
bridget.ahmann@faegrebd.com
joe.winebrenner@faegrebd.com


Jerry W. Blackwell
MN Atty ID No. 0186867
Benjamin W. Hulse
MN Atty ID No. 0390952
Mary S. Young
MN Atty ID No. 0392781
**Attorneys for Defendants 3M Company
and Arizant Healthcare Inc.**
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
T: (612) 343-3200    F:  (612) 343-3205
blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com