# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | MDL No 15-2666 (JNE/FLN) |
| This Document Relates to: All Actions | THIRD PARTIES' MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL |

_____

Third Parties Dr. Scott Augustine and the related Augustine entities offer this Memorandum in Opposition to the Motion to Compel filed by 3M Company and Arizant Healthcare Inc.

As the Court is aware, Dr. Augustine and his related companies are not parties to this litigation, but the chief patient-warming competitor to 3M. Importantly, 3M's argument categorizes all people and companies into one group without appreciating that virtually all communications in the privilege log were attorney-to-attorney communications rather than communications with Dr. Augustine personally.

Counsel for 3M has rushed to Court with a goulash of mischaracterizations, innuendoes and erroneous assumptions. Their goal is misdirection: to diminish and demonize Dr. Augustine in the eyes of the Court, thereby distracting attention from

3M's failure to protect the public from the risks of Bair Hugger. They falsely claim that there was never an attorney-client relationship, despite evidence to the contrary.

Despite 3M's mud slinging, two facts remain undeniable:

1. In approximately 2012-2013, Kennedy Hodges engaged Augustine as a consulting-only expert.

2. Kennedy Hodges and Augustine's counsel exchanged work product.

As a consequence of those two facts, Augustine has withheld certain documents from production, but has identified them in a Privilege Log as required by the Court's Order. In some cases, the privilege belongs to, and must be defended by, Augustine. In some, the privilege belongs to Mr. Benham, unrelated to his role as Augustine's general counsel. In most, however, the privilege—work product—belongs to Kennedy Hodges and must be defended by them. Augustine could have destroyed the privilege (and avoided this Motion) by giving in to 3M's demands, but that would have been unfair; Kennedy Hodges deserves a chance to protect its work product.

Some of the scatter-shot allegations in 3M's memorandum are so far off point as to require no response at all. Others, however, so warp and mischaracterize the facts that a response cannot be avoided.

3M's Allegation: No attorney-client relationship was ever formed.

Response:  Although Augustine has failed to locate and produce a retainer agreement, there is no reason to conclude that the relationship is a sham.  The previously provided affidavits of Dr. Scott Augustine and J. Randall Benham, as well as representations by Kennedy Hodges to various courts, are sufficient proof that the relationship was formed.  Moreover, Kennedy Hodges may well have documents formalizing the relationship—a fact which 3M's counsel could have explored had they involved Kennedy Hodges in a "meet-and-confer" as Mr. Benham and David Hodges requested.

3M argues that the Augustine/Kennedy Hodges relationship is "business" rather than "legal," suggesting some *quid pro quo* related to referrals.  The allegation is untrue and totally without support.  No plaintiff—not a single one—represented by Kennedy Hodges was referred by Augustine.  The only attempted referral, Rosie Bartel, chose different counsel.  As Mr. Benham's affidavit explains, Ms. Bartel and her husband became friends with Mr. Benham.  As evidenced by the emails produced by Augustine and cited by 3M, some months after they met, Ms. Bartel asked Mr.Benham for the names of attorneys who might take her case.  He did not urge her to litigate, but merely provided the references she requested.  Of course, even if Mr. Benham *had* urged Ms. Bartel to litigate, that fact would have been irrelevant to the existence of the Augustine/Kennedy Hodges relationship.

3

3M points to a slide of the Kennedy Hodges website in Dr. Augustine's continuing medical education (CME) presentations as proof that Augustine was soliciting business for Kennedy Hodges. That is illogical –even ridiculous—on several levels. The audiences for the CME presentations were physicians and nurse anesthetists, hardly the people likely to contact Kennedy Hodges. Moreover, 3M neglected to mention that the CME presentations referenced the solicitations of several law firms, not just Kennedy Hodges.   See below:



The purpose was to show that mass tort law firms were taking the published research seriously, and that clinicians should also do so.

<u>3M's Allegation</u>:  The Augustine/Kennedy Hodges relationship ended.

<u>Response</u>: 3M misstates the averment in the Augustine Affidavit.  Dr. Augustine clearly states that, to his knowledge, the relationship has <u>not</u> ended—although it has not been recently active.

<u>3M's Allegation</u>:  The descriptions of subject matter in the Privilege Log changed.

<u>Response</u>:  Of course, they changed:  that was the whole idea of re-doing the log.  3M claimed, and the Court apparently agreed, that the previous descriptions were inadequate.  If the descriptions had *not* changed, Augustine would have been ignoring the instructions of the Court.

<u>3M's Allegation</u>:  The descriptions of subject matter in the Privilege Log remain inadequate.

<u>Response</u>:  On numerous occasions, Mr. Benham has requested that 3M's counsel provide guidance was to what sort of description <u>would</u> be adequate.  Counsel refused to provide examples or cite to cases that offer example—but merely referred Mr. Benham to the Federal Rules.  That was less than useful; had 3M's counsel been more cooperative, it is possible that this matter could have been resolved.

5

Disclosure regarding the documents protected by the work product privilege of Kennedy Hodges is particularly problematic. Augustine felt an obligation both to identify the Kennedy Hodges work product and to avoid damaging the privilege—at least until Kennedy Hodges could become involved in protecting its own work product. Until this Motion, that opportunity did not exist.

For that reason, Mr. Benham urged 3M's attorneys to communicate directly with Mr. Hodges. The request was ignored. Mr. Hodges asked for a telephone conference on the matter, and his request was ignored as well.

Instead, 3M rushed to file this Motion.

3M's Allegation: Hundreds of entries in the most recent Privilege Log were absent from prior versions.

Response: This is a natural consequence of Augustine's complying fully and energetically with the Court's Order. In the prior Privilege Logs, Mr. Benham listed email *strings* by the date of the first communication in the stream. An initial email with multiple responses and responses-to-responses was listed once, potentially with the same names on the "to" and "from" sides.

The Court's Order, however, required that each iteration be listed *separately*. Augustine complied, and the consequence was a multiplication of entries.

<u>3M's Allegation</u>:  10 entries from the prior Privilege Log are not present in the current version.

<u>Response</u>:  Absent more information, no response to this is possible.  Had 3M's counsel chosen to engage in an actual meet-and-confer, this issue might have been resolved.  Counsel could have identified the missing entries, and Mr. Benham could have attempted to reconcile the logs.  Instead, 3M's counsel rushed to file this motion.

<u>3M's Allegation</u>:  Augustine and Kennedy Hodges are inconsistent regarding whether Augustine's consulting includes the *Walton* case.

<u>Response</u>:  There is no inconsistency.  Dr. Augustine's involvement was not case-specific, but involved the general medical-scientific-research topics.  Any involvement of Dr. Augustine's employees was similarly general.  This was expressed in the most recent Privilege Log as  "Walton (and possibly Johnson and others)" or "Walton (and possibly Johnson and MDL).  This accurately conveys uncertainty as to the precise cases regarding which Kennedy Hodges sought consultation.  It is understood that Kennedy Hodges has many clients who have brought claims against 3M.

Kennedy Hodges itself knows best which cases were involved.  For that reason, Mr. Benham encouraged 3M's counsel to speak directly to David Hodges and to

involve Kennedy Hodges in a meet-and-confer. Counsel ignored the requests and rushed to file this motion.

3M's Allegation: Prior Privilege Logs identified communications as "work product," and the current log refers to consulting.

Response: There is no difference. The initial designation as "work product" referred to the results of Augustine's engagement by Kennedy Hodges as a consultant—as well as work product belonging to Mr. Benham. The Court's Order specified precisely what terms should be used, and Augustine corrected its prior designations accordingly.

The small number of references in the privilege log to Mr. Benham's work product unrelated to his role as general counsel of Augustine require some explanation. As stated in his Affidavit, Mr. Benham considered representing persons injured by Bair Hugger himself—privately, and not as an employee or representative of Augustine. His relationship with Augustine allows such independent projects so long as they do not interfere with his duties. He conducted legal research during this period and shared portions of it with Kennedy Hodges. Although he ultimately decided not to pursue the matter, the research and analysis he created remains his protectable work product.

In conclusion, Augustine urges the Court to conclude that 3M's Motion to compel has no merit. Augustine has complied fully with the Court's Order. To the extend that any issues remain regarding protection of the work product belonging to Kennedy Hodges, those issues should be resolved between 3M, Kennedy Hodges and the other plaintiffs' counsel involved in the MDL. Augustine is 3M's competitor, but is *not* a party to this litigation. It has produced thousands of pages of documents, expended hundreds of hours of its employees' time responding to 3M's discovery, paid a substantial penalty levied by the Court, and remains ready to produce Dr. Augustine for deposition (although 3M keeps scheduling and cancelling the deposition).

3M would undoubtedly like to keep its competitor distracted by this matter for as long as possible—but that is simply not appropriate. Augustine requests, therefore, that 3M's Motion to Compel be denied.

                              Respectfully submitted,

                              s/ J. Randall Benham

                              J. Randall Benham
                              MN Bar No. 0154726
                              6581 City West Parkway
                              Eden Prairie, MN 55127

**CERTIFICATE OF SERVICE**

This is to certify that on February 1, 2017 a copy of the forgoing instrument was served on all parties via the Court's electronic filing system.

By: /s/ J. Randall Benham