# Exhibit N

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

IN RE: Bair Hugger Forced Air Warming Products )
)
*Plaintiff* )
v. ) Civil Action No. MDL No. 2666
)
)
*Defendant* )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: VitaHEAT Medical, LLC c/o Illinois Corporation Service Co.
801 Adlai Stevenson Dr., Springfield, IL 62703

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: U.S. Legal Support, 200 West Jackson Blvd., Chicago, IL 60606 | Date and Time: 01/13/2017 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/30/2016

*CLERK OF COURT*

OR

_____     _____
*Signature of Clerk or Deputy Clerk*       *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff
_____, who issues or requests this subpoena, are:
Gabriel Assaad, Kennedy Hodges, LLP, 4409 Montrose Blvd, Ste 200, Houston, TX 77006 (713) 523-0001

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

ClientCaseID: 50247　　CaseReturnDate: 12/30/16

Affidavit of A PRIVATE INVESTIGATOR

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

Case Number **MDL NO. 2666**

I, JOHN J PENNELL

FIRST DULY SWORN ON OATH STATES THAT I AM OVER 18 YEARS OF AGE AND NOT A PARTY TO THIS SUIT AND IS A REGISTERED AGENT OF THE ILLINOIS DEPARTMENT OF PROFESSIONAL REGULATION PRIVATE DETECTIVE AGENCY ACT LICENSE NUMBER #117-000697

## CORPORATE SERVICE

THAT I SERVED THE WITHIN SUBPOENA TO PRODUCE DOCUMENTS
ON THE WITHIN NAMED DEFENDANT VITALHEAT MEDICAL, LLC.
PERSON SERVED JENNIFER BALLI, AUTHORIZED AGENT
BY LEAVING A COPY OF EACH WITH THE SAID DEFENDANT ON 12/30/16

That the sex, race and approximate age of the whom I left the SUBPOENA TO PRODUCE DOCUMENTS are as follow:

Sex FEMALE　Race INDIAN　Age 22　Height 5'6"　Build THIN　Hair BLK

LOCATION OF SERVICE　**801 ADLAI STEVENSON DR.**
　　　　　　　　　　　　**SPRINGFIELD, IL, 62703**

Date Of Service 12/30/16　　Time of Service 3:35 PM

JOHN J PENNELL　　　　　　　　　　12/30/2016
A PRIVATE INVESTIGATOR
PRIVATE DETECTIVE # 115-002074

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statement are true and correct, except as to matters therein stated to be on information and belief and such matters the undersigned certifies as aforesaid that he/she verily believes same to be true.
THE SERVICE FEE IS $_____

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

### (c) Place of Compliance.

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

### (d) Protecting a Person Subject to a Subpoena; Enforcement.

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

### (e) Duties in Responding to a Subpoena.

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

### (g) Contempt.
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. As used herein, the terms "you" and "your" refer to **VitaHEAT Medical, LLC**, and "Defendant" shall mean **3M Company and/or Arizant Healthcare, Inc.**, and all attorneys, agents, and other natural persons or business or legal entities acting or purporting to act for or on behalf of **3M Company and/or Arizant Healthcare, Inc.**, whether authorized to do so or not.

2. As used herein, the term "documents" shall mean all writings of every kind, source, and authorship, both originals and all non-identical copies thereof, in your possession, custody, or control, or known by you to exist, irrespective of whether the writing is one intended for or transmitted internally by you, or intended for or transmitted to any other person or entity, including without limitation any government agency, department, administrative, or private entity or person. The term shall include handwritten, typewritten, printed, photocopied, photographic, or recorded matter. It shall include communications in words, symbols, pictures, sound recordings, films, tapes, and information stored in or accessible through computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems. For purposes of illustration and not limitation, the term shall include: affidavits; agendas; agreements; analyses; announcements; bills, statements, and other records of obligations and expenditures; books; brochures; bulletins; calendars; canceled checks, vouchers, receipts and other records of payments; charts or drawings; check registers; checkbooks; circulars; collateral files and contents; contracts; corporate bylaws; corporate charters; correspondence; credit files and contents; deeds of trust; deposit slips; diaries or drafts; files; guaranty agreements; instructions; invoices; ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; letters; logs, notes, or memoranda of telephonic or face-to-face conversations; manuals; memoranda of all kinds to and from any persons, agencies, or entities; minutes; minute books; notes; notices; parts lists; papers; press releases; printed matter (including books, articles, speeches, and newspaper clippings); purchase orders; records; records of administrative, technical, and financial actions taken or recommended; reports; safety deposit boxes and contents and records of entry; schedules; security agreements; specifications; statements of bank accounts; statements or interviews; stock transfer ledgers; technical and engineering reports, evaluations, advice, recommendations, commentaries, conclusions, studies, test plans, manuals, procedures, data, reports, results, and conclusions; summaries, notes, and other records and recordings of any conferences, meetings, visits, statements, interviews or telephone conversations; telegrams; teletypes and other communications sent or received; transcripts of testimony; UCC instruments; work papers; and all other writings which relate to, discuss, consider, or otherwise refer to the subject matter of the particular discovery requested.

3. A document is deemed to be in your possession, custody, or control if you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical control of the item.

4. "Person" or "persons" means any natural persons, firms, partnerships, associations, joint ventures, corporations, and any other form of business organization or arrangement, as well

as governmental or quasi-governmental agencies. If other than a natural person, include all natural persons associated with such entity.

5. Any and all data or information which is in electronic or magnetic form should be produced in a reasonable manner.

6. "Injury" as used herein refers to the injury sustained by any person with a claim alleging an injury caused by the Bair Hugger device.

7. "Incident in question" as used herein refers to the surgery of any person with a claim alleging an injury caused by the Bair Hugger device.

8. "Communications" and "communications" means any and all inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, interviews, telephone conversations, letter correspondence, notes, telegrams, facsimiles, electronic mail (email), memoranda, documents, writings, or other forms of communications, including but not limited to both oral and written communications.

9. As used herein, the term "Bair Hugger" means any forced-air warming system manufactured, sold, loaned, rented, leased, distributed, or marketed by any Defendant in this action.

10. As used herein, the term "forced-air warming system" or "FAW" refers to the Bair Hugger system and all other convective warming systems that warm patients in the following manner:

a) ambient air is drawn into a container, device, or machine where it is heated;
b) the heated air is expelled from the container, device, or machine through a hose into an inflatable blanket; and
c) the heated air is further expelled through openings in the blanket onto or near a patient.

11. "Patient" means any animal, human or non-human, being treated by anyone for any condition, whether medical, dental, or veterinary treatment.

12. "Patient Warming Device" means any device used to adjust or control the temperature of patients.

13. "Blanket" means any inflatable apparatus designed to be used with the Bair Hugger that is positioned below or near the patient into which warm air from the Bair Hugger device travels to be distributed throughout the blanket and dispersed as necessary. This term includes all such items identified in Defendants' marketing literature or patent applications and documentation.

14. "Surgical Site Infection" or "SSI" means an infection that develops within 30 days after an operation or within two years if the surgery involves the implantation of a surgical implant and that appears related to the surgery.

2

15. "Periprosthetic Joint Infection" or "PJI" means a Surgical Site Infection of the deep joint tissue surrounding an implanted orthopedic device subsequent to the implantation of an orthopedic device.

16. "Convection" means the movement of air or any other fluid by the tendency of the hotter and less dense fluid to rise and colder denser fluid to sink under the influence of gravity.

17. "Sterile Field" means the area proximate to the surgical table and approximately on a horizontal plane level with the surgical tabletop that has been prepared by cleansing with an antimicrobial agent and surrounded with surgical drapes and the air proximate to that area.

18. "Waste Heat" means that portion of the heated air produced by the Bair Hugger or other FAW systems that vents into the operating room.

19. "*Walton*" means the lawsuit *Tommy Walton v. 3M Company et al.*, case no. 4:13-cv-01164, filed in the 164th Judicial District Court of Harris County, Texas and removed to the United States District Court for the Southern District of Texas on April 23, 2013.

20. "*Johnson*" means the lawsuit *Timothy Johnson v. 3M Company et al.*, case no. 2:14-cv-02044, filed in the United States District Court for the District of Kansas on January 31, 2014.

## USE OF DEFINITIONS

The use of any particular gender in the plural or singular number of the words defined under paragraph "1", "Definitions" is intended to include the appropriate gender or number as the text of any particular request for production of documents may require.

## TIME PERIOD

Unless specifically stated in a request for production of documents, all information herein requested is for the entire time period from January 1, 2010, through the date of production of documents requested herein.

## DOCUMENTS TO BE PRODUCED

1. All documents constituting or relating to the design of the VitaHEAT UB3 patient-warming system.

2. All documents reflecting or relating to any change in design of the VitaHEAT UB3 patient-warming system within the relevant time period.

3. All documents that constitute the full design file for the VitaHEAT UB3 patient warming system, as maintained by VitaHEAT Medical, LLC.

4. All documents that constitute the "Device Master Record" (DMR) for the VitaHEAT UB3 patient warming system, as that term is defined in 21 CFR 820.181.

5. All documents that were submitted to the Food and Drug Administration as part of the 510(k) clearance process for the VitaHEAT UB3 patient warming system.

6. All documents constituting or relating to testing the efficacy of the VitaHEAT UB3 patient-warming system.

7. All documents constituting or relating to research conducted regarding the efficacy of the VitaHEAT UB3 patient-warming system.

8. All documents constituting or relating to any published or unpublished studies relating to the efficacy of the VitaHEAT UB3 patient-warming system.

9. All documents constituting or relating to any comparison testing conducted by VitaHEAT Medical, LLC of the VitaHEAT UB3 patient-warming system to any other patient-warming device, including, but not limited to, the Hot Dog warming blanket or Bair Hugger FAW.

10. All documents relating to or referencing any article, published or unpublished, regarding the safety and efficacy of the VitaHEAT UB3 patient-warming system.

11. All documents relating to or referencing any article, published or unpublished, regarding a comparison between the VitaHEAT UB3 patient-warming system and any other patient-warming device, including, but not limited to, the Hot Dog warming blanket or Bair Hugger FAW.

12. All documents relating to any testing or scientific analysis carried out by VitaHEAT Medical, LLC regarding FAW devices.

13. All documents that identify, describe, or memorialize the relationship between VitaHEAT Medical, LLC and any Defendant in this case.

14. All documents relating to or constituting payment or other compensation from Defendants received by or made to you or to any associated entity regarding the agreement for Defendant

to be the exclusive United States distributor of the VitaHEAT UB3 patient warming system.

15. All documents constituting or relating to any other agreement that you may have entered into with Defendant and/or any of its related corporate entities.

16. All documents relating to any communications regarding the agreement for Defendant to be the exclusive United States distributor of the VitaHEAT UB3 patient-warming system.

17. All documents relating to the formal agreement between VitaHEAT Medical, LLC and Defendants for Defendant to be the exclusive United States distributor of the VitaHEAT UB3 patient-warming system.

18. All documents relating to the formal agreement between VitaHEAT Medical, LLC and Defendants regarding the agreement for Defendant to be the distributor for any other patient-warming system or product manufactured by VitaHEAT Medical, LLC.

19. All documents relating to any communication you may have had with any medical professional, including any physician, nurse, administrator, purchaser, or other professional working at a medical facility or within the health care industry, about the safety or efficacy of any patient warming device, including, but not limited to, the VitaHEAT UB3 patient warming device, Hot Dog warming blanket, or Bair Hugger FAW.

20. All documents constituting any advertisement or other marketing efforts to promote use of the VitaHEAT UB3 patient-warming system to any medical professional, including any physician, nurse, administrator, purchaser, or other professional working at a medical facility or within the health care industry.

21. All documents relating to any communication you may have had with any researcher or scientist that pertains to any research performed or investigation conducted regarding the safety and efficacy of any patient warming device, including, but not limited to, the VitaHEAT UB3 patient-warming device, Hot Dog warming blanket, or Bair Hugger FAW.

22. All documents relating to any communication you may have had with any representative of any state or federal government agency or any accreditation or industry organization, including but not limited to the National Institutes of Health (NIH), Centers for Disease Control and Prevention (CDC), American Medical Association (AMA), The Joint Commission, ECRI Institute, The National Institute for Health and Care Excellence (NICE) (UK), or any other relevant agency or entity, concerning the safety or efficacy of the VitaHEAT UB3 patient-warming device, Hot Dog warming blanket, or Bair Hugger FAW.

23. All documents, including any annual roster or other similar document, that indicate the composition of the Board of Directors for VitaHEAT Medical, LLC for the relevant time period.

24. All documents that indicate or describe any connection or interest, financial or otherwise, that any present, or past, member of the Board of Directors for VitaHEAT Medical, LLC

may possess regarding any other company that designs, manufactures, and/or markets a patient-warming device.

25. All documents relating to any communications with Defendants made by any employee of VitaHEAT Medical, LLC regarding patient warming generally or the VitaHEAT UB3 patient-warming device, Hot Dog warming blanket, or Bair Hugger FAW specifically.

26. All documents relating to any communications with Defendants made by any board member, present or past, of VitaHEAT Medical, LLC regarding patient warming generally or the VitaHEAT UB3 patient-warming device, Hot Dog warming device, or Bair Hugger FAW specifically.