

**STINSON LEONARD STREET**

Tim Griffin
612.335.1937 **DIRECT**
timothy.griffin@stinson.com

March 24, 2017

The Honorable Franklin L. Noel
United States District Court
9W U.S. Courthouse
300 S. 4th Street
Minneapolis, MN  55415

Dear Magistrate Noel:

RE:   *Bair Hugger Forced Air Warming Products, MDL No. 2666*
        Defendants' Motion for Protective Order Concerning Plaintiffs' Subpoenas to Third-Party Manufacturers of Patient Warming Devices

Dear Magistrate Noel:

With permission of the Court, I write on behalf of third-parties Stryker Corporation ("Stryker") and Gaymar Industries, Inc. ("Gaymar") to inform the Court of their objections to Plaintiffs' subpoenas, including the relevancy of the requested records, which is the subject of Defendants' Motion for Protective Order Concerning Plaintiffs' Subpoenas to Third-party Manufacturers of Patient Warming Devices (the "Motion").

While reserving their rights, Stryker and Gaymar support the Motion because Plaintiffs have not made the required threshold showing that the requested records are relevant to the claims in this action.[1]  Should the Court have any questions for Stryker or Gaymar, I will attend the hearing on the Motion scheduled for Monday, March 27, 2017.

Stryker and Gaymar are medical device companies that at various points manufactured and/or sold patient warming systems.  Stryker sells the Mistral-Air Forced product and Gaymar (and then Stryker after acquisition of Gaymar in 2010) sold the Medi-Therm product.  Manufacture of the Medi-Therm product ceased in approximately 2012.  The last Medi-Therm unit was sold in approximately February 2014.  Gaymar has not manufactured products since 2013.

On or about February 22, 2017, Plaintiffs served Stryker in Michigan and Gaymar in New York with subpoenas seeking documents in this action.  Plaintiffs demand that

---

[1] The subpoenas command production of documents in Ann Arbor, Michigan and Buffalo, New York, so that motion practice, if necessary, would be initiated in "the district where compliance is required…." Fed.R.Civ.P. 45(d)(3).

Stryker produce records responsive to twenty-one (21) different requests covering both the Mistral-Air and Medi-Therm products.  (Doc. No. 262-3 at 8-9.)  Likewise, Plaintiffs demand that Gaymar produce records responsive to eleven (11) requests covering the Medi-Therm product.  (*Id.* 262-4 at 8.)  The subpoenas seek records created since January 1, 2007.  (*Id.* 262-3 at 7, 262-4 at 7.)  And Plaintiffs originally sought compliance in less than ten days – by March 3, 2017.  (*Id.* 262-3 at 1, 262-4 at 1.)  Plaintiffs' own description of the records they seek could be summarized as "every document relating to these products."

On March 3, 2017, Stryker and Gaymar objected to the subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure for a variety of reasons and welcomed the opportunity to discuss the matter.  (*See* Exhibit A (3/3/2017 ltr. to Plaintiffs' counsel regarding Stryker's and Gaymar's objections).)

1. **The Court should grant the Motion as to the Stryker/Gaymar Medi-Therm product because Plaintiffs do not oppose it in their response.**

Plaintiffs "confine" their response to the Motion "to the two patient warming products that share a blower design concept with the Bair Hugger:  the [Stryker] Mistral-Air system and the WarmAir system."  (Doc. No. 275 at 2.)  Thus, it is appropriate to grant the Motion as unopposed as to the other products, including the Stryker/Gaymar Medi-Therm product.

2. **The Court should grant the Motion as to the Stryker Mistral-Air and Stryker/Gaymar Medi-Therm products because Plaintiffs have not made a threshold showing of relevance.**

This Court previously held and Defendants argued in their Motion that conductive patient warming systems, like the Stryker/Gaymar's Medi-Therm product, involve a different product than is at issue in this litigation and is therefore not relevant.  (*See* Doc. Nos. 249, 260.)  Here, Plaintiffs' subpoena commands Gaymar, as well as to Stryker, to produce a broad scope of records relating to the Medi-Therm product, which Plaintiffs describe as a conductive system.  (*See* Doc. No. 262-4 at 7.)  The Court's reasoning in the VitaHEAT Order squarely applies to the subpoenas directed to Gaymar and Stryker to the extent they command production of records related to the Gaymar/Stryker Medi-Therm product.  Therefore, entry of the protective order sought by Defendants as to the subpoenas commanding production of records relating to the Medi-Therm product should be granted.

Magistrate Judge Noel
March 24, 2017
Page 3 of 5

Plaintiffs' subpoena commanding the production of records relating to the Mistral-Air product also seeks irrelevant information. Plaintiffs' response to the Motion makes the point. Plaintiffs' initially cease on this Court's *dicta* in the VitaHEAT Order, which states "a conductive patient warming device with the addition of a HEPA filter, for example, could be relevant if so contended by Plaintiffs." (Doc. No. 249, n. 2; Doc. No. 275 at 3.) Plaintiffs then state without citation that "Stryker advertise[s] the use of HEPA filtration, …." (Doc. No. 275 at 4.) Plaintiffs must do more than merely state Stryker advertises the use of HEPA filtration before they are entitled to ten years of records spanning all aspects of the product. Plaintiffs do not identify the model or time period during which Stryker advertised the use of HEPA filtration. Plaintiffs do not cite specific claims in their pleading in this action to support the contention that Stryker's advertised use of a HEPA filtration is relevant. And Plaintiffs state no reasoned argument why discovery of "every document relating to these products" is supported by law.[2]

Plaintiffs reach further citing other statements Stryker has made about its device, including "smart warming, optimum performance, and equal distribution" as well as "controlled diffusion" and "preventing airflow obstruction." (*Id.*) In doing so, Plaintiffs again offer no explanation why Stryker's statements relate to the claims in this litigation, and merely assert that "[d]iscovery of the design details and testing underlying these descriptions is relevant to the defects alleged by Plaintiffs, which includes the distribution of air and heat." (*Id.*) In sum, the claimed relevance of the discovery sought from Stryker is based on nothing more than Plaintiffs' conclusory allegation that its claims relate the "distribution of air and heat," Stryker's product distributes air and heat, and therefore the doors of discovery should be opened wide. Plaintiffs' argument lacks the reasoning and focus required by the law.

The Eighth Circuit Court of Appeals has recognized in a somewhat analogous and more deferential context that there is "no black letter rule of law regarding discovery of *predecessor* models in products liability cases, other than to state that *discovery of similar, if not identical, models is generally permitted*." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 381-82 (8th Cir. 1992) (emphasis added). While *Hofer* is distinguishable

---

[2] Plaintiffs suggest in their response there is some ambiguity in the categorization of "patient warming devices," and focus on two devices that allegedly "share a blower design concept with the Bair Hugger: the [Stryker] Mistral-Air system and the WarmAir system." (*Id.*) Plaintiffs' confusion is consistent with the over breadth of their subpoena and further demonstrates that they are not able to articulate why discovery of Stryker's records relating to the Mistral-Air System is relevant to their claim.

because it involved discovery from a party rather than a third-party, and was decided under a more liberal relevancy standard, *Hofer* supports the conclusion Plaintiffs have not satisfied their burden here.

*Hofer* explains that discovery is appropriately denied "where the predecessor models did not share pertinent characteristics with products at issue." *Id.* at 382.  "Sufficiently dissimilar characteristics have been found to exist where a plaintiff sought information about a vehicle recall, but the models recalled did not have the same *component* as the one at issue in the litigation, where the court permitted discovery of three models years immediately preceding the model at issue, but *denied discovery as to the a still earlier model because it was too dissimilar*, and where a plaintiff was *not able to make even a threshold showing that airplane bladder tanks or wetwing fuel systems were potential substitutes, or potentially safer than metal fuel tanks*." *Id.* at 382 (internal citations omitted) (emphasis added).  In holding that the predecessor designs at issue in *Hofer* were sufficiently dissimilar in design from the at-issue model, the Court observed that a production of documents limited to just design minutiae of those earlier models would be both burdensome and would not have supported the claim.  *Id.*  Equally as instructive was the Court's statement "[h]aving discovered all possible information regarding the model truck at issue (MH), it was the task of Hofer's experts to develop and demonstrate the alleged defects *in that model*." *Id.* (emphasis in original).

As in *Hofer* and the cases cited therein, Plaintiffs have made no showing that Stryker's Mistral-Air Patient Warming System is sufficiently similar to Defendants' products to support the requested discovery.  Plaintiffs offer no showing that Stryker's product shares a component of Defendants' product, that the design of the Stryker product for the period in which Plaintiffs seek records (ten years) was sufficiently similar to the design of the Defendants' product, or that Stryker's product design offers potential substitutes that are safer than Defendants' products.  In the end, *Hofer* supports the conclusion that absent a far greater showing than Plaintiffs have made here, the design of a different model, manufactured by a third-party is not relevant to Plaintiffs' claims in this action, and it is Plaintiffs' expert's task to develop and demonstrate their own alleged defects *in Defendants' products*, based on whatever proof may be required under applicable state law.

3.   ***Stryker and Gaymar have made timely objections to the subpoenas***

Even if the Court denies the Motion, Stryker and Gaymar both made timely objections to the subpoenas required by Rule 45 of the Federal Rules of Civil Procedure.  (*See* Exhibit A.)  However, Plaintiffs' response to the Motion states "[w]ith respect to the patient

warning devices which principally emphasize conductive heat transfer to the patient, none of the manufacturers have objected to the subpoenas." (Doc. No. 275 at 2.) Plaintiffs' response overlooks Stryker's and Gaymar's March 3, 2017 objections to the subpoenas.

Having preserved their objections, Rule 45 entitles Stryker and Gaymar to move the courts in the districts where compliance is required to, *inter alia*, quash or modify the subpoenas seeking disclosure of "privileged or other protected matter," if they subject them to "undue burden," if Plaintiffs insist on the discovery of "trade secret or other confidential research, development, or commercial information" or if Plaintiffs seek "unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed.R.Civ.P. 45(d)(3)(A)(iii)-(iv), (B)(i)-(ii).

On the face of the subpoenas, Plaintiffs demand production of records protected from disclosure under several categories of Rule 45. Ten years of records responsive to an array of requests seeking, inter alia, design, testing, and other information, for two different products will undoubtedly contain information protected from disclosure, whether it is privileged, proprietary, protected from disclosure by regulations, or simply too broad and burdensome to be fairly requested. Further, Plaintiffs' response to the Motion suggests Plaintiffs primarily seek "[d]iscovery of the design details and testing underlying" Stryker's and Gaymar's description of their products. (Doc. No. 275 at 4.) While not clear, it appears that Plaintiffs seek Stryker's and Gaymar's expert opinions regarding design and testing that, by definition, does not "describe the products or the specific occurrences in dispute." Fed.R.Civ.P. 45(d)(3)(B)(ii). Regardless, the meet and confer process is necessary to refine any dispute.

In sum, if this Court were to deny the Motion, Stryker and Gaymar have no choice but to continue to pursue their objections.

Respectfully submitted,

Stinson Leonard Street LLP

/s/ Tim Griffin

Tim Griffin

Enclosure

MINNESOTA/9991000.1464/14749878.2