# EXHIBIT 70

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - -

In Re:
Bair Hugger Forced Air Warming
Products Liability Litigation

This Document Relates To:
All Actions        MDL No. 15-2666 (JNE/FLM)

- - - - - - - - - - - - - - - - -

DEPOSITION OF JANA M. STENDER
VOLUME I, PAGES 1 - 182
DECEMBER 9, 2016

(The following is the deposition of JANA M. STENDER, taken pursuant to Notice of Taking Deposition, via videotape, at the offices of Ciresi Conlin L.L.P., 225 South 6th Street, Suite 4600, Minneapolis, Minnesota, commencing at approximately 9:08 o'clock a.m., December 9, 2016.)

Page 2

APPEARANCES:
On Behalf of the Plaintiffs:
   Kyle W. Farrar and Mark D. Bankston
   KASTER, LYNCH, FARRAR & BALL LLP
   1010 Lamar, Suite 1600
   Houston, Texas   77002

On Behalf of the Defendants:
   Bridget M. Ahmann
   FAEGRE BAKER DANIELS
   2200 Wells Fargo Center
   90 South Seventh Street
   Minneapolis, Minnesota  55402-3901

On Behalf of the Deponent:
   Stephanie L. Gase and Dale O. Fresch
   BREWER ATTORNEYS & COUNSELORS
   1717 Main Street, Suite 5900
   Dallas, Texas  75201

ALSO APPEARING:
   Ronald M. Huber, Videographer

Page 3

INDEX
EXHIBITS         DESCRIPTION          PAGE MARKED
Ex  184  E-mail string, 3MBH00544756-7    43
    185  E-mail string, 3MBH00024691-4    50
    186  E-mail string, 3MBH00032037-8    61
    187  E-mail string, 3MBH00049685-6    77
    188  Dinner/Evening agendas, HG
         rough draft 5-17-13, 3MBH01484406   83
    189  E-mail string, 3MBH0002433-4     87
    190  E-mail string, 3MBH00033916-9   103
    191  E-mail, 3MBH00043532            117
    192  E-mail string, 3MBH01285219-24  119
    193  E-mail string, 3MBH00050532-3   127
    194  FTC Advertising and Marketing
         Basics, one page                140
    195  E-mail string, 3MBH00033959     144
    196  E-mail string, 3MBH00032831     148
    197  E-mail string, 3MBH00024680-1   155
    198  E-mail string, 3MBH00050980     167
    199  E-mail string, 3M00575251-2     173

Page 4

   P R O C E E D I N G S
   (Witness sworn.)
   JANA M. STENDER
called as a witness, being first duly sworn,
was examined and testified as follows:
   ADVERSE EXAMINATION
BY MR. FARRAR:
   Q.  Can you introduce yourself, please.
   A.  Yes.  My name is Jana Stender.
   Q.  Ms. Stender, have you ever given a deposition?
   A.  I have not.
   Q.  Okay.  Go over a couple quick rules.  I'm sure your attorneys have talked to you about this, but just basically I'm going to get to ask you some questions and I want you to answer to the best of your recollection.  Okay?
   A.  Yes.
   Q.  You have to answer out loud audibly, "yes" or "no," because our court reporter is taking everything down, so he can't take down shakes of the head like we would normally talk.  Okay?
   A.  Yes.
   Q.  Typically, if you and I met down in the lobby, we would talk over each other; that's how we

Page 85

1    A.  I'm not offended that they would share a
2  meal, because oftentimes that's the only time one
3  could connect with people with busy schedules.
4    Q.  Do you consider "wine and dine" as the
5  equivalent of "share a meal?"
6    A.  I would say that's sharing a meal. I don't
7  know what "wine and dine" means in this context.
8    Q.  You're familiar what that term generally
9  means; correct?
10    MS. GASE:  Objection, form.
11    A.  I've heard the term, certainly, sure.
12    Q.  And as a -- somebody who deals with words
13  and marketing, you understand "wine and dine" means
14  take out to fancy meals, have a nice bottle of wine,
15  things of this nature; correct?
16    MS. GASE:  Objection, form.
17    A.  I --
18    That is a reference that I've certainly
19  heard. I don't know. I wouldn't interpret it that
20  way. Have dinner, that's what I would interpret it
21  as.
22    Q.  So when you and your husband go to dinner
23  tonight, that's just -- that's wining and dining.
24    MS. GASE:  Objection to form.
25    A.  My husband and I don't go to dinner; we have

Page 86

1  two small children, so --
2    Q.  Fair enough.
3    A.  -- irrelevant.
4    Q.  Fair enough. And I like the witness making
5  her own objections.
6    My point is "wining and dining" has a
7  specific meaning over and above just going to dinner;
8  correct?
9    MS. GASE:  Objection, asked and answered.
10    A.  It --
11    Certainly, "wine and dine" has a meaning,
12  yes. I -- I don't know in this case at all what it
13  refers to, but --
14    Q.  I want to talk about what the company would
15  do when it either knew of literature that was going to
16  be negative to forced-air warming or something was
17  published negative to forced-air warming. Okay?
18    A.  Yes.
19    Q.  That's the topic.
20    You're aware in your time at the company
21  that one of the things that would happen would be to
22  try to discredit the author; correct?
23    MS. GASE:  Objection, form, asked and
24  answered, lack of personal knowledge.
25    A.  That is not my experience. Any studies on

Page 87

1  forced-air warming or the category of patient warming
2  were reviewed by our clinical team to see what the
3  content is, what the findings and conclusions were,
4  how the studies were conducted, but no, that is not my
5  experience, that we were discrediting.
6    (Discussion off the stenographic record.)
7    (Exhibit 189 was marked for
8    identification.)
9  BY MR. FARRAR:
10    Q.  I'm handing you what's been marked as 189,
11  which begins with 2433. I'll give you a chance to
12  read that.
13    Have you had a chance to review it?
14    A.  I have.
15    Q.  Okay. Do you remember this issue?
16    A.  I don't.
17    Q.  Do you remember the papers that are being
18  discussed?
19    A.  In the course of looking at this I see that
20  there are papers that were being discussed.
21    I had just returned from maternity leave at
22  that point.
23    Q.  Okay. Sitting here today, do you have any
24  recollection or any knowledge of what paper this
25  exhibit is discussing?

Page 88

1    A.  I don't have recollection.
2    Q.  Okay.
3    A.  It says Anesthesia & Analgesia.
4    Q.  Okay. Mr. Bergstrom is the one who sent
5  that to you on October 23rd 2008; correct?
6    A.  Correct.
7    Q.  And he came across this upcoming paper
8  that's going to be published in about a week; right?
9    A.  Yes, that's what it states.
10    Q.  Okay. Five hours later you respond to Mr.
11  Bergstrom and copy some other folks and you say, "It
12  seems we should have some talking points to address
13  the findings." Did I read that correctly?
14    A.  Yes.
15    Q.  So you, within five hours after receiving
16  the paper, were already wanting to develop talking
17  points on how you'd discredit the findings; correct?
18    MS. GASE:  Objection, form.
19    A.  Not discredit the findings. To analyze the
20  findings, the clinical and research teams would do
21  that.
22    Q.  The talking points specifically is the
23  things that your sales force can use to lessen the --
24  the blow of -- of the article; correct?
25    MS. GASE:  Objection, form.