```
1                  UNITED STATES DISTRICT COURT

2                    DISTRICT OF MINNESOTA

3     ------------------------------------------------------
                                   )
4                                  )
      In Re: Bair Hugger Forced Air )  File No. 15-MD-2666
5     Warming Devices Products      )  (JNE/FLN)
      Liability Litigation          )
6                                   )  April 20, 2017
                                   )  Minneapolis, Minnesota
7                                   )  Courtroom 12W
                                   )  9:45 a.m.
8                                   )
                                   )
9     ------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
              UNITED STATES DISTRICT COURT JUDGE
11
              THE HONORABLE FRANKLIN L. NOEL
12            UNITED STATES MAGISTRATE JUDGE

13           THE HONORABLE WILLIAM H. LEARY, III
             RAMSEY COUNTY DISTRICT COURT JUDGE
14

15                  (STATUS CONFERENCE)

16    APPEARANCES

17    FOR THE PLAINTIFFS:
                              MESHBESHER & SPENCE
18                            Genevieve M. Zimmerman
                              1616 Park Avenue
19                            Minneapolis, MN  55404

20                            LEVIN PAPANTONIO
                              Ben W. Gordon, Jr.
21                            316 S. Baylen Street
                              Suite 600
22                            Pensacola, FL 32502

23                            CIRESI CONLIN
                              Michael V. Ciresi
24                            Michael A. Sacchet
                              225 South 6th Street
25                            Suite 4600
                              Minneapolis, MN
```

```
 1
        FOR THE PLAINTIFFS (cont'd):
 2                                  KIRTLAND AND PACKARD LLP
                                    Behram V. Parekh
 3                                  2041 Rosecreans Avenue
                                    Third Floor, Suite 300
 4                                  El Segundo, CA  90245

 5                                  KENNEDY HODGES, LLP
                                    Gabriel Assaad
 6                                  4409 Montrose Blvd
                                    Suite 200
 7                                  Houston, TX 77006

 8                                  KENNEDY HODGES, LLP
                                    David W. Hodges
 9                                  711 W. Alabama Street
                                    Houston, TX 77006
10
                                    PRITZKER HAGEMAN, P.A.
11                                  Brendan Flaherty
                                    45 South 7th Street, #2950
12                                  Minneapolis, MN  55402-1652

13      FOR THE PLAINTIFFS APPEARING BY PHONE:

14                                  PETERSON & ASSOCIATES, P.C.
                                    Brian Emerson Tadtman
15                                  Nicholas S. Clevenger
                                    801 W. 47th Street, Suite 107
16                                  Kansas City, MO  64112

17                                  BERNSTEIN LIEBHARD LLP
                                    Dae Y. Lee
18                                  10 East 40th Street
                                    New York, NY  10016
19
                                    THE LANIER LAW FIRM, PLLC
20                                  Jason Goldstein
                                    Erika Mohabir
21                                  126 East 56th Street, 6th Floor
                                    New York, NY 10022
22
                                    THE OLINDE FIRM, LLC
23                                  Wesley G. Barr
                                    400 Poydras Street
24                                  Suite 1980
                                    New Orleans, LA  70130
25
                    Appearances cont'd next page:
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              SIDNEY P. COMINSKY, LLC
                                Amy Tao
 3                              109 S. Warren Street, #1500
                                Syracuse, NY  13202
 4
                                GROSSMAN & MOORE, PLLC
 5                              Emily A. DeVuono
                                Jennifer Moore
 6                              401 W. Main Street
                                Suite 1810
 7                              Louisville, KY  40202

 8                              HARE WYNN NEWELL & NEWTON
                                Don McKenna
 9                              Peggy Little
                                Lynne Reed
10                              Massey Building
                                2025 Third Avenue North
11                              Suite 800
                                Birmingham, AL  35203
12
                                MCEWEN LAW FIRM, LTD
13                              Melissa Schmid
                                5850 Blackshire Path
14                              Inver Grove Heights, MN  55076

15                              MORGAN & MORGAN, PA
                                Heather Cullen
16                              201 N. Franklin St 7th Floor
                                Tampa, FL  33602
17
                                RAIZNER SLANIA, LLP
18                              Jeffrey L. Raizner
                                2402 Dunlavy Street
19                              Houston, TX  77006

20                              LONCAR & ASSOCIATES
                                John L. Coveney
21                              William Hymes
                                424 S. Cesar Chavez Blvd
22                              Dallas, TX  75201

23                              CAPRETZ & ASSOCIATES
                                Don K. Ledgard
24                              5000 Birch St, Suite 2500
                                Newport Beach, ca  92660
25
                  Appearances cont'd on next page:
```

```
 1     FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                                MICHAEL HINGLE & ASSOCIATES
                                  Julie M. Jochum
 3                                Bryan A. Pfleeger
                                  220 Gause Blvd
 4                                Slidell, LA  70005

 5                                HOUSSIERE DURANT & HOUSSIERE
                                  Randall A. Kauffman
 6                                Monica Vaughan
                                  Shirley Strom-Blanchard
 7                                1990 Post Oak Blvd Suite 800
                                  Houston, TX  77056
 8
                                  DAVIS & CRUMP, PC
 9                                Martin D. Crump
                                  Robert D. Cain, Jr.
10                                Wes Stevenson
                                  2601 Fourteenth Street
11                                Gulfpost, MS 39507

12                                LEWIS & CAPLAN
                                  Pete Lewis
13                                Sarah Delahoussaye Call
                                  Amy Webster
14                                3631 Canal Street
                                  New Orleans, LA  70119
15
                                  SKIKOS CRAWFORD SKIKOS&
16                                    JOSEPH, LLP
                                  Melissa Erin Mielke
17                                One Sansome Street, Suite 2830
                                  San Francisco, CA  94104
18
                                  THE RUTH TEAM
19                                Austin Grinder
                                  Steven C. Ruth
20                                842 Ramond Avenue
                                  Suite 200
21                                Saint Paul, MN  33733-5157

22                                TATE LAW GROUP, LLC
                                  Mark Tate
23                                Arlene Nicole
                                  2 East Bryan Street, Suite 600
24                                Savannah, GA  31328

25
                          Appearances Cont'd on next page
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:
                                LAW OFFICES OF TRAVIS R. WALKER
 2                              Travis R. Walker
                                1235 SE Indian Street
 3                              Suite 101
                                Stuart, FL  34997
 4
                                LAW OFFICES OF JAMES S. ROGERS
 5                              Elizabeth J. McLafferty
                                1500 4th Avenue #500
 6                              Seattle, WA  98101

 7                              ANDREWS & THORNTON
                                Anne Andrews
 8                              John Thornton
                                Lauren Davis
 9                              Lila Razmara
                                Marco Galindez
10                              Todd Rudometkin
                                2 Corporate Park, Suite 110
11                              Irvine, CA 92606

12                              GOZA & HONNOLD, LLC
                                Kaitlyn Neufeld
13                              11181 Overbrook Road
                                Suite 200
14                              Leawood, KS  66211

15                              JOHNSON BECKER PLLC
                                Rolf T. Fiebiger
16                              444 Cedar Street
                                Suite 1800
17                              Saint Paul, MN  55101

18                              HAUSFELD, LLP
                                Richard S. Lewis
19                              1700 K St NW Suite 650
                                Washington, DC  20006
20
                                JOHNSON JOHNSON & SCHALLER PC
21                              Leslie O'Leary
                                975 Oak Street
22                              Citizens Building, Suite 1050
                                Eugene, OR  97401
23
                                LORD & ASSOCIATES
24                              Priscilla Lord
                                Melissa Heinlin
25                              309 Clifton Avenue
                                Minneapolis, MN 55403
```

```
1      FOR THE PLAINTIFFS APPEARING BY PHONE:

2                              MURRAY LAW FIRM
                               Caroline Whitney Thomas
3                              650 Poydras Street
                               Suite 2150
4                              New Orleans, LA  70130

5                              BAILEY PEAVY et al
                               Justin Jenson
6                              The Lyric Centre
                               440 Louisiana Street
7                              Suite 2100
                               Houston, TX  77002
8
                               BEASLEY ALLEN CROW et al
9                              Megan Robinson
                               Matthew Munson
10                             218 Commerce Street
                               P.O. Box 4160
11                             Montgomery, AL  36103

12                             BRENT COON AND ASSOCIATES
                               Miyoshi Rivers
13                             300 Fannin, Suite 200
                               Houston, TX  77002
14
                               DEGARIS LAW GROUP LLC
15                             Wayne Rogers, Jr.
                               3179 Green Valley Rd 235
16                             Birmingham, AL  35243

17                             HOLLIS LEGAL SOLUTIONS PPLC
                               Scott Hollis
18                             6814 Crumpler Boulevard
                               Suite 101
19                             Olive Branch, MS  38654

20                             LANGDON & EMISON
                               Brett Emison
21                             Rachel Ahmann
                               911 Main Street
22                             Lexington, MO  64067

23                             NEAL R. ELLIOTT, JR.
                               Po Box 80136
24                             Baton Rouge, L  70898

25              Appearances cont'd on next page
```

```
 1     FOR THE PLAINTIFFS APPEARING BY PHONE:
                               MESHBESHER & SPENCE, LTD
 2                             Holly Sternquist
                               1616 Park Avenue
 3                             Minneapolis, MN  55404

 4                             PARKER WAICHMAN, LLP
                               Michael S. Werner
 5                             Nicole Eisner
                               59 Maiden Lane
 6                             6th Floor
                               New York, NY  10038
 7
                               PRITZKER HAGEMAN, PA
 8                             Wendy Thayer
                               PWC Plaza Building
 9                             Suite 2950
                               45 South Seventh Street
10                             Minneapolis, MN  55402-1652

11                             RANDALL J. TROST, P.C.
                               Carrie Hancock
12                             Pam Rodriguez
                               Randall T. Trost
13                             801 Main Street
                               Lynchburg, VA  24504
14
                               THE MILLER FIRM, LLC
15                             Tayjes M. Shah
                               The Sherman Building
16                             108 Railroad Avenue
                               Orange, VA  22960
17
                               POGUST BRASLOW & MILLROOD, LLC
18                             Matt Leckman
                               Jessica Lowe
19                             8 Tower Bridge, Suite 940
                               161 Washington Street
20                             Conshohocken, PA  19428

21                             FITZGERALD LAW GROUP, LLC
                               Kevin Fitzgerald
22                             120 Exchange Street
                               Suite 200
23                             Portland, ME  04101

24                             MARIN HARDING & MAZZOTI LLP
                               Rosemarie Bogdan
25                             1222 Troy-Schenectady Road
                               Niskayuna, NY 12309
```

```
 1      FOR THE PLAINTIFFS         APPEARING BY PHONE:

 2
                                   LAW OFFICE OF VERY GRETCHYN
 3                                 MARINO
                                   Vera Gretchyn Marino
 4                                 175 East Shore Road
                                   Suite 230
 5                                 Great Neck, NY  11023

 6                                 NASH & FRANCISKATO LAW FIRM
                                   Brian S. Franciskato
 7                                 Two Pershing Square
                                   2300 Main Street
 8                                 Suite 170
                                   Kansas City, MO  64180
 9
        FOR THE DEFENDANTS 3M:     BLACKWELL BURKE P.A.
10                                 Ben Hulse
                                   Mary Young
11                                 Corey L. Gordon
                                   431 South Seventh Street
12                                 Suite 2500
                                   Minneapolis, MN  55415
13
                                   FAEGRE BAKER DANIELS
14                                 Bridget M. Ahmann
                                   90 South Seventh Street
15                                 Suite 2200
                                   Minneapolis, MN  55402
16

17      Court Reporter:            MARIA V. WEINBECK, RMR-FCRR
                                   1005 U.S. Courthouse
18                                 300 South Fourth Street
                                   Minneapolis, Minnesota 55415
19

20

21

22

23
                 Proceedings recorded by mechanical stenography;
24      transcript produced by computer.

25              *     *     *     *     *     *     *
```

```
 1                    P R O C E E D I N G S

 2                        (9:45 a.m.)

 3              THE COURT:  Good morning.  Welcome, and please be

 4      seated.  Please be seated.  Nice to see everybody.  I need

 5      to get my glasses on so I can say that with greater

 6      authority.

 7              MAGISTRATE JUDGE NOEL:  I see them all just fine.

 8              THE COURT:  Do we have our telephone participants?

 9      Would someone on the telephone say something so that we know

10      you're there?  Would someone on the telephone say something

11      so that we know you can hear us?

12              UNIDENTIFIED VOICE:  Good morning.

13              THE COURT:  Good morning.

14              MAGISTRATE JUDGE NOEL:  Thank you, good morning.

15              THE COURT:  Should we just dive right into the

16      joint matters?

17              MR. BEN GORDON:  Yes, Your Honor.

18              THE COURT:  Pretrial orders, nothing there.  Now,

19      on the plaintiff fact sheets, we've got -- we have some

20      information.  Does anyone want to say anything in addition

21      to what is contained in the agenda?

22              MR. BEN GORDON:  Yes, Your Honor, if I may.  Ben

23      Gordon for the plaintiffs.

24              THE COURT:  Come on up.

25              MR. GORDON:  Sure.  Mr. Hulse and I had a very
```

1    fruitful colloquy about this issue, and we made significant

2    strides.  What I do want to say is the one big issue from

3    our point of view, from the Plaintiffs' point of view, Your

4    Honor, is this verification issue or this re-verification

5    issue because it affects a lot of the cases, and Mr. Hulse

6    and I did talk about it.  We're trying to work out a

7    solution.  I proposed a PTO on it to the extent the Court

8    thinks that's necessary.

9          But the issue in a nutshell is that any MDL I've

10   ever worked on the plaintiffs are not required to re-sign a

11   form verifying where they've previously signed the form

12   verifying that their answers are correct, they're not

13   required to later re-sign that.  In fact, in most MDLs, it's

14   implicit that once the substantive information is provided

15   and attested to, that future information is deemed already

16   signed, and a new signing is deemed anathema that to the

17   efficiency process of the MDL.

18         In fact, in the recent order by Judge Engelhardt

19   in New Orleans in the Taxotere MDL, and we can provide you a

20   copy of that.  He explicitly stated that resigning would not

21   be necessary but counsel could instead attest to the new and

22   the supplemental information being provided.  And just to

23   give you one brief example, Your Honor.

24         The PTO14 requires that every blank, every box on

25   the PFS be completed.  And so, for example, there are times

1     when plaintiff many times gets a deficiency where they

2     haven't provided an end date for their employment.

3     Employment that is continuing.  And so now frequently

4     counsel does not put a date in that box because there is no

5     applicable date.  What we've agreed with the defense in

6     those instances is to then put "NA" for "non-applicable" in

7     that box or put a fictitious date.  Typically, it's been

8     0-0-0000, just so that there is information in the box so

9     that an automated system doesn't kick that form out as being

10    deficient.  It's our view that in those instances there's no

11    reason for the process to repeat itself and the plaintiff to

12    have to re-sign those forms.  Counsel ought to be able to

13    attest to that as a nonsubstantive change and that should

14    suffice.

15              THE COURT:  What about substantive changes?

16              MR. GORDON:  Yes, Your Honor.  Obviously, if

17    there's core major substantive information that is new and

18    changed, that's a different issue, and I'm certainly willing

19    to concede that we can talk about that and work that out.

20    But, again, the process of a PFS is intended to make the

21    process go smoother so the plaintiffs do not have to have

22    the delay of sending forms back to be signed a second time.

23    And we would hope that in those instances where the

24    information is substantially complete, that counsel should

25    be able to attest to that on behalf of the plaintiff.

1              Beyond that, we made great strides.  Many of the

2     cases listed on docket number 270 are no longer deficient.

3     I think Mr. Hulse would concede that he and I had a fruitful

4     conversation this morning, and I believe that we can narrow

5     this list substantially, particularly if we can take the

6     verification issue off the table, so that the cases that

7     we're really fighting about are very few.  Thank you, Your

8     Honor.

9              THE COURT:  Mr. Hulse?

10             MR. HULSE:  Thank you, Your Honor.  And I just

11    also wanted to pass along that Mr. Blackwell has been stuck

12    in New Orleans and was unable to get back this morning.  I

13    don't know if he was able to get on the phone.  I know he

14    was going to try to do that if he could.

15             THE COURT:  I just heard some beeping.  Jerry, is

16    that you?  Jerry, if you're there, would you make yourself

17    known?

18             MR. HULSE:  He may be in flight, Your Honor.

19             THE COURT:  In what way was he stuck?

20             MR. HULSE:  The proceeding that he was at went too

21    late and then with the weather last night, he was just

22    unable to get out on flight.  So for places to be stuck, New

23    Orleans is not the worst.

24             Your Honor, we don't see that there's anything

25    before the Court to decide.  Our basic position is that the

1    PFSs were intended to be a substitute for interrogatories, a

2    more streamlined approach.

3              THE COURT:  The Order says so.

4              MR. HULSE:  And so if the plaintiffs supplement,

5    if they amend, then the instructions provided need to be

6    verified.  Now, as I indicated here in our submission, we're

7    willing to work with plaintiff's counsel to try to come up

8    with a PTO that would allow for the individual plaintiffs

9    not to have to sign again in certain instances to streamline

10   the process.  But as a blanket matter, we don't think that

11   that's necessarily going to be appropriate.  Sometimes we

12   have an initial point of fact sheet that is really lacking a

13   lot of information and a lot more information comes in on

14   the amended, and we need a verification at that point.  We

15   need to know that the actual plaintiff has signed it under

16   oath.

17             But at this point, we're working through it with

18   Mr. Gordon and his colleagues.  And I'm hopeful we can reach

19   a resolution that we can put in front of the Court.

20             THE COURT:  Okay.  So you don't need or want

21   anything right now?

22             MR. HULSE:  We don't, Your Honor.

23             THE COURT:  All right.  We can do that.

24             MAGISTRATE JUDGE NOEL:  I'm good with holding

25   things over.

1            THE COURT:  And then the other plaintiff fact

2      sheet issues, the non-deficiency lists.  They just tick

3      along, right?

4            MR. HULSE:  They do.  And so, Your Honor, under

5      the process, under PTO14, if we list cases on two successive

6      agendas, then we then have the right to move to dismiss.

7      That doesn't mean we necessarily will, but it's the

8      predicate to us being able to do that.

9            THE COURT:  Now, we issued, when we didn't meet in

10      person, we, I think, made a docket entry to the effect that

11      this would count.  Do you need that in the future or can we

12      agree that if I forget, it will still count?  I mean --

13            MR. HULSE:  Well, I would suggest, Your Honor,

14      that it's sufficient.  I'm confident that plaintiffs'

15      counsel or the lead counsel, the liaison counsel, are

16      passing along those lists to all of the plaintiffs' group,

17      and that would seem to me to be sufficient notice that it

18      doesn't need to go up on the website.  But, you know, I

19      would defer to Mr. Gordon's thinking on that.

20            THE COURT:  We'll probably always still do it.  It

21      just makes me nervous when I think at the last minute, oh, I

22      need to do this.  But, fine --

23            MR. HULSE:  It's really a question of what the

24      Court and plaintiffs think is going to be adequate notice.

25      If they think it's adequate notice for it not to go on the

```
1    website, then that's fine by us.
2              MR. BEN GORDON:  Your Honor, if we're on notice of
3    the claim then we think that's adequate.
4              THE COURT:  All right.  Thank you, Mr. Gordon.
5    Did you want to say something?
6              MAGISTRATE JUDGE NOEL:  I'm just wondering what
7    the number is.
8              (Off the record discussion between Judge Ericksen
9    and Magistrate Judge Noel.)
10             (IN OPEN COURT)
11             THE COURT:  Okay.  And now the bellwether
12   selection plan, Item Number 3 on the agenda.  Anyone want
13   to.
14             MS. YOUNG:  Your Honor, the defendants don't have
15   anything additional to add to what's on the agenda.
16             THE COURT:  Plaintiffs, same with you, I imagine.
17             MS. ZIMMERMAN:  The only addition we have, Your
18   Honor, is that we have served specific discovery requests in
19   the Ramsey County cases as well at this point, and that is
20   new since the time the agenda went in.
21             THE COURT:  We should say that Judge Leary is
22   here.
23             JUDGE LEARY:  If I may Judge Ericksen, if you
24   could, Ms. Zimmerman, with Mr. Hulse being copied, send me a
25   letter indicating the cases, the bellwether cases including
```

1    the specific cases that both parties designated.

2              MS. ZIMMERMAN:  Certainly.

3              JUDGE LEARY:  Okay.  A letter would be fine.

4    Thank you.

5              MS. ZIMMERMAN:  Certainly.  And I can tell you,

6    Judge, that the three cases are a Thomas Redding.

7              JUDGE LEARY:  Do you have a court file numbers?

8              MS. ZIMMERMAN:  Yes.  Court File Number

9    62-CV-156848.  Ronny Singsaas, and that is Court File

10   62-CV-163555.  And then the one case that was nominated by

11   both plaintiffs and defendants is Kevin Walker, Court File

12   62-CV-161257.

13             JUDGE LEARY:  I would ask you to submit a letter.

14   Thank you very much.

15             MS. ZIMMERMAN:  Certainly.

16             THE COURT:  Okay.  So update on cases.  Who wants

17   to?  No one?  All right, well, just forget it then.

18             Ms. Zimmerman?

19             MS. ZIMMERMAN:  Yes, thank you, Your Honor.

20             Just to clarify a little bit, the numbers that are

21   provided in the joint status report, we show that as of

22   today, there are 1565 complaints pending before this MDL,

23   and it does include 1746 plaintiffs.  The reason there are

24   more plaintiffs than there are complaints has to do with the

25   transfer of the Saint Louis County filings.  And it is our

1    understanding that a number of the plaintiffs in those joint

2    St. Louis filings were Minnesota residents, so it would be

3    my expectation that there may be at some point a potential

4    remand motions forthcoming for this Court to consider given

5    that there won't be a lack of diversity for at least some of

6    those plaintiffs that recently joined.

7              THE COURT:  To the extent motions were filed in

8    Missouri, those are gone, right?

9              MS. ZIMMERMAN:  I believe that that's correct.

10             THE COURT:  All right.  The docket doesn't have a

11   hammer on them, and I'm not planning on ruling on them.

12             MS. ZIMMERMAN:  Okay.

13             THE COURT:  All right.  Oh, Judge Noel just

14   corrected me.  After having been a judge for 22 years, I now

15   will start referring to that thing as a gavel not a hammer.

16   Just so you know, here's how I've developed my language.  I

17   refer to that as a gavel.  I forgot it was even over there,

18   but I would love to have a chance to use it.

19             A hammer to me is the indication on the ECF that

20   there's reporting.  Everyone could just call that a hammer,

21   but I'm not, I don't call that a hammer.  But if that were a

22   hammer, then I'd also get some other tools like an ax, a

23   screwdriver.  What else might be a tool?

24             MR. BEN GORDON:  Vice grips.

25             THE COURT:  Oh, thank you, Mr. Gordon.

1           MAGISTRATE JUDGE NOEL:  I could say some people

2     accuse magistrate judges of using axes all the time in

3     discovery disputes.

4           THE COURT:  There you go.  This is too much fun.

5           MS. ZIMMERMAN:  The one other update we would have

6     on just jumping to number 5, we show that there are a total

7     of 53 cases pending before Judge Leary in Ramsey County.

8           THE COURT:  Okay.

9           MR. HULSE:  Your Honors, may I ask a clarifying

10    question about your statement on St. Louis?  So is it

11    correct then that --

12          THE COURT:  Come on up.

13          MR. HULSE:  Sorry.

14          THE COURT:  Otherwise, Mr. Blackwell won't be able

15    to hear you.

16          MR. HULSE:  Fair enough.  So those cases before

17    they were transferred by the JPML had remand motions,

18    actually two of them had remand motions, and then motions to

19    dismiss pending, so do they come over to this court then

20    without those motions?

21          THE COURT:  Right.

22          MR. HULSE:  All right.  So if the plaintiffs

23    counsel wanted to seek remand, they would have to then

24    re-file in this court.

25          THE COURT:  Those motions are gone.

1         MR. HULSE:  All right.  Thank you, Your Honor.

2         MR. BEN GORDON:  If I may, Ben Gordon for the

3    plaintiffs.  Because counsel for those plaintiffs have

4    reached out to us, it's our understanding that those motions

5    are stayed before this court, and they would have to re-file

6    them, but they're not under any obligation to respond to,

7    you know, any motions by the defense in those underlying

8    cases.

9         THE COURT:  That is definitely true.

10        MR. BEN GORDON:  Okay.

11        THE COURT:  As to whether any future action would

12   be by way of a filing of a new motion or a re-upping of the

13   old one, it was my impression that what Ms. Zimmerman was

14   saying, and I was agreeing to, is that there would be new

15   motion practice if there are issues to be decided here, but

16   we can consider the St. Louis motion stayed.  That would be

17   consistent with the earlier pretrial order dealing with

18   motions that were pending in cases before the MDL was

19   created.

20        MR. BEN GORDON:  That was my understanding, Your

21   Honor.

22        MR. HULSE:  All right.  That's helpful.

23        MR. BEN GORDON:  Thank you, Your Honor.

24        THE COURT:  Thank you.  Is there anything before

25   we get to Canada?  No.  And there's really nothing to say

1    about the Canadian action, I don't believe.

2              MS. YOUNG:  No, Your Honor.  Nothing has happened

3    in Canada.

4              THE COURT:  Additional pretrial orders, that's the

5    re-verification issue, which we have discussed.

6              As to discovery, there are some summaries here.

7    Does anyone want to say anything about Item Number 8 on the

8    agenda?

9              MR. HULSE:  If I can say no, Your Honor, from this

10   place.

11             MS. ZIMMERMAN:  And, Your Honor, we have a few

12   updates, and perhaps some questions on housekeeping issues.

13   We detail in or summarize, I guess, what our anticipated

14   motions will be.  But in addition to that, just from a

15   housekeeping perspective, tomorrow is the deadline for

16   filing of the punitive damages motion.  I don't know if the

17   Court has a preference.  We've seen it done different ways

18   in the District of Minnesota, whether the motion is argued

19   to the Article III judge or to the magistrate judge.  I

20   assume that that's a preference of the Court, and so if the

21   Court has a preference, I'm happy to work with your chambers

22   to find a date for either or both of you to hear those.

23             THE COURT:  File it and schedule a hearing in

24   front of Judge Noel, please.

25             MS. ZIMMERMAN:  Okay.  And then similarly, Judge

1    Leary, you have indicated to us in hearings in the past an

2    indication or an interest in potentially collaborating on

3    various issues that may be crossing across both the MDL and

4    the Ramsey County proceeding.  I don't know if it would make

5    sense to potentially hold that hearing for punitive damages

6    together jointly or if you would like us to set a separate

7    hearing in Ramsey County to bring a motion.  We don't have a

8    deadline in the Ramsey County cases right now for the

9    punitive damages motion, but I don't expect that the motion

10    itself should be dramatically different.

11         JUDGE LEARY:  I think that's something we should

12    discuss.  I think all things being equal, I would like to

13    convene one hearing with a joint jurisdiction over that

14    hearing.  But let me talk with Referee Noel and confirm with

15    Judge Ericksen.

16         MS. ZIMMERMAN:  Certainly.  And we can absolutely

17    circle back with both of your clerks if that would make more

18    sense, but I just wanted to follow-up on that issue.

19         And one additional update on the third party

20    subpoenas to manufacturers of patient warming products, we

21    had provided a copy of Judge Noel's Order to counsel for

22    both Stryker, which manufactures the mistral product and

23    then the Cincinnati Sub-Zero.  We did receive some e-mails

24    yesterday.  I understand we are setting a meet and confer

25    with counsel for Stryker.  I hope that we will be concluding

1      that in the next week.  And we understand that Cincinnati

2      Sub-Zero will be providing a response this week, and I don't

3      know what that response, what form that will take.  But

4      that's an update from when we submitted this earlier this

5      week.

6                  THE COURT:  Mr. Hulse?

7                  MR. HULSE:  Just briefly, Your Honor, on

8      plaintiff's motion for punitive damages, given that I think

9      that would be by default on the regular non-dispositive

10     motion cycle given the, you know, it's likely to be a motion

11     that requires more briefing.  We would just propose to have

12     a longer briefing timetable on that.  And we will, of

13     course, work with plaintiff's counsel to do that.  That's

14     all.

15                 THE COURT:  I'm not just going to give you more

16     time in a blind.  Nice try though.

17                 MR. HULSE:  Of course not, Your Honor.

18                 THE COURT:  More words while you're at it.  More

19     pages.  An opportunity to respond even though it's

20     non-dispositive?

21                 MR. HULSE:  I just want to make sure that nobody

22     says, "well, you didn't say anything at the hearing so."

23     Now I've said it.

24                 THE COURT:  Thank you.  All right.  Anything else

25     on discovery Item 8 before we get to or turn our attention

```
 1        anyway to Item Number 9?

 2               Very well.  Expert reports.  There are some

 3        positions set out here.  I gather that this is the item that

 4        caused the delay in the submission of the joint agenda.  So

 5        is there anything that anyone would like to say about this?

 6        You got your positions laid out here.

 7               MS. ZIMMERMAN:  Yes, Your Honor, if we may.

 8               As we outline in our papers, the plaintiffs

 9        learned late in the day, well, actually I think when we were

10        before Your Honor, Judge Noel, for a different hearing on

11        the 29th, and we heard reference to whether or not the

12        defendant's expert reports were going to be due in a few

13        months.  We realized we were operating under a fundamentally

14        different understanding of what the due dates were.

15               Looking back at some of the transcript testimony

16        that was cited by defense counsel, it seems that the Court

17        does talk about an initial report being an expert report for

18        any party that has the burden of proof.  And I would say

19        that typically in my experience and also looking at the

20        rules and the manual for complex litigation and some of the

21        best practices memos out there, there tend to be two

22        different approaches to how to do expert discovery.

23        Typically, under the rules, I think there's an initial

24        report from the party that bears the burden, typically, the

25        plaintiffs.  There's a responsive report from the
```

1    defendants, and then there's a rebuttal report from the

2    plaintiffs, which is what was proposed by defense counsel,

3    as Your Honors were considering what kind of a scheduling

4    order to adopt in this particular matter.

5           The other way that is sometimes done, and I think

6    it's done particularly in patent cases and some other

7    complex cases, is there's a mutual exchange of initial

8    reports, and then there's a mutual exchange of rebuttal

9    reports.  And we thought that we were operating under the

10   second, based on the claim language of the order.

11          Understanding now that we have a difference of

12   opinion on what was appropriate, we suggested to defense

13   counsel that what we ought to perhaps do is stipulate to an

14   amendment to the scheduling order or suggest an amendment to

15   Your Honors where we have now disclosed our experts and that

16   they could disclose their experts as a response, and then

17   pursuant to the standard practice, we would have the

18   opportunity to do a rebuttal at some point shortly

19   thereafter.

20          The other issue has really to do with defendant's

21   request to depose our experts prior to disclosing their

22   experts, and that very issue was brought up in front of this

23   Court, and Judge Noel asked some questions about that, and

24   indicated that in his experience, that's not what's ever

25   done.  That defendants are not typically afforded the

 1     opportunity to depose the plaintiffs' experts prior to

 2     disclosing their own expert reports.  So we certainly think

 3     that that is appropriate and that the Court has already

 4     spoken to that issue.  And we think that the expert

 5     deposition should really be placed after the conclusion of

 6     the written reports are produced.

 7          So with respect to the reports, we would request

 8     the opportunity to do a rebuttal after the disclosure of the

 9     experts from the defendants.  And if the Court is not

10     inclined to allow us to do that, we would like to have full

11     briefing on the issue as to the scope and context of the

12     rebuttal reports defendants are able to produce.

13          MR. COREY GORDON:  Good morning, Your Honors.

14     Corey Gordon for the record.  There are really two issues

15     here.

16          THE COURT:  Ben's brother?

17          MR. GORDON:  We are no relation, but he is younger

18     and better looking than I am, so if you want a way of

19     distinguishing us, that would be the easiest.

20          MR. BEN GORDON:  Why aren't you nicer to me then?

21          (Laughter.)

22          MR. COREY GORDON:  What?

23          MR. BEN GORDON:  Why aren't you nicer to me then?

24          MR. COREY GORDON:  I'm very nice to you,

25     Mr. Gordon.

 1              There are really two issues.  Number one is what

 2      plaintiffs are really seeking is the opportunity to submit a

 3      surrebuttal.  The scheduling order is very clear.  It called

 4      for an initial disclosure.  And as the Court had explained

 5      in the hearing where the transcript quoted that, that was

 6      the initial report for whoever has the burden of proof on an

 7      issue.  So those who had the burden of proof on the issues

 8      that they wanted to submit expert testimony on did so, and

 9      those who want to rebut those reports have an opportunity to

10      do so coming up shortly here at the end of in May.

11              What they're asking for is not a rebuttal, an

12      opportunity to rebut our rebuttal.  They're asking for a

13      surrebuttal.  It is true there are scheduling orders I've

14      seen sometimes that actually quite frequently that have

15      contemplated the opportunity to do a surrebuttal.  This

16      scheduling order did not.  And so if they want to amend,

17      seek to amend the scheduling order, there's a formal way to

18      do that, and I think they need to do that.  And given the

19      time frame, I would submit that that is really would be very

20      problematic and can throw things off, and it's really quite

21      unnecessary.

22              As for the other issue, the timing of depositions,

23      what we're dealing with here is the need to, frankly, a very

24      significant logistical issue.  They've declared seven

25      experts, and I'll talk about that in a second.  We

1    anticipate declaring a comparable number, perhaps a couple

2    more, but we're dealing with a significant number of

3    experts.  If we wait until some time after June 2nd to start

4    scheduling 14, 15, 16 experts and get them done before

5    August 2nd with a July 4th holiday thrown in there, I don't

6    think it's going to happen.

7            The difficulties in scheduling so much as a single

8    deposition of experts, most of whom have busy lives, and in

9    some cases they are treating patients or doing other,

10   engaged in other professional activities that occupy their

11   time.  It's really hard to schedule expert depositions.  I

12   mean I've been doing this for 37 years, and you don't just

13   pick up a phone and say, you know, let's schedule a dozen

14   experts over the next 30 days, and, you know, all the pieces

15   fall into place.

16           So as soon as we got their expert reports, we

17   said, please, give us some, start getting us some deposition

18   dates.  We know it's going to take a while.  Well, they've

19   kind of filibustered us, if you will, and we're now at, you

20   know, April 20th.  We haven't gotten any dates.  They're

21   saying no, no, we're not even going to give you any dates.

22   We shouldn't have to give you any dates until after we see

23   your expert reports.  That's really going to throw a monkey

24   wrench in the system.  And it's not what either the

25   scheduling order or the rules contemplate.

1           The scheduling order does not, as I read it, and

2      as I understand the Court's comments on it, it doesn't

3      preclude the taking of expert depositions prior to the

4      disclosure of both parties.

5           MAGISTRATE JUDGE NOEL:  But it doesn't make any

6      sense to do that, does it?  I mean the whole point is, as I

7      understand the 91 amendments to the rules that generated

8      this whole thing about expert reports, is everybody is

9      supposed to have a piece of paper or multiple pieces of

10     paper with what the expert is going to say, so that when we

11     do the depositions everybody has got the same data to start

12     with.  If you have a situation where you start deposing

13     plaintiffs' experts on their reports before your guys even

14     prepare a report, that kind of screws up the whole system,

15     doesn't it?

16          MR. COREY GORDON:  With all due respect, I guess I

17     don't -- that's not my understanding of the rules, but I

18     certainly recognize you have more experience than I do.

19          THE COURT:  Are you just saying that you want to

20     get them scheduled?

21          MR. COREY GORDON:  Yes.

22          THE COURT:  Okay.  So here's what I --

23          MAGISTRATE JUDGE NOEL:  But scheduled after your

24     June 2nd date?

25          THE COURT:  Or It might be before, but let me just

1    tell you what --

2              MR. COREY GORDON:  It would probably be both.

3              THE COURT:  Let me tell you what I think.

4    Rule 26(b)(2)(a) uses the term "rebuttal" in a way that's

5    different from rebuttal, like a rebuttal expert at trial or

6    something.  And it is entirely consistent with the way that

7    Judge Noel used those terms in the transcript that's

8    contained in the order.  So burden of proof party, experts

9    are the initial experts, and the party responding to the

10   party with the burden of proof submits what's known as

11   rebuttal.  That's what is called for in the rules.  That's

12   what's contemplated in our pretrial order, and so there's

13   not really confusion about that.

14             The question about depositions before the rebuttal

15   expert is something that's slightly different.  Mr. Gordon,

16   what I think you're saying is that you can't get these

17   scheduled, but you're not asking for an order that says you

18   don't -- that you have a right to take the plaintiffs'

19   experts' depositions before you submit your expert report,

20   so your experts are not going to be responding.  Well, they

21   probably couldn't really at this point anyway to deposition

22   information from the plaintiffs' experts.  Because that, I

23   don't think -- I think that could be problematic because if

24   you are entitled to have their expert reports before you

25   take their depositions, it's never going to end because

1    they're going to depose on you, and then if you get to

2    submit written reports based on deposition information, then

3    they'll almost automatically have a right to submit

4    supplemental written reports after your depositions, and I

5    don't see how that is good for anyone.

6              MR. COREY GORDON:  And I want to make clear, I

7    don't think -- it's not our position that we have an

8    absolute right to take their expert depositions prior to our

9    disclosure.  I believe that issue was actually discussed

10   with the Court and --

11             THE COURT:  I think we did talk about that.  I

12   don't remember exactly what we --

13             MR. COREY GORDON:  I mean that was not

14   incorporated in the scheduling order, but neither was the

15   flip side of that a preclusion of taking their experts

16   before we disclosed our experts.  And as I read the rules, I

17   can't even get to it.  It's 26 -- well, the trial

18   preparation expert's part, deposition of an expert who may

19   testify.  A party may depose any person who has been

20   identified as an expert whose opinions may be presented at

21   trial.  If Rule 26(a)(2)(b) requires a report from the

22   expert, the deposition may be conducted only after the

23   report is provided.

24             So as I read the rules, it's a limitation on you

25   can't take the expert before their report, but I don't read

```
 1    any limitation on once the report is submitted that --

 2              MAGISTRATE JUDGE NOEL:  Do we understand you now

 3    to be saying that you do not intend and you're not asking

 4    for the right or just whatever you want to call it, you're

 5    not asking to depose any of the plaintiffs' experts before

 6    your reports are due?  You're just asking to get dates on

 7    the calendar for some later dates after your reports are

 8    disclosed?  Is that what you're asking?  Or are you asking

 9    to depose them right now or as soon as you can without

10    regard to whether your reports are done?

11              MR. COREY GORDON:  I think the latter, as soon as

12    we can get them scheduled.  Just the process of scheduling

13    expert depositions, particularly with these experts are, you

14    know, from coast to coast.

15              THE COURT:  Okay.  So listen, if it's really a

16    scheduling issue, then we can decide particular scheduling

17    issues.  So you know whose deposition you want to take.  I

18    would say that the plaintiffs would not be within their

19    right to say they're not going to give you a date now

20    because it's not until June 2nd.  You have to wait until

21    after June 2nd to start calling them and scheduling it.

22    That does not strike me as being reasonable.

23              If the scheduling process now results in undue

24    delays of these depositions in an after June 2nd world, and

25    there's an expert who would be available on May 30th
```

1     instead, well, if it's either May 30th or, you know, a year

2     hence, then we can talk about that person maybe should be

3     May 30th.  But if you're not saying that you have a right to

4     a pre -- you're not deliberately trying to get people

5     scheduled -- well, I don't think you should try to

6     deliberately get their experts scheduled before your expert

7     reports are due.

8             Plaintiffs should not take the position that

9     you're not going to schedule these until, and I don't know

10    what positions have or haven't been taken.  But just, but so

11    that's my view is that you're not going to get an order

12    saying that you're entitled to take the depositions now come

13    hell or high water.  But I do think that since at least some

14    of the total experts are known, that you all should try to

15    get those depositions on the calendar as soon as possible.

16    And if it turns out that they're not going to be able to be

17    timely deposed after, then we can talk about whether there's

18    some magic prohibition against taking the deposition ahead

19    of time in some, if there's a fact specific reason to

20    proceed that way.

21            MR. COREY GORDON:  And just to clarify, Your

22    Honor, it's already April 20th.  When we started this

23    process in the beginning of April, we thought, okay, well,

24    you know, did the usual back and forth.  They'll contact

25    their experts, get a few available dates, match them up with

1    their calendars and say, okay, here's when we could make

2    them.  We'd look at our calendars.  We'd say, okay, let's do

3    so-and-so on such-and-such a date, so-and-so on

4    such-and-such a date.  That didn't happen.  They dug their

5    heels in saying no, we're not even going to give you dates

6    until after June 2nd.

7            MR. BEN GORDON:  No, Your Honor, that's not

8    correct.

9            THE COURT:  I know, I know, here just -- it's

10   okay.  It's okay.

11           MR. COREY GORDON:  And I just want to say the

12   problem with not deposing their experts until after

13   June 2nd, is, A, a logistical problem, which is a very

14   serious logistical problem; but, B, the opportunity for us

15   to understand the alpha & omega of each expert's report,

16   and, therefore, what we need to do to rebut that.  That's

17   partly the, you know, the value of a deposition.

18           And I just want to, I point out when this whole

19   issue was discussed back in September, Mr. Ben Gordon told

20   the Court, you know, they're going to know what those

21   witnesses will say.  They were here at science day.  They

22   have the experts.

23           That's not true.  They presented three experts at

24   science day.  They deep sixed two of them, so one of their

25   seven experts was actually at science day.  They had

1    disclosed, I don't know, like six or seven experts in the

2    Walton and Johnson case.  They got rid of all but one of

3    them.  So of the seven experts they've disclosed, we had

4    some foreshadowing of two of them.  The other five are brand

5    new.  One of them, you know, purported to do his own study.

6    There's a lot of information that's new to us.

7              MAGISTRATE JUDGE NOEL:  But you have reports from

8    each of them now, correct?

9              MR. COREY GORDON:  We do.  And, you know, I --

10             THE COURT:  That's what you're going to have.

11             MR. COREY GORDON:  Right.  But my point is, aside

12   from the logistical issue, the idea that if, well, if we

13   could schedule expert X on May 10th and learn from that

14   deposition that, well, actually what appears in their report

15   isn't, you know, completely, you know, it wasn't necessarily

16   clear or was incomplete, and now we have a complete

17   understanding and that causes us to rethink how we might

18   want -- what the type of expert we might want to use to

19   rebut it or what our expert --

20             MAGISTRATE JUDGE NOEL:  Just to followup on what

21   Judge Ericksen said, if that's the approach the Court were

22   to take, then necessarily because your report is going to be

23   based on not only the plaintiffs' expert's report but also

24   in their deposition, and you're going to incorporate new

25   things into your report that they didn't think about,

1    they're going to ask for an opportunity for a surrebuttal

2    rebuttal report, and that's going to screw up -- technical

3    legal term -- the logistics worse than what you're talking

4    about in the first place, isn't it?

5            THE COURT:  Well, you don't have to answer that.

6    Here, I'll just say that now that I understand what you're

7    saying, I can see where the plaintiffs would have had the

8    belief that you wanted their information before you

9    submitted your expert reports.  You're not entitled.  I'm

10   just saying you're not entitled to that.  I hear you that it

11   would be helpful for your experts.  You're not going to get

12   that order from me right now.  In fact, I would say to the

13   contrary.

14           To the extent that your concerns are purely

15   logistical, plaintiffs will work with you on that, and I

16   will use my powers to make sure that there aren't

17   unreasonable logistical hurdles.  But, and I think that the

18   logistical hurdles will be easier to overcome now that we've

19   straightened out the information gathering part of it.  You

20   separate that out and go forth and get these depositions

21   scheduled.

22           MR. COREY GORDON:  I just want to make sure I

23   understand what the Court is saying.  If so beginning the

24   scheduling process could mean they're not even looking for

25   dates before June 2nd.

```
 1                THE COURT:  Right.

 2                MR. COREY GORDON:  Then we're going to run into

 3     the same situation of having to do, you know, 15, 16, 17

 4     depositions in functionally, you know, less than 60 days.

 5                MAGISTRATE JUDGE NOEL:  That doesn't strike me as

 6     being a challenge.

 7                THE COURT:  But, see, if you approach it purely as

 8     a logistical matter, that's one thing, but it's clear that

 9     that's not really the only thing that was in your mind.  You

10     know, the other thing that's in your mind is the information

11     gathering, so --

12                MR. COREY GORDON:  Well, the whole point of taking

13     the deposition is information gathering.

14                THE COURT:  Information gathering so that your

15     experts have the deposition testimony before they submit

16     their expert reports just to make it clear.

17                MR. COREY GORDON:  And that's what I wanted to

18     make clear, Your Honor.  If a deposition were to be

19     scheduled prior to our expert disclosure, it could, I mean

20     perhaps this is what you're saying, but I'm not sure of that

21     is we can't -- we have to act as if we didn't know that

22     information.

23                THE COURT:  No, the discussion doesn't have to go

24     any further.

25                MR. COREY GORDON:  Okay.
```

1      THE COURT:  I think you should expect that they

2   will -- that the plaintiffs' experts will be deposable

3   shortly after June 2nd.

4      MS. ZIMMERMAN:  We're happy to do that, Your

5   Honor.

6      MR. COREY GORDON:  Okay.  Thank you, Your Honor.

7      THE COURT:  Judge Leary?

8      JUDGE LEARY:  If I could add one thing.  Not only

9   does Judge Ericksen's ruling make sense, but in terms of the

10  defense's own experts, I think it behooves both sides to

11  start, I know you don't have an obligation to disclose your

12  experts, and you haven't disclosed your reports yet, but I

13  think you need to be in touch with your experts to determine

14  their availability ongoing and not wait until the plaintiffs

15  ask for those dates.  I think once you have dates for the

16  depositions of plaintiffs' experts, then I think you can do

17  your due diligence on the defense experts as well,

18  particularly times and issues.  Thank you.

19     MR. COREY GORDON:  Thank you.

20     THE COURT:  Mr. Gordon, does that take care of

21  your heart attack or are you --

22     MR. BEN GORDON:  It does, Your Honor.  My only

23  concern was that, you hit the nail on the head, they asked

24  specifically that they connected with --

25     THE COURT:  Now, that we have it, there's no

 1    point --

 2              MR. BEN GORDON:  Yes, Your Honor.  Thank you, Your

 3    Honor.

 4              THE COURT:  -- in rubbing salt in the wound.

 5              MR. BEN GORDON:  Understood, Your Honor.

 6              THE COURT:  Much as I know you'd love doing it to

 7    my wound.

 8              MR. BEN GORDON:  No, Your Honor.  Thank you.

 9              THE COURT:  Okay.  The last item?  That was.  That

10    was it.  All right.  Mr. Gordon?

11              MR. BEN GORDON:  Your Honor, I just want to say if

12    we're done with the substantive business, I have a conflict

13    the next hearing date, which we have plenty of ample help

14    here.  I don't want to put things off, but I'll be in Spain

15    and Portugal as it happens on those dates, so I was going to

16    be asked to be excused from the May 18th status conference.

17              THE COURT:  Let's take a look at May 18th and see.

18    Well, why don't you folks come back?  I'm reluctant to put

19    all of these scheduling matters on the record.

20              MR. BEN GORDON:  We'll have plenty of coverage,

21    Your Honor.  I just wanted to make sure you understood I

22    wouldn't be here.  Thank you.

23              THE COURT:  Right, right, but would you come back

24    to chambers so that we can work on --

25              MR. BEN GORDON:  Oh, come back.  I thought you

1     meant come back in May.

2                 (Laughter.)

3                 THE COURT:  No.  Boy, you know, you're getting to

4     me know me pretty well.

5                 Thank you, attorneys, who are on the phone.  We

6     are in recess.

7                       (Court adjourned at 10:27 a.m.)

8

9                           *      *      *

10                     REPORTER'S CERTIFICATE

11                I, Maria V. Weinbeck, certify that the foregoing is

12    a correct transcript from the record of proceedings in the

13    above-entitled matter.

14

15                Certified by:  *s/ Maria V. Weinbeck*

16                               Maria V. Weinbeck, RMR-FCRR

17

18

19

20

21

22

23

24

25