UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br>All Actions | MDL No. 15-2666 (JNE/FLN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT 3M COMPANY'S MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS AND CONTINUE THE DEPOSITION OF DR. SCOTT AUGUSTINE**<br><br>**(FILED UNDER SEAL)** |

## INTRODUCTION

Dr. Scott Augustine is at the center of this litigation. Though he is not a party to these proceedings, his scheme to manufacture "science" relating to the 3M™ Bair Hugger™ patient warming system, and to feed the "science" to lawyers in an effort to generate interest in suing 3M, lies at the heart of defendants' ability to demonstrate how biased Plaintiffs' studies are. Dr. Augustine has waged a campaign against 3M and the Bair Hugger system for nearly a decade, from a litigation guide he developed for Plaintiffs' counsel to his recent email blasts to 3M customers nationwide falsely claiming that the Bair Hugger system is being recalled.

3M is entitled to fully explore these and other relevant issues in discovery. It attempted to do so in its March 31, 2017 deposition of Dr. Augustine, but the effort was not complete because (1) the presumptive seven-hour time limit set forth in the Federal Rules of Civil Procedure is insufficient to complete the deposition of Dr. Augustine under

these circumstances, and (2) Dr. Augustine disclaimed knowledge of several key documents and issues, instead directing 3M to his son, Brent Augustine, or his attorney, J. Randall Benham.

Accordingly, 3M respectfully requests that the Court grant leave for 3M to (1) be allowed additional time to complete the deposition of Dr. Augustine, and (2) take the depositions of Brent Augustine and J. Randall Benham

## **ARGUMENT**

### A. Good Cause Exists to Allow 3M Additional Time to Complete the Deposition of Dr. Augustine.

Defendants seek leave to exceed the presumptive seven-hour limit and continue the deposition of Dr. Augustine. The Court is aware of Dr. Augustine's extensive involvement in these proceedings, and the role that he played in developing the theories upon which Plaintiffs' claims are based. Dr. Augustine sponsored the underlying research (and is connected to each of the studies Plaintiffs now rely on), publicly disparaged the Bair Hugger warming system in an effort to drum up additional claims, and repeatedly shared false and misleading information regarding the Bair Hugger with federal regulators and the public – all after threatening 3M with litigation and a flood of negative publicity if 3M did not agree to buy Augustine's HotDog warming product.

Despite 3M's best efforts, it was not possible to cover all of these topics during Dr. Augustine's seven-hour deposition. 3M moved expeditiously, taking him through 70 documents in the seven-hour span, but did not have enough time to cover other important issues, including (1) letters and emails in which Augustine threatens 3M with litigation if

it does not buy his HotDog product, (2) Bair Hugger 510k documents signed by Dr. Augustine and other documents showing Dr. Augustine's initial support for the Bair Hugger system, (3) Dr. Augustine's email campaign regarding the alleged "recall" of the Bair Hugger system, and (4) Dr. Augustine's emails and other evidence demonstrating his direct but undisclosed involvement in the science studies relied on by Plaintiffs.

The Federal Rules of Civil Procedure permit an extension of the seven-hour limit for depositions, based upon a showing of good cause. *See* Fed. R. Civ. P. 30(d), advisory committee note (2000) ("The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination;" extension of seven-hour limit may be warranted where the examination will cover a long period of time); s*ee also Indep. Park Apartments v. United States*, 59 Fed. Cl. 765, 770 (2004) (allowing up to 10 hours for deposition of key witness, noting that extending the seven-hour limit would not create an undue burden for plaintiffs or the witness); *cf. Judicial Watch, Inc. v. United States Dept. of Commerce*, 34 F. Supp. 2d 47, 54 (D.D.C. 1998) ("Leave to conduct a second deposition should ordinarily be granted; the burden is on the opposing party to demonstrate that [Rule 26(b)(2) is not satisfied].").

Here, the additional time 3M seeks will not result in testimony that is either unnecessary or duplicative. Dr. Augustine's involvement with the Bair Hugger system, including the claims now before the Court, spans more than a decade. The initial seven-hour period was simply not enough time for 3M to fully and fairly explore the numerous issues about which Dr. Augustine is uniquely positioned to provide testimony. There will

be no undue burden on Dr. Augustine or Plaintiffs if additional time is permitted, but 3M will be unduly prejudiced if such time is denied. Accordingly, 3M should be allowed additional time to complete the deposition of Dr. Augustine.

A.   **Good Cause Exists to Grant 3M Leave to Take the Depositions of Brent Augustine and J. Randall Benham.**

During Dr. Augustine's deposition, he was asked about documents he produced to 3M, about which 3M understandably and reasonably expected Dr. Augustine to have knowledge and be able to testify. There were several instances, however, where Dr. Augustine inexplicably disavowed any knowledge of the documents at issue and, instead, claimed that either Brent Augustine (his son and former CEO of HotDog USA) or Randall Benham (his personal attorney and in-house lawyer at Augustine Temperature Management, LLC) had the information 3M was seeking. For example, Dr. Augustine was questioned about a litigation guide provided to Plaintiffs' counsel, which Dr. Augustine was said to have helped create:

> ***Scott and I are preparing a detailed guide to suing 3M Bair Hugger for orthopedic implant infections***. It will contain background summaries of and links to scientific articles, explanations of the idealogy (sic) of joint infections, a timeline of 3M's knowledge and failure to warn, discovery suggestions, and a half dozen other useful things. . . .We intend to offer it to other plaintiffs' firms around the country who expressed an interest in jumping on this bandwagon . . . . My question: Would you like KH to be the author of this guide? It would help establish KH as the leader in this area. Of course, if KH is the listed author, you guys will want to be comfortable with the content and I will run everything past you . . . . We are going forward either way, but I wanted to give you the opportunity if you are interested.

Augustine Dep. 112:18–113:20 (ellipsis in original, emphasis added) (attached as Ex. A to the Declaration of Benjamin W. Hulse ("Hulse Decl.")); Augustine Dep. Ex. 15 (Hulse Decl., Ex. B).

Dr. Augustine claims not to know his company was involved in sending out the guide, however, notwithstanding Benham's statement to the contrary. *See* Hulse Decl., Ex. A at 117:7-118:7. Indeed, Dr. Augustine claims he does not "know any details" regarding whether David Hodges agreed to have his firm appear as the author of the litigation guide. *See id*. at 114:18-115:5. When asked who would have been responsible for this document, Dr. Augustine replied "Randy [Benham] would be the -- the main guy there," notwithstanding the fact that Dr. Augustine was identified as one of the authors of the document. *Id.*

Similarly, Dr. Augustine claimed he does not know why his attorney was revising an email – about the status of one of the early Bair Hugger lawsuits – that was ostensibly from David Hodges and Gabriel Assaad. *See id.* at 136:23-137:10; Augustine Dep., Ex. 22 (Hulse Decl., Ex. C). ("I have revised the e-mail to indicate that the *Walton* cases [are in a] very early stage and that the guide is a work in progress"). Dr. Augustine also disavowed any knowledge about Benham's comment that the *Walton* case would generate "valuable experience to share with other attorneys" but that it "could take many months and we can't wait that long to engage other attorneys." Augustine claimed he did not know why they could not wait, or why they were in a hurry to engage other attorneys. *See* Hulse Decl., Ex. A at 138:3-138:11.

5

And when Dr. Augustine was questioned about the document entitled "Blowing Air is Risky," a campaign he now says he does not recall starting, he stated he could not remember whether he wrote the section entitled "Reservoirs of Infection."  *See id.*; Augustine Dep., Ex. 2 (Hulse Decl., Ex. D).  According to Dr. Augustine, he "probably participated" but the section would have been written by a group, which might have included Brent Augustine (or his son Garrett Augustine or Mark Albrecht) and "was probably proofed by Mr. Benham."  *See id.* at 35:6-15.

The subject matters and documents about which Dr. Augustine claims to lack knowledge have already been deemed relevant by this Court.  *See* Order on Motion to Compel, ECF No. 250 (March 7, 2017).  Given the extent to which these documents appear to have been written by or provided to Dr. Augustine (not to mention the fact that he produced the documents), it was reasonable for 3M to expect Dr. Augustine to have the requisite knowledge to testify about them.  Leaving aside the credibility (or lack thereof) of Dr. Augustine's claim that he does not, his contention that 3M must look to Brent Augustine and/or Benham to have its questions answered provides good cause to allow 3M to take these depositions now.

Moreover, the documents at issue were produced only days before the discovery deadline.  3M noticed the depositions of Brent Augustine and Benham to take place on March 20, 2017 (the last day of the discovery period), though it advised that it would work with the parties to find a suitable time for the depositions in light of the logistical impossibility of completing them on that date.  In light of Dr. Augustine's apparent

inability to provide any information about these documents, the need for 3M to depose Brent Augustine and Benham is now even more paramount.

## CONCLUSION

For all of the foregoing reasons, 3M respectfully requests that it be granted leave to take depositions after the close of fact discovery, for the limited purposes of completing the deposition of Dr. Scott Augustine, and deposing Randall Benham and Brent Augustine.

Dated: May 4, 2017                                           Respectfully submitted,

s/ Benjamin W. Hulse
Jerry W. Blackwell (MN #186867)
Mary S. Young (MN #0392781)
Benjamin W. Hulse (MN #0390952)
BLACKWELL BURKE P.A.
431 South Seventh Street
Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3256
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
          myoung@blackwellburke.com
          bhulse@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company and Arizant Healthcare, Inc.**
