

Jerry W. Blackwell
Direct Dial:  612-343-3232
E-Mail:  blackwell@blackwellburke.com

**VIA ELECTRONIC CASE FILING**

May 18, 2017

The Honorable Joan N. Ericksen
United States District Court Judge
United States District Court, District of Minnesota
300 South Fourth Street, Suite 12W
Minneapolis, MN  55415

Re:   *In re Bair Hugger Forced Air Warming Products Liability Litigation*
        MDL No. 15-2666-JNE-FLN

Dear Judge Ericksen:

On May 10, 2017 the parties submitted names of their Bellwether Trial Candidates to the Court pursuant to Pretrial Order No. 17, Section 12(f).  While the parties included two cases (Kamke (MDL) and Walker (Ramsey County)) for which they agreed, each party also submitted the names of three additional cases, with the intent that a total of eight (8) cases would be proposed, consistent with the Court's Order.  Plaintiffs have since in a phone call challenged one of Defendants' cases (Knuteson (MDL)).  Defendants submit this responsive letter-brief opposing Plaintiffs challenge to Plaintiff Jeffrey Knuteson, Case No. 16-cv-01088-JNE-FLN, as a representative case for the Bellwether Trials, and respectfully request that Plaintiff Jeffrey Knuteson remain in the Bellwether pool.  Defendants also write to challenge Plaintiffs' selection of Gerardus Vandermade as a representative case, for the reason that Mr. Vandermade's facts and circumstances remain largely unknown, making it impossible to determine whether or not his case is representative.

    1.    **Plaintiff Jeffrey Knuteson Should Remain in the Bellwether Pool.**

Plaintiffs knew since April 7, 2017 that Mr. Knuteson was one of Defendants' possible Bellwether recommendations.  It was on that date that Defendants' plainly listed him as one of their 16 possible federal Bellwether nominees included in the parties' jointly submitted Bellwether nominations to this Court.  Evoking concerns that Plaintiffs may be now gaming the process, Plaintiffs waited right up until the May 10, 2017 deadline for making Bellwether choices – and even then only upon their receipt and observation of Mr. Knuteson's name on Defendants' Bellwether shortlist – to play a "hold-card" letter they had sat on since May 4th.  On May 10th, they sought to use the contents of that letter to unfairly eliminate one of Defendant's

proposed Bellwether recommendations but only after having seen Defendants' shortlist.[1]   The net result of Plaintiffs' actions is tantamount to reserving a second strike of Bellwethers for themselves, and raises concerns about equal fairness in a process where each party is permitted but one strike.

The letter at issue was from Mr. Knuteson's counsel, who had written on May 4, 2017 to a member of Plaintiffs' MDL Steering Committee, claiming without a single medical record or physician verification, that Mr. Knuteson had started an "8-week course of chemotherapy and radiation in April 2017," and was not "an adequate Bellwether candidate" because his wife "was not confident in Mr. Knuteson's ability to travel or attend court."   (*See* Ex. A.)   Notably, Plaintiffs do not withdraw Mr. Knuteson's case, which would rightly render the case an unsuitable candidate.  Plaintiffs avoid discussing the stage of cancer or how treatable it is or even what any prognosis is.  They certainly did not claim to us that Mr. Knuteson's is an *in extremis* case. But even had they done so, if these Plaintiffs are to be believed, is it not the normal course for Plaintiffs' counsel to seek an expedited trial rather than an open-ended delay of trial for an *in extremis* Plaintiff?

The problem with reliance on such a facile and medically unsubstantiated letter is that it so easily can mask an improper motive, serving as a pretext for striking a representative case in the hopes of getting a "more representative" case better favoring an interested party. The process obviously is not supposed to work that way. Disqualifying an otherwise representative case ought to require more than the *ipse dixit* of counsel – without any supporting medicals, no substantiated diagnosis or prognosis, and no basis stated for concluding a lack of fitness to participate in discovery or trial.

Mr. Knuteson's case is fairly representative in terms of surgery (knee or hip); age (61); bacteria allegedly involved (methicillin-susceptible *S. aureus*); latency (four months); etc., and Plaintiffs have not indicated otherwise to us. Given Plaintiffs' apparent improprieties in the process as discussed above, should the Court nonetheless be inclined to strike Mr. Knuteson as the Plaintiffs request, Defendants respectfully request that they be allowed two strikes from Plaintiffs' proposed Bellwether trial candidates in the interest of procedural fairness.  Plaintiffs took a "wait and see" approach to raising the Knuteson issue only after seeing Defendants' trial candidates, and regardless of whether this was a result of mistake or of intent, it was nonetheless procedurally improper and should not in the final analysis confer a substantive or procedural advantage on Plaintiffs. What Defendants seek is equal fairness – either it is fair that both parties have an additional "hold-card" in the process tantamount to two strikes for Bellwethers or neither party should.

### 2.     Plaintiff Vandermade Should Not Be Included in the Bellwether Pool.

Mr. Vandermade's case is a fairly recent filing (No. 0:16-cv-04221), such that his PFS and medical records authorization were received a couple of months after the initial round of cases.

---

[1] We note for the Court also that Plaintiffs and Defendants participated in two meet-and-confers prior to submitting Bellwether Trial Candidates, and Plaintiffs never raised a single concern about the representativeness of Mr. Knuteson's case.



May 18, 2017
Page 3

Then, when received, Mr. Vandermade's PFS did not include any medical records to support his claims of surgery date, Bair Hugger use, infection confirmation, and follow up care. Instead of the usual surgical or hospital records to support these facts, Mr. Vandermade submitted a one-page, unsigned letter "To whom it may concern" on the letterhead of Dr. J. Dean Cole, purporting to attest to the initial surgery, subsequent treatment and an eventual revision surgery for Mr. Vandermade's right total hip replacement. Contrary to statements in Mr. Vandermade's PFS, the unsigned letter did not address in any way use of the Bair Hugger patient warming device for Mr. Vandermade's surgery. When Defendants sought to collect supporting records from the Florida Hospital – Orlando, the hospital required prepayment of more than $10,000, which is essentially cost-prohibitive at this stage in the proceedings. Defendants have been able to collect records from the Orthopedic practice with whom Mr. Vandermade treated, but those records do not include the critical surgical records, anesthesia records, or labs. Defendants made a more recent request to Mr. Gordon, Vandermade's attorney, for these records, but thus far have not received anything further. In short, given the lack of critical information, Defendants submit that Mr. Vandermade cannot be shown to be a representative plaintiff for purposes of a Bellwether selection.

We appreciate the Court's time and consideration of these matters.

Respectfully submitted,

/s/Jerry W. Blackwell
Jerry W. Blackwell (MN #186867)
Mary S. Young (MN #0392781)
Benjamin W. Hulse (MN #0390952)
BLACKWELL BURKE P.A.
431 South Seventh Street
Suite 2500
Minneapolis, MN  55415
Phone: (612) 343-3256
Fax: (612) 343-3205
Email:  blackwell@blackwellburke.com
         myoung@blackwellburke.com
         bhulse@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
M. Joseph Winebrenner (MN #0387889)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
Email:  bridget.ahmann@faegrebd.com
         joe.winebrenner@faegrebd.com

**Counsel for Defendants 3M Company and Arizant Healthcare, Inc.**

