UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates To: All Actions | |
| **FILED UNDER SEAL** | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR *IN CAMERA* REVIEW OF DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE** |

## INTRODUCTION

Plaintiffs request *in camera* review of two categories of documents claimed as privileged by Defendants. First, Plaintiffs request *in camera* review of safety-related documents withheld under an overly-broad application of the attorney-client and work-product privileges.[1] Defendants' privilege logs show that numerous documents designated as work product do not appear to have been created in anticipation of litigation and that numerous documents designated as attorney-client communications do not appear to have been drafted for the purpose of securing legal advice. It appears Defendants have withheld hundreds of communications relating solely to general business strategy or patient safety.

Second, Plaintiffs request *in camera* review of documents withheld by Defendants in discovery relating to conduct with non-party fact witnesses.[2] Plaintiffs' Requests for Production sought documents regarding witnesses who had entered into exclusive litigation consulting agreements with Defendant 3M. Plaintiffs' requests came in the wake of a pre-

---

[1] *See* Exhibit 1, Pls.' Challenges to Work Product Claims; Exhibit 2, Pls.' Challenges to Attorney-Client Privilege Claims.
[2] *See* Exhibit 3, Pls.' Challenges to Defs.' Privilege Log for the Crime-Fraud Exception.

1

███████████████████████  ██████████████████████

████████████████████████████████████████████████

████████████████████████[3] In response to Plaintiffs' requests, Defendants

asserted privilege over hundreds of communications relating to the witnesses and their

agreements with 3M. Because these documents are likely discoverable under the crime-

fraud exception, the Court should conduct an *in camera* review of these documents as well.

## ARGUMENT

### I. The Court Should Conduct an *In Camera* Review of Certain Documents Allegedly Protected by the Work-Product and Attorney-Client Privileges.

As the Court knows, Plaintiffs have sought leave to amend the Master Complaint to

assert a claim for punitive damages. The evidence discussed therein shows that in the mid-

2000s, Defendant Arizant Healthcare, Inc. ("Arizant") became aware of a growing volume

of scientific literature suggesting that the Bair Hugger increased the risk of infection in

orthopedic patients. In response, Arizant implemented a series of comprehensive plans to

fight the public perception of infection risk. The company assured the public that the Bair

Hugger was "absolutely" safe,[4] even though ████████████████████████s.[5]

Defendants have attempted to cover many of these unprotected discussions under a

blanket of attorney-client and work-product protection. Specifically, Defendants' privilege

logs reveal that Defendants have applied the work-product privilege to documents that

---

[3] *See Walton v. 3M*, No. 4:13-cv-01164, Doc. No. 193 (S.D. Tex. Oct. 29, 2015) (slip-op).
[4] *See, e.g.*, Exhibit 12, 3MBH01192634.
[5] *See, e.g.*, Exhibit 31, 3MBH00022877.

2

were not created in anticipation of litigation. Defendants have also applied the attorney-client privilege to communications involving general business matters and patient safety.

The parties communicated from September 2016 to June 2017 regarding their differing views on the work-product and attorney-client privileges;[6] however, an inexorable rift remains on the proper scope of these privileges to documents designated in Defendants' privilege logs. Among the thousands of documents withheld by Defendants in this litigation, Plaintiffs have narrowed their challenges to approximately 100 documents claimed as work product[7] and 300 documents claimed as attorney-client communications.[8] Plaintiffs request that the Court resolve this dispute by reviewing the documents *in camera*.

### A.    The Attorney-Client Privilege Does Not Apply to Communications with Non-Attorneys or Communications about General Business Advice.

The attorney-client privilege "extends only to confidential communications made for the purpose of facilitating the rendition of legal services." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 2015 WL 9861106, at *4 (D. Minn. Oct. 5, 2015). The purpose of the privilege is to "encourage full and frank communication between attorney[s] and their clients." *Id.* Accordingly, the attorney-client privilege does not apply to communications with individuals who are not attorneys. *See, e.g.*, *Ukofia v. Dep't of Homeland Sec.*, 2010

---

[6] *See* Exhibit 4, Pls.' Letter of Sept. 28, 2016; Exhibit 5, Defs.' Letter of Oct. 28, 2016; Exhibit 6, Pls.' Letter of Nov. 8, 2016; Exhibit 7, Defs.' Letter of Nov. 28, 2016; Exhibit 8, Pls.' Letter of Dec. 7, 2016; Exhibit 9, Defs.' Letter of Dec. 21, 2016; Exhibit 10, Pls.' Letter of Jan. 20, 2017; Exhibit 11, Pls.' Letter of June 5, 2017.

[7] *See* Exhibit 1, Pls.' Challenges to Work Product Claims.

[8] *See* Exhibit 2, Pls.' Challenges to Attorney-Client Privilege Claims.

WL 597059, at *6 (D. Minn. Feb. 17, 2010); *cf. Jensen v. Klecker*, 648 F.2d 1179, 1182–

83 (8th Cir. 1981) (concluding that documents not from an attorney are not privileged).

Even communications with attorneys may not be privileged. Communications about

"business decisions do not fall within the protection of attorney client privilege." *Peterson*

*v. Seagate U.S. LLC*, 2009 WL 3430150, at *4 (D. Minn. Oct. 19, 2009). Just as the minutes

of a business meeting attended by attorneys are not necessarily privileged, "business

documents sent to corporate officers and employees, as well as the corporation's attorneys,

do not become privileged automatically." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403

(8th Cir. 1987). Thus, for an attorney-client communication to be privileged, it must be

"for the purpose of soliciting specific legal advice" rather than for a business purpose with

"corporate-wide business interest in mind." *See, e.g.*, *Johnson v. Bd. of Pensions of the*

*Evangelical Luthern Church in Am.*, 2012 WL 5985600, at *4 (D. Minn. Sept. 5, 2012).

### B. Defendants Have Misapplied the Privilege to Communications with Non-Attorneys and to Communications about General Business Advice.

Arizant employed John Rock as its Director of Legal Affairs from 2003 until 3M

acquired the company in 2010.[9] Although Mr. Rock is not an attorney,[10] Defendants claim

attorney-client privilege over communications involving Mr. Rock[11] and his paralegal,

Amy Lievers.[12] While the attorney-client privilege can apply to paralegals, it only applies

to paralegals who work for attorneys. *See, e.g.*, *Dabney v. Investment Corp. of America*, 82

---

[9] *See* Exhibit 32, MDL Deposition of John Rock at 83:18-25.
[10] *See, e.g.*, *id.* at 26:6–7.
[11] Exhibit 2, Pls.' Challenges to Attorney-Client Privilege Claims at 3MPRIV00021895.
[12] *Id.* at 3MPRIV00021970; 3MPRIV00021989; 3MPRIV00023904; 3MPRIV00022033.

F.R.D. 464, 465 (E.D. Pa. 1979) ("It has long been held that the privilege applies only to members of the bar of a court or their subordinates. . . . Examples of such protected subordinates would include any law student, paralegal, investigator or other person acting as the agent of a duly qualified attorney."); *see also Ukofia*, 2010 WL 597059, at *6 (recognizing that communications with non-attorneys do not fall under the attorney-client privilege). Because Mr. Rock is not an attorney, Defendants' privilege log misapplies the attorney-client privilege to communications involving Mr. Rock and Ms. Lievers.

Defendants' privilege log also contains entries that appear to involve nothing more than general business strategy.[13] Indeed, a number of disputed attorney-client documents have been designated as communications regarding ██████████████████████████ ██████████████████████████[14] Examples of Defendants' habit of copying general counsel on discussions of general company strategy include the following emails:



---

[13] *See generally* Exhibit 2, Pls.' Challenges to Attorney-Client Privilege Claims.
[14] *See, e.g., id.* at 3MPRIV00003781; 3MPRIV00021089; 3MPRIV00017511.
[15] *Id.* at 3MPRIV0019586–98.
[16] *Id.* at 3MPRIV00016493–7.
[17] *Id.* at 3MPRIV0019322–27.
[18] *Id.* at 3MPRIV00021314–18.

Since these discussions involve company strategy long before Bair Hugger litigation, the documents "do not seek legal advice from [a] lawyer in his role as a legal advisor and instead simply provide or seek business analysis." *See Johnson*, 2012 WL 5985600, at *8.

In addition to documents concerning corporate business strategy, Defendants extend a generic claim of attorney-client privilege over general business matters such as scientific research and the safety of the Bair Hugger. ███████████████████████ ████████████████████████████████████████████████████ ██████████████████.[19] Defendants likewise describe another email ██████████ ████████████████████████████████████████████████████ ████████████[20] While counsel was not copied on those documents, Defendants copied general counsel on other documents simply for the sake of securing business advice. For example:

- ███████████████████████████████████████████████████ ████████████████████████████",[21]
- ████████████████████████████████████",[22]
- ██████████████████████████████████████████████████",[23]
- ███████████████████████████████████dy",[24]
- ██████████████████████████████████[25]

---

[19] *Id.* at 3MPRIV00026426.
[20] *Id.* at 3MPRIV00018403.
[21] *Id.* at 3MPRIV00021398.
[22] *Id.* at 3MPRIV00021965.
[23] *Id.* at 3MPRIV00024967.
[24] *Id.* at 3MPRIV00001014.
[25] *Id.* at 3MPRIV00019308.



It stands to reason that counsel's "advice was sought for a business purpose and with corporate-wide business interests in mind" rather than "for the purpose of soliciting specific legal advice." *See Johnson*, 2012 WL 5985600 at *4.

In the same flawed vein, Defendants have claimed privilege over raw data and other scientific matters, including

---

[26] *Id.* at 3MPRIV00020817.
[27] *Id.* at 3MPRIV00022064.
[28] *See, e.g.*, *id.* at 3MPRIV00018421; 3MPRIV00018358; 3MPRIV00018366.
[29] *See* Exhibit 13, 3MBH00544754.
[30] *Id.*
[31] *See, e.g.*, Exhibit 2, Pls.' Challenges to Attorney-Client Privilege Claims at 3MPRIV00018421; 3MPRIV00018358; 3MPRIV00018366.
[32] *Id.* at 3MPRIV00030254–62.
[33] *Id.* at 3MPRIV00030291–99.

██████████████████████████████[34] All these privilege log entries

consist of test results and scientific data, not protected attorney-client communications.

In sum, Defendants seek to prevent the disclosure of a substantial volume of safety-related documents despite their general business subject matter and the absence of any anticipated litigation. Judge Brisbois aptly explained the error of this approach in *Johnson*:

> The Defendant labels all the above mentioned documents as being created as a result of the direction of counsel. However . . . these documents do not seek legal advice from the lawyer in his role as a legal advisor and instead simply provide or seek business analysis. Although many of these documents are self-labeled as prepared at the direction of counsel . . . Defendant has not demonstrated that these papers were solicited at the direction of an attorney for legal purposes. As such, the documents are not protected under the attorney-client privilege.

*Johnson,* 2012 WL 5985600 at *8. Just as in *Johnson*, Defendants have improperly applied the attorney-client privilege to all of the documents identified in Exhibit 2. As such, Plaintiffs respectfully request the Court conduct an *in camera* review of those documents.

## C.     The Work-Product Doctrine Requires Anticipation of Litigation.

The work-product doctrine "is designed to prevent unwarranted inquiries into the files and mental impressions of an attorney." *Transunion Intelligence LLC v. SearchAmerica Inc.*, 2013 WL 12145008, at *2 (D. Minn. Nov. 14, 2013). To withhold documents under the work-product doctrine, the documents must have been prepared "in anticipation of litigation, not in the ordinary course of business." *Id.* Mere fear about future litigation does not attach work-product protection to every discussion of business

---

[34] *Id.* at 3MPRIV00017636.

8

competition; instead, the communication must be made in anticipation of "specific litigation." *Johnson*, 2012 WL 5985600, at *8. Where the prospect of litigation is "too remote and undefined to suggest that any documents were produced in anticipation of any specific litigation," the work-product doctrine does not apply. *See id.* at *5. Accordingly, "[i]t is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated." *See id.* (internal citation omitted).

### D.   Defendants Have Improperly Applied the Work-Product Doctrine to Communications Not Made in Anticipation of Specific Litigation.

The overwhelming majority of documents identified in Exhibit 1 were created long before *Walton*, *Johnson*, and this litigation.[35] They include generic descriptions such as

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████."[36] Other entries note routine business issues rather than anticipated litigation, such as documents regarding ███████████████████████████

████████████████████."[37] While Defendants might have imagined that Bair Hugger safety might be litigated in the future, it was nothing more than an "amorphous prospect" during the company's early history. *Johnson,* 2012 WL 5985600, at *5. Because litigation was not reasonably anticipated, the work-product doctrine does not apply to the documents.

Many of the remaining documents include emails among non-lawyers ███████████

██████████████████████████████████████████████████████

---

[35] *See generally* Exhibit 1, Pls.' Challenges to Work Product Claims.
[36] *See, e.g.*, *id.* at 3MPRIV00029944.
[37] *See, e.g.*, *id.* at 3MPRIV00043538.



[38] These communications relate to company strategies for ameliorating unfavorable scientific scrutiny of the Bair Hugger—a competitive business response irrelevant to litigation. *See, e.g.*, *Johnson,* 2012 WL 5985600, at *5 (collecting cases). Still other entries mention a ███████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████" [41]

---

[38] *See, e.g.*, *id.* at 3MPRIV00001125; 3MPRIV00002632; 3MPRIV00002728.
[39] *See, e.g.*, *id.* at 3MPRIV00003906.
[40] *See, e.g.*, *id.* at 3MPRIV00002134.
[41] *See, e.g.*, *id.* at 3MPRIV00022199; 3MPRIV00022187; 3MPRIV00022193; 3MPRIV00022204; 3MPRIV00022210.
[42] *Id.* at 3MPRIV00030758.
[43] *See, e.g.*, *id.* at 3MPRIV00020960.
[44] *Id.* at 3MPRIV00020880.

██████████████████████[45] *Cf. U.S. v. Philip Morris USA, Inc.*, 2004 WL 5355972, at *40 (D.D.C. 2004) (noting argument whether "lawyers exerted control over scientific research to prevent disclosure and therefore preserve [the company's] litigation position").

In short, none of the documents identified in Exhibit 1 appear to have been created in anticipation of litigation; rather, all of the documents appear to have been filtered through counsel in the normal course of business for only one purpose: to shield them from disclosure. Plaintiffs thus seek *in camera* review of the documents identified in Exhibit 1.

## II. The Court Should Also Conduct an *In Camera* Review of Documents Regarding Defendants' Improper Conduct with Non-Party Fact Witnesses.

Next, Plaintiffs request *in camera* review of allegedly privileged documents regarding 3M's conduct with non-party fact witnesses. ████████████████

████████████████████████████████████████████
████████████████████████ ██████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████ █████████████
██████████████████████████████████ ███████████
████████████████████████████████████████████

---

[45] *Id.*

[46] *See Walton v. 3M*, No. 4:13-cv-01164, Doc. Nos. 137, 165, 169 (S.D. Tex. 2015).

[47] *Id.*, Doc. No. 193, at *17–22.



After consolidation, Plaintiffs herein served Requests for Production seeking documents and communications dating from the start of litigation until the Order concerning 3M's relationships with these witnesses.[49] ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[48] *Id.* at *17.

[49] *See* Exhibit 14, Pls.' First Requests for Production of Documents and Things: Custodial Employment Files at Requests 12–16, 19–23, 26–37.

[50] *See* Exhibit 3, Pls.' Challenges to Defs.' Privilege Log for the Crime-Fraud Exception.

[51] *See* Exhibit 15, Dec. 22, 2015 Transcript of Proceedings in *Walton v. 3M* at 7:13-8:3.

[52] *See* Exhibit 16, Defs.' Answers and Objections to Pls.' Second Interrogatories at 10.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████.

■     ████████████████████████████████████████

    ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

    ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



experience and his role at Arizant, [Mr. Maharaj] has agreed to act as a litigation consultant

---

[53] *See* Exhibit 17, Feb. 5, 2015 Litigation Consulting Agreement of Gary Maharaj.







██████████████████████████████████████████████████

████████████████████████████ ████████████████████████

████████████████████████████ ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████



███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

██        ████████████████████████████

       ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ ██████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████ █

       ██████████████████████████████████████

███████████████████████████████████████████████████

████████████ ██████ █████████████████████████████████

---







■ ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████■

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████■ ██████████████

████████████████████████████████████████■

■ ██████████████████████

████████████████████████████████████████

████████████████████████████████■ ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████).



90 ████████████████████████████
■ ██████████
■ ████████████████████████
■ ██████████████████████████████████.

## CONCLUSION

Defendants have withheld numerous safety-related documents despite their general business subject matter and the lack of specific litigation. Many of the documents claimed as work product do not appear to be prepared in anticipation of specific litigation, and many of the documents claimed as attorney-client communications appear to involve general business strategy rather than the solicitation of specific legal advice. Additionally, Defendants impermissibly invoke the attorney-client privilege for documents *where no attorney was copied* on the communication. ████████████████

████████████████████████████

████████████████████████████

████████████████████████ *State ex rel. Humphrey v. Philip Morris Inc*., 606 N.W.2d 676, 683 (Minn. App. 2000). Plaintiffs respectfully request that the Court conduct an *in camera* review of the documents identified in Exhibits 1 and 2.

Plaintiffs also request an *in camera* review of documents relating to conduct with key non-party fact witnesses. ████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████ Accordingly, Plaintiffs respectfully request the Court grant this Motion and set up procedures for *in camera* review of the documents.

Respectfully submitted,

Dated: June 12, 2017

CIRESI CONLIN L.L.P.                          MESHBESHER & SPENCE LTD.

/s/ Michael V. Ciresi                         /s/ Genevieve M. Zimmerman
Michael V. Ciresi (MN #0016949)               Genevieve M. Zimmerman (MN #330292)
Jan M. Conlin (MN #0192697)                   1616 Park Avenue South
225 S. 6th St., Suite 4600                    Minneapolis, MN 55404
Minneapolis, MN 55402                         Phone: (612) 339-9121
Phone: 612.361.8202                           Email: gzimmerman@meshbesher.com
Email: MVC@CiresiConlin.com
        JMC@CiresiConlin.com

LEVIN PAPANTONIO, P.A.

/s/ Ben W. Gordon, Jr.
Ben W. Gordon (FL # 882836) – Pro Hac Vice
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: (850) 435-7090
Email: bgordon@levinlaw.com


**Plaintiffs' Co-Lead Counsel**