```
 1                  UNITED STATES DISTRICT COURT

 2                     DISTRICT OF MINNESOTA

 3    -----------------------------------------------------------
                                     )
 4                                   )
      In Re: Bair Hugger Forced Air  )   File No. 15-MD-2666
 5    Warming Devices Products        )   (JNE/FLN)
      Liability Litigation            )
 6                                   )   June 15, 2017
                                     )   Minneapolis, Minnesota
 7                                   )   Courtroom 15
                                     )   9:45 a.m.
 8                                   )
                                     )
 9    -----------------------------------------------------------

10           BEFORE THE HONORABLE JOAN N. ERICKSEN
               UNITED STATES DISTRICT COURT JUDGE
11
             THE HONORABLE FRANKLIN L. NOEL
12             UNITED STATES MAGISTRATE JUDGE

13
                        (STATUS CONFERENCE)
14
      APPEARANCES
15
      FOR THE PLAINTIFFS:
16
                                LEVIN PAPANTONIO
17                              Ben W. Gordon, Jr.
                                316 S. Baylen Street
18                              Suite 600
                                Pensacola, FL 32502
19
                                CIRESI CONLIN
20                              Jan Conlin
                                Michael A. Sacchet
21                              225 South 6th Street
                                Suite 4600
22                              Minneapolis, MN

23
                    (Appearances continued next page)
24

25
```

```
 1     FOR THE PLAINTIFFS (cont'd):

 2                                  KENNEDY HODGES, LLP
                                    David W. Hodges
 3                                  711 W. Alabama Street
                                    Houston, TX 77006
 4
                                    PRITZKER HAGEMAN, P.A.
 5                                  Brendan J. Flaherty
                                    45 South 7th Street, #2950
 6                                  Minneapolis, MN  55402-1652

 7                                  PENDLEY BAUDIN & COFFIN
                                    Chris Coffin
 8                                  1515 Poydras Street
                                    Suite 1400
 9                                  New Orleans, LA  70112

10                                  LOCKRIDGE GRINDAL NAUEN PLLP
                                    Rosa S. Trembour
11                                  100 Washington Avenue
                                    Suite 2200
12                                  Minneapolis, MN  55401-2159

13     FOR THE PLAINTIFFS (APPEARING BY PHONE:)

14                                  PETERSON & ASSOCIATES, P.C.
                                    Brian Emerson Tadtman
15                                  801 W. 47th Street, Suite 107
                                    Kansas City, MO  64112
16
                                    BERNSTEIN LIEBHARD LLP
17                                  Dae Y. Lee
                                    10 East 40th Street
18                                  New York, NY  10016

19                                  MESHBESHER & SPENCE
                                    Genevieve M. Zimmerman
20                                  Holly Sternquist
                                    1616 Park Avenue
21                                  Minneapolis, MN  55404

22                                  THE LANIER LAW FIRM, PLLC
                                    Jason Goldstein
23                                  Erika Mohabir
                                    126 East 56th Street, 6th Floor
24                                  New York, NY 10022

25             Telephone Appearances cont'd next page:
```

```
1     FOR THE PLAINTIFFS(appearing by phone):

2                               THE OLINDE FIRM, LLC
                                Wesley G. Barr
3                               400 Poydras Street
                                Suite 1980
4                               New Orleans, LA  70130

5                               ZIMMERMAN REED, PLLP
                                Jacqueline A. Olson
6                               1100 IDS Center
                                80 South Eighth Street
7                               Minneapolis, MN  55402

8                               SIDNEY P. COMINSKY, LLC
                                Amy Tao
9                               109 S. Warren Street, #1500
                                Syracuse, NY  13202
10
                                GROSSMAN & MOORE, PLLC
11                              Emily A. DeVuono
                                Jennifer Moore
12                              Kara Lane
                                401 W. Main Street
13                              Suite 1810
                                Louisville, KY  40202
14
                                MCEWEN LAW FIRM, LTD
15                              Melissa Schmid
                                5850 Blackshire Path
16                              Inver Grove Heights, MN  55076

17                              MORGAN & MORGAN, PA
                                Michael S. Goetz
18                              Joseph T. Waechter
                                Heather Cullen
19                              201 N. Franklin St 7th Floor
                                Tampa, FL  33602
20
                                RAIZNER SLANIA, LLP
21                              Jeffrey L. Raizner
                                Rica Rinosa
22                              2402 Dunlavy Street
                                Houston, TX  77006
23
                                LONCAR & ASSOCIATES
24                              John L. Coveney
                                424 S. Cesar Chavez Blvd
25                              Dallas, TX  75201
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              CAPRETZ & ASSOCIATES
                                Don K. Ledgard
 3                              James T. Capretz
                                5000 Birch St, Suite 2500
 4                              Newport Beach, ca  92660

 5                              MICHAEL HINGLE & ASSOCIATES
                                Julie Jochum
 6                              Bryan Pfleeger
                                Christina Smith
 7                              220 Gause Blvd
                                Slidell, LA  70005
 8
                                HOUSSIERE DURANT & HOUSSIERE
 9                              Randall A. Kauffman
                                Monica Vaughan
10                              Shirley Strom-Blanchard
                                1990 Post Oak Blvd Suite 800
11                              Houston, TX  77056

12                              DAVIS & CRUMP, PC
                                Martin D. Crump
13                              Robert D. Cain, Jr.
                                2601 Fourteenth Street
14                              Gulfpost, MS 39507

15                              LEWIS & CAPLAN
                                Amy Webster
16                              3631 Canal Street
                                New Orleans, LA  70119
17
                                SKIKOS CRAWFORD SKIKOS&
18                                 JOSEPH, LLP
                                Julie Tucci
19                              Melissa Erin Mielke
                                One Sansome Street, Suite 2830
20                              San Francisco, CA  94104

21                              THE RUTH TEAM
                                Steven C. Ruth
22                              842 Ramond Avenue
                                Suite 200
23                              Saint Paul, MN  33733-5157

24
                        Appearances continued on next page:
25
```

```
1        FOR THE PLAINTIFFS APPEARING BY PHONE:

2                              TATE LAW GROUP, LLC
                               Bryan Ahlers
3                              2 East Bryan Street, Suite 600
                               Savannah, GA  31328
4
                               LAW OFFICES OF JAMES S. ROGERS
5                              Elizabeth J. McLafferty
                               1500 4th Avenue #500
6                              Seattle, WA  98101

7                              ANDREWS & THORNTON
                               Anne Andrews
8                              John Thornton
                               Lauren Davis
9                              Lila Razmara
                               Marco Galindez
10                             2 Corporate Park, Suite 110
                               Irvine, CA 92606
11
                               JOHNSON BECKER PLLC
12                             Rolf T. Fiebiger
                               444 Cedar Street
13                             Suite 1800
                               Saint Paul, MN  55101
14
                               JOHNSON JOHNSON & SCHALLER PC
15                             Leslie O'Leary
                               975 Oak Street
16                             Citizens Building, Suite 1050
                               Eugene, OR  97401
17
                               LORD & ASSOCIATES
18                             Melissa Heinlein
                               309 Clifton Avenue
19                             Minneapolis, MN 55403

20                             MURRAY LAW FIRM
                               Caroline Whitney Thomas
21                             650 Poydras Street
                               Suite 2150
22                             New Orleans, LA  70130

23                             BROWN & CROUPPEN, PC
                               Abby Cordray
24                             Seth S. Webb
                               Simone Savala
25                             211 North Broadway, Suite 1600
                               St. Louis, MO  63102
```

```
 1      FOR THE PLAINTIFFS           APPEARING BY PHONE:

 2                                   BEASLEY ALLEN
                                     Megan Robinson
 3                                   218 Commerce Street
                                     Montgomery, AL  36104
 4
                                     CARR & CARR ATTORNEYS
 5                                   Patrick E. Carr
                                     4416 S. Harvard Avenue
 6                                   Tulsa, OK  74135

 7                                   HOLLIS LEGAL SOLUTIONS, PPLC
                                     Scott Hollis
 8                                   6814 Crumpler Boulevard,
                                     Suite 101
 9                                   Olive Branch, MS  38654

10                                   MCGARTLAND LAW FIRM, PLLC
                                     Lee Ann McGartland
11                                   Michael P. McGartland
                                     1300 South University Drive #500
12                                   Fort Worth, TX  76107

13                                   MESHBESHER & SPENCE, LTD
                                     Genevieve Zimmerman
14                                   Holly Sternquist
                                     1616 Park Avenue
15                                   Minneapolis, MN  55404

16                                   PARKER WAICHMAN, LLP
                                     Nicole Eisner
17                                   59 Maiden Lane
                                     6th Floor
18                                   New York, NY  10038

19                                   PRITZKER HAGEMAN, PA
                                     Wendy Thayer
20                                   PWC Plaza Building
                                     Suite 2950
21                                   45 South Seventh Street
                                     Minneapolis, MN  55402-1652
22
                                     RANDALL J. TROST, P.C.
23                                   Carrie Hancock
                                     801 Main Street
24                                   Lynchburg, VA  24504

25
```

```
 1      FOR THE PLAINTIFFS
        APPEARING BY PHONE:
 2                              THE MILLER FIRM, LLC
                                Tayjes M. Shah
 3                              The Sherman Building
                                108 Railroad Avenue
 4                              Orange, VA  22960

 5                              POGUST BRASLOW & MILLROOD, LLC
                                Matt Leckman
 6                              Jessica Lowe
                                8 Tower Bridge, Suite 940
 7                              161 Washington Street
                                Conshohocken, PA  19428
 8
                                NEAL R. ELLIOTT, JR.
 9                              P.O. Box 80136
                                Baton Rouge, LA  70898
10
                                LAW OFFICES OF TRAVIS R. WALKER
11                              Julie Treacy
                                1235 SE Indian Street
12                              Suite 101
                                Stuart, FL  34997
13
                                FITZGERALD LAW GROUP, LLC
14                              Kevin M. Fitzgerald
                                120 Exchange Street, Suite 200
15                              Portland, ME  04101

16                              BAILEY PEAVY BAILEY COWAN
                                HECKAMAN, PLLC
17                              Justin Jenson
                                The Lyric Centre
18                              440 Louisiana Street
                                Suite 2100
19                              Houston, TX  77002

20                              GERTLER LAW FIRM
                                Leola Anderson
21                              Meyer H. Gertler
                                935 Gravier Street
22                              Suite 1900
                                New Orleans, LA  70112
23
                                GOLDENBERG LAW, PLLC
24                              Noah Lauricella
                                800 LaSalle Avenue, Suite 2150
25                              Minneapolis, MN  55402
```

```
 1

 2     FOR PLAINTIFFS APPEARING BY TELEPHONE:

 3                              LANGDON & EMISON
                               Brett A. Emison
 4                             Rachel Ahmann
                               911 Main Street
 5                             Lexington, MO  64067

 6                             LOCKRIDGE GRINDAL NAUEN PLLP
                               Yvonne Flaherty
 7                             Rachel N. Zibiate
                               100 Washington Avenue
 8                             Suite 2200
                               Minneapolis, MN  55401-2159
 9
                               MARTIN HARDING & MAZZOTI, LLP
10                             Rosemarie Bogdan
                               1222 Troy-Schenectady Road
11                             P.O. Box 15141
                               Albany, NY  12212-5141
12
                               NASH & FRANCISKATO LAW FIRM
13                             Brian S. Fanciskato
                               Two Pershing Square
14                             2300 Main Street, Suite 170
                               Kansas City, MO  64180
15
                               RICHARDSON PATRICK WESTBROOK &
16                             BRICKMAN, LLC
                               Dan Waltinger
17                             Missi Cruz
                               P.O. Box 1368
18                             Barnwell, SC  29812

19                             MORRIS LAW FIRM
                               Jim Morris
20                             Danielle Mayr
                               Shane Greenberg
21                             6310 San Vicente Blvd
                               Suite 360
22                             Los Angeles, CA  90048

23                             RIEDERS TRAVIS HUMPHREY WATERS
                               & DOHRMANN
24                             Clifford Rieders
                               Sasha Coffiner
25                             161 West 3rd Street
                               Williamsport, PA  17701
```

```
 1
         FOR PLAINTIFFS APPEARING BY TELEPHONE:
 2
                                   SANDERS PHILLIPS GROSSMAN
 3                                 Randi A. Kassan
                                   100 Garden City Plaza
 4                                 Suite 500
                                   Garden City, NY  11530
 5
                                   ZELE HUBER TRIAL ATTORNEYS
 6                                 Dean Xenick
                                   4600 Military Trail #212
 7                                 Jupiter, FL  33458

 8       FOR THE DEFENDANTS 3M:    BLACKWELL BURKE P.A.
                                   Jerry Blackwell
 9                                 Ben Hulse
                                   431 South Seventh Street
10                                 Suite 2500
                                   Minneapolis, MN  55415
11
                                   FAEGRE BAKER DANIELS
12                                 Bridget M. Ahmann
                                   90 South Seventh Street
13                                 Suite 2200
                                   Minneapolis, MN  55402
14

15

16       COURT REPORTER:
                                   MARIA V. WEINBECK, RMR-FCRR
17                                 1005 U.S. Courthouse
                                   300 South Fourth Street
18                                 Minneapolis, Minnesota 55415

19

20           Proceedings recorded by mechanical stenography;
         transcript produced by computer.
21

22

23

24           *     *     *     *     *     *     *

25
```

1                    P R O C E E D I N G S

2                        (9:44 a.m.)

3              THE COURT:  Mr. Blackwell, I thought you were

4      saying the pledge of allegiance.  Often when I'm in this

5      courtroom, it's because I'm doing a Naturalization.

6              MR. BLACKWELL:  Who knows what will be said by the

7      end, Your Honor.

8              I wanted to introduce the Court to our summer

9      associate who is here Khansaa Nadeem, who is a first year

10     student at the University of Minnesota, and I invited her to

11     come to see how justice is dispensed.

12             THE COURT:  So you'll be going down to the ninth

13     floor later?  You know we have someone, you have someone,

14     don't you?

15             MAGISTRATE JUDGE NOEL:  Yes, I have both of my law

16     clerks because my senior law clerk Carrie is leaving us at

17     the end of the summer, and Chad will be filling in her

18     shoes.  And in between the two of them is Maxim Hoes, who is

19     a lawyer from the Netherlands, who is a judicial observer at

20     the University of Minnesota and has been working in my

21     chambers all semester, so.

22             THE COURT:  So do you two University of Minnesota

23     people know each other?

24             (Off the record discussion between the students.)

25             THE COURT:  Oh, wait a second.  We're not quite

MARIA V. WEINBECK, RMR-FCRR
(612) 664-5109

 1     ready for you --

 2              MR. COFFIN:  One of them is an LLM student, so it

 3     doesn't seem fair, same group.

 4              THE COURT:  Amy, our person, there you are.  Amy,

 5     if you don't want to sit so far back.  My intern, also at

 6     the University of Minnesota.

 7              MAGISTRATE JUDGE NOEL:  Okay.

 8              THE COURT:  All right.  Now, let's get

 9     appearances, and I've been informed that there is someone on

10     the phone perhaps that wants to make a statement.

11     Mr. Gordon, do you want to go ahead?

12              MR. GORDON:  Your Honor, that may or may not be

13     necessary.  It kind of depends on you.  There are a couple

14     of lawyers on the phone who may be, I believe, will be,

15     their cases may be the subject of some of the motions to

16     dismiss that Mr. Hulse, I believe, may argue.  And if the

17     Court entertains those motions, well, let me say, first,

18     I'll be prepared to make some general comments, but those

19     lawyers before their cases potentially get dismissed, I

20     think would like to be heard as well, Your Honor.

21              THE COURT:  Would that be the lawyer for Fraley,

22     Wilburn?

23              MR. GORDON:  Yes, Your Honor.

24              THE COURT:  DePriest?

25              MR. GORDON:  Yes, Your Honor.

1        THE COURT:  Anybody else?

2        MR. GORDON:  Well, there is a lawyer from the

3  Lockridge firm here, Ms. Trembour, is here also to be heard

4  on --

5        THE COURT:  Weimer?

6        MR. GORDON:  -- on the Weimer case, yes, Your

7  Honor.

8        THE COURT:  Yeah, I'm not going to dismiss Weimer.

9        MR. GORDON:  I'm sorry, Your Honor?

10        THE COURT:  I'm not going to dismiss Weimer.

11        MR. GORDON:  Well, then she will not need to be

12  heard, Your Honor.

13        THE COURT:  Oh-oh.

14        MR. GORDON:  And then there are probably two

15  lawyers on the phone -- that will make things faster -- from

16  Bernstein Liebhard, that would be Mr. Dae Lee and Mr. Daniel

17  Burke, so one of them, hopefully, can hear me and may wish

18  to be heard on those first cases that you mentioned.

19        And, of course, Ms. Zimmerman is on the phone if

20  the Hager case comes up.  And she, unfortunately, is at an

21  expert deposition on the west coast but she is on the phone

22  at the moment, I believe.

23        And then I'll address the Bachus & Schanker cases

24  if those come up, although they may have a lawyer on the

25  phone as well.  I'm not certain.  That would Christopher

1    Elliott, I believe, in the event that you consider the

2    motions on those cases, Your Honor.

3            THE COURT:  All right.  So we've got Ben Gordon,

4    Jan Conlin, Chris Coffin, David Hodges, and Michael Sacchet.

5            MR. SACCHET:  You got it.

6            THE COURT:  And then here we have -- is it Jerry

7    Blackwell?

8            MR. BLACKWELL:  Yes, Your Honor.  I pledge

9    allegiance.

10           THE COURT:  And Ben Hulse and Bridget Ahmann.

11           In the interest, well, Mr. Gordon, let me ask you,

12   we've got the agenda.  I understand that you want to make a

13   couple points and then you want to leave?  Tell me what your

14   schedule is and how we can get through this?

15           I'm prepared to decide, I guess, the order of the

16   bellwether cases.  I've got some tentative ideas about which

17   ones of these cases to dismiss and which not in response to

18   the motions to dismiss.

19           MR. GORDON:  Those are the two areas I'd be

20   prepared to answer, Your Honor, to respond to, that is,

21   number one, the pretrial order concerning the order of the

22   bellwether trial subject to the Court's perhaps sua sponte

23   thoughts on that, I may not need to address it, and then on

24   the Defendant's motions concerning dismissal of various

25   actions based on PFS irregularities we cite.  I'm prepared

14

1    to address those two things in the order that you wish.  And

2    then I would like to leave, if I may.  But if the Court

3    needs me to stay, I would be happy to change my flight.

4              THE COURT:  Nice haircut.

5              MR. GORDON:  Thank you, Your Honor.  It's my

6    summer do.

7              MR. BLACKWELL:  If I may, Your Honor, since

8    Mr. Gordon may have to leave, at least I would like to go

9    over these items that I see on the agenda for today.  This

10   may not involve Mr. Gordon, the issue about of whether

11   plaintiffs get surrebuttal expert reports, which was raised

12   by letter with Your Honor's.

13             THE COURT:  We're prepared to decide that.

14             MR. GORDON:  And Ms. Conlin is prepared to address

15   that for the plaintiffs.

16             THE COURT:  No, we're prepared to rule on that.

17             MR. BLACKWELL:  And in terms of just issues with

18   the schedule and scheduling, there's the request for an

19   extension of the schedule of 45 days.

20             THE COURT:  I'm prepared to rule on that too.

21             MR. BLACKWELL:  From plaintiffs.  I would like to

22   raise an issue just with respect to the schedule for all of

23   the bellwether discovery, which has not been in front of

24   Your Honor just yet, but would like at least to raise a

25   point for the Court to consider in that regard.

1           There will be a couple of other questions about

2      the schedule.  It's clear now that the plaintiffs intend to

3      have case specific experts and disclosures also, at the time

4      the schedule for bellwether is initially set that wasn't

5      contemplated by the Court, but if that's going to be the

6      case now, we might need to discuss whether there should be

7      built into the schedule some process for each side to name

8      their respective case specific bellwether experts and

9      whether there's a separate Daubert process in case specific

10     issues.

11          THE COURT:  Well, it looks like Item 16 on the --

12     well, no, no, that's my own Item 16, never mind.  So

13     bellwether case specific discovery -- wait a second, 17,

14     "bellwether case specific dispositive motions," and that

15     would include Daubert.

16          MR. BLACKWELL:  Yes, it would, Your Honor.  If

17     Your Honor makes it clear that is to include Daubert, but

18     the --

19          THE COURT:  We worked on our local rules to try

20     and make that clear, but I don't know if it worked or not.

21          MR. BLACKWELL:  But there may be some issues about

22     sort of the staging of when the case specific experts will

23     be disclosed and when they will be deposed and how much time

24     before the Daubert motions, so that it at least runs

25     parallel with what we did on general causation experts in

1        the previous section under number 13 and PTO-17.

2                So anyway I raise it because that is something to

3        discuss yet this morning, and we'll have a point of inquiry

4        at least with respect to the Court's Daubert proceedings on

5        general cause, whether Your Honor intends to have a date for

6        an evidentiary hearing on Daubert, and whether we intend to

7        build that in.

8                And we have the two motion issues, one of which

9        being the PFS, which Your Honor is prepared to address.  And

10       the second motion issue relates to a timing issue with

11       respect to the most recent motion filed by plaintiffs on the

12       defendant's privilege log, and we weren't able to kind of

13       come to one mind about the timing for the defendant's

14       response, and we would like to raise that since we're all

15       here.

16               And so whether Mr. Gordon needs to be involved in

17       any of these things other than the ones he just addressed, I

18       want him to at least say them so everyone can hear them.

19               MS. CONLIN:  I'll handle the other one.

20               THE COURT:  Okay.

21               MR. GORDON:  Your Honor, may I make a housekeeping

22       question or a point?

23               THE COURT:  Yes, go ahead.

24               MR. GORDON:  I'm getting a text from one of the

25       lawyers on the phone indicating there's a lot of buzzing on

1    the line.  It may not be anything we can do about it, but it

2    might complicate oral argument from people on the phone.

3    I'm not sure.

4             THE COURT:  Text them back and see if it helps

5    when we speak into the microphone.

6             MR. GORDON:  They're responding right now, Your

7    Honor.  I see the little dots.

8             You are clear, but no one else is and buzzing

9    still going.

10             MAGISTRATE JUDGE NOEL:  I know the answer to that

11    then because nobody is speaking into a microphone, so when

12    you speak, I assume the ones at the table work, but if not

13    come to the podium and use the ones on the podium, and I'm

14    sure if you speak into it in a way that it gets amplified in

15    here, it means I think working well on the telephone.

16             MR. GORDON:  Thank you, Your Honor.  Let me try

17    this.  Testing 1, 2, 3.

18             MR. BLACKWELL:  Testing 4, 5, 6.

19             MR. GORDON:  Okay, that worked, but Jerry wasn't

20    coming through.

21             MR. BLACKWELL:  Testing, testing.

22             MR. GORDON:  Right, you are exactly right, Your

23    Honor, they're saying.  So all good, we will speak into the

24    microphones.

25             THE COURT:  And, Mr. Gordon, you've got another

18

1    one over there. This is brand new technology.  The reason

2    we're not in 12 is that they're now installing the same

3    technology in my courtroom that we have here.  So any other

4    comments or feedback you have about the technology would be

5    appreciated.

6         It strikes me that we should begin with the

7    PFS-related motions to dismiss because that way we'll find

8    out whether anyone on the phone wants to be heard.  Why

9    don't I tell you what my preliminary thoughts are about this

10   before you launch into your various arguments.

11        The PFS in Johnson is in now, and I appreciate

12   that it's late incoming and so on, so that's Johnson and

13   also Weimer.  So I'm inclined not to grant the motions to

14   dismiss on those.

15        I believe that DePriest told his or her lawyer

16   that they would be getting something in.  May 17th there was

17   some communication.  Anyway, nothing is in yet.  My thought

18   on DePriest would be to dismiss but stay the order

19   dismissing until our next conference in a month.

20        And then on Fraley and Wilburn, the submissions

21   indicated that there have been no PFS submitted yet, and so

22   I would be inclined to dismiss Fraley and Wilburn, along

23   with Toler, Hager, Barrett and Flynn.

24        So Toler, Fraley, Wilburn, Hager, Barrett and

25   Fling, according to my records, have not submitted a PFS and

1    a lot of time has gone by.  There's been plenty, plenty of

2    notice.  The lawyers have tried to track these folks down,

3    and I think we're to the time when that's it, and they

4    should be dismissed.

5            Now, first, let me ask whether there is anyone on

6    the phone, if anyone on the phone wants to be heard, would

7    you text Mr. Gordon, and we'll try and figure out a way to

8    have you be heard?

9            MR. GORDON:  And, Your Honor, if I may, while

10   we're waiting for that, and I will say if they don't have my

11   cell phone number, which hopefully they do, they can

12   certainly e-mail me as well at bgordon@11law.com.  But I

13   know, for example, with respect to the cases of Bachus &

14   Schanker, I know you mentioned Fraley in particular, I

15   believe some of those, according to my notes from e-mails,

16   and we've been working on this issue daily, were served in

17   the last several days.

18           Now, whether they were filed, whether they've gone

19   through the portal, Mr. Hulse can address that.  But, for

20   example, Fling, and I think the other Bachus & Schanker

21   cases, Chris Elliott may be on the phone, may be able to

22   correct me or add to that.  I thought, although belatedly, I

23   believe those were served.

24           With respect to any of those that were not served,

25   Your Honor mentioned and, of course, I realize this is

1     Mr. Hulse's motion, I would simply ask the Court whether the

2     Court would consider dismissing those without prejudice to

3     give those plaintiffs 30 more days in the event that they

4     have had difficulty being reached by counsel.  Many of these

5     plaintiffs, Your Honor, you understand are very ill.  There

6     have been some who have been hard to reach because of

7     hospitalization, because of serious other medical

8     conditions, and it is such an extreme measure to dismiss the

9     cases with prejudice.  We could ask the Court to consider

10    dismissal without prejudice to give them 30 more days, even

11    in those instances in which they have not been able to serve

12    their PFS yet.

13          And I am getting a text, Your Honor.  I'll just

14    read this to the Court:

15          "With respect to Barbara Hager, File No.

16    16CV00136, this plaintiff has been unresponsive to multiple

17    calls and letters including certified mail.  They have

18    diligently, trial counsel has diligently attempted to

19    prosecute the case on behalf of Ms. Hager, but understand

20    the Court's position and the rationale.  And while they

21    cannot endorse or join a stipulation to dismiss, they are

22    prepared for whatever action the Court deems appropriate."

23          THE COURT:  Okay.  Anything from the -- is it

24    Bernstein Liebhard, the Fraley, Wilburn, and DePriest

25    lawyer?

1          MR. GORDON:  Yes, Your Honor.  And my

2    understanding is that Dae Lee and Daniel Burke filed papers

3    on those cases recently, and I think you stated their

4    position with respect to DePriest at least.  I believe one

5    of them may be on the phone and may wish to be heard.

6          THE COURT:  Okay.  If that's true, text Mr. Gordon

7    or e-mail him, and we'll try to open up the line, but I have

8    read the submissions with respect to those three cases.

9          MR. GORDON:  Just checking e-mails, Your Honor,

10   because I'm not sure that those gentlemen have my cell phone

11   number.  Nothing yet.  I don't know if the Court wishes --

12         THE COURT:  Mr. Blackwell, is there anything that

13   you want to say?

14         MR. BLACKWELL:  Your Honor, it's Mr. Hulse on this

15   issue.

16         MR. HULSE:  Your Honor, we did just receive PFSs

17   for the Fling case -- the Fling case and the Toler case.

18   Those came in on the 10th is my understanding.

19         Your Honor, just recognizing the ruling that you

20   made here, a thousand or more plaintiffs did comply with the

21   90-day deadline in PTO-14.  Approximately, 100 requested

22   extensions based either on just the lawyers professional

23   courtesy request or based on a showing of extenuating

24   circumstances, and we consistently granted those.  There was

25   an example in one of these cases here is the Weimer case.

1    The 90-day deadline for PFSs was meant to be essentially a

2    self-executing deadline where the Court wouldn't be faced

3    with hundreds of motions for extensions of time.  It was

4    contemplated that 90 days was going to be adequate.

5         At a minimum, all of these cases, the PFS, where

6    PFSs were served, it was four months late, some six months

7    late.  None of these plaintiffs gave any justification.

8    There was no presentation of hardship.

9         PTO-14 also requires expressly that if there's any

10   opposition to this motion, it must be filed seven days

11   before the hearing.  That wasn't done for the Weimer case.

12   They filed last night, and we think that that requirement

13   should mean something.

14        My fear is, and given already the difficulties in

15   managing an MDL, in managing the PFS process is that the

16   message that will go out is that you don't need to comply

17   with the deadlines in PTO-14 unless and until the defendants

18   have twice listed your case and then they file a motion, and

19   so I'm concerned about that message being heard.

20        I would also ask at a minimum that this Court

21   follow what the Court did in the Ethicon MDL at 2016 Westlaw

22   131.7401, where there was a PFS that was ultimately served

23   four days after the deadline, and the Court denied the

24   motion to dismiss but nonetheless imposed -- required the

25   plaintiffs to pay the defendant's fees and costs incurred in

1    having to bring a motion that they never should have had to

2    bring.

3              So at a minimum, our request if beyond that the

4    Court reconsider its decision on the late served PFSs, would

5    be that at a minimum for those that it also require the

6    plaintiffs in those cases to bear 3M's fees and costs

7    incurred in having to bring this motion.  I fear we're going

8    to have to bring many more of these motions going forward,

9    and that number was likely to be greatly increased if the

10   message goes out that you don't have to comply in the

11   90 days.  Thank you.

12             THE COURT:  Thank you.  As time goes by, we will

13   be talking about non responses that are even later than what

14   we have now.  And the decision in future cases is not

15   necessarily going to involve the same level of, well, I

16   guess oversight has two meanings but overlookage that we'll

17   have right now.

18             So the motions to dismiss are granted and that is

19   with prejudice.  The reason it's with prejudice is that we

20   need some finality.  The whole purpose of this is to make

21   sure that there aren't people coming in at the last minute.

22   So the with prejudice dismissals will issue with respect to

23   Fraley, which is 16CV2755; Wilburn, 16CV2772; 16CV136, which

24   is Hager; Barrett, 16CV3553.

25             The dismissal with respect to DePriest, 16CV3383,

```
1    will issue but that Order will be stayed for 30 days.  And

2    the reason for that is that there has been some response to

3    counsel's inquiry and a promise to get something in.  I

4    appreciate that that's well outside the 90 days, but that is

5    the Court's Order with respect to the motions to dismiss.

6              MR. GORDON:  Your Honor, may I be heard?

7              THE COURT:  Yes.

8              MR. GORDON:  So I would just say I understand your

9    ruling.  With respect to the Bernstein Liebhard case or

10   cases, I know Fraley is one, Wilburn is one, maybe I'm

11   missing one.

12             THE COURT:  DePriest.

13             MR. GORDON:  Mr. Dao Lee is on the phone.  He has

14   responded by e-mail and would like to be heard if Your Honor

15   is prepared to at least hear his argument subject to,

16   obviously, understanding you've just made your ruling.

17             THE COURT:  I don't actually know how --

18             MR. GORDON:  Well, if I may, under the heading of

19   due process and opportunity to be heard, I don't represent

20   those plaintiffs personally.  I've made my pitch.  He

21   represents those plaintiffs.  And if you are issuing, which

22   I understand you are prepared to enter an order to dismiss

23   with prejudice, that is such an extraordinary and harsh

24   measure, I would ask that you give him an opportunity to at

25   least be heard.
```

1              THE COURT:  We'll try -- I'll see if I can get

2    somebody up here to conference them in.  But as you know,

3    the due process rights do not include a right for oral

4    argument on every motion.  You all know that because you

5    practice in multiple districts.

6              We have reviewed his written submissions, and now

7    I am working on getting a technical person up here so that

8    we will be able to conference him in, but I'm hoping that he

9    plans on saying something different from or in addition to

10   what was in his written submissions.  So I'm --

11             MR. GORDON:  Thank you, Your Honor.  He is

12   prepared to go forward when you're ready, and I will e-mail

13   him that now and ask for any response that he can give me by

14   e-mail in the interim.  In the event that it is not

15   something different, I'll ask him to tell us that.

16             THE COURT:  Okay.  You know, we have all of these

17   people back there, would one of our people, could you do

18   something about this?

19             MR. GORDON:  Actually, Your Honor, he just

20   responded, and I'll just help save the Court's time.  He

21   said his argument is going to be the same as what's in his

22   papers, so.

23             THE COURT:  Okay.  All right.  Thank you.  And the

24   ruling then remains.  Thank you.  And thanks to the lawyer

25   who is on the phone.

1          MR. HULSE:  Your Honor, if I may, may we request a

2     ruling from the Court on the request that we've made for the

3     fees that we've incurred in having to bring this motion?

4          THE COURT:  That motion is denied.

5          MR. HULSE:  Thank you.

6          THE COURT:  The motion would have had to be made

7     in any event because we still have some of these, and I'm

8     just not going to order it.  That's your legal reasoning

9     there.

10          What do you think we should go to, the bellwhether

11     order?

12          MR. GORDON:  Your Honor, before we do, I'm sorry

13     to interrupt, there is one other PFS issue that I would like

14     to raise, and we mentioned in the joint status report and

15     that relates to something I brought up two months ago, which

16     was the plaintiff re-signing or re-verification issue.  Are

17     you prepared to hear a very brief pitch on that, Your Honor?

18          THE COURT:  All right.

19          MR. GORDON:  So am I okay sitting here if I'm

20     close to the mic?

21          THE COURT:  Yes.

22          MR. GORDON:  Thank you, Your Honor.  And this

23     relates to the overall general concern I have, plaintiffs

24     have about these motions to dismiss when they come up.  And

25     as one example I cited this, and it's just one example in

1       the status report, and that is that my law firm in rough

2       numbers has changed a little over the last few days because

3       Mr. Hulse and I have been working constantly on updating

4       these various lists.  But my firm has approximately 70 or so

5       deficiencies or alleged deficiencies of one kind or another.

6       It doesn't mean that we haven't complied, haven't responded,

7       it just means that there's something that the defendant

8       wants corrected or amended or supplemented.

9               Fifty-one of those 72 that at last count involved

10      the sole issue of whether the plaintiffs have resigned or

11      reverified that their answers are accurate, verified,

12      authentic.

13              My first point is, Your Honor, in a dozen MDLs

14      that I've worked on, no court has ever required that

15      plaintiffs re-sign or re-verified once they've done so to

16      begin with.  And in many cases, including the Taxotere MDL,

17      which Mr. Coffin who is behind me from our PEC is lead

18      counsel on with Judge Engelhardt in the Eastern District of

19      Louisiana, the Court explicitly put in an Order, over no

20      objection to my understanding, that plaintiffs and counsel

21      instead, Your Honor, that counsel -- do you wish should I

22      stop for a moment?

23              THE COURT:  No, I think we've been through this.

24              MR. GORDON:  We have, and I thought we'd be able

25      to work it out with Mr. Hulse, but he decided we couldn't,

1    and he can address that.

2              But the Court in that case over no objections, to

3    my understanding, Mr. Coffin, correct me if I'm wrong, said

4    that as long as the plaintiffs have signed their answers

5    once, and counsel will stand by those answers and agree that

6    plaintiffs are bound by those answers, then a supplement or

7    an amendment to the PFS is unnecessary.  And it goes to the

8    process and the efficiency of the process and the reason

9    that we use PFSs, complicated, burdensome, lengthy PFSs in

10   MDLs.

11             So while Mr. Hulse would liken it to simple

12   interrogatory responses that have to be verified,

13   re-verified, it's not the same.  It's explicitly not the

14   same.  The reason for it is to promote efficiency.  And,

15   Your Honor, there is no prejudice to them.  In many cases,

16   you understand, Your Honor, many of my cases that the

17   re-verification relates only or the amendment or the

18   supplement relates only to ministerial things like putting

19   the letters "NA" for nonapplicable in a box, or correcting a

20   date, or putting a middle initial or a date of marriage or a

21   date of employment.

22             So Mr. Hulse has told me, and if I'm misquoting he

23   can correct me, that my cases the 51 out of 72, that this is

24   the sole issue of re-signing will come up on his motion to

25   dismiss motion position somewhere in the near future in

1    July, even though there are no substantive deficiencies in

2    these PFSs, and that's the vast majority of my cases.  And

3    that would be grossly unfair to dismiss a plaintiff's case

4    because all that has happened is they've signed once but

5    haven't signed twice.  And counsel is willing to stand by

6    these attestations and bind the plaintiffs by these

7    attestations, as every other MDL that I know of has always

8    done.

9          And I'll tell you what happens in every case, Your

10   Honor, that I've ever worked on.  The defendants take the

11   deposition of the plaintiff, and they ask them again.  They

12   say, "Turn to page 27 of your PFS, is that your signature?"

13   And they reaffirm at that time that it is an authentic

14   signature.  So this is completely form over substance, Your

15   Honor.  There's no prejudice.  And none of these relates to

16   any of the bellwether cases, so I don't know what prejudice

17   they can claim, Your Honor.

18          THE COURT:  Mr. Hulse?

19          MR. HULSE:  Your Honors, paragraph 3 of PTO-14

20   states, "Plaintiffs' responses shall be treated as answers

21   to interrogatories under Federal Rule of Civil Procedure 33,

22   and shall be signed and dated by the plaintiff or the proper

23   plaintiff representative under penalty of perjury."

24          The PFSs are required to be verified.  In hundreds

25   and hundreds of cases there have been questions, substantive

1    questions that were identified as core questions in PTO-14

2    that were not answered.  We sent out deficiency notices.

3    The plaintiffs responded by attempting and successfully in

4    many instances curing the deficiencies by providing

5    additional information.  It often involves naming the

6    doctors, the hospitals, the bacteria that they say they were

7    infected with.  This is important information in most cases.

8    Again, the information that was identified as core expressly

9    in PTO-14, we are only pursuing deficiencies for core

10   deficiencies under PTO-14.

11        So when that new information comes back given the

12   language of paragraph 3 here, it needs to be verified.  This

13   is substantive information being provided by the plaintiff.

14   If it had been provided in the original PFS, it would have

15   had to be verified, and it has to be verified if it's

16   presented later.  Otherwise, and what we face, and we do

17   face this in many cases is that we get a radically

18   incomplete first PFS.  We get a significant amount of

19   information in a second or third amended PFS, but then we

20   have no verification to go through.

21        And a verification, of course, under Rule 33 and

22   under the PFS provides an incredibly important function.  It

23   is a gut check for the plaintiff, him or herself to say am I

24   providing truthful and complete information?  And if we

25   don't have that for the amended and supplemental responses,

1    we can't have that confidence and assurance that that gut

2    check has occurred.

3            In any event, our viewpoint has been that

4    paragraph 3 clearly requires it.  There's no exemption for

5    it.  And I also want to say that this is an issue, there are

6    150 cases that have this specific defect where the

7    verification for the amended PFS is the only thing missing.

8    Seventy-five of them are from Mr. Gordon's firm.  There is

9    only one other firm that has more than 10 with this issue

10   and most firms have 1, 2, 3.  All other firms to our

11   knowledge have been working with or have shown to be working

12   with or working to get the verifications for amended

13   responses.  So we have seen this issue as very much a

14   specific issue to Mr. Gordon's firm.  We understand that he

15   has a principled objection to it, but we think it's not

16   supported by PTO-14.

17           THE COURT:  Are the deficiencies, what are you

18   doing about the non-core deficiencies?

19           MR. HULSE:  Under the process, we are not sending

20   any kind of notice around on core deficiencies.  All the

21   PTO-14 provides for is notification around core

22   efficiencies.

23           THE COURT:  It sounds like he's saying, I don't

24   know, I can't remember the example married or non-married.

25           MR. HULSE:  Yes, well, that's identified as, that

1     kind of information is core under PTO-14.  So anything that

2     we have notified about falls expressly under the list of

3     core areas under PTO-14.  And, of course, you know, the

4     identity of a spouse, that's important.  That is basic

5     information for one of these cases.  So but much of the time

6     it's not that.  It's the information about the medical

7     procedures, bacterial infections, so forth, whether they

8     communicated with Augustine.  All areas identified by

9     agreement of the parties when they proposed this to Your

10    Honors as core areas.

11            MR. GORDON:  Your Honor, may I say one thing or

12    would I be better off not?

13            THE COURT:  What's the expression when you're in a

14    hole?

15            MR. BLACKWELL:  That's a good expression, Your

16    Honor.

17            MR. GORDON:  I won't speak if you tell me not to,

18    Your Honor.

19            THE COURT:  I'm not going to amend the pretrial

20    order at this point.  The litigation has been proceeding on

21    that order, and there's no good reason to change it at this

22    point, at least no reason that is persuasive to the Court.

23            MR. GORDON:  And, Your Honor, I don't think we

24    need an amendment.  My bottom line position is that counsel

25    has agreed and will agree, and as a compromise to Mr. Hulse,

1   that we will commit to the veracity and the authenticity of

2   all the signatures for all amendments.

3            THE COURT:  I know, and that's not consistent with

4   the order if you want to agree on something that's not in

5   the order, you can do that.  But as it stands, if the PFSs

6   are to be treated like interrogatories, they have to be

7   verified.  So your request for Court assistance in your

8   attempts to work things out with Mr. Hulse is denied.

9            MR. GORDON:  Thank you, Your Honor.

10           THE COURT:  Bellwethers.  How about this for an

11   order?  We'll put the Ramsey County case second, unless you

12   want that to go first.  I thought maybe you would start with

13   a federal case.

14           MR. BLACKWELL:  Your Honor, we certainly agree

15   with starting with the federal case, and the question we

16   have is whether given the volume of federal cases, it might

17   be good to have two of those first and then Ramsey.

18           THE COURT:  I spoke with Judge Leary yesterday,

19   and he sooner rather than later is better from his

20   perspective, but he's not asking to go first.  He's, you

21   know, whatever happens is fine.

22           So we will do, here's the order:  Kamke, Nugier --

23   is that how you pronounce that?

24           MR. GORDON:  Your Honor, we've been saying,

25   "Nugear", but some people say "Nugear," David, do you have

1    an answer to that?

2              MR. HODGES:  I used to know that answer, I don't

3    now.

4              THE COURT:  16CV4246; Walker, which is the Ramsey

5    County case; Knuteson, or as people from New York like to

6    pronounce it "Nutson;" Skaar, Gareis, and that's partly with

7    the benefit of the popcorn bowl.  Mr. Gordon, are you okay

8    with that?

9              MR. GORDON:  Yes, Your Honor, I think plaintiffs

10   are okay with that order.

11             THE COURT:  Okay.

12             MR. BLACKWELL:  Perfect, Your Honor.

13             THE COURT:  Let's talk about --

14             MR. BLACKWELL:  Judge Ericksen, before the Court

15   moves on to another subject, now that we have bellwethers, I

16   at least wanted to broach this issue with the Court.

17             I was sort of doing a survey of the discovery that

18   is set to be happening in all these cases between now and

19   October 2nd, or rather between June 2nd and October 2nd.

20   And just previewing it, there are the 20 expert depos that

21   are taking place.  The plaintiffs have sent out 11 depo

22   notices for treatise, et cetera.

23             THE COURT:  Next, on my own personal agenda is the

24   schedule.  Is that where you are working towards?

25             MR. BLACKWELL:  It is.  And I was going to suggest

1      maybe Your Honor contemplate now that we have the order of

2      the bellwethers, perhaps it would be possible to have some

3      case specific schedules put in, such that it's more of kind

4      of a rolling discovery response on at least the handling of

5      those cases, such that it can be more tailored to each case

6      so we're not doing a hundred depositions in four months.

7                  THE COURT:  Okay.  Let me think about that in a

8      minute, and I want to talk to Judge Noel about that.  Having

9      reviewed the recent submissions having to do with the

10     current schedule, I accept that some adjustment to the

11     schedule makes sense.

12                 At the moment, we've got depositions of experts to

13     be completed on or before August 2nd.  I'll move that to --

14     (crackling noise on speakers) -- $250,000 worth of

15     improvements and that's what we get.  I want you to be happy

16     when you pay your taxes.

17                 Okay, depositions, I'll move that to August 16th.

18     Depositions of expert witnesses to be completed on or before

19     August 16th.

20                 Daubert and other dispositives general, to be

21     filed rather than no later than August 15th, September 5th.

22     So dispositives including Dauberts filed by September 5th.

23     The opposition papers due September 26th, and the reply

24     October 10th.  I am free on October 25th, and also I think

25     the day before and after that, so around that time we can

1    discuss how much time is needed, but that seems to be a good

2    time.  Works for everyone on our end.

3             MR. GORDON:  Your Honor, from the plaintiff's

4    standpoint, that's good for us.  And with the Court's

5    permission, I'm going to slip out.

6             THE COURT:  Oh, bye.

7             MR. GORDON:  Thank you, Your Honor.

8             MR. COFFIN:  I'm going to go with him, Your Honor.

9             THE COURT:  Bye.

10            MR. COFFIN:  Thank you.

11            THE COURT:  Mr. Gordon, look it, all your friends.

12            MR. GORDON:  I'm sorry, Your Honor.

13            THE COURT:  I feel like I wasn't invited to the

14   party.

15            MR. HULSE:  The entourage has left.

16            THE COURT:  So first bellwether trial was

17   scheduled to start on February 5th.  Ms. Conlin, are you

18   happy with your seat or did you want to move over?

19            MS. CONLIN:  Oh, I'm okay here, Your Honor.

20            THE COURT:  All right.  And we'll move that to

21   February 26th.  Bellwether case specific discovery is now

22   scheduled to be completed no later than October 2nd, and I

23   understand that that has started because we're past the

24   June 2nd date.  So rather than October 2nd, I will make that

25   October 16th.  And then bellwether case specific dispositive

1    motions filed no later -- rather than November 1st, make

2    that November 15th.

3              Setting aside for the moment, Mr. Blackwell, your

4    point about some rolling discovery and so on with the

5    bellwethers, is that agreeable with you that schedule?

6              MR. BLACKWELL:  Well, it is.  As Your Honor

7    articulated it with this asterisk, and that relates to the

8    November 15th date for dispositive motions for the

9    bellwethers, the case specifics.  And it's now that we know

10   that plaintiffs are in fact going to also be naming case

11   specific experts, it would be I think proper as with respect

12   to the general causation disclose of experts that the

13   plaintiffs -- we have a date for the plaintiffs to disclose

14   their case specific experts, and then a date for rebuttal

15   experts, so that we know first what it is they are going to

16   put on with respect to case specific experts on the issue of

17   specific causation before we respond to it, and the date of

18   November 15th, Your Honor, could still nonetheless work just

19   fine for filing any Daubert and/or the dispositive motions,

20   but we're requesting whether it's possible to build in dates

21   for the plaintiffs disclosures of case specific experts on

22   specific cause, and a date for the rebuttal from the

23   defendant.

24             THE COURT:  Ms. Conlin, what kind of experts are

25   we talking about for these case specifics?

```
 1              MS. CONLIN:  It's possible that in a specific case
 2      we may want, for example, an anesthesiologist or an
 3      orthopedic surgeon, but there is going to be considerable
 4      overlap between the experts that we've disclosed and perhaps
 5      our case specific experts.  So perhaps to the extent we're
 6      going to name somebody new for a case specific putting in a
 7      deadline for that, that would be fine, but right now, we've
 8      also got our main experts who may be opining on case
 9      specific issues as well.
10              MAGISTRATE JUDGE NOEL:  When you talk about an
11      orthopedic surgeon or an anesthesiologist, would these be
12      treating doctors or just some orthopedic surgeon who has
13      expertise in infectious disease in connection with open
14      wounds or something like that?
15              MS. CONLIN:  Well, it could be a treating
16      orthopedic surgeon or it could be an orthopedic surgeon
17      that's opining on a case specific issue.
18              THE COURT:  Do you know now whether you'll be
19      having any such experts?
20              MS. CONLIN:  The only experts that we're looking
21      at right now is potential additional case specific maybe in
22      the area of anesthesiology in light of some of their
23      reports, which actually sort of gets into some of the
24      rebuttal issues as well.
25              MR. BLACKWELL:  And, Your Honor's, with all due
```

1    respect, I think it's going to remain so be seen, when we

2    last addressed this issue before the Court, there were not

3    going to be any case specific experts from plaintiffs.

4              MS. CONLIN:  Well --

5              MR. BLACKWELL:  May I finish, please?

6              MS. CONLIN:  Sure.

7              MR. BLACKWELL:  That has evolved as I expected it

8    might because the second phase of the case is going to be

9    supremely about how amongst a panoply of causes for surgical

10   site infections do you determine it's the Bair Hugger.  And

11   there will have to be some testimony from the plaintiffs for

12   how it is you have a reasonable scientific basis for

13   excluding all of the other causes on a case specific basis,

14   and that's what this phase will go to.  That's why we are

15   going to need case specific experts, and we presume there

16   will be something from the plaintiffs that's also addressing

17   this issue on a case specific basis because it won't be

18   enough to simply rule the Bair Hugger in as a possible cause

19   on a general causation.

20             THE COURT:  You think that might be a different

21   expert than the?

22             MR. BLACKWELL:  They may be the same

23   personalities, the same individuals, and but who the

24   plaintiffs may put up in that regard not certain.  We may

25   have at least maybe a different expert, for example, on

1     damages on a case specific basis.  But for the most part, it

2     will be the other experts we've also named who just have

3     case specific opinions also.

4          MS. CONLIN:  And that actually was the point I was

5     going to raise, and I didn't mean to interrupt you, but,

6     obviously, with respect to damages on case specifics, there

7     are going to be experts that testify in that.  The

8     fundamental disagreement between the parties, and you heard

9     Mr. Blackwell articulate it again here today is we don't

10    have to rule out every other cause.  The law in Minnesota is

11    whether the Bair Hugger was a substantial contributing cause

12    to the infection.  We believe that our experts will show

13    that's the case.

14         THE COURT:  So is there any reason case specific

15    experts' depositions can't be on the same schedule or

16    completed also by August 16th?

17         MR. BLACKWELL:  The reason it may not work, Your

18    Honor, is because we are just getting underway with the

19    discovery itself, and we will not have been complete.  We

20    frankly will not have had all the information back from the

21    various hospitals and facilities about their trend of causes

22    by that August date, and I don't expect that when we serve

23    discovery in the hospitals that they will be anxious to

24    disclose to us what the history of surgical site infections

25    have been at those facilities, and so I expect that's going

1    to be motion practice that's going to slow things down also.

2           But I don't think, Your Honor, by that date we'll

3    have enough foundation information to be able to disclose

4    the case specific opinions, and we're probably going to need

5    that whole time period through October now 16th just to get

6    at it.

7           MS. ZIMMERMAN:  And, Your Honor's, this is

8    Genevieve Zimmerman.  I don't know if you can hear me on the

9    phone right now.

10          MS. CONLIN:  We can.

11          MS. ZIMMERMAN:  Okay.  I would just add to what

12   Ms. Conlin has represented to the Court that there may be

13   also additional reports that we would like to disclose from

14   experts whom we have already disclosed who will opine on

15   case specific issues.  So, for example --

16          THE COURT:  Here's what -- hold on.

17          MS. ZIMMERMAN:  Okay.

18          THE COURT:  It sounds like you are in agreement

19   that it makes sense to have some allowance for case specific

20   experts.

21          MR. BLACKWELL:  Yes, Your Honor.

22          THE COURT:  And we have a dispositive motion on

23   bellwethers a filing of November 15th, and it sounds like

24   that is a realistic date.  What do you think the prospects

25   would be, Mr. Blackwell and Ms. Conlin, for an agreement

```
 1        with respect to the schedule of taking experts?

 2                 MR. BLACKWELL:  You mean in terms of us getting

 3        together to propose something?

 4                 THE COURT:  Right, rather than us just coming up

 5        with a date.

 6                 MR. BLACKWELL:  She's a supremely reasonable

 7        person.

 8                 THE COURT:  So are you.

 9                 MR. BLACKWELL:  My wife says so.

10                 MS. CONLIN:  Mr. Blackwell and I will confer and

11        get back to the Court on that.

12                 MR. BLACKWELL:  Yes, Your Honor.

13                 THE COURT:  Okay, perfect, thank you.

14                 MR. BLACKWELL:  Just for the record, Your Honor,

15        we don't agree on Ms. Conlin's assertion that Minnesota law

16        applies to these bellwether cases first off, much less that

17        she correctly cited what the law is.

18                 THE COURT:  That was not really on the agenda

19        anyway so.

20                 MR. BLACKWELL:  It's not, Your Honor.

21                 THE COURT:  But it was noted.

22                 Okay.  Now, the St. Louis cases, I would like to

23        talk -- who wants to talk about the St. Louis cases for the

24        plaintiffs' side?

25                 MS. ZIMMERMAN:  Hopefully, Ms. Zimmerman can
```

43

1    unmute her phone and address that.

2              MR. BLACKWELL:  And, Your Honor, hopefully for us

3    someone other than me, possibly Ms. Ahmann.

4              THE COURT:  Ms. Zimmerman?  We just heard from

5    you.

6              MS. ZIMMERMAN:  Yes, Your Honor.

7              THE COURT:  Okay.  Jennings, Weisbrod, and

8    Galbreath, and then separately Washington, the St. Louis

9    cases.

10             MR. HULSE:  Right.  And Washington is not

11   transferred yet.

12             THE COURT:  Separately Washington.

13             MS. ZIMMERMAN:  Yes.  I'm sorry, the connection

14   continues to be a little bad and maybe that's on my end.  As

15   we reported to the Court in the status report, there are

16   four cases left by the Simon Law Firm, and there are I think

17   almost 200 plaintiffs, five in the city of St. Louis or

18   Missouri were removed by the Court.

19             And it is my understanding, although I'm not

20   well-versed on the issue that there is a recent Supreme

21   Court decision in Missouri that impacts the ability of the

22   joinder of multiple clients that may or may not have

23   diversity issues, and I don't know the status of that, but

24   that is my understanding.

25             So there are, I believe, three separate firms,

1      none of whom are involved with the MDL, but they have all

2      been involved in the cases in Missouri, and now some of

3      those cases are pending transfer to the MDL.

4              THE COURT:  Well, haven't three of the cases been

5      transferred?

6              MS. ZIMMERMAN:  That is my understanding, yeah.

7              MR. HULSE:  And, Your Honor, I'm in almost daily

8      contact with the counsel at the Brown & Crouppen firm, which

9      has now appeared for plaintiffs in the cases that have been

10     transferred.  The Simon firm, which originally still has the

11     Washington case, but my expectation is Brown & Crouppen

12     would substitute in too.  Seth Webb is his name.  I don't

13     know if he may be on the line right now, but otherwise I'm

14     pretty up to date on where they're at.

15             THE COURT:  Should we ask, Mr. Webb, are you on

16     the line?  He's texting Ben Gordon, who is on the airplane.

17     Ben Gordon is gone.

18             MR. HULSE:  Just yesterday, Your Honor, we

19     consented to the plaintiffs' motion to sever the plaintiffs

20     in all three of those cases to get them assigned, of course,

21     fully support this, assigned individual case numbers.  They

22     then intend to file short form complaints.  We've negotiated

23     the deadline for PFSs in recognition that they've got

24     200 cases to handle.  They've just came in as counsel, and

25     so that's, and I understand their intention once the

1    severance has happened is to dismiss the nondiverse cases

2    and then, ultimately, get them re-filed in Ramsey County.

3    So but they have --

4          THE COURT:  Our clerk's office is wondering what

5    to do about these.  So from your point of view, the clerk's

6    office can go ahead and assign individual numbers to these

7    without problem?

8          MR. HULSE:  Yes.

9          THE COURT:  Okay, I was holding off on giving the

10   okay on that.

11         MR. HULSE:  Yes, I think that will make it much

12   more manageable for everyone.

13         MAGISTRATE JUDGE NOEL:  But do I understand you to

14   say though that there's going to be a written stipulation to

15   that effect?

16         MR. HULSE:  There's actually been a motion, an

17   unopposed motion already filed.

18         MAGISTRATE JUDGE NOEL:  Okay.

19         MR. HULSE:  And I'm confident that when and if

20   Washington is transferred, that it will proceed the same

21   way.  But I know definitively they've said they don't intend

22   to pursue remand on these cases anymore.

23         THE COURT:  The reason for our question is the

24   line in the joint agenda that says, "In addition, defendants

25   request that the Court sever the remaining plaintiffs into

```
 1    individuals.  If required, defense will file a formal

 2    motion."  So it's --

 3              MR. HULSE:  Something that's never happened, the

 4    plaintiffs did our work for us.  They actually went ahead

 5    and filed.

 6              THE COURT:  You know, they probably do it a lot

 7    more than you give them credit for.

 8              MR. HULSE:  We welcome it.

 9              THE COURT:  Is there anything else, Ms. Conlin or

10    Ms. Zimmerman or Mr. Hulse that we should talk about with

11    respect to the St. Louis cases?

12              MR. HULSE:  No, Your Honor.  Like I said, I'm

13    working on an almost daily basis with Brown & Crouppen to

14    manage sorting those cases out, so severance will be

15    helpful.

16              THE COURT:  Okay.  Ms. Zimmerman, are you okay

17    with --

18              MS. ZIMMERMAN:  Your Honor, if there's anything we

19    can do to assist the Court, we dealt with this exact issue

20    two months (inaudible), again, hundreds of clients that have

21    been transferred in a similar way, if there's something we

22    can do to help out.

23              THE COURT:  All right.  Thank you.  The state

24    proceedings, is there anything that needs to be said about

25    the state proceedings.  Ms. Ahmann?
```

1          MS. AHMANN:  No, Your Honor, there's nothing to

2     add.

3          THE COURT:  Okay.

4          MS. CONLIN:  No, Your Honor.

5          THE COURT:  Okay.  Is that true with respect to

6     Canada as well?  It looks like there's been no change there.

7          MR. BLACKWELL:  No change, Your Honor.

8          THE COURT:  And we've talked about the Super Bowl.

9     The motion on the confidential designations is ready for

10    hearing and will be heard, right?  Okay.  Is there anything

11    else you have?

12         MAGISTRATE JUDGE NOEL:  Okay, the only other thing

13    I have to address is your respective letters regarding --

14    your respective letters of June 6th and 8th regarding

15    initial and rebuttal expert reports.

16         I think we've covered this previously.  It's the

17    Court's position that whichever party has the burden of

18    proof on an issue as to which you wish to call an expert

19    witness, you need to disclose that report and the identity

20    of the expert in accordance with the initial expert

21    disclosure dates.

22         Any party who wants to call an expert witness to

23    rebut what an initial expert's report has said needs to

24    disclose a rebuttal expert report by the rebuttal disclosure

25    date.  There will be no replies to expert rebuttal reports.

1    The only thing left to do after an initial report and a

2    rebuttal report have been disclosed is to depose each of

3    those experts.

4            Are there any questions about that process?

5    Ms. Conlin?

6            MS. CONLIN:  I do, Your Honor, and the reason why

7    we've raised it again was because we now have in the expert

8    reports that were served by 3M on June 2nd.  Let me give you

9    a real life example of why we raised this issue.

10           We put in an initial report from Dr. Elghobashi,

11   who was a CFD expert, who performed computational fluid

12   dynamics work in this case.  On June 2nd, we got in a

13   rebuttal report from Mr. Abraham, whom I believe you recall

14   was 3M's CFD witness at the science day hearing.  He did, in

15   fact, rebut Dr. Elghobashi's CFD work, but he also put in

16   his own model that he did independently that he's

17   affirmatively putting in evidence at trial.

18           My concern is we want to rebut that report.  I

19   mean and if it's through asking the questions at the

20   deposition, that's fine, but they're going to put up

21   affirmative evidence in their defense case, which our

22   experts, if they listen to at trial or whatever, should have

23   an opportunity to respond to and that's the issue.

24           I mean we've got, another example is we've got Dr.

25   Lampotang for 3M who opined, which seemed curious in light

49

1    of the Court's rulings in the last couple of months, that

2    the Bair Hugger is twice as effective in keeping the patient

3    temperature increased as opposed to the HotDog.  So are we

4    to be able to rebut that when we hear that evidence at trial

5    or are we hamstrung by what's happened in light of some of

6    the prior rulings?

7            We just, you know, however the Court wants to

8    handle it, but we have an absolute right to present a

9    rebuttal case at trial, and we would like to be able to do

10   that.

11           MR. BLACKWELL:  Your Honor, if I may, I certainly

12   disagree that it's an absolute right.  And to the extent

13   it's a right at all, they do have opportunity to explore

14   whatever experts have said in the depositions of their

15   experts and in the cross examination of our experts.

16           And I note for the Court that the plaintiffs have

17   in response to our deposing experts been putting in upwards

18   of an hour-plus of direct examination specifically for this

19   purpose.  So they're in fact doing it.  And to point to some

20   isolated instance of Elghobashi with respect to a CFD from

21   Dr. Abraham, which has been in the public domain on 3M's

22   website for a year.  They have had it.

23           So this isn't some secret thing that just kind of

24   came up kapoof.  In fact, Your Honor's saw it on science

25   day, same thing.  So they've known about that, so they trot

1    that out to use it as a fulcrum for getting surrebuttal

2    reports for everyone.  And that just sets off exactly this

3    cascade Your Honor's would like to avoid of having

4    rebuttals, reaction with at least another rebuttal, another

5    reaction, and it goes on and on in a process that will never

6    respect any court schedule if that's allowed.

7         So to the extent that it seems to me that if the

8    plaintiffs have further exploration, if our experts have

9    said things that are irrelevant, the rules address that.  If

10   they feel that our expert reports are flawed, that's what

11   cross-examination is for.  If their experts have anything

12   more to say, they've been exploring that in our deposition

13   of their experts by taking directs on their experts.  So it

14   seems to me that the plaintiffs' needs are being addressed

15   under the current rules, under the current schedule, and

16   there's not a need for this sort of cascading process of

17   surrebuttals and responses from us.

18        MS. CONLIN:  Well, we didn't know whether they

19   were calling Mr. Abraham as an expert.  And in point of

20   fact, we've had to serve when they've now identified them

21   with report, we sent out subpoenas.  We're still waiting for

22   that information.  We expect to start getting it on

23   June 21st.

24        We're fine with not, we understand what the Court

25   has ruled.  We're simply saying I see this issue coming down

1    the pike.  And if we get to trial, and Mr. Abraham gets up

2    and talks about his CFD model, we want to be able to call

3    Dr. Elghobashi in rebuttal and explain why that's wrong.

4    That's all.  And we have been doing directs because we feel

5    like that's the one way to get out why our experts think

6    what their experts are saying is wrong.

7             MAGISTRATE JUDGE NOEL:  Okay.  I think the Court

8    has ruled that there will be no expert surrebuttal reports.

9    The report is an initial report, there's a rebuttal report,

10   and there are depositions, and it sounds to me like the

11   depositions are serving their function.

12            Anything else on that issue, Ms. Conlin?

13            MS. CONLIN:  No, Your Honor.  As long as we're

14   going to be able to present it in rebuttal at trial, we're

15   fine with the order.

16            THE COURT:  We're not making trial rulings at this

17   point.

18            MAGISTRATE JUDGE NOEL:  Anything else, Mr.

19   Blackwell?

20            MR. BLACKWELL:  In light of that, no, nothing else

21   on that issue, Your Honor.

22            MAGISTRATE JUDGE NOEL:  Okay.

23            THE COURT:  Anything else, Ms. Conlin?

24            MS. CONLIN:  No, Your Honor.

25            THE COURT:  Not just on that, but on anything?

1          MS. CONLIN:  No.

2          THE COURT:  All right.  Mr. Blackwell?

3          MR. BLACKWELL:  Your Honor, just a couple of other

4    things.  And if I could go back to the bellwethers for just

5    one second.

6          Has the Court given any thought as to whether or

7    not the bellwether cases will be tried back to back or what

8    might be sort of the pace of these?  And I ask that because

9    as I was sort of previewing again the discovery to be done

10   between June and October, that there really could be upwards

11   of a hundred depositions, and it might be, and I say that

12   because in each case each of the six bellwethers, I was

13   sort of making my list of who it is from the different

14   hospitals may have some information to bear on what causes

15   surgical site infections in that facility, family members,

16   et cetera, treaters.  And depending on the pace of the

17   bellwethers, there might be some benefit if the parties

18   could get together and propose perhaps some schedules that

19   may be specific tailored to each bellwether case, if the

20   Court is receptive to hearing that.

21          MAGISTRATE JUDGE NOEL:  Have the parties given

22   thought to how long they anticipate each bellwether trial to

23   take?

24          MR. BLACKWELL:  We haven't discussed it, but --

25          MS. CONLIN:  My guess is a rough estimate of

1      probably two weeks or under with jury selection, opening

2      statements, closing arguments, and the like.

3                  MR. BLACKWELL:  And my gut reaction was three

4      weeks, Your Honor.

5                  MS. CONLIN:  Well, I forgot about a rebuttal case.

6      That would require another week.

7                  MR. BLACKWELL:  We can handle that through motion

8      practice, Your Honor.

9                  THE COURT:  Well, especially if we don't get two

10     new judges in this district, we might have to have a week or

11     we might have to have some time in between anyway.  I just

12     don't see how we have the court time to go.

13                 MR. BLACKWELL:  So if we were, for example, going

14     to stage them, if you had, for example, two federal cases,

15     number one and number two up, and there were going to be a

16     week in between them, we could prioritize the discovery to

17     have both of those ready by whatever the dates are in the

18     current PTO, but then be able to stage some of the discovery

19     with respect to the others to better kind of fit when

20     they'll actually get tried, so that we can actually focus on

21     the ones that are coming up for trial.

22                 (Phone voices heard talking.)

23                 THE COURT:  Did you put that some place safe?

24                 MR. BLACKWELL:  I think you silenced that

25     conversation.  I think they were discussing their lunch.

1          MS. CONLIN:  We can probably talk with

2     Mr. Blackwell about that issue if the Court is inclined to

3     allow us to explore that further.  I do think it makes sense

4     if we know what's upcoming at first now, prioritize those in

5     terms of discovery, and we can probably work something out.

6          THE COURT:  That's good.  Otherwise, I'm worried

7     that we'll have orders that are unnecessarily specific and

8     won't really work in the real world because we're talking

9     about trial schedules that are sometime next week or year,

10    so if you are able to work it out within the limits of the

11    existing schedule, work out what you can, and we'll leave

12    the schedule as it is.  But you, obviously, can work things

13    out.

14         MR. BLACKWELL:  We'll see what we might propose,

15    Your Honor.

16         THE COURT:  All right.

17         MS. CONLIN:  Although, Mr. Blackwell is extremely

18    unreasonable.

19         THE COURT:  Still?

20         MS. CONLIN:  Well, he called me that, so I just

21    thought it appropriate to call him that too.  No, we'll work

22    it out and come to the Court if we have issues.

23         MR. BLACKWELL:  Thank you, Your Honor.  There is

24    one last issue, however.

25         THE COURT:  Mr. Blackwell?

1          MR. BLACKWELL:  Your Honor, if I may have

2     Mr. Hulse speak to this, there is a certain issue about

3     privilege log and the timing for response for it whether

4     there is something we should differently address with the

5     Court or whether there's something we can work out with

6     plaintiffs, we tried, but it didn't happen.

7          MS. CONLIN:  Mr. Hulse had asked for an extension

8     to respond, which would necessarily kick out the hearing

9     date.  What I told him this morning was in light of the

10    amount of work we had in July, I wasn't inclined to have a

11    motion in the middle of it.  In light of the fact that we've

12    gotten some relief on when things are due in July and

13    extending out that expert discovery, the long and short of

14    it is I think we can work out an extension and have a

15    hearing set in July.

16         MAGISTRATE JUDGE NOEL:  Is this relating to the

17    hearing that we already have set for the privilege log?

18         MS. CONLIN:  Correct.

19         MR. HULSE:  This is the one that plaintiffs set

20    for the 26th.

21         MAGISTRATE JUDGE NOEL:  26th of June.

22         MR. HULSE:  Right.  Where they are seeking in

23    camera review of about 700 documents.  So we called over and

24    understand that Your Honor would be available for hearing on

25    the 17th.  We know you're out the week before, and that's

1    the date that we would propose to have this heard, if it's

2    amenable to plaintiffs, with our response due seven days

3    before.

4              MS. CONLIN:  And I think it is now.  My issue was

5    we have triple track depositions on July 18th, and I think

6    we can work that out and have the hearing on the 17th now.

7              MAGISTRATE JUDGE NOEL:  With this caveat, Theresa

8    is out today, so tomorrow call her and make sure that she

9    knows what you've just said and that that's still the case

10   with regard to my schedule.  But now you're saying -- I'm

11   sorry, the hearing was scheduled for?

12             MR. HULSE:  The 26th of June.

13             MAGISTRATE JUDGE NOEL:  And now you're saying July

14   the 17th?

15             MR. HULSE:  Correct.

16             MAGISTRATE JUDGE NOEL:  Okay.  I will check with

17   her, but call her tomorrow and make sure that everybody

18   knows that that's what's going to happen.

19             MR. HULSE:  Thank you, Jan.

20             MAGISTRATE JUDGE NOEL:  Is that it for everybody

21   on everything?

22             MS. CONLIN:  It is for us, Your Honor.

23             MR. BLACKWELL:  It is for us as well, Your Honor.

24             THE COURT:  All right.  Thank you very much.

25   Thanks to everybody who was on the phone, and we are in

1    recess.

2                    (Court adjourned at 10:54 a.m.)

3

4

5

6                           *       *       *

7

8

9          I, Maria V. Weinbeck, certify that the foregoing is

10    a correct transcript from the record of proceedings in the

11    above-entitled matter.

12

13                 Certified by:   *s/ Maria V. Weinbeck*

14                                 Maria V. Weinbeck, RMR-FCRR

15

16

17

18

19

20

21

22

23

24

25