```
                      UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA

----------------------------------------------------------------
                                  )
  In Re: Bair Hugger Forced Air   )   File No. 15-MD-2666
  Warming Devices Products        )            (JNE/FLN)
  Liability Litigation            )
                                  )
                                  )   Minneapolis, Minnesota
                                  )   June 19, 2017
                                  )   10:30 a.m.
                                  )
                                  )
                                  )
----------------------------------------------------------------

             BEFORE THE HONORABLE FRANKLIN L. NOEL
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
                        (MOTION HEARING)
```

APPEARANCES

  For the Plaintiffs:        MESHBESHER & SPENCE
                                   Genevieve M. Zimmerman, ESQ.
                                   1616 Park Avenue
                                   Minneapolis, MN 55404

  For the Defendant:         BLACKWELL BURKE P.A.
                                   Monica Davies, ESQ.
                                   431 South Seventh Street
                                   Suite 2500
                                   Minneapolis, MN 55415

  For the Respondent:        J. Randall Benham
                                   6581 City West Parkway
                                   Eden Prairie, MN 55127

  Court Reporter:            STACI A. HEICHERT
                                   RDR, CRR, CRC
                                   1005 U.S. Courthouse
                                   300 South Fourth Street
                                   Minneapolis, Minnesota 55415


   Proceedings recorded by mechanical stenography;
transcript produced by computer.

**P R O C E E D I N G S**

**IN OPEN COURT**

THE COURT: All right. So this is In Re. Bair Hugger Forced Air Warming Device Product Liability Litigation; Civil No. 15-2666.

Let's get everybody's appearance on the record. The moving party here is defendant, correct?

MS. DAVIES: Correct. Monica Davies from Blackwell Burke on behalf of the defendant.

THE COURT: Okay. And the motion is defendant's motion to remove confidential designation from certain documents, Docket Entry No. 517. And for Augustine.

MR. BENHAM: For Augustine and Augustine Entities, J. Randall Benham.

THE COURT: Okay. And also present in the courtroom is?

MS. ZIMMERMAN: Yes, Genevieve --

THE COURT: Oh, I don't know if they're going to hear you. I'll say it. Genevieve Zimmerman is here on behalf of plaintiffs.

MS. ZIMMERMAN: Yes.

THE COURT: Okay. Oh, we're not recording this. You're recording this and you did hear her.

Okay. So defendant is the moving party. Ms. Davies.

1             MS. DAVIES:  Thank you.  I will try to be brief.
2      Thank you again, Your Honor.  The issues presented here this
3      morning are essentially the same issues that were before the
4      Court about a month ago when we were here in the context of
5      a similar motion with respect to documents produced by
6      Ridge View Medical Center, and primarily that is whether, in
7      this case, Dr. Augustine has complied with the requirements
8      of the protective order and whether the documents that he
9      has designated -- or that whether the documents at issue in
10     fact qualify for confidential treatment under that order.
11     3M submits that the answer to both of those questions is no.
12            As the party seeking confidentiality,
13     Dr. Augustine has the burden of demonstrating a good faith
14     basis for the designation, and he hasn't done that.
15     Instead, he claims a sort of general entitlement to
16     confidentiality based on the notion that businesses are
17     entitled to decide for themselves what documents should and
18     should not be treated as confidential and that that decision
19     doesn't necessarily have to be informed by whether or not
20     those -- those documents have already been shared with other
21     parties.  That's the same type of argument that was recently
22     considered and rejected by the Court in the context of the
23     Ridge View motion that I just mentioned.  And our position
24     is that simply calling a document confidential doesn't make
25     it so within the parameters of the protective order at issue

1      in this case.
2              Once again, we're not dealing with sensitive
3      corporate information or financial data or even proprietary
4      information related to Dr. Augustine's business or the
5      HotDog warming product that is the competitor product to the
6      Bair Hugger system.  What we're talking about is documents
7      and information underlying Dr. Augustine's claims about the
8      Bair Hugger system and his role behind the scenes in this
9      litigation, and that's information that he has already made
10     public to a great extent.  From the litigation guide, which
11     this Court has already seen and I believe already determined
12     isn't confidential in connection with its March 7th, 2017,
13     order, to his role in the research underlying the claims he
14     supports -- that he claims support his theories, to
15     publically available videos that purport to show that forced
16     air warming products like the Bair Hugger contaminate an
17     operative field, he has been -- Dr. Augustine has been very
18     vocal and very public about his claims against the Bair
19     Hugger system and the body of information he claims to have
20     that support his position.  He sent that information to 3M
21     customers all over the world in an effort to try to convince
22     them to move away from 3M and the Bair Hugger system and use
23     his HotDog product instead.  And he even goes through a
24     MedWatch report and put another doctor's name on hoping it
25     would prompt the FDA to take his allegations more seriously.

1           These are the sort of facts he wants to keep
2  confidential not because they're sensitive or proprietary
3  commercial data but because they contradict so much of what
4  he has already represented to the public.  Dr. Augustine
5  opened that door, and our position is that he shouldn't be
6  allowed to go public with a version of events he thinks is
7  helpful for him and then expect the Court to protect the
8  truth from coming out by allowing him to designate documents
9  that contradict his statements as confidential.  Those
10 documents contain information that refute much of the
11 representations he's already made to the public.  The topics
12 are out there, the conversation is out there, and
13 Dr. Augustine is the one that chose to go public with that
14 information.  He hasn't offered any reason under the
15 protective order that they should be considered
16 confidential, and the fact that they're not helpful to him
17 because they do contradict his public statements isn't a
18 sufficient basis.  3M requests that its motion to lift the
19 designation be granted on that basis.
20          And I'll mention, as an aside, that the parties
21 are currently meeting and conferring about the -- well, the
22 same dispute with respect to confidential designations of
23 Dr. Augustine's deposition testimony, and to the extent that
24 the Court has any guidance to offer on this issue overall,
25 we hope that that might help narrow or potentially even

1   eliminate the parties' ongoing dispute as to that issue.
2           THE COURT:  Let me ask this question.
3           MS. DAVIES:  Sure.
4           THE COURT:  Let's assume for a moment that
5   consistency is the hobgoblin of small minds and that I am
6   not inclined to be consistent, why should the Court involve
7   itself in what appears to be a public relations dispute
8   between Dr. Augustine and 3M?  In other words, the documents
9   are clearly in everybody's -- all the parties have these
10  documents and can use them however they need to for the
11  purposes of this litigation.  Why should the Court care
12  whether you can take his documents and make them public
13  because he already has?
14          MS. DAVIES:  It's a very fair question, and I
15  think the most straightforward answer is because the only
16  thing preventing us from doing that right now is, in fact,
17  an order that is entered in the context of this litigation.
18  It's the protective order that's really at issue and whether
19  or not any party, but in this case, Dr. Augustine, is
20  compliant with that ordered in designating the documents as
21  confidential.
22          THE COURT:  Right.  But, I mean, am I right that
23  the -- all that's really being sought here in connection
24  with this motion is the Court's blessing for you to go and
25  say to the world, look at these documents and compare them

1       to what Augustine has said in other contexts, correct?
2                   MS. DAVIES:  Well, we're asking for the
3       confidential designation to be lifted, and you're right,
4       that may, you know, whether and how those documents and that
5       information is ultimately used, I can't tell you how that
6       will be as we sit here today.  But the litigation -- there
7       is a significant amount of overlap between the claims that
8       Dr. Augustine is publically making well outside of the walls
9       of this courtroom as well as the claims that are being
10      alleged in this litigation.  And you're right that, you
11      know, 3M obviously has the ability to use those documents to
12      defend itself in the context of this case, but right now,
13      while the plaintiffs and the defendants are complying with
14      the terms of the protective order and -- and proceeding with
15      the litigation inside this courtroom, 3M is being barraged
16      with customer inquiries, customer concerns, publically --
17      information made public by Dr. Augustine, including
18      information that was presented by plaintiffs at the punitive
19      damages hearing, portions of plaintiffs' presentation have
20      since been republished and submitted to customers throughout
21      the world, again, by Dr. Augustine, and because 3M is doing
22      its best to be compliant with the protective order that's
23      issued by the Court, we're essentially, 3M's essentially got
24      one arm tied behind its back when it comes to being able to
25      answer the legitimate concerns that are being raised now

1  when customers are hearing about these complaints from
2  Dr. Augustine.
3              THE COURT:  So let me ask the question a different
4  way.  Is there anything about the confidential designation
5  of these documents that constrains what you can do with them
6  in the context of the litigation?  Is there anything that
7  prevents you from showing them to witnesses that you might
8  need to get information from to assist you in connection
9  with preparing your defense, for example?
10             MS. DAVIES:  As it relates to being able to use
11 the documents in this courtroom and as part of the trial, I
12 don't believe so.  Quite honestly, I would have to take
13 another look at the protective order itself to the extent
14 that that question relates to third-party witnesses that may
15 be deposed in the context of the litigation.  As for
16 experts, you're correct, I believe they can sign off on the
17 Exhibit A and be shown that information.
18             THE COURT:  What about in-house business people,
19 is there anything that in the protective order that prevents
20 you from showing them to 3M -- other 3M employees?
21             MS. DAVIES:  I don't believe so off the top of my
22 head.
23             THE COURT:  Okay.  All right.  Thank you.
24             MS. DAVIES:  Thank you.
25             THE COURT:  Mr. Benham.

1            MR. BENHAM:  Your Honor, what's clear from their
2  filings, what's clear from the presentation is that 3M and
3  its counsel really, really, really don't like Dr. Augustine.
4  And rather than --
5            THE COURT:  It appears to be a mutual thing,
6  right?
7            MR. BENHAM:  Oh, I think it's commercially based.
8  On Dr. Augustine's point, no hostility towards 3M in the
9  slightest.  And rather than take responsibility for its own
10 behavior and for ignoring many, many years of research, 3M
11 wants to blame everything on Dr. Augustine and claim that
12 he's the mastermind behind these 2,500 cases, and what they
13 want to do to seek the revenge is, here's the concept, they
14 want to use discovery taken from a third party to harm that
15 very third party.  That seems to be, to me, exactly what
16 protective orders are for.  And if allowed to go forward,
17 they will create a campaign with these confidential
18 documents in which they will twist it a bit and take
19 selective quotes from it and they'll use it to vilify
20 Dr. Augustine.
21           And, sir, I have to say, you will play a starring
22 role in this.  The headline will not be Augustine writes to
23 the FDA or, you know, Augustine communicates with -- with
24 plaintiffs' counsel.  The headline will be federal
25 magistrate forces Augustine to reveal secret documents.

1   Because we've seen this before.  The first time I stood
2   before you the question was could, in the first two cases,
3   the defendants take Augustine's deposition twice, over and
4   over again, and you said no, you have to take it once.  The
5   headline in their blogs and press releases was federal
6   magistrate forces Augustine to testify, which was never the
7   issue.  I mean, this has been done before.
8               And fortunately, there's a protective order in
9   place here, and the purpose of the protective order is to
10  protect parties, and nonparties, from the public disclosure
11  of their information that might cause harm.  And the
12  question will it potentially cause harm is what decides
13  whether it's confidential or not.  We're not talking about
14  trade secrets here.  And the question is what -- what harm
15  could be caused by the release of this?  And the answer is
16  the very fact that 3M wants to take it and publicize it and
17  use it against the HotDog business and Dr. Augustine
18  personally and the Augustine companies is all the proof that
19  anyone could need that these are, in fact, confidential.  As
20  your questions and counsel's answers make clear, there is no
21  harm that comes to 3M in this litigation from maintaining
22  the confidentiality.
23              And, you know, the -- the allegation was made that
24  these were publically revealed documents.  There was one
25  category that seemed, to me, that had been public revealed.

1  It was the e-mail blast that we had sent out.  And having

2  had that pointed out to me, I immediately de-designated

3  those.  I don't believe there's anything else here that has

4  been publically disclosed, and I touched on that some in the

5  memorandum that I filed.

6          You know, the only reason that they want to do

7  this is to hurt Augustine, and that's reason enough to keep

8  it confidential, as evidenced by the fact that early on,

9  when we were asked to de-designate, I contacted Micah Hines,

10  one of the defendant's counsel, and said if you'll tell me

11  that you're not going to use this in a marketing campaign

12  against my client, I can be less rigid in what I designate

13  as confidential, and the answer was no, no, I mean, that's

14  exactly what we intend to do.  So when they say we're going

15  to use this to hurt your client, how can it not be

16  confidential?  And with that, I'll request that you --

17          THE COURT:  Well, let me -- that's not the

18  standard, though, is it?  I mean, you have -- under the

19  protective order, the party who's claiming the documents are

20  confidential has a burden and the burden is to establish

21  that the documents are entitled to protection under Rule

22  26(c), correct?

23          MR. BENHAM:  My understanding is the standard is

24  Rule 26(c) which is revealing it to the public could cause

25  harm to the business, and harm is exactly what they intend

1     to cause.

2              THE COURT: So what Rule 26(c) authorizes the

3     Court to do is "to protect a party or person from annoyance,

4     embarrassment, oppression, or undue burden or expense," and

5     then it outlines specific things the Court can order such as

6     "forbidding the disclosure or discovery; specifying terms,

7     including time and place or allocation the of expenses;

8     prescribing a discovery method other than the one selected

9     by the party seeking discovery; forbidding inquiry into

10    certain matters; designating the persons who may be present

11    while the discovery is conducted; requiring that a

12    deposition be sealed and opened only on court order;

13    requiring that trade secret or other confidential research,

14    development, or commercial information not be revealed or be

15    revealed only in a specified way; and requiring the parties

16    simultaneously file specified documents or information in

17    sealed envelopes, to be opened as the court directs."

18             So I'm assuming you're referring, then, to this

19    (c)(1)(G) requiring that a trade secret or other

20    confidential research, development, or commercial

21    information not be revealed or be revealed only in a

22    specified way?

23             MR. BENHAM: Well, the language of the protective

24    order is slightly different and I believe slightly broader

25    than what was read there. The language of the protective

1    order speaks of an intention to protect information which
2    could potentially cause harm to the disclosing party.  I
3    mean, I would argue that those are probably intended to be
4    coextensive.
5                THE COURT:  Okay.  Anything else?
6                MR. BENHAM:  No, sir.  Thank you.
7                MS. ZIMMERMAN:  Your Honor, if I could make a few
8    comments?
9                THE COURT:  One second.  I'm sorry, Mr. Benham,
10   one more question.
11               MR. BENHAM:  Yes, sir.
12               THE COURT:  How, if it's -- so the premise for my
13   question to Ms. Davies was about consistency, assuming for a
14   moment I want to be consistent, how, if at all, do the facts
15   here regarding these documents differ from the facts
16   regarding the Ridge View Medical Center documents?
17               MR. BENHAM:  I'm a little bit limited here because
18   I don't know what the Ridge View confidential documents
19   were.
20               THE COURT:  Well, you knew a little bit because
21   you filed a memo in connection with them.
22               MR. BENHAM:  But I filed it in response to sealed
23   documents for the Court to which I was not privy.  My
24   arguments were fairly generic.  But I'll do the best I can
25   with the limited facts that I have.  Apparently Ridge View

1  had made whatever these documents were public or somehow
2  through Dr. Augustine had made them public, although I don't
3  know what they were.  The suggestion that a confidential
4  document becomes nonconfidential just because it is shared
5  with one other person or a small number of people seems a
6  little odd to me because that would mean that no e-mails,
7  which always involve second and third parties, no
8  communications could ever be confidential.  Businesses
9  communicate with other businesses with other people all the
10 time so that has to be within the realm of what's
11 confidential.  There was apparently something unique in what
12 Ridge View did or what other parties did regarding the
13 particular confidential documents that were being discussed
14 that caused you to conclude that they had lost their
15 confidentiality, but since I don't know what they were, I
16 can't tell you.
17          THE COURT:  And one last question.  What -- what
18 docket entry -- so, as I understand it, Augustine, under
19 these circumstances, has the burden to establish that the
20 documents are entitled to protection under the protective
21 order.  What -- what evidence does that?  Is there an
22 affidavit that, from Dr. Augustine, or is it just your memo
23 in response to the motion that I should look at?
24          MR. BENHAM:  I did not file an affidavit of
25 Dr. Augustine.  There is just my memorandum.

1               THE COURT:  Okay.  Okay.  Thank you.

2       Ms. Zimmerman, did you want to say something?

3               MS. ZIMMERMAN:  Yes, Your Honor, if you would.  As

4       the Court is aware, the plaintiffs don't take a position on

5       what decision Your Honor should make with respect to

6       confidentiality designations by any of the parties that have

7       been involved in third-party motion practice here.  However,

8       because counsel for 3M has represented to the Court today

9       that the plaintiffs' punitive damages presentation has

10      somehow been circulated, I feel compelled to say that that

11      has not certainly been circulated by plaintiffs or by anyone

12      else to my knowledge.

13              Now, to my knowledge, we were recently made aware

14      that Dr. Augustine has reached out to, and I have no idea to

15      the extent of his reach out, but there are -- there is some

16      sort of a website that he's maintaining with copies of the

17      publically available PACER documents, and I believe most of

18      those are redacted.  I will say that from the plaintiffs'

19      perspective that's not appropriate and we have written a

20      letter to Mr. Benham and Dr. Augustine advising them of our

21      position to that extent.

22              And I think that it really goes to the question

23      that Your Honor is really asking, and that is, is this

24      really the appropriate forum for this dispute to continue to

25      take place?  The plaintiffs' position is that this is really

1   just a sideshow and that if -- if 3M thinks that there's a
2   product disparagement lawsuit or some other thing, we've
3   been in front of Your Honor almost for two years now and I
4   would suggest that they bring that case already and remove
5   that from this MDL because Your Honor I believe has ruled
6   that the non-forced air warming products are not reasonable
7   alternative designs in this litigation, and if that's true,
8   I -- plaintiffs just simply cannot understand how we are
9   still here talking about the HotDog.
10           And I think that the issue or the answer to that
11  question is that these players on both sides intend to, as
12  Mr. Benham represented to the Court, use Your Honor's ruling
13  as they continue to war with each other in a public
14  relations battle.  It's not a fight that we take a position
15  on, but we don't think it's appropriate in this instance.
16           THE COURT:  Okay.
17           MS. ZIMMERMAN:  So I appreciate Your Honor's
18  indulgence.
19           THE COURT:  Thank you.  Ms. Davies, anything else?
20           MS. DAVIES:  Thank you.  Very quickly.  I'd like
21  to respond to a couple of points.  In no particular order,
22  first, as to a remark that Ms. Zimmerman just made, she's
23  right, there is no reason we need to be talking about the
24  HotDog and we're not.  This is not about 3M attempting to be
25  able to publicize documents that have anything to do with

1  Dr. Augustine's business or the product itself.  What 3M
2  wants to do is be able to fully respond to allegations being
3  made by Dr. Augustine in a public forum to 3M's customers.
4          The Court had asked earlier, and, again, it's a
5  very fair question, and I certainly understand the
6  sensitivity, the Court asked why should it have to get
7  involved in what's essentially a public relations dispute,
8  and, unfortunately, in addition to the remarks I made
9  earlier, I would submit that it already is, unwittingly,
10 perhaps, but the fact remains, Dr. Augustine is out there
11 telling the public and 3M's customers one thing; 3M has
12 documents from Dr. Augustine that prove that something else
13 is true.  Dr. Augustine is counting on the fact that we'll
14 be prohibited from responding and sharing that information
15 and he's using that -- he's using the Court's protective
16 order to do it.
17         At the end of the day, leaving aside anybody's
18 motives or who is being said -- you know, who is being told
19 what, the protective order controls, and we submit that
20 Dr. Augustine simply hasn't met his burden to show that
21 these documents are, in fact, confidential.  They don't fall
22 into one of the categories articulated.  There is no
23 affidavit or other supporting evidence that would
24 demonstrate the degree of harm to which Dr. Augustine claims
25 he would be subjected.  And as counsel indicated, we're not

1  talking about trade secrets here.  The question is what harm
2  would follow, and we submit there's no harm that would
3  follow but for the full story being disclosed.
4           THE COURT:  What -- has he -- has Dr. Augustine,
5  through Mr. Benham, correctly quoted from -- well, first of
6  all, is the TruthaboutBairhugger.com a blog site maintained
7  by 3M?
8           MS. DAVIES:  I don't know the answer to that.  I
9  certainly -- personally I don't know.  I believe that 3M has
10 made efforts to respond publically to the allegations that
11 Dr. Augustine has made and has set up some sort of mechanism
12 through which its customers can get questions answered, but
13 the specifics of that I'm just not aware of as I stand here
14 today.
15          THE COURT:  And in his memo, Mr. Benham said
16 headlines there include "Don't Believe Augustine's Latest
17 Lies," "Scott Augustine Strikes Again with False Claims,"
18 "Augustine Admits Role in Manufacturing Lawsuits."  Do you
19 know if those are accurate quotes from anything that 3M or
20 Blackwell Burke has authorized?
21          MS. DAVIES:  I don't.
22          THE COURT:  Okay.  And the section in the
23 protective order that defines what can be designated as
24 confidential and the burden of meeting, that is found
25 precisely where?

1          MS. DAVIES:  I believe it is paragraph 2.  If I
2     could grab my copy quickly --
3          THE COURT:  Sure.
4          MS. DAVIES:  -- I can confirm that.  It is
5     paragraph 2 that sets forth the various categories of
6     confidential information.  And it is paragraph 9 that states
7     that the party asserting the material is confidential should
8     have the burden of proving the information in question is in
9     the scope of protection afforded by Rule 26(c) of the
10    Federal Rules of Civil Procedure.
11         THE COURT:  And the protective order is pre-trial
12    order number?
13         MS. DAVIES:  It is pretrial order No. 7, document
14    No. 39, dated April 29th, 2016.
15         THE COURT:  I'm sorry, say that date again.
16         MS. DAVIES:  April 29th, 2016.
17         THE COURT:  Okay.  All right.  Thank you.  I'll
18    take the matter under --
19         MR. BENHAM:  Your Honor, can I have 15 seconds?
20         THE COURT:  I'm sorry, what Mr. Benham?
21         MR. BENHAM:  May I have 15, 30 seconds?
22         THE COURT:  To say what?
23         MR. BENHAM:  I have an alternative that could
24    resolve this issue and that -- the problem is an uneven
25    playing field.  The Blackwell Burke website and others

1    quotes from depositions taken in the UK to which we weren't
2    there, we don't have access to, we don't have any way to
3    respond to them.  My -- my suggestion is that if 3M would
4    de-designate its confidential designations in depositions
5    and documents other than that might be customer specific and
6    give us access to those, we would de-designate similarly and
7    then we could remove this from being a problem for the Court
8    and we could just do battle out there in the wide world with
9    each of us having all the information from the other we
10   need.  The problem right now, they get ours, we get nothing
11   of theirs.
12            THE COURT:  Okay.  I'll take the matter under
13   advisement, issue an order shortly.  We are in recess.
14            MR. BENHAM:  Thank you, sir.
15            MS. DAVIES:  Thank you, Your Honor.
16       (Proceedings concluded at 10:58 a.m.)
17
18                         *    *    *
19            I, Staci A. Heichert, certify that the foregoing is
20   a correct transcript from the record of proceedings in the
21   above-entitled matter.
22
23                      Certified by:  *s/ Staci A. Heichert*
24                                     Staci A. Heichert,
                                       RDR, CRR, CRC
25