**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 2666 (JNE/FLN) |

---

This Document Relates to
ALL ACTIONS

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR *IN CAMERA* REVIEW**

**(PUBLICLY FILED REDACTED VERSION)**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

I.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR *IN CAMERA* REVIEW OF PLAINTIFFS' EXHIBITS 1 AND 2. .............................................. 3

    A.    Plaintiffs Failed to Satisfy the Meet-and-Confer Requirement for 50 Entries on Exhibits 1 and 2. ................................................................... 4

    B.    Plaintiffs Challenge the Privilege on Several Documents that Were Already Produced to Them. ...................................................................... 7

    C.    Defendants' Assertion of Work Product Protection Is Appropriate Because Defendants Have Contemplated Litigation with Augustine – And Have in Fact Litigated Against Him – Since 2009. ............................ 7

    D.    Testing Commissioned for the Purpose of Anticipated Litigation Is Also Privileged Work Product. .......................................................................... 9

    E.    Defendants Properly Applied the Attorney-Client Privilege to Discussion of Advice of Counsel by Defendants' Non-Attorney Employees. ........................................................................................... 11

    F.    Contrary to Plaintiffs' Repeated Assertions, the Privilege Log Does Identify Legal Counsel as a Participant to the Challenge Communications. ................................................................................ 14

    G.    Defendants Properly Asserted the Attorney-Client Privilege with Respect to 3M's Legal Review of Marketing, Labeling, and Advertising Materials. ................................................................................ 16

    H.    Plaintiffs Fail to Explain Why Attorney-Client Communications About ECRI Would Not Be Privileged. ...................................................... 18

II.    ███████████████████████████████████ ........... 20

    A.    ████████████████████████████ ..................................... 21

    B.    ██████████████████████████ ..................................... 22

    C.    ████████████████████████████████. ......... 24

    D.    █████████████████████████████████. ............................ 25

E. ██████████████████████████████████████

██████████████████████. ........................................................ 27

**CONCLUSION** ................................................................................ **28**

## **INTRODUCTION**

Plaintiffs' belated, post-fact-discovery motion for *in camera* review of hundreds of entries on Defendants' privilege log is a mess, a waste of the Court's time, and should be denied. To take just a few examples of the sloppiness and other fundamental defects of Plaintiffs' motion:

- Plaintiffs challenge 50 privilege log entries (25 of 97 on Exhibit 1 and 25 of 303 on Exhibit 2) that they never previously challenged in writing, as required by PTO No. 11 before filing a motion.

- Plaintiffs challenge 13 documents that in fact were produced by Defendants in response to Plaintiffs' original meet-and-confer correspondence.

- In at least 71 instances, Plaintiffs challenge the original document descriptions on Defendants' original privilege logs, rather than the amended descriptions that were provided in responses to Plaintiffs' meet-and-confer correspondence. These amended descriptions often provide significant additional information supporting the privilege.

- In dozens of instances, Plaintiffs challenge entries on Defendants' privilege logs on the basis that they purportedly fail to identify Defendants' legal counsel as a participant to the communication, even though those same entries expressly *do* identify the legal counsel – either by name or by law firm.

- Plaintiffs argue that Defendants did not anticipate litigation, and therefore had no work product privilege, before the *Walton* case was filed in March 2013 – even though Defendants had been litigating with Augustine (represented by Plaintiffs' counsel from the Kennedy Hodges firm) over the same issues since Augustine launched his smear campaign against the Bair Hugger system in 2009.

- Plaintiffs never argue that a single entry on Defendants' privilege logs fails to comply with Pretrial Order No. 11, which governs the format of privilege logs. Indeed, Plaintiffs never even mention PTO No. 11 once in their entire brief.

1

For additional reasons discussed below, Plaintiffs' challenges to the attorney-client and work product privileges fail on their merits. Defendants' assertion of these privileges is well supported by the descriptions given in their privilege logs and by case law.

The very nature of Plaintiffs' challenges to Defendants' privilege logs gives away the real game. Plaintiffs' true purpose – found in the second half of their brief – █████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████   ████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

 The

better course is to deny Plaintiffs' motion.

## <u>ARGUMENT</u>

I.    **THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR *IN CAMERA* REVIEW OF PLAINTIFFS' EXHIBITS 1 AND 2.**

The front half of Plaintiffs' brief challenges Defendants' assertion of the work-product doctrine and attorney-client privileges with respect to the privilege log entries listed on Exhibits 1 and 2 to Plaintiffs' motion.  As discussed below, the Court should deny Plaintiffs' request for *in camera* review of these documents for one or more of the following reasons: (i) Plaintiffs failed to challenge the privilege for 50 documents in writing before filing their motion, as was required by PTO No. 11; (ii) Defendants produced a number of the challenged documents in response to prior meet-and-confers; (iii) as also explained on the privilege logs, the documents on Plaintiffs' Exhibit 1 were

3

prepared by Defendants' counsel or at counsel's request in anticipation of litigation;
(iv) Defendants' assertion of the attorney-client privilege with respect to the documents on
Plaintiffs' Exhibit 2 was appropriate because, as explained in the log entries, the challenged
documents reflected or conveyed the advice of Defendants' counsel or the seeking of legal
advice.  Moreover, Plaintiffs never dispute that the entries fully satisfy Pretrial Order No.
11, which governs the format of Defendants' privilege logs.

Overarching defects with Plaintiffs' challenges are discussed below.  Exhibits A and
B to the accompanying Declaration of Benjamin W. Hulse ("Hulse Dec.") identify the
category of defect that applies to each of Plaintiffs' individual privilege challenges and
provide additional information when appropriate.[1]  Because the ECF-filed versions of
Exhibits A and B are difficult to read given the extensive detail that is included, Defendants
also will provide electronic versions to the Court.

### A.  Plaintiffs Failed to Satisfy the Meet-and-Confer Requirement for 50 Entries on Exhibits 1 and 2.

First, this Court should deny Plaintiffs' request for an *in camera* review for all
privilege log entries that Plaintiffs failed to first challenge in writing.  Paragraph H of PTO

---

[1] Plaintiffs' Exhibits 1 and 2 generally reflect the descriptions of privileged documents on
the *original* privilege logs provided by Defendants.  But in response to Plaintiffs' written
meet-and-confer letters, Defendants produced amended logs that in many instances
provided significant additional details about the challenged documents.  It is unclear why
Plaintiffs provided the Court with the old, superseded privilege log descriptions (an error
that affects more than 70 entries on their Exhibits 1 and 2).  To address this problem,
Exhibits A and B to the Hulse Declaration list the same documents as Plaintiffs' Exhibits
1 and 2, respectively, but include the descriptions that were provided to Plaintiffs on the
amended logs.

No. 11 provides that Plaintiffs must first challenge privilege log entries in writing before

filing a motion for *in camera* review:

> Prior to any submission to the Court for an *in camera* review, the Party
> disputing a claim of privilege shall provide in writing the identification
> of the documents for which it questions the claim of privilege and the
> reasons for its assertion that the documents are not privileged. . . . If
> agreement cannot be reached within seven (7) court days of the written
> response, any party may thereafter submit the dispute to the Court, as
> provided by the Court's Local Rules and procedures, for a determination
> as to privilege.

Plaintiffs do not dispute that they failed to satisfy this condition precedent for 50 entries on

their Exhibits 1 and 2.  These include:

<u>Plaintiffs' Exhibit 1:  Work Product and Attorney-Client Privilege</u>

3MPRIV00001051
3MPRIV00001125
3MPRIV00001213
3MPRIV00001216
3MPRIV00001219
3MPRIV00001223
3MPRIV00001226
3MPRIV00001229
3MPRIV00001238
3MPRIV00001822
3MPRIV00001882
3MPRIV00001889
3MPRIV00001893
3MPRIV00001898
3MPRIV00001949
3MPRIV00002134
3MPRIV00002136
3MPRIV00002137
3MPRIV00002142
3MPRIV00002632
3MPRIV00002728
3MPRIV00003445
3MPRIV00003905
3MPRIV00003906

5

3MPRIV00003924

Plaintiffs' Exhibit 2:  Attorney-Client Privilege

3MPRIV00000999
3MPRIV00001014
3MPRIV00002206
3MPRIV00002584
3MPRIV00002677
3MPRIV00002744
3MPRIV00003087
3MPRIV00003317
3MPRIV00003403
3MPRIV00003426
3MPRIV00003428
3MPRIV00003666
3MPRIV00003668
3MPRIV00003768
3MPRIV00003773
3MPRIV00003777
3MPRIV00003781
3MPRIV00003788
3MPRIV00003792
3MPRIV00003801
3MPRIV00003803
3MPRIV00003805
3MPRIV00003809
3MPRIV00003929

All of these entries were taken from Defendants' June 25, 2016 privilege log, which encompassed Bates numbers 3MPRIV000001 to 3MPRIV00016488.  Plaintiffs never sent a meet-and-confer letter for that log.  (Their first challenge was to Defendants' second log, served July 11, 2016.  *See* ECF No. 539.)  As such, their request for an *in camera* review of these entries should be denied.

**B.  Plaintiffs Challenge the Privilege on Several Documents that Were Already Produced to Them.**

Plaintiffs also challenge 13 documents that were produced to them by Defendants following their initial written challenges:

Plaintiffs' Exhibit 1
3MPRIV00021537
3MPRIV00030300

Plaintiffs' Exhibit 2
3MPRIV00003781
3MPRIV00020586
3MPRIV00021105
3MPRIV00022076
3MPRIV00022077
3MPRIV00024967
3MPRIV00026441
3MPRIV00030291
3MPRIV00030697
3MPRIV00030940
3MPRIV00031397

There is no excuse for Plaintiffs including these documents in their motion.  The Court should deny an *in camera* review of documents that already have been produced.[2]

**C.  Defendants' Assertion of Work Product Protection Is Appropriate Because Defendants Have Contemplated Litigation with Augustine – And Have in Fact Litigated Against Him – Since 2009.**

Plaintiffs next make the incredible assertion that work product protection cannot apply to any documents created before the *Walton* suit was filed on March 21, 2013.  (Pl.

---

[2] In other instances, Defendants produced versions of the documents on their privilege logs with the privileged communications redacted.  These are identified in Exhibit B to the Hulse Declaration.

Mem. at 9.)  Before that date, Plaintiffs argue, litigation involving the Bair Hugger system was no more than an "amorphous prospect."  (*Id.*)

As this Court is aware, Dr. Augustine began publicly attacking the safety of the Bair Hugger system in 2009, around the same time he formally retained the Kennedy Hodges firm to advise him.  (ECF No. 250 at 2 ("[Based on a July 6, 2009 engagement letter, Augustine and the law firm Kennedy Hodges, LLP ('Kennedy Hodges') have some kind of attorney-client relationship.").)  Since then, 3M has continuously evaluated its litigation options against Dr. Augustine and has, in fact, litigated against him.

Within short order after Augustine commenced his smear campaign, Arizant (and after the 2010 acquisition of Arizant, 3M) and Augustine were engaged in litigation in Europe over Augustine's anti-Bair Hugger marketing.  On June 2, 2009, the Regional Court of Cologne, Germany entered an order finding Augustine's statements to be misleading, disparaging, and unsubstantiated by science.  (Hulse Dec. Ex. C.)  The German court issued another order later in 2011, again finding Augustine's allegations against the Bair Hugger system to be unlawful.  (Hulse Dec. Ex. D.)  Several documents on Exhibit 1 obviously relate to the German litigation, as can be gleaned from the names Tobias J. Hessel and Martin Koehler.  Messrs. Hessel and Koehler were identified to Plaintiffs as attorneys with Reimann, Osterrieth, Kohler, and Haft in Dusseldorf, Germany.  (Hulse Dec. Ex. E, Chart of Legal Names on Privilege Log, provided to Plaintiffs on October 28, 2016.)

Other privilege log entries from the same period indicate that legal advice was being provided by Dechert LLP, Arizant and 3M's outside counsel (3MPRIV00026572, 45179, 45182, 45185, 45187).  Also from the same period is the work-product report of Dr. Charles

Edmiston, prepared at the request of the Greene Espel law firm (3MPRIV00020880). While Defendants' privilege log entries refer to anticipated litigation against a "competitor," rather than Augustine explicitly, Plaintiffs can hardly have any doubts about who that competitor is and what the context was.

In sum, Plaintiffs' assertion that these pre-*Walton* efforts by 3M's counsel reflect "routine business issues rather than anticipated litigation" (Pl. Mem. at 9) cannot be a serious contention.  From 2009 onward, Arizant and then 3M anticipated litigation with Augustine – and in fact litigated against Augustine in Europe – concerning the same allegations that Plaintiffs (represented by Dr. Augustine's counsel from Kennedy Hodges) then copied in *Walton* and now in this MDL.  Materials prepared by or at the request of Arizant's outside counsel, or 3M's in-house or outside counsel, in contemplation or in connection with pre-*Walton* litigation is therefore protected work product.

### D. Testing Commissioned for the Purpose of Anticipated Litigation Is Also Privileged Work Product.

Next, Plaintiffs challenge the assertion of work product protection over certain testing in the early 2000s that was conducted at the request of the legal counsel for Arizant's corporate predecessor, Augustine Medical, Inc.  (Pl. Mem. at 7, 10.)

Product testing commissioned by counsel in anticipation of litigation "constitute classic work product."  *See Meyer v. Colavita USA, Inc.*, No. CV 11-00696, 2011 WL 2457681, at *3 (C.D. Cal. June 17, 2011); *U.S. ex rel. Dye v. ATK Launch Sys. Inc.*, No. 1:06-CV-00039, 2011 WL 996975, at *5 (D. Utah Mar. 16, 2011) ("studies or tests conducted after a party is aware of potential litigation . . . [are] within the scope of the work

9

product immunity doctrine") (internal quotation omitted); *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 172 (D. Colo. 1993) (same).  "[E]ven tests which generate factual data – when conducted at the direction of counsel and in preparation for litigation – are strongly indicative of the mental impressions, conclusions, opinions, or legal theories of [a party's] attorneys" and are therefore "protected by the work product doctrine."  *Dye*, 2011 WL 996975, at *5.

While they ran the Bair Hugger business, Dr. Augustine and his corporate counsel, Randall Benham – along with their then-counsel Robins, Kaplan, Miller & Ciresi L.L.P. and Oppenheimer Wolff & Donnelly LLP – relentlessly explored and filed lawsuits.  The case reporters are filled with patent and false advertising litigation between Augustine and its competitors. *See, e.g.*, *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291 (Fed. Cir. 1999); *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367 (Fed. Cir. 1999); *Augustine Med., Inc. v. Mallinckrodt, Inc.*, 2003 WL 1873836 (D. Del. Apr. 9, 2003); *Augustine Med., Inc. v. Blue Ridge Anesthesia & Critical Care, Inc.*, 1 Fed. Appx. 594 (8th Cir. 2001); *Cincinnati Sub-Zero v. Augustine Med., Inc.*, 800 F. Supp. 1549 (S.D. Ohio 1992) (Augustine countersuit for Lanham Act and false advertising).

Augustine Medical kept a log of all Bair Hugger testing it performed.  Defendants produced that log to Plaintiffs.  As reflected on the excerpts from the testing log at Exhibit G to the Hulse Declaration, when testing was performed for business purposes, an engineer or other non-attorney was listed as the "requester."  By contrast, the testing log identified the requester of the test as Randall Benham when the testing was to evaluate potential litigation, sometimes against a competitor but sometimes involving alleged non-infection

10

injuries (in particular, burns).  Defendants have asserted work product protection with respect to this attorney-requested testing whenever they have found no indication (through review of corporate records) that the test results were later used for some business purpose (*e.g.*, 3MPRIV00021560, 21562, 21564, 21571, 21577, 21707, 21708).  The Court should deny an *in camera* review of these attorney-requested tests.

### E.  Defendants Properly Applied the Attorney-Client Privilege to Discussion of Advice of Counsel by Defendants' Non-Attorney Employees.

Defendants turn now to the substance of Plaintiffs' challenges to Defendants' assertion of the attorney-client privilege.[3]

In their brief, Plaintiffs challenge the attorney-client privilege for one communication involving former Arizant employee John Rock (3MPRIV00021895) and others involving Arizant paralegal Amy Lievers.  (Pl. Mem. at 4-5.)  Contrary to Plaintiffs' argument, Defendants is not asserting the privilege based on Mr. Rock's status as Arizant's Director of Legal Affairs or Ms. Lievers as a paralegal.  Defendants do not contend that Mr. Rock or Ms. Lievers, both non-lawyers, can create a privilege on their own.  Indeed, Defendants have produced thousands of communications from or to Mr. Rock (a non-lawyer), Ms. Lievers, and other Arizant employees.  Defendants asserted the attorney-client privilege over Mr. Rock's and Ms. Lievers' Arizant-era communications with employees

---

[3] Upon further review of the challenged documents in preparation of this brief, Defendants determined not to continue asserting privilege on 27 of them, and in a few cases to produce redacted versions.  These downgrades are reflected in Defendants' additional comments on Exhibits A and B.

responsible for the Bair Hugger system when they passed along, discussed, or applied advice from Arizant's outside counsel.[4]

Courts have consistently recognized that communications among non-lawyer employees about legal advice provided by counsel generally are protected by the attorney-client privilege.  *See, e.g.*, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (confidential communications made for the purposes of securing legal advice are privileged where such communications were made at the direction of counsel or a corporate superior and are within the scope of an employee's duties); *Anaya v. CBS Broad. Inc.*, 251 F.R.D. 645, 652-53 (D.N.M. 2007) (attorney-client privilege was not waived when memorandum was disseminated among non-lawyer employees, because it was not shared with "anyone whose duties it did not concern"); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C. Cir. 2002) (Ginsburg, Circuit Justice) (to maintain the privilege, "[i]t suffices instead that the corporation limited dissemination to specific individuals whose corporate duties relate generally to the contents of the documents"); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684, 696 (S.D. Fla. 2009) (affirming privilege where the documents "comprise communications among the corporation's employees intended to disseminate the legal advice provided by counsel and discussing the ramifications of that legal advice").  As one court has explained:

> The essential elements of the privilege . . . do not require an attorney to have either authored or received the document at issue in order to maintain the privilege.  A party may successfully demonstrate the

---

[4] Following 3M's acquisition of Arizant in 2010, Ms. Lievers' role changed, and instead of reporting to Mr. Rock, she reported directly to 3M's in-house counsel.  Ms. Lievers explains her role in her accompanying declaration.

applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice.

Organizational clients and business entities are personified by a number of employees.  In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts.

*Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638 (D. Kan. 2006).

That is exactly the case with these communications.  Arizant regularly hired outside counsel, and Mr. Rock acted as "the conduit and the liaison for their direction, their opinions, their advice" and was the "touch point for . . . employees and the legal [team]." (Hulse Dec. Ex. F, Rock Dep. at 17-19, 107).  Information flowed through Mr. Rock from outside counsel to be passed on to employees and company management, as well as from employees and management to outside counsel.  (*Id.* at 108.)  Mr. Rock was a representative of the client, communicating with employees and outside counsel to facilitate, secure, and act upon legal advice.  Communications between 3M/Arizant employees and Mr. Rock (or his deputy, paralegal Amy Lievers) were thus made for purposes of effectuating legal representation, and protected by the attorney-client privilege. This is appropriately reflected in the privilege log descriptions, as set forth below:

| Privilege ID | Date and Description | Privilege |
|---|---|---|
| 3MPRIV00021895 | Date:  12/28/09<br><br>Email string with confidential communications between clients and **legal counsel's agent/liaison** (J. Rock) at direction of outside counsel **reflecting legal advice rendered by outside counsel** | Attorney Client Privilege / Attorney Work Product |

13

| | | |
|---|---|---|
| | concerning testing and laminar flow conducted in anticipation of litigation. | |
| 3MPRIV00022033 | Date:  4/8/09<br><br>Email string with confidential communications between clients reflecting the seeking of legal advice, and confidential communications between client and **counsel (T. Meador - INCAPLAW)** relevant to seeking legal advice about a regulatory filing for a product unrelated to forced air warming. | Attorney-Client Privilege |

**F.  Contrary to Plaintiffs' Repeated Assertions, the Privilege Log *Does* Identify Legal Counsel as a Participant to the Challenged Communications.**

Next, Plaintiffs contend that Defendants have improperly asserted privilege over several emails that relate merely to "general business strategy."  (Pl. Mem. at 5-7.)  As reflected on their Exhibit 2, Plaintiffs' general basis for this inference is that "counsel [is] not identified as a participant to [the] communication." (Zimmerman Decl. Ex. 2.)  They include this assertion dozens of times.  But, in nearly every case, Defendants' privilege log descriptions *do* identify counsel as a participant, and the other entries indicate that the advice of counsel is being passed along.  For example:

| Privilege ID | Date and Description |
|---|---|
| 3MPRIV0019025 | Date: 12/21/11<br><br>Email string with confidential communications between clients and counsel (M Harms) discussing legal advice received and information to be provided to counsel relevant to legal advice to be rendered regarding a response to an FDA issue with a competitor of forced |

14

| | |
|---|---|
| | air warming, and concerning other actions by the competitor. |
| 3MPRIV00026426 | Date: 6/9/11<br><br>Email with confidential communications between clients and confidential communications between client and **legal counsel (M. Harms - 3M)** reflecting the seeking of legal advice regarding a competitor's product claims relating to forced air warming. |

Here again, Plaintiffs often are basing their challenges on Defendants' *original* privilege logs, rather than the *amended* logs, which typically added specific attorney names in response to Plaintiffs' requests for more information.

Moreover, Plaintiffs sometimes base their challenges on the fact that, for some email threads, the "to" and "from" columns on the Defendants' privilege log do not name an attorney. But this is the product of Paragraph E of PTO No. 11, which provides that "[a]n email thread may be logged in a single entry" on the privilege log. This often means that an attorney is part of an email thread, but in the final email in the thread a non-attorney recipient sends the thread to other non-attorneys who have the need to know the attorney's advice (still preserving the privilege). Thus, when the "to" and "from" information about the email is electronically extracted for the privilege log, no attorney appears. To address this, Defendants have identified the attorney who was part of the exchange of legal advice, or whose advice is being sought, in the "Description" column of their privilege logs. Plaintiffs repeatedly ignore this information in their challenges.

For all these reasons, this Court should deny Plaintiffs' request for an *in camera* review of these documents as well.

15

### G. Defendants Properly Asserted the Attorney-Client Privilege with Respect to 3M's Legal Review of Marketing, Labeling, and Advertising Materials.

Plaintiffs also challenge a multitude of privilege log entries concerning 3M's legal review of various marketing, labeling, and advertising materials. Plaintiffs claim that these involve business advice only. Once again, Plaintiffs are wrong.

Legal review of promotional and advertising materials is a critical aspect of Defendants' standard procedures, designed to enable the corporation to obtain legal guidance regarding the substance and potential consequences of such documents. As part of that process, paralegals and other employees are regularly called upon by outside and in-house counsel to assist in facilitating the necessary flow of information and communication of legal advice. This is consistent with settled case law establishing that legal counsel need not be directly involved with every communication in order for the communication to be privileged. *See supra*.

Under 3M's corporate standard operating procedures, all promotional and marketing materials require approval from 3M's legal department. Contrary to Plaintiffs' assertions, this is not to provide a cover for "general business advice," but rather to review and confirm compliance with all applicable legal and regulatory requirements. 3M's documented procedures specifically state that legal counsel is to review such materials and evaluate several issues, including:

- Overall assessment of risk;

- Warranty, disclaimer, and intellectual property issues;

- Cautions and warnings;

16

- Risk of unintended release of proprietary information; and

- Ensuring document, objectives, and content are within 3M corporate requirements for advertising and promotion.

(Dec. of Amy Lievers, Ex. 1.)

The challenged entries on Plaintiffs' Exhibit 2 are consistent with this process.

These entries include, for example:

| Privilege ID | Date and Description |
|---|---|
| 3MPRIV00003317 (never before challenged by Plaintiffs in writing as required by PTO 11) | 12/15/10 email string with confidential communications from counsel to client providing legal advice regarding marketing material in response to claims concerning the safety of forced air warming. |
| 3MPRIV00003773 (never before challenged by Plaintiffs in writing as required by PTO 11) | 12/16/10 email string with confidential communications from counsel to client providing legal advice regarding a marketing response to claims concerning the safety of forced air warming. |
| 3MPRIV00024603 | 1/5/11 email string with confidential communications between clients and legal counsel reflecting the seeking of legal advice, legal advice rendered, and discussing information to be provided to assist counsel in rendering legal advice with regard to attached draft response to a competitor's advertising claims on forced air warming. |
| 3MPRIV00026294 | 9/6/11 email with confidential communications from client to legal counsel (M. Harms - 3M) reflecting the seeking of legal advice regarding a competitor's product claims relating to forced air warming. |

That Plaintiffs choose not to believe Defendants' description of the documents is hardly a sufficient basis for this Court to conduct an *in camera* review.  Moreover, that 3M has frequently sought legal advice with respect to marketing materials and responses to "a competitor's claims regarding forced air warming" should come as no surprise in light of Defendants' history of being publicly smeared by Dr. Augustine.

### H. Plaintiffs Fail to Explain Why Attorney-Client Communications About ECRI Would Not Be Privileged.

Finally, Plaintiffs challenge discussions between 3M and its counsel about the ECRI Institute in 2011.  (Pl. Mem. at 7.)  The ECRI Institute is a widely respected nonprofit organization that advises more than 5,000 healthcare organizations.  Plaintiffs concede that the discussions about ECRI were with 3M's in-house counsel, Maureen Harms, as reflected in the privilege log entries:

| Privilege ID | Date and Description |
| --- | --- |
| 3MPRIV00018358 | Date:  3/18/11<br><br>Email string with confidential communications between clients discussing information to be provided to counsel relevant to legal advice to be rendered in response to a published study and claims concerning forced air warming, and between client and counsel (**M. Harms**) reflecting the seeking of legal advice regarding a response to a published study and claims concerning forced air warming. |
| 3MPRIV00018366 | Date:  3/21/11<br><br>Email string with confidential communications between clients discussing information to be provided to counsel (**M. Harms**) relevant to legal advice to be rendered in response to a published study and claims concerning forced air warming. |

18

| | |
|---|---|
| 3MPRIV00018421 | Date:  8/31/11<br><br>Email string with confidential communications between G. Hansen and **M. Harms** related to requested marketing material by counsel on forced air warming for the purpose of rendering a legal opinion regarding a competitor's claims concerning risks associated with forced air warming. |
| 3MPRIV00018358 | Date:  3/18/11<br><br>Email string with confidential communications between clients discussing information to be provided to counsel relevant to legal advice to be rendered in response to a published study and claims concerning forced air warming, and between client and counsel (**M. Harms**) reflecting the seeking of legal advice regarding a response to a published study and claims concerning forced air warming. |
| 3MPRIV00018366 | Date: 3/21/11<br><br>Email string with confidential communications between clients discussing information to be provided to counsel (**M. Harms**) relevant to legal advice to be rendered in response to a published study and claims concerning forced air warming. |

That 3M employees sought the advice of 3M's counsel concerning ECRI in 2011 also should not be surprising to anyone, given that ECRI – like so many other similar organizations – was being subjected to Augustine's PR onslaught at the time.[5]  Plaintiffs

---

[5] Defendants did not willy-nilly assert the attorney-client privilege with respect to all communications with 3M's in-house counsel, Maureen Harms.  Defendants asserted the privilege where attorney advice was in fact sought, and produced documents where Ms. Harms was merely copied as an FYI.  In total, Defendants have produced more than 130

are flat-out wrong that the attorney-client privilege cannot apply to internal communications about ECRI because ECRI is "not a litigation adversary." (Pl. Mem. at 7.) That is to confuse work product with the attorney-client privilege.

Incidentally, ECRI ultimately conducted a review of over 180 studies, including the same studies cited by Augustine and the Plaintiffs here. In 2013, ECRI concluded: "we do not believe that the currently available evidence justifies discontinuing the use of FAW [forced air warming] during surgery." (Hulse Dec. Ex. K, "Forced-Air Warming and Surgical Site Infections: Our Review Finds Insufficient Evidence to Support Changes in Current Practice." ECRI Institute, Guidance Article (April 2013): 122-25.) ECRI further noted that a lawsuit had been filed that year alleging that a patient sustained a periprosthetic infection while undergoing hip replacement surgery as a result of contaminants being deposited in the surgical site by a 3M Bair Hugger system (the *Walton* case filed by Kennedy Hodges): "We have reviewed the plaintiff's petition. It does not present any new information that would alter the conclusions we have drawn in this article based on our review of the published literature." *(Id.)*

**II.**    ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

documents sent to or from Ms. Harms.



21



22











27



## **CONCLUSION**

For all the foregoing reasons, the Court should deny Plaintiffs' motion for an *in camera* review.

Dated:  July 10, 2017                           Respectfully submitted,

                                                *s/Benjamin W. Hulse*
                                                Jerry W. Blackwell
                                                MN Atty ID No. 0186867
                                                Benjamin W. Hulse
                                                MN Atty ID No. 0390952
                                                **Attorneys for Defendants 3M Company**
                                                **and Arizant Healthcare Inc.**
                                                BLACKWELL BURKE P.A.
                                                431 South Seventh Street, Suite 2500
                                                Minneapolis, MN  55415
                                                T: (612) 343-3200  F:  (612) 343-3205
                                                blackwell@blackwellburke.com
                                                bhulse@blackwellburke.com

                                                Bridget M. Ahmann
                                                MN Atty ID No. 016611x
                                                **Attorney for Defendants 3M Company**
                                                **and Arizant Healthcare Inc.**
                                                FAEGRE BAKER DANIELS LLP
                                                2200 Wells Fargo Center
                                                90 South Seventh Street
                                                Minneapolis, MN 55402
                                                T: (612) 766-7000  F: (612) 766-1600
                                                bridget.ahmann@faegrebd.com