UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: Bair Hugger Forced Air Warming
Products Liability Litigation

MDL No. 2666 (JNE/FLN)

This Document Relates to
**ALL ACTIONS**

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND MASTER LONG FORM
AND SHORT FORM COMPLAINTS TO ADD
CLAIM FOR PUNITIVE DAMAGES**

## INTRODUCTION

The Court has requested supplemental briefing on whether and to what extent *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) affects the analysis of whether to permit Plaintiffs to amend their Complaints to allege a claim for punitive damages.  Defendants' position is that *Shady Grove* has no impact on the analysis. Under the *Marks* doctrine, Justice Stevens' concurrence in *Shady Grove* is either controlling or, at a minimum, persuasive *dicta* to guide district courts in interpreting the Supreme Court's prior decisions.  Following the framework prescribed by both Stevens' concurrence and the Supreme Court's prior decisions, Federal Rule of Civil Procedure 15(a)(2) does not "directly collide" with Minn. Stat. § 549.191.  Thus, Section 549.191 should be applied to all claims in this MDL – just as District of Minnesota case law has overwhelmingly applied Section 549.191 to diversity cases in the past, both before and after *Shady Grove*.  Plaintiffs, of course, agreed with Defendants on this point in their original briefing and at oral argument. ECF No. 589 at 4 ("Both parties agreed at the hearing that the Minnesota punitive damages statute regulates procedure.").

## DISCUSSION

### I.     JUSTICE STEVENS' CONCURRENCE IN *SHADY GROVE* CONTROLS – OR AT LEAST SHOULD GUIDE – THIS COURT'S ANALYSIS.

The Supreme Court's decision in *Shady Grove* is badly fragmented.  No opinion commanded a majority on the framework for determining whether a state law conflicts with a Federal Rule of Civil Procedure.

1

Justice Scalia, writing for four justices who concurred in the judgment, posed the question as to whether a federal rule "answers the question in dispute."  If the federal and state rule address the same question, and application of the federal rule does not violate the Rules Enabling Act, the federal rule wins.  Scalia concluded that, because Rule 23 and the New York class action statute at issue both provided procedural rules for deciding whether a class action could be certified, there was a conflict.  The New York statute's provisions were procedural and did not affect the parties' substantive rights (in Scalia's view), and thus applying Rule 23 would not violate the Rules Enabling Act.

Justice Stevens' concurrence, following *Hanna v. Plumer*, 380 U.S. 460 (1965), framed the question instead as to whether there is a "direct collision" between the federal rule and the state rule.  *Shady Grove*, 559 U.S. at 422.  If there is a "direct collision," then the federal rule applies unless it violates the Rules Enabling Act.  Unlike Justice Scalia, however, Justice Stevens cautioned that courts should be hesitant to find a "direct collision." In determining whether the federal rule and state rule "directly collide" or instead can "operate alongside" one another, the federal rule is to be "fairly construed" with "sensitivity to important state interests and regulatory policies."  *Id.*, *quoting Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, n.7 (1996) (Ginsburg, J., for the Court).  Likewise, even in cases of "direct collision," courts should apply a "saving construction" to the federal rule so that it does not violate the Rules Enabling Act.  *Id.* at 422-23.  Justice Stevens nonetheless joined Justice Scalia's plurality in finding that Rule 23's class certification guidelines conflicted with the New York class action statute at issue and that Rule 23, as applied, did not violate the Rules Enabling Act.

2

Justice Ginsburg, dissenting from the judgment and joined by the other three justices, would have held that there was no conflict between Rule 23 and the New York statute. She construed the state statute as a limit on remedies available in class actions, rather than providing procedural rules for certification, and saw no reason that a state limit on remedies could not peacefully coexist with Rule 23. She would re-frame the conflict question as "whether application of the [state] rule would have so important an effect upon the fortunes of one or both litigants that the failure to [apply] it would be likely to cause a plaintiff to choose the federal court." *Id.* at 451. The Ginsburg approach boils down to looking at whether application of the federal rule will encourage forum shopping by making remedies available in federal court that would not be available in state court, or making remedies easier to achieve. *Id.* at 456 ("forum shopping will undoubtedly result if a plaintiff need only file in federal instead of state court to seek a massive monetary award explicitly barred by state law"); *id.* at 457 ("We have long recognized the impropriety of displacing, in a diversity action, state-law limitations on state-created remedies.").

This brings us to the *Marks* doctrine. Under the *Marks* doctrine, when "no single rationale explaining the result [of a Supreme Court opinion] enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. U.S.*, 430 U.S. 188, 193 (1977) (citations omitted). The Eighth Circuit has not addressed whether Justice Stevens' concurrence is the controlling opinion in *Shady Grove*. However, most federal courts have concluded that it is. *See, e.g., Davenport v. Charter Comms., LLC*, 35 F. Supp. 3d 1040, 1050 (E.D. Mo. 2014) (collecting cases and quoting *McKinney v. Bayer Corp.*,

3

744 F. Supp. 2d 733, 747 (N.D. Ohio 2010) ("Because Justice Stevens' concurring opinion

would permit some state law provisions addressing class actions – whereas Justice Scalia's

opinion . . . would broadly prohibit any state law that conflicted with Rule 23 – Justice

Stevens' opinion is the narrowest and, thus, controlling opinion.").[1]

Alternatively, one can read Stevens and Ginsburg to agree (collectively, for five

Justices) that Federal Rules should be construed whenever possible to be compatible with

state rules on the same subject matter. This reading is supported by Stevens' quotation from

Ginsburg's majority opinion in *Gasperini* about "sensitivity to important state interests and

regulatory policies" in construing federal rules.  Ginsburg echoes the quote back to him in

a footnote.  *Shady Grove*, 559 U.S. at n.2.  Two district courts have read *Shady Grove* in

this matter, one terming the shared approach of Stevens and Ginsburg as "*Marks*-doctrine

dicta."  *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516 (SRU), 2016 WL 4204478, at

*6 (D. Conn. Aug. 9, 2016) ("The problem is that no other Justice joined [Justice Stevens']

concurrence, and even if we nevertheless infer agreement, the common denominator of a

concurrence and a dissent does not support the judgment. It is, in effect, *Marks*-doctrine

---

[1] *See also Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 726 (D.S.C. 2016); *Boelster v. Hearst Comms., Inc.*, 192 F. Supp. 3d 427, n.9 (S.D.N.Y. 2016); *Helpling v. Rheem Mfg. Co.*, 1:15-cv-2247-WSD, 2016 WL 1222264, at *14 (N.D. Ga. Mar. 23, 2016); *Williams v. King Bee Delivery, LLC*, 199 F. Supp. 3d 1175, 1186-87 (E.D. Ky. 2016);  *In re Trilegiant Corp., Inc*., 11 F. Supp. 3d 82, 115–18 (D. Conn. 2014); *In re Nexium*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 660 (E.D. Mich. 2011); *Bearden v. Honeywell Int'l*, No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010); *Phillips v. Philip Morris Cos., Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013).

dicta rather than *Marks*-doctrine holding."); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010).  If this reading is correct, then *Hanna* and *Gasperini* remain controlling and Stevens' concurrence is a guide to interpreting those decisions.[2]

Regardless of whether Justice Stevens' concurrence controls the issue or is merely *dicta* providing guidance for reading the Supreme Court's prior decisions, it points toward construing Rule 15 to coexist with Minn. Stat. § 549.191.  As explained below, Rule 15 does not "directly collide" with Section 549.191, and therefore the requirements of Section 549.191 should be applied to Plaintiffs' claims.

## II.   RULE 15 DOES NOT "DIRECTLY COLLIDE" WITH SECTION 549.191.

### A. This District Has Followed the Same Approach as Justice Stevens' *Shady Grove* Concurrence and Concluded that There Is No Conflict

This District's longstanding approach is consistent with Justice Stevens' concurrence in *Shady Grove*.  Before and after *Shady Grove*, this District's decisions distinguish between a "direct collision" of a state law and a federal rule, and a mere "potential conflict."  "[W]here the state provision directly collides with the plain meaning of a Federal Rule of Civil Procedure, the court analyzes whether the federal rule is authorized by the Rules Enabling Act and whether it violates any constitutional principles." *Gordon v. State Farm Fire & Cas. Co.*, No. 11-3176 (JRT/LIB), 2012 WL 3848409, at *3

---

[2] For the view that *Shady Grove* is of no value beyond its disposition, *see In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) ("The Court is not convinced that Justice Stevens' opinion is the 'logical subset' of the plurality's or that Stevens' opinion represents a common denominator. Where there is no such narrow opinion, the only binding aspect of the splintered decision is its specific result. Thus, *Shady Grove* does not provide the Court with much guidance.").

(D. Minn. Aug. 17, 2012). But when a state law and federal law can "'peacefully co-exist,' the court must engage in a choice of law analysis that evaluates if the choice-of-law determination 'is substantial enough to raise equal protection problems or influence the choice of forum.'" *Id.*; *accord Security Savs. Bank v. Green Tree Acceptance, Inc.*, No. 3-89-28, 1990 WL 36142, at *1-2 (D. Minn. Mar. 22, 1990) (describing the test as whether the federal rule "leav[es] no room for operation of that [state] law"); *Kuehn v. Shelcore, Inc*. 686 F. Supp. 233, 234 (D. Minn. 1988).

Courts in this District have applied the "directly collides" framework to Section 549.191 and determined that the statute applies in diversity cases. In *Kuehn*, Judge Devitt concluded "[t]here is no Federal Rule which directly conflicts with Minnesota Statute § 549.191." *Kuehn*, 686 F. Supp. at 234. He explained that Rule 8 and Section 549.191 do not directly conflict; they only potentially conflict and can peacefully coexist:

> Federal Rule 8 is a general pleading rule; its only potential conflict with § 549.191 is that it does not prohibit pleading punitive damages without leave of court. Federal Rule 8 does not, however, directly conflict with § 549.191. Both can be given simultaneous effect.
>
> Federal Rule 8 is concerned with simplifying pleading requirements; *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir.1968); *Johnson v. Occidental Life Ins. Co.*, 1 F.R.D. 554, 555 (D.Minn.1941); § 549.191, however, is aimed at deterring past abusive pleading practices regarding punitive damages in order to address a perceived insurance crisis. Note, Introduction to Minnesota's Tort Reform Act, 13 Wm. Mitchell L. Rev. 277, 294–95 (1987); Cole, Tort Reform – Toward Moderation, 13 Wm. Mitchell L. Rev. 335, 339 (1987).
>
> The policies of § 549.191 make it "an 'integral' part" of the Tort Reform Act and Rule 8 "does not replace such policy determinations". The two can peacefully co-exist, "each controlling its own intended sphere of coverage without conflict." *Walker*, 466 U.S. at 752, 100 S. Ct. at 1986. This is evident from the fact that there has been no change in Minnesota

6

> Rule of Federal Procedure 8 since passage of § 549.191. Minnesota Rule 8 is virtually identical to Federal Rule 8. "Just as [§ 549.191] and [Minnesota Rule 8] can both apply in state court for their separate purposes, so too [§ 549.191] and [Federal Rule 8] may both apply in federal court in a diversity action." *Walker* at 752 n.13.

*Kuehn*, 686 F. Supp. at 234 (final citation partially omitted).  Having found no conflict, Judge Devitt then turned to *Erie,* and the question of "whether the variation between litigation with § 549.191 enforced and without § 549.191 enforced is substantial enough to raise equal protection problems or influence the choice of forum."  *Id.* at 234-35.  Judge Devitt concluded that enforcement of § 549.191 would influence forum selection because a litigant deciding between a forum that applies Section 549.191 and one that does not may file in the forum that does not apply Section 549.191 for a tactical advantage:

> When faced with the choice between a forum which applies § 549.191 and one which does not, a party might well choose the latter because it provides a tactical, though non-dispositive, advantage. In the court's view, this variation is substantial enough to influence forum choice and, under *Erie*, must be eliminated by applying § 549.191 in this federal diversity action.

*Id.* at 235; *Zeelan Indus., Inc. v. de Zeeuw*, 706 F. Supp. 702, 704-05 (D. Minn. 1989).

Following this same analytical approach (which is consistent with Justice Stevens' concurrence), Judge Becker determined that Section 549.191 does not directly conflict with Rule 15.  In *Security Savs. Bank v. Green Tree Acceptance, Inc.*, 1990 WL 36142, at *2, Judge Becker concluded that "[t]here is no direct conflict between Rule 15(a) and section 549.191 . . . . Rule 15, Fed. R. Civ. P., does not even attempt to address the issue posed in section 549.191."  Ultimately, Judge Becker concluded that Rule 15 can peacefully coexist with Minn. Stat. § 549.191 because the statute could also co-exist with Minnesota Rule

7

15.01, which "is virtually identical to Federal Rule 15(a)." *Id.*  As had Judge Devitt in *Kuehn*, Judge Becker observed that failure to enforce Section 549.191's requirement in federal court could promote forum shopping. *Id.* at *3.

The potential forum shopping effect in this litigation is obvious here as well. Because 3M is a citizen of the State of Minnesota, every non-Minnesota plaintiff, no matter where he or she may be from in the United States, has the choice of suing 3M in federal court pursuant to federal diversity jurisdiction, or instead suing in Minnesota state court. 3M may not remove a Minnesota state court action to federal court.  28 U.S.C. § 1441(b)(2).  If Section 549.191's requirements apply in Minnesota state court cases and not federal court cases, then that will weigh in favor of plaintiffs filing in federal court.

### B.  Rule 15(a)(2)'s Language Is Compatible with Minn. Stat. § 549.191.

The plain language of Rule 15(a)(2) also is compatible with Minn. Stat. § 549.191. The Rule provides that the district court should freely give leave to amend "when justice so requires." "Justice" can and should be read to incorporate Section 549.191's requirements.  As *Kuehn* explains, Section 549.191 represents the Minnesota state legislature's view that it would be unjust to allow a plaintiff to pursue punitive damages without first "showing the factual basis for the [punitive damages] claim" by submitting "one or more affidavits."

Similarly, it is well established in the Eighth Circuit that a district court should refuse to grant leave to amend under Rule 15(a) where amendment would cause "unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).  Plainly, Defendants will be unfairly prejudiced if they are forced to defend against

8

punitive damages claims in the MDL that they never would have to defend if the same

claims had been brought in Minnesota state court.

### C. The District of Minnesota's Continued Application of § 549.191 in Diversity Cases After *Shady Grove* Also Supports Doing So Here.

As this Court has acknowledged, courts in this District overwhelmingly have

applied Section 549.191 in diversity cases before and after *Shady Grove*.  *See, e.g.*, *Target*

*Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1010 (D. Minn. 2013)[3]

This authority weighs heavily in favor of the continued application of § 549.191 in

diversity cases.  *See Security Savs. Bank.*, 739 F. Supp. at 1352-53 ("The undersigned has

previously concluded that section 549.191 is procedural in nature and does not affect the

ultimate outcome of plaintiffs' claims for punitive damages. . . .  Subsequently, this issue

has come before other judges of the district who have concluded that, under the *Erie*

analysis, federal courts must apply section 549.191 in diversity cases to avoid forum

shopping.  In the interest of consistency within the district and because the undersigned is

persuaded by the reasoning of these opinions, I will henceforth apply Minn. Stat. § 549.191

---

[3] *See also Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868, 872 (D. Minn. 2012); *Burke v. DJO, LLC*, No. 10-cv-2209 (JRT/TNL), 2012 WL 383948, at *3 (D. Minn. Feb. 6, 2012); *Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003); *Hern v. Bankers Life Cas. Co.*, 133 F. Supp. 2d 1130, 1134 (D. Minn. 2001); *Olson v. Snap Prods., Inc.*, 29 F. Supp. 2d 1027, 1034 (D. Minn. 1998); *Ulrich v. City of Crosby*, 848 F. Supp. 861 (D. Minn. 1994); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 870 F. Supp. 1499, 1502 (D. Minn. 1994); *Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F. Supp. 506, 519 (D. Minn. 1993), *aff'd*, 41 F.3d 1242 (8th Cir. 1994); *Laffey v. Indep. Sch. Dist. #625*, 806 F. Supp. 1390, 1406 (D. Minn. 1992), *aff'd*, 994 F.2d 843 (8th Cir. 1993); *Sec. Savs. Bank v. Green Tree Acceptance*, 739 F. Supp. 1342 (D. Minn. 1990); *Engele v. Indep. Sch. Dist. No. 91*, 846 F. Supp. 760, 768 (D. Minn. 1990); *Daines v. City of Mankato*, 754 F. Supp. 681, 704 n.9 (D. Minn. 1990).

9

in federal diversity cases."); *Gordon*, 2012 WL 3848409, at *4 (noting that "the clear and substantial weight of authority analyzing the analogous Minnesota punitive damages law, Minn. Stat. § 549.191 & 549.20 [sic], under *Erie* has applied Minnesota law").

## III.    THE EFFECT OF THE RULES ENABLING ACT.

This Court's final question is whether, if there is a conflict between Rule 15 and Minn. Stat. § 549.191, Rule 15 is valid under the Rules Enabling Act.  Defendants agree that, under either Justice Scalia's or Justice Stevens' analysis, there would be no violation of the Rules Enabling Act.  Rule 15 does "really regulate [ ] procedure," *Shady Grove*, 559 U.S. at 410, and if applied in place of Minn. Stat. § 549.191, it would not "abridge, enlarge or modify any substantive right." *Id.* at 417-18.  Defendants concur that Section 549.191 does create or govern a "substantive right" under the Rules Enabling Act.  It remains Defendants' position, however, that the *substantive* standard for alleging punitive damages (*e.g.*, deliberate disregard for a high probability of injury) is governed by the law of the state where each individual plaintiff's alleged injury occurred.  As discussed in Defendants' Opposition brief, these standards vary and in some states punitive damages are not recoverable at all.  Thus, Rule 15(a)(2) would violate the Rules Enabling Act to the extent it conflicts with those substantive standards under state law.

## CONCLUSION

*Shady Grove* does not change the Court's analysis.  As Plaintiffs conceded (at least until now), Minn. Stat. § 549.191 applies to their claims.  If this Court nonetheless concludes that Section 549.191 does not apply to Plaintiffs' motion for leave to amend, it should still deny the motion as futile for the reasons explained in Defendants' Opposition.

Dated:  June 17, 2017                          Respectfully submitted,

                                               *s/Benjamin W. Hulse*
                                               Jerry W. Blackwell
                                               MN Atty ID No. 0186867
                                               Benjamin W. Hulse
                                               MN Atty ID No. 0390952
                                               **Attorneys for Defendants 3M Company
                                               and Arizant Healthcare Inc.**
                                               BLACKWELL BURKE P.A.
                                               431 South Seventh Street, Suite 2500
                                               Minneapolis, MN  55415
                                               T: (612) 343-3200  F:  (612) 343-3205
                                               blackwell@blackwellburke.com
                                               bhulse@blackwellburke.com

                                               Bridget M. Ahmann
                                               MN Atty ID No. 016611x
                                               **Attorney for Defendants 3M Company
                                               and Arizant Healthcare Inc.**
                                               FAEGRE BAKER DANIELS LLP
                                               2200 Wells Fargo Center
                                               90 South Seventh Street
                                               Minneapolis, MN 55402
                                               T: (612) 766-7000  F: (612) 766-1600
                                               bridget.ahmann@faegrebd.com

11