UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates to All Actions | **PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING APPLICATION OF *SHADY GROVE*** |

This Court requested supplemental briefing on three questions: (1) Does Rule 15 conflict with Minnesota's punitive damages statute?; (2) Which *Shady Grove* opinion is the Court required to apply?; and (3) Is Rule 15 valid under the Rules Enabling Act?

### 1. Rule 15 Conflicts with the Procedural Requirements of Minn. Stat. § 549.191

Federal Rule of Civil Procedure 15 conflicts with Minnesota's procedural requirements for amending a complaint to assert punitive damages. In the past, this District has interpreted Rule 15 and Minn. Stat. § 549.191 such that the rule and the statute coexist. *See*, *e.g.*, *Sec. Sav. Bank v. Green Tree Acceptance, Inc.*, 1990 WL 36142, at *1 (D. Minn. Mar. 22, 2010) (finding no conflict with Fed. R. Civ. P. 15 because Minn. Stat. § 549.191 could also coexist with Minn. R. Civ. P. 15). Those decisions are inconsistent with *Shady Grove*, where five Justices concluded that a state law conflicted with Federal Rule of Civil Procedure 23 because it "attempt[ed] to answer the same question." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-406 (2010). According to a plurality of five Justices, Rule 23 answered the question of whether a plaintiff may maintain a class action in federal court. *Id.* at 406. If a state law answers the

1

question of whether a plaintiff may maintain a class action in a different way than a federal law, the rules conflict. *Id*. at 405-06.

Here, the state and federal rules conflict because both attempt to answer the question of what procedure is required to amend a pleading to assert punitive damages.[1] Just as Rule 23 provides a "one-size-fits-all" formula for deciding the class-action question in *Shady Grove*, Rule 15 allows "*any* plaintiff, in *any* federal civil proceeding, to" amend the complaint if that "Rule's prerequisites are met." *See Shady Grove*, 130 S. Ct. at 1442 (emphasis in original). Conflict necessarily exists if federal courts could rely on Minnesota Statute § 549.191 to deny a motion to amend that would otherwise satisfy Rule 15.

Minnesota Statute § 549.191 imposes additional burdens on a plaintiff's motion to amend to assert a claim for punitive damages. The statute dictates the form by which such a motion must be supported. *See* Minn. Stat. § 549.191 (requiring affidavits showing the factual basis for the claim). The statute also establishes an evidentiary burden of production under which courts must evaluate the motion. *Id*. (requiring prima facie proof).

On the other hand, Rule 15 does not require production of *evidence*. If a plaintiff timely moves to amend in accordance with Rule 15 and D. Minn. L.R. 15.1, and provides an amended complaint setting forth allegations that would support punitive damages under Minnesota Statute § 549.20, the motion would be granted under Rule 15 but denied under

---

[1] Rule 15 establishes the procedure for nearly all requests to amend pleadings. Minnesota Statute § 549.191 focuses more narrowly on the procedure for amending to assert punitive damages. The question can be framed to invite reconciliation. For example, courts have determined that Rule 8 and Minn. Stat. § 549.191 do not conflict. *See*, *e.g*., *Kuehn v. Shelcore*, 686 F. Supp. 233 (Minn. 1988). But that decision turned on whether the rules *must* conflict, *see id.* at 234–35, whereas *Shady Grove* framed the "conflict" analysis in terms of whether the federal rule "answers the question in dispute." *See* 130 S. Ct. at 1437.

§ 549.191 absent prima facie evidence supporting the allegations. Put simply, the grounds for denying a Rule 15 motion do not contemplate the presence of prima facie *evidence*.

*Gamma-10 Plastics v. American President Lines, Ltd.*, 32 F.3d 1244, 1255–56 (8th Cir. 1994) highlights the conflict between Rule 15 and Minnesota Statute § 549.191. There, the plaintiff appealed the denial of its motion to amend the complaint to assert punitive damages under Minnesota law and admiralty law. *Id*. at 1254. The Eighth Circuit upheld the denial of punitive damages under Minnesota law based on the plaintiff's failure to meet the evidentiary requirements of § 549.191. *Id.* at 1255. However, the Eighth Circuit reversed on the claim for punitive damages under federal admiralty law, noting that the proposed allegations satisfied Rule 15 even though they did not satisfy § 549.191. *Id*. at 1256-57.

By imposing a burden of production— a requirement nowhere found in Rule 15— Minnesota Statute § 549.191 heightens a plaintiff's burden to support a motion to amend. Because the Minnesota statute answers the same question as Rule 15, i.e., the standard to amend a complaint to assert punitive damages, because the Minnesota law imposes an additional burden, the rules conflict.

### 2. *Marks* is Not Determinative Because Rule 15 Governs Under Either Approach

There is no consensus about which *Shady Grove* opinion is binding upon lower courts. At common law, a plurality decision had no precedential weight apart from the particular result. *See, e.g.*, Adam S. Hochschild, *The Modern Problem of Supreme Court Decision: Interpretation in Historical Perspective*, 4 WASH. U. J. L. & POL'Y 261, 278

(2000). The Supreme Court's decision in *Marks* modified the common law approach but only under limited circumstances. *See Marks v. United States*, 433 U.S. 188 (1977).

The first step in the *Shady Grove* test established the framework for determining whether a state law conflicts with a federal rule. *See Shady Grove*, 559 U.S. at 421. *Marks* is not applicable to the first step because a majority joined that portion of the opinion. *Id.* at 398-406. The majority specifically held that the text of a federal rule cannot be interpreted narrowly to avoid a conflict with a state law. *Id.* at 405-06.

The second part of the *Shady Grove* test is less settled. Unlike Justice Stevens, Justice Scalia's plurality applied the longstanding *Sibbach* test, which considers only whether a federal rule "really regulates procedure." *Shady Grove*, Id. at 407 (citing *Sibbach w. Wilson & Co.*, 312 U.S.1 (1941)). After determining that Federal Rule 23 regulates procedure, the plurality ended the inquiry, noting that "we have rejected every statutory challenge to a Federal Rule that has come before us." *Id.* at 407. The plurality also emphasized that Justice Stevens's attempt to create exemptions for state laws based on their function or purpose contradicted *Sibbach* and its progeny. *Id.* at 415.

Justice Stevens rejected *Sibbach* in favor of a test focused on the nature of the state law at issue. His concurrence seeks to render federal rules inapplicable in the face of state law that functions as a part of the state's definition of substantive rights and remedies. *Id.* at 419. In so doing, Justice Stevens proposed a newfangled, two-pronged test intended to respect the balance between federal procedure and state law remedies. *Id.* at 418-19.

Under *Marks*, the holding of *Shady Grove* is the "position taken by those Members who concurred in the judgments on the narrowest grounds" 430 U.S. at 193. While some

courts have found that to be Justice Stevens's concurrence, *see Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016), commentators have criticized those opinions for failing to conduct a proper *Marks* analysis. *See, e.g.*, Kevin Clermont, *The Repressible Myth of Shady Grove*, 86 NOTRE DAME L. REV. 987, n.135 (2011) (stating that it would be "seriously off base" to construe Justice Stevens's opinion as "the narrowest grounds"); *see also* Andrew J. Kazakes, *Relatively Unguided: Examining the Precedential Value of the Plurality Decision in Shady Grove Orthopedic Associates v. Allstate Insurance Co., and Its Effects on Class Action Litigation*, 44 Loy. L.A. L. Rev. 1049 (2011) ("In the cases that have invalidated Federal Rules in favor of state laws,] their narrowest grounds analyses have been anemic and sometimes nonexistent.").

*Marks* creates an exception to the common law rule that plurality opinions are precedential only to the matter before the court. *Marks* applies only where a "concurring opinion" is a "narrowing" subset of the plurality such that it is a "logical subset of the other, broader opinions" and represents "a common denominator of the Court's reasoning." *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). *King* noted the danger of superficially relying on a concurrence decided on non-overlapping grounds:

> When, however, one opinion supporting the judgment does not fit entirely within a broader circle drawn by the others, *Marks* in problematic. If applied in situations where the various opinions supporting the judgment are mutually exclusive, *Marks* will turn a single opinion that lacks majority support into national law. When eight of nine Justices do not subscribe to a given approach to a legal question, it surely cannot be proper to endow that approach with controlling force, no matter how persuasive it may be.

*Id.* at 782. Justice Stevens was the only Justice that supported both the judgment in *Shady Grove* and his newfangled test for ironing out conflicting laws. Accordingly, it may well be that no binding precedent exists with respect to the second step of the *Shady Grove* test.

Situations may arise where such uncertainty is outcome determinative, but that is not so here. As set forth below, under either the plurality test (which reflects binding precedent prior to *Shady Grove*) or Justice Stevens' novel test, Rule 15 does not violate the Rules Enabling Act and must therefore be applied to Plaintiffs' motion in this action.

### 3. Rule 15 Does Not Violate the Rules Enabling Act

Rule 15 is valid under either test supporting the judgment in *Shady Grove*.

#### a. Rule 15 is valid under the simple *Shibbach* test applied by the plurality.

Rule 15 is a procedural rule that does not change the elements of Minnesota's punitive damages law. For Justice Scalia's plurality, applying *Shibbach* would end the inquiry. Under this narrow test, if the rule in question "really regulates procedure," the rule must be applied. *See Shady Grove*, 559 U.S. at 412. Because Rule 15 unquestionably regulates the procedure for amending a pleading in federal court, it satisfies *Shibbach* and must be applied to Plaintiffs' motion to amend their complaints to assert punitive damages.

#### b. Rule 15 is also valid under the more complex test devised by Justice Stevens

According to Justice Stevens, a state law is procedural if it does not "function as a part of the State's *definition* of substantive rights and remedies." *Id.* at 416 (emphasis added). In contrast to the simple test set forth in *Sibbach*, Justice Stevens attempted to expand "substantive rights" by suggesting that some state procedural rules must be

followed in federal court if they are "so intertwined with" or "bound up in" a substantive state right that they define the scope of that right or remedy. *Id*. at 423.

Recognizing the potential for misapplication, Justice Stevens stated:

> [T]he bar for finding an Enabling Act problem is a high one. There mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts are to operate and not a judgment about the scope of state-created rights and remedies. . . . The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt.

*Id.* at 432.

Just as important as the rationale of his opinion was Justice Stevens's concurrence with the judgment of the Court. Justice Stevens agreed with the plurality that the New York rule was not substantive. *Id.* at 416. Critical to his opinion was the general applicability of the prohibition. *Id*. at 432. The prohibition was not limited to cases brought under New York law, but instead applied to any class action in a New York state court, "including those based on federal law or the laws of other states." *Id.* Because the prohibition was not specifically tied to a particular New York substantive law, he agreed the rule was procedural and was thus preempted by Federal Rule 23. *Id.* at 436.

Like the procedural statute in *Shady Grove*, Minnesota Statute § 549.191 applies to all claims for punitive damages in Minnesota civil actions, except those few areas of law containing a different punitive damages regime.[2] Section 549.191 is not specifically tied to Minnesota's substantive punitive damages elements. Under a plain reading of the statute, a

---

[2] *See*, *e.g.*, Minn. Stat. § 363.071 (permitting treble damages and up to $8,500 in punitive damages). The few "specific" instances of causes of action containing their own flavor of punitive damages reinforce the "general" applicability of Minnesota Statute § 549.191.

7

plaintiff may not seek punitive damages in an initial complaint regardless of the substantive basis upon which the plaintiff seeks recovery. *See* Minn. Stat. § 549.191. The blanket prohibition on pleading punitive damages and the requirements for amendment applies even if the plaintiff seeks to recover punitive damages under the substantive laws of another jurisdiction. *See id.* (requiring a motion to amend to reference "section 549.20 *or other law* for awarding punitive damages in the action….") (emphasis added).

In cases where state law is not preempted by a conflicting federal rule, the class action prohibitions were part and parcel of the substantive law that created the state cause of action. In *Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 at *10 (M.D. Tenn. Aug. 16, 2010), the plaintiff sought to file a class action for violations of the Tennessee Consumer Protection Act ("TCPA"). But the TCPA, which created the cause of action, specifically prohibited class actions. The court found the statute's bar on class actions was inexorably intertwined with the substantive state law rights under the TCPA, and therefore held Rule 23 invalid for that matter under the Rules of Enabling Act. *See id.*

Though not required under Justice Stevens's test, the intent of a procedural rule under state law merits consideration. The Minnesota Supreme Court has repeatedly held that Minnesota's substantive punitive damages statute, Minn. Stat. § 549.20, was passed "to codify the existing case law on punitive damages" and to "limit the frequency and amounts of punitive damage awards." *Lewis v. Equitable Life Assur. Soc.*, 389 N.W.2d 876, 890 (Minn. 1986), cited in *Jensen v. Walsh*, 623 N.W.2d 247 (Minn. 2001). However, the Minnesota Supreme Court has never held that Minnesota Statute § 549.191— the gatekeeping statute governing the procedure for amending pleadings to assert a claim for

8

punitive damages" in any way defines the scope of substantive rights related to punitive damages. Given the high bar to invalidating a federal rule supported by five members of the Supreme Court, this court should decline to do so now. *See Shady Grove*, 559 U.S. at 406 (plurality), 431 (Stevens, concurring).

### 4. *Shady Grove* Compels a Shift From Longstanding Practice in this District

Courts in this District have consistently held that cases filed here must follow the requirements of Minnesota Statute § 549.191. *See, e.g.*, *Green Tree Acceptance, Inc.*, 739 F. Supp. 1342, 1352-52 (D. Minn. 1990). A practice which has been applied for more than 20 years may have inertia. But Plaintiffs agree with the Court's suggestion that *Shady Grove* likely requires critical re-examination of that longstanding practice.

One of the first cases in this District to evaluate whether Minnesota Statute § 549.191 applied in federal court found that the requirements were procedural and would not impact the plaintiff's substantive claims for punitive damages. The court therefore declined to require compliance with that statute in federal court. *See Jacobs v. Pickands Mather & Co.*, Civ. 5-87-49, 1987 WL 47387 (D. Minn. Aug. 24, 1987). A split in the District arose when subsequent cases required compliance for the sole purpose of preventing forum shopping. *See*, *e.g.*, *Fournier v. Marigold Foods, Inc.*, 678 F. Supp. 1420, 1422 (D. Minn. 1988) (relying on § 549.191 to strike punitive damages allegations). In *Green Tree Acceptance, Inc.*, Judge Alsop resolved the intra-district split by abandoning his position from *Jacobs*, finding the anti-forum shopping arguments to be persuasive. *See* 739. F. Supp. at 1352. While forum-shopping concerns may be appropriate in a traditional *Erie* analysis or a Rules of Decision Act analysis, five Justices in *Shady*

9

*Grove* agreed that forum shopping is no longer a proper consideration. *See Shady Grove*, 559 U.S. at 415-16 (plurality), 435 (Stevens, concurring). When faced with a conflict of law, federal courts must only consider whether the federal rule violates the Rules Enabling Act.

The rejection of forum-shopping as a potential consideration undercuts the rationale upon which the burden of production requirements of Minnesota Statute § 549.191 were imposed on litigants in federal court. In light of *Shady Grove*, it would be improper to impose the evidentiary burdens of § 549.191 on a motion to amend under Rule 15. Accordingly, Plaintiffs respectfully submit the Court should grant Plaintiffsø motion to amend to assert a claim for punitive damages because the motion easily satisfies Rule 15.

Dated: July 17, 2017

| CIRESI CONLIN L.L.P. | MESHBESHER & SPENCE LTD. |
|---|---|
| /s/ Michael V. Ciresi | /s/ Genevieve M. Zimmerman |
| Michael V. Ciresi (MN #0016949) | Genevieve M. Zimmerman (MN #330292) |
| Jan M. Conlin (MN #0192697) | 1616 Park Avenue South |
| 225 S. 6th St., Suite 4600 | Minneapolis, MN 55404 |
| Minneapolis, MN 55402 | Phone: (612) 339-9121 |
| Phone: 612.361.8202 | Fax: (612) 339-9188 |
| Email: MVC@CiresiConlin.com | Email: gzimmerman@meshbesher.com |
| JMC@CiresiConlin.com | |

LEVIN PAPANTONIO, P.A.

/s/ Ben W. Gordon, Jr.
Ben W. Gordon, Jr. (*Pro hac Vice*)
LEVIN, PAPANTONIO, THOMAS,
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600

Pensacola, FL 32502-5996
Phone: (850) 435-7091
Fax: (850) 435-7020
Email: bgordon@levinlaw.com

*Co-Lead Counsel for Plaintiff*