UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR        MDL No. 15-2666 (JNE/FLN)
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

**ORDER**

_____

Genevieve Zimmerman, Michael Sacchet, Jan Conlin, Gabriel Assaad,
Behram Parekh, and Kyle Farrar for Plaintiffs.
Jerry Blackwell, Ben Hulse, Bridget Ahmann, Monica Davies, Corey Gordon for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on May 18, 2017, on Plaintiffs' motion for leave to amend their Complaints to add a claim for punitive damages against Defendants 3M and Arizant Healthcare, Inc. (collectively "Defendants") (ECF No. 307). For the reasons set forth below, Plaintiffs' motion is **DENIED** only as to the Bellwether Trial Pool cases. In light of the Court's analysis in this Order, the parties are additionally ordered to meet and confer and propose a procedure within thirty (30) days from the date of this Order, for the Court to make its determination as to whether Plaintiffs may amend their Complaints to allege punitive damages as to the remaining cases in this MDL.

**I.     Procedural History**

On December 11, 2015, product liability actions surrounding the Bair Hugger Forced Air Warming Device ("Bair Hugger") pending in Districts all over the country, were consolidated into a Multi-District Litigation ("MDL") and transferred to the District of Minnesota. Transfer Order, ECF No. 1. Plaintiffs filed a Master Long Form Complaint and a Master Short Form Complaint alleging that the Bair Hugger "dramatically increase[s] the risk of infection for patients undergoing lengthy surgeries, especially hip and knee replacement surgeries." PTO 8,

ECF No. 46, Exs. A and B. Plaintiffs asserted claims under state law for negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, strict liability for failure to warn and for defective design and manufacture, breach of express and of implied warranty, loss of consortium, unjust enrichment, consumer fraud, unfair and deceptive trade practices, and violations of the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act. *Id.*, Ex. A. This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. *Id.* ¶ 29.

Plaintiffs now seek to amend the Master Long Form and Master Short Form Complaints to add claims for punitive damages to each respective Complaint in the 2,619 active federal cases consolidated in the MDL. Mot. to Amend, ECF No. 307; Pls.' Mem. in Supp. of Mot. to Amend, ECF No. 311. In their original briefing, the parties all assumed that Minnesota's statute regarding pleading punitive damages governs amendment of all of the Complaints.[1] Minn. Stat. §§ 549.191–.20; Defs.' Opp'n Mem. 3, 5, ECF No. 436; ECF No. 311. In light of the United States Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), a case not addressed by any of the Minnesota cases applying the Minnesota punitive

---

[1] The Judges and Magistrate Judges of this Court have consistently applied the Minnesota punitive damage statute in diversity cases where state law supplies the rule of decision. *See e.g.*, *In re Baycol Prod. Litig.*, 218 F.R.D. 197 (D. Minn. 2003); *In re Mirapex Prod. Liab. Litig.*, No. CV 06-1206 JMR/FLN, 2007 WL 9636345, at *1 (D. Minn. Nov. 27, 2007); *In re Levaquin Prods. Liab. Litig.* (*Levaquin II*), No. 08-cv-5743 (JRT), 2010 WL 4867588, at *2 (D. Minn. Nov. 23, 2010); *Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868 (D. Minn. 2012); *but see Jacobs v. Pickands Mather & Co.*, No. 5-87-CIV 49, 1987 WL 47387, at *1 (D. Minn. Aug. 24, 1987) ("It is the court's opinion that the provisions of Minn. Stat. § 549.191 are procedural in nature, and do not affect the ultimate outcome of the plaintiffs' claim for punitive damages.").

damages pleading statute in federal court, the Court ordered the parties to file supplemental memoranda addressing three questions: (1) does Rule 15 of the Federal Rules of Civil Procedure conflict with Minnesota's punitive damages statute; (2) which *Shady Grove* opinion is this Court required to apply to determine validity; and (3) is Rule 15 valid under the Rules Enabling Act? Order, ECF No. 589.

## II.     Applicable Legal Framework

### A.     The Erie Doctrine and *Shady Grove*

The United States Supreme Court has held that the principles of federalism prohibit Congress from "declar[ing] substantive rules of common law applicable in a state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any [diversity] case is the law of the State." *Id.* at 78. As noted in Justice Reed's concurring opinion in *Erie*, however, "[t]he line between procedural and substantive law is hazy, but no one doubts federal power over procedure." *Id.* at 92 (Reed, J., concurring in part).

Pursuant to the Rules Enabling Act, "The Supreme Court of the United States [has] the power to prescribe, by general rules, for the district courts of the United States and for the courts of the District of Columbia, the . . . procedure in civil actions at law. Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 7–8, (1941) (internal citations omitted); *see also* 28 U.S.C. § 2072. In *Guaranty Trust Co. v. York*, the Court clarified that *Erie* ensures "that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326

3

U.S. 99, 109 (1945). In *Hanna v. Plumer*, the Court again clarified, that Rule 4(d)(1) of the Federal Rules of Civil Procedure, relating to service of process, "is valid and controls," even if it conflicts with a state law, that would result in an entirely different outcome if followed. *Hanna v. Plumer*, 380 U.S. 460, 474 (1965). The evolution of *Erie* and its progeny have come to be known as the *Erie* Doctrine, and require a federal court sitting in diversity jurisdiction to apply state substantive law and federal procedural law.

In *Shady Grove*, the United States Supreme Court held, in a fragmented 4:1:4, decision that Federal Rule of Civil Procedure 23 permitted the maintenance of a class action in federal court, involving state law claims, where a conflicting New York state statute would have prohibited it. *See* 559 U.S. at 398 (Scalia, J., opinion). The first question presented was whether Rule 23 and the New York statute addressed the same subject matter. *Id.* A five-justice majority including Justice Stevens and Justice Scalia, held that they did. *Id.* at 402 (Scalia, J., opinion). Rejecting a construction of Rule 23 that would have avoided a conflict between the Federal Rule and that state statute, Justice Scalia wrote, "[w]e cannot contort its text, even to avert a collision with state law that might render it invalid." *Id.* at 406 (Scalia, J., opinion) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980)).

The second question was whether Rule 23 is valid under the Rules Enabling Act. *Id.* at 404. There Justice Scalia and Justice Stevens had slightly different answers, but agreed that Rule 23 is valid under the Rules Enabling Act. *See id.* at 406–07 (Scalia, J., plurality opinion), 423 (Stevens, J., concurring). In deciding whether there is a conflict between the Federal Rule and a state statute, Justice Scalia focused on the procedural nature of the Federal Rule. *See id.* If a federal rule "really regulates procedure," Scalia wrote, "it is authorized by [the Rules Enabling Act] and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect

upon state-created rights." *Id.* at 410. Justice Stevens, on the other hand, focused on the procedural nature of the state law that conflicts with the Federal Rule, reasoning that, "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Id.* at 417 (Stevens, J., concurring). A state procedural rule is not preempted, according to Justice Stevens' concurrence, so long as it is "so bound up with," or "sufficiently intertwined with," a substantive state-law right or remedy "that it defines the scope of that substantive right or remedy." *Id.* Ultimately, Stevens agreed with Justice Scalia's four-member plurality that Rule 23 must be followed because, in conformity with the Rules Enabling Act, it does not "abridge, enlarge, or modify any substantive [state] right [or remedy]." *Id.* at 417–18, 423 (Stevens, J., concurring) (quoting 28 U.S.C. § 2072(b)).

Post-*Shady Grove*, a district court sitting in diversity jurisdiction, must first decide if there is a Federal Rule of Civil Procedure that "answers the question in dispute," *Id.* at 393 (Scalia, J., plurality opinion), or is "sufficiently broad to control the issue before the court." *Id.* at 421 (Stevens, J., concurring). If so, the Federal Rule of Civil Procedure must apply, unless, in violation of the Rules Enabling Act, the Federal Rule does not "really regulate[ ] procedure," *id.* at 410 (Scalia, J., plurality opinion), or would "abridge, enlarge or modify any substantive right." *Id.* at 417–18 (Stevens, J., concurring) (quoting 28 U.S.C. § 2072(b)).

### 1. Federal Rule 15 conflicts with Minnesota's punitive damages statute

Minnesota's statute for pleading punitive damages acts as a gatekeeping statute, prohibiting a plaintiff from seeking punitive damages in his or her initial complaint. *See* Minn. Stat. § 549.191. Instead, after an opportunity for discovery, a plaintiff may move to amend the pleadings to claim punitive damages, and must "show[ ] the factual basis for the [punitive

5

damages] claim" by submitting "one or more affidavits." *Id.* Both parties agreed at the hearing that the Minnesota punitive damages statute regulates procedure.

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings in federal actions. *See* Fed. R. Civ. P. 15. The Rule provides that a party may amend its pleading once as a matter of course within 21 days of service, otherwise only with either the opposing party's written consent or with leave of the court. *See id.* The Rule expressly provides that, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Although courts liberally construe this rule, there is no absolute right to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ferguson v. Cape Girardeau Cnty.*, 88 F.3d 647, 650–51 (8th Cir. 1996). However, only limited circumstances justify a district court's refusal to grant leave to amend pleadings, such as "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987).

As more than 21 days have passed since Defendants served their Answer, if Plaintiffs' motion to amend is governed by Federal Rule 15, Plaintiffs require Defendants' written consent or leave of Court in order to amend their Master Long Form and Short Form Complaints to allege a claim for punitive damages. *See* Fed. R. Civ. P. 15(a)(2). If, on the other hand, the motion to amend is governed by the Minnesota statute for amending to add a claim for punitive damages, Plaintiffs are required to first make a *prima facie* showing of evidence of entitlement to such damages before being permitted to amend their Complaints. *See* Minn. Stat. § 549.191.

Defendants contend that under the *Shady Grove* framework, "Federal Rule of Civil Procedure 15(a)(2) does not 'directly collide' with [the Minnesota punitive damages statute]. Thus, [the Minnesota statute] should be applied to all claims in this MDL – just as District of

6

Minnesota case law has overwhelmingly applied [the statute] to diversity cases in the past." Defs. Opp'n Mem. II 2, ECF No. 618 (citing *Shady Grove*, 559 U.S. at 422 (Stevens, J., concurring)). Specifically, Defendants maintain that Rule 15 "provides that the district court should freely give leave to amend 'when justice so requires[ ]' [and] 'Justice' can and should be read to incorporate" the Minnesota statute's requirements. *Id.* In their supplemental briefing, Plaintiffs disagree and argue that just as in *Shady Grove* where "Rule 23 answered the question of whether a plaintiff may maintain a class action in federal court," Pls.' Mem. in Supp. of Mot. to Am. II 1, ECF No. 619, "the Minnesota [punitive damages] statute answers the same question as Rule 15, i.e., the standard to amend a complaint to assert punitive damages, [and] because the Minnesota law imposes an additional burden, the rules conflict." *Id.* at 3.

The Court concludes that Rule 15 and the Minnesota punitive damages statute both address the same subject matter, namely whether Plaintiffs may amend their Master Long Form and Short Form Complaints. *See* 559 U.S. at 398 (Scalia, J., opinion). Federal Rule 15 "answers the question in dispute," *Id.* at 393 (Scalia, J., plurality opinion), and is "sufficiently broad to control the issue before the court." *Id.* at 421 (Stevens, J., concurring). The statutes conflict because the Minnesota procedural rule would not allow for the amendment absent affidavits establishing *prima facie* evidence of deliberate disregard for the rights and safety of others, where the federal rule has no such procedural requirement. This Court is required to apply Rule 15 provided that it is valid pursuant to the Rules Enabling Act.

### 2. Federal Rule 15 is valid pursuant to the Rules Enabling Act

The Court must apply Federal Rule 15 unless, in violation of the Rules Enabling Act, it does not "really regulate[ ] procedure," *id.* at 410 (Scalia, J., plurality opinion), or would "abridge, enlarge or modify any substantive right." *Id.* at 417–18 (Stevens, J., concurring)

7

(quoting 28 U.S.C. § 2072(b)). Plaintiffs argue that "no binding precedent exists with respect to the second step of the *Shady Grove* test," but nevertheless claim that "Rule 15 does not violate the Rules Enabling Act and must therefore be applied to Plaintiffs' motion in this action. . . . Rule 15 is valid under either test supporting the judgment in *Shady Grove*." ECF No. 619 at 6. Defendants also contend that, "under either Justice Scalia's or Justice Stevens' analysis, there would be no violation of the Rules Enabling Act." ECF No. 618 at 11.

The Court need not take up the question today whether the second step is governed by Scalia's or Stevens' analysis, as under either framework, the parties do not dispute, and the Court concludes, that Rule 15 is valid pursuant to the Rules Enabling Act. In other words, Rule 15, similar to Rule 23 as discussed in *Shady Grove*, both "really regulates procedure" and does not "abridge, enlarge or modify any substantive right." 559 U.S. at 410, 417–18.

As stated by Justice Stevens, "[t]he mere fact that a state law is designed as a procedural rule suggests it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies." *Id.* at 432 (Stevens, J., concurring). There are two Minnesota punitive damages statutes. One governs the pleading requirements, *see* Minn. Stat. § 549.191, and the other regulates the substantive entitlement to punitive damages. *See* Minn. Stat. § 549.20. Here, the Court concludes only that the Minnesota regulation for pleading punitive damages conflicts with the procedural pleading requirements of Federal Rule 15. Just as with the New York statute under review in *Shady Grove*, the procedural pleading statute for punitive damages is, under Stevens' framework, not a "judgment about the scope of state-created rights and remedies," 559 U.S. at 432 (Stevens, J., concurring), but a judgment about how Minnesota courts should operate. *See* Minn. Stat. § 549.191.

The substantive entitlement to punitive damages, unlike the pleading statute, is a

8

Minnesota judgement about the scope of the state created right and remedy. *See* Minn. Stat. § 549.20. Plaintiffs will still have to prove at trial their entitlement to punitive damages, despite the application of Rule 15 in deciding their motion to amend. Supplanting the application of the Minnesota procedural statute by the Federal Rule of Civil Procedure, does not "abridge, enlarge or modify any substantive right," and Rule 15 satisfies Stevens' validity framework. *See id*. at 417–18.

Given the Court's prior conclusion that Rule 15 and the Minnesota punitive damages statute both address the same subject matter, and because Rule 15 is valid pursuant to the Rules Enabling Act, the Court must apply Rule 15 in determining whether Plaintiffs may amend their Master Long Form and Short Form Complaints to allege a claim for punitive damages.

### III.   Application of Rule 15 to Plaintiffs' Motion to Amend

As Defendants do not consent to the amendments, *see generally* ECF Nos. 436, 618, Plaintiffs require leave of Court to amend their Complaints. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Both the United States Supreme Court and the Eighth Circuit have interpreted this phase to mean that courts are not required to grant amendments that are futile. *Foman v. Davis*, 371 U.S. at 182 ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"); *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 899 (8th Cir. 2002) ("futility constitutes a valid reason for denial of a motion to amend." (citing *Knapp v. Hanson*, 183 F.3d 786, 790 (8th Cir.1999)); *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) ("Futility is a valid basis for denying

9

leave to amend."). For the reasons that follow, this Court concludes that the proposed amendments are futile, and for that reason, the motion is denied.

### A. Choice of Law Analysis

To determine whether Plaintiffs have alleged facts sufficient to state a claim for punitive damages, the Court must first determine what substantive law applies. While the pleading of punitive damages is procedural, the entitlement to punitive damages is substantive. *See Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21 (1991) (referring to Alabama's "substantive standards" developed for evaluating punitive awards); *see also Healey,* 853 F. Supp. 2d at 874. There are cases in this consolidated MDL from every state in the nation, each with its own respective state law governing punitive damages. This Court must apply the substantive punitive damage standard of "Plaintiffs' respective states as each state has an interest in enforcing its laws in a case where the injury happened in that state to one of its residents." *In re: Mirapex Prod. Liab. Litig.*, 2007 WL 9636345, at *2.

As the parties have not, and indeed likely could not, in the context of the instant motion, reasonably provide the Court with the substantive punitive damages standard for all of the cases in this MDL, the Court will limit its instant ruling to the Bellwether Trial Pool cases.[2] On May 30, 2017, the Honorable District Judge Joan N. Ericksen, ordered which eight cases would make up the Final Bellwether Trial Pool. PTO No. 19, ECF No. 504. Pursuant to Pretrial Order ("PTO") No. 17, each party exercised one strike from that pool. PTO No. 17, ECF No. 175; Strikes of Bellwether Trial, ECF Nos. 528, 529. The cases remaining in the Final Bellwether

---

[2] This is not inconsistent with Plaintiffs request to amend only as to those cases that make up the Final Bellwether Trial Pool. Pls.' Proposed Findings of Fact and Conclusions of Law 2 n.3, *In Re: 3M Bair Hugger Litigation*, County of Ramsey Court File No. 62-CV-15-6432.

Trial Pool involve Minnesota, Wisconsin, Florida, Idaho, and South Carolina law.[3]

In an action based upon diversity jurisdiction, a federal district court must apply the substantive law of the state in which it sits, including its choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Phillips v. Marist Soc. of Wash. Province*, 80 F.3d 274, 276 (8th Cir. 1996). This Court must apply Minnesota's choice of law rules. *See Klaxon*, 313 U.S. at 496.

Minnesota's choice of law rules require the Court to first identify if there is an actual conflict between the law in each state. *See Milkovich v. Saari*, 203 N.W.2d 408, 412 (Minn. 1973). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn. 2000). Only if there is a conflict between the law in each state, will the Court then apply a five factor test to determine which law should govern. *Milkovich*, 203 N.W.2d at 408. These factors are: (1) predictability of results; (2) maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum state's interests; and (5) application of the better rule of law. *Id.* at 412. The factors are not to be mechanically applied, but are meant "to prompt the courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law." *Jepson v. Gen. Cas. Co. of Wisc.*, 513 N.W.2d 467, 470 (Minn. 1994).

In Minnesota, "punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." Minn. Stat. § 549.20. "A defendant has acted with deliberate disregard for the

---

[3] On July 11, 2017, the parties stipulated to dismissal of one of these cases in which Plaintiff resides in Wisconsin. *See Knuteson v. 3M Company*, Civil No. 16-1088 (JNE/FLN), Stipulation of Dismissal, ECF No. 6.

11

rights and safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights and safety of others and: (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others." *Id.*

Under Wisconsin law, Plaintiffs must show by clear and convincing evidence that Defendants acted with "a purpose to disregard the plaintiff's rights or be aware that his or her conduct is substantially certain to result in the plaintiff's rights being disregarded." *Strenke v. Hogner*, 694 N.W.2d 296, 304 (Wis. 2005) (quoting Wis. Stat. § 895.85(3)).

Under Florida law, Plaintiffs must show by clear and convincing evidence that Defendants acted with "intentional misconduct" or "gross negligence." Fl. Stat. § 768.72(2). Gross negligence, as defined under Florida law, means that the "conduct was so reckless or wanting in care that it constituted conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Fl. Stat. § 768.72(2)(b).

Under Idaho law, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6-1604. This is marked by "an extreme deviation from reasonable standards of conduct, [such] that the act was performed by the defendant with an understanding of or disregard for its likely consequences." *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34, 42 (2004).

Under South Carolina law, "[p]unitive damages may be awarded only if the plaintiff proves by clear and convincing evidence that his harm was the result of the defendant's wilful, wanton, or reckless conduct." S.C. Code Ann. § 15-32-520. Wilful, wanton, or reckless conduct,

is defined as "the conscious failure to exercise due care." *Berberich v. Jack*, 709 S.E.2d 607, 612 (2011).

The Court has previously held that "[t]he law of [Minnesota, Wisconsin, and Florida] requires the court to look at the evidence presented by the plaintiff and to determine whether, if believed by the jury, the evidence establishes that the defendant acted with disregard for the high probability of injury to the rights or safety of others." *In re: Mirapex Prod. Liab. Litig.*, 2007 WL 9636345, at *6. The Court concludes that there is no conflict between the laws of these states, and the Court will apply the Minnesota standard in determining whether these Plaintiffs may plead a claim for punitive damages. *See* Minn. Stat. § 549.20. Additionally, the Court concludes that because both Idaho and South Carolina law require a plaintiff to prove by clear and convincing evidence that the defendant acted with disregard for the consequences of injury, *Vendelin*, 95 P.3d at 42 (2004), or conscious failure to exercise due care to prevent a plaintiff's harm, *Berberich*, 709 S.E.2d at 612, there is no conflict between the laws of South Carolina and Idaho and the states of Minnesota, Wisconsin, and Florida. Because the Court concludes that there is no conflict between the law of the forum, Minnesota, and each of the other states in which the Plaintiffs in the Bellwether Trial Pool reside, the Court need not apply the five factor test pursuant to Minnesota's choice of law rules.[4] *See Milkovich*, 203 N.W.2d at 408. To

---

[4]

> While this Order is limited to the Bellwether Trial Pool cases, the Court has briefly reviewed the punitive damage standard for all 50 states. The Court is disinclined to *sua sponte* make conclusions regarding the application of Rule 15 to the proposed amendments under the law of all 50 states without further input from the parties. As set forth in the text, counsel will be ordered to meet and confer and report to the Court whether, in light of the analysis set forth herein, the outcome of Plaintiffs' motion would be different in any of the other jurisdictions represented in the MDL. The authorities the Court reviewed are: Ala. Code § 6-11-20; Alaska Stat. § 09.17.020; *Ranburger v. Southern Pac. Transp. Co.*, 760 P.2d 551 (Ariz. 1988); Ark. Code § 16-55-206; Cal. Civ. Code § 3294; Colo. Rev. Stat. § 13-21-102; *Champagne v. Raybestos-Manhattan, Inc.*,

determine whether Plaintiffs in the Bellwether cases should be permitted to amend their Complaints to add a claim for punitive damages, the Court will evaluate the allegations in the proposed amendments against the standard set forth in the Minnesota punitive damages statute. Minn. Stat. § 549.20.

### B. Facial Plausibility

A proposed amendment is futile if it could not survive a Rule 12 motion to dismiss. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). For the purpose of a motion to dismiss, facts alleged are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). To avoid dismissal, a pleading must allege facts sufficient to state a claim as a matter of law. *See Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain

---

562 A.2d 1100 (Conn. 1989); *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987); *District of Columbia v. Bamidele*, 103 A.3d 516, 522 (D.C. 2014); Ga. Code § 51-12-5.1; *Masaki v. Gen. Motors Corp.*, 780 P.2d 566, 575 (1989); 15 Ill. Law and Prac. Damages § 101; Ind. Code § 34-51-3-2; Iowa Code § 668A.1; Kan. Stat. § 60-3701; Ky. Rev. Stat. §§ 411.184–.186; *Shackleford v. State Through Dep't of Health & Human Res.*, 534 So. 2d 38, 42 (La. Ct. App. 1988); *Bratton v. McDonough*, 91 A.3d 1050, 1058–59 (Me. 2014); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828 (Md. 2004); *Goodrow v. Lane Bryant, Inc.*, 732 N.E.2d 289 (Mass. 2000); *Ray v. City of Detroit, Dep't of St. Railways*, 242 N.W.2d 494, 495 (Mich. 1976); *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006); *Walsh v. Al W. Chrysler, Inc.*, 211 S.W.3d 673, 676 (Mo. App. S.D. 2007); Mont. Code § 27-1-221); Neb. Const. Art. 7, § 5; Nev. Rev. Stat. § 42.005; *Munson v. Raudonis*, 387 A.2d 1174 (N.H. 1978); N.J. Stat. § 2A:15-5.12; *Faber v. King*, 2015-NMSC-015, 348 P.3d 173, 179; *Hartford Acc. & Indem. Co. v. Village of Hempstead*, 397 N.E. 2d 737 (N.Y. 1979); N.C. Gen. Stat. § 1D-15; N.D. Cent. Code § 32-03.2-11; *Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987); Okla. Stat. tit. 23, § 9.1; *Andor v. United Air Lines, Inc.*, 739 P.2d 18 (Or. 1987); *Valentino v. Philadelphia Triathlon, LLC*, 150 A.3d 483, 488 (Pa. 2016); 28 R.I. Gen. Laws § 28-5-29.1; S.D. Codified Laws § 21-3-2; *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); Tex. Civ. Prac. & Rem. Code § 41.003; U.C.A. § 78B-8-201(1)(a); *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 124 A.3d 454 (Vt. 2015) *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163 (Va. 2011); Punitive damages, 16 Wash. Prac., Tort Law & Practice § 6:11 (4th ed.); W. Va. Code § 55-7-29; *Farmers Ins. Exch. v. Shirley*, 958 P.2d 1040 (Wyo. 1998).

enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this case, Plaintiffs proposed amendment must assert facts that allow the Court to draw a reasonable inference that Defendants had the requisite: "(1) knowledge of or an intentional disregard of facts that make injury to the plaintiff's rights probable; and (2) [took] action despite such knowledge." Minn. Stat. § 549.20.

### 1. The Court will not assume as true Defendants' *Knowledge*

Plaintiffs first seek to amend their Complaints to allege that Defendants had *knowledge* that the Bair Hugger devices were contaminated with bacteria, rejected numerous proposals to solve this patient safety problem, willfully suppressed potentially harmful testing, and deliberately failed to warn of a known risk. Zimmerman Decl., Exs. 1–2, ECF No. 315. Plaintiffs contend that Defendants' knowledge of the bacteria, patient safety problem, suppression of harmful testing, and failure to solve or warn of the problem, alleges a deliberate disregard for the rights or safety of others. *See id.*; Minn. Stat. § 549.20.

A court considering whether a claim is futile, "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. While the Court assumes all of the facts pled to be true when making its futility determination, *In re Navarre Corp. Sec. Litig.*, 299 F.3d at 738, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to assert a claim]." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. The Minnesota statute requires: "(1) knowledge of or an intentional disregard of facts that make injury to the plaintiff's rights

15

probable; and (2) action despite such knowledge." Minn. Stat. § 549.20. The Court, in accepting as true for the purposes of analyzing whether Plaintiffs have stated a claim for punitive damages as a matter of law, assumes to be true that the Bair Hugger devices were contaminated with bacteria. However, the Court is not bound to accept the conclusory statement that Defendants had *knowledge* of bacterial contamination or that there was a patient safety risk, nor is it bound to accept that Defendants *willfully suppressed* potentially harmful testing. Knowledge is an element of the cause of action, and Plaintiffs' conclusory allegation that Defendants' had the requisite *knowledge*, is a threadbare recital of the knowledge element of the statute.

Additionally, Plaintiffs' assertion that bacterial contamination of a device that does not actually make contact with the surgical site infection of a Plaintiff-patient, is not enough to allege that Defendants were deliberately indifferent to a safety risk or of probable surgical site infection. *See* ECF No. 46, Ex. A ¶ 3 ("The Bair Hugger consists of a portable heater or blower connected by a flexible hose to a disposable blanket that is placed over (or in some cases under) surgical patients. The Bair Hugger intakes air from the surrounding area (often from the nonsterile floor of the operating room) and passes it through the intake filter and internal air pathways of the machine and into an outlet hose. The warm air travels through the distal end hose, which does not have an air filter, and into the blanket, which has different compartments through which the warm air moves. The warm air exits the blanket through multiple holes over a patient's exposed skin, providing warmth to the patient during surgery.") Even if the Court were bound to assume that Defendants had *knowledge* of the presence of *bacteria* in the Bair Hugger device, Plaintiffs have not alleged that Defendants, in having knowledge and disregarding facts related to the presence of bacteria, is equivalent to the knowledge or intentional disregard of facts that indicate use of the Bair Hugger creates an increased risk of surgical site infections. Indeed,

16

incorporating the studies relied on by reference in the pleadings, the Court observes that each study disclaims any direct correlation between the presence of bacteria and an increase in the risk of surgical site infections. There is no reasonable inference that could be drawn by a factfinder that presence of bacteria in the device would result in an increased infection risk of the surgical site itself. Finally, Plaintiffs have provided no factual support for the proposition that Defendants willfully suppressed potentially harmful testing. Even if the Court were bound to assume this to be true, bad acts do not necessarily amount to knowledge of or intentional disregard of facts that make injury to Plaintiffs probable. Suppression of potentially harmful testing or failing to warn of bacterial contamination, does not permit the reasonable inference that Defendants were deliberately indifferent to an increased risk of surgical site infections.

### 2. Negligent acts are not sufficient to assert a claim for punitive damages

Plaintiffs also seek to amend their Complaints to allege that Defendants failed to validate the safety of the Bair Hugger, secretly reduced the filtration efficiency of the device, are aware of scientific literature finding an infection risk as well as aware of the limitations of the scientific studies upon which they rely, and refuse to conduct a contamination study. Plaintiffs' contentions merely allege negligence on the part of Defendants. "A mere showing of negligence is not sufficient [to allege deliberate disregard]." *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 268 (Minn. 1992); *see also Ulrich v. City of Crosby*, 848 F. Supp. 861, 867 (D. Minn. 1994).

The arguments that Defendants secretly reduced the Bair Hugger filtration efficiency and failed to conduct a contamination study, does not allege factual content that allows the Court to draw a reasonable inference that Defendants are liable for knowing of or intentionally disregarding facts that make injury highly probable. *See Iqbal*, 556 U.S. at 678; Minn Stat. §

17

549.20 (need to allege a "high degree of probability" of injury). It alleges only that Defendants may have been negligent. Plaintiffs' allege a reduction of filtration and failure of transparency on the part of Defendants, but do not permit a factfinder to infer that this filtration reduction resulted in an increased risk of surgical site infections or that Defendants knew that this risk could result from reducing the filtration.

### 3. Plaintiffs' Proposed Amendments are Futile

Considering Plaintiffs' factual allegations individually and taken together as a whole, the Court concludes that Plaintiffs have failed to plausibly allege on the face of their proposed pleading that Defendants acted with deliberate disregard for the rights and safety of others, and the motion, as to those cases applying the Minnesota legal standard, must be denied. Plaintiffs allegations, if found credible by a jury, do not allow a factfinder to determine knowledge of or intentional disregard by Defendants of an increased risk of surgical site infections from use of the Bair Hugger. *See Iqbal*, 556 U.S. at 678. This is not enough to conclude that Defendants were deliberately indifferent to the rights and safety of others. The Court concludes that Plaintiffs' proposed amendments are futile. *See Springdale Educ. Ass'n*, 133 F.3d at 651.

### C. Conclusion

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Court should give Plaintiffs' leave to amend their Master Long Form and Short Form Complaints as it relates to those cases in the Final Bellwether Trial Pool "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court concludes, assuming all factual allegations raised by Plaintiffs to be true, that Plaintiffs' allegations for punitive damages are futile pursuant to Minnesota law. Plaintiffs' motion to amend the Master Long Form and Short Form Complaints to allege punitive damages, must be denied.

## IV. Order

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' motion for leave to amend their Complaints to add a claim for punitive damages against Defendants (ECF No. 307) is **DENIED** as to the Bellwether Trial Pool cases.

In light of the Court's analysis in this Order, the parties are **ORDERED** to meet and confer and determine which states' punitive damage standards, if any, are likely in conflict with Minnesota's substantive punitive damages standard, *see supra* n.4; Minn Stat. § 549.20, and propose a procedure within thirty (30) days of this Order, by which the Court can determine whether Minnesota's choice of law rules would require a different outcome with regard to Plaintiffs' motion to amend the Complaint to allege punitive damages in any of the remaining cases consolidated in this MDL.

DATED: July 27, 2017　　　　　　　　　　　　　　　　*s/Franklin L. Noel*
　　　　　　　　　　　　　　　　　　　　　　　　　　FRANKLIN L. NOEL
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge