UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

MDL No 15-2666 (JNE/FLN)

AFFIDAVIT OF SCOTT D. AUGUSTINE MD

This Document Relates to:
All Actions

1. My name is Scott D. Augustine MD. I am Chief Executive Officer of the various entities subject to the discovery served by 3M. In this Affidavit, I shall refer both to myself and to the various Augustine entities as "Augustine" or "we."

2. I hereby swear that the facts contained herein are within my personal knowledge (except when stated as being on information and belief or in reliance of information from another person) and are true and correct.

3. I urge the Court to deny the request of Defendant 3M Company to reopen general discovery and to more than double the time allowed for my deposition. I believe that the reasons offered by 3M are a sham: 3M is using the discovery process for competitive purposes, not simply to defend itself against the allegations in this litigation.

4. 3M's actual purposes are all illegitimate:

a. To harass the users of HotDog patient warming, particularly those that shared the infection data with me that I used in an article published recently in *Orthopedic Reviews*. 3M's assault on Ridgeview Medical Center is a perfect example. Ridgeview was forced to hire outside counsel to defend—unsuccessfully—the confidentiality of its business records. 3M's message to Ridgeview and to other hospitals is clear: Cooperate with Augustine, and we will come after you; you will incur attorneys' fees, and your private business records will be published in a Blackwell Burke blog.

b. To have a "chilling effect" on future research and publications about the risks of forced-air warming. This is an important topic. The safety of thousands of patients is at stake. But what doctor will risk the wrath of 3M if conducting and publishing research means legal fees, document discovery, and depositions.

c. To harass and intimidate me. In Blackwell Burke blogs and 3M's other marketing vehicles, I have been painted as a hateful, scheming and deceitful person. 3M's goal is to destroy my credibility—and thereby discourage hospitals from switching from Bair Hugger to air-free HotDog warming. Moreover, 3M wants me to know that if I continue to publicize the risks of forced-air warming, I will be deposed over and over again. 3M wants to silence me, and they are asking the Court to help them.

5. I am confident that if the Court reopens discovery, this is only the beginning. 3M will be back, asking for more discovery every time my company takes any sort of competitive action against Bair Hugger.

2

6. If other HotDog customers report changes in their infection rates after discontinuing forced-air warming in orthopedic surgery, I intend to request that they provide the data so that it can be shared with others. If the Court grants 3M's request, however, I will be forced to warn them: "If you make this public, 3M will attack you." Maybe some will have the courage to protect the public. More likely, most will choose not to become involved—and 3M will have succeeded in keeping important patient safety information away from clinicians.

7. A draft copy of the *Orthopedic Reviews* article and the underlying data was produced to 3M many weeks before my deposition and well before the close of discovery. I believe that there was sufficient information in the documents produced to allow 3M's attorneys to identify the hospitals involved and take to discovery of them before the general discovery period closed.

8. 3M's counsel asked me questions about the study during my deposition. The only question that I declined to answer was the identity of the publication in which the article would appear. I also explained why: I feared that 3M would threaten the publication, forcing it to revoke acceptance of the article. No other questions were asked, although I would have been willing to answer them. As the Court was previously informed, 3M's counsel, Corey Gordon, spent much of the day having me confirm Mr. Gordon's reading skills. On *eighty-nine* (89) separate occasions, Mr. Gordon read extensively me from documents and simply asked: "Have I read that correctly?"

9. To the best of my knowledge, 3M has not proposed any dates for my deposition or the depositions of my colleagues. 3M's contention that it delayed the deposition because of the recent article is false.

_____
Scott D. Augustine MD

July 27, 2017