UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates to All Actions | **PLAINTIFFS' RESPONSE OPPOSING DEFENDANTS' MOTION TO TAKE DISCOVERY CONCERNING NEW AUGUSTINE ARTICLE RELIED UPON BY PLAINTIFFS'AND THEIR EXPERTS** |

## INTRODUCTION

This is the hardly the first motion brought by Defendants relating to Dr. Augustine. In fact, this is the not first motion to seek additional deposition time relating to Dr. Augustine. On May 4, 2017, more than a month after the close of fact discovery, Defendants filed a motion seeking additional time for depositions of Scott Augustine, Brent Augustine, and J. Randall Benham. (Doc. 411). This Court granted the motion, allowing Defendants an additional four hours beyond the seven hours already taken. Despite prevailing in that motion, Defendants have delayed in scheduling the additional depositions of either Dr. Scott Augustine or Mr. Brent Augustine.

Instead, Defendants have again returned to this Court, and now seek to reopen fact discovery so that Defendants may pursue a multitude of new depositions and written discovery directed at numerous non-parties. Defendants base this request on the fact that Dr. Augustine, as part of his continuing efforts to publicize a potential safety issue with the Bair Hugger, published a new article on the subject.

1

Good cause for reopening discovery is not established simply because a new piece of evidence is revealed which a party believes is "helpful to its case and contains new information." *Land O' Lakes, Inc. v. Employers Mut. Liability Ins. Co. of Wisconsin*, 846 F.Supp.2d 1007, 1017 (D.Minn. 2012). As Judge Schlitz wrote, "[i]n every case…evidence that one side or the other finds helpful might come to light after the close of discovery. But for courts to adjudicate cases with some semblance of efficiency, the record cannot be an ever-moving target." *Id.* Here, Defendants seek to reopen fact discovery months after applicable deadlines, and inject onerous depositions and written discovery during the midst of the parties' efforts to complete expert discovery and associated briefing. Three of Plaintiffs' experts read the new Augustine article prior to their deposition, but none placed any special emphasis on the article and in fact made only passing reference to it. The publication of this new article does not establish good cause to reopen discovery, and the excessive and disproportionate discovery sought by Defendants would introduce severe prejudice and avoidable delay at this stage of the proceedings. Plaintiffs respectfully submit the Defendants' Motion must be denied.

## ARGUMENT

### I.  Defendants Lack Good Cause to Reopen Unilateral Fact Discovery.

To modify a scheduling order to reopen discovery, the party must show good cause. *See* Fed.R.Civ.P. 16(b). Likewise, a "party seeking a court order to extend the [deposition] examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." *See* Fed.R.Civ.P. 30(d) advisory committee note. In attempting to show extraordinary circumstances exist, Defendants claim that "Plaintiffs

and their experts' bear hug of Augustine's new publication necessitates further discovery." (Doc. 625, p. 4). Defendants have grossly exaggerated the situation in which three of Plaintiffs' experts mentioned they had read the article prior to their deposition.

No expert has placed any particular reliance on Dr. Augustine's new article. The online Journal notes the article was released on June 23, 2017 – several months after Plaintiffs' expert reports were finalized and served.[1] No amended reports were provided. Plaintiffs' expert Dr. Jonathan Samet testified that he read the article prior to his deposition, and that he simply "regard[s] the paper as another piece of observational evidence." *See* Zimmerman Decl., Ex. A (Depo. of Samet at 35:1-2). Plaintiffs' expert Dr. Michael Stonnington also made a passing reference to reading Dr. Augustine's new article prior to deposition, merely noting that it was not inconsistent with the materials upon which he relies. Dr. Stonnington mentioned that "Augustine's article did interestingly come up with very close results, which is interesting." *See* Zimmerman Decl., Ex. B (Depo. of Stonnington at 167:7-9). Finally, Dr. Jarvis specifically disclaimed any change in the opinions he offered based on the new Augustine article.[2] This is the extent of the "bear hug" claimed by 3M. None of Plaintiffs' experts have issued amended reports or supplemental opinions based on the Augustine article. Three of Plaintiffs' experts mentioned reading the article as additional material reviewed prior to deposition,

---

[1] SD Augustine, *Forced-Air Warming Discontinued: Periprosthetic Joint Infection Rates Drop*, ORTHOP REC (PAVIA) 9 (2), 6998. 2017 Jun 23.

[2] Q. Are there any articles that you reviewed after you issued your opinion that in any way made you think well, gee, if I had been aware of this before I issued by opinion, I would have maybe changed a conclusion or at least noted some disagreement?
A. I don't think so.
See Ex. – (Deposition of Jarvis, p. 46, l. 4-10)

3

but testified it did not alter their conclusions, nor did it become a significant part of their opinions or even emphasized at all beyond the passing remarks.

The twenty experts by Plaintiffs and Defendants in this MDL cited many scores of scientific publications which they collectively reviewed in coming to their various opinions. The parties have not and could not depose all the authors and medical facilities involved in each of those studies. Rather, during fact discovery, the parties expended enormous efforts to depose key individuals associated with the most central studies to the case. There is no way to characterize Dr. Augustine's article, which was first released at the end of June and which has been mentioned obliquely at three depositions, as a central paper to this lawsuit.

Moreover, Defendants falsely elevate the importance of Dr. Augustine's article by claiming that "if Plaintiffs did not embrace Augustine and the 'studies' he has sponsored, they would have nothing left." (Doc. 625, p. 5). Despite repeated briefing on this issue, Defendants continue to mislead the Court with its false assertion that Plaintiffs' case hinges on work funded by Dr. Augustine. For example, Dr. Paul McGovern (Orthopedic Surgeon at the National Health Service Foundation Trust) confirmed that he "did not receive any compensation from Augustine . . . with respect to conducting the study." *See* Zimmerman Decl., Ex. C (Dep. of Dr. McGovern at 356:9–23). Additional authors were deposed, including Professor Christopher Nachtsheim (Chair of Operations Management in the Carlson School of Management at the University of Minnesota) and Dr. Kumar Belani (previous Head of Anesthesiology at the University of Minnesota), who have testified under oath and penalty of perjury that they were not influenced by Dr.

4

Augustine. *See id.*, Ex. D (Dep. of Professor Nachtsheim at 362:5–24); *id.,* Ex. E (Dep. of Dr. Belani at 16:6–21). Plaintiffs' experts rely on scores of independent scientific publications, and have also performed their own testing in such fields as computational fluid dynamics, particle measurement, and indoor air quality.

Good cause to reopen discovery for new depositions is not established simply because "evidence that one side or the other finds helpful might come to light after the close of discovery." *Land O' Lakes, Inc.,* 846 F.Supp.2d at 1017. Studies, articles, and other literature will continue to be published beyond the discovery period up until the time of trial. This is true with respect to third parties and even the experts in this case. For example, Plaintiffs learned for first time on July 20th at deposition of defense proffered expert Dr. John Abraham that he completed a recent article accepted for publication on these issues. If Defendants are allowed to reopen discovery on Dr. Augustine's recent article, Plaintiffs would likewise have to be permitted to conduct discovery and take depositions related to forthcoming Abraham paper. The process is potentially never-ending, and the impact on the scheduling order and necessary trials cannot be overstated. In order to maintain reasonably efficient proceedings, the question this Court should ask is whether the new material is being used as important support for an expert's opinion or whether the new material substantially alters an expert's opinion or a party's theory of the case. Neither is true with respect to the new Augustine article.

## II.     Further Discovery Relating to Dr. Augustine is Excessive.

While Plaintiffs completed over twenty discovery depositions within the seven-hour maximum, Defendants now seek to depose Dr. Augustine for more than double the

time contemplated by the rules, for a total of nine additional hours beyond the original seven taken on the very last day of discovery. This Court has already granted one extension regarding Dr. Augustine's deposition. Even a single extension of time is a disfavored request. *See, e.g., E.E.O.C. v. Prod. Fabricators Inc.,* 285 F.R.D. 418, 422 (D. Minn. 2012) ("[E]ven Defendants acknowledge that such additional deposition is disfavored [and] 'unusual.'"). A second extension request for the same deponent should be accompanied by extraordinary good cause, which is lacking here.

In addition to the extension of the deposition, Defendants also seek "related discovery of Dr. Augustine and his entities." (Doc. 625, 1-2). This undefined, broad request presumably entails more written discovery as well as depositions. This new discovery is also disproportionate and unnecessary, especially in light of the previous Order granting Defendants four hours after the close of general causation discovery to depose Mr. Brent Augustine. Dr. Scott Augustine's publication of an article critical of forced air warming does not justify reopening Defendants' relentless pursuit of discovery relating to the "Augustine corporate entities." Despite Defendants characterizations to the contrary, fact discovery has shown that Dr. Augustine has a far more peripheral relationship to the events of this MDL than numerous other more important witnesses. The amount of time of spent on discovery relating to Dr. Augustine has already far eclipsed his relevance to Plaintiffs' claims.

In addition to the Augustine depositions and discovery, 3M also seeks "to take written and deposition discovery from the hospitals discussed in Augustine's July 2017 publication." (Doc. 625, p. 6). This new discovery would likewise be excessive and

6

disproportionate. There is no reason to require both Plaintiffs and non-parties to prepare and attend numerous depositions concerning an article which does not form a prominent or significant part of any experts' opinion. Furthermore, given the timing and the phase of the proceedings, these additional depositions will pose enormous burden, prejudice, and significant delay.

The Court must consider the burden and prejudice to the parties in its decision whether to alter the scheduling order. *Williams v. TESCO Servs., Inc.,* 719 F.3d 968, 976–77 (8th Cir. 2013). One of the forms of prejudice to be considered is whether the additional discovery will delay the proceedings. *Id.; see also Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 498–99 (8th Cir. 2008). If Defendants are granted leave to reopen discovery as to new publications, Plaintiffs' experts would need additional time to review and draft amended reports based on new information which may arise in Defendants' newly requested discovery phase. Moreover, opening discovery for numerous fact depositions will pose an immense burden and interruption to the current phase of specific causation discovery, to say nothing of imminent of expert challenges. The looming workload for the parties and the Court is vast, and should not be interrupted absent unusually compelling circumstances. Defendants have not demonstrated such a need in the motion at hand.  There is no practical way to accommodate Defendants' requests for wide-ranging additional discovery without introducing substantial burden or delay to the proceedings, and Plaintiffs respectfully request the motion be denied.

## CONCLUSION

Defendants' extraordinary requests to reopen fact discovery and conduct numerous depositions is not supported by good cause and will introduce significant burden, prejudice, and delay. For these reasons, Plaintiffs respectfully request this Court deny Defendants' Motion.

Dated: August 10, 2017

Michael V. Ciresi (MN #0016949
Jan M. Conlin (MN #0192697)
CIRESI CONLIN LLP
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Phone: 612.361.8202
Email:  MVC@CiresiConlin.com
              JMC@CiresiConlin.com

Ben W. Gordon, Jr. (*Pro Hac Vice*)
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: (850) 435-7091
Fax: (850) 435-7020
Email:  bgordon@levinlaw.com

Respectfully submitted,

/s/ Genevieve Zimmerman
Genevieve M. Zimmerman (MN #330292)
MESHBESHER & SPENCE, LTD.
1616 Park Avenue South
Minneapolis, MN 55404
Phone: (612) 339-9121
Fax: (612) 339-9188
Email:  gzimmerman@meshbesher.com

**Co-Lead Counsel for Plaintiffs**