# EXHIBIT B

```
                                                            Page 1
 1            MICHAEL J. STONNINGTON, M.D.
 2            UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
 3
 4   In re Bair Hugger Forced-Air Warming
     Products liability Litigation
 5
                            MDL NO. 15-2666 (JNE/FLN)
 6
     This Document Relates To:
 7   All Actions
 8
 9
10
     ****************************************************
11             VIDEOTAPED DEPOSITION OF
              MICHAEL J. STONNINGTON, M.D.
12   ****************************************************
13
14
              APPEARANCES NOTED HEREIN
15
16
17      TAKEN AT INSTANCE OF:  3M COMPANY AND
                    ARIZANT HEALTHCARE INC.
18              DATE:  JULY 21, 2017
        PLACE:  PAGE, MANNINO, PERESICH & MCDERMOTT
19               759 HOWARD AVENUE
                 BILOXI, MISSISSIPPI
20              TIME:  8:59 a.m.
21
22
     JOB NO. 124788
23   REPORTED BY:  CONNIE CHASTAIN, RMR
                   CSR No. 1025
24
25   VIDEOTAPED BY:  MARCEL LANOUX
```

Page 6

1  MICHAEL J. STONNINGTON, M.D.
2  the Plaintiffs.
3      THE VIDEOGRAPHER: The court reporter
4  will now swear in the witness.
5      MICHAEL STONNINGTON, M.D.,
6      having first been duly sworn, was
7      examined and testified as follows:
8           EXAMINATION
9  BY MS. LEWIS:
10    Q. Good morning, Doctor. Is it Stonnington or
11 Stonnington?
12    A. Stonnington, yes, ma'am.
13    Q. My name is Deborah Lewis and we introduced
14 ourselves to each other this morning; correct?
15    A. Yes, ma'am.
16    Q. You understand that you are here as an
17 expert witness who has been asked to offer opinions
18 in this MDL case; correct?
19    A. Yes, ma'am.
20    Q. This is not your first deposition; am I
21 correct?
22    A. It is not my first.
23    Q. You understand a little bit about this
24 process, meaning you understand I am going to ask
25 you some questions for which I will want you to

Page 7

1  MICHAEL J. STONNINGTON, M.D.
2  answer those questions, and our court reporter,
3  Connie, is taking down your testimony; correct?
4    A. Yes, ma'am.
5    Q. You understand that you are under oath and
6  sworn to be truthful; correct?
7    A. Yes, ma'am.
8    Q. You understand that your testimony today is
9  subject to the penalties of perjury, the same here
10 as if you were in a courtroom; correct?
11    A. Yes, ma'am.
12    Q. If I ask you a question and you don't
13 understand my question, will you let me know that?
14    A. Definitely.
15    Q. If you need to take a break, will you let
16 me know that, as well?
17    A. I will.
18    Q. Will you make sure that you let me finish
19 my question before you give your answer?
20    A. Yes, ma'am.
21    Q. And will you remember to verbally provide
22 answers rather than uh-uh or uh-huh?
23    A. Yes, ma'am.
24      MR. GORDON: Funny how many people
25      answer that "uh-huh".

Page 8

1   MICHAEL J. STONNINGTON, M.D.
2  MS. LEWIS:
3    Q. I put in front of you what's marked as
4  Exhibit Number 1, which is the amended notice for
5  your deposition this morning. Attached to Exhibit 1
6  is Exhibit A towards the back of that. If you'll
7  turn towards the back of that document.
8    A. I see it.
9    Q. Have you reviewed Exhibit A?
10    A. Yes, ma'am.
11    Q. I want to go through Exhibit A to see what
12 documents you brought this morning that are
13 responsive to Exhibit A. All right?
14    A. Yes, ma'am.
15    Q. Number 1 asks for all documents that you
16 reviewed in anticipation for your deposition this
17 morning. I have two notebooks here and a few other
18 documents that Mr. Gordon provided this morning.
19      Have you brought all the documents that you
20 reviewed in anticipation for your deposition this
21 morning?
22    A. Yes, ma'am.
23    Q. Are Volume 1 and Volume 2 documents that
24 you you reviewed in anticipation for your
25 deposition?

Page 9

1   MICHAEL J. STONNINGTON, M.D.
2    A. Yes, ma'am.
3    Q. In the Volume 1 notebook that's here is an
4  index that lists 89 documents. Did you review all
5  89 documents in preparation for your deposition this
6  morning?
7      MR. GORDON: Object to the form. You
8      asked anticipation before in preparations.
9    A. I tried to assemble a list that range from
10 a cursory review to a very hard review. So if I
11 looked at the abstract, I looked at a few sentences,
12 it's in there.
13 MS. LEWIS:
14    Q. Mr. Gordon also provided what I understand
15 to be some documents where you made notes on those
16 documents.
17    A. Yes, ma'am.
18    Q. Do you believe that the documents on which
19 you've made notes are part of the documents that are
20 in Volume 1 and Volume 2 of the notebooks? You can
21 take a look if you want to see.
22    A. Well, I --
23      MR. GORDON: I'll represent that I put
24      the notebooks together and, as I told you,
25      those are part of the compilation.

## Page 166

MICHAEL J. STONNINGTON, M.D.

A. I believe that there are scientists that believe the bubbles are a good way of looking at air flow.

Q. That's not what I'm asking about scientists, I'm asking you. Do you agree or disagree with this sentence?

MR. GORDON: And he has answered the question the best of his ability. Objection, argumentative.

A. I'm not sure that's an accurate statement.

MS. LEWIS:

Q. The next sentence says, finally, we believe it is important and notable that no studies performed by independent investigators have been published that confirm the findings of the study by McGovern, et al.

Did I read that right?

A. Yes, ma'am, you read it right. I'm just reading it myself.

Q. Are you aware of another independent -- another study performed by an independent investigator that has confirmed the findings of McGovern?

A. Independent, so you're stating that --

## Page 167

MICHAEL J. STONNINGTON, M.D.

Q. No conflict of interest?

A. No conflict of interest.

Q. Uh-huh.

A. I'm not aware of another study.

Q. Let's go to the next page?

A. But I will say that Augustine's article did interestingly come up with very close results, which is interesting.

Q. And he's got a conflict of interest, doesn't he?

A. Right, but again, he's a tree in a forest and it's interesting that his percentage of decreased infection rates without the Bair Hugger was very similar and that would be hard to make up.

MS. LEWIS: Objection, nonresponsive.

MS. LEWIS:

Q. We'll get into that a little bit later. Okay?

MR. GORDON: Objection to the sidebar.

MS. LEWIS:

Q. Augustine is not an independent investigator, is he?

A. He's an investigator by -- from what you're saying is that he is paid -- he owns HotDog, that's

## Page 168

MICHAEL J. STONNINGTON, M.D.

my understanding. And so by that, he is not independent from the standpoint of owning the company.

Q. No, he's not independent in terms of being objective.

MR. GORDON: Objection to form, argumentative.

A. You can own a device and be objective. Can you show me a study that proves that all the time, that if you own a company you're not objective? Is Elon Musk not objective when it comes to the development of the electrical vehicles? Is he not objective when it comes to the development of space missions?

MS. LEWIS:

Q. How about 3M, they're objective, too, aren't they?

MR. GORDON: Objection.

A. Well, by your definition you can't be objective.

MS. LEWIS:

Q. By your definition you're saying a company can't be objective, so I'd agree that that means --

A. No, no. No, ma'am. Ma'am, you're twisting

## Page 169

MICHAEL J. STONNINGTON, M.D.

my words.

MR. GORDON: Argumentative.

THE REPORTER: One at a time, please.

THE WITNESS: Sorry.

THE REPORTER: The last thing I got was "you're twisting my words".

A. Ma'am, I believe you're twisting my words. I'm saying that you can be objective even if you have financial interests and I believe there's numerous examples of that throughout the world.

MS. LEWIS:

Q. All right. On the next page, the sentence already starts on the second page, but I want to get to the next page. It says -- where it says indeed, do you see on the last sentence on Page 2?

A. Yes, ma'am.

Q. In other words, they're just kind of saying until data is published we believe it's reasonable and appropriate -- all right. Let me just say this. Until such data are published, talking about no independent investigators have published a study to confirm McGovern, we believe that it is reasonable and appropriate to continue the use of forced-air warming warming devices in patients.