# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In Re:
Bair Hugger Forced Air Warming Products Liability Litigation

This Document Relates To:

All Actions | MDL No. 15-2666 (JNE/FLM)

---

VIDEOTAPED DEPOSITION

OF

CHRISTOPHER NACHTSHEIM

Minneapolis, Minnesota

Tuesday, November 29, 2016

---

Reported by:
Amy L. Larson, RPR
Job No. 113495

INDEX: (Cont'd.)

EXHIBITS MARKED FOR IDENTIFICATION: PAGE


Exhibit 24................................231
January 2011 E-mail Chain
Subject: Papers you are involved in
Bates Nachtsheim_0000819 - Nachtsheim_0000821

Exhibit 25................................277
April 2015 E-mail Chain
Subject: Statistical Practitioners Forum:
Advanced DOE Class
Bates 3MBH01293497 - 3MBH01293499

Exhibit 26................................322
Doctor Says a Device He Invented
Poses Risks
No Bates

Exhibit 27................................333
Table
Bates Albrecht_0002298

Exhibit 28................................341
Would Complications Following Rivaroxaban
Administration - A Multi-Centre Comparison
with Low Molecular Weight Heparin for
Thromboprophylaxis in Lower Limb
Arthroplasty
Bates Nachtsheim_0000451 - Nachtsheim_0000466

Exhibit 29................................369
Forced-Air Warming Does Not Worsen Air
Quality in Laminar Flow Operating Rooms
Bates 3MBH00985628 - 3MBH00985633

Exhibit 30................................377
Curriculum Vitae






THE VIDEOTAPED DEPOSITION OF CHRISTOPHER NACHTSHEIM, taken on this 29th day of November, 2016, at the Law Offices of Faegre Baker Daniels, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, Minnesota, commencing at approximately 9:11 a.m.

PROCEEDINGS

THE VIDEOGRAPHER: This is the Start of tape labeled number 1 of the videotaped deposition of Christopher Nachtsheim in the matter of In Re: Bair Hugger Forced Air Warming Products Liability Litigation in the U.S. District Court for the District of Minnesota, Case Number 15-2666 (JNE/FLM).

This deposition is being held at the Faegre Baker law firm in Minneapolis, Minnesota, on November 29th, 2016. We are going on the record at 9:11 a.m. My name is Kraig Hildahl, I'm the legal video specialist from TSG Reporting. The court reporter is Amy Larson also in association with





TSG Reporting.

Will counsel please introduce themselves for the record.

MS. GARCIA: Christin Garcia, counsel for defendants 3M and Arizant.

MS. LEWIS: Deborah Lewis also counsel for defendants 3M and Arizant.

MR. SACCHET: Michael Sacchet for plaintiffs.

THE VIDEOGRAPHER: Will the court reporter please swear in the witness and then we can proceed.

CHRISTOPHER NACHTSHEIM,
a witness in the above-entitled action,
after having been first duly sworn, was
deposed and says as follows:

EXAMINATION

BY MS. GARCIA:

Q. Hello, Professor Nachtsheim.

A. Hello.

Q. Thank you for coming here today. Could you start by, for the record, just providing your





full name and spell your last name and let us know your address.

A. Christopher John Nachtsheim. And it's N as in north, A-C-H-T, S as in Sam, H-E-I-M. Address is 1789 Summit Avenue, St. Paul, Minnesota 55105.

Q. Thank you. Have you ever been deposed before?

A. Yes.

Q. Okay. The one rule of deposition I just want to reinforce today is if you have any difficulty understanding -- well, if you don't understand my question, if you would like me to clarify something, will you please let me know that?

A. Uh-huh. Yes.

Q. Yes?

A. Yes.

Q. There's rule number 2.

A. That's rule number 2, I knew that.

Q. You will need to say things out loud so that we can get an accurate transcription of the record in writing where your head movements can't be taken down, and then we will try not

Page 362

NACHTSHEIM

respect to the forced-air warming device, do you?

A. No.

Q. The fact that you received consulting fees from Augustine Biomedical or a successor company did not influence your ability to analyze this data, did it?

A. I hope not. I don't believe it did. We try to be objective about everything we do. But, no, it wouldn't have affected my analysis of this data.

Q. The amounts that you received were normal consulting fees, correct?

A. Correct.

MS. GARCIA: Object to the form of the question.

BY MR. SACCHET:

Q. They were nothing out of the ordinary in terms of other fees that you charged other third parties to perform statistical analysis, correct?

A. Correct.

Q. You were previously asked a series of questions regarding an operating room in a

Page 363

NACHTSHEIM

warehouse of sorts, correct?

A. Yes.

Q. And there were statements to the effect that the results from the testing that had been performed in that warehouse were, quote/unquote, "goofy"; is that correct?

A. Correct.

Q. And you had mentioned that you were concerned by some of the testing that had in fact occurred in that warehouse, correct?

A. Correct.

Q. The experimental portion of the McGovern study involving the simulated hip and lumbar spine surgeries were not performed in that warehouse, were they?

A. They were not performed in that warehouse.

Q. The experimental --

MS. GARCIA: Object to lack of foundation on that.

BY MR. SACCHET:

Q. Where was the McGovern study performed?

A. I believe that was in the hospital. That was the UK hospital, I believe.

Q. And the UK is not the same place as the

Page 364

NACHTSHEIM

warehouse that you visited, is it?

A. Correct.

Q. With respect to the Belani study, do you know where the experimental portion of the study was performed?

A. It was performed in a University of Minnesota Hospital.

MS. GARCIA: Objection; asked and answered. And I would note for the record that before we came on after this break you told us that you were instructed by your co-counsel, who you had called, to use up and run out your time after I had asked for time to redirect. And the video record will reflect that there's been a marked decrease in the pace of your questions. And at this point you are simply going over things that we have discussed extensively this morning and all day long, and I do have a few follow-up questions simply to clarify a couple of things, and Professor Nachtsheim, I would appreciate the opportunity to ask those --

MR. SACCHET: I'm going to --

Page 365

NACHTSHEIM

MS. GARCIA: -- just a few questions.

MR. SACCHET: I'm going to object to the recitation of what I represented during the break --

MS. GARCIA: Did you say that? Did you say that?

MR. SACCHET: -- because I represented that I would be using the rest of the time and that it was not going to be for an improper purpose, but seven hours are allotted for the deposition --

MS. GARCIA: You did say it was your marching orders.

MR. SACCHET: -- and that seven hours has been noted --

MS. GARCIA: You also said it was your marching orders --

MR. SACCHET: -- and it's also my choice.

MS. GARCIA: -- everyone in this room heard it.

MR. SACCHET: And it's also my choice.