# EXHIBIT E

1        DR. KUMAR BELANI CONFIDENTIAL

2           UNITED STATES DISTRICT COURT

3              DISTRICT OF MINNESOTA

4    --------------------------------

     In re Bair Hugger Forced Air Warming

5    Products Liability Litigation

6                        MDL NO. 15-2666

                         (JNE/FLN)

7

8

     This Document Relates To:

9    All Actions

10   --------------------------------

11              ***CONFIDENTIAL***

12          VIDEOTAPED DEPOSITION OF

13             DR. KUMAR BELANI

14           September 7, 2016

15              9:11 a.m.

16

17

18   Being held at: Children's Rehabilitation Center

19             426 Church Street SE

20             Minneapolis, MN

21

22

23

24   Reported by: Mari A. Skalicky

25   Job No. 112500

## Page 6

```
 1        DR. KUMAR BELANI CONFIDENTIAL
 2              E X H I B I T S
 3
 4   Exhibit            Page Marked
 5   Exhibit 1 ................................. 7
        Amended Notice of Videotaped
 6        Deposition of Kumar Belani, M.D.
          (no Bates)
 7   Exhibit 2 ................................. 7
        Pretrial Order No. 7:  Protective
 8        Order (no Bates)
 9   Exhibit 3 ................................. 7
        Pretrial Order No. 7:  Protective
10        Order (no Bates)
11   Exhibit 4 ................................. 7
        "Patient Warming Excess Heat: The
12        Effects on Orthopedic Operating Room
          Ventilation Performance" (no Bates)
13
     Exhibit 5 ................................. 7
14        "Forced-Air warming blowers: An
          evaluation of filtration adequacy and
15        airborne contamination emissions in
          the operating room," Bates
16        Belani_000182, 187, 188, 189
17   Exhibit 6 ................................. 7
        "Forced-air warming and ultra-clean
18        ventilation do not mix," Bates
          Belani_000190 to 197
19
20   Exhibit 7 ................................. 7
21        Photograph (no Bates)
     Exhibit 8 ................................. 7
22        Photograph (no Bates)
23   Exhibit 9 ................................. 7
        Photograph (no Bates)
24   Exhibit 10 ............................... 7
        "It's Not Just Another Room ..."
25        (no Bates)
```

## Page 7

```
 1        DR. KUMAR BELANI CONFIDENTIAL
 2              E X H I B I T S
              (Continued)
 3
 4   Exhibit            Page Marked
 5   Exhibit 11 ............................... 7
        University of Minnesota Notice of
 6        Grant or Contract Award (no Bates)
 7   Exhibit 12 ............................. 199
        Research Agreement (no Bates)
 8
     Exhibit 13 ............................. 207
 9        Curriculum vitae of Kumar Girdharidas
          Belani, Bates Belani_000066 to 82
10
     Exhibit 14 ............................. 215
11        Chain of e-mails with attached
          documents, Bates 3M00133591 to
12        133602
13   Exhibit 15 ............................. 222
        E-mail with attached documents, Bates
14        3M00113806 to 113809
15   Exhibit 16 ............................. 231
        "Forced-Air Warming Does Not Worsen
16        Air Quality in Laminar Flow Operating
          Rooms," Bates3MBH00985628 to 985632
17
18   Exhibit 17 ............................. 233
        Multipage document, Bates
19        Belani_000198 to 214
20
21
22
23
24
25
```

## Page 8

```
 1        DR. KUMAR BELANI CONFIDENTIAL
 2          P R O C E E D I N G S
 3        (Whereupon, the videotaped deposition
 4   of DR. KUMAR BELANI, taken pursuant to
 5   Notice, before Mari Skalicky, Court
 6   Reporter, a Notary Public in and for the
 7   County of Hennepin, State of Minnesota, at
 8   426 Church Street SE, Room 488,
 9   Minneapolis, Minnesota, was commenced at
10   9:11 a.m. on September 7, 2016, as
11   follows:)
12        (Exhibit Nos. 1 through 11 were
13   marked for identification by the Court
14   Reporter.)
15            - - -
16        THE VIDEO OPERATOR:  This is the 18:00
17   start of tape labeled number 1 of the
18   videotaped deposition of Dr. Kumar Belani
19   in the matter of In Re Bair Hugger Forced
20   Air Products Liability Litigation in the
21   United States District Court, District of
22   Minnesota.
23        This district -- this deposition is
24   being held at 426 Church Street Southeast,
25   Minneapolis, Minnesota, 55455, on
```

## Page 9

```
 1        DR. KUMAR BELANI CONFIDENTIAL
 2   September 7th, 2016, at approximately 9:11
 3   a.m.
 4        My name is Ben Abraham.  I'm a legal
 5   video specialist from TSG Reporting
 6   Incorporated, headquartered at 747 Third
 7   Avenue, New York, New York.  The court
 8   reporter is Mari Skalicky, in association
 9   with TSG Reporting.
10        Will counsel please introduce
11   yourselves?
12        MS. CONLIN:  Jan Conlin from Ciresi
13   Conlin on behalf of the plaintiffs.
14        MS. LEWIS:  Deborah Lewis from
15   Blackwell Burke on behalf of the
16   defendants 3M and Arizant Healthcare.
17        MR. DUNDER:  Keith Dunder, University
18   of Minnesota, on behalf of Dr. Belani.
19        THE VIDEO OPERATOR:  Will the court
20   reporter please swear in the witness.
21            - - -
22        (The oath was administered by the
23   reporter.)
24        DR. KUMAR BELANI,
25   after having been first duly sworn,
```

Page 10

1    DR. KUMAR BELANI CONFIDENTIAL
2    deposes and says under oath as follows:
3        WITNESS RESPONSE: Yes.
4            - - -
5        EXAMINATION
6    BY MS. LEWIS:
7    Q. Good morning, Dr. Belani.
8    A. Hi.
9    Q. My name is Deborah Lewis.
10   A. Okay.
11   Q. I represent the defendants 3M and Arizant
12      Healthcare in this litigation. Can you
13      state your full name?
14   A. Kumar Belani.
15   Q. Is this the first deposition testimony
16      you've ever given?
17   A. No.
18   Q. So you are familiar with the deposition
19      process?
20   A. I think so, yeah.
21   Q. One of those things I want to talk to you
22      about this morning is to make sure you
23      talk out loud enough so that we can hear
24      you. All right?
25   A. Okay. That's -- that's a problem for me,

Page 11

1    DR. KUMAR BELANI CONFIDENTIAL
2    but I'll do my best.
3    Q. Thank you very much.
4    A. Yeah.
5    Q. You understand that you are under oath for
6       your testimony this morning. Correct?
7    A. Correct.
8    Q. Yes?
9    A. Yes.
10   Q. Can you make sure that you answer out loud
11      in -- instead of "unh-unh" or "uh-huhs" so
12      that we can make sure that our court
13      reporter, Mari, can correctly take down
14      your testimony?
15   A. Sure.
16   Q. If you need to take a break for any
17      reason, will you let me know?
18   A. Sure.
19   Q. If you do not understand my questions,
20      will you let me know that you don't
21      understand? And I'll be happy to repeat
22      the question.
23   A. Sure.
24   Q. You -- if a question is confusing, again,
25      let me know that the question is

Page 12

1    DR. KUMAR BELANI CONFIDENTIAL
2    confusing. If you don't understand or if
3    you don't know the answer to the question,
4    it's perfectly fine to say, "I don't
5    know." All right?
6    A. Okay.
7    Q. One other admonition is the jury can't do
8       anything about a speculative answer, so if
9       the question would cause you to speculate,
10      would you just let us know that?
11   A. Absolutely.
12   Q. And you don't need to answer a question
13      that would call for you to speculate. All
14      right?
15   A. Okay.
16   Q. I've put in front of you Exhibit 1, which
17      is the amended notice for your deposition
18      this morning. Have you had a chance to
19      see that document?
20   A. This one?
21      MR. DUNDER: I don't believe
22      Dr. Belani saw it personally, but I got it
23      and --
24      MS. LEWIS: Okay.
25      MR. DUNDER: -- and explained it to

Page 13

1    DR. KUMAR BELANI CONFIDENTIAL
2    him and so on.
3    BY MS. LEWIS:
4    Q. It's just the notice that says you are
5       here pursuant to that notice for your
6       deposition.
7    A. Okay.
8    Q. I believe you also received a subpoena
9       that --
10   A. Mm-hmm.
11   Q. -- we sent you from my firm, Blackwell
12      Burke?
13   A. Correct.
14   Q. Did you get a chance to review that
15      subpoena?
16   A. Yep.
17   Q. I have not marked it as an exhibit, but I
18      want to ask you a few of the document
19      requests that we asked you about.
20      It's my understanding from your
21      attorney, Mr. Dunder, that you produced
22      everything that was currently in your
23      possession. Is that correct?
24   A. Correct.
25   Q. One of the things that was not a part of

## Page 14

DR. KUMAR BELANI CONFIDENTIAL

1  your production were emails. Do you have
2  any emails that were responsive to the
3  subpoena? And by that, I mean any emails
4  that would have been between you and any
5  of the other co-authors of some of the
6  studies in which you were involved?
7  A. I don't believe so.
8  Q. I'm sorry?
9  A. I don't believe so.
10 Q. What happened to those emails?
11 A. I couldn't find them.
12 Q. Were the emails that -- was the email
13 system that you used to communicate, was
14 that a gmail?
15 A. It was a university account.
16 Q. I'm sorry?
17 A. University account.
18 Q. Were there any emails that you -- did you
19 use the gmail account for any email
20 communication?
21 A. I may have. I may have.
22 Q. Do you know what happened to those
23 emails --
24 A. I think they --

## Page 15

DR. KUMAR BELANI CONFIDENTIAL

1  Q. -- from gmail?
2  A. I think they stay for a while and then
3  they're flushed out.
4  Q. Is that how you communicated with some of
5  the other co-authors in some of the
6  studies in which you were involved?
7  A. Some of them were by email, and some was
8  by phone call, yeah, and by meetings over
9  here.
10 Q. One of the other types of documents that
11 we requested were any invoices or some
12 sort of evidence of funding --
13 A. I sent those to you.
14 Q. -- that was received.
15 A. I sent those to you. We had a contract.
16 Did you see those that I sent you?
17 Q. Did you send us some documents?
18 A. Yeah, right.
19 Q. Were they a part of the production that
20 you sent?
21 A. Correct.
22    MS. LEWIS: Do you have extra copies?
23    MS. CONLIN: They were produced to
24 us. We have them.

## Page 16

DR. KUMAR BELANI CONFIDENTIAL

1     MS. LEWIS: Thanks, Keith. This one,
2  too?
3     MR. DUNDER: It may be responsive.
4  BY MS. LEWIS:
5  Q. Do you believe you produced all of the
6  documents concerning funding?
7  A. I believe I did.
8     MR. DUNDER: All the documents that
9  he had, yes.
10    THE WITNESS: Hmm.
11 BY MS. LEWIS:
12 Q. Did you have any communications, email or
13 letters, with Dr. Scott Augustine?
14 A. I don't believe so.
15 Q. Any email communication between you and
16 Scott Augustine?
17 A. I don't believe so.
18 Q. And the time period that I'm talking about
19 would be between 2010, 2013.
20 A. I don't believe so.
21 Q. If -- if we have copies of some, could it
22 just be that you just don't remember
23 whether you made any or not?
24 A. I -- I'd need to look at them.

## Page 17

DR. KUMAR BELANI CONFIDENTIAL

1  Q. Did you have any communications with
2  anyone at Augustine Temperature Management
3  other than Scott Augustine?
4  A. The only --
5     MS. CONLIN: Object to foundation.
6  Go ahead.
7  A. The only person that I spoke to was this
8  Mark Albrecht, and he's the one who came
9  and wanted to do the studies, so Mark
10 Albrecht was the one who talked to me. So
11 he -- he visited to my office, so those,
12 we would discuss in my office.
13 BY MS. LEWIS:
14 Q. Did you have any agreement between --
15 written agreements between you and any of
16 the co-authors in the study, for example,
17 in the -- and I'll get this to you in just
18 a minute. But in your article about
19 "Patient warming excess heat," the
20 co-authors were Mark Albrecht, Paul
21 McGovern, and Mike Reed and Christopher
22 Nachtsheim.
23 A. No.
24 Q. Any written agreement between you and any