## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IN RE: Bair Hugger Forced Air Warming
Products Liability Litigation

MDL No. 2666 (JNE/FLN)

This Document Relates to
ALL ACTIONS

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO RULING OF MAGISTRATE JUDGE ON PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW

This Court should deny Plaintiffs' objection to Judge Noel's July 19, 2017 order. In denying an *in camera* review of Defendants' privileged communications in *Walton*, Judge Noel applied the correct legal standard and properly concluded that Plaintiffs had not met their burden to show a factual basis adequate to support a good faith belief that the crime-fraud exception applies to these documents in this MDL. Judge Noel's order is, of course, entitled to extreme deference under Fed. R. Civ. P. 72(a). *Arcaro v. City of Anoka*, No. 13-2772 (JNE/LIB), 2014 WL 12605451, at *2 (D. Minn. July 16, 2014) ("The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.").

Judge Noel's denial of an *in camera* review was also well supported by other case-specific circumstances, which may be considered under controlling Supreme Court authority. *U.S. v. Zolin*, 491 U.S. 554, 572 (1989) (whether to conduct *in camera* review to evaluate potential application of the crime-fraud exception is committed to the "sound discretion of the district court . . . in light of the facts and circumstances of the particular

case").

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████

Nothing has happened in the MDL that could justify a different course.  Then, as now, the privileged communications of 3M's counsel in *Walton* in 2014 and 2015 are not relevant to any claim or defense in the MDL.  That a privilege log was ever created for these communications is an artifact of proceedings in *Walton*.  Under MDL Pretrial Order No. 11, Defendants were not even required to log most of their counsel's privileged *Walton* communications.  (For their part, Plaintiffs have never provided a log of any of their privileged *Walton* communications except a handful of communications with Augustine.)

For all these reasons, as well as the reasons discussed below, Plaintiffs' objection should be overruled.

## ARGUMENT

**I.    Judge Noel Applied the Correct Legal Standard and Correctly Concluded that Plaintiffs Had Failed to Carry Their Burden.**

Judge Noel applied the correct legal standard before denying Plaintiffs' motion.  In *Zolin*, the Supreme Court endorsed the standard that "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." 491 U.S. at 572 (internal citation omitted).  Plaintiffs suggest that Judge Noel imposed too high a standard on them, requiring Plaintiffs to *establish* that the crime-fraud exception applies.  He did not.  Judge Noel found that Plaintiffs have not met their burden of showing that the crime-fraud exception to the attorney-client privilege "***might*** apply in this consolidated Multi-District Litigation."  ECF No. 621 at 2 (emphasis added).

Judge Noel's conclusion was well grounded in the case law and the record presented by Plaintiff.  The challenged documents relate to litigation consulting agreements (LCAs) entered into between 3M's former counsel and five former 3M employees.  With respect to a party's contact with witnesses, the crime-fraud exception applies to "intimidation, threats, or misleading conduct towards a witness."  *Ellenberg v. Tuffy's Div. of Starkist Foods, Inc.*, 1985 WL 1559, at *6 (D. Minn. June 5, 1985). ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



Plaintiffs also failed to articulate why the challenged privileged communications were relevant to the issues *in the MDL*.  Defendants state categorically that none of the challenged communications – all of which predate October 30, 2015 and relate to discovery taken of former 3M employees in *Walton* – are about the testimony of those former employees in the MDL.  At the time of the communications, there was no MDL, and 3M was actively opposing creation of an MDL.

Upon extensive and aggressive questioning by Plaintiffs' counsel, the former employees testified unequivocally – both in *Walton* and in the MDL – that the Bair Hugger system is safe. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████[1]  (Similarly, the Parties can argue that Plaintiffs' experts were "biased" by the fact that the parties paid them for their time spent preparing their expert reports.)  There is no reason that such an argument requires a review of 3M's privileged documents from *Walton*.

---

[1] The reimbursement from the Brewer law firm, and how it was calculated, is no secret and is further explained in the Declaration of Dale Fresch of Brewer Attorneys & Counselors, submitted in opposition to Plaintiffs' motion and attached here again as Exhibit D.

Nor is there any need, as Plaintiffs insinuate, to review 3M's privileged documents to get the "whole story."  Plaintiffs have had every opportunity – and have taken it – to obtain discovery on reimbursements to the former witnesses and who is paying for their present legal representation.  Plaintiffs sought and obtained records of reimbursements to the former 3M employees in response to their subpoenas.  Plaintiffs questioned each of the former employees extensively about reimbursements and the Brewer law firm's representation of them in the MDL, as set forth in Plaintiff's brief and the exhibits.[2]  The employees answered those questions to the best of their abilities.  Neither the former employees' attorneys nor 3M's attorneys interfered with this line of questioning.  If Plaintiffs truly believed they did not get the full story, or that the former employees withheld testimony or documents, their recourse was to meet and confer with the former employees' counsel and, if still not satisfied, file a motion to compel.

Tellingly, they did not.  ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

---

[2] Plaintiffs also claim that Defendants' interrogatory responses were contradicted by witness testimony.  Plaintiffs' Interrogatory No. 16 asked if Defendants contracted with former employees "for the purpose of providing testimony." Defendants truthfully answered that neither they nor their current counsel have retained any former employee "for the purpose of providing testimony" in the Bair Hugger litigation.  (Hulse Dec. Ex. E.)   As Mr. Fresch's declaration explains, 3M has agreed with former employees only to reimburse them for their time spent preparing for their depositions, not for testifying. Defendants' answer goes on to reference the LCAs entered into by Defendants' former counsel and former 3M employees in *Walton*.

## II.      Other Factors Support Judge Noel's Denial of *In Camera* Review.

Even if Plaintiffs were correct that their proffer of evidence was sufficient to justify an *in camera* review, they are entirely wrong to suggest that the Court was then required to undertake that review.  Their position ignores the second half of the *Zolin* standard, which recognizes that the decision of whether to conduct an *in camera* review is discretionary, and calls on the district court to consider other relevant facts and circumstances of the particular case:

> Once that showing is made, the decision whether to engage in in camera review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin,* 491 U.S. at 572.  Other case-specific factors weighed heavily against an *in camera* review and support Judge Noel's order.

**1.** ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



7



███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████[3]

Indeed, the challenged documents were not even required to be logged under Pretrial Order No. 11.  Paragraph B of PTO No. 11 specifically provides that Defendants "need not list on a privilege log documents generated after the filing of the original complaint in *Tommy Walton v. 3M Company, et al.*, that were sent only to, or received only from, Plaintiffs' counsel, the legal departments of the Defendants, or the outside counsel for the Defendants in this litigation."  Paragraph C of PTO No. 12 further provides that internal communications wholly within a law firm, internal communications wholly within 3M's legal department, and communications solely between 3M's outside and in-house counsel need not be logged.  Plaintiffs do not dispute that the communications on their Exhibit 3 were not required to be logged under these provisions of PTO No. 11.  To this day, Plaintiffs have never sought modification of PTO No. 11.  It would be strange indeed if the

---

[3] PTO No. 11 provided: "The Parties agree that documents produced in *Walton* and *Johnson*, and documents produced prior to the entry of this protocol by the Court, are generally not required to be produced separately again to Plaintiffs in this MDL in a different format, except as previously agreed to by the Parties." And PTO No. 11 provided, by agreement of the parties: "Privilege logs relating to documents previously produced in *Timothy Johnson v. 3M Company, et al.*, Civil Action No. 2:14-cv-020440, in the United States District Court for the District of Kansas, and *Tommy Walton v. 3M Company, et al.*, Civil Action No. 4:13-cv-01164, in the United States District Court for the Southern District of Texas, will be reproduced to Plaintiffs in the MDL in a single comprehensive log with a consistent format."

Court were to undertake *in camera* review of documents that it had specifically ordered were not required to be put on a privilege log.

### III.   Plaintiffs' "Policy" Argument Makes No Sense.

Finally, Plaintiffs argue that Judge Noel's ruling "encourage[s] a troubling public policy result. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████            (Pl. Obj. at 12.)

This argument makes no sense.  First, Defendants were not "facing a potential MDL" at the time that their counsel first entered into the LCAs with the five former employees.  They were "facing a potential MDL" only in the abstract sense that any products liability case could at some later date become part of an MDL.  Second, Judge Noel's order did not "immunize" Defendants from discovery concerning the LCAs. Indeed, Plaintiffs have taken extensive document discovery and have deposed five witnesses in the MDL at length on the LCAs.  Third, Judge Noel has never precluded Plaintiffs from using the LCAs or non-privileged documents relating to the LCAs at trial.

Judge Noel had all of the relevant facts before him.  He applied the correct legal standard, and properly determined that Plaintiffs failed to carry their burden.  Plaintiffs offer no reason to conclude otherwise.

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Court should overrule Plaintiffs' objection to Judge Noel's July 19, 2017 order.

Dated:  August 16, 2017

Respectfully submitted,

*s/Benjamin W. Hulse*

Jerry W. Blackwell
MN Atty ID No. 0186867
Benjamin W. Hulse
MN Atty ID No. 0390952
Monica L. Davies
MN Atty ID No. 0315023
**Attorneys for Defendants 3M Company
and Arizant Healthcare Inc.**
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
T: (612) 343-3200  F:  (612) 343-3205
blackwell@blackwellburke.com
bhulse@blackwellburke.com
mdavies@blackwellburke.com

Bridget M. Ahmann
MN Atty ID No. 016611x
**Attorney for Defendants 3M Company
and Arizant Healthcare Inc.**
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000  F: (612) 766-1600
bridget.ahmann@faegrebd.com