1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF MINNESOTA

3    ------------------------------------------------------------
                                         )
4                                        )
     In Re: Bair Hugger Forced Air       )   File No. 15-MD-2666
5    Warming Devices Products            )   (JNE/FLN)
     Liability Litigation                )
6                                        )   August 17, 2017
                                         )   Minneapolis, Minnesota
7                                        )   Courtroom 12W
                                         )   9:15 a.m.
8                                        )
                                         )
9    ------------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                UNITED STATES DISTRICT COURT JUDGE
11
              THE HONORABLE FRANKLIN L. NOEL
12              UNITED STATES MAGISTRATE JUDGE

13           THE HONORABLE WILLIAM H. LEARY, III
               RAMSEY COUNTY DISTRICT COURT JUDGE
14

15                   **(STATUS CONFERENCE)**

16   APPEARANCES

17   FOR THE PLAINTIFFS:
                              MESHBESHER & SPENCE
18                            Genevieve M. Zimmerman
                              1616 Park Avenue
19                            Minneapolis, MN  55404

20                            LEVIN PAPANTONIO
                              Ben W. Gordon, Jr.
21                            316 S. Baylen Street
                              Suite 600
22                            Pensacola, FL 32502

23                            CIRESI CONLIN
                              Jan Conlin
24                            Michael A. Sacchet
                              225 South 6th Street
25                            Suite 4600
                              Minneapolis, MN

```
 1    FOR THE PLAINTIFFS (cont'd):

 2                              KENNEDY HODGES, LLP
                               Gabriel Assaad
 3                              4409 Montrose Blvd
                               Suite 200
 4                              Houston, TX 77006

 5                              KENNEDY HODGES, LLP
                               David W. Hodges
 6                              711 W. Alabama Street
                               Houston, TX 77006
 7
                               PRITZKER HAGEMAN, P.A.
 8                              David Szerlag
                               45 South 7th Street, #2950
 9                              Minneapolis, MN  55402-1652

10    FOR THE PLAINTIFFS (APPEARING BY PHONE:)

11                             KIRTLAND AND PACKARD LLP
                               Behram V. Parekh
12                             2041 Rosecreans Avenue
                               Third Floor, Suite 300
13                             El Segundo, CA  90245

14                             BERNSTEIN LIEBHARD LLP
                               Dae Lee
15                             10 East 40th Street
                               New York, NY  10016
16
                               THE LANIER LAW FIRM, PLLC
17                             Jason Goldstein
                               Erika Mohabir
18                             126 East 56th Street, 6th Floor
                               New York, NY 10022
19
                               SIDNEY P. COMINSKY, LLC
20                             Amy Tao
                               109 S. Warren Street, #1500
21                             Syracuse, NY  13202

22                             GROSSMAN & MOORE, PLLC
                               Emily A. DeVuono
23                             Jennifer Moore
                               401 W. Main Street
24                             Suite 1810
                               Louisville, KY  40202
25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                              HARE WYNN NEWELL & NEWTON
                                Peggy Little
 3                              Lynne Reed
                                Massey Building
 4                              2025 Third Avenue North
                                Suite 800
 5                              Birmingham, AL  35203

 6                              MCEWEN LAW FIRM, LTD
                                Melissa Schmid
 7                              5850 Blackshire Path
                                Inver Grove Heights, MN  55076
 8
                                MORGAN & MORGAN, PA
 9                              Heather Cullen
                                201 N. Franklin St 7th Floor
10                              Tampa, FL  33602

11                              RAIZNER SLANIA, LLP
                                Jeffrey L. Raizner
12                              2402 Dunlavy Street
                                Houston, TX  77006
13
                                LONCAR & ASSOCIATES
14                              Brian U. Loncar
                                John L. Coveney
15                              424 S. Cesar Chavez Blvd
                                Dallas, TX  75201
16
                                CAPRETZ & ASSOCIATES
17                              Don K. Ledgard
                                5000 Birch St, Suite 2500
18                              Newport Beach, ca  92660

19                              MICHAEL HINGLE & ASSOCIATES
                                Bryan Pfleeger
20                              Julie Jochum
                                220 Gause Blvd
21                              Slidell, LA  70005

22                              HOUSSIERE DURANT & HOUSSIERE
                                Randall A. Kauffman
23                              Monica Vaughan
                                Shirley Strom-Blanchard
24                              1990 Post Oak Blvd Suite 800
                                Houston, TX  77056
25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                              DAVIS & CRUMP, PC
                                Martin D. Crump
 3                              Robert D. Cain, Jr.
                                Wes Stevenson
 4                              2601 Fourteenth Street
                                Gulfport, MS 39507
 5
                                LEWIS & CAPLAN
 6                              Pete Lewis
                                Sarah Delahoussaye Call
 7                              Amy Webster
                                3631 Canal Street
 8                              New Orleans, LA  70119

 9                              SKIKOS CRAWFORD SKIKOS&
                                   JOSEPH, LLP
10                              Melissa Erin Mielke
                                One Sansome Street, Suite 2830
11                              San Francisco, CA  94104

12                              THE RUTH TEAM
                                Austin Grinder
13                              Steven C. Ruth
                                842 Ramond Avenue
14                              Suite 200
                                Saint Paul, MN  33733-5157
15
                                LAW OFFICES OF TRAVIS R. WALKER
16                              Travis R. Walker
                                1235 SE Indian Street
17                              Suite 101
                                Stuart, FL  34997
18
                                ANDREWS & THORNTON
19                              Anne Andrews
                                John Thornton
20                              Lauren Davis
                                2 Corporate Park, Suite 110
21                              Irvine, CA 92606

22                              JOHNSON BECKER PLLC
                                Rolf T. Fiebiger
23                              444 Cedar Street
                                Suite 1800
24                              Saint Paul, MN  55101

25
```

```
 1    FOR THE PLAINTIFFS(appearing by phone):

 2                               JOHNSON JOHNSON & SCHALLER PC
                                 Leslie O'Leary
 3                               975 Oak Street
                                 Citizens Building, Suite 1050
 4                               Eugene, OR  97401

 5                               LORD & ASSOCIATES
                                 Melissa Heinlein
 6                               309 Clifton Avenue
                                 Minneapolis, MN 55403
 7
                                 MURRAY LAW FIRM
 8                               Caroline Whitney Thomas
                                 650 Poydras Street
 9                               Suite 2150
                                 New Orleans, LA  70130
10
                                 BROWN & CROUPPEN, PC
11                               Abby Cordray
                                 211 North Broadway, Suite 1600
12                               St. Louis, MO  63102

13                               HURLEY MCKENNA & MERTZ
                                 Molly Condon
14                               33 North Dearborn Street
                                 Suite 1430
15                               Chicago, IL  60602

16                               BEASLEY ALLEN
                                 Megan Robinson
17                               Matthew Munson
                                 218 Commerce Street
18                               Montgomery, AL  36104

19                               CARR & CARR ATTORNEYS
                                 Patrick E. Carr
20                               4416 S. Harvard Avenue
                                 Tulsa, OK  74135
21
                                 HOLLIS LEGAL SOLUTIONS, PPLC
22                               Scott Hollis
                                 6814 Crumpler Boulevard,
23                               Suite 101
                                 Olive Branch, MS  38654
24

25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                              FITZGERALD LAW GROUP, LLC
                                Kevin Fitzgerald
 3                              120 Exchange Street
                                Suite 200
 4                              Portland, ME  04101

 5                              LAW OFFICES OF PETER ANGELOS,
                                P.C.
 6                              Thomas Keilty, III
                                100 North Charles Street
 7                              Baltimore, MD  21201

 8                              MESHBESHER & SPENCE, LTD
                                Holly Sternquist
 9                              1616 Park Avenue
                                Minneapolis, MN  55404
10
                                PARKER WAICHMAN, LLP
11                              Nicole Eisner
                                Michael S. Werner
12                              59 Maiden Lane
                                6th Floor
13                              New York, NY  10038

14                              PRITZKER HAGEMAN, PA
                                Wendy Thayer
15                              PWC Plaza Building
                                Suite 2950
16                              45 South Seventh Street
                                Minneapolis, MN  55402-1652
17
                                RANDALL J. TROST, P.C.
18                              Carrie Hancock
                                Pam Rodriguez
19                              Randall T. Trost
                                801 Main Street
20                              Lynchburg, VA  24504

21                              DEGARIS LAW GROUP, LLC
                                Wayne Rogers, Jr.
22                              2 North 20th Street
                                Suite 1030
23                              Birmingham, AL  35223

24                              NEAL R. ELLIOTT, JR.
                                P.O. Box 80136
25                              Baton Rouge, LA  70898
```

```
 1     FOR THE PLAINTIFFS(appearing by phone):

 2                              NASH & FRANCISKATO LAW FIRM
                                Brian Franciskato
 3                              Amanda Cryderman
                                2300 Main Street, #170
 4                              Kansas City, MO  64108

 5                              BROUS LAW LLC
                                Carrie Mulholland Brous
 6                              3965 West 83rd St.  #115
                                Prairie Village, KS  66208
 7
                                BACHUS & SCHANKER, LLC
 8                              J. Christopher Elliott
                                1899 Wynkoop Street
 9                              Suite 1700
                                Denver, CO  80202
10
                                BAILEY PEAVY BAILEY COWAN
11                              HECKAMAN, PLLC
                                Justin Jenson
12                              The Lyric Centre
                                440 Louisiana Street
13                              Suite 2100
                                Houston, TX  77002
14
                                GERTLER LAW FIRM
15                              M.H. Gertler
                                Leola Anderson
16                              935 Gravier Street
                                Suite 1900
17                              New Orleans, LA  70112

18                              GINGRAS CATES & LUEBKE
                                Scott Thompson
19                              8150 Excelsior Drive
                                Madison, WI  53717
20
                                LANGDON & EMISON
21                              Rachel Ahmann
                                911 Main Street
22                              Lexington, MO  64067

23                              LARRY HELVEY LAW FIRM
                                Larry Helvey
24                              2735 1st Ave SE, Ste 101
                                Cedar Rapids, IA  52402
25
```

```
 1      FOR THE PLAINTIFFS (Appearing by Phone):

 2                              MARTIN HARDING & MAZZOTI, LLP
                                Rosemarie Bogdan
 3                              1222 Troy-Schenectady Road
                                P.O. Box 15141
 4                              Albany, NY  12212-5141

 5                              RICHARDSON PATRICK WESTBROOK &
                                BRICKMAN, LLC
 6                              Daniel Haltiwanger
                                Missi Cruz
 7                              PO. Box 1368
                                Barnwell, SC  29812
 8
                                RIEDERS TRAVIS HUMPHREY WATERS
 9                              & DOHRMANN
                                Clifford Rieders
10                              161 West Third Street
                                Williamsport, PA  17701
11
                                SIDNEY P. COMINSKY, LLC
12                              Sidney Cominsky
                                1500 State Tower Building
13                              Syracuse, NY  13202

14                              THE WEBSTER LAW FIRM
                                Chelsie Garza
15                              6200 Savoy Suite 150
                                Houston, TX  77036
16
                                THE WHITEHEAD LAW FIRM, LLC
17                              Anna Higgins
                                C. Mark Whitehead, III
18                              Rhiannon Geisinger
                                Petroleum Tower, Suite 303
19                              3639 Ambassador Caffery Pkwy
                                Lafayette, LA  70503
20
                                WALTERS LAW FIRM, LLC
21                              Lon Walters
                                23A East 3rd Street
22                              Kansas City, MO  64106

23                              LOCKRIDGE GRINDAL NAUEN, PLLP
                                Rosa Trembour
24                              100 South Washington Ave #2200
                                Minneapolis, MM  55401
25
```

```
 1          FOR THE PLAINTIFFS (Appearing by Phone):
 2
                                     MORRIS LAW FIRM
 3                                   James A. Morris, Jr.
                                     4111 W. Alameda Avenue
 4                                   Suite 611
                                     Burbank, CA  91505
 5
            FOR THE DEFENDANTS 3M:
 6                                   BLACKWELL BURKE P.A.
                                     Ben Hulse
 7                                   Jerry Blackwell
                                     Corey Gordon
 8                                   431 South Seventh Street
                                     Suite 2500
 9                                   Minneapolis, MN  55415

10                                   FAEGRE BAKER DANIELS
                                     Bridget M. Ahmann
11                                   90 South Seventh Street
                                     Suite 2200
12                                   Minneapolis, MN  55402

13          Court Reporter:          MARIA V. WEINBECK, RMR-FCRR
                                     1005 U.S. Courthouse
14                                   300 South Fourth Street
                                     Minneapolis, Minnesota 55415
15

16

17

18

19
                    Proceedings recorded by mechanical stenography;
20          transcript produced by computer.

21

22

23

24          *     *     *     *     *     *     *

25
```

```
 1                    P R O C E E D I N G S

 2                      (9:15 a.m.)

 3              THE COURT:  Good morning.  Please be seated,

 4     everyone.

 5              MR. BLACKWELL:  Good morning, Your Honor.  I have

 6     some special guests I wanted to introduce.

 7              THE COURT:  Mr. Blackwell, I don't want to miss

 8     out on your special guests.

 9              Okay.  Who have you got with you today?

10              MR. BLACKWELL:  I have some friends visiting from

11     Australia.  They just got in last night.  Meg and Alain

12     Carbonatto, and you have not yet had the pleasure of meeting

13     my beloved, my wife Tiffany.

14              THE COURT:  Which one?  Who is who now?

15              MR. BLACKWELL:  This is my wife Tiffany.

16              THE COURT:  Hello.

17              MR. BLACKWELL:  And this is Meg Carbonatto and

18     Alain Carbonatto, who are Aussies visiting for a couple of

19     days.  The way I could spend the whole day with them is to

20     bring them to work so.

21              THE COURT:  It's bring your Australian relations

22     to work today.

23              MR. BLACKWELL:  Yes.  Good morning, Your Honor.

24              THE COURT:  Yeah, when my cousins come, we're

25     going to have to nail down all the pencils.  You probably
```

1  have a higher class of cousins than I do.  What about

2  plaintiffs, do you have any?

3          MR. GORDON:  I'm afraid we didn't realize, Your

4  Honor, this was the day to bring folks with us.  We will

5  next time.

6          THE COURT:  Oh, man.  Well, anyway, it's nice to

7  see you.  Let's finish with our appearances over on the

8  defense side.  This is mostly, obviously, for the benefit of

9  the folks who are on the phone.  Mr. Hulse, did you want to

10  acknowledge your presence?

11          MR. HULSE:  Ben Hulse for the defendants.  Good

12  morning.

13          THE COURT:  Good morning.

14          MS. AHMANN:  Bridget Ahmann for the defendants.

15          MR. GORDON:  Good morning, Your Honors.  Corey

16  Gordon for the defendants.

17          THE COURT:  Mr. Gordon?

18          MR. GORDON:  Good morning, Your Honors, Ben Gordon

19  for the plaintiffs.

20          MS. ZIMMERMAN:  Good morning, Your Honors,

21  Genevieve Zimmerman for the plaintiffs.

22          MS. CONLIN:  Good morning.  Jan Conlin for the

23  plaintiffs.

24          THE COURT:  We also have Judge Leary with us.

25  Good morning, Judge Leary.  Thank you very much for coming

1    over.

2              Well, let's -- everybody on the phone able to hear

3    okay?

4              MS. GEISINGER:  Yes, ma'am.

5              THE COURT:  Okay.  Who was that?

6              MS. GEISINGER:  I'm Rae with the Whitehead Law

7    Firm.

8              THE COURT:  Well, let's get right into the agenda.

9    And looking at item number 1, pretrial orders, is there

10   anything to be discussed with respect to the items that are

11   bulleted under the pretrial order section?  Mr. Gordon?

12             MR. GORDON:  Your Honor, if I may, plaintiffs have

13   one observation.  It seems a bit of an anomaly perhaps, but

14   I'm not sure the Court considered the fact that fact

15   discovery on page 1 of the pretrial orders is to be

16   completed no later than October 16th, but the initial expert

17   reports two months later are required to be exchanged by

18   October 9th.  And we're happy to provide our specific expert

19   reports on October 9th.  It just creates a little bit of an

20   incongruity because that leaves another week before the end

21   of fact specific discovery during which period,

22   theoretically, events could happen that could impact the

23   opinions of those experts designated a week before.

24             So I just invite the Court's observation of that

25   and consideration.  It's not that we're necessarily looking

1      for an extension, but it would seem to be more reasonable to

2      have the expert disclosures at the same time as or no

3      earlier than the close of fact specific discovery.

4              THE COURT:  We'll just note the problem or the

5      issue or the fact.

6              MAGISTRATE JUDGE NOEL:  If a problem arises, we'll

7      deal with it, if and when a problem arises.

8              MR. GORDON:  Okay, fair enough.

9              THE COURT:  But thank you for that observation.

10     Anything else?  Mr. Hulse, were you just going to respond to

11     that?

12             MR. HULSE:  I was, and nothing else on Section 1,

13     Your Honors.

14             THE COURT:  All right.  Then we'll move to the

15     plaintiff fact sheets.

16             MR. HULSE:  Your Honors, the only thing I think

17     that requires discussion today is defendant's motion to

18     dismiss.  We can handle that now.  We can handle that later,

19     however you might prefer.

20             THE COURT:  I had in mind that we'd handle that

21     after we at least do an initial run through the agenda.

22             MR. HULSE:  Okay.  That makes sense.

23             MS. GEISINGER:  We're having a hard time hearing.

24             THE COURT:  Okay, hold on one second.  We have new

25     technology.

1        MS. GEISINGER:  I think it's the microphone.  I

2   think that would definitely help.

3        THE COURT:  Oh, can you hear me?  It's just

4   Mr. Hulse?

5        MS. GEISINGER:  I can hear you just fine.

6        THE COURT:  All right, so we'll make everybody go

7   to the podium now.

8        MR. GORDON:  Your Honor, I'll note that I just

9   turned on these microphones at the table.  Is that better?

10        MS. GEISINGER:  That is much better.  Thank you so

11   much.

12        THE COURT:  Okay.  And thanks for speaking up.

13        MR. HULSE:  All I was going to say is that makes

14   sense, Your Honor, and we'll talk about it at the end of the

15   program.

16        THE COURT:  Very well.

17        MS. GEISINGER:  Thank you, Your Honor.

18        THE COURT:  Mr. Gordon, do you have anything that

19   you wanted to bring up on the plaintiff fact sheets other

20   than the dismissal matter that we'll get to in a moment?

21        MR. GORDON:  Well, we can argue it later, Your

22   Honor.  I do just want to speak to specific issues, and I

23   think there are folks on the phone who have filed some

24   responses who may wish to be heard.

25        THE COURT:  Okay.  We'll take all of that up then

 1     after we do the run-through.

 2              MR. GORDON:  Yes, Your Honor, thank you.

 3              THE COURT:  Well, let's talk about the number and

 4     status of cases that have been transferred to the MDL.

 5              MR. GORDON:  Your Honor, I think that based on my

 6     liaison counsel's able report, do you want to give a report

 7     on that, Dave?

 8              MR. SZERLAG:  We just --

 9              THE COURT:  You have to find a microphone

10     somewhere.  Good morning.

11              MR. SZERLAG:  Good morning, Your Honors.  David

12     Szerlag for the plaintiffs.  The update as of last night on

13     cases filed in the MDL is 3,590 cases, so a little bit

14     different than what was on the joint agenda.  And I'm not

15     aware of any other cases being filed in the state courts.  I

16     think we're still at 56.

17              THE COURT:  Okay.  So 56, that's in Minnesota?

18              MR. SZERLAG:  Correct.

19              THE COURT:  And then the Rodriguez?

20              MR. SZERLAG:  That I'm really, quite honestly, I'm

21     not prepared to talk.  I believe that the information in the

22     joint agenda is correct.

23              THE COURT:  Okay.

24              MAGISTRATE JUDGE NOEL:  So on the 3590 number, did

25     that include all of those Missouri cases?

```
 1              MR. SZERLAG:  I believe it does, yes.

 2              THE COURT:  Have now been transferred, correct?

 3              MR. SZERLAG:  That's correct.

 4              MR. HULSE:  Your Honors, if I may add one point,

 5     and, yes, all of Missouri cases are now transferred.

 6     Washington, which was the last one, now has a motion to

 7     sever that's pending.  The one issue that still needs to be

 8     sorted out after Washington is severed, there are still a

 9     bunch of non-diverse cases in the mix that we will work with

10     plaintiffs' counsel to get those dismissed and then they'll

11     be refiled in Ramsey.

12              THE COURT:  So are those the non-diverse in the

13     Missouri mix?

14              MR. HULSE:  That's correct, Your Honor.

15              THE COURT:  All right.  So we'll look for some

16     movement on the 56 number.

17              Canada?  Mister -- I looked up and Mr. Szerlag is

18     gone, but.

19              MR. BLACKWELL:  There's been no new activity in

20     Canada since the last report, Your Honor.

21              THE COURT:  All right.  Thanks, Mr. Blackwell.

22              Well, then let's move to -- we'll skip number 6,

23     additional pretrial orders because it appears there's

24     nothing to discuss there, and we'll move to the status of

25     discovery.
```

1          Mr. Gordon, is there anything that you wanted to

2     talk about there?

3          MR. GORDON:  Your Honor, I would just say

4     generally that discovery of the experts has been fast and

5     furious as this chart indicates and that virtually all of

6     the expert discovery, obviously, we still have case

7     specific, but the general causation has been completed with

8     the exception as noted the two depositions plaintiffs have

9     noted for the record that those may need to be re-opened or

10    extended.  I believe all other depositions, unless my

11    co-counsel correct me, have been completed.

12         MS. ZIMMERMAN:  Yes, Your Honor, I think that the

13    last expert deposition was last Friday the 11th, and I think

14    that we're now done with general causation expert

15    depositions.

16         THE COURT:  I saw there was an asterisk indicating

17    that there might be some disagreement but I didn't see any

18    motion, so is there any action that you're looking for from

19    the Court today?

20         MS. ZIMMERMAN:  No action that we're looking for

21    from the Court.  There was a dispute about a responsive

22    production following a subpoena and the production

23    sufficiency with respect to a number of the experts and so

24    for that reason, there were a couple of depositions we noted

25    our disagreement there, but we have not brought a motion.

 1          THE COURT:  Seeking no action, you have fallen

 2    right into our wheelhouse.

 3          Bellwether discovery, plaintiff's further

 4    statement.  I just had a -- I want to make sure there's

 5    nothing to discuss on this -- you see the defendant's

 6    further statement there?  Do you need us at all there?

 7          MR. BLACKWELL:  Not yet, Your Honor.  We are going

 8    to give this about another week to see if we can get any

 9    responses from the VA.  The VA is simply moving in its own

10    time and makes it difficult to get the discovery --

11          THE COURT:  Huh.

12          MR. GORDON:  Imagine that.

13          MR. BLACKWELL:  So we are going to continue with

14    our best efforts for perhaps another week, then we may have

15    to come in to the Court to fashion some sort of remedy in

16    response to it, if we can't get our discovery.

17          THE COURT:  I just wanted to make sure I wasn't

18    missing something.

19          MR. BLACKWELL:  No, no, Your Honor.

20          MS. AHMANN:  Your Honor, we do have one open

21    issue.

22          THE COURT:  Ms. Ahmann.

23          MS. AHMANN:  Thank you.  We have run into some

24    issues with regard to contacts to treaters in terms of going

25    forward with discovery.  Currently, we don't have any

1    depositions scheduled of treaters.  And we consistent with,

2    quite frankly, my practice, we started contacting the

3    treaters after we weren't getting specific dates from the

4    plaintiffs.  And the plaintiffs do not want us to do that,

5    and so there has been back and forth with regard to whether

6    or not we can be even contacting them for scheduling

7    purposes.  But we continue to try and get dates, and we will

8    continue to work with them, and I think we've resolved kind

9    of that issue on scheduling.  And they may differ on that,

10   and I'll let them speak to that.

11           We also though in light of Magistrate Noel's

12   recent order with regard to the whole Shady Grove issue of

13   federal versus state issues, we think that there is a good

14   argument, and we're in a good position to say that there can

15   be no prohibition on contacts generally because the federal

16   rules don't provide for it.

17           THE COURT:  It might not be there anyway.  It

18   could just be an issue of you assuring the plaintiffs that

19   you're only contacting the treaters for scheduling purposes

20   and not for anything substantive.  And in that case, you

21   would not --

22           MS. AHMANN:  In that case, we wouldn't.  But, Your

23   Honor, in light of Magistrate Judge Noel's Order, I think we

24   feel like we might want to see where the Court comes out on

25   the whole issue of contacts generally and whether or not

1     there is -- whether or not the procedures would allow for us

2     to actually contact and talk with treaters.

3               THE COURT:  So do you want to wait for --

4               MS. AHMANN:  Well, what --

5               THE COURT:  -- to schedule, just to find out if

6     you can have substantive communications at the same time?

7               MS. AHMANN:  What we would like is we would like

8     to get some guidance from Magistrate Judge Noel as to how if

9     we could get this on for like an expedited consideration for

10    him regarding contacts to treaters and not just for

11    scheduling, for substantive issues.

12              THE COURT:  Is there a motion?

13              MS. AHMANN:  Well, we would make a motion, and I

14    know Ben has talked about it, but we'd like some guidance

15    because timing is kind of an issue at this point.

16              MAGISTRATE JUDGE NOEL:  I think the short answer

17    from my perspective is when we're done here, I'll call down

18    to my chambers and see what I can do about getting a date

19    and time and then you make a motion.  Just as a preview,

20    what Rule of Civil Procedure do you think might govern this?

21              MS. AHMANN:  Well, I think the position is that

22    there is no rule that would govern this.  Nothing to

23    preclude it, which in effect means that it allows it.  And I

24    won't make my argument here, but, and we also -- there is an

25    MDL decision out of the Northern District of Illinois in the

1    *NexGen* litigation where the Court did find that not citing

2    to *Shady Grove*, but did find the issues of procedure, which

3    discovery procedure fell within that are governed by federal

4    laws and procedures rather than state.  And so in that case,

5    they, you know, they decided that it was okay.  It was a

6    somewhat different situation.

7           THE COURT:  Was there a privilege involved there

8    at all potentially?

9           MS. AHMANN:  The privilege is substantive, but the

10   issue of how you go about, you know, how the privilege is

11   protected and stuff is procedural, and so we'd like the

12   opportunity to present that to the Court.  So we'll wait and

13   set it on for hearing if appropriate.

14          THE COURT:  All right.  And none of this comes as

15   any kind of a surprise to the plaintiffs' side, right?

16          MR. GORDON:  No, Your Honor, but I would like to

17   be heard briefly on it, if I might.

18          THE COURT:  I thought you might.

19          MR. GORDON:  Your Honor, thank you.  Ben Gordon

20   for the plaintiffs.  Briefly, let me state first that I

21   think Ms. Ahmann's request is essentially for an advisory

22   opinion at this point.  I realize time is of the essence

23   here.  So I do want to point out, and we can certainly brief

24   this and are prepared to brief it and argue it later, but in

25   response specifically to Ms. Ahmann's comments, I want to

1    say, number one, that substantive ex parte communications

2    with prescribing, treating health care providers by the

3    defense violates the physician-patient relationship.  And,

4    specifically, it violates Minnesota law, substantive law in

5    that respect.  And as she indicated, I believe, Ms. Ahmann,

6    there is no federal rule on this point concerning privilege

7    relating to physician health care providers and patients,

8    and as such, there is not a conflict Minnesota law governs

9    and, specifically, the Baycol decision in this district is

10   right on point.

11           I admit that's pre-Shady Grove, but if you read

12   Your Honor's analysis, which we can again brief in the

13   Baycol decision, they make very clear that you have to look

14   beyond the fact that on its surface the Minnesota law, I

15   think it's Chapter 554 -- I can pull it, but I think

16   actually it's 595.02, prescribes the process.

17           But the Court addresses specifically the nature of

18   the conduct that the process governs, and it goes right to

19   the core of the plaintiffs' medical condition and the

20   plaintiffs' claims in the case.  And so that decision in

21   this district, the Court very emphatically decided in favor

22   under Erie analysis pre-Shady Grove that the substantive law

23   of Minnesota would govern and prohibit, prescribe those

24   contacts of any kind absent a waiver.

25           Now, here we have a waiver in the *Nugier* case and

1     the *Kamke* case with the two first bellwether cases we have

2     limited releases of medical information.  By their own

3     language, they are limited to the information containing

4     medical records, which we're happy to give the defendants

5     and have.  In terms of, so bottom line is --

6                   THE COURT:  Hold on one second.

7                   (Judges conferring.)

8                   (In open court.)

9                   THE COURT:  So we don't really need Baycol or

10    anything.  And Rule 501 says in a civil case the state law

11    governs privilege regarding a claim where the state law

12    provides a rule of decision.  That's what you're talking

13    about.

14                  MR. GORDON:  Exactly, Your Honor.

15                  THE COURT:  Yeah.  We're not going to talk about

16    that substantively.

17                  MAGISTRATE JUDGE NOEL:  I was just going to say

18    you folks are, Ms. Ahmann and Mr. Gordon are well ahead of

19    me at least in terms of this issue.  I'm happy to hear it

20    and look forward to whatever briefing may come my way on it,

21    but I don't think we need to rule on it right now.

22                  MR. GORDON:  Understood, Your Honor.

23                  THE COURT:  No, I just wanted to --

24                  MR. GORDON:  I just wanted to respond to those

25    points of Ms. Ahmann, just so it was clear for the record.

1    And I will say, Your Honors, to the extent, and I think we

2    tried to Ms. Muscle or Mr. Blackwell may have indicated

3    this, if we can reach an agreement that is non-substantive,

4    that is scheduling only staff contacting physicians, which

5    has gone on already by both sides, and we're trying to work

6    together.  We're happy to do that and see if we can get

7    these depositions scheduled, so that this isn't even an

8    issue for the Court.  The larger issue is not ripe for

9    review I agree at this point.

10            THE COURT:  So I was only trying to make sure that

11   I understand the scope of what might be brought in the

12   motion.  There's no -- you wouldn't have to agree on the

13   propriety of scheduling contact, right?

14            MR. GORDON:  I would say, Your Honor, as long as

15   it is clear that the scheduling is not counsel but is staff,

16   because even some of the case law that I'm prepared to cite

17   the Court to including an MDL --

18            THE COURT:  But that's all just to protect against

19   substantive conversation.

20            MR. GORDON:  Precisely.  But sometimes there can

21   be bleed over.  There can be concern over reaching too far.

22   A physician picks up the phone and says, hey, what is this

23   all about?  This kind of thing.  As long as we're clear that

24   that can't happen right now and that the defendants haven't

25   done that and don't intend to, then we're fine with where

1    the status quo is at this time, and I'm happy to work with

2    them.  Thank you, Your Honor.

3                 THE COURT:  Ms. Ahmann?

4                 MS. AHMANN:  And, Your Honors, we did agree that

5    pending any further decision by the Court that we would

6    limit it to what we've been doing, which is just talking to

7    office personnel about scheduling.

8                 THE COURT:  Yes, and I just wanted to make sure

9    that you didn't think that you had to hold off on that

10   pending some action by the Court, and I think that that is

11   now clear.

12                Okay.  And continued general causation, discovery,

13   there's nothing to be done on that at this moment, correct?

14                MAGISTRATE JUDGE NOEL:  Correct.  I guess I would

15   just observe, and I have not set up a thing with telephones

16   this afternoon, so I anticipate only Dr. Augustine's counsel

17   and defense counsel being there at 1:30 for the hearing on

18   this further discovery into Dr. Augustine's latest article.

19                MS. ZIMMERMAN:  Your Honors, plaintiffs' counsel

20   has also filed a motion on point and will be present as

21   well.

22                MAGISTRATE JUDGE NOEL:  Okay.

23                MS. ZIMMERMAN:  Or response issues.

24                MR. BLACKWELL:  Otherwise agreed, Your Honor.

25                MAGISTRATE JUDGE NOEL:  Okay.

1           THE COURT:  It is all right with me.  I was just

2     going to point out to the cousins that he's always this

3     brief and concise.

4           All right.  Well, let's move then to the

5     dismissals, right?  All right.

6           MR. HULSE:  Good morning, again, Your Honors.

7     This motion, this is the third motion to dismiss based on

8     PFS deficiencies brought by the defendants.  Because this is

9     a larger group, 22, we've prepared a chart, which we

10    provided to plaintiffs' counsel the status of each one of

11    these.  There are a few we're no longer seeking dismissal on

12    based on the responses that have come in.  And with the

13    Court's permission, I would hand up a copy to your clerk as

14    a guide to the motion.

15          THE COURT:  Please.

16          MR. HULSE:  Is that all right?  And I did note on

17    here one error that the plaintiffs' counsel point out, one

18    case where we did withdraw the motion per our letter we

19    sent, and I have handwritten that in to what I'm providing

20    you right now.

21          THE COURT:  Okay.  Could you give me one?  How

22    many copies do you have in your hand?

23          MR. HULSE:  I have two in my hand, and I'll be

24    happy to provide those.

25          THE COURT:  Okay, two will have to do for the

1    moment.

2                MR. HULSE:  And I have more back at the table if

3    you'd like.

4                MR. GORDON:  And, Your Honor, so it's clear for

5    the record, I would like to inquire is that the Hood case?

6                MR. HULSE:  That's the Hood case.  That's exactly

7    right, which we're no longer seeking dismissal on.  And so,

8    Your Honor, most of these cases fall into the category of

9    the Spiech case, which the Court dismissed in the last round

10   where the plaintiffs' counsel say they've attempted contact

11   with the -- they don't dispute the deficiencies exist.  They

12   have not had contact with the plaintiff for six months, nine

13   months, 12 months despite multiple attempts.  And there's no

14   indication that the PFS is or the amendments to the PFS are

15   forthcoming, and so like the Spiech case, we seek dismissal

16   on that basis.

17                A couple that I just wanted to note because it's a

18   different issue that has come up before, there are a couple

19   of cases in group 3, the persistent PFS deficiencies where

20   the plaintiffs' response came in only last night.

21                THE COURT:  Last night?

22                MR. HULSE:  Last night, that's right.  And under

23   PTO-14, it's clear that the plaintiffs, if they're going to

24   oppose  one of these motions, must file their opposition

25   seven days before the status conference.  These concern a

1    couple of cases from the Levin Papantonio firm.  Levin

2    Papantonio negotiated PTO-14 with the defense counsel, and

3    so they're well aware of this deadline.  And our viewpoint

4    is that plaintiffs need to be held to the response deadline.

5    It can't be ignored.  And so even if there's a cure or

6    partial cure that comes in with the opposition that they

7    still should be dismissed with prejudice because they didn't

8    comply with PTO-14s briefing deadline.  But, otherwise, we

9    rest on the chart that I provided, Your Honor.

10          THE COURT:  When did you put this chart together?

11          MR. HULSE:  Last night.

12          THE COURT:  What time?

13          MR. HULSE:  At 5:00.

14          THE COURT:  So it didn't come in, it didn't come

15    dark of night.  They came in --

16          MR. HULSE:  No, they came in at 7:30, and so I

17    added those in this morning.  It's the very last page of the

18    chart.

19          THE COURT:  I see that.  I just wondered how late

20    it was.  I just wondered if it was --

21          MR. HULSE:  Yeah, 7:30.  I was at the Guthrie, and

22    it was just as the curtain was going up at 7:30.

23          THE COURT:  What did you see?

24          MR. HULSE:  Native Gardens.  It's about neighbors

25    that don't get along.

1    MAGISTRATE JUDGE NOEL:  Did you see it or did you

2    leave as soon as you got the text?

3    MR. HULSE:  I might have been looking at my phone

4    while the play was going on.

5    THE COURT:  Well, there's no intermission in that

6    play.

7    MR. HULSE:  There is no intermission in that play.

8    THE COURT:  So you're stuck.

9    MAGISTRATE JUDGE NOEL:  And I believe they make an

10   announcement about turning off your devices before they

11   begin.

12   MR. HULSE:  I know, and I do see that as a

13   potential consideration on our motion here, Your Honors, so.

14   THE COURT:  You walked into a buzz saw without

15   even, we're going to saw down your oak tree.

16   MR. HULSE:  I know.

17   THE COURT:  I'm just testing you to see if you

18   actually watched the play.

19   MR. HULSE:  I did.  It was pretty good, Your

20   Honor.

21   THE COURT:  That was a pretty vague comment.  I

22   don't think he understood the oak tree thing.

23   MR. HULSE:  And, Your Honor, it was the Brannon

24   and Pettersen cases that are on the page 4.

25   THE COURT:  So 16-275 and 16-221.

```
 1            MR. GORDON:  And those are my cases, Your Honor,

 2    and I'm prepared to address it.

 3            MR. HULSE:  And I updated the chart this morning

 4    to reflect that they came in last night.

 5            (Judges conferring.)

 6            (Law clerk turns judges' mic off.)

 7            MAGISTRATE JUDGE NOEL:  Here we thought we were

 8    being secretive.

 9            THE COURT:  Okay.  Only the people on the phone

10    can hear us.

11            (Laughter)

12            MR. HULSE:  I feel like I'm in an isolation booth

13    on the game show.

14            THE COURT:  Mr. Hulse, the law firm that you made

15    reference to that I thought you said is the firm that

16    submitted this last night.

17            MR. HULSE:  Yes.

18            THE COURT:  That must be from Miller, Nadeau,

19    Newcomb and Novak, right?  Because I think Mr. Gordon just

20    said that he represents Brannon and Pettersen.

21            MR. GORDON:  All six of those, in fact, Your

22    Honor, are Levin Papantonio cases.  There are two different

23    categories though; the four are in one category, and the two

24    --

25            THE COURT:  Oh, yeah, okay, got it, and that's
```

 1    your firm anyway.

 2             MR. GORDON:  Yes, Your Honor.

 3             MR. HULSE:  Yes, Your Honor.

 4             THE COURT:  Any cloud has been lifted.  The scales

 5    have fallen from the eyes, yes.

 6             MR. HULSE:  The oak tree has been left standing.

 7             THE COURT:  Okay.  Let's see if Mr. Gordon has

 8    anything that he wants to say before we determine whether we

 9    should just go to these case-by-case then.

10             MR. GORDON:  I'm happy to share the podium with

11    you if that facilitates whatever informal response.

12             Your Honors, I'd like to say first, generally, and

13    I understand there's been a lot of history to this, and Your

14    Honor has dismissed some cases in certain categories and

15    that's likely to happen today.  But I would like to at least

16    say first that this PFS process is a cumbersome and

17    complicated process and a very time-consuming and

18    painstaking on behalf of the defendants and plaintiffs'

19    counsel.

20             There's one very good example of that.  Just this

21    morning as we walked into the courtroom, and I was handed

22    this list, I observed with Ms. Zimmerman's list, that the

23    Hood case, which counsel spoke to, which we all agreed was

24    on here by mistake, never should have been on the motion to

25    begin with, was still on the list.  So the point I'm making,

1    Your Honors, is it's not easy for counsel for the defense or

2    for us to always comply to the letter with everything

3    required of PTO-14 under the PFS process.

4         I will say, Your Honors, we are all going to be

5    very diligent and using best efforts to get this done in a

6    timely fashion, and I think counsel will concede that we're

7    working together on it.  I'm not saying that our cases,

8    including the four Your Honor mentioned from my firm, that

9    the plaintiffs are essentially AWOL, Absent Without Leave.

10   And there are others from the Bernstein Liebhard firm, and

11   they may wish to be heard.  Dae Lee is on the phone.  I know

12   three of those I believe.  There are other cases that are in

13   that same category where after a period of months the

14   plaintiffs have simply been nonresponsive.

15        In essence, I would, as I did here a couple of

16   months ago, urge the Court to consider leniency and

17   understanding that this a complicated process and give these

18   plaintiffs one last effort to meet their requirement to

19   provide this PFS.  And I would just fall on my sword and ask

20   the Court to consider that as a last effort for these

21   plaintiffs.

22        In the other category, the category such as

23   Pettersen and Brannon, we did file our response.  I'm not

24   sure about the timing response.  Mr. Nigh in my office filed

25   that and those cases are a very different circumstance.

1    The, you know, they've been at various levels of compliance.

2    There's a contention now by Mr. Hulse, I believe, that the

3    medical authorization itself is somehow non-compliant.  I'm

4    not clear on how that is, but my point is we certainly have

5    worked with him on that case, the Brannon case, to comply,

6    and I believe we are in compliance now to the extent that we

7    may not be one hundred percent compliance, it's a

8    non-substantive, non-serious issue that we can fix

9    administratively, if that's all it is.

10           With respect to the Pettersen case, it's a little

11   different, Your Honor.  Mr. Pettersen is in hospice.  He's

12   not dying, but his infections have gotten so bad, my

13   understanding from talking to the medical staff is that he

14   can't get on the phone right now.  He is in 24 hour

15   infection control care and can't do this right now, and they

16   offered 30 days as an alternative.  Maybe that can be

17   enough.  We can't even get him on the phone right now

18   because he's in hospice because of how rampant this

19   infection is.

20           THE COURT:  When did he go into hospice?

21           MR. GORDON:  I don't exactly know, but it's been a

22   fairly lengthy period of time.  We've been trying to reach

23   him for at least the last -- I don't want to tell you

24   wrongly.  I can find that out from my colleague Mr. Nigh,

25   but I believe it's been at least the last month or so, maybe

1     even longer.  I can get you a definite answer to that.

2              But in that case, and in Brannon in particular and

3     cases like that, I would suggest to Your Honor that it's a

4     harsh result, the harshest result to dismiss with prejudice

5     the case of a plaintiff who is either in compliance or

6     trying very diligently to get into compliance.

7              THE COURT:  Well, let's go through and make sure

8     we know which ones are -- yeah, okay.  So let's isolate the

9     cases that fall into the first category first, and that

10    would be Perez.  Somebody say yes or no.

11             MR. HULSE:  Yes, Your Honor.

12             MR. GORDON:  Yes, Your Honor.

13             THE COURT:  Raymond?

14             MR. HULSE:  Yes.

15             MR. GORDON:  Yes.

16             THE COURT:  Sanders?

17             MR. GORDON:  Yes.

18             THE COURT:  I skipped Butkus because that's a

19    separate --

20             MR. HULSE:  That's correct, Your Honor.

21             MR. GORDON:  I believe a response of some kind has

22    been filed.

23             THE COURT:  I just wanted to let you know I didn't

24    skip that by accident.  Stouffer?

25             MR. HULSE:  Correct, Your Honor.

```
 1                    MR. GORDON:  Yes.

 2                    THE COURT:  Miller?

 3                    MR. GORDON:  Yes, I think that's right, Your

 4       Honor.  I think that's in the same category.

 5                    THE COURT:  Nadeau?

 6                    MR. GORDON:  Yes, Your Honor.

 7                    THE COURT:  Newcomb?

 8                    MR. GORDON:  Yes, Your Honor.

 9                    THE COURT:  And Novak?

10                    MR. GORDON:  Yes, Your Honor, those four are mine.

11                    MR. HULSE:  Yes, Your Honor.

12                    THE COURT:  Anybody else?  Buttacavoli?

13                    MR. HULSE:  Buttacavoli has been dismissed.

14                    THE COURT:  Is off anyway.

15                    MR. HULSE:  Correct.

16                    THE COURT:  Burks you're not moving on right now.

17                    MR. HULSE:  Correct.  McGee is the other one that

18       was dismissed with prejudice, by stipulation.

19                    THE COURT:  Which one?

20                    MR. HULSE:  Magee.  It's on list 2.

21                    THE COURT:  There it is.  That's out.  And

22       Starnes?

23                    MR. HULSE:  No opposition filed.

24                    MR. GORDON:  Your Honor, Mr. Parekh of our

25       Executive Committee represents the Starnes case and that is
```

1    in that same category of cases that through diligent effort

2    the plaintiff has been nonresponsive.

3              THE COURT:  So that will be dismissed as well.

4              What about Upton?

5              MR. GORDON:  Your Honor, I believe the Kennedy

6    Hodges firm has filed a response on that one and others, am

7    I correct?  I think Donald Green --

8              MR. HULSE:  That's correct.  Yes, Rivers and Upton

9    are ones where it turns out that the plaintiff had died

10   about nine months ago.  PFSs were still submitted.  No date

11   of death was provided on the PFSs.  We were not informed

12   that they had died, and we just learned it through the

13   oppositions that were filed.

14             MR. GORDON:  I'm not aware, Your Honor, if there's

15   a rule or law that requires a notice of suggestion of death.

16   I think the complication of that is that it takes time when

17   people die to figure out what happened to them, and it took

18   many months to figure out that to family members that the

19   plaintiff had actually passed away.  Some states, as Your

20   Honors are well aware, do allow, Florida does and I believe

21   Texas does, and other states allow a survival action even if

22   it's not necessarily a wrongful death case, and so those

23   plaintiffs still have substantive rights.  But the exigency

24   of death that prevented both sides from understanding what

25   had happened for a period of time is the reason that those

1    were delayed so long, and we would ask those plaintiffs to

2    give a limited period of time to contact the families and

3    see if they want to pursue their action.

4              MR. HULSE:  Your Honor, the problem here is that

5    the plaintiffs' counsel state that they were aware of these

6    deaths in November of 2016, and several months later they

7    submitted PFSs on behalf of these individuals.  The PFS

8    itself does not ever disclose that the person had died.  The

9    PFS asked to state the death and address and the place of

10   death.  It's not stated.  It's just indicated as unknown.

11   Perhaps that was meant as a hint that they had died, that

12   date and address and place of death unknown, but you would

13   think that we know that that was known to plaintiffs'

14   counsel at the time that these PFSs were submitted, so --

15             MAGISTRATE JUDGE NOEL:  Is there an entry on the

16   PFS for alive or dead?

17             MR. HULSE:  It's, no, the question is if you

18   represent a decedent's estate, state the date and address of

19   the place of death, and it simply states "unknown."  But

20   there is not otherwise a question --

21             MAGISTRATE JUDGE NOEL:  I guess where would a

22   plaintiff submitting a PFS indicate that they were dead if

23   there was not yet an estate established?

24             MR. HULSE:  In that question.  Oh, if there is not

25   yet an estate established?

1          MAGISTRATE JUDGE NOEL:  So if a guy dies

2     yesterday, his PFS is due today, where do you put down, "oh,

3     by the way he's dead?"

4          MR. HULSE:  That isn't a specific question in the

5     PFS.

6          MAGISTRATE JUDGE NOEL:  Okay.

7          MR. GORDON:  That's a great question, Your Honor.

8     Perhaps we can try to include a question on that so that in

9     the case where a person representative has been appointed,

10    you know, that there's a duty on behalf of counsel to notify

11    or to find that out and to notify the other side of it.

12          THE COURT:  But there has to be something,

13    otherwise, you can't be submitting a PFS on behalf of a

14    deceased individual without some kind of a -- something that

15    it strikes me would, you know, in a fair reading of the

16    plaintiff fact sheet, you might not actually represent the

17    estate, but by some authority, you are signing for the

18    deceased.  So, boy, I mean just this wasn't you, Mr. Gordon.

19          MR. GORDON:  No, I don't know the intimate details

20    of these cases, and we couldn't get others to speak to

21    those, so I don't want to speak out of school.  But I would

22    think that if that had happened to me, those were probably

23    the ones where the plaintiff's fact sheet was not verified

24    because they couldn't get anyone to do so at that time, and

25    the staff for that law firm was doing their utmost to

1    complete the PFS based on the medical records that they had

2    received from doctors and to get it as complete as possible

3    up to the point where the plaintiff was lost to contact and

4    they were trying to figure out what happened.

5              THE COURT:  So it was related to what we talked

6    about some time ago about the utility or nonutility of

7    verification?

8              MR. GORDON:  Indirectly, yes, Your Honor, I

9    suppose in those cases, a verification and re-verification

10   would be important, and we're doing that, doing our utmost

11   to do that now.

12             MR. HULSE:  Your Honor, you would just think that

13   sometime in the last six, seven or eight months that there

14   would have been either an amendment to the PFS or some

15   indication that's given to defense counsel that this person

16   had died.  As this point, it may turn out that there are

17   many people in the pool of cases that this applies to, but

18   the first time that we became aware of this specific kind of

19   situation was these two cases where we only learned through

20   the opposition motion to dismiss that the person has died

21   nine months ago.

22             MR. GORDON:  And, Your Honors, I guess I would

23   just --

24             THE COURT:  Hold on a second.  Is the lawyer on

25   the phone for Rivers and Upton?

1          MR. HULSE:  Mr. Assaad is here, I believe, or

2     Mr. Hodges, I guess.

3          MR. HODGES:  Yeah, Your Honor, I can speak to

4     that, although my associate was the one that was

5     communicating with the family.

6          THE COURT:  This is David Hodges.

7          MR. HODGES:  Yes, Your Honor.  David Hodges on

8     behalf of those plaintiffs.  I will say that as I recall

9     under these circumstances where someone dies, we don't get a

10    phone call the next day saying, hey, this person has died.

11    Often when we reach a relative, their intent is at that

12    point not clearly established on whether they're going to

13    proceed.  And when they have told us, yes, I want to

14    proceed, I'm going through probate or I'm going to be

15    appointed the administrator, we're waiting for that to

16    happen.  So I think that helps to explain the delay in a

17    case like this.  And I think when you put on the PFS, the

18    only spot you can date of death unknown, it's clear the

19    person is dead.

20         THE COURT:  But what about the verification

21    aspect?

22         MR. HODGES:  I think those were unverified, Your

23    Honor.  They were filed unverified.

24         THE COURT:  But pursuant to what authority would a

25    law firm file a PFS on behalf of a deceased individual

1  without getting some, I guess, by what authority can you

2  file something on behalf of somebody who is no longer with

3  us?

4          MR. HODGES:  Well, actually we were given

5  authority by the decedent to act on their behalf, and we

6  have a duty to preserve the claim.  We have to file

7  something, of course.

8          THE COURT:  Right, but once you find out that the

9  person isn't alive anymore, then isn't there an obligation

10  to correct what you -- I mean you wouldn't know at the time.

11  You're given the authority.  You file it, of course, you

12  would.  You don't immediately find out that the person has

13  died because why would you be the first person that the

14  bereaved family would call?

15          MR. HODGES:  Right.

16          THE COURT:  But once you find out after you have

17  filed something on behalf of somebody who is dead and

18  couldn't actually authorize it at the time, isn't there an

19  obligation to do something about that rather than just

20  letting that apparent authorized statement sit out there?

21  You know to say, okay, it turns out the person was dead at

22  the time, but we still think that they might -- that they

23  might want to pursue it, so here's what we're doing.  It's

24  just to let all of the months go by while you and only you

25  in the context of a case know that there may or may not be

 1    authority to proceed on that case's behalf.

 2             MR. HODGES:  Yeah.  Your Honor, I'm not aware of

 3    any requirement that would require us then to communicate

 4    with the defendant our communications with the family at

 5    that point as far as moving forward.  And I think it really

 6    also varies state to state as far as who can continue those

 7    substantive claims.  Sometimes an administrator may need to

 8    be appointed, sometimes not.

 9             THE COURT:  What was the date?  Wasn't there a

10    requirement for verification that came and went at some

11    point in there?

12             MR. HULSE:  Well, the requirement is that the PFS

13    be verified at the time it's submitted and then we had

14    argument a few months ago where the Court made clear it

15    wasn't going to release any of the plaintiffs from the

16    obligation to verify both original and amended responses.

17             THE COURT:  Right.  So it's that -- at that point,

18    I mean there have been, what, at least a couple of months

19    that have gone by since the requirement of verification was,

20    -- what's the word -- not "emphasized," but that it was made

21    clear that that requirement was not going away, and so that

22    only relates to the timeliness of the responses.

23             So what is the situation with Rivers?  How close

24    are we to getting an answer on that?

25             MR. HODGES:  I don't know the answer to that, Your

1    Honor.  I would have to ask my associate about that.

2              THE COURT:  And same with Upton?

3              MR. HODGES:  Same thing.

4              THE COURT:  Okay.  Thanks very much.

5              MR. HULSE:  Your Honor, if I could just add one

6    thing.  The oppositions that were filed by Mr. Hodges' firm

7    both state that they had contact with a relative in November

8    of 2016 where they were informed that the plaintiff had

9    died.  So they were aware of this several months before they

10   submitted the PFS's on behalf of those plaintiffs.

11             MR. GORDON:  Well, I would just say in response

12   again, Your Honor, that period of time where it takes a lot

13   of time sometimes not the first priority is an ongoing

14   lawsuit to figure out if the plaintiff, whoever that is,

15   under the wrongful death law of that state or the other law

16   of that state in terms of probate matters wants to pursue it

17   or not, and what the process is for that.  It can be a

18   time-consuming process.

19             So I would just ask that I don't think there's any

20   real prejudice to 3M in these two cases, but those

21   plaintiffs be given, you know, and the law firm to be given

22   30 days to figure out if they want to pursue it or not, and

23   if so, to comply fully with the PFS.  And if they cannot,

24   then the court case will be subject to dismissal.

25             MAGISTRATE JUDGE NOEL:  If the plaintiff were

 1   alive, what's the date on which this verification or

 2   re-verification should have occurred?

 3           MR. GORDON:  Sorry, Your Honor.  At the time they

 4   submit the PFS, they have to sign it verifying the answers

 5   are true and accurate.  If they are new ones, then they have

 6   to re-verify based on --

 7           MAGISTRATE JUDGE NOEL:  And that is a deficiency

 8   upon which you are relying?

 9           MR. HULSE:  Correct.

10           MAGISTRATE JUDGE NOEL:  Okay.

11           MR. HULSE:  Yes.  And so verifications, the PFSs

12   and the verifications were due in fact in December of last

13   year because these were early filed cases.

14           THE COURT:  And then I'm saying to the extent

15   there might have been a question about whether the

16   requirement for verification could have been lifted, any

17   confusion about that was removed when we ruled a couple

18   months ago.

19           MR. HULSE:  In fact, Your Honor, there's never

20   been a dispute that the original PFS, and this is what we're

21   talking about here, the original PFS had to be verified.

22           THE COURT:  But they might say that there's an

23   amendment in that the person has died now.

24           MR. HULSE:  Yes, and that's been clear for a

25   couple of months.

1               THE COURT:  All right.

2               MR. GORDON:  Your Honor, if I could go back to

3       Brannon for one moment and just mention I've been notified

4       by my partner at the office who filed our response that the

5       Complaint over, which is pointed out in this chart on

6       page 4, the concern over a noncompliant medical

7       authorization appears to be some kind of electronic glitch.

8       We believe the authorization is accurate and complete and

9       compliant, but because I believe 3M or the defense counsel

10      uses some kind of a robo process.

11              MR. HULSE:  It's plaintiffs' counsel process, not

12      ours.

13              MR. GORDON:  It's a process for both sides.  I

14      think the fact is I think there's a process by which you

15      review these for deficiencies is an automated process, is it

16      not?

17              MR. HULSE:  No, humans do it.

18              MR. GORDON:  Okay, all of it.  Okay, well, my

19      understanding was that there was some automation because

20      sometimes we get boilerplate --

21              THE COURT:  Are you talking about Brannon?

22              MR. GORDON:  Yes, Your Honor.

23              THE COURT:  Okay, I'm not ready to move to Brannon

24      yet anyway.

25              MR. GORDON:  Okay.  Thank you, Your Honor.

1           THE COURT:  With respect to Rivers and Upton, I

2    will stay a dismissal order for two weeks and give counsel

3    the opportunity to submit persuasive argument or

4    documentation with respect to why they -- why the dismissal

5    order should not be entered.

6           And I am concerned about the potential misleading

7    nature of the PFS at the time it was submitted, and the

8    authority under which the PFS was submitted, if in fact

9    counsel knew that the injured people had died, and they

10   didn't actually have authority, and we don't still know

11   what's going to happen.  So I'll give two weeks to stay

12   that, but two weeks from today the dismissals will be issued

13   otherwise in Rivers and Upton, so that then leads us.

14           MR. GORDON:  Thank you, Your Honor.

15           THE COURT:  Now we can talk about others.  And,

16   Mr. Gordon, you want to talk about Brannon, but what you

17   want to say is that it was really on time.  Maybe,

18   Mr. Hulse, you're going to withdraw your motion to dismiss

19   on Brannon.  I don't know.

20           MR. HULSE:  What we're asking, Your Honor, is that

21   PTO-14's requirement that an opposition be filed seven days

22   before the status conference is enforced.

23           THE COURT:  What if he really did it, and it's

24   some kind of a computer glitch?

25           MR. HULSE:  Well, I'm sure that we wouldn't move

1    to dismiss in a situation like that.

2              THE COURT:  Okay, so we'll just hold off and see

3    -- well, no.  Forget I said that.  We'll just --

4              MR. HULSE:  I think the suggestion was that the

5    issue with the authorization was a computer glitch, not that

6    the late submission of the opposition was a computer glitch.

7              THE COURT:  I see.  Is that what you said,

8    Mr. Gordon?

9              MR. GORDON:  That's right, Your Honor.  If the

10   response motion was not timely filed, that is a clerical

11   error on our part.  It should have been filed on time, and

12   we would ask the Court's indulgence on that, but my point is

13   that it is fully compliant now.

14             The question here with the medical authorization,

15   I think it's some kind of a perhaps a computer glitch.  I'll

16   look into that further, but we believe they have a full

17   medical authorization.  And if they don't, we can get to the

18   bottom of that very easily.

19             All right.  Let's go to Butkus, 16-4353.

20             MR. HULSE:  All right.  We did get a PFS, an

21   unverified and incomplete PFS in on Friday after the

22   opposition deadline.  Plaintiffs' counsel indicates in their

23   submission that they haven't had any contact with the

24   plaintiff since April 6th of 2017, despite many attempts.

25   And so they submitted an unverified PFS based on the

1    information that they had in their records.  There's no

2    statement or evidence that he's got any, Mr. Butkus has any

3    hardship right now that would make it impossible for him to

4    comply with PTO-14.  I don't think there's really any

5    serious dispute that what's been submitted on his behalf

6    doesn't comply with PTO-14, so we'd ask that case be

7    dismissed with prejudice as well.

8            MR. GORDON:  And, Your Honor, this is not my case.

9    I believe the McGlynn law firm filed a response.  They may

10   have someone on the phone who may wish to be heard.

11           THE COURT:  Anyone from the McGlynn firm we're

12   talking about 16CV4353?

13           MR. GORDON:  The Butkus case, anyone?

14           THE COURT:  I hear nothing.

15           MR. GORDON:  It does appear that Mr. Butkus faces

16   some kind of hardships presently.  I don't know what those

17   are.  I can't speak to the specific facts.  But to the

18   extent that he faces real hardships and is trying to comply,

19   we would ask the Court to give him some period of time to

20   try to do that.

21           MR. HULSE:  And to be clear, what the plaintiff's

22   opposition says is that as of the last contact he was having

23   financial hardship, and also that his wife had been

24   diagnosed recently with MS.  That's the last contact that's

25   described.  And while those are no doubt serious issues,

1    there's no showing that there's any kind of present

2    hardship.  And in fact, there's been no contact at all with

3    this plaintiff according to his counsel's submission for

4    four months.

5              THE COURT:  And what came in on Friday was

6    unverified.

7              MR. HULSE:  Unverified and incomplete.  Extremely

8    incomplete.

9              THE COURT:  Okay, that case is dismissed.

10             Busby, 16-2156.

11             MR. HULSE:  Your Honor, I suggest that this is

12   like the other cases where plaintiffs' counsel say they've

13   tried to -- they don't dispute the deficiencies.  They say

14   they've tried to contact their client for many months and

15   have been unable to, so this one, like the ones in the first

16   group, should be dismissed with prejudice.  Here, there's

17   been no contact since March 21 of 2017, according to the

18   plaintiffs' submission.

19             MR. GORDON:  If I may confer for one moment, Your

20   Honor?

21             (Off the record discussion between Mr. Gordon and

22   plaintiffs' counsel.)

23             MR. GORDON:  Your Honor, I think those cases are

24   the Kennedy Hodges firm cases.  As we've argued before,

25   those plaintiffs have been difficult to reach and elicit

1    full compliance.  We would ask that they be given a period

2    of time if the Court would indulge them, and beyond that, I

3    can't speak to the specifics of why those plaintiffs have

4    not complied.

5                THE COURT:  Dismissed.

6                MR. HULSE:  Your Honors, Davis is the same

7    situation there.  There's been no contact with the plaintiff

8    since August of 2016.

9                MR. GORDON:  When I said "those," I thought we

10   were talking about both Busby and Davis.

11               THE COURT:  Okay.  They are dismissed.  Gill?

12               MR. HULSE:  No opposition filed.

13               THE COURT:  Anybody on the phone for Gill?

14   16-4412?  Gill is dismissed.  Hartzel?

15               MR. HULSE:  Same situation, Your Honor, as Busby

16   and Davis.  No contact with the plaintiff since November

17   30th of 2016.

18               THE COURT:  Anybody want to talk about Hartzel,

19   16-1338?

20               MR. GORDON:  Same situation, Your Honor.

21               THE COURT:  Dismissed.

22               MR. HULSE:  We've discussed Rivers and Upton.

23               THE COURT:  And Hood, of course.  Starnes?  Nope,

24   no need to talk about Starnes.

25               Okay, then Brannon, which we have talked about.

```
 1    Have we squeezed all the juice out of the Brannon apple?

 2         MR. GORDON:  Well, it depends on you, Your Honor.

 3    I believe we have complied.  We were late.  We have done our

 4    best to comply as promptly as possible.  We believe we're in

 5    compliance now.  If there is some irregularity to the

 6    medical authorization, we will ask you to correct that

 7    immediately.  We will ask you not to dismiss that case.

 8         THE COURT:  But you can't think you're in

 9    compliance because it's not verified.

10         MR. GORDON:  I believe it is verified, Your Honor.

11         MR. HULSE:  We do have a verification with this.

12    We have the formal medical authorization.  Our primary

13    reason that we're seeking dismissal is we think that the

14    deadline, which again was negotiated by Mr. Gordon for the

15    opposition dates, should be enforced.

16         MR. GORDON:  Your Honor, we respect deadlines and

17    we do our dead level best to meet them, and I will say we

18    cannot always --

19         THE COURT:  Just -- is there any specific

20    prejudice?  I mean I know that there would be prejudice if

21    we just start disregarding time deadlines but is there

22    anything in particular about the Brannon case that would

23    cause problems if we -- I'm inclined not to dismiss Brannon

24    right now.

25         MR. HULSE:  Right.  You've heard my argument.
```

1   Other than my personal inconvenience in having to look at

2   read objections that come in late the night before, there's

3   no other prejudice.

4         THE COURT:  So we'll have a new category on ECF

5   that is "CFYP," for "Court Feels Your Pain."  But that

6   motion is denied without prejudice to renew if there are

7   additional problems that come up.  And then I believe we

8   dismissed or I dismissed Miller, Nadeau, Newcomb and Novak.

9         MR. GORDON:  Yes, Your Honor.  And Pettersen is

10  the gentleman who is in the intractable infection situation

11  in a hospice care right now, and we just ask the Court's

12  indulgence to give us a little time to try to communicate

13  with him.

14        THE COURT:  All right.  And that motion to dismiss

15  is denied as well.

16        MR. HULSE:  Your Honor, on Pettersen, we just ask

17  that a date be set for his compliance.  We can revisit that

18  date if --

19        THE COURT:  "Get up off that bed."

20        MR. GORDON:  Exactly, Your Honor.

21        THE COURT:  "And sign this document."

22        MR. GORDON:  I would commit to this Court and to

23  Mr. Hulse to personally be involved with trying to

24  communicate with that gentleman and give him our earliest

25  possible response.  I hate to say 30 days, if the doctors

 1     tell us we can't talk to him for 30 days.  I just don't

 2     know.

 3              MR. HULSE:  We're obviously not going to move on

 4     this case if those are the circumstances.  And we didn't

 5     know those were his circumstances until we saw the

 6     opposition last night.

 7              THE COURT:  Okay.

 8              MR. GORDON:  Thank you, Your Honor.

 9              THE COURT:  Anything else from the Blackwell side

10     of the world?

11              MR. BLACKWELL:  No, Your Honor.  Although, I will

12     have to say to the Court it's difficult from our end too.  I

13     mean the Court will feel their pain, but oftentimes we don't

14     even hear this until we come into court and we've wasted all

15     this time coming up to this.  We spent a lot of time on

16     these orders, and as Your Honor knows, the parties need to

17     kind of do their best to comply with them.  So we don't know

18     what to do when we have this sort of non-compliance, and we

19     wait to come in, and trust me, when Your Honor identifies

20     something called "CFYP," that's going to be a very broad

21     river that Your Honor said that before we're done.

22              THE COURT:  On the positive side, imagine what

23     would happen if we didn't have these regular status

24     conferences.

25              MR. BLACKWELL:  Oh, yes.

1          THE COURT:  So there's that.

2          MR. GORDON:  Your Honor, I will say that we are in

3    regular communication with Mr. Hulse by e-mail and phone on

4    these issues.  And weekly if not daily trying to elucidate

5    the problems in this PFS process and difficult complicated

6    cases where people have died or people are in hospice care.

7    It's not as though we're ignoring it.  We certainly do try

8    to meet the defendant halfway on this.

9          THE COURT:  We in a moment will be in recess.  And

10   I want to invite counsel back to chambers.  And,

11   Mr. Blackwell, you can bring your guests, if you'd like.  I

12   don't anticipate that there will be a lot of substantive

13   discussion.  It's up to you.

14          Plaintiffs' counsel, bring whoever you would like

15   back.  If you want to run out and meet some people on the

16   street, as long as they can get through the metal detector

17   downstairs.  So we'll do that.

18          And hearing only from Mr. Hulse, we may be in

19   recess shortly but we're not yet.

20          MR. HULSE:  Perhaps this is something that can be

21   discussed in chambers.  We just, ad I'm sure this goes with

22   plaintiffs too, would like some additional guidance on the

23   scheduling of the Daubert and summary judgment hearing and

24   also Judge Leary's expectations about concurrent filings of

25   motions.  So maybe that's something we can discuss back in

1    chambers.

2              THE COURT:  All right.

3              JUDGE LEARY:  Motions going forward?

4              MR. HULSE:  Yes.

5              THE COURT:  Okay.  We're in recess.

6                   (Court adjourned at 10:16 a.m.)

7

8

9

10                        *      *      *

11

12

13         I, Maria V. Weinbeck, certify that the foregoing is

14    a correct transcript from the record of proceedings in the

15    above-entitled matter.

16

17              Certified by:  *s/ Maria V. Weinbeck*

18                             Maria V. Weinbeck, RMR-FCRR

19

20

21

22

23

24

25