UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR　　　　　　　　　MDL No. 15-2666 (JNE/FLN)
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

**ORDER**

---

Genevieve Zimmerman, for Plaintiffs.
Monica Davies and Corey Gordon, for Defendants.
J. Randall Benham, for Respondent Scott Augustine *et al*.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 17, 2017, on Defendants' motion for Augustine discovery (ECF No. 623). For the reasons that follow, Defendants' motion is **GRANTED in part** and **DENIED in part**.

**A.    Background**

On May 18, 2017, the Court ordered that Defendants' would have an additional four hours to depose Dr. Scott Augustine.[1] *See* Order, ECF No. 498. In July 2017, Dr. Augustine published an article in *Orthopedic Reviews*, examining studies conducted at three unnamed hospitals comparing the safety of forced air warming technology against conductive fabrics. *See generally* Davies Decl., Ex. 1, ECF No. 626. The studies concluded that patients treated with conductive fabrics during total hip and knee replacement procedures were less likely to experience surgical site infections than patients treated with forced air warming technology during comparable procedures. *See generally*

---

[1] The complete factual background of this case can be found in the Court's previous Orders. *See, e.g.*, Orders, ECF Nos. 501, 589.

*id.* Dr. Augustine's article was identified during the July 2017, deposition of Plaintiffs' expert, Dr. Jonathan Samet, as material "that may have impacted [Samet's] opinion in this matter." Davies Decl., Ex. 2 at 8, ECF No. 626. Dr. Augustine's article was also mentioned during the July 2017, depositions of Defendants' experts, Dr. Jonathan Borak and Dr. Theodore Holford. Davies Decl., Ex. 3 at 13–14, ECF No. 626; Davies Decl., Ex. 4 at 18–25, ECF No. 626.

In the instant motion, Defendants seek discovery related to Dr. Augustine's article. *See generally* Defs.' Mem. in Supp., ECF No. 625. Specifically, Defendants seek "the Court's leave to take discovery of the three hospitals" referenced in Dr. Augustine's article. *Id.* at 1–2. Defendants argue that they "should be allowed to obtain the underlying data relied upon by Dr. Augustine, the study protocols, and communications about the data, and should be permitted to depose the hospitals," and depose Dr. Augustine for an additional five hours, for a total of nine hours. *Id.* at 2. Plaintiffs and Dr. Augustine oppose Defendants' request, arguing that Defendants have not established the requisite "good cause to reopen discovery, and the excessive and disproportionate discovery sought by Defendants would introduce severe prejudice and avoidable delay at this stage of the proceedings." Pls.' Opp'n Mem. 2, ECF No. 659. Plaintiffs further represented at the hearing that they did not intend to introduce the article as evidence during trial, and would only cite to the article at trial to the extent Defendants initiate testimony on it.

**B.    Legal Standard**

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). A party moving to modify a scheduling order must: "establish good cause for the proposed modification." D. Minn. L.R. 16.3(b)(1). A "party seeking a court order to extend the [deposition] examination, or otherwise alter the limitations, is expected to show good cause to justify

2

such an order." Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment.

**C.   Analysis**

The Court concludes that Defendants have shown good cause to obtain discovery related to the data underlying Dr. Augustine's article. *See* Fed. R. Civ. P. 16(b)(4). Although Plaintiffs represent that they will not proffer the article as evidence in support of their case-in-chief, the July 2017, depositions of Plaintiffs' and Defendants' experts demonstrates that those experts are aware of the article, that the article had been evaluated and considered by those experts before they were deposed, and the article may have impacted their positions regarding the safety of forced air warming. The depositions show that those experts disagree about the scientific value of the article and the methodology used to reach the findings described therein. Given the recency of the article's publication and the parties' diverging positions on its content, good cause exists to permit limited discovery into the matter. *See* Fed. R. Civ. P. 16(b)(4). Therefore, Defendants are entitled to discovery relating to: the underlying data relied upon by Dr. Augustine in drafting the article, the study protocols used in drafting the article, and the communications about the underlying data shared between Dr. Augustine and the hospitals referenced in the article.

However, Defendants have not shown good cause for an additional five hours to depose Dr. Augustine, or to depose the hospitals referenced in the article. *See* Fed. R. Civ. P. 16(b)(4). As to Dr. Augustine, the Court has already allocated eleven hours for his deposition, and previously approved a deposition time extension. *See generally* ECF No. 498. Defendants have not shown how Dr. Augustine's article, a few pages in length, necessitates *five* additional hours to depose him, or why the significant deposition enlargement is needed in addition to written discovery related to the article. *See, e.g.*, Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment (advising that

3

when a court considers a deposition time extension request, it may consider a variety of factors, including when the witness is presented with "numerous or lengthy documents"). Defendants certainly may ask Dr. Augustine about his article and the underlying data used to draft it during the remaining deposition time, but their request for an additional five hours to depose him is denied.

Similarly, as to the hospitals referenced in Dr. Augustine's article, Defendants have not shown good cause for why their depositions are needed considering that Defendants will have an opportunity to obtain both written discovery from the hospitals and Dr. Augustine's testimony addressing the underlying data used in his article. *See* Fed. R. Civ. P. 16(b)(4). This is particularly crucial given the litigation stage and Defendants' representation at the hearing that they have already been in communication with Ridgeview Medical Center, a hospital that they suspect participated in the studies referenced in Dr. Augustine's article, regarding its communications with Dr. Augustine addressing his position on forced air warming technology. Through written discovery and Dr. Augustine's deposition, Defendants will have discovery relating to the underlying data used by Dr. Augustine in support of his article. However, at this litigation stage, late third-party discovery requests and extra depositions must stop and the "record must hold still, and [the Court] must be able to decide the case based on the record before it." *Land O'Lakes, Inc. v. Emp'r Mut. Liab. Ins. Co. of Wis.*, 846 F. Supp. 2d 1007, 1017 (D. Minn. 2012).

**D.     Order**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion for Augustine discovery (ECF No. 623) is **GRANTED in part** and **DENIED in part** as follows:

1.     Defendants' request for the underlying data relied upon by Dr. Augustine in drafting

    his July 2017, article, published in *Orthopedics Reviews*, the study protocols used in drafting the article, and the communications about the underlying data shared between Dr. Augustine and the hospitals referenced in the article, is **GRANTED**.

2.    In all other respects, the motion is **DENIED**.

DATED: August 18, 2017          *s/Franklin L. Noel*
        FRANKLIN L. NOEL
        United States Magistrate Judge