UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | MDL No. 15-2666 (JNE/FLN) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

**PLAINTIFFS' RESPONSE MEMORANDUM REGARDING 3M'S UNTIMELY DISCOVERY REQUEST COUCHED AS A "MOTION FOR DISCLOSURE OF COUNSEL'S COMMUNICATIONS WITH TREATING PHYSICIANS"**

**PRELIMINARY STATEMENT**[1]

As an initial matter, Plaintiffs maintain 3M's motion is not properly before this Court for at least the following reasons:

First, the meet and confer statement attested to by Monica L. Davis, certifies "that counsel for the parties conferred regarding Defendants' motion as part of the August 17, 2017 status conference . . .." (Defendants' Meet and confer statement.) Undersigned counsel are aware of no such conferral concerning the instant Motion for Disclosure of documents, and the record is devoid of any suggestion by Counsel that they either requested any such documents or that Plaintiffs' had failed to produce such documents. The matter raised by Counsel for 3M at the status conference related strictly to Plaintiffs'

---

[1] The conduct 3M now complains of in their assertion that "counsel has a documented record of using their exclusive access to Plaintiffs' treaters to 'educate' the treaters with documents helpful to Plaintiffs' theory of the case" (3M Memorandum, at p. 1), relates to events that occurred long before the existence of this MDL, in the case styled *Walton v. 3M Company, et al* (2015), 4:13-CV-1164).  While Plaintiffs' counsel maintain communications with their clients' treating physicians are necessary, appropriate, and protected under the law, 3M's current assertions bear no connection to activity in this MDL and have no relation to any of the Bellwether plaintiffs or their treating physicians.  As such, 3M's efforts to imply that Counsel have somehow engaged in conduct they deem unfair or improper is both factually unfounded and legally unsupported.

1

objection to any substantive, *ex parte* contact by 3M with Plaintiffs' treating physicians. (*See* August 17 Status Conference Transcript at 19-25, Exhibit A.) The current motion goes far beyond the issues discussed with Plaintiffs and presented in Court, which focused on whether Counsel for 3M either had, or could have, substantive contact with Plaintiffs' treating doctors. At no time did counsel for 3M raise with Plaintiffs' counsel or the Court any question concerning the issue they now assert, seeking production of documents they speculate counsel *may* have shared with plaintiffs physicians. To be clear, Counsel for 3M did not raise the current motion during the status conference, assuming for sake of argument that having done so might fulfill the meet and confer requirements of the rules. Counsel for 3M ignored their obligation to meet and confer on the specific relief they now ask this Court to grant in their Motion for Disclosure, and for this reason alone, their Motion should be denied. (*See generally* Transcript of August 17 Status Conference, at 18-25, Exhibit A.)

Next, the proper procedural vehicle for counsel to seek written communications, if any exist, from third parties, is to undertake ordinary discovery measures, such as requests for production, as provided for under the Federal Rules of Civil Procedure. Counsel for 3M is quite familiar with the rules, proficient in the art of discovery, and surely could have propounded discovery on this issue long ago had they chosen to do so. No such requests to produce have been propounded, and no opportunity has been given—as required under the Rules—for Plaintiffs' counsel to consider and respond to such discovery requests. In short, 3M's "disclosure" request is tantamount to a Motion to Compel, which would be deemed premature in the absence of any actual discovery

2

request and dispute. Accordingly, their efforts to circumvent the Rules of Civil Procedure by requesting "disclosure" of communications between Counsel and Plaintiffs' treating doctors should be denied.

## **ARGUMENT**

A. 3M'S MOTION INCONGRUOUSLY ASKS THE COURT FOR PRODUCTION OF DOCUMENTS IT ALLEGES MAY EXIST, WITHOUT ANY SHOWING THAT SUCH DOCUMENTS HAVE BEEN REQUESTED THROUGH THE NORMAL DISCOVERY PROCESS, AND SIMULTANEOUSLY ASKS THE COURT TO HOLD THAT *SHADY GROVE* VITIATES ESTABLISHED STATE LAW, THOUGH SEEKING NO AFFIRMATIVE RELIEF OTHER THAN PRODUCTION OF DOCUMENTS.

In essence, 3M seeks from this Court two things: (1) discovery relating to unknown communications between Plaintiffs' treating physicians and Plaintiffs' counsel and (2) an advisory opinion asking that this Court interpret *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) to trump or preempt long-established Minnesota law protecting the sanctity of the physician-patient privilege. Both because these matters are not properly raised in the current motion and because the law does not support 3M's interpretation of *Shady Grove*, this Court should deny 3M's motion.

3M starts their argument by reminding the Court of Plaintiffs' concerns, raised at the most recent status conference, about the potential for improper *ex parte* contact with plaintiffs' treating physicians. While expressly disavowing any such improper contact thus far, Counsel nevertheless raised a claim that they contend this Court's recent analysis of *Shady Grove*--on the issue of amending a complaint to add a count for punitive damages--somehow conferred upon them a right to pursue *ex parte* contact with

3

plaintiffs' treating physicians, a claim which is explicitly *not* the subject of their current motion. In fact, 3M specifically concedes that they are not currently seeking "unrestricted access to treating physicians," but instead are asking this court to require plaintiffs to produce documents—which may or may not exist—without going through the normal discovery process required under the Federal Rules:

> "Defendants . . . ask only that Plaintiffs be required to disclose (1) what treaters Plaintiffs' counsel has contacted, (2) when those contacts occurred, and (3) what documents Plaintiffs' counsel gave them." (3M Memo at 2.)

Counsel then refers the Court again to activities alleged to have occurred during the *Walton v. 3M* case from the Southern District of Texas, well before formation of this MDL.

As such, counsel appears to be seeking an improper advisory opinion from this Court to the effect that well-established law in Minnesota protecting the privacy of patient-physician discussions from unilateral disclosure, and preventing *ex parte* contact with such treating doctors by adversaries, should be abandoned under *Shady Grove*, even while expressly disclaiming any current request by this Court to allow them to have such unilateral access. For this reason alone, and before reaching the merits of their discovery requests styled as a "Motion for Disclosure," this Court should take 3M at their word and not consider their request for an advisory opinion to interpret *Shady Grove* in a manner that might tend to abridge plaintiffs' rights under well-established Minnesota law. Instead, this Court should consider only 3M's request for discovery of Plaintiffs' counsel's presumed communications with treating physicians of Bellwether Plaintiffs in

this MDL, and rule that such untimely discovery requests, if permitted at all, should be served in the appropriate manner required under the Federal Rules of Civil Procedure.

B. DEFENDANT'S *EX PARTE* CONTACT WITH PLAINTIFFS' TREATING HEALTHCARE PROVIDERS VIOLATES THE SANCTITY OF THE PHYSICIAN-PATIENT RELATIONSHIP, AS CODIFIED BY MINNESOTA LAW

Assuming the Court reaches the merits of the discovery requests raised in 3M's motion, despite the foregoing procedural irregularities, and assuming further that the Court interprets 3M's confusing motion as a request to seek substantive *ex parte*, contact with Plaintiffs' treating physicians, Plaintiffs submit that 3M's analysis of the controlling law is fundamentally flawed. For the reasons that follow, and based on well-established precedent, Defendant should be prohibited from any substantive *ex parte* contact with plaintiffs' treating healthcare providers. As noted by this Court during the recent status conference, Federal Rule of Evidence 501 provides, inter alia, that " . . . in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Thus, where, as here, Minnesota law provides the rule of decision, Minnesota substantive law governs the privilege issue. This principle is further supported by recent and longstanding case law in this district. Specifically, this Court has held that State law controls the existence and scope of the physician-patient privilege for federal cases based on diversity jurisdiction (as there is no physician-patient privilege in federal diversity actions). *See In re National Hockey league Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942 (D. Minn. 2015); *In re Baycol Prods. Litig.,* 219 F.R.D. 468, 469 (D.Minn.2003); Fed.R.Evid. 501 (noting that in a civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.") While a number of federal courts have held that since they were not addressing an outcome-determinative issue, and instead were deciding a federal procedural and/or a discovery-

5

related issue, federal law applies. *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, 2016 WL 1370998 (D.N.J. 2016); *(In Re Xarelto Rivaroxaban) Prods. Liab. Litig.*, 2016 WL 915288 at 4* (E.D. La. 2016). However, even applying federal law on the issue, these MDL courts ruled that *ex parte* contacts were prohibited with a limited exception to retain experts. That exception is not relevant here, as 3M has made no such request of this Court.[2]

Next, the approved HIPAA authorizations that plaintiffs are required to sign and submit with a Plaintiffs' Fact Sheet do not permit the release of any medical information beyond the medical records within the HIPAA authorization. The first two Bellwether plaintiffs, Julie Kamke and John Nugier, executed and submitted theses limited HIPAA authorizations, which allow disclosing only the specified medical records and specifically prohibits the dissemination of any other medical information other than at a deposition or trial (subject to all applicable legal objections). Absent the patient's consent, the scope of the physician-patient privilege defined by Minnesota law does not permit a drug or medical device manufacturer, such as Defendant, to engage in *ex parte* communications with the treating physicians of the plaintiffs who have filed a products liability action against the Defendant. *In re Baycol Prods. Litig.,* 210 F.R.D. at 470.

In *In re Baycol Prods. Litig.,* supra, defendants sought to conduct *ex parte* interviews with the plaintiffs' treating physicians. *Id*. The defendants argued that the

---

[2] 3M's reliance on *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896 (N.D. Ill. 2012) is misplaced for several reasons: First, the decision was decided under Illinois, not Minnesota law, and is a distinct minority opinion, which other district courts have declined to follow. *See, e.g.*, *In re American Medical Systems, Inc. Pelvic Repair Systems Product Liability Litigation*, 946 F. Supp. 2d 512 (S.D.W.Va., May 22, 2013). Moreover, in that case Defendants proposed their contact with Plaintiffs' treating physicians should be permitted, *subject to an order limiting contact with prospective expert witnesses who are also treating physicians of individual plaintiffs.* 3M has raised no such claim here.

plaintiffs had placed their medical conditions at issue, and thus had waived their patient-physician privilege with respect to treatment for those conditions. *See id*. The court explicitly rejected that argument, reasoning that under Minnesota law, the plaintiff waives only the disclosure of medical records related to the condition at issue. *See id.* (*citing* Minn. R. Civ. P. 35.04). The court then explicitly held that by the plain terms of Minn. Stat. § 595.02, an adverse attorney is not permitted to make *ex parte* contact with a patient's treating physician without first obtaining the patient's express consent. *Id*. at 471 ("Minnesota privilege law does not require that Defendants be allowed to conduct *ex parte* physician interviews, and Defendants' motion must be denied on that basis."); *see also Lillebo v. Zimmer, Inc*., 2004 WL 2066772, at *2-*3 (D. Minn. 2004) (prohibiting defendants in a medical device products liability case from conducting *ex parte* interviews with any of plaintiffs' treating health care providers); *Wenninger v. Muesing*, 240 N.W.2d 333, 336-37 (Minn. 1976).

Numerous other federal district courts, particularly in the MDL arena, going back many years up to the present time also accord protection from *ex parte* disclosure. For example, dating back to the Vioxx litigation, Judge Fallon stated that "to release medical information without the approval of the patient, other than in a deposition or pursuant to a court order, would be in direct conflict with the time honored doctor-patient confidential relationship which has been recognized and protected in both Western and Eastern civilization for over 2000 years." *In Re Vioxx Products Liability Litigation,* 230 F.R.D. 473, 476 (E.D. La. 2005); *see also In re Xarelto,* 2016 WL 915288 (E.D. La. 2016). Allowing the Defendant to engage in *ex parte* contact concerning any issue, especially

liability theories, places an undue burden on the physician-patient relationship. *In Re Xarelto*, 2016 WL 915288 at *6. It would certainly prove difficult, if not impossible, for Defendants to surgically separate discussions of liability from a physician's understanding of his treatment of individual patients. *Id*; *see also In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769-Orl-22DAB, 2008 WL 821889 at *4 (M.D. Fla. 2008) (expressing unease with "the potential for misuse of [*ex parte* physician contact by Defendants], the danger of inappropriate communications and the possibility of conflicts and complexities as the cases develop and the varying roles of physicians intertwine"). Allowing Defendant to have *ex parte* contact would impose an unfair burden on a sensitive, protected relationship. *See In Re Xarelto,* 2016 WL 915288 at *6; see also *In re Vioxx*, 230 F.R.D. at 476. The physician-patient relationship is based on mutual trust, and *ex parte* contacts between physicians and Defendant would undermine that relationship. *See In Re Xarelto,* 2016 WL 915288 at *6. "No patient wants to hear that his or her doctor engaged in unsupervised discussions with a person that the patient sued. This may lead the patient to be less forthcoming with doctors who have spent years developing a relationship of trust and confidence." *Id*. at *6.

      Finally, courts have expressed concerns about a chilling effect associated with granting defense counsel broad access to those plaintiffs' treating physicians. *See e.g., In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 185 F. Supp. 3d 250, 253 (D. Mass. 2016) ("when a treating physician is interviewed *ex parte* by defense counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality

can have a chilling effect upon the critically important underlying relationship."). Courts almost always bar defendants from engaging in *ex parte* communications with plaintiffs' physicians, except for limited contacts for purposes of retaining experts. *See e.g., In re: Benicar*, WL 1370998 at *1; *In re Xarelto,* WL 915288 at *9; *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.,* 946 F. Supp. 2d 512, 514 (S.D.W. Va. 2013); *In re Kugel Mesh*, 2008 WL 2420997, at *1; *In re New England,* 185 F. Supp. 3d at 254; *In re Vioxx*, 230 F.R.D. at 477.

## CONCLUSION

Based on the foregoing argument and citations of authority, and because their motion is procedurally flawed and internally inconsistent in terms of the relief sought, this Court should summarily deny 3M the relief they seek in the form of disclosure of supposed documents between Plaintiffs' counsel and treating physicians. Furthermore, this Court should reject 3M's invitation to hand down what amounts to an advisory opinion that *Shady Grove* preempts well-established Minnesota law protecting patient medical information from *ex parte* scrutiny by adversarial parties.

Dated: August 25, 2017

Respectfully submitted,

**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**

By: /s/ Ben W. Gordon, Jr.
Ben W. Gordon, Jr. (*Pro Hac Vice*)
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: (850) 435-7000
Email: bgordon@levinlaw.com

**MESHBESHER & SPENCE, LTD.**

By: /s/ Genevieve M. Zimmerman
Genevieve M. Zimmerman (MN #330292)
1616 Park Avenue
Minneapolis, MN 55404
Telephone: (612) 339-9121
Email: gzimmerman@meshbesher.com

**CIRESI CONLIN, LLP.**

By: /s/ Michael V. Ciresi
Michael V. Ciresi (MN #0016949)
Jan M. Conlin (MN #0192697)
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Phone: (612) 361-8202
Email: MVC@CiresiConlin.com
JMC@CiresiConlin.com