# EXHIBIT 3

# MITCHELL ‖ WILLIAMS

Scott D. Provencher
Direct Dial: 501-688-8852
Fax: 501-918-7852
E-mail: sprovencher@mwlaw.com

425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201-3525
Telephone: 501-688-8800
Fax: 501-688-8807

August 21, 2017

***VIA HAND DELIVERY***
Mr. Paul M. Russo, Director
Miami VA Healthcare System
1201 N.W. 16th St.
Miami, FL 33125

***VIA E-MAIL ONLY***
Ms. Barbara Kehoe
VA Office of Chief Counsel
140 Fountain Pkwy N Suite 520
St. Petersburg, FL 33716-1295

Re:   Bair Hugger Forced Air Warming Products Liability Litigation
***John and Trisha Nugier v. 3M Company, et al., (16-CV-4246)***
U.S.D.C. Minn., MDL No. 15-2666 (JNE/FLN)

Dear Mr. Russo and Ms. Kehoe:

We represent Defendants, 3M Company and Arizant Healthcare Inc., in the above-captioned matter.  This litigation involves a total knee arthroplasty performed upon Plaintiff, John Nugier, on March 7, 2012, at the Miami VA Medical Center and subsequent medical care at that facility related to a prosthetic joint infection.  Plaintiff's claims against 3M are related to its patient warming system ("Bair Hugger®") used in the surgery.   Plaintiff does not present any claims against the Miami VA Medical Center or any of its related healthcare providers.  Defendants do not assert that any action on the part of the Miami VA Medical Center or any of its healthcare providers was a cause of Plaintiff's claimed injuries.

Please find attached Defendants' Notice of Video-Taped Deposition of Rule 30(b)(6) representative of the Miami VA Healthcare System, and Subpoena Duces Tecum.   We are writing pursuant to 5 U.S.C. §301 and 38 C.F.R. § 14.800, et. al ("Touhy Regulations") to request the in-person deposition of one or more representatives of the Miami VA Healthcare System who can address topics and produce documentation related to the Miami VA Medical Center.  We are enclosing for your review a HIPAA-compliant medical authorization related to the Miami VA Healthcare System.

The topics and related documentation are necessary to fully develop the circumstances behind the March 7, 2012, total knee arthroplasty involving Plaintiff, John Nugier, and the claims and defenses asserted by the parties to this litigation.  Specifically, communications between the Miami VA Medical Center and 3M or Arizant related to the Bair Hugger (Topic 1) are relevant to determine the knowledge and experience of the Miami VA Medical Center concerning the product at issue in this litigation.  Communications, if any, of the Miami VA Medical Center to staff and Health Care Providers concerning any possible risk of infection associated with the Bair Hugger and other forced-air patient warming systems (Topic 2) is central to the issues being litigated by the parties—whether Plaintiff's prosthetic joint infection

Mr. Paul M. Russo, Director
Ms. Barbara Kehoe
August 21, 2017
Page 2

was caused by use of the Bair Hugger system, and whether any Health Care Providers have ever considered forced-air warming systems as a potential cause of prosthetic joint infection. To the same effect is Topic 3—communications and interactions with Dr. Scott Augustine and associated corporations and organizations. Dr. Augustine has openly campaigned against forced-air warming systems, including the Bair Hugger, under the theory that such systems increase the risk of prosthetic joint infections. If the Miami VA Medical Center's knowledge and use of the Bair Hugger system, or practices related to arthroplasty surgery, have been affected by any communications from Dr. Augustine or those entities identified in Topic 3, that information must be known by 3M and Arizant in order to adequately defend Plaintiff's claims concerning the Bair Hugger system in this particular case.

Information regarding various policies, protocols, procedures and infection-control rates is critical to the question of causation. It is the position of 3M and Arizant that the Bair Hugger system was not a cause of Plaintiff's prosthetic joint infection, and that such infection is a well-known and long-recognized risk of joint-replacement surgery, with or without the use of a forced-air warming system. Policies related to cleaning, disinfecting, and infection control (Topics 4 and 6), service and maintenance of the Bair Hugger system (Topic 5), and infection rate data (Topic 11) are need to establish that prosthetic joint infection occurs despite the presence of appropriate practices and policies, and proper medical care, and regardless of the use of a patient warming system such as the Bair Hugger.

Information specific to the operating room and personnel involved in Plaintiff's total knee arthroplasty is also essential to the issue of causation. Despite appropriate policies, procedures, and protocols, and appropriate care by Health Care Providers, there are multiple potential sources for Plaintiff's prosthetic joint infection that are unrelated to the Bair Hugger system. It is necessary to know the number and identities of the personnel involved in the total knee arthroplasty (Topic 8), the clothing and supplies utilized by those individuals (Topic 9), and specific information concerning the Bair Hugger and specific operating room used for the procedure (Topic 7). Furthermore, and finally, the factual information regarding the HVAC system in the relevant operating room (Topic 10) is critical to the opinions of expert witnesses, who will comment on whether use of Bair Hugger affected the flow or air in and around the surgical site. Expert witnesses will need to recreate, to the greatest extent possible, all details of the operating room in order to educate the jury regarding issue of causation.

In reviewing the Touhy Regulations, and specifically the considerations of §14.804, we are mindful of the need to balance our requests for information required to fully develop the circumstances of this litigation against any burden that may be placed on the Miami VA Healthcare System. We understand the vital role of the Miami VA Healthcare System in providing quality and timely care to our veterans. To that end, we are agreeable to flexibility in the date and start times of any depositions, and are happy to make accommodations outside of business hours if necessary. We do not believe that these requests present an undue burden under the considerations of subsections (a) and (d), and the information to be provided (pursuant to a lawful subpoena) is appropriate under subsections (e) and (m). The requested information

Mr. Paul M. Russo, Director
Ms. Barbara Kehoe
August 21, 2017
Page 3

---

will not cause the government to favor or endorse the position of any party to this litigation under subsections (i) and (j).  Finally, the demand is sufficiently specific to be answered as addressed in subjection (n).

Thank you for your consideration of this request.  If you have questions or need additional information, please do not hesitate to ask.  We look forward to hearing from you regarding the position of the Miami VA Healthcare System regarding this request.

Very truly yours,

MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.

By

Scott D. Provencher

SDP:cr
Enclosures

cc:  Ben Gordon – bgordon@levinlaw.com
     Michael V. Ciresi – MVC@CiresiConlin.com
     Jan M. Conlin – JMC@CiresiConlin.com
     Michael A. Satchet – MAS@CiresiConlin.com
     David W. Hodges – dhodges@kennedyhodges.com
     Gabriel A. Assaad – gassaad@kennedyhodges.com
     Noah C. Lauricella – nlauricella@goldenberglaw.com
     Jerry W. Blackwell – blackwell@blackwellburke.com
     Benjamin W. Hulse – bhulse@blackwellburke.com
     Mary S. Young – myoung@blackwellburke.com
     Bridget Ahmann – Bridget.Ahmann@FaegreBD.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

In re Bair Hugger Forced Air Warming
Products Liability Litigation

MDL No. 15-2666 (JNE/FLN)

---

This Document Relates to:
*John Nugier and Trisa Nugier,* No. 16-cv-04246

**DEFENDANTS' NOTICE OF
VIDEO-TAPED DEPOSITION OF
RULE 30(B)(6) REPRESENTATIVE OF
THE MIAMI VA HEALTHCARE
SYSTEM**

---

TO:   Plaintiffs and their counsel, Genevieve Zimmerman, Meshbesher & Spence, Ltd., 1616
      Park Avenue South, Minneapolis, MN 55404; Michael V. Ciresi, Ciresi Conlin LLP, 225
      2. 6th Street, Suite 4600, Minneapolis, MN 55402; Ben W. Gordon, Levin, Papantonio,
      Thomas, Mitchell, Rafferty & Proctor, P.A. 316 South Baylen Street, Suite 600,
      Pensacola, FL 32502-5996; and Nicholas S. Clevenger, Brian E. Tadtman, Peterson &
      Associates, P.C. 801 W. 47th Street, Suite 107, Kansas City, MO 64112

      PLEASE TAKE NOTICE that, pursuant to Rules 28, 30(b)(6) and 45 of the Federal

Rules of Civil Procedure, Defendants 3M Company and Arizant Healthcare, Inc. hereby notice

their intent to take the deposition upon oral examination of one or more representatives of the

Miami VA Healthcare System for the purposes of discovery or for use as evidence, at the offices

of the Miami VA Medical Center, 1201 NW 16th Street, Miami, FL  33125, before a person

authorized by law to administer oaths and to be recorded and preserved by videotaped and/or

real-time stenographic means.  This deposition is noticed to commence on September 5, 2017, at

9:00 a.m. and continue thereafter until adjournment.  The representative(s) shall speak to the

following topics.

- Communications between Miami VA Medical Center and 3M Company or
  Arizant Healthcare relating to the Bair Hugger™ Patient Warming System.

- The purchase, use and inventory of patient warming systems by Miami VA Medical Center, other than Bair Hugger™ Patient Warming units.

- Communications by Miami VA Medical Center to its staff, employees or contractors, or to Health Care Providers, regarding the Bair Hugger system and any possible infection risk presented by or associated with the use of the Bair Hugger system or any other forced-air patient warming system.

- Communications, meetings, interactions, or agreements between (a) representatives for Miami VA Medical Center and (b) Augustine Temperature Management, LLC, Augustine BioMedical and Design, LLC, Augustine Team LLC, Hot Dog USA, LLC, Hot Dog International, LLC, Orthopedic Infection Advisory, OrthopedicInfectionAdvisory.org, Stop Surgical Infection and/or StopSurgicalInfections.org, or any of their owners, officers, employees, agents or representatives, including but not limited to Dr. Scott Augustine.

- All policies, protocols, practices and procedures of Miami VA Medical Center relating to cleaning, disinfection and infection control and prevention measures during the time period of March 2009 to March 2013 and any performance to those measures.  This includes patient preparation, staff preparation, MRSA, MSSA and or VRE screening, flash sterilization, and the like.

- Equipment servicing, maintenance and cleaning protocols of Miami VA Medical Center relating to the Bair Hugger™ Patient Warming system and any performance logs relating to those measures.

- All procedures of Miami VA Medical Center relating to cleaning, disinfection and maintenance of the operating rooms and all equipment in the operating room during the time period of March 7, 2007 to March 7, 2012 and any performance logs relating to those measures.

  - Information regarding the specific operating room at Miami VA Medical Center used for Mr. Nugier's right total knee arthroplasty surgery on March 7, 2012, including:

  - the identity (Model and Serial Number) of the Bair Hugger system utilized in that surgery;

  - the operating room number/name;

  - configuration and layout of the operating room at the time of Mr. Nugier's surgery, including the placement of the operating table, Bair Hugger system, personnel, other devices and equipment in the operating room, and lighting and ventilation;

  - identification and specific information of all equipment used during Mr. Nugier's surgery;

- the protocol for cleaning of that particular operating room between surgeries on that day, and any performance logs relating to such cleaning;

- the terminal cleaning of that operating room prior to Mr. Nugier's surgery;

- number and general description of personnel in the operating room during Mr. Nugier's surgery;

- information and documentation as to the number of time the operating room door was opened during Mr. Nugier's surgery; and,

- temperature and humidity log(s) for this operating room on the day of Mr. Nugier's surgery.

- Names and job descriptions of the nurses, technicians and other health care providers or vendors in the operating room during Mr. Nugier's March 7, 2012 surgery.

- Information regarding the clothing and supplies used by Mr. Nugier's Health Care Providers during surgery, including footwear, gloves, and space suit/body suits, sutures, wound dressings.

- Information regarding the HVAC system used in the operating room at Miami VA Medical Center for Mr. Nugier's surgery on March 7, 2012, including:

  - the operating room HVAC specifications;
  - maintenance and cleaning of the HVAC system, including any performance logs; and,
  - whether conventional or laminar air flow was used during the surgery.

- Infection rate data for Miami VA Medical Center during the period of March 7, 2011 to March 7, 2013 relating specifically total knee and total hip arthroplasty surgeries.

DATED: August 21, 2017

Respectfully submitted,

Jerry W. Blackwell
MN Atty ID No. 0186867
Benjamin W. Hulse
MN Atty ID No. 0390952
Mary S. Young
MN Atty ID No. 0392781
**BLACKWELL BURKE P.A.**
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
T: (612) 343-3200    F: (612) 343-3205
blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com

Bridget M. Ahmann
MN Atty ID No. 016611x
M. Joseph Winebrenner
MN Atty ID No. 0387889
**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
T: (612) 766-7000    F: (612) 766-1600
bridget.ahmann@faegrebd.com
joe.winebrenner@faegrebd.com

/s/ Scott D. Provencher
Scott D. Provencher
AR Atty ID No. 96148
**MITCHELL WILLIAMS SELIG
GATES  & WOODYARD, P.L.L.C.**
425 W. Capitol Ave., Suite 1800
Little Rock, AR 72201
T: (501) 688-8852 F: (501) 688-8807
Email: sprovencher@mwlaw.com

**Attorneys for Defendants 3M Company
and Arizant Healthcare Inc**

4

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| John Nugier and Trisa Nugier | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  16-CV-04246 |
| 3M Company and Arizant Healthcare, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    Miami VA Healthcare System

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Exhibit A

| Place:   1201 NW 16th Street<br>Miami, FL  33125 | Date and Time:<br>09/05/2017 9:00 am |
|---|---|

The deposition will be recorded by this method:   videography and stenography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Exhibit B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   8/21/17

| *CLERK OF COURT* | OR | |
|---|---|---|
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Defendants
_____ , who issues or requests this subpoena, are:

Scott D.Provencher, Mitchell, Williams, Selig, Gates & Woodyard, PLLC, 425 W. Capitol Avenue, Suite 1800, Little Rock, AR, 72201 (501) 688-8852

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  16-CV-04246

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
  **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re Bair Hugger Forced Air Warming
Products Liability Litigation

MDL No. 15-2666 (JNE/FLN)

This Document Relates to:
John and Trisa Nugier          16-CV-04246

## EXHIBIT A TO SUBPOENA TO TESTIFY AT A DEPOSITION

### DEFINITIONS

1.     "You," "Your," Miami VA Medical Center," or "hospital" means and refers to Miami VA Medical Center, 1201 NW 16th Street, Miami, FL, 33125, and any person or entity authorized to act on its behalf, including, but not limited to, its attorneys.

2.     "3M Company" means and refers to Defendant 3M Company and any of its directors, agents, servants, employees, or representatives.

3.     "Arizant Healthcare" means and refers to Defendant Arizant Healthcare Inc. and any of its directors, agents, servants, employees, or representatives.

4.     "Bair Hugger system" means the Bair Hugger™ patient warming system allegedly used in connection with the surgical procedures performed on Plaintiff John Nugier, which is the subject of this action.

5..     "Health Care Provider" means any doctor, physician, surgeon, nurse practitioner, nurse, chiropractor, audiologist, holistic or homeopathic healer, therapist, or other practitioner of the medical arts, as well as any person providing facilities for the delivery of such services.

6.      "Document" means all writings and recordings, including, but not limited to, any kind of written, printed, typed, electronic, recorded, or graphic matter, however produced or reproduced, of any kind or description, whether sent, received, or neither, including originals, all copies, and  all  drafts, and both sides thereof,  and including  papers, photographs, films, videotape, video footage, audio, recordings, memoranda, books, pamphlets, corporate manuals, records, accounts, analyses, communications, and all retrievable information in computer storage.  Each copy of any such document which bears or omits distinct writings shall be deemed a separate document subject to production hereunder.

7.      "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise by any means including, but not limited to, in person conversations, telephone conversations, messages, letters, emails, inquiries, discussions, in-person conversations, negotiations, agreements, understandings, meetings, notes, facsimiles, memoranda, electronic or computerized transmissions, telegrams, advertisements, and other forms of exchange, whether oral, written, or electronic, including internal and external communications.  Oral communications include telephonic discussions or conversations, in-person meetings or like communication.  Written communication shall include letters, notes, memoranda, or like communication.  Electronic communications include electronic mails, electronic or computer communication, telegrams, facsimiles, text messages, instant messages, social network messages or like communication.

8.      "Person" or "Persons" means any natural persons or any business, legal or governmental entity or association, including, without limiting the generality of the foregoing, all individuals, sole proprietorships, associations, companies, partnerships, joint ventures,

2

corporations, trusts, estates, municipal corporations, government agencies, or any unit of government.

9.     "Relating to" or "related to" means mentioning, describing, discussing, memorializing, concerning, consisting of, containing, evidencing, pertaining to, reflecting, depicting or referring in any way, directly or indirectly, to the subject matter of the request.

10.     "Concerning" means containing, evidencing, regarding, referring to, relating to, pertaining to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

11.     "Identify" as used with reference to a person means to provide the name, present or last known address, telephone number or email address, and present or last known place of employment of the person. "Identify" as used with respect to a document means to provide the type, general subject matter, date, author, addressee, and recipient of the document. "Identify" as used with reference to a communication means to state the date, names of participants, and nature of the communication (e.g., personal meeting or telephone call).

12.     The singular form of a word shall refer to the plural, and words used in the masculine gender shall also include the feminine or neutral, and vice-versa whenever necessary to bring within the scope of these Interrogatories any information that might otherwise be construed to be outside their scope. The words "and" and "or" shall be construed inclusively whenever necessary to bring within the scope of these Interrogatories any information that might otherwise be construed to be outside their scope.

**The deponent(s) shall be prepared to address the following topics:**

**TOPIC NO. 1:** Communications between Miami VA Medical Center and 3M Company or Arizant Healthcare relating to the Bair Hugger™ Patient Warming System.

3

**TOPIC NO. 2:**   Communications by Miami VA Medical Center to its staff, employees or contractors, or to Health Care Providers, regarding the Bair Hugger system and any possible infection risk presented by or associated with the use of the Bair Hugger system or any other forced-air patient warming system.

**TOPIC NO. 3:**   Communications, meetings, interactions, or agreements between (a) representatives for Miami VA Medical Center and (b) Augustine Temperature Management, LLC, Augustine BioMedical and Design, LLC, Augustine Team LLC, Hot Dog USA, LLC, Hot Dog International, LLC, Orthopedic Infection Advisory, OrthopedicInfectionAdvisory.org, Stop Surgical Infection and/or StopSurgicalInfections.org, or any of their owners, officers, employees, agents or representatives, including but not limited to Dr. Scott Augustine.

**TOPIC NO. 4:**   All policies, protocols, practices and procedures of Miami VA Medical Center relating to cleaning, disinfection and infection control and prevention measures during the time period of March 2009 to March 2013 and any performance to those measures.   This includes patient preparation, staff preparation, MRSA, MSSA and or VRE screening, flash sterilization, and the like.

**TOPIC NO. 5:**   Equipment servicing, maintenance and cleaning protocols of Miami VA Medical Center relating to the Bair Hugger™ Patient Warming system and any performance logs relating to those measures.

**TOPIC NO. 6:**   All procedures of Miami VA Medical Center relating to cleaning, disinfection and maintenance of the operating rooms and all equipment in the operating room during the time period of March 7, 2007 to March 7, 2012 and any performance logs relating to those measures.

**TOPIC NO. 7:** Information regarding the specific operating room at Miami VA Medical Center used for Mr. Nugier's right total knee arthroplasty surgery on March 7, 2012, including:

4

- the identity (Model and Serial Number) of the Bair Hugger system utilized in that surgery;

- the operating room number/name;

- configuration and layout of the operating room at the time of Mr. Nugier's surgery, including the placement of the operating table, Bair Hugger system, personnel, other devices and equipment in the operating room, and lighting and ventilation;

- identification and specific information of all equipment used during Mr. Nugier's surgery;

- the number and type of surgeries occurring in that operating room before and after Mr. Nugier's surgery;

- the protocol for cleaning of that particular operating room between surgeries on that day, and any performance logs relating to such cleaning;

- the terminal cleaning of that operating room prior to Mr. Nugier's surgery;

- number and general description of personnel in the operating room during Mr. Nugier's surgery;

- information and documentation as to the number of time the operating room door was opened during Mr. Nugier's surgery; and,

- temperature and humidity log(s) for this operating room on the day of Mr. Nugier's surgery.

**TOPIC NO. 8:**  Names and job descriptions of the nurses, technicians and other health care providers or vendors in the operating room during Mr. Nugier's March 7, 2012 surgery.

**TOPIC NO. 9:**  Information regarding the clothing and supplies used by Mr. Nugier's Health Care Providers during surgery, including footwear, gloves, and space suit/body suits, sutures, wound dressings.

**TOPIC NO. 10:**  Information regarding the HVAC system used in the operating room at Miami VA Medical Center for Mr. Nugier's surgery on March 7, 2012, including:

- the operating room HVAC specifications;

- maintenance and cleaning of the HVAC system, including any performance logs; and,

- whether conventional or laminar air flow was used during the surgery.

**TOPIC NO. 11:**  Infection rate data for Miami VA Medical Center during the period of March 7, 2011 to March 7, 2013 relating specifically total knee and total hip arthroplasty surgeries.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In re Bair Hugger Forced Air Warming
Products Liability Litigation                    MDL No.  15-2666 (JNE/FLN)

This Document Relates to:
John and Trisa Nugier          16-CV-04246

---

## EXHIBIT B TO SUBPOENA FOR DOCUMENT PRODUCTION AND INSPECTION TO MIAMI VA HEALTHCARE SYSTEM

---

### <u>DEFINITIONS</u>

1.      "You," "Your," "Miami VA Healthcare System," or "hospital" means and refers to Miami VA Medical Center, 1201 NW 16th Street, Miami, FL  33125, and any person or entity authorized to act on its behalf, including, but not limited to, its attorneys.

2.      "3M Company" means and refers to Defendant 3M Company and any of its directors, agents, servants, employees, or representatives.

3.      "Arizant Healthcare" means and refers to Defendant Arizant Healthcare Inc. and any of its directors, agents, servants, employees, or representatives.

4.      "Bair Hugger system" means the Bair Hugger™ patient warming system allegedly used in connection with the surgical procedures performed on Plaintiff John Nugier, which is the subject of this action.

5.      "Health Care Provider" means any doctor, physician, surgeon, nurse practitioner, nurse, chiropractor, audiologist, holistic or homeopathic healer, therapist, or other practitioner of the medical arts, as well as any person providing facilities for the delivery of such services.

6.      "Document" means all writings and recordings, including, but not limited to, any kind of written, printed, typed, electronic, recorded, or graphic matter, however produced or reproduced, of any kind or description, whether sent, received, or neither, including originals, all copies, and   all   drafts, and both sides thereof,   and including   papers, photographs, films, videotape, video footage, audio, recordings, memoranda, books, pamphlets, corporate manuals, records, accounts, analyses, communications, and all retrievable information in computer storage.  Each copy of any such document which bears or omits distinct writings shall be deemed a separate document subject to production hereunder.

7.      "Communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise by any means including, but not limited to, in person conversations, telephone conversations, messages, letters, emails, inquiries, discussions, in-person conversations, negotiations, agreements, understandings, meetings, notes, facsimiles, memoranda, electronic or computerized transmissions, telegrams, advertisements, and other forms of exchange, whether oral, written, or electronic, including internal and external communications.  Oral communications include telephonic discussions or conversations, in-person meetings or like communication.  Written communication shall include letters, notes, memoranda, or like communication.  Electronic communications include electronic mails, electronic or computer communication, telegrams, facsimiles, text messages, instant messages, social network messages or like communication.

8.      "Person" or "Persons" means any natural persons or any business, legal or governmental entity or association, including, without limiting the generality of the foregoing, all individuals, sole proprietorships, associations, companies, partnerships, joint ventures,

corporations, trusts, estates, municipal corporations, government agencies, or any unit of government.

9.      "Relating to" or "related to" means mentioning, describing, discussing, memorializing, concerning, consisting of, containing, evidencing, pertaining to, reflecting, depicting or referring in any way, directly or indirectly, to the subject matter of the request.

10.     "Identify" as used with reference to a person means to provide the name, present or last known address, telephone number or email address, and present or last known place of employment of the person.  "Identify" as used with respect to a document means to provide the type, general subject matter, date, author, addressee, and recipient of the document.  "Identify" as used with reference to a communication means to state the date, names of participants, and nature of the communication (e.g., personal meeting or telephone call).

11.     The singular form of a word shall refer to the plural, and words used in the masculine gender shall also include the feminine or neutral, and vice-versa whenever necessary to bring within the scope of these Interrogatories any information that might otherwise be construed to be outside their scope.  The words "and" and "or" shall be construed inclusively whenever necessary to bring within the scope of these Interrogatories any information that might otherwise be construed to be outside their scope.

## GENERAL INSTRUCTIONS

1.      Each request for production extends to all Documents and things in Your possession, custody, or control or in the possession, custody, or control of any agent of Yours or anyone acting on Your behalf (including attorneys).

2.      If production is requested of a Document or thing that is no longer in Your possession, custody, or control, the Response should state (a) when the Document or thing was

3

most recently in Your possession, custody, or control, (b) the disposition made of the Document

or thing, and (c) the identity of the Person, if any, presently in possession, custody, or control of

the Document or thing.  If the Document or thing has been destroyed, the Response should also

state (a) the reason for its destruction, (b) the identity of the Person who destroyed the Document

or thing, and (c) the identity of the Person who directed that the Document or thing be destroyed.

   3.  To the extent that any item or Document is withheld because of a claim of

protection or privilege under the Federal Rules of Civil Procedure, please provide a privilege log

that, pursuant to Federal Rule of Civil Procedure 26(b)(5)(A), describes the nature of the

Documents, Communications, and/or tangible things in a manner that, without revealing

information itself privilege or protected, will provide sufficient information necessary to assess

such claim.

<strong><u>REQUESTS FOR PRODUCTION</u></strong>

**REQUEST NO. 1:**  Produce all documents that reflect or relate to communications between

Miami VA Medical Center and 3M Company or Arizant Healthcare relating to the Bair

Hugger™ Patient Warming System.

**REQUEST NO. 2**:  Produce all documents that reflect of relate to communications by Miami

VA Medical Center to its staff, employees or contractors, or to Health Care Providers, regarding

the Bair Hugger system and any possible infection risk presented by or associated with the use of

the Bair Hugger system or any other forced-air patient warming system.

**REQUEST NO. 3:**  Produce all documents that reflect or relate to communications, meetings,

interactions, or agreements between (a) representatives for Miami VA Medical Center and (b)

Augustine Temperature Management, LLC, Augustine BioMedical and Design, LLC, Augustine

Team LLC, Hot Dog USA, LLC, Hot Dog International, LLC, Orthopedic Infection Advisory,

4

OrthopedicInfectionAdvisory.org, Stop Surgical Infection and/or StopSurgicalInfections.org, or any of their owners, officers, employees, agents or representatives, including but not limited to Dr. Scott Augustine from 2007 to present.

**REQUEST NO. 4:**  Produce all policies, procedures and protocols of Miami VA Medical Center relating to cleaning, disinfection and infection control and prevention measures during the time period of June 26, 2009 to June 26, 2014 and any performance logs relating to those measures. This includes patient preparation, staff preparation, MRSA, MSSA and or VRE screening, flash sterilization, and the like.

**REQUEST NO. 5:**  Produce all documents that reflect or relate to equipment servicing, maintenance and cleaning protocols of Miami VA Medical Center, relating to the Bair Hugger™ Patient Warming system and any performance logs relating to those measures.

**REQUEST NO. 6:**  Produce all procedures of Miami VA Medical Center relating to cleaning, disinfection and maintenance of the operating rooms and all equipment in the operating room during the time period of March 7, 2007 to march 7, 2012 and any performance logs relating to those measures.

**REQUEST NO. 7:**  Produce all documents that set forth, reflect or relate to information regarding the specific operating room at Miami VA Medical Center used for Mr. Nugier's right total knee arthroplasty on March 7, 2012, including, specifically:

- the identity (Model and Serial Number) of the Bair Hugger system utilized in that surgery;

- the operating room number/name;

- configuration and layout of the operating room at the time of Mr. Nugier's surgery, including the placement of the operating table, Bair Hugger system, personnel, other devices and equipment in the operating room, and lighting and ventilation;

5

- identification and specific information of all equipment used during Mr. Nugier's surgery;

- the number and type of surgeries occurring in that operating room before and after Mr. Nugier's surgery;

- the protocol for cleaning of that particular operating room between surgeries on that day, and any performance logs relating to such cleaning;

- the terminal cleaning of that operating room prior to Mr. Nugier's surgery;

- number and general description of personnel in the operating room during Mr. Nugier's surgery;

- information and documentation as to the number of time the operating room door was opened during Mr. Nugier's surgery; and,

- temperature and humidity log(s) for this operating room on the day of Mr. Nugier's surgery.

**REQUEST NO. 8:**   Produce all documents that set forth or reflect the names and job descriptions of the nurses, technicians and other health care providers or vendors in the operating room during Mr. Nugier's March 7, 2012 surgery.

**REQUEST NO. 9:**   Produce all documents that set forth, reflect or relate to information regarding the clothing and supplies used by Mr. Nugier's Health Care Providers during Mr. Nugier's March 7, 2012 surgery, including footwear, gloves, and space suit/body suits, sutures, wound dressings.

**REQUEST NO. 10:**   Produce all documents that set forth, reflect or relate to information regarding the HVAC system used in the operating room at Miami VA Medical Center for Mr. Nugier's surgery on March 7, 2012, including:

- the operating room HVAC specifications;

- maintenance and cleaning of the HVAC system, including any performance logs; and,

6

- whether conventional or laminar air flow was used during the surgery.

## REQUEST FOR INSPECTION

**REQUEST NO. 1:**  Permit Defendants 3M Company and Arizant Healthcare to perform a site inspection of Miami VA Medical Center so that Defendants may inspect, measure, survey, photograph, videotape, test, or sample the following objects and property:

- The operating room in which Mr. Nugier's surgery took place; and

- The Bair Hugger unit used during Mr. Nugier's surgery.

## LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

### (Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03)

TO: Miami VA Healthcare System 1201 N.W. 16th St., Miami, FL 33125
Patient Name: John Arthur Nugier
DOB: 09/22/1949
SSN: 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

     I, _____John Nugier_____, hereby authorize you to release and furnish to:
Faegre Baker Daniels and/or its designee copies of the following information:

* All medical records, including inpatient, outpatient, and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, office and doctors' handwritten notes, and records received by other physicians, dated from _____ (seven years prior to the date of the subject surgery) to the present.

* All autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram and cardiac catheterization reports, dated from _____ (seven years prior to the date of the subject surgery) to the present.

* All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos, dated from _____ (seven years prior to the date of the subject surgery) to the present.

* All pharmacy/prescription records, including NDC numbers and drug information handouts/monographs, dated from _____ (seven years prior to the date of the subject surgery) to the present.

* All billing records including all statements, itemized bills, and insurance records, dated from _____ (seven years prior to the date of the subject surgery) to the present.

1. **To my medical provider: this authorization is being forwarded by, or on behalf of, attorneys for the defendant for the purpose of litigation. You are not authorized to discuss any aspect of the above-named person's medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on his or her medical or physical condition, unless you receive an additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition at a deposition or trial.**

-1-

2. I understand that the information in my health record may include information relating to information about behavioral or mental health services and treatment for alcohol and drug abuse.

3. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in C.F.R. 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the releaser indicate above.

5. A notarized signature is not required. C.F.R. 164.508. A copy of this authorization may be used in place of an original.

Print Name: _John A. Nugier_____ (plaintiff/representative)

Signature: _____ Date: _12/31/2016_