UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
MDL No. 15-2666 (JNE/FLN)

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | DECLARATION OF BARBARA KEHOE |

This Document Relates To:
*Nugier*, 16-cv-4246

I, Barbara Kehoe, declare the following to be true and correct:

1. I am currently employed as a Staff Attorney in the Office of District Counsel, Department of Veterans Affairs (VA) in St. Petersburg, Florida (Southeast District – South).  This office has responsibility for providing legal services to the Department of Veterans Affairs in Florida, Puerto Rico and the Virgin Islands.  I have been employed by the VA since 2009, and have worked as a Staff Attorney in the St. Petersburg office since August 2012.

2. District Counsel responsibilities include responding directly to requests for testimony and release of records maintained by VA facilities in Florida and Puerto Rico.

3. I make this declaration on the basis of information acquired through the performance of my official duties.

    **Requests for Information from Scott Provencher, Attorney**

4. Based on a referral from the legal office located at the Miami VA Medical Center (VAMC), I spoke with Mr. Scott Provencher, counsel for Defendants 3M Company and Arizant Healthcare Inc., on August 4, 2017, via telephone concerning his desire to obtain documents and testimony from two VA doctors and the Miami VAMC as an entity.

5. I informed Mr. Provencher of the process to request or subpoena testimony of employees or Miami VAMC records.

6. During my August 4 conversation with Mr. Provencher, I informed him that testimony of employees in litigation in which the VA is not a party, is not represented,

and has no substantial interest ("non-VA involved litigation") is rare, particularly given the time demands on VA employees who are required to provide medical and other services to the nation's veterans.

7. During the conversation, I suggested that Mr. Provencher could provide a list of questions for the employees as an alternative to lengthy live depositions that may require considerable preparation time. I also indicated that a more appropriate way to seek documents is to submit a request under the Freedom of Information Act (FOIA), which in this instance would involve contacting the Release of Information Office at the Miami VAMC.

8. Mr. Provencher informed me that Defendants strongly preferred in-person depositions. Either at this time or in another conversation, he made clear that Defendants anticipated each doctor's deposition would take no less than four hours, and that he could not estimate how long the 30(b)(6) deposition would last. To my knowledge, neither he nor anyone else has submitted a FOIA request to the VA for the documents at issue.

9. Also on August 4, I received a letter via email from Mr. Provencher explaining the litigation and requirements for deposition, including some of Defendants' reasons for believing the documents and information they seek are necessary. No subpoenas were included.

**Review of requested information**

10. Later on August 4, I forwarded Mr. Provencher's request to VA's Office of General Counsel (OGC) in Washington, D.C. for review and advisement, as the request related to a multidistrict litigation that may impact other VA facilities across the country.

11. Between August 7 and August 14, 2017 I was mostly on leave. I was in the office only a limited amount of time during this period.

12. When I had the ability to review my email during this week, I noted a response from OGC instructing me to delay any response to Mr. Provencher until the general counsel could review the matter.

13. During the interim, I nonetheless began my own analysis of the request under applicable law.

14. The Department of Veterans Affairs has promulgated regulations, contained in the Code of Federal Regulations, for the release of VA employee testimony and records in non-VA involved litigation. The requirements for releasing such information, known as *Touhy* regulations (named for *United States ex rel. Touhy v. Ragen*, 340 U.S. 461

2

(1951)), appear at 38 CFR 14.800 to 14.810, including in particular a list of factors that must be considered at 38 CFR 14.804.

15. The Office of General Counsel is the designated authority to review such requests for approval or denial in accordance with the VA's *Touhy* regulatory scheme.  OGC's authority, in turn, has been delegated to the various VA District Counsel's offices and to assigned Staff Attorneys.

### Receipt of Subpoenas

16. On August 16 and August 18, 2017 I received from Defendants' counsel, via email, deposition subpoenas for Dr. Henry Bernstein and Dr. Paola Lichtenberger, both of the Miami VAMC, as well as a Rule 30(b)(6) subpoena directed to the Miami VAMC as an entity, listing 11 separate topics for testimony and seeking numerous categories of records.

17. Follow-up letters from Mr. Provencher were received via email on August 21 and August 22, 2017.

### Analysis of Subpoenas and Requests for Documents

18. On August 18, 2017 I reviewed the subpoenas and request for document disclosure.  I analyzed each request pursuant to the *Touhy* regulations.

19. Beyond the *Touhy* regulations, the request for documents was reviewed with additional confidential and non-release protections in mind.

20. Certain documents prepared by the facility that may be deemed "Quality Assurance" records were considered.  In general, information obtained from VA quality improvement activities is protected under 38 U.S.C. 5705, which prevents release of such documents unless specific exceptions apply.  In my view, many of the kinds of documents Defendants seek – including but not limited to various sorts of "performance logs," and documents relating to possible infection risk – fall within the Quality Assurance privilege and are thus statutorily protected from disclosure.

21. I also noted that the date of surgery was more than 5 years prior to the request; consequently many of the documents sought would no longer be available, for example under Department of Veterans Affairs Records Control Schedule 10-1.  That VA policy generally provides that documents pertaining to engineering and building maintenance are retained for one to three years.  To the extent that responsive documents may exist, I am aware that locating such documents would require many, many hours of work on the part of numerous VAMC departments, staff members, and even former contractors..  Accordingly, I determined under the *Touhy* regulations that

3

a response would be inordinately time-consuming and unduly burdensome to the facility and the agency.

22. During the week of August 21, 2017 I contacted the Miami VAMC Hospital Director, Chief of Staff, Chief of Surgery, and both subpoenaed providers. I informed each of these individuals about the requests for testimony and documents. Prior to making a final decision and sending the agency's response to the subpoenas, I received confirmation that both providers are very busy with veteran care, and that scheduling timely appointments for veterans remains a challenge and priority for the facility. From this communication and from my experience working for the VA over the years, I am aware that taking two providers away from patient care for more than a half-day each would greatly impact the agency's ability to serve patients, given that VA doctors work in a medical system straining to meet current demands with an already-taxed appointment system. Therefore, I concluded that devoting the substantial required time and resources to this non-VA involved litigation would distract from the mission of the facility and would not be consistent with the factors I was required to consider under the *Touhy* regulations. Specifically, because preparing for and sitting for the depositions sought here, and searching for, retrieving, reviewing and producing the documents at issue would all require substantial time from numerous Miami VAMC staff, I concluded that it would not be appropriate under the regulations to grant the request.

23. I also considered the *Touhy* regulations' prohibition against providing expert testimony absent "exceptional circumstances." 38 C.F.R. 14.808(a). To my observation, much of the testimony Defendants were seeking falls into that category; and parsing out what does and does not count as expert testimony during a lengthy deposition would be extremely challenging. The rule against providing expert testimony includes criminal sanctions, and this would make it very difficult to allow the discovery Defendants seek here.

24. In addition, my analysis led me to conclude that many other regulatory factors were not met, including the fact that disclosure here is not apparently "necessary to prevent the perpetration of fraud or other injustice," 38 C.F.R. 14.804(c), that allowing disclosure would risk "endorsing or supporting a position advocated by a party to the proceeding," *id.* subd. (j), and the need to "minimize VA's possible involvement in issues unrelated to its mission," *id.* subd. (l).

25. It also seemed to me that, because the plaintiff happens to be a veteran, the regulatory concern over creating an "appearance of VA or the Federal government favoring one litigant over another," *id.* subd. (i), is heightened because any perception of favoring Defendants (through negotiation or otherwise) could impact Mr. Nugier's willingness to accept care from the VA.

26. I considered Defendants' telephonic offer of "flexibility" in scheduling the depositions – including potentially starting after working hours – and concluded that this does not address the VA's ultimate concern over the *amount* of time devoted to this non-mission-related activity. As government employees, the deponents would be paid for their time testifying regardless of when during the day a deposition might occur. The main issue, both in this case and considered as a precedent for future situations, is occupying these medical professionals who are also public servants with this distracting activity as part of their official duties. Any time they spend on this private litigation is by definition official time they are unable to devote to patient care.

27. I finalized the agency's response to Mr. Provencher on August 24, 2017, and forwarded it via email the same day. My response letter does not, and was not intended to, comprehensively set forth all the considerations that went into the agency's decision to deny the requests for documents and testimony.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on: September 11, 2017

                                            */s/ Barbara Kehoe*
                                            Barbara Kehoe

5