# EXHIBIT F

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - -

In Re:

Bair Hugger Forced Air Warming

Products Liability Litigation


This Document Relates To:

All Actions                      MDL No. 15-2666 (JNE/FLM)

- - - - - - - - - - - - - - - - - -


DEPOSITION OF ALBERT P. VAN DUREN

VOLUME I, PAGES 1 - 326

MARCH 7, 2017


        (The following is the deposition of ALBERT P. VAN DUREN, taken pursuant to Notice of Taking Deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, via videotape, at the offices of Ciresi Conlin L.L.P., 225 South 6th Street, Suite 4600, Minneapolis, Minnesota, commencing at approximately 9:00 o'clock a.m., March 7, 2017.)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 2

```
 1    APPEARANCES:
 2        On Behalf of the Plaintiffs:
 3            Mark D. Bankston
              KASTER, LYNCH, FARRAR & BALL LLP
 4            1010 Lamar, Suite 1600
              Houston, Texas   77002
 5
              Genevieve M. Zimmerman
 6            MESHBESHER & SPENCE, LTD.
              1616 Park Avenue
 7            Minneapolis, Minnesota   55404
 8            Gabriel Assaad
              KENNEDY HODGES
 9            4409 Montrose Boulevard, Suite 200
              Houston, Texas   77006
10
              Michael A. Sacchet
11            CIRESI CONLIN L.L.P.
              225 South 6th Street, Suite 4600
12            Minneapolis, Minnesota   55402
13        On Behalf of Defendants:
14            Jerry W. Blackwell and Peter J. Goss
              BLACKWELL BURKE P.A.
15            432 South Seventh Street, Suite 2500
              Minneapolis, Minnesota   55415
16
      ALSO APPEARING:
17
              Ryan M. Stirewalt, Videographer
18
19
20
21
22
23
24
25
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 4

1               P R O C E E D I N G S
2            (Witness sworn.)
3                ALBERT P. VAN DUREN
4        called as a witness, being first duly sworn,
5          was examined and testified as follows:
6                  ADVERSE EXAMINATION
7   BY MR. BANKSTON:
8        Q.   Good morning, Mr. Van Duren.
9        A.   Good morning.
10       Q.   We're going to skip some of the formalities
11  because I know you've been in that chair before, done
12  some depositions, so we won't go over all of that
13  today; I'm sure you're up to speed.  But before we
14  dive in, I did want to talk to you, make sure that you
15  understood exactly what kind of deposition it is we're
16  taking today, and -- and by that I mean that today you
17  are appearing as a corporate representative for 3M.
18  Do you feel like you have an understanding of what
19  that is and what your purpose is here today?
20       A.   I believe so.
21       Q.   Okay.  I'm going to be asking you questions,
22  and in response to these questions today you're going
23  to be giving testimony as though you're the voice of
24  3M.  Obviously, I can't put 3M in that chair, so
25  somebody has to be chosen.  I've been informed that

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 90

1  Bair Hugger.
2         MR. BLACKWELL:  I object to the form of the
3  question.
4     A.   Well I -- I --
5         The company certainly had an indication that
6  it was important to the customers regarding the level
7  of particulate loading that might occur from a
8  forced-air warming unit.
9     Q.   Okay.  Now part of the reason that dictated
10 a choice of filter in the model 750 was an airflow
11 concern; correct?
12    A.   Part of what, yes.
13    Q.   In fact, it was a goal of the project of the
14 750 to create a device which delivered more air than
15 the previous device.
16    A.   Yes.
17    Q.   Okay.  So the air-output specifications of
18 the unit changed and that in turn dictated some of the
19 choice for the filter.
20    A.   One -- one of the many design considerations
21 that dictated that, yes.
22    Q.   Okay.  Before the 750 was ever released and
23 sold and used on a patient, what was done to ensure
24 that that change in air out -- output had no adverse
25 effect on airborne contamination issues?

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 258

1  coming from.  Okay?  Because particles are all over
2  the operating room and underneath the operating room
3  table and everywhere.  Do you agree?
4      A.   Yes.
5      Q.   Okay.  Based on the data that we have today,
6  including the study funded by 3M as well as other
7  studies, every single study indicates that the Bair
8  Hugger increases the particle count over the sterile
9  field; correct?
10     A.   In absolute numbers, yes.
11     Q.   Yes.  Okay.  And you have no internal
12 studies to refute that; correct?
13     A.   No, we don't.
14     Q.   What's defendants' knowledge and analysis of
15 third-party testing regarding whether or not the Bair
16 Hugger causes surgical-site infection?
17     A.   Well again, the analysis that I showed you
18 that was done with the CDC data, for example.  And the
19 secular trend of deep joint infection over the last
20 decade or so has generally declined in hip and knee
21 implant surgery, so at a -- at a macro level there
22 doesn't appear to be an increase in the number of
23 these infections despite the fact that patients are
24 generally older and sicker and there are more of them
25 now than there were a decade ago.