```
1                  UNITED STATES DISTRICT COURT

2                    DISTRICT OF MINNESOTA

3     ------------------------------------------------------------
                                    )
4                                   )
      In Re: Bair Hugger Forced Air )   File No. 15-MD-2666
5     Warming Devices Products      )   (JNE/FLN)
      Liability Litigation          )
6                                   )   September 21, 2017
                                    )   Minneapolis, Minnesota
7                                   )   Courtroom 12W
                                    )   9:09 a.m.
8                                   )
                                    )
9     ------------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                UNITED STATES DISTRICT COURT JUDGE
11

12            THE HONORABLE WILLIAM H. LEARY, III
                RAMSEY COUNTY DISTRICT COURT JUDGE
13

14                      (STATUS CONFERENCE)

15    APPEARANCES

16    FOR THE PLAINTIFFS:
                                    MESHBESHER & SPENCE
17                                  Genevieve M. Zimmerman
                                    1616 Park Avenue
18                                  Minneapolis, MN  55404

19
                                    CIRESI CONLIN
20                                  Jan Conlin
                                    225 South 6th Street
21                                  Suite 4600
                                    Minneapolis, MN
22

23                                  KENNEDY HODGES, LLP
                                    Gabriel Assaad
24                                  4409 Montrose Blvd
                                    Suite 200
25                                  Houston, TX 77006
```

```
 1      FOR THE PLAINTIFFS (cont'd):

 2                                  PRITZKER HAGEMAN, P.A.
                                    David Szerlag
 3                                  45 South 7th Street, #2950
                                    Minneapolis, MN  55402-1652
 4
        FOR THE PLAINTIFFS (APPEARING BY PHONE:)
 5
                                    KENNEDY HODGES, LLP
 6                                  David W. Hodges
                                    711 W. Alabama Street
 7                                  Houston, TX 77006

 8
                                    GROSSMAN & MOORE, PLLC
 9                                  Emily A. DeVuono
                                    Jennifer Moore
10                                  401 W. Main Street
                                    Suite 1810
11                                  Louisville, KY  40202

12
                                    HARE WYNN NEWELL & NEWTON
13                                  Peggy Little
                                    Lynne Reed
14                                  Massey Building
                                    2025 Third Avenue North
15                                  Suite 800
                                    Birmingham, AL  35203
16
                                    MCEWEN LAW FIRM, LTD
17                                  Melissa Schmid
                                    5850 Blackshire Path
18                                  Inver Grove Heights, MN  55076

19                                  MORGAN & MORGAN, PA
                                    Heather Cullen
20                                  Joseph T. Waechter
                                    Michael Goetz
21                                  201 N. Franklin St 7th Floor
                                    Tampa, FL  33602
22
                                    RAIZNER SLANIA, LLP
23                                  Jeffrey L. Raizner
                                    Rica Rinosa
24                                  2402 Dunlavy Street
                                    Houston, TX  77006
25
```

```
 1                                  LONCAR & ASSOCIATES
                                    Brian U. Loncar
 2                                  John L. Coveney
                                    424 S. Cesar Chavez Blvd
 3                                  Dallas, TX  75201

 4                                  CAPRETZ & ASSOCIATES
                                    Don K. Ledgard
 5                                  5000 Birch St, Suite 2500
                                    Newport Beach, ca  92660
 6
                                    MICHAEL HINGLE & ASSOCIATES
 7                                  Bryan Pfleeger
                                    Julie Jochum
 8                                  220 Gause Blvd
                                    Slidell, LA  70005
 9

10                                  DAVIS & CRUMP, PC
                                    Martin D. Crump
11                                  Robert D. Cain, Jr.
                                    Wes Stevenson
12                                  2601 Fourteenth Street
                                    Gulfpost, MS 39507
13
                                    LEWIS & CAPLAN
14                                  Pete Lewis
                                    Sarah Delahoussaye Call
15                                  Amy Webster
                                    3631 Canal Street
16                                  New Orleans, LA  70119

17                                  THE RUTH TEAM
                                    Austin Grinder
18                                  Steven C. Ruth
                                    842 Ramond Avenue
19                                  Suite 200
                                    Saint Paul, MN  33733-5157
20
                                    LAW OFFICES OF TRAVIS R. WALKER
21                                  Travis R. Walker
                                    Julie Treacy
22                                  1235 SE Indian Street
                                    Suite 101
23                                  Stuart, FL  34997

24

25
```

```
 1     FOR THE PLAINTIFFS(appearing by phone):

 2                                ANDREWS & THORNTON
                                  Anne Andrews
 3                                John Thornton
                                  Lauren Davis
 4                                2 Corporate Park, Suite 110
                                  Irvine, CA 92606
 5
                                  JOHNSON BECKER PLLC
 6                                Rolf T. Fiebiger
                                  444 Cedar Street
 7                                Suite 1800
                                  Saint Paul, MN  55101
 8
                                  JOHNSON JOHNSON & SCHALLER PC
 9                                Leslie O'Leary
                                  975 Oak Street
10                                Citizens Building, Suite 1050
                                  Eugene, OR  97401
11
                                  LORD & ASSOCIATES
12                                Melissa Heinlein
                                  Priscilla Lord
13                                309 Clifton Avenue
                                  Minneapolis, MN 55403
14
                                  MURRAY LAW FIRM
15                                Caroline Whitney Thomas
                                  650 Poydras Street
16                                Suite 2150
                                  New Orleans, LA  70130
17
                                  BROWN & CROUPPEN, PC
18                                Abby Cordray
                                  211 North Broadway, Suite 1600
19                                St. Louis, MO  63102

20                                BEASLEY ALLEN
                                  Megan Robinson
21                                218 Commerce Street
                                  Montgomery, AL  36104
22

23                                HOLLIS LEGAL SOLUTIONS, PPLC
                                  Scott Hollis
24                                6814 Crumpler Boulevard,
                                  Suite 101
25                                Olive Branch, MS  38654
```

```
 1        FOR THE PLAINTIFFS(appearing by phone):

 2                              FITZGERALD LAW GROUP, LLC
                                Kevin Fitzgerald
 3                              120 Exchange Street
                                Suite 200
 4                              Portland, ME  04101

 5                              LAW OFFICES OF PETER ANGELOS,
                                P.C.
 6                              Thomas Keilty, III
                                100 North Charles Street
 7                              Baltimore, MD  21201

 8                              MESHBESHER & SPENCE, LTD
                                Holly Sternquist
 9                              1616 Park Avenue
                                Minneapolis, MN  55404
10
                                PARKER WAICHMAN, LLP
11                              Nicole Eisner
                                Michael S. Werner
12                              59 Maiden Lane
                                6th Floor
13                              New York, NY  10038

14                              PRITZKER HAGEMAN, PA
                                Wendy Thayer
15                              PWC Plaza Building
                                Suite 2950
16                              45 South Seventh Street
                                Minneapolis, MN  55402-1652
17
                                RANDALL J. TROST, P.C.
18                              Carrie Hancock
                                Pam Rodriguez
19                              Randall T. Trost
                                801 Main Street
20                              Lynchburg, VA  24504

21                              NEAL R. ELLIOTT, JR.
                                P.O. Box 80136
22                              Baton Rouge, LA  70898

23                              NASH & FRANCISKATO LAW FIRM
                                Brian Franciskato
24                              2300 Main Street, #170
                                Kansas City, MO  64108
25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                              BROUS LAW LLC
                                Carrie Brous
 3                              3965 West 83rd St.  #115
                                Prairie Village, KS  66208
 4
                                BACHUS & SCHANKER, LLC
 5                              J. Christopher Elliott
                                Noelle Collins
 6                              1899 Wynkoop Street
                                Suite 1700
 7                              Denver, CO  80202

 8                              BAILEY PEAVY BAILEY COWAN
                                HECKAMAN, PLLC
 9                              Justin Jenson
                                The Lyric Centre
10                              440 Louisiana Street
                                Suite 2100
11                              Houston, TX  77002

12                              GERTLER LAW FIRM
                                Leola Anderson
13                              935 Gravier Street
                                Suite 1900
14                              New Orleans, LA  70112

15                              GINGRAS CATES & LUEBKE
                                Scott Thompson
16                              8150 Excelsior Drive
                                Madison, WI  53717
17
                                LANGDON & EMISON
18                              Brett Emison
                                Rachel Ahmann
19                              911 Main Street
                                Lexington, MO  64067
20
                                LARRY HELVEY LAW FIRM
21                              Larry Helvey
                                2735 1st Ave SE, Ste 101
22                              Cedar Rapids, IA  52402

23                              RICHARDSON PATRICK WESTBROOK &
                                BRICKMAN, LLC
24                              Missi Cruz
                                PO. Box 1368
25                              Barnwell, SC  29812
```

```
 1     FOR THE PLAINTIFFS(appearing by phone):

 2                              RIEDERS TRAVIS HUMPHREY WATERS
                               & DOHRMANN
 3                             Deborah Bueno
                               161 West Third Street
 4                             Williamsport, PA  17701

 5
                               THE WEBSTER LAW FIRM
 6                             Chelsie Garza
                               6200 Savoy Suite 150
 7                             Houston, TX  77036

 8                             LOCKRIDGE GRINDAL NAUEN, PLLP
                               Rosa Trembour
 9                             100 South Washington Ave #2200
                               Minneapolis, MM  55401
10
                               LAW OFFICES OF JAMES S. ROGERS
11                             Marci Umatum
                               1500 4th Avenue #500
12                             Seattle, WA  98101

13                             LEVIN PAPANTONIO
                               Daniel Nigh
14                             316 S. Baylen Street
                               Suite 600
15                             Pensacola, FL 32502

16                             PETERSON & ASSOCIATES, P.C.
                               Brian Emerson Tadtman
17                             Nicholas Clevenger
                               801 W. 47th Street, Suite 107
18                             Kansas City, MO  64112

19                             SCHNEIDER SCHNEIDER & SCHNEIDER
                               Scott Haider
20                             815 Third Avenue South
                               Fargo, ND  58103
21
                               THE OLINDE FIRM, LLC
22                             Wesley G. Barr
                               Alfred Olinde, Jr.
23                             400 Poydras Street
                               Suite 1980
24                             New Orleans, LA  70130

25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):
                                    THE RUTH TEAM
 2                                  Austin Grinder
                                    Steven C. Ruth
 3                                  842 Ramond Avenue
                                    Suite 200
 4                                  Saint Paul, MN  33733-5157

 5                                  SANDERS PHILLIPS GROSSMAN
                                    Randi Kassan
 6                                  100 Garden City Plaza
                                    Suite 500
 7                                  Garden City, NY 11530

 8                                  MARINO & MARINO, P.C.
                                    Vera Gretchyn Marino
 9                                  175 East Shore Road
                                    Great Neck, NY 11023
10
                                    DENTONS
11                                  Mordecai Boone
                                    1999 Harrison street
12                                  Suite 1300
                                    Oakland, CA  94612
13
        FOR THE DEFENDANTS 3M:
14                                  BLACKWELL BURKE P.A.
                                    Jerry Blackwell
15                                  Ben Hulse
                                    Deborah Lewis
16                                  Corey Gordon
                                    Mary Young
17                                  431 South Seventh Street
                                    Suite 2500
18                                  Minneapolis, MN  55415

19                                  FAEGRE BAKER DANIELS
                                    Bridget M. Ahmann
20                                  90 South Seventh Street
                                    Suite 2200
21                                  Minneapolis, MN  55402

22      Court Reporter:             MARIA V. WEINBECK, RMR-FCRR
                                    1005 U.S. Courthouse
23                                  300 South Fourth Street
                                    Minneapolis, Minnesota 55415
24
                 Proceedings recorded by mechanical stenography;
25      transcript produced by computer.
```

```
 1                    P R O C E E D I N G S

 2                       (9:09 a.m.)

 3          THE COURT:  Good morning, everybody.  Nice to see

 4   you all.  Please be seated.  I gave some thought a couple

 5   days ago to make taking the day off and having Judge Noel

 6   handle this on his own and then he beat me to it.  So you're

 7   stuck with me today.

 8          Would you mind noting your appearances for the

 9   record?  It helps at least the people on the phone and then

10   I see one person I don't know, so I'm just going to have

11   everybody note their appearances, and that way it will be

12   more subtle, but I don't recognize Ms. Lewis.

13          MS. ZIMMERMAN:  Good morning, Your Honor.

14   Genevieve Zimmerman for the plaintiffs.

15          THE COURT:  Good morning.

16          MS. CONLIN:  Jan Conlin.  Good morning, Your

17   Honor.

18          THE COURT:  Good morning.

19          MR. ASSAAD:  Gabriel Assaad.  Good morning.

20          MR. SZERLAG:  David Szerlag.

21          MR. BLACKWELL:  Good morning, Your Honor.  Jerry

22   Blackwell for 3M.

23          MS. LEWIS:  Good morning, Your Honor.  Deborah

24   Lewis.

25          THE COURT:  And you're for 3M?  And where do you
```

1    office?

2              MS. LEWIS:  I'm with Blackwell Burke.

3              THE COURT:  Right here?

4              MS. LEWIS:  Yes.

5              THE COURT:  I apologize for not -- whatever I

6    apologize for, I apologize.

7              MR. GORDON:  Good morning, Your Honor.  Corey

8    Gordon for 3M.

9              MS. AHMANN:  Bridget Ahmann for 3M.

10             MS. YOUNG:  Mary Young also for 3M.

11             MR. HULSE:  And Ben Hulse for 3M.  Good morning.

12             THE COURT:  Good morning.  And Judge Leary is

13   here.  Judge Noel is not.  And, Judge Leary, you're welcome

14   to come on up here and sit if you want or, you know,

15   obviously, participate fully.

16             I have the agenda, and my proposal would be that

17   we just March through it and then at the end discuss any

18   matters that we haven't been able to get to, unless somebody

19   has something that they urgently want to talk about.

20             MS. VERA:  Good morning, Your Honor.

21             THE COURT:  Good morning.

22             MS. MARINO:  This is Vera Gretchyn Marino.  I

23   represent Leonard Smalls.  Your docket number on that case

24   is 00897.

25             THE COURT:  Hold on, hold on, whoa, whoa, just a

1    second.  You've caught me a little bit by surprise, so just

2    slow down.  Once again, would you state your name once more,

3    please?  I didn't catch it.

4            MS. MARINO:  Yes, it's Vera, V-E-R-A, Gretchyn,

5    G-R-E-T-C-H-Y-N, Marino, M-A-R-I-N-O.  I'm the attorney

6    representing Leonard Smalls, whose case was incorporated

7    into the MDL case.  His docket number is also different.

8    It's 00897, but it's the year 17:000897, and it was

9    incorporated into the Bair Hugger case on May 31, by

10   decision after issues with the judicial panel.  And David

11   Szerlag is aware of my appearance here, and I think that he

12   is going to request some clarification on the application of

13   the order to this case.

14           THE COURT:  Okay.  And is it Raino?

15           MS. MARINO:  Marino, M-A-R-I-N-O, like Dan Marino,

16   the football player.

17           THE COURT:  That, you know, if we knew each other

18   better, you would know that doesn't really help me.

19   Ms. Marino, where are you talking to us from?  Where are you

20   right now?  What state?

21           MS. MARINO:  Right now, I'm in Los Angeles.  I'm

22   on another case, a pro hac vice case, but my office is in

23   New York, in Great Neck, New York, 175 East Shore Road, and

24   I've been cc'd in the e-mails that have been coming from the

25   Bair Hugger case by the Court.  And my only issue is is that

1    I have filed the plaintiff's fact sheet, and filed it ECF

2    filing under the 00897 filing.  And the Clerk of the Court,

3    one of the Clerks of the Court, Chad Pennington, called me

4    the next day and told me the record was sealed because there

5    were medical records that haven't been redacted, and I

6    understand that, but to tell me that the Court requested a

7    hard copy of that very voluminous document.

8            And when I spoke to Mr. Szerlag, he put me in

9    touch with the portal; unfortunately, the computer service,

10   we had a little earthquake here, it failed, and it won't be

11   restored until the 25th, Monday, so I can't file it under

12   the portal, even though I signed in for it and paid for it.

13   So my question is does Your Honor still request a hard copy

14   to be sent to her chambers?

15           THE COURT:  All right.  I think if you don't mind,

16   I'm going to hear from Mr. Szerlag.

17           MR. SZERLAG:  Good morning, Your Honor.

18           THE COURT:  Good morning.

19           MR. SZERLAG:  This is over, I think, just some

20   miscommunication over PTO-14.  Ms. Marino apparently filed

21   the PFS through ECF filing along with some confidential

22   documents.  My understanding is that it went to the clerk's

23   office.  The clerk's office immediately sealed those

24   documents.  There was some conversation between Judge Noel's

25   chambers and the clerk's office and Ms. Marino, but my

1    understanding is right now it's all straightened out.  Once

2    Ms. Marino gets credentials for the portal, she'll upload

3    the PFS.  I'll make sure that my assistant helps her with

4    that, and I think that we should be all squared away.

5              THE COURT:  Okay, because the PFSs haven't been

6    being filed on ECF.

7              MR. SZERLAG:  Correct.  It was just a

8    miscommunication.

9              THE COURT:  All right.  And so, Ms. Marino, first

10   of all, are you able to hear what's going on in court okay?

11             MS. MARINO:  Yes, with some difficulty, yes.

12   Thank you, Your Honor.

13             THE COURT:  It sounds like your issue is going to

14   be worked out and there's nothing that we need to decide

15   right now, but maintain your contact with Mr. Szerlag, and

16   he'll lead you to enlightenment.

17             MS. MARINO:  All right.  It's just that I have a

18   conflict with the instructions and wonder if Your Honor

19   requests a hard copy to be mailed anyway.

20             THE COURT:  The short answer to that is no.

21             MS. MARINO:  Thank you.  Thank you.

22             THE COURT:  Okay.  I have a list of counsel who

23   are on the phone, and so could I just hear from let's say

24   one person, somebody who is on the phone say something so I

25   know you can hear us.

1       MR. NIGH:  This is David Nigh from Levin

2    Papantonio.

3       THE COURT:  Okay, good enough.  Thank you very

4    much.

5       MR. NIGH:  Thank you.

6       THE COURT:  Now, let's turn our attention to the

7    joint agenda.

8       MR. BLACKWELL:  Your Honor, if I may, Jerry

9    Blackwell.  Just in terms of setting the table, a lot has

10   happened since we were here last.

11      THE COURT:  Do you want to come up to the podium?

12      MR. BLACKWELL:  Oh, sure, it's just kind of a

13   brief comment, but a lot has happened since we were here

14   last.  We've had two unprecedented in the history of the

15   world hurricanes, which they both managed to impact

16   plaintiffs' counsel involved in this case, whether it in

17   Houston was Kennedy Hodges who flooded out, and then with

18   Hurricane Irma affected Mr.   -

19      MS. CONLIN:  Mr. Nugier.

20      MR. BLACKWELL:  -- yes, and it impacted our

21   discovery plans and so on.  We were able to work through it.

22   And as Your Honor has seen in looking at our agenda, there's

23   also been a tornado on the bellwethers that we'll be talking

24   about that today, so I just want to make sure Your Honor was

25   aware there's lots been going on and that's impacted our

1    ability to undertake some of the discovery and that

2    translates into some of our discussion on Kamke and Nugier

3    for this morning.

4              THE COURT:  A hurricane you say?

5              MR. BLACKWELL:  A couple of them.

6              THE COURT:  Yeah, I've got a place in Florida.

7    Well, it's not going to affect Kamke, is it?

8              MR. BLACKWELL:  No, Your Honor.  It affects

9    Nugier, and to the extent any of the lawyers were involved,

10   it, obviously, impacted what resources the parties would

11   have had at a given time to do various things but primarily

12   Nugier.

13             THE COURT:  My guess, when I got your

14   communication, I don't know what time it came in yesterday,

15   but the update on your motions to dismiss, when I saw the

16   cases that you were not currently moving on any more, that

17   looked hurricane related to me.

18             MR. BLACKWELL:  And Mr. Hulse can --

19             MR. HULSE:  That wasn't actually, at least not to

20   my knowledge, hurricane related.  That's the PFS-related

21   motion, and there were some of those that were just

22   dismissed by stip., and some that we were able to work out

23   through subsequent submission.

24             THE COURT:  Okay.

25             MR. HULSE:  And we've got seven left or eight left

1    to talk about today.

2            THE COURT:  Right.  All right.  So Kamke, I don't

3    believe I have anything in front of me on Kamke right now,

4    is that correct, Ms. Zimmerman?

5            MS. ZIMMERMAN:  Yes, Your Honor, that is correct.

6            THE COURT:  But it doesn't look like Kamke is

7    going to be going.

8            MS. ZIMMERMAN:  I believe that that's correct,

9    Your Honor, and I think that the parties have outlined the

10   position or the new information with respect to Ms. Kamke's

11   case in the joint status report and also in the letters to

12   the Court yesterday.  I did bring with a copy of the medical

13   record in question if the Court would like to look at it.

14           THE COURT:  Nope, I don't need to look at it.  I

15   do hear the phone.  Is it possible those of you who are

16   participating on the phone, could you mute your microphone

17   so that the paper rustling doesn't -- okay, one more time,

18   mute that microphone.  Ms. Zimmerman?

19           All right.  So whoever is on the phone, you really

20   need to mute your microphone.  This is like having a bench

21   meeting where we have senior judges on the phone, and they

22   don't know how to mute their microphone.  And we say, "mute

23   your microphone, mute your microphone," and they go,

24   "(coughing)."  I hope I didn't rat anybody out.

25           (Laughter.)

1              Mr. Blackwell or Ms. Zimmerman, do you want to

2      talk about Kamke right now?  Or do you want to continue to

3      discuss it amongst yourselves.  I can do it now or later,

4      never, whatever you want.

5              MR. BLACKWELL:  Your Honor, I think it's ripe to

6      discuss now.

7              THE COURT:  Okay.

8              MS. ZIMMERMAN:  Well, we're happy to do that,

9      Your Honor.  Ms. Kamke is a case that was jointly nominated

10     by both plaintiffs and defendants.  And as Your Honor is

11     aware, there's multiple scheduling orders that prohibited

12     case specific discovery to start prior to June second.  In

13     connection with preparation for the depositions of various

14     treating physicians, in August we learned that a small

15     handwritten notation on the anesthesia record indicates that

16     shortly after the surgery started, and this is about a three

17     hour surgery, the Bair Hugger machine was turned off.

18              This was new information to plaintiffs.  When we

19     learned about it, we identified that issue.  I called

20     Mr. Blackwell myself.  We put that in a letter, and we

21     traded correspondence back and forth.  Suffice it to say

22     that because of this new information, we think that

23     Ms. Kamke's case is no longer representative because of the

24     limited exposure to the machine.

25              As such, we indicated, ultimately, Ms. Kamke's

1    decision that she would have her case dismissed with

2    prejudice.  We communicated this to Mr. Blackwell.  He

3    indicated that defendants would not stipulate to the

4    dismissal, that rather they would require a motion to be

5    brought before this Court, that while the plaintiffs could

6    bring this motion, it would go unopposed should the

7    plaintiffs agree to pay defendant's costs.

8            Last Friday, we learned that the costs were

9    somewhere around $16,000.  I have an accounting of the bills

10   as well.  It seems to plaintiffs that the vast majority of

11   the costs there are likely summaries of the medical records

12   themselves, which we think are not appropriate for costs.

13   And because there was no bad faith involved in this, we

14   think that it would be unnecessarily punitive to assign

15   costs to plaintiffs in this respect.  We're certainly happy

16   to prepare and submit a formal motion, and we have one

17   prepared and we can do that --

18           THE COURT:  That's not necessary.  It seems like a

19   waste of your time.  Mr. Blackwell?

20           MR. BLACKWELL:  Yes, Your Honor.

21           THE COURT:  You've got a couple of issues on this.

22   One is, and what strikes me is the more fertile area for

23   discussion is what this does to the bellwether lineup and

24   then, of course, you have the attorney fee issue, which I

25   would encourage you not to spend too much on.

19

1                    MR. BLACKWELL:  Your Honor, not attorney's fees --

2                    THE COURT:  Or the fees.

3                    MR. BLACKWELL:  The issue of just costs incurred.

4       And let me start with the latter first and explain to Your

5       Honor why we are focused on this.  And while counsel

6       represented they just discovered this notation in the

7       medical records, the fact is I have here a copy of the

8       submission of the records from Aspirus that was sent to the

9       plaintiffs containing the record at issue from August 21, of

10      2013.  It was sent to them on March 23 of 2016, so they had

11      this for over a year, and so this notation was in their

12      possession for over a year.  It wasn't just discovered.

13      Always there, always in their possession, so that's one

14      fact.

15                   There's a second fact that is of concern to us

16      that isn't mentioned, and we think in the interest of

17      transparency it ought to be said.  This happens to be in our

18      view that what was really discovered, there were multiple

19      surgeries that this particular plaintiff had, Mr. Kamke,

20      involving the Bair Hugger.  So in the second surgery, it's

21      turned off for half an hour.  They claim that all of them,

22      all of the exposures contributed in some way to cause the

23      surgical site infection the Bair Hugger was used.

24                   What we knew about this case is that just before

25      the controversial surgery in issue that led to the SSI,

1    there was an angle swab taken of plaintiff that was positive

2    for staph.  The results came back after the surgery, and the

3    surgical site infection developed that was positive for

4    staph.

5          Now, this would be a fact that would cause one to

6    question whether the plaintiffs would want to pursue this.

7    We didn't know why they wanted it as a bellwether.  We

8    certainly knew why we did, but alternative causation is an

9    issue in every single case we've got.

10          So the fact that they pull out this record that

11   they've had for over a year and pull out this fact they

12   claim was just discovered when it was easily discovered or

13   should have been discovered back in March of 2016 at the

14   earliest does call into question all of the costs that we've

15   spent up to that time when this could easily have been

16   discovered and should have been.

17          So those are the critical facts in the Kamke case.

18   And so the costs we seek are simply those that related to

19   the discovery we had to undertake specifically for the

20   bellwether.  And we understand that litigation is expensive.

21   Everybody is going to spend, and it costs, but the right

22   anybody has to simply waste the other side's money is at

23   issue in the case.  And I suppose had we done it, it would

24   have been an issue too had the defendants done this.

25          So given that this relates to discovery, we at

1    least want an opportunity to be kind of heard on it.  The

2    reason that we had asked the plaintiffs to file a formal

3    motion was simply because this is a bellwether, and we

4    wanted it to be properly presented to the Court, so it isn't

5    something that we're standing on that, obviously, we're not

6    given that Your Honor said don't stand on it.

7              THE COURT:  Well, even though there hasn't been a

8    formal motion filed, I have a hard time imagining that

9    there's a lot more information that would come my way if a

10   formal motion was filed.

11             So I mean if the provision of Rule -- if Court

12   permission is required, and maybe there's a question about

13   whether it is because the answer, the short answer was never

14   actually filed in the individual Kamke.  I looked on the

15   docket, and it's not there.  So, you know, I guess there's

16   an argument to be made whether 41A, the permissive dismissal

17   might apply, but nobody is talking about that, so I probably

18   should have kept my mouth shut on it.

19             But I feel like I've got the information, and

20   what's the point of making them file a motion, and you

21   having to file a motion back and everything.  So --

22             MR. BLACKWELL:  And, Your Honor --

23             THE COURT:  Let me just tell you how I have come

24   to view the Kamke situation and what ought to be done about

25   it.

1              The purpose of bellwethers is to give the parties

2        an idea of what the strengths of their cases are, right?  So

3        it's not as if there's some -- there's no magic in having

4        the plaintiffs lose on Kamke this way versus some other way.

5        Like Kamke, they say it's not representative.  I don't know,

6        maybe it is representative, who knows?  But it's a

7        bellwether, and, but what's the difference between they find

8        it out now versus you go to trial and they lose, the jury is

9        out for five minutes.  You know, you don't get costs for

10       that.  It's just that it's a bellwether that tells you

11       something and, you know, you won that one.

12             So you win Kamke.  It's just you don't have to go

13       to trial on it, but it's still it's some information.  And

14       from the plaintiff's point of view, I would think that this

15       would cause them to go through and look and see whether

16       similar facts might come up in some of the other cases.  But

17       it's instructive, so that's why I don't see having to add

18       another bellwether -- I mean, I guess if we keep losing

19       bellwether plaintiffs, we'll have to do something.

20             But I like your Order, so your Proposed Order

21       getting rid of Kamke as a bellwether would be Nugier, Skaar,

22       Walker -- what's the other --

23             MR. BLACKWELL:  Gareis.

24             THE COURT:  So if I had to say right now what I

25       would do, I would say that Kamke will be dismissed with

23

1    prejudice because it's a failure on the merits.  No

2    substitute bellwether comes in.  We adopt the new bellwether

3    order that you propose, which is to say, again, Nugier,

4    Skaar, Walker, Gareis.

5              On the costs, I guess the short answer is no, I'm

6    not going to give them to you.  If you want more

7    explanation, I can --

8              MR. BLACKWELL:  Your Honor, I don't think we need

9    a longer answer.  Simply our perspective was we've gone

10   through a fairly protracted process to choose our

11   representative cases, and we spent a lot of time on cases

12   that would be meaningful to all of the parties.  And Kamke

13   was one that both parties had agreed to, and we spent money

14   and time on it.

15             THE COURT:  Yeah, I don't doubt that.  But I think

16   just imagine that you went to trial, and the jury was out

17   for five minutes and you won, kind of think of it that way,

18   if that makes you feel any better.

19             MR. BLACKWELL:  I understand, Your Honor.  And so

20   does that bring us to Nugier?

21             THE COURT:  Yes, that brings us to Nugier.  Now,

22   what's the -- I understand that who from the U. S.

23   Attorney's Office?

24             Oh, please, please, please, whoever is on the

25   phone, would you mute your microphone?

1              Was it Mr. Fuller from the U.S. Attorney's Office

2      who was there?  How is that going?  Are you getting?

3              MR. BLACKWELL:  Your Honor, I think --

4              THE COURT:  Would you hold on a second?  I can't

5      take this microphone issue.  We'll mute on our end then.

6              So the question is how are we coming on getting

7      those records from the VA?

8              MR. BLACKWELL:  Your Honor, we've kind of reached

9      the impasse, I think, with the VA discovery.  There was an

10     e-mail exchange as early as this morning at 8:00 between the

11     AUSA and the parties.  And what the VA office can ultimately

12     agree to is that we'd be allowed to take one or two

13     depositions depending on of up to -- we could talk to up to

14     four VA personnel for one to two hours, depending on whether

15     they do questions by deposition, by written questions as

16     opposed to in person.  If they're in person, they said up to

17     four persons for two hours each.

18             And if we depose them by written questions, then

19     they will allow followups of four persons for only one hour.

20     And the problem is we don't know a lot about this Nugier

21     case right now, and we learned something that was new even

22     to us as of a week or so ago.  It may have been known to the

23     plaintiffs because they probably could have talked to their

24     client and found out that this surgery took place in a

25     mobile surgery unit, a trailer.  And so we just learned

 1     this.  They have these -- I've got pictures of them so.

 2               THE COURT:  Why?

 3               MR. BLACKWELL:  Well, sometimes, there are five of

 4     these apparently at this particular hospital in Miami, and

 5     at times when there's construction going on or I suppose

 6     everything is filled up, some people go out to the trailer.

 7               THE COURT:  A trailer?

 8               MR. BLACKWELL:  It is.  And, Your Honor, if I

 9     could show you --

10               THE COURT:  It can't be what I'm picturing.

11               MR. BLACKWELL:  No, no, I don't think there is --

12               THE COURT:  I'm picturing Alan Alda from the MASH

13     unit.

14               (Laughter.)

15               MR. BLACKWELL:  I don't think there are any

16     chickens in it, but it was probably next to a food truck.

17     And so if I may just show Your Honor what these might look

18     like.  So one of them is actually one of the trucks from the

19     VA, and the other is one at Stonybrook where you can see

20     like one of those fancy RVs that kind of juts out on the

21     side, and you kind of push the button and --

22               THE COURT:  Here's the part I like.  I like just

23     the scraggly electrical, the extension cord.  The red

24     extension cord that just goes, I hope nobody trips on that.

25               MR. BLACKWELL:  Right, right.  The good news is

1    they could probably drive it up here, Your Honor, and we can

2    look at it.

3              THE COURT:  Yeah, you call that good news.

4              MR. BLACKWELL:  But I think that the ultimate kind

5    of punch line on this, and we've got a schedule right now

6    that in about two weeks we've got a deadline for initial

7    expert reports in the case, and we are sort of creeping

8    along incrementally with respect to the VA.

9              Now we have this added fact that this involves a

10   mobile surgery unit, which is, frankly, a vista of discovery

11   onto itself that will need to be explored in terms of what

12   the implications are there.  And I'm fairly certain, not

13   speaking for the plaintiffs, but I'm certain that none of

14   the science they intend to rely upon involve studies that

15   were done in the mobile surgery unit and nor was there CFD.

16             THE COURT:  Could I just stop you for a second?

17   Is there a motion -- is the Magistrate Judge taking a look

18   at this now?

19             MR. BLACKWELL:  He did.  There was a hearing on

20   this roughly three days ago.

21             THE COURT:  I know you were down there on Monday.

22   And do you have an Order yet from the Magistrate Judge?  So

23   I should probably just leave it alone, but I appreciate the

24   --

25             MR. BLACKWELL:  We were instructed to try to work

1    it out informally with the VA and then report back before

2    9:00 this morning as to what the status was.

3              THE COURT:  Okay.

4              MR. BLACKWELL:  So, the mobile surgery unit really

5    wasn't a part of that discussion because that's a different

6    issue with respect to discovery that we've just learned

7    about.  And if we're looking at a current schedule, the VA

8    says they might not even be able to find documents that

9    relate to this mobile surgery unit, but we certainly would

10   have to have fulsome exploration about the implications of

11   using that for an orthopedic surgery or any kind of surgery.

12             THE COURT:  Do you know how many other plaintiffs

13   had their surgery done in a mobile unit?

14             MR. BLACKWELL:  I would ask the plaintiffs.  I

15   would hazard to say I don't know of any but I'll look back

16   to them.

17             THE COURT:  They probably don't know at this

18   point.

19             Ms. Zimmerman, if you want to come up and,

20   Mr. Blackwell, you don't mind sharing the podium with

21   Ms. Zimmerman, do you?

22             MR. BLACKWELL:  Not at all, Your Honor.  I'll just

23   turn my microphone way over here.

24             MS. ZIMMERMAN:  Thank you, Your Honor.  And much

25   like what was the situation with Kamke when we talked to the

1    anesthesiologist for the first time, and they explained this

2    handwritten note, we learned for the first time in Judge

3    Noel's chamber, courtroom on Monday that this mobile surgery

4    unit was used.  We don't think, ultimately, that it should

5    impact the representativeness of Mr. Nugier, and we are

6    absolutely prepared to go forward with the case.  Perhaps

7    Mr. Blackwell will like to try a case against somebody who

8    has got a mobile surgery unit and should be -- I don't see

9    any way --

10            THE COURT:  Okay, well, what about this discovery

11   matter?  I guess we'll just have to wait and see what Judge

12   Noel issues.

13            MS. ZIMMERMAN:  Yes, I think that's right.

14            THE COURT:  Can I ask you another question before

15   I forget?  Skaar, Walker and Gareis, are they VA?  Are we

16   going to run into this with other bellwether?  Are they --

17            MS. ZIMMERMAN:  That's a great question.  I know

18   that Mr. Walker is a patient at Regions in St. Paul.

19            MR. BLACKWELL:  No, they're not VA, Your Honor.

20            MS. ZIMMERMAN:  Right.  So Judge Noel instructed

21   the parties to try to work this out.  The VA made a

22   counter-offer with two different options for us with respect

23   to getting access to some additional information for

24   Mr. Nugier.  We think that either of the counter-proposals

25   would be acceptable.

1              It's my understanding the defendants have

2      declined, and plaintiffs' concern is that this is also a

3      bellwether that we're prepared to go forward with, and this

4      may well highjack this particular case from the bellwether

5      order as well now, so.  And pending before Judge Noel, at

6      this point, is a motion by the VA to quash the subpoena from

7      defendants, and the motion to compel.

8              MR. BLACKWELL:  And just to be clear in terms

9      of --

10             THE COURT:  Hold on one second.  We can anticipate

11     an order from Judge Noel very soon.

12             MR. BLACKWELL:  So there's probably nothing else

13     further pending on it, but just to be clear on that, the

14     posture of the VA issues and the disputes before Judge Noel,

15     the plaintiffs formally took no position to then join the

16     motion, so it's been a little bit cumbersome kind of

17     navigating around them given that they don't have a dog in

18     the fight.

19             But we'll await Judge Noel's Order, and to the

20     extent there will be additional discovery needed on this

21     mobile surgery unit, and there most certainly will be to

22     figure out what flies in the door when you open it, and how

23     patients get there and so on.  We, Your Honor, can also take

24     that up with Judge Noel because I'm really not seeing how

25     given that we don't have any discovery yet, and we just

1    learned about the mobile surgery unit, we'd be able to have

2    all of this discovery completed in time to disclose experts

3    in two weeks in the Nugier case, which, according to our

4    schedule, I think those reports are going to be due

5    October 9th, deadline for initial expert reports.

6            MS. ZIMMERMAN:  In that regard, I think the

7    plaintiffs join defendants in expressing concern about the

8    ability to meet the current deadlines given this new

9    information that defendants obtained on Friday.  But I do

10   think that we could certainly work together, meet and

11   confer, and see how we might expedite process and get

12   whatever information we might need to get Nugier fully

13   worked up and perhaps advise back to the Court what we think

14   is possible with respect to the deadlines.

15           THE COURT:  I'm just looking at the scheduling

16   order.  I will be available if you need any fast action, but

17   I won't be available starting next Wednesday, and then I'll

18   be gone Wednesday, Thursday -- so sort of available on

19   Wednesday, but then Thursday, Friday, and the following week

20   I'm not.  There won't be anything I can do for you.

21           MR. BLACKWELL:  All right, Your Honor, that's very

22   good to know, and we may need to take up the

23   representativeness of the Nugier case.  I didn't really hear

24   an answer from the plaintiff as to whether any other

25   surgeries involved a trailer surgery.

1          THE COURT:  They don't know, and probably if

2    they're not, yeah, it sounds like if the other -- if Skaar,

3    Walker and Gareis aren't VA, they probably weren't done in a

4    trailer.

5          MR. BLACKWELL:  That's correct, Your Honor.

6          THE COURT:  But I guess we don't know, and they

7    don't know.  They only found this out as part of the

8    bellwether specific discovery.

9          MR. BLACKWELL:  Or so they said.  Although, I

10   suspect every plaintiff knows if the surgery took place in a

11   trailer.  It doesn't happen often in your life.

12         THE COURT:  I don't know.  You know, who knows

13   what a big deal it is to have a trailer?  It sounds bad, but

14   maybe it's nothing.  We don't know.

15         MR. BLACKWELL:  Somebody has to roll you down the

16   street.

17         MS. ZIMMERMAN:  Well, and we're certainly happy to

18   try to do some sort of census to report back about that, but

19   as I stand here right now, we don't know how many.

20         THE COURT:  Makes sense.  I would say that's all

21   we can do on that right now.

22         MR. BLACKWELL:  All right.  Thank you, Your Honor.

23         THE COURT:  And, Ms. Zimmerman, the order, the

24   Nugier, Skaar, Walker, Gareis, that's okay with you?

25         MS. ZIMMERMAN:  Nugier, Skaar, Walker, Gareis is

1   acceptable to plaintiffs.  I think our concern is if

2   something should happen to Nugier, but I think the Court is

3   aware of that.

4          THE COURT:  Right.  Let's move to the PFS

5   dismissal motions.  Mr. Hulse?

6          MR. HULSE:  Your Honor, I have a cheat sheet

7   prepared like last time.

8          THE COURT:  Could you just give me a moment, so

9   that I'm prepared for your cheat sheet?  Is this something

10  different from what was submitted yesterday afternoon, a new

11  list?

12         MR. HULSE:  It captures essentially the same

13  information.

14         THE COURT:  Okay, because I made my own notes, and

15  I put a post-it on it saying, "my notes."  Okay, so I now

16  have what I think I need.  Could you just hold on to your

17  cheat sheet, and then if there's something on it that's

18  going to be helpful.  I've got three places to look as it

19  is, so.

20         MR. HULSE:  Understood.

21         THE COURT:  So it's not your fault that that's how

22  I've made these notes.  Now, there is a category of

23  plaintiffs with respect to whom you are withdrawing your

24  motion.

25         MR. HULSE:  Correct.

1          THE COURT:  And so I'm crossing off Chavers,

2   Chenowith, Anita Johnson, the Dr. King, Walter King?  That's

3   a 90-day extension.

4          MR. HULSE:  That's correct.  We don't object to

5   the relief they sought there.

6          THE COURT:  And so what you're expecting to within

7   90 days is a statement from the plaintiff himself.

8          MR. HULSE:  What we're expecting to get is a cured

9   PFS from either the plaintiff or somebody with a power of

10  attorney to answer on behalf of the plaintiff.

11         THE COURT:  Right.  And the son died not that long

12  ago.

13         MR. HULSE:  Who had the power of attorney, that's

14  right.

15         THE COURT:  But I, for some reason, was under the

16  impression that the plaintiff was participating at least to

17  some extent on his own.  But anyway that's --

18         MR. HULSE:  And we didn't really get into the

19  nuances.  It seemed that based on the representation that

20  the son had died and that somebody needed a power of

21  attorney, that this was a reasonable request.

22         THE COURT:  Anita Moses, Jasmine Stewart, is that

23  an extension or are you withdrawing that, because she's a

24  person who said she didn't -- her PFS said, I don't know,

25  discovery is ongoing with respect to my date of birth or

1    something.

2         MR. HULSE:  Right, we got some additional

3    information since their response that we're satisfied with

4    and are withdrawing.

5         THE COURT:  Okay, and that would be similar to

6    Zivanovich.  Those were almost identical.  In fact, PFS

7    said, "her," so it really looked like it was copied from --

8         MR. HULSE:  Sometimes there are a lot of PFSs to

9    deal with.

10         THE COURT:  There are a lot.  Michael Warren not

11    Debbie Warren.

12         MR. HULSE:  Correct.

13         THE COURT:  And then Zivanovich.  All right, then

14    we have a category of plaintiffs who have agreed to

15    stipulate to dismissal with prejudice, and there are three

16    in that group.  And that is John and Alice Garger, Ron and

17    Myra white, and Allan Zenner.

18         MR. HULSE:  That's correct.

19         THE COURT:  And those cases are dismissed.

20         MR. HULSE:  Yes, Your Honor.

21         THE COURT:  I'm saying they're dismissed just in

22    case you need me to say that.

23         MR. HULSE:  They have already been dismissed by

24    stipulation.

25         THE COURT:  Once again, a powerless order.  And

1    then there are some non-responses, and that's Emery,

2    Kauanui, Guadalupe Lee, Melissa Redford, Norma Saldana,

3    Lewis and Marjorie Van Wart, and Jane West.

4         Would it make sense for me to hear from the

5    plaintiffs about whether they're continuing to resist your

6    motion with respect to those?  Well, first of all, is that

7    correct, is it those six people?

8         MR. HULSE:  I just wanted to make sure that we got

9    Debbie Warren.  That's 17-435.

10        THE COURT:  I have her on one.

11        MR. HULSE:  Right.

12        THE COURT:  Yes, Debbie Warren.

13        MR. HULSE:  She did oppose, file an opposition, or

14   her counsel did.  Whereas, I believe the others didn't file

15   an opposition.

16        THE COURT:  Okay, let's take Debbie Warren's case

17   separately because there was a response there.

18        What about the other six, the ones with respect to

19   whom there's been no response?  Ms. Zimmerman, did you want

20   to be the spokesperson on that?

21        MS. ZIMMERMAN:  I think we're going to have

22   Mr. Szerlag handle that, Your Honor.

23        THE COURT:  I'm unmuting the phone in case

24   anybody...  Okay, so now you people on the phone I have

25   unmuted you, in case we're talking about one of your cases,

1    and you want to be heard.

2              MR. SZERLAG:  Good morning, Your Honor.  You know,

3    we've been working, plaintiffs have been working pretty

4    diligently to go through the cases that Mr. Hulse has

5    provided with us, whether there have been either

6    deficiencies or, you know, lack of communication with some

7    of the firms.  This time around, I think there were 40, you

8    know, 47 cases, and we've cured 30 of those.  Four of them

9    were on the list in error.

10             As far as the cases where there were no response,

11   and I think, Mr. Hulse:  Lee, Sanders and West, those three

12   of the cases?

13             THE COURT:  Not Sanders, Jane West and --

14             MR. SZERLAG:  I'm sorry, Saldana, I apologize.

15             THE COURT:  Yes, Norma Saldana, 17-CV-977.

16             MR. SZERLAG:  I know that we have reached out, we

17   have reached out to this firm.  My assistant Wendy has done

18   a yeoman's job.  I want to give her a little pat on the back

19   because she's been pretty persistent and "tenacious," I

20   think is probably the better word to use in trying to get

21   this cleared up, and we have not heard back from them, so I

22   really can't say any more than that.

23             THE COURT:  All right.  Is there anybody on the

24   phone who wants to be heard with respect to Lee, Saldana or

25   West?

1      MR. JENSON:  Yes, Your Honor.  This is Justin

2  Jenson, Bailey Peavy Bailey Cowan Heckaman.  All three of

3  those clients we've lost contact with.  We've tried on at

4  least ten occasions for each client to get in touch with

5  them with the fact sheets, and we've got no response.

6      THE COURT:  Okay.  So but you've done everything

7  in your power to try to shake a response out of them, and it

8  just doesn't seem forthcoming, is that right?

9      MR. JENSON:  Yes, Your Honor.

10      THE COURT:  Okay.  Those cases are dismissed on

11  the defendant's motions.  That is 17CV971, Guadalupe Lee.

12  17CV977 Norma Saldana, and 17CV984, Jane West.

13      Leaving then, Mr. Szerlag, you don't have anything

14  else on the remaining three:  Kauanui, Redford and Van Wart,

15  right?

16      MR. SZERLAG:  If you just bear with me one second.

17      THE COURT:  While you're doing that, let me ask if

18  there's anyone on the phone who wants to be heard.  I don't

19  know if I'm pronouncing Kauanui right.  It's Kauanui,

20  K-A-U-A-N-U-I, 16CV4290.  Okay, I hear nothing on the phone.

21      MR. SZERLAG:  On that case, yes, Your Honor, I --

22      THE COURT:  Which one?

23      MR. SZERLAG:  On the Kauanui.

24      THE COURT:  The Hawaii sounding name?

25      MR. SZERLAG:  Yes.  From what I understand on that

```
1     case, a PFS was filed.  There were sections, the entire --
2     this is what I understand -- the entire PFS was completed.
3     Some of the answers that were given in the PFS indicated
4     that the information was not available and that they would
5     and that the firm or the plaintiff would supplement that
6     when the information became available.  Apparently, that
7     type of response was not liked by the defendants, and the
8     deficiency notices were sent.  Apparently, there has some --
9     I'm not privy to the discussions between plaintiff's counsel
10    and the defense, perhaps Mr. Hulse can enlighten us a little
11    bit on that, but my understanding is they did file a PFS and
12    to their defense it was complete, except there was some
13    information that was not currently available to them or
14    available to them at the time that the PFS was completed,
15    and they said they would supplement it.
16              THE COURT:  Mr. Hulse, you might possibly --
17              MR. HULSE:  Yes, I'll be brief.  Our notice was
18    sent out in April of 2017.  The firm here is Kirtland &
19    Packard, which is a firm whose lawyers have appeared
20    frequently here in person and are heavily involved in the
21    case.  The things that the plaintiff didn't have information
22    about include employers for the last 10 years, educational
23    background, driver's license number, primary care
24    physicians, pharmacies used.  I don't see how that could be
25    information that was not in the possession of the plaintiff
```

1    at the time the PFS was due.

2         We sent the deficiency, and there's never been a

3    response of any kind.  It's been listed once, twice, I think

4    three times, and I think in fairness to the process, the

5    time has expired.  And no opposition was filed, I would add,

6    too, which was required by PTO-14.

7         THE COURT:  And your first deficiency notice

8    looking at this chart was sent in April, April 18th.

9         MR. HULSE:  Correct, and we never got any kind of

10   response to it.

11        THE COURT:  And it was listed June -- on the dates

12   of June 8th of 2017, July 14th of 2017, and August 10th of

13   2017?

14        MR. HULSE:  That's correct.

15        THE COURT:  Okay.  Once again, anybody on the

16   phone want to say anything about 16CV4290?

17        All right.  Defendant's motion is granted and that

18   case is dismissed.

19        Melissa Redford, 16CV2055.  Anybody on the phone?

20        MR. NIGH:  Your Honor, this is David Nigh on

21   behalf of Levin Papantonio.  I represent Ms. Redford.  We're

22   not resisting this motion.  This plaintiff has gone MIA

23   despite our best attempts to get her to answer this

24   information.

25        THE COURT:  Okay, thanks.  Much appreciated.

1    Defendant's motion will be granted on that one.

2              What about Lewis and Marjorie Van Wart?  That's

3    16CV625.  Anybody on the phone?  Nope.

4              Mr. Szerlag, we're down to you then.

5              MR. SZERLAG:  From my notes, Your Honor, we have

6    not had any contact with this particular firm.  My

7    understanding is that an updated -- it appears at least from

8    my notes here that an updated PFS was filed but a

9    verification was not, and there was some dates that were

10   missing on the PFS.  That's what I have in my notes, but we

11   have not had any particular contact with this firm.

12             THE COURT:  Mr. Hulse?

13             MR. HULSE:  The information that remains missing

14   include information about the surgery including hospital

15   name, surgery date, location, physician, type of surgery,

16   reason for surgery, height and weight at time of surgery,

17   medical condition at time of surgery, infections prior to

18   surgery, persons with whom the plaintiff discussed the risks

19   of surgery, and the cause of infection.  That remains

20   missing, deficient after several notices, both to the

21   plaintiff and then listings with the Court, and no

22   response --

23             THE COURT:  And it's not verified either.

24             MR. HULSE:  -- correct.

25             THE COURT:  Okay, that motion is granted.  16CV625

 1   is dismissed.

 2             Debbie Warren, anybody on the phone about Debbie

 3   Warren?  That is 17CV435.

 4             MR. ASSAAD:  Not on the phone, Your Honor, but in

 5   person.

 6             THE COURT:  Mr. Assaad.

 7             MR. ASSAAD:  Good morning, Your Honor.  Gabriel

 8   Assaad on behalf of Debbie Warren.  We kind of stand on the

 9   papers.  We tried to reach this client numerous times.  We

10   were unable to receive a response.  I have no authority to

11   agree to a stipulation of dismissal, so to protect my

12   client's interest, we filed a response in this case.  We

13   would request a 90 day extension.

14             THE COURT:  Okay.  I looked at the actual -- many,

15   many phone calls from the Kennedy Hodges staff.

16             MR. ASSAAD:  That is correct, and also four

17   letters.

18             THE COURT:  And she, obviously, knew about her

19   obligations because in July or June she said she would send

20   --

21             MR. ASSAAD:  Yes, Your Honor, then she told us

22   that she became ill in July, and since July, August, and

23   September, we were unable to contact her.

24             THE COURT:  All right.  Mr. Hulse, your motion

25   will be granted on that, and that is dismissed.  That is

1    17CV435.  Are we missing anybody there, Mr. Szerlag?

2              MR. HULSE:  I think we've covered them all, Your

3    Honor.  All that were before you today.

4              MR. SZERLAG:  I believe so, yes.

5              THE COURT:  All right.  I'm going to go ahead and

6    re-mute the phone.

7              The number and status of cases, anything to add to

8    what appears in the joint agenda at number 3?

9              MR. SZERLAG:  Yes, Your Honor.  I decided not to

10   sit and come back up if you don't mind, with your

11   permission.  From what I understand --

12             THE COURT:  It's good.  This is more talking than

13   you normally get to do.

14             MR. SZERLAG:  Of course.  From what I understand,

15   as of yesterday, the close of business yesterday, there are

16   3,922 cases that are currently filed in the MDL.  I don't

17   believe all of them have been served.

18             In respect to the state cases, my understanding is

19   that the number has not changed since the filing of the

20   joint agenda and report.  And I don't have any further

21   update on the Canadian or the other state actions that are

22   currently pending.

23             THE COURT:  And we still have 57 in Ramsey County?

24             MR. SZERLAG:  That's what I understand, yes, Your

25   Honor.

1      THE COURT:  Are there any problems with the Walker

2   case?  Or are you not --

3      MR. SZERLAG:  I'm not familiar with that.

4      MS. ZIMMERMAN:  I'm counsel for Mr. Walker.  He's

5   an excellent plaintiff, and he's prepared to try his case.

6      THE COURT:  All right.  Now, this sealing

7   business, let me just start by saying I very much appreciate

8   the efforts that everyone has made, not just efforts but

9   your good compliance with our new sealing rule.  You get

10  worthless gold stars.

11     But you do seem to have identified a little bit of

12  an ambiguity in the rule.  And let me just ask if there's

13  any current issue about sealing, and then maybe we can talk

14  about that?  The concern I have about the rule, and what I

15  am in my mind redrafting, drafting a little bit of an

16  amendment to our rule has to do with objections to either

17  reports and recommendations or orders.  Ms. Zimmerman, do

18  you have any issues?

19     MS. ZIMMERMAN:  I think from the plaintiffs'

20  perspective, Your Honor, we always, from the Court's

21  perspective is, generally, that we favor having these

22  documents being publicly available.  And certainly, for no

23  other reason, it would streamline filings moving forward

24  because many of the same documents end up being exhibits to

25  subsequent motions.  And I think that the new procedure is

1    actually quite a bit easier than the last, but it is a

2    complicated procedure if something is under seal.

3            So to the extent that documents we've either

4    agreed upon should no longer be confidential or sealed, I

5    think that we've actually publicly filed some of those with

6    the consent of defendants.  But to the extent that there are

7    some documents that we would suggest should be unsealed and

8    the defendants have disagreed, we would like to have a

9    ruling on that such that we can use those documents moving

10   forward, so.

11           THE COURT:  Okay.  And so these are documents

12   where the joint motion was filed pursuant to our Rule 5,

13   whatever it is, but the new civil sealing rule.

14           MS. ZIMMERMAN:  Correct.

15           THE COURT:  And you do or do not have the

16   Magistrate Judge's Order on the joint sealing at that point?

17           MS. ZIMMERMAN:  We do not, at least with respect,

18   and correct me if I'm wrong, but I do not believe that we

19   have an Order yet or maybe it just came in the last day.

20           MR. HULSE:  We do have Orders from Judge Noel on

21   all of the pending joint motions to maintain under seal.

22           THE COURT:  Okay.  But you did not have them at

23   the time the objections were filed?

24           MS. ZIMMERMAN:  Or at the time the status report

25   went in on Friday.

1          MR. HULSE:  Right, exactly.  So what we're saying

2     is we're kind of wondering whether there were going to be

3     rulings, if there was something more we needed to do, and we

4     now have those rulings, and so, and also, of course, that

5     provides some guidance the way Judge Noel went on some of

6     the disputed issues.

7          So one thing that we've done is, you know, for

8     example, on the motion for leave to amend to allege punitive

9     damages, there were a number of exhibits that had been filed

10    under seal by plaintiffs where we agreed they could be

11    unsealed, but there hadn't been a ruling from the Magistrate

12    yet formally unsealing them, so what I told Ms. Zimmerman is

13    we've already agreed those can be unsealed for future

14    motions, you can go ahead and file them.  So that's how

15    we've worked through the lapse of time while we're waiting

16    for the joint motion to be ruled on.

17         THE COURT:  But that does the raise the issue of

18    whether counsel can agree to unseal something that is

19    currently the subject of a Court Order putting it under

20    temporary seal.  So here's the procedure that I'm kind of

21    thinking about, and I would appreciate your input on whether

22    this would be a helpful modification to the rule.

23         If at the time a party has to file an objection to

24    a Magistrate Judge Order or R and R, the sealing order has

25    not been issued.  The Magistrate Judge should stop

46

1    considering that sealing, the temporary seal will remain

2    until the last document authorized by 72.2 is filed, at

3    which point the sealing motion can then be considered

4    revived before the Magistrate Judge.

5              MR. HULSE:  I understand the issue what you're

6    talking about.  I, just speaking personally here, I think

7    that's a great idea.  That you consider the last brief filed

8    not to be the one on the original motion before the

9    Magistrate, but the one on the objection to the District

10   Court.

11             THE COURT:  So, of course, you can't just wait for

12   that.  You have to, because most of these issues are not --

13   this is an unusual one.  And so what we don't want to do is

14   clog up the vast majority of cases because of the exception.

15   So I would imagine that we'd still have the 21, the 21 days

16   after the last filing in front of -- in connection with the

17   7.2 motion.  And then the Magistrate Judge either has or has

18   not ruled at the time, because on that 21 days, you don't

19   know who is -- you know, maybe nobody is going to appeal.

20   You don't know who is going to appeal.  And we don't want

21   these things to just get fall through the cracks.  And once

22   again, the clerk's office has all of these sealed documents.

23   So still leave that, and then if the Magistrate Judge has

24   ruled, then the rule has a procedure for appeals on any

25   disagreement on that.  I don't think we need to revisit

1      that.

2              But if a party is in the position of having to

3      file an objection and there are documents in there that are

4      either ordered unsealed that you don't think should be, you

5      know, if there's some disagreement about it, there should be

6      a procedure for -- well, it's simple.  They just stay sealed

7      during that.

8              And so that's how I -- I mean I don't know if, we

9      have a federal practice meeting on October 11th, I think,

10     and it's my intention to bring this up to the committee at

11     that time.  But for our purposes in this case, that's how I

12     see the process going.  And if you have any questions, I

13     know that rule, that that subdivision E says, "contact the

14     Court," and let's call that Judge Noel in our case.

15             MR. HULSE:  But we can proceed in this case with

16     the gloss or the instruction you've just given, Your Honor.

17             THE COURT:  Okay.  Yes, I hope that's helpful.

18             MS. ZIMMERMAN:  I think that's helpful.

19             THE COURT:  It's really I guess funny because I

20     worked so hard on that rule.  You think you covered

21     everything.  And when we sent the ship out to sea, we knew

22     that there would be something.  And I know we talked about

23     objections, but I think you've managed to identify something

24     that might be able to be improved, so it was only starting

25     yesterday that I started to think about this and do some

1    preliminary redrafting, but that's --

2              MS. ZIMMERMAN:  Well, the procedure is easier, at

3    least from my perspective, than the old in the envelopes and

4    all that, so.

5              THE COURT:  Oh, good, good.  You know there was so

6    much resistance to it.

7              MS. ZIMMERMAN:  Well, it's a little complicated

8    and nerve wracking for the staff and even the lawyers to do

9    it the first few times, but.

10             MR. HULSE:  Your Honor remembers the Carlson IBM

11   case, we fought endlessly over these issues and tried to

12   get, tried to work out agreements between the parties.  We

13   did for a while that we would let each other know in advance

14   of a filing what we intended to file under seal and ask for

15   an objection, and it just wasn't sustainable because, of

16   course, really filing of the exhibits often come together

17   pretty close to when they're actually filed.

18             THE COURT:  Well, and that was always my part of

19   what took so long to get the rule in place is we kept

20   encountering, if I remember correctly, this would mostly be

21   from judges, well, why can't they just let the other side

22   know in advance?  You don't know in advance.  If you've ever

23   been in private practice, you know you could be putting

24   these things together at the last minute.  And then if you

25   have a rule that says you have to let the other side know in

1    advance what you're going to put in your summary judgment

2    motion, you're basically messing with the notice

3    requirements that are in the federal rule.  We can't have

4    local rules that contravene the federal rules.  So we went

5    around and around on that.

6           And then we had to overcome the sense that, well,

7    whoever files under seal, whoever does the filing has to

8    make a motion, but it's not necessarily the filing party who

9    has the privacy interest in it.  So what do you do except to

10   have a temporary seal and then give people the opportunity

11   to go back and forth on this.

12          So I know that if you just look at the rule

13   without reading it slowly and going step-by-step, it looks

14   very cumbersome and overwhelming.  And if you have any ideas

15   of how to improve it, you know, it's people from all over

16   the country are looking at it because it's a problematic

17   thing, and I'm interested in making it as good as we can, so

18   any thoughts that you have about it in addition to the one

19   we just talked about I'd be happy to hear.  But I just

20   couldn't think of any other way.

21          And then you have non-parties whose rights have to

22   be considered also, because sometimes you get the records

23   under the promise of confidentiality to them, and then you

24   turn them over, and the last thing you want is for the other

25   side, well, anyway.

1          MR. HULSE:  It's right, absolutely right, Your

2     Honor raised the nonparties.  We've had this issue come up

3     here where, you know, we've tried to apprise nonparties that

4     there's a different standard for marking something

5     confidential under a protective order then actually having

6     it maintained under seal, but I don't know that that's fully

7     sunk in across the bar yet.

8          THE COURT:  Well, not even all the lawyers

9     understand it.

10          MR. HULSE:  Yes, exactly, exactly.

11          THE COURT:  Forget judges.

12          MR. HULSE:  Fine.  And so I think we feel sort of

13     on onus as the litigants here to let them know that that's

14     not, just because something is marked confidential in a

15     protective order doesn't mean it doesn't come out on the

16     public docket, but it's not sinking in everywhere.

17          THE COURT:  No, but you want to give them as much

18     opportunity as possible to be heard but not slow down the

19     process unnecessarily.

20          MR. HULSE:  Right.

21          THE COURT:  We had talked at one point about

22     cancelling the October 19th status conference because it's

23     so close to when the dispositive motion hearing will be.

24     Does that still make sense?

25          MS. ZIMMERMAN:  I thinks so from the plaintiffs'

1    perspective.  I don't know why we would need another hearing

2    in October.

3              MR. BLACKWELL:  Your Honor, that makes sense to

4    the defendants.

5              THE COURT:  Okay.

6              MS. ZIMMERMAN:  And we can talk about this

7    afterwards, too, but if Your Honor has any specific guidance

8    or thoughts on what you'd like to see from a housekeeping

9    perspective for those three days, I suspect we are all ears.

10             MR. BLACKWELL:  And, Your Honor, I thought what we

11   might do is to confer.  And I can confer with Ms. Zimmerman

12   and Ms. Conlin to give Your Honors some idea of what we

13   propose to do for the days set aside for the other Daubert

14   hearings, whether there will be live testimony, how much

15   time, who.  And if Your Honors have any idea as to when you

16   might want to get that back from the parties so you have

17   enough time to consider it, we could abide by that also.

18             But, otherwise, my thought was that by the end of

19   next week would be sufficient for us to be able to have met

20   and conferred.  At this point, I think we all have some idea

21   what we want to do with respect to Daubert.

22             MS. ZIMMERMAN:  Perhaps by Wednesday given the

23   Judge's communicated schedule.

24             THE COURT:  Give me a second on that.  I might

25   want to talk to you in chambers.  I want to be able to

1    consult with Judge Leary too.  So can we just set that aside

2    for one moment, and I had one other matter that I want to

3    bring up before I forget.

4             Skaar, the plaintiff has submitted a *Lexecon*

5    waiver, but it would be helpful to have that filed.

6             MS. ZIMMERMAN:  All right.

7             THE COURT:  I gather that there was an e-mail back

8    in February.

9             MS. ZIMMERMAN:  That's correct, Your Honor.

10            THE COURT:  So if you could just get that filed.

11            MS. ZIMMERMAN:  We'll work with them.

12            THE COURT:  And it should be filed in the

13   individual case, which is 16CV2969.

14            MS. ZIMMERMAN:  We will work with his attorney to

15   make sure that happens.

16            THE COURT:  Okay.  Judge Leary, is there anything

17   right now?  What I propose, unless you have something, well,

18   whatever you have right now.  And then my thought is that we

19   could consult and speak informally with the lawyers to see

20   if there's some guidance we can give on the three days

21   hearing and when we're going to want material.  But other

22   than that, is there anything that you want to bring up?

23            JUDGE LEARY:  Nothing else to add, thank you,

24   Judge.

25            THE COURT:  Let me just ask Judge Noel's law

 1    clerk.

 2              (Off the record discussion between the Court and

 3    law clerk.)

 4              (In open court.)

 5              THE COURT:  Yes, there is, thank you.  So back on

 6    sealing, there were some -- I've got three docket entries

 7    that were made before the rule.  And would you -- I'll tell

 8    you what those are:

 9              Would you clean those up?  File a motion, let's

10    get them either sealed or unsealed.  And the docket entries

11    that you want to look at are:  266, 268, and 285.

12              MS. ZIMMERMAN:  Certainly, Your Honor.

13              THE COURT:  Okay.  Thank you.  Anyone on the phone

14    have any issues that you want to bring up?

15              All right.  Mr. Blackwell, it looks like you have

16    something that you want to bring up now?

17              MR. BLACKWELL:  Yes, Your Honor, just one

18    additional housekeeping scheduling issue with the Kamke case

19    out, and we're working two bellwethers.  We've got Nugier,

20    and now we've got Skaar.

21              THE COURT:  Right.

22              MR. BLACKWELL:  And if Your Honor wants to put

23    into place a schedule for Skaar, so we know what we're

24    doing, at least know to get going on the Skaar case.

25              THE COURT:  Yes, and I knew that that was

1      something that we were going to have to do, so let's talk

2      about that also when we convene.  Can we convene in chambers

3      in, you know, whatever, 10 or 15 minutes or something?  Or

4      5, 10, 15.  I'll be back there.

5                  MR. BLACKWELL:  All right, thank you, Your Honor.

6                  THE COURT:  Thanks very much.  We are in recess.

7                      (Court adjourned at 10:22 a.m.)

8

9

10                          *      *      *

11

12           I, Maria V. Weinbeck, certify that the foregoing is

13      a correct transcript from the record of proceedings in the

14      above-entitled matter.

15

16                  Certified by:   *s/ Maria V. Weinbeck*

17                               Maria V. Weinbeck, RMR-FCRR

18

19

20

21

22

23

24

25