# EXHIBIT 49

**Genevieve Zimmerman**

| | |
|---|---|
| **From:** | Jerry Blackwell <blackwell@blackwellburke.com> |
| **Sent:** | Monday, September 19, 2016 1:46 PM |
| **To:** | Genevieve Zimmerman; noel_chambers@mnd.uscourts.gov |
| **Cc:** | Holley_Horrell@mnd.uscourts.gov; Cari_Heicklen@mnd.uscourts.gov; Corey Gordon; bridget.ahmann@FaegreBD.com; Jan Conlin; Mike Ciresi; Ben Gordon; Gabriel Assaad |
| **Subject:** | RE: MDL 2666 - In re Bair Hugger - update on UK depositions |

Dear Judge Noel:

I am responding to Plaintiffs' emails of late last week. It is fair to say that matters did not proceed in the UK as any of us had expected.

We specifically submit this in response to the communications on Friday from Plaintiffs' counsel regarding the depositions in London. We believe it is necessary to clarify certain statements made to the Court. All of us were aware, on both sides, going into these depositions that these "voluntarily" appearing witnesses conceivably could back out of those depositions. We did cancel Dr. Harper's deposition, the first of several depositions to take place in the UK, but were as surprised as Plaintiffs over what came to pass when the other witnesses scheduled to be taken later in the week backed out for various reasons having nothing to do with 3M.

First, with respect to Dr. Reed, we are both surprised and disappointed that he cancelled his deposition set for Saturday through a solicitor he apparently hired on just last Friday. In fact, Dr. Reed had confirmed his attendance for the Saturday deposition at 8 pm London time on Thursday of last week. Thus, the communication from a solicitor just after Noon London time on Friday advising us that, pursuant to their advice, Dr. Reed would not appear voluntarily for a deposition the next day, was news to 3M and Plaintiffs. We want to find out what prompted Dr. Reed to change his mind overnight, and on such short notice (particularly in light of the extensive correspondence with him over the last several weeks arranging the deposition and scheduling it at his convenience. All of these communications were shared with Plaintiffs).

Second, we must address the implication that we have somehow tried to "hide the ball" from Plaintiffs or, even worse, commissioned studies to be undertaken by UK witnesses as a means of influencing their testimony. This is probably not the kind of issue to be taken up in email, and is an unfair, if not inflammatory, suggestion. The exact opposite is the case.

With respect to the document that we forwarded to Plaintiffs on Thursday that they reference, that document was prepared by outside researchers and transmitted to 3M. We point out, as we did in our transmittal to Plaintiffs, that the document was dated September 9, 2016, a very recent document. We are puzzled that Plaintiffs would make reference to the Court to our efforts to produce relevant documents two weeks prior to the depositions but somehow failed to note that this document about which they complain did not even exist two weeks ago. Moreover, as we stated to Plaintiffs in our transmittal, we did not learn of this document ourselves until just last Thursday.

A little further background is necessary on the Dr. Reed issue. What we just learned last week is that a 3M representative had been approached by Dr. Mark Harper(potential UK deponent) at a European conference this past May at which time Dr. Harper inquired about the possibility of funding for a pilot study of infection rates associated with different warming modalities. Ultimately this request found its way to the clinical research group in 3M's infection prevention division (patient warming is a part of the infection prevention division but the clinical group is responsible for clinical research for the entire division). As the discussions unfolded,

1

Dr. Matthew Scarborough of the University of Oxford emerged as the chief investigator for that proposed pilot study.

It is important to note that the study that was proposed to 3M is an investigator initiated study, where the chief investigator is responsible for the protocol design, monitoring, compliance with good clinical practices, implementation, data analysis, and the final report. This is different than a 3M sponsored study, where 3M would be directly involved in the study design and implementation. The most important difference between the two types of studies relevant here is who determines which investigators will assist the chief investigator. In an investigator initiated study, the investigators are selected by the chief investigator.

The first time that the chief investigator provided any indication that Dr. Reed had been recruited to participate as one of the investigators was when the Sept. 9 draft protocol for the study was transmitted to 3M. 3M did not recruit him. Because the individual investigators are not selected by 3M, the clinical research group at 3M did not scrutinize the protocol when it was transmitted nor take any particular note of the addition of Dr. Reed's name. Indeed, and we confirmed this on last Thursday, individuals in the Bair Hugger group were unaware of Dr. Reed's recent addition to the proposed study until Thursday as well. Moreover, the individuals within the clinical group did not know who Dr. Reed was nor did they have any idea that we were scheduled to take his deposition in connection with this litigation.

As soon as we learned of these facts, we transmitted the draft protocol to Plaintiffs. It had been our intention, in light of these facts, to examine Dr. Reed as to how he recently came to be added as an investigator, as no one within 3M had any knowledge of that. Unfortunately, we will now--at least in the near term--be unable to inquire of Dr. Reed directly due to his cancellation.

As to the underlying study itself, we were similarly unaware of Dr. Harper's initial proposal to a 3M representative several weeks ago, and only learned of the existence of this proposed pilot study on just last Wednesday. We quickly began a search for documents that related to this study. What we have found thus far was in fact produced to Plaintiffs last week.

The main implication of Plaintiffs' submission is the suggestion that 3M was willfully attempting to impede the litigation process by funding studies by authors whose prior work had been unfavorable to 3M. This is patently untrue. Drs. Harper and Reed are prominent researchers in the UK and both have received funding from 3M for important research activities over the years. Indeed, Dr. Reed is currently involved in an unrelated research project for another group within 3M, a fact previously disclosed to Plaintiffs. The fact that Dr. Harper would have sought funding from 3M for a study of infection rates and warming modalities is not surprising or nefarious. Indeed, the fact that 3M would agree to fund such an investigator initiated study over which 3M would have no control, with involvement of one (and apparently now two) researchers who have previously published studies raising questions about 3M's products, underscores 3M's commitment to pursuing the best and most objective scientific research, come what may.

In short, 3M had nothing to do with the belated refusal of any of the UK witnesses to appear voluntarily after committing to us all to do so. Plaintiffs' recasting of the chronology is inaccurate and apparently intended to cast aspersions. Respectfully submitted,

jb

**Jerry W. Blackwell**
Blackwell Burke P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Direct (612) 343-3232
Fax (612) 343-3205

CASE 0:15-md-02666-JNE-DTS   Doc. 910-42   Filed 10/03/17   Page 4 of 5

blackwell@blackwellburke.com
http://www.blackwellburke.com

This message and any attachments may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or are not authorized to receive for the recipient, you are hereby notified that dissemination, distribution or copying of this message and any attachments is strictly prohibited. If you have received this message in error, please immediately advise the sender by reply e-mail and delete the message and any attachments. Thank you.

---

**From:** Genevieve Zimmerman [mailto:gzimmerman@meshbesher.com]
**Sent:** Friday, September 16, 2016 7:53 AM
**To:** noel_chambers@mnd.uscourts.gov
**Cc:** Holley_Horrell@mnd.uscourts.gov; Cari_Heicklen@mnd.uscourts.gov; Jerry Blackwell; Corey Gordon; bridget.ahmann@FaegreBD.com; Jan Conlin; Mike Ciresi; Ben Gordon; Gabriel Assaad
**Subject:** MDL 2666 - In re Bair Hugger - update on UK depositions

Judge Noel,

Regrettably, we write with another update on the depositions in the UK.

Yesterday we learned the deposition of Dr. McGovern noticed for Thursday, September 22nd is unlikely to go forward, as the witness is represented by counsel who requires payment of tens of thousands of pounds to review documents and prepare Dr. McGovern in advance of his voluntary appearance. The volume of documents requiring review is apparently so great that Dr. McGovern's attorneys do not believe the deposition can go forward on the 22nd.

As the Court is aware, Defendants cancelled the deposition of Dr. Mark Harper hours before it was set to commence yesterday. Mr. Blackwell candidly advised us in an email that it was for "strategic" reasons.

Dr. Michael Reed is scheduled to be deposed tomorrow morning. At 11:45pm local London time last night, counsel for defendants forwarded a document not previously produced to plaintiffs which details a brand new study, **funded by 3M**, where two of the four co-investigators are Dr. Harper and Dr. Reed. The late production of this document is troubling for multiple reasons, including at least the fact that all documents related to these witnesses were to be produced no less than two weeks prior to the depositions. Additionally, the fact that Defendants are apparently providing new funding grants to doctors scheduled to provide deposition testimony in this MDL is concerning. And production of this document after the unilateral cancellation of Dr. Harper's deposition is troubling.

Given the significant investment of time and money in traveling here and preparing for these depositions, absent further direction from the court, plaintiffs intend on participating in Dr. Reed's deposition under protest, but given all that has transpired and the late production of this new document, plaintiffs must reserve all rights, including leaving the deposition open while we attempt to secure additional documents and facts related to this brand new funding grant.

Finally, this morning we learned the deposition of Dr. Desari, noticed for tomorrow afternoon, will not go forward either as Dr. Desari apparently has child care issues.

Plaintiffs respectfully request a telephone conference with the Court, and an opportunity to formalize our objections on the record.

Respectfully,
Counsel for Plaintiffs


Genevieve M. Zimmerman
Meshbesher & Spence Ltd.
1616 Park Avenue
Minneapolis, MN 55404
(612) 339-9121 (office)

(612) 339-9188 (fax)
(651) 208-8357 (cell)

"The Lawyer You Choose Makes a Difference"