# EXHIBIT DX75

TO DECLARATION OF PETER J GOSS IN SUPPORT OF REPLY TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFFS' PLAINTIFFS' ENGINEERING EXPERTS

**From:** David W. Hodges
**To:** J Randall Benham; Gabriel Assaad
**CC:** Scott Augustine
**Sent:** 5/15/2013 9:50:18 PM
**Subject:** RE: Guide

I think I'm OK with leaving some stuff in that may only come from you guys, but let's not connect it to the source. Also, I think we should have anyone who orders the guide sign a confidentiality agreement. Another thing we should probably do is create a header and footer on every page that says, "CONFIDENTIAL ATTORNEY WORK PRODUCT" to decrease the risk of inadvertent disclosure. The guide should also ONLY go out as a pdf so none of the pages gets manipulated.

---

**From:** J Randall Benham [mailto:rbenham@augbiomed.com]
**Sent:** Wednesday, May 15, 2013 2:39 PM
**To:** David W. Hodges; Gabriel Assaad
**Cc:** Scott Augustine
**Subject:** Re: Guide

All,

My initial reaction to David's comment was "…but, but…this stuff is so cool." Having pushed hubris aside, however, I can see clearly that he is right. There is no reason to make this too easy for 3M.

That said, there are some things that I can easily see how to change, and some that seem more difficult. For example:

1. Hodges note   There is no reason to mention Scott as a direct source. Perhaps David can just acknowledge the HotDog website as a source of information.
2. The Augustine/3M letter exchanges and meetings — ATM is the only reasonable source for these. So, do we leave this as written…or do we just mention that a series of meetings and exchanges of letters occurred between 2008 and 2012 in which Augustine urged Arizant and 3M to treat the matter seriously? If the latter, of course, a plaintiff can certainly obtain the details and documents from us through discovery.
3. Sessler analysis—Some of the information is public, other portions could only have come from us. Should I delete this portions that only we could have know?
4. The various science sections, in my opinion at least, are mostly OK as written. The information there comes primarily from public sources.
5. 3M's improper actions— Most of this is public. Only information about some of their actions in Europe is non-public.

David/Gabe and Scott   please give me your thoughts about these items   and any other sections that need reconsideration--and I will begin editing.


No matter what we do, of course, 3M will know that ATM is  assisting. My general opinion is that there is no reason for us to care. There are, however, three issues to consider:

1. <u>Does it damage the Walton case?</u>  KH's call, but I don't think so. Given the depth of the scientific evidence— multiple journals, all peer-reviewed, some conducted by researchers that we don't even know—3M cannot credibly characterize this as a conspiracy by Scott Augustine that began in 2008 and culminated with the filing of the Walton case five years later. If the judge allows such a tangent, put Scott on the stand. He will admit to a financial interest, then talk about the burden of knowing that a product he invented is hurting people.

   I have seen him on the stand. He will be your best witness.

2. <u>Does it put ATM at risk of a defamation claim from 3M?</u>  I don't think the Guide increases the existing risk. The most powerful documents (Critique of Sessler research, Chain of Infection, etc) were made public  by ATM many months ago. The references to published research are accurate…and ATM has issued press releases about many of them. You guys may decide to delete Scott's letters to 3M, but if we leave them in, I will take another look at them. If they have the potential of being wrongly seen as defamatory if published to someone other than 3M, I'll remove them as exhibits and summarize them. Plaintiffs' attorneys can get them through discovery. I'll re-review all the sections and exhibits, but I think we are relatively safe.

   If 3M was going to sue us for shouting the truth, it would have done so years ago. They are in a corner now, of course, so the risk may be greater. On the other hand, the existence of the Walton suit may provide us some protection. Suing the whistle-blower never looks good.

3. <u>Will ATM be hurt in the marketplace?</u>  Again, maybe…but this is a risk we have already accepted. We have been careful to limit our assistance to educating lawyers about  product liability. We actively discourage MedMal cases. Some customers may think that we play too rough, but given the patient-safety issues, most will see that it is justified.

Comments?

Randy

On 5/15/13 11:03 AM, "David W. Hodges" <dhodges@kennedyhodges.com> wrote:

We must assume that 3M is going to get hold of this. I am concerned about the detailed connection between myself, the litigation and you guys. Don't you want to separate yourselves from this? I've already received two cease and desist letters for fairly innocuous blog postings. I can only imagine what 3M may try to do to you.

I think we need to work towards "sanitizing" this. Thoughts?


**From:** J Randall Benham [mailto:rbenham@augbiomed.com]
**Sent:** Tuesday, May 14, 2013 3:50 PM
**To:** David W. Hodges; Gabriel Assaad
**Cc:** Scott Augustine
**Subject:** Guide

David and Gabe,

The Guide that we propose sending to interested PI attorneys is attached. There are also 26 exhibits that would appear as PDFs in a Zip file. I welcome comments.

Our intention is to begin emailing the letter (that I sent to you last week) on Thursday or Friday. We'll begin with Minnesota. Please let me know if you would like emails to be sent to Texas firms or not.

Lawyers will need to respond to the email requesting the Guide. I'll create a form letter for your approval to send in response--along with the Guide.

The *AAJ* article is my next project.

Randy

Confidential                                                                                                                          AUGUSTINE_0035527