UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates To:<br>*All Cases* | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF THOMAS KUEHN, PH.D.**

# INTRODUCTION

Plaintiffs moved to exclude portions of the opinions offered by Defendants' expert, Thomas Kuehn. Rather than address the many aspects of his opinions and testimony that fall short of the requirements of Fed. R. Evid. 702, 3M spent much of its response repeating its misplaced attacks on Dr. Elghobashi's CFD analysis.

Much of the remaining brief misstates the bases upon which Plaintiffs sought to exclude Kuehn's testimony. Plaintiffs do not disagree that Kuehn is qualified to testify about some aspects of filters. But that does not mean he is qualified to talk about whether surgeons would notice a difference in airflow when Bair Hugger was turned on. Nor does experience alone give Kuehn free reign to testify about filters without also satisfying the other requirements of Rule 702. Plaintiffs' motion identified other shortcomings in Kuehn's proposed filter testimony, most of which was not meaningfully addressed by 3M.

Finally, Defendants argue that Plaintiffs' failure to specifically identify certain opinions with which Plaintiffs disagree operates as a tacit adoption of those opinions. That argument is a logical fallacy. Even if Plaintiffs failed to seek exclusion of evidence, that would not mean Plaintiffs concede the substance of Kuehn's proposed testimony. At most it would mean that the evidence meets the requirements of Rule 702. Defendants' many assertions to the contrary should be dismissed out of hand.

Defendants' Response does not squarely address most of the requested bases for exclusion.  Those reasons remain unrebutted, and for brevity's sake, will not be reargued

1

here. For the reasons set forth in Plaintiffs Motion and further described below, Plaintiffs' motion to exclude Kuehn's opinions should therefore be granted.

## ARGUMENT

### I. Kuehn is not qualified to offer most of the disclosed opinions.

Kuehn's narrow experience in filtration does not give him license to opine on subjects other than filtration. Defendants bootstrap that single area of experience into justification for his proposed testimony on subjects that have nothing to do with filters. (Def. Opp. at 1) The Eighth Circuit has "repeatedly upheld the exclusion or reversed the admission of expert design testimony that went beyond the expert's expertise." *American Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F. 3d 720, 724-725 (8th Cir. 2015).

Defendants make no effort to show how Kuehn's filtration experience could meet the "qualification" standard for *any* of the following opinions or conclusions Kuehn offered in his expert report:

- Using the maximum air velocity that was measured and published literature on particle motion and removal from surfaces, Plaintiffs' experts are wrong to conclude the Bair Hugger can remove particles from the floor.

- It is unlikely surgeons would notice any difference in temperature or any change in airflow as a result of temperature, when Bair Hugger is on.

- While Bair Hugger may be the most energy intensive piece of equipment in the OR, equipment thermal load is not a very important portion of cooling load in an OR.

2

- Rather than do a CFD study with three million particles, perhaps Elghobashi could have used ten million or one hundred million particles. Alternatively, Elghobashi could have modeled an estimated number of culturable particles.

- Room ventilation is not significantly affected when the Bair Hugger is operated.

- The air velocity near the floor generated by the Bair Hugger is insignificant compared to the air velocity driven by the ventilation in the room, movement of personnel and the operation of other equipment.

- Air velocity in a simulated OR configuration did not show any measurable difference when the Bair Hugger was turned off or turned on at high speed.

- When the Bair Hugger is used with the cart, the air velocity near the floor under the unit is insignificant.

- The temperature of the air leaving the blanket will not have a significant effect on the movement of the warm air leaving the blanket.

- It is very unlikely that any infectious particles residing near the floor in any of the areas simulated will ever reach the critical care area.

- The particle movement simulation results will not cause any significant contamination of the critical care area from particles located near the floor.

Doc. #787(Plaintiffs' Motion) at 11-13.

Expertise in one area does not give an expert free reign to testify about other subject matters. *See Wheeling Pitts. Steel v. Beelman River Terminals*, 254 F.3d 706, 715 (8th Cir. 2001) (holding district court abused discretion by admitting testimony outside scope of expert's field). Defendants cite *Aviva Sports, Inc. v Fingerhut Direct Marketing* for the "proper role" of rebuttal experts, but omit the very next sentence, in which the court found "that [defendant's] rebuttal experts sufficiently applied *their expertise* to the facts and methodologies used by each of [plaintiff's] experts in forming their conclusions." 829 F. Supp. 2d 802, 835 (D.Minn. 2011) (emphasis added). Nowhere does 3M find support for the proposition that rebuttal experts may offer opinions, even in the form of criticisms, beyond their areas of expertise.

The party offering expert testimony must show by the preponderance of the evidence that the expert is qualified. *See Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010). Because 3M offered no evidence that Kuehn is qualified to offer the opinions described above (or any opinions in the areas in which he admitted he is not qualified, *see* Plaintiffs' Motion at 13-14), such opinions and conclusions should be excluded.

## II. Kuehn's Measurements Are Unreliable and Failed to Follow Any Methodology.

Even if his experience with filtration qualified Kuehn to conduct airflow and temperature testing, Kuehn *admitted* in deposition that his measurement tests lacked

4

methodology[1] and were unreliable.[2] Defendants offer no response to that admission. That alone is sufficient for the court to exclude the testing and opinions derived from the testing.

The two, solitary "air velocity" sentences quoted by 3M on page 7 of their brief and the results in Kuehn's Ex. C are a far cry from disclosing a reliable methodology for air velocity or temperatures. Kuehn repeatedly admitted in deposition that his report disclosed no methodology for his testing.[3]

Apart from being mandated by Rule 26(a)(2)(B)(i) (requiring expert disclosure to set forth "a complete statement of all opinions … and the basis and reasons for them."), the disclosure of a methodology is necessary for Defendants to establish compliance with *Daubert* and Rule 702. For example, if Kuehn's report said he used the airstream temperature measurement protocol described in ASHRAE 41.1-2013[4] "Standard Measurement of Temperature," then Plaintiffs would have had a chance to see whether he reliably followed that protocol.[5] If, as it would appear happened here, Kuehn did not

---

[1] Doc. #920, DX2 (Kuehn Dep. 237:23-238:3).
[2] See, e.g., Doc. #920, DX2 (Kuehn Dep. 246:9-18).
[3] Doc. #920, DX2 (Kuehn Dep. 237:13-238:3, 249:17:250:9).
[4] The existence of detailed standards such as ASHRAE 41.1-2013 rebut 3M's unsupported assertion that these are "simple instrument readings" that any engineer can perform. Of course, Kuehn was not required to use a published, reviewed protocol like ASHRAE 41.1-2013 to measure temperatures, but 3M must show that the methodology Kuehn actually used is reliable. *See, e.g., Russell v. Whirlpool Corp.*, 702 F.3d 450, 455-458 (8th Cir. 2012) (finding that expert did not rely on published protocol, but instead used a different, but nevertheless reliable, methodology).
[5] This is a non-trivial matter. ASHRAE 41.1-2013 requires precautions when measuring temperature in an airstream, including precautions to account for non-uniformity of temperature across the airstream. Kuehn's lack of disclosure renders it impossible to

5

follow an existing methodology but instead just made one up, then 3M bears the burden of establishing that Kuehn's methodology was reliable. 3M made no such showing.

The complete absence of any disclosed methodology leaves Plaintiffs without a basis to discover (1) whether the methodology itself was reliable; or (2) the extent to which Kuehn deviated from that methodology.[6] As a practical matter, Kuehn's testing fails one or both of those prongs. He admitted a host of irregularities in his testing, including changing the room thermostat during the temperature tests.[7]

Kuehn conceded that his report was so fundamentally lacking in description of his methodology that he would not accept it if submitted by one of his Ph.D students.[8] But "[w]hat is required is that when experts testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F. 3d 753, 760 (8th Cir. 2003) (*quoting Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996).

Defendants, as the party offering Kuehn's opinion, must establish that Kuehn used a reliable methodology and followed the requirements of that methodology. By failing to

---

know if his "methodology" required similar precautions, and if so, whether Kuehn took any.

[6] Even if a methodology is reliable, failure to adhere to that methodology is grounds for exclusion. *See Presley v. Lakewood Eng'g and Mfg Co.*, 553 F.3d 638, 645 (8th Cir. 2009) (excluding expert for failing to follow the NFPA 921 fire investigation standard); *see also Russell v. Whirlpool Corp.*, 702 F.3d 450 (8th. Cir. 2012) (noting that if an expert had used NFPA 921 fire investigation protocol but had failed to apply it reliably, he would have been excluded).

[7] DX2 (Kuehn Dep. at 226:23-227:13).

[8] DX2 (Kuehn Dep. at 249:17-250:9).

6

disclose any methodology for his testing, Kuehn's testing opinions necessarily fail to meet the requirements of Rule 702.

## III.     Kuehn's Deposition Concessions Speak For Themselves

The Court should reject 3M's manufactured dispute contending that Plaintiffs have misrepresented Kuehn's testimony. Only by sophistry can they make such an argument. They point to an argument (and admissions by Kuehn) about the inability of the *blanket* to filter particles as a misrepresentation by plaintiffs about the performance of the *filter*. *See* Defs Memo at 9-10. That is preposterous. Plaintiffs did not cite that admission as part of any argument about the filter. It is in a brief section titled "Kuehn Admits Particles Containing Bacteria Exit Through Holes in Bair Hugger Blanket." Given the bacterial contamination found inside Bair Hugger devices— an undisputed fact— the intake filter is irrelevant to movement of that contamination into the OR air. Kuehn unhesitatingly said that particles that most likely contain bacteria could be expelled through the holes in the Bair Hugger blanket.

## CONCLUSION

Kuehn offered wide-ranging opinions and conclusions that far exceed his narrow area of expertise: filters. Defendants have offered no grounds upon which any of Kuehn's other opinions could be admitted. In addition, his report failed to disclose any testing methodology such that 3M could establish that he adopted a reliable methodology and applied it reliably. Because Defendants cannot show that Kuehn used reliable principles to reach his opinions on air temperatures and air flow, the results of that testing should be excluded.

7

Respectfully submitted,

Dated: October 17, 2017

| | |
|---|---|
| CIRESI CONLIN L.L.P. | MESHBESHER & SPENCE LTD. |
| /s/Michael V. Ciresi_____ | /s/ Genevieve M. Zimmerman |
| Michael V. Ciresi (MN #0016949) | Genevieve M. Zimmerman (MN #330292) |
| Jan M. Conlin (MN #0192697) | 1616 Park Avenue South |
| Michael Sacchet (MN # 395817) | Minneapolis, MN 55404 |
| Ciresi Conlin LLP | Phone: (612) 339-9121 |
| 225 S. 6th St., Suite 4600 | Fax: (612) 339-9188 |
| Minneapolis, MN 55402 | Email: gzimmerman@meshbesher.com |
| Phone: 612.361.8202 | |
| Email: MVC@CiresiConlin.com | |
| JMC@CiresiConlin.com | |
| MAS@ciresiconlin.com | |

LEVIN PAPANTONIO, P.A.                                      KENNEDY HODGES, LLP

/s/ Ben W. Gordon, Jr.                                      Gabriel Assaad ó *Pro Hac Vice*
Ben W. Gordon (FL # 882836) ó *Pro Hac Vice*   David W. Hodges ó *Pro Hac Vice*
J. Michael Papantonio (FL # 335924)                711 W. Alabama Street
316 S. Baylen Street, Suite 600                           Houston, TX 77006
Pensacola, FL 32502-5996                                   Phone: (713) 523-0001
Phone: (850) 435-7090                                        Email: gassaad@kennedyhodges.com
Fax: (850) 436-6090
Email: bgordon@levinlaw.com

*Plaintiffs Co-Lead Counsel*                                *Plaintiffs Executive Committee*