UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates To:<br>*All Cases* | **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF SAMSUN LAMPOTANG, PH.D.** |

I.   **INTRODUCTION**

Dr. Lampotang's entire report is characterized by a lack of intellectual rigor, wherein he makes unsupported and unwarranted assumptions and conclusions, while also failing to provide the ability for anyone to determine what materials he did or did not consider and/or rely upon in formulating his opinions.  While weighing the *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and the Federal Rule of Evidence 702 factors, the district court must function as a gatekeeper who "separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir.2001). As such the Court should exercise its gatekeeper role and exclude the opinions and testimony of Dr. Lampotang, due to its unreliability and potential to confuse the jury.

Defendants unsuccessfully attempt to salvage Dr. Lampotang, in their response to Plaintiffs' motion, but unfortunately, their general citations and lack of quotation to Dr. Lampotang's report and testimony belie precisely the issues identified in Plaintiffs' Motion.  Plaintiffs initial Motion to exclude Dr. Lampotang fully lays out the basis for exclusion.

As fully described in Plaintiffs' initial Motion, Dr. Lampotang's opinions do not satisfy the standards for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), because they were employed without the necessary intellectual rigor, lack a proper scientific methodology, and are unsupported. Defendants have done nothing in their opposition to sufficiently rehabilitate

1

Dr. Lampotang. Plaintiffs will not burden the Court by restating argument contained in Plaintiffs' initial motion papers but rather, limit this Reply to highlight some of Defendants' key failures with respect to Dr. Lampotang.

## II.     ARGUMENT

### A. Defendants Failed to Identify Reliable Methodology Underlying Dr. Lampotang's Opinions

In a telling admission during his deposition, Dr. Lampotang openly stated "**I was not writing a paper, in my mind, so I didn't apply the same approach that I would use for an academic paper.**"[1] *At no point in the opposition do Defendants ever address this clear admission*, nor do they explain how, despite failing to do so, Dr. Lampotang employed the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire Co., Ltd. v. Carmichael* 526 U.S. 137, 152 (1999). This key admission by Dr. Lampotang, combined with the other flaws identified by Plaintiffs in their initial Motion, demonstrate that Dr. Lampotang employed a cursory, biased approach to the project, leaving his opinions unreliable and, accordingly, inadmissible. *Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir.1999) (during the evaluation "of expert testimony under Federal Rule of Evidence 702, the district court must look to both the relevancy and the reliability of the testimony").

---

[1] Ex. C (Lampotang Dep. 248:8-15). All references to "Dep. [page]:[line]" are to page and line numbers of the Deposition of Samsun Lampotang, Ph.D., taken on August 11, 2017, relevant excerpts of which were attached as Ex. C to the Zimmerman Declaration filed with Plaintiffs' initial Motion at Doc. #746.

In attempting to salvage Dr. Lampotang's clear and admitted lack of intellectual rigor and methodology, Defendants state "Dr. Lampotang's methodology included reviewing other expert reports, deposition testimony of certain witnesses, and other materials, including produced documents and published studies." (Opp. at p. 6)(citing DX2, Lampotang Rept. at 4).[2] However, a close and careful reading of page four of Dr. Lampotang's report - the *only* citation which Defendants use to support this position - reveals no such methodology.

Nowhere on page four of his report does Lampotang mention any other expert reports or any deposition testimony.[3] There is a single end-note citation to an isolated study, however, there is no description of how Dr. Lampotang chose that particular study, how he evaluated the reliability of that study, nor is there any description of what he did to determine whether or not there were any contradictory studies.[4] The only other documents Dr. Lampotang referenced include: an article from the CDC regarding normothermia that never mentions forced-air warming in general much less the Bair Hugger in particular; a reference to the now withdrawn SCIP-inf-10 protocol; the design-history file and 510(k) file for certain models of the Bair Hugger; unspecified "other documents related to the design and testing of the Bair Hugger;" and certain ASHRAE standards for general surgery.[5] Again, there is no description as to what methodology Dr. Lampotang employed in selecting those documents, why these documents were

---

[2] All references to "Opp. at p. __" are to Defendants' Opposition to the motion to exclude Dr. Lampotang at Doc. #911.
[3] Doc. #746, Ex. A (Lampotang Rept. at 4).
[4] *Id*.
[5] *Id*.

3

considered by him to reliable, nor why he chose not to review the depositions of both company and third-party witnesses with regard to those documents.[6] Nor was he able to identify a methodology during his deposition.

Defendants try to defend Dr. Lampotang's lack of intellectual rigor by claiming that the absence of materials "on Dr. Lampotang's list of materials considered does not render his opinions inadmissible" because "Plaintiffs' counsel had the opportunity to cross-examine Dr. Lampotang regarding his review of these studies during his deposition, and did not do so."  (Opp. at p. 7).  Defendants ignore, however, the very language of Rule 26, that an expert report "*must contain*," among other things, "the *facts* or *data* considered by the witness" in forming the opinions.  Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). The very purpose of the requirement for an expert report is the provision of notice of the expert's opinions and materials sufficient to qualify the witness as an expert and establish the admissibility of the expert's opinion without the need for additional testimony or information, to eliminate unfair surprise to the deposing party, and to conserve resources. *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283-84 (8th Cir. 1995); Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Notes – 1993 Amendment. Thus, Defendants' argument that that Plaintiffs could have cross-examined Dr. Lampotang with regard to his review of the studies or other documents he failed to cite to in his report during his deposition ignores that, without the disclosure of those studies as facts or data considered by Dr. Lampotang in his report, *Plaintiffs had no prior knowledge of the need to cross-examine Dr. Lampotang*

---

[6] *Id*.

4

*with regard to those documents* and, therefore, would not have been prepared to so. The kind of guess-work Defendants suggest Plaintiffs be required to resort to is precisely what Rule 26 is intended to prevent.

Similarly, Defendants argue later, in Section II.F of their Opposition, that Dr. Lampotang, despite admittedly citing to a document in his report that did not support the contention for which it was cited, could have answered the questions asked about the issue but "Plaintiffs failed to produce the document during his deposition." (Opp. at 15). Defendants ignore the fact that it is Defendants' and Dr. Lampotang's burden to properly provide and cite to the facts and data relied upon by the expert. Additionally, as a practical matter, without the proper citation, *Plaintiffs had no ability to determine which document, if any, Dr. Lampotang was actually referring to in his report in order to be able to produce the document during the deposition.*

Finally, as more fully discussed in Plaintiffs' initial Motion, even for those materials Dr. Lampotang did claim to review, he was unable to recall the details of those documents, frequently claiming at deposition that he could not remember details because he read those materials "a long time ago," despite the fact that his expert report was issued just two months prior to his deposition.[7]

Defendants have done nothing in their Opposition to rehabilitate Dr. Lampotang's failures of intellectual rigor and methodology detailed in Plaintiffs' initial Motion. As such, Plaintiffs' respectfully submit that their Motion to exclude Dr. Lampotang's testimony and opinions should be granted in its entirety. *See, Cole v.*

---

[7] *See*, *e.g.*, Ex. C (Lampotang Dep. 160:15-22; 165:24-166:10).

*Homier Distib. Co., Inc.,* 599 F.3d 856,865 (8th Cir. 2010) (finding that an experts conclusions were "so fundamentally unsupported that [they could] offer no assistance to the jury.")

### B. Defendants Attempt to Excuse Dr. Lampotang's Lack of Intellectual Rigor and Methodology by Claiming a Lower Standard for Rebuttal Testimony Which Is Unsupported by the Rules or Precedent

Defendants, apparently recognizing that Dr. Lampotang's report admittedly fails to meet the required intellectual rigor and methodology required of an expert in the relevant field, nevertheless attempt to excuse Dr. Lampotang's failures by claiming that "this Court has recognized that rebuttal experts can testify to the flaws that he or she believes are inherent in another expert's reports" and citing to *Aviva Sports, Inc. v. Fingerhut Direct Marketing, Inc.*, 829 F. Supp. 2d 802, 835 (D.Minn. 2010). Unfortunately for Defendants, this excuse is neither supported by the facts of Dr. Lampotang's expert report, nor by the law cited by Defendants.

The *Aviva Sports* decision by this Court cited to by Defendants says nothing about lowering the standard for experts who choose to offer solely rebuttal opinions. Rather, it stands for the proposition that a rebuttal expert may critique the methodology and/or opinions of another expert without having to proffer their own alternative explanations or to explain why those critiques would have produced different results. *Id*. A critique of an opposing expert, however, must still meet the standards for Rule 702. Thus, as this Court found in *Aviva Sports*, the "rebuttal experts sufficiently applied their expertise to the facts and methodologies used by each of Aviva's experts in forming their conclusions." *Id*. The problem here, however, is that Dr. Lampotang failed to sufficiently apply his

6

expertise in a manner by which Plaintiffs and this Court can test the reliability of his opinions.

Further, as a factual matter, Dr. Lampotang's report and proffered testimony go far beyond mere criticisms of Plaintiffs' experts' methodologies. In fact, as Defendants' Opposition admits:

> [Dr. Lampotang] offered several opinions in support of Defendants' contention that the Bair Hugger does not cause surgical site infections: (1) the Bair Hugger warming unit is safe and efficacious; (2) Arizant and 3M acted reasonably in designing, developing, and marketing the Bair Hugger; (3) the Bair Hugger does not contaminate the surgical field; (4) the Bair Hugger filter is effective at trapping Acinetobacter baumannii; (5) there is no indication that surgical site infections are caused by the Bair Hugger; and (6) there are numerous potential causes/risk factors of surgical site infections.

(Opp. at p. 6). Dr. Lampotang's report and testimony consists of affirmative opinions in support of Defendants' position, not simply critiques of Plaintiffs' experts and their methodologies. Thus, even if *Aviva Sports* stood for the proposition that opinions criticizing an opposing expert are subject to a lower threshold of reliability – and *Aviva Sports* contains no such retooling of the reliability standards - Dr. Lampotang's report and testimony is insufficiently precise even with respect to criticisms of Plaintiffs' experts to be admissible.

### III.   CONCLUSION

Unreliable and irrelevant information must be kept from the trier of fact because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).  For the reasons discussed in Plaintiffs' initial Motion and above, Plaintiffs'

respectfully submit that Dr. Lampotang, his report, and any opinions and testimony that he seeks to offer, should be excluded in their entirety.

Respectfully submitted,

Dated: October 17, 2017

| CIRESI CONLIN L.L.P. | MESHBESHER & SPENCE LTD. |
|---|---|
| /s/Michael V. Ciresi_____ | /s/ Genevieve M. Zimmerman |
| Michael V. Ciresi (MN #0016949) | Genevieve M. Zimmerman (MN #330292) |
| Jan M. Conlin (MN #0192697) | 1616 Park Avenue South |
| Michael Sacchet (MN # 395817) | Minneapolis, MN 55404 |
| Ciresi Conlin LLP | Phone: 612.339.9121 |
| 225 S. 6th St., Suite 4600 | Fax: 612.339.9188 |
| Minneapolis, MN 55402 | Email: gzimmerman@meshbesher.com |
| Phone: 612.361.8202 | |
| Email: MVC@CiresiConlin.com | |
|        JMC@CiresiConlin.com | |
|        MAS@ciresiconlin.com | |

LEVIN PAPANTONIO, P.A.

/s/ Ben W. Gordon, Jr.
Ben W. Gordon (FL # 882836) ó *Pro Hac Vice*
J. Michael Papantonio (FL # 335924)
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: 850.435.7090
Fax: 850.436.6090
Email: bgordon@levinlaw.com

***Plaintiffs Co-Lead Counsel***

KIRTLAND & PACKARD LLP

*/s/ Behram V. Parekh*
Behram V. Parekh (Cal. Bar. 180361) (*Pro Hac Vice*)
2041 Rosecrans Ave., 3rd Floor

8

El Segundo, CA 90245
Phone:310.536.1000
Fax:310.536.1001
E-mail: bvp@kirtlandpackard.com

*Plaintiffs Executive Committee*