UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION** | **MDL No. 15-2666 (JNE/FLN)** |
| **THIS DOCUMENT RELATES TO ALL CASES** | |

# PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF DR. MICHAEL MONT

## I. INTRODUCTION

Plaintiffs intend to rely on their initial Motion to Limit the Testimony of Dr. Michael Mont, and offer this reply on the narrow topic of Dr. Mont's ability to address issues bearing on thermodynamics, heat transfer, and airflow as they relate to "other operating room equipment" and activities that Dr. Mont claims exceed any possible impact of the Bair Hugger. Because 3M's Response Memorandum opposing Plaintiffs' motion to limit the testimony of Dr. Mont fails to effectively address this issue, and based on Dr. Mont's own testimony demonstrating he lacks any ability to authoritatively comment on these topics, Dr. Mont's opinions should be limited to the medical areas in which he possesses the requisite training, experience, and knowledge to be helpful to the jury under Rule 702.

## II. ARGUMENT

### DR. MONT'S CONCLUSORY CLAIMS THAT ACTIVITIES AND "OTHER EQUIPMENT" IN THE OPERATING ROOM OVERSHADOW ANY POSSIBLE IMPACT OF THE BAIR HUGGER ARE PURE CONJECTURE AND MUST BE EXCLUDED

Dr. Mont has failed to identify any foundation supporting his proffered opinion that many of the activities and devices in operating rooms increase bacteria over the surgical site. Defendants cite Kucukdurmaz et al.,[1] but fail to disclose that the article is referring to domestic hand tools that are used in third world countries, not medical instruments used in operating rooms in the United States. Plaintiffs' are unaware of any

---

[1] DX2 at 458-59, Kucukdurmaz et al., *Domestic electric drills in the service of orthopaedic surgery: a potential and preventable source of surgical site infections*, 46(6) ACTA ORTHOP. TRAUMATOL TURC. 455 (2012).

2

cases filed in this MDL in which surgeons are using Black & Decker drills from Home Depot.

Defendants' attempt to rely on a study by Shahi et al is misplaced.[2] In that study, **none** of the 50 patients were diagnosed with an infection.[3] To conclude that electrocautery devices may cause a periprosthetic joint infection based on the Shahi article lacks any scientific basis, and any reliance Dr. Mont might place on the Shahi article in formulating and offering opinions in these proceedings with respect to alternative causes of bacteria-laden particles causing infections in an operating room lacks an appropriate, reliable foundation.

In this way, the opinions Dr. Mont attempts to offer in this MDL related to devices and equipment (as well as staff activity) in the operating room and the role those devices (or activities) may play in causing a risk of infection are completely speculative, as even Dr. Wenzel, Defendants' own infectious disease expert, concedes.  Defendants point to several studies listed in Exhibit A to Dr. Mont's report claiming certain operating room equipment may contribute to the dissemination of bacteria onto the surgical field.  (*See* Def. Opp. at 8).  But nowhere does Dr. Mont, in his report or during his deposition, attempt to define, quantify or otherwise explain the risks associated with these devices and orthopedic implant surgery. Dr. Mont's opinions amount to nothing more than his own personal viewpoints, not grounded in science or rooted in any kind of explainable methodology.  In other words, Dr. Mont simply tossed out—as the Court will recall he

---

[2] DX2 at 1410, Shahi et al., *Bacterial Contamination in Tips of Electrocautery Devices During Total Hip Arthroplasty*, 30(8) J. ARTHROPLASTY 1410 (2015).
[3] *Id*.

did at Science Day—the notion that there are so many things going on in the operating theater *already* that the Bair Hugger, by comparison, cannot possibly be as bad as all of the other problems that exist. In point of fact, neither Dr. Mont nor Defendants have specifically linked any of the studies listed in Exhibit A to the opinions Dr. Mont intends to offer in this case, i.e., that various devices such as computer monitors, anesthesia machine, drills and saws, cauterizing tools, and others increase bacteria over the surgical site and therefore increase the risk of periprosthetic joint infections.[4] What is surprising is that Defendants seem to suggest that every piece of equipment in the OR—with the notable exception of the Bair Hugger – increases the risk for an infection.

Dr. Mont is an accomplished orthopedic surgeon. Plaintiffs will stipulate he is qualified to opine about issues relating to orthopedic surgery, such as total joint arthroplasty, but he should be limited in his opinions to science-based opinions relating to his training and experience. In short, Plaintiffs' motion to exclude opinions and testimony from Dr. Mont is predicated on his attempt to offer opinions on areas in which he is fundamentally unqualified to testify: issues concerning airflow, heat transfer, and other operating room equipment that he simply has not studied and cannot reliably explain to the Court or the jury. In just one noteworthy passage from his deposition, Dr. Mont admits he has no education or training in fluid dynamics or heat transfer:

> **Q.** But you have no education with respect to –
> You're not an engineer; correct?
> **A.** I already answered that question. I am not
> an engineer.

> **Q.** Okay. And you -- and you have not done any --
> You have no education with respect to how objects that move affect airflow; correct?
> **A.** What do you mean I have no education?
> **Q.** Well what --
> **A.** Formal education? Scientific? I didn't write a --
> **Q.** Do you take -- do you take --
> Did you ever take a class on fluid dynamics?
> **A.** No, I did not.
> **Q.** Did you ever have a class on heat transfer?
> **A.** No.[5]

Thus, Dr. Mont has no understanding or knowledge of airflow or heat transfer. He lacks any knowledge about the amount of heat generated by the devices he mentions or the volume of airflow these other devices generate. (*See* Pls.' Memo. at 6-10). Without education, training, experience, or a specific, authoritative article he can rely on, these "intuitive" opinions about the comparative effects of such "other operating room equipment" must be excluded. *See Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 715 (8th Cir. 2001)(holding that a hydrologist is qualified to opine on flood management but not on warehouse practices because of a lack of education, training, or experience); *see also Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.,* CV 14-3103 (SRN/FLN), 2016 WL 6914995, at *2 (D.Minn. May 18, 2016)("It is common for experts to rely on information outside of their field of expertise in rendering expert opinions.")

## III. CONCLUSION

---

[5] Ex. A (Mont Dep. at 247:17 – 248:8.)

Dr. Mont's opinions on airflow disturbance and heat generated by various devices in the operating room lack any reliability and are simply *ipse dixit* of the proffered expert, and thus must be excluded. *See* Fed. R. Civ. P. 26(a)(2)(B). Defining and quantifying airflow disruption and heat generated by use of operating room equipment and movement of surgical staff in the operating theater necessitates advanced and complex engineering and mathematical work grounded on principles relating to airflow mechanics, heat transfer, equipment design, and thermodynamics, all of which are beyond Dr. Mont's qualifications in orthopedic surgery. For these reasons, both Plaintiffs and Defendants have retained experts in these fields who have performed the kinds of detailed analyses and calculations that Dr. Mont has not and cannot perform. Defendants have failed to provide any reliable basis which would establish that Dr. Mont is qualified to offer any opinions in thermodynamics, airflow mechanics, and heat or contamination levels generated by "other operating room equipment" or related activities in the operating room, and, accordingly, this Court should enter an order excluding his testimony on these topics, and restricting him to areas of science within his stated expertise.

Dated: October 17, 2017                                 Respectfully submitted,

CIRESI CONLIN L.L.P.                                    MESHBESHER & SPENCE LTD.

/s/ Michael V. Ciresi                                   /s/ Genevieve M. Zimmerman
Michael V. Ciresi (MN #0016949)                         Genevieve M. Zimmerman (MN #330292)
Jan M. Conlin (MN#0192697)                              1616 Park Avenue South
225 S. 6th St., Suite 4600                              Minneapolis, MN  44404
Minneapolis, MN 55402                                   Phone:  (612) 339-9121
Phone: (612) 361-8202                                   Fax:  (612) 339-9188
Email:  MVC@Ciresi Conlin.com                           Email:  gzimmerman@meshbesher.com
            JMC@CiresiConlin.com

/s/Ben W. Gordon, Jr.        (Pro hac Vice)
Ben W. Gordon, Jr. (FL Bar # 882836)
Levin, Papantonio, Thomas, Mitchell,
Rafferty, & Proctor, P.A.
316 S. Baylen Street, Suite 400
Pensacola, FL 32502
Telephone    850-435-7091
Facsimile    850-436-6033
Email: bgordon@levinlaw.com

Plaintiffs' Co-Lead Counsel