```
 1                    UNITED STATES DISTRICT COURT

 2                      DISTRICT OF MINNESOTA

 3    ------------------------------------------------------------
                                      )
 4                                    )
      In Re: Bair Hugger Forced Air   )  File No. 15-MD-2666
 5    Warming Devices Products        )  (JNE/FLN)
      Liability Litigation            )
 6                                    )  December 21, 2017
                                      )  Minneapolis, Minnesota
 7                                    )  Courtroom 12W
                                      )  9:52 a.m.
 8                                    )
                                      )
 9    ------------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                 UNITED STATES DISTRICT COURT JUDGE

11

12               THE HONORABLE FRANKLIN L. NOEL
                 UNITED STATES MAGISTRATE JUDGE

13

14                      (STATUS CONFERENCE)

15    APPEARANCES

16    FOR THE PLAINTIFFS:
                                MESHBESHER & SPENCE
17                              Genevieve M. Zimmerman
                                1616 Park Avenue
18                              Minneapolis, MN  55404

19
                                CIRESI CONLIN
20                              Michael Sacchet
                                225 South 6th Street
21                              Suite 4600
                                Minneapolis, MN
22

23                              KENNEDY HODGES, LLP
                                Gabriel Assaad
24                              4409 Montrose Blvd
                                Suite 200
25                              Houston, TX 77006
```

```
 1      FOR THE PLAINTIFFS (cont'd):

 2                              KENNEDY HODGES, LLP
                                David W. Hodges
 3                              711 W. Alabama Street
                                Houston, TX 77006
 4
                                KIRTLAND AND PACKARD LLP
 5                              Behram V. Parekh
                                2041 Rosecreans Avenue
 6                              Third Floor, Suite 300
                                El Segundo, CA  90245
 7
                                FARRAR & BALL, LLP
 8                              Kyle Farrar
                                1010 Lamar, Suite 1600
 9                              Houston, TX  77002

10      FOR THE PLAINTIFFS (APPEARING BY PHONE:)

11                              PRITZKER HAGEMAN, P.A.
                                David J. Szerlag
12                              Wendy Thayer
                                45 South 7th Street, #2950
13                              Minneapolis, MN  55402-1652

14                              GROSSMAN & MOORE, PLLC
                                Emily A. DeVuono
15                              Jennifer Moore
                                401 W. Main Street
16                              Suite 1810
                                Louisville, KY  40202
17
18                              HARE WYNN NEWELL & NEWTON
                                Don McKenna
19                              Peggy Little
                                Lynne Reed
20                              Massey Building
                                2025 Third Avenue North
21                              Suite 800
                                Birmingham, AL  35203
22
                                MCEWEN LAW FIRM, LTD
23                              Melissa Schmid
                                5850 Blackshire Path
24                              Inver Grove Heights, MN  55076

25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):
                            MORGAN & MORGAN, PA
 2                          Heather Cullen
                            Joseph T. Waechter
 3                          Michael Goetz
                            201 N. Franklin St 7th Floor
 4                          Tampa, FL  33602

 5                          RAIZNER SLANIA, LLP
                            Jeffrey L. Raizner
 6                          Rica Rinosa
                            2402 Dunlavy Street
 7                          Houston, TX  77006

 8                          LONCAR & ASSOCIATES
                            William Hymes
 9                          John L. Coveney
                            424 S. Cesar Chavez Blvd
10                          Dallas, TX  75201

11                          CAPRETZ & ASSOCIATES
                            Don K. Ledgard
12                          5000 Birch St, Suite 2500
                            Newport Beach, ca  92660
13
                            MICHAEL HINGLE & ASSOCIATES
14                          Bryan Pfleeger
                            Julie Jochum
15                          220 Gause Blvd
                            Slidell, LA  70005
16
                            DAVIS & CRUMP, PC
17                          Martin D. Crump
                            Robert D. Cain, Jr.
18                          Wes Stevenson
                            2601 Fourteenth Street
19                          Gulfpost, MS 39507

20                          LEWIS & CAPLAN
                            Pete Lewis
21                          Sarah Delahoussaye Call
                            Amy Webster
22                          3631 Canal Street
                            New Orleans, LA  70119
23
                            THE RUTH TEAM
24                          Steven C. Ruth
                            842 Ramond Avenue
25                          Suite 200
                            Saint Paul, MN  33733-5157
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                                  LAW OFFICES OF TRAVIS R. WALKER
                                    Travis R. Walker
 3                                  Julie Treacy
                                    Felissa McHardy
 4                                  1235 SE Indian Street
                                    Suite 101
 5                                  Stuart, FL  34997

 6                                  ANDREWS & THORNTON
                                    Anne Andrews
 7                                  John Thornton
                                    Lauren Davis
 8                                  2 Corporate Park, Suite 110
                                    Irvine, CA 92606
 9
                                    JOHNSON BECKER PLLC
10                                  Rolf T. Fiebiger
                                    444 Cedar Street
11                                  Suite 1800
                                    Saint Paul, MN  55101
12
                                    LORD & ASSOCIATES
13                                  Priscilla Lord
                                    309 Clifton Avenue
14                                  Minneapolis, MN 55403

15                                  MURRAY LAW FIRM
                                    Caroline Whitney Thomas
16                                  650 Poydras Street
                                    Suite 2150
17                                  New Orleans, LA  70130

18                                  BROWN & CROUPPEN, PC
                                    Abby Cordray
19                                  211 North Broadway, Suite 1600
                                    St. Louis, MO  63102
20
                                    BEASLEY ALLEN
21                                  Megan Robinson
                                    Renee Lindsey
22                                  Matthew Munson
                                    218 Commerce Street
23                                  Montgomery, AL  36104

24

25
```

```
 1        FOR THE PLAINTIFFS(appearing by phone):

 2                                  HOLLIS LEGAL SOLUTIONS, PPLC
                                    Scott Hollis
 3                                  6814 Crumpler Boulevard,
                                    Suite 101
 4                                  Olive Branch, MS  38654

 5                                  FITZGERALD LAW GROUP, LLC
                                    Kevin Fitzgerald
 6                                  120 Exchange Street
                                    Suite 200
 7                                  Portland, ME  04101

 8                                  LAW OFFICES OF PETER ANGELOS,
                                    P.C.
 9                                  Thomas Keilty, III
                                    100 North Charles Street
10                                  Baltimore, MD  21201

11                                  MESHBESHER & SPENCE, LTD
                                    Holly Sternquist
12                                  1616 Park Avenue
                                    Minneapolis, MN  55404
13
                                    PARKER WAICHMAN, LLP
14                                  Nicole Eisner
                                    Michael S. Werner
15                                  59 Maiden Lane
                                    6th Floor
16                                  New York, NY  10038

17
                                    RANDALL J. TROST, P.C.
18                                  Carrie Hancock
                                    Pam Rodriguez
19                                  Randall T. Trost
                                    801 Main Street
20                                  Lynchburg, VA  24504

21                                  NEAL R. ELLIOTT, JR.
                                    P.O. Box 80136
22                                  Baton Rouge, LA  70898

23                                  NASH & FRANCISKATO LAW FIRM
                                    Brian Franciskato
24                                  Amanda Cryderman
                                    2300 Main Street, #170
25                                  Kansas City, MO  64108
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                              BROUS LAW LLC
                                Carrie Brous
 3                              3965 West 83rd St.  #115
                                Prairie Village, KS  66208
 4
                                BAILEY PEAVY BAILEY COWAN
 5                              HECKAMAN, PLLC
                                Justin Jenson
 6                              The Lyric Centre
                                440 Louisiana Street
 7                              Suite 2100
                                Houston, TX  77002
 8
                                GERTLER LAW FIRM
 9                              Meyer H. Gertler
                                935 Gravier Street
10                              Suite 1900
                                New Orleans, LA  70112
11

12                              LANGDON & EMISON
                                Brett Emison
13                              Rachel Ahmann
                                Lauren Niendick
14                              911 Main Street
                                Lexington, MO  64067
15

16                              THE WEBSTER LAW FIRM
                                Chelsie Garza
17                              6200 Savoy Suite 150
                                Houston, TX  77036
18
                                LAW OFFICES OF JAMES S. ROGERS
19                              Marci Umatum
                                James S. Rogers
20                              Elizabeth J. McLafferty
                                Annaliese Abbey
21                              1500 4th Avenue #500
                                Seattle, WA  98101
22
                                LEVIN PAPANTONIO
23                              Ben Gordon
                                Daniel Nigh
24                              316 S. Baylen Street
                                Suite 600
25                              Pensacola, FL 32502
```

```
1        FOR THE PLAINTIFFS(appearing by phone):
                                THE OLINDE FIRM, LLC
2                               Wesley G. Barr
                                Alfred Olinde, Jr.
3                               400 Poydras Street
                                Suite 1980
4                               New Orleans, LA  70130

5                               SANDERS PHILLIPS GROSSMAN
                                Randi Kassan
6                               100 Garden City Plaza
                                Suite 500
7                               Garden City, NY 11530

8                               BERNSTEIN LIEBHARD LLP
                                Dae Lee
9                               10 East 40th Street
                                New York, NY  10016
10
                                DEGARIS LAW GROUP, LLC
11                              Annesley DeGaris
                                Wayne Rogers, Jr.
12                              2 North 20th Street
                                Suite 1030
13                              Birmingham, AL  35223

14                              KELLY BERNHEIM DOLINSKY, LLC
                                Paula Bliss
15                              4 Court Street
                                Plymouth, MA  02360
16
                                BRENT COON & ASSOCIATES
17                              Miyoshi Rivers
                                300 Fannin, Suite 200
18                              Houston, TX  77002

19                              HOUSSIERE DURANT & HOUSSIERE
                                Randall A. Kauffman
20                              Monica Vaughan
                                Shirley Strom-Blanchard
21                              1990 Post Oak Blvd Suite 800
                                Houston, TX  77056
22
                                HURLEY MCKENNA & MERTZ
23                              Molly Condon
                                Brian Holmes
24                              Michael Mertz
                                33 North Dearborn Street
25                              Suite 1430
                                Chicago, IL  60602
```

```
1    FOR THE PLAINTIFFS(appearing by phone):

2                              GOZA & HONNOLD, LLC
                               Lisa Joyce
3                              11181 Overbrook Road, Suite 200
                               Leawood, KS  66211
4
                               COLLING GILBERT WRIGHT &
5                              CARTER, LLC
                               Lia Thomas
6                              Melvin Wright
                               The Florida Firm
7                              801 N. Orange Avenue
                               Suite 830
8                              Orlando, FL  32801

9                              NEWMAN BRONSON & WALLIS
                               Lauren E. Bronson
10                             2300 West Port Plaza Drive
                               Saint Louis, MO  63146
11
                               RILEY & JACKSON, P.C.
12                             Jeremiah Mosley
                               Keith Jackson
13                             Mary Malea Sellers
                               3530 Independence Drive
14                             Birmingham, AL  35209

15                             SHELTON LAW GROUP
                               John R. Shelton
16                             9300 Shelbyville Road
                               Suite 215
17                             Louisville, KY  40222

18                             SKIKOS CRAWFORD SKIKOS&
                                  JOSEPH, LLP
19                             Melissa Erin Mielke
                               Julie Tucci
20                             One Sansome Street, Suite 2830
                               San Francisco, CA  94104
21
                               THE WHITEHEAD LAW FIRM, LLC
22                             Anna Higgins
                               C. Mark Whitehead, III
23                             Eric Mausner
                               Petroleum Tower, Suite 303
24                             3639 Ambassador Caffery Pkwy
                               Lafayette, LA  70503
25
```

```
 1      FOR THE PLAINTIFFS(appearing by phone):

 2                                  TATE LAW GROUP, LLC
                                    Mark Tate
 3                                  Mary Nichols
                                    Jim Shipley
 4                                  2 East Bryan Street
                                    Suite 600
 5                                  Savannah, GA  31328

 6                                  THE MILLER FIRM, LLC
                                    Tayjes Shah
 7                                  108 Railroad Avenue
                                    Orange, VA  22960
 8
        FOR THE DEFENDANTS 3M:
 9                                  BLACKWELL BURKE P.A.
                                    Jerry Blackwell
10                                  Ben Hulse
                                    Deborah Lewis
11                                  Corey Gordon
                                    Mary Young
12                                  431 South Seventh Street
                                    Suite 2500
13                                  Minneapolis, MN  55415

14                                  FAEGRE BAKER DANIELS
                                    Bridget M. Ahmann
15                                  90 South Seventh Street
                                    Suite 2200
16                                  Minneapolis, MN  55402

17      Court Reporter:            MARIA V. WEINBECK, RMR-FCRR
                                   1005 U.S. Courthouse
18                                 300 South Fourth Street
                                   Minneapolis, Minnesota 55415
19
                 Proceedings recorded by mechanical stenography;
20      transcript produced by computer.

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2                       (9:52 a.m.)

 3              THE COURT:  Thank you, good morning.

 4              MAGISTRATE JUDGE NOEL:  Good morning.

 5              THE COURT:  Let me just check before -- you can

 6      please be seated.  And I was going to check here and see if

 7      the phone is working before we get started.  Could someone

 8      on the phone say something?

 9              (Unidentified voice heard.)

10              MAGISTRATE JUDGE NOEL:  Maybe the phone is all set

11      up and nobody bothered to call.

12              THE COURT:  Can you hear us all right?

13              MR. GORDON:  Ben Gordon (inaudible) I'm here, Your

14      Honor.

15              THE COURT:  Okay, I'm going to mute you now.  I

16      was just checking to see if you were there.

17              All right.  I say we just get started on the joint

18      agenda.  The pretrial orders and case schedule, does anybody

19      want to say anything about that?

20              MR. BLACKWELL:  Your Honor, if I may.

21              Good morning, Your Honors.  Jerry Blackwell for

22      3M.  As Your Honors know, the Skaar case is now gone.  The

23      CNRA testified that the Bair Hugger was not in fact used in

24      the surgeries at issue.  So we're down to the Gareis cases

25      remaining for bellwether.
```

1      The parties have had some exchanges for proposal

2   to the Court for a new schedule.  We've sent our proposal to

3   the plaintiffs.  I think they still have some conferring to

4   do on their side.  And maybe the most productive thing, if

5   Your Honors would give us a sort of return date to get a

6   proposal back to the Court, I think together we can work to

7   do that.

8          MS. ZIMMERMAN:  With respect to the bellwether

9   repopulation issue?

10         MR. BLACKWELL:  Yes.

11         MS. ZIMMERMAN:  Yes, we're happy to do that.

12         MR. BLACKWELL:  So nothing further to say.

13         MS. ZIMMERMAN:  And, Your Honor, if I may?

14         THE COURT:  Yes, Ms. Zimmerman.

15         MS. ZIMMERMAN:  I suspect that may be a few

16   issues, and I suspect that Mr. Hulse and some of his

17   colleagues may chime in as well.

18         With respect to this first issue, the pretrial

19   orders and case schedule, we're in agreement with

20   Mr. Blackwell in terms of how we would like some input from

21   the Court as to how best to address this issue of

22   repopulating the bellwether pool.  I think that that's a

23   separate issue in the agenda.

24         But with respect to number one, pretrial orders

25   and case schedule for the Gareis matter, I do think that we

1    are in a situation where we may need a little bit of extra

2    time to complete the expert depositions in that matter.

3            We just received the case specific expert reports

4    from defense counsel this Monday.  We've been advised that

5    there are only two available dates where the relevant

6    counsel for defendants is able to take the deposition of

7    Dr. Elgobashi in January.  And, unfortunately, the two dates

8    that are available for Mr. Goss don't work for

9    Dr. Elgobashi.

10           I know that Dr. Borak, who is one of defendant's

11   disclosed experts on case specific causation, likewise is

12   not available for deposition on any day in January.  And so

13   I've had some conversations in the last few days with

14   Ms. Lewis for 3M, and we've discussed whether or not we

15   might try to push the deadline for expert depositions maybe

16   a couple weeks into February to accommodate these kind of

17   schedule things.  It does seem at this point we are going to

18   have at least nine experts subject to deposition in the

19   course of January and perhaps these first two couple weeks

20   of February.

21           We have two set so far.  Dr. Jarvis is set to be

22   done, as is Dr. Stonnington.  Those are both plaintiffs'

23   experts, and we're waiting to finalize Dr. Elgobashi's

24   deposition date.

25           We are waiting on dates for the defendant's

1    experts when they will be available.  I know that Dr. Borak

2    is not available in January, and we were told we'd be

3    getting those dates from them when they got their reports,

4    but to my knowledge we don't have those just yet.  So, I

5    think --

6              THE COURT:  What would that do to the trial date?

7              MS. ZIMMERMAN:  So that's a great question, Your

8    Honor.  One of the things that we talked about on the phone

9    this week was the parties' mutual desire for a date certain,

10   and we wanted to check with the Court to see if the -- so

11   the present scheduling order says the case should be ready,

12   trial ready on April 30th.  We're not certain if that is a

13   trial date certain on Your Honor's calendar.

14             And if so, certainly both parties would like to

15   have a trial date certain, given the numbers of experts and

16   the complexity of arranging those schedules.  So we're not

17   sure if that's a trial date certain on Your Honor's calendar

18   or if the trial date would potentially be pushed by a couple

19   of weeks or so.

20             THE COURT:  I'm planning on trying the case then.

21             MS. ZIMMERMAN:  Excellent.

22             THE COURT:  That's what I'm looking at.  It says,

23   "tentative" on my calendar, but there's nothing else there,

24   and it's as good a time as any.

25             MS. ZIMMERMAN:  Perfect.

1           THE COURT:  So I am planning on trying it then.

2           MS. ZIMMERMAN:  Well, that's welcome news, and I

3      think that both parties wanted to just get an idea about

4      whether that was a date certain so that we could communicate

5      with our experts about that.

6           And in terms of what it means if we push the -- if

7      we give the parties a couple of extra weeks to complete

8      these expert depositions through the first part of February,

9      the plaintiffs have proposed that we push presently under

10     the Court's scheduling order dispositive motions on case

11     specific issues would be due on February 6th, which was

12     seven days after the close of expert discovery or expert

13     depositions.

14          We would say that if perhaps we pushed the expert

15     deposition date back to say February 16th, we could follow

16     the same time path that Your Honors had laid out, and seven

17     days later have dispositive motions be due.

18          And the question that we had or the discussion we

19     had was how much that might jam up Your Honor's calendar in

20     terms of hearing those.

21          I think the other thing that we discussed, to the

22     extent it works for Your Honors, it may be helpful for the

23     parties and the Court to sit down perhaps informally after

24     this status conference to discuss just housekeeping matters

25     in anticipation of the trial, when motions in limine might

1    be due, jury instructions, the kind of different

2    housekeeping things that might be helpful to keeping this

3    trial on track.

4        So I think that those were some additional

5    thoughts from the plaintiffs' perspective, certainly on

6    agenda Item Number 1.

7        MAGISTRATE JUDGE NOEL:  I just had a question on

8    the case specific dispositive motions.  What -- and I guess

9    it's more for the defendants than you because I guess you're

10   not going to have any or you will.

11       MS. ZIMMERMAN:  Well, I think we're going to see a

12   lot of the same experts.  There are no new experts that have

13   been disclosed by either side.  There is some potentially

14   duplicative, I mean we have a 95 page report from Dr. Wenzel

15   that we'll be doing a deposition on.

16       I think that the parties will probably have to

17   read the Court's Order on the general causation, Daubert

18   issues, and keep that in mind as we anticipate case specific

19   motions as well.  I hope it's not as big of a list this time

20   around, but I suspect there will be some motions that are

21   submitted.

22       MAGISTRATE JUDGE NOEL:  I guess that's my

23   question.  So are the case specific dispositive motions

24   similar?  Are they going to be a rehash of Daubert things or

25   something different.

1          MS. ZIMMERMAN:  I would certainly hope that we're

2    not going to rehash everything that we've already presented

3    to the Court, but I can only speak for the plaintiffs.

4          MAGISTRATE JUDGE NOEL:  Okay.

5          THE COURT:  Mr. Hulse?

6          MR. HULSE:  Thank you, Your Honors.  Good morning.

7    Ben Hulse for the defendants.

8          There certainly won't be a rehash of the general

9    causation motions.  I think we know better than that.  But

10   this is where the rubber hits the road in a specific case.

11   What plaintiffs have to show here and the experts have to

12   show is that the Bair Hugger system actually caused

13   Mr. Gareis's infection.

14         So we have a host of other issues, alternative

15   causes and so forth that are going to be at issue on

16   specific cause.  And it is absolutely our anticipation that

17   we will file motions to exclude each of the plaintiffs'

18   experts and that we will file a summary judgment motion.

19         Our concern with the April 30th date certain, if

20   we're then moving the Daubert deadline is that we're not

21   actually getting to a hearing on Daubert and summary

22   judgment until into April.  And, obviously, the Court will

23   take the time it will take, but it only allows potentially a

24   few weeks for consideration and decision on motions that

25   will be involved motions.

1          So while we do have the single availability issue

2     with Dr. Borak who has got some significant medical

3     treatment in January, we do think it's possible to get this

4     all done within the present schedule.  But if we are going

5     to move the Daubert schedule, our suggestion would be that

6     we just, that if it works with the Court schedule, that we

7     push that trial date out accordingly, whether it's one week

8     or two weeks, just because we're already pretty compressed

9     on the time between Daubert and trial.

10          THE COURT:  Let's talk about the dates in our

11     informal meeting when we get done here.  I hate to do

12     anything with the calendar without all the relevant people

13     involved.

14          MR. HULSE:  Makes sense to us, Your Honor.

15          THE COURT:  All right.  I'd like to get this

16     bellwether pool repopulated as soon as possible.  Is that

17     something else that you want to talk about informally?  I

18     think, Mr. Blackwell, that's what you said you thought that

19     you and the plaintiffs could work on something?

20          MR. BLACKWELL:  Your Honors, we could talk about

21     it informally with the Court.  As I say, we had sent our

22     proposal to plaintiffs.  I don't know that they've had a

23     chance to meet and confer on their side.

24          THE COURT:  Okay.

25          MS. ZIMMERMAN:  And, Your Honors, so Ms. Conlin

1    sends her regrets for not being here.  She's wrapping up a

2    trial out of state, and Mr. Ciresi is also out of town.  And

3    I know Mr. Gordon sent a note to you.  He's stuck I think in

4    the Atlanta airport right now.

5           So we've had some difficulty getting our side a

6    chance to kind of review the entire proposal.  We thought

7    that it made a lot of sense to get some input from Your

8    Honor in terms of what you'd like to see.  Certainly from

9    the plaintiffs' perspective, one key part that we think that

10   needs to be added is some mutual discovery on case specific

11   issues.  And we can talk at length about the issues that we

12   run into with the respect to the Skaar case and the Gareis

13   matter, where some of the things that we sought along the

14   course of this case, customer lists, other case specific

15   communications between defendant and the hospitals for these

16   plaintiffs have not been produced, despite our requests.  We

17   don't have a defendant fact sheet.  And normally in a case

18   like this where we had a defendant fact sheet, we would have

19   some of this information.

20          Discovery about detailed people.  It's what they

21   call the sales folks that go out to the hospitals.  Sales

22   information that confirms in fact that certain blankets were

23   provided.  And the reason that that's come up, and,

24   unfortunately, to trouble Judge Noel about this just about

25   two weeks ago, we ended up with an emergency telephone

1   conference before Your Honor, and then actually the next day

2   an emergency motion to quash by the third party hospital

3   with respect to some of the discovery that we're seeking.

4        I think given the discovery response that we got

5   from Smith's Medical, which is another third party we

6   received just yesterday, I assume that that has put to bed

7   any questions about products with respect to Mr. Gareis.

8        We have testimony from the anesthesiologist and

9   from the CRNA that in fact it was used in Mr. Gareis' case.

10  The hospital records that we've been provided confirmed that

11  as well.  But we have been provided a lot of e-mails now

12  just over the last few weeks between the defendants and the

13  hospital for Mr. Gareis.  So it would have been responsive

14  discovery that we had served but hadn't been produced until

15  now.  And they thought perhaps there might be a product ID

16  issue, and they can say that, well, it wasn't Bair Hugger,

17  which is Smith Medical instead.  So some of these things we

18  think could have been avoided if we had product information,

19  customer lists.

20       MAGISTRATE JUDGE NOEL:  Let me interrupt for a

21  quick second because it occurs to me that people on the

22  telephone probably are not hearing either of you from where

23  you're standing.

24       MS. ZIMMERMAN:  I apologize.  That's a good point,

25  Your Honor.

```
 1              Genevieve Zimmerman for plaintiffs.  I won't
 2     restate everything, but one of the issues that the
 3     plaintiffs have with respect to the proposal the defendants
 4     have put together on repopulating the bellwether pool really
 5     has to do with mutual discovery obligations on case specific
 6     issues from defendants.  Typically, what we see in MDLs like
 7     this is a defendant fact sheet or something like that.
 8     Certainly, when it comes to the bellwether plaintiffs that
 9     have been nominated, we would suspect that relevant to that
10     would be customer lists, information about what blankets,
11     what machines have been placed at these hospitals.
12              MAGISTRATE JUDGE NOEL:  But what goes into the
13     plaintiffs front end work to determine that a Bair Hugger
14     was used in the first place because you don't get to sue
15     them unless --
16              MS. ZIMMERMAN:  Certainly, Your Honor.
17              And so what's happened in all six of the
18     bellwether cases that made it to the kind of final
19     nomination from the plaintiffs' perspective is there in the
20     medical record, generally speaking, an anesthesiology
21     record, where there's a box sometimes that actually has a
22     little Bair Hugger logo on it.  Sometimes it says, "Bair
23     Hugger."  Sometimes it says, "forced air warming."
24     Sometimes there's a line through it.  Sometimes it's
25     circled.  Sometimes it's checked.  And so we have that.
```

1    Sometimes it's reflected in the billing records from the

2    hospital as well.

3              But, again, it's certainly on the plaintiffs to

4    begin that process before they start a lawsuit to make sure

5    that they have some objective evidence that Bair Hugger was

6    in fact used in the surgery at issue.

7              But what we've run into now is that despite --

8    I'll take the Gareis case, for example, where there is in

9    fact a check mark on the relevant surgery note.  We have

10   deposition testimony from the anesthesiologist and from the

11   CRNA that says, yes, this was used.  After those depositions

12   happened, the defendants served third party subpoenas and

13   produced some e-mails to us between defendants and hospital

14   representatives back in the time of the subject surgery 2009

15   and 2010, that they believed indicated that perhaps the

16   hospital was moving to use Smith's Medical, which is another

17   forced air warming product.

18             Given what we now know, based on the third party

19   subpoena response received yesterday, Smith's Medical never

20   sold any products to this particular hospital.  And we do

21   know that 3M did in fact sell Bair Huggers and placed this

22   machine at these hospitals.  So I think we're past that, but

23   that wasn't until we had been out to South Carolina on three

24   separate trips for multiple depositions and hospital

25   inspections.

1              So to the extent that the defendants have proposed

2       in their bellwether repopulation proposed order that there

3       be some affirmative obligations on the plaintiffs, we

4       certainly welcome that, and we think it's appropriate.

5              But we think that that responsibility should be a

6       mutual obligation as is generally done in many other cases,

7       such that as they have obtained, you know, customer lists

8       from a competitor in this case, but we haven't obtained

9       those here.

10             We can see based on some of their documents, hey,

11      you sent this many blankets, and this many machines to the

12      hospital in question on these dates.  And here are the

13      e-mails that you had with that particular facility that

14      would be relevant in this case.  So it's not that we think

15      we shouldn't have to produce some information, we just think

16      that it should be a mutual observation, so we can avoid some

17      of these issues.

18             MR. BLACKWELL:  Your Honor's, if I could be heard

19      on our position since you heard a response to our position

20      not having heard our position.  Mr. Hulse, perhaps, you

21      could speak to it.

22             MR. HULSE:  Good morning again, Your Honors.  The

23      fundamental issue here is that what has become clear from

24      this set of bellwethers that we've been working up is the

25      fact that there is a medical record, which sometimes is an

1     ambiguous medical record, doesn't in fact tell you in many

2     cases that the Bair Hugger was in fact used.

3             And the way that you find that out is, for

4     example, as we saw in the Skaar case, you talk to the CRNA,

5     the registered nurse anesthetist who said in the deposition

6     oh, yeah, I would have marked this differently if I used it.

7     Our view point is that's the kind of diligence that needs to

8     happen at the front end.  It ought to happen before the case

9     is filed.  If it doesn't happen, it ought to happen before

10    the case goes into the Bair Hugger -- into the bellwether

11    pool.

12            So what our proposal does is it just modifies the

13    old process to put in a requirement that there either be a

14    medical record that's clear or a statement reflecting a

15    discussion between plaintiffs' counsel and the CRNA or the

16    anesthesiologist that confirms the Bair Hugger was in fact

17    used.

18            We, for our part, this premise that we haven't

19    produced documents on Bair Huggers at hospitals is just not

20    right.  For the pool, the initial, the last pool of

21    32 cases, we produced the information about all the Bair

22    Huggers that had been placed at those hospitals.

23            Gareis had a special case where we found through

24    deposition testimony that they had apparently piloted the

25    HotDog system, so we went back and did some additional

1    discovery there.  But we have provided that Bair Hugger

2    placement information for the cases in the prior bellwether

3    pool, and we would do that for this one too.

4            But, ultimately, just because a Bair Hugger is

5    there doesn't mean that it was used in this particular

6    surgery.  And I think we knew at the front end, but the

7    discovery has certainly confirmed that we're going to find

8    in lots of cases that the Bair Hugger wasn't used, and

9    neither side should be wasting time on those cases when that

10   could have been found out at the front end.

11           THE COURT:  So the purpose of bellwethers is to

12   find out whether there are some conclusions that can be

13   drawn that are generalizable.  So far the bellwether process

14   has been useful it seems in identifying a problem, which is

15   that the medical record with the check is an insufficient

16   indicator of whether the case does or does not belong in a

17   lawsuit against the Bair Hugger.

18           What, if any, suggestion do you have for how

19   further, you know, fair enough the plaintiffs would not have

20   known before we went into this bellwether process that that

21   was not, that that's not enough to show that you've actually

22   got a case against a particular product.  And they say, you

23   know what they say.

24           MR. HULSE:  Yes.

25           THE COURT:  So what's your suggestion on how we

1   get over that hump?

2          MR. HULSE:  Our suggestion is that there ought to

3   be a -- unless you really have an absolutely clear record --

4   there ought to be a final communication between plaintiffs'

5   counsel and in most cases it will be the CRNA.  You know, we

6   went through a discussion earlier in the case about

7   contacts, they have unfettered access to treaters and that

8   communication ought to happen.

9          And then what we're suggesting is part of the

10  process that we've proposed is that there be a statement,

11  that before the case can go into the bellwether pool, the

12  plaintiffs' counsel provide a statement that says we talked

13  to the CRNA on this date, and they confirmed based on

14  medical record or whatever other evidence that the Bair

15  Hugger was in fact used in this surgery.

16         THE COURT:  Okay.  Ms. Zimmerman, what would be

17  the problem with now that you know that what you were

18  relying on isn't good enough, what's the problem with

19  something along the lines that Mr. Hulse was just talking

20  about where there has to be at least a --

21         MS. ZIMMERMAN:  A statement --

22         THE COURT:  -- a communication, talk to somebody.

23         MS. ZIMMERMAN:  Sure.  So, Your Honor, I think,

24  first of all, we do have objective evidence that it was

25  used.  And what the deposition testimony has shown so far is

1     that the CRNA or the anesthesiologist from a case like

2     Gareis where the surgery was in 2010, they don't have an

3     independent memory of these patients.  And so what they do

4     is they go back and they look at the record, and they say,

5     oh, was there a check mark there?  And that's really what

6     ended up being the issue in Skaar, which incidentally was a

7     defense pick, and there was an indication on the sheet.

8                 THE COURT:  Okay.  I know you're saying that you

9     want us to revisit the ruling about you getting all the

10    defendant's sales records and everything, and let's just

11    assume for the moment that's not going to happen.  So what

12    else do you -- I mean in the absence of some other

13    suggestion, the defendant's suggestion seems pretty

14    reasonable to me.

15                Of course, it's not going to be iron clad but we

16    now know from the bellwether process is what you have been

17    relying on is insufficient, so we can't do that again.  So

18    what else can we do?

19                MS. ZIMMERMAN:  Well, I think that the burden in

20    terms of repopulating the bellwether pool, if what we're

21    going to do is get an affirmative statement from a CRNA or

22    the treating physician on 4200 cases prior to selecting 150

23    for potential bellwether considerations, it just seems from

24    a logistical standpoint not to be likely to be very easily

25    done.

```
1              MAGISTRATE JUDGE NOEL:  I don't think that's what

2        they're suggesting.  I think they're suggesting we come up

3        this 150 case randomly selected pool and then you folks go

4        through these steps, but one of the new steps would be

5        before a case gets into the bellwether actual pool, you need

6        to -- not you personally.

7              THE COURT:  Y'all.

8              MAGISTRATE JUDGE NOEL:  The lawyer for the client

9        whose case is proposed to be in the bellwether pool needs to

10       have some affirmative evidence that there was a Bair Hugger

11       used in the surgery.  And that doesn't strike me as being an

12       overly burdensome or unreasonable request in light of what

13       we have observed about the cases that were in the initial

14       bellwether.

15             MS. ZIMMERMAN:  Okay.  Recognizing where the Court

16       is going on this, I think that it seems to be kind of a

17       hybrid or headed towards a lone pine of sorts, which is

18       typically not done at this stage.  But certainly if we had

19       150 cases that are randomly selected by the Court to be

20       considered for the bellwether pool, and the Court directs

21       that we need to have, you know, the 134 law firms that are

22       presently involved in persecuting or prosecuting cases here

23       get -- "persecuting" mind slip -- get statements from the

24       CRNA, we will certainly do what the Court indicates.

25             I think that what we have learned from the
```

1   depositions is what they do is they go back to the records

2   that we're producing, and so you end up in kind of a circle.

3   Now, if it's an affidavit testimony and that gives the Court

4   and the defendant some additional comfort in terms of this

5   is certainly a case where the plaintiff was exposed, we'll

6   certainly comply with the Court's Orders in that regard.

7          We certainly are interested in avoiding this as

8   well.  I mean multiple trips to Idaho and to South Carolina

9   to try and get these things sorted out, you know, is not in

10  our interest or anyone's interest, and we don't want to

11  burden the Court unnecessarily either.

12         THE COURT:  Okay.  All right.  Well, this is not

13  on the order of a lone pine and that reflects a complete

14  misunderstanding of what we're saying.  You now know because

15  of the bellwether process that's gone through so far that

16  there are a number of cases that are being brought by

17  plaintiffs who do not have sufficient reason to know that

18  they actually have a product that was involved in their

19  surgery.  That's just a very basic fact.

20         And we have allowed all of these cases to go

21  forward on the simple check mark, and we now know that's not

22  enough.  And to say that 4500 cases should be allowed to

23  proceed now based on a check mark when everybody knows that

24  in reality that doesn't tell you anything is inconsistent

25  with the fundamental requirement that there be some good

1    faith belief on the part of a plaintiff that they've got a

2    case before they bring it.  It has nothing to do with a lone

3    pine order that has all this scientific business.  It's not

4    that at all.

5            And the bellwether process in order to keep

6    identifying issues that are going to be meaningful for

7    generalized use has to overcome that problem at least with

8    respect to the 150.  So --

9            MS. ZIMMERMAN:  We agree with that, Your Honor.

10           THE COURT:  Okay.  So when you talk amongst

11   yourselves, hopefully, there won't be so many areas of

12   disagreement now.  And when you do that, you might be able

13   to talk, I don't know, you can talk today some, I suppose,

14   but the sooner the better.

15           MS. ZIMMERMAN:  Absolutely, Your Honor.  With

16   respect to the six bellwethers that have been considered, we

17   know that there's one now, Skaar, where it was not in use.

18   The other ones to our knowledge are all cases that were

19   used.  There was one case where it was turned off early.

20   Well, we did certainly learn that from the CRNA.

21           But I think, respectfully, that the facts at least

22   with these six are not suggestive that there's a lot of

23   cases that have made it this far without any kind of

24   objective proof it's been used in their surgeries.

25           MR. BLACKWELL:  Kamke was another case, Your

1    Honor.

2         THE COURT:  We're not going to argue about all

3    these cases.  Well, you say it.

4         MAGISTRATE JUDGE NOEL:  I was going to say clearly

5    the initial bellwether process when it got down to actually

6    identifying cases was problematic because more than one case

7    it turns out either it wasn't used, it was turned off or

8    whatever the facts are.  And I think all we're saying is

9    that in coming up with a process to repopulate the

10   bellwether pool, the parties should focus on that.

11        And I think what Judge Ericksen is saying is that

12   that burden is more on the plaintiffs than on the

13   defendants, and it's not really about the defendant's sales

14   records or who they sell Bair Huggers to.  It's about

15   whether or not this plaintiff was exposed to the device that

16   is alleged to have caused his damages.  And I guess maybe

17   I'm not understanding what the burden is or why that's a

18   difficult thing for a plaintiff's lawyer to ascertain at the

19   front end of a lawsuit.

20        Now, having said that, I'm looking now at defense

21   counsel, and if you've got evidence or you know for sure you

22   never sold Bair Huggers to hospital X where this guy's

23   surgery is, you can't play in the weeds and wait for them to

24   put it on the list and then say, oh, by the way, guess what,

25   yep, not a Bair Hugger, 'cuz we never sold them a Bair

1    Hugger.

2              So if you've got evidence like that, that should

3    be part of the give and take in putting together the process

4    for repopulating the Bair Hugger bellwether list would be my

5    thought.

6              THE COURT:  That's exactly right.

7              MS. ZIMMERMAN:  We're in agreement with that.

8    Thank you.

9              THE COURT:  Okay.  We've got some plaintiff fact

10   sheet issues to discuss.  Mr. Hulse, is this you again?

11             MR. HULSE:  I believe so.  Mr. Parekh, do you want

12   to join me?

13             MAGISTRATE JUDGE NOEL:  It occurs to me, I don't

14   know if this is on the record, but we should probably tell

15   everybody Judge Leary is not here.  He's under the weather

16   and sent us a note to that effect yesterday, and I just want

17   to make sure the record is clear on that.

18             THE COURT:  Thank you.

19             MR. HULSE:  Yes, thank you, Your Honor.

20             So the Court has disposed of the pending motion

21   that we had.  This was just a small motion with respect to

22   three cases, though Mr. Parekh who represents the plaintiff

23   in one of those cases notes that almost immediately after we

24   filed our motion, he served a PFS for this case.  And we

25   don't, you know, while our overall principle is the

1    deadlines have to be met that, you know, a lot of time

2    passed before the PFS came in.  In this case, we don't

3    oppose the setting aside the dismissal.

4            THE COURT:  All right.  And that is 17CV2395,

5    docket, right?

6            MR. PAREKH:  Yes, Your Honor.  The Hecht case.

7            THE COURT:  All right.  Your motion is granted.

8            MR. PAREKH:  Thank you, Your Honor.

9            MR. HULSE:  The related issues, Your Honor, the

10   defendants have proposed a process to deal with the

11   plaintiffs who pass away after the filing of their lawsuits.

12   The plaintiffs, I think their position is they don't think

13   an order like this is necessary.  And let me tell you given

14   the background of rules that we have why we have proposed

15   this, and it's something that's been done in other MDLs, if

16   this is an okay time to talk about this issue.

17           So the issue is that Rule 25A, which provides the

18   process for suggestion of death, it doesn't actually provide

19   a date by which a suggestion of death needs to be filed.  So

20   what we've learned over the last several months is that we

21   have dozens and maybe perhaps a hundred plaintiffs who have

22   passed away since filing lawsuits, and they're just

23   lingering out there.

24           Many already had compliant PFSs, so there is no

25   way we would know through the PFS process that somebody has

1    passed away.  And if we weren't in an MDL, this would have

2    been addressed.  But because we are in an MDL without a

3    focus on these cases, these just sort of linger out there.

4    And if the plaintiffs don't tell us or file a suggestion of

5    death, we don't know about it.

6          So what we've been doing, the defendants, is when

7    we find out about one of these cases, we file a suggestion

8    of death.  So what we're proposing here is an Order that is

9    just copied from the *Aredia and Zometa MDL* from a few years

10   back, which would put in a requirement that plaintiffs file

11   a suggestion of death within 30 days of the death of their

12   client.  We think that's a reasonable requirement.  And

13   after that, we basically follow the process set by the rule.

14         The other thing that we've incorporated is the

15   Court's prior ruling.  This is on July 24th having to do

16   with the *Harkleroad* case.  That with the substitution, there

17   has to be a completed, verified PFS served on the defendants

18   too.  So we don't -- so the expectations are clear, and that

19   would just be taking that ruling from the *Harkleroad* case

20   and extending it across the MDL.

21         So I do have, if the Court is interested, copies

22   of the Order from the *Aredia and Zometa MDL* that this is

23   copied from.  The plaintiffs have indicated in meet and

24   confer correspondence that they are concerned that this

25   impinges on State Court rules and laws for appointment of

1    representatives and special administrators.  We don't see

2    that at all.  That is something that comes up when a motion

3    for substitution has been filed, then we have to be in

4    compliance with whatever the state rule is for being a

5    proper party to be substituted.  But there's nothing

6    contrary to state law in requiring plaintiffs to file a

7    suggestion of death within 30 days of their client's death.

8           MAGISTRATE JUDGE NOEL:  And that's the only

9    constraint in your proposal is the 30 days to file the

10   suggestion, then there's no other time limit or requirement

11   that things happen in any given time frame.

12          MR. HULSE:  The only other requirement that really

13   goes beyond the rules is this PFS requirement that we've

14   picked up from the Court's July 24th ruling in Harkel Road

15   case.

16          THE COURT:  Okay.  So it's Rule 25 straight up

17   with the insertion of the 30-day.

18          MR. HULSE:  Right.

19          THE COURT:  Okay.

20          MR. HULSE:  Which is a gap that maybe the rules

21   should fill at some point.

22          THE COURT:  I'll get right on it.  We meet in -- I

23   guess we don't meet until next year.

24          MR. HULSE:  It's a funny rule.

25          THE COURT:  Have you had this problem in other

1    case s?

2          MR. HULSE:  There is a bit of an ambiguity in it

3    too in the Court's interpretation of what the word "service"

4    means in this rule too.  I know Judge Noel is familiar with

5    this issue.  He's confronted it before with some courts

6    taking the viewpoint that filing the suggestion of death and

7    service through ECF meets the service requirement.

8          Other courts have said you actually need to go and

9    find out anybody, find anybody who is a potential heir or

10   substitute plaintiff and actually serve them according to

11   state law rules, so there's a split of opinion on that.

12         THE COURT:  Okay.  Is there any objection to this?

13         MS. ZIMMERMAN:  Your Honor, the plaintiffs'

14   primary objection is with respect to the 30 days.  I mean,

15   unfortunately, the reality is a lot of times these people

16   will die and their family members may or may not have any

17   idea that they have a lawsuit pending.

18         So a lot of times the lawyers aren't going to be

19   advised within 30 days of the actual death.  They've got a

20   lot to attend to during that time.  So we would suggest that

21   it should be 30 days from the time that the lawyers are

22   provided notice about the death because it's just, it's an

23   onerous burden when lawyers don't necessarily know for many

24   months whether their next of kin are sorting through their

25   effects and trying to figure out what other paperwork needs

1    to be tended to.

2            So with that caveat, we recognize there is a duty

3    to provide a notice of suggestion of death upon the record

4    and whether it's service, as Mr. Hulse indicated, I don't

5    think that we're particularly concerned.  The concern is

6    more it takes a while sometimes for the next of kin to

7    notify the lawyers.  They may not know that they have a case

8    pending.  So within 30 days of the lawyers knowing about it,

9    would be our request.

10           THE COURT:  What's the longest State Court time

11   frame that's allowed?  Because State Court, there is a

12   requirement that somebody take over the lawsuit in a

13   reasonable period of time.  And it sounds like you've had

14   occasion to become familiar with the various state laws so

15   what's the --

16           MS. ZIMMERMAN:  I wish I could tell you what the

17   longest is across the country.  Usually, what I run into is

18   this reasonable time kind of language so that lawyers can't

19   just sit back and not do anything about it.  And the same

20   thing goes for the next of kin, they do need to be

21   diligently working on handling the affairs and the effects

22   afterwards.

23           THE COURT:  There's not even a reasonable time

24   requirement in Rule 25, is there?

25           MS. ZIMMERMAN:  Not that I'm aware of.

```
 1              MAGISTRATE JUDGE NOEL:  I think where Judge
 2    Ericksen is going -- maybe I'm wrong.
 3              THE COURT:  No, you're right.
 4              MAGISTRATE JUDGE NOEL:  Instead of 30 days from
 5    when the lawyer learns, what if we just extended the 30 days
 6    to some longer period of time?  Would that be another way to
 7    fix your concern?
 8              MS. ZIMMERMAN:  That's a good question, Your
 9    Honor.  I'd have to check and see if there was some kind of
10    outside back stop.  If there is some state that says you get
11    a year or something like that.  I'm not aware of that.  As I
12    stand here, I think a year seems like a long time.  I would
13    hope that people would be able to get lawyers notice within
14    a couple of months.  Perhaps we can research to see if
15    there's some sort of state statute we would be running afoul
16    of and otherwise propose something to Your Honors.
17              THE COURT:  Couldn't we do the 30 days, and then
18    if it turns -- so that triggers something, so then the
19    family gets notice.  And if it turns out that they want to
20    take action, then you can come back and try to get it
21    re-upped, just like we did with this --
22              (Court conferring off the record.)
23              MR. HULSE:  I think I could add something to this
24    sort of.  All, of course, a suggestion of death is just the
25    statement on the record that the plaintiff has died.  It
```

1    triggers the 90 day period for substitution.  The advisory

2    committee notes make clear that the Court can grant for good

3    cause an extension of that 90-day period.  So if basically

4    things are dragging out in State Court with the appointment

5    of the personal representative, counsel can come in and ask

6    for an extension.

7           MAGISTRATE JUDGE NOEL:  That's not the concern.

8    And I understand the concern that Ms. Zimmerman raises is

9    that the lawyer who represents the plaintiff who is now dead

10   may not know that guy is dead for many more than 30 days

11   after he or she has died, and that that's the piece of your

12   proposal that's being attacked is that if I were to die and

13   I have a lawsuit pending, my wife may not even know I have a

14   lawsuit pending.  And --

15          THE COURT:  She wouldn't even know you're dead.

16   Get a different example.

17          MAGISTRATE JUDGE NOEL:  I'm just going to let that

18   one go.  The point is that the 30 days is too short a

19   window, 30 days from the date of death is too short of a

20   window for a lawyer to get that suggestion of death on the

21   record.

22          MR. HULSE:  Here's a thought about that, and I'm

23   sympathetic to that.  My suggestion would be to make it

24   60 days instead of 30.  And here's the reason why I still

25   think it should be based on the death and not the notice.

```
 1              If we weren't in an MDL, then the plaintiffs'
 2    counsel would be in more regular contact with their clients.
 3    Here, because we're in an MDL, if we don't require
 4    plaintiffs' counsel to be checking in from time to time,
 5    we're just going to end up in the same situation where
 6    they're not in contact for a year with their clients, and we
 7    really haven't fixed the problem.  So we'd be fine with
 8    60 days instead of 30.  That gives a window for plaintiffs'
 9    counsel to check in bimonthly with their clients, which
10    seems like a reasonable expectation to us.
11              THE COURT:  There are ways to monitor.
12              MS. ZIMMERMAN:  Yes, I mean there are a number of
13    those --
14              THE COURT:  We can put a mirror over there or you
15    can take their blood pressure.
16              MR. HULSE:  We'll check 80 percent of the cases.
17              MS. ZIMMERMAN:  Mr. Assaad offers a good point,
18    who do we call because we don't, if the plaintiff is dead,
19    but.
20              MR. HULSE:  In the PFS, of course, if you can't
21    reach your plaintiff for a period of time, then it probably
22    is time to call any of those other people who are listed in
23    the PFS, the family, or spouses.  Many of these spouses, of
24    course, have a loss of consortium claim.  So it doesn't
25    seem, again, it doesn't seem like anything other than the
```

1    regular expectation of diligent representation of your

2    clients.

3            MS. ZIMMERMAN:  Well, I think the plaintiffs

4    respect that, and I think that we should afford these

5    families the opportunity to get with their lawyers and make

6    sure that we can go through the procedural requirements.

7    But I don't think that there's any prejudice to the

8    defendants, particularly if it's not a case that's presently

9    being worked up for trial, if they get a little bit of extra

10   time to gather paperwork.

11           THE COURT:  Hold on, let's just think.

12           (Court conferring.)

13           THE COURT:  All right.  It will be 90 days from

14   the date of death.  Plaintiffs' counsel files a suggestion

15   of death following which the Rule 25 procedures kick in.

16           MS. ZIMMERMAN:  Thank you, Your Honor.

17           MR. HULSE:  And, Your Honor, as far as our

18   Proposed Order?

19           THE COURT:  It will be just like that only it will

20   be 90 days.

21           MR. HULSE:  And should we submit one that makes

22   that revision?

23           THE COURT:  No, we can do it.

24           MR. HULSE:  Okay, we can do it.

25           MAGISTRATE JUDGE NOEL:  Sorry for the next mixed

1    signal.  I was saying yes.

2              THE COURT:  I misspoke.  I misspoke.

3              MAGISTRATE JUDGE NOEL:  No, no, no, you spoke and

4    your word is the Order.  So we can substitute 30 for 90 or

5    90 for 30.

6              THE COURT:  I was just showing off that we were

7    able to do that.

8              MR. HULSE:  The language is we'd like the PTO that

9    goes up on the website and everything, so everybody could

10   see it and so --

11             THE COURT:  Could you just hold on for a second?

12             MR. HULSE:  Of course.

13             (Court conferring.)

14             THE COURT:  If you're willing to do it, would you

15   do it?

16             MR. HULSE:  Of course.

17             THE COURT:  Thank you.  Okay.  Done.  All right.

18   What about these other ones?

19             MR. HULSE:  I assume you're referring to PFSs,

20   Your Honor.

21             THE COURT:  Yes.

22             MR. HULSE:  There's nothing else to be decided

23   today.  We'll have a motion for the next status conference

24   as the procedure goes that probably involves quite a few

25   more cases, but no other items for decision today, at least

 1    not from our perspective.

 2              THE COURT:  Okay.  And Ms. Zimmerman, I don't know

 3    who the people are behind you but they seem very unhappy

 4    about something, so maybe you want to consult with them.

 5              MS. ZIMMERMAN:  The folks at the counsel table?

 6              THE COURT:  No, the people behind you.  Did they

 7    want to be heard or something?

 8              MS. ZIMMERMAN:  Does anybody have any PFS issues

 9    that they need to have addressed?  No.

10              MR. HULSE:  Your Honor, my apologies, it slipped

11    my mind.  We do have the Houseman case motion to dismiss.

12    We'd be willing to just have that taken on the papers.  I

13    have nothing to add beyond what's in our brief.

14              THE COURT:  Okay.  Dead person.

15              MS. ZIMMERMAN:  I don't know if Mr. Webb is on the

16    phone and wants to be heard.  I have not been told that.

17              THE COURT:  Mr. Webb, are you on the phone?

18    Mr. Web?

19              MS. CORDRAY:  This is Abby Cordray.  I'm his

20    paralegal.  Seth is not on the phone, but I am representing

21    for him.

22              THE COURT:  Could we have your name and spelling,

23    please?

24              MS. CORDRAY:  It's A-B-B-Y.  And the last name is

25    C-O-R-D-R-A-Y.

1          THE COURT:  And you're an attorney representing?

2          MS. CORDRAY:  No, I'm actually his paralegal.

3          THE COURT:  Okay.

4          MAGISTRATE JUDGE NOEL:  But you work with the

5     lawyer that represents Ms. Houseman and/or her estate?

6          MS. CORDRAY:  Correct, yes.

7          MAGISTRATE JUDGE NOEL:  Okay.  And Mr. Hulse for

8     the defendant has suggested that we can just decide the

9     motion to dismiss that case on the papers without any

10    further oral argument.  Do you think the lawyer you work

11    with would be agreeable to that?

12         MS. CORDRAY:  Yes, I believe so.

13         THE COURT:  All right.  Thank you very much.

14    We'll do that.

15         MS. CORDRAY:  You're welcome.

16         THE COURT:  So the update on the number, nothing

17    to be added there, I don't believe.

18         MS. ZIMMERMAN:  Nothing to add, Your Honor.  We

19    did have Dave Szerlag's office did a census, and it does

20    include not just 4,116 plaintiffs but also represented by

21    134 law firms, and I thought the Court might be interested

22    to know that.

23         THE COURT:  Thank you.

24         Okay.  There's the Ramsey County cases.  Somewhere

25    there's an -- let me just go through these in order.  The

```
 1    Rodriguez in Illinois.  The trial is set for next summer.

 2              MS. LEWIS:  Yes, Your Honor.  Deborah Lewis for

 3    3M.

 4              THE COURT:  And you've got a trial on the

 5    Rodriguez matter scheduled for July 30th?

 6              MS. LEWIS:  Yes.

 7              MAGISTRATE JUDGE NOEL:  You need a microphone.

 8              MS. LEWIS:  Good morning, Your Honors.  Deborah

 9    Lewis for 3M.  Yes, the Rodriguez matter is set in Lake

10    County, Illinois, this summer.  There is no other scheduled

11    dates beyond the trial setting at this point.

12              THE COURT:  Well, you've got a status conference

13    for January, right?  It says, "next status conference

14    scheduled for January 23rd."

15              MS. LEWIS:  I, unfortunately, don't have those

16    full dates in front of me but --

17              MR. HULSE:  That's correct.

18              MS. LEWIS:  -- yes.

19              THE COURT:  All right.  Interesting.  Do you think

20    that's a date certain for trial?

21              MS. LEWIS:  I don't know that it's not.  We've not

22    had a court hearing beyond the motion to dismiss.

23              THE COURT:  Okay.  Thank you, Ms. Lewis.

24              MS. LEWIS:  Thank you.

25              MR. HULSE:  I can add one maybe more thing on
```

1    Rodriguez.  So Your Honors, while that is a date certain

2    right now on the Court's calendar, based on my discussion

3    with plaintiff's counsel, it's not his desire to be out in

4    front of the MDL.  So nothing binding, no agreement, but I

5    think there is a good probability that the case will

6    ultimately, the trial date will fall farther back.

7                 THE COURT:  Okay.  All right.  Canada, no

8    additional activity since we last spoke.

9                 Discovery, nothing to do about that right now I

10   don't believe.

11                Is there anything else to discuss before we go

12   back and talk about the Gareis fact specific dates?

13                MR. BLACKWELL:  Only, Your Honors, if I might be

14   excused from the informal discussion.  Mr. Hulse and

15   Ms. Ahmann will go.  I've been parachuted in to try a case

16   in LA the first week in January, and I've got a lot to

17   learn, and so I'm anxious.

18                THE COURT:  Well.

19                MAGISTRATE JUDGE NOEL:  How did you arrange that

20   LA thing in January?

21                MR. BLACKWELL:  The Honolulu thing in November was

22   even better.

23                THE COURT:  Maybe you just want to come back for a

24   moment.

25                MR. BLACKWELL:  All right, I will, Your Honor.

1        THE COURT:  Anybody on the phone have anything

2    that they want to be heard on at this point?

3        MR. BURKE:  Your Honor, this is Daniel Burke from

4    Bernstein Liebhard.  May I be heard?

5        THE COURT:  Yes.

6        MR. BURKE:  Hi.  So your Order, the Court's Order

7    dated December 18th concerning fact sheets with respect to

8    my client Rhonda Morgan notes that there was no opposition

9    filed to that motion.  And I think what happened was the

10   Court confused or mistakenly substituted our opposition for

11   Morgan with the Order with respect to Kimberly Charles.  And

12   I just wanted to clarify the record that we did in fact

13   serve and file an opposition to the motion.

14       And I understand that the Court is going to

15   dismiss it with prejudice, but I just wanted for purposes of

16   my client to note on the record that we did in fact oppose

17   the motion.

18       THE COURT:  I apologize for that.  We'll get that

19   fixed.

20       MR. BURKE:  Thank you, Your Honor.

21       THE COURT:  Anybody else?  All right.  Thank you.

22   We're in recess.

23              (Court adjourned at 10:45 a.m.)

24

25                        *     *     *

```
 1

 2                           REPORTER'S CERTIFICATE

 3

 4              I, Maria V. Weinbeck, certify that the foregoing is

 5       a correct transcript from the record of proceedings in the

 6       above-entitled matter.

 7

 8                   Certified by:  s/ Maria V. Weinbeck

 9                                  Maria V. Weinbeck, RMR-FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```