UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Products Liability Litigation<br><br>This Document Relates To:<br>All Actions | MDL No. 15-2666 (JNE/FLN)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING PLAINTIFFS' SUBPOENA TO W.J. MINKOWYCZ, Ph.D.** |

On February 15, 2018, after the close of bellwether discovery and months after the close of general causation discovery, Plaintiffs served a subpoena on W.J. Minkowycz, Ph.D. (a third party without legal counsel) seeking documents and a deposition regarding an article published last August by Defendants' CFD expert, Dr. John Abraham. Dr. Minkowycz is the editor-in-chief of the Journal of Numerical Heat Transfer, in which Dr. Abraham's article was published. Plaintiffs did not seek leave from this Court to serve the subpoena, and have refused to respond to multiple requests for the basis on which they claim entitlement to this untimely discovery. The subpoena violates this Court's scheduling orders and the Federal Rules, and Defendants hereby move this Court for a protective order requiring Plaintiffs to withdraw their subpoena.

## ARGUMENT

Dr. Abraham has submitted general causation and case-specific expert reports that rebut Plaintiff's CFD simulations.[1] Dr. Abraham published the CFD and experimental

---

[1] The Court will recall that Dr. Said Elghobashi provided the "boundary conditions"—air temperature, air velocity, the locations of "inlets" to the room, and other details—to another

findings from his general causation report in an article entitled "Comprehensive Review and Study of the Bouyant Air Flow Within Positive-Pressure Hospital Operating Rooms," published in the Journal of Numerical Heat Transfer.  The article does not alter any of the opinions Dr. Abraham has offered in these proceedings.

Plaintiffs learned that Dr. Abraham's article had been accepted for publication at his July 20, 2017 general causation deposition, and in fact questioned Dr. Abraham about it then.  (*See* Pl. Resp. Opposing Defendants' Motion to Take Discovery Concerning New Augustine Article Relied Upon by Plaintiffs and Their Experts (ECF No. 659) at 5 (confirming that Plaintiffs learned of Dr. Abraham's article on July 20, 2017).)  Yet they did not seek discovery relating to the article during the discovery periods set forth in this Court's scheduling orders.  They now have demanded that Dr. Minkowycz produce "any and all documents and communications" related to Dr. Abraham's article and sit for a deposition that Plaintiffs unilaterally scheduled for March 7.  (*See* Declaration of Monica L. Davies ("Davies Decl."), Ex. 1.)  Plaintiffs failed to seek leave from this Court before serving their untimely subpoena, and have ignored  Defendants' repeated  inquiries as to their legal authority for seeking discovery from a third party after the close of discovery.

Plaintiffs' belated service of this subpoena stands in stark contrast to the position they took in August 2017, when Defendants sought leave under the Federal Rules to subpoena third parties in connection with an article published by Scott Augustine.  At that

---

researcher, Dr. Sourabh Apte.  Dr. Apte then generated CFD models using his proprietary software code and the "Stampede" supercomputer at the University of Texas at Austin.  *See generally* Defendants' Motion to Exclude the Case-Specific Opinions and Testimony of Said Elghobashi, D.Sc. in *Gareis v. 3M*, et al., 16-cv-4187, ECF No. 47.

time, Plaintiffs strongly objected to Defendants' request, claiming that the Court should not grant leave for additional discovery after the discovery period had ended absent "extraordinary circumstances." (*See* ECF No. 659 at 5.) Plaintiffs' counsel specifically referred to Dr. Abraham's article as an example of how "[s]tudies, articles, and other literature will continue to be published beyond the discovery period," arguing that discovery regarding such matters is not appropriate unless "the new material is being used as important support for an expert's opinion" or "substantially alters an expert's opinion or a party's theory of the case." (*Id.*) Although Dr. Abraham's article was published that same month, Plaintiffs did not request leave to pursue further discovery of it—tacitly acknowledging that the publication did not substantially alter the opinions disclosed in Abraham's general causation report.

More importantly, Plaintiffs' service of the belated subpoena disregards this Court's prior orders and the Federal Rules of Civil Procedure. This Court has already ruled that "late third-party discovery requests and extra depositions must stop." (Order, ECF No. 682, at 4.) If Plaintiffs believed they could show good cause why an exception should be made for the late third-party discovery request and extra deposition they now seek, they should have come before the Court. Instead, they are attempting to unilaterally reopen discovery and circumvent the Federal Rules of Civil Procedure.

This Court and other courts in this District have consistently found a protective order to be an appropriate remedy under such circumstances. *See*, *e.g.*, *Minnesota Supply Co. v. The Raymond Corp.*, No. Civ. 99-832 JRT/FLN, 2002 WL 31898162, at *1-2 (D. Minn. Dec. 27, 2002) (protective order prohibiting plaintiff from "serving or enforcing subpoenas

3

to non-parties" was appropriate where plaintiff served subpoena after discovery cut-off in "an improper attempt to circumvent the scheduling order") (Noel, J.); *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997) (granting motion prohibiting defendant from serving or enforcing subpoenas served after discovery closed); *see also Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077-78 (D. Minn. 2015) (plaintiff could not use his untimely discovery responses as evidence where he failed to seek relief from deadlines under the scheduling order and simply served the responses after the discovery cut-off; "[t]he Local Rules require parties to strictly comply with scheduling orders") (Ericksen, J.). This Court should likewise enter a protective order here.

Although Plaintiffs have not shared their rationale for serving the subpoena, it appears that they intend to impugn Dr. Minkowycz's decision to publish Dr. Abraham's article and his handling of the review process prior to publication. Notably, however, Plaintiffs have refused to allow discovery into the publication and peer-review of their experts' article, "Effect of Heated-Air Blanket on the Dispersion of Squames in an Operating Room," published this January.[2] Dr. Elghobashi's article, which Dr. Apte submitted to the Journal, contains a glaring omission—there is no mention that the work reported in the article was funded entirely by Plaintiffs' counsel, who clearly have a vested interest in the outcome of the research. At the end of the article, the authors state they "have no conflicts of interest to declare." (*See* Elghobashi Deposition in *Gareis v. 3M*,

---

[2] Plaintiffs' testifying expert Dr. Elghobashi is the senior author of the paper; Plaintiffs' consulting expert Dr. Apte is the corresponding author; and the remainder of the authors are Dr. Apte's students.

4

Davies Decl. Ex. 2, at 38:8-25.)  Because Dr. Elghobashi did not himself submit the article, he does not know what conflict information, if any, was provided to the Journal.  (*Id.*)

In a deposition subpoena directed to Dr. Elghobashi, Defendants requested the same categories of documents Plaintiffs now seek from Dr. Minkowycz.  Plaintiffs refused to produce anything, however, claiming that the documents are protected because they relate to "the peer review process."  (*See* Davies Decl., Ex. 2 at 15:22-16:6 (Responding to Defendants' request for communications with journal editors regarding the article, Plaintiffs' counsel said the requested documents "will not be produced.").)  If Plaintiffs are allowed to reopen general causation discovery and proceed with the deposition of Dr. Minkowycz, Defendants must likewise be allowed to pursue discovery concerning Dr. Apte's submission of Dr. Elghobashi's article.  At a minimum, this would include production of the same categories of documents Plaintiffs seek from Dr. Minkowycz, and a corresponding deposition of Dr. Apte to discover the facts and circumstances behind his decision to keep his journal in the dark about who funded the work, to the tune of at least $120,000.

## **CONCLUSION**

Defendants respectfully request that this Court enter a protective order requiring Plaintiffs to withdraw their belated and improper subpoena to Dr. Minkowycz.  To the extent Dr. Minkowycz has been forced to spend time preparing to respond to Plaintiffs' subpoena, Plaintiffs should be ordered to compensate him for his time.  Plaintiffs have flouted this Court's scheduling orders and the Federal Rules, and they have not

demonstrated good cause to reopen discovery such that Dr. Minkowycz should be compelled to produce documents and sit for deposition.

Dated: February 26, 2018               Respectfully submitted,


*s/ Monica L. Davies*
Jerry W. Blackwell (MN #186867)
Mary S. Young (MN #0392781)
Benjamin W. Hulse (MN #0390952)
Monica L. Davies (MN #0315023)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
         myoung@blackwellburke.com
         bhulse@blackwellburke.com
         mdavies@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company And Arizant Healthcare Inc.**