# EXHIBIT 1

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Minnesota

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming <br> Products Liability Litigation <br> *Plaintiff* <br> v. <br> <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Civil Action No.   MDL No. 15-2666

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                   W.J. Minkowycz, Ph.D.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  225 West Wacker Drive, #1515 <br> Chicago, IL 60606 | Date and Time: <br> 03/07/2018 9:00 am |
|---|---|

The deposition will be recorded by this method:   Video & Stenographic

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: Any and all documents and communications related to the article "Comprehensive Review and Study of the Bouyant Air Flow Within Positive-Pressure Hospital Operating Rooms.", ISSN 1040-7782 (Print) 1521-0634 (Online)

The following provisions of Fed. R. Civ. P. 45 are attached -- Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   02/15/2018

| CLERK OF COURT | OR | |
|---|---|---|
| _____ <br> *Signature of Clerk or Deputy Clerk* | | _____ <br> *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Plaintiffs
_____ , who issues or requests this subpoena, are:

Genevieve M. Zimmerman, 1616 Park Avenue, Minneapolis,MN 55404
gzimmerman@meshbesher.com    (612) 339-9121

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   MDL No. 15-2666

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

      I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

      ❏  I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____  on *(date)* _____ ; or

      ❏  I returned the subpoena unexecuted because: _____

_____

      Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

      I declare under penalty of perjury that this information is true.

Date: _____

                                  _____
                                        *Server's signature*

                                  _____
                                        *Printed name and title*

                                  _____
                                        *Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 2

Page 2

1                UNITED STATES DISTRICT COURT

2                    DISTRICT OF MINNESOTA

3

4

5    In Re Bair Hugger Forced          )

6    Air Warming Products Liability    )

7    Litigation                        )

8    -----------------------------------)

9

10   LOUIS C. GAREIS

11                  PLAINTIFF

12   VERSUS                            16-CV-4187

13

14   3M CO., ET AL.

15                  DEFENDANTS

_____

16

17            VIDEOTAPED DEPOSITION

18      SAID ELGHOBASHI, M.Sc., Ph.D., D.Sc.

19              Irvine, California

20          Saturday, February 10, 2018

21

22

23   Reported by:

24   JENNY S. BOOKER, CSR NO. 9237, RPR, CLR

25   JOB NO. 137518

Page 15

1  object to this request to the extent that it invades
2  upon the peer review process, and are not providing
3  documents in that regard.
4        With respect to Request No. 11, which calls
5  for any other documents, photographs, or other
6  material not specifically listed above on which the
7  deponent relies for his opinions, plaintiffs are
8  essentially reproducing the photographs that were
9  taken by Mr. Gordon and others on behalf of
10 defendants during the course of the hospital
11 inspection in South Carolina in December. And so
12 there are documents that will be produced on the
13 flash drive today, and those are the only documents
14 responsive to this.
15       Request No. 12 asks for all written
16 communications, including e-mails between the
17 deponent and the following study authors: Dr. Apte,
18 Dr. He, Dr. Pakseresht, and Dr. Karra. Again,
19 plaintiffs' counsel object to the extent that this
20 invades on the peer review process and relevance and
21 are not producing documents in this regard.
22       Turning to Request No. 13 in the subpoena:
23 All communications with the journal editors and
24 peer reviewers concerning the article, "Effect of
25 Heated-Air Blanket on the Dispersion of Squames

Page 16

1  in an Operating Room," plaintiffs' counsel restate
2  their objection with respect to the peer review
3  process and the Ingelfinger rule that has been
4  raised throughout the course of Dr. Elghobashi's
5  testimony and the rest of the litigation in this
6  case. Those documents will not be produced.
7        With respect to No. 14, the subpoena calls
8  for any study, test, trial, experiment, research,
9  and/or data analysis the deponent sponsored,
10 conducted, performed, proposed, attempted,
11 considered, discussed, planned, arranged, and/or
12 performed on the Bair Hugger warming system or
13 filter for use with any Bair Hugger warming system,
14 including any work in progress. We would refer
15 counsel to the documents being produced on the
16 flash drive this morning and those previously
17 produced in connection with the CFD done on the
18 model of the 700 series.
19       And then finally with respect to Request
20 No. 15, which requests all compilations of
21 electronic data and computer files created in
22 connection with any computational fluid dynamics
23 analysis of the Bair Hugger patient warming system
24 in which the deponent has participated since
25 June 15th of 2017, plaintiffs' counsel would refer

Page 17

1  defense counsel to both the previous productions and
2  the flash drive that is being produced this morning.
3        And with that, I'll turn the deposition
4  back over to you.
5        MR. GOSS: Okay. I will take the flash
6  drive, please. And because we don't have anything
7  on paper, I may need to take a break to print a
8  couple of things off --
9        MS. ZIMMERMAN: That's fine. Absolutely.
10       MR. GOSS: -- of it. Okay.
11       A couple things in response. One is I --
12 so I understand that there are new CFD calculations
13 and videos being provided on the flash drive. It's
14 the defendants' position that all work was to be
15 completed in connection with Dr. Elghobashi's expert
16 report in the Gareis matter by the -- November 27th
17 of 2017. And so on that basis, we're reserving our
18 right to review the material with our expert
19 witness, perhaps provide a rebuttal report, and
20 perhaps come back and ask Dr. Elghobashi more
21 questions if we need to. We're going to do our best
22 to get our questions answered as much as possible
23 today. But by proceeding with the deposition, we're
24 not waiving any of our rights.
25       And then just for -- just for clarification,

Page 18

1  the counsel's basis for not producing any materials
2  relating to peer review is the Ingelfinger rule?
3        MS. ZIMMERMAN: And relevance. But, yes.
4        MR. GOSS: And relevance. Okay.
5        MR. ASSAAD: And work product.
6        MS. ZIMMERMAN: And work product, yes.
7        MR. GOSS: And work product?
8        MR. ASSAAD: Yeah.
9        MS. ZIMMERMAN: For some of them, yeah.
10       MR. GOSS: Okay. And I hate to do this
11 because we haven't even started, but I think there
12 are a couple of things that I'd like to see on here
13 and perhaps print out that will actually make the
14 questioning go a little bit faster. So if we can
15 take a short break so that I can print these things,
16 I'd really appreciate it. Thank you.
17       THE VIDEOGRAPHER: Off video at 12:20 p.m.
18 (Recess.)
19       THE VIDEOGRAPHER: Back on video at
20 12:28 p.m.
21       MR. ASSAAD: And before we begin, I just
22 wanted to add something on the record. It was --
23 additional to the response to the subpoena, I'd just
24 like to note that the subpoena production date is
25 today, February 10th, 2018, at noon, for all the

## Page 35

1  record clear so we both could be on the same page
2  here, Mr. Goss. The report here is basically the
3  same report he did in the 750 that you guys asked on
4  general causation.
5      If you want to go and ask him questions on
6  the report, I have no problem with that, but I get
7  the same courtesy with respect to Abraham's report
8  when I take his deposition on Wednesday. If we
9  could agree to that, I'll continue any questions on
10  this report. If you can't agree, then we're going
11  to run into some issues here that we're going to
12  have to either contact the Court or -- later at a
13  point in time, or just --
14      MR. GOSS: Okay.
15      MR. ASSAAD: -- ask -- I'm going to tell
16  him not to answer any questions because this is
17  identical to the 750 report.
18      MR. GOSS: Well, that's what I wanted to
19  ask him.
20  BY MR. GOSS:
21      Q. Because there are some differences between
22  your report and the published article; correct?
23      A. When -- when you get comments from the
24  reviewers, they will ask you to add something they
25  don't understand. So there could be, yes.

## Page 36

1      Q. Okay. And so what I want to focus my
2  questioning on today --
3      A. Yes.
4      Q. -- is what's different from the original
5  report in order to minimize going over things that
6  were discussed during the last deposition.
7      MR. ASSAAD: And I assume I'll get the same
8  courtesy?
9      MR. GOSS: If you want to ask Dr. Abraham
10  about changes in his paper from his original report,
11  then yes.
12      MR. ASSAAD: Okay.
13      MR. GOSS: Okay.
14  BY MR. GOSS:
15      Q. All right. Have you -- have you ever met
16  either of the first three authors on this paper?
17      A. No.
18      Q. Okay. They are all students of Dr. Apte's;
19  correct?
20      A. Correct.
21      Q. Okay. And you intend to rely on this
22  article for your testimony and opinions at trial;
23  true?
24      A. If needed. I mean --
25      Q. Okay.

## Page 37

1      A. -- I have not been in trials before, so I
2  have no idea --
3      Q. I understand.
4      A. -- what --
5      Q. I understand.
6      So the manuscript was not submitted to any
7  other journals, to your knowledge; correct?
8      A. Correct.
9      Q. So it was not rejected by any other
10  journals; true?
11      A. Correct.
12      Q. Okay. Do you know any of the editors at
13  the International Journal of Numerical Methods in
14  Biomedical Engineering?
15      A. None.
16      Q. Okay. Before the article was submitted,
17  did you review the journal's submission guidelines?
18      A. Briefly.
19      Q. Okay.
20      (Exhibit 3 marked.)
21      THE WITNESS: Thank you.
22  BY MR. GOSS:
23      Q. Exhibit 3 is something I printed off the
24  website for the International Journal for Numerical
25  Methods in Biomedical Engineering.

## Page 38

1      Do you see where it says "Author
2  Guidelines" about halfway down the page?
3      A. Oh, yes.
4      Q. Okay. Does this look like what you would
5  have reviewed prior to the submission of the article
6  to the journal?
7      A. Yes.
8      Q. Okay. Under "Author Guidelines," it says
9  "Manuscript Submission." And the second paragraph
10  says: "Authors are requested to disclose any
11  conflict of interest, and these must be declared
12  during manuscript submission."
13      A. Correct.
14      Q. Okay. Do you know what information, if
15  any, Dr. Apte provided to the journal regarding any
16  conflict of interest related to this article?
17      A. No.
18      Q. And then if you will turn to Page 34 of the
19  article.
20      Do you see where it says "Conflict of
21  Interest"?
22      A. Right. Yes.
23      Q. Okay. And it says: "Authors have no
24  conflicts of interest to declare."
25      A. Correct.