# EXHIBIT 1

```
 1                  UNITED STATES DISTRICT COURT
 2                     DISTRICT OF MINNESOTA
 3   ---------------------------------------------------------
                                      )
 4                                    )
      In Re: Bair Hugger Forced Air   )  File No. 15-MD-2666
 5    Warming Devices Products        )  (JNE/FLN)
      Liability Litigation            )
 6                                    )  December 21, 2017
                                      )  Minneapolis, Minnesota
 7                                    )  Courtroom 12W
                                      )  9:52 a.m.
 8                                    )
                                      )
 9   ---------------------------------------------------------
10             BEFORE THE HONORABLE JOAN N. ERICKSEN
                UNITED STATES DISTRICT COURT JUDGE
11
12              THE HONORABLE FRANKLIN L. NOEL
                 UNITED STATES MAGISTRATE JUDGE
13
14                      (STATUS CONFERENCE)

15   APPEARANCES

16   FOR THE PLAINTIFFS:
                                 MESHBESHER & SPENCE
17                               Genevieve M. Zimmerman
                                 1616 Park Avenue
18                               Minneapolis, MN  55404

19
                                 CIRESI CONLIN
20                               Michael Sacchet
                                 225 South 6th Street
21                               Suite 4600
                                 Minneapolis, MN
22

23                               KENNEDY HODGES, LLP
                                 Gabriel Assaad
24                               4409 Montrose Blvd
                                 Suite 200
25                               Houston, TX  77006
```

MARIA V. WEINBECK, RMR-FCRR
(612) 664-5109

1  discovery there.  But we have provided that Bair Hugger
2  placement information for the cases in the prior bellwether
3  pool, and we would do that for this one too.
4           But, ultimately, just because a Bair Hugger is
5  there doesn't mean that it was used in this particular
6  surgery.  And I think we knew at the front end, but the
7  discovery has certainly confirmed that we're going to find
8  in lots of cases that the Bair Hugger wasn't used, and
9  neither side should be wasting time on those cases when that
10 could have been found out at the front end.
11          THE COURT:  So the purpose of bellwethers is to
12 find out whether there are some conclusions that can be
13 drawn that are generalizable.  So far the bellwether process
14 has been useful it seems in identifying a problem, which is
15 that the medical record with the check is an insufficient
16 indicator of whether the case does or does not belong in a
17 lawsuit against the Bair Hugger.
18          What, if any, suggestion do you have for how
19 further, you know, fair enough the plaintiffs would not have
20 known before we went into this bellwether process that that
21 was not, that that's not enough to show that you've actually
22 got a case against a particular product.  And they say, you
23 know what they say.
24          MR. HULSE:  Yes.
25          THE COURT:  So what's your suggestion on how we

1  get over that hump?

2  MR. HULSE: Our suggestion is that there ought to
3  be a -- unless you really have an absolutely clear record --
4  there ought to be a final communication between plaintiffs'
5  counsel and in most cases it will be the CRNA. You know, we
6  went through a discussion earlier in the case about
7  contacts, they have unfettered access to treaters and that
8  communication ought to happen.

9  And then what we're suggesting is part of the
10 process that we've proposed is that there be a statement,
11 that before the case can go into the bellwether pool, the
12 plaintiffs' counsel provide a statement that says we talked
13 to the CRNA on this date, and they confirmed based on
14 medical record or whatever other evidence that the Bair
15 Hugger was in fact used in this surgery.

16 THE COURT: Okay. Ms. Zimmerman, what would be
17 the problem with now that you know that what you were
18 relying on isn't good enough, what's the problem with
19 something along the lines that Mr. Hulse was just talking
20 about where there has to be at least a --

21 MS. ZIMMERMAN: A statement --

22 THE COURT: -- a communication, talk to somebody.

23 MS. ZIMMERMAN: Sure. So, Your Honor, I think,
24 first of all, we do have objective evidence that it was
25 used. And what the deposition testimony has shown so far is

1    that the CRNA or the anesthesiologist from a case like
2    Gareis where the surgery was in 2010, they don't have an
3    independent memory of these patients.  And so what they do
4    is they go back and they look at the record, and they say,
5    oh, was there a check mark there?  And that's really what
6    ended up being the issue in Skaar, which incidentally was a
7    defense pick, and there was an indication on the sheet.
8              THE COURT:  Okay.  I know you're saying that you
9    want us to revisit the ruling about you getting all the
10   defendant's sales records and everything, and let's just
11   assume for the moment that's not going to happen.  So what
12   else do you -- I mean in the absence of some other
13   suggestion, the defendant's suggestion seems pretty
14   reasonable to me.
15             Of course, it's not going to be iron clad but we
16   now know from the bellwether process is what you have been
17   relying on is insufficient, so we can't do that again.  So
18   what else can we do?
19             MS. ZIMMERMAN:  Well, I think that the burden in
20   terms of repopulating the bellwether pool, if what we're
21   going to do is get an affirmative statement from a CRNA or
22   the treating physician on 4200 cases prior to selecting 150
23   for potential bellwether considerations, it just seems from
24   a logistical standpoint not to be likely to be very easily
25   done.

1           MAGISTRATE JUDGE NOEL:  I don't think that's what
2   they're suggesting.  I think they're suggesting we come up
3   this 150 case randomly selected pool and then you folks go
4   through these steps, but one of the new steps would be
5   before a case gets into the bellwether actual pool, you need
6   to -- not you personally.
7           THE COURT:  Y'all.
8           MAGISTRATE JUDGE NOEL:  The lawyer for the client
9   whose case is proposed to be in the bellwether pool needs to
10  have some affirmative evidence that there was a Bair Hugger
11  used in the surgery.  And that doesn't strike me as being an
12  overly burdensome or unreasonable request in light of what
13  we have observed about the cases that were in the initial
14  bellwether.
15          MS. ZIMMERMAN:  Okay.  Recognizing where the Court
16  is going on this, I think that it seems to be kind of a
17  hybrid or headed towards a lone pine of sorts, which is
18  typically not done at this stage.  But certainly if we had
19  150 cases that are randomly selected by the Court to be
20  considered for the bellwether pool, and the Court directs
21  that we need to have, you know, the 134 law firms that are
22  presently involved in persecuting or prosecuting cases here
23  get -- "persecuting" mind slip -- get statements from the
24  CRNA, we will certainly do what the Court indicates.
25          I think that what we have learned from the

1   depositions is what they do is they go back to the records
2   that we're producing, and so you end up in kind of a circle.
3   Now, if it's an affidavit testimony and that gives the Court
4   and the defendant some additional comfort in terms of this
5   is certainly a case where the plaintiff was exposed, we'll
6   certainly comply with the Court's Orders in that regard.
7           We certainly are interested in avoiding this as
8   well.  I mean multiple trips to Idaho and to South Carolina
9   to try and get these things sorted out, you know, is not in
10  our interest or anyone's interest, and we don't want to
11  burden the Court unnecessarily either.
12          THE COURT:  Okay.  All right.  Well, this is not
13  on the order of a lone pine and that reflects a complete
14  misunderstanding of what we're saying.  You now know because
15  of the bellwether process that's gone through so far that
16  there are a number of cases that are being brought by
17  plaintiffs who do not have sufficient reason to know that
18  they actually have a product that was involved in their
19  surgery.  That's just a very basic fact.
20          And we have allowed all of these cases to go
21  forward on the simple check mark, and we now know that's not
22  enough.  And to say that 4500 cases should be allowed to
23  proceed now based on a check mark when everybody knows that
24  in reality that doesn't tell you anything is inconsistent
25  with the fundamental requirement that there be some good

1  faith belief on the part of a plaintiff that they've got a
2  case before they bring it.  It has nothing to do with a lone
3  pine order that has all this scientific business.  It's not
4  that at all.
5           And the bellwether process in order to keep
6  identifying issues that are going to be meaningful for
7  generalized use has to overcome that problem at least with
8  respect to the 150.  So --
9           MS. ZIMMERMAN:  We agree with that, Your Honor.
10          THE COURT:  Okay.  So when you talk amongst
11 yourselves, hopefully, there won't be so many areas of
12 disagreement now.  And when you do that, you might be able
13 to talk, I don't know, you can talk today some, I suppose,
14 but the sooner the better.
15          MS. ZIMMERMAN:  Absolutely, Your Honor.  With
16 respect to the six bellwethers that have been considered, we
17 know that there's one now, Skaar, where it was not in use.
18 The other ones to our knowledge are all cases that were
19 used.  There was one case where it was turned off early.
20 Well, we did certainly learn that from the CRNA.
21          But I think, respectfully, that the facts at least
22 with these six are not suggestive that there's a lot of
23 cases that have made it this far without any kind of
24 objective proof it's been used in their surgeries.
25          MR. BLACKWELL:  Kamke was another case, Your

1  Honor.

2  THE COURT: We're not going to argue about all
3  these cases. Well, you say it.

4  MAGISTRATE JUDGE NOEL: I was going to say clearly
5  the initial bellwether process when it got down to actually
6  identifying cases was problematic because more than one case
7  it turns out either it wasn't used, it was turned off or
8  whatever the facts are. And I think all we're saying is
9  that in coming up with a process to repopulate the
10 bellwether pool, the parties should focus on that.

11 And I think what Judge Ericksen is saying is that
12 that burden is more on the plaintiffs than on the
13 defendants, and it's not really about the defendant's sales
14 records or who they sell Bair Huggers to. It's about
15 whether or not this plaintiff was exposed to the device that
16 is alleged to have caused his damages. And I guess maybe
17 I'm not understanding what the burden is or why that's a
18 difficult thing for a plaintiff's lawyer to ascertain at the
19 front end of a lawsuit.

20 Now, having said that, I'm looking now at defense
21 counsel, and if you've got evidence or you know for sure you
22 never sold Bair Huggers to hospital X where this guy's
23 surgery is, you can't play in the weeds and wait for them to
24 put it on the list and then say, oh, by the way, guess what,
25 yep, not a Bair Hugger, 'cuz we never sold them a Bair

1    Hugger.

2             So if you've got evidence like that, that should

3    be part of the give and take in putting together the process

4    for repopulating the Bair Hugger bellwether list would be my

5    thought.

6             THE COURT:  That's exactly right.

7             MS. ZIMMERMAN:  We're in agreement with that.

8    Thank you.

9             THE COURT:  Okay.  We've got some plaintiff fact

10   sheet issues to discuss.  Mr. Hulse, is this you again?

11            MR. HULSE:  I believe so.  Mr. Parekh, do you want

12   to join me?

13            MAGISTRATE JUDGE NOEL:  It occurs to me, I don't

14   know if this is on the record, but we should probably tell

15   everybody Judge Leary is not here.  He's under the weather

16   and sent us a note to that effect yesterday, and I just want

17   to make sure the record is clear on that.

18            THE COURT:  Thank you.

19            MR. HULSE:  Yes, thank you, Your Honor.

20            So the Court has disposed of the pending motion

21   that we had.  This was just a small motion with respect to

22   three cases, though Mr. Parekh who represents the plaintiff

23   in one of those cases notes that almost immediately after we

24   filed our motion, he served a PFS for this case.  And we

25   don't, you know, while our overall principle is the