## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION SEEKING *IN CAMERA* REVIEW OF TEN DOCUMENTS WITHHELD UNDER CLAIMS OF PRIVILEGE** |
| This Document Relates To: All Actions | |

This Court should deny Plaintiffs' motion for an *in camera* review because the documents at issue are privileged attorney-client communications and opinion work product relating to the defense of the Bair Hugger litigation.   Specifically, the documents Plaintiffs challenge are a series of confidential communications between Defendants, their counsel (in-house and outside counsel), and internal consulting experts regarding legal advice and trial preparation materials generated for the defense of the earliest Bair Hugger lawsuits in 2015.   Because these documents are protected by the attorney-client privilege, they are not discoverable at all.   Even assuming the attorney-client privilege were inapplicable, the documents are still protected opinion work product.

Plaintiffs nonetheless argue they are entitled to these communications because they "relate to scientific matters."  (*See* Pl. Mem. at 5-6.)  That is not enough to overcome the privilege (and this Court has never held that it is) – indeed, if it were, there would be little or no protection for either parties' privileged documents in this litigation.

## ARGUMENT

## I. THE CHALLENGED DOCUMENTS ARE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS.

The documents at issue here are a series of email communications between Defendants and their attorneys regarding legal advice and work product generated for the defense of this litigation: specifically, the *Walton* and *Johnson* suits filed by the Kennedy Hodges firm in 2013 and 2015. A review of the relevant privilege log entries confirms the applicability of the attorney-client privilege:

| Privilege ID | Date and Description |
|---|---|
| 3MPRIV00055445 | Date: 4/26/16<br><br>Email string with confidential communication between client and legal counsel (J. Pepper and M. Harms – 3M) providing information relevant to legal advice to be rendered regarding forced air warming products. |
| 3MPRIV00057295 | Date: 10/6/15<br><br>Email string with confidential communications between clients and legal counsels (M. Harms – 3M, S. Fowler – Greenberg Traurig) reflecting information provided to counsels relevant to legal advice to be rendered regarding present litigation over claims concerning the safety of forced air warming. |
| 3MPRIV00057304 | Date: 10/14/15<br><br>Email string with confidential communications between clients and legal counsels (M. Harms – 3M, S. Fowler – Greenberg Traurig) reflecting information provided to outside counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered to client concerning prosecution of present litigation over claims concerning the safety of forced air warming. |

| 3MPRIV00057307 | Date: 10/14/15 |
| --- | --- |
| | Email string with confidential communications between clients and legal counsels (M. Harms – 3M, S. Fowler – Greenberg Traurig) reflecting information provided to outside counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered to client concerning prosecution of present litigation over claims concerning the safety of forced air warming. |
| 3MPRIV00057310 | Date: 10/14/15 |
| | Email string with confidential communications between clients, outside legal counsel and legal counsel reflecting information provided to legal counsel (M. Harms – 3M) and outside legal counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered regarding litigation claims over forced air warming. |
| 3MPRIV00057314 | Date: 10/14/15 |
| | Email string with confidential communications between clients, outside legal counsel and legal counsel reflecting information provided to legal counsel (M. Harms – 3M) and outside legal counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered regarding litigation claims over forced air warming. |
| 3MPRIV00057318 | Date: 10/14/15 |
| | Email string with confidential communications between clients, outside legal counsel and legal counsel reflecting information provided to legal counsel (M. Harms – 3M) and outside legal counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered regarding litigation claims over forced air warming. |
| 3MPRIV00057321 | Date: 10/16/15 |
| | Email string with confidential communications between clients and legal counsels (M. Harms – 3M, S. Fowler – Greenberg Traurig) reflecting information provided to outside counsel (S. Fowler – Greenberg Traurig) relevant to |

| | |
|---|---|
| | legal advice to be rendered to client concerning prosecution of present litigation over claims concerning the safety of forced air warming. |
| 3MPRIV00057324 | Date: 10/19/15<br><br>Email string with confidential communications between clients and legal counsels (M. Harms – 3M, S. Fowler – Greenberg Traurig) reflecting information provided to outside counsel (S. Fowler – Greenberg Traurig) relevant to legal advice to be rendered to client concerning prosecution of present litigation over claims concerning the safety of forced air warming. |
| 3MPRIV00071047 | Date: 9/23/15<br><br>Email and attachments with confidential communication between client and legal counsel (M. Harms – 3M) reflecting scientific information provided to counsel relevant to legal advice to be provided to client in anticipation of present litigation over safety of forced air warming. |

(Zimmerman Decl., Ex. A.)

Janell Pepper was at the time in-house litigation counsel for 3M, with responsibility for managing the Bair Hugger litigation. She is now retired. Maureen Harms was at the time in-house counsel for 3M's Health Care Business Group, and worked with Ms. Pepper on the defense of the litigation. She is still in-house counsel at 3M today. Greenberg Traurig was Defendants' litigation counsel in *Walton* and *Johnson*, the first two Bair Hugger lawsuits. Moreover, each of the communications was sent to or from Andrew Chen and Dave Eaton, along with legal counsel, who were requested by in-house counsel to serve as internal consulting experts in connection with the defense of the Bair Hugger litigation. (*See id.*; *see also* Declaration of Andrew Chen in Support of Defendants' Memorandum in

Opposition to Plaintiffs' Motion Seeking Inc Camera Review of Ten Documents Withheld Under Claims of Privilege ("Chen Decl."), ¶ 4; Declaration of Deborah E. Lewis in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion Seeking In Camera Review of Ten Documents Withheld Under Claims of Privilege ("Lewis Decl."), ¶ 3.).) Mr. Chen and Mr. Eaton were asked to consult due to their technical expertise; neither worked in the Infection Prevention Division of 3M (the specific 3M business that markets the Bair Hugger system), nor were they involved in the design or manufacture of the Bair Hugger system.  (*See* Chen Decl., ¶¶ 6-7; Lewis Decl., ¶ 3.)

The role that Mr. Chen and Mr. Eaton played as consulting experts in this litigation is yet another basis on which to conclude that the communications at issue are privileged. *See*, *e.g.*, *In re Shell Oil Refinery*, 132 F.R.D. 437, 442 (E.D. La. 1990) (employees for whom litigation assistance was generally outside the scope of their duties but who were asked by legal department to investigate the cause of an explosion were non-testifying experts under Rule 26(b)(4)); *Fair Isaac Corp. v. Experian Information Solutions, Inc.*, No. 06-4112 (ADM/JSM), 2008 WL 11348223, at *7 n.2 (D. Minn. Nov. 3, 2008) (analyses performed by employees specifically for purposes of litigation was "not unlike what a consulting expert is often asked to do during the course of litigation" and "the product of a party's consulting expert, including an in-house consulting expert, cannot be obtained, except 'on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinion on the same subject by other means.") (citing Fed. R. Civ. P. 26(b)(4)).

The attorney-client privileged nature of these communications should end the inquiry. (*See* Pl. Mem. at 5-7 (confirming that Plaintiffs' challenge to the documents are based only on their belief that the communications relate to CFD, not a belief that they do not relate to legal advice or communications between Defendants and their counsel).) *See also*, *e.g.*, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (noting that "confidential communications between an attorney and his client are absolutely privileged from disclosure"); *Zigler v. Allstate Ins. Co.*, No. 1:06CV2112, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) (communications "necessary to obtain legal advice" and "prepared for the purpose of obtaining or rendering legal advice" are privileged); *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 105 (S.D.N.Y. 2002) (communications between plaintiff's employee and consulting expert "discussing scientific testing methods for the purposes of providing confidential information to [plaintiff's] counsel and soliciting legal advice regarding [plaintiff's] legal proceedings" were covered by the attorney-client privilege). For this threshold reason, Plaintiffs' motion should be denied.

## II.     THE DOCUMENTS AT ISSUE ARE SEPARATELY PROTECTED BY THE WORK PRODUCT DOCTRINE.

### A.     The Documents Are Opinion Work Product.

Separately, Plaintiffs' motion should be denied because the documents constitute opinion work product.

The Eighth Circuit recognizes two categories of work product: (1) ordinary work product, and (2) opinion work product. *See Baker v. Gen. Mot. Corp.*, 209 F.3d 1051, 1054

(8th Cir. 2000). Opinion work product, which includes counsel's mental impressions, opinions, and legal theories, "enjoys almost absolute immunity and is discoverable only in rare circumstances." (Order [Dkt. No. 645] at 3.) The documents Plaintiffs seek fall into this category. Nine of the emails identified as work product in Defendants' privilege logs reflect discussions with counsel regarding legal advice and strategy, including counsel's mental impressions and opinions. (*See* Zimmerman Decl., Ex. A; *see also* Lewis Decl., ¶ 4.) The one other document, which tangentially relates to a CFD performed internally, was not provided to Dr. Abraham and he did not rely on it. (*See* Lewis Decl., ¶ 4.)

All of the emails involve strategy conducted at the direction of counsel in anticipation of ongoing litigation in 2015 and should thus be considered to be opinion work product and shielded from discovery. (*See id.*) *See also, e.g., U.S. ex rel. Dye v. ATK Launch Systems Inc.*, No. 1:06-CV-00039-CW, 2011 WL 996975, at *5 (D. Utah 2011) ("[E]ven tests which generate factual data—when conducted at the direction of counsel and in preparation for litigation—are strongly indicative of the mental impressions, conclusions, opinions, or legal theories of [a party's] attorneys" and are therefore "protected by the work product doctrine."), *quoting Vardon Golf Co. Inc. v. BBMG Golf Ltd,* 156 F.R.D. 641, 649 (N.D. Ill. 1994) (denying motion to compel and noting that nothing prevented plaintiff from running tests of its own to show infringement of a patent, such tests would provide substantial equivalents to any tests run by third-party defendant, and the tests would relate to the same ultimate issue).

**B.     The Documents Are Also Protected as Ordinary Work Product.**

Alternatively, even if the documents were ordinary work product, they still would not be discoverable unless Plaintiffs demonstrate a "substantial need," and an inability to obtain "substantially equivalent" information through other means without undue hardship. (*See* Order [Dkt. No. 645] at 3.)  *See also* Fed. R. Civ. P. 26(b)(3).  Plaintiffs have the burden of making this showing, and must do so with respect to each document at issue. *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 390 (D. Minn. 1992) (J. Noel) (plaintiff was not entitled to defendant's work product where plaintiff failed to make the requisite showing for "each document" withheld by defendant); *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd*. et al., Nos. 14-CV-3103, 14-CV-3028, 2016 WL 6871374, at *5 (D. Minn. Oct. 5, 2016) (Noel, J.) (citing *Baker* and rejecting document requests because requesting party "did not demonstrate[ ] how they have a 'substantial need' for all the information").  Plaintiffs have not satisfied and cannot satisfy their burden here.

First, Plaintiffs already have the Chen Report, which includes geometry data related to Defendants' internal CFD modeling.   Plaintiffs also have their own substantial equivalent: they commissioned their own CFD (twice) and have had the opportunity to evaluate and critique the CFD simulation and analysis of Defendants' expert Dr. John Abraham.  Thus, there is no basis on which Plaintiffs have any "need" – substantial or otherwise – for documents reflecting Defendants' communications with counsel, regardless of whether they involve or relate to any CFD.[1]  *See*, *e.g.*, *Baker*, 209 F.3d at

---

[1] Plaintiffs challenge to Defendants' privilege and work product designations apparently stems from their belief that the documents are related to CFD.  Defendants have repeatedly

1054 ("A party also does not demonstrate substantial need when it merely seeks corroborative evidence."); *see also In re Bard IVC Filters Products Liab. Litig.*, MDL No. 2641, 2016 WL 537857, at *6-7 (D. Ariz. Feb. 11, 2016) (no "substantial need" where plaintiffs had full access to the data analyzed in the sought-after report and their experts could perform the same analysis); *Nevada v. J-M Mfg. Co., Inc.*, 555 Fed App'x 782, 785 (10th Cir. 2014) (recognizing that defendant "could conduct its own independent testing" and rejecting argument that defendant had substantial need to discover plaintiff's test results). Plaintiffs' apparent belief that "the information contained in such documents may not be supportive of Defendants' claims" (*see* Pl. Mem. at 7) is nothing more than wishful thinking, and certainly not a valid basis on which to suggest they have a "substantial need" for the documents. Moreover, it is irrelevant whether Defendants' internal CFD modeling is "supportive," as Dr. Abraham performed his own simulation and does not rely on Defendants' internal analysis to support his opinions. (*See* Abraham Dep. at 303:8-316:23 (testifying regarding the extent to which he relied upon the Chen Report produced to Plaintiffs).) Dr. Abraham's testimony makes clear that he did not rely on – or even receive – the emails at issue in Plaintiffs' motion. (*See id.*) Plaintiffs' implication to the contrary is a red herring.

Plaintiffs disregard these facts, however, and instead invoke this Court's August 2017 ruling requiring the production of an *entirely different* subset of documents. They

---

explained to Plaintiffs that this is not the case. Only one of the challenged documents has anything to do with CFD, and that document was never provided to Dr. Abraham. The other documents Plaintiffs seek do not involve CFD modeling (or expert opinion), and thus not responsive to Plaintiffs' request in any event.

contend their misguided belief somehow translates into a decision that Plaintiffs are entitled to *any* document, related to *any* testing (or "scientific matter"), created at *any* time and for *any* purpose, regardless of whether the documents contain confidential attorney-client communications. (*See* Pl. Mem. at 5-6 (relying on Dkt. No. 645).) The Court's prior ruling does not support Plaintiffs' demand for an *in camera* review here.

The documents before the Court in August 2017 related to certain testing performed by Defendants' corporate predecessor (Augustine Temperature Management, Inc.) in the early 2000s, at the direction of Dr. Augustine and/or his counsel (J. Randall Benham). While Defendants believed, given the time period, that this testing likely was performed to explore potential patent litigation, Defendants lacked sufficient testimony or contextual information to demonstrate the purpose conclusively. The Court concluded that, assuming the testing information reflected in those documents was in fact ordinary work product, Plaintiffs still had demonstrated a substantial need for them and that "substantially equivalent" information was not available through other means. (*See* Order [Dkt. No. 645] at 3-4.) The Court's decision as to those Augustine-era documents is understandable given the context of those documents and the individuals involved.

Plaintiffs attempt to recast the August 2017 Order as a blanket ruling that would strip any document relating to "scientific matters" of any attorney-client privilege or work product protection whatsoever. (*See* Pl. Mem. at 5-6 ("Documents that relate to scientific matters, including not only test results and raw data, but also '*information provided to legal counsel relevant to legal advice to be rendered*' concerning '*the safety of forced air warming*' . . . are not entitled to work product protection, nor are they privileged.")

(emphasis in original).)  That is not what the Court's order says, and again, the order related to a specific set of Augustine-era testing.  It was not a blanket determination of when work product protection does or does not apply.

Moreover, under consistent case authority, whether documents are protected from disclosure does not turn merely on whether the documents relate to "scientific matters."  It turns on the specific context, including the purpose of the work and the involvement of legal counsel. *See, e.g., U.S. ex rel. Dye*, 2011 WL 996975, at *5 (D. Utah 2011) (even where internal testing generates factual data, it is protected by the work product doctrine when conducted at the direction of counsel and in preparation for litigation); *Vardon Golf Co.,* 156 F.R.D. at 648 (court can "easily conclude" that attorney-initiated tests were reflective of the attorney's opinions and strategy, and thus protected as opinion work product; even if the tests were non-opinion work product, they are still protected because "nothing prevent[ed] [plaintiff] from running tests of its own" and although plaintiff "might not have the same tests as [defendant], it would have tests, nonetheless, relating to the same ultimate issue"); *Astra Aktiebolag*, 208 F.R.D. at 105 (S.D.N.Y. 2002) (documents containing "scientific information, including reports, analyses, and other scientific data communicated between internal [plaintiff] scientists and [plaintiff] in-house lawyers and forwarded to [outside lawyers] were privileged because they "were prepared in response to requests by [outside lawyers] to conduct scientific investigations . . . and provide scientific information for the purpose of soliciting legal advice").  Here, the purpose of the work was to investigate Plaintiffs' airflow allegations (and support the defense of those allegations), which clearly involved legal counsel.

11

Indeed, this entire litigation is based on "scientific matters."   As such, under Plaintiffs' theory, the attorney-client privilege and work product doctrine would simply cease to exist in this case.  Defendants doubt this is an outcome that Plaintiffs really want (it would require production of *their own* work product), and respectfully submit that it is not how the Court intended its August 2017 Order to be applied.

Finally, Plaintiffs' failure to demonstrate substantial need is further underscored by the fact that they waited nearly a year to challenge the documents at issue.  While Plaintiffs' claim that the Chen Report was "only recently produced," Defendants produced the report to Plaintiffs in *November 2016*.  (*See* Pl. Mem. at 2 ("The [Chen] Report was *only recently produced* initially from the files of 3M's consulting expert, Jennifer Wagner . . . who assisted Dr. Abraham in his CFD analysis.") emphasis added); *see also* Lewis Decl. at ¶ 5 (confirming production of the Chen Report on November 1, 2016).)   Moreover, the documents that Plaintiffs believe are "related" to the Chen Report – those at issue in their motion – were identified on privilege logs provided to Plaintiffs in March 2017.

Plaintiffs have had ample opportunity to review and challenge Defendants' privilege and work-product designations.  Indeed, they challenged nearly 400 of those designations in June 2017, but chose not to challenge the documents at issue here.  Now, on the eve of trial, Plaintiffs suddenly claim to have a "substantial need" for documents they have known about for a year or more.  There is no reason why Plaintiffs could not – and should not – have raised these issues earlier, and they have no basis on which to challenge these documents now, nearly a year after the close after MDL fact discovery.  *See Minnesota Supply Co. v. Raymond Corp.*, No. Civ. 99-832 JRT/FLN, 2002 WL 31898162, at *1 (D.

12

Minn. Dec. 27, 2002) (affirming Judge Noel's decision to deny request for documents that "was not only untimely, but it also was not a formal motion to modify the scheduling order"); *Portz v. St. Cloud State Univ.,* No. CV 16-1115 (JRT/LIB), 2017 WL 3332220, at 3 (D. Minn. Aug. 4, 2017) (citing *Marmo v. Tyson Fresh Meats, Inc.,* 457 F3d. 748, 759 (8th Cir. 2006)) ("[W]hile diligence is the primary factor for assessing good cause, nothing limits the Court's "broad discretion in establishing and enforcing the deadlines' in the scheduling order.").

## CONCLUSION

Plaintiffs' motion should be denied. The documents at issue are protected attorney-client communications, and are separately shielded from discovery under the work product doctrine. Plaintiffs fail to show substantial need, lack of a substantial equivalent or undue hardship. Nor does the Court's prior order on Augustine's testing support their position in this motion. Defendants thus request that Plaintiffs' motion be denied, and that their privilege designations be sustained.

Dated: March 12, 2018                           Respectfully submitted,


                                                /s/*Monica L. Davies*
                                                Jerry W. Blackwell (MN #186867)
                                                Mary S. Young (MN #0392781)
                                                Benjamin W. Hulse (MN #0390952)
                                                Monica L. Davies (MN #0315023)
                                                BLACKWELL BURKE P.A.
                                                431 South Seventh Street, Suite 2500
                                                Minneapolis, MN 55415
                                                Phone: (612) 343-3256
                                                Fax: (612) 343-3205
                                                Email: blackwell@blackwellburke.com
                                                        myoung@blackwellburke.com
                                                        bhulse@blackwellburke.com
                                                        mdavies@blackwellburke.com


                                                Bridget M. Ahmann (MN #016611x)
                                                FAEGRE BAKER DANIELS LLP
                                                2200 Wells Fargo Center
                                                90 South Seventh Street
                                                Minneapolis, MN 55402
                                                Phone: (612) 766-7000
                                                Email: bridget.ahmann@faegrebd.com

                                                **Counsel for Defendants 3M Company
                                                And Arizant Healthcare, Inc.**