| | LAW OFFICES | |
|---|---|---|
| MICHAEL C. SNYDER<br>MARK D. STREED<br>DANIEL C. GUERRERO<br>JEFFERY P.OISTAD<br>ANTHONY J. NEMO<br>KONSTANDINOS NICKLOW<br>PAMELA J. SPAULDING<br>ANDREW L.DAVICK<br>GENEVIEVE M. ZIMMERMAN<br>JOSHUA M. TUCHSCHERER | **MESHBESHER & SPENCE, LTD.**<br>1616 PARK AVENUE<br>MINNEAPOLIS, MINNESOTA 55404<br>**(612) 339-9121**<br>FAX (612) 339-9188<br>www.meshbesher.com<br><u>REPLY TO MINNEAPOLIS OFFICE</u> | ZACHARY C. BAUER<br>JAMES B. SHEEHY<br>LINDSEY A. CARPENTER<br>ERIC PALMER<br>RACHEL N. SIMPSON<br>ASHLEIGH E. RASO<br>DEREK STEWART<br><br><u>OF COUNSEL</u><br>REID RISCHMILLER<br>RALPH PALMER |

April 5, 2018

*Via CM/ECF and Email*

Hon. Franklin L. Noel
Magistrate Judge, United States District Court
District of Minnesota
9W U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

      Re:    *In re: Bair Hugger Forced Air Warming Products Liability Litigation;*
               *MDL No. 2666*

Dear Judge Noel:

This letter is submitted in response to Mr. Goss's letter of April 4, 2018, which seems to request an advisory opinion regarding a portion of their currently pending motion to exclude the testimony of Dr. Said Elghobashi.

First, the Court has already ruled that Dr. Elghobashi is qualified to provide the testimony and opinions disclosed, and that the testimony and opinions are admissible following extensive *Daubert* briefing and arguments.

Computational fluid dynamics ("CFD") has been central to this case since Science Day in May 2016, when both parties – without knowing the experts the other side would call - brought experts to discuss the role of CFD in understanding the role Bair Hugger plays in moving particles in an operating room.

Said Elghobashi, Ph.D., D.Sc., disclosed his opinions with respect to general causation over a year ago, and his report addressed the impact the Bair Hugger Model 505 and the Model 750 both have on disbursement of 10 micron size squames in an operating room. (Exhibit 1 – Dr. Elghobashi General Causation Report) His report was detailed, including the dimensions of the room he modeled, all of his boundary conditions, the

Hon. Franklin L. Noel
**2 |** P a g e

equations he used in solving the problem, as well as the solution he reached. Dr. Elghobashi's general causation report detailed the precise impact the Bair Hugger Model 750 has on disbursement of 10 micron sized squames in an operating room, and demonstrated that when the operating room reached steady state, the squames traveled to the area near the surgical site within 23 seconds, and that by 30 seconds of physical time, the number of squames that have reached the operating table is about 2,500 and rising. In his general causation report, Dr. Elghobashi opined that the Model 505 would have the same impact that the Model 750 has on disbursing squames in an operating room, but would take a slightly longer amount of time.

Dr. Elghobashi was deposed in June, 2017. Defendants could have used up to seven hours as provided in the FRCP to fully examine the nature of his analysis: the inputs, the basis for his assumptions, the equations, and the results. Counsel used but a small fraction of the time permitted, and Defendants have never once requested additional time to fully explore the assumptions and methodology that culminated in Dr. Elghobashi's general causation report.

Since that time, as the Court is aware, Dr. Elghobashi's LES CFD paper was accepted for publication an internationally renowned peer-reviewed journal. (Exhibit 2 – Dr. Elghobashi published paper)

In November, 2017, Dr. Elghobashi disclosed his case specific report regarding Gareis, which was based on his education, training, experience, and on the LES CFD he performed regarding the Model 750. (Exhibit 3 – Dr. Elghobashi *Gareis* case specific report) In his case specific report, Dr. Elghobashi again explained his assumptions, the calculations he used, along with his professional opinion as to the impact of the Bair Hugger Model 505 on disbursement of 10 micron squames in an operating room. He estimated the Model 505 would have the same impact as the Model 750, but that it would take slightly longer amount of time for squames to reach the surgical site. His report estimated the time at 25-60 seconds, but he explained the precise time could not be known with certainty until his LES CFD on the Model 505 was completed.

On February 10, 2018, Dr. Elghobashi timely produced documents and materials pursuant to Defendants' subpoena. Dr. Elghobashi produced copies of the newly-completed LES CFD images and videos regarding the Model 505. None of Dr. Elghobashi's previously disclosed opinions with respect to the Model 505 changed as a result of the materials produced pursuant to Defendants' subpoena. Rather, the supplemental CFD on the Model 505 confirmed Dr. Elgohbashi's previously-disclosed opinions, and provided additional precision. Rather than his estimated range of 25-60 seconds, the supplemental CFD confirms the Model 505 causes squames to reach the operating table in 43 seconds of physical time. This is, of course, within the range of time Dr. Elghobashi disclosed in his case specific report served in November, and is also

Hon. Franklin L. Noel
**3 | P a g e**

entirely consistent with the opinions he offered regarding the Model 505 in his general causation report.

On February 10, 2018, Dr. Elghobashi was deposed again, this time on case specific issues. The deposition once more concluded well before the seven hours permitted by the FRCP. In that deposition, Dr. Elghobashi testified that he ran a LES CFD on the Model 505, and that everything was identical to the LES CFD he ran on the Model 750 save two inputs: the temperature was slightly lower at 40.5C (compared to 41C that both Dr. Abraham and Dr. Elghobashi used for the Model 750 CFD), and a reduced volumetric flow rate (taken from the manufacturer's operating manual, which is also, identical to the volumetric flow rate used by Dr. Abraham). All other inputs, assumptions, equations, and calculations remained identical.

During this deposition, Dr. Elghobashi was asked and answered questions about the impact of the Model 505, and counsel noted his opinions regarding the Model 505 were disclosed in his general causation report (Exhibit 4 - Elgho. Dep. 66:2-18). Dr. Elghobashi testified the supplemental CFD on the Model 505 had run over the course of several months, and had just been completed. The diagrams and images generated during the supplemental CFD on the Model 505 were timely produced to Defendants pursuant to subpoena. (Ex. 4 -Elgho. Dep. 9-13). Dr. Elghobashi explained to counsel for Defendants that his opinions remain unchanged as a result of the CFD, and also that he was preparing a supplemental report he hoped to complete in the coming weeks. That supplement was completed and produced to Defendants on April 2, 2018. (Exhibit 5 – Dr. Elghobashi's supplemental report regarding the Model 505).

At the end of the day, there can be no credible claim of disadvantage or prejudice. Defendants' own CFD expert, Dr. Abraham, testified in his deposition he had access to Dr. Elghobashi's Model 505 CFD results, that he understood them, and that he did not need additional time to understand those results, nor did he need to amend his own report. Surely if Defendants' expert didn't need additional time, any claim of prejudice rings hollow.

The methodology and factual underpinnings that create the foundation for Dr. Elghobashi's opinions in this matter have never changed. This stands in stark contrast to the opinions of several of Defendants' experts, who either declined to respond to Plaintiffs' subpoenas, or made a partial, tardy production, only to arrive for their depositions with brand new articles or other materials upon which they intend to rely for never disclosed opinions. By way of example, Dr. Wenzel arrived at his deposition with 22 new articles, never previously disclosed in his either his general causation or case specific reports, or pursuant to Plaintiffs' subpoenas, and a new, never disclosed theory as to the cause of Mr. Gareis' deep joint infection: hematogenous seeding.

Hon. Franklin L. Noel
**4 |** P a g e

It has been and remains Plaintiffs' intention to try the *Gareis* matter to verdict beginning on May 14th. The Court and the parties have worked diligently throughout the nearly 2 ½ years this MDL has been pending in the District. We object to Defendants attempt to muddy the waters with unsolicited letters to the Court as we all prepare for trial.

Respectfully submitted,

*Genevieve Zimmerman*

Genevieve M. Zimmerman, on behalf of Plaintiffs

GMZ/hms

cc:  Jerry W. Blackwell, via email
     Peter Goss, via email
     Jan M. Conlin, via email
     Ben Gordon, via email
     Gabriel Assaad, via email