UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation<br><br>This Document Relates to:<br>All Actions | MDL No. 15-2666 (JNE/FLN)<br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR FURTHER CONSIDERATION OF ORDER ON JOINT MOTION REGARDING CONTINUED SEALING** |

### INTRODUCTION

Plaintiffs' request that the Court reconsider its decision to maintain Defendants' confidential documents under seal should be denied.

Plaintiffs' motion is a thinly veiled attempt to put into the public domain – on the eve of the *Gareis* trial – out-of-context documents that are highly unlikely to be admitted into evidence at trial. These documents have only ever been offered by Plaintiffs to show purported knowledge and conduct, which are no longer relevant issues in the upcoming *Gareis* trial now that the Court has granted summary judgment on Plaintiffs' negligence and misrepresentation claims.

Moreover, the motion was filed (though not signed!) by the Kennedy Hodges firm, reinforcing that the motion is also intended to provide fodder for Scott Augustine's ongoing public relations smear campaign against Defendants and the Bair Hugger system. As the Court is aware, Kennedy Hodges has worked hand-in-glove with Augustine since 2009 to foment litigation, spread negative publicity, and cause competitive harm to Defendants. Like clockwork, when documents are unsealed in this case, Augustine blasts an email to

his list of thousands of doctors and hospitals with his mischaracterizations of the documents.[1] Defendants' employees are then forced to spend extensive time responding to Augustine's latest misrepresentation of the facts.

The Court's determination that the documents at issue in Plaintiffs' motion should remain under seal was correct. Plaintiffs' effort to publicize inadmissible, out-of-context documents to harm Defendants in the public arena on the eve of trial is precisely why the rules allow confidential documents to be maintained under seal. Alternatively, the Court can defer ruling on Plaintiffs' motion until after the *Gareis* trial. At that point, the parties and Court will know for a certainty which of these documents (if any) have come into evidence and therefore should be unsealed.

## ARGUMENT

### I. THE DOCUMENTS ARE APPROPRIATELY DESIGNATED AS CONFIDENTIAL AND SHOULD REMAIN UNDER SEAL.

The documents at issue, many of which were submitted in connection with Plaintiffs' unsuccessful motion to add a claim for punitive damages and/or opposition to Defendants' case-specific motion for summary judgment in the *Gareis* matter, fall into one or more of the following categories:

---

[1] For example, following the hearing on Plaintiffs' motion to add a claim for punitive damages, Augustine blasted out an email touting the fact that the Court "denied 3M's request for confidentiality" and proceeded to offer his own (misleading) interpretation of the "breathtaking" presentations by Plaintiffs' counsel revealing 3M's alleged "malfeasances." (*See* Decl. of Monica L. Davies ("Davies Decl."), Ex. 1.)

1.      <u>Sales Data and Strategy</u>.  These documents include confidential Bair Hugger sales data, communications between sales personnel concerning sales strategy, documents reflecting customer communications (including notes for strategies pertaining to specific accounts), and talking points for sales representatives.  (*See* ECF Nos. 780, 803, 879, 887, 900, 901, 903, 905, 935, 940, and 942 (sealed documents); *see also* ECF Nos. 1002, 1003, and 1008 (Joint Motions Regarding Continued Sealing).)

2.      <u>Scientific and Technical Data/Planning</u>.  These documents reflect internal scientific and technical discussions, deliberations on proposed research, ideas for possible future product development, and the design and development of a next-generation Bair Hugger warming system not at issue in this case.  (*See* ECF Nos. 879, 891, 895, 900, 921, 924 at 98-100, 924 at 245, 929, 935, 940, 942 at 93-94, 945, 948 at 93-94, 948 at 96, 948 at 98-100, and 948 at 245 (sealed documents); *see also* ECF Nos. 1002, 1008, and 1011 (Joint Motions Regarding Continued Sealing).)

3.      <u>Strategic Planning and Responses to Augustine Misrepresentations</u>.  These documents reflect testimony and internal deliberation regarding strategies to deal with customer perceptions influenced by the Augustine campaign, responses to efforts by Augustine to convince customers to switch from the Bair Hugger system to the HotDog, and responses to false statements by Augustine.  (*See* ECF Nos. 789, 866, 868, 879, 881, 883, 915, 918, 924 at 318-22, 925, 944, and 948 at 318-22; *see also* ECF Nos. 1002, 1006, 1008, 1009, and 1011 (Joint Motions Regarding Continued Sealing).)

The documents at issue are confidential and appropriately kept under seal, as they reveal strategic planning information of competitive significance, the public disclosure of

3

which would subject 3M to competitive harm. Moreover, the Court has previously determined that several of these documents should remain under seal (*see* ECF No. 854) with no further objection from Plaintiffs. The Court was correct when it concluded that the documents should remain under seal, and should not reverse its decision now.[2] *See Krueger v. Ameriprise Fin., Inc.*, 2015 WL 224705, at *8 (D. Minn. Jan. 15, 2015) ("Rule 26(c) applies not only to trade secrets, but also to other confidential research, development, or other commercial information.") (affirming magistrate's order for continued sealing where defendants provided specific facts to demonstrate necessity of protection).

Plaintiffs invoke the general proposition that the public is entitled to access judicial records, but it is well settled that "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013). The decision to allow "access is one best left to the sound discretion of the trial court . . . *to be exercised in light of the relevant facts and circumstances of the particular case*." *Id.* at 599 (emphasis added). The Court must consider not only the interests of the parties and the public, but also its own custodial duties and supervisory powers. *Id.* at 602–03. In *Nixon*, the Supreme Court recognized that "access has been denied where court files might have become a vehicle for improper

---

[2] Plaintiffs also argue that the 2007 draft Bair Paws study protocol (ECF No. 937) should not be sealed. (ECF No. 1228 at 11-12.) That Arizant shared the draft protocol with a single hospital that was considering undertaking the study does not mean that it is not confidential and should now be in the public domain. Defendants presented their position on that document in their motion for further consideration filed April 19, 2018, and otherwise refer the Court to that submission.

4

purposes." *Id.* at 598 (court has the power "to insure that its records are not used to gratify private spite or promote public scandal" and can refuse "to permit their files to serve as reservoirs of libelous statements" or "as sources of business information that might harm a litigant's competitive standing") (internal citations omitted).

Here, the Court's decision as to what documents should remain under seal must turn on unique facts and circumstances of *this* case. In this case, it could not be more clear that the unsealed documents will be used – and misrepresented – in Dr. Augustine's ongoing smear campaign.

## II. 3M WILL FACE COMPETITIVE HARM IF ITS CONFIDENTIAL DOCUMENTS ARE MADE PUBLIC.

Plaintiffs assert that there is no risk of competitive harm to 3M, ridiculing the idea that competitors could possibly be interested in corporate documents from years past. This argument denies reality. During this litigation, Augustine has taken every opportunity to publicly spread lies and misinformation to 3M's customers and potential customers. For example, in February 2017, in tandem with Plaintiffs' pursuit of discovery of VitaHEAT, Augustine initiated a national and international email campaign representing that the Bair Hugger system was being recalled and replaced with VitaHEAT's product. (*See* Davies Decl., Ex. 2.) Augustine sent out another email blast in June 2017, falsely claiming that 3M witnesses admitted to "research fraud" in their deposition testimony, and that 3M was blaming healthcare providers for Plaintiffs' alleged injuries. (*See id.*, Ex. 1.) The same email blast claimed that 3M "deliberately acted with intentional disregard to the high probability of injury to patients" and faced "$20 billion in potential liability payments, most

5

of it from punitive damages" as a result. (*Id.*) If the seal is lifted, this Court can be sure Augustine will misrepresent the documents in his next communication to doctors and hospitals.

These unique circumstances distinguish this case from the cases cited by Plaintiffs. Plaintiffs' cases involve motions to seal that were denied because the moving party failed to present *current* evidence to show competitive harm, or failed to present evidence of *serious* harm. (*See* ECF 1228 at 9-10.) Here, Defendants have submitted specific examples of Augustine's ongoing use of materials produced in discovery to attack 3M and the Bair Hugger system. Augustine's campaign forces 3M to expend time and effort responding to healthcare providers who have received Augustine's communications.

This risk of serious competitive harm faced by Defendants, together with the proximity of the *Gareis* trial, support the Court's decision to keep the documents at issue under seal. *See*, *e.g.*, *Krueger*, 2015 WL 224705, at *4 n.4 (among factors to be considered when determining whether to seal documents is the possibility of prejudice to those opposing disclosure) (citing *Schedin v. Ortho-McNeil-Janssen Pharms, Inc.*, No 08-5743 (JRT), 2011 WL 1831597, at *1-2 (D. Minn. May 12, 2011) (relevant factors that inform the decision of whether documents should be sealed include "minimiz[ing] the danger of an unfair trial by adverse publicity")) (internal citations omitted).

## III. THE DOCUMENTS AT ISSUE ARE APPROPRIATELY KEPT UNDER SEAL UNDER APPLICABLE PROCEDURAL RULES

Next, Plaintiffs argue that documents filed in connection with a dispositive motion cannot be kept under seal. (*See* ECF No. 1228 at 3, 7-8.) They are incorrect here as well.

Local Rule 5.6 makes no distinction between dispositive and non-dispositive motions. Indeed, the argument is particularly unpersuasive here, as the orders disposing of the parties' *Daubert* and summary judgment motions makes no express reference to the documents at issue in Plaintiffs' motion. Thus, Plaintiffs can only speculate as to whether and to what extent any of the documents at issue played any role in the Court's consideration of the motions. Such speculation provides no basis on which to reverse the Court's decision to keep the documents under seal.

Plaintiffs further argue that any confidentiality protection was obliterated because they displayed snippets from some of the documents in an opening court proceeding. They cite a single case in purported support of this novel proposition. It is inapposite. *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 245 F.R.D. 632, 634 (D. Minn. 2007), involved documents containing trade secret information, and Judge Frank concluded that the documents' use at the hearing destroyed the documents' *trade secret* status specifically, not their *confidential* status generally. *See id.* at 637. Here, by contrast, Defendants' confidential documents should remain under seal due to the obvious competitive harm Defendants face if they are unsealed; the risk of that competitive harm does not vanish simply because small excerpts of the documents were briefly displayed on a screen at the hearing.

Indeed, if Plaintiffs' presentation of excerpts from confidential corporate documents at a contested motion hearing was a sufficient basis on which to unseal a document, Plaintiffs could unilaterally strip Defendants' confidential documents of any protection

whatsoever, simply by quoting or displaying the documents at their discretion. Such a result would effectively make it impossible for litigants to protect confidential information.

## IV. MAINTAINING THE SEAL OVER CONFIDENTIAL DOCUMENTS IS NOT CONTRARY TO PUBLIC HEALTH OR SAFETY.

Finally, Plaintiffs argue that the Court should unseal the confidential documents at issue because they relate to "public health and safety." (*See* ECF No. 1228 at 1.) Plaintiffs go so far as to claim that "[l]imiting the public access to these documents may prevent scientific research and effective precautions by the medical community." (*Id.* at 2.) This argument bears no relationship to the documents themselves. This Court has already concluded that these documents do not show that Defendants knew or should have known of any purported risk that the Bair Hugger system causes periprosthetic joint infections – they can hardly be the missing spark for scientific research.

The basic premise of Plaintiffs' argument – the idea that the safety of the Bair Hugger system has not been considered by the scientific and medical communities – is also counterfactual. The safety the Bair Hugger system has been studied – and confirmed – time and time again. In its August 30, 2017 safety communication to health care providers regarding forced air warming, the FDA directly addressed the allegations being made by Augustine and the Plaintiffs here, recognizing that "some health care providers and patients may be avoiding the use of forced air thermal regulating systems during surgical procedures due to concerns of a potential increased risk of surgical site infection (e.g., following joint replacement surgery)." (*See* ECF No. 751, DX1.) The FDA confirmed that, after collecting and analyzing the available data, it was "unable to identify a

consistently reported association between the use of forced air thermal regulating systems and surgical site infection." (*Id.*) The FDA "remind[ed] health care providers that using thermoregulation devices during surgery, including forced air thermoregulating systems, have been demonstrated to result in less bleeding, faster recovery times, and decreased risk of infection for patients." (*Id.*) The FDA's statements were consistent with other independent organizations that have reviewed the scientific data, as Defendants have shown in their prior briefing. (*See* ECF No. 762 at 17-20.)

The science will not miraculously tilt in their favor if Plaintiffs and Augustine are allowed to publicize cherry-picked excerpts of corporate documents that they believe cast Defendants in a negative light. Plaintiffs' purported "public health and safety" concerns are no reason for the Court to reconsider its earlier decision.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for reconsideration of the Court's March 23, 2018 Order should be denied. Defendants appropriately designated the documents as confidential, and the Court appropriately determined that the limited subset of documents at issue should be kept under seal. In so ruling, the Court rejected the reasons offered by Plaintiffs why the documents should be unsealed, which are essentially the same reasons they offer now. The Court should once again reject Plaintiffs' arguments.

Dated: April 27, 2018

Respectfully submitted,

*s/ Monica L. Davies*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
Monica L. Davies (MN #0315023)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com
mdavies@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company and Arizant Healthcare Inc.**