UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| This Document Relates to:<br>All Actions | **DEFENDANTS' OBJECTION TO PLAINTIFFS' ATTEMPT TO "RETRACT" THEIR *LEXECON* WAIVERS** |

The Court should not permit Plaintiffs to "retract" their *Lexecon* waivers in the currently designated bellwether cases or any other cases. Plaintiffs knowingly waived their right to trial in their home jurisdictions. Through their filing of waivers (Dkt. No. 1113) and their participation in the bellwether selection process, Plaintiffs consented to trial of their cases in this District. Plaintiffs may disagree with the some of the Court's subsequent rulings, but that does not constitute good cause for nullifying the waivers. *See In re Fosamax Prods. Liab. Litig.*, No. 06-MD-1789 (JFK), 2011 WL 1584584, at *2 (S.D.N.Y. Apr. 27, 2011) (denying leave to withdraw *Lexecon* waivers because good cause not shown); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, No. 09-4414, 2015 WL 5164772, at *5 (D.N.J. Sept. 1, 2015) (same).

## BACKGROUND

The second bellwether-selection pool consisted of 99 cases. To be considered for bellwether status, Plaintiffs were required to decide whether to waive their right to trial in their home courts. Ultimately, 70 of the 99 plaintiffs voluntarily waived their venue rights under *Lexecon*, and they filed a pleading unambiguously indicating their intention to waive those rights. (Dkt No. 1113.) Three of the 70 plaintiffs were later dismissed.

It should go without saying that any plaintiff who believes in the merit of his or her case should be eager to be designated as a bellwether. A bellwether case is typically resolved quickly, whereas it may take several years to resolve non-bellwethers following remand. Nevertheless, this week, following the jury verdict in favor of Defendants in *Gareis*, Plaintiffs filed purported "retractions" of their *Lexecon* waivers in all but six of the remaining cases, including seven of the eight bellwethers. Many of the retractions provide no rationale, and others provide a single paragraph. These plaintiffs assert that the Court's choice-of-law and "other" unspecified rulings in *Gareis* "collectively resulted in a material difference in the posture of the case." (*E.g.*, *Partlow*, 16-cv-2144, Dkt. No. 9.) These plaintiffs further argue, despite their knowing and voluntary waivers and participation in bellwether selection, that their *Lexecon* waivers were invalid because there was no "consideration."

## ARGUMENT

While few courts have addressed the withdrawal of *Lexecon* waivers, all agree that a waiver may only be rescinded on a demonstration of good cause. *See Fosamax*, 2011 WL 1584584, at *2; *Zimmer*, 2015 WL 5164772, at *3. Good cause involves proof of "fraud, collusion, mistake or duress, or [where] the agreement is unconscionable or contrary to public policy." *Fosamax*, 2011 WL 1584584, at *2 (quoting *Katel LLC v. AT&T Corp.*, 607 F.3d 60, 66 (2d Cir. 2010)).

Plaintiffs offer no proof of fraud, collusion, duress, unconscionability, or proof that their waivers were contrary to public policy. They instead seem to argue "mistake" – that they mistakenly believed the Court would apply Minnesota substantive law to their claims

2

and would otherwise rule in their favor on unspecified pretrial matters. Even if Plaintiffs were genuinely mistaken about this (which is doubtful), the mistake was not reasonable and cannot constitute good cause.

### A. The Court's Choice-of-Law Decision in *Gareis* Cannot Qualify as Good Cause for Retracting a *Lexecon* Waiver.

The Court's application of South Carolina law in *Gareis* cannot qualify as good cause. Choice-of-law has been a litigated issue in the MDL for a long time – it was the subject of extensive briefing in the context of Plaintiffs' punitive damages motion. It was entirely foreseeable that the law of the state of the plaintiff's injury might govern in a products liability case. Plaintiffs cite no rule of law that guarantees that an MDL court must apply the substantive law of the MDL's venue in a bellwether case. Moreover, Pretrial Order No. 5 expressly provides that Minnesota's choice-of-law rules will not apply in most direct-filed cases, further raising the likelihood that Minnesota substantive law also would not apply:

> With regard to the determination of the applicable substantive law for any action filed in this District pursuant to this Order and/or Pre-Trial Order #1, in the event of a dispute between the parties concerning the applicable substantive law, the Court will apply Minnesota choice-of-law rules unless the Plaintiff clearly identifies the following information in the initial complaint: (1) current residence; (2) date and location of surgery plaintiff claims Bair Hugger was used; and (3) the appropriate venue where the action would have been filed if direct filing in this District were not available. If the Plaintiff identifies that information, then the choice-of-law rules from the appropriate venue shall apply.

Thus, in cases where the plaintiff has indicated that the case would have been filed in a district other than the District of Minnesota but for the existence of the MDL, Minnesota's choice-of-law rules will not apply. Plaintiffs also fail to explain *why* the Court's choice-

3

of-law decision in *Gareis* matters. Why, in any of their cases, would Minnesota law mean a "win" whereas the law of their home state would mean a "loss"? As Defendants explained in their summary judgment briefing in *Gareis*, the differences between Minnesota law and South Carolina law are relatively small, except for the length of the statute of limitations.

Furthermore, if choice-of-law were the real reason for the retraction of Plaintiffs' *Lexecon* waivers, Plaintiffs would have filed these retractions as soon as the Court issued its summary judgment order in *Gareis* on April 13, 2018, rather than waiting until after the jury verdict. (*See* 16-cv-4187 Dkt. No. 111.) *See, e.g.*, *Zimmer*, 2015 WL, at *4-5 (finding no good cause to warrant rescinding *Lexecon* waiver where plaintiffs' liaison counsel's failure to protest or voice concern regarding the impact of a joint case management order on *Lexecon* waivers at the time the order was filed); *In re Carbon Dioxide Indus. Antitrust Litig.*, 229 F.3d 1321, 1326 (11th Cir. 2000) (rejecting plaintiffs' attempt to "switch horses mid-stream" by requesting remand away from the Middle District of Florida on the first day of jury selection, and stating that if the plaintiffs "believed that they had a right to have their cases remanded to their original districts, they should not have asked the court to try the case in Orlando").

### B. Plaintiffs Received Consideration for Their *Lexecon* Waivers.

Plaintiffs' assertion that their *Lexecon* waivers were made "without consideration" is baseless. Of course there was consideration. Plaintiffs were given something of great value in return: the chance to have their cases designated as bellwethers and tried ahead of other cases. To the extent a waiver was necessary (given that this District is Defendants'

4

home venue), Defendants also waived their rights under *Lexecon* by consenting to these cases being considered as bellwethers. *See Solis v. Lincoln Elec. Co.*, No. 1:04-cv-17363, 2006 WL 266530, at *5 (N.D. Ohio Feb. 1, 2006) ("[T]here is no question that their designation as plaintiffs in this [bellwether] process pre-supposed a waiver of any objection to venue in this district. . . . All parties proceeded on the assumption that both cases would be tried in this district. In other words, all of plaintiffs' actions in this litigation, to this point, confirm that, as to those plaintiffs designated for treatment as a bellwether case, they agreed to waive any venue-based objection to this Court's trial of those cases.").

### C. The Status of Discovery Is Immaterial.

Next, Plaintiffs assert that "only limited discovery has taken place" and that "no answer has been filed by Defendants," implying that retracting these waivers will not result in any undue prejudice or waste. This ignores the fact that the bellwether selection process took several months, and (if Plaintiffs are allowed to retract their waivers) it will set back the MDL by several more months if the selection process needs to be restarted.

Plaintiffs also provide no authority for the proposition that the status of discovery constitutes good cause to retract a *Lexecon* waiver. Even so, it is simply not correct to say that only limited discovery has taken place. Both sides have served and responded to written discovery in the eight bellwether cases. The parties also have collected medical records, and Defendants have pursued discovery from Plaintiffs' treaters and healthcare facilities. Plaintiffs have also served "placeholder" deposition notices for treater depositions. And it is not true that Defendants have not answered; they filed a Master

5

Answer that expressly applies to these cases and all other cases in the MDL.  (MDL Dkt. No. 105 at 2.)

### D. Retracting Waivers Is Meaningless in Cases, Such as *Partlow*, Where the Remand Court Is the District of Minnesota.

Finally, the "withdrawal" of *Lexecon* waivers is meaningless in many of these cases. Bellwether plaintiff Pearlie Partlow is an example.  Partlow's short-form complaint alleges she would have filed her case in the District of Minnesota *regardless of the Court's direct filing order*.  (16-cv-2144 Dkt. No. 1 at ¶ 4 ("Proper Venue: The District Court in which remand trial is proper and where the Complaint would have been filed absent the direct filing order by this Court is the District of Minnesota.").)  Therefore, even if Partlow's case were de-designated as a bellwether, the MDL were dissolved, and the cases were remanded, Partlow's case would remain here in the District of Minnesota.

## CONCLUSION

Defendants respectfully request that the Court preclude Plaintiffs from retracting their *Lexecon* waivers.  Plaintiffs have failed to demonstrate good cause.  Plaintiffs knowingly and voluntarily consented to trial in this venue in order to be considered or selected as bellwethers, and they cannot now "unring the bell" because they are dissatisfied with a foreseeable choice-of-law ruling or the jury verdict in the *Gareis* case.  If they no longer believe they can prevail at trial, then they should dismiss their cases.

Bellwether discovery should continue in accordance with the Court's pretrial scheduling order.

Dated: June 11, 2018                                  Respectfully submitted,

*s/ Benjamin W. Hulse*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
       bhulse@blackwellburke.com
       myoung@blackwellburke.com

Lyn Peeples Pruitt
MITCHELL WILLIAMS SELIG
  GATES & WOODYARD
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
Phone: (501) 688-8869
Fax: (501) 688-8807
Email: lpruitt@mwlaw.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company and Arizant Healthcare Inc.**