UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Actions | MDL No. 15-2666 (JNE/FLN)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER CONCERNING PLAINTIFFS' JUNE 2018 SUBPOENAS TO W.J. MINKOWYCZ, Ph.D. AND THE UNIVERSITY OF ST. THOMAS** |

Without the required leave of Court, Plaintiffs have once again served an untimely subpoena on W.J. Minkowycz, Ph.D., seeking a deposition and documents regarding the general causation expert work of Defendants' CFD expert, Dr. John Abraham (a professor of engineering at St. Thomas). (*See* Decl. of Monica L. Davies ("Davies Decl."), Exs. 1-2.) Plaintiffs also simultaneously served a subpoena on the University of St. Thomas that seeks many of the same documents that are sought in the Minkowycz subpoena, in addition to privileged communications between Dr. Abraham and defense counsel. Expert discovery with respect to general causation issues closed on August 16, 2017 (*See* MDL Dkt. No. 1188), and there is no reason to reopen it. Plaintiffs have no new basis to pursue the discovery that the Court disallowed the first time they sought it. Defendants request that the Court enter a protective order requiring Plaintiffs to withdraw these subpoenas, on the grounds that they are untimely and unnecessary, and inappropriately seek privileged communications between Defendants' counsel and Dr. Abraham.

Plaintiffs first served a subpoena on W.J. Minkowycz, Ph.D. on February 15, 2018, seeking documents and a deposition regarding an article published in August 2017 by Defendants' CFD expert, Dr. John Abraham. The Court quashed the subpoena, noting that general causation discovery had closed and that the record was clear as to the salient facts. (*See* MDL Dkt. No. (Order) 1168 at 1 ("[T]he state of the record is clear regarding the facts: J.P. Abraham's 2017 article was published at the direction of the editor-in-chief of Numerical Heat Transfer: An International Journal of Computation and Methodology without further review or comment from others skilled in the field of computation fluid dynamics.").) Undeterred, Plaintiffs served an identical subpoena on Dr. Minkowycz on June 20, 2018 again seeking a deposition and documents regarding Dr. Abraham's article.[1] (*See* Davies Decl., Ex. 1.) The subpoena should once again be quashed.

Nothing has changed that makes the subpoena any more appropriate now than it was in February. Plaintiffs are seeking general causation discovery – nearly a year after the time for general causation discovery expired – and have once again failed to seek leave of Court to do so. Simply adding the name of two current bellwether plaintiffs to the caption does not change the nature of the discovery Plaintiffs seek, nor does it make it okay. The

---

[1] Plaintiffs argued during the *Gareis* trial that Magistrate Judge Noel's Order states that Dr. Abraham's article was not peer-reviewed. (*See* Davies Decl., Ex. 3 (Gareis Trial Tr.) at 1704:10-13.) That is not true. As set forth above, Magistrate Judge Noel plainly stated that, after review by Dr. Minkowycz, the article was not sent for "*further*" review by "*others*" in the field. (*See* MDL Dkt. No. 1168 at 1 (emphasis added).) It was reviewed by Dr. Minkowycz, however – thus being "peer-reviewed" – and there is nothing in the record to the contrary.

2

subpoenas violate this Court's orders and the federal Rules, and Defendants thus request a Protective Order barring them.

The same is true with respect to Plaintiffs' subpoena to the University of St. Thomas. In addition to seeking belated general causation discovery, Plaintiffs' subpoena improperly seeks privileged communications among Dr. Abraham, his assistants, and Defendants, in violation of Fed. R. Civ. P. 26(b)(4)(C). (*See* Davies Decl., Ex. 2.)

## ARGUMENT

**A.    Plaintiffs' Subpoenas Are Untimely and Inappropriate.**

Dr. Abraham has submitted expert reports that rebut Plaintiffs' CFD simulations. Dr. Abraham published the CFD and experimental findings from his general causation report in an article entitled "Comprehensive Review and Study of the Buoyant Air Flow Within Positive-Pressure Hospital Operating Rooms," published in the Journal of Numerical Heat Transfer. The article does not alter any of the opinions Dr. Abraham has offered in these proceedings, and he did not rely on the publication of the article in his testimony during the *Gareis* trial. (*See* Davies Decl., Ex. 3 (Gareis Trial Tr.) at 1709:15-18 ("Q: And if your article had never been published at all, peer reviewed at all, would it have any impact on the opinions that you've reached in this case?  A: It would not.").)

Plaintiffs learned that Dr. Abraham's article had been accepted for publication at his July 20, 2017 general causation deposition, and questioned Dr. Abraham about it at that time. (*See* MDL Dkt. No. 659 (Pl. Resp. Opposing Defs.' Mot. To Take Discovery Concerning New Augustine Article Relied Upon by Plaintiffs and Their Experts) at 5 (confirming that Plaintiffs learned of Dr. Abraham's article on July 20, 2017).)  Yet

3

Plaintiffs chose not to seek discovery relating to the article during the discovery periods set forth in this Court's scheduling orders.

Plaintiffs first attempted to subpoena Dr. Minkowycz in February 2018. Defendants sought a protective order at that time, on grounds that the subpoena was untimely and inappropriately served without leave of Court. At the hearing on Defendants' motion, Plaintiffs' counsel confirmed for the first time that Plaintiffs wanted Dr. Minkowycz's deposition because they suspected some sort of impropriety with respect to the "peer-reviewed" status of Dr. Abraham's article. (*See* Davies Decl., Ex. 4 (March 12, 2018 Mot. Hrg. Tr). at 48:12-22.) But as the Court observed at that time, there is no dispute as to the underlying facts; the parties only disagree as to how those facts should be interpreted.

> THE COURT: Is it clear or is it my understanding, then, that what you're telling me the state of the record is that this article was described as being peer-reviewed when it wasn't?
>
> MR. GOSS: I think that's plaintiffs' position, although –
>
> THE COURT: What's your position?
>
> MR. GOSS: Well, our position is that it was reviewed by the editor in chief. So in that sense, it was peer reviewed.
>
> THE COURT: Okay. But everybody agrees -- I guess that's the question.
>
> MR. GOSS: Right.
>
> THE COURT: All of it is spin or interpretation. You're – but it – everybody agrees the facts are it was submitted for publication, the editor in chief reviewed it, the editor in chief accepted it, and there were no other comments from other people skilled in the art?

>MR. GOSS: That's right, Your Honor. That's absolutely right.
>
>\* \* \* \*
>
>THE COURT: So I guess then my ultimate question is, why do we need to go to Chicago to depose this guy? Everybody agrees – nobody else reviewed this article but the editor in chief, period, end of sentence. Why do we need to – what more do you need? The record is clear, that's what you want it to show, right?
>
>MS. ZIMMERMAN: Your Honor, I think that's correct.

(*See id.* at 44:4-21, 46:17-23.) The Court thus granted Defendants' motion and quashed the February 2018 subpoena to Dr. Minkowycz.

Plaintiffs nevertheless have again subpoenaed Dr. Minkowycz for deposition (to which they have demanded he bring documents), unilaterally scheduled for July 20, 2018. They have also subpoenaed the University of St. Thomas – with a return date of July 5, 2018 – seeking all documents relating to Dr. Abraham's article and the CFD work performed in connection with this litigation, as well as all communications among Dr. Abraham, his assistants, and Defendants relating to that work. Apart from the privilege issues implicated by Plaintiffs' subpoena to the University of St. Thomas (addressed below), both subpoenas are clearly outside the timeframe allowed for general causation discovery. Nothing about Dr. Abraham's article, its review, or publication can credibly be claimed to relate to case-specific issues.[2]

---

[2] Notwithstanding the fact that these subpoenas were purportedly served in connection with the *Axline* and *Hives* matters, they are clearly about general causation issues. Dr. Abraham has not disclosed a case-specific opinion in either case, and would not be called upon to do so prior to the close of fact discovery under the deadlines in the Court's scheduling order.

Plaintiffs' belated service of these subpoenas also stands in stark contrast to the position they took in August 2017, when Defendants sought leave under the Federal Rules to subpoena third parties in connection with an article published by Scott Augustine. At that time, Plaintiffs strongly objected to Defendants' request, claiming that the Court should not grant leave for additional discovery after the close of general causation discovery, absent "extraordinary circumstances." (*See* MDL Dkt. No. 659 at 5.) Plaintiffs' counsel specifically referenced Dr. Abraham's article as an example of how "[s]tudies, articles, and other literature will continue to be published beyond the discovery period," arguing that discovery regarding such matters is not appropriate unless "the new material is being used as important support for an expert's opinion" or "substantially alters an expert's opinion or a party's theory of the case." (*Id.*) Although Dr. Abraham's article was published that same month, Plaintiffs did not request leave to pursue further discovery regarding it – tacitly acknowledging that the publication does not affect the opinions disclosed in Dr. Abraham's report.

More importantly, Plaintiffs' service of the belated subpoenas disregards this Court's prior orders and the Federal Rules of Civil Procedure. This Court has already ruled that "late third-party discovery requests and extra depositions must stop." (MDL Dkt. No. 682 at 4.) If Plaintiffs believed they could show good cause why an exception should be made for the late third-party discovery and extra deposition they now seek, they should

---

Moreover, even assuming the subpoena can be fairly characterized as case-specific discovery pertaining to plaintiffs Axline and Hives (which it cannot), the date that Plaintiffs unilaterally selected for Dr. Minkowycz's deposition is outside the current deadline for case-specific discovery in those matters as well.

have come before the Court. Instead, they are attempting to circumvent the rules – and the schedule set by this Court – by adding the names of two bellwether plaintiffs to the caption to create the pretense that the subpoenas somehow relate to case-specific issues. (*See* Davies Decl., Exs. 1-2.) They do not. Regardless of Plaintiffs' continued efforts to impugn Dr. Abraham's integrity, Dr. Minkowycz's decision to publish the article, and/or the discretion exercised by Dr. Minkowycz as Editor-in-Chief of his journal, the facts have not changed. Plaintiffs are free to characterize those facts as they wish, but they do not need any deposition or additional third-party documents to do so.

This Court and other courts in this District have consistently found a protective order to be an appropriate remedy under such circumstances. *See, e.g., Minnesota Supply Co. v. The Raymond Corp.*, No. Civ. 99-832 JRT/FLN, 2002 WL 31898162, at *1-2 (D. Minn. Dec. 27, 2002) (protective order prohibiting plaintiff from "serving or enforcing subpoenas to non-parties" was appropriate where plaintiff served subpoena after discovery cut-off in "an improper attempt to circumvent the scheduling order") (Noel, J.); *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 177 F.R.D. 443, 445 (D. Minn. 1997) (granting motion prohibiting defendant from serving or enforcing subpoenas after discovery closed); *see also Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077-78 (D. Minn. 2015) (plaintiff could not use his untimely discovery responses as evidence where he failed to seek relief from deadlines under the scheduling order and simply served the responses after the discovery cut-off; "[t]he Local Rules require parties to strictly comply with scheduling orders") (Ericksen, J.). The Court should likewise enter a protective order here.

7

**B.      Plaintiffs' Subpoena to the University of St. Thomas Improperly Seeks Work Product.**

Plaintiffs' subpoena should also be barred because its seeks privileged documents. Under the 2010 amendments to the Federal Rules of Civil Procedure, communications between a party's attorneys and their expert witnesses are privileged except to the extent they

> (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). "The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing those communications to searching discovery." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. CV 14-3103 (SRN/FLN), 2016 WL 6914995, at *6 (D. Minn. May 18, 2016) (Noel, J.) (citing with approval Fed. R. Civ. P. 26, Committee Notes on Rules – 2010 Amendment). "Protected 'communications' include those between the party's attorney and assistants of the expert witness." (*Id.*)

Plaintiffs should not be allowed to use their subpoena to St. Thomas to circumvent the rules. "[Rule 26(b)(4)(c)] operate[s] as a control, or brake if you will, on the potential runaway use of the subpoena duces tecum to compel the production of the evidence of experts retained by a party to testify at trial." *Johnson v. Mead Johnson & Co., LLC*, No. CV 11-225 (JNE/LIB), 2012 WL 12894473, at *7 (D. Minn. May 21, 2012). Plaintiffs'

8

broad subpoena embodies the "runaway use of the subpoena duces tecum" that Rule 26 was amended to prevent.

**C.     If Plaintiffs Are Permitted to Reopen Discovery, Defendants Should be Permitted to Pursue Discovery Regarding the Article Published by Plaintiffs' Expert Said Elghobashi.**

As the Court knows, Plaintiffs' CFD expert, Dr. Elghobashi, also performed CFD simulations in connection with this litigation. He provided the "boundary conditions" – air, temperature, air velocity, the locations of "inlets" to the room, and other details – to another researcher, Dr. Sourabh Apte. Dr. Apte then generated CFD models using his proprietary software code and the "Stampede" supercomputer at the University of Texas at Austin. (*See generally Gareis v. 3M Co., et al.*, No. 16-cv-4187, Dkt. No. 47.)

Despite the discovery they seek from Dr. Minkowycz, Plaintiffs have refused to allow discovery into the publication and peer review of their expert's article, "Effect of Heated-Air Blanket on the Dispersion of Squames in an Operating Room," published in January 2018. Dr. Said Elghobashi is the senior author of the paper; Plaintiffs' consulting expert Dr. Apte is the corresponding author and the remaining authors are Dr. Apte's students. The editors of the Journal in which the article was published recently published an updated conflicts disclosure, noting Drs. Elghobashi and Apte's role in this litigation. But there remains a glaring omission – there is no mention that the work reported in the article was funded entirely by Plaintiffs' counsel, who clearly have a vested income in the outcome of the research. Because Dr. Elghobashi did not himself submit the article, he does not know what conflict information, if any, was provided to the journal. (*See* Davies

9

Decl., Ex. 5 (Elghobashi Dep.) at 38:8-25.)  Dr. Apte, who submitted the article to the journal, has not been deposed.

In a deposition subpoena directed to Dr. Elghobashi, Defendants requested the same categories of documents Plaintiffs now seek from Dr. Minkowycz.  Plaintiffs refused to produce anything, however, claiming that the documents are protected because they relate to the "peer review process."  (*See id.* at 15:22-16:6 (responding to Defendants' request for communications with journal editors regarding the article, Plaintiffs' counsel stated that the requested documents "will not be produced").)  If Plaintiffs are allowed to reopen general causation discovery and proceed with the deposition of Dr. Minkowycz, Defendants must likewise be allowed to pursue discovery concerning Dr. Apte's submission of Dr. Elghobashi's article.  At a minimum, this would include production of the same categories of documents Plaintiffs seek from Dr. Minkowycz, and a corresponding deposition of Dr. Apte to discover the facts and circumstances behind his decision to keep the Journal in the dark about who funded his work.

## CONCLUSION

Defendants respectfully request that this Court enter a protective order requiring Plaintiffs to withdraw their untimely and improper subpoenas to Dr. Minkowycz and the University of St. Thomas.  Plaintiffs have flouted this Court's scheduling orders and the Federal Rules, and they have not demonstrated good cause to reopen discovery.  In addition, Plaintiffs' subpoena to the University of St. Thomas improperly seeks privileged communications among Dr. Abraham, his assistants, and Defendants concerning his expert

work in connection with these proceedings. For these reasons, and those discussed further herein, both subpoenas should be quashed.

Dated: June 25, 2018

Respectfully submitted,

<u>*s/Monica L. Davies*</u>
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
Monica L. Davies (MN #0315023)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com
mdavies@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Email: bridget.ahmann@faegrebd.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***