**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |

This Document Relates to:
ALL CASES

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 37 MOTION TO BAR PLAINTIFFS' NEW GENERAL CAUSATION EXPERT OPINIONS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

I. THE COURT BIFURCATED EXPERT DISCOVERY INTO TWO PHASES: GENERAL CAUSATION AND BELLWETHER CASE-SPECIFIC .......... 2

II. THE COURT DISALLOWED SUR-REBUTTAL REPORTS .......... 4

A. The Court Expressly Prohibited Plaintiffs from Disclosing a Sur-rebuttal Report to Critique Dr. Abraham's CFD .......... 4

B. Notwithstanding the Court's Clear Order, Plaintiffs Have Disclosed Dr. Bushnell to Critique Dr. Abraham's CFD .......... 5

III. DR. DAVID'S "SUPPLEMENTAL REPORT" SEEKS TO IMPROPERLY ADD NEW ALTERNATIVE DESIGN OPINIONS .......... 6

A. According to Dr. David, His Original General Causation Expert Report Disclosed His Full Opinions on Alternative Design .......... 6

B. Dr. David's Supplemental Report Discusses Alternative Designs that Were Available at the Time of His Original Report .......... 8

ARGUMENT .......... 9

I. THE COURT SHOULD BAR PLAINTIFFS FROM USING DR. BUSHNELL'S DISALLOWED SUR-REBUTTAL OPINIONS .......... 9

II. THE COURT SHOULD BAR DR. DAVID'S IMPROPER BOLSTERING OF HIS ALTERNATIVE DESIGN OPINIONS .......... 11

A. Dr. David's Report Is Improper Addition of New Opinions Rather than Allowable Supplementation under Rule 26(e) .......... 11

B. Plaintiffs Cannot Show that Their Late Disclosure of Dr. David's Opinions Is Harmless .......... 14

C. The Supplemental Opinions Also Are Not Substantially Justified by the Court's Rulings in *Gareis* .......... 15

CONCLUSION .......... 16

**INTRODUCTION**

Plaintiffs served three expert reports in the *Axline* case. Dr. William Jarvis's report relates to the specifics of Ms. Axline's case. The reports of Dr. Nathan Bushnell and Dr. Yadin David do not. Plaintiffs should be barred from using the belated and improper opinions disclosed in Bushnell's and David's reports in any motion, hearing, or trial. Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2)(A)(ii), 37(C)(1).

Dr. Bushnell's report is (as Plaintiffs' counsel admitted at the August 16 status conference) a sur-rebuttal to the general causation rebuttal report of Defendants' CFD expert, Dr. John Abraham. More than a year ago, Plaintiffs specifically requested leave of Court to serve a sur-rebuttal to Dr. Abraham's report, and the Court definitively denied that request. Plaintiffs have violated the Court's order and should now be barred from using Dr. Bushnell's opinions, as provided by Federal Rules of Civil Procedure 16(f)(1)(C) and 37(b)(2)(A)(ii). Those rules provide that a party that disobeys a scheduling or discovery order may be prohibited "from introducing designated matters in evidence."

Dr. David's new report is called a "supplement" to his original general causation report served on March 31, 2017. It attempts, improperly, to add major new alternative design opinions, proposing seven patient warming products in addition to his previous list of four. Under Rule 26(e), filling in gaps is fine, and so is correcting errors. Addressing newly published studies is acceptable. It is also inevitable in a lengthy, complex litigation that an expert may discover and wish to disclose additional studies that support her or his ***previously disclosed*** opinions. But parties cannot expand their expert disclosures after the deadline by adding significant new opinions, especially when that bolstering is prejudicial

to the other side. *See, e.g.*, *3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, No. 03-3364 (MJD/JGL), 2005 WL 6007042, at *5 (D. Minn. Aug. 29, 2005).

Improper, prejudicial bolstering is exactly what Plaintiffs are attempting here: Dr. David is proposing seven additional devices as "alternative designs," even though all of them were available at the time of his original report. The supplementation is not harmless, as Defendants have had no opportunity to seek third-party fact discovery on the products David has now identified. Accordingly, Plaintiffs should be barred from using Dr. David's new opinions in any motion, hearing, or trial. Fed. R. Civ. P. 37(c)(1) (party that fails to make a timely disclosure or supplement "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless").

## BACKGROUND

### I. THE COURT BIFURCATED EXPERT DISCOVERY INTO TWO PHASES: GENERAL CAUSATION AND BELLWETHER CASE-SPECIFIC.

From the first scheduling order entered in the MDL, the Court and the parties have bifurcated discovery into two phases: "general causation" and "bellwether case-specific" discovery. *See* MDL ECF No. 27, Pretrial Order No. 4. "General causation" discovery is a bit of a misnomer, in that the parties and the Court have always understood it to mean discovery on general issues (not just causation) that are common to all or nearly all cases in the MDL. Under Pretrial Order No. 17, initial expert reports on general causation – that

is, the expert reports supporting Plaintiffs' general positions across all cases – were due March 31, 2017.[1]

By contrast, "bellwether case-specific" discovery is discovery relating to the specific facts of an individual bellwether case. As Plaintiffs' counsel explained to the Court, a case-specific expert could be an anesthesiologist or orthopedic surgeon who opined on the specific facts of the bellwether case:

> THE COURT: Ms. Conlin, what kind of experts are we talking about for these case specifics?
>
> MS. CONLIN: It's possible that in a specific case we may want, for example, an anesthesiologist or an orthopedic surgeon, but there is going to be considerable overlap between the experts that we've disclosed and perhaps our case specific experts. So perhaps to the extent we're going to name somebody new for a case specific putting in a deadline for that, that would be fine, but right now, we've also got our main experts who may be opining on case specific issues as well.
>
> MAGISTRATE JUDGE NOEL: When you talk about an orthopedic surgeon or an anesthesiologist, would these be treating doctors or just some orthopedic surgeon who has expertise in infectious disease in connection with open wounds or something like that?

---

[1] The Court defined initial reports as the expert reports of the parties bearing the burden of proof, which would be Plaintiffs for all or nearly all issues, as Judge Noel explained:

> MAGISTRATE JUDGE NOEL: So my understanding of the current pretrial order number 4 [the antecedent to Pretrial Order No. 17] is initial expert reports and disclosures are due on December 1st of 2016. And that by "initial expert," I understand that to be any expert witness that a party is going to call to testify about an issue as to which that party has the burden of proof. So under these circumstances, nearly all of the initial experts presumably would be on the plaintiff's side.

(Hulse Decl. Ex. A, 9/8/16 MDL Status Conf. Tr. at 18:14-22). Rebuttal reports were the reports of the parties who did not bear the burden of proof h– that is, Defendants.

> MS. CONLIN: Well, it could be a treating orthopedic surgeon or it could be an orthopedic surgeon that's opining on a case specific issue.

(Hulse Decl. Ex. B, 6/15/17 MDL Status Conf. Tr. at 37:24-38:17.) Deadlines for disclosure of bellwether case-specific experts have been set on a case-by-case basis.

## II. THE COURT DISALLOWED SUR-REBUTTAL REPORTS.

### A. The Court Expressly Prohibited Plaintiffs from Disclosing a Sur-rebuttal Report to Critique Dr. Abraham's CFD.

From Pretrial Order No. 4 onwards, the Court set deadlines for "initial" and "rebuttal" general causation expert reports but did not allow for sur-rebuttal reports.

During the general causation phase, Plaintiffs petitioned the Court to serve sur-rebuttal reports in reply to Defendants' expert reports. The Court repeatedly rejected Plaintiffs' petition. Following Defendants' disclosure of rebuttal reports, Plaintiffs sent a letter to the Court acknowledging that "Pretrial Order 17 prohibits Plaintiffs from serving rebuttal reports" but suggesting an amendment to the order to allow for disclosure of sur-rebuttal opinions. (Hulse Decl. Ex. C, 6/6/17 Ciresi ltr.) The Court again rejected this proposal:

> MAGISTRATE JUDGE NOEL: . . . I think we've covered this previously. It's the Court's position that whichever party has the burden of proof on an issue as to which you wish to call an expert witness, you need to disclose that report and the identity of the expert in accordance with the initial expert disclosure dates. Any party who wants to call an expert witness to rebut what an initial expert's report has said needs to disclose a rebuttal expert report by the rebuttal disclosure date. ***There will be no replies to expert rebuttal reports.*** The only thing left to do after an initial report and a rebuttal report have been disclosed is to depose each of those experts.

(Hulse Decl. Ex. B, 6/15/17 MDL Status Conf. Tr. at 47:16-48:3 (emphasis added).)

In response to the Court's instructions, Plaintiffs specifically requested permission to serve a sur-rebuttal to the expert report of Dr. Abraham, Defendants' CFD expert. Plaintiffs argued that Dr. Abraham had not only rebutted the report of Plaintiffs' CFD expert, Dr. Said Elghobashi, but also affirmatively offered his own CFD model. (*Id.* at 48:10-18.) Plaintiffs indicated that they now wanted to critique Abraham's CFD through a sur-rebuttal. Defendants noted in response that Dr. Abraham's CFD was shown to the Court and Plaintiffs on "Science Day" on May 19, 2016 and had been posted on 3M's website afterwards.[2] Plaintiffs therefore had ample notice of Abraham's CFD and an opportunity to criticize it in their initial reports. (*Id.* at 49:19-25.) Judge Noel reiterated the Court's ruling that "there will be no expert sur-rebuttal reports." (*Id.* at 51:7-11.)

### B. Notwithstanding the Court's Clear Order, Plaintiffs Have Disclosed Dr. Bushnell to Critique Dr. Abraham's CFD.

Dr. Bushnell is an engineer who works for a distributor of CFD software. (Hulse Decl. Ex. H, Bushnell Rpt. at 1.) His August 13, 2018 report is a sur-rebuttal to Abraham's CFD studies of Bair Hugger Models 750 and 505, as Plaintiffs' counsel conceded at last week's MDL status conference. (See Hulse Decl. Ex. I, 8/16/18 MDL Status Conf. Tr. at 23:25-24:2.) Dr. Bushnell does not mention Plaintiff Nancy Axline or address any of the facts of her surgery. Nor does he address any of the flaws in Dr. Elghobashi's CFDs that Defendants demonstrated at the MDL *Daubert* hearing and in the *Gareis* trial. His undated

[2] Plaintiffs' own CFD expert, Dr. Elghobashi, cited Dr. Abraham's CFD is his general-causation report. (Hulse Decl. Ex. F, Elghobashi Rpt. at 7.). Elghobashi even relied on Abraham's CFD for certain boundary conditions in his own CFD. (*Id.* at 7, 32.)

report is devoted entirely to purported "errors" in Dr. Abraham's CFD models. Plaintiffs' counsel was almost certainly referring to Dr. Bushnell's work when they asked the Court for leave to serve a sur-rebuttal to Dr. Abraham at the June 15, 2017 status conference. Bushnell also attended Dr. Abraham's MDL deposition a few weeks later – meaning he was likely retained in June, at the time of Plaintiffs' request – and Plaintiffs advanced several of Bushnell's critiques at the deposition.[3] (Hulse Decl. Ex. E, Abraham 7/20/17 Dep. at 2 (noting attendance of Nathan Bushnell).) In short, Bushnell's report is both a rehash of arguments Plaintiffs have already made against Dr. Abraham, and an obvious attempt to end-run the Court's prohibition on sur-rebuttal reports.

## II. DR. DAVID'S "SUPPLEMENTAL REPORT" SEEKS TO IMPROPERLY ADD NEW ALTERNATIVE DESIGN OPINIONS.

### A. According to Dr. David, His Original General Causation Expert Report Disclosed His Full Opinions on Alternative Design.

On March 31, 2017, Plaintiffs disclosed Dr. David's general causation expert report. Dr. David is a biomedical engineer. One purpose of his report is to attempt to satisfy Plaintiffs' burden (a burden they carry under the law of nearly every state) to prove the existence of feasible safer alternative designs for the Bair Hugger system. Plaintiffs did not previously offer any other expert opinions on alternative design.

Dr. David's original report offered the general opinion that "the most appropriate alternative designs for operative patient warming devices are those which do not circulate

[3] For example, at the deposition Plaintiffs advanced Bushnell's assertion that Dr. Abraham erred by not running his transient model long enough. (Hulse Decl. Ex. E, Abraham 7/20/17 Dep. at 294:4-295:2.)

air in the surgical environment." (MDL ECF No. 316, David. Rpt. at 43.) He then discussed several specific products that he asserted do not circulate air or otherwise pose a lower risk:

- The VitaHEAT UB3, an electric heating mattress designed to provide "primarily conductive heat without convection." (*Id.* at 38.)
- The Berchtold TableGard system, which "uses a closed recirculation system to provide conductive[4] warming." (*Id.* at 39.)
- The Mistral-Air, a forced-air-warming system that incorporates a HEPA filter instead of the high-efficiency .2 micron filter used in the Bair Hugger system. (*Id.* at 40.)
- The Cincinnati Sub Zero WarmAir, another forced-air system that David claims "produces significantly less airflow than the Bair Hugger" by using a blanket without perforations. (*Id.* at 42.)

At Dr. David's August 1, 2017 deposition, Plaintiffs' counsel asked him to identify "other design concepts which are feasible to be made without the same risk mechanism that you identified in your report." ***He did not identify any other alternative designs beyond the four identified in his original report***. (Hulse Decl. Ex. D, David Tr. at 293:5-16.)

[4] Conductive warming involves transferring heat by direct contact, such as via an electric heating pad. The Bair Hugger system employs convective warming, which involves transferring heat by movement of warm air. (MDL ECF No. 249, Order at 2.)

**B. Dr. David's Supplemental Report Discusses Alternative Designs that Were Available at the Time of His Original Report.**

The Court excluded Dr. David's alternative opinions as to patient warming products other than the TableGard for various reasons addressed in the briefing and at oral argument. Following the jury verdict for Defendants, Plaintiffs apparently decided to greatly expand the range of "alternative" warming products in service of Dr. David's opinion.

Dr. David's supplemental report – disclosed 17 months after his original report – describes seven additional products and warming methods that he maintains are safer alternatives to the Bair Hugger system. (Hulse Decl. Ex. E, David Supp. Rt. at 1.) As David's report makes clear, all but one of the publications he relies upon were available when he disclosed his original report on March 31, 2017, and all were available by his August 1, 2017 deposition:

| **Newly Disclosed "Alternative Design"** | **Date of David's Support** |
|---|---|
| Kanmed WarmCloud, which "[m]uch like the Berchtold Tablegard discussed in my initial report . . . uses forced-air to achieve underbody heating without exhausting air around the operating site." | May 2008 study published in the *European Journal of Anaesthesiology*. (*Id.* & n.3) |
| Inditherm, a conductive mattress. | August 2011 guidance document published by the National Institute for Health and Clinical Excellence. (*Id.* at 1-2 & n.5) |
| LMA PerfecTemp, an "underbody resistive warming system." | June 2011 study published in *Anesthesia & Analgesia*. (*Id.* at 2 & n.11.) |

| | |
|---|---|
| Barrier Easy Warm, a "disposable, active self-warming blanket." | December 2013 poster presentation on trial of this product. (*Id.* at 3 & n.17.) |
| Reflective blankets. | July 2016 study published in the *Journal of Arthoplasty*. (*Id.* & n.21.) |
| Cotton blankets. | November 2008 study published in the *British Journal of Anaesthesia*. (*Id.* at 3-4 & n.25.) |
| Prewarming. | 2001 study published in the *Lancet*. (*Id.* at 4 & n.26.) |

There is no reason Dr. David could not have given these opinions in his original general causation report. Of course, there is also nothing case-specific about Dr. David's report, as confirmed by his titling of it as a supplement to his general causation report. He makes no reference to Ms. Axline or her surgery.

## ARGUMENT

### I. THE COURT SHOULD BAR PLAINTIFFS FROM USING DR. BUSHNELL'S DISALLOWED SUR-REBUTTAL OPINIONS.

Plaintiffs should be barred from using the opinions disclosed in the Bushnell report. Because Plaintiffs have violated the Court's express prohibition against sur-rebuttal reports, they are subject to Rules 16(f)(1)(C) and 37(b)(2)(A), which specify sanctions for violating a Rule 26(f) scheduling order. The least of these sanctions – prohibiting Plaintiffs from using Dr. Bushnell's opinion in any motion, hearing or trial – is sufficient to address

the violation. Fed. R. Civ. P. 37(b)(2)(A)(ii) (as a sanction for violating a discovery order, court may prohibit the party "from introducing designated matters in evidence").

There is no dispute that Bushnell's report is a sur-rebuttal to Dr. Abraham's rebuttal report, which critiques Abraham's CFD. Plaintiffs specifically asked the Court on June 15, 2017 to be allowed an expert sur-rebuttal for the purpose of critiquing Abraham's CFD. The Court responded with a firm no. Rule 26(a)(2)(D) supports the Court's ruling by providing for disclosure of initial and rebuttal reports but not sur-rebuttal. Moreover, there was no surprise to Plaintiffs that Dr. Abraham would rely on his own CFD in rebutting Dr. Elghobashi. As noted above, Dr. Abraham's CFD was shown at "Science Day" in May 2016, was posted on 3M's website shortly thereafter, and was even relied upon by Dr. Elghobashi in choosing inputs for his own CFD. Plaintiffs made a strategic decision not to critique Dr. Abraham's CFD in their original expert reports, and now they must live with it. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998) (noting that "[i]t is risky for a [party bearing the burden of proof] to sit back and wait to see what a defense expert might say before seeking an expert report" and finding no abuse of discretion in district court's exclusion of plaintiff's belatedly disclosed expert opinion).

This Court may exclude Bushnell's opinions from evidence under Rules 16(f)(1)(C) and 37(b)(2)(A)(ii) even if Plaintiffs' violation of the Court's schedule caused no prejudice to Defendants. *Cf. Comstock v. UPS Ground Freight, Inc.*, 775 F.3d 990, 992 (8th Cir. 2014) (requiring demonstration of prejudice only where sanction sought under Rule 37(b)(2) is dismissal of the case). In any event, Defendants *have* been prejudiced. Defendants must now incur the time and expense of deposing Dr. Bushnell and having Dr.

Abraham prepare a sur-sur-rebuttal to Dr. Bushnell's critique. Moreover, the Court should not have to consider a *Daubert* motion on a purely rebuttal expert whose report should never have been served in the first place. That is why Defendants respectfully request that the Court bar his opinion now, to avoid that time and expense, rather than waiting until pretrial motions are briefed several months down the road.

## II. THE COURT SHOULD BAR DR. DAVID'S IMPROPER BOLSTERING OF HIS ALTERNATIVE DESIGN OPINIONS.

### A. Dr. David's Report Is Improper Addition of New Opinions Rather than Allowable Supplementation under Rule 26(e).

This Court also should bar Plaintiffs from using Dr. David's new alternative design opinions in any motion, hearing, or trial. Fed. R. Civ. P. 37(c). Dr. David's new opinions are beyond the scope of allowable supplementation under Rule 26(e).

Rule 26(e)(1) provides that a party must supplement its expert reports if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." But "[a] supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)." *Cook v. Rockwell Corp.*, 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Id.* Most

district courts take the same view. *See, e.g.*, *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PJH (EMC), 2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) ("A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report."); *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness's report"); *In re Asbestos Prods. Liab. Litig. (No. VI)*, 289 F.R.D. 424, 425 (E.D. Pa. 2013) ("Rule 26(e) is not an avenue to correct failures of omission because the expert did an inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions.") (internal citations omitted); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159-60 (S.D. Ind. 2009) (setting forth a new potential cause for a particular incident is not a proper supplement). MDL courts also have taken the same approach. *See, e.g.*, *Robbins v. Boston Sci. Corp.*, No. 2:12-cv-01413, 2016 WL 3189248, at *11 (S.D. W.Va. June 7, 2016); *In re Bear Stearns Cos., Inc. Secs., Derivative & ERISA Litig.*, 263 F. Supp. 3d 446, 452-53 (S.D.N.Y. 2017).

At least one court in this District has followed this line of cases as well. In *3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC*, No. 03-3364 (MDJ/JGL), 2005 WL 6007042, at *5 (D. Minn. Aug. 29, 2005), the magistrate judge chose "to follow the[se] wise decisions" and granted 3M's motion to strike the supplemental report of the defendant's expert, which was disclosed as errata to his deposition testimony. The magistrate concluded:

> DDE is attempting to use the supplementation requirements of Rule 26(e) [sic] to untimely bolster its expert's report by correcting failures of omission caused by the expert's inadequate or incomplete preparation. Such a strategy is not supplementation. Because the amendments to Dr. Balke's deposition were served long after discovery closed, they are time-barred, and DDE's offer of a second deposition of Balke is inapposite. Discovery deadlines are meaningful, and this Court will not allow a party to unilaterally choose to extend them by over a year.

*Id.* Defendants have not identified any case from this District, or any Eighth Circuit decision, that rejects this line of authority.

The logic of *3M Innovative Props.* applies here. Plaintiffs are engaged in an obvious effort to expand Dr. David's alternative design opinions after losing the *Gareis* trial. Dr. David is not merely correcting a point of incompleteness (by discussing additional research supporting his opinions), fixing an inaccuracy, or addressing newly available information. As is clear on the face of his supplemental report, all seven of the new "alternatives" were available at the time of his original report, and all the studies he cites in support of them were available before he sat for his deposition. These seven additions to Dr. David's list of "safer alternative" products represent a major new substantive disclosure, well beyond what Rule 26(e) permits. *See, e.g., Robbins*, 2016 WL 3189248, at *11 (excluding supplemental expert report under Rule 37(c)(1) that "provides new opinions based on additional pathological examinations, though the relevant samples appear to have been excised in early 2013, well before the deadline for expert disclosures").

Defendants recognize that, in complex serial litigation like this, expert opinions may evolve somewhat from one case to the next as the disputed scientific issues achieve greater definition. Experts may address previously undisclosed studies that provide support for (or

contradict) the opinions expressed in their original reports. So long as the new material falls within the parameters of the expert's originally disclosed opinions, this is fine. Defendants also appreciate that it may become necessary to disclose additional experts to "share the burden" of working up hundreds of cases in a protracted MDL. But Dr. David's supplemental report cannot be justified along either of these lines. By adding seven new devices and modalities to his original list of "safer alternatives" – all of which were available by the time of Dr. David's MDL deposition – he has opened entirely new areas that cannot be adequately addressed through another deposition.

### B. Plaintiffs Cannot Show that Their Late Disclosure of Dr. David's Opinions Is Harmless.

Plaintiffs cannot carry their burden to show their belated disclosure of Dr. David's seven additional alternative designs is harmless. *See Transam. Life. Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 592 F. Supp. 2d 1087, 1094 (N.D. Iowa 2008) (burden is on the proponent of the late-disclosed evidence or information to show that the late disclosure was substantially justified or harmless). Of course, Defendants must now incur the cost of their own experts responding to David new opinions. Even beyond that, Defendants have had no opportunity to conduct fact discovery on any of the newly identified products or warming methods. Defendants have had no opportunity to depose the researchers who conducted the studies that Dr. David cites or subpoena their manufacturers for safety information. Much of the key evidence in this litigation comes from document discovery and depositions of the authors of significant studies. While, in theory, general causation discovery could be reopened to allow that discovery now, it could not be done without wrecking the current

schedule and pushing the *Axline* trial back by several months. The better approach is for the Court to keep the current *Axline* schedule, maintain the integrity of the March 31, 2017 cutoff for Plaintiffs' general causation reports, and reject Plaintiffs' belated attempt to bolster Dr. David's opinion.

### C. The Supplemental Opinions Also Are Not Substantially Justified by the Court's Rulings in *Gareis*.

Plaintiffs also do not and cannot carry their burden to demonstrate that their belated disclosure of Dr. David's additional alternative design opinions is substantially justified. *See Transam.*, 592 F. Supp. 2d at 1094 (burden is on the proponent of the late-disclosed evidence or information to show that the late disclosure was substantially justified or harmless).

At the August 16 status conference, Plaintiffs argued that Dr. David's supplement is justified by this Court's decision in *Gareis* to allow Plaintiffs to present the Berchtold TableGard as an alternative design at trial. According to Plaintiffs, Dr. David did not address conductive patient warming systems in his original report because the Court had ordered that conductive systems could not legally qualify as alternative designs. He is now addressing conductive systems. (Hulse Decl. Ex. I, 8/16/18 MDL Status Conf. Tr. at 23:2-9.) Plaintiffs are incorrect on all points.

First, Dr. David *did* address conductive patient warming systems in his original report. He addressed the VitaHEAT UB3, the same product that had been the subject of the Court's order. (MDL ECF No. 316, David Rpt. at 38-39.) A few weeks before the disclosure of Dr. David's report, Magistrate Judge Noel had granted a protective order to

VitaHEAT, concluding that the UB3 "is not an alternative design, but an entirely different product. . . . The Bair Hugger system could not be modified to become a conductive patient warming device." (MDL ECF No. 249 at 3; affirmed at MDL ECF No. 304.) Plaintiffs' objection to Judge Noel's order was still pending at the time Dr. David's report was disclosed, and Dr. David still addressed the UB3 and conductive warming. Dr. David's original report also, of course, addressed the Berchtold TableGard, which warms patients conductively. (MDL ECF No. 316, David Rpt. at 39 (David states that the TableGard "uses a closed recirculation system to provide conductive warming").)

Second, the Court has not reversed the VitaHEAT discovery ruling. At most, it modified that ruling through its summary judgment decision in *Gareis*. The basis for Judge Noel's ruling, which the Court affirmed, was Plaintiffs' failure to demonstrate that the Bair Hugger system could be modified to incorporate the conductive warming technology of the VitaHEAT UB3 system, which is essentially an electric mattress. (MDL ECF No. 249 at 3.) In *Gareis*, the Plaintiffs presented a triable question of whether the Bair Hugger system could be modified to incorporate the technology of the TableGard. The Court did not thereby reopen the door to the VitaHEAT UB3 or any other electric-mattress system as an alternative design, which are so significantly different that their technology cannot be incorporated into the Bair Hugger system.

**CONCLUSION**

For the foregoing reasons, the Court should bar Plaintiffs from using the newly disclosed opinions of Dr. Bushnell and Dr. David in any motion, hearing, or trial.

Dated: August 23, 2018

Respectfully submitted,

*s/Benjamin W. Hulse*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Email: bridget.ahmann@faegrebd.com

Lyn Peeples Pruitt
MITCHELL WILLIAMS SELIG GATES & WOODYARD
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
Phone: (501) 688-8869
Fax: (501) 688-8807
Email: lpruitt@mwlaw.com

**Counsel for Defendants 3M Company and Arizant Healthcare Inc.**