```
1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF MINNESOTA

3     ------------------------------------------------------------
                                        )
4                                       )
       In Re:  Bair Hugger Forced Air   )  File No. 15-MD-2666
5      Warming Devices Products         )  (JNE/DTS)
       Liability Litigation             )
6                                       )  August 20, 2018
                                        )  Minneapolis, Minnesota
7                                       )  Courtroom 9E
                                        )  3:00 p.m.
8                                       )
                                        )
9     ------------------------------------------------------------

10            BEFORE THE HONORABLE DAVID T. SCHULTZ
                  UNITED STATES MAGISTRATE JUDGE

11

12                      (MOTIONS HEARING)

13     APPEARANCES

14     FOR THE PLAINTIFFS:          MESHBESHER & SPENCE LTD.
                                    Genevieve M. Zimmerman
15                                  1616 Park Avenue
                                    Minneapolis, MN  55404
16

17     FOR THE PLAINTIFFS(appearing by telephone:)

18                                  KENNEDY HODGES, LLP
                                    Gabriel Assaad
19                                  4409 Montrose Blvd
                                    Suite 200
20                                  Houston, TX 77006

21                                  LANGDON & EMISON
                                    Robert Langdon
22                                  Brett Emison
                                    Patricial Campbell
23                                  911 Main Street
                                    Lexington, MO  64067

24

25            (Appearances continued next page:)
```

```
1    FOR THE DEFENDANT:            BLACKWELL BURKE P.A.
                                   Jerry Blackwell
2                                  Corey Gordon
                                   431 South Seventh Street
3                                  Suite 2500
                                   Minneapolis, MN  55415
4


5
     COURT REPORTER:               Maria V. Weinbeck, RMR, FCRR
6                                  U.S. Courthouse
                                   300 South Fourth Street
7                                  Suite 1005
                                   Minneapolis, MN  55415
8


9            Proceedings recorded by mechanical stenography;
     transcript produced by computer.
10

11

12

13

14

15

16

17

18

19

20

21

22

23
                 *      *      *      *      *      *      *
24

25
```

```
 1                    P R O C E E D I N G S

 2                       (3:01 p.m.)

 3              THE COURT:  Good afternoon, everyone.  Have a

 4      seat, please.

 5              The folks calling in from your side are on the

 6      line so here they are.  Good afternoon.  Hello?

 7              UNIDENTIFIED COUNSEL ON TELEPHONE:  Good

 8      afternoon, Your Honor.

 9              UNIDENTIFIED COUNSEL ON TELEPHONE:  Good

10      afternoon, Your Honor.

11              THE COURT:  We're on the record in the Bair Hugger

12      MDL 15-2666.  Starting with the plaintiffs' counsel who are

13      on the phone, would you note your appearances for the

14      record?  And I'll tell you up front, it's sometimes hard to

15      make out what you're saying so speak slowly and distinctly

16      if you would.

17              MR. ASSAAD:  Gabriel Assaad for the plaintiff.

18              MR. LANGDON:  Robert Langdon for the plaintiff.

19              MS. CAMPBELL:  Patricia Campbell for the

20      plaintiffs.

21              MR. EMISON:  Brett Emison for the plaintiff.

22              MS. ZIMMERMAN:  Good afternoon, Your Honor.

23      Genevieve Zimmerman also for the plaintiffs.

24              THE COURT:  Good afternoon to all five of you.

25      For the defendants?
```

```
 1              MR. GORDON:  Good afternoon, Your Honor.  Corey
 2      Gordon for 3M.
 3              THE COURT:  Good afternoon.
 4              MR. BLACKWELL:  Good afternoon, Your Honor.  Jerry
 5      Blackwell speaking for 3M.
 6              THE COURT:  Good afternoon.  All right.  Here's
 7      what we're going to do.  I know the plaintiffs did not want
 8      to have or were not requesting an in person conference at
 9      least not yet on this matter, but having read the party's
10      letters, it was obvious to me that it would be beneficial to
11      everyone if we did have this proceeding as if it were a
12      formal motion.
13              I don't need additional briefing on it.  And what
14      I would like to do is have each of you use about five
15      minutes and tell me anything else you think I should know
16      starting with Mr. Gordon and then whoever on the plaintiffs'
17      side wishes to speak.  And then I'm going to tell you, at
18      least I think I'm going to tell you how we're going to
19      resolve this situation.
20              But, Mr. Gordon, if you want to go first or,
21      Mr. Blackwell, if you're arguing.
22              MR. GORDON:  Thank you, Your Honor.  Very briefly,
23      I think that there are basically two buckets that these
24      issues fall into it.  There's the process bucket and then
25      there's the substantive bucket of Dr. Lombardy's deposition.
```

1    And the process one is the one that has the potential to

2    have a great deal of impact on the whole MDL going forward.

3    We've got a lot of depositions left to do, presumably.  And

4    the process, the biggest process concerns the conduct of

5    counsel.  In particular, essentially ruling on their own

6    objections or ruling on their own interpretations of the

7    Court Order.

8           What happened in Dr. Lombardy's deposition,

9    despite counsel's calculations of when they went on the

10   video record and when at the direction of plaintiffs'

11   counsel went off the video record.  I have 57 minutes and

12   16 seconds of actual direct exam time, and I can give the

13   Court the time stamps on that, but just to briefly bring it

14   up to where we are.  And what happened was I still had time

15   left, and I asked a question and plaintiffs' counsel

16   objected and then as part of the objection said, "It has

17   been one hour and counsel has alotted his entire time for

18   deposition of this witness.  Let's go off the record."

19   Boom, the court reporter went off the record, and my

20   protestations of the fact that I still had time left were

21   not recorded.  I decided not to make an issue of it with

22   Dr. Lombardi there.  It wasn't his issue.

23          Then we went back on the record for plaintiffs'

24   exam.  It was about 30, 35 minutes.  And at the end of that,

25   plaintiff said, "I think I'm almost done.  I'm going to take

1  a two-minute break to talk to my colleagues, and we'll go

2  back on the record."  Whereupon, he took a break.  They went

3  out in the hall.  They came back in and said, "We're not

4  going on the record anymore.  We're done."

5        So I did not have an opportunity to put anything

6  on the record.  The court reporter, oddly in my experience,

7  refused to go on the record unless both parties agreed, and

8  so my protestations again we're not included on the record.

9        Substantively, there were a series of questions

10 that I had believed to be precluded by the understanding

11 that Dr. Lombardi would not be asked any expert causation

12 opinions.  And where that plays out in terms of the Axline

13 case is we've now gotten the report, the expert report of

14 Dr. Jarvis, their only case specific report.  And one of the

15 things that Dr. Jarvis says is in light of my review of the

16 deposition of Dr. Lombardi, I agree that there is no

17 evidence for PJI was caused by the trash bin in the

18 operating room, the Bovey machine, chairs in the operating

19 room or the cabinets in the operating room, and that's that

20 series of questions.  The obvious, kind of the dog that

21 didn't bark, is there any evidence that the Bair Hugger

22 caused it, and it seems reasonably clear from his testimony

23 that he would have said no to that as well.  They didn't ask

24 it, and I was precluded from asking it.  And when I say I

25 was precluded, I mean it was a force I haven't had a lot of

1    experience with.  It was a very small cramped conference

2    room and five lawyers standing kind of leaning over the

3    table and telling me how under the Court Order I was

4    absolutely precluded from asking any more questions.  I

5    guess because they decided that my time was up.  And it was

6    not a pleasant experience for me.  And, substantively, I

7    think it was potentially harmful.  But on a going-forward

8    basis, it really is I don't think the way we need to

9    proceed.

10           By the way, I have a highlighted copy of

11    Dr. Jarvis's report, if the Court is interested.

12           THE COURT:  Sure, I'll take that.

13           MS. ZIMMERMAN:  Do you have a copy for me as well?

14           MR. GORDON:  Sure.

15           THE COURT:  Anything further, Mr. Gordon?  Are you

16    good?

17           MR. GORDON:  I'm good.  Thank you, Your Honor.

18           THE COURT:  Okay.  Thank you.  Mr. Assaad or

19    Ms. Zimmerman or whomever?

20           MS. ZIMMERMAN:  Your Honor, I'm going to do the

21    best I can hear.  I know Mr. Assaad is calling in

22    internationally, and I'm afraid the connection may not be as

23    good as we might hope.

24           Your Honor asked if there was anything that we'd

25    like to do to supplement the record or the letters that we

1    have submitted thus far.  I would start by saying that the

2    plaintiffs would request formal motion practice be brought

3    before the Court.  We think respectfully that the approach

4    that the defendants took with this particular dispute was

5    inappropriate.  There are no affidavits presented before

6    Your Honor.  And we certainly would be prepared to gather

7    and submit those both by the lawyers that were present

8    during the course of this deposition and also from the court

9    reporters.

10            What Mr. Gordon has not reported to Your Honor is

11   that during the pendency or during the conclusion as the

12   counsel were packing up, Mr. Gordon shouted at the court

13   reporter that she should in fact remember who was paying her

14   and asked her to get back on the record.  The videographer

15   reminded the court reporter that in fact that it is against

16   policy.  There was a videographer that said this, that it

17   was against the policy for anyone to go back on the record

18   without both parties consent.

19            Now what we reminded Mr. Gordon of is that there

20   is actually in fact a Court Order, Pretrial Order number 25

21   directly on point.  And at the bottom of page 1, moving on

22   to the top of page 2, Judge Ericksen has confirmed that for

23   treater depositions, and that's what Dr. Lombardi was, each

24   side may use half of the total time set aside for

25   questioning and neither party may use the other's unused

1    time.

2            So as Mr. Assaad proceeded through the examination

3    that he prepared for Dr. Lombardi, he did, in fact, rely

4    upon what Mr. Gordon has done with respect to his questions.

5    And I'd be happy to provide Your Honor a copy of the

6    deposition of Dr. Narcelles, who is another treater.

7            Mr. Provencher, who is another attorney for

8    defense counsel, he did what we would normally expect in

9    this kind of a case.  At the very end of his initial direct

10   examination, he says, "Dr. Narcelles, I appreciate your

11   time.  I'm going to pass the witness and reserve the

12   remainder of my time."  And then there's a conversation

13   about the total time.  The videographer confirms it's one

14   hour and 22 minutes, and Mr. Provencher confirms in fact

15   there are eight minutes remaining.

16           Now, I appreciate that Your Honor is jumping into

17   this case a couple of years in, but the issue with respect

18   to time on depositions has been a hotly -- it's been an

19   issue throughout the course of this litigation in terms of

20   folks watching the clock closely and making sure to ask

21   questions.  And an appropriate and experienced attorney such

22   as Mr. Gordon certainly could reserve time at the beginning.

23           At the beginning of the transcript that Your Honor

24   has been provided, the parties indeed confirmed that Dr.

25   Lombardy's counsel had reserved only two hours for a

1    deposition, and so that was to be split evenly, and

2    Mr. Gordon confirmed that that was his understanding as

3    well.  That's at the top of page 9.  And so the time was

4    equally split.

5              These are court reporters and videographers

6    arranged for by defense counsel.  And if Mr. Gordon or any

7    counsel for defendant had some sort of issue or thought

8    there was an error with respect to the time keeping,

9    certainly they had the opportunity to make the record

10   despite counsel's representations to Your Honor that that

11   was not afforded to them.

12             And this is one of the dangers candidly, Judge,

13   with respect to treating an informal letter such as the

14   informal letter submitted to Your Honor as a motion because

15   we don't have affidavits from the other lawyers that were

16   here or from the court reporter and the videographer that

17   were there or information from the attorney that was

18   representing Dr. Lombardi.  And certainly those would be

19   important additional facts to have particularly given the

20   kind of relief that defense counsel asks for in this letter,

21   which is to somehow preclude plaintiffs from bringing more

22   than one lawyer or more than two lawyers to a deposition.

23   Your Honor certainly could look at the transcript.  No

24   plaintiffs' lawyers spoke out of turn.  There was only one

25   lawyer that appeared and asked questions during the course

1    of Dr. Lombardi's questions.  The questions were properly

2    limited to form objections.  And other than that, the

3    deposition really went forward quite smoothly.

4            Mr. Assaad concluded his deposition and his

5    questions based on the questions that Mr. Gordon had asked

6    of this witness.  And it's certainly true that the issue

7    about whether or not any kind of surgical instruments were

8    contaminated, whether the implant itself was known to be

9    contaminated or carrying bacteria, these are all issues that

10   came up in the last case that we tried.  And so these are

11   the kinds of issues that we asked of this particular

12   treater, who is a fact witness with expertise, so that we

13   can try to narrow those issues so that when the jury is

14   ultimately considering this question, those outstanding

15   items of dispute where we don't really know was it the

16   sponge bucket?  Was it something on the wall?  Was it the

17   chair?  Was it a contaminated surgical tool?  Well, we've

18   eliminated those based on the testimony from Dr. Lombardi

19   and that was certainly appropriate and proper.

20           Mr. Gordon asked questions with respect to

21   causation as well, and Your Honor can look at the beginning

22   of the deposition where Dr. Lombardi's counsel declined to

23   limit her client's testimony with respect to causation.  She

24   said that, you know, hey, he's a doctor.  He's inclined to

25   offer expert opinions on certain things and that happens.

1    And I know we all run into this issue where there are fact

2    issues with expertise.  I think Dr. Lombardi fits in that

3    situation, but we've got a lot of kind of issues in front of

4    Your Honor based on what the plaintiffs respectively believe

5    is an improper letter brief.  And I trust that if one of my

6    colleagues on the phone has something critical to offer or

7    if Your Honor has questions, I'd be happy to answer them.

8            THE COURT:  Why don't you stay there for a second.

9    In case there is anyone on the phone who has something that

10   they are dying to add to Ms. Zimmerman's presentation, speak

11   now.

12           MR. ASSAAD:  Your Honor, this is Gabriel Assaad.

13           THE COURT:  Okay, Mr. Assaad, go ahead.

14           MR. ASSAAD:  I just want to add one other fact

15   that I disagree with defense counsel's position is that he

16   had more than 57 minutes.  According to the time transcript,

17   it was an hour and two minutes.  And even though there might

18   have been a minute or two of introductions, that would still

19   go -- it would split evenly between both the plaintiff and

20   the defendant.  He still used over the alotted time, which

21   is 50 percent of the deposition, so I disagree with his 57

22   minutes.  I don't know how he came to that number.  But

23   either way you look at it, you gave him more time than he

24   was alotted with respect to, well, according to the Court

25   Order in the case.

1          MS. ZIMMERMAN:  The last thing I would add is we

2     also in a break offered to call the Court and that wasn't

3     done.

4          THE COURT:  I can tell you that the Court to the

5     extent that you were going to call me, the Court would just

6     as soon not hear from folks during the course of the

7     deposition, though obviously that can happen.

8          Ms. Zimmerman, I want to address one thing that I

9     think is -- well, you've raised the issue of whether or not

10    we need formal motion practice and briefing and affidavits,

11    and here's the way I'm approaching it.

12         Number one, I do have letters from counsel for

13    both sides.  All of you are officers of the Court.  I don't

14    imagine that anybody is representing anything that they know

15    to be untrue.  And so affidavits from the various lawyers,

16    even if they conflict, in my view, won't add anything to

17    what is before me.  I suspect that I would get an affidavit

18    from Mr. Gordon that would say essentially what Mr. Gordon

19    has said.  I would get an affidavit from you or Mr. Assaad

20    or whomever else that would say essentially what your side

21    has said and that would not advance the ball.  Whether or

22    not either of you would convince Ms. Sellers, the lawyer for

23    Dr. Lombardi, or Dr. Lombardi himself or the court reporter

24    or videographer to submit a declaration or an affidavit, I'm

25    frankly a little bit skeptical, but I don't think it would

 1    advance the ball.

 2          Okay, so here's what we're going to do.  I'm going

 3    to take a brief break.  We're going to take a recess of

 4    about five minutes and then I'm going to come back on the

 5    record and tell you how I think we should handle this.

 6    Okay?  All right.  Thank you.   Court is in recess.

 7                    (Short recess at 3:17 p.m.)

 8                        (In open court.)

 9                          (3:23 p.m.)

10          THE COURT:  Be seated.  Thanks.

11          All right.  We're back on the record in the Bair

12    Hugger MDL No. 15-2666.  I've indicated to the parties that

13    I'm going to issue my Order, and I'm going to do that.  I

14    acknowledge that the plaintiffs would like to have more

15    formal proceedings in this regard, but I declined to do that

16    for a couple of reasons:

17          Number one, as I've indicated, I don't think that

18    a series of affidavits or declarations from the involved

19    lawyers is going to clarify the circumstances of this matter

20    any further.

21          Number 2, the law on the various matters that I'm

22    going to order gives me essentially plenary discretion, and

23    I intend to exercise it, and so I don't see that that will

24    also advance the ball.

25          However, it also remains true that whatever party

1    or parties feels aggrieved by this can go visit Judge

2    Ericksen, and she may well feel that I have not given one

3    side or the other their full and fair opportunity, though I

4    dare say that I wouldn't predict that, to be honest with

5    you.

6              So, number one, on the issue of limiting the

7    number of lawyers that either side can have at a deposition,

8    I'm not going to do that.  I don't think I can do that.

9    However, I can limit the number of lawyers who have a

10   speaking part and lest it's been unclear, on the plaintiffs'

11   side of the V, I expect there to be only one lawyer making

12   objections and questioning witnesses.

13             Same on the defendant's side of the V, one lawyer

14   making objections and asking questions.  That will both

15   facilitate the timing and the process of the deposition and,

16   hopefully, it will at least keep some of the disruptive

17   behaviors to a minimum.

18             Number 2, on the issue of Mr. Gordon's time, I'm

19   going to order that Mr. Gordon be given an additional five

20   minutes, and here is my rationale for that.  First of all, I

21   start with Judge Ericksen's order, which does indeed say

22   that for treater depositions, each side may use half of the

23   total time set aside for a deposition and neither party may

24   use the other's unused time.

25             That order is a practical order, and Judge

1    Ericksen can't possibly be expected to shall we say order in

2    advance all of the circumstances that may affect that

3    timing.  The only way to understand that order is that if a

4    deposition is going to go two hours, that there's two hours

5    of testimonial time and each side gets an hour of that time.

6    That's the only sensible way of interpreting that.

7          Now, if it takes a little bit longer, two hours

8    and ten minutes, I have no doubt that the treating doctor

9    and his or her lawyer will in fact accommodate counsel on

10   the expert 10 minutes.  Certainly in my experience and

11   practice, that is in fact how it worked.

12         So if we assume that each side has an hour of

13   testimonial time, and this is another reason why I do not

14   need affidavits.  We start with the deposition transcript,

15   and I would say, first of all, I would remind the parties

16   that I ordered the defense to supply the transcript.  The

17   plaintiffs supplied it, and I appreciate that but given the

18   issues in this case, I'm a little mystified, frankly, that

19   the plaintiff did not file a time stamped deposition

20   transcript.  The questioning begins at 17:05:45, and it

21   continues to 18:04:45.  That's 59 minutes of testimonial

22   running time.

23         If you then take out the 36 seconds of time that

24   was expended by a colloquy that appeared at the instigation

25   of Mr. Assaad at page 35 and 36 of the transcript, we're now

1    at 58 minutes and 24 seconds.  And then if you count up the

2    number of objections that Mr. Assaad lodged, and I'm not

3    saying for any reason they were improper, they were totally

4    proper, but if we're going to hold each other strictly

5    accountable for the amount of testimonial time each side

6    has, then we take out the time of the objections, and my

7    count there were 48 objections.

8            So if we take out on average a second and a half

9    per objection, that gets us real close to 57 minutes and

10   13 seconds.

11           I say all this not because that's what I'm

12   suggesting people need to do in the future.  I'm doing this

13   to illustrate what I would say is the silliness of this

14   endeavor.  Mr. Gordon had some time left.  In light of the

15   questioning that went on, it was appropriate that he be

16   given the opportunity to ask one or two followup questions.

17   If this were in fact at trial, and those questions were

18   asked by Mr. Assaad even in a time limited trial, I suspect

19   that he would be allowed to ask that one question, which

20   was, "is there any evidence that the Bair Hugger caused that

21   infection?"

22           Now, further on that topic, I am very skeptical

23   that Judge Ericksen will allow the questions that were asked

24   by Mr. Assaad as to whether there was any evidence that the

25   chair caused the infection, et cetera, that that line of

1    questioning will in fact be allowed in at the trial of this

2    matter, but I don't know, I'm not Judge Ericksen, and she

3    hasn't had the opportunity to fully consider the issue.

4         So in light of the fact that I am confident the

5    plaintiffs won't withdraw that line of questioning, I think

6    it is appropriate that Mr. Gordon be given an opportunity to

7    follow up on that line of questioning, and that line of

8    questioning only.  I have every confidence that can be done

9    within five minutes, and I would suggest that the parties

10   work to find a way that it be done whether it's by video

11   conference or however you choose to do it.

12        MS. ZIMMERMAN:  Your Honor, if I may I have two

13   quick --

14        THE COURT:  In a minute.  You will note, this is

15   all part of my order.  I want you to have a full record so

16   that if either side chooses to go to Judge Ericksen on it,

17   she has a transparent record of what I've ordered and why.

18        You will note that I've given Mr. Gordon a little

19   bit more than the time a strict accounting would say he had

20   left to question.  And I do that, I give him a little extra

21   time as a sanction to the plaintiffs or against the

22   plaintiffs for the following reasons:

23        As I understand the practice from my days, if,

24   well, you do not go off the record unless all parties agree

25   to go off the record.  And I don't think it was appropriate

1   for the plaintiffs to not allow a record to be made in these

2   circumstances.  Therefore, as a sanction for that, I'm

3   giving Mr. Gordon the extra 2 minutes and 45 seconds to

4   finish his questioning.  That gets me to the third thing in

5   my order.

6            Number three, henceforth, if the parties have a

7   dispute, number one, they will not go off the record unless

8   all parties agree to go off the record.

9            And number two, this is more a general comment

10  then anything else.  I wasn't there.  Both sides have

11  alleged that the other side behaved badly.  I believe the

12  lawyers can, you know, defend themselves and can take care

13  of themselves.  But, honestly, the court reporter and the

14  videographer and for that matter Dr. Lombardi did not sign

15  on for this.  And whether it's Mr. Gordon or Mr. Assaad or

16  all of them, all of the lawyers who are behaving in an

17  aggressive manner, while I understand that and we've all

18  done it, it is not -- it's just so unfair and unseemly to do

19  that to a court reporter, even the most seasoned one doesn't

20  really like to be stood over as lawyers argue over them.  So

21  let that portion of my order be a warning to everybody.  I

22  understand tempers get high.  I understand there's a lot at

23  stake.  I understand you've been at this for a long time,

24  but don't do that to the court reporter.

25            I believe that's all the issues that were in front

1    of me.  And I know, Ms. Zimmerman, you have something you

2    wish to either clarify or bring to my attention so let me

3    start with you.

4              MS. ZIMMERMAN:  Thank you, Your Honor.  I think

5    just to clarify for the Court's information.  We had never

6    been provided a time stamped transcript and that's the

7    reason we didn't provide that to Your Honor.  We certainly

8    would have.  The first time we saw it is is when Your Honor

9    got it as well.

10             THE COURT:  Duly noted, and so I retract my remark

11   directed at you, Ms. Zimmerman.

12             MS. ZIMMERMAN:  Thank you.  So just to clarify,

13   the plaintiffs also have 25 minutes or so left of our hour,

14   and depending on the nature of Mr. Gordon's questions, we

15   may well need to exercise the remainder of that time as

16   well.  And I respectfully submit that this is there's a lot

17   of other things I think that went on, but I appreciate what

18   the Court's comments have been.  I think that this is the

19   reason that this kind of thing shouldn't be dealt with in an

20   informal letter and that we should have the opportunity for

21   briefing.  I appreciate the Court's indulgence.

22             THE COURT:  Understood.  Here's my suggestion on

23   the issue you've just raised.  I think a lot of this is

24   going to depend on what Dr. Lombardi chooses to do and what

25   his lawyer is willing to allow to be done.

1    So the first thing to be done is whoever is going

2    to communicate with attorney Sellers, communicate clearly

3    that I have allowed by order Mr. Gordon to have additional

4    time to finish that line of questioning. I do not have the

5    ability to order Dr. Lombardi, certainly not on the current

6    record, to sit for any continuation. So that's a matter of

7    voluntary agreement. And if Dr. Lombardi is willing to sit

8    not only for Mr. Gordon's questions but also any unused time

9    of the plaintiffs, then I would say either the parties can

10   agree or we can come back before the deposition and resolve

11   that issue as well. Okay?

12        MS. ZIMMERMAN: Yes, Your Honor.

13        THE COURT: Okay. Mr. Gordon, Mr. Blackwell,

14   anything further from your side?

15        MR. GORDON: I don't think so, Your Honor. Just

16   as an aside, I think there may be a little bit of a time lag

17   because Ms. Sellers gave birth last week.

18        THE COURT: All right. You understand what my

19   position is with respect to you having additional time to

20   complete those questions, Mr. Gordon. If you run into snags

21   of a process nature in getting this accomplished or you need

22   further guidance from the Court, by all means I expect you

23   to come back. I try to do whether it's formal or informal,

24   I try to do it as expeditiously as possible and that may or

25   may not seem fair to the plaintiffs in this particular

1    instance, but I think it's important to get the parties'

2    guidance and get them guidance quickly.  So okay?

3              MR. BLACKWELL:  Thank you, Your Honor.

4              MR. GORDON:  Thank you, Your Honor.

5              THE COURT:  All right.  Court is in recess.

6    Thank you.

7                   (Court adjourned at 3:38 p.m.)

8

9                        *     *     *

10                   REPORTER'S CERTIFICATE

11

12         I, Maria V. Weinbeck, certify that the foregoing is

13    a correct transcript from the record of proceedings in the

14    above-entitled matter.

15

16              Certified by:  *s/ Maria V. Weinbeck*

17                        Maria V. Weinbeck, RMR-FCRR

18

19

20

21

22

23

24

25