```
 1                    UNITED STATES DISTRICT COURT

 2                       DISTRICT OF MINNESOTA

 3        ------------------------------------------------------
                                        )
 4                                      )
          In Re:  Bair Hugger Forced Air )  File No. 15-MD-2666
 5        Warming Devices Products       )  (JNE/DTS)
          Liability Litigation          )
 6                                      )  August 16, 2018
                                        )  Minneapolis, Minnesota
 7                                      )  Courtroom 12W
                                        )  9:50 a.m.
 8                                      )
                                        )
 9        ------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                 UNITED STATES DISTRICT COURT JUDGE
11
              THE HONORABLE DAVID T. SCHULTZ
12               UNITED STATES MAGISTRATE JUDGE

13                      (STATUS CONFERENCE)

14      APPEARANCES

15      FOR THE PLAINTIFFS:         MESHBESHER & SPENCE LTD.
                                    Genevieve M. Zimmerman
16                                  1616 Park Avenue
                                    Minneapolis, MN  55404
17
                                    PRITZKER HAGEMAN
18                                  David Szerlag
                                    45 South Seventh Street
19                                  Plaza Seven Building, Ste. 2950
                                    Minneapolis, MN  55402
20
                                    CIRESI CONLIN LLP
21                                  Michael A. Sacchet
                                    225 South Sixth Street
22                                  Suite 4600
                                    Minneapolis, MN  55402
23
                                    KENNEDY HODGES LLP
24                                  David W. Hodges
                                    711 West Alabama Street
25                                  Houston, TX  77006
```

```
 1    FOR THE PLAINTIFFS (contd):   GOLDENBERG LAW PLLC
                                    Noah Lauricella
 2                                  800 LaSalle Avenue
                                    Suite 2150
 3                                  Minneapolis, MN  55402

 4                                  JOHNSON BECKER, PLLC
                                    Lisa Ann Gorshe
 5                                  444 Cedar Street
                                    Suite 1800
 6                                  St. Paul, MN  55101

 7    FOR THE PLAINTIFFS APPEARING BY PHONE:

 8                                  LEVIN PAPANTONIO
                                    Daniel A. Nigh
 9                                  316 S. Baylen Street
                                    Suite 600
10                                  Pensacola, FL  32502

11                                  MESHBESHER & SPENCE
                                    Holly Sternquist
12                                  1616 Park Avenue
                                    Minneapolis, MN  55404
13
                                    PETERSON & ASSOCIATES, P.C.
14                                  Brian Emerson Tadtman
                                    801 W. 47th Street, Suite 107
15                                  Kansas City, MO  64112

16                                  BERNSTEIN LIEBHARD LLP
                                    Dae Y. Lee
17                                  10 East 40th Street
                                    New York, NY  10016
18
                                    THE OLINDE FIRM, LLC
19                                  Alfred Olinde
                                    Wesley G. Barr
20                                  400 Poydras Street
                                    Suite 1980
21                                  New Orleans, LA  70130

22                                  MORGAN & MORGAN, PA
                                    Heather Cullen
23                                  Michael S. Goetz
                                    Joseph T. Waechter
24                                  201 N. Franklin St 7th Floor
                                    Tampa, FL  33602
25
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                              RAIZNER SLANIA, LLP
                                Jeffery L. Raizner
 3                              Rica Rinosa
                                Amy Hargis
 4                              Erin Stracerner
                                Kristen Gorombol
 5                              2402 Dunlavy Street
                                Houston, TX  77006
 6
                                LONCAR & ASSOCIATES
 7                              William Hymes
                                John L. Coveney
 8                              424 S. Cesar Chavez Blvd
                                Dallas, TX  75201
 9
                                CAPRETZ & ASSOCIATES
10                              Don K. Ledgard
                                James T. Capretz
11                              Patrick B. Martinez
                                5000 Birch St, Suite 2500
12                              Newport Beach, CA  92660

13                              HOUSSIERE DURANT & HOUSSIERE
                                Randall A. Kauffman
14                              Monica Vaughan
                                Tomeca H. Fenner
15                              Shirley Strom-Blanchard
                                1990 Post Oak Blvd Suite 800
16                              Houston, TX  77056

17                              DAVIS & CRUMP, PC
                                Robert Cain, Jr.
18                              Wes Stevenson
                                2601 Fourteenth Street
19                              Gulfport, MS  39507

20                              SKIKOS CRAWFORD SKIKOS &
                                   JOSEPH, LLP
21                              Matt Skikos
                                Darilyn Simon
22                              Julie Tucci
                                One Sansome Street, Suite 2830
23                              San Francisco, CA  94104

24

25
```

4

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                              THE RUTH TEAM
                                Austin J. Grinder
 3                              Steven C. Ruth
                                8600 4th St North
 4                              Saint Petersburg, FL  33702

 5                              LAW OFFICE OF TRAVIS R. WALKER
                                Travis R. Walker
 6                              Julie Treacy
                                Valerie Marshall
 7                              1235 SE Indian Street
                                Suite 101
 8                              Stuart, FL  34997

 9                              ANDREWS & THORNTON
                                Anne Andrews
10                              Lauren Davis
                                Marco Galindez
11                              Bradley East
                                Anthony Scotto
12                              2 Corporate Park, Suite 110
                                Irvine, CA  92606
13
                                MURRAY LAW FIRM
14                              Caroline Whitney Thomas
                                650 Poydras Street
15                              Suite 2150
                                New Orleans, LA  70130
16
                                BROWN & CROUPPEN, PC
17                              Abby Cordray
                                Seth S. Webb
18                              Vanessa Mixco
                                211 North Broadway
19                              Suite 1600
                                St. Louis, MO  63102
20
                                BEASLEY ALLEN
21                              Matthew Munson
                                Renee Lindsey
22                              218 Commerce Street
                                Montgomery, AL  36104
23
                                FITZGERALD LAW GROUP, LLC
24                              Kevin Fitzgerald
                                120 Exchange Street
25                              Suite 200
                                Portland, ME  04101
```

```
1        FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

2                                 PARKER WAICHMAN, LLP
                                  Michael S. Werner
3                                 Nicole Eisner
                                  Giselle Grant
4                                 59 Maiden Lane
                                  6th Floor
5                                 New York, NY  10038

6                                 RANDALL J. TROST, P.C.
                                  Carrie Hancock
7                                 Pam Rodriguez
                                  Randall T. Trost
8                                 801 Main Street
                                  Lynchburg, VA  24504
9
                                  THE MILLER FIRM, LLC
10                                Tayjes M. Shah
                                  The Sherman Building
11                                108 Railroad Avenue
                                  Orange, VA  22960
12
                                  LANGDON & EMISON
13                                Lauren Niendick
                                  Rachel Ahmann (Assistant)
14                                911 Main Street
                                  Lexington, MO  64067
15
                                  LEWIS & CAPLAN
16                                Pet Lewis
                                  Sarah Delahoussaye Call
17                                Amy C. Webster
                                  3631 Canal Street
18                                New Orleans, LA  70119

19                                THE WEBSTER LAW FIRM
                                  Chelsie Garza
20                                Jason C. Webster
                                  6200 Savoy Suite 150
21                                Houston, TX  77036

22                                GOZA & HONNOLD, LLC
                                  Lisa R. Joyce
23                                11181 Overbrook Road
                                  Suite 200
24                                Leawood, KS  66211

25
```

```
 1        FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                                 MARTIN HARDING & MAZZOTI, LLP
                                   Rosemarie Bogdan
 3                                 Kristen Winner
                                   1222 Troy-Schenectady Road
 4                                 P.O. Box 15141
                                   Albany, NY  12212-5141
 5
                                   SHOWARD LAW FIRM PC
 6                                 Elizabeth Whitley
                                   Sarah J. Showard
 7                                 4703 E Camp Lowell Drive
                                   Suite 253
 8                                 Tucson, AZ  85712

 9                                 BACHUS & SCHANKER, LLC
                                   Alexandra Franklin
10                                 Darin Schanker
                                   J. Kyle Bachus
11                                 J. Christopher Elliott
                                   1899 Wynkoop Street, Suite 700
12                                 Denver, CO  80202

13                                 CHAPPELL SMITH & ARDEN, P.A.
                                   Graham L. Newman
14                                 Mark D. Chappell, Jr.
                                   15150 Calhoun Street
15                                 Columbia, South Carolina  29201

16                                 PRITZKER HAGEMAN, P.A.
                                   Wendy Thayer
17                                 45 South Seventh Street
                                   Plaza Seven Building, Ste. 2950
18                                 Minneapolis, MN  55402

19                                 THE AHEARNE LAW FIRM, PLLC
                                   Allan J. Ahearne
20                                 Jessica J. Pauley
                                   Abigail M. Spurney
21                                 24 Main Street
                                   Warwick, NY  10990
22
                                   THE WHITEHEAD LAW FIRM, LLC
23                                 C. Mark Whitehead III
                                   Anna Katherine Higgins
24                                 Eric J. Mausner
                                   Petroleum Tower, Suite 303
25                                 3639 Ambassador Caffery Pkwy
                                   Lafayette, LA  70503
```

```
 1        FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                                 THE REARDON LAW FIRM, PC
                                   John Nazzaro
 3                                 Casandra Haggett
                                   160 Hempstead Street
 4                                 New London, CT  06320

 5                                 LOCKRIDGE GRINDAL NAUEN PLLP
                                   Elizabeth A. Peterson
 6                                 100 Washington Avenue South
                                   Suite 2200
 7                                 Minneapolis, MN  55401-2159

 8                                 BERNHAIM DOLINSKY KELLY
                                   Paula S. Bliss
 9                                 Christina Shuman
                                   4 Court Street
10                                 Plymouth, MA  02360

11                                 BRENT COON & ASSOCIATES
                                   James A. Morris, Jr.
12                                 Matthew R. Willis
                                   Wendy Wafford
13                                 4111 West Alameda Avenue
                                   Suite 611
14                                 Burbank, CA  91505

15                                 CARR & CARR ATTORNEYS
                                   Patrick E. Carr
16                                 Michael Carr
                                   Jack Beesley
17                                 Laurie Koller
                                   Susan Hunter
18                                 4416 South Harvard Avenue
                                   Tulsa, OK  74135
19
                                   HARE WYNN NEWELL & NEWTON
20                                 Donald P. McKenna
                                   Lynne Reed
21                                 Peggy Little
                                   2025 Third Avenue North
22                                 Suite 800
                                   Birmingham, AL  35203
23
                                   KIRTLAND & PACKARD
24                                 Behram V. Parekh
                                   2041 Rosecreans Avenue, Ste 300
25                                 El Segundo, CA  90245
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                              LAW OFFICE OF CHARLES H JOHNSON
                                Charles H. Johnson
 3                              2599 Mississippi Street
                                New Brighton, MN  55112
 4
                                MCEWEN LAW FIRM LTD
 5                              Gregory N. McEwen
                                Emily Robinson
 6                              Tania Krager
                                5850 Blackshire Path
 7                              Inver Grove Heights, MN  55076

 8                              MEYERKORD & MEYERKORD, LLC
                                Joseph D. Klenofsky
 9                              1717 Park Avenue
                                St. Louis, MO  63104
10
                                NAPOLI BERN RIPKA SHKOLNIK LLP
11                              Nicholas R. Farnolo
                                360 Lexington Avenue
12                              11th Floor
                                New York, NY  10017
13
                                LAW OFFICE OF NEAL R. ELLIOTT
14                              Neal R. Elliott, Jr.
                                P.O. Box 80136
15                              Baton Rouge, LA  70898

16                              NEWMAN BRONSON & WALLIS
                                Lauren E. Bronson
17                              2300 West Port Plaza Drive
                                St. Louis, MO  63146
18
                                POGUST BRASLOW & MILLROOD, LLC
19                              Jessica Lowe
                                Eight Tower Bridge, Suite 940
20                              161 Washington Street
                                Conshohocken, PA  19428
21
                                RICHARDSON, PATRICK, WESTBROOK
22                                 & BRICKMAN, LLC
                                Daniel S. Haltiwanger
23                              Missi Cruz
                                1730 Jackson Street
24                              P.O. Box 1368
                                Barnwell, SC  29812
25
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE (contd):

 2                                  SANDERS PHILLIPS GROSSMAN
                                    Randi A. Kassan
 3                                  Michael Nathan
                                    100 Garden City Plaza
 4                                  Suite 500
                                    Garden City, NY  11530
 5
                                    SCHLICHTER BOGARD & DENTON, LLP
 6                                  Kristine K. Kraft
                                    Hillary Grupe
 7                                  Sierra Koelker
                                    100 South Fourth Street
 8                                  Suite 1200
                                    St. Louis, Missouri  63102
 9
        FOR THE DEFENDANTS:         BLACKWELL BURKE P.A.
10                                  Jerry W. Blackwell
                                    Ben Hulse
11                                  Mary Young
                                    Corey Gordon
12                                  431 South Seventh Street
                                    Suite 2500
13                                  Minneapolis, MN  55415

14                                  MITCHELL WILLIAMS
                                    Lyn Pruitt
15                                  425 West Capitol Avenue
                                    Suite 1800
16                                  Little Rock, AR  72201

17      COURT REPORTER:             Renee A. Rogge, RMR-CRR
                                    U.S. Courthouse
18                                  300 South Fourth Street
                                    Suite 1005
19                                  Minneapolis, MN  55415

20           Proceedings recorded by mechanical stenography;
        transcript produced by computer.
21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2                      (9:50 a.m.)
 3            THE COURT:  Good morning, everybody.  Welcome
 4     back.  Please be seated.
 5            Do you know if the phone has been -- phone people
 6     on mute.  Thank you.  I'm just going to check now to make
 7     sure that the --
 8            All right.  People on the phone, can you hear us
 9     all right?
10            UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.
11            UNIDENTIFIED MALE SPEAKER:  Yes, Your Honor.
12            THE COURT:  Okay.  All right.  I'm going to put
13     you back on mute, but I wanted to say good morning and make
14     sure that you were all there.
15            UNIDENTIFIED MALE SPEAKER:  Good morning, Your
16     Honor.
17            UNIDENTIFIED MALE SPEAKER:  Good morning, Your
18     Honor.
19            THE COURT:  Okay.  You are on mute now, so if you
20     are saying "good morning," it's wasted energy.
21            We have Judge Schultz here.  Has he been on the
22     bench for any of these since you have --
23            MR. BLACKWELL:  The last one, Your Honor.
24            THE COURT:  The last one?  Okay.  I remember it as
25     if it was yesterday.  Don't ask me what happened yesterday,
```

1    right?

2              All right.  Well, let's have identifications from

3    first the plaintiffs.  Ms. Zimmerman, you want to start?

4              MS. ZIMMERMAN:  Good morning, Your Honor.

5    Genevieve Zimmerman for plaintiffs.

6              MR. SZERLAG:  David Szerlag for plaintiffs.

7              MR. SACCHET:  Good morning.  Michael Sacchet for

8    plaintiffs.

9              MR. HODGES:  David Hodges for plaintiffs.

10             THE COURT:  And who have we got in the back?  I

11   have got people on my list here.  Noah somebody and Lisa

12   somebody.

13             MR. LAURICELLA:  Good morning, Your Honor.  Noah

14   Lauricella.

15             MS. GORSHE:  Lisa Gorshe.

16             THE COURT:  And you are attorneys representing

17   plaintiffs?

18             MS. GORSHE:  Plaintiffs.

19             MR. LAURICELLA:  Yes, Your Honor.

20             THE COURT:  And they are behind the bar.

21             Mr. Blackwell.

22             MR. BLACKWELL:  Good morning, Your Honor.  Jerry

23   Blackwell speaking for 3M.

24             MS. PRUITT:  Lyn Pruitt for 3M.

25             MS. YOUNG:  Good morning.  Mary Young also for 3M.

 1             MR. HULSE:  And Ben Hulse for 3M.  Good morning.

 2             THE COURT:  Good morning.  And you have got,

 3      sitting behind the bar, you have got --

 4             MR. BLACKWELL:  Corey Gordon, Your Honor.

 5             MS. SCHAFFER:  Haley Schaffer, Your Honor, counsel

 6      for 3M.

 7             THE COURT:  I didn't hear that, but --

 8             I would like to -- let's take a look at the joint

 9      agenda and find something noncontroversial to start with,

10      shall we?  Let's take the overview of the Canadian action.

11             Ms. Zimmerman.

12             MS. ZIMMERMAN:  Yes, Your Honor.

13             Your Honor, I don't think that I have much to add

14      actually on the overview of the Canadian action.  To my

15      knowledge, there has not been additional progress in that

16      litigation and I believe that we're in agreement with that,

17      so I think that that has been just kind of sitting there for

18      a while.

19             I do think that we were able to resolve the

20      question -- we had, I guess, a bit of a dispute at the last

21      hearing about how many cases might be pending.  We had

22      different numbers.  And I think that we are in agreement

23      now.  It's just over 4,800 cases that are pending.

24             THE COURT:  I have got 4,809 on the status

25      conference, so --

1           MS. ZIMMERMAN:  That's right about there.  And I

2     think that the discrepancy last time was that we had not

3     backed out from that number those cases that had been

4     dismissed for one reason or another.

5           THE COURT:  Okay.

6           MR. SZERLAG:  Your Honor, if I may.  The count as

7     of yesterday was 4,848, I believe, pending in the MDL.

8           THE COURT:  Thank you.

9           MR. SZERLAG:  24.  4,824.

10          THE COURT:  It's really important, though, we get

11    that number exactly, so thank you.

12          MR. SZERLAG:  My able assistant Wendy assures me

13    that that is an accurate count.

14          THE COURT:  Thank you, Wendy, wherever you are.

15          Mr. Szerlag, do you want to report on the related

16    state court proceedings as well?

17          MR. SZERLAG:  Good morning again, Your Honor.

18          I don't believe there's anything other than what's

19    in the joint report.  We have not had anything else to

20    really add to what is going on in the pending actions.

21          THE COURT:  The *Bythwood*, the case in Jefferson

22    County, Alabama, I thought when I read through this that it

23    looked like something was happening there.

24          MR. SZERLAG:  Okay.

25          THE COURT:  Or not really.  It's just that

```
 1    October 11, 2018, is the -- what is that?  The discovery
 2    deadline that was set way back?
 3              MR. SZERLAG:  I believe so.
 4              I try to reach out to counsel every month before
 5    the status conference as well and, quite honestly, it's kind
 6    of like a crap shoot whether anybody ever gets back to you
 7    on this, so --
 8              THE COURT:  Well, whether anybody gets back to
 9    you.
10              MR. SZERLAG:  Right.
11              THE COURT:  Once you become a judge, people have
12    to get back to you.
13              MR. SZERLAG:  That's the nice thing.
14              THE COURT:  Just because they want to, I am sure.
15              Okay.  So I think that's it, right, on the related
16    cases?
17              MR. SZERLAG:  Yes.
18              THE COURT:  Okay.  Thank you very much for your
19    report.
20              Let's talk about the status of the discovery in
21    the *Axline* case.  Ms. Zimmerman, I have got here that the
22    primary care physician's deposition was taken.  We know
23    that.
24              MS. ZIMMERMAN:  That's correct.  Sarah Wynn is a
25    physician's assistant.  She's not technically a doctor, but
```

1    that was done on June 26th.

2              THE COURT:  And then Dr. Smith, the infectious

3    disease doctor, of course.

4              MS. ZIMMERMAN:  Correct.

5              THE COURT:  And the plaintiff herself and her

6    spouse have been deposed?

7              MS. ZIMMERMAN:  That's correct.  Yes.

8              THE COURT:  The anesthesiologist, Dr. Narcelles --

9              MS. ZIMMERMAN:  That's correct.

10             THE COURT:  -- was deposed.  And the orthopedic

11   surgeon was again, as we know, deposed on August 1st.

12             MS. ZIMMERMAN:  Correct.

13             THE COURT:  Okay.

14             MS. ZIMMERMAN:  In addition to that, and I think

15   that this appears on the next page --

16             THE COURT:  The operating room inspection?

17             MS. ZIMMERMAN:  That did go forward.

18             THE COURT:  Okay.

19             MS. ZIMMERMAN:  And in addition to that, the

20   plaintiffs have in fact served expert reports in that case

21   as well.

22             THE COURT:  Okay.  Any issues in the inspection --

23             MS. ZIMMERMAN:  No.

24             THE COURT:  -- of the operating room?

25             MS. ZIMMERMAN:  No.

1          THE COURT:  So we're down -- are we just down to

2    one case in the second bellwether pool?

3          MS. ZIMMERMAN:  That's correct, Your Honor.

4          THE COURT:  So what does this mean, "Case-specific

5    written discovery has been served and answered in the other

6    six cases"?

7          MS. ZIMMERMAN:  So in the final pool of eight

8    cases there were two cases that were mutually nominated by

9    both defendants and plaintiffs.  That was the *Axline* and the

10   *Hives* matter.  *Hives* has been dismissed.  There were six

11   other cases.

12         THE COURT:  Okay.

13         MS. ZIMMERMAN:  And so there has been

14   case-specific discovery done there, but we have not done

15   hospital inspections or any kind of depositions or expert

16   reports.  That's not part of a scheduling order just yet,

17   and so that just hasn't proceeded at this point.

18         THE COURT:  Okay.  And then in Other Motions,

19   there's the new trial motion, and we have got the reply or

20   the answer.  And then no reply to that, right?

21         MS. ZIMMERMAN:  We opted not to reply and just

22   leave it on the briefs.  And I don't know if the court

23   expects to be setting that for hearing and taking oral

24   argument, but obviously we defer to the court's preference

25   in that regard.

```
1              THE COURT:  And then so that motion is fully
2      briefed?
3              MS. ZIMMERMAN:  Fully briefed.
4              THE COURT:  And then there's a motion for judgment
5      on the pleadings that I think is not fully briefed; is that
6      correct?
7              MS. ZIMMERMAN:  Yes, Your Honor.  I believe our
8      response is due maybe next Friday.  Defendants noted in the
9      agenda, as I am sure Your Honor is aware, that they would be
10     willing to shorten their time for reply, if the court would
11     like to hear the motion earlier.  It is presently scheduled
12     for hearing at the status conference in September.
13             THE COURT:  What would -- what's their normal -- I
14     mean, it's a pretty short time anyway to reply.
15             MS. ZIMMERMAN:  I think it's seven days.
16             MR. HULSE:  Two weeks.
17             MS. ZIMMERMAN:  Is it two weeks?
18             THE COURT:  Is it two weeks for a reply?
19             MR. HULSE:  Yeah.  So our thought was it would be
20     helpful to get a ruling on this before we have our summary
21     judgment deadline, which is on October 8th, because if
22     granted this would clear out most of the claims, perhaps all
23     of the claims in the case.  So our thought would be to
24     increase the possibility of a resolution for that deadline
25     to shorten our reply to seven days, if that would be able to
```

1    get us a hearing earlier than the September 20th status

2    conference.

3              THE COURT:  I would be happy to have your reply in

4    seven days instead of fourteen days.  I can't guarantee a

5    hearing date before that, but I would rather have it in

6    seven than fourteen.  And so if you could get it in seven,

7    that would be great.

8              MR. HULSE:  We will do that, Your Honor.  And I

9    would add from our perspective it's nonvital to have oral

10   argument on this motion, but, of course, plaintiffs have the

11   right to it if they want it.

12             THE COURT:  Do they have a right to it?

13             MR. HULSE:  Well, I shouldn't have said that.

14   They don't have the right, but they have the right to ask --

15             THE COURT:  You should practice in another

16   district some day.

17             MR. HULSE:  I admit they have the right to ask for

18   it if they want it.

19             THE COURT:  Why don't you sit down now?

20             MR. HULSE:  I will, Your Honor.

21             THE COURT:  All right.  You are done.

22             MS. ZIMMERMAN:  And, of course, one of the

23   benefits of practicing here in the District of Minnesota is

24   that we typically are afforded the right or the opportunity,

25   and we would like to present oral argument if Your Honor

1    would hear us.

2              THE COURT:  They might be in front of you before

3    then too, aren't they?

4              MAGISTRATE JUDGE SCHULTZ:  I believe they will be.

5              THE COURT:  All right.  Well, shall we turn our

6    attention to the pretrial orders or --

7              Ms. Pruitt, hello.  You look like you want to

8    say --

9              MS. PRUITT:  I did, Your Honor.  Something on the

10   status of discovery I think needs to be reported to the

11   court.

12             THE COURT:  I would love to hear it.

13             MS. PRUITT:  As the court may or may not be aware,

14   we extended the time for expert reports to be submitted in

15   the *Axline* case, which is the case scheduled for trial on

16   the 3rd of December.  We extended it just a few days.  We

17   got the expert reports from the plaintiff on Monday

18   the 13th.  And as the court recalls, there was a cutoff for

19   expert reports that concern generic issues and generic

20   opinions that's long since past.  It was actually probably

21   over a year ago.

22             The plaintiffs submitted three expert reports, one

23   of which we have no dispute about, a case-specific report

24   from Dr. Jarvis about the cause of Ms. Axline's infection,

25   but there were two other expert reports that were submitted,

1       one was a supplemental report from Dr. David.  And Your

2       Honor remembers Dr. David who testified in the Gareis trial.

3       He testified about, as the court remembers, alternative

4       designs.  They have now submitted what we consider to be an

5       improper supplemental report by David.  It includes

6       discussion of seven new alternative designs.

7               As the court recalls, there were orders entered by

8       Judge Noel on not allowing discovery on certain alternative

9       designs because a determination had been made that, for

10      instance, conductive warming was not an alternative design,

11      a feasible alternative design, so we didn't conduct any

12      discovery on that.  He, David, has now listed seven new

13      alternative designs, and no discovery has been conducted on

14      any of those.

15              Secondly, with regard to David's report, the

16      information that he is including in this report has been

17      available, Your Honor, from the very beginning.  From the

18      time that he issued his original report, these alleged

19      alternative designs were out there.  The data or the studies

20      or the articles he cites as to his reliance are things that

21      were in -- that were available and out there when he

22      submitted his first report.

23              And, most importantly, with regard to Dr. David,

24      his report is on generic issues.  It is not specific to

25      Mrs. Axline.  And I think everybody understood that we had

1    one deadline for generic reports and another deadline for

2    case-specific reports.  The deadline for case-specific

3    reports was August the 10th.  We extended it to August

4    the 13th.  And they submitted these three reports.  David is

5    not a case-specific *Axline* report.  So we have issues with

6    that report.

7          The second report that we are concerned about is

8    by a gentleman named Nathan Bushnell.  Again, Nathan

9    Bushnell's report is the first time we have seen a report

10   from Nathan Bushnell.  It is not a case-specific report that

11   applies to Mrs. Axline.  It is a generic report.  It is also

12   what we consider to be, Your Honor, improper surrebuttal.

13   It is submitted specifically for the purpose of refuting or

14   counter-acting Dr. Abraham's testimony.  As you recall,

15   judge, Dr. Abraham testified in the Gareis trial.  It is

16   simply submitted to rebut Dr. Abraham's opinion.  And as the

17   court recalls, there have been repeated denials in this

18   litigation of plaintiffs' request to submit surrebuttal

19   expert reports.  And in our view this is simply an end run

20   to try to get around the previous rulings of the court and

21   submit an improper surrebuttal report that has absolutely

22   nothing to do with Ms. Axline.

23          So, in summary, both of these reports are generic,

24   they have been submitted pursuant to a case-specific report

25   deadline, they are too late, and we're extremely prejudiced

1    to have an expert come in and list seven new alternative

2    designs when no discovery has ever been done on those.  It

3    is also improper to try to go around the court's orders on

4    surrebuttal expert reports and now submit this report from

5    Nathan Bushnell.  But the biggest point is these are generic

6    opinions, they do not apply to Mrs. Axline, and the deadline

7    has long since past.  So we are concerned about that, and we

8    wanted to raise the issue with the court so it would come as

9    no surprise.

10            THE COURT:  Do you have copies of the reports of

11   Dr. David and Nathan Bushnell?

12            MS. PRUITT:  Yes.

13            THE COURT:  Ms. Zimmerman, any objection to the

14   court receiving the copies of those at this point?  We are

15   not ready to hear argument, obviously.  We don't have

16   anything.  But I know we are going to be required to read

17   it, so we might as well get it now rather than later,

18   because you may have heard that the district is highly

19   overworked at the moment, so --

20            MS. ZIMMERMAN:  We don't have an objection to the

21   court receiving copies of the orders at this time.

22            THE COURT:  Okay.

23            MS. ZIMMERMAN:  We certainly think that to the

24   extent that the defendants are intending to bring a motion

25   to strike that we would request the opportunity to fully

1     brief those issues.

2          With respect to just kind of previewing issues,

3     given that Ms. Pruitt did that, David's report did not

4     include conductive warming reports on reasonable alternative

5     design in the general causation stage primarily because the

6     court had previously declined, refused to allow us to do

7     discovery on VitaHEAT on the idea or finding that that was

8     in fact not a reasonable alternative design.  That decision

9     was changed with respect to the Gareis case.

10          And so in an abundance of caution and given the

11    law in Ohio, which has a broader standard for a reasonable

12    alternative design, Dr. David has supplemented his general

13    causation report to make clear that things like not warming,

14    things like pre-warming, things like warming with cotton

15    blankets are all appropriate alternatives available to

16    surgeons.

17          THE COURT:  All right.  So we will take the

18    reports either now, if you have them, or as soon as you can

19    get us copies, and then we will be on the lookout for a

20    motion and an explanation.

21          MS. ZIMMERMAN:  And just so we are aware, is this

22    going to be a motion to strike the expert reports or --

23          MS. PRUITT:  We are considering what the proper

24    motion is.

25          MS. ZIMMERMAN:  All right.  And with respect to

1    Nathan Bushnell's report, this is -- it's a rebuttal report

2    to Dr. Abraham's general causation report.  As the court is

3    aware, the plaintiffs have moved to exclude Dr. Abraham

4    under Daubert.  We have renewed that motion in our motion

5    for new trial.  And we continue to believe that Dr. Abraham

6    should not have been permitted to testify.  Dr. Nathan

7    Bushnell's report is simply to outline the errors and the

8    inaccuracies in methodology in Dr. Abraham's report.

9            THE COURT:  So you don't want Bushnell in *Axline*?

10   You are offering Bushnell as part of the motion for a new

11   trial?

12           MS. ZIMMERMAN:  No, Your Honor.  I am sorry if I

13   misspoke.  We do intend to bring Dr. Bushnell as part of

14   plaintiffs' rebuttal case, should defendants intend to bring

15   Dr. Abraham again.

16           THE COURT:  Okay.  All right.  Thank you.

17           MR. BLACKWELL:  Your Honor.

18           THE COURT:  Hello, Mr. Blackwell.

19           MR. BLACKWELL:  There is one other *Axline* issue I

20   wanted to raise and ask a question about, if I may.

21           THE COURT:  Go ahead.

22           MR. BLACKWELL:  And, Your Honor, this may be more

23   aptly addressed to Judge Schultz.

24           We had written a letter about an issue that arose

25   in the deposition of the orthopedic surgeon Dr. Lombardi

1    that was a fairly significant issue.  It is a discovery

2    issue.  And whether it's the preference of Your Honors,

3    Judge Schultz, that we set it and have it heard with Judge

4    Schultz or raise it now, we obviously defer, but we didn't

5    want to sort of pass by the discussion of *Axline* discovery

6    issues and not raise it.

7              THE COURT:  Okay.  And then there was a response

8    also from the plaintiffs?

9              MR. BLACKWELL:  Yes, from the plaintiffs.

10             THE COURT:  Yeah.  And I think we both read those.

11             MAGISTRATE JUDGE SCHULTZ:  Yes.

12             THE COURT:  Yeah, you will be in front of the

13   magistrate judge.

14             MR. BLACKWELL:  All right.  Thank you, Your Honor.

15             THE COURT:  Thank you.

16             MS. ZIMMERMAN:  Your Honor, there were two

17   additional things that I think we didn't add that are

18   pending motions before the court.  And because we, I think,

19   neglected to include them on the joint status report, I did

20   just want to remind the court there are pending motions with

21   respect to defendants' motion on the bill of costs in Gareis

22   and then there are also pending motions, joint motions,

23   regarding sealing of certain documents that happened during

24   trial.  And because they weren't in the joint agenda, I just

25   wanted to point those out.

1          THE COURT:  Okay.  Thank you.

2          Is there agreement, turning to the pretrial

3    orders, is there agreement on any of the cases?  I thought

4    there was agreement on -- I'll put these aside for the

5    moment.  I have that the motion to dismiss has been

6    withdrawn on -- and I am ready to read the list of cases.

7          Mr. Hulse, do you want to follow along and make

8    sure I get these right?

9          MR. HULSE:  I will.  This is the plaintiff fact

10   sheets?

11         THE COURT:  Yeah.  I think we are to that, aren't

12   we?

13         MR. HULSE:  Yes, of course, Your Honor.

14         THE COURT:  I mean, is there something else?  I

15   ran out of noncontroversial things to talk about.  So now I

16   am on the plaintiff fact sheets, and now I am looking for

17   noncontroversial things there.

18         MR. HULSE:  Yeah, we have got that.  We have got

19   the motion for order to show cause on the no product ID

20   cases, and then we also have --

21         THE COURT:  And I am calling those PFS issues.

22         MR. HULSE:  Fair enough, Your Honor.

23         THE COURT:  As just a preview of how I might react

24   to your motion.  I'm probably not going to grant your

25   motion.

1           MR. HULSE:  Okay, Your Honor.

2           THE COURT:  But we can discuss it.

3           But, at any rate, on the PTO 14, you have

4    withdrawn on -- ready?

5           MR. HULSE:  Yes.

6           THE COURT:  *Zimmerman*, which is 17-2925, correct?

7           MR. HULSE:  I'm going to grab a list that's

8    ordered.  I think the court has ordered it.  Sorry for the

9    delay.

10          THE COURT:  No.  That's okay.

11          MR. HULSE:  Yes, Your Honor.

12          THE COURT:  Yes.  Okay.  So that one.  And then

13   *Gorbett*, which is -- these are all 17 unless I say.  We've

14   got some 18s coming up.

15          MR. HULSE:  Right.

16          THE COURT:  But *Gorbett* is 3252?

17          MR. HULSE:  Yes, Your Honor.

18          THE COURT:  *Cyr*, 3554?

19          MR. HULSE:  Yes, Your Honor.

20          THE COURT:  *Parker*, 3573?

21          MR. HULSE:  Correct.

22          THE COURT:  *Pratt*, 3952?

23          MR. HULSE:  Yes, Your Honor.

24          THE COURT:  *Rude*, 4009?

25          MR. HULSE:  Yes, Your Honor.

1          THE COURT:  *Robertson*, 4327?  There are two

2     Robertsons.  One is 4327 and one is 4328.

3          MR. HULSE:  Yes, Your Honor.

4          THE COURT:  On both of them?

5          MR. HULSE:  4327 I have.

6          THE COURT:  Okay.  How about 4328?

7          MR. HULSE:  I don't believe so, but if we can come

8     back to that I will double check.

9          THE COURT:  Okay.

10          MR. HULSE:  Yes, Your Honor, 4328.

11          THE COURT:  Okay.  That is.  All right.  See, I

12     got out my pencil and I knew it was for good reason, because

13     I can erase, not a pen.  Okay.  That's 4328.

14          Then *Ingram*, 4470?

15          MR. HULSE:  Yes, Your Honor.

16          THE COURT:  *Henderson*, 4517?

17          MR. HULSE:  Correct.

18          THE COURT:  *Hyer*, 4752?

19          MR. HULSE:  Yes, Your Honor.

20          THE COURT:  *Murray*, 4845?

21          MR. HULSE:  Yes, Your Honor.

22          THE COURT:  *Thornton*, 4889?

23          MR. HULSE:  Correct.

24          THE COURT:  *Edwards*, 4891?

25          MR. HULSE:  Correct.

1           THE COURT:  *Johnston*, 5270?

2           MR. HULSE:  Correct.

3           THE COURT:  *Billings*, 5277?

4           MR. HULSE:  Correct.

5           THE COURT:  *Jones*, 5472?

6           MR. HULSE:  Correct.

7           THE COURT:  And then *McCullough*, which is an 18.

8      We are now in the 18s.  437?

9           MR. HULSE:  Correct.

10          THE COURT:  *Garrison*, 444?

11          MR. HULSE:  Correct.

12          THE COURT:  *Morgan*, 527?

13          MR. HULSE:  Correct.

14          THE COURT:  *Larrison*, 609?

15          MR. HULSE:  Yes, Your Honor.

16          THE COURT:  *Hayes*, 617?

17          MR. HULSE:  Yes, Your Honor.

18          THE COURT:  I have a couple of plaintiffs who have

19     stipulated to dismissal.  Ms. Zimmerman, I have got *Smith*,

20     17-3501.

21          MS. ZIMMERMAN:  Yes, Your Honor.

22          THE COURT:  And *Coggins*, which is 17-4257.

23          MS. ZIMMERMAN:  That's correct, Your Honor.

24          THE COURT:  Anybody missed here?

25          MR. HULSE:  Your Honor, I just want to make sure,

1    and maybe you did this at the beginning, that you got

2    Zimmerman, 17-2925.  That was at the beginning?

3              THE COURT:  Yes.  Yes, 2925, 17-2925.

4              MR. HULSE:  Thank you.  Yes, then we are on the

5    same page.

6              THE COURT:  Okay.  There are one, two, three,

7    four, five, six, seven, eight, nine, ten, eleven, twelve,

8    thirteen -- then there are thirteen PFS 14 plaintiffs who

9    have filed responses and six plaintiffs who have filed no

10   response?

11             MR. HULSE:  That sounds accurate, Your Honor.

12             THE COURT:  Okay.  Let me unmute the phone.  Well,

13   first, I will unmute the phones now.

14             Ms. Zimmerman, with respect to *Erdman*, which is

15   17-CV-4385, *Greene*, which is 17-4433, *Keith*, 17-4654,

16   *Resendez*, 17-4677, *Robinson-Bessicks*, 17-5123, and *Rhew*,

17   18-cv-641, my records show no response.

18             MS. ZIMMERMAN:  My records are in accord with Your

19   Honor's.

20             THE COURT:  Okay.  And so now this question is for

21   counsel who are on the phone.

22             Anybody represent any of those plaintiffs and have

23   anything -- has there been any response, because we

24   don't have one.

25             MR. MORRIS:  Your Honor, this is James Morris.  I

1     am on the *Rhew* case.  That's R-h-e-w.  And we have

2     diligently attempted to contact the plaintiff, and we have

3     not received any response.  So our answer to you is in the

4     affirmative; we have not received a response.

5              THE COURT:  Okay.  Thank you.  Thank you very

6     much.

7              Anybody else?

8              MR. NIGH:  Your Honor, this is Daniel Nigh,

9     attorney at Levin Papantonio.  I represent James Greene.

10    Despite multiple contacts to try to get a PFS back, we

11    actually -- the last time we finally got in contact with him

12    recently he advised that he no longer wants to pursue it.

13             THE COURT:  Okay.  Thank you very much.  And let

14    me just ask the court reporter if she got your name.

15             (Discussion with court reporter.)

16             THE COURT:  She's asking that you repeat your

17    name.  That's counsel for Mr. Greene.

18             MR. NIGH:  It's Daniel Nigh, N-i-g-h, and it's

19    Levin Papantonio.

20             THE COURT:  Thank you so much.

21             MS. ZIMMERMAN:  I can help with contact

22    information.

23             THE COURT:  All right.  Thank you, Ms. Zimmerman.

24             Anybody else?

25             MR. WALKER:  Your Honor, Travis Walker, Law Office

1    of Travis Walker.  You had referenced two Robinsons or one

2    *Robinson*, and I was looking for clarification as to which,

3    if either, were on the list.

4             THE COURT:  *Robinson-Bessicks* and that is

5    17-cv-5123.

6             MR. WALKER:  Okay.  So there is only one, Your

7    Honor?

8             THE COURT:  Please repeat.

9             MR. WALKER:  I apologize, Your Honor.  It was

10   just -- I thought I heard two Robinsons, but there is only

11   one *Robinson* on the list now?

12            THE COURT:  There is only one *Robinson* on that

13   list.  There is a Robinson -- there's a *Robertson*.  There

14   were two *Robertsons* on the other list where the defendants

15   are withdrawing their motion.  That's 17-4327 and 17-4328.

16   But there was a *Robinson*, if I -- so are you *Robinson*

17   18-cv-263, by any chance?

18            MR. WALKER:  Yes, Your Honor.

19            THE COURT:  Okay.  And that we touched on in the

20   last status conference, and that case is not included in the

21   current motion to dismiss.  So that's not the *Robinson* that

22   I have as a non-response, because that -- the *Robinson*, the

23   non-response *Robinson* is a hyphenated and it is 17-5123.

24            MR. WALKER:  Okay.  Thank you for clarification,

25   Your Honor.  That is the confirmation with me.

1    THE COURT:  Okay.  Anyone on the phone for

2    *Resendez*, *Keith* or *Erdman*?

3    UNIDENTIFIED FEMALE SPEAKER:  Yes.  This is Brown

4    & Crouppen.

5    THE COURT:  And who do you represent?

6    UNIDENTIFIED FEMALE SPEAKER:  *Erdman*, *Greene* and

7    *Keith*.  And we are not opposed.

8    THE COURT:  Okay.  And what about *Erdman* or

9    *Resendez*?

10    UNIDENTIFIED FEMALE SPEAKER:  I apologize.  I did

11    not mean *Greene*.  It's *Erdman*, *Keith* and *Resendez*.  We are

12    not opposing.

13    THE COURT:  Okay.  *Erdman*, *Keith* and Resendez then

14    are dismissed.  *Greene* is dismissed.

15    I gather from the fact that we previously

16    discussed the *Robinson-Bessicks* that there must not be

17    anybody on the phone for that case.  But just to clarify,

18    going once, going twice, anybody represent that case?  All

19    right.  That case is dismissed.

20    And, Mr. Morris, is it, on you, I am going to

21    dismiss that.

22    MR. MORRIS:  All right, Your Honor.

23    THE COURT:  Okay.  Thank you, all.  I'm going to

24    mute the call again.  Thank you all very much.

25    Now, turning to the cases where we received

1     responses, *Hickman*, which is 17-cv-3696 --

2              I guess I will unmute again just in case counsel

3     for *Hickman* is on the phone.

4              MR. HODGES:  Your Honor, *Hickman* I believe is

5     mine, and we will stand on the papers.

6              THE COURT:  Okay.  No contact with Hickman.

7     *Hickman* will be dismissed, is dismissed, I should say.

8              *Key*, 17-cv-4779.  Unable to contact.

9              MR. HODGES:  The same with that one, Your Honor.

10             THE COURT:  Okay.  *Key* is dismissed.

11             *Opperman*, 17-cv-3563.  Unable to contact.

12             MR. HODGES:  Yes, Your Honor.

13             THE COURT:  Okay.  Dismissed.

14             *Seymore*, 17-cv-3718, dismissed.

15             MR. HODGES:  (Moves head up and down.)

16             THE COURT:  *Richey* or *Richey*, 17-cv-5323.

17             MR. HODGES:  Your Honor, that was on the court's

18    docket last month.  The court denied the motion.  My

19    understanding is that -- I believe the defendants are

20    complaining about a late-filed motion to substitute.  This

21    is the one, if the court recalls, that --

22             THE COURT:  So there was a hearing in front of

23    Magistrate Judge Noel; is that right?  Here's what I think I

24    know about that case.  Tell me if this is right.  I know we

25    had it on the last hearing.

```
 1                  MR. HODGES:  Correct.

 2                  THE COURT:  And I denied the defendants' motion to

 3      dismiss.

 4                  MR. HODGES:  Correct.

 5                  THE COURT:  And then there was -- somebody might

 6      have died, maybe?

 7                  MR. HODGES:  They did die.  They were dead at the

 8      last hearing as well.

 9                  THE COURT:  Did die.

10                  MR. HODGES:  The court denied the motion under PTO

11      -- their complaint was under PTO 14.

12                  THE COURT:  Right.

13                  MR. HODGES:  I believe their complaint now, and

14      Mr. Hulse can correct me if I am wrong, is pursuant to

15      PTO 23.

16                  THE COURT:  So, let's see, at the hearing in July

17      Judge Noel denied the motion to dismiss without prejudice to

18      allow substitution.

19                  MR. HODGES:  Correct.

20                  THE COURT:  And there was no deadline.  And then

21      there was a written follow-up order that denied without

22      prejudice to allow additional time to contact the

23      appropriate heir and provide a complete PFS.  Then

24      August 2nd of this year defendants again moved -- was that

25      under 14 or 23?
```

```
 1              MR. HULSE:  We have motions under both, Your

 2    Honor.

 3              THE COURT:  Okay.

 4              MR. HODGES:  The one under 14 was denied

 5    previously.

 6              MR. HULSE:  Right.  And we --

 7              THE COURT:  But they said they again moved, and I

 8    just don't know whether they again moved under 14 or 23.  Do

 9    you know?

10              MR. HULSE:  Well --

11              THE COURT:  Okay.  Well, anyway, okay.  So there

12    was a new and/or renewed motion to dismiss filed just

13    August 2nd for failure to comply.  There's one failure to

14    comply with 14, and that motion is currently before the

15    court.  And there was also a PTO 23 motion filed, and

16    there's a hearing set on that or was.

17              MR. HULSE:  Correct.

18              THE COURT:  There is a hearing on that for

19    September 20th.

20              MR. HULSE:  For September 20th, yes, Your Honor.

21              MR. HODGES:  I would ask that the court allow us

22    some time, obviously more than between one status conference

23    to another, to substituting a party.  We can argue the --

24              THE COURT:  Why don't you just argue the whole

25    thing on the 20th?
```

```
1              MR. HODGES:  I am happy to do so.

2              MR. HULSE:  That would make sense to us, Your

3   Honor.

4              THE COURT:  All right.

5              MR. HULSE:  I believe, Your Honor, those PTO 23

6   motions are currently noticed before Your Honor because they

7   are dispositive.  Should we re-notice them in front of

8   Judge Schultz?

9              THE COURT:  I am trying not to get to those yet.

10             MR. HULSE:  All right, Your Honor.

11             THE COURT:  Let me finish the current list.  I

12  have some things I want to say about that one, I mean, after

13  I hear from you.

14             MR. HULSE:  Of course, Your Honor.

15             THE COURT:  I do recall that you didn't give the

16  adequate time, but we're not talking about that right now.

17             And then there was a single opposition filed in

18  eight cases.  One is *Pine*.  So we're talking about *Pine*,

19  4777, *Brown*, 4778, *Potter*, 4881, *McEvoy*, 4885, *Hardy*, 5261,

20  *Taplin*, 5370, *Bresnock*, 5371, and *Swales*, 18-cv-45.

21             Should we go through those individually?

22             MR. HULSE:  Yes, Your Honor.  There is sort of a

23  cross-cutting issue that would apply to all of them.  This

24  is the issue of the sufficiency of a do-not-recall response.

25             MR. LEE:  This is Dae Lee from Bernstein Liebhard
```

1   on behalf of all these plaintiffs.

2           THE COURT:  Okay.  Could you repeat your name,

3   please?

4                (Discussion with court reporter.)

5           THE COURT:  All right.  If you would tell us your

6   name once more, sir, and also spell your last name, that

7   would be helpful for the court reporter.

8           MR. LEE:  First name is Dae, D-a-e.  Last name is

9   Lee, L-e-e.

10          THE COURT:  Thank you.  And you represent all

11  eight of the cases that I just listed?

12          MR. LEE:  Yes, Your Honor.

13          THE COURT:  Mr. Hulse, let me hear from you on

14  your motion to dismiss these cases.

15          MR. HULSE:  Your Honor, there are unique issues

16  for each one of them, but the cross-cutting issue is the

17  sufficiency of a do-not-recall response in PFS.  We

18  recognize there are some questions where a do-not-recall

19  response is appropriate; however, the particular ones that

20  are at issue here that we have raised are issues such as the

21  date of discovery of the injury and the date of discovery

22  that the Bair Hugger was used.

23          Our belief is that do-not-recall answers are

24  insufficient for those.  These are matters that, first off,

25  should be one that one can recall or one can recall and

1    determine with the assistance of counsel.  The PFS requires

2    a reasonable investigation.  It draws not just on the

3    knowledge of the plaintiff or the memory of the plaintiff,

4    but what they can determine with their counsel.  And for us

5    it simply defies credibility that one would not be able to

6    state the date of the onset of symptoms that are sued on and

7    the date of the determination that the Bair Hugger had been

8    used.  Both those questions call for approximate date.  They

9    don't require a specific date.  And so that's an additional

10   reason why a do-not-recall answer is insufficient.

11           THE COURT:  And notices of deficiency were

12   provided, correct?

13           MR. HULSE:  Absolutely, Your Honor.

14           And I would say overwhelmingly plaintiffs in their

15   PFSs have answered this question.  This is a subset of cases

16   where we have a disagreement with a particular plaintiff's

17   counsel about the sufficiency of these responses.

18           THE COURT:  Mr. Lee.

19           MR. LEE:  Yes, Your Honor.  Your Honor, all these

20   plaintiffs answered the questions to the best of their

21   ability and their recollection.  And, you know, if the

22   defendants insist, then, you know, I'll go ahead and then

23   try to walk them through, the plaintiffs, to at least

24   provide some sort of approximate date of recollection, if

25   possible, but I can't force them to answer especially if

1    they don't recall.  I mean, with my assistance, I'm going to

2    try to have them provide some sort of -- some sort of an

3    answer, so defendants could use their fact sheet.

4         THE COURT:  Mr. Hulse, is this relevant to statute

5    of limitations?

6         MR. HULSE:  Absolutely, Your Honor, and that's why

7    it's important.  We anticipate that at some point we will

8    file a motion against a very large swath of cases where the

9    PFSs have indicated and that the statute of limitations has

10   run, and so it's vital that we have this information to be

11   able to do so.

12        THE COURT:  Does that apply, the date question,

13   does that apply to all eight of these cases?

14        MR. HULSE:  I believe so.  Yes, Your Honor.

15        THE COURT:  Is that right?  Is that your

16   understanding too, Mr. Lee?

17        MR. LEE:  Yes, Your Honor.

18        MR. HULSE:  And, Your Honor, as I mentioned, we do

19   have specific additional deficiencies for each one of these

20   PFSs beyond this issue.

21        THE COURT:  Let's start with *Pine* then.

22        MR. HULSE:  All right.  So in *Pine* plaintiffs

23   haven't disputed that they have not answered Sections 2.6

24   and 9.  Those are core deficiencies.  And so we would say

25   separately it should be dismissed on that ground.

```
 1              THE COURT:  Mr. Lee.

 2              MR. LEE:  Your Honor, I don't see why Section 2.6

 3    is a core deficiency.  It is asking for the last ten -- the

 4    last ten years, and plaintiff does not recall.  And if the

 5    court permits, I will ask my client to supplement this

 6    section to the best of his ability and recollection.  And

 7    I'm not sure where Section 2.9 was raised in their motion.

 8              MR. HULSE:  It's 9, Your Honor.

 9              THE COURT:  Pardon me?

10              MR. HULSE:  9.

11              THE COURT:  9?

12              MR. HULSE:  Not 2.9.

13              THE COURT:  2.9?

14              MR. HULSE:  9.  Sorry.  Not 2.9, but 9.

15              THE COURT:  Oh.  Not 2.9, but just 9.

16              MR. HULSE:  It's the loss of consortium section.

17              THE COURT:  Loss of consortium.

18              MR. LEE:  Right.  Your Honor, the 9, about the

19    loss of consortium, plaintiff provide the answer, but they

20    also add where plaintiff was married, and I don't see why

21    this is a core deficiency.

22              THE COURT:  Okay.

23              MR. HULSE:  I would add, Your Honor, if I may,

24    that we only raise core deficiencies.  The parties, co-lead

25    counsel and defendants, agreed on what were core
```

1  deficiencies.  Those are the deficiencies that will result

2  in dismissal with prejudice if not completely answered.

3          THE COURT:  And just to make sure that notice of

4  that was available, that's contained in one of the orders.

5          MR. HULSE:  Yes.  That's the -- the PFS, which is

6  PTO 14, is very clear on this, that there is core

7  deficiencies and there are non-core deficiencies, and core

8  deficiencies are the ones where you go through this process.

9  And if the deficiency is not cured through the two, notice,

10  process, then the penalty is dismissal with prejudice.

11          THE COURT:  And that determination has been long

12  since made?

13          MR. HULSE:  In I think 12 or 15 orders at this

14  point.  Yes, Your Honor.

15          THE COURT:  With respect to the *Brown* case?

16          MR. HULSE:  The *Brown* case, the plaintiffs --

17  plaintiff here doesn't dispute the core deficiencies in 6.3

18  and 9.

19          THE COURT:  Is that true, Mr. Lee?

20          MR. LEE:  I'm sorry, Your Honor.  I missed the

21  last part.  Section 6.3 and --

22          MR. HULSE:  9.

23          THE COURT:  9.  That's the consortium one again.

24          Right?

25          MR. HULSE:  Correct, Your Honor.

1          MR. LEE:  And, Your Honor, before -- motion to

2     dismiss, within their motion to dismiss, that's the first

3     time we are aware -- we became aware of any specificity to

4     the deficiency.  In their deficiency letter that were sent

5     to us prior to filing the motion to dismiss it only says the

6     section was incomplete.  And we were never -- we were never

7     aware of it, you know, until they filed the motion to

8     dismiss as to the specificity of the deficiency of each PFS.

9          MR. HULSE:  Your Honor, I think it's undisputed

10    that they were notified of it in our deficiency letter that

11    we identified it as incomplete.  If there were any questions

12    about it, there were three months for plaintiff's counsel to

13    get in contact with us and ask us for further clarification.

14    Every day we handle dozens of communications from

15    plaintiffs' counsel about PFS deficiency notices.

16          THE COURT:  Mr. Lee, as I understand it, there was

17    a deficiency notice given and the deficiency notice said

18    that certain answers were incomplete.  But your objection to

19    the specificity of the deficiency notice with respect to the

20    PFS on *Brown*, 17-cv-4778, is that the deficiencies weren't

21    more particularly articulated?

22          MR. LEE:  No, Your Honor.  I just wanted the court

23    to know that there was no specificity in their deficiency

24    letter.  And I'm not sure whether I have spoken with defense

25    counsel specific to this case, but I have spoken with the

1    defense counsel before and we weren't -- I wasn't able to

2    cure the deficiency.

3              THE COURT:  I see.

4              MR. LEE:  So I believe one of the -- I believe I

5    spoke with defense counsel on one of the cases that is in

6    front of you.  So my objection to their motion to dismiss in

7    particular regarding the core deficiencies, for example, the

8    plaintiff does not recall, then with the court's permission,

9    you know, I will do my best to jog through my client's

10   memory and then try to have the client give some sort of

11   approximate answer and all the other core deficiencies as

12   defendant alleged, such as the place of marriage, and we

13   will try to supplement it with the court's permission.

14             THE COURT:  Okay.  *Potter*, 17-cv-4881?

15             MR. HULSE:  There's no dispute about Section 7.1,

16   but that's -- that remains deficient.  There are other ones

17   we think remain deficient that plaintiff disputes, but there

18   doesn't seem to be any dispute on 7.1, which is the past

19   wage -- pardon me -- past wage loss.

20             THE COURT:  Mr. Lee.

21             MR. LEE:  Yes, Your Honor.  The client is looking

22   for the past wage information, and that's what the plaintiff

23   noted in the PFS.  And with the court's permission, we will

24   try to supplement it or have the client withdraw the

25   economic damages portion of her complaint.

1          THE COURT:  *McEvoy*, 17-cv-4885.  Mr. Hulse.

2          MR. HULSE:  There's no dispute apparently that

3   Section 6.1, which is the section on physical injury, is not

4   completely answered.  That's not disputed in plaintiff's

5   opposition.

6          THE COURT:  Mr. Lee.

7          MR. LEE:  Your Honor, Section 6.1 asks for the

8   date when the plaintiff became aware of the injury.  As

9   stated before, plaintiff answered plaintiff does not recall

10   because the plaintiff doesn't recall.  And, again, I will

11   try my best to jog through my client's memory and with my

12   assistance provide some sort of approximate answer to that

13   with the court's permission.

14          THE COURT:  Mr. Hulse, *Hardy*, 17-cv-5261.

15          MR. HULSE:  Right.  There does not appear to be

16   any dispute that Section 6.3, which is the emotional

17   distress question, is not sufficiently answered.

18          THE COURT:  Mr. Lee.

19          MR. LEE:  Your Honor, we will -- I will have my

20   client answer the question with your permission to the best

21   of his ability.

22          THE COURT:  Mr. Hulse, *Taplin*, 17-cv-5370.

23          MR. HULSE:  This is another one where it does not

24   appear that there is any dispute that 6.1, which is about

25   physical injury, that it was not answered completely.

```
 1              THE COURT:  Mr. Lee.

 2              MR. LEE:  Your Honor, I will talk to my client,

 3      and then with my assistance I will have my client provide

 4      some sort of approximate answer to that question.

 5              MR. HULSE:  And just for the record, I was

 6      incomplete.  There is also no dispute about 2.10, 4.7 and

 7      4.8.

 8              THE COURT:  Bresnock, 17-cv-5371.

 9              MR. HULSE:  Your Honor, no dispute as to the

10      deficiency of Sections 7.1, 7.2 and 2 -- yes, 2.15.

11              THE COURT:  Mr. Lee.

12              MR. LEE:  Your Honor, 7.1 and 2 asks for the

13      economic damages, and plaintiff is gathering the requested

14      information.  And I will, with the court's permission, will

15      supplement this section.  And what was the other sections,

16      Your Honor?

17              THE COURT:  I understand that they were 7.2 and

18      2.15.

19              MR. HULSE:  Right.  Correct, Your Honor.

20              MR. LEE:  2.5?

21              THE COURT:  2.15.

22              MR. LEE:  I'm sorry, Your Honor.  I don't think

23      2.1 was raised in their motion.

24              MR. HULSE:  2.15.

25              THE COURT:  Do you hear that?  2.15.  2.15.
```

1              MR. LEE:  Okay.  Part 15.  Okay.  Internet

2      posting?

3              MR. HULSE:  Correct.  Yes.  It's about internet

4      postings reviewed on the Bair Hugger.  It's relevant to --

5              THE COURT:  Yes, we're looking at the same one.

6              MR. LEE:  Okay.  Plaintiff does not recall the

7      actual web address.  And, I mean, I will try to jog through

8      my client's memory and then try to supplement this section,

9      but it's hard to remember the actual address.  And I don't

10     know what information the defense counsel is actually

11     looking for besides the web address.  I mean, I would

12     appreciate it if the defense counsel could elaborate on what

13     information besides the web address that they are looking

14     for.

15             THE COURT:  Mr. Hulse, *Swales*, 18-cv-45.

16             MR. HULSE:  There is no dispute about the

17     insufficiency of 5.4 and 7.1 and also 6.1.

18             THE COURT:  Mr. Lee.

19             MR. LEE:  Your Honor, 5.4 asks for disability

20     information, and 6.1 asks for the date when plaintiff became

21     aware of the injury, and, again, I'll have my client provide

22     and supplement this section to the best of her ability.  And

23     specific to 6.1, with the court's permission, we will

24     definitely supplement that section.

25             THE COURT:  There are at this point core

1    deficiencies in each of the eight cases.  So the question is

2    whether these eight plaintiffs should be allowed additional

3    time to get their answers straightened out.  The previous

4    court orders have made it plain that these core deficiencies

5    have to be resolved and they needed to be resolved by this

6    point.  It is not adequate to await further court order with

7    respect to each one of these cases specifically directing

8    that an adequate PFS be filed.

9         It sounds like one of the plaintiffs -- I think is

10    it Bresnock -- is actually working on an answer, on a better

11    answer.

12         MR. HULSE:  It wasn't clear to me, Your Honor.

13         THE COURT:  Mr. Lee, did you talk -- were you

14    talking about McEvoy or Bresnock was actively working on an

15    improved response?

16         MR. LEE:  Give me one second, Your Honor.  I am

17    sorry.  It's Bresnock is gathering the requested

18    information.  She's actively looking for additional

19    information.

20         THE COURT:  All right.

21         MS. ZIMMERMAN:  Your Honor, may I be heard on one

22    point?

23         THE COURT:  Sure.  Thank you, Ms. Zimmerman.

24         MS. ZIMMERMAN:  So I just pulled up Pretrial Order

25    No. 14, which is the PFS order, and at paragraph 4 the

1    parties did define a core deficiency and that is defined as

2    a lack of response to all of the defined questions, which

3    from the plaintiffs' perspective is not the same as saying I

4    don't recall.  Those are different.  So not responding at

5    all is different than responding and saying the plaintiff

6    doesn't recall.  So for those reasons, given the stipulated

7    order language with respect to core deficiency definition,

8    we would request that the plaintiffs be afforded the

9    opportunity to supplement to the extent that defendants

10   require additional information.

11              THE COURT:  But once the deficiency notice is

12   given and there is no response to that, doesn't that change

13   the --

14              MS. ZIMMERMAN:  Well, I don't know that it -- it

15   certainly doesn't change the definition of what constitutes

16   a core deficiency.  And that's really what triggers the

17   ability of the defendants to come before Your Honor at these

18   status conferences to ask that cases be dismissed.

19   Certainly, I can understand why defendants want to have

20   information about when perhaps the plaintiff learned about a

21   Bair Hugger was used on them.

22              THE COURT:  Well, you have to.  I mean, everybody

23   does.  It's not just the defendant.  Everybody has to know

24   when it happened or we don't know whether we have a case or

25   not.

1          MS. ZIMMERMAN:  Absolutely, Your Honor.

2          THE COURT:  So it just goes without saying that if

3     you -- if you say you can't recall and then, then you get a

4     notice that says this is not enough, given that it is

5     essential to a statute of limitations defense, that to rely

6     on --

7          MS. ZIMMERMAN:  The definition of the --

8          THE COURT:  Maybe it's the wrong way to dismiss

9     it, but you can't, like, you can't have a case if you don't

10    know when it arose at some point.

11         MS. ZIMMERMAN:  Certainly.

12         THE COURT:  And there's been enough time to answer

13    that question, so --

14         MS. ZIMMERMAN:  With respect to some of that, I

15    think that's right, but if it's something as where you got

16    married, well, I hope people remember that.

17         THE COURT:  Yeah, I definitely see that.

18         MR. HULSE:  And we agree.

19         THE COURT:  I was looking -- correct me if I am

20    wrong, but, to both of you, I was listening to the

21    deficiencies that weren't the date deficiencies with a

22    background of we didn't have the date to begin with.  So

23    that's my primary concern.

24         And I completely agree that if you can't remember

25    exactly when you got married, you are probably just part of

1    the rest of the 95 percent of the population.

2              So it's the initial answer "I don't know when the

3    case arose" and then you receive a notice that you have to

4    answer this and then you don't answer it that is causing me

5    concern, because if we wait, we come to court and only when

6    we come to court do we have to go through this exercise with

7    respect to each case and then I order it, that's

8    inconsistent with the order that we issued early on.  And

9    so --

10             MR. NIGH:  Your Honor, this is Daniel Nigh.  May I

11   be heard on this issue?

12             THE COURT:  Who are you again?  Are you Mr. Lee?

13             MR. NIGH:  No.  This is Daniel Nigh.  And I'm

14   asking to be heard on this issue because I have about

15   50 cases that are listed for persistent deficiencies,

16   despite my offense to answer the question adequately, and

17   it's the same issue.

18             THE COURT:  I don't have those motions in front of

19   me.

20             MR. HULSE:  No.  This is just on a list for a

21   future month.

22             THE COURT:  Okay.  We don't --

23             MR. NIGH:  There is no motion at this time.

24             THE COURT:  No, there is not a motion at this

25   time.

 1          MR. NIGH:  No, but it's a similar issue that I

 2     know is going to come up in my cases.

 3          THE COURT:  Bearing in mind that there's no motion

 4     and I don't have any actual -- anything in front of me on

 5     your cases, is there some supplementation to Ms. Zimmerman's

 6     general comment that you want to make?  I can hear that.

 7          MR. NIGH:  Yes, Your Honor.  Yes.  The issue that

 8     I have is this, and it involves a line similar to what

 9     Mr. Bernstein or the attorney for Bernstein Liebhard is

10     addressing, is that --

11          THE COURT:  Mr. Lee.

12          MR. NIGH:  -- this question is asking when

13     plaintiff's first had knowledge that a Bair Hugger was

14     utilized.  The issue is that for most of my cases, the vast

15     majority of these cases, they don't know that a Bair Hugger

16     product was utilized when they first contacted an attorney.

17     And so, first, we're diving into information that may

18     actually be protected by the attorney-client privilege, but

19     then, second, we're diving into information that I don't

20     actually keep a record of the specific dates that we tell

21     the client, oh, yes, we actually confirmed that you had a

22     Bair Hugger product utilized; but I don't know if that's the

23     issue for Mr. Lee, but that's the issue for me; and I have

24     explained that on multiple occasions, and I am being told

25     that it is still deficient in that response.

1            THE COURT:  Okay.  So just to -- okay.  Thank you,

2      Mr. Nigh.

3            Ms. Zimmerman, I think what he's saying is that

4      he's reading the PFS to ask when the attorney first told the

5      client and so that would be asking for attorney-client

6      information?  That is not how anybody has been interpreting

7      it so far.  Can you help enlighten us on that?

8            MS. ZIMMERMAN:  I will try to do that.

9            And I think that what Mr. Nigh was getting at is

10     that some of the clients, when they call a lawyer, they

11     hear, perhaps they see a television commercial or something

12     like that saying do you have a deep joint infection and they

13     call a lawyer.  They don't have any idea --

14            THE COURT:  Right.

15            MS. ZIMMERMAN:  -- what might have caused it or

16     whether it was used on them.  And so while they may call a

17     lawyer, say, June 1st, when that lawyer ultimately confirms

18     by getting the medical records that a Bair Hugger was in the

19     billing records or some other place in that person's medical

20     record to confirm Bair Hugger use, the plaintiff may well

21     not know.

22            So I think perhaps what we ought to do is work

23     together on getting some clarifying language on exactly what

24     the defendants need.  And perhaps we can, you know, work

25     together on a proposed Amended Pretrial Order 14, so that

1   the defendants certainly get the information that they think

2   is necessary, but that we don't trouble the court either

3   with deficiencies about something perhaps that's trivial.

4   And I understand that that is sounding to be a supplement.

5          THE COURT:  Well, the vast majority of plaintiffs

6   don't misunderstand the PFS that way.

7          MS. ZIMMERMAN:  I hope not, but I think that there

8   is some room for disagreement, because the way that the PFS

9   is posed to the plaintiffs, it's who is completing this form

10  first person.  And so while the law firms typically will try

11  to assist the plaintiff in filling out these forms, it does

12  seem, you know, to read when did the plaintiff learn about

13  this and a lot of times the plaintiffs don't know.  You

14  know, they say my lawyer told me.

15         THE COURT:  But then the attorneys supplement.

16         MR. NIGH:  And Your Honor --

17         THE COURT:  Okay.  No.  Wait.  I've got -- I'm

18  hearing first from the lawyers who are here.

19         Is that Mr. Nigh again?

20         MR. NIGH:  Yes.  Just to be clear --

21         THE COURT:  Okay, Mr. Nigh.  All right.  One more

22  -- one more thing and then I --

23         MR. NIGH:  During my meet and confer with

24  defendants' counsel on how to respond to this, when I

25  advised them that my clients don't recall the date, they

1    said that was deficient and that I needed to provide the

2    date that I notified my plaintiffs that the Bair Hugger was

3    used.  That's where that came from.

4           THE COURT:  Okay.  So now we are going to focus

5    our attention on the motions that are actually before the

6    court.

7           And, Ms. Zimmerman, on the cases that I heard from

8    Mr. Lee on, with respect to the 6. -- 6.1 is the real

9    question, and then there were the additional problems.

10          (U.S. Marshal entered the courtroom.)

11          THE COURT:  Fifteen minutes.  Thank you.

12          That was, for those of you on the phone, that was

13   the marshals trying to bring in my 11 o'clock criminal

14   matter.

15          So, Ms. Zimmerman, anything on the eight that we

16   went through with Mr. Lee?

17          MS. ZIMMERMAN:  I think that Mr. Lee has covered

18   the motion with respect to his clients well --

19          Somebody put us on hold.  Don't do that, please.

20          THE COURT:  I muted them.

21          MS. ZIMMERMAN:  Thank you.

22          It's also --

23          THE COURT:  So I guess the thing that I want to

24   make sure of is that the state of these cases, these eight

25   cases, is such that even to this date we do not collectively

1    have information about whether they -- about when the

2    statute of limitations would begin to run.  And so we're

3    talking about, quibbling about how the PFS is worded or how

4    it is read.  But even now in the middle of August of 2018 we

5    still don't know when the cause of action, you know, when

6    the plaintiff found out about it or when the operation

7    occurred, right?

8         MS. ZIMMERMAN:  So for the most part I think that

9    we do, though, know when the operation took place, but when

10   the operation took place and when the plaintiff finds out

11   that the Bair Hugger was used on them are frequently years

12   and years and years apart, because it's placed on them when

13   they are asleep.

14        THE COURT:  Right, but we don't know.

15        MS. ZIMMERMAN:  I think that in some limited

16   number of cases there is still information, you know, that

17   hasn't been developed on that front.

18        And my office reports to me that this issue with

19   respect to the plaintiff fact sheet and the use of Bair

20   Hugger was not previously identified as a deficiency in

21   essentially the last couple of years and that this is a new

22   deficiency that is being reported.

23        We are happy to work together and make sure that

24   they get all the information that they need, but to the

25   extent the previous PFSs that reflected I don't recall, but

1    that was sufficient, if the defendants' practices have

2    changed, I think that, you know, in fairness to Mr. Lee and

3    the other plaintiffs that he represents that we ought to be

4    able to try to work through these disagreements or

5    misunderstandings rather than dismiss a case completely with

6    prejudice.

7              MR. HULSE:  We have actually raised it repeatedly.

8    We just had no one -- had ever had anybody fight us on this

9    before.  So this seemed to be something that we -- and I

10   think, you know, Ms. Zimmerman's firm and 90 percent of

11   firms have all been on the same page on this, and this is a

12   new dispute for us just because we've never had disagreement

13   on it before.

14             THE COURT:  Is it August 20th you are going to be

15   in front of Judge Schultz?

16             MS. ZIMMERMAN:  I don't think we have a date yet,

17   but --

18             THE COURT:  Oh, sometime.  Sometime next week, I

19   am guessing.

20             MS. ZIMMERMAN:  You are guessing?  You think you

21   might have it on good authority?

22             MAGISTRATE JUDGE SCHULTZ:  I suppose I should tell

23   them.

24             THE COURT:  You don't have to tell them right now.

25             MAGISTRATE JUDGE SCHULTZ:  Okay.

1          THE COURT:  Okay.  On these eight cases, Mr. Lee,

2     you have got two weeks to cure these deficiencies.

3          And when counsel is before Judge Schultz next or

4     whenever you are next in front of him, hammer this out.  And

5     if there's some amendment that needs to be made, I am not

6     seeing it right now, but if there is something, then we can

7     bring that up.

8          But, Mr. Lee, you have got two weeks to cure your

9     deficiencies.

10          Mr. Nigh, I'd get those deficiencies definitely

11     cured before the next pretrial conference so that we -- so

12     that when we -- if there's a motion on your 50 cases, we

13     have got all the information necessary and we can have a

14     meaningful conversation about them.

15          Ms. Zimmerman, is that --

16          MS. ZIMMERMAN:  That's fine.  Thank you, Your

17     Honor.

18          THE COURT:  Okay.  All right.  So that's how we

19     will take care of that.

20          Now, on the Rule 11 motion on the 169 cases.

21          MR. HULSE:  I'm going to call up my colleague Mary

22     Young at this point.

23          THE COURT:  Yes, Ms. Young.

24          My first problem with this motion has to do with

25     the timing and the safe harbor.  And I know that there are

1    exceptions to the safe harbor, but absent invocation of one

2    of those what I consider to be very extraordinary

3    exceptions, why is the failure to give the 21 days not

4    reason enough to deny this motion?

5         MS. YOUNG:  Well, Your Honor, the motion that's

6    before the court is not asking for any sanction.  It's

7    asking for the rule -- the order to show cause under Rule

8    11(c).  And at that point is when we would ask that a

9    sanction of dismissal with prejudice be entered for any case

10   where they have not come forward and amended the PFS to show

11   that the product was in fact used and had the right

12   evidentiary support for that contention.

13        THE COURT:  Fair enough.  But I think about let's

14   say I do that.  Then I have to go through all of these,

15   right?  I don't even have the PFSs.  I mean, I would just

16   have to take your word on what's in them.  So first I would

17   have to get the PFSs, because those aren't filed with the

18   court, so I don't know whether they are really deficient.  I

19   mean, I would have to get them and then individually docket

20   every one of the responses that comes in on the motion.  And

21   we have the PFS process that contrary to the discussion we

22   just had, which makes it look like -- I mean, we had a

23   little lump, bump in the road there, but basically we have a

24   process by which these many, many cases can be addressed

25   without individual attention from the court.  And so my

1    inclination is to consider this motion to be firm notice to

2    the plaintiffs who are listed in these 169 cases of

3    significant and serious deficiencies in the PFS, but to

4    allow those cases to go through that process that has

5    essentially been working pretty well and doesn't -- well,

6    it's been working pretty well.

7         Am I missing something?  I know you don't agree

8    with that approach, but am I missing some fundamental

9    component here?

10        MS. YOUNG:  Well, Your Honor, our view on this

11   question is that this goes to really a threshold issue --

12   it's been before the court on numerous occasions -- Are

13   these actual product liability cases that relate to the Bair

14   Hugger.  So it's not so much that there is a deficiency in

15   the response.  This really goes to a threshold issue of Is

16   there a claim.  And as we have seen in the history of this

17   litigation, there have been very serious issues with that.

18   We had two of five bellwether cases fall out after

19   significant resources.

20        You put in place a mechanism by which we would try

21   to get to product ID in the second pool, and it ended up we

22   negotiated with Judge Noel that we would just put those

23   issues to the side, but we do see that we are going to need

24   court intervention substantively because the parties

25   fundamentally disagree as to what it is.  It's required to

1     show proof of product use here.  And these are just really

2     the tip of the iceberg.  These are cases where the

3     plaintiffs in their own verified response have said we don't

4     have evidence the product was used.  And so our view was we

5     want to come to the court and have -- ask for the court's

6     guidance in how best to begin to address what we see as very

7     significant issues with the validity of many, many cases in

8     the docket.

9             THE COURT:  Here's the issue that I have with

10    considering an attorney sanction motion based on a PFS that

11    may have been answered only by the plaintiff him or herself.

12    I completely agree that we worked very hard on coming up

13    with a PFS process so that we can have -- we can separate

14    the wheat from the chaff.  And it's disheartening to the

15    court to learn that plaintiffs and their counsel in some

16    rare instances may not be cooperating with the spirit of

17    that and just have a plaintiff submit something and don't do

18    any individual research.  And I certainly understand where

19    Rule 11 would cross your mind in that situation.

20            I'm not going to entertain the -- I'm not going to

21    do what you want now, but I also am not going to continue,

22    if we have so far, countenancing a plaintiff's response that

23    we handed it to the plaintiff, the plaintiff didn't know

24    anything and so here we are and we are not going to do

25    anything more.

62

```
1            So the question is, Who is going to go through
2     each one of these cases and make sure they are a real case?
3     And on the order to show cause, that's got to be me.  And I
4     just think that's not -- doesn't have to be me.  I'm happy
5     to do it if it has to be, but it shouldn't have to be,
6     because here you say plaintiff says no.  I don't know what
7     the attorney says.  And I want the attorney to say it -- you
8     know, I want you and the attorneys, and this will be Ms.
9     Zimmerman and her crew, to work it out and figure out
10    whether there really is a case.  And then if you have got
11    somebody who is told there is a PFS deficiency, they are
12    told they have to tell whether there is a case, they still
13    don't do it, then come to me in those cases, but I hope we
14    don't have 165 plus or a hundred -- whatever it is, the
15    breakdown.  I hope we don't have 169 cases where that is the
16    case.
17            So I am going to put this on your list of things
18    to discuss before you come back to court before Judge
19    Schultz and hopefully work out some sort of a resolution;
20    and if not, then bring it to Judge Schultz's attention.
21    Okay?
22            MS. YOUNG:  Okay.  Thank you, Your Honor.
23            THE COURT:  Thank you.
24            Ms. Zimmerman, I didn't hear from you on that,
25    but --
```

1          MS. ZIMMERMAN:  Your Honor, we were prepared to

2     provide argument, but we are happy to just work per your

3     instructions.

4          THE COURT:  Okay.  Thank you.

5          Now, I just want to make sure we have covered

6     everything on the joint agenda.

7          MR. HULSE:  Your Honor, we also have one of the

8     PTO 23 motions noticed for today.  This is about

9     substitution suggestions of death.

10         THE COURT:  Yes.  I'm just looking for that.

11         MR. HULSE:  It's on the agenda at the very tail

12    end at the bottom of No. 8, Other Motions.

13         THE COURT:  It says the first of these is noticed

14    for August 16th and the second for August 20th.

15         MR. HULSE:  And that should say September 20th,

16    Your Honor, the next status conference.

17         THE COURT:  Okay.  So, yes, we have some deceased

18    plaintiffs to cover.  Mr. Hulse.  These are -- is this -- so

19    on the deceased list I have got *Colon*, *Perkins*, *Andrews*,

20    *Bellande*.  Am I on the right --

21         MR. HULSE:  You are in the right place, yes.

22    There are six cases, and I think you've said most of them.

23         THE COURT:  All right.  So the *Colon* case,

24    16-cv-985, there was no response and so that will be

25    dismissed.

1          MR. HULSE:  Correct.  Well, correct, there was no

2     response.

3          THE COURT:  Perkins died May 9, 2017.  PTO 23 was

4     issued on January 8th of 2018.  The suggestion of death came

5     before that in November of 2017.  So the motion to

6     substitute was due February 12th of 2018.

7          MR. HULSE:  Correct, Your Honor.

8          THE COURT:  I think actually you say February

9     11th.

10         MR. HULSE:  We said the 11th.

11         THE COURT:  I think it is February 12th, but

12    anyway in February.  And there was no motion.  Then there

13    was the order to show cause.  July 17th counsel for

14    plaintiff Perkins filed a response to that, even though I

15    guess there was nothing on the docket requiring --

16         MR. HULSE:  I think technically there was no order

17    to show cause.

18         THE COURT:  There was no, but anyway that was

19    right.

20         MR. HULSE:  It was a misnomer on the --

21         THE COURT:  Yes, but still something came in on

22    the 17th.

23         MR. HULSE:  Right.

24         THE COURT:  And that's how it was nominated.

25    Daughters want to be or at least expressed some interest in

1     being executors of the estate, but they can't reach them

2     anymore, so that went nowhere.

3              MR. HULSE:  Right.  According to plaintiff's

4     counsel, one is not interested, expressly said they are not

5     interested, and the other is not responsive.  And we are now

6     six months overdue on the substitution deadline.

7              THE COURT:  Anybody want to be heard on *Perkins*?

8     *Perkins* is dismissed.

9              Andrews died July 25th, 2017.  Suggestion of death

10    November of 2017.  Then, of course, the order came on

11    January 8th.  This is the one where there was a hearing in

12    front of Judge Noel, right?

13             MR. HULSE:  That's right.  That's right.

14             THE COURT:  Okay.  So now -- and this, there was

15    an order to show cause issued?

16             MR. HULSE:  Correct.

17             THE COURT:  And that said five days from June 4th.

18    You say why the substitution shouldn't be denied.  And then

19    nothing came in.

20             MR. HULSE:  Correct.

21             THE COURT:  So then you made a motion to dismiss,

22    and Judge Noel denied that because -- "The Court cannot

23    conclude that Price is Andrews' successor or

24    representative."  Oh, denied the motion to substitute.

25             MR. HULSE:  Right, right.

1          THE COURT:  All right.  So why should that not be

2     dismissed?  Anybody want to speak on that?

3          MS. ZIMMERMAN:  No, Your Honor.

4          THE COURT:  Okay.  That's dismissed.

5          *Bellande, et al.*, 16-cv-2700.  Death occurred just

6     this past April.  Suggestion of death comes June of 2018.

7          MR. HULSE:  The death was actually December 2017,

8     Your Honor.

9          THE COURT:  Oh.  Because I thought what was the

10    problem there?  Oh, I see.  So the death happened then.

11    Then we have got the order.

12         MR. HULSE:  Right, which gives everybody a safe

13    harbor at that point.

14         THE COURT:  So the due date for the suggestion of

15    death was April and it didn't come in till June.

16         MR. HULSE:  Correct, Your Honor.

17         MR. HODGES:  Your Honor.

18         THE COURT:  And then let me just -- hold on.

19    Okay.

20         MR. HODGES:  Yes, Your Honor.  David Hodges here

21    on behalf of the Bellandes.

22         This is an impossibility of performance situation

23    where we learned about the death -- the date you mentioned

24    was April 17th of 2018.  There's no way that we could have

25    gotten it on file within those 90 days obviously because we

67

1     didn't learn until after the 90 days.  This isn't willful

2     disobedience of a court's order.  And under *Hunt versus City*

3     *of Minneapolis* in our brief, the case should be retained.  A

4     PFS was submitted.  There is absolutely zero prejudice to

5     the defendants on this.  We move for leave for the

6     late-filed suggestion of death.

7                   MR. HULSE:  Your Honor.

8                   THE COURT:  Part of the purpose of issuing PTO 23

9     was to make sure that plaintiff kept in sufficient contact

10    with counsel, that we had a reasonably accurate sense of who

11    was alive and who was dead and what cases we had.

12                  If I remember correctly, there was a request by

13    the defendants that the suggestion of death happen within

14    30 days.  Plaintiffs said that's not really enough.  It made

15    sense to me, so we made it 90, but that was all the result

16    of hearing and compromising.  That's how we came up with the

17    90, was because it is not sufficient to sit back and wait to

18    find out whether people have died, but that it does require

19    keeping in contact with the plaintiffs to find out whether

20    they are alive or dead.

21                  So how does just not like -- not being in

22    sufficient contact with the Bellandes to know that there had

23    been a death comply with the whole thing that we went

24    through when we came up with PTO 23, which is you can't just

25    sit back and do it?  So, you know, had there been regular

1    contact you would have known, but there wasn't, so that's

2    how the -- that's how the date gets missed.  So is that --

3         MR. HODGES:  Your Honor, even in my single-event

4    cases I don't contact my clients every 60 or 90 days and ask

5    are you still alive.  It sounds like, I think, an easier

6    task than it is.  These are people that are elderly.  As the

7    court is well aware, this is an older client population.

8    They get sick.  They go to doctor's appointments.  They go

9    into the hospital.  Some of them go to nursing homes.  Some

10   of them go and stay with relatives for extended periods of

11   time.  So there's gaps in communication that just happen

12   normally.  It doesn't mean the client is dead.  And we're

13   kind of at a disadvantage there that when it does happen,

14   that the client is gone, they may not have informed the

15   relatives that, hey, I have this lawsuit pending.  We are in

16   contact with them enough.  Obviously, we found out within

17   several months, but -- or what was it?  Four months or less

18   than four months we found out.

19        THE COURT:  The problem is that's really a motion

20   to amend PTO 23.  That's exactly the reason we said 90, is

21   because there are a lot of people, they are elderly.  That's

22   how we arrived at 90.  That's why I didn't give the

23   defendants the 30 they were asking for.  But the order was

24   made with consideration to all the factors.  And the factors

25   that you are listing are -- they are true, they are

1    accurate, they are legitimate.  And the compromise that was

2    made was to have the 90-day filing.  And so if the 90 days

3    comes and goes and we say, well, never mind, then we are

4    saying PTO 23 is --

5                MR. HULSE:  Advisory.

6                THE COURT:  That's not the word I was looking for.

7    I was looking for like abrogated without briefing.

8                MR. HODGES:  Your Honor, perhaps it sounded

9    reasonable at the time.  This has happened in a very

10   minority of situations, as the court is well aware of, and I

11   think each of them tends to be somewhat unique, but I would

12   ask that these plaintiffs be given their due process and

13   allowed for a technical violation.  Again, there is

14   absolutely zero prejudice to the defendants in this case.

15   And perhaps PTO 23 seemed workable on the front end of

16   things, but I am telling you right now representing real

17   people here today it doesn't work for them and there was no

18   way we could have -- we could have done this or cured this.

19   There's no conscious disregard here.  There's no willful

20   disobedience of PTO 23.  The relatives didn't even know

21   about PTO 23.

22               THE COURT:  PTO 23, there's been no motion to

23   amend it.  There's no information before the court

24   explaining why contact couldn't be maintained.  It does --

25   would require contact every 90 days.

1      I will hold off on ruling on the Bellandes pending

2    further submissions from counsel as to why PTO 23's 90-day

3    keeping in touch was not able to be complied with in that

4    case.  And I don't have a motion to amend PTO 23, and I'm

5    not going to just amend it on the fly because of arguments

6    that were made at the time.  That is my ruling with respect

7    to the Bellandes.

8         MR. HODGES:  Your Honor, may I be heard on one

9    issue?  We did originally ask for six months as opposed

10   to --

11        THE COURT:  I have just ruled on the Bellande

12   issue.

13        MR. HODGES:  Very well.

14        THE COURT:  And we will put a date of one week for

15   further submissions explaining why in this particular case

16   it was not possible to comply with the Pretrial Order

17   No. 23.

18        MR. HULSE:  Your Honor, I think we have covered

19   this, except maybe we should just mention that *Nickell* was

20   dismissed by stipulation.  That was the one we hadn't -- I

21   don't think we touched on.

22        THE COURT:  And the case number on that one?

23        MR. HULSE:  That was Case No. 17-0428 -- I am

24   sorry -- 04285.

25        THE COURT:  N-i --

 1              MR. HULSE:  -- c-k-e-l-l.

 2              THE COURT:  Okay.  Anything else, Mr. Hulse or

 3      Mr. Blackwell?

 4              MR. BLACKWELL:  Again, just briefly, Your Honor,

 5      relating again to Item No. 1 in our joint agenda.  At the

 6      end of the first paragraph on page 2 it indicates the

 7      parties are meeting and conferring on the schedule to cover

 8      the next phase of discovery in the six other bellwether

 9      cases, not *Axline* set for December, but the six other ones.

10              THE COURT:  I see that.

11              MR. BLACKWELL:  And that's the -- it's very

12      scintillating too, Your Honor.

13              THE COURT:  Pardon me?  I came back from the

14      Eighth Circuit conference to be here.  I am physically here.

15              MR. BLACKWELL:  I'm sure it was scintillating too,

16      Your Honor.

17              THE COURT:  You must have been there.

18              MR. BLACKWELL:  I was actually at a meditation

19      week last week in Los Angeles, but Your Honor --

20              THE COURT:  Yeah, me too.

21              MR. BLACKWELL:  All right.  I'm going to move on,

22      Your Honor.

23              It would be helpful I think to the parties as we

24      work on a schedule to propose to Your Honors for the next

25      phase of discovery in those six cases if Your Honor has in

1    mind when there might be the next trial date after the

2    December setting for *Axline*, so we can work backwards from a

3    trial date in proposing the schedule.  So whether Your Honor

4    is prepared to say that today or not, we don't know, but at

5    least I want to ask the question, if there is --

6         THE COURT:  That's a good point.  It's a good

7    point.

8         MR. BLACKWELL:  Thank you, Your Honor.  Is that

9    your honest final word?

10        THE COURT:  Yes, it is.

11        MR. BLACKWELL:  Thank you, Your Honor.

12        THE COURT:  You need Cathy's involvement for that.

13        MR. BLACKWELL:  All right.  We will work on still

14   on some proposal with respect to that next phase, you know,

15   for the court.  We have certain discovery kinds of issues

16   and questions that are coming up even now that --

17        THE COURT:  Right.  Yes.  I'm not saying I -- just

18   I can't -- I'm not the keeper of the calendar, but I'm not

19   saying don't talk to Cathy.

20        MR. BLACKWELL:  Don't talk to Cathy.  So we will

21   reach out to Cathy and inquire for all of us.

22        THE COURT:  Yes, good one.

23        MR. BLACKWELL:  All right.  Thank you, Your Honor.

24        THE COURT:  Well understood.

25        MR. BLACKWELL:  All right.  That's it.

1          THE COURT:  Okay.  Thank you, Mr. Blackwell.

2          Ms. Zimmerman, anything else on the -- I think we

3     have covered what was on the sheet.

4          MS. ZIMMERMAN:  I think that's correct, Your

5     Honor.

6          THE COURT:  Okay.  Well, thanks, everybody.

7          Oh, they have got -- your client was going to --

8     you are on the criminal matter, right?

9          MR. MOHS:  I am, Your Honor.

10          THE COURT:  Yes.  Okay.  So the marshals tried to

11     bring him up a minute -- more than 15 minutes ago and I said

12     15 minutes.  So I don't know if you have been in contact,

13     but, anyway, we are going to be done here.  And then if you

14     can -- I know Mr. Docherty came and went, so I am ready to

15     move on to your matter.

16          MR. MOHS:  Great.

17          THE COURT:  All right.  And on the Bair Hugger

18     case, we are in recess.  Thanks, everybody.

19          THE CLERK:  All rise.

20          (Court adjourned at 11:25 a.m., 08-16-2018.)

21                              *  *  *

22          I, Renee A. Rogge, certify that the foregoing is a

23     correct transcript from the record of proceedings in the

24     above-entitled matter.

25          Certified by:  /s/Renee A. Rogge
                            Renee A. Rogge, RMR-CRR