# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation | MDL No. 15-2666 (JNE/FLN) |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUGGESTION OF REMAND** |
| This Document Relates to: *Walton v. 3M Co.*, No. 15-4364 *Johnson v. 3M Co.*, No. 15-4362 | |

This Court should deny Plaintiffs' premature motion for a suggestion of remand for the *Walton* and *Johnson* cases.  Plaintiffs have not demonstrated good cause, as they must, for departing from the long-established rule that cases should remain consolidated in the MDL through the conclusion of pretrial proceedings.  *In re South Central States Bakery Prods. Antitrust Litig.*, 462 F. Supp. 388, 390 (J.P.M.L. 1978) ("We will remand an action or actions prior to the completion of coordinated or consolidated pretrial proceedings only upon a showing of good cause.").  As the JPML found in transferring these two cases to the MDL (and as Plaintiffs themselves argued to the JPML), discovery remains to be completed in these cases, and they will benefit from a coordinated and consistent approach to resolving pretrial motions.

Like Plaintiffs' earlier attempt to "retract" their *Lexecon* waivers, Plaintiffs' motion is intended to "test the waters" for dismantling the MDL and sending thousands of cases out to district courts across the country.  Plaintiffs warn that "remand more broadly is nearly at hand."  Pl. Mem. at 4.  But they are wrong, and declaring a premature end to the MDL will result only in massive duplication and inconsistency, and waste the time and resources

of the parties and federal judiciary. *See in re Ameriquest Mortgage Co. Mortgage lending Pracs. Litig.*, MDL No. 1715, 2010 WL 1418399, at \*1 (N.D. Ill. Apr. 26, 2010) ("Remand is inappropriate . . . when continued consolidation will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." (internal quotation omitted)).

This MDL exists because counsel for Walton and Johnson set out nearly ten years ago to create mass tort litigation against the Bair Hugger system.  They have persuaded thousands of plaintiffs and more than a hundred other plaintiffs' attorneys to join them. They cannot now justify destroying the process that is underway, and they must see it through.  *See In re Holiday Magic Secs. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977) (noting that "dissatisfaction" with the MDL court's pretrial rulings "is clearly not a factor to be taken into consideration" in deciding whether to remand).

## BACKGROUND

Nearly ten years ago, Dr. Augustine hired the Kennedy Hodges firm to develop products liability litigation against the Bair Hugger system. This effort was part of Dr. Augustine's three-prong strategy (products litigation, manipulated science, and negative PR) to damage the reputation of the Bair Hugger system and promote his own competitor product, the HotDog.  (Dkt. No. 762, Def. Summ. J. Mem. at 4-5.)

Kennedy Hodges filed *Walton* in early 2013.  In tandem with that filing, Dr. Augustine prepared a "litigation guide," which he then disseminated to hundreds of plaintiffs' attorneys through a phony Kennedy Hodges email account that was, in fact, maintained by Augustine.  The process then began of accumulating enough cases to justify

a petition to the JPML.  Kennedy Hodges did its part by filing *Johnson*.  Augustine and Kennedy Hodges continued to promote the litigation and recruit other Plaintiffs' counsel, who gradually filed more cases.  Several more cases were filed in the summer of 2015. Later that summer, the Levin Papantonio firm appeared as co-counsel for Walton in August 2015, filed their own Bair Hugger case in the District of Minnesota, and petitioned the JPML to create an MDL.  Despite the high likelihood that *Walton* and *Johnson* would go into the "hopper" with other cases and would lose their trial dates, Kennedy Hodges strongly supported the creation of the MDL.

Augustine and Kennedy Hodges have now achieved their objective, at least in part. There are nearly 5,000 cases in the MDL. There are no significant barriers to entry. The only criteria for filing a lawsuit are that a person had a post-surgical infection and (maybe) the Bair Hugger system was used during the surgery.  Through his ongoing email "blasts," Augustine now promotes lawsuits against the Bair Hugger system used during non-orthopedic surgeries.

*Walton* and *Johnson* were never more than a mechanism to begin the process of creating an MDL. The JPML's transfer order raised the possibility of expediting the *Walton* and *Johnson* cases (rather than remanding them) in recognition of their "somewhat more advanced status" at that time. (Dkt. No. 1, Transfer Order at 2 ("[T]o the extent that the somewhat more advanced status of the actions warrants their expedited treatment, the transferee judge is free to handle them accordingly.").)  But following transfer, Plaintiffs never made a motion that *Walton* and *Johnson* be expedited or otherwise given preferential treatment.  Plainly, Plaintiffs' motion is not about protecting the rights of *Walton* and

*Johnson*.  It is, as they admit, a prelude to asking this Court to prematurely dismantle the

MDL, in the hopes of pursuing alternative rulings elsewhere in other jurisdictions.

## ARGUMENT

### I. REMAND OF ANY CASE IN THIS MDL IS PREMATURE BECAUSE PRETRIAL PROCEEDINGS HAVE NOT BEEN COMPLETED.

This MDL was not created solely for conducting general causation discovery.  The

JPML created this MDL for conducting "coordinated or consolidated pretrial proceedings,"

without limitation.  The coordination included making pretrial rulings on "*Daubert* and

other issues."  (Dkt. No. 1, Transfer Order at 2 ("Centralization will prevent inconsistent

pretrial rulings on *Daubert* and other issues.").)  There is still much more that this Court

can and should do to advance the resolution of this litigation, including conducting

bellwether trials and ruling on case-specific discovery and substantive motions as the Court

has done in *Gareis* and *Axline*.  Over time, the Court will generate a series of rulings and

instructions that will be carried back to transferor courts, allowing the transferor court to

proceed to trial with little ado.

Moreover, the Court's rulings and the bellwether trial results will also inform the

parties as to which cases should not proceed, reducing the number of cases to be remanded

and reducing the burden on the remand courts.  For example, there are still likely hundreds

(perhaps more) of cases in this MDL that lack proof of Bair Hugger use.  Those cases can

be weeded out through the MDL's processes, including the PFS process.  It is far less

efficient to remand these cases to the transferor court, where lack of proof of product will

be addressed on a clunkier, less consistent basis.  *See, e.g.*, *In re Fosamax Prods. Liab.*

*Litig.*, No. 06-md-1789, 2012 WL 5877418, at *3 (S.D.N.Y. Nov. 20, 2012) (entering case management screening out cases lacking medical causation expert opinions to "boost efficiency" and "ensure that the home districts receive only viable cases").

### A. Plaintiffs Do Not and Cannot Demonstrate Good Cause to Remand Cases Prior to Completion of All Pretrial Proceedings.

Plaintiffs would have the Court believe that courts routinely suggest remand much earlier: following the completion of general causation discovery and a single bellwether trial. That is not the case. The long-established default rule is that cases remain consolidated in the MDL for completion of *all* discovery and resolution of pretrial motions. *See Holiday*, 433 F. Supp. at 1126 (denying motion for remand of non-settling plaintiff's case because "there has been only limited discovery" and "pretrial proceedings are not complete in that action"); *In re Zyprexa Prods. Liab. Litig.*, 688 F. Supp. 2d 130, 132 (E.D.N.Y. 2009) (denying individual plaintiff's remand motion, concluding that remand would be premature before the conclusion of case-specific discovery and pre-trial motion practice).  In the Biomet M2a MDL – the key precedent on which Plaintiffs rely – the Court specifically noted that its role was to ensure that case-specific depositions were completed before remand. "It is my task under 28 U.S.C. § 1407 to get these cases as close to trial ready as is reasonable before remanding them to transferor courts, so taking the [case-specific] depositions before remand seems more consistent with the MDL process." *In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, No. 3:12-md-2391, 2018 WL 776776, at *4 (N.D. Ind. Feb. 8, 2018) (quoting the court's earlier order).

Remand prior to completion of all pretrial proceedings may be suggested only on demonstration of good cause. *South Central*, 462 F. Supp. at 390. Plaintiffs have the burden to demonstrate good cause. *Id.* As the case law makes clear, good cause exists only in limited circumstances, where there is no longer any benefit to be gained from continued consolidation because overlapping issues have been resolved. *See Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007). As the Third Circuit has said, "the test is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap, either with MDL cases that have already concluded or those currently pending." *In re Wilson*, 451 F.3d 161, 171 (3d Cir. 2006).

The admissibility of Plaintiffs' general causation experts is just one of the multitude of overlapping issues in these cases. This Court continues to address overlapping issues through the bellwether process, as it did in its pretrial and trial rulings in *Gareis* and its recent order on Defendants' Rule 12(c) motion in *Axline*. Due to this Court's deep familiarity with the science and legal issues in this case, it is far more efficient to complete case-specific fact and expert discovery, and resolve pretrial motions in the MDL, "rather than to ask the transferor court to play catch-up." *Hockett*, 498 F. Supp. 2d at 38 (denying suggestion of remand and concluding that the MDL court should resolve case-specific summary judgment motions); *see also In re Maxim Integrated Prods., Inc.*, MDL No. 2364, 2015 WL 1757779, at *4 (W.D. Pa. Apr. 17, 2015) (denying suggestion of remand before pretrial proceedings had concluded, noting the MDL court's "expertise about the technology and the legal issues raised during these MDL proceedings").

Plaintiffs offer no reason to think that the remand courts will be better suited to oversee discovery and resolve dispositive motions than this Court.  While the *Walton* and *Johnson* transferor courts have some familiarity with the issues, they have not had the benefit of the last several years of proceedings, which included Science Day, a three-day general causation *Daubert* hearing, numerous rulings on discovery disputes, and a bellwether trial.  "[T]o remand [ ] at this point would require another court to make its own way up this same learning curve, resulting in just that duplication of efforts that the multidistrict system is designed to avoid."  *In re Integrated Res., Inc.*, MDL No. 897, 1995 WL 234975, at *4 (S.D.N.Y. Apr. 21, 1995).

### B. MDL Courts Routinely Complete Discovery and Rule on Summary Judgment and Evidentiary Motions Before Suggesting Remand.

Plaintiffs also misstate the role of the MDL. The MDL's role extends beyond common discovery, to overseeing case-specific discovery, and issuing rulings on case-specific summary judgment motions and evidentiary issues.  *See Wilson*, 451 F.3d at 166, 170 (denying mandamus petition from district court's denial of suggestion of remand; the completion of "common discovery" did not mean that the MDL's role had come to an end).

For example, in the Welding Fume MDL, after six bellwether trials that involved application of the law of five different states, the court created a detailed "trial template" synthesizing its prior pretrial rulings and making several new rulings "to assist trial judges in transferor courts who may preside over the trial of an individual Welding Fume case." *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000, 2010 WL 7699456, at *1 (N.D. Ohio June 4, 2010) (*citing Manual for Complex Litigation* § 20.132 at 224–25 (4th ed.

7

2004)).  The court noted that it "has worked assiduously to conserve judicial resources by placing transferor judges in the position of having to rule on as few remaining issues as possible before trial."  *Id.*  All that remained for the remand courts to do was to try the cases and to finalize evidentiary rulings.  In the Mentor Obtape MDL, the court ruled on the defendant's case-specific summary judgment motions and included advisory opinions on evidentiary issues in its suggestion of remand.  *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004, 2014 WL 715579, at *3-6 (M.D. Ga. Feb. 24, 2014) (listing "evidentiary rulings that were made in the context of the bellwether cases . . . these issues may arise in Cline's case"); *see also In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2010 WL 5387695, at *2 (M.D. Tenn.. Dec. 22, 2010) (denying plaintiffs' general request for suggestion of remand, and suggesting remand only in a subset of cases where case-specific discovery had been completed and case-specific rulings "provide guidance to the transferor courts as to the law of this case").

The need to apply the law of other states also does not justify remand.  *See, e.g.*, *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 407 F. Supp. 244, 246-47 (J.P.M.L. 1976) ("[I]t is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state."); *Aredia*, 2010 WL 5387695, at *2 & n.3 (noting that the MDL court had ruled on the substantive law of 21 states).  While some MDL courts have considered the need to apply other states' laws to be a factor supporting remand, their ultimate decisions hinged on the completion of discovery and the lack of efficiencies to be

gained from further consolidated proceedings.  *See, e.g.*, *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Pracs. Litig.*, 840 F. Supp. 2d 1193, 1198-99 (D. Minn. 2012) (suggesting remand in seven cases when discovery was over and "only small, simple actions" remained); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, MDL No. 991, 1998 WL 308013, at *2 (E.D. La. June 8, 1998) (suggesting remand where discovery had ended and all that remained were the claims of a "handful" of plaintiffs).

The cases Plaintiffs cite on this issue provide little or no support for their position that issues of state law should not be resolved by the MDL court.  In the Testosterone Replacement Therapy MDL, the defendant filed an omnibus motion to dismiss 39 cases. The plaintiffs urged the court not to resolve state-law-specific issues and to leave these to remand.  The court noted that it "does not necessarily subscribe to that reasoning" and proceeded to address, at length, the state laws of Michigan and Texas.  *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2014 WL 7365872, at *10 (N.D. Ill. Dec. 23, 2014).  In the Biomet M2a MDL, the court acknowledged that "transferee courts often resolve summary judgment motions before considering suggestions of remand."  *Biomet M2a*, 2018 WL 776776, at *2.  The court concluded, however, that resolving the defendant's omnibus summary judgment motion (which involved extensive analysis of state law) would be impracticable and extend proceedings in an MDL that was already in its ***sixth year***:

> Biomet seems to be asking me to study and then articulate, or synthesize, the state-of-the-art law of nineteen different states and make some sort of declaration – it couldn't be a judgment or an order of the sort contemplated by Fed. R. Civ. P. 56(g) – that might or might not apply to a case in which one of those states provide the rule of decision, depending

on the specific facts of that case. Any such undertaking would indefensibly slow the process in this docket, which is now in its sixth year, and includes a case that landed in the federal court system in September 2011 and arises from a June 2008 surgery.

*Id.* at \*4. Demonstrating that it did otherwise see state-law issues as appropriate for disposition, the court went on to address the defendant's other summary judgment motion, which required the court to briefly analyze differences in state law. Moreover, as noted above, the court reiterated that its role was to complete *all* discovery in these cases before remanding them to the transferor courts. *Id.*

## II.   AS THE JPML CONCLUDED, *WALTON* AND *JOHNSON* ARE FAR FROM BEING TRIAL-READY.

In any event, *Walton* and *Johnson* are far from being ready to remand. In transferring the cases to the MDL, the JPML concluded that "significant pretrial proceedings, including expert discovery, remain to be conducted." (Dkt. No. 1, Transfer Order at 2.) *See In re Swisher Hygiene, Inc. v. Secs. & Deriv. Litig.*, No. 3:12-md-2384, 2014 WL 3845040, at \*2 (W.D.N.C. Aug. 14, 2014) (denying motion for suggestion of remand and noting that the JPML had considered and rejected the same arguments when transferring the cases to the MDL). Indeed, when arguing to the JPML, Plaintiffs characterized discovery as "far from mature" and advised the court that "those cases are well behind where they need to be to meet those [then-existing] trial dates." (Dkt. No. 1476, Zimmerman Decl. Ex. C at 6:6, 9:11-14.) Plaintiffs further noted that "[e]xperts are still being designated. . . . There's been no expert witness discovery." (*Id.* at 10:25 to 11:2.) Thus, even under the *Biomet M2A* decision cited by Plaintiffs, remand would be inappropriate at this juncture. While Defendants opposed the transfer of *Walton* and

10

*Johnson* because (at the time) they were somewhat more advanced in their proceedings, Defendants never took the position that the cases were ready for trial. Both sides agreed that significant work remained to be done.

Now that general causation discovery has occurred, *Walton* and *Johnson* are no longer significantly more advanced than the other cases in the MDL. While some fact discovery has occurred, more remains. The parties will need to obtain updated medical records.  They must finish deposing the plaintiffs' treaters, including the primary care physicians who now have had several more years treating the plaintiffs.  The parties must make case-specific expert disclosures.  Following depositions of the case-specific experts, this Court will resolve *Daubert* and summary judgment motions, and may resolve other pretrial motions as well to provide guidance to the transferor courts.  Then, and only then, will the cases be ready for remand.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion.  Plaintiffs cannot demonstrate good cause for prematurely remanding *Walton* and *Johnson*.

Dated: September 13, 2018

Respectfully submitted,

*s/Benjamin W. Hulse*

Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
        bhulse@blackwellburke.com
        myoung@blackwellburke.com

Lyn Peeples Pruitt
MITCHELL WILLIAMS SELIG
 GATES & WOODYARD
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
Phone: (501) 688-8869
Fax: (501) 688-8807
Email: lpruitt@mwlaw.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company
and Arizant Healthcare Inc.**