UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Products Liability Litigation | MDL No.  15-2666 (JNE/FLN) |
| This Document Relates to All Actions | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND PRETRIAL ORDER NO. 23** |

On January 8, 2018, this Court issued Pretrial Order No. 23 – Substitution of Plaintiffs ("PTO 23"), which "establish[ed] procedures governing the substitution of an individual as plaintiff in place of a Plaintiff who dies before his or her individual action is remanded."[1] PTO 23 requires that a Suggestion of Death be filed "[w]ithin ninety days of . . . the death of a plaintiff."[2] This 90-day requirement for the filing of a Suggestion of Death differs substantially from Rule 25 of the Federal Rules of Civil Procedure, which does not have any deadline for filing notice of a plaintiff's death with the court. Since the issuance of PTO 23, specific Plaintiffs have inadvertently and unintentionally experienced significant issues in complying with the rigid deadline established by the Order, discussed in greater detail below. As such, Plaintiffs file this Motion to Amend PTO 23 ("Motion").

## BACKGROUND

This Court issued PTO 23 on January 8, 2018. The express purpose of PTO 23 is "to establish procedures governing the substitution of an individual as plaintiff in place of

---

[1] Dkt. 1039, Pretrial Order #23, pg. 1.
[2] *Id.*

a Plaintiff who dies before his or her individual action is remanded."[3] Although this Court has suggested that "[p]art of the purpose of issuing PTO 23 was to make sure that plaintiff kept in sufficient contact with counsel",[4] there is no indication that PTO 23 was intended for that purpose. Ultimately, the Court adopted the 90-day deadline as a "compromis[e]."[5]

The 90-day deadline has caused needless disputes involving the timing of filing a Suggestion of Death. In one specific instance, for example, Defendants targeted a case for dismissal due to the Plaintiff's failure to file a Suggestion of Death prior to the 90-day deadline, when, in fact, Plaintiff's counsel had not been notified of the Plaintiff's untimely death until after 90 days had passed, rendering compliance with PTO 23 impossible.[6]

The unnecessary time constraint imposed by PTO 23 also disregards the demographics of most Plaintiffs in this litigation—the typical Bair Hugger Plaintiff is an elderly individual who may be suffering from health issues due to age. These individuals are, by and large, especially susceptible to unexpected illness and corresponding hospitalizations, sometimes extended. They may also move from their current residence, whether to move in with family members who are able to assist in their care or move to a nursing home, or in some instances, hospice care facilities, if their health prospects are poor. Any of these scenarios could result in communication gaps that could inadvertently result—through no fault of Plaintiffs or their counsel—in non-compliance with PTO 23.

---

[3] *Id.* As discussed in more detail below, the apparent emphasis on being notified of the death of a plaintiff prior to remand runs counter to a deadline for filing a Suggestion of Death, especially at this stage in the litigation.
[4] *See* Transcript of Hearing at August 16, 2018 Status Conference, pg. 67.
[5] *Id.*
[6] *E.g.*, Dkt. 1338 and 1342; *see also* Hearing Transcript from August 16, 2018, pg. 66–69.

Additionally, the next of kin of a deceased Plaintiff may not be immediately aware of the pending lawsuit. And even if the Plaintiff's relatives are aware of the lawsuit, they may have any number of more pressing things to consider in the aftermath of losing a loved one. Requiring next of kin or other descendants to act so soon after the death of their spouse, parent, or other family member ignores reality. Plaintiffs therefore respectfully move to amend PTO 23 to eliminate the 90-day deadline to file a Suggestion of Death.

## LEGAL STANDARD

### I. Timing of the Filing of a Suggestion of Death

Rule 25 of the Federal Rules of Civil Procedure governs the Substitution of Parties. Specifically, Rule 25(a)(1) states that a motion for substitution of party may be made "by any party or by the decedent's successor or representative."[7] The motion must be filed "within 90 days after service of a statement noting the death [of the party]."[8] Notice of a party's death typically takes the form of a Suggestion of Death filed with the court, which notifies all parties of the death of the deceased party.[9] Rule 25 does not dictate a deadline for the filing of notice, whether based on the date of death of the party or any other event.

Courts have held that a party should not be "under any time constraints to make a formal suggestion of death."[10] "In circumstances in which the deceased's counsel only

---

[7] Fed. R. Civ. P. 25 (a)(1).
[8] *Id.*; *see also Kaubisch v. Weber*, 408 F.3d 540, 542 (8th Cir. 2005).
[9] *Id.* at 542–543.
[10] *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 699 (D. N.J. 1996) (stating that 90-day period for filing a motion to substitute does not trigger absent the filing of a formal suggestion of death); *see also McKenna v. Pacific Rail Serv.*, 32 F.3d 820, 836 (3rd Cir. 1994) (stating that Rule 25 does not proscribe a time frame for filing a Suggestion of

recently learned of the death, failure to file a suggestion of death within a particular period of time does not constitute sufficient grounds for refusing . . . a motion [to substitute].”[11] The language of Rule 25 is permissive, and motions to substitute parties are typically "freely granted."[12]

## II. Dismissal with Prejudice under PTO 23

PTO 23 explicitly states that "[p]laintiff's failure to comply with provision[] A [regarding filing a Suggestion of Death] will entitle Defendants to request a dismissal of plaintiff's action with prejudice."[13] Dismissal with prejudice "is a drastic sanction that should be exercised sparingly"[14] and "only after balancing the policy of giving the plaintiff [his or her] day in court against [the] policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures."[15] This balancing approach "'focuses in the main upon the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the

---

Death); *City of Colton v. American Promotional Events, Inc.*, 2014 WL 12740637, at *2 (C.D. Cal. Apr. 15, 2014) (same).

[11] *McKenna*, 32 F.3d at 836; *see also Lightfoot v. District of Columbia*, 629 F. Supp. 2d 16, 19 (D.C. 2009) (granting motion to substitute where more than six years had passed from date of client's death and Suggestion of Death was only recently filed); *Kaubisch v. Weber*, 408 F.3d 540, 543 (8th Cir. 2005) (allowing for late filing of motion to substitute if excusable neglect is shown); *Jones v. Siegfried Const. Co., Inc.*, 105 F.R.D. 491, 491–492 (W.D.N.Y. 1984) (same).

[12] *In re Baycol Products Litig.*, 616 F.3d 778, 783 (8th Cir. 2010).

[13] Dkt. 1039, Pretrial Order #23, pg. 3.

[14] *Pardee v. Stock*, 712 F.2d 1290, 1292 (8th Cir.1983).

[15] *Omaha Indian Tribe, Treaty of 1854 with U.S. v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991) (quoting *Garrison v. International Paper Co.*, 714 F.2d 757, 760 (8th Cir. 1983)); *see also Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1193 (8th Cir. 1976); *Navarro v. Chief of Police, Des Moines, Iowa*, 523 F.2d 214, 217 (8th Cir. 1975).

administration of justice in the District Court.'"[16] In short, as one MDL court put it, dismissal with prejudice is "an extreme sanction [that] should be used only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint."[17]

Dismissal with prejudice can also violate due process. The purpose of due process is to ensure procedural safeguards for plaintiffs. A violation of procedural due process is "a deprivation of life, liberty, or property without sufficient process."[18] Due process generally requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probative value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail."[19]

## ARGUMENT

### I. A Deadline for Filing a Suggestion of Death is Unnecessary and Contrary to Law

The 90-day deadline under PTO 23 for a party to file a Suggestion of Death is unique to this litigation. It is not a requirement of Rule 25; nor has it been applied in the vast

---

[16] *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir.1986) (quoting *Moore*, 539 F.2d at 1193).
[17] *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. CV 07-1557 (DWF/AJB), 2011 WL 13202174, at *1 (D. Minn. Sept. 28, 2011); *See also Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008).
[18] *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016).
[19] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

majority of MDLs.[20] Rule 25 only requires that a court be notified of the death of a party—and only then is the deadline to file a Motion to Substitute Party triggered.[21] There is no certain form required for notice, although it usually takes the form of a suggestion of death filed with the court. Importantly, Rule 25 does not establish a deadline for when the court must be notified of the party's death, whether based on the date of death or any other event.[22] Only the Motion to Substitute Party has an associated deadline of 90 days.

The Third Circuit has explicitly stated that Rule 25 does not establish a deadline for filing a suggestion of death.[23] In reviewing Rule 25 in the context of a motion to substitute filed at the time of trial, the court noted that "[n]othing in Rule 25 . . . sets forth a time frame for [filing a suggestion of death]."[24] Other courts agree,[25] and at least one court has allowed the filing of a suggestion of death nearly six years after the party passed away.[26]

The Third Circuit has also stated that "[i]n circumstances in which the deceased's counsel only recently learned of the death [of the party], failure to file a suggestion of death within a particular period of time does not constitute sufficient grounds for refusing [a motion to substitute party]."[27] This is precisely the situation that concerns Plaintiffs the

---

[20] *See, e.g., In re: Xarelto (Rivaroxaban) Products Liability Litigation*, 14-md-02592 (no PTO governing substitution of party); *In re: Taxotere (Docetaxel) Products Liability Litigation*, 16-md-02740 (same).
[21] Fed. R. Civ. P. 25 (a)(1).
[22] *See generally* Fed. R. Civ. P. 25.
[23] *McKenna*, 32 F.3d at 836.
[24] *Id.*
[25] *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 699 (D. N.J. 1996); *City of Colton v. American Promotional Events, Inc.*, 2014 WL 12740637, at *2 (C.D. Cal. Apr. 15, 2014).
[26] *Lightfoot*, 629 F. Supp. 2d at 19.
[27] *McKenna*, 32 F.3d at 836.

most in this MDL—that a particular Plaintiff passes away, and due to no fault of Plaintiff's next of kin or counsel, more than 90 days have passed before counsel is informed.

In sum, amending PTO 23 to do away with the 90-day deadline for filing a suggestion of death would reconcile the Order with Rule 25 as well as prevailing federal jurisprudence on the subject. It would not skew the procedure to somehow benefit Plaintiffs—but it would prevent otherwise meritorious claims from being dismissed.

## II. Imposing a Deadline on Filing a Suggestion of Death Improperly Allows Dismissal with Prejudice

PTO 23 states that failure to comply with filing of a Suggestion of Death will result in dismissal of the case with prejudice. Dismissal with prejudice "is a drastic sanction that should be exercised sparingly."[28] This is especially true in multidistrict litigation, where the case is part of a very large group of cases that necessarily follow the course of the litigation. Any delay in a single case will not cause undue delay or prejudice Defendants.[29]

The typical analysis in the Eighth Circuit regarding dismissing a case with prejudice involves balancing the policy of allowing the plaintiff their day in court against any undue delay, possible congestion of a district court's docket, and preserving court procedures.[30] In multidistrict litigation, however, there is no undue delay in allowing more time for a plaintiff to file a suggestion of death. Further, considering that this MDL has almost 5,000 cases, congestion of the docket is a moot point. Allowing dismissal of a handful of cases

---

[28] *Pardee*, 712 F.2d at 1292.
[29] PTO 23 explicitly covers substitution of parties "before [plaintiff's] individual action is remanded." Dkt. 1039, Pretrial Order #23, pg. 1. Remand has not occurred in this litigation to date, and presumably will not occur for some time.
[30] *Omaha Indian Tribe*, F.2d at 1468.

7

for failure to comply with a strict and arbitrary deadline will not make any meaningful impact on the number of cases pending before the Court. Lastly, while PTO 23 is part of the Court's procedures, the amendment which Plaintiffs seek—to do away with the 90-day deadline—coheres with Rule 25, which is the procedure this Court would otherwise follow.

Another consideration as to whether an action should be dismissed with prejudice is "the degree of egregious conduct which prompted the order of dismissal."[31] In the case of dismissal due to failure to file a suggestion of death within the 90-day deadline, that failure would likely arise from lack of knowledge of the litigation by the Plaintiff's next of kin or lack of knowledge of the 90-day deadline. Neither of these scenarios constitute anything close to "egregious conduct," especially in the context of the death of a loved one.

Lastly, consideration is also given as to whether there was an instance of a willful refusal on the part of a party to comply with the court's orders.[32] This Court has held the position that dismissing a case with prejudice is "an extreme sanction [that] should be used **only in cases of willful disobedience of a court order or continued or persistent failure to prosecute a complaint**."[33] It cannot be said that failure to timely file a suggestion of death would ever be due to willful disobedience or refusal to comply with the Court's order, especially in the situation where counsel does not learn of the Plaintiff's death until after the 90-day deadline has expired. If compliance with the deadline would have been

---

[31] *Brown*, 806 F.2d at 804.
[32] *Omaha Indian Tribe*, 933 F.2d at 1468.
[33] *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. CV 07-1557 (DWF/AJB), 2011 WL 13202174, at *1 (D. Minn. Sept. 28, 2011) (emphasis added); *See also Smith v. Gold Dust Casino*, 526 F.3d 402, 405 (8th Cir. 2008)

impossible, non-compliance in that situation could certainly not be said to be willful or intentional. An amendment to PTO 23 to eliminate the deadline would ensure that cases where compliance would have been impossible are not unfairly subjected to dismissal with prejudice—a fate typically reserved for far more intentional and egregious actions.

### III.     A Multitude of Factors Beyond Any Individual Plaintiff's Control Could Lead to Inadvertent Non-Compliance with the Unnecessary Deadlines of PTO 23

There are several situations where inadvertent non-compliance with PTO 23 could occur. The population of Plaintiffs in this particular litigation skews older. Many of these individuals are unfortunately undergoing drastic changes in their lives because of a multitude of potential health issues due to their advanced age, and these issues have only been worsened due to the injuries they have sustained in connection with the Bair Hugger.

Moreover, considering that the injuries at issue are orthopedic in nature, moving to a different home due to lack of mobility is an overriding concern. Many plaintiffs who were living in rural areas or other properties with large acreage undergo moves to smaller homes or even move into the homes of family members who assist with daily care due to the mobility issues they may be experiencing. Others can no longer live independently and are placed in a nursing home or other similar long-term care facility. These individuals may not think to update counsel that they are moving to a new address, which necessarily complicates efforts to get in contact with them or keep them updated as to the litigation.

Many of these plaintiffs are also indefinitely taking antibiotics due to ongoing infections, which significantly weakens their immune systems and makes them more susceptible to long-term hospitalizations and even transfer to nursing home facilities and

even hospice care. Potential long-term absences from home render communication in the form of mailed letters and phone calls to land lines sporadic at best.[34]

In summary, there are many events which could result in a plaintiff falling out of contact with counsel, and counsel not being informed of the death of a client until after the 90-day deadline has passed. Counsel may not be able to reach their client despite diligent communication efforts if that client is admitted to a hospital or transferred to a nursing home due to experiencing detrimental health issues, which at that time are rightfully the focus of their attention. And in the event of the passing of the plaintiff due to those health issues, next of kin may only marginally be aware of the pending litigation and almost certainly are not aware of the arbitrary requirements of PTO 23—nor should they be, as they obviously have more pressing concerns immediately after the passing of a loved one.

## CONCLUSION

Since PTO 23 was issued by the Court in January 2018, there have been several instances of unintentional non-compliance by various Plaintiffs which has put otherwise meritorious actions at risk of dismissal with prejudice. The only takeaway from this is that the 90-day deadline imposed for filing a Suggestion of Death under PTO 23 truly amounts to an unnecessary burden on Plaintiffs. Accordingly, Plaintiffs respectfully request that the Court amend PTO 23 to remove the 90-day deadline for filing a Suggestion of Death.

---

[34] *See, e.g.,* Response to Motion to Dismiss, *King v. 3M Company et al.*, 16-cv-02428, Dkt. 839 (Plaintiff was admitted to hospital for extended period of time and underwent rehabilitation at a separate facility afterward, so contact letters and phone calls to home went unanswered); Response to Motion to Dismiss, *McLaughlin v. 3M Company et al.*, 17-cv-03233, Dkt. 1088 (Plaintiff undergoing health issues and was in and out of the hospital for an extended period of time).

Respectfully submitted,

Dated:  September 19, 2018

| CIRESI CONLIN L.L.P. | MESHBESHER & SPENCE LTD. |
|---|---|
| /s/ Michael V. Ciresi_____<br>Michael V. Ciresi (MN #0016949)<br>Jan M. Conlin (MN #0192697)<br>Ciresi Conlin LLP<br>225 S. 6th St., Suite 4600<br>Minneapolis, MN 55402<br>Phone: 612.361.8202<br>Email: MVC@CiresiConlin.com<br>          JMC@CiresiConlin.com | /s/ Genevieve M. Zimmerman<br>Genevieve M. Zimmerman (MN #330292)<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>Email: gzimmerman@meshbesher.com |
| LEVIN PAPANTONIO, P.A. | KENNEDY HODGES, LLP |
| /s/ Ben W. Gordon, Jr.<br>Ben W. Gordon (FL # 882836) – Pro Hac Vice<br>J. Michael Papantonio (FL # 335924)<br>316 S. Baylen Street, Suite 600<br>Pensacola, FL 32502-5996<br>Phone: (850) 435-7090<br>Fax: (850) 436-6090<br>Email: bgordon@levinlaw.com | /s/ David W. Hodges<br>David W. Hodges (TX # 00796765)<br>Gabriel A. Assaad (TX # 24076189)<br>4409 Montrose Blvd., Suite 200<br>Houston, TX 77006<br>Phone: (713) 523-0001<br>Fax: (713) 523-1116<br>Email: dhodges@kennedyhodges.com |

**Plaintiffs' Co-Lead Counsel**