UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: BAIR HUGGER FORCED AIR	MDL NO. 15-2666 (JNE/DTS)
WARMING PRODUCTS
LIABILITY LITIGATION

This Document Relates to:	**ORDER**
ALL CASES

---

Genevieve M. Zimmerman, Esq., Meshbesher & Spence, Ltd., 1616 Park Avenue South, Minneapolis, Minnesota 55404, for Plaintiffs.

Mary Young, Esq., Peter J. Goss, Esq., Benjamin W. Hulse, Esq., Blackwell Burke P.A., 431 South Seventh Street, Suite 2500, Minneapolis, Minnesota 55415, for Defendants.

## INTRODUCTION

Defendants challenge two of Plaintiffs' expert reports and seek their exclusion in all pretrial proceedings and in the upcoming bellwether trial. Because each report violates the Court's Pretrial Orders bifurcating discovery, including of experts, into a general causation phase and a case-specific phase, the Court grants Defendants' motion to exclude the expert reports and opinions.

## BACKGROUND

### I.	Pretrial Orders in the MDL

In the interest of efficiency, the Court originally created two separate timelines for discovery—one for general causation and one for bellwether-case-specific facts. Pretrial Order No. 4, at 2, Docket No. 27. While this schedule has been modified several times, most recently in January 2017, the bifurcated timeline remained. Pretrial Order No. 17, at 4, Docket No. 175.

In the general causation discovery, all initial expert reports were due by March 31, 2017 and any rebuttal reports were due by June 3, 2017. *Id.* The party

bearing the burden of proof on an issue, generally the Plaintiffs, was to produce the initial expert reports, while the other party, generally the Defendants, could then produce rebuttal reports. Hulse Decl. Ex. A (Sept. 8, 2016 Status Conf. Tr.), at 18, Docket No. 1437. The Pretrial Orders did not allow replies to the expert rebuttals. Hulse Decl. Ex. B (June 15, 2017 Status Conf. Tr.), at 47-48, 51. Case-specific expert discovery was to address any issues unique to the particular bellwether case. *Id.* at 37-40. The classic example of such a case-specific expert, which the parties and the Court previously identified, would be a treating physician who might testify regarding his opinion as to the source of the Plaintiff's infection. *Id.* at 37-38.

## II.  Expert Reports

### A. Dr. Bushnell

As part of discovery in the pending bellwether case, Plaintiffs served Defendants with a report by Dr. Nathan Bushnell, an expert in biomedical engineering. Hulse Decl. Ex. H (Bushnell Report); Hulse Decl. Ex. I (Excerpt of Aug. 16, 2018 Status Conference Tr.).[1] Dr. Bushnell's report, 48 pages long, exclusively critiques the computational fluid dynamics ("CFD") model submitted by Dr. Abraham as a part of Defendants' expert rebuttal during the general causation phase of discovery. *Id.* Dr. Bushnell's report does not discuss any modeling he produced specific to the bellwether plaintiff or her operation. *Id.*

### B. Dr. David

Plaintiffs also served an expert report by Dr. Yadin David on August 10, 2018. Hulse Decl. 2, Ex. G (David Suppl. Report). Dr. David issued an initial report during the

---

[1]   Although Exhibits H and I are attached, Mr. Hulse's August 23, 2018 Declaration does not reference them. Hulse Decl. 1-2. While an understandable oversight, counsel should refile the Declaration, amended to properly identify each attached exhibit.

general causation phase of discovery in which he discussed existing potential design alternatives to the Bair Hugger. Zimmerman Decl., Apr. 21, 2017, Ex. A (David Report), Docket Nos. 315-16. Opinions regarding most of these products were excluded from trial. Amended Minute Entry of Final Pretrial Conference, May 4, 2018, *Gareis v. 3M Company et al*, Civil No. 16-4187 (JNE/DTS) (D. Minn. May 4, 2018). His new report, which he labels a supplemental report, "sets forth additional information relating to several specific products which are consistent with the alternative design concepts [he] discussed in [his] initial report." Hulse Decl. Ex. G, at 1. He identifies seven existing devices he thinks qualify as feasible and safer alternative designs. *Id.* All but one of the documents he cites to support each of these conclusions were available as of the date of his initial report; the other document on which he relies was available by the date of his deposition. *Id.* at 1 n.3, 2 n.5, 2 n.11, 3 n.17, 3 n.21, 4 n.25-26.

## ANALYSIS

### I.  Dr. Bushnell's Report

As a "sur-rebuttal," Dr. Bushnell's report violates the discovery schedule created in Pretrial Order No. 4 and amended by Pretrial Order No. 17. Rule 16 of the Federal Rules of Civil Procedure authorize a court, on motion or on its own, to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Included in the list of authorized sanctions—and the one sought by Defendants—is the issuance of an order "prohibiting the disobedient party . . . from introducing designated matters in evidence." *Id.*

Dr. Bushnell's report does not adhere to the bifurcated discovery schedule. Plaintiffs concede that it is a reply to Dr. Abraham's report, which was a rebuttal report

during the general causation phase. *See* Pl.'s Resp. Opposing Def.'s R. 37 Mot. to Bar Pl.'s Experts 11, Docket No. 1452. As a response to a rebuttal, Dr. Bushnell's report is, by definition, a sur-rebuttal. The Court clearly disallowed sur-rebuttal expert reports during general causation. Hulse Decl. Ex. B (June 15, 2017 Status Conf. Tr.), at 47-48, 51; Pretrial Order Nos. 4, 17.

Nor can the timing of the report be excused as an early disclosure of Dr. Bushnell's anticipated impeachment of Dr. Abraham. *Wegener v. Johnson*, 527 F.3d 687 (8th Cir. 2008), which Plaintiffs cite in support of this argument, does not stand for the principle that a sur-rebuttal is admissible as impeachment. To the contrary, *Wegner* is clear that any expert opinion that may be used to rebut another expert must obey applicable scheduling orders. *Id.* at 690-91. Regardless, the Court does not see, and Plaintiffs do not clarify, how Dr. Bushnell could properly be called, consistent with this Court's orders, as an "impeachment" witness under the Federal Rules of Evidence.

Because Dr. Bushnell's report violates the pretrial order, Plaintiffs may not introduce it into evidence.

**II.    Dr. David's Report**

Similarly, Dr. David's supplement to his original report must be excluded as an impermissible supplementation. Generally, "[i]f a party fails to provide information . . . as required by Rule26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Although an expert witness who discloses a report under Rule 26(a)(2)(B) must supplement information included in the report or provided at a deposition if the information is incomplete or incorrect, Fed. R. Civ. P. 26(e)(1)-(2), the supplementation requirement "does not 'bestow upon

litigants unfettered freedom to rely on supplements produced after a court imposed deadline.'" *3M Innovative Properties Co. v. Dupont Dow Elastromers, LLC*, Civ. No. 03-3364 (MJD/JGL), 2005 WL 6007042, at *4 (D. Minn. Aug. 29, 2005) (quoting *DAG Enters. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 110 (D.D.C. 2005)).

Dr. David's list of seven additional devices goes beyond supplementing his original report, but attempts to bolster it by adding previously undisclosed but then-extant alternatives. Because of the previously discussed bifurcation between general and case-specific discovery, any feasible alternative designs the Plaintiffs wished to bring into evidence were properly the subject of the original report. While this may appear to be a burden, it is the burden Plaintiffs bear in most states and "Rule 26 provides no safe harbor for a party's lack of diligence." *Id.* at *4. Both the new alternative designs and the laws placing the burden on plaintiffs to establish the existence of a feasible alternative design existed at the time Dr. David wrote his original report, so there is no substantial justification for the prior omission. Further, the Court's decision in the *Gareis* bellwether to allow Plaintiffs to argue that the Bair Hugger product could be modified using elements of the Berchtold TableGard, a conductive warming device, does not disturb its prior holding that electric-mattresses, also conductive warming devices, do not qualify as an alternative design.

By contrast, Defendants would be prejudiced by the admission of Dr. David's new report, as they would need to investigate each of the seven additional feasible alternatives. This would be a tall task in the shadow of the looming *Axline* bellwether trial. For these reasons, Plaintiff's cannot use Dr. David's report, nor may Dr. David testify regarding the new opinions disclosed therein.

**ORDER**

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that Defendant's Motion to Exclude Expert Testimony [Docket No. 1434] is GRANTED. Plaintiffs may not introduce either Dr. Bushnell's report or Dr. David's supplemental report at trial or at any hearing.

Dated: September 19, 2018

*s/ David T. Schultz*
DAVID T. SCHULTZ
United States Magistrate Judge