## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Devices Products Liability Litigation<br><br>This Document Relates to:<br>All Actions | MDL No. 15-2666 (JNE/DTS)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO AMEND PRETRIAL ORDER NO. 23** |

Plaintiffs' motion to amend Pretrial Order No. 23 (Dkt. No. 1517) should be denied. Before PTO 23 (Dkt. No. 1039), this MDL had accumulated dozens of cases where the plaintiff had died and nobody knew about it. This is a circumstance that never could have occurred in an individual products liability case.  It is no more tolerable in an MDL format. Defendants proposed PTO 23, and the Court approved it in modified form, to ensure that Plaintiffs' counsel would remain in regular contact with their clients and would notify the Court and Defendants within a reasonable time after the death.

PTO 23 provides generous deadlines, requiring Plaintiffs' counsel to check in only every 90 days with their clients to confirm that they are still living.  This is not a hardship, and merely echoes an attorney's ethical obligation to keep clients apprised of the proceedings in the MDL. Plaintiffs' motion would have things return to the *status quo ante*, stripping away any obligation to remain in regular contact with clients or to update the Court on plaintiffs' deaths.  This is the wrong direction.  PTO 23 has been working well, most Plaintiffs' counsel are following its requirements, and Plaintiffs offer not a single

concrete example of the undue hardship that they say the deadline imposes. Plaintiffs' motion to amend is a solution in search of a problem.

## BACKGROUND

At the December 21, 2017 status conference, the Court heard argument from the parties on the appropriate procedure for cases with deceased plaintiffs. (*See* Hulse Decl., Ex. A (Dec. 21, 2017, Status Conf. Tr. at 32-40).) Defendants proposed a 30-day deadline to file a suggestion of death. Plaintiffs objected to the 30-day deadline as too short, relying on the same arguments now raised again in their Motion. (*See id.* at 35-36.) Plaintiffs nonetheless "recognize[d] there is a duty to provide a notice of suggestion of death upon the record. . . . I would hope that people would be able to get lawyers notice within a couple of months." (*Id.* at 36-37.) Plaintiffs also acknowledged that several jurisdictions impose a "reasonable time" requirement, "so that lawyers can't just sit back and not do anything about it. And the same thing goes for next of kin, they do need to be diligently working on handling the affairs and effects afterwards." (*See* Hulse Decl., Ex. A at 36.) The Court recently echoed Plaintiffs' assessment, noting that "it is not sufficient to sit back and wait to find out whether people have died, but [] it does require keeping in contact with the plaintiffs to find out whether they are alive or dead." (*See* Hulse Decl., Ex. B (Aug. 16, 2018, Status Conf. Tr. at 67).)

After weighing the concerns of both sides, the Court ultimately determined that a 90-day deadline was appropriate. (*See id.* at 40; *see also* Dkt. No. 1039 at 1.) The Court has stated that "the 90-day deadline in PTO 23 for filing a suggestion of death represents a

2

compromise between the preferences of Plaintiffs and Defendants." (Order, Aug. 24, 2018, Dkt. No. 1440, at 6.)

The concerns that brought about PTO 23 were not hypothetical. Before PTO 23, Plaintiffs' counsel had filed only 10 suggestions of death.[1] Defendants were forced to scrutinize plaintiff fact sheets and publicly available information to identify deceased plaintiffs, and filed 28 suggestions of death themselves.[2] This disparity was based on some Plaintiffs' counsel's lack of diligence in keeping in touch with their clients after the initial

---

[1] Plaintiffs filed suggestions of death in *Morris v. 3M Co., et al.* (15-cv-04491), Dkt. No. 28; *Peyton v. 3M Co., et al.* (16-cv-00705), Dkt. No. 11; *McMullen v. 3M Co., et al.* (16-cv-01035), Dkt. No. 6; *Malloy v. 3M Co., et al.* (16-cv-02538), Dkt. No. 6; *Templeton v. 3M Co., et al.* (16-cv-02589), Dkt. No. 6; *Terrell v. 3M Co., et al.* (17-cv-00331), Dkt. No. 7; *Otterbein v. 3M Co., et al.* (17-cv-00532), Dkt. No. 6; *Benn v. 3M Co., et al.* (17-cv-01729), Dkt. No. 6; *Ethelbal v. 3M Co., et al.* (17-cv-01731), Dkt. No. 6; and *Pocsi v. 3M Co., et al.* (17-cv-04646), Dkt. No. 9.

[2] Defendants filed suggestions of death in *Reed v. 3M Co., et al.* (15-cv-03143), Dkt. No. 34; *Maxfield v. 3M Co., et al.* (15-cv-03703), Dkt. No. 14; *Printup v. 3M Co., et al.* (15-cv-03736), Dkt. No. 29; *Peterson v. 3M Co.* (15-cv-04004), Dkt. No. 24; *Lee v. 3M Co.* (16-cv-00403), Dkt. No. 6; *Strike v. 3M Co.* (16-cv-00745), Dkt. No. 6; *Kohout v. 3M Co.* (16-cv-00789), Dkt. No. 6; *Surgeon v. 3M Co.* (16-cv-01153), Dkt. No. 6; *Maccarrone v. 3M Co.* (16-cv-01832), Dkt. No. 6; *Pickard v. 3M Co., et al.* (16-cv-02639), Dkt. No. 10; *Tucker v. 3M Co., et al.* (16-cv-02723), Dkt. No. 6; *Moore v. 3M Co.* (16-cv-02728), Dkt. No. 5; *Showers v. 3M Co., et al.* (16-cv-03082), Dkt. No. 8; *Overko v. 3M Co.* (16-cv-03391), Dkt. No. 6; *Whitlow v. 3M Co.* (16-cv-03427), Dkt. No. 7; *Harvey v. 3M Co.* (16-cv-03469), Dkt. No. 6; *Pavlovic v. 3M Co.* (15-cv-04154), Dkt. No. 6; *Bond v. 3M Co.* (16-cv-04161), Dkt. No. 7; *White v. 3M Co., et al.* (16-cv-04413), Dkt. No. 7; *Malinski v. 3M Co., et al.* (17-cv-00088), Dkt. No. 9; *White v. 3M Co.* (17-cv-00090), Dkt. No. 6; *Paul v. 3M Co.* (17-cv-00479), Dkt. No. 6; *Harrison v. 3M Co.* (17-cv-00570), Dkt. No. 6; *Moats v. 3M Co.* (17-cv-01005), Dkt. No. 6; *Bozek v. 3M Co.* (17-cv-01532), Dkt. No. 6; *Washington v. 3M Co.* (17-cv-01611), Dkt. No. 6; *Graham v. 3M Co.* (17-cv-01834), Dkt. No. 6; and *Smith v. 3M Co.* (17-cv-03520), Dkt. No. 8.

3

client intake meeting. It was not due to any special difficulty in Plaintiffs' counsel keeping in contact with their clients.[3]

The lack of clear rules and deadlines for suggestions of death led to absurd situations. For example, in *Bond*, a deceased plaintiff continued to litigate from beyond the grave. The plaintiff died on May 11, 2017, shortly after serving his original PFS. (Case No. 16-cv-04161, Dkt. No. 7.) After sending several letters refusing to obtain a new verification, Plaintiffs' counsel provided a new verification executed by the decedent's wife on June 23, 2017. (*See* Hulse Decl., Ex. I (Ltr. of June 29, 2017).) Plaintiffs' counsel provided further amended responses to the PFS a month later, purportedly verified by the decedent (then dead more than three months) and his wife. (*See* Hulse Decl., Ex. J (Ltr. of July 19, 2017).)

Suggestions of death filed after entry of PTO 23 further confirmed that some plaintiffs' counsel were not acting diligently to discover their clients' deaths and notify Defendants and the Court. Thirteen of the 44 suggestions of death filed on or before PTO

---

[3] In most of these cases Plaintiffs' counsel had actual notice of the death well before the suggestions of death were filed by Defendants. (*See, e.g.,* Hulse Decl., Ex. C (Excerpt from PFS served Mar. 8, 2017 in *Lee* (16-cv-00403) indicating Pl. was deceased); Hulse Decl., Ex. D (Excerpt from PFS served with Pl.'s death certificate Dec. 21, 2016 in *Maccarrone* (16-cv-01832) indicating Pl. was deceased); Hulse Decl., Ex. E (Excerpt from PFS served Mar. 9, 2017 in *Overko* (16-cv-03391) indicating Pl. was deceased); Hulse Decl., Ex. F (Ltr. of June 30, 2017 from Pl.'s counsel in *Harrison* (17-cv-00570) acknowledging Pl.'s death); Hulse Decl., Ex. G (PFS verification executed Aug. 8, 2017 in *Bozek* (17-cv-01532) indicating Pl. was deceased); Hulse Decl., Ex. H (Excerpt from PFS served Aug. 30, 2017 in *Graham* (17-cv-01834) indicating Pl. was deceased).)

4

23's grace-period deadline (April 9, 2018) involved plaintiffs who had been dead for a year or more.[4]

Since PTO 23's grace-period deadline, however, the vast majority of Plaintiffs' counsel have complied with the 90-day filing deadline for suggestions of death.[5] These filings show that PTO 23 is working as intended, imposing a reasonable deadline that ensures timely notice of a plaintiff's passing.

## ARGUMENT

### A.    Plaintiffs' Motion to Amend PTO 23 Violates Local Rule 7.1(j)

As a threshold matter, Plaintiff's motion violates Local Rule 7.1(j), which bars litigants from filing a motion for reconsideration without prior permission of the court. While styled as a motion to amend, it is in fact a motion to reconsider entry of PTO 23. *Compare* Dkt. No. 1039 *with* Fed. R. Civ. P. 25(a).   Plaintiffs offer no new bases to

---

[4] *See Kriner v. 3M Co.* (16-v-00169), Dkt. No. 8; *Colon v. 3M Co., et al.* (16-cv-00985), 15-md-02666 Dkt. No. 1313; *Connell v. 3M Co., et al.* (16-cv-02351), Dkt. No. 7; *Downs v. 3M Co., et al.* (17-cv-2156), Dkt. No. 7; *Brack v. 3M Co., et al.* (17-cv-02451), Dkt. No. 6; *Flynn v. 3M Co., et al.* (17-cv-02533), Dkt. No. 6; *Holmes v. 3M Co., et al.* (17-cv-02647), Dkt. No. 6; *Wolfson v. 3M Co., et al.* (17-cv-02809), Dkt. No. 6; *Pledger v. 3M Co., et al.* (17-cv-03502), Dkt. No. 6; *Stringer v. 3M Co., et al.* (17-cv-03383), Dkt. No. 6; *Sundquist v. 3M Co., et al.* (17-cv-03547), Dkt. No. 6; *Miller v. 3M Co., et al.* (17-cv-03809), Dkt. No. 6; *Herman v. 3M Co., et al.* (17-cv-03869), Dkt. No. 6; *Nickell v. 3M Co., et al.* (17-cv-04285), Dkt. No. 8).  These filings were considered timely despite the 90-day deadline, because PTO 23 offered a safe harbor for those cases where the plaintiff died before the entry of the order.  (*See* Dkt. No. 1039, at ¶ A.)

[5] *See, e.g., Stevens v. 3M Co., et al.* (16-cv-02556), Dkt. No. 6; *Owens v. 3M Co., et al.* (17-cv-00712), Dkt. No. 7; *Williams v. 3M Co., et al.* (17-cv-01551), Dkt. No. 7; *Linden v. 3M Co., et al* (17-cv-01933), Dkt. No. 6; *Trewhella v. 3M Co., et al.* (17-cv-03159), Dkt. No. 6; *Harter v. 3M Co., et al.* (17-cv-03448), Dkt. No. 7; *Spear v. 3M Co., et al.* (17-cv-04886), Dkt. No. 6; *Ward v. 3M Co., et al.* (17-cv-04893), Dkt. No. 6).

"amend" PTO 23 that they did not raise at the December 21, 2017, status conference. (*See* Hulse Decl., Ex. A at 35-36, 40).

"Motions to reconsider require the permission of the court and will be granted only upon a showing of 'compelling circumstances.'" *Dixon v. Fresh Seasons Mkt., LLC*, No. 15-CV-3099 (JNE/TNL), 2015 WL 6872461, at *1 (D. Minn. Nov. 9, 2015) (Ericksen, J.). Plaintiffs did not file and serve a letter seeking permission to file the instant motion, and did not receive permission from the Court. Based on Plaintiffs' failure to comply, the Court should deny the Motion. *See In re Nash Finch Co. Sec. Litig.*, 338 F. Supp. 2d 1037, 1038 (D. Minn. 2004) ("Plaintiffs have not asked for permission to seek reconsideration. As a result, they have not complied with the District of Minnesota's Local Rules. The motion is therefore a nullity.").

### B. PTO 23 Continues to Fulfill a Vital Function, and Compliance with the 90-Day Suggestion of Death Deadline Is A Reasonable Imposition.

This Court should also deny Plaintiffs' motion on the merits. Nothing in subsequent proceedings has diminished the importance of Plaintiffs' counsel's obligation to check in regularly with their clients and inform the Court and Defendants when one of their clients has died. Plaintiffs fail to identify any intervening change in circumstance that would warrant modification of PTO 23's 90-day deadline.

Plaintiffs spend much of their brief arguing that compliance with the deadline is difficult. They argue that this plaintiff population "skews older." (Pls.' Memo, Dkt. No. 1518 at 9.) As a result, Plaintiffs hypothesize that these clients may move unexpectedly

6

into a care facility or suffer sudden health complications. (*Id.* at 2-3, 9.) They also assert that next of kin may only be "marginally" aware of the pending suit. (*Id.* at 10.)

But Plaintiffs offer no evidence to support these broad generalizations. Indeed, the belated suggestions of death that have come before this Court belie Plaintiffs' claims. In many cases, Plaintiffs' counsel had actual notice of the death in advance of the filing deadlines. For example, Plaintiffs' counsel in *Harper* (17-cv-03055) missed the deadline to file a suggestion of death, despite acknowledging the death by letter more than two weeks before the deadline. (*See* Hulse Decl., Ex. K (Ltr. of Apr. 19, 2018.) Similarly, Plaintiffs' counsel in *Hylander* (16-cv-02518) served a PFS disclosing the plaintiff's death on March 2, 2017. (*See* Dkt. No. 1334 at 2.) Yet, even after discussing the death in an email exchange, Plaintiffs waited an additional seven weeks to file the suggestion of death (more than three weeks late). (*See id.* at 5.)

Plaintiffs' hardship argument also ignores reasonable steps that they can take to avoid these issues altogether.[6] Under PTO 14's PFS requirements, Plaintiffs must provide their attorneys with information on their next of kin. (*See* Pretrial Order No. 14, Dkt. No. 117, at ¶ 2.) If Plaintiffs' counsel are unable to reach their clients – which should raise a red flag that the client may be either incapacitated or deceased – they can contact these next of kin. These are common sense steps, and are also consistent with the baseline professional obligations of an attorney. *See* Model Rules of Prof'l Conduct, r. 1.3 ("A lawyer shall act

---

[6] In *Hylander* (16-cv-02518), *Bellande* (16-cv-02700), *Smith v. 3M Co., et al.* (17-cv-02889), and *Harper* (17-cv-03055) the suggestion of death was filed late despite a living co-Plaintiff with a loss-of-consortium claim.

7

with reasonable diligence and promptness in representing a client.") and r. 1.4: ("a lawyer shall; . . . (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter . . .") (Am. Bar Ass'n 2016).

### C. The Court Has Already Offered Relief Where Compliance with PTO 23 Is "Impossible."

Plaintiffs' argument that compliance with PTO 23 may be "impossible" in some circumstances (*see* Dkt. No. 1518 at 9) also ignores that this Court has *already* indicated that it may excuse noncompliance where Plaintiffs' counsel proves that it was impossible to comply. On August 16, 2018, the Court ordered counsel for the plaintiff in *Bellande* "to show why, as counsel argues, it was impossible to comply with PTO 23 and maintain sufficient contact to learn of Plaintiff Bellande's passing earlier. If counsel fails to establish this impossibility, Defendants may, on or after September 20, 2018, move to dismiss Plaintiff Bellande with prejudice." (Dkt. No. 1440 at 6.)

Plaintiffs have not identified any case where it was genuinely impossible for Plaintiffs to comply with the deadline. In *Bellande*, Plaintiffs' counsel averred that they called their client on January 26, 2018, and did not get an answer. (Dkt. No. 1432, Pl. Supp. Resp. at 2.) Counsel's next phone call to their client was nearly three months later, on April 17, 2018, when they purportedly learned about Mr. Bellande's death. (*Id.*) They fail to offer any explanation for their nearly three-month delay in reaching out to the Bellandes after their unsuccessful phone call in January. Why, after failing to get through the first time, did they not immediately try again? This does not even demonstrate *difficulty*, much

8

less impossibility. As the Court has observed: "[H]ad there been regular contact [Plaintiffs' counsel] would have known [of the plaintiff's death], but there wasn't, so . . . that's how the date gets missed." (Hulse Decl., Ex. B at 68.)

### D. Case Law Strongly Supports PTO 23.

PTO 23's suggestion-of-death deadline was well within the Court's authority to set pretrial scheduling deadlines and manage this MDL. *See* Fed. R. Civ. P. 16; *Wescott Agri-Prod., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) (a district court has the inherent power to impose sanctions – including dismissal – to "manage its affairs and achieve the orderly and expeditious disposition of cases"). Plaintiffs concede that PTO 23 "is part of the Court's procedures," and do not identify any instance where this type of common procedure has been held to be an improper exercise of the court's authority or a violation of due process. (Dkt. No. 1518 at 8.)

Indeed, several other MDL courts have entered pretrial orders establishing deadlines for suggestions of death and have dismissed cases for non-compliance with these orders. *See, e.g., Wallace v. Novartis Pharm. Corp.*, 984 F. Supp. 2d 377, 380–81 (M.D. Pa. 2013) (dismissing a case with prejudice, in part, for failing to comply with the CMO's 60-day deadline to file a suggestion of death). In *Wallace*, the court explained the need for strict rules governing substitution:

> The provisions in the CMO pertaining to substitution were not mere formalities. Because of the nature of the plaintiffs' conditions in the MDL cases, strict rules governing substitution were necessary as the likelihood was high that many of the plaintiffs would die from their cancers before the conclusion of their cases.

*Id.* at 386.

9

Precedent supports deadlines of less than 90 days. In *In re Aredia & Zometa Prod. Liab. Litig.,* the MDL court dismissed a case with prejudice where plaintiff failed to comply with a 30-day deadline to file a suggestion of death. No. 3:06-CV-0966, 2013 WL 1482945, at *3 (M.D. Tenn. Apr. 10, 2013)*, report and recommendation adopted,* No. 3-06-MD-1760, 2013 WL 1984389 (M.D. Tenn. May 13, 2013).

Moreover, none of the cases cited by Plaintiffs supports their argument that PTO 23 is contrary to law. In *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 700 (D.N.J. 1996), the court noted only that, under Rule 25(a), "the plaintiffs are not under any time constraints to make a formal suggestion of death." The same is true of the other cases cited by Plaintiffs. *See, e.g., McKenna v. Pac. Rail Serv.,* 32 F.3d 820, 836 (3d Cir. 1994) (Rule 25(a)'s 90-day deadline to move for substitution begins upon the filing of the suggestion of death); *City of Colton v. Am. Promotional Events, Inc.*, No. CV 09-1864 PSG, 2014 WL 12740637, at *2 (C.D. Cal. Apr. 15, 2014) (Rule 25(a)'s 90-day deadline to file a motion for substitution not triggered where no suggestion of death had been filed). This Court imposed a deadline for filing suggestions of death *because* Rule 25(a) does not specify a deadline. *Lightfoot v. District of Columbia,* 629 F. Supp. 2d 16, 19 (D.C. 2009), is similarly inapposite. There, the court allowed a motion for substitution six years after the plaintiff had died because it had not previously entered any order setting a deadline to file a suggestion of death.

In sum, this Court had the authority to impose the eminently reasonable 90-day suggestion-of-death deadline, and could have imposed an even shorter deadline.

## **CONCLUSION**

PTO 23's 90-day deadline for filing suggestions of death represented a reasonable compromise deadline. It requires that Plaintiffs' counsel check in periodically with their clients to ensure that they are still living, and notify the Court and Defendants when they are deceased. Plaintiffs do not raise any change in circumstances that would warrant amending PTO 23, and do not identify a single case that has been dismissed unjustly. Accordingly, Plaintiffs' Motion to Amend PTO 23 should be denied.

Dated: October 3, 2018                    Respectfully submitted,

*s/Benjamin W. Hulse*
Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email: blackwell@blackwellburke.com
         bhulse@blackwellburke.com
         myoung@blackwellburke.com

Lyn Peeples Pruitt
MITCHELL WILLIAMS SELIG
 GATES & WOODYARD
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
Phone: (501) 688-8869
Fax: (501) 688-8807
Email: lpruitt@mwlaw.com

Bridget M. Ahmann (MN #016611x)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Phone: (612) 766-7000
Fax: (612) 766-1600
Email: bridget.ahmann@faegrebd.com

**Counsel for Defendants 3M Company and Arizant Healthcare Inc.**