# EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT

 2                      DISTRICT OF MINNESOTA

 3      ------------------------------------------------------
                                    )
 4                                  )
        In Re: Bair Hugger Forced Air  )   File No. 15-MD-2666
 5      Warming Devices Products     )   (JNE/FLN)
        Liability Litigation         )
 6                                  )   December 21, 2017
                                    )   Minneapolis, Minnesota
 7                                  )   Courtroom 12W
                                    )   9:52 a.m.
 8                                  )
                                    )
 9      ------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                UNITED STATES DISTRICT COURT JUDGE
11

12             THE HONORABLE FRANKLIN L. NOEL
                UNITED STATES MAGISTRATE JUDGE
13

14                      (STATUS CONFERENCE)

15      APPEARANCES

16      FOR THE PLAINTIFFS:
                              MESHBESHER & SPENCE
17                            Genevieve M. Zimmerman
                              1616 Park Avenue
18                            Minneapolis, MN  55404

19
                              CIRESI CONLIN
20                            Michael Sacchet
                              225 South 6th Street
21                            Suite 4600
                              Minneapolis, MN
22

23                            KENNEDY HODGES, LLP
                              Gabriel Assaad
24                            4409 Montrose Blvd
                              Suite 200
25                            Houston, TX 77006
```

1    deadlines have to be met that, you know, a lot of time

2    passed before the PFS came in.  In this case, we don't

3    oppose the setting aside the dismissal.

4              THE COURT:  All right.  And that is 17CV2395,

5    docket, right?

6              MR. PAREKH:  Yes, Your Honor.  The Hecht case.

7              THE COURT:  All right.  Your motion is granted.

8              MR. PAREKH:  Thank you, Your Honor.

9              MR. HULSE:  The related issues, Your Honor, the

10   defendants have proposed a process to deal with the

11   plaintiffs who pass away after the filing of their lawsuits.

12   The plaintiffs, I think their position is they don't think

13   an order like this is necessary.  And let me tell you given

14   the background of rules that we have why we have proposed

15   this, and it's something that's been done in other MDLs, if

16   this is an okay time to talk about this issue.

17             So the issue is that Rule 25A, which provides the

18   process for suggestion of death, it doesn't actually provide

19   a date by which a suggestion of death needs to be filed.  So

20   what we've learned over the last several months is that we

21   have dozens and maybe perhaps a hundred plaintiffs who have

22   passed away since filing lawsuits, and they're just

23   lingering out there.

24             Many already had compliant PFSs, so there is no

25   way we would know through the PFS process that somebody has

1  passed away.  And if we weren't in an MDL, this would have

2  been addressed.  But because we are in an MDL without a

3  focus on these cases, these just sort of linger out there.

4  And if the plaintiffs don't tell us or file a suggestion of

5  death, we don't know about it.

6         So what we've been doing, the defendants, is when

7  we find out about one of these cases, we file a suggestion

8  of death.  So what we're proposing here is an Order that is

9  just copied from the *Aredia and Zometa MDL* from a few years

10  back, which would put in a requirement that plaintiffs file

11  a suggestion of death within 30 days of the death of their

12  client.  We think that's a reasonable requirement.  And

13  after that, we basically follow the process set by the rule.

14         The other thing that we've incorporated is the

15  Court's prior ruling.  This is on July 24th having to do

16  with the *Harkleroad* case.  That with the substitution, there

17  has to be a completed, verified PFS served on the defendants

18  too.  So we don't -- so the expectations are clear, and that

19  would just be taking that ruling from the *Harkleroad* case

20  and extending it across the MDL.

21         So I do have, if the Court is interested, copies

22  of the Order from the *Aredia and Zometa MDL* that this is

23  copied from.  The plaintiffs have indicated in meet and

24  confer correspondence that they are concerned that this

25  impinges on State Court rules and laws for appointment of

1    representatives and special administrators.  We don't see

2    that at all.  That is something that comes up when a motion

3    for substitution has been filed, then we have to be in

4    compliance with whatever the state rule is for being a

5    proper party to be substituted.  But there's nothing

6    contrary to state law in requiring plaintiffs to file a

7    suggestion of death within 30 days of their client's death.

8              MAGISTRATE JUDGE NOEL:  And that's the only

9    constraint in your proposal is the 30 days to file the

10   suggestion, then there's no other time limit or requirement

11   that things happen in any given time frame.

12             MR. HULSE:  The only other requirement that really

13   goes beyond the rules is this PFS requirement that we've

14   picked up from the Court's July 24th ruling in Harkel Road

15   case.

16             THE COURT:  Okay.  So it's Rule 25 straight up

17   with the insertion of the 30-day.

18             MR. HULSE:  Right.

19             THE COURT:  Okay.

20             MR. HULSE:  Which is a gap that maybe the rules

21   should fill at some point.

22             THE COURT:  I'll get right on it.  We meet in -- I

23   guess we don't meet until next year.

24             MR. HULSE:  It's a funny rule.

25             THE COURT:  Have you had this problem in other

1    case s?

2              MR. HULSE:  There is a bit of an ambiguity in it

3    too in the Court's interpretation of what the word "service"

4    means in this rule too.  I know Judge Noel is familiar with

5    this issue.  He's confronted it before with some courts

6    taking the viewpoint that filing the suggestion of death and

7    service through ECF meets the service requirement.

8              Other courts have said you actually need to go and

9    find out anybody, find anybody who is a potential heir or

10   substitute plaintiff and actually serve them according to

11   state law rules, so there's a split of opinion on that.

12             THE COURT:  Okay.  Is there any objection to this?

13             MS. ZIMMERMAN:  Your Honor, the plaintiffs'

14   primary objection is with respect to the 30 days.  I mean,

15   unfortunately, the reality is a lot of times these people

16   will die and their family members may or may not have any

17   idea that they have a lawsuit pending.

18             So a lot of times the lawyers aren't going to be

19   advised within 30 days of the actual death.  They've got a

20   lot to attend to during that time.  So we would suggest that

21   it should be 30 days from the time that the lawyers are

22   provided notice about the death because it's just, it's an

23   onerous burden when lawyers don't necessarily know for many

24   months whether their next of kin are sorting through their

25   effects and trying to figure out what other paperwork needs

1    to be tended to.

2              So with that caveat, we recognize there is a duty

3    to provide a notice of suggestion of death upon the record

4    and whether it's service, as Mr. Hulse indicated, I don't

5    think that we're particularly concerned.  The concern is

6    more it takes a while sometimes for the next of kin to

7    notify the lawyers.  They may not know that they have a case

8    pending.  So within 30 days of the lawyers knowing about it,

9    would be our request.

10             THE COURT:  What's the longest State Court time

11   frame that's allowed?  Because State Court, there is a

12   requirement that somebody take over the lawsuit in a

13   reasonable period of time.  And it sounds like you've had

14   occasion to become familiar with the various state laws so

15   what's the --

16             MS. ZIMMERMAN:  I wish I could tell you what the

17   longest is across the country.  Usually, what I run into is

18   this reasonable time kind of language so that lawyers can't

19   just sit back and not do anything about it.  And the same

20   thing goes for the next of kin, they do need to be

21   diligently working on handling the affairs and the effects

22   afterwards.

23             THE COURT:  There's not even a reasonable time

24   requirement in Rule 25, is there?

25             MS. ZIMMERMAN:  Not that I'm aware of.

1              MAGISTRATE JUDGE NOEL:  I think where Judge

2      Ericksen is going -- maybe I'm wrong.

3              THE COURT:  No, you're right.

4              MAGISTRATE JUDGE NOEL:  Instead of 30 days from

5      when the lawyer learns, what if we just extended the 30 days

6      to some longer period of time?  Would that be another way to

7      fix your concern?

8              MS. ZIMMERMAN:  That's a good question, Your

9      Honor.  I'd have to check and see if there was some kind of

10     outside back stop.  If there is some state that says you get

11     a year or something like that.  I'm not aware of that.  As I

12     stand here, I think a year seems like a long time.  I would

13     hope that people would be able to get lawyers notice within

14     a couple of months.  Perhaps we can research to see if

15     there's some sort of state statute we would be running afoul

16     of and otherwise propose something to Your Honors.

17             THE COURT:  Couldn't we do the 30 days, and then

18     if it turns -- so that triggers something, so then the

19     family gets notice.  And if it turns out that they want to

20     take action, then you can come back and try to get it

21     re-upped, just like we did with this --

22             (Court conferring off the record.)

23             MR. HULSE:  I think I could add something to this

24     sort of.  All, of course, a suggestion of death is just the

25     statement on the record that the plaintiff has died.  It

1     triggers the 90 day period for substitution.  The advisory

2     committee notes make clear that the Court can grant for good

3     cause an extension of that 90-day period.  So if basically

4     things are dragging out in State Court with the appointment

5     of the personal representative, counsel can come in and ask

6     for an extension.

7          MAGISTRATE JUDGE NOEL:  That's not the concern.

8     And I understand the concern that Ms. Zimmerman raises is

9     that the lawyer who represents the plaintiff who is now dead

10    may not know that guy is dead for many more than 30 days

11    after he or she has died, and that that's the piece of your

12    proposal that's being attacked is that if I were to die and

13    I have a lawsuit pending, my wife may not even know I have a

14    lawsuit pending.  And --

15          THE COURT:  She wouldn't even know you're dead.

16    Get a different example.

17          MAGISTRATE JUDGE NOEL:  I'm just going to let that

18    one go.  The point is that the 30 days is too short a

19    window, 30 days from the date of death is too short of a

20    window for a lawyer to get that suggestion of death on the

21    record.

22          MR. HULSE:  Here's a thought about that, and I'm

23    sympathetic to that.  My suggestion would be to make it

24    60 days instead of 30.  And here's the reason why I still

25    think it should be based on the death and not the notice.

```
 1              If we weren't in an MDL, then the plaintiffs'
 2      counsel would be in more regular contact with their clients.
 3      Here, because we're in an MDL, if we don't require
 4      plaintiffs' counsel to be checking in from time to time,
 5      we're just going to end up in the same situation where
 6      they're not in contact for a year with their clients, and we
 7      really haven't fixed the problem.  So we'd be fine with
 8      60 days instead of 30.  That gives a window for plaintiffs'
 9      counsel to check in bimonthly with their clients, which
10      seems like a reasonable expectation to us.
11              THE COURT:  There are ways to monitor.
12              MS. ZIMMERMAN:  Yes, I mean there are a number of
13      those --
14              THE COURT:  We can put a mirror over there or you
15      can take their blood pressure.
16              MR. HULSE:  We'll check 80 percent of the cases.
17              MS. ZIMMERMAN:  Mr. Assaad offers a good point,
18      who do we call because we don't, if the plaintiff is dead,
19      but.
20              MR. HULSE:  In the PFS, of course, if you can't
21      reach your plaintiff for a period of time, then it probably
22      is time to call any of those other people who are listed in
23      the PFS, the family, or spouses.  Many of these spouses, of
24      course, have a loss of consortium claim.  So it doesn't
25      seem, again, it doesn't seem like anything other than the
```

```
 1    regular expectation of diligent representation of your

 2    clients.

 3              MS. ZIMMERMAN:  Well, I think the plaintiffs

 4    respect that, and I think that we should afford these

 5    families the opportunity to get with their lawyers and make

 6    sure that we can go through the procedural requirements.

 7    But I don't think that there's any prejudice to the

 8    defendants, particularly if it's not a case that's presently

 9    being worked up for trial, if they get a little bit of extra

10    time to gather paperwork.

11              THE COURT:  Hold on, let's just think.

12              (Court conferring.)

13              THE COURT:  All right.  It will be 90 days from

14    the date of death.  Plaintiffs' counsel files a suggestion

15    of death following which the Rule 25 procedures kick in.

16              MS. ZIMMERMAN:  Thank you, Your Honor.

17              MR. HULSE:  And, Your Honor, as far as our

18    Proposed Order?

19              THE COURT:  It will be just like that only it will

20    be 90 days.

21              MR. HULSE:  And should we submit one that makes

22    that revision?

23              THE COURT:  No, we can do it.

24              MR. HULSE:  Okay, we can do it.

25              MAGISTRATE JUDGE NOEL:  Sorry for the next mixed
```

1    signal.  I was saying yes.

2              THE COURT:  I misspoke.  I misspoke.

3              MAGISTRATE JUDGE NOEL:  No, no, no, you spoke and

4    your word is the Order.  So we can substitute 30 for 90 or

5    90 for 30.

6              THE COURT:  I was just showing off that we were

7    able to do that.

8              MR. HULSE:  The language is we'd like the PTO that

9    goes up on the website and everything, so everybody could

10   see it and so --

11             THE COURT:  Could you just hold on for a second?

12             MR. HULSE:  Of course.

13             (Court conferring.)

14             THE COURT:  If you're willing to do it, would you

15   do it?

16             MR. HULSE:  Of course.

17             THE COURT:  Thank you.  Okay.  Done.  All right.

18   What about these other ones?

19             MR. HULSE:  I assume you're referring to PFSs,

20   Your Honor.

21             THE COURT:  Yes.

22             MR. HULSE:  There's nothing else to be decided

23   today.  We'll have a motion for the next status conference

24   as the procedure goes that probably involves quite a few

25   more cases, but no other items for decision today, at least

# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT

 2                       DISTRICT OF MINNESOTA

 3      --------------------------------------------------------
                                   )
 4                                 )
        In Re:  Bair Hugger Forced Air  )  File No. 15-MD-2666
 5      Warming Devices Products    )  (JNE/DTS)
        Liability Litigation        )
 6                                 )  August 16, 2018
                                   )  Minneapolis, Minnesota
 7                                 )  Courtroom 12W
                                   )  9:50 a.m.
 8                                 )
                                   )
 9      --------------------------------------------------------

10            BEFORE THE HONORABLE JOAN N. ERICKSEN
                 UNITED STATES DISTRICT COURT JUDGE
11
              THE HONORABLE DAVID T. SCHULTZ
12               UNITED STATES MAGISTRATE JUDGE

13                      (STATUS CONFERENCE)

14      APPEARANCES

15      FOR THE PLAINTIFFS:        MESHBESHER & SPENCE LTD.
                                   Genevieve M. Zimmerman
16                                 1616 Park Avenue
                                   Minneapolis, MN  55404
17
                                   PRITZKER HAGEMAN
18                                 David Szerlag
                                   45 South Seventh Street
19                                 Plaza Seven Building, Ste. 2950
                                   Minneapolis, MN  55402
20
                                   CIRESI CONLIN LLP
21                                 Michael A. Sacchet
                                   225 South Sixth Street
22                                 Suite 4600
                                   Minneapolis, MN  55402
23
                                   KENNEDY HODGES LLP
24                                 David W. Hodges
                                   711 West Alabama Street
25                                 Houston, TX  77006
```

```
 1                    THE COURT:  All right.  So why should that not be

 2        dismissed?  Anybody want to speak on that?

 3                    MS. ZIMMERMAN:  No, Your Honor.

 4                    THE COURT:  Okay.  That's dismissed.

 5                    Bellande, et al., 16-cv-2700.  Death occurred just

 6        this past April.  Suggestion of death comes June of 2018.

 7                    MR. HULSE:  The death was actually December 2017,

 8        Your Honor.

 9                    THE COURT:  Oh.  Because I thought what was the

10        problem there?  Oh, I see.  So the death happened then.

11        Then we have got the order.

12                    MR. HULSE:  Right, which gives everybody a safe

13        harbor at that point.

14                    THE COURT:  So the due date for the suggestion of

15        death was April and it didn't come in till June.

16                    MR. HULSE:  Correct, Your Honor.

17                    MR. HODGES:  Your Honor.

18                    THE COURT:  And then let me just -- hold on.

19        Okay.

20                    MR. HODGES:  Yes, Your Honor.  David Hodges here

21        on behalf of the Bellandes.

22                    This is an impossibility of performance situation

23        where we learned about the death -- the date you mentioned

24        was April 17th of 2018.  There's no way that we could have

25        gotten it on file within those 90 days obviously because we
```

1    didn't learn until after the 90 days.  This isn't willful

2    disobedience of a court's order.  And under *Hunt versus City*

3    *of Minneapolis* in our brief, the case should be retained.  A

4    PFS was submitted.  There is absolutely zero prejudice to

5    the defendants on this.  We move for leave for the

6    late-filed suggestion of death.

7              MR. HULSE:  Your Honor.

8              THE COURT:  Part of the purpose of issuing PTO 23

9    was to make sure that plaintiff kept in sufficient contact

10   with counsel, that we had a reasonably accurate sense of who

11   was alive and who was dead and what cases we had.

12             If I remember correctly, there was a request by

13   the defendants that the suggestion of death happen within

14   30 days.  Plaintiffs said that's not really enough.  It made

15   sense to me, so we made it 90, but that was all the result

16   of hearing and compromising.  That's how we came up with the

17   90, was because it is not sufficient to sit back and wait to

18   find out whether people have died, but that it does require

19   keeping in contact with the plaintiffs to find out whether

20   they are alive or dead.

21             So how does just not like -- not being in

22   sufficient contact with the Bellandes to know that there had

23   been a death comply with the whole thing that we went

24   through when we came up with PTO 23, which is you can't just

25   sit back and do it?  So, you know, had there been regular

1    contact you would have known, but there wasn't, so that's

2    how the -- that's how the date gets missed.  So is that --

3           MR. HODGES:  Your Honor, even in my single-event

4    cases I don't contact my clients every 60 or 90 days and ask

5    are you still alive.  It sounds like, I think, an easier

6    task than it is.  These are people that are elderly.  As the

7    court is well aware, this is an older client population.

8    They get sick.  They go to doctor's appointments.  They go

9    into the hospital.  Some of them go to nursing homes.  Some

10   of them go and stay with relatives for extended periods of

11   time.  So there's gaps in communication that just happen

12   normally.  It doesn't mean the client is dead.  And we're

13   kind of at a disadvantage there that when it does happen,

14   that the client is gone, they may not have informed the

15   relatives that, hey, I have this lawsuit pending.  We are in

16   contact with them enough.  Obviously, we found out within

17   several months, but -- or what was it?  Four months or less

18   than four months we found out.

19          THE COURT:  The problem is that's really a motion

20   to amend PTO 23.  That's exactly the reason we said 90, is

21   because there are a lot of people, they are elderly.  That's

22   how we arrived at 90.  That's why I didn't give the

23   defendants the 30 they were asking for.  But the order was

24   made with consideration to all the factors.  And the factors

25   that you are listing are -- they are true, they are

1    accurate, they are legitimate.  And the compromise that was

2    made was to have the 90-day filing.  And so if the 90 days

3    comes and goes and we say, well, never mind, then we are

4    saying PTO 23 is --

5              MR. HULSE:  Advisory.

6              THE COURT:  That's not the word I was looking for.

7    I was looking for like abrogated without briefing.

8              MR. HODGES:  Your Honor, perhaps it sounded

9    reasonable at the time.  This has happened in a very

10   minority of situations, as the court is well aware of, and I

11   think each of them tends to be somewhat unique, but I would

12   ask that these plaintiffs be given their due process and

13   allowed for a technical violation.  Again, there is

14   absolutely zero prejudice to the defendants in this case.

15   And perhaps PTO 23 seemed workable on the front end of

16   things, but I am telling you right now representing real

17   people here today it doesn't work for them and there was no

18   way we could have -- we could have done this or cured this.

19   There's no conscious disregard here.  There's no willful

20   disobedience of PTO 23.  The relatives didn't even know

21   about PTO 23.

22             THE COURT:  PTO 23, there's been no motion to

23   amend it.  There's no information before the court

24   explaining why contact couldn't be maintained.  It does --

25   would require contact every 90 days.

```
1            I will hold off on ruling on the Bellandes pending

2    further submissions from counsel as to why PTO 23's 90-day

3    keeping in touch was not able to be complied with in that

4    case.  And I don't have a motion to amend PTO 23, and I'm

5    not going to just amend it on the fly because of arguments

6    that were made at the time.  That is my ruling with respect

7    to the Bellandes.

8            MR. HODGES:  Your Honor, may I be heard on one

9    issue?  We did originally ask for six months as opposed

10   to --

11           THE COURT:  I have just ruled on the Bellande

12   issue.

13           MR. HODGES:  Very well.

14           THE COURT:  And we will put a date of one week for

15   further submissions explaining why in this particular case

16   it was not possible to comply with the Pretrial Order

17   No. 23.

18           MR. HULSE:  Your Honor, I think we have covered

19   this, except maybe we should just mention that *Nickell* was

20   dismissed by stipulation.  That was the one we hadn't -- I

21   don't think we touched on.

22           THE COURT:  And the case number on that one?

23           MR. HULSE:  That was Case No. 17-0428 -- I am

24   sorry -- 04285.

25           THE COURT:  N-i --
```

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR WARMING          MDL No. 15-2666 (JNE/FLN)

DEVICES PRODUCTS LIABILITY LITIGATION       [Proposed]

This Document Relates To:                       PRETRIAL ORDER NO. :

All Actions                                PLAINTIFF FACT SHEET

Plaintiff: James Lee

This Plaintiff Fact Sheet must be completed pursuant to the Pretrial Order by each plaintiff or their personal representative.  Section IX must be completed by loss of consortium plaintiffs.

In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge.  Please answer every question, and do not leave any blanks throughout this Fact Sheet.  If you cannot recall all of the details requested, please provide as much information as you can.  If a question is not applicable to you, please state "Not Applicable" or "N/A."  If any information you need to complete this Fact Sheet is in the possession of your attorney or other representative, please consult with that attorney or representative so that you can fully and accurately respond to the questions.  If you do not have room in the space provided to complete your answer, please attach as many sheets of paper as necessary to fully answer the questions.  You are obligated to supplement your responses if you learn that they are incomplete or incorrect in any material respect.  No answer requires any waiver of privilege.

As used herein, the term "communication" and/or "correspondence" shall mean and refer to any oral, written or electronic transmission of information, including, without limitation, meetings, discussions, conversations, telephone calls, memoranda, letters, e-mails, text messages, conferences, or seminars or any other exchange of information.

As used herein, the term "identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, their present or last known addresses and phone numbers.

As used herein, the term "person" means natural person, as well as corporate and/or governmental entity.

As used herein, "your attorney" refers to the attorneys that represent you individually in this lawsuit.

As used herein, the terms "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

VI.     CURRENT CLAIM INFORMATION

1. Do you allege that you suffered physical and/or bodily injury related to use of a Bair Hugger system?
   Yes
   If "yes" : describe each bodily injury :
   This request is vague, over-broad, and requires expert opinions; however, plaintiff asserts that the injuries include but are not limited to the following:: Knee got infected after initial surgery

   State the approximate date on which you first became aware of the injury(ies) (regardless of whether you associated the injury with the use of a Bair Hugger system) :
   Unknown at this time.

   If you are currently experiencing any symptoms related to an alleged injury that you attribute to use of a Bair Hugger system, describe your symptoms and any treatment you are currently receiving :
   N/A (Deceased)

   Describe any activities that you can no longer perform, or cannot perform as well, since the time you allege you were injured :
   Prior to death: Leg was stuck in a straight out position and could not walk, sit comfortably or drive. Could not walk without a walker could not bathe without help or assistance

   Describe any other physical harm or consequences you suffered as a result :
   Unknown at this time

2. Do you allege that use of a Bair Hugger system worsened or aggravated a previously existing injury or condition?
   No

3. Do you claim damages related to emotional distress or psychological injuries as a result of use of a Bair Hugger system?
   No

4. If you are claiming damages related to emotional distress, provide the following information for any psychiatrist, psychologist, or any other mental healthcare professional who has ever treated you, or who you

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR WARMING            MDL No. 15-2666 (JNE/FLN)
DEVICES PRODUCTS LIABILITY LITIGATION            [Proposed]
This Document Relates To:                         PRETRIAL ORDER NO. :
All Actions                                       PLAINTIFF FACT SHEET

Plaintiff: Ralph Maccarrone

This Plaintiff Fact Sheet must be completed pursuant to the Pretrial Order by each plaintiff or their personal representative.  Section IX must be completed by loss of consortium plaintiffs.

In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge.  Please answer every question, and do not leave any blanks throughout this Fact Sheet.  If you cannot recall all of the details requested, please provide as much information as you can.  If a question is not applicable to you, please state "Not Applicable" or "N/A."  If any information you need to complete this Fact Sheet is in the possession of your attorney or other representative, please consult with that attorney or representative so that you can fully and accurately respond to the questions.  If you do not have room in the space provided to complete your answer, please attach as many sheets of paper as necessary to fully answer the questions.  You are obligated to supplement your responses if you learn that they are incomplete or incorrect in any material respect.  No answer requires any waiver of privilege.

As used herein, the term "communication" and/or "correspondence" shall mean and refer to any oral, written or electronic transmission of information, including, without limitation, meetings, discussions, conversations, telephone calls, memoranda, letters, e-mails, text messages, conferences, or seminars or any other exchange of information.

As used herein, the term "identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, their present or last known addresses and phone numbers.

As used herein, the term "person" means natural person, as well as corporate and/or governmental entity.

As used herein, "your attorney" refers to the attorneys that represent you individually in this lawsuit.

As used herein, the terms "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

# I.    CASE INFORMATION

1. Name of person completing this form :   Marissa Maccarrone

2. State the following for the civil action which you filed :
   a. Current case caption :   Ralph Maccarrone v 3M Company
   b. Current case number :  0:16-cv-01832

3. State the name, address, telephone and facsimile numbers, and e-mail address of the principal attorney representing you :
   a. Name :   Daniel A. Nigh
   b. Firm :   Levin, Papantonio, Thomas, Mitchell, Rafferty, Proctor P.A.
   c. Address :   316 S. Baylen St. Suite 600, Pensacola, FL 32502
   d. Telephone :   (850)435-7000  Fax :   (850)435-7020
   e. E-mail :   dnigh@levinlaw.com

4. If you are completing this questionnaire in a representative capacity (*e.g.*, on behalf of an estate, or incapacitated or deceased person), please state the following information about yourself :
   a. Name :   Marissa Maccarrone
   b. Any other names (*e.g.*, maiden name or alias) you have used or by which you have been known and the dates you used those names :   N/A
   c. Your Address :   68 Mt. Pleasant Rd., Newton, CT 06470
   d. Individual or estate you are representing, and in what capacity you are representing the individual or estate :   Ralph P. Maccarrone; I am his daughter and next of kin
   e. If you were appointed as a representative by a court, state the court :   N/A
   f. Date of Appointment :
   g. State your relationship with the represented person claimed to be injured :   Daughter
   h. If you represent a decedent's estate, state the date and the address of the place of death :   January 30, 2016, 68 Mt. Pleasant Rd., Newton, CT 06470

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR WARMING        MDL No. 15-2666 (JNE/FLN)

DEVICES PRODUCTS LIABILITY LITIGATION      [Proposed]

 This Document Relates To:                                  PRETRIAL ORDER NO. :

All Actions                                              PLAINTIFF FACT SHEET

Plaintiff: Maureen Overko

This Plaintiff Fact Sheet must be completed pursuant to the Pretrial Order by each plaintiff or their personal representative.  Section IX must be completed by loss of consortium plaintiffs.

In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge.  Please answer every question, and do not leave any blanks throughout this Fact Sheet.  If you cannot recall all of the details requested, please provide as much information as you can.  If a question is not applicable to you, please state "Not Applicable" or "N/A."  If any information you need to complete this Fact Sheet is in the possession of your attorney or other representative, please consult with that attorney or representative so that you can fully and accurately respond to the questions.  If you do not have room in the space provided to complete your answer, please attach as many sheets of paper as necessary to fully answer the questions.  You are obligated to supplement your responses if you learn that they are incomplete or incorrect in any material respect.  No answer requires any waiver of privilege.

As used herein, the term "communication" and/or "correspondence" shall mean and refer to any oral, written or electronic transmission of information, including, without limitation, meetings, discussions, conversations, telephone calls, memoranda, letters, e-mails, text messages, conferences, or seminars or any other exchange of information.

As used herein, the term "identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, their present or last known addresses and phone numbers.

As used herein, the term "person" means natural person, as well as corporate and/or governmental entity.

As used herein, "your attorney" refers to the attorneys that represent you individually in this lawsuit.

As used herein, the terms "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

## VI.    CURRENT CLAIM INFORMATION

1. Do you allege that you suffered physical and/or bodily injury related to use of a Bair Hugger system?
   Yes
   If "yes" : describe each bodily injury :
   This request is vague, over-broad, and requires expert opinions; however, plaintiff asserts that the injuries include but are not limited to the following: Infection in her leg.

   State the approximate date on which you first became aware of the injury(ies) (regardless of whether you associated the injury with the use of a Bair Hugger system) :
   Unknown

   If you are currently experiencing any symptoms related to an alleged injury that you attribute to use of a Bair Hugger system, describe your symptoms and any treatment you are currently receiving :
   N/A (Deceased)

   Describe any activities that you can no longer perform, or cannot perform as well, since the time you allege you were injured :
   N/A (Deceased)

   Describe any other physical harm or consequences you suffered as a result :
   N/A (Deceased)

2. Do you allege that use of a Bair Hugger system worsened or aggravated a previously existing injury or condition?
   If "yes," describe the previously existing injury or condition, the approximate date of onset of the previously existing injury or condition, and any treatment for and resolution of the injury or condition :

3. Do you claim damages related to emotional distress or psychological injuries as a result of use of a Bair Hugger system?
   No

4. If you are claiming damages related to emotional distress, provide the following information for any psychiatrist, psychologist, or any other mental healthcare professional who has ever treated you, or who you

# **EXHIBIT F**



**LEVIN • PAPANTONIO**
**THOMAS • MITCHELL**
**RAFFERTY & PROCTOR • P.A.**
PROFESSIONAL CORPORATION       ATTORNEYS AT LAW

| | | | |
|---|---|---|---|
| KIMBERLY LAMBERT ADAMS | MARTIN H. LEVIN | A. RENEE PRESTON | OF COUNSEL: |
| BRIAN H. BARR | STEPHEN A. LUONGO | ROBERT E. PRICE | LAURA S. DUNNING |
| MICHAEL C. BIXBY | M. JUSTIN LUSKO | MARK J. PROCTOR | *(LICENSED ONLY IN ALABAMA)* |
| M. ROBERT BLANCHARD | ANDREW E. McGRAW | TROY A. RAFFERTY | BEN W. GORDON, JR |
| BRANDON L. BOGLE | NEIL E. McWILLIAMS, JR. | MATTHEW D. SCHULTZ | ROBERT M. LOEHR |
| W. TROY BOUK | CLAY MITCHELL | W. CAMERON STEPHENSON | PAGE A. POERSCHKE |
| WESLEY A. BOWDEN | PETER J. MOUGEY | LEO A. THOMAS | *(LICENSED ONLY IN ALABAMA)* |
| VIRGINIA M. BUCHANAN | DANIEL A. NIGH | BRETT VIGODSKY | |
| WILLIAM F. CASH III | TIMOTHY M. O'BRIEN | | LEFFERTS L. MABIE, JR. (1925-1996) |
| JEFF GADDY | MIKE PAPANTONIO | MALLORY J. MANGOLD | D.L. MIDDLEBROOKS (1926-1997) |
| RACHAEL R. GILMER | CHRISTOPHER G. PAULOS | *(LICENSED ONLY IN ALABAMA* | DAVID H. LEVIN (1928-2002) |
| FREDRIC G. LEVIN | EMMIE J. PAULOS | *AND MISSISSIPPI)* | STANLEY B. LEVIN (1943-2009) |

RECEIVED
JUL 0 5 2017
BY: .......CK.........

June 30, 2017

**VIA FEDEX**

Benjamin W. Hulse
Blackwell Burke P.A
431 South Seventh Street.
Suite 2500
Minneapolis, MN 55415
bhulse@blackwellburke.com

Re:    *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*
       MDL No. 2666 – Deficiencies in Plaintiff Fact Sheet for Individual Case
       *Reuben Harrison v. 3M Company,* Case No.: 0:17-cv-00570-JNE-FLN

Dear Counsel:

Pursuant to paragraph 6 of PTO 14, please see the attached documentation to cure deficiencies for the above captioned matter.

Sincerely,

Daniel A. Nigh

DAN/aw

Enclosure

Response to Deficiencies

*Reuben Harrison v. 3M Company*, Case No.: 0:17-cv-00570-JNE-FLN

Deficiencies cannot be cured at this time since we were just informed that the client has passed away. We will continue to work with the heirs to retrieve information in order to cure this deficiency.

# EXHIBIT G

K.     If you claim any loss from medical expenses, copies of all bills from any physician, hospital, pharmacy, or other healthcare provider.

L.     Decedent's death certificate (if applicable).

### **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that all of the

information provided in this Fact Sheet is true and correct to the best of my knowledge.

*Yvonne M. Bozek*     *on behalf of Edward Bozek*
Print Name     *who is deceased.*

*Yvonne M. Bozek*
Signature

*August 4, 2017*
Date

*Edward R. Bozek*
Print Name
(Loss of Consortium Plaintiff)

*Yvonne M. Bozek*
Signature

*August 4, 2017*
Date

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: BAIR HUGGER FORCED AIR WARMING      MDL No. 15-2666 (JNE/FLN)

DEVICES PRODUCTS LIABILITY LITIGATION      [Proposed]

This Document Relates To:      PRETRIAL ORDER NO. :

All Actions      PLAINTIFF FACT SHEET

     Plaintiff:

     This Plaintiff Fact Sheet must be completed pursuant to the Pretrial Order by each plaintiff or their personal representative.  Section IX must be completed by loss of consortium plaintiffs.

     In completing this Fact Sheet, you are under oath and must provide information that is true and correct to the best of your knowledge.  Please answer every question, and do not leave any blanks throughout this Fact Sheet.  If you cannot recall all of the details requested, please provide as much information as you can.  If a question is not applicable to you, please state "Not Applicable" or "N/A."  If any information you need to complete this Fact Sheet is in the possession of your attorney or other representative, please consult with that attorney or representative so that you can fully and accurately respond to the questions.  If you do not have room in the space provided to complete your answer, please attach as many sheets of paper as necessary to fully answer the questions.  You are obligated to supplement your responses if you learn that they are incomplete or incorrect in any material respect.  No answer requires any waiver of privilege.

     As used herein, the term "communication" and/or "correspondence" shall mean and refer to any oral, written or electronic transmission of information, including, without limitation, meetings, discussions, conversations, telephone calls, memoranda, letters, e-mails, text messages, conferences, or seminars or any other exchange of information.

     As used herein, the term "identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, their present or last known addresses and phone numbers.

     As used herein, the term "person" means natural person, as well as corporate and/or governmental entity.

     As used herein, "your attorney" refers to the attorneys that represent you individually in this lawsuit.

     As used herein, the terms "Relating to," "relate to," "referring to," "refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including documents attached to or used in the preparation of or concerning the preparation of the documents.

# I.   CASE INFORMATION

1. Name of person completing this form :   Richard Graham


2. State the following for the civil action which you filed :
   a. Current case caption :   Graham v. 3M Company
   b. Current case number :   0:17-cv-01834


3. State the name, address, telephone and facsimile numbers, and e-mail address of the principal attorney representing you :
   a. Name :   Daniel A. Nigh
   b. Firm :   Levin, Papantonio, Thomas, Mitchell, Rafferty, Proctor P.A.
   c. Address :   316 S. Baylen St. Suite 600, Pensacola, FL 32502
   d. Telephone :   (850)435-7000   Fax :   (850)435-7020
   e. E-mail :   dnigh@levinlaw.com


4. If you are completing this questionnaire in a representative capacity (*e.g.*, on behalf of an estate, or incapacitated or deceased person), please state the following information about yourself :
   a. Name :   Richard Graham
   b. Any other names (*e.g.*, maiden name or alias) you have used or by which you have been known and the dates you used those names :
   c. Your Address :   5623 Alexandria Dr., Temple, TX 76502
   d. Individual or estate you are representing, and in what capacity you are representing the individual or estate :   Ira DJ Graham. I am his brother.
   e. If you were appointed as a representative by a court, state the court :   N/A
   f. Date of Appointment :
   g. State your relationship with the represented person claimed to be injured :   I am Ira Graham's brother.
   h. If you represent a decedent's estate, state the date and the address of the place of death :

## II.    PERSONAL INFORMATION (re Person claiming injuries)

1.  State the following regarding your personal information :

    a. First Name :   Ira

       Middle Name :   Dennis James

       Last Name :   Graham

    b. Any other names (*e.g.*, maiden name or alias) you have used or by which you have been known and the dates when you used those names :

    N/A

    c. Social Security Number :

    d. Address :   N/A; Plaintiff is deceased

    e. State how long you have lived at your present address :   Unknown at this time; Discovery is ongoing.

    f. Identify all persons who lived with you at the time of the events alleged in the Complaint, and their relationship to you :   Rachel Wells(fiancée)

2.  Driver's license number and state issuing license :   N/A; Plaintiff is deceased.

3.  Date and place of birth :   01/23/1987   Unknown at this time; Discovery is ongoing.

4.  Sex :   Male

5.  If you have Medicare, please state your HICN number (if known) :   Unknown at this time; Discovery is ongoing.

6.  Identify each address at which you have resided during the last ten (10) years, and list the approximate years when you started and stopped living at each one :

7.  Are you currently, or have you ever been, married?

    No

    If "yes," for each spouse, please state the following:

| Name and Address (if different from yours) of Spouse | Spouse's Date of Birth | Date Marriage Began | Date Marriage Ended | How Marriage Ended |
|---|---|---|---|---|
| Unknown at this time; Discovery is ongoing. | | | | Unknown at this time; Discovery is ongoing. |

8.  For each of your children, please state their name and year of birth :

| Children Name | Year of Birth |
|---|---|
| Unknown at this time; Discovery is ongoing. | |

# EXHIBIT I



| | | | |
|---|---|---|---|
| KIMBERLY LAMBERT ADAMS | MARTIN H. LEVIN | A. RENEE PRESTON | OF COUNSEL: |
| BRIAN H. BARR | STEPHEN A. LUONGO | ROBERT E. PRICE | LAURA S. DUNNING |
| MICHAEL C. BIXBY | M. JUSTIN LUSKO | MARK J. PROCTOR | *(LICENSED ONLY IN ALABAMA)* |
| M. ROBERT BLANCHARD | ANDREW E. McGRAW | TROY A. RAFFERTY | BEN W. GORDON, JR |
| BRANDON L. BOGLE | NEIL E. McWILLIAMS, JR. | MATTHEW D. SCHULTZ | ROBERT M. LOEHR |
| W. TROY BOUK | CLAY MITCHELL | W. CAMERON STEPHENSON | PAGE A. POERSCHKE |
| WESLEY A. BOWDEN | PETER J. MOUGEY | LEO A. THOMAS | *(LICENSED ONLY IN ALABAMA)* |
| VIRGINIA M. BUCHANAN | DANIEL A. NIGH | BRETT VIGODSKY | |
| WILLIAM F CASH III | TIMOTHY M. O'BRIEN | | LEFFERTS L. MABIE, JR. (1925-1996) |
| JEFF GADDY | MIKE PAPANTONIO | MALLORY J. MANGOLD | D.L. MIDDLEBROOKS (1926-1997) |
| RACHAEL R. GILMER | CHRISTOPHER G. PAULOS | *(LICENSED ONLY IN ALABAMA* | DAVID H. LEVIN (1928-2002) |
| FREDRIC G. LEVIN | EMMIE J. PAULOS | *AND MISSISSIPPI)* | STANLEY B. LEVIN (1938-2009) |

**LEVIN · PAPANTONIO**
**THOMAS · MITCHELL**
**RAFFERTY & PROCTOR · P.A.**
PROFESSIONAL CORPORATION    ATTORNEYS AT LAW

JUN 3 0 2017

BY: ....*CK*............

June 29, 2017

**VIA FEDEX**

Benjamin W. Hulse
Blackwell Burke P.A
431 South Seventh Street.
Suite 2500
Minneapolis, MN 55415
bhulse@blackwellburke.com

> Re:   *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*
> MDL No. 2666 – Deficiencies in Plaintiff Fact Sheet for Individual Case
> *Thomas Bond v. 3M Company*, Case No.: 0:16-cv-04161-JNE-FLN

Dear Counsel:

Pursuant to paragraph 6 of PTO 14, please see the attached reverification page for previously cured deficiencies for the above captioned matter.

Sincerely,

Daniel A. Nigh

DAN/ec

Enclosure

Response to Deficiencies

*Thomas Bond v. 3M Company*, Case No.: 0:16-cv-04161-JNE-FLN

**Reverification Page**

Pursuant to cure the defendant's deficiency and abide by Pre Trail Order 14, I declare that the given response(s) are true.

## <u>REVERIFICATION</u>

Karen Bond
_____
Print Name

Karen Bond
_____
Signature

6-23-2017
_____
Date

On behalf of Thomas Bond
(wife)

# EXHIBIT J



**LEVIN•PAPANTONIO**
**THOMAS•MITCHELL**
**RAFFERTY & PROCTOR•P.A.**
PROFESSIONAL CORPORATION        ATTORNEYS AT LAW

KIMBERLY LAMBERT ADAMS
BRIAN H. BARR
MICHAEL C. BIXBY
M. ROBERT BLANCHARD
BRANDON L. BOGLE
W. TROY BOUK
WESLEY A. BOWDEN
VIRGINIA M. BUCHANAN
WILLIAM F. CASH III
JEFF GADDY
RACHAEL R. GILMER
FREDRIC G. LEVIN

MARTIN H. LEVIN
STEPHEN A. LUONGO
M. JUSTIN LUSKO
ANDREW E. McGRAW
NEIL E. McWILLIAMS, JR.
CLAY MITCHELL
PETER J. MOUGEY
DANIEL A. NIGH
TIMOTHY M. O'BRIEN
MIKE PAPANTONIO
CHRISTOPHER G. PAULOS
EMMIE J. PAULOS

A. RENEE PRESTON
ROBERT E. PRICE
MARK J. PROCTOR
TROY A. RAFFERTY
MATTHEW D. SCHULTZ
W. CAMERON STEPHENSON
LEO A. THOMAS
BRETT VIGODSKY

MALLORY J. MANGOLD
*(LICENSED ONLY IN ALABAMA
AND MISSISSIPPI)*

OF COUNSEL:
LAURA S. DUNNING
   *(LICENSED ONLY IN ALABAMA)*
BEN W. GORDON, JR
ROBERT M. LOEHR
PAGE A. POERSCHKE
   *(LICENSED ONLY IN ALABAMA)*

LEFFERTS L. MABIE, JR. (1925-1996)
D.L. MIDDLEBROOKS (1926-1997)
DAVID H. LEVIN (1928-2002)
STANLEY B. LEVIN (1938-2009)



RECEIVED
JUL 2 0 2017
BY: ......CR..........

July 19, 2017

**VIA FEDEX**

Benjamin W. Hulse
Blackwell Burke P.A
431 South Seventh Street
Suite 2500
Minneapolis, MN 55415
bhulse@blackwellburke.com

> Re:    *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*
> MDL No. 2666 – Deficiencies in Plaintiff Fact Sheet for Individual Case
> *Thomas Bond v. 3M Company,* Case No. 0:16-cv-04161-JNE-FLN

Dear Counsel:

Pursuant to paragraph 6 of PTO 14, please see attached documentation to cure deficiencies for the above captioned case.

Sincerely,

Daniel A. Nigh

DAN/ec
Enclosure

Response to Deficiencies

*Bond v. 3M Company*, Case No.: 0:16-cv-04161-JNE-FLN

**Section IX.**

1a. Karen Bond
1b. N/A
1c. Unknown
1d. 1704 S. 47th St., Quincy, IL 62305
1e. 8 years, 3 months

3. 1704 S. 47th Street, Quincy, IL 62305  December 2003 – Present
4. We were married in Sarasota, FL on February 14, 2003. We are still married.
5. We have no children together.
6. N/A

**Verification Page and Exhibit B: Attached.**

**Reverification Page: Attached.**

K.     If you claim any loss from medical expenses, copies of all bills from any physician, hospital, pharmacy, or other healthcare provider.

L.     Decedent's death certificate (if applicable).

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that all of the information provided in this Fact Sheet is true and correct to the best of my knowledge.

_Thomas O. BOND_
Print Name

_[signature]_
Signature

_08/17/2017_
Date

_Karen R. Bond_
Print Name
(Loss of Consortium Plaintiff)

_Karen Bond_
Signature

_03/17/2017_
Date

# EXHIBIT B

**LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION**

**(Pursuant to the Health Insurance Portability and Accountability Act "HIPAA" of 4/14/03)**

TO:
Patient Name:
DOB:
SSN:

I, _Thomas O. Bond_____, hereby authorize you to release and furnish to:
Faegre Baker Daniels and/or its designee copies of the following information:

* All medical records, including inpatient, outpatient, and emergency room
   treatment, all clinical charts, reports, documents, correspondence, test results,
   statements, questionnaires/histories, office and doctors' handwritten notes,
   and records received by other physicians, dated from __02/2005_____
   (seven years prior to the date of the subject surgery) to the present.

* All autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan,
   MRI, echocardiogram and cardiac catheterization reports, dated from
   __02/2005_____ (seven years prior to the date of the subject surgery)
   to the present.

* All radiology films, mammograms, myelograms, CT scans, photographs, bone
   scans, pathology/cytology/histology/autopsy/immunohistochemistry
   specimens, cardiac catheterization videos/CDs/films/reels, and
   echocardiogram videos, dated from _02/2005_____ (seven years prior
   to the date of the subject surgery) to the present.

* All pharmacy/prescription records, including NDC numbers and drug
   information handouts/monographs, dated from __02/2005____ (seven
   years prior to the date of the subject surgery) to the present.

* All billing records including all statements, itemized bills, and insurance
   records, dated from _02/2005_____ (seven years prior to the date of
   the subject surgery) to the present.

1. To my medical provider: **this authorization is being forwarded by, or on behalf of,
   attorneys for the defendant for the purpose of litigation. You are not authorized to
   discuss any aspect of the above-named person's medical history, care, treatment,
   diagnosis, prognosis, information revealed by or in the medical records, or any other
   matter bearing on his or her medical or physical condition, unless you receive an
   additional authorization permitting such discussion. Subject to all applicable legal
   objections, this restriction does not apply to discussing my medical history, care,
   treatment, diagnosis, prognosis, information revealed by or in the medical records, or
   any other matter bearing on my medical or physical condition at a deposition or trial.**

-1-

2. I understand that the information in my health record may include information relating to information about behavioral or mental health services and treatment for alcohol and drug abuse.

3. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization, I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign this form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in C.F.R. 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the releaser indicate above.

5. A notarized signature is not required. C.F.R. 164.508. A copy of this authorization may be used in place of an original.

Print Name: _Thomas O. Bond_____ (plaintiff/representative)

Signature: _____ Date: _03/17/2017_

Pursuant to cure the defendant's deficiency and abide by Pre Trail Order 14, I declare that the given response(s) are true.

## **REVERIFICATION**

Karen  Bond
Print Name

Karen Bond
Signature

6-23-2017
Date

On behalf of Thomas Bond
(wife)

# EXHIBIT K

# SCHLICHTER BOGARD & DENTON, LLP

### ATTORNEYS AT LAW

**KRISTINE K. KRAFT, Partner**
kkraft@uselaws.com

100 SOUTH FOURTH STREET, SUITE 1200
ST. LOUIS, MISSOURI 63102
(800) 873-5297
(314) 621-6115
FAX (314) 621-1365
www.uselaws.com

Belleville, Illinois

April 19, 2018

**<u>VIA E-MAIL ONLY</u>**
Benjamin Hulse, Esq.
Blackwell Burke P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
<u>bhulse@blackwellburke.com</u>

       RE:     *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*
               MDL No. 2666
               *Harper v. 3M Company et al,* Case No. 0:17-cv-03055-JNE-FLN

Counsel:

    We were recently notified by Plaintiff's Liaison Counsel that Joel Harper's plaintiff fact sheet is still considered deficient. Our office received your February 12, 2018 letter regarding questions II.2 and IV.1. On March 2, 2018, we diligently provided the requested information and notified Counsel via email the same day. A courtesy copy of the supplemental PFS is attached. Accordingly, please advise what additional information you believe to be outstanding so that we can resolve any remaining discovery disputes.

    As a separate matter, Mr. Harper recently passed away. We are in the process of appointing the appropriate representative and will file the Suggestion of Death and Motion for Substitution within the timeframe provided in Judge Ericksen's PTO No. 23.

               Sincerely,

               Kristine K. Kraft

KK/sk