1          UNITED STATES DISTRICT COURT

2          DISTRICT OF MINNESOTA

3   ------------------------------------------------------------
                                    )
4                                   )
     In Re: Bair Hugger Forced Air  )  File No. 15-MD-2666
5    Warming Devices Products        )  (JNE/FLN)
     Liability Litigation            )
6                                   )  September 20, 2018
                                    )  Minneapolis, Minnesota
7                                   )  Courtroom 12W
                                    )  9:45 a.m.
8                                   )
                                    )
9   ------------------------------------------------------------

10

11          BEFORE THE HONORABLE DAVID T. SCHULTZ
            UNITED STATES MAGISTRATE JUDGE

12                  **(STATUS CONFERENCE)**

13   APPEARANCES

14   FOR THE PLAINTIFFS:
                              MESHBESHER & SPENCE
15                            Genevieve M. Zimmerman
                              1616 Park Avenue
16                            Minneapolis, MN  55404

17                            CIRESI CONLIN
                              Michael Sacchet
18                            225 South 6th Street
                              Suite 4600
19                            Minneapolis, MN

20                            KENNEDY HODGES, LLP
                              Gabriel Assaad
21                            4409 Montrose Blvd
                              Suite 200
22                            Houston, TX 77006

23                            KENNEDY HODGES, LLP
                              David W. Hodges
24                            711 W. Alabama Street
                              Houston, TX 77006

25

```
 1     FOR THE PLAINTIFFS:              GOLDENBERG LAW, PLLC
                                        Noah Lauricella
 2                                      800 LaSalle Avenue
                                        Suite 2150
 3                                      Minneapolis, MN  55402

 4                                      PRITZKER HAGEMAN, P.A.
                                        David J. Szerlag
 5                                      45 South 7th Street, #2950
                                        Minneapolis, MN  55402-1652
 6
                                        SCHLICHTER BOGARD & DENTON, LLP
 7                                      Kristine Kraft
                                        100 South Fourth Street
 8                                      Suite 1200
                                        St. Louis, MO  63102
 9
       FOR THE PLAINTIFFS APPEARING BY PHONE:
10
                                        LEVIN PAPANTONIO
11                                      Ben W. Gordon, Jr.
                                        Daniel A. Nigh
12                                      316 S. Baylen Street
                                        Suite 600
13                                      Pensacola, FL 32502

14                                      MESHBESHER & SPENCE
                                        Holly Sternquist
15                                      Melanie Frenz
                                        1616 Park Avenue
16                                      Minneapolis, MN  55404

17                                      PETERSON & ASSOCIATES, P.C.
                                        Brian Emerson Tadtman
18                                      801 W. 47th Street, Suite 107
                                        Kansas City, MO  64112
19
                                        THE OLINDE FIRM, LLC
20                                      Alfred Olinde
                                        400 Poydras Street
21                                      Suite 1980
                                        New Orleans, LA  70130
22
                                        MORGAN & MORGAN, PA
23                                      Heather Cullen
                                        Michael S. Goetz
24                                      Joseph T. Waechter
                                        201 N. Franklin St 7th Floor
25                                      Tampa, FL  33602
       Telephone Appearances cont'd next page:
```

```
 1     FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              RAIZNER SLANIA, LLP
                               Jeffrey Raizner
 3                             Rica Rinosa
                               Erin Stracerner
 4                             Kristen Gorombol
                               2402 Dunlavy Street
 5                             Houston, TX  77006

 6                             LONCAR & ASSOCIATES
                               William Hymes
 7                             John L. Coveney
                               424 S. Cesar Chavez Blvd
 8                             Dallas, TX  75201

 9                             CAPRETZ & ASSOCIATES
                               Don K. Ledgard
10                             5000 Birch St, Suite 2500
                               Newport Beach, ca  92660
11
                               MICHAEL HINGLE & ASSOCIATES
12                             Julie Jochum
                               Bryan Pfleeger
13                             220 Gause Blvd
                               Slidell, LA  70005
14
                               HOUSSIERE DURANT & HOUSSIERE
15                             Randall A. Kauffman
                               Monica Vaughan
16                             Shirley Strom-Blanchard
                               1990 Post Oak Blvd Suite 800
17                             Houston, TX  77056

18                             DAVIS & CRUMP, PC
                               Martin D. Crump
19                             Wes Stevenson
                               Robert Cain, Jr.
20                             2601 Fourteenth Street
                               Gulfport, MS 39507
21
                               SKIKOS CRAWFORD SKIKOS&
22                                JOSEPH, LLP
                               Darilyn Simon
23                             Julie Tucci
                               One Sansome Street, Suite 2830
24                             San Francisco, CA  94104

25
```

```
 1      FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              THE RUTH TEAM
                                Austin Grinder
 3                              Steven C. Ruth
                                Eric Roslansky
 4                              842 Ramond Avenue
                                Suite 200
 5                              Saint Paul, MN  33733-5157

 6                              TATE LAW GROUP, LLC
                                Mark Tate
 7                              Nikki Jackson
                                2 East Bryan Street, Suite 600
 8                              Savannah, GA  31328

 9                              LAW OFFICE OF TRAVIS R. WALKER
                                Rebeka Strum
10                              Travis R. Walker
                                Valerie Marshall
11                              1235 SE Indian Street
                                Suite 101
12                              Stuart, FL  34997

13                              LAW OFFICES OF JAMES S. ROGERS
                                Heather Cover
14                              1500 4th Avenue #500
                                Seattle, WA  98101
15
                                ANDREWS & THORNTON
16                              John Thornton
                                Lauren Davis
17                              2 Corporate Park, Suite 110
                                Irvine, CA 92606
18
                                LORD & ASSOCIATES
19                              Melissa Marie Heinlein
                                Priscilla Lord
20                              Sonja Mathiesen
                                309 Clifton Avenue
21                              Minneapolis, MN 55403

22                              MURRAY LAW FIRM
                                Caroline Whitney Thomas
23                              650 Poydras Street
                                Suite 2150
24                              New Orleans, LA  70130

25            Telephone Appearances cont'd next page:
```

```
 1        FOR THE PLAINTIFFS APPEARING BY PHONE:
                                 BROWN & CROUPPEN, PC
 2                               Liz Liberatore
                                 211 North Broadway, Suite 1600
 3                               St. Louis, MO   63102

 4                               BEASLEY ALLEN
                                 Renee Lindsey
 5                               Lisa Courson
                                 218 Commerce Street
 6                               Montgomery, AL  36104

 7                               HOLLIS LEGAL SOLUTIONS, PLLC
                                 Natasha Ingram Hollis
 8                               6814 Crumpler Boulevard,
                                 Suite 101
 9                               Olive Branch, MS  38654

10                               PARKER WAICHMAN, LLP
                                 Michael S. Werner
11                               59 Maiden Lane
                                 6th Floor
12                               New York, NY  10038

13                               RANDALL J. TROST, P.C.
                                 Carrie Hancock
14                               Pam Rodriguez
                                 Randall T. Trost
15                               801 Main Street
                                 Lynchburg, VA  24504
16
                                 FITZGERALD LAW GROUP, LLC
17                               Kevin Fitzgerald
                                 Colleen Sumner
18                               120 Exchange Street
                                 Suite 200
19                               Portland, ME  04101

20                               LANGDON & EMISON
                                 Rachel Ahmann
21                               Lauren Niendick
                                 911 Main Street
22                               Lexington, MO  64067

23                               PRITZKER HAGEMAN, P.A.
                                 Wendy Thayer
24                               45 South 7th Street, #2950
                                 Minneapolis, MN  55402-1652
25               Telephone Appearances cont'd next page:
```

```
 1       FOR THE PLAINTIFFS APPEARING BY PHONE:
                              LEWIS & CAPLAN
 2                            Pete Lewis
                              Amy Webster
 3                            Sarah Delahoussaye Call
                              Pete Lewis
 4                            3631 Canal Street
                              New Orleans, LA  70119
 5
                              THE RUTH TEAM
 6                            Steven C. Ruth
                              Austin Grinder
 7                            842 Ramond Avenue
                              Suite 200
 8                            Saint Paul, MN  33733-5157

 9                            BAILEY PEAVY BAILEY COWAN
                              HECKAMAN, PLLC
10                            Justin Jenson
                              The Lyric Centre
11                            440 Louisiana Street
                              Suite 2100
12                            Houston, TX  77002

13                            THE WEBSTER LAW FIRM
                              Chelsie Garza
14                            6200 Savoy Suite 150
                              Houston, TX  77036
15
                              MARTIN HARDING & MAZZOTI, LLP
16                            Rosemarie Bogdan
                              Kristen Winner
17                            1222 Troy-Schenectady Road
                              P.O. Box 15141
18                            Albany, NY  12212-5141

19                            JUSTINIAN & ASSOCIATES PLLC
                              Amber Pang Parra
20                            Esmeralda Ugarte
                              6228 Bandera Road
21                            San Antonio, TX  78238

22                            SHELTON LAW GROUP
                              Rob Shelton
23                            9300 Shelbyville Road
                              Suite 215
24                            Louisville, KY  40222

25             Telephone Appearances cont'd next page:
```

```
 1     FOR THE PLAINTIFFS APPEARING BY PHONE:

 2                              SHOWARD LAW FIRM PC
                               Diane Erre Roblse
 3                             4703 E Camp Lowell Drive
                               Suite 253
 4                             Tucson, AZ  85712

 5                             BACHUS & SCHANKER, LLC
                               Alexandra Franklin
 6                             Allison Brown
                               Darin Schanker
 7                             J. Kyle Bachus
                               Krysta Hand
 8                             Kyle Bachus
                               J. Christopher Elliott
 9                             Noelle Collins
                               1899 Wynkoop Street, Suite 700
10                             Denver, CO  80202

11                             DEGARIS LAW GROUP, LLC
                               Wayne Rogers, Jr.
12                             3179 Green Valley Road 235
                               Birmingham, AL  35243
13
                               MORRIS LAW FIRM
14                             Jim Morris
                               Shane Greenberg
15                             411 W. Alameda Avenue
                               Suite 611
16                             Burbank, CA  91505

17                             THE AHEARNE LAW FIRM, PLLC
                               Allan J. Ahearne
18                             Jessica Pauley
                               24 Main Street
19                             Warwick, NY  10990

20                             THE REARDON LAW FIRM, PC
                               John Nazzaro
21                             Casandra Haggett
                               160 Hempstead Street
22                             New London, CT  06320

23                             MURRAY LAW FIRM
                               Caroline Whitney Thomas
24                             650 Poydras Street
                               Suite 2150
25                             New Orleans, LA  70130
```

```
 1     FOR THE PLAINTIFFS (appearing by phone):

 2                               RICHARDSON PATRICK WESTBROOK &
                                 BRICKMAN, LLC
 3                               Daniel Haltiwanger
                                 Missi Cruz
 4                               PO. Box 1368
                                 Barnwell, SC  29812
 5
                                 NEAL R. ELLIOTT, JR.
 6                               P.O. Box 80136
                                 Baton Rouge, LA  70898
 7
                                 HARE WYNN NEWELL & NEWTON
 8                               Don McKenna
                                 Peggy Little
 9                               Lynne Reed
                                 Massey Building
10                               2025 Third Avenue North
                                 Suite 800
11                               Birmingham, AL  35203

12                               MCEWEN LAW FIRM, LTD
                                 Emily Robinson
13                               Gregory N. McEwen
                                 5850 Blackshire Path
14                               Inver Grove Heights, MN  55076

15                               RILEY & JACKSON, P.C.
                                 Jeremiah Mosley
16                               Keith Jackson
                                 Mary Malea Sellers
17                               3530 Independence Drive
                                 Birmingham, AL  35209
18
                                 SANDERS PHILLIPS GROSSMAN
19                               Michael Nathan
                                 100 Garden City Plaza
20                               Suite 500
                                 Garden City, NY 11530
21
22     FOR THE DEFENDANTS:       BLACKWELL BURKE P.A.
                                 Jerry Blackwell
23                               Ben Hulse
                                 Mary Young
24                               431 South Seventh Street
                                 Suite 2500
25                               Minneapolis, MN  55415
```

1     FOR THE DEFENDANTS (Cont'd):

2                                    MITCHELL WILLIAMS
                                     Lyn Pruitt
3                                    425 West Capitol Avenue
                                     Suite 1800
4                                    Little Rock, AR  72201

5
                                     FAEGRE BAKER DANIELS
6                                    Bridget M. Ahmann
                                     90 South Seventh Street
7                                    Suite 2200
                                     Minneapolis, MN  55402
8

9     COURT REPORTER:                Maria V. Weinbeck, RMR, FCRR
                                     U.S. Courthouse
10                                   300 South Fourth Street
                                     Suite 1005
11                                   Minneapolis, MN  55415

12

13          Proceedings recorded by mechanical stenography;
      transcript produced by computer.
14

15

16

17

18

19

20

21

22          *     *     *     *     *     *     *     *
23

24

25

1                      **P R O C E E D I N G S**

2                           (9:34 a.m.)

3              THE COURT:  Good morning.  Please be seated.  All

4      right.  Why don't we begin with appearances for the

5      plaintiffs?

6              MS. ZIMMERMAN:  Yes, good morning, Your Honor.

7      Genevieve Zimmerman for the plaintiffs.

8              THE COURT:  Good morning, Ms. Zimmerman.

9              MR. ASSAAD:  Good morning, Your Honor.  Gabriel

10     Assaad for the plaintiffs.

11             THE COURT:  Mr. Assaad.

12             MR. SACCHET:  Good morning, Your Honor.  Michael

13     Sacchet for the plaintiffs.

14             THE COURT:  Mr. Sacchet.

15             MR. SZERLAG:  Good morning, Your Honor.  David

16     Szerlag on behalf of the plaintiffs.

17             THE COURT:  Mr. Szerlag.

18             MR. HODGES:  Good morning.  David Hodges on behalf

19     of plaintiffs.

20             THE COURT:  Good morning, Mr. Hodges.

21             MS. KRAFT:  Good morning, Your Honor.  My name is

22     Kristine Kraft.  I'm appearing for the plaintiffs but also

23     specifically for my client Kim Gauthier, G-A-U-T-H-I-E-R,

24     case number 18CV00572, because she's on the defendant's

25     motion to dismiss.

```
 1                    THE COURT:  All right.  Good morning.
 2                    MR. LAURICELLA:  Good morning, Your Honor.  Noah
 3        Lauricella for the plaintiffs.
 4                    THE COURT:  Good morning, Mr. Lauricella.
 5                    All right.  For the defendants?
 6                    MR. BLACKWELL:  Good morning, Your Honor.  Good to
 7        see you.  Jerry Blackwell speaking for 3M.
 8                    THE COURT:  Welcome back from your meditation.
 9                    MR. BLACKWELL:  I feel very calm, Your Honor.
10                    THE COURT:  Good morning, Mr. Blackwell.
11                    MS. PRUITT:  Lyn Pruitt, Your Honor.
12                    THE COURT:  Good morning, Ms. Pruitt.
13                    MR. HULSE:  Good morning, Your Honor.  Ben Hulse
14        for 3M.
15                    THE COURT:  Good morning, Mr. Hulse.
16                    MS. AHMANN:  Good morning.  Bridget Ahmann for 3M.
17                    THE COURT:  Good morning, Ms. Ahmann.
18                    MS. YOUNG:  Your Honor, Mary Young for 3M.
19                    THE COURT:  Good morning.  All right.  Well, is it
20        Kraft, Ms. Kraft?
21                    MS. KRAFT:  Yes.
22                    THE COURT:  Let's start with this, I'm going to
23        disappoint you all in the following way.  Since Judge
24        Ericksen, you may have noticed, is not here, I am not going
25        to hear the motions to dismiss.  Certainly I can do that,
```

```
1    issue an R&R, and then that would be referred to or appealed
2    to or what have you to Judge Ericksen, fairly inefficient
3    process, so any of the motions that are dispositive will be
4    put over to the October status conference, and Judge
5    Ericksen will deal with those at that time.
6              And so with that, who wants to start walking down
7    the agenda?
8              MS. ZIMMERMAN:  I can do so.  All right.  Good
9    morning, Your Honor.
10             So first on the agenda I guess are just pretrial
11   orders.  And with respect to Ms. Axline's case, we had an
12   update for the Court about dispositive motion practice, and
13   I think that we have an agreement about when those are
14   going, there's a compressed briefing schedule given some of
15   the comments I think that we received either from Your Honor
16   or from maybe even Judge Noel before he retired.  So those
17   will be filed by the 8th of October and completely briefed
18   by the 1st of November.
19             We completed a meet and confer process with
20   respect to a fourth coming motion.  And this is jumping kind
21   of ahead, a Rule 15 motion to amend the complaint, motion
22   for leave to amend the complaint in Axline in light of the
23   Court's ruling with respect to the choice of law issue.  We
24   completed that conference I think last night about 5:00.
25   Defendants have indicated that they will not stipulate to
```

1    the amendment, and they will be opposing the motion.  Having

2    completed that, we plan to file that motion today, and we

3    will get that set as soon as we possibly can.

4         Obviously, we're looking at some pretty compressed

5    deadlines here.  The only deposition that is likely to take

6    place with respect to Ms. Axline is set for next Friday, the

7    28th, that is of Dr. William Jarvis, plaintiff's infectious

8    disease expert.  Plaintiffs have elected with respect to

9    Ms. Axline's case not to depose defendant's experts.  We

10   appreciate Your Honor's ruling with respect to the Rule 37

11   motion this morning, and given that we will just for sake of

12   preserving our record as we discussed will be appealing that

13   to Judge Ericksen.

14        THE COURT:  Right.  Let me just comment on that

15   because I know there was a disagreement or a lack of clarity

16   about whether or not the 14 days was running from the oral

17   order at the hearing.  It was my intention that, well,

18   frankly, one, to get the written order out more quickly than

19   as it turned out we did, but that your time would run from

20   the written order being issued but that you should assume in

21   terms of the grounds that have been articulated that the

22   combination of those two really both the verbal order at the

23   hearing and the written order comprise the full order as it

24   were because we didn't put everything into the written order

25   that necessarily was said at the hearing itself.

1          MS. ZIMMERMAN:  Yes, Your Honor.  And the

2     plaintiffs are certainly willing.  It was our understanding

3     and hopefully consistent with the Court's indication that we

4     would be just for sake of preserving our record making that

5     appeal to Judge Ericksen, but we understand the Court's

6     ruling, and as I indicated at that hearing, we will be

7     bringing essentially what I call reciprocal Rule 37 motion

8     with respect to new general causation opinions that were

9     either known or knowable by defendant's expert as well, and

10     we will endeavor to have that done in an expedited manner

11     such that both could be considered by the Court quickly.

12          Hopefully, it won't impact depositions going

13     forward given the plaintiffs' decision with respect to

14     depositions on Axline, but just as a matter of equity, we're

15     going to bring the same motion essentially that they

16     brought.

17          THE COURT:  Okay.  And I suspect though I do not

18     know that those will end up in front of me, but we'll find

19     that out.

20          MS. ZIMMERMAN:  Okay.  And if there's a time

21     frame, I mean we can certainly work with Your Honor's

22     schedule to try and expedite that.  I understand that

23     there's likely to be a bit of briefing here in the next six

24     weeks.  And as we get, as we move towards December, you

25     know, we want to be mindful of the Court's time and the

1       resources of the Court, and then also the parties.  And

2       then, of course, depending on what happens with Rule 15 and

3       the motion for leave to amend that complaint, that may

4       certainly impact the trial in December.

5              THE COURT:  Is, well, that's a good segueway, I

6       guess.  What is it that you intend to seek to amend the

7       Complaint to add?  And where do you think that leaves us

8       with respect to the trial?

9              MS. ZIMMERMAN:  Well, so I think that what

10      plaintiffs intend to seek leave to amend is to assert claims

11      that would have been provided under the Ohio Products

12      Liability Act.  It's a statutory framework for products

13      liability claims including strict liability, failure to warn

14      and negligence.  It's been essentially there was a brief

15      that really had to do with choice of law from the

16      plaintiffs' perspective.

17             We indicated at the end of our opposition to the

18      judgment for a ruling as a matter of law on the pleadings

19      that if the Court is to find that Ohio law is going to apply

20      to Ms. Axline's case, which the Court did, that the

21      plaintiff ought to be permitted leave, but we did not bring

22      a formal Rule 15 motion at the time.

23             I'm not sure what the Court will do with a formal

24      Rule 15 motion, but if the only remaining claims, if, for

25      example, the Rule 15 motion is denied, and the only

1    remaining claims with respect to Ms. Axline relate to

2    Minnesota Consumer Protection Statutes, it is my expectation

3    that the case will not be tried in December.  I think --

4              THE COURT:  Because?

5              MS. ZIMMERMAN:  Well, I think it's hard from the

6    plaintiffs' perspective to see that we're going to all the

7    expense of putting the Court through the motions of trying

8    the case, putting the plaintiff and the experts through the

9    motion to try the case on some Consumer Protection claims

10   which, frankly, I understand the defendants intend to bring

11   a motion for summary judgment on as well.

12             So, again, given that this is an MDL, and we're

13   trying to do a bellwether trial, we're hoping to avoid some

14   of these procedural I guess what we would call maybe

15   housekeeping matters.  I understand that they're more

16   substantive than just housekeeping matters, but just in all

17   candor as an officer of the Court, I think it's unlikely

18   that that case will be tried if the Rule 15 motion is

19   denied.

20             THE COURT:  Well, just an observation back, I'm

21   not so sure it would be, if it were to go forward, it would

22   be terribly representative or instructive.

23             MS. ZIMMERMAN:  Yes, Your Honor, exactly the

24   point.  I think that the evidence that would be introduced,

25   and the testimony would be so limited so as to not be

1    instructive or representative to the parties or to the

2    Court.  And from the plaintiff's perspective, that would

3    make it just not a good use of resources all around.

4              THE COURT:  All right.  We'll cross that bridge, I

5    guess, when we get to it.  How would you plan to deal with

6    that if the Rule 15 were to be denied, what would you --

7    what's your suggestion or what is your claim with respect to

8    Axline then in terms of mechanically?

9              MS. ZIMMERMAN:  Sure.  Mechanically, I guess I

10   have to consult specifically with the attorneys that

11   represent Ms. Axline.  They expected to be here, but there

12   was an emergency motion in another case.  It is my

13   expectation that they would likely stipulate to dismiss the

14   remaining consumer protection claims and see what options

15   remain for their client with respect to appeal at that

16   point.

17             THE COURT:  Okay.  Very well.  Thank you.

18             MS. ZIMMERMAN:  Yes.  And I think --

19             THE COURT:  Why don't we stay on Axline in general

20   right now.

21             MS. ZIMMERMAN:  Sure.

22             THE COURT:  What else from your perspective do we

23   need to discuss on Axline?

24             MS. ZIMMERMAN:  I think with respect to Axline,

25   really the only, I mean the Rule 15 matter I think we've

1    covered.  Plaintiffs anticipated motion with respect to the

2    Rule 37 motion with respect to defendant's experts, that is

3    something that we intend to bring.  We have, I know that

4    there is a motion scheduled to be heard before Your Honor on

5    Monday with respect to a motion to compel certain documents

6    from Dr. Jarvis.  I believe that we have cured and that they

7    have all the documents, but we have to discuss that as well.

8    We made an additional production this week.

9         Oh, and then the other issue, and there isn't a

10   candidly a motion before Your Honor, but defendant's brought

11   a third party subpoena with respect to the Mount Carmel

12   Hospital, and we did receive certain productions of

13   documents from the hospital and that's where Ms. Axline's

14   surgery took place.

15        After the close of discovery and after the

16   disclosure of plaintiffs' expert reports, there was a

17   supplemental production from the Mount Carmel Hospital and

18   that production included for the first time details about

19   essentially the air ventilation system of the hospital

20   filtration air change rates, that sort of thing.

21        We, at the time, asked for defendant's agreement

22   that we be permitted given the late production that our

23   experts be permitted to look at it and provide a

24   supplemental or an expert report with respect to those

25   issues.  And that, alternatively, if plaintiffs not be

1    allowed to do that, that defendants also not be permitted to

2    rely on any such tardy produced information.

3              The defendants have declined on both counts.  They

4    have denied our ability to submit an expert report on that

5    issue, and they have provided, I guess, they've provided

6    expert reports.  I don't know if they would really be

7    rebuttal reports as we have not disclosed engineering

8    reports with respect to Ms. Axline.  So I guess they're not

9    technically rebuttal reports, but they are reports in Axline

10   with specific reference to these documents that we didn't

11   have prior to the close of discovery in our experts.

12             THE COURT:  They would certainly be case specific

13   reports, whatever category of case specific reports they fit

14   into.

15             MS. ZIMMERMAN:  Yes, at least in part they are,

16   and so that is one additional issue with respect to Axline.

17             And then we also indicated that the defendants

18   provided supplemental responses to discovery requests,

19   interrogatories after the close of discovery, and those were

20   also untimely.  So while we have not brought a formal

21   motion, and I'm in consultation with the individual

22   attorneys for Axline, there may be a motion forthcoming with

23   respect to striking those answers.

24             THE COURT:  Okay.  Anything else on Axline?

25             MS. ZIMMERMAN:  I don't believe so, Your Honor.

1          THE COURT:  Let me hear from the defendants on

2    Axline, if you have something you wish to discuss.

3          MR. BLACKWELL:  Good morning, again, Your Honor.

4    Jerry Blackwell for 3M.

5          THE COURT:  Good morning.

6          MR. BLACKWELL:  The only point we would make with

7    respect to the discovery disputes in Axline I guess

8    referenced on page 7 of our agenda is that the defendants

9    felt that to the extent we have disputes about discovery,

10   it's understood that the status hearing each month is not

11   the proper place to be raising them.  And so we had

12   indicated to the plaintiffs that, again, we have a process

13   for meet and confer on it, and they know they should be

14   raised by way of formal motion before Your Honor.

15         But just to be clear to the extent there's any

16   supplementation that was referred to by 3M with respect to

17   discovery, it was simply supplementing contention

18   interrogatories after the close of discovery by the experts,

19   and that's a fairly typical standard.  So that's all there

20   was, and the plaintiffs are trying to use that as a fulcrum

21   for doing something more fulsome on their side, and we take

22   issue with it.

23         THE COURT:  Understood.

24         Let me ask you, Mr. Blackwell, while you're there,

25   you almost got away.  And maybe this is Mr. Hulse, but

1    there's also the question of what's going on with respect to

2    the deposition, the five minute deposition of Doctor --

3              MR. BLACKWELL:  Dr. Lombardy.

4              THE COURT:  Lombardy, thank you.

5              MR. BLACKWELL:  So Dr. Lombardy's counsel has been

6    in a trial, and as of this date hasn't been able to give us

7    an actual date for our five minutes.  And, Judge Schultz,

8    what we decided just as our own internal deadline is we

9    would give it until October 1st to try to get a date and

10   time certain to complete that.  And failing that occurring,

11   we would come back before Your Honor to seek a different

12   form of relief over the issue.

13             THE COURT:  Okay.

14             MR. BLACKWELL:  Thank you, Your Honor.

15             THE COURT:  Thank you.  So this is obviously kind

16   of musing out loud, and I'll have to talk to Judge Ericksen,

17   obviously, about this but there's a lot of procedural

18   motions and various other motions that need to be brought if

19   this Axline case is to stay on track.  And one thing we know

20   is if it goes to trial, we know what day it's going to

21   trial.

22             But it strikes me listening to all of you that if

23   there is, there is sort of a threshold issue, if you will,

24   with the Rule 15 motion, and I'm not suggesting, you know,

25   which way that will go, but it strikes me that it may make

1    some sense to move that as quickly as possible because it

2    may end up obviating the need for any of the other motions,

3    which save the party's time and money and saves the Court

4    time as well.

5            So I'll talk to Judge Ericksen, but I think,

6    Ms. Zimmerman, you said that you had planned to get the

7    motion on today, correct?  To file it today?

8            MS. ZIMMERMAN:  Yes, Your Honor.

9            THE COURT:  Mr. Blackwell, how quickly can the

10   defendants reply to that?

11           MR. BLACKWELL:  Your Honor, we think by Tuesday.

12           THE COURT:  By Tuesday, okay.

13           All right.  Once that's done, I guess we'll set it

14   on for a hearing or not, as the case may be, in front of me

15   or Judge Ericksen.  We'll find that out.  Okay?

16           MS. ZIMMERMAN:  Would the Court have any direction

17   about whose office we should check with in terms of a

18   hearing?

19           THE COURT:  Come on up.  Just making sure we get

20   this.  Yeah, I suspect that you should check with my office

21   about the hearing date but, again, because Judge Ericksen is

22   out of the country, and I'm not sure when she will be

23   returning.  I'm sure you know, Cathy.

24           THE CLERK:  The 28th.

25           THE COURT:  So I'll communicate with her.  We'll

 1     communicate with her, but why don't you communicate with my

 2     office.

 3               MS. ZIMMERMAN:  Your chambers, I'm happy to do

 4     that.  Thank you, Your Honor.

 5               THE COURT:  Just so for planning purposes, you'll

 6     file today.

 7               MS. ZIMMERMAN:  Yes, Your Honor.

 8               THE COURT:  And, Mr. Blackwell, that will be the

 9     22nd, is that?  No, 24th.  What's Tuesday?

10               MS. PRUITT:  25th.

11               THE COURT:  The 25th.  The defendants will file

12     their response on the 25th.  Okay.

13               MS. ZIMMERMAN:  Thank you, Your Honor.

14               THE COURT:  All right.  Anything further on

15     Axline?

16               MR. BLACKWELL:  Your Honor, no, not Axline, but

17     it's a scheduling issue generally, so.

18               THE COURT:  Okay, come on up.

19               MR. BLACKWELL:  So it doesn't involve a problem.

20     It's just simply advising the Court that I did check with

21     Cathy earlier in the week about potential trial dates into

22     2019 for the next setting, so we were able to get some

23     options, and we're in the midst of discussing those with the

24     plaintiffs.  It would be useful if Her Honor Judge Ericksen

25     and Your Honor Judge Schultz could confer as to how many

1   trial settings would the Court like to see in 2019?  And

2   then perhaps we could get them all set.  You know, two a

3   year, is fantastic.  I suspect the Court may want to see a

4   few more than that, you know, but it would be helpful to

5   note them so we can get those set.

6            THE COURT:  Okay, very well.

7            MR. BLACKWELL:  Thank you, Your Honor.

8            THE COURT:  Will do.  All right.  Well, I think we

9   started with agenda Item Number 1 and transitioned from

10  there.  Is there anything further on Item Number 1?

11           MS. ZIMMERMAN:  No, Your Honor.

12           THE COURT:  Item Number 2, the plaintiff fact

13  sheets, do we need to discuss anything about those in light

14  of the fact that I'm not hearing about the dismissals?

15           MR. HULSE:  No, Your Honor.

16           THE COURT:  No, okay.  All right.  Very well.  How

17  about let's get an update on the cases in the MDL, the

18  related State Court proceedings, and the Canadian action, if

19  we can.

20           MR. SZERLAG:  Good morning, Your Honor.  Just an

21  update on the number as of yesterday, there are now 4908

22  active cases in the MDL.  I don't think anything has changed

23  from my understanding as far as the State Court cases.

24           THE COURT:  Okay.

25           MR. SZERLAG:  Or the Canadian action as well.

1              THE COURT:  Very well.  Thank you, Mr. Szerlag.

2      Mr. Hulse, anything on that?

3              MR. HULSE:  Just a typo, Your Honor.  The number

4      of dismissed cases is not 410.  It was 494 as of last

5      Friday.

6              THE COURT:  Okay.  I guess this Item Number 6 on

7      the agenda, I guess that goes back to Axline or --

8              MS. AHMANN:  Thank you, Your Honor.  In connection

9      with the six other cases that have been selected and will be

10     worked up, we have been getting third party discovery from

11     hospitals.  We did the same with Axline, and sometimes the

12     hospitals request to be protected for their confidential

13     information under the protective order, which is PTO7.

14             With one of the six cases, the *Trombley* case, Bay

15     Park Hospital requested protection by the protective order,

16     so pursuant to paragraph 17, which allows protection if the

17     parties agree to the extension to third parties, we

18     requested that plaintiffs agree that what the hospital

19     provided would be subject to the protective order.  We did

20     the same at Axline, and there was a simple agreement and

21     there was no issue.

22             In this particular case, we heard from the

23     plaintiff's counsel that they would only agree if the

24     hospital stipulated that they would provide all

25     correspondence with defendants to the plaintiff's counsel,

 1    and if they would provide documents.  Our response basically

 2    was, first of all, we always provide documents that we get.

 3    But, second of all, we can't talk for the hospital, and we

 4    certainly think it is inappropriate to condition protection

 5    under the protective order to something that the plaintiffs

 6    want.  So we would not agree and could not agree, so we

 7    asked the Court to be able to extend the protective order to

 8    any production by Bayport or, excuse me, Bay Park Hospital

 9    so that they can produce their documents.

10              THE COURT:  Okay.  Ms. Zimmerman, do you want to

11    be heard on this?

12              MS. ZIMMERMAN:  Your Honor, I believe co-lead

13    counsel Mr. Ben Gordon is on the telephone.  It's his

14    client, so I think he is prepared to address the Court if he

15    is able to speak.

16              THE COURT:  If he can, Mr. Gordon, bear with us a

17    second.

18              All right.  Mr. Gordon, are you there?

19              MR. BEN GORDON:  I am indeed, Your Honor.  Good

20    morning.

21              THE COURT:  Do you wish to speak on this issue of

22    the protective order in *Trombley*?

23              MR. GORDON:  Yes, Your Honor.  Briefly, my partner

24    Daniel Nigh has been the one most involved in the particular

25    communications with the defendant on this issue.  As I

1    understand the issue, we believe that the defendants, we're

2    happy to extend the protective order, but we believe the

3    defendant's communications with the third party should be

4    provided to us.  We should be part of that communication

5    channel.  It's common in all MDLs for both counsel for the

6    opposing sides to communicate with a third party so that

7    there's not any concern about inappropriate or otherwise ex

8    parte communications.  It's happened in *Xarelto* and every

9    other MDL I'm familiar with, we simply ask for that courtesy

10   that they share the communications with the third party with

11   us as plaintiff's counsel.

12            THE COURT:  Okay.  Thank you, Mr. Gordon.  I'm

13   going to mute your line for a moment.  Go ahead.

14            MS. AHMANN:  Your Honor, I was just going to say

15   it's two different issues.  We're requesting that the

16   protective order be extended to them so that they can

17   provide the information.  We always provide copies of what's

18   produced to the plaintiffs.

19            THE COURT:  All right, understood.  Let me --

20   Mr. Gordon, any last comments?

21            MR. GORDON:  No, Your Honor.  I think you have our

22   position.  Thank you.

23            THE COURT:  Okay.  I do agree with Ms. Ahmann.

24   Those are separate and distinct issues, so I will verbally

25   now extend the protective order to the hospital, but I think

1    we'll follow-up and make sure that that gets done

2    appropriately.

3              As to whether or not the defendants share their

4    communications with the hospital, with the plaintiffs absent

5    some indication that they're not behaving appropriately or

6    sharing the communication they need to, I'm going to assume

7    that they will.  If there is such an issue, by all means

8    bring it to the Court's attention.  But just for purposes of

9    this morning and clarity, the protective order protections

10   are extended to the hospital in *Trombley*, and you can inform

11   them of that.

12             Ms. Ahmann, is there anything further on that

13   issue?

14             MS. AHMANN:  No.

15             THE COURT:  Okay.  All right.  Anything further

16   from the plaintiffs on that issue?

17             MS. ZIMMERMAN:  Not at this time, Your Honor.

18             THE COURT:  Okay.  Thank you.

19             All right.  I believe we've gone over the status

20   of discovery, Item Number 7.

21             Item Number 8, other pending motions, who wishes

22   to address that?  Or are those all dismissals as well?

23             MR. HULSE:  Well, Your Honor, I can speak to the

24   first paragraph.  The first paragraph is a PTO 23 motion

25   that's dismissal, so our understanding is that's held over

1    for October.

2              THE COURT:  It is, thank you.

3              Anything further on that Ms. Zimmerman?

4              MS. ZIMMERMAN:  No, Your Honor.  I think the other

5    were just updates for the Court's record with respect to

6    there is obviously the pending motion for new trial on the

7    Gareis matter that's fully briefed.

8              Additionally, the defendants filed a bill of

9    costs, and we have filed an objection and that is out

10   standing.

11             And then the defendants also noted that they had

12   filed a letter requesting leave to file a motion for

13   reconsideration on the general causation summary judgment

14   and Daubert issues.  Plaintiffs also filed a letter opposing

15   that request, and those are before the Court, if the

16   Court -- just by way of update.

17             THE COURT:  Okay.  Thank you.  All right.  Well,

18   let's talk about the future then of MDL2666.  Who would like

19   to start?

20             MS. ZIMMERMAN:  So, Your Honor, this item was

21   added to the agenda for the first time at our request this

22   month, and it is really we think part and parcel or related

23   to the initial motion that we brought to remand the *Walton*

24   and *Johnson* matters.  You know, during the status

25   conference, I believe it was in July where we had the honor

1    of being before all three judges in this case for the last

2    appearance for Judge Noel, the Court asked the question

3    about whether or not the parties had engaged in any

4    settlement conversations, and there have been no settlement

5    conversations at this point.

6         And so while we are happy to engage in these kind

7    of conversations, and I think that there could be some

8    productive collaborations in that regard either between the

9    parties or with the guidance of the Court, given that we are

10   at that point right now, we do think that it is time to talk

11   about where we're headed next.

12        From the plaintiffs' perspective, that starts with

13   the remand of *Walton* and *Johnson*.  And the plaintiffs have

14   brought as a preliminary matter a motion for suggestion of

15   remand of both the *Walton* and *Johnson* cases.  That motion

16   was filed, I believe, on September 4th, and defendants have

17   opposed that.

18        But, briefly, the reason that defendants state,

19   the real reason that the Court should not remand these

20   particular cases is essentially that this Court is familiar

21   with the issues that are involved in this litigation and

22   that's certainly true.  This Court has been intimately

23   involved in litigating this case for nearly three years now,

24   but familiarity with the defense and the evidence is not a

25   sufficient reason to keep the cases here.  And, frankly,

1    Your Honor, we put this in our papers, but we think it is

2    fundamentally at odds with the MDL statute 1407A, and the

3    case law that has analyzed that statute.

4         And we would point Your Honor and the Court

5    specifically to the *Lexecon* case and that started out in the

6    Ninth Circuit, and we would point specifically both to then

7    Judge Kozinski's dissent in that case, which was then

8    essentially adopted by the United States Supreme Court where

9    they really talk about how when Congress passed 1407, they

10   talked about how the cases shall be remanded at the

11   conclusion of the pretrial proceedings and it's mandatory

12   language.

13        So, and Judge Kozinski's dissent is from the Ninth

14   Circuit, there is important because he really helps discuss

15   what it means to be pretrial proceedings, what the courts

16   mean, and what the parties meant and understood that to mean

17   at the time.

18        And I've actually got I think it's house, got the

19   what is this the House Report Number 90-1130 from 1968

20   actually discussing the legislative history behind 1407, but

21   really the issue is when you have case specific discovery

22   coordinated in an MDL like this one, that is for coordinated

23   pretrial proceedings, and that is historically understood to

24   be those kinds of proceedings or discovery that is generally

25   applicable to more than a couple of cases.

1          So in *Lexecon* and when it was in the Ninth

2     Circuit, Judge Kozinski talks about pretrial proceedings

3     under 1407 being obviously limited to those raising issues

4     common to the other cases, primarily discovery.  That's the

5     entire purpose of the multi-district process.  And if you go

6     forward and look at some of the House Judiciary Committee

7     report in explaining the cases have to be remanded to the

8     transfer order court for trial, the House Judiciary

9     Committee recognized that in most cases there will be a need

10    for local discovery proceedings to supplement those that

11    were done in the MDL, and that consequently remand to the

12    originating district for this purpose will be desirable.

13         That's what Congress talked about when they passed

14    this statute and so there was mandatory language that

15    explains that when the coordinated pretrial discovery is

16    completed, that these cases shall be remanded.

17         So certainly in this case, there's no contention

18    by 3M that the coordinated pretrial proceedings are ongoing.

19    And, in fact, defendants really couldn't reasonably make

20    that argument because while plaintiffs have attempted to

21    conduct additional discovery on generalized issues through

22    subpoenaing, for example, Dr. Mankowitz, and that was

23    quashed not once but twice, but when plaintiffs have sought

24    to do additional discovery with respect to depositions of

25    those employees at 3M that were responsible for the

1       coordinated back door approach to the FDA in getting the

2       letter of August of 2017, those requests have been denied by

3       defense counsel as outside the scope of general causation or

4       untimely.

5              So to the extent that the defendants have

6       continued to take the position that plaintiffs are not

7       allowed to do additional generalized discovery, pretrial

8       generalized discovery is thus closed.

9              Now, with respect to the complaints in *Walton* and

10      *Johnson*, Mr. Walton's case was filed in Texas in 2013.  It

11      was originally filed in state court.  It was removed to

12      federal court.  I think that there is actually another state

13      defendant, but somehow it is still -- it was in federal

14      court, but at any rate, those proceedings went far away down

15      the track before Judge Hoy.  There were a number of

16      different proceedings.  There were depositions.  And in

17      fact, defendants as we outline in our moving papers,

18      defendants opposed centralization of the MDL generally, but

19      quite specifically with respect to Mr. Walton's case and

20      Mr. Johnson's case, they said look, panel, if there's going

21      to be an MDL, okay, now we're on board with that, send it to

22      Minnesota, but these two cases need to be kept out because

23      they're way down the track, and we're ready for trial.  That

24      was the position that they took as officers of the Court in

25      2015.

1          So now is the time, Mr. Walton, Mr. Johnson, they

2    have been waiting since 2013 and 2014 to have their trial.

3    We have completed generalized discovery before Your Honors

4    in this MDL.  Close to a hundred depositions I think across

5    the employees and expert witnesses have been conducted.

6    Much of the discovery has been done.  To be sure there is

7    going to be some additional discovery, but there are also

8    issues particularly with respect to the Walton case that

9    really are held over before Judge Hoyt and some of that is

10    sealed, and we can't really get into that.

11          But the issue about conduct in that case was there

12    was an evidentiary hearing, and there is a sealed order

13    before Judge Hoyt that Mr. Walton, the plaintiff in that

14    matter, is eager to get back down to Texas to have his day

15    in court and to try his case.  And given the language in

16    1407, and given the fact that we have already completed, and

17    we won't be permitted to do additional generalized discovery

18    touching on issues that really relate to all of these cases,

19    we believe that it is time to remand now those two cases,

20    which is why we've asked for a suggestion of remand, which

21    we would then bring to the JPML.

22          And, additionally, we believe again for some of

23    the same reasons and getting into the choice of law issues

24    and the fact that it seems that we're going to be heading

25    for application of 50 states different laws, that the time

1    for remand really ought to be now.  And maybe that doesn't

2    mean that we start by remanding 5,000 cases and that they

3    all head back immediately, but I would point, we pointed in

4    our moving papers to recent remand orders in the *Biomet* MDL,

5    which is before Judge Miller in the Northern District of

6    Indiana.  There have been no bellwether trials in that case.

7            Now, that case has been pending since 2011, but

8    some of the issue in that case have to do with the fact that

9    the defendant is also an Indiana resident, and so there are

10   some issues with respect to whether or not there are going

11   to be trials in federal court there because there is

12   diversity issues.

13           But principally at the end of the day, what Judge

14   Miller said was, look, we're going to be applying the law of

15   the 50 states where these 500 cases are from, and so what

16   needs to happen now rather than have me, Judge Miller, make

17   a decision about the application of statutes of repose and

18   statutes of limitations and statutes versus common law in

19   all 50 states, let's come up with a plan for how we remand

20   these.

21           Judge Goodwin has done some of the same things in

22   the *Transvaginal Mesh* litigation, which has also been

23   ongoing since 2011.  And then most recently, Judge -- this

24   is in the District of Arizona on the *Bard IVC Filter* case.

25   I'm trying to remember which judge this is in front of, but

1    I have a copy of the order if Your Honor would like to look

2    at it.  There has been one trial in that MDL, and, again,

3    they're starting out with a remand of 12 cases.

4            So it's not the case that MDLs need to have

5    completed dozens of trials or even any trials in the case of

6    the *Biomet* litigation.  The issue really gets to be has that

7    pretrial coordinated discovery been completed?  And if so,

8    following the mandatory language under 1407, when and how do

9    we get the cases remanded so that justice not be denied so

10   that these cases keep moving forward, and that's certainly a

11   benefit for the defendants as well.

12           If their position is these are cases they don't

13   want to settle and that's certainly a position they take so

14   far, then let's get busy with it.  Let's try some cases

15   across the country.  We're ready to do that.  But it's a

16   real issue.

17           So from the plaintiffs' perspective, we need to be

18   starting with a remand of the two cases that they didn't

19   want to have here to begin with and that we ought to work

20   with the Court and with defense counsel to come up with a

21   workable plan to remand these cases for trial across the

22   country.

23           THE COURT:  What do you have to say about

24   settlement other than what you've already said?  No, I get

25   what you've said.  I just want to know if there's anything

1    further about settlement in general?

2              MS. ZIMMERMAN:  I think that it's something that

3    particularly at this juncture makes a lot of sense to talk

4    about as we're on the precipice of talking about remanding

5    these all across the board.

6              THE COURT:  Okay.

7              MS. ZIMMERMAN:  I think we've learned a lot in

8    trying *Gareis* and working up *Axline*, but it takes more than

9    one to dance.

10             THE COURT:  Right.  From the plaintiffs'

11   perspective, I think there's a question in my mind whether

12   you all want the Court involved in that process or if you

13   view that as appropriate given all that's gone on.  Where

14   are you on that?

15             MS. ZIMMERMAN:  We would certainly welcome the

16   Court's involvement and guidance in that process.

17             THE COURT:  Okay.  Thank you, Ms. Zimmerman.

18             MS. ZIMMERMAN:  Thank you.

19             THE COURT:  Mr. Blackwell?

20             MR. BLACKWELL:  Your Honor, picking up with the

21   Court's kind of last question about the Court's involvement

22   in this, perhaps the most helpful thing the Court can do for

23   the collective of all of us is to help us winnow down this

24   pool of cases.  At this point, it is a bloated docket, and

25   the plaintiffs are signing up cases in some instances with

1      little more than proof that there's been an orthopedic

2      surgery and an infection developed thereafter, and maybe a

3      Bair Hugger was used, as we see repeatedly.

4              A number of these cases are filed don't even have

5      product ID in them, and how it is that we could be expected

6      to have a meaningful discussion about settlement without

7      making sure first we've got a grouping of what are really

8      good cases is difficult to do.  And part of the benefit of

9      the bellwethers is it helps us to learn more, to identify

10     better what would be the characteristics of a good, viable

11     solid case.

12             We've only had one bellwether at this point.  What

13     the plaintiffs are asking the Court to do on the rubric of

14     discussing settlement under topic number nine is again to

15     drain the entire pool as they were attempting to do just a

16     month or two ago in trying to withdraw *Lexecon* waivers where

17     there is no good cause shown for that.

18             Now, there is equally no good cause for attempting

19     to dismiss the MDL because essentially our work here is

20     done.  There is no more to do.  There's no MDL court in the

21     country that has done what the plaintiffs are recommending

22     at this stage in this case.  That essentially the Court has

23     gone through here almost three dozen, well, almost 30

24     pretrial orders in helping to configure this litigation to

25     manage this docket of cases.

1          The goal is to have the cases when they leave this

2     MDL be ready to go to trial when they transferred back to

3     the transferred courts under 1407, that would mean that the

4     consolidated pretrial proceedings are done.  At this point,

5     we've had two pretrial proceedings.  We've had Gareis and

6     now we have Axline, and so that leaves us almost 5,000 more

7     that are not done, and the plaintiffs would simply have this

8     Court throw those cases back out to a hundred or so federal

9     district courts around the country like so many marbles for

10    them to simply pick up.  And no court in an MDL has ever

11    done that.  There's no good cause for it here either.

12         If the plaintiffs are seriously interested in

13    talking about resolution, and I haven't seen it yet, they

14    would themselves come up with some sorts of protocols to put

15    into place to figure out the wheat from the chaff, what are

16    legitimate, solid valid claims from those which are not.

17    And if the cases that we've had come up for trial in the

18    bellwether pool are any indication the overwhelming majority

19    have simply gone away one after the other because they won't

20    meritorious for one reason or another.  And, in fact, we had

21    to repopulate the pool because so many were simply gone, and

22    that were reflective of the 5,000, how many of those would

23    even remain, Your Honor.

24         So at this stage it's difficult for us to conceive

25    of how it is the plaintiffs want to discuss resolution when

1      the work hasn't been done yet to reduce this volume of cases

2      down to that which is really legitimate, and we are

3      certainly hopeful to have some assistance from the Court as

4      we proceed along in this, and it maybe that the Court may

5      find other bellwether trials to be instructive in that sense

6      also in helping us to get a better sense of kind of where

7      we're heading.

8                  THE COURT:  Let me ask you this.

9                  Are you -- do the defendants, let me see how I ask

10     it better.  On this issue, for example, of product ID, I

11     understand the defendant's position.  And, obviously, if no

12     Bair Hugger was used or if plaintiffs can't establish a Bair

13     Hugger was used, defendants probably don't want to pay for

14     that.  I understand that.

15                 Is there -- do you see the Court devising a

16     process or a mechanism for separating those cases from those

17     where there is product ID?  Or is that something the

18     plaintiffs need to do in your view or the parties need to do

19     together?  Where do we go with that?

20                 MR. BLACKWELL:  Well, Your Honor, I would

21     certainly have more hope but not confidence were the Court

22     to engage in a process in that regard.  I just would not be

23     as hopeful as what may come of the conjoined efforts of the

24     parties to do that, as it may be to some extent against the

25     interest of the plaintiffs who have gone and filed cases

1       where there is no proof of Bair Hugger usage in the first

2       place.  That would be one thing that would be helpful as to

3       me a very fundamental kind of threshold.  If you don't have

4       any proof that the Bair Hugger was in fact even used, then

5       what are we doing here exactly?  And that would be one

6       screen that would get erected.

7              There will be other screens too, for example,

8       there has been no proof, there is nobody who is opining

9       about specific causation in the case.  And if there isn't a

10      competent qualified opinion that the plaintiffs' injuries

11      are attributable to the Bair Hugger, then what are we doing

12      here exactly since it is the claim of the lawyers that the

13      Bair Hugger is caused in these infections.  That's not

14      validated to prove backed up by proper affidavit presumably

15      some treater that will say that or other suitable expert

16      testimony, then that to me would represent potentially

17      another proper screen.

18             There may be other cases where we have very long

19      latencies to the extent that nobody could reasonably

20      conclude that there is possible proof that the Bair Hugger

21      is the cause.

22             So there are any number of these that in fact may

23      be helpful at some point to have an audience with the Court

24      to discuss generally what some of these screenings or

25      filters or touch stones could look like.  If you have a very

1    common commensal skin bacteria, and there's no way to be

2    able to rule out a source or rule out the skin itself as the

3    source, then the question comes back what are we doing

4    exactly?

5           So it is at this point with a pool of close to

6    5,000 cases, and the question is there interest in

7    settlement?  The answer is yes, there's always interest, but

8    do we have anything viable to work with to have a meaningful

9    discussion?  At this point, we don't yet.  Given the nature

10   of the docket, it needs to be cleaned up.

11          THE COURT:  I think you already answered this, but

12   is this something that you think I should order the parties

13   to get together with me to do at least preliminarily to talk

14   about as a former colleague of mine would say bucketizing

15   the cases.  Here's a bucket of cases that we don't have

16   product ID on or here's a bucket of cases where it's a long

17   latency.  Is that a useful step at this juncture?

18          MR. BLACKWELL:  Your Honor, it would be extremely

19   useful not just for settlement but even in terms of what

20   bellwethers we try because once we've managed to bucketize

21   it, we're able to see then have we tried certain cases from

22   certain buckets?  That would tell us something that perhaps

23   we haven't seen or heard or understood yet from a jury.

24          So I think it would be helpful for that purpose

25   also, so the answer is yes, we do think that would be a

1    useful thing, and, in my view, for all purposes of this MDL.

2             THE COURT:  Okay.  Great.  Thank you,

3    Mr. Blackwell.

4             MR. BLACKWELL:  Thank you, Your Honor.

5             THE COURT:  Ms. Zimmerman?

6             MS. ZIMMERMAN:  Yes, thank you, Your Honor.

7             I join my colleague in agreeing that I think the

8    Court could be useful on some of this.  I do feel compelled

9    to say that I think to the extent that there continue to be

10   representations that the plaintiffs have not produced

11   product ID or proof of exposure to Bair Hugger, frankly,

12   that's just not consistent with the facts of this case.  And

13   we started the pretrial conference today with Your Honor

14   explaining the number of cases that have been filed and even

15   the number of cases that have been dismissed either jointly

16   or pursuant to Court Order.  There are several hundred of

17   those to be sure, but there is a process that specifically

18   addresses this question about whether or not the plaintiffs

19   have produced adequate proof with respect to exposure both

20   to injury and exposure to this product and that is pretrial

21   order number 14, specifically, paragraph number four.

22            So defendants are certainly capable and have

23   availed themselves of the agreed upon process with respect

24   to core deficiencies, and I guess the reason I'm compelled

25   to say something is that to the extent that the Court is

1    continuing to hear argument that plaintiffs have not

2    produced evidence that they are in fact exposed to Bair

3    Hugger, that's just not the case.  And so I would say that

4    that's really important.

5         I think that the other piece is that there is no

6    defendant fact sheet in this case, unlike any other MDL that

7    I'm aware of.  Now, I appreciate whose burden it is to

8    establish exposure to the Bair Hugger, but it's just not

9    fair to say that the plaintiffs haven't done that.  Because

10   if it was true, there was an overwhelming problem where the

11   plaintiffs have failed to produce evidence that there is in

12   fact a Bair Hugger exposure in an injury, the number of

13   cases that have been dismissed wouldn't be 400, it would be

14   thousands, but that's not the case here.  And so I just want

15   to make sure that the Court recalls that there is a process

16   to address these kinds of things.

17        You know that said, I do think that there is a

18   process to winnow down and bucketize the cases, as Your

19   Honor kind of indicated, and to the extent that there's a

20   proof question, we were able to do this jointly with some

21   instruction and kind of guidance from the Court as we went

22   through that bellwether process not once but twice.  And

23   really what we did is we essentially exchanged charts on

24   where the defendants were really legitimately challenging

25   the plaintiffs' proof of use.  So, you know, is that

1      something we can do in a week on 5,000 cases?  Maybe not,

2      but I will say that we did it quite expeditiously on, you

3      know, the first round of cases was 150, and the second round

4      was 100 cases.

5          So, you know, maybe there are some outliers out

6      here.  Maybe there are some, I mean to be sure I get some

7      questions that sometimes I think are requiring additional

8      investigation, but, you know, if someone has got an

9      affidavit from a hospital, for example, saying there was no

10     Bair Hugger used, I agree that's not a case that shouldn't

11     be here.  But that's absolutely the exception and not the

12     rule.

13         And so I just want to make sure as the Court is

14     considering how we best bucketize, you know, the cases

15     pending before Your Honor and in this MDL, I do think that

16     we take some umbrage with the representations made there.

17     But I do think that there's a role for the Court in helping

18     us to understand this, and we'd welcome that.

19         THE COURT:  Okay.  And I think the question really

20     comes down to when it would be most appropriate for the

21     Court to step in and sort of facilitate however the process

22     of the settlement discussion is going to take place, when

23     it's appropriate for the Court to step in to that role and,

24     you know, I'm willing to do it any time.  I don't know what

25     the parties' views exactly of that particular question is.

1     So I mean, is now the time or is it not now the time?

2          MS. ZIMMERMAN:  From the plaintiffs' perspective,

3     Your Honor, honestly the time was in 2016 when we first

4     started getting involved, and I think one of the things that

5     happens in these kinds of cases is there gets to be a little

6     bit of a -- there is some stigma in terms of who calls who,

7     who walks over to whose office, and what does that

8     communicate about the kind of strength or faith you have in

9     your ability to bring your claims?

10          So what I have seen some of the other cases that

11     I've been involved in in the past five years is that really

12     out of the gates, there are lawyers appointed from both

13     sides to really facilitate those kind of settlement

14     conversations not because it's necessarily expected that

15     settlement will happen in the first months or two months of

16     an MDL, but that because if a court gets involved early in

17     facilitating these conversations so that the buckets are

18     something that both sides are talking about from the

19     inception, it's easier to kind of step off the curve and

20     have real meaningful discussions.

21          So I think that, I guess that's a long way of

22     saying I think that it is time not because necessarily the

23     first conversation is going to be productive but because we

24     have to have a first conversation to ever get to an ultimate

25     conversation.  So I think that the role of the court could

1    certainly be meaningful.

2         We do worry from the plaintiffs' perspective,

3    while we want to engage in good faith in trying to explore

4    potential resolution, and see if there's agreement, what we

5    don't want to have happen is also to then high jack, you

6    know, potential remand and kind of work up of additional

7    cases if we're not going to have real good faith substantive

8    conversations about kind of where we're headed next.

9         So I guess I would say the sooner the better from

10   the plaintiffs' perspective and, you know, you can always

11   have a conversation and decide it's not productive for

12   either side and who knows where it ends up going?  But you

13   got to talk to figure out if there's anything to talk about.

14        THE COURT:  Understood.  And, you know, I mean

15   good faith is in the eye of the beholder, right?

16        MS. ZIMMERMAN:  Yes, Your Honor.

17        THE COURT:  And one of the things I'm trying to

18   figure out is if the parties are at a point where, for

19   example, I'm not saying the defendants are saying this, but

20   if they're at a point where they're saying based on what we

21   know to date, we are just not really able or interested in

22   settling these cases.  You know, I don't care to waste

23   everyone's time.  I don't necessarily take the defendant's

24   word on that.  Obviously, I have to make my own sort of

25   judgment, but let me hear from Mr. Blackwell, again.

1          MR. BLACKWELL:  Your Honor, just to clear up one

2     small thing on this issue of whether there's ID in cases.  I

3     don't make this statement as an abstraction.  It's because

4     we have been here time and again to find out that just Bair

5     Hugger wasn't used.  It was in the hospital, but not used in

6     this surgery, and we've had cases dismissed on that basis.

7          And Your Honor was just here even a hearing or so

8     ago, a status hearing, where it's been discussed, well, you

9     know, we know that there was an orthopedic surgery.  There

10     was an infection.  We don't necessarily know yet if it was

11     used or not, which was astounding frankly and because the

12     case is already in suit without even knowing that.  That

13     informs our concerns about that issue, and the fact there is

14     now this sort of amorphous mass of 5,000 cases where we know

15     that dynamic exists.  No doubt exists in there too, probably

16     in a meaningful way.

17          With respect to the bucketizing of the case, it's

18     our view that the most useful thing we first talked about

19     how it is we winnow this down into a population of cases

20     that we can have a meaningful discussion about.  If we don't

21     do that first, I'm concerned that simply the mere idea of

22     there being settlement discussions will be the clarity and

23     call that will cause a bloated docket of cases to become

24     infinitely even more bloated because now the bell has been

25     sounded.  There's a discussion of settlement, and then they

1    will all flood in, and we'll still have now the problem

2    magnified of still not being able to separate the wheat from

3    the chaff, what are good cases and which ones are really not

4    so good.

5              So it's our view the timing is now but it's for

6    the first step of what kind of things can we put into place

7    to winnow this down.

8              THE COURT:  Very well.  Understood.

9              MR. BLACKWELL:  Thank you.

10             THE COURT:  Thank you, Mr. Blackwell.

11             All right.  On the remand, obviously, I'll speak

12   with Judge Ericksen, but I'm fairly confident she's going to

13   want to -- she will decide that, again, that would be a

14   report and recommendation to make a recommendation to, you

15   know, possibly remand.  That's inefficient.  I don't know

16   whether she'll want further argument on it or not, but I'll

17   confer with her on that.

18             On the question of how we move forward with

19   respect to call it settlement, call it winnowing the cases,

20   what we do, again, you know, I'll also speak with Judge

21   Ericksen, but I'm inclined to start bringing the parties

22   together in a room or the lawyers together in a room to talk

23   about how we get our arms around the future of this MDL and

24   these cases.  By saying that, I am not saying, you know, the

25   defendants are going to agree that there are 5,000 cases

1  that need to be settled, and if winnowing or separating the

2  wheat from the chaff is important to getting to a

3  meritorious discussion or a real discussion of meritorious

4  case settlement, obviously, we've got to do that.  I don't

5  expect the parties to agree necessarily which cases are

6  meritorious, but I guess that may well be where I come in,

7  so.

8           All right.  Let me ask you, Ms. Zimmerman, is

9  there anything further that you think we can or should deal

10 with this morning?

11          MS. ZIMMERMAN:  I don't believe so, Your Honor.

12          THE COURT:  Okay.  Thank you.  Mr. Blackwell?

13          MR. BLACKWELL:  No, that's it, Your Honor.

14          THE COURT:  Okay.  Well, thank you all.  We are in

15 recess.

16               (Court adjourned at 10:31 a.m.)

17

18                    *      *      *

19               REPORTER'S CERTIFICATE

20      I, Maria V. Weinbeck, certify that the foregoing is

21 a correct transcript from the record of proceedings in the

22 above-entitled matter.

23

24          Certified by:  *s/ Maria V. Weinbeck*

25                    Maria V. Weinbeck, RMR-FCRR