# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE BAIR HUGGER FORCED AIR WARMING (JNE/FLN) PRODUCTS LIABILITY LITIGATION | MDL No.: 15-md-02666 |
| This Document Relates to All Actions. | |
| **Louis Bucci,** | Civil Action No.: 0:17-cv-01073 |
|     **Plaintiff,** | |
| v. | **RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| **3M Company and Arizant Healthcare, Inc.,** | |
|     **Defendants.** | |

Plaintiffs' noncompliance with the Pretrial Order 23(A) ("PTO 23") was not willful or in bad faith, and a dismissal with prejudice would be extreme. A dismissal with prejudice "should be used only in cases of willful disobedience of a court order or where a litigant exhibits a pattern of intentional delay." *Hunt v. City of Minneapolis*, 203 F. 3d 524, 527 (8th Cir. 2000); *see also Hutchins v. A.G. Edwards & Sons, Inc.*, 116F.3d 1256, 1260; *Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1997) (quoting *Givens v. A.H. Robins Co.*, 751 F.2d 261, 263 (8th Cir. 1984)). In *Givens v. A.H. Robins Co.*, the court reversed a dismissal with prejudice where the litigants' only transgression was failure to comply with a discovery deadline. *Givens*, 751 F.2d 264, 264 (8th Cir. 1984). The court reasoned that dismissal with prejudice was disproportionate to this act of noncompliance. *Id*.

1

Here, the only transgression is that the suggestion of death was not filed 90 days from the date of the client's death. Moreover, failing to comply with the deadline is further mitigated by the fact that this case was managed by someone other than the named plaintiff – his daughter – who kept in regular contact with her father's attorneys and simply did not know to inform counsel of her father's death until after the deadline had passed. Dismissal with prejudice should only be granted after balancing the policy of giving the plaintiff [his or her] day in court against [the] policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures." *Omaha Indian Tribe v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir.) (quoting *Garrison v. International Paper Co.*, 714 F.2d 757, 760 (8th Cir. 1983)). Here, there is no undue delay and absolutely no prejudice to Defendants, since the Plaintiff Fact Sheet had already been submitted and there was no continuing activity in the case at this time.

### I. Plaintiff's family and his counsel have made diligent and good faith effort to comply with PTO 23.

Defendants argue that the Plaintiff failed to file a suggestion of death within the time prescribed by PTO 23, and therefore Louis Bucci's claims should be dismissed with prejudice. Plaintiffs' counsel did not learn of Louis Bucci's death until after the required 90-day deadline. There is no way Counsel would have been able to file the suggestion of death in a timely manner. Moreover, Louis Bucci's interests in this case were managed by his daughter pursuant to a power of attorney such that there was no communication lapse suggesting that Louis Bucci had passed away. For the Court to dismiss Louis

Bucci's claims with prejudice would be an unduly harsh result given the exceptional circumstances.

      a. <u>Louis Bucci's daughter, Christine Thurston, had a durable power of attorney over the Plaintiff and was unaware that she needed to inform counsel when her father passed away.</u>

Throughout this case, the Plaintiff's daughter, Christine Thurston, has been the point of contact and decision-maker for all issues relating to the litigation.  Due to her parents' advanced age and diminishing faculties, Christine served – and continues to serve – as both caretaker and legal agent for her parents pursuant to durable powers of attorney executed by both her mother and father in April 2014.  Mtn. to Substitute at Ex. 2, Case No. 0:17-cv-01073, ECF No. 10-2.  As such, Christine handled the initiation of the instant litigation on behalf of her father and has served for all intents and purposes as the client when communicating with counsel.

Because Christine managed the litigation from the start, the death of the Plaintiff did not affect her involvement or ability to manage her father's lawsuit.  Typically when a plaintiff dies, her retained counsel learns of the passing when they are no longer able to contact their client.  From there, the decedent's attorneys typically reach out to the plaintiff's family and inform them of the pending suit and the direction going forward.  This case does not follow that pattern.  Christine has managed her father's interest in this case since inception – this includes retaining counsel, signing the engagement letter, informing counsel of the facts of the case, signing authorizations, approving the complaint, and filling out the plaintiff fact sheet.  To Christine, her father's passing did not affect her management of the instant litigation.  In fact, when counsel spoke with

Christine after learning of Louis' passing, Christine remarked that she did not even think to call his attorneys. Declaration of Kristine Kraft, ¶ 6, ECF No. 1756 ("Kraft decl.").

Given that Christine directed her father's litigation from the beginning, it is entirely understandable that she did not know to timely inform her father's attorneys of his passing in order to comply with a particular pretrial order entered in the case. Up until Louis' passing, Christine handled all aspects of the case and – assuming substitution is granted – will continue to handle all such aspects of the case. Mtn. to Substitute at 2, Case No. 0:17-cv-01073, ECF No. 10. Thus, the failure to timely comply with PTO 23 is merely a procedural lapse which will in no way change how the case is managed; Christine will still be the voice of the client.

> b. Counsel for Louis Bucci maintained consistent and regular contact with Louis Bucci, both before and after his passing.

Counsel for Louis Bucci maintained regular contact throughout the case, both before and after Louis Bucci's death. In order to keep its clients apprised of the MDL proceeding, Plaintiff's counsel sends regular letters to its clients which provide litigation status updates and ask that the client inform counsel of any changes to their medical condition or to their contact information. Since filing the Plaintiff Fact Sheet in July 2017, counsel has sent Louis Bucci a total of seven letters which all reiterate the need to inform counsel of any significant changes to the client's health or contact information. Kraft decl. at ¶ 3.

Of particular significance is the letter from counsel sent to Louis Bucci on January 19, 2018. This letter followed the Court's issuance of PTO 23 on January 8 and stressed

4

that it was extremely important that the client instruct their family to contact their retained counsel in the event that the client passes away:

> This means that should the unfortunate happen and you were to pass away, we would only have 90 days to substitute another person to stand in as your representative in the lawsuit. Otherwise, your lawsuit would be dismissed and your estate and/or heirs would not benefit from any potential settlement. **It is thus important that you inform your loved ones or a trusted contact that (1) you have a pending lawsuit and (2) they should promptly contact us should something happen to you.**

Kraft decl. at Ex. 1.  Four days after sending this letter, counsel spoke with Christine who confirmed that she received the letter and that she read the letter to her father who understood and approved of Christine's managing his case.  Kraft decl. at ¶ 5.

Focusing on the time period surrounding Louis Bucci's death on August 15, 2018, counsel sent two letters – one before and one after his passing.  On June 28, 2018, counsel sent Louis Bucci a status update letter which updated the client on the *bellwether* procedure and explained how these proceedings affect the MDL.  Kraft decl. at Ex. 2.  In closing, the letter contained the following:

> If you have any questions, you can reach us toll free at 1-800-873-5297. As always, please also ==keep us updated as to any significant changes in your medical condition or contact information==, including secondary contact information. Because of the complex nature of this products liability case, there is still a long road ahead of us. We appreciate your patience.

*Id*. (emphasis added).

Counsel also sent Louis Bucci a status update letter on November 30, 2018.  Kraft decl. at Ex. 3.  This letter came on the heels of the Court's October 26, 2018 Order in which the Court dismissed five cases due to noncompliance with PTO 23.  ECF No. 1566.  Wanting to avoid any potential non-compliance with PTO 23, counsel's letter

again stressed the importance of contacting counsel in the event the client passes away and contained the following:

> If you have any questions, you can reach us toll free at 1-800-873-5297. As always, please keep us updated as to any significant changes in your medical condition or contact information, including secondary contact information. Also, please make sure your close family members and/or friends are aware that they must contact us promptly in the event you pass away before the conclusion of this litigation. As indicated in our January 2018 letter to you, Judge Ericksen has ordered that we file a Suggestion of Death within 90 days of your passing, otherwise your case will be dismissed and your heirs will not be able to proceed with your claim. Because of the complex nature of this products liability case, there is still a long road ahead of us. We appreciate your patience.

Kraft decl. at Ex. 3 (emphasis added).

Thus, counsel tried its best to inform Louis Bucci and his family that it was of utmost importance that his family contact counsel if Louis dies. Short of monthly phone calls to the client to confirm that he is still alive, Plaintiff's counsel did its best to educate the client and his family in order to rely on them to inform counsel if the client passes away. This is especially reasonable considering that Louis Bucci's case was not selected as a *bellwether* case and is thus in a holding pattern until individualized discovery begins, assuming the case reaches that point.

c. Christine Thurston and Plaintiff's counsel diligently pursued proper substitution upon learning of the Louis Bucci's passing.

Plaintiff's counsel acted swiftly and filed both the suggestion of death and motion to substitute within ten days of learning of his passing. Plaintiff's counsel learned of Louis Bucci's passing via email from defense counsel sent on February 5, 2019 indicating that defense counsel had found an obituary believed to be for Louis Bucci and was planning on moving to dismiss for failure to comply with PTO 23. Kraft decl. at ¶ 6. Following this email, counsel reached out to Louis Bucci's daughter, Christine Thurston,

who confirmed that he had passed away in August 2018 and that she did not think to call his attorneys to inform them. Kraft decl. at ¶ 7. Plaintiff's counsel then promptly filed a suggestion of death two days later on February 7, followed by a motion to substitute party on February 14. Case No. 0:17-cv-01073, ECF Nos. 9 and 10. Plaintiff and his counsel did not "willfully disobey PTO 23" such that dismissal is justified. Order denying Mtn. to Amend PTO 23 at 2, ECF No. 1614. Instead, Louis Bucci and his family inadvertently failed to inform retained counsel of his death; once counsel learned of his passing, they acted as promptly as possible to follow the procedures outlined in PTO 23.

## II.  Permitting substitution at this time poses no risk of prejudice to defendants and does not affect the Court's MDL management.

This Court relies on PTO 23's 90-day deadline to help manage the MDL proceeding by "prevent[ing] deceased plaintiffs from populating and inflating the MDL docket and allow[ing] the Court and Defendants to know the true size of the MDL." Order denying Mtn. to Amend PTO 23 at 2, ECF No. 1614. Because of these docket concerns, the Court justified its inclusion of the deadline in order to dismiss plaintiffs who "willfully disobey PTO 23." *Id*. None of these concerns are implicated here.

The instant case is one of thousands of Bair Hugger cases that were not selected as a bellwether case to be worked up and tried. To date, this case has consisted of a complaint, an answer, and a completed Plaintiff Fact Sheet served on July 5, 2017. In the nineteen months since the Plaintiff Fact Sheet was served, there has been neither substantive discovery nor motion practice undertaken by either party prior to the instant motion to dismiss. Louis Bucci's claims against Defendants stem from his use of the

7

Bair Hugger product during his knee arthroplasty in 2015 and has remained a concrete, bona fide case from its inception in April 2017 up until his death in August 2018. An inadvertent delay in filing his suggestion of death does not affect the size or management of the MDL – Louis Bucci's case would remain the same: a viable, pending non-*bellwether* case.

This case does not represent a plaintiff "willfully disobey[ing]" PTO 23 in an effort to deceive or delay the Court's management of the MDL. Rather, this is a unique situation wherein the named client's interests were managed under a power of attorney. Thus, the typical process by which attorneys learn of a client's death – failure to contact the client and subsequently reaching out to family – did not occur. Neither the Court nor the Defendants will be prejudiced by allowing substitution because this case will remain in a holding pattern along with the other non-*bellwether* cases.

### III.   CONCLUSION

For the foregoing reasons, and in light of its pending motion to substitute party, Plaintiff asks that the Court DENY the instant Motion to Dismiss for failure to comply with PTO 23.

Dated: February 14, 2019            **SCHLICHTER, BOGARD & DENTON, LLP**

/s/ Kristine Kraft
Kristine K. Kraft, Esq.
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
314-621-6115 (phone)
314-621-7151 (fax)
kkraft@uselaws.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion to Substitute Party was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants registered to receive service in this matter.

Dated: February 14, 2019                              /s/ Kristine Kraft
                                                                          Kristine K. Kraft, Esq.