UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 2666 (JNE/DTS) |
| This Document Relates to All Actions | **PLAINTIFFS MEMORANDUM IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' SUPPLEMENTAL EXPERT OPINIONS ON GENERAL CAUSATION MATTERS PURSUANT TO FRCP 37** |

Pursuant to Rule 37, Plaintiffs bring this Motion to Strike supplemental expert opinions on general causation matters served by Defendants in the *Trombley v. 3M Co., Inc*. matter (16-cv-04159) on February 15, 2019. This Court previously issued an order excluding expert testimony from two experts disclosed by Plaintiffs in the *Axline* matter, finding that the disclosures violated this Court's pretrial orders regarding general causation expert reports. (Doc. 1580) Mindful of that Order, Plaintiffs bring the instant motion for an order excluding expert testimony from Defendants' experts disclosed in the *Trombley* matter that concern general causation.

## INTRODUCTION

Disovery in this MDL was to be conducted in two seperate phases: general causation, and, if Plaintiffs demonstrated reliable, admissible evidence in support of their claims that the Bair Hugger patient warming system is generally capable of causing the

1

types of injuries Plaintiffs alleged, then specific causation. Had Plaintiffs failed in meeting their burden to establish reliabile, admissible evidence on general causation, the Court would have granted summary judgment without progressing all the way through the specific causation phase. But the Court properly determined Plaintiffs have offered qualified, reliable expert testimony establishing general causation, and the MDL proceeded through one bellwether trial.

In preparation for the second trial, in the *Axline* matter (a case nominated as an appropriate "bellwether" by both Plaintiffs and Defendants), Plaintiffs disclosed expert reports, including a supplemental report from Dr. Yadin David, and a new report from Dr. Nathan Bushnell. Defendants moved this Court for an order excluding the testimony from these two experts as improper and untimely general causation opinions. (Doc. 1436) The Court granted the Defendants' motion as to Dr. David in part because all but one of the documents Dr. David relied upon for his supplemental report were available as of the date of his initial general causation report. (Doc. 1580 at 2) The Court granted the motion to exclude Dr. Bushnell as an improper sur-rebuttal of Defendants' proffered expert. (Doc. 1580 at 6).

In connection with the *Trombley* matter currently set for trial beginning May 13, 2019, Plaintiff disclosed two case specific expert reports: an infectious disease expert, and a nephrologist. On February 15, 2019, Defendants disclosed six expert reports, including an HVAC engineer, a CFD expert, an orthopedic surgeon, a nephrologist, an anesthesiologist, and an epidemiologist. Each of these experts proffers opinions that touch and/or focus on matters of general causation, including significant citations to

articles or other items that were available at the time Defendants disclosed general causation reports.[1] Mindful of this Court's Order striking Plaintiffs experts in *Axline* as untimely general causation opinions, Plaintiffs now move this Court for an order excluding the untimely general causation opinions included in Defendants' *Trombley* reports.

## ARGUMENT

As the Court has barred Plaintiffs from offering testimony from experts the Court deemed untimely general causation options and/or improper sur-rebuttal, Defendants' attempt to proffer expert reports that bolster general causation opinions with information that was available at the time original reports were disclosed should likewise be prohibited pursuant to the rational adopted by this Court in Doc. 1580 and Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2)(A)(ii), and 37(C)(1).

### A.   "General Causation" vs. "Specific Causation"

The REFERENCE MANUAL ON SCIENTIFIC EVIDENCE states that "*[g]eneral causation* refers to whether the plaintiff's injury could have been caused by the defendant, or a product produced by the defendant." REFERENCE MANUAL ON SCIENTIFIC EVIDENCE, 3d at p 691 (citations omitted). "The determination of general causation involves medical and scientific literature review and the evaluation of epidemiological data, toxicological data, and dose–response relationships." REF. MAN. 3d at p. 716.

---

[1] Each of the reports Defendants disclosed in the *Trombley* matter have been attached as Exhibits to the Declaration of Genevieve M. Zimmerman, filed in support of this Memorandum. Citations and general causation opinions Plaintiffs submit are untimely and should be stricken have been highlighted in yellow.

*Specific causation* is defined as "whether exposure to an agent was responsible for a given individual's disease." Ref. Manual at p. 627 (emphasis added). "This terminology and the distinction between general causation and specific causation are widely recognized in court opinions." REF. MAN. 3d at 552 (citing, *e.g., Norris v. Baxter Healthcare Corp*., 397 F.3d 878 (10th Cir. 2005); *In re Hanford Nuclear Reservation Litig.,* 292 F.3d 1124, 1129 (9th Cir. 2002) ("'Generic causation' has typically been understood to mean the capacity of a toxic agent . . . to cause the illnesses complained of by plaintiffs. If such capacity is established, 'individual causation' answers whether that toxic agent actually caused a particular plaintiff's illness."); *In re Rezulin Prods. Liab. Litig*., 369 F. Supp. 2d 398, 402 (S.D.N.Y. 2005); *Soldo v. Sandoz Pharms. Corp*., 244 F. Supp. 2d 434, 524–25 (W.D. Pa. 2003); *Burton v. R.J. Reynolds Tobacco Co*., 181 F. Supp. 2d 1256, 1266–67 (D. Kan. 2002)).

In a typical MDL, orders discussing issues of "general causation" focus on whether plaintiffs have sufficient admissible evidence that the product at issue is capable of causing the injury or harm complained about. If plaintiffs fail in establishing evidence as to the threshold question as to whether the product is, as a general proposition, capable of causing the alleged harm, then the case concludes before anyone goes through the time and expense of addressing specific causation – did the product cause a particular individual's damages. In their motion to strike Plaintiffs' experts in Axline, Defendants attempted to recast the terminology that the REFERENCE MANUAL ON SCIENTIFIC

4

EVIDENCE noted to be "widely recognized"[2] in the courts as a bifurcation in this MDL that is not typically found in the custom and practice of MDL litigation as a general matter. See Doc. 1436 at 2 ("'General causation' discovery is a bit of a misnomer, in that the parties and the Court have always understood it to mean discovery on general issues (not just causation) that are common to all or nearly all cases in the MDL.") Put differently, Defendants here attempt to recast the general versus specific causation definitions as they are generally understood to operate in this MDL as not just establishing a threshold minimum showing of admissible evidence in support of Plaintiffs' claims allowing the litigation to proceed, but also as an artificial governor limiting the universe of opinions and potentially other evidence that can be offered in support of these claims. Defendants are incorrect in arguing the parties in this MDL agreed to different definitions of the terms general and specific causation; Plaintiffs neither understood nor consented to a new definition of these terms that would operate as a governor to the evidence offered in support of their claims in this MDL.

### B. Defendants Have Disclosed Impermissible General Causation Reports in *Trombley*

Plaintiff Trombley disclosed two case specific reports: an infectious disease expert, and a nephrologist. Defendants disclosed reports from an epidemiologist, an engineer on CFD, an HVAC engineer, an anesthesiologist, an orthopedic surgeon, and a nephrologist. To the extent the Court's scheduling orders contemplate initial expert

---

[2] "This terminology and the distinction between general causation and specific causation are widely recognized in court opinions." REF. MAN. 3d at 552 (citations omitted).

5

reports from the party bearing the burden of proof, followed by rebuttal reports, any reports from an anesthesiologist, engineer on CFD, HVAC engineer, and orthopedic surgeon are hard pressed to be viewed as true and appropriate "rebuttal" reports on issues specific to Trombley, as Trombley herself did not offer case specific reports from experts in those disciplines. Moreover, the majority of the expert reports produced by Defendants incorporate opinions and/or information that were available at the time the general causation rebuttal reports were served. As Defendants argued to this Court, see Doc. 1436 at 11, a "supplemental expert report that state additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original report exceeds the bounds of permissible supplementation and it subject to exclusion under Rule 37(c)." (citing *Cook v. Rockwell Corp.*, 580 F. Supp. 2d 1071, 1169 [sic] (D. Colo. 2006)). Indeed, "[t]o rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Id.* Defendants went on to spend an entire page of their brief citing cases in support of their motion to strike what they argued was impermissible supplementation of Plaintiffs' expert opinions on general causation issues. See Doc. 1436, 11-14. Accordingly, pursuant to this Court's previous orders adopting Defendants' arguments, Plaintiffs respectfully request that any opinions and/or support for opinions that was available at the time the original rebuttal reports were disclosed be barred as untimely and impermissible general causation. Defendants cannot demonstrate these late disclosures are harmless, nor is the late attempt to bolster their general causation opinions

6

substantially justified. Accordingly, Plaintiffs respectfully request an order barring the opinions from use in any motion, hearing, or trial.

### 1. Dr. Abraham

Dr. Abraham was designated by Defendants as an expert engineer with expertise in computational fluid dynamics ("CFD"). He wrote a report on CFD issues prior to knowing who Dr. Elghobashi is, much less seeing or truly responding in the hopes of rebutting Dr. Elghobashi's LES CFD studies on the Bair Hugger Model 750 or Model 505. No case specific CFD expert was disclosed in *Trombley*, so no rebuttal CFD should be permitted. Further, Dr. Abraham explicitly acknowledges in his *Trombley* report[3] that he is, indeed, attempting to supplement his rebuttals to Dr. Elghobashi's LES CFDs. Plaintiffs think Dr. Abraham should be limited to the opinions he disclosed in the reports offered to rebut Dr. Elghobashi's LES CFDs on the Model 750 and Model 505, and that the report Dr. Abraham issued on *Trombley* stricken in its entirety. Additionally, Plaintiffs have highlighted in yellow the opinions and/or references Dr. Abraham discloses in his *Trombley* report that were available at the time his general causation report was issued. Given the Court's order striking Plaintiffs' experts, the opinions and report Dr. Abraham issued in *Trombley* should be barred.

---

[3] Ex.1- Dr. J.P. Abraham's Expert Report

### 2. Dr. Borak

Dr. Borak was designated by Defendants as an expert in epidemiology during the general causation phase. He purports to rebut the opinions offered by Plaintiff's expert in infectious disease, Dr. William Jarvis, but goes well beyond rebutting simply Dr. Jarvis' *Trombley* specific opinions. Plaintiffs have highlighted in yellow the opinions and/or references Dr. Borak discloses in his *Trombley* report[4] that were available at the time his general causation report was issued. Given the Court's order striking Plaintiffs' experts, the opinions and report Dr. Borak issued in *Trombley* should be barred.

### 3. Dr. Dutton

Dr. Dutton is an anesthesiologist who was disclosed for the first time in the *Trombley* matter. His reports[5], accordingly, addresses both his opinions on matters of general causation and *Trombley* specific causation issues. Dr. Dutton's opinions with respect to general causation issues are not identical to those disclosed by the anesthesiologist Defendants disclosed in the general causation phase of this case. If Defendants are permitted to bolster or otherwise change the opinions their experts are permitted to offer on general causation matters by simply identifying a new expert, Plaintiffs respectfully submit that result is incongruous with the Court's order barring supplemental reports from Plaintiffs' experts.

---

[4] Ex. 2- Dr. Jonathan Borak's Expert Report
[5] Ex. 3- Dr. Richard P. Dutton's Expert Report

### 4. Dr. Keen

Mr. Keen was disclosed as a hospital engineer with specific expertise on HVAC systems. He provided a report on general causation issues, and has provided a report[6] specific to the operating room used in the *Trombley* matter. Given Trombley did not disclose an HVAC expert, Mr. Keen's report is not properly rebuttal and should be stricken outright.

### 5. Dr. Mont

Dr. Mont is an orthopedic surgeon, and was designated as an expert by Defendants in both the general causation phase of this MDL, and on case specific issues in *Gareis*, *Axline*, and now *Trombley*. Plaintiff did not disclose an orthopedic surgeon with case specific opinions in the *Trombley* matter. As such, Plaintiffs submit Mr. Mont's report[7] in *Trombley* is not specifically rebuttal. Additionally, Plaintiffs have highlighted in yellow the opinions and/or references Dr. Mont discloses in his *Trombley* report that were available at the time his general causation report was issued. Given the Court's order striking Plaintiffs' experts, the opinions and report Dr. Mont issued in *Trombley* should be barred.

### CONCLUSION

For the forgoing reasons, and in light of and in keeping with previous decisions of this Court, the Court should bar Defendants from using the newly disclosed opinions

---

[6] Ex. 4- Dr. Michael Keen's Expert Report
[7] Ex. 5- Dr. Michael Mont's Expert Report

produced in connection with the *Trombley* matter in any motion, hearing, or trial involving *Trombley* or other cases in this MDL.

Respectfully submitted,

Dated: February 26, 2019

| | |
|---|---|
| Michael V. Ciresi (MN #0016949<br>Jan M. Conlin (MN #0192697)<br>CIRESI CONLIN LLP<br>225 S. 6th St., Suite 4600<br>Minneapolis, MN 55402<br>Phone: 612.361.8202<br>Email: MVC@CiresiConlin.com<br>          JMC@CiresiConlin.com | Genevieve M. Zimmerman (MN #330292)<br>MESHBESHER & SPENCE, LTD.<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188<br>Email: gzimmerman@meshbesher.com |
| Ben W. Gordon, Jr. (*Pro Hac Vice*)<br>LEVIN, PAPANTONIO, THOMAS,<br>MITCHELL, RAFFERTY &<br>PROCTOR, P.A.<br>316 South Baylen Street, Suite 600<br>Pensacola, FL 32502-5996<br>Phone: (850) 435-7091<br>Fax: (850) 435-7020<br>Email: bgordon@levinlaw.com | Gabriel Assaad – *Pro Hac Vice*<br>David W. Hodges – *Pro Hac Vice*<br>KENNEDY HODGES, LLP<br>711 W. Alabama Street<br>Houston, TX 77006<br>Phone: (713) 523-0001<br>Email: gassaad@kennedyhodges.com |
| Kyle Farrar<br>Mark D. Bankston<br>FARRAR & BALL, LLP<br>1010 Lamar, Suite 1600<br>Houston, Texas 77002<br>713.221.8300 Telephone<br>713.221.8301 Fax<br>Email: kyle@fbtrial.com<br>          mark@fbtrial.com | |