UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>0:17-cv-00967 *(Hylas v. 3M Company, et al.)* | MDL DOCKET NO.<br>15-md-2666 (JNE/FLN) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S SIXTH MOTION TO DISMISS FOR FAILURE TO COMPLY WITH PRETRIAL ORDER NO. 23 AND/OR FED. R. CIV. P. 25(a) AND 41(b)**

NOW COMES Mark R. Hylas, as Administrator of the Estate of his deceased father, Mark Hylas, identified in Defendants' Sixth Motion to Dismiss for Failure to Comply with Pretrial Order No. 23 ("PTO 23") (Doc. 1740) and/or Fed. R. Civ. P. 25(a) and 41(b), and by and through undersigned counsel, submits his Response in Opposition to Defendants' Motion to Dismiss, and would respectfully show the Court the following:

**I.
FACTS**

Mark Hylas ("Mr. Hylas"), now deceased, filed this case as the personal representative of the estate of Maureen H. Hylas ("Mrs. Hylas"), also deceased, on March 30, 2017. Mr. Hylas alleged that Mrs. Hylas died as result of an infection she experienced due to the use of Defendants' Bair Hugger patient warming device. Mr. Hylas himself, however, passed away on January 15, 2018.

1

Plaintiff's counsel to contact Mr. Hylas by First Class Mail for a case update as recently as December 2018.  (*See* Decl. of Laurence G. Tien ¶ 3 (attached as Exhibit A).) Plaintiff's counsel's records do not reflect that the update letter was returned undeliverable.  (*Id.*)  Prior to that letter, Plaintiff's counsel worked with Mr. Hylas to complete the Fact Sheet in April, May, and June 2017.  (*Id.* ¶ 4.)  Defendants did not issue any deficiency notices regarding Mr. Hylas's Fact Sheet after this time.  (*Id.*) Plaintiff's counsel next spoke with Mr. Hylas in July 2017, generally informing of his case status and telling him that the firm would send out a letter or contact him by phone when necessary.  (*Id.* ¶ 5.)  Mr. Hylas had been informed that Plaintiff's case was one of several hundred or thousand pending in this MDL and, unless his case was selected for bellwether pretrial workup and/or trial, there "may not be an update for some time."  (*Id.*) Further, as with all the firm's clients, Mr. Hylas was contractually required to update the firm regarding important changes in status.  (*Id.* ¶ 6.)   Of course, after he passed away, Mr. Hylas was unable to provide the firm with any further information.  (*Id.* ¶ 8.)

On February 5, 2019, nearly two months after Plaintiff's counsel's last attempt to contact Mr. Hylas, Plaintiff's counsel was first informed of Mr. Hylas's passing through an email from defense counsel, demanding that Plaintiff's counsel agree to dismiss Mr. Hylas's case.  (*Id.* ¶ 7.)  The next day, on February 6, 2019, Plaintiff's counsel was able to locate Mark R. Hylas, Mr. and Mrs. Hylas's son, who lives in New Mexico, some 2,000 miles away from his father.  (*Id.* ¶ 9.)  Mark R. Hylas, though certainly aware of his father's death, had no knowledge that Mr. Hylas had filed this lawsuit until Plaintiff's counsel informed him of that fact on February 6, 2019. (*See* Decl. of Mark R. Hylas ¶ 3

2

(attached as Exhibit B).)  Therefore, Mark R. Hylas had no reason or means to inform Plaintiff's counsel earlier that Mr. Hylas had passed.  (*Id.*)  Mark R. Hylas intends to complete the necessary probate and/or prerequisites to pursue his parents' case.  (*Id.* ¶ 4.)  He was named the executor of his father's estate in his father's will.  (*Id.*)  He is also Mr. and Mrs. Hylas's only surviving child.  (*Id.* ¶ 2.)

## II.
## ARGUMENT & AUTHORITIES

Plaintiff's counsel was not made aware of Mr. Hylas's death until the 90-day time period under PTO 23 had expired.  For the Court to dismiss Plaintiff's claims with prejudice would be an unduly harsh result given the circumstances, and would ignore protections provided Plaintiff by the Federal Rules.

**A.    Defendants' Motion Under PTO 23 Ignores Protections Provided Plaintiff Under Federal Rule of Civil Procedure 25(a).**

Defendants' Motion ignores Federal Rule of Civil Procedure 25(a)(3) and the protections provided Plaintiff thereunder.  As a result, the 90-day period under Rule 23(a)(1) (from which PTO 23's 90-day deadline is derived)—in its strictest application and at the earliest—only began to run on February 5, 2019 when defense counsel alerted Plaintiff's counsel regarding Mr. Hylas's death.  The rule states:

> *Service.*  A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 ***and on nonparties as provided in Rule 4***.  ***As statement noting death <u>must</u> be served in the same manner.***  Service may be made in any judicial district.

Fed. R. Civ. P. 25(a)(3) (emphasis added).  Under Rules 25(a)(3) and 4, the 90-day clock to substitute parties does not begin to run until the Suggestion of Death **is served** upon

3

"nonparties with a significant financial interest in the case, namely the decedent's successors . . . or personal representatives . . . ." *Atkins v. City of Chicago*, 547 F.3d 869, 873–74 (7th Cir. 2008) (Posner, J.). "[T]he cases are unequivocal that an obviously interested nonparty . . . must be served for the 90-day clock to start running." *Id.* at 873 (citing *Barlow v. Ground*, 39 F.3d 231, 233–34 (9th Cir. 1994); *Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990) (per curiam); *Bass v. Attardi*, 868 F.2d 45, 50 n.12 (3d Cir. 1989); *Fariss v. Lynchberg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985); *Rende v. Kay*, 415 F.2d 983 (D.D.C. 1969); *Inglis v. Buena Vista Univ.*, 235 F. Supp. 2d 1009, 1029–30 (N.D. Iowa 2002); *Kasting v. Am. Fam. Mut. Ins. Co.*, 196 F.R.D. 595, 599–601 (D. Kan. 2000)); *see Sampson v. ASC Indus.*, 780 F.3d 679, 682 (5th Cir. 2015) ("We hold, consistent with the other appellate courts that have spoken on this issue, that a Rule 25 notice of death must be personally served on a deceased-plaintiff's estate, in accordance with Rule 4, before the ninety-day clock can begin to run on the deceased-plaintiff's action.").

In *George v. United States*, 208 F.R.D. 29, 32 (D. Conn. 2001), one district court carved out an exception for situations where defendants do not know the identity of decedent's personal representative. But, "[t]he other side can protect itself by telling the moving party who the successor or representative is [so that Rule 25(a)(3) and Rule 4 service of the Suggestion of Death may be accomplished], and if necessary, filing a motion for extension of time to substitute that person for the decedent." *Atkins*, 547 F.3d at 873. "**The rule is of greatest importance in cases such as *Fariss* in which it is the opposing party that has filed the suggestion of death . . . .**" *Atkins*, 547 F.3d at 874

4

(discussing *Fariss*, 769 F.2d at 961 ("We hold that service on decedent's counsel alone was inadequate to commence running of the 90-day substitution allowed by Fed. R. Civ. P. 25(a)(1).")) (emphasis added).

Here, Defendants never attempted to serve Mr. Hylas's personal representative, Mark R. Hylas, the executor of Mr. Hylas's estate. Although defense counsel first notified Plaintiff's *counsel* of the Suggestion of Death on February 5, 2019, that is the earliest date from which the 90-day period to substitute a party might possibly have commenced, according to the legion of cases cited above. Thus, at the earliest, Plaintiff should have until May 6, 2019 to substitute Mr. Hylas's son, Mark R. Hylas, as his personal representative to pursue Plaintiff's claims.[1]

---

[1] Aside from PTO 23's and Defendants' Motion's apparent conflict with the cited federal rules and procedures, the impracticalities of the current system—whereupon plaintiffs' counsel must communicate with their clients on a monthly (if not weekly or daily) basis to determine whether they have unexpectedly died in order to comply with PTO 23—is unfairly punitive to plaintiffs. Even if a plaintiff's lawyer diligently communicates in-person or by telephone once a month with all his or her Bair Hugger clients, it is certainly possible (if not likely) that the 90-day period provided under PTO 23 might be overshot. If calls, then repeated calls, go unanswered, for example, it may take additional days or weeks to track down what happened to a particular client—e.g., did s/he die, or merely change addresses? Once the demise of a client is determined, it may take substantial additional time to identify a personal representative, or have one appointed. Granted, all that inherent delay may presumably be cured by seeking an extension of time to accomplish the substitution in a timely manner. Still, it is easy to see how the 90-day deadline may be blown even when clients are semi-constantly contacted by counsel. And, regardless of the frequency of contact, none of the foregoing alleviates **Defendants' responsibility** to serve the Suggestion of Death upon the decedent's personal representative or, if not known and at a minimum, upon decedent's counsel—the **only means to trigger the 90-day substitution period** under Federal Rule 25(a)(1), as discussed above.

**B.     Dismissal with Prejudice Is a Drastic Measure Under the Circumstances.**

A dismissal with prejudice "is a drastic sanction that should be exercised sparingly." *Pardee v. Stock*, 712 F.2d 1290, 1292 (8th Cir. 1983). Plaintiff's noncompliance with PTO 23 was not willful or in bad faith, and a dismissal with prejudice would be extreme. A dismissal with prejudice "should be used only in cases of ***willful*** disobedience of a court order or where a litigant exhibits a pattern of ***intentional*** delay." *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000); *see Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1260; *see also Mann v. Lewis*, 108 F.3d 145, 147 (8th Cir. 1984). In *Givens v. A.H. Robins Co.*, 751 F.2d 264 (8th Cir. 1984), the Eighth Circuit reversed a dismissal with prejudice where the litigant's only transgression was failure to comply with a discovery deadline. *Givens*, 751 F.2d at 264. The court reasoned that dismissal with prejudice was disproportionate to such an act of mere noncompliance. *Id*.

Here, Plaintiff's only transgression is that a Suggestion of Death was not filed within the 90-day time period under PTO 23, as counsel for Plaintiff was not aware that Mr. Hylas had passed away, and as Mark R. Hylas did not even know his father had filed this claim. Mr. Hylas's actions do not constitute ***willful*** disobedience or ***intentional*** delay.

Defendants also cannot articulate how Plaintiff's counsel should have reasonably discovered Mr. Hylas's death. Counsel attempted to correspond with Mr. Hylas after he passed, but even then did not, as a result, learn he had died. (*See* Decl. of Laurence G. Tien ¶ 3 (Ex. A).) Counsel further promised to update Mr. Hylas as necessary regarding

6

developments in his case, yet for an extended period of time there were no developments regarding Mr. Hylas's particular action necessitating more frequent contact. Total extinction of Plaintiffs' cause of action would be disproportionate to this unintentional act of noncompliance with PTO 23.

**C.   Policy Disfavors Dismissal with Prejudice, Particularly Where Defendants Can Demonstrate No Prejudice to Them in the Litigation.**

"[A]n action should be dismissed with prejudice only after balancing the policy of giving the plaintiff [his or her] day in court against [the] policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures." *Omaha Indian Tribe v. Tract I-Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir. 1991) (internal quotations omitted); *see Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1193 (8th Cir. 1976); *see also Navarro v. Chief of Police, Des Moines, Iowa*, 523 F.2d 214, 217 (8th Cir. 1975).

Plaintiff has not caused an undue delay and there is absolutely no prejudice to Defendants, because unlike standard litigation, this case was filed in the MDL. Since this case is not a bellwether selection, there are no discovery deadlines that would have been delayed by an untimely filing of the Suggestion of Death. The possible remand of this case will not occur for months, possibly even longer, as several bellwether cases are still pending. Under these circumstances, it cannot be said that Plaintiff willfully refused to comply with this Court's order. A dismissal with prejudice would be a harsh consequence, and forever deny Plaintiff's day in court.

7

## III.
## CONCLUSION

For the foregoing reasons, undersigned counsel respectfully requests that the Court deny Defendant's Motion to Dismiss for Failure to Comply with Pretrial Order No. 23 and/or Fed. R. Civ. P. 25(a) and 41(b).  Furthermore, undersigned counsel respectfully requests the Court to grant Plaintiff's son, Mark R. Hylas, until May 6, 2019 to file his motion to substitute party.

Dated: February 28, 2019            Respectfully Submitted,

**BAILEY COWAN HECKAMAN PLLC**

*/s/ Robert W. Cowan*
K. Camp Bailey
Robert W. Cowan
Laurence Tien
5555 San Felipe St., Suite 900
Houston, Texas 77056
Telephone: (713) 425-7100
Facsimile: (713) 425-7101
cbailey@bchlaw.com
rcowan@bchlaw.com
ltien@bchlaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, K. Camp Bailey, hereby certify that on February 28, 2019, I electronically filed the foregoing Document using the CM/ECF system which will serve notifications of such filing to the email of all counsel of record in this action.

Dated: February 28, 2019

*/s/ K. Camp Bailey*
K. Camp Bailey