# EXHIBIT 3

```
1                    UNITED STATES DISTRICT COURT

2                       DISTRICT OF MINNESOTA

3     ------------------------------------------------------------
                                      )
4                                     )
       In Re: Bair Hugger Forced Air  )  File No. 15-MD-2666
5      Warming Devices Products        )  (JNE/FLN)
       Liability Litigation            )
6                                      )  September 8, 2016
                                       )  Minneapolis, Minnesota
7                                      )  Courtroom 12W
                                       )  2:37  p.m.
8                                      )
                                       )
9     ------------------------------------------------------------

10              BEFORE THE HONORABLE JOAN N. ERICKSEN
                  UNITED STATES DISTRICT COURT JUDGE
11
                And THE HONORABLE FRANKLIN D. NOEL
12                 UNITED STATES MAGISTRATE JUDGE

13
                          (STATUS CONFERENCE)
14
      APPEARANCES
15
      FOR THE PLAINTIFFS:        LEVIN PAPANTONIO
16                               Ben W. Gordon, Jr.
                                 316 S. Baylen Street
17                               Suite 600
                                 Pensacola, FL 32502
18
                                 MESHBESHER & SPENCE
19                               Genevieve M. Zimmerman
                                 1616 Park Avenue
20                               Minneapolis, MN  55404

21                               CIRESI CONLIN
                                 Michael Ciresi
22                               Michael Sacchet
                                 225 South 6th Street
23                               Suite 4600
                                 Minneapolis, MN
24
                    (Appearances continued next page)
25
```

```
 1      FOR THE PLAINTIFFS (cont'd):
                                    KIRTLAND AND PACKARD LLP
 2                                  Behram V. Parekh
                                    2041 Rosecreans Avenue
 3                                  Third Floor, Suite 300
                                    El Segundo, CA  90245
 4
                                    KENNEDY HODGES, LLP
 5                                  David W. Hodges
                                    711 W. Alabama Street
 6                                  Houston, TX 77006

 7                                  PRITZKER OLSEN, P.A.
                                    David Szerlag
 8                                  45 South 7th Street, #2950
                                    Minneapolis, MN  55402-1652
 9
                                    FARRAR & BALL, LLP
10                                  Kyle Farrar
                                    1010 Lamar, Suite 1600
11                                  Houston, TX  77002

12      FOR THE PLAINTIFFS (APPEARING BY PHONE:)

13                                  KENNEDY HODGES, LLP
                                    Gabriel Assaad
14                                  4409 Montrose Blvd
                                    Suite 200
15                                  Houston, TX 77006

16                                  PETERSON & ASSOCIATES, P.C.
                                    Brian Emerson Tadtman
17                                  801 W. 47th Street, Suite 107
                                    Kansas City, MO  64112
18
                                    ANDREWS & THORNTON
19                                  Anne Andrews
                                    John Thornton
20                                  Marco Galindez
                                    Lila Razmara
21                                  Todd Rudometkin
                                    2 Corporate Park, Suite 110
22                                  Irvine, CA 92606

23                                  BERNSTEIN LIEBHARD LLP
                                    Dae Lee
24                                  Jessica Keller
                                    10 East 40th Street
25                                  New York, NY  10016
```

```
 1                              ENGLISH LUCAS PRIEST & OWSLEY
                                Bridget Stratton
 2                              1101 College Street
                                PO Box 770
 3                              Bowling Green, KY 42102

 4                              GOZA & HONNOLD, LLC
                                Matt Lowrey
 5                              11181 Overbrook Road, Suite 200
                                Leawood, KS 66211
 6
                                GROSSMAN & MOORE, PLLC
 7                              Emily A. DeVuono
                                Jennifer Moore
 8                              401 W. Main Street
                                Suite 1810
 9                              Louisville, KY  40202

10                              HARE WYNN NEWELL & NEWTON
                                Lynne Reed
11                              Peggy Little
                                Massey Building
12                              2025 Third Avenue North
                                Suite 800
13                              Birmingham, AL  35203

14                              MCEWEN LAW FIRM, LTD
                                Melissa Schmid
15                              5850 Blackshire Path
                                Inver Grove Heights, MN  55076
16
                                MORGAN & MORGAN, PA
17                              Michael S. Goetz
                                Joseph T. Waechter
18                              Heather Cullen
                                201 N. Franklin St 7th Floor
19                              Tampa, FL  33602

20                              RAIZNER SLANIA, LLP
                                Jeffrey L. Raizner
21                              2402 Dunlavy Street
                                Houston, TX  77006
22
                                RICHARDSON PATRICK WESTBROOK &
23                              BRICKMAN LLC
                                Dan Haltiwanger
24                              1730 Jackson Street
                                PO Box 1368
25                              Barnwell, SC  29812
```

```
1                    FOR THE PLAINTIFFS APPEARING BY PHONE:

2                               BRIAN LONCAR, PC
                                Brian Loncar
3                               424 S. Cesar Chavez Blvd
                                Dallas, TX  75201
4
                                CAPRETZ & ASSOCIATES
5                               Don K. Ledgard
                                5000 Birch St, Suite 2500
6                               Newport Beach, ca  92660

7                               THE LANIER LAW FIRM, PLLC
                                Jason Scott Goldenstein
8                               126 East 56th Street, 6th floor
                                New York, NY  10022
9
                                JULIE M. JOCHUM
10                              220 Gause Blvd
                                Slidell, LA  70005
11
                                PAPPAS & HEALY LLC
12                              John J. Pappas
                                221 N. LaSalle St, #3410
13                              Chicago, IL  60601

14                              NEAL RISLEY ELLIOTT, JR.
                                P.O. Box 80136
15                              Baton Rouge, LA  70898

16                              HOUSSIERE DURANT & HOUSSIERE
                                Randal A. Kauffman
17                              1990 Post Oak Blvd Suite 800
                                Houston, TX  77056
18
                                DAVIS & CRUMP, PC
19                              Robert D. Cain, Jr.
                                2601 Fourteenth Street
20                              Gulfpost, MS 39507

21                              LEWIS & CAPLAN
                                Sarah Delahoussaye Call
22                              3631 Canal Street
                                New Orleans, LA  70119
23
                                SKIKOS CRAWFORD SKIKOS&
24                                  JOSEPH, LLP
                                Melissa Erin Mielke
25                              One Sansome Street, Suite 2830
                                San Francisco, CA  94104
```

```
1     FOR THE PLAINTIFFS APPEARING BY PHONE:

2
                              THE OLINDE FIRM, LLC
3                             Wesley G. Barr
                              Alfred Olinde, Jr.
4                             400 Poydras Street
                              Suite 1980
5                             New Orleans, LA  70130

6                             THE RUTH TEAM
                              Austin Grinder
7                             842 Ramond Avenue
                              Suite 200
8                             Saint Paul, MN  33733-5157

9                             THE WHITEHEAD LAW FIRM
                              Anna Katherine Higgins
10                            3639 Ambassador Caffery
                              Suite 303
11                            Lafayette, LA  70503

12                            ZIMMERMAN REED, PLLP
                              Jacqueline A. Olson
13                            Charles Zimmerman
                              J. Gordon Rudd, Jr.
14                            1100 IDS Center
                              80 South Eighth Street
15                            Minneapolis, MN  55402

16                            RILEY JACKSON, PC
                              Jeremiah M. Mosley
17                            Mary Malea Sellers
                              3530 Independence Drive
18                            Birmingham, AL 35209

19                            TATE LAW GROUP, LLC
                              Mark Tate
20                            2 East Bryan Street, Suite 600
                              Savannah, GA  31328
21
                              LAW OFFICES OF TRAVIS R. WALKER
22                            Travis R. Walker
                              1235 SE Indian Street
23                            Suite 101
                              Stuart, FL  34997
24

25
```

```
 1      FOR THE PLAINTIFFS          APPEARING BY PHONE:

 2                                  LAW OFFICES OF JAMES S. ROGERS
                                    James Rogers
 3                                  Annaliese Abbey
                                    Elizabeth J. McLafferty
 4                                  1500 4th Avenue #500
                                    Seattle, WA  98101
 5
                                    LAW OFFICES OF BRIAN TIMOTHY
 6                                  MEYERS
                                    Laura Young
 7                                  1125 Grand Boulevard, Suite 1610
                                    Kansas City, MO  64106
 8
                                    MURRAY LAW FIRM
 9                                  Caroline Whitney Thomas
                                    650 Poydras Street
10                                  Suite 2150
                                    New Orleans, LA  70130
11
                                    BROWN & CROUPPEN, PC
12                                  Abby Cordray
                                    211 North Broadway, Suite 1600
13                                  St. Louis, MO  63102

14                                  HAUSFELD LLP
                                    Richard S. Lewis
15                                  1700 K St. NW, Suite 650
                                    Washington, DC 20006
16
                                    HURLEY MCKENNA & MERTZ
17                                  Brian Holmes
                                    Michael Mertz
18                                  Molly Condon
                                    33 North Dearborn Street
19                                  Suite 1430
                                    Chicago, IL  60602
20
                                    JOHNSON BECKER, PLLC
21                                  Rolf T. Fiebiger
                                    33 South 6th Street
22                                  Suite 4530
                                    Minneapolis, MN  55402
23
                                    RILEY & JACKSON, PC
24                                  Jeremiah Mosley
                                    Keith Jackson
25                                  3530 Independence Drive
                                    Birmingham, AL  35209
```

```
 1      FOR THE PLAINTIFFS        APPEARING BY PHONE:

 2                                PAGLIALUNGA & HARRIS, PS
                                  Charles Paglialunga
 3                                1001 4th Avenue, Suite 3200
                                  Seattle, WA  98154
 4
                                  KERSHAW COOK & TALLEY, PC
 5                                Stuart C. Talley
                                  William A. Kershaw
 6                                401 Watt Avenue, Suite 1
                                  Sacramento, CA  95864
 7
                                  FITZGERALD LAW GROUP, LLC
 8                                Kevin M. Fitzgerald
                                  120 Exchange Street, Suite 200
 9                                Portland, ME  04101

10
        FOR THE DEFENDANTS:       BLACKWELL BURKE P.A.
11                                Jerry W. Blackwell
                                  Ben Hulse
12                                431 South Seventh Street
                                  Suite 2500
13                                Minneapolis, MN  55415

14                                FAEGRE BAKER DANIELS
                                  Bridget M. Ahmann
15                                90 South Seventh Street
                                  Suite 2200
16                                Minneapolis, MN  55402

17

18
        Court Reporter:           MARIA V. WEINBECK, RMR-FCRR
19                                1005 U.S. Courthouse
                                  300 South Fourth Street
20                                Minneapolis, Minnesota 55415

21
               Proceedings recorded by mechanical stenography;
22      transcript produced by computer.

23

24           *      *      *      *      *      *      *

25
```

```
 1                    P R O C E E D I N G S
 2                        (2:37 p.m.)
 3              THE COURT:  Please be seated.  Can the phone
 4     participants hear us?
 5              MAGISTRATE JUDGE NOEL:  Can you hear us on the
 6     phone?  Hello telephone people.  Can the people on the phone
 7     hear us?
 8              THE COURT:  They're probably talking.  It's like
 9     one of those death penalty cases.  They just can't hear us.
10              MAGISTRATE JUDGE NOEL:  Can you hear me now?
11              MR. GORDON:  I heard some background noise a
12     minute ago and then maybe we lost them.
13              MAGISTRATE JUDGE NOEL:  Can you hear me now?
14              UNIDENTIFIED VOICE:  Yes.
15              THE COURT:  All right.  We have the joint proposal
16     on what we ought to talk about today.  Let's just run
17     through that, shall we?
18              The discovery dispute was a big one, and we
19     already talked about that.  So the proposed Plaintiff Fact
20     Sheet, it looks like we do not have issues remaining on that
21     that need to be decided, is that correct?
22              MR. GORDON:  That's correct, Your Honor.  We did
23     reach agreement on the substance of the fact sheet.  And I
24     believe we've reached agreement now on the process for
25     service.
```

1          MS. AHMANN:  Not completely final, but we're

2     getting there.

3          THE COURT:  Okay.  The time, the deadline was

4     August 26th or so, wasn't it?

5          MS. AHMANN:  I can attest that we have been

6     diligently meeting and conferring and going back and forth.

7     We are 99 percent there, but we need to get it finalized as

8     to not the Plaintiff Fact Sheet itself is good.  What we're

9     working on is the process primarily of deficiencies and how

10    those are going to be handled.

11         THE COURT:  Okay.

12         MS. AHMANN:  So we're working on a PTO to enter

13    that.  And we're also doing some background work on exactly

14    how this should be electronically done for secure transfers

15    and that sort of thing.

16         THE COURT:  Okay.

17         MS. AHMANN:  That we won't hold up on.  We can

18    follow up, but we do need to get sign off on deficiencies

19    which we're very, very, close to.  We just didn't have time

20    to finalize it before we came here.

21         MR. GORDON:  So, Your Honor, Ben Gordon for the

22    plaintiffs, pursuant to your agreement last week to give us

23    an extra week, we did reach agreement on the substance of

24    the PFS in all respects, so we're happy to report, but I

25    think the process is just taking a little longer, and we're

```
1     very close on that.
2              THE COURT:  Do you need our input at all?  Do you
3     need any let's just call it "help" from us?
4              MR. GORDON:  Honestly, Your Honor, I think we're
5     going to get there.  It's just in their court right now, and
6     I think we're very close.
7              MS. AHMANN:  Yes, we're very close.  I don't think
8     we need any help.  It's just a matter of quite frankly of
9     timing.
10             THE COURT:  All right.  Thank you.
11             MS. AHMANN:  Thank you.
12             MR. GORDON:  Thank you, Your Honor.
13             THE COURT:  The new schedule we have agreement on
14    some and not agreement on others.
15             MR. GORDON:  Yes, Your Honor.  Would you like us
16    to address that?
17             THE COURT:  Yes.
18             MR. GORDON:  We halfway -- Ben Gordon for the
19    plaintiffs again -- suspected we would come in here and you
20    would have an order for us already as you did the prior
21    time.
22             But I would agree with you, Your Honor, we do have
23    an agreement on the proposed for an amended pretrial
24    scheduling order.  The primary areas of disagreement from
25    the plaintiff's point of view, Your Honor, are very few.
```

1          Number one, we, as has been mentioned in the past,

2    we do think a DFS, a Defense Fact Sheet is important, an

3    important component of this, Your Honor, so we added that to

4    our list.  We're flexible somewhat on the date, of course,

5    but in every MDL I've ever worked on, we've had a Defense

6    Fact Sheet.  And however brief that needs to be, we can work

7    on that.  But it is the counterpart to the Plaintiff's Fact

8    Sheet, Your Honor, and we need that in order to prevent the

9    inefficiency of having to have, at this point, 650 and

10   eventually thousands of plaintiffs all having to propound

11   interrogatories about very specific core issues mainly

12   relating to who their clients are.  That is 3M's clients in

13   terms of the machines that are used on individual

14   plaintiffs, because when we get into case specific fact

15   discovery, and we have to make our case and prove our case

16   with respect to the exposure to a particular machine, we

17   need that information, and they have that information.  The

18   easiest way for us to get it is for them to answer a very

19   short Defense Fact Sheet, just like we're doing with the

20   PFS, Your Honor.  So we added that.

21          The next thing we disagree about the most in this

22   proposed amended scheduling order is their proposal to cut

23   off general causation at December 30th.  We've added a date

24   of a very modest extension to January 20th you may see, Your

25   Honor.  That I realize is only three weeks, but it's an

1    important three weeks.  As the Court has heard, and there

2    may be further argument on some of the discovery issues,

3    there's a lot more to be done on general causation.

4         Importantly, 3M has changed the language, I'm not

5    sure exactly why, to say "non case specific causation" for

6    that and moved it up to December 30th.  We would urge the

7    Court to keep it at least to January 20th to give us time to

8    complete the general causation discovery.

9         The next biggest point of contention I think we

10   have is that they would like --

11        THE COURT:  Mr. Gordon, can you explain the

12   significance of those three weeks?  Is it a holiday issue?

13        MR. GORDON:  It's part of that, Your Honor,

14   exactly.  So we think we already are a bit under the gun, if

15   we're being realistic, to get the general causation

16   discovery done by the beginning of the year.  When you add

17   to that the holiday season between say December 20th and

18   January 1st, I think we lose a lot of time there.  So I

19   think most folks are back at work hard by January 2nd, and

20   to try to cut the process off with a trial date of November

21   by the end of this year is just unrealistic, and we'll be

22   coming back seeking more time.

23        I, frankly, think January 20th is pushing it, but

24   we're willing to live with it.  I just want to get as much

25   time into January as we can to finish the process.

1      The next thing I think we have the most heartburn

2  about, Your Honor, in their proposal is the proposal that

3  they get to take the depositions of our experts before they

4  even disclose their experts.  I've never worked on an MDL

5  where that's been the process.  The dates aren't all that

6  different.  Their dates are January 13th.  I would point out

7  that's 14 days after their proposed cut-off for general

8  discovery for our experts' reports, which I think is again

9  pretty tight.  We're going to need a little extra time then.

10 So we've proposed March 1st to produce our expert reports,

11 which still gives us plenty of time to do the rest of the

12 discovery and prepare for trial.

13      We've proposed April 3rd for their expert reports,

14 and then June 2nd for depositions of both sets of experts to

15 be done.  That gives us a 90-day window between March 1st

16 and June 2nd to do that expert process.  Your Honor, they

17 would ask that we produce our expert reports by January

18 13th, and a scant 34 days later they depose our experts

19 before they tell us anything about their experts.  And then

20 they give us their expert reports on March 1st, and we

21 depose their experts by April 1st.

22      I think again that's probably unrealistic when you

23 look at all the schedules of the witnesses and the lawyers

24 involved to try to get all of that done between January and

25 March, so we've proposed March to June and ask that they

1    give us their expert reports before they get to depose our

2    experts.

3

4

5          For the most part, the rest of the order is fairly

6    agreeable.  Most items have been expressly agreed to until

7    you get to number paragraph 20, which is 19 I think on

8    their's and 20 on ours, on the proposal that we discussed in

9    court last time for case specific experts for bellwether

10   cases.

11         We've proposed an approach sort of an answer to

12   Judge Noel's question last time about this issue of do we

13   need to have case specific experts of making it an optional

14   process under which if we believe we need case specific

15   experts to prove our case and we haven't accomplished that

16   already, that we have the option of naming those experts

17   starting in by July 15 of 2017, and then the dates

18   correspond from there.

19         Their verbiage is a little different, and they

20   made it expressly experts for selected bellwether cases

21   beginning that process in May.  And, again, asking for their

22   witnesses' deposition -- their lawyers to be able to take

23   our experts' depositions before they even disclose their

24   case specific rebuttal experts.  Again, we would think to

25   the extent there are case specific experts, they should

1  be -- the plaintiff should disclose their's.  The defense

2  should disclose their's, and then we should take the

3  depositions of both.  Those are the primary areas I wanted

4  to comment on, Your Honor.

5          THE COURT:  All right.  Thank you, Mr. Gordon.

6          Mr. Blackwell?

7          MR. BLACKWELL:  Good afternoon, Your Honors.

8          THE COURT:  Good afternoon.

9          MR. BLACKWELL:  Everyone.  I agree with some of

10  what Mr. Gordon said.  We did agree on most of the dates,

11  but we do have some fairly significant issues of difference.

12          This issue of the Defendant Fact Sheet is one that

13  the Court has already addressed.  This was raised before.

14  It was discussed before.  It was ruled on before.  That

15  there was no need for the plaintiffs to be requiring a

16  Defendant Fact Sheet from the defendants when they can

17  simply ask what they want to ask in discovery.  And as Your

18  Honors have seen already, they certainly have no problems

19  asking for a lot in discovery.  And they can ask that, could

20  have asked that as well.

21          As to wanting to find out from the defendants

22  about the particular machine that the plaintiff was using,

23  that's part of the Plaintiff's Fact Sheet.  It's their case.

24  They're the ones who are claiming that there's a machine we

25  made that's causing the plaintiff to have a surgical site

1    infection.  There is no need to ask us that in Defendant's

2    Fact Sheet, why would 3M know what particular machine or

3    unit that the plaintiff was using at a particular hospital?

4             But the point is, and I think this particular

5    issue previously was argued in fact to Your Honor, Judge

6    Ericksen, and the response to the plaintiffs, well, you can

7    ask what you want in discovery.  There's not a need for a

8    Defendant Fact Sheet for things such as information on the

9    particular machine the plaintiff was using when that is the

10   plaintiff's burden, since there's got to mean something that

11   they start a lawsuit claiming that you made a machine that

12   causes surgical site infection in my client for the

13   plaintiffs.  And that ought to presuppose a couple of things

14   that in fact you've got some evidence as to the fact they

15   were using a particular machine, and you can identify what

16   it was.  And you have some good faith basis based upon

17   competent expert testimony for making that assertion in the

18   first place just to satisfy requirements under Rule 11.  And

19   that factors into some of our other basic areas of

20   disagreement.

21            With respect to the initial expert reports where

22   the plaintiffs would be in favor of some scenario where we

23   either are -- we're disclosing experts simultaneously.  And

24   I would submit, and I can't speak to Mr. Gordon's

25   experience.  I mean he does quite a lot as a source for what

1    the Court should do based on his experience in MDLs.

2            I've got my own, and I've been in many a case

3    where in order for the defendant to know what is the case

4    the defendant is to meet, the defendant is entitled to know

5    who is going to opine as to the plaintiff's expert, what he

6    or she is going to say in writing and both in a deposition,

7    and then you can make an informed decision about what

8    experts you want to then name as a defendant, and what

9    opinions they need to espouse.  And so all that this

10   presupposes is a process where the plaintiffs first --

11           MAGISTRATE JUDGE NOEL:  Can I ask you a question,

12   Mr. Blackwell?  Can you give me some examples where you've

13   gone through, where you actually required depositions before

14   the defendant depositions of the plaintiff's expert before

15   the defendants even required to identify an expert?

16           MR. BLACKWELL:  Yeah, I have, Judge Noel, and

17   actually in federal courts in many parts of the country

18   that's been the case where it is viewed the plaintiffs have

19   the burden of proving their claim with respect to causation.

20   And in some ways, it seems to save the Court time that

21   before the defendant discloses, there is a fulsome

22   understanding of what the plaintiff's assertion in fact is,

23   and as opposed to having to put up an expert who is sort of

24   shooting to some extent in the dark.

25           As to what is the basis for the plaintiff's claim

 1     then, we couldn't be more in the dark at this point as to

 2     what their basis is for claiming that the Bair Hugger causes

 3     surgical site infections.  We didn't get a good sense of it

 4     from science day other than looking at computational flow

 5     dynamics, those animations that the plaintiffs brought in

 6     here, and everything else we've asked them about sort of

 7     what was your basis in making this claim in the first place,

 8     what you should have had when you started the lawsuit.

 9     We've been told every time this is simply premature.

10              THE COURT:  Could you just give me a second?

11              (Off the record Court discussion.)

12              (In open court.)

13              MAGISTRATE JUDGE NOEL:  All right.  Let me just

14     ask one other question on that expert issue.  So my

15     understanding of the current pretrial order number 4 is

16     initial expert reports and disclosures are due on December

17     1st of 2016.  And that by "initial expert," I understand

18     that to be any expert witness that a party is going to call

19     to testify about an issue as to which that party has the

20     burden of proof.  So under these circumstances, nearly all

21     of the initial experts presumably would be on the

22     plaintiff's side.  Although, I suppose if there's some

23     affirmative defense you pled or something that you, the

24     defendant, has the burden of proof on some issue and wants

25     to call an initial expert, you would have to meet that.  But

1  the rebuttal experts then would be experts who are going to

2  be testifying in rebuttal to whatever initial experts have

3  been disclosed; is that your understanding?

4          MR. BLACKWELL:  That is my understanding, Your

5  Honor.  That is.  And, again, everything I said was sort of

6  premised on the idea that we would first be able to discover

7  what opinions the plaintiff's experts are affirmatives

8  espousing and to understand what they are and what the basis

9  for those opinions are and have an opportunity to explore

10  them.

11          THE COURT:  You mean to take to their --

12          MR. BLACKWELL:  Take the depositions.

13          MAGISTRATE JUDGE NOEL:  I guess my only thought on

14  that is ever since I was a lawyer and sort of followed the

15  adage about the best defense being a good defense, so that

16  defendants, even though they responding to things, they are

17  working right away from the beginning and are preparing

18  their case and, presumably, are retaining their experts and

19  sort of getting geared up.  And so I don't, I guess it

20  surprises me, which was more of my question, I've never seen

21  a case where a defendant has actually been given the

22  opportunity to depose the plaintiff's experts before they

23  even have to identify their own experts, because my sense is

24  good defense lawyers probably already have their experts on

25  retainer or at least identified for themselves so that

```
1    they're ready to go when the time comes.  So --
2         MR. BLACKWELL:  And we obviously have them, and I
3    understand, Your Honor, that I'm swimming upstream on this
4    one, based on Your Honor's own experience, I understand
5    that.  I have many cases where I have been allowed to do it,
6    and we, obviously, you've seen from science day have in mind
7    certain experts and what they may say.
8         MAGISTRATE JUDGE NOEL:  And I understand that
9    you're deposing a bunch of folks from around the world.
10        MR. BLACKWELL:  Yes.
11        MAGISTRATE JUDGE NOEL:  Who have written articles
12   that plaintiffs have been relying on, so you'll have a
13   better sense after that, I would assume, of what their case
14   is based upon.
15        MR. BLACKWELL:  Except they haven't said they
16   necessarily are relying on those motions.  Those are
17   depositions that we have noticed, Your Honor.
18        MAGISTRATE JUDGE NOEL:  Right, that you've
19   identified those folks to depose because they've written
20   articles, right, on this topic?
21        MR. BLACKWELL:  Right, but still, again, there is
22   an over-arching kind of issue and question in the case as
23   to, you know, what the good reliable science says that this
24   forced air warming device causes surgical site infections,
25   and whether there's a reliable scientific methodology for
```

1   ruling out the other causes.  And what their experts are

2   going to say in that regard and what the basis for those

3   are, we just don't know.  Completely in the dark.  But

4   you've heard the position on that.

5           THE COURT:  This is maybe, well, anyway, I'm not

6   going to preface it.  Do the rules allow you to reserve time

7   if you were desperate to take a deposition after you got the

8   -- could you reserve some hours of your deposition time?

9           MR. BLACKWELL:  Well, there isn't a rule that

10  precludes it.  It would probably be a matter that we'll have

11  to take up with Your Honors to permit it.

12          THE COURT:  Well, if it wasn't going to make it go

13  over your maximum number of hours.  I mean would it be

14  impossible for you to do it if you decided that that was

15  necessary?

16          MR. BLACKWELL:  It would not be impossible, no,

17  Your Honor.

18          MAGISTRATE JUDGE NOEL:  I'm not sure if I'm

19  understanding the Court's question correctly.  Could you, I

20  think what Judge Ericksen is asking is could you notice a

21  deposition of a plaintiff's expert before you disclose your

22  experts?  Ask a certain number hours of questions but not

23  use your full seven, and then come back and finish after

24  you've reviewed all the other reports in the case?

25          MR. BLACKWELL:  Yes, Your Honor, certainly that

1    would be agreeable to us, and I'm also certain that that

2    would be an issue that the plaintiff's would raise to the

3    Court.  Their position would be you're one and done, and

4    we'd have to have an argument around it.  I'm certain of it,

5    you know, but that would be one approach.

6         I mean it will all come out in the wash.

7    Ultimately, in any event, we'll get at it.  But the idea

8    here was that if they're going to be Daubert motions,

9    ultimately, on questions of, first, general causation, which

10   is non case specific.  It's across the board.  Do you have

11   any good science being able to prove that this device causes

12   surgical site infections?  And can you rule out through any

13   reliable methodology other known causes?  It's a general

14   question.  And we know that that is initially the biggest

15   question in the case.  It has been from the beginning, and

16   we went through science day and still is, so we wanted to

17   make sure there's fulsome discovery and an opportunity to

18   explore all of the opinions such that we have meaningful

19   Daubert motions and hearings.  So that was the idea there.

20        But our proposed Daubert date is May 1 of 2017.

21   They proposed June 15th, but we figured by this time, we've

22   given the discovery that would have taken place in the case,

23   they had the burden that the plaintiffs should have had to

24   have proper competent expert testimony before they even

25   filed the lawsuit.  That May 1st should be plenty of time

23

1    for them to have to come forward to be able to show the

2    Court what they should have had before they filed the

3    lawsuit in the first place.

4            Now, we have some disagreement over the case

5    specific bellwether expert issues.  And this was a little

6    confusing the last time.  And, Your Honors, I must confess

7    to not completely understanding what the plaintiff's

8    position is because even if they were able to surmount the

9    hurdle relating to general causation, that there is some

10   competent, sufficiently competent science to let them get

11   past the Daubert hurdle in a general sense.

12           There still is the very large question as to

13   whether or not they can prove that the Bair Hugger was the

14   cause in the specific case.  And that's a whole different

15   panoply of consideration that will be plaintiff specific,

16   and you still have the same questions as to whether any

17   expert who opines that in this specific case it was the Bair

18   Hugger has an opinion that's based upon competent and

19   reliable expert facts, opinion.  And that will have to get

20   ferreted out in each individual case because each individual

21   defendant is different, with respect to the case specific

22   opinions.

23           So what we set out here for the experts and

24   selected bellwether cases is to provide some avenue for the

25   Court to be able to preview the expert opinions, not just

1     preview them but to assess them, on a case specific basis.

2     And are these competent and reliable expert opinions that

3     the Bair Hugger was in fact the cause of a particular

4     plaintiff surgical site infection in light of all of the

5     other potential risk factors that relate to a specific

6     plaintiff.  And so we set that out.  I think we're entitled

7     to challenge those specific expert opinions because they're

8     different from general opinions.

9          MAGISTRATE JUDGE NOEL:  Just to be clear though,

10    as I understand the current pretrial order, number four,

11    that's not a line item in the current schedule; is that

12    correct?

13         MR. BLACKWELL:  That is correct, Your Honor.  It

14    is correct, and it was initially raised the last time we

15    were here because it wasn't there.  And in any event, if we

16    ultimately felt that the plaintiff's experts were giving

17    plaintiff specific opinions that weren't real grounded or

18    founded and raised questions that are separate and different

19    from general causation questions, we would be back before

20    Your Honors in any event in that regard to raise those

21    issues just with respect to Your Honors gatekeeping function

22    if the experts' opinions need to be challenged.

23         And so the rest of this you'll see here we set up

24    a hearing data, a proposed one of September 12 of 2017, for

25    Daubert motions on any case specific experts with respect to

1     the bellwether at the very end.  So we proposed a date for

2     those case specific expert assessments.

3              So that's how we're seeing the schedule.  And I

4     think a fundamental divide is that we are working, I think,

5     pretty feverishly to get the question, the general causation

6     question up to the decision line as soon as possible.  And

7     our view is that largely they should have had most of this

8     assembled before they made the claim in the first place, and

9     so that to need, um, kind of well into 2017, or answer all

10    of our discovery requests about the basis for their

11    assertions is simply premature when they started a lawsuit

12    and made the assertions a problem.  And so that's the

13    fundamental thing.  And then fundamentally making sure that

14    we've got -- we attempted to have something built into the

15    schedule where we get to also challenge case specific expert

16    opinions to the extent they're different from the general

17    causation opinions.  Thank you, Your Honor.

18              THE COURT:  Thank you.

19              MR. GORDON:  Your Honors, may I respond briefly?

20              THE COURT:  Go ahead.

21              MR. GORDON:  Thank you.  I'll try to be very

22    succinct.  Ben Gordon again for the plaintiffs.

23              So four main areas I would like to respond to, if

24    I could.  First, as to the timing issue, I did want to add

25    to Your Honors inquiry earlier concerning the holiday issue,

1    which I think is one of the issues that it has taken us a

2    full seven months up to this point to get the level of

3    production, and I've realized we've had some squabbles along

4    the way, but we're seven months into it to get where we are

5    at this point, and I just think that trying to get finished

6    by the end of the year is going to be a tall order, and I

7    want to make sure we have as much time as we can to complete

8    that part of the case.  I think getting into January

9    hopefully will allow us to do that.

10          Number two, on this DFS issue, I probably didn't,

11   I wasn't as clear as I could have been before.  I'm not

12   talking about just meeting our burden of proof to show the

13   Court that a particular plaintiff has been impacted by a

14   particular machine.  We have to meet that burden, and we are

15   doing that through the medical records to the extent that's

16   possible.  Most of the time it is.

17          But in terms of the relationships that the

18   defendant has with the suppliers of these machines, many

19   times the hospitals don't even own the machines, but they

20   know who do.  3M will lease the machines to them or give the

21   machines to them, and we don't have that information from

22   the third parties.  Now, yes, we can do third party

23   discovery, and we're doing it.  We think it would be like it

24   is in most MDLs much more efficient to have 3M who has that

25   information, it's not burdensome, supply that information to

1    us in the form of a very brief and easy to complete Defense

2    Fact Sheet.

3              And I will tell you for what it's worth, Your

4    Honors, that Judge Davis has done that in an MDL here in

5    this district.  Judge Frank has done it in Guidant and

6    Stryker.  Judge Rosenbaum did it in Medtronic.  Judge

7    Tunheim has done it in Levaquin and recently in the

8    Fluoroquinolone case.  In each case, these judges have

9    ordered the defendants to produce a Defense Fact Sheet.

10             How burdensome it has to be and what's in it, we

11   can talk about it.  We can work that out, but it doesn't

12   have to be an act of Congress to get that done.  It can be a

13   very short one or two page form.

14             MAGISTRATE JUDGE NOEL:  Mr. Blackwell correct that

15   the Defendant's Fact Sheet was not a line item in the

16   original pretrial order number 4?

17             MR. GORDON:  Yes, Your Honor, Judge Ericksen shot

18   us down on that.  He's correct on that.

19             THE COURT:  So you still have the ability to ask

20   for that in discovery as we discussed a while ago.

21             MR. GORDON:  Yes, Your Honor.  We can ask, but it

22   will be serial discovery for each plaintiff case

23   specifically in their case unless you're suggesting, Your

24   Honor, that we can ask you for a Defense Fact Sheet,

25   separate and apart from the -- I understand you said we can

1    propound individual interrogatories or a request to produce

2    in each and every plaintiff's case as we're doing.  And to

3    the extent that the MDL, the purpose is for the MDL to be

4    efficient and streamlined, we're trying to use the DFS for

5    that reason, just like we're doing the PFS, Your Honor.

6    Same rationale as the Plaintiff's Fact Sheet to try to

7    minimize the burden on all the parties and the Court.

8              Number three, with respect to the issue of the

9    timing of the depositions, I don't want to beat a dead horse

10   on that, Your Honors, but they're going to have our expert

11   reports.  So for Mr. Blackwell to stand up here and say

12   they're not going to say what their experts are going to say

13   I just don't think is fair.  They're going to have very

14   thorough going Rule 26 reports.  They're going to know what

15   those witnesses will say.  They were here at science day.

16   They have the experts.

17             Mr. Blackwell stood up here at science day and

18   made a big deal of the fact that he believes our entire case

19   is predicated on all of these studies for whom the authors

20   are being deposed very soon.  So they know what our experts

21   are going to say, and they will certainly know by the time

22   we give the Rule 26 reports.

23             Finally, Your Honors, on this issue relating to

24   timing of the fact specific discovery, I think Mr. Blackwell

25   is conflating a couple of issues, and it's not something we

29

1    briefed for the Court yet, but I think we're going to have

2    to, he's right, at the Daubert stage.

3              But the idea that we have to as plaintiffs prove

4    that in each and every case the Bair Hugger was the sole

5    cause or to the exclusion of each and every individual cause

6    I think he said is ludicrous.  That's not the law, Your

7    Honors.  It's not the law in this district.  I don't think

8    it's the laws in any district that I'm aware of.

9              The law says that we have to prove that the Bair

10   Hugger was a substantial contributing factor in the

11   development of their disease.  And it's my belief at this

12   time that with our general experts and the evidence that

13   we're going to proffer to the Court before we get to this

14   final bellwether stage after the bellwethers are selected,

15   we're going to have that proof, and we're going to have to

16   produce that proffer before the Court.  And we will win

17   those Daubert motions based on the general causation experts

18   that we have.

19             That said, to have the ability to come in in each

20   case and produce additional experts, we embraced it because

21   Mr. Blackwell actually put it in his brief last time.  The

22   reason it wasn't before the Court until then is because Your

23   Honors didn't put it in the original pretrial scheduling

24   order, and we think that's appropriate under the law.  We

25   think we can prove our case without it, but if we're going

1      to have the opportunity, and the defense wants the

2      opportunity at our election to produce initial experts to

3      say we have case specific additional experts to prove that

4      each and every case was specifically related to the machine,

5      then we'll do that.  But we don't think it's our burden to

6      do that.  We don't think we have to do it under the law in

7      this jurisdiction.

8                As to timing, the final thing I'll say is the

9      reason we put June in for the timing in terms of the Daubert

10     reports and all is because if the Court accepts our sort of

11     expert discovery window which runs from roughly March to

12     June, that will put the expert issue, the Daubert issue

13     right in the middle of that window, and we believe the Court

14     would rather have that discovery complete and the parties in

15     order to have the Daubert motions heard then after that, so

16     we put June 15th.  Thank you.

17               MAGISTRATE JUDGE NOEL:  Thank you.

18               MR. BLACKWELL:  Could I have a minute to respond,

19     Your Honor?

20               THE COURT:  Just a second.  June 15th was the

21     original date.  That's in the --

22               MR. GORDON:  I don't have the original order, Your

23     Honor.  It may be.  We did submit a red line.  You're right,

24     Your Honor.  We left that unchanged.

25               THE COURT:  Mr. Blackwell.

1          MR. BLACKWELL:  Your Honor, just briefly, in the

2    event I need to respond to this DFS issue further or at all,

3    I still don't quite get it.  I mean to the extent they're

4    saying that they need discovery from 3M as to which

5    hospitals where the Bair Hugger unit may have been sold, the

6    plaintiff's lawsuit started claiming that the plaintiff used

7    a 3M Bair Hugger in a specific hospital or facility.  That's

8    already in their Plaintiff's Fact Sheets.

9          So I don't know what exactly they're looking for

10   from us that they don't presumably already have in that

11   regard.  It's how they're claims begin claiming that there

12   was a Bair Hugger used in a specific hospital and it caused

13   injury.  And so it's still not clear to me what it is they

14   would be looking for in a DFS.

15          And we will be back before the Court with respect

16   to the discovery.  And I think we have something to submit

17   to the Court tomorrow on our outstanding discovery issues

18   and the chart, and I'll just defer that to bring up those

19   issues then and there, but we certainly don't want to have

20   to wait until we get the plaintiff's expert reports to

21   understand completely what the basis is for the claims that

22   they have made, meaning that we get no other discovery

23   before then about what it's about.  And science day wasn't

24   that.  They didn't discuss really one scientific study on

25   science day.

1          So, and, Your Honor, I'll defer then discussions

2     also about what causation is and how it will be defined to

3     an appropriate point in the case, but substantial

4     contributing factor should raise eyebrows already.  I mean

5     this isn't akin to a dose dependent disease.  I mean so

6     either the Bair Hugger introduced bacteria that caused the

7     infection or it did not.  And it can't have done it just a

8     little bit, and so either it did or it didn't.

9          So we're going to have a real argument over that

10    in terms of what causation means, but I'll defer that to the

11    appropriate time.

12          THE COURT:  All right.  Well, we will issue an

13    order resolving these various positions with respect to the

14    pretrial order.  And let's see what else we have to decide.

15          Amended master complaint and answer.

16          Okay.  The next status conference is October 13th,

17    right?  And I have that as being at 9:30 in the morning?

18          MR. GORDON:  Thanks, Your Honor.  I think we

19    requested that, and we appreciate that, Your Honor.

20          THE COURT:  Now, going forward from November on,

21    will you similarly not like 2:00?  You will similarly not

22    like 2:00.  What's the best --

23          MR. GORDON:  Yes, Your Honor.  I think we had

24    mentioned last time we were hopeful for a lot of the parties

25    who or the lawyers who fly in and fly out that if we can

1    continue to do them in the morning after October, it doesn't

2    have to be as early as 9:30, but the morning is better if

3    possible.

4              MR. BLACKWELL:  And we are simply models of

5    cooperation and flexibility.

6              THE COURT:  All right.  We'll take a look at our

7    schedule.  I don't think that's going to be a problem.

8              MR. GORDON:  Thank you, Your Honor.

9              THE COURT:  Anything else?

10             (Off the record Court discussion.)

11             (In open court.)

12             MAGISTRATE JUDGE NOEL:  Okay.  So with regard to

13   the argument we had earlier regarding the status of the

14   custodians, Mr. Hulse, we're going to ask you to submit to

15   us and give to the plaintiff the list of the 25 custodians

16   you interviewed that you describe in your memo and identify

17   them by name, title, and brief job description.  And if you

18   could get us that say by close of business tomorrow, I can

19   enter an order by Monday as to what we're going do on that

20   issue.

21             MR. HULSE:  Thank you, Your Honor.  I would have

22   had it sooner, but it's something I just need to pull

23   together in a form the Court can use.

24             MAGISTRATE JUDGE NOEL:  Okay.  That's all I have.

25             THE COURT:  That's it.  All right.  We're in

1     recess.

2          MS. ZIMMERMAN:  Your Honor, if we could, we have,

3     I think, one last issue on this.

4          THE COURT:  All right.  Please be seated.  Court

5     is in recess.  In out of recess.  We're reconvened.

6          MS. ZIMMERMAN:  Thank you, Your Honor.  With

7     respect to, I think, it's the last item on the agenda.  As I

8     think the Court is aware, we have some depositions starting

9     in the UK next week.  I think that we're working together

10    with respect to some confidentiality issues and the use of

11    potential documents with some of these witnesses, but it's

12    possible we may need the Court's involvement even in advance

13    of that, and I think the first deposition is the 15th.

14    We're working on it this morning yet.

15          In addition, we had said or we had at the last

16    status conference requested potential insight from the Court

17    on how we might bring potential disputes.  Right now the

18    depositions in the UK are set to go forward on the 15th.

19    There are two back-to-back depositions on the 17th in London

20    and then one on the 22nd, and I don't know what the Court's

21    instruction or preference might be about how to approach the

22    Court for any issues.

23          MAGISTRATE JUDGE NOEL:  Issues that arise during

24    the course of the deposition itself?

25          MS. ZIMMERMAN:  Yes, Your Honor.

1          THE COURT:  What do you propose?

2          MS. ZIMMERMAN:  Well, that's a good question.  The

3    time zone makes it a little bit difficult.  I know that

4    there is at least one deposition.  I think two that are

5    happening in the afternoon in the UK, so perhaps the time

6    zones may not be as significant of an issue.  And hopefully

7    this doesn't become an issue, but in the event that we need

8    to seek court intervention on something, we'd like to --

9          THE COURT:  What are the dates again of your

10   depositions?

11         MS. ZIMMERMAN:  September 15th.  There are two

12   depositions then on Saturday the 17th, and then another

13   deposition on the 22nd.

14         THE COURT:  And the time zone issue is six hours

15   between here and the UK?

16         MS. ZIMMERMAN:  I believe that's correct, Your

17   Honor.  Perhaps we could submit a list of the depositions,

18   the dates, and the times, and inquire by e-mail how the

19   Court would like to have it handled.

20         THE COURT:  It would be seven hours by then after

21   daylight savings time.  I'm not available those times.  I'll

22   be in Europe.  It's not a --

23         MAGISTRATE JUDGE NOEL:  You can stop in.

24         MS. ZIMMERMAN:  You can come watch.

25         MAGISTRATE JUDGE NOEL:  I'm available by

1       telephone.  I can't -- your last suggestion is the best,

2       submit us an e-mail of exactly when these depositions are

3       scheduled, and in the e-mail, tell us what time it is in

4       Minnesota.  And over that weekend, what time it is on the

5       west coast.

6               MS. ZIMMERMAN:  All right, I will do that.  And

7       lastly, Your Honors, I think that the plaintiffs have

8       offered to update the Court on the status of depositions for

9       current and former employees.  I believe that we now have an

10      agreement that November 2nd and November 4th we will go

11      forward with the depositions of Mr. Hanson and Mr. Rock.

12      That's all.  Thank you.

13              THE COURT:  For your depositions on the 15th,

14      17th, and 22nd, what time on the 15th?

15              MS. ZIMMERMAN:  2:30 in the afternoon in London I

16      believe.

17              THE COURT:  What time is it going to be here?

18              MS. ZIMMERMAN:  About 8:00 in the morning.  I'm

19      testing Bridget's memory as well.

20              MS. AHMANN:  It starts at 9:00 in the morning.

21      It's six hours difference.  It starts at 3:00.  So about

22      9:00 start.

23              THE COURT:  Okay.  Well, I'll be available that

24      morning.  But what I was going to ask -- if I have

25      communication, it will only be Internet-type communication,

1     so maybe there's a phone on the Internet in an emergency,

2     but it's going to be tough.

3                MS. ZIMMERMAN:  We certainly hope to avoid that.

4                THE COURT:  Okay.

5                MS. ZIMMERMAN:  Thank you.

6                MR. GORDON:  Your Honor, may I be heard briefly

7     before we go back to recess?  Very briefly, I promise.

8                I don't want to continue to bring up something

9     that I know the Court has already heard but my capable

10    liaison counsel, Dave Szerlag, who deals with all these

11    issues on the individual plaintiffs who file cases in these

12    MDLs made a couple of very good points that I did not make

13    with respect to the DFS, the Defense Fact Sheet.  And, you

14    know, the information we get from the hospital doesn't

15    contain the implant or the machine identification

16    information frequently.  We don't know empirically the model

17    number and the other indicia of authenticity of the machine.

18    Many times the machines are taken out.  They're repurposed

19    by 3M.  They're changed up.  A lot of time we don't have

20    that information.  And to get it, Your Honor, we're going to

21    have to take dozens, possibly hundreds of third party

22    depositions because the hospitals frequently don't know.

23    They punt this to 3M or whoever services the machine.

24                And so, again, under the heading of efficiency,

25    and if Your Honors wanted, I could submit to the defense and

1    to you a very short sample of what we're talking about, a

2    two or three page.  We're not talking about a 25-page PFS

3    like we have, but maybe a two or three page Defense Fact

4    Sheet, so you could see how sort of benign and within their

5    kin the information is.  It's not a burden on them, and we

6    think it's done in every MDL, and we appreciate your

7    considering it.

8              THE COURT:  Mr. Blackwell?

9              MR. BLACKWELL:  Your Honor, I feel like this issue

10   is from a Boris Karloff movie, and it's just every time you

11   think it's down, it rises up again and walks back up to the

12   podium and starts talking as it just did.

13             I'm not, they can see in the medical records which

14   plaintiff was claiming to be using a Bair Hugger device.

15   Their claims are general.  The Bair Hugger causes this.  It

16   doesn't depend on serial numbers, any of that.  None at all.

17   They made this up.  And as far as I know, what this is

18   really leading to is for them to simply want 3M to disclose,

19   you know, where they put Bair Hugger units across the entire

20   United States of America for purposes of perhaps finding

21   additional claimants.

22             MR. GORDON:  That's outrageous.  I object to that.

23   That's outrageous.

24             MR. BLACKWELL:  I don't know.  Otherwise, I'm

25   saying I don't know what this is for.  But, Your Honors,

1     this has been addressed and readdressed I think to the end.

2     And, Judge Ericksen, I think you've been clear that to the

3     extent they need information, they can get it through

4     discovery, if they need it in discovery.  And they have no

5     problems asking for what they need.  They've asked for a lot

6     already.

7            THE COURT:  All right.  Does anybody have anything

8     else?

9            MR. HULSE:  I have something different, Your

10    Honors.

11           Thank you.  So we have a deadline to submit a

12    chart of up to four issues to Judge Noel tomorrow.  We've

13    provided our issues to the plaintiffs.  And as of the time

14    that I walked over here, we didn't have a list of issues and

15    don't know what the plaintiff's issues would we.

16    Respectfully, our view is that's a bit of a short

17    turnaround, particularly given that we need to vet

18    internally and with our client.  And so all I wanted to

19    suggest, Your Honor, is assume that we get their issues

20    today, that we extend the deadline for submitting the chart

21    to Your Honor to Monday.  One additional day.  We just think

22    that this is likely too short a turnaround on that.

23           MAGISTRATE JUDGE NOEL:  Who is addressing that on

24    the plaintiff's side?  Ms. Zimmerman?

25           MS. ZIMMERMAN:  Your Honor, if they're asking for

1    an additional day, we got their chart this morning.  We're

2    happy to give them an additional day to Monday.

3              MR. HULSE:  The premise of it being that we get

4    their chart today though.  We need to have more than just

5    getting it the morning of.

6              MS. ZIMMERMAN:  We'll work together on that.

7              MR. HULSE:  Okay.  Can we get --

8              MAGISTRATE JUDGE NOEL:  You can get a date.

9    Tomorrow is Friday, so you want until Monday?

10             MR. HULSE:  Can we get direction from the Court

11   that we'll have their chart by tomorrow morning first thing?

12             MAGISTRATE JUDGE NOEL:  What's the status of the

13   plaintiffs?

14             MS. ZIMMERMAN:  We were receiving followup items

15   to prioritize which of the two to four outstanding issues we

16   were going to put onto the chart, so we're happy to get that

17   to the defendants tomorrow.

18             MR. HULSE:  Can we do it by 10 a.m. tomorrow

19   morning?  I mean we were supposed to submit it tomorrow, and

20   it looks like we weren't even going to get this until --

21             MAGISTRATE JUDGE NOEL:  Judge Ericksen has been

22   telling me that she's fascinated to see some of these

23   discovery disputes that district judges don't often get to

24   see.  We're on a level of minutia that even I haven't seen.

25             THE COURT:  Really it's not like this all the

1    time?

2              MR. HULSE:  Your Honor, we just need to know what

3    their issues are and have time to prepare our response and

4    vet it with our client and so forth.

5              THE COURT:  Why don't you make them have a fight

6    now?

7              MS. ZIMMERMAN:  We'll get it to them by 10:00

8    tomorrow morning.

9              MAGISTRATE JUDGE NOEL:  Call it 10:00, and we'll

10   look for your joint chart on Monday to me.

11             MR. HULSE:  Very good.  Thank you, Your Honor.

12             MAGISTRATE JUDGE NOEL:  Okay, thank you.  Now,

13   we're in recess.

14                   (Court adjourned at 3:23 p.m.)

15

16                        *     *     *

17

18             I, Maria V. Weinbeck, certify that the foregoing is

19   a correct transcript from the record of proceedings in the

20   above-entitled matter.

21

22             Certified by:  *s/ Maria V. Weinbeck*

23                            Maria V. Weinbeck, RMR-FCRR

24

25