IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| IN RE: BAIR HUGGER FORCED AIR WARMING PRODUCT LIABILITY LITIGATION | MDL No.: 15-md-02666 (JNE/DTS) |

This Document Relates To:

DANIEL MORGAN,

        Plaintiff,

Civil Action No.: 18-cv-02740

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
_____

NOW COMES Plaintiff, Daniel Morgan, identified in Defendants' Motion to Dismiss for Failure to Comply with Pretrial Order No. 14 [Dkt. 1933], and by and through undersigned counsel submits this, his Response to Defendants' Motion to Dismiss, and would respectively show the Court the following:

## **FACTS**

Mr. Daniel Morgan contacted undersigned counsel regarding an infection and subsequent treatment that he experienced due to the use of a Bair Hugger patient warming device during an orthopedic surgery. Counsel worked to obtain medical records and billing records to move forward with the case. The initial records received pertained to follow-up treatment for infection. On April 30, 2018, medical records were also requested from Black Hills Orthopedic & Spine Center in Rapid City, South Dakota, which was the facility indicated as the location of the subject surgery. Due to the name of the facility—specifically

use of the word "Center," suggesting that it was a surgery center where orthopedic and spinal surgeries were likely to have been performed—there was no obvious indication that this facility was *not* a surgical facility. Additionally, there were other issues which contributed to a delay in processing this request, including issues in August 2018 involving the HIPAA authorization form required by the hospital.

The records from Black Hills were made available in September 2018, which confirmed the date and location of the subject surgery. The operative report and other records provided indicated the facility as Regional Health Rapid City Hospital. Prior to filing the case, counsel also consulted a list of known 3M Customers for the year of the subject surgery (2014) and found that the provider where the subject surgery was performed—Rapid City Regional Hospital, a/k/a Regional Health Rapid City Hospital—was listed as a customer of 3M.[1] On September 24, 2018, counsel filed the current action to comply with what was identified as the applicable statute of limitations deadline for the relevant claim.

After review of the medical records by an attorney, it was determined that the anesthesiology records were missing. An email was sent to U.S. Legal on December 5, 2018 requesting follow up with the custodian to obtain the missing anesthesiology records.

A completed Plaintiff Fact Sheet was timely submitted through Blade on December 19, 2018. During this time, follow up with U.S. Legal regarding the anesthesiology records continued, with another email being sent to U.S. Legal requesting a status update on January 8, 2019. On January 15, 2019, Defendants issued a Deficiency Notice regarding the Plaintiff

---

[1] This customer list was produced by Defendant 3M during the course of litigation, Bates number 3MBH00984364. *See* Exhibit A, 3M Customer List from 2014.

Fact Sheet for this case which alleged deficiencies regarding Section III, Question 1 of the Plaintiff Fact Sheet, which addresses proof of use. Efforts to follow up with U.S. Legal to obtain the missing anesthesiology records were continuing at this point, and on February 7, 2019, Plaintiff's counsel was informed that U.S. Legal was having issues with the custodian and stated that the custodian was being "non-compliant." Further follow up by Kennedy Hodges on February 18, 2019 resulted in a response that U.S. Legal was still trying to get the custodian at the facility to cooperate.

After U.S. Legal was able to reestablish contact with the custodian and have the request processed in late March 2019, the custodian informed U.S. Legal Support that the relevant records would not be available from this provider, but would need to be obtained from the hospital—Regional Health Rapid City Hospital.[2] At this point, it was apparent that—unbeknownst to staff at Kennedy Hodges and counsel—U.S. Legal had followed up with the custodian at Black Hills Orthopedic & Spine Center instead of Regional Health Rapid City Hospital, the facility where the subject surgery was performed and the anesthesia records were kept. This accidental mix-up had caused significant delays in obtaining the anesthesia records.

After this issue was discovered, a new request was initiated as a rush order for Regional Health Rapid City Hospital on April 16, 2019, specifically requesting anesthesia and other similar records. Kennedy Hodges has routinely followed up with this pending request via email since it was first entered. As of May 21, 2019, the custodian informed a

---

[2] *See* https://regionalhealth.org/. The address given for Regional Health Rapid City Hospital (353 Fairmont Blvd., Rapid City, SD 57701) is the same as that for "Rapid City Regional Hospital" on the 3M Customer List. *See* Ex. A, pg. 65.

representative with U.S. Legal Support that the records would take three to four weeks to locate and produce.[3] As of June 12, 2019, the request is still pending.

Due to the issues with obtaining the medical records through U.S. Legal Support, counsel is working with Mr. Morgan to obtain the medical records from the hospital directly. The hospital has reported that the custodian should have the records available to Kennedy Hodges on or around June 13, 2019. Based on the fact that Regional Health Rapid City Hospital was a known 3M customer in 2014—which is when the subject surgery occurred—counsel anticipates that these records should indicate whether or not a Bair Hugger device was used, whether through specific mention of a Bair Hugger device or through more general references to "forced air warming" or "active warming."

As a result of the issues indicated above, counsel has not been able to obtain the additional proof of use records needed to submit with an amended Plaintiff Fact Sheet for this claim to address the alleged deficiency, despite acting diligently at all stages of this matter. Counsel for Plaintiff believe that additional time would allow them to obtain the necessary records, especially since Mr. Morgan himself is assisting in making the records available directly from the hospital in an expeditious fashion. As soon as the records are received, counsel will upload the records and submit an amended Plaintiff Fact Sheet which will address this issue.

---

[3] *See* Exhibit B, Record Request Log.

**ARGUMENT**

Dismissal of the instant matter is inappropriate here. There are two core issues: (1) whether the issues encountered which have led to non-compliance with PTO 14 were excusable neglect or excusable error; and (2) whether Plaintiff or counsel "willfully disobeyed" the requirements of PTO 14 such that dismissal of the case with prejudice is warranted. Under the prevailing case law, and using this Court's previous orders as a guidepost, counsel's difficulty in complying with PTO 14 is excusable neglect, and Plaintiff did not "willfully disobey" the requirements of PTO 14. Accordingly, Defendants' Motion to Dismiss should be denied as it pertains to this case.

**A.     Actions Constituted Excusable Neglect**

This Court has stated in recent orders that "excusable neglect" and "accidental delay" are sufficient to "excuse noncompliance" and render dismissal with prejudice inappropriate.[4] Excusable neglect is an "elastic concept" that empowers courts to accept, "where appropriate, . . . late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395.

The initial act of ordering medical records from Black Hills Orthopedic & Spine Center under the impression that it was a surgery center and therefore the location of Mr.

---

[4] *See, e.g., In Re: Bair Hugger Forced Air Warming Devices Products Liability Litigation*, 15-md-2666, ECF No. 1614 at 2; MDL ECF No. 1566 at 5, 7.

Morgan's subject surgery could easily be categorized as excusable neglect. As mentioned, the name does not make it abundantly clear that it is not a surgery center, and the website for the practice itself suggests that the Rapid City location may actually be a surgery center.[5] To confuse this facility as a surgery center is certainly an honest mistake. Plaintiff should not be harshly penalized with dismissal with prejudice due to that mistake.

In the instant matter, there have also been clear "intervening circumstances beyond the party's control" which would constitute excusable neglect. The delays in obtaining the necessary anesthesia records were due to a number of factors that were not within counsel or Plaintiff's control, including: (1) technical issues with the authorization form required to obtain the records; (2) a non-compliant custodian who was not responsive to efforts by U.S. Legal to obtain the necessary medical records; and (3) an accidental mix-up by U.S. Legal which led to follow up with the custodian at a different facility than intended. Throughout these issues, counsel has remained as diligent as can be expected and has continuously worked to obtain the anesthesia records as expeditiously as possible. Taking into account all of the relevant circumstances involved, dismissal with prejudice would be an inequitable result.

## B.     There Was No "Willful Disobedience" of the Requirements of PTO 23

Further, in its previous Order denying Plaintiffs' Motion to Amend PTO 23 this Court had stated that "plaintiffs who willfully disobey" orders issued by the Court

---

[5] *See* https://www.bhosc.com/. The website specifically refers to the Rapid City location as the "primary location" and other locations as "outreach clinics." *Id.*

justifiably have their cases dismissed.[6] However, there is no "willful disobedience" of the requirements of PTO 14 in the instant matter. Counsel for Plaintiff did not willfully disobey the requirements of PTO 14, as the only reason that additional proof of use records have not been produced and the alleged deficiency remains is because there have been several delays and accidental mix-ups outside of the control of Plaintiff or counsel. This delay in obtaining additional records cannot be "willful." Because Plaintiff did not "willfully disobey" the requirements of PTO 14, subjecting this case to dismissal with prejudice for failure to comply with PTO 14 would be an unnecessarily harsh result inconsistent with the issues which have contributed to that inadvertent failure which has been predominately outside of the control of counsel and Plaintiff.

## **CONCLUSION**

Accordingly, undersigned counsel request that the current action not be dismissed with prejudice and that Plaintiff be given an additional ninety (90) days so that additional records regarding proof of use can be obtained and submitted with an amended Plaintiff Fact Sheet, thereby curing any deficiencies and allowing for the case to be continued.

---

[6] *See id.*

Dated: June 12, 2019	KENNEDY HODGES, LLP

By: /s/ David W. Hodges
David W. Hodges
dhodges@kennedyhodges.com
Gabriel A. Assaad
gassaad@kennedyhodges.com
4409 Montrose Blvd. Ste 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

ATTORNEYS FOR PLAINTIFF