UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

In re: Bair Hugger Forced Air Warming
Products Liability Litigation

MDL No. 2666
(JNE/DTS)

---

This Document Relates to All Actions

**PLAINTIFFS' RESPONSE OPPOSING
DEFENDANTS' MOTION FOR
CONTEMPT ORDER AND
SANCTIONS**

---

     Defendants knowingly falsely accuse three MDL lawyers of disclosing a confidential document to their *Petitta* co-counsel in violation of PTO 7 without a shred of evidence to support that allegation. (Doc. 1950) 3M has no evidence in support of this serious accusation of wrongdoing because it did not happen. As Plaintiffs' counsel made clear in a publicly available letter to this Court dated January 30, 2019,[1] no documents have been shared. To put forever to rest any unresolved doubt as to whether the undersigned have shared confidential documents in violation of this Court's orders, attached to this memorandum of law are affidavits from the three accused MDL lawyers as well as *Petitta* co-counsel attesting under oath that no confidential documents were ever shared.[2] Rather, Mr. Petitta requested discovery of information and documents based on publicly available transcripts.

---

[1] Doc. 1729
[2] Attached to the Declaration of Genevieve M. Zimmerman at Exhibits 1 – 4 are the Affidavit of Gabriel Assaad, Kyle W. Farrar, Albert Garcia III, and Genevieve M. Zimmerman, respectively.

Defendants next wrongly accuse Plaintiffs' counsel of violating an order issued by Judge Hoyt in the *Walton*[3] case in 2015 through a Motion to Compel and Supplemental Brief filed in the Petitta case pending in Hidalgo County, Texas. But Petitta's Motion to Compel and Supplemental Brief used public deposition transcripts to show that 3M's counsel in *Walton v. 3M* concealed excessive payment agreements with five former Arizant executives under alarming circumstances. Petitta's motion disclosed to the Hidalgo County Court that the judge in *Walton* issued a memorandum relating to these issues, but that counsel would not be able to share its contents as the Memorandum remained under seal. Shockingly 3M's counsel materially altered the language quoted on page 6 of its Motion for Sanctions in an effort to manufacture support for their argument. The removal of citations from the block quote makes it appear as though Plaintiff's Motion to Compel in *Petitta* contains a characterization of the *Walton* Memorandum, which is prohibited by Judge Hoyt's Sealing Order, rather than the underlying *Walton* Motion for Sanctions, which is not subject to any restriction on characterization.

3M knew Plaintiffs' counsel based their briefing on public sources, and it had no good faith basis to claim that Plaintiffs' counsel violated any order by citing these public sources. Yet in its zeal to cast Plaintiffs' counsel in a poor light, 3M filed a motion leveling false accusations of misconduct. Counsel for 3M should not be allowed to engage in willful misrepresentations of fact, especially in a motion accusing counsel of serious wrongdoing.

---

[3] *Walton v. 3M Company et. al.*, 4:13-cv-01164 (S.D. Tx.).

# LEGAL STANDARD

"A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." *Chicago Truck Drivers v. Bhd. Labor Leasing,* 207 F.3d 500, 505 (8th Cir. 2000). When alleging the disclosure of protected information, the moving party must also show "that the violation was not based on a good faith and reasonable interpretation of the protective order." *Enter. Fin. Group v. Podhorn,* 4:16CV1619 HEA, 2018 WL 6524008, at *2 (E.D. Mo. Dec. 12, 2018). As the Eighth Circuit stated:

> No one should be held in contempt for violating an ambiguous order, especially an order purporting to restrict the right of the public to see public records and documents. A contempt should be clear and certain.

*Imageware, Inc. v. U.S. W. Communications*, 219 F.3d 793, 797 (8th Cir. 2000). Sanctions cannot be upheld where a party "could reasonably, even if perhaps erroneously," believe their actions were permissible. *Id.*

# ARGUMENT

## I.    3M has no Basis to Seek Sanctions for the Disclosure of Information Contained in Public Court Transcripts Relating to the Bair Paws Document.

### A.    3M's argument is based on false accusations.

3M's argument with respect to the Bair Paws document begins with two false representations. First, 3M tells this Court in its brief that "MDL Counsel shared the Bair Paws exhibit (or contents thereof) with co-counsel in the *Petitta* matter."[4] 3M presented no evidence in support of this serious accusation of wrongdoing because it did not

---

[4] *See* Doc. 1950, p. 7.

happen. As Plaintiffs' counsel made clear in the January 30, 2019 letter, no documents have been shared. Rather, Mr. Petitta requested discovery of information and documents based on publicly available transcripts.[5] Co-counsel's knowledge is limited to what it discussed in those publicly available transcripts. The attached affidavits from the three accused MDL lawyers as well as *Petitta* co-counsel provide sworn testimony that the document in question was never shared.[6] Nonetheless, this malicious false accusation against Plaintiffs' counsel has already been reported in the legal press.[7]

Zealous advocacy does not excuse 3M's accusation of misconduct without underlying factual support. Whether an attorney fails to balance zealous advocacy versus counsel's duty to the tribunal is governed by an "'objective reasonableness' standard." *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1993). It is objectively unreasonable for 3M, and Mr. Hulse in particular, to continue accusing Mr. Petitta's counsel of serious wrongdoing when 3M has known for almost six months that transcripts on this Court's website are the source of the statements made in the *Petitta* discovery requests and subsequent Motion to Compel. Despite every opportunity to uncover factual support, 3M has not uncovered one iota of evidence in support of its frivolous factual assertion that the undersigned MDL counsel shared the confidential Bair Paws document with Petitta's Texas lawyers.

---

[5] *See* Doc. 1950, Hulse Ex. I (Letter from Genevieve Zimmerman dated January 30, 2019 describing in detail the use of publicly available court transcripts in Petitta discovery requests).
[6] *See* Zimmerman Decl., Exhibit 1-4, Affidavits of *Petitta* Counsel.
[7] *See* "3M Moves For Contempt, Says Patient Attys Used Sealed Docs," *Law360*, available at: https://www.law360.com/legalethics/articles/1166659/3m-moves-for-contempt-says-patient-attys-used-sealed-docs

First, Plaintiffs' counsel did not disclose the substance of the Bair Paws exhibit. As 3M has known for nearly six months, the undersigned Plaintiffs' counsel were careful to disclose only the information gleaned from the publicly-available transcripts.

Second, disclosure of information from those transcripts does not violate any order of this court. Nothing in PTO-7 requires counsel to treat as confidential publicly-available information that is not designed confidential. The protective order unequivocally states that information that is "available to the public may not be designated as Confidential Information." PTO 7 at 3. As demonstrated below, the information on the Court's website is public, and Plaintiff's counsel cannot have violated the protective order by referring to that publicly-available information.

It is understandable that 3M would not want the public to know that, for more than a decade, 3M and its predecessor, Arizant, have known how to reduce the risk of nosocomial transmission of pathogens by eliminating the need for intraoperative warming. But to the extent 3M now wishes that the transcripts for the 2017 *Daubert* and summary judgment hearings that describe 3M's knowledge were sealed, 3M has had eighteen months to file a motion.  3M has not done so.  3M is in no position to now claim that the disclosure of information that is available to literally anyone in the entire world via the internet, and has been available in such an unfettered manner for *more than 18 months*, could possibly be deemed to violate PTO 7.

Indeed, the very same 3M lawyer that signed the motion for sanctions previously recognized that the public has the right to hear what was said in open court:

> "MR. HULSE: Well, we may disagree on some points, but I also know from experience with Your Honors that when it comes to summary judgment, it's a pretty restrictive what remains under seal. So we would like to follow the process. We have got a lot to go through, but of course the defendants will keep that in mind, the public's right to know."

Transcript dated October 26, 2017 at 135:22-136:3, *publicly available at* https://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/2017-1026-MotionsHearings-Volume-III.pdf.  Mr. Hulse's concession that the public has the right to know *is less than ten pages* in the transcript after the advantages and disadvantages of Bair Paws were argued in open court:

 4          All right.  And so now I turn your attention, and
 5   this is the document that I think Mr. Hulse was really
 6   forecasting for Your Honors.  What else did this company
 7   know?  When did they know it?  And this is Exhibit 2 to our
 8   motion papers, and what this is is a study protocol dated
 9   June 23rd of 2007, and it's a study protocol for the Bear
10   Paws device.

11          Bear Paws is another device that is used to warm
12   patients to maintain normothermia, and what Al Van Duren
13   says in September of 2007 is that if you pre-warm a patient
14   before the surgical incision happens, you are capable of
15   preventing significant surgical hypothermia for three hours.
16   That means that you don't need to use forced air warming at
17   all if you get the patient warm enough.

18          That's Al Van Duren says in his document here, but
19   the other thing that he says, and we highlighted this in our
20   brief, and this is at Table 1.  He says, and this is, it's a
21   table that lists advantages and disadvantages of using the
22   Bear Paws prewarming versus the Bair Hugger during an
23   operation.

24          Advantages:  Inexpensive.  Bear Paws is safe.
25   Bear Paws can be used when intraoperative warming is

                                7

1     contra-indicated (aortic cross clamp, orthopedic cases.) It

2     also, one benefit, it does not contaminate the sterile field

3     to use the Bear Paws before a surgery starts.

4            Go down two lines on the same chart.  Again Al Van

5     Duren.  This is not Dr. Augustine.  Dr. Augustine is not in

6     the picture.  Bear Paws reduces the incidence of surgical

7     site infection, and it reduces the potential for nosocomial

8     transmission of pathogens by eliminating the need for

9     intraoperative warming.

10           So their own corporate documents say that the Bair

11    Hugger may not be well indicated in orthopedic surgeries,

12    but they didn't tell the orthopedic surgeons about that, and

13    Mr. Van Duren in his corporate deposition, he admitted to

14    that fact as well.

15           So they say that pre warming with their own forced

16    air warming product is equally effective at keeping the

17    patient warm for at least three hours, which is the length

18    of time certainly within which the vast majority of the

19    cases before Your Honors were completed within three hours,

20    and it eliminates these known risks.  It eliminates the

21    risks, and they were known at least in 2007.

*See* Transcript dated October 26, 2017 at 125:4-126:21, ***publicly available*** as of June 10,

2019  at  http://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/2017-1026-

MotionsHearings-Volume-III.pdf

Neither did 3M attempt to seal the September 6, 2018 hearing in which Bair Paws was extensively discussed in open court:

```
 8                 But, and I did want to make one point with respect
 9      to counsel's comments that these are totally different
10      products.  Certainly, the prewarming with the Bair Paws,
11      that is defendant's product.  It is the exact same
12      application of the exact same technology.  The only thing
13      that happens there is that it's done before an operation and
14      that the warming therapy has stopped prior to an incision.
15      And according to the defendant's own documents, and I think
16      it's at Exhibit 1 of our motion, and I think I got that
17      wrong.
18                 Pardon me, Your Honor.  It's Exhibit 3,
19      demonstrates that the defendants have known this for quite
20      some time, certainly well before Axline, certainly well
21      before the vast majority of cases have been filed in this
22      MDL.
23                 So that is certainly not a different technology.
24      It is the defendant's own technology, and they're own
25      documents say that that is an effective way to warm patients
```

```
1    and that it avoids the kind of risks we're talking about
2    here.  And that you can see in the chart where they
3    summarize the pros and cons of using the Bair Paws
4    prewarming versus the Bair Hugger during an operation.  And
5    they say contraindicated in orthopedic surgery, they say the
6    Bair Paws avoids things like nosocomial infections and
7    contamination of the sterile field.  These are the most
8    critical issues before this Court.
```

*See* Transcript dated September 6, 2018 at 40:8-41:8; ***publicly available*** as of June 10, 2019 at http://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2018/2018-0906-Motions-Hearing.pdf.

The very same Bair Paws information that Defendants claim in their motion was wrongfully disclosed was also discussed by both parties and by Magistrate Judge Noel at the October 24, 2017 hearing:

```
21           MS. CONLIN:  Good afternoon, Your Honors.  I'd
22    like to start with the Court's question about the FDA letter
23    this morning and the point that that FDA letter, and we
24    don't know what information the FDA had when it put that
25    letter out, but we do know that it says where intraoperative
```

```
1    warming is warranted, in cases which intraoperative warming
2    is warranted, and this is a document, an Arizant document,
3    that came from 3M's file, dated June 23rd of 2007.
4            And it's regarding the Bear Paws product, and the
5    Bear Paws product is a forced air warming device
6    manufactured and sold by 3M that warms a patient up and
7    blows hot air on them before surgery.  So Bear Paws is
8    typically used before surgery, Bair Hugger during surgery.
9    And if you look at the advantages listed there for using the
10   Bear Paws, warming up the patient before surgery, it says,
11   Can be used when intraoperative warming is contra-indicated,
12   and then in parentheses it says, Aortic cross clamp in
13   orthopedic cases.
14           And that's what we're talking about here is
15   orthopedic cases and the environment of use, and you heard a
16   little bit from Mr. Ciresi, and you're going to hear more
17   about it as we go through that the reason why orthopedic
18   surgeries are contra-indicated for a Bair Hugger device is
19   because it only takes one or two microbes, CFUs, to land on
20   that implant to cause an infection, and it distinguishes it,
21   and their experts do, too.
```

See Transcript of October 24, 2017 at 121:2-13, *publicly available* as of June 10, 2019 at

http://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/2017-1024-

MotionsHearings-Volume-I.pdf.

The discussion of Bair Paws continued with Magistrate Judge Noel questioning

3M's lead counsel, Mr. Blackwell:

```
 5               MAGISTRATE JUDGE NOEL:  What about the 2007 3M
 6    chart they showed of when Bair Hugger versus Bair Paws and
 7    the benefits of the Bair Paw is that it's not going to cause
 8    an infection?
 9               MR. BLACKWELL:  The Bair Paws is not the Bair
10    Hugger.
11               MAGISTRATE JUDGE NOEL:  I understand that.
12               MR. BLACKWELL:  It's a separate and completely
13    different product, and --
14               MAGISTRATE JUDGE NOEL:  The point is that what
15    they were showing us in the exhibit, as I understand it, is
16    in attempting to sell the Bair Paws, one of the benefits was
17    that, unlike the Bair Hugger, it's not going to get
18    contamination into the site of an orthopedic surgery or
19    cardiac because it's just being used pre surgery and that's
20    one the reasons you should by a Bair Paw is --
21               MR. BLACKWELL:  I can't speak to the Bair Paws
22    document expressly.  I can't.  One of my colleagues will.
23    First of all, the mere fact that a scientist says something
24    doesn't even make it scientific.  The fact that a fact
25    witness or marketing person says it doesn't make it
```

*Id* at 161.

Faced with clear evidence demonstrating that the Petitta discovery requests, Motion to Compel and Supplemental Brief do not evidence disclosure of a confidential document, 3M and the lawyers who signed the sanctions pleading resorted to fabricating facts.  As shown by Plaintiff's counsel letter of January 30, 2019, 3M's counsel have

known for nearly six months that the publicly-available transcripts were the source of the Bair Paws information for the *Petitta* discovery requests and motion to compel[8], but they nonetheless make the outrageous request that this Court hold undersigned Plaintiffs' counsel in contempt and issue sanctions for quoting and/or referencing these public transcripts.

### B. 3M's legal argument overlooks the right to disclose information contained in public records.

3M's motion ignores the fact that "[p]ortions of documents that are read into the record in an open proceeding enter the public domain, without regard to whether the documents were originally filed on the public record, were filed under seal, or were not filed with the clerk." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 529 F. Supp. 866, 897–98 (E.D. Pa. 1981). 3M relies heavily on *Grove Fresh Distributors, Inc.,* but sanctions were appropriate in that case because the attorney "disclosed protected information that was not available from public sources and which could only have come from the discovery process in the case." *Grove Fresh Distributors, Inc. v. John Labatt Ltd.,* 888 F. Supp. 1427, 1445 (N.D. Ill. 1995), aff'd, 134 F.3d 374 (7th Cir. 1998). Here, *Petitta's* counsel have been diligent in only disclosing the substance of the document explicitly discussed in the publicly-available transcripts.

Similar principles were applied in the Eight Circuit's decision in *Imageware*, which featured a confidentiality dispute concerning exhibits used in court:

> At trial, certain documents (and only documents in this category are at issue here) were offered in evidence by

---

[8] *See* Doc. 1950, Hulse Ex. I (Letter from Genevieve Zimmerman dated January 30, 2019).

> Cottonwood…U.S. West was given an opportunity to seek a protective order, to prevent the reception into evidence of these documents in open court. No such order was sought, and the documents were freely introduced in open court and published to the jury. Any discussion of the documents that took place at the trial was in the open, and presumably any person present at the trial (attendance at which was not restricted) could have requested and received access to the documents.

*Imageware, Inc. v. U.S. W. Communications,* 219 F.3d 793, 795 (8th Cir. 2000). After trial, representatives of the plaintiff went to the county clerk's office and requested the trial record. The clerk provided the record, including the exhibits which were offered at trial. *Id.* The plaintiff later included these documents in a filing with the FCC. *Id.* at 795. The trial court assessed sanctions, finding that plaintiff should have known the documents themselves were still subject to the protective order, unlike the transcript. The Eighth Circuit reversed, finding that the plaintiff's actions were objectively reasonable in believing the documents were beyond the protective order's reach since they were included in the public trial record. *Id.* at 796.

The Eighth Circuit relied on the Sixth Circuit's decision in *Nat'l Polymer Prod., Inc.,* which is more comparable to this dispute. Following a trial between National Polymer and Borg-Warner, an executive at National Polymer wrote a letter to an industry group advertising seminars about the trial. *Nat'l Polymer Prod., Inc. v. Borg-Warner Corp.,* 641 F.2d 418, 421 (6th Cir. 1981). This letter disclosed information about documents which had been discussed at trial. *Id.* The trial court ruled the letter violated the pre-trial protective order designating those documents as confidential. *Id.*

14

On appeal, National Polymer argued "the information contained in the letter and information which would have been revealed at the seminars was made public at the trial with no objection by Borg-Warner, thereby entering the public domain and escaping the reach of the protective order." *Id.* The record showed "all the information in the letter and to be produced in the seminars was information that was made public at trial," and that the information "is readily ascertainable from a perusal of the transcript of the trial." *Id.* at 421. The Sixth Circuit held that disclosure of the information was reasonable, recognizing "the right to publish information made a part of the record in a judicial proceeding." *Id.* at 422.

This principle is well-settled in Supreme Court precedent. In *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), the Supreme Court held that a State may not impose sanctions on the publication of the name of a rape victim obtained from judicial records maintained in connection with a public prosecution and which are themselves open to public inspection. In so holding, the Court reaffirmed the principles laid down a quarter century earlier in *Craig v. Harney*:

> What transpires in a courtroom is public property. **If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt**...Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.

331 U.S. 367, 374 (1947).

The principle that one cannot be prohibited from "truthfully publishing information released to the public in official court records" was reaffirmed in *Nebraska Press Assn.*, in which the Court held unconstitutional an order prohibiting the publication of purportedly confidential information adduced as evidence in a public hearing. The Court noted "to the extent that this order prohibited the reporting of evidence adduced at the open preliminary hearing, it plainly violated settled principles: '[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom.'" *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 568 (1976), *quoting Sheppard v. Maxwell*, 384 U.S., at 362-363; *see also Oklahoma Pub. Co. v. Dist. Court In & For Oklahoma County,* 430 U.S. 308, 311 (1977) (Court cannot prohibit the publication of information obtained at court proceedings which were open to the public, even the name and photograph of juvenile defendant). Here, because 3M seeks sanctions for the publication of a court transcript, those sanctions would be plainly unconstitutional.

In sum, disclosure of quotations from public transcripts does not violate any order of this Court. Nothing in PTO-7 requires counsel to treat as confidential publicly-available information that is not designated confidential. The protective order unequivocally states that information that is "available to the public may not be designated as Confidential Information."[9] While this Court has held the disclosure of the contents of a sealed document in a pubic court transcript does not render the document itself non-confidential, the transcript and the information contained within are

---

[9] *See* PTO 7 at p. 3.

unquestionably public. Quoting a public court transcript to another court can never be the basis for sanctions.

## II.   Petitta's Counsel Cannot be Sanctioned for Setting Forth Allegations Based on Public Deposition Testimony or by Disclosing the Existence of a Sealed Order in *Walton v. 3M.*

### A.   3M's motion misrepresents the *Petitta* discovery efforts.

3M's argument concerning the *Walton* Memorandum begins with a false representation about discovery in *Petitta.* 3M tells this Court that "on March 19, 2019, MDL Counsel entered appearances for Mr. Petitta, objected to the entry of the protective order, and demanded production of all documents produced by Defendants in the MDL (and then some) with no protection whatsoever."[10] This is not true. Petitta's counsel did not insist upon production of documents with no protection. Petitta's counsel attempted to negotiate with 3M concerning an appropriate agreed protective order for the Texas case. On April 5, 2019, Petitta's counsel sent a proposed protective order to 3M's counsel for review.[11] However, the parties were unable to reach agreement. Nonetheless, 3M chose not to request any protective order from the *Petitta* court within the timeline allowed by Texas law.

In Texas, "[i]f a party does not move for protection or assert any applicable privileges by the thirty-day deadline…a failure to 'respond fully' to a request for disclosure is considered an 'abuse of the discovery process.'" *In re GreCon, Inc.,* 542 S.W.3d 774, 779 (Tex. App.—Houston [14th Dist.] 2018, no pet.), *quoting* Tex. R. Civ.

---

[10] *See* Doc. 1950, p. 3.
[11] *See* Zimmerman Decl., Exhibit 5 (April 5, 2019 email from Plaintiff's counsel).

P. 194 cmt. 1. Because 3M did not seek protection within the allowed time period under Texas law, it had no basis to refuse production. As such, Petitta brought a motion to compel responses to his requests for production.

### B.     Petitta's briefing discloses public facts.

One section of Petitta's Motion to Compel concerned a request for production for documents relating to witness compensation agreements. In this section, Petitta told the Hidalgo County Court:

> The *Walton* plaintiff brought a motion for sanctions after learning that each of these witnesses had been solicited by 3M to enter into exclusive litigation contracts, provided substantial payments far above their customary compensation, and entered into restrictive agreements with 3M's attorneys under questionable circumstances…
>
> Alarming payments and improper relationships continued in another pre-consolidation lawsuit, *Johnson v. 3M.*[12]

In support of these allegations, Petitta provided briefing of the public deposition testimony from the *Walton* motion for sanctions which set forth these events.[13] This deposition testimony taken in the *Walton* and *Johnson* cases reveals that 3M's counsel concealed agreements and promises of excessive payments to five former Arizant executives under troubling circumstances. This conduct included:

- Making grossly excessive payments to the witnesses, at rates of more than double and even triple their documented salary or hourly pay.[14]

---

[12] *See* Zimmerman Decl., Exhibit 6 (Petitta Motion to Compel, p. 5).
[13] *See* Zimmerman Decl., Exhibit 7 (Petitta Supplemental Brief).
[14] *Id.* at p. 3-8.

- Paying witnesses large fees for which the witness could not identify any consulting work or significant time investment.[15]

- The procurement of a false affidavit.[16]

- Repeatedly concealing the existence of the agreements with the witnesses.[17]

In short, the deposition testimony supported the allegation in *Petitta's* motion that 3M bribed these witnesses and created irreparable bias which should be explored in discovery. There is no prohibition against summarizing *Walton's* allegations, nor providing the *Petitta* court with the public deposition testimony supporting those allegations.

In one sentence, Petitta's Motion to Compel informs the Hidalgo County Court of the existence of the *Walton* order, stating:

> Immediately before consolidation, the *Walton* court issued an opinion on Plaintiff's motion, which unfortunately cannot be shared as it remains under seal.[18]

This fact is not confidential. Indeed, the existence of the order on the *Walton* motion for sanctions is published on the PACER docket report:

| 12/22/2015 | 224 | ORDER FOLLOWING TELEPHONE SCHEDULING CONFERENCE held on December 22, 2015 at 8:30 a.m. Appearances: Ben W. Gordon, Mark Bankston, Jerry Blackwell, (Court Reporter: B. Slavin). The parties discussed the use of the Courts sealed Memorandum on the plaintiff's motion for sanctions. Instructions were relayed.(Signed by Judge Kenneth M. Hoyt) |
|---|---|---|

---

[15] *Id.* at p. 4-5.
[16] *Id.* at p. 3.
[17] *Id.* at p. 4-6.
[18] *See* Zimmerman Decl., Exhibit 6 (Petitta Motion to Compel, p. 5).

| | | Parties notified.(chorace) (Entered: 12/22/2015) |
|---|---|---|

The *Walton* court's sealing order is limited to disclosure of the contents of the sanctions order. Petitta's motion discloses the existence of the order, as reflected on PACER, and noted that Petitta was unable to share it with the court. Thus, the existence of the sealed *Walton* memorandum and the assertions made by Petitta concerning 3M's conduct were drawn entirely from public sources.

When seeking to compel discovery in *Petitta* on these issues, it was incumbent on counsel to inform the Hidalgo County Court that another court had already examined this conduct and issued an order. Candor demanded the *Petitta* court be told that an order on the *Walton* motion exists, even if counsel was unable to share its contents or findings at this time. From the perspective of the *Petitta* court, those fact-finding proceedings are directly pertinent to Petitta's discovery regarding 3M's payment agreements, regardless of the content of Judge Hoyt's order.

3M falsely claims "MDL Counsel extensively described and paraphrased the opinion."[19] In truth, Petitta's briefing extensively described the public deposition testimony relating to the conduct at issue, and it only included a single sentence noting the existence of the sealed order. Nonetheless, when quoting language from Petitta's Motion, 3M's counsel purposefully omitted citations to create the appearance that Petitta was summarizing Judge Hoyt's order when in reality Petitta was citing the allegations

---

[19] *See* Doc. 1950, p. 5.

originally made by the *Walton* plaintiff, all of which is based on public testimony.[20]

Looking at 3M's brief, one might believe Plaintiff characterized Judge Hoyt's memorandum order by saying:

> The Walton plaintiff brought a motion for sanctions after learning that each of these witnesses had been solicited by 3M to enter into exclusive litigation contracts, provided substantial payments far above their customary compensation, and entered into restrictive agreements with 3M's attorneys under questionable circumstances. Immediately before consolidation, the Walton court issued an opinion on Plaintiff's motion, which unfortunately cannot be shared as it remains under seal. Alarming payments and improper relationships continued in another pre-consolidation lawsuit, Johnson v. 3M.

Doc. #1950 at 6. However, factual support for 3M's contention that Petitta's counsel characterized the Walton order vaporizes when the quote is considered with the altered citations in place. In particular, 3M deleted two critical footnotes from the quoted language. The proper quote, with the footnotes in red, would have been:

> The *Walton* plaintiff brought a motion for sanctions after learning that each of these witnesses had been solicited by 3M to enter into exclusive litigation contracts, provided substantial payments far above their customary compensation, and entered into restrictive agreements with 3M's attorneys under questionable circumstances.[6] Immediately before consolidation, the *Walton* court issued an opinion on Plaintiff's motion, which unfortunately cannot be shared as it remains under seal.[7] Alarming payments and improper relationships continued in another pre-consolidation lawsuit, Johnson v. 3M.

---

[20] *Id.* at p. 6. (omitting footnotes 6 and 7 from quoted material, indicating the source of the statements was Walton's allegations, not Judge Hoyt's order).

(emphases added). The deletion of footnotes "6" and "7" from the block quote materially alter the import of the quoted language.

Footnote 6 was a citation to Plaintiff's Motion for Sanctions in *Walton*, not Judge Hoyt's Memorandum Order. *See* Hulse Ex. H. at 5. Footnote 7 was a citation to the Memorandum Order. *Id*. The citation to the Memorandum Order was for a single non-controversial sentence that discloses no more than what is ascertainable to anyone who looks up *Walton* on PACER: an Order was issued but unfortunately cannot be shared because it is under seal. By deleting the citations and then arguing the entire paragraph was a characterization of Judge Hoyt's sealed Memorandum Order, 3M fundamentally altered the meaning of the statement to support its argument that Plaintiffs' counsel engaged in sanctionable conduct.

That sealing order contains two different levels of restrictions on information. Doc. 1952 (Hulse Decl., Ex. F, 11/20/2015 Walton Order).  First, it says, as 3M quoted in its brief:

> 1. Unless prior leave of this Court is granted, neither the parties nor their counsel shall summarize, characterize, or otherwise describe in a public communication or court filing the contents of this Court's October 29, 2015, Memorandum Opinion that was filed under seal in this Court.

*Id*. But Judge Hoyt's sealing order contains a lesser restriction on use of information related to the other documents associated with the Walton Motion for Sanctions:

> 2. Any motions, briefs or memoranda submitted herein and pertaining to the October 29, 2015, Memorandum Opinion should be filed under seal.

*Id*. Importantly, Judge Hoyt's sealing order does not restrict counsel from "summariz[ing], characteriz[ing], or otherwise describ[ing]" their own Motion to Compel.

If 3M wanted Judge Hoyt to restrict counsel's ability to "summarize, characterize, or otherwise describe" the *Walton* "motions, briefs or memoranda," 3M should have asked Judge Hoyt to expand paragraph 1 of his sealing order to include the "motions, brief or memoranda" in addition to the Memorandum Order. But 3M did not do so. Moreover, the sealing order does not restrict Petitta's counsel from using and relying on other non-confidential documents, such as depositions, to support its characterization of 3M's behavior. That is exactly what Petitta's Supplement to his Motion to Compel did to support the other statements in that motion, including those cited by 3M as "evidence" of counsel's violation. Moreover, Petitta's counsel provided 3M with a supplemental filing containing additional non-sealed support for the language in the Petitta Motion. Only by materially altering the content of quoted language could 3M attempt to argue that Petitta's counsel violated Judge Hoyt's sealing order.

The sealing order does not restrict Petitta's counsel from using and relying on other non-confidential documents, such as depositions, to support the characterization of 3M's behavior. That is exactly what Petitta's Supplement to his Motion to Compel did to support those allegations, including those cited by 3M as evidence of counsel's violation.

**C.     3M's argument is contradicted by its own cited authority.**

3M relies on *Taylor,* claiming it supports sanctions where a sealed order was paraphrased.[21] *Taylor* is instructive here, but not in the way 3M suggests. In that case, the court issued an order regarding discovery abuse which singled out an attorney. *Taylor v. Teledyne Techs., Inc.,* 338 F. Supp. 2d 1323, 1326 (N.D. Ga. 2004). However, the attorney claimed he was not actually involved, so the court vacated the order, ruling that it "shall be marked not for publication *nunc pro tunc,* sealed, and shall not be disclosed*." Id.* at 1331. The parties were ordered not to "publicize the Order of September 30, 2002, to destroy all copies, and to obtain the return or destruction of all copies of the said Order." *Id.*

Even though the attorney had the court vacate and seal the order "because it had contained criticisms of his professional conduct, [he] filed a defamation action based on this Order." *Id.* His defamation complaint disclosed the criticisms made by the court in the vacated order. *Id.* at 1332. The court noted that unlike Petitta here, who cited the evidence regarding allegations of discovery abuse and noted the existence of a sealed order, the attorney in *Taylor* went further by disclosing the contents of the order:

> In his Pennsylvania Complaint, Respondent set out, in ten paragraphs, a detailed paraphrase of the allegations of discovery abuse made by Movant in its pleadings before this Court in the *Taylor* litigation. Respondent has argued that, as this recitation related to allegations made by Movant, it did not constitute a disclosure of the Court's Order. Had Respondent stopped with this paragraph, he would be correct. Instead, however, Respondent went on to indicate that this Court had "completely adopted" the above "false allegations"

---

[21] *See* Doc. 1950, p. 12.

by Movant and issued an order containing numerous "scathing comments" regarding Respondent.

*Id.* at 1343. The court concluded that, "in these paragraphs, Respondent disclosed the findings of discovery violations and the criticisms that the Court directed at Respondent." *Id.* Here, Petitta's Motion did not. Petitta's counsel did not summarize the order, discuss or disclose its contents, or state any of its findings. Counsel did not reference comments from Judge Hoyt or indicate the nature of his ruling. In sum, Petitta's motion makes no comment on the order's content. One of the surest signs that no contempt occurred is that the content of Pettita's motion could have been written by any attorney, such as one who had never seen the content of Judge Hoyt's order. Any lawyer in the country would be able to draft the same motion, word for word, using the same public sources cited in the motion.

### D.   Petitta's counsel cannot be held in contempt for an alleged implication of Judge Hoyt's order, only by a definite and specific requirement.

In correspondence between the parties prior to 3M's Motion, Petitta's counsel asked 3M to explain on what basis they alleged Judge Hoyt's order had been violated given that all statements in the motion were supported by public information. In response, 3M's counsel admitted they "understand that [Petitta's counsel] have not placed the actual LCA opinion in the record," but 3M nonetheless claimed the presentation of these public facts violated the order by implication because of the way Petitta's counsel "structured [their] argument."[22]

---

[22] *See* Zimmerman Decl., Exhibit 5 (June 4, 2019 email from 3M's counsel).

Yet in a contempt proceeding, "a decree will not be expanded by implication or intendment beyond the meaning of its terms." *Terminal R. Asso. v. United States*, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924); *see also Carter County R-1 Sch. Dist. v. Palmer,* 627 S.W.2d 664, 665 (Mo. Ct. App. 1982) ("To support a charge of contempt for disobedience of a judgment, decree or order, the court's pronouncement may not be expanded by implication in the contempt proceeding and must be so definite and specific as to leave no reasonable basis for doubt of its meaning."). A party only commits contempt "when he violates a *definite* and *specific* order of the court requiring him to perform or refrain from performing a *particular* act or acts." *In re Reed*, 888 F.3d 930, 936 (8th Cir. 2018), *cert. denied sub nom. Briggs v. Rendlen*, 139 S. Ct. 461 (2018) (emphasis added); *see also In re Fischer,* 501 B.R. 346, 350 (B.A.P. 8th Cir. 2013) (Conduct "must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected.").

If a court seeks to enjoin a party from disclosing the existence of a sealed order, it can issue a definite and specific order to that effect. For example, in expungement actions, a court may seek to preclude any reference to a record's existence. *See, e.g., State v. M.D.T.,* 831 N.W.2d 276, 278 (Minn. 2013) (Court ordered "[a]ll official records" to "be sealed and their existence...be disclosed only by court order."); *State, City of Crystal v. S.D.G.,* A08-1390, 2009 WL 1684456, at *1 (Minn. Ct. App. June 16, 2009) (Court ordered "all records…shall be sealed and their existence shall be disclosed only by court order."). Sensitive criminal investigations can also justify such an order. For example, in a case involving the investigation of U.S Army whistleblower Chelsea

Manning, the court used specific language to prohibit all parties from disclosing the existence of a sealed order:

> The issuing magistrate judge determined that prior notice "to any person" of the Twitter Order … would "seriously jeopardize the investigation." Consequently, the magistrate judge sealed the Twitter Order and Application, and directed Twitter not to disclose their existence, or the investigation to any person unless and until otherwise ordered by the court.

*In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D),* 707 F.3d 283, 287–88 (4th Cir. 2013); *see also Karoly v. Mancuso,* 619 Pa. 486, 491, 65 A.3d 301, 304 (2013) ("The order stated that the disclosure application and the order itself were to remain sealed. Thus, it directed the MCCF not to reveal the existence of either document."). No such order was issued by Judge Hoyt in *Walton.* Indeed, Judge Hoyt specifically limited his sealing order to *the contents* of the sanctions memorandum, indicating that he fully understood the existence of the order would be disclosed in filings relating to the excessive payment agreements.

Here, with respect to Judge Hoyt's sealing order, 3M cannot show how the *Petitta* briefing "violates a definite and specific requirement of that order." *Sandipan Chowdhury v. Hansmeier,* 18-CV-3403, 2019 WL 1857111, at *3 (D. Minn. Apr. 25, 2019). Instead, 3M contends that Judge Hoyt's order should be extended by implication to prohibit not only disclosure or description of the contents of the order, but presentation of the public facts surrounding the order's existence which could lead one to speculate about the order's contents. 3M's argument is based entirely on ambiguities, "and ambiguities must be resolved in favor of the party charged with contempt." *F.T.C. v. Lane Labs-USA, Inc.,*

624 F.3d 575, 582 (3d Cir. 2010). The court must look to the text of the order, and there

is no clear and convincing evidence that the *Petitta* brief "summarize[d], characterize[d],

or otherwise describe[d]…the contents of [Judge Hoyt's] Memorandum Opinion."[23]

### CONCLUSION

It is bad enough that 3M brought a baseless contempt motion, seeking to punish

Petitta's counsel for publishing indisputably public facts. Yet 3M's motion is even more

alarming given the egregious false accusations of misconduct. Petitta's MDL counsel did

not provide a confidential document to co-counsel. Nor did Petitta's counsel extensively

describe and paraphrase the *Walton* order. Pettita's counsel did not demand production of

documents with no protection. 3M's motion is built on an intentionally false narrative, all

meant to paint counsel in a poor light. 3M cannot show by clear and convincing evidence

of a violation of any order. Undersigned Plaintiffs' counsel respectfully request

Defendants'' motion be denied.

Dated: June 13, 2019

MESHBESHER & SPENCE LTD.                    KENNEDY HODGES, LLP

/s/ Genevieve M. Zimmerman                   /s/ Gabriel Assaad
Genevieve M. Zimmerman (MN #330292)          Gabriel Assaad – *Pro Hac Vice*
1616 Park Avenue South                       4409 Montrose Blvd., Suite 200
Minneapolis, MN 55404                        Houston, Texas 77006
Phone: (612) 339-9121                        Phone: (713) 523-0001
Email: gzimmerman@meshbesher.com             Email: gassaad@kennedyhodges.com

FARRAR & BALL, LLP

/s/Kyle W. Farrar

---

[23] *See* Doc. 1950, Hulse Decl., Ex. F (11/20/2015 Walton Sealing Order)(emphasis added).

Kyle W. Farrar  (MN#397942)
1010 Lamar, Suite 1600
Houston, Texas 77002
713.221.8300 Telephone
713.221.8301 Fax
Email: kyle@fbtrial.com

***Attorneys for Plaintiffs***