# EXHIBIT 7

Electronically Filed
5/16/2019 3:07 PM
Hidalgo County District Clerks
Reviewed By: Monica Valdez

CAUSE NO.    C-5130-16-A

| | | |
|---|---|---|
| JOHN PETITTA | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | |
| | § | |
| RAY R. TREY FULP III, D.O., RAY FULP ORTHOPEDICS, P.A. d/b/a SOUTH TEXAS BACK INSTITUTE AND ORTHOPEDICS, JAVIER BARBOSA, JAVIER BARBOSA, P.A., VHS BROWNSVILLE HOSPITAL COMPANY, LLC d/b/a VALLEY BAPTIST MEDICAL CENTER-BROWNSVILLE, 3M COMPANY AND ARIZANT HEALTHCARE, INC. | § § § § § § § § § | HIDALGO COUNTY, TEXAS

92nd JUDICIAL DISTRICT |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL

Shortly after Plaintiff's Motion to Compel was filed, counsel for 3M demanded that Plaintiff withdraw the motion, claiming the brief violated a sealing order originating in the *Walton v. 3M* lawsuit in the U.S. District Court for the Southern District of Texas, as well as other unspecified sealing orders. Plaintiff's Motion to Compel discussed the grossly excessive payments to fact witnesses in the *Walton* lawsuit, as well as the existence of a sealed opinion on a motion for sanctions by the *Walton* plaintiff. Plaintiff files this supplemental brief to demonstrate that every fact asserted in Plaintiff's motion is supported by non-confidential sources and does not disclose any sealed information.

1

# ARGUMENT

I. **Non-Confidential Deposition Testimony Shows 3M's Counsel Acted Improperly by Paying Non-Party Fact Witnesses under Unethical Agreements.**

In the first filed Bair Hugger cases in 2015, 3M's counsel engaged in unethical conduct with at least five subpoenaed fact witnesses, tainting their testimony through excessive payments and improper agreements. Each of these witnesses was a former executive or manager of Arizant Healthcare, the original makers of the Bair Hugger device.

The first tainted witness was Gary Maharaj, the CEO of Arizant Healthcare from 2006-2010. After Mr. Maharaj left the company, it was purchased by 3M. Since Mr. Maharaj no longer had any connection to the Defendants, the *Walton* plaintiff served a subpoena seeking his deposition, hopeful that Mr. Maharaj would have helpful information about the development of the Bair Hugger.

However, after the subpoena was served, 3M's counsel approached Mr. Maharaj on February 5, 2015 and offered him excessive compensation at $650 per hour plus expenses to provide "litigation consulting work" to the defense.[1] This agreement was ostensibly made in recognition of the knowledge Mr. Maharaj possessed, as the contract states: "Given GRM's professional work experience in his role at Arizant, GRM has agreed to act as a litigation consultant for 3M in the Walton matter."[2] 3M's counsel also provided Mr. Maharaj with free legal representation, though it is unclear why this disinterested third-party fact witness would require representation in this matter.[3] 3M's counsel also formulated a clause in which:

> GRM agrees to maintain the confidentiality of the matter and will not disclose to any person or entity, unless authorized by GT [Greenberg

---

[1] *See* Exhibit 1, Maharaj Consulting Fee Agreement
[2] *Id.*
[3] *See* Exhibit 2, Deposition of Gary Maharaj, at 14:10.

Traurig] in connection with the litigation, any data or information not previously known to and generated by him or furnished by him...[4]

Thus, after promising substantial payments to Mr. Maharaj in exchange for an agreement, 3M could effectively block all plaintiffs from discovering a variety of information from this third-party fact witness under the consulting expert privilege.

The very next day following the agreement, Mr. Maharaj executed a troubling affidavit. Despite having just been hired as a litigation consultant due to his "professional work experience in his role at Arizant,"[5] Mr. Maharaj now swore that he had no "direct knowledge regarding the following facts or issues that may or may not be applicable to this case…"[6] The affidavit then listed a variety of topics covering every liability issue under dispute. Apparently, whatever 3M's counsel was paying Mr. Maharaj for, it was not to aid 3M's defense with what he knew, given his affidavit identifying his lack of knowledge relating to "any of the factual or legal bases supporting any of Arizant or 3M's defenses to this lawsuit."[7]

3M then moved to quash Mr. Maharaj's deposition based on this affidavit.[8] At that time, 3M had not disclosed to the *Walton* plaintiff that Mr. Maharaj was a paid consultant, nor did 3M disclose that fact to the Court in its Motion. The *Walton* plaintiff filed a response which produced documentation showing Mr. Maharaj was involved the facts of this lawsuit and possessed unique relevant knowledge.[9] After the response was filed, 3M reversed course and consented to Mr. Maharaj's deposition.

---

[4] *See* Exhibit 1, Maharaj Consulting Fee Agreement.
[5] *Id.*
[6] *See* Exhibit 3, Maharaj Affidavit, para. 9.
[7] *Id,* para. 8.
[8] *See Walton v. 3M,* Doc. 76.
[9] *Id,* Doc. 80.

The *Walton* plaintiff deposed Mr. Maharaj on March 19, 2015. At this point, counsel for 3M had still not disclosed the promise of payment. Mr. Maharaj did not mention that he had been meeting with 3M's counsel, nor did he mention that while he was preparing, he was acting as a paid litigation consultant for the very matters on which he was testifying. It was only by suspicion that the plaintiff's counsel asked the following question:

> Q. Do you have any current agreements with the counsel in the room at the moment?
>
> A. I have a litigation consultant agreement with Greenberg Traurig.[10]

At this point, plaintiff's counsel suspended the deposition and asked 3M's counsel to produce a copy of the agreement.[11] After a review of the contract, the deposition continued, where it was learned that Mr. Maharaj first became aware of the lawsuit "towards the end of 2014" in a conversation with a lawyer representing 3M. Mr. Maharaj then confirmed that he only came to be represented by 3M's counsel after the *Walton* subpoena had been served.[12] At the same time, he also executed the agreement for excessive payments.

The second witness involved in this conduct was Teri Woodwick Sides, a Vice President at Arizant Healthcare who left the company in 2011. On January 28, 2015, after the *Walton* plaintiff served a subpoena on Ms. Sides, she accepted free representation from 3M's counsel and executed a consulting agreement similar to Mr. Maharaj, though she was promised $500 per hour rather than $650.[13] Ms. Sides was also promised "$5,000 per day" any time she was out of town.[14]

---

[10] Exhibit 2, Maharaj Deposition at 5:9 to 5:13.
[11] *Id.* at 5:17.
[12] *Id.* at 8:12 to 8:12.
[13] *See* Exhibit 4, Consulting Agreement of Teri Woodwick Sides.
[14] *See* Exhibit 5, Deposition of Teri Woodwick Sides, at 18:11.

4

The existence of the consulting agreement and payments had not been disclosed prior to her deposition.

Ms. Sides billed 3M over thirty thousand dollars in connection with her agreement.[15] When asked what kind of work she had been paid for, Ms. Sides claimed that "much of it was refereshing my memory a little bit."[16] Yet she admitted she had read only the plaintiff's deposition, and that she "scanned" four other depositions, but "not thoroughly."[17] Ms. Sides also stated that she did not "review any emails,"[18] and in fact stated that other than what she personally produced under subpoena, she had not reviewed any other documents.[19] She also stated there were "not very many" hours spent meeting with counsel, with only one meeting "and perhaps a few short phone calls."[20] Indeed, Ms. Sides repeatedly disclaimed the notion that she was providing any consulting services whatsoever:

> Q.	Now, going back to this litigation consultant agreement, which is Bates Number 57550, are you consulting in any way with 3M with respect to the litigation matter?
>
> MS. JACXSENS:	Object to the form. I think that's asking for some type of legal conclusion.
>
> A.	Yeah. I'm not consulting and providing expertise, but I'm -- I'm here being deposed and, you know.[21]

Much like Mr. Maharaj, all of this testimony begs the question of what 3M was paying Ms. Sides for, because according to Ms. Sides, the payments are not for any kind of consulting services, nor is it intended to compensate Ms. Sides for reviewing documents or any significant number of hours of deposition preparation. According to Ms. Sides, that sum of money is being paid simply

---

[15] Exhibit 6, Affidavit of Terri Woodwick Sides.
[16] *See* Exhibit 5, Deposition of Teri Woodwick Sides at 7:18.
[17] *Id.* at 95:2.
[18] *Id.* at 97:24.
[19] *Id.* at 98:23.
[20] *Id.* at 183:18.
[21] *Id.* at 16:14.

5

because "I'm here being deposed." *Id.* at 16:14. In fact, Ms. Sides stated that prior to executing the payment agreement, she "had a lot of questions as to what is this about, why do I need to be involved. Concerned about my time. I expressed a fair amount of hesitation of wanting to get involved…"[22] The promise of substantial payments to Ms. Sides had the effect of eliminating that hesitation.

The same agreement was made with Karl Zgoda, the lead product engineer on the Bair Hugger 750 device. During Mr. Zgoda's February 12, 2015 deposition, neither the witness nor counsel disclosed the fact that Mr. Zgoda had entered into a compensated consultant agreement. Even after plaintiff's counsel learned that two other fact witnesses -- Gary Maharaj and Teri Woodwick Sides -- were given unusually high payments for testifying in this case, 3M did not disclose that it had agreed to pay Karl Zgoda. The *Walton* plaintiff only learned that fact months later, when Mr. Zgoda appeared for deposition on July 22, 2015 in a related matter, *Timothy Johnson v. 3M Company and Arizant Healthcare*, pending in the U.S. District Court for Kansas. During this deposition, it was revealed that Mr. Zgoda had entered into a compensation agreement in the instant *Walton* matter, and that he also entered into a compensation agreement in the *Johnson* matter in Kansas.

Mr. Zgoda testified that he was being paid $150 per hour in connection with the *Walton* matter, along with $100 per hour for travel.[23] Mr. Zgoda was also provided free legal representation.[24] Like the other compensated fact witnesses, Mr. Zgoda entered into this agreement after the plan for "the deposition was already in place."[25] Also like the other compensated witnesses, Mr. Zgoda claimed that he had "not submitted any invoices for this case," despite the

---

[22] *Id.* at 185:22.
[23] *See* Exhibit 7, Deposition of Karl Zgoda in *Johnson v. 3M*, at 79:24.
[24] *Id.* at 80:21.
[25] *Id.* at 82:11.

6

fact that his consulting agreement provides for monthly invoices.[26] Instead, Mr. Zgoda gave an estimate that he would bill roughly 20 hours for each deposition.[27]

Plaintiff's counsel also learned that Mr. Zgoda sought "an increased rate" from 3M's counsel in order to appear in the *Johnson* matter.[28] In negotiating a new increased rate for the *Johnson* matter, Mr. Zgoda "asked for more," and proposed that 3M pay him $300 per hour.[29] 3M's counsel negotiated the amount down to $200 per hour.[30] However, plaintiff's counsel discovered that this fee is not based on Mr. Zgoda's current pay or actual losses, and that Mr. Zgoda does not earn $200 per hour.[31] Mr. Zgoda did not establish a loss of income of $200 per hour, or indeed any loss of income. The payments were not related to any hourly wages or fees that Mr. Zgoda ever received outside litigation. Rather, Mr. Zgoda asked for more money, and 3M provided it, simply as a means of financial inducement. Here, the fee is not only unreasonable, but the concealment of Mr. Zgoda's agreement was egregious, especially after the filing of the *Walton* motion for sanctions when it was effectively concealed from the Court. It was only through a growing sense of suspicion with the actions of 3M's counsel that *Walton's* counsel asked Mr. Zgoda about the possibility of an undisclosed agreement. Otherwise, its existence would have not been revealed.

3M provided the same financial inducement to John Rock, the former Front End Innovation Manager at Arizant and later 3M. Mr. Rock was deposed in both the *Walton* and *Johnson* matters. Shortly after his deposition in the *Walton* matter on February 19, 2015, Mr. Rock ended his employment with 3M. On July 8, 2015, after being subpoenaed in the *Johnson* matter, Mr. Rock

---

[26] *Id.* at 71:19.
[27] *Id.* at 79:18.
[28] *Id.* at 80:3.
[29] *Id.* at 83:12-17.
[30] *Id.* at 72:10.
[31] *Id.* at 84:14 to 85:18.

entered into a compensation agreement.[32] Under the agreement, Mr. Rock is being paid $350 per hour.[33] Much like Mr. Zgoda, Mr. Rock cannot show any direct loss of income, nor can he show that he earns $350 per hour. In fact, the amount he is being paid by Greenberg Traurig dwarfs his former compensation at 3M of $250,000[34], which is the equivalent of $119 per hour.[35] Yet the rate paid by 3M is equivalent to an annual salary of $730,450, approximately three times greater than the income paid to Mr. Rock outside litigation. This grossly excessive payment was a flagrant departure from ethical rules on reimbursement to a fact witness.

Finally, 3M created the same improper agreement with Gary Hansen, former research and development engineer for Arizant. Mr. Hansen's deposition was taken on August 27, 2015 in the *Johnson v. 3M* matter pending in Kansas. Mr. Hansen was previously deposed in *Walton*, and he is a fact witness of vital importance in all Bair Hugger lawsuits. During the deposition, plaintiff's counsel learned that 3M created a grossly excessive compensation agreement with Mr. Hansen as well. Under the agreement, 3M agreed to pay Mr. Hansen $350 per hour.[36] The agreement is not specific to any one lawsuit, but applies to consulting services on all "Bair Hugger matters," including the instant lawsuit.[37]

The consequences of 3M's excessive payments are not confined to any one case. These payments have tainted crucial witnesses, calling into question the reliability and bias of their testimony. 3M's strategy of hiring every key fact witness as a paid consultant is deeply troubling, and the problem is magnified by the suspicious timing, the excessive payments, the problematic

---

[32] *See* Exhibit 8, Deposition John Rock in Johnson v. 3M, at 10:24.
[33] *Id.* at 12:24.
[34] *Id.* at 13:9 to 13:13; 14:21 to 15:6.
[35] *See* https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/computing-hourly-rates-of-pay-using-the-2087-hour-divisor/
[36] Exhibit 9, Hansen Consulting Agreement
[37] *Id.*

8

affidavits, and the bad faith lack of disclosure. Evidence relating to these types of agreements and 3M's payment of witnesses is relevant and discoverable in this case.

### II.     The Existence of a Sealed Memorandum on the *Walton* Motion for Sanctions is not Confidential.

3M's counsel seems to complain that the Plaintiff's brief was improper because it disclosed the existence of a sealed opinion on the *Walton* sanctions motion. Plaintiff's motion to compel stated, "the *Walton* court issued an opinion on Plaintiff's motion, which unfortunately cannot be shared as it remains under seal."[38] This fact is not confidential. Indeed, it is published on the PACER docket report:

| 12/22/2015 | 224 | ORDER FOLLOWING TELEPHONE SCHEDULING CONFERENCE held on December 22, 2015 at 8:30 a.m. Appearances: Ben W. Gordon, Mark Bankston, Jerry Blackwell, (Court Reporter: B. Slavin). The parties discussed the use of the Courts sealed Memorandum on the plaintiff's motion for sanctions. Instructions were relayed.(Signed by Judge Kenneth M. Hoyt) Parties notified.(chorace) (Entered: 12/22/2015) |
|---|---|---|

The *Walton* court's sealing order is limited to disclosure of the contents of the order. Under the order, the parties must not "summarize, characterize, or otherwise describe in a public communication or court filing *the contents* of this Court's October 29, 2015, Memorandum Opinion."[39] Plaintiff's motion simply points to the existence of the order, as reflected on PACER, and specifically noted that it cannot be shared with this Court. The unavailability of this opinion makes discovery of these facts even more important in this case. Yet 3M refuses to produce any discovery on these issues, even withholding the responsive non-confidential materials relating to their witness payments. 3M's refusal is meant to conceal these damaging facts in this case.

---

[38] *See* Plaintiff's Motion to Compel, p. 5.
[39] Exhibit 10, *Walton* Order on Sealing. (emphasis added).

## CONCLUSION

The factual assertions made by Plaintiff concerning Request for Production No. 17 and 3M's conduct with fact witnesses were drawn entirely from public sources, as was the existence of the sealed *Walton* memorandum. Based on this record, this Court should compel discovery regarding agreements and payments to witnesses.

Respectfully submitted,

Dated: May 16, 2019

| **GARCIA & MARTINEZ, L.L.P.**<br><br>Alberto T. Garcia III<br>State Bar No. 00787515<br>6900 N. 10th Street, Suite 2<br>McAllen, Texas 78504<br>Phone: 956-627-0455<br>Fax: 956-627-0487<br>Email: albert@garmtzlaw.com | **FARRAR & BALL, LLP**<br><br>*/s/ Kyle Farrar*<br>Kyle Farrar<br>State Bar No. 24034828<br>1010 Lamar, Suite 1600<br>Houston, Texas 77002<br>Phone: (713) 221-8300<br>Fax: (713) 221-8301<br>Email: Kyle@fbtrial.com |
|---|---|
| **THE JULIAN C. GOMEZ LAW FIRM**<br><br>Julian C. Gomez<br>State Bar No. 24027326<br>1602 Dulcinea<br>Edinburg, Texas 78539<br>Phone 956.682.6959<br>Facsimile 956.971.8389<br>Email: jcg@jcglf.com | **KENNEDY HODGES, LLP**<br><br>Gabriel Assaad – *Pro Hac Vice*<br>711 W. Alabama Street<br>Houston, TX 77006<br>Phone: (713) 523-0001<br>Email: gassaad@kennedyhodges.com |
|  | **MESHBESHER & SPENCE, LTD.**<br><br>Genevieve M. Zimmerman – *Pro Hac Vice*<br>1616 Park Avenue South<br>Minneapolis, MN 55404<br>Phone: (612) 339-9121<br>Fax: (612) 339-9188 |

|  | Email:  gzimmerman@meshbesher.com |
|---|---|

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, a copy of the foregoing brief was served upon all counsel of record.

        */s/ Kyle Farrar*
        Kyle Farrar