```
 1                    UNITED STATES DISTRICT COURT

 2                       DISTRICT OF MINNESOTA

 3       ------------------------------------------------------
                                    )
 4                                  )
         In Re:  Bair Hugger Forced Air  )  File No. 15-MD-2666
 5       Warming Devices Products    )     (JNE/DTS)
         Liability Litigation        )
 6                                   )  Friday, June 28, 2019
                                     )  Minneapolis, Minnesota
 7                                   )  Courtroom 9E
                                     )  9:12 a.m.
 8                                   )
                                     )
 9       ------------------------------------------------------

10              BEFORE THE HONORABLE DAVID T. SCHULTZ
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
11                    (STATUS CONFERENCE)

12       APPEARANCES

13       FOR THE PLAINTIFFS:        MESHBESHER & SPENCE LTD.
                                    Genevieve M. Zimmerman
14                                  1616 Park Avenue
                                    Minneapolis, Minnesota  55404
15
                                    CIRESI CONLIN LLP
16                                  Michael A. Sacchet
                                    225 South Sixth Street, #4600
17                                  Minneapolis, Minnesota  55402

18                                  KENNEDY HODGES LLP
                                    Gabriel Assaad
19                                  4409 Montrose Boulevard, #200
                                    Houston, Texas  77006
20
         FOR THE DEFENDANT:         BLACKWELL BURKE P.A.
21                                  Benjamin W. Hulse
                                    Ted Hartman
22                                  431 South Seventh Street, #2500
                                    Minneapolis, Minnesota  55415
23
         COURT REPORTER:            Renee A. Rogge, RMR-CRR
24                                  300 South Fourth Street, #1005
                                    Minneapolis, Minnesota  55415
25
```

Proceedings recorded by mechanical stenography;
Transcript produced by computer.

1                    **P R O C E E D I N G S**

2                        **IN OPEN COURT**

3                          *   *   *

4              THE COURT:  All right.  Let's go on the record.

5              All right.  We're on the record In the Matter of

6      Bair Hugger, MDL No. 15-2666.

7              Counsel for the plaintiffs, would you note your

8      appearances for the record, please?

9              MS. ZIMMERMAN:  Good morning, Your Honor.

10     Genevieve Zimmerman for plaintiffs.

11             THE COURT:  Good morning.

12             MR. ASSAAD:  Good morning, Your Honor.  Gabriel

13     Assaad for the plaintiffs.

14             THE COURT:  Good morning.

15             MR. SACCHET:  Good morning, Michael Sacchet.

16             THE COURT:  Good morning.

17             And for the defendant.

18             MR. HULSE:  Good morning, Your Honor.  Ben Hulse

19     for 3M.

20             MR. HARTMAN:  Ted Hartman for 3M.

21             THE COURT:  Good morning to all of you.

22             All right.  A couple of things.  First of all, I

23     have skimmed what was filed, but I will be up front.  I was

24     away until last night at a judicial conference, so I am

25     perhaps not as intimately aware of the contents of this as I

 1    would otherwise be.  So just know that.

 2             More importantly, I was with Judge Ericksen at

 3    this conference.  Again, it has nothing to do with this

 4    case.  But she made an observation that she wanted me to

 5    pass along or attend to about the documents that have been

 6    filed that are under -- well, they're covered by the

 7    protective order under seal currently.  She wanted to make

 8    sure that I talked to you about that.

 9             They are now, first of all, they are now sealed,

10    correct?

11             MS. ZIMMERMAN:  The PowerPoint, yes, Your Honor,

12    is sealed.

13             THE COURT:  Yes.  Okay.  We're talking about the

14    document that -- all right.  Now, and the issue I think is

15    they were displayed during the trial, right?

16             MS. ZIMMERMAN:  And they were also displayed

17    during the four-and-a-half-hour reconsideration motion that

18    we had on the 12th of June.

19             MR. HULSE:  They were not displayed at trial, Your

20    Honor.  They were excluded from evidence at trial.

21             THE COURT:  Okay.  Well, in any event, this is not

22    Judge Ericksen's words.  These are sort of my words.  And I

23    am not suggesting that Judge Ericksen is the bear, but you

24    are kind of poking the bear with this one in that you may

25    well be right that somehow this is waived and they shouldn't

1    be under seal.  I don't know.  Just don't use self-help on

2    that.  If you want to bring a motion, or if there's been a

3    motion, the court will rule on that, but I think the message

4    that I was hearing from Judge Ericksen was don't file those

5    particular documents, which I think have been the subject of

6    some consternation, without filing them under seal until

7    such time as the court rules on a motion itself.  Okay?

8         MS. ZIMMERMAN:  Thank you, Your Honor.  I think

9    that from the plaintiffs' perspective we're probably not,

10   frankly, prepared to argue this today.

11        THE COURT:  Right.  No, I don't expect you to, but

12   go ahead.

13        MS. ZIMMERMAN:  But to the extent that there is

14   any kind of confusion, what has been filed is a PowerPoint

15   that has excerpts that defense counsel has made some

16   objection to that do come from sealed documents.

17        THE COURT:  Right.

18        MS. ZIMMERMAN:  They have been on notice since

19   February 21st, when we filed our objection to their motion

20   for reconsideration, what documents we intended to rely upon

21   in our opposition.  All of those documents are contained

22   within our -- our exhibits.

23        In addition, if you look at Pretrial Order No. 7,

24   this court and Judge Ericksen have specifically said that

25   documents that are displayed and used in public hearings are

1    not confidential documents.  So I think that -- and I don't

2    want to slice the hair too finely here.

3              THE COURT:  Yeah.

4              MS. ZIMMERMAN:  But the document itself, the -- so

5    the underlying documents that are excerpted from --

6              THE COURT:  Right.

7              MS. ZIMMERMAN:  -- those have not been filed

8    publicly.  The PowerPoint, which we offered to the court and

9    which was received without objection, was filed.  Again, it

10   was without objection.  And from our perspective, it is

11   necessary that it be part of the formal record in the event

12   that we go on appeal.  So it was offered; it was received;

13   we filed it.

14             And I understand, I think, what Your Honor is

15   trying to communicate, but I do think that at least from our

16   perspective there is also a difference between the

17   underlying documents themselves and the PowerPoint that was

18   formally presented, you know, offered, received, and now is

19   part of the record, so --

20             THE COURT:  It may well be.  I don't know.  But

21   it's not -- I guess what I am saying or at least what I am

22   hearing -- and I will give you a second in a second,

23   Mr. Hulse -- I don't think there's any question that the

24   document is part of the record for purposes of appeal.  And

25   I haven't gone back to reread Pretrial Order No. 7.  As a

1    practical matter, there's a difference at least in my

2    mind -- I don't know what Judge Ericksen would say --

3    between something that gets displayed in a motion hearing

4    where, frankly, nobody is at, not that my intern back there

5    is a nobody, but I'm saying no public members are present.

6    That's different from having it being filed on PACER and

7    accessible that way.  So -- but I think the document is part

8    -- I assume the document is part of the record, but right

9    now it's not accessible to the general public on PACER.

10               But, Mr. Hulse, do you have any comment?

11               MR. HULSE:  Your Honor, if I may just take three

12    minutes and quickly use the projector?

13               THE COURT:  Sure.  I'm not deciding anything.

14               MR. HULSE:  Understood.  And that's part of what

15    we were getting at.  Our viewpoint is if plaintiffs wish to

16    get reconsideration on Judge Ericksen/Judge Noel's sealing

17    orders that there's a mechanism under the rules for doing

18    that, that it's not appropriate for them to just decide that

19    they're not going to follow those orders.

20               And that's particularly in light of this minute

21    entry from Your Honor where we're talking about at least one

22    of the same documents, the Bair Paws document, where the

23    plaintiffs included an excerpt from it in their *Gareis*

24    appellate court brief and then said at the time, and I take

25    this at face value, that it was an accident.  And Your Honor

1   said in this -- in the court minutes, "Should any document

2   sealed by order of this court be publicly filed in any

3   future proceeding in this court, the responsible filing

4   attorney will be subject to monetary or other sanctions."

5   To us what happened last Friday is clearly within the scope

6   of this order.  It was a public filing of under-seal

7   materials.

8          So, again, I'm not -- I'm not standing here today

9   asking this court to enter sanctions against plaintiffs'

10  counsel for that.  That will be the subject of separate

11  briefing.  But there has been a warning on this.

12          And two other things -- or one other thing really.

13  So the key argument that plaintiffs' counsel have made here

14  is because they put these documents through their own

15  PowerPoint in front of the court -- of course, there are no

16  cameras allowed in the courtroom, so people --

17          THE COURT:  Other than that one.

18          MR. HULSE:  Right.  Exactly.  Other than that one.

19  But people can't take pictures of it.  There's a difference

20  between displaying something in a courtroom and then filing

21  it on the public record.  These same documents they properly

22  filed under seal in connection with their -- their

23  opposition to the reconsideration motion, so they are part

24  of the appellate record if this goes up on appeal.  The

25  PowerPoint itself is not evidence, of course.  The court --

1   Judge Ericksen did not admit it as evidence.  The court

2   received copies of it, but did not admit it, and the court

3   did not tell plaintiffs' counsel that they had the right to

4   file it.

5           And then the one other thing too, their argument

6   too, this is an argument that they have repeatedly made to,

7   previously, to Judge Noel and to Judge Ericksen too saying,

8   you know, the information on these documents -- they

9   specifically addressed the Bair Paws document -- was

10  discussed at length in the hearing regarding the respective

11  motions for which each was filed in support.  This is

12  from -- this is from the MDL master docket.  They argued the

13  same thing again about the Bair Paws document in *Gareis*.

14  And in *Gareis* Judge Noel overruled that objection and sealed

15  the Bair Paws document.  And then in the master docket Judge

16  Ericksen -- this happened previously.  Judge Ericksen,

17  actually, it's the only time she overruled Judge Noel in the

18  case.  Judge Noel had unsealed -- or had unsealed the Bair

19  Paws document.  Plaintiffs -- we sought to have that

20  overturned.  Plaintiffs argued again this document was

21  displayed at a public hearing, and Judge Ericksen overruled

22  that objection.

23          So regardless of their interpretation of PTO-7,

24  which they've spent three years, much more recently,

25  within -- within the last year, Judge Ericksen has

1    specifically addressed this issue, this argument, and

2    rejected it.  And they know that.

3                    THE COURT:  Okay.  Very well.

4                    So here's -- here's all I'm going to say further

5    on this:

6                    If you wish to bring a motion affirmatively

7    seeking relief that the PowerPoint can be filed publicly,

8    you're well within your rights to do that.

9                    If you want to bring a motion for sanctions, you

10   are well within your rights to do that.

11                   All I am trying to communicate is that I think

12   Judge Ericksen has been clear in her discussions with me

13   that she'd rather not see this issue arise in the context

14   of, sort of, what I've described as self-help.  Don't just

15   file it and then, you know -- right?  So if there's

16   reference to a sealed -- the contents of a sealed document

17   or sealed document and you think it should be unsealed, by

18   all means present that issue.  Okay?

19                   MS. ZIMMERMAN:  Thank you, Your Honor.  I

20   appreciate that observation.

21                   I think that -- and we will look to see what

22   additional motions need to be brought pursuant to PTO-7, but

23   I think that the problem from our perspective is that we are

24   really in a trick box here where the parties have prepared

25   and presented PowerPoints throughout the course of this MDL

1    because it's complicated.  Medicine is complicated,

2    engineering.

3              THE COURT:  Right.

4              MS. ZIMMERMAN:  There's a lot of legal issues

5    here.  PTO-7 -- and this is going to be obviously apparently

6    the subject of additional briefing, but it really puts the

7    onus on defendants.  Once they, once -- well, frankly, on

8    both sides.  You have to talk about whether or not there's

9    going to be confidential information that may be used at a

10   hearing beforehand.  We did that by identifying all the

11   documents that we used to oppose their motion on February

12   21st.  They knew because of the binder of materials this

13   thick (indicating) what we were going to use, but they

14   didn't bring a motion to seal the courtroom ahead of time.

15   There were absolutely people in the presence -- in the

16   jury -- pardon me -- in the gallery that were not part of

17   this case.  And it's a publicly -- it's a publicly-available

18   courtroom.

19              Now, I understand the court's direction with

20   respect to self-help, and we will certainly keep it in mind,

21   but I think that there is really a difference between what

22   Mr. Hulse is suggesting, which is the underlying documents

23   that Judge Noel thought, yes, should be unsealed, and I

24   understand Judge Ericksen said, no, we are going to keep

25   them sealed, but there's a difference between those

1    underlying documents and the publicly-available, presented

2    in an open courtroom, PowerPoint presentation that we made.

3             And Pretrial Order No. 7, which I guess we will

4    get into at some point, really talks about what the process

5    is supposed to be, that when things are presented in a

6    public courtroom they are then publicly-available

7    information.  So the PowerPoint was offered, received,

8    without objection.  I don't know when defense counsel

9    intends to file theirs, but we want to make sure that it was

10   part of the record even if we offered it and it was

11   received.

12            With respect to the rest on sanctions, you know,

13   frankly, that's scheduled to be heard before Your Honor on

14   the 16th of July.  There is a related motion that we expect

15   to file on Tuesday morning on the same subject matter, and

16   we would hope that it will be heard then on the same day.

17   They should have enough time to respond.  We'd called

18   previously to see if it would be possible for Your Honor to

19   hear it in the morning, instead of the afternoon.  There are

20   a couple of us --

21            THE COURT:  What did Your Honor say?

22            MS. ZIMMERMAN:  That they would check with Your

23   Honor if it would work.

24            THE COURT:  Okay.

25            MS. ZIMMERMAN:  But it was a couple weeks ago.

 1          THE COURT:  Okay.

 2          MS. ZIMMERMAN:  There are at least two of us that

 3     are traveling internationally for depositions and expert

 4     meetings.

 5          THE COURT:  I expect that's fine.  I don't know.

 6     Hang on one second.

 7          MR. HULSE:  Yes.  My understanding is they are

 8     cross moving for sanctions against us, Your Honor, against

 9     3M's lawyers, for saying that the -- our sanctions motion

10     was false and defamatory.

11          THE COURT:  Okay.  Hang on.  We're looking at my

12     calendar.

13               (Off-the-record discussion.)

14          THE COURT:  We'll move it around so you can do it

15     in the morning on the 16th, and we'll get some notice out to

16     you.  Okay?

17          MS. ZIMMERMAN:  If you can do that, that would be

18     fantastic, Your Honor; otherwise, we will just run from here

19     to the airport.

20          THE COURT:  No, no.  Understood.  We will do that.

21          Make a note that we will have to attend to that.

22          So, anyway, to wrap up this discussion, I'm not

23     deciding anything about the PowerPoint today, but let's --

24     if it's important to the plaintiffs that the document be

25     publicly available, whether it's a PowerPoint or something

1  else, I just think you will do yourselves a favor by

2  bringing that up in a manner that allows us to address it

3  before the document is placed on PACER.  Okay?

4      MS. ZIMMERMAN:  And I think that we do have at

5  this point many, many sealed documents that are probably

6  going to need to be ruled on one way or another by Your

7  Honor.  I mean, we filed things under seal, but a number of

8  them probably shouldn't be.

9      THE COURT:  Okay.  Fair enough.

10      So the second thing, at least on my agenda, is

11  whether we have any other -- do we have any, broadly

12  speaking, discovery case management issues that we need to

13  deal with?  I'm not, frankly, aware of any, but I may not

14  be.

15      MR. HULSE:  Your Honor, just I think as a point of

16  information, as Your Honor may be aware, that there is

17  another case ongoing.  It's really the only kind of active

18  individual case, and that's in Hidalgo County, Texas.  It's

19  called the *Petitta* case.  And just purely as a way of

20  update, there was a hearing, a motions hearing last week,

21  and it does relate to the confidentiality issue, is that

22  what -- the plaintiffs have filed a motion to compel that is

23  essentially arguing that we are not entitled to

24  confidentiality on any of our documents, and so it's sort of

25  a collateral attack on confidentiality here.  So there's --

1    just by way of update, that has been argued, that is before

2    the judge.  Clearly, if he grants it, then we have a

3    problem, right, because we will have conflicting orders on

4    confidentiality and sealing in the two courts.  If he denies

5    their motion, then we are fine.  But just given that that

6    concerns the backdrop of three years of discovery and

7    extremely extensive litigation over confidentiality in this

8    court, I just thought the court should be aware that's going

9    on.

10                   THE COURT:  Okay.  Is that in -- did you say

11   Hidalgo County?

12                   MR. HULSE:  Yes.

13                   THE COURT:  So it's state court?

14                   MR. HULSE:  That's right.  Judge Singleterry in

15   state court in Hidalgo County, Texas.

16                   THE COURT:  Okay.  All right.  Anything that you

17   feel you need to say about that?

18                   MS. ZIMMERMAN:  Yes, Your Honor.  That case has

19   been pending for now nearly three years.  For the first time

20   about ten days ago defense counsel brought a motion for res

21   judicata.  There were two cases filed simultaneously within

22   I think three days of each other, one in the MDL, one in

23   state court, made very clear to defense counsel and to this

24   court that the plaintiff intended to proceed with their case

25   in Texas state court.  That was in every single joint status

1    report starting in January 2017 through the last one, which

2    I think was last December.  They understood that they were

3    -- that the plaintiff was going to prosecute his case down

4    in Hidalgo County.  Mr. Hulse has now brought a motion

5    asserting for the first time a res judicata defense, that

6    the case was decided fully and on its merits up here in the

7    MDL, despite the fact there was no answer and no discovery

8    conducted and that they knew the entire time that the case

9    was going to go forward in state court.  So that case has

10   gone up to the Court of Appeals on some of the other

11   defendant issues.  The hospital has settled in that case.

12           THE COURT:  Which court of -- now you have

13   answered the question I hadn't yet asked.  Okay.

14           MS. ZIMMERMAN:  Right.  So it's also been pending

15   down there for more than a year, so will not be part of this

16   MDL no matter what happens with the --

17           THE COURT:  Which Court of Appeals?  Texas?

18           MS. ZIMMERMAN:  Texas.

19           THE COURT:  Intermediate, the civil --

20           MS. ZIMMERMAN:  Intermediate.  Exactly.

21           THE COURT:  Right.

22           MS. ZIMMERMAN:  So essentially the hostile

23   defendants settled.  They also down there sued the

24   orthopedic surgeon.  The orthopedic surgeon brought a motion

25   to dismiss and he lost that.  He then brought an

1    interlocutory appeal on that, lost that as well.  And so as

2    of last November the case was active again.  The case has

3    been moving forward on discovery.

4              3M's counsel has brought a motion for a permanent

5    injunction before Judge Ericksen that will be heard on I

6    think August 15th, asking her to enjoin the state court from

7    moving forward on this res judicata defense, despite the

8    fact it was never decided upon the merits.  We think it's --

9    well, we responded to their motion and we think it's

10   meritless.  Pardon me.

11             THE COURT:  I was picking up on that.

12             MS. ZIMMERMAN:  Yeah.

13             THE COURT:  That you disagree.

14             MS. ZIMMERMAN:  We disagree quite a bit.

15             With respect to this confidentiality and sealing,

16   there are no sealing issues in the *Petitta* case down in

17   Texas.  We brought a motion to compel in that case because

18   they had not filed any kind of -- or served any discovery

19   responses.

20             MR. HULSE:  That's not true.  I'm sorry.  We did.

21             MS. ZIMMERMAN:  I didn't interrupt.

22             THE COURT:  Yeah.  No.  Let's -- yeah, go ahead.

23             MS. ZIMMERMAN:  So we brought a motion to compel.

24   We did exchange potential drafts of a protective order.  So

25   it's not true that plaintiffs completely opposed the

1    protective order, but defense counsel's position in that

2    case was that confidentiality issues in Hidalgo would be

3    decided by the MDL court.  That's not the way state court

4    works.  And so in Texas if you have not brought a motion for

5    a protective order before your discovery is due, there isn't

6    going to be a protective order.  We couldn't reach

7    agreement.

8            And so at this point there is a motion to compel

9    production of documents.  They have also brought a motion

10   for a protective order.  Both of those issues are under

11   advisement by Judge Singleterry in Hidalgo County.  But

12   there's no motion by defense counsel to seal any documents.

13   They have not brought a motion to seal the motion to compel

14   we brought, which is part of the basis for their sanctions

15   motion that we'll be hearing before Your Honor in a little

16   over two weeks.

17           THE COURT:  Okay.

18           MR. HULSE:  And, Your Honor, I just -- I know you

19   probably don't want to hear that much about --

20           THE COURT:  Go ahead.

21           MR. HULSE:  -- more about this.  The reason I

22   brought it up is not to argue this -- the res judicata

23   issue, which will be before Judge Ericksen, and not to -- it

24   was simply to let you know that there is a collateral attack

25   going on in Texas state court against the confidentiality

1    rulings in this court.  Plaintiffs' counsel obviously very

2    strongly disagree with the orders that have come out of this

3    court on confidentiality.  They don't like it.  They want to

4    disseminate these documents.  And they have gone into Texas

5    state court thinking that's going to be more receptive to

6    them, and they have argued that we don't have a basis for

7    confidentiality over any of our documents.  The reason it is

8    of concern to this court is precisely because if they

9    prevail there everything that we have been fighting over on

10   confidentiality for three years here is moot.  And so that

11   is, I think, a matter that should be of concern to this

12   court.

13           THE COURT:  Yeah, I don't know obviously anything

14   other than what you just said, and I certainly don't know as

15   a matter of federalism or jurisdiction what would happen

16   ultimately in that circumstance, but I'm assuming that if it

17   becomes an issue for this court it will be part of a motion

18   either before me or before Judge Ericksen, but I understand

19   why you brought it up.  I well understand your response.

20           I have litigated in Hidalgo County court, as well

21   as federal district court.  Hidalgo County is in Edinburg;

22   federal court is in McAllen?

23           MR. HULSE:  Correct.

24           THE COURT:  Yeah, I have been in both of those

25   courts.

1     MR. HULSE:  And congratulations on your result in

2  that -- that was the matter -- the pro bono matter, right?

3     THE COURT:  Yeah, that was the -- well, one of

4  them.  I also had product liability cases down there.  One

5  of them was a death penalty case before Judge Noe, so --

6     All right.  Any other discovery issues?

7     MS. ZIMMERMAN:  You know, I think that Your Honor

8  has properly observed that we're kind of in a position where

9  we're really holding.

10     THE COURT:  Kind of holding, yeah.

11     MS. ZIMMERMAN:  And we have really endeavored to

12  not just be treading water and waiting to see what happens

13  with the motion for reconsideration.  You know, I think,

14  practically speaking, while we can continue to work on the

15  buckets exercise, it's been a pretty difficult road, to be

16  honest with you, in the last couple of weeks.

17     THE COURT:  Yeah.

18     MS. ZIMMERMAN:  And -- and I think that there's

19  some -- some ground we could potentially cover, but I hate

20  to say that it's going to require more supervision than not,

21  but we're getting emails back and forth and it's, well, we

22  will provide you this list and then they say, well, no, we

23  changed our mind.  And I think, well, it doesn't seem

24  particularly productive, so --

25     You know, they were going to provide us a list of

1    the firms that hadn't responded, so we could collaborate and

2    try and get, kind of, one master list really working.  We

3    were informed on Monday they are not going to do that

4    anymore, they changed their mind last night.  And now

5    there's a list of 27 firms where we have some information

6    that we need to follow up on, which I appreciate, but, you

7    know, at 2:30 the day before the hearing that's not

8    something that I can really resolve in a meaningful way

9    before I get to be before Your Honor.

10              THE COURT:  Yeah, let me ask you this.

11              And, again, I'll give you plenty of time as well,

12   Mr. Hulse.

13              Here's the fundamental question, I guess.  When we

14   started down this road, first of all, there was no motion to

15   reconsider; and then once there was a motion to reconsider

16   that was granted in the sense that Judge Ericksen agreed to

17   hear it, I seem to recall asking the parties, you know, do

18   you want to go forward with this exercise or not.  I'll tell

19   you that, you know, purely as a matter of professional

20   interest, I find this process really interesting, but, you

21   know, that's not why you are here.

22              So I guess the question, back to both sides, is

23   now that the motion to reconsider has been argued, and I

24   don't have a good sense of when Judge Ericksen will rule,

25   and I certainly have no information on what she will rule,

```
1    but, you know, I am assuming that whatever order comes out

2    will come out in 30 or 60 days or thereabouts, do the

3    parties want to put this on hold as it were until we find

4    out what the motion to reconsider says?

5           I mean, like I said, it's -- I recognize that you

6    are in a holding pattern and that this is a lot of work,

7    and, you know, I have no desire to impose work on the

8    parties that they don't have to do immediately and that they

9    don't want to do, if that's the case.

10          So, again, I'll start with the plaintiff.

11          MS. ZIMMERMAN:  Thank you, Your Honor.

12          I still think that there's a lot of value to be

13   had in the case.  I think that, you know, this has been a

14   hard-fought litigation and it has not been less hard fought

15   in the last 60 days than it was in the first three and a

16   half years that we were here.  I think that there's a lot

17   that can be done if the parties are going to sit down and

18   kind of put our heads together as collaboratively and

19   professionally as we can.  We have not had great success

20   with that.  You know, that said, I think that we owe it to

21   the court and to the parties, including the more than 5,000

22   plaintiffs that we represent, to try to learn as much as we

23   possibly can so that if and when, and we feel confident

24   about both the motion papers that we submitted and the

25   argument that we presented to the court, that when this
```

1    court --

2              THE COURT:  Let me just say that I didn't observe

3    the motion.  I wish I had been able to, but I was unable.

4    So, anyway, go on.

5              MS. ZIMMERMAN:  Well, we would have welcomed your

6    presence, Your Honor, but it was a long morning for the

7    court reporter, I have no doubt, and for the court.  We were

8    there for nearly five hours.  It was a long hearing.  It was

9    -- it was a pleasure to be part of, but --

10             So I guess, you know, high-level information in

11   terms of what we know from the bucket process so far, there

12   are a total of around 150 or 160 Bucket 1 kind of cases

13   where there's potentially a proof of use issue.  Obviously,

14   we're going to have to get through, like, the full dispute

15   on that, but this isn't a situation where it's 10 percent or

16   20 percent or 50 percent of the universe of cases.  We

17   really have a very small fraction of folks where they are

18   saying for one reason or another, you know, they seem to

19   agree it is a Bucket 1 case.  Why they filed it, I cannot

20   tell Your Honor, but it's not a huge problem.  And I think

21   that that is, at least, as a starting point, a really

22   important kind of datapoint for us.

23             You know, there were a bunch of filings I think

24   yesterday or letters to Your Honor about the statute of

25   repose and some other issues.  Frankly, I haven't read all

1    the way through those.  I flew back myself last night,

2    but -- so I guess we'll slog through those.  They are

3    looking at the proof of use information that we have

4    submitted.

5         And I think that, you know, that there is good

6    value in trying to continue the process.  And I think that

7    these meetings informally are -- I guess they are formal,

8    but are useful, but --

9         THE COURT:  Which reminds me.  It was only formal

10    because on my calendar someone was going to call in; and if

11    they are going to call in, I've got to sit up here; if I'm

12    going to sit up here, I've got to sit up here in the robe.

13         MS. ZIMMERMAN:  In the robe.

14         THE COURT:  Right.  Go on.  Sorry.

15         MS. ZIMMERMAN:  Well, and I think somebody

16    probably saw status conference and my guess is they thought,

17    oh, I want to listen in on that, we haven't had one for a

18    bit.

19         So, you know, I think that it's a worthwhile

20    process.  You know, from our perspective we have to be a

21    little mindful of, kind of, what the goal is here, I mean,

22    and I think that, you know, the goal for everybody at some

23    point is reaching a resolution on this case.  Obviously,

24    from the defendant's perspective that goal is going to be

25    with zero dollars and all dismissals with prejudice and we

1    are all done.  We don't share that goal.  But, you know, to

2    the extent that this has the potential to almost kind of

3    back its way into a lone pine, which is, when I look at some

4    of the, you know, kind of responses we are getting, starts

5    to feel a little bit like that, you know, I don't know that

6    that is going to be particularly productive from our end.  I

7    mean, I don't think we have a real proof of product issue

8    here, not broadly.  We can deal with the 150-odd cases with

9    the Bucket 1.  But, anyways, I think we'll keep slogging

10   through.

11           MR. ASSAAD:  And I would like to add something

12   else, and I echo Ms. Zimmerman's remarks.

13           There's always going to be a reason to delay.  If

14   the motion is denied, we will argue -- or there will be a

15   need to delay for the *Gareis* appeal; and if the *Gareis*

16   appeal is -- if it comes back, it might be, you know,

17   appealed to the supreme court.  So there's always going to

18   be some reason we can justify a delay.  And, personally, I

19   think this is probably the best time to get stuff done

20   because there's nothing going on in the case.  You know,

21   personally, I think it is just a bunch of motions that have

22   nothing to do with the actual substance of the case that's

23   going on right now.  We have the time.  I think we should

24   push through it as quick as possible, because there might

25   be -- I don't know what Judge Ericksen is going to rule; but

1    if she denies their motion for a reconsideration or motion

2    for Daubert, then we are going through the bellwether

3    process and we can use this information, that if we can get

4    this done in the next month and a half, we will have a

5    chance to pick good bellwether cases that don't get

6    dismissed for product ID or statute of limitations or

7    statute of repose later on.  So my point of view is let's --

8    we have the time, nothing else is going on, let's push this

9    through as quick as possible, less delay, we can use our

10   resources on this instead of other matters, which I think

11   are not useful.

12             THE COURT:  Okay.  Very well.

13             Mr. Hulse.

14             MR. HULSE:  In this we are in agreement.  We think

15   it's --

16             THE COURT:  Would you mark that, please?

17             MR. HULSE:  Maybe I should just stop there and

18   conclude the hearing there.  It's -- for exactly the reason

19   Mr. Assaad said, if there is a denial or a partial grant,

20   something in between, we've talked about that middle of the

21   road scenario, we're going to need to pick bellwethers again

22   and this -- that was an important objective of this process.

23             THE COURT:  Yep.

24             MR. HULSE:  So I think from our perspective we

25   have -- you know, we wanted this to happen, very much still

1    want it to happen.  You know, our hope was that this was

2    going to lead to kind of culling, culling the wheat from the

3    chaff.  That I don't know, I don't know, whether it's going

4    to achieve that.  We're still trying to get there, but we

5    think the process should still keep moving likewise in the

6    interim.

7              THE COURT:  Okay.  So a couple -- one observation

8    and then some questions, I guess.  The observation -- I

9    understand about the -- it may -- the process may not cull

10   as many cases as one side might like, but, again, we're also

11   dealing with -- I think what we're dealing with in large

12   part is, you know, broadly speaking, three categories.

13   Right?  We know these cases just can't go on.  We know these

14   cases absolutely go on to at least summary judgment or

15   trial.  And then this third category of, well, there may be

16   an issue that needs further development and that may, well,

17   just by virtue of its nature that we were trying to be -- it

18   was surgery with an axe, right, and we were trying to be

19   broad and efficient.  That may result in culling, as it

20   were, fewer cases than eventually would get dismissed,

21   but --

22             Okay.  So where are we?  What do we need to do?

23   How can I help?  Again, I'll start -- you're on the P side

24   of the V, so --

25             MS. ZIMMERMAN:  Thank you, judge.

1          So we -- as I said, I'll review the letters that

2     we received yesterday from Ms. Lewis with respect to the

3     statute of repose challenges.

4          You know, Your Honor kind of outlines a process at

5     least with respect to the Bucket 1, the agreed-upon Bucket 1

6     cases.  And I think that, you know, some of those cases, if

7     everybody agrees that they are Bucket 1, are likely to be

8     dismissed with prejudice without too much fanfare.  And I

9     think it's 60 days.

10          THE COURT:  So I think procedurally, at least as I

11     know what I have here, I have spreadsheets or, yeah,

12     spreadsheets for statute of repose Bucket 1 cases.  And the

13     ball's sort of in your court to decide is do you agree or do

14     you disagree; and if you disagree, why.

15          MS. ZIMMERMAN:  Right.

16          THE COURT:  If you don't disagree, then it will

17     probably get dismissed, right?

18          MS. ZIMMERMAN:  Yes.

19          THE COURT:  Okay.  And I understand the issue

20     about Indiana.  It really, from the plaintiffs' perspective,

21     it ties the application of the statute of repose to the

22     accrual of the cause of action, which may or may not depend

23     upon either an allegation of fraudulent concealment or a

24     latent discovery or a delayed discovery issue.

25          MS. ZIMMERMAN:  Yes.

1          THE COURT:  I think the way to deal with Indiana

2     at least for now is you need to respond to the letter.

3          MS. ZIMMERMAN:  Right.

4          THE COURT:  And then -- I don't want to multiply

5     the proceedings here, but once I have both sides'

6     expressions on this I will figure out do we need argument,

7     do we need full briefing, what does the court think it

8     needs.

9          MS. ZIMMERMAN:  That sounds perfect, Your Honor.

10     And we will try to maybe reflect our, kind of, thoughts in

11     that regard toward the conclusion of our letter in response,

12     just saying whether we think that these can be gone or, you

13     know, with respect to Indiana if there's going to need to be

14     more fulsome briefing to kind of address that issue.  Maybe

15     it gets set to the side for whenever we do full briefing on

16     various state issues.

17          THE COURT:  Okay.  So that's statute of repose.

18          Where are we on the -- the other side of it was

19     product ID.  And then we have the whole categorization of

20     injury-type stuff.  Where are we on the product ID?

21          MR. ASSAAD:  Before we get there, I just have a

22     question.

23          THE COURT:  Sure.

24          MR. ASSAAD:  And this is more of a logistic issue.

25     I know they filed a statute of repose, but I am wondering if

1    individual emails or letters went out to the individual

2    firms.  I know it's been globally filed, but I'm not sure

3    that everyone has been on notice that their case might be

4    dismissed in 30 days.  And I think that would be a due

5    process issue, because I don't represent all those cases,

6    you know.

7              THE COURT:  Right.

8              MR. ASSAAD:  So I'm not sure if the defendants

9    individually sent individual letters saying you have -- your

10   cases have been put on the statute of repose that's going to

11   be dismissed within 30 days, because I'm not sure everyone

12   knows that their case is on the list.

13             THE COURT:  Right.  And I'm not sure -- I haven't

14   gone back to review this -- I am not sure it was on your

15   plate to do that, however.

16             MR. HULSE:  That's plaintiffs' counsel.

17             THE COURT:  Yeah, I think that's leadership to

18   communicate --

19             MS. ZIMMERMAN:  We communicated the original

20   statute of repose challenges to each of the individual

21   firms.  We have not sent Ms. Lewis' spreadsheet or letters

22   from yesterday.

23             THE COURT:  Okay.  Well, obviously, I think you've

24   got to do that and these people do have to have an

25   opportunity to respond, but I want that all filtered through

1    leadership rather than a whole bunch of letters from the

2    court -- to the court.  Okay.

3              All right.  So where are we on the product ID

4    then?

5              MS. ZIMMERMAN:  So the product ID, Your Honor, is

6    a massive spreadsheet.  It's an Excel spreadsheet with

7    multiple tabs for Bucket 1, Bucket 2, Bucket 3.  As I

8    mentioned, Bucket 1 is really not very big.  I think it's

9    about 160 cases.  I was surprised actually Bucket 2 was

10   larger than Bucket 3.  So people really feel pretty

11   confident that they have indisputable evidence of Bair

12   Hugger use.

13             I got an email, as mentioned earlier, from

14   Ms. Lewis, counsel for defendants, yesterday afternoon.  She

15   noted that there are 27 firms that they have not yet heard

16   from and that is out of the 147.  So we have most of the

17   information in.  And I know that our lists are a little bit

18   off in a couple of regards, so we will get that cleaned up,

19   but we did provide the master spreadsheet on the last

20   Monday, the 17th.  And we will continue to kind of refine

21   that as we get additional information in and we track these

22   things down from individual counsel.

23             For the most part, people did fill out the full

24   master spreadsheet that we submitted, so it was reasonably

25   easy.  There were a couple of firms that had big case

1    inventories who maybe were off by one or two columns.  So we

2    don't have latency information, for example, just yet on

3    every case, but we do have it on a lot of the cases.  So

4    that's helpful.  Also, injury information, we just thought

5    it would be easier for people if we sent out a spreadsheet

6    to start with with requesting more information than less so

7    that they could go through their files once, if possible.

8    So we have exchanged that information.  We are going to --

9    our goal is to update it essentially on a weekly basis so

10   that we can get all this information in.  I certainly hope

11   we will have it complete with these missing 25 firms or so

12   inside the next two weeks or so.

13          THE COURT:  Okay.  Mr. Hulse.

14          MR. HULSE:  Just one thing to add on the product

15   ID, Your Honor.  So we do appreciate that we got the

16   combined list from plaintiffs' counsel.  The problem is, is

17   that it's not a sortable Excel spreadsheet.  Your Honor's

18   direction was that it should be sortable at the last

19   hearing.

20          And without getting too deep into the Excel

21   details, essentially, you know, you've got the case number,

22   you've got the date.  Those are different columns.  But the

23   data is entered in different ways, different formats, so you

24   can't sort it.  It makes it a difficult spreadsheet for us

25   to work with.

1          So our request is this:  Our preference would, of

2     course, be that the plaintiffs provide us a sortable

3     spreadsheet; but if we're going to take the time to fix it,

4     it's a time-consuming matter for our staff to do, we would

5     just like to push back, push back our time table for

6     responding, so we have a little bit of extra time to fix up

7     this spreadsheet so we can work with it.

8          So my suggestion -- I proposed this to plaintiffs'

9     counsel yesterday -- is that we have until July 9th to get

10    the spreadsheet fixed up and then our 60 days -- it's

11    60 days, right -- runs from that point forward.  So it's a

12    slight extension to the time.

13         THE COURT:  Okay.  Any objection to that?

14         MS. ZIMMERMAN:  You know, I'm just trying to look

15    to see where Mr. Hulse's email was from yesterday.

16         MR. HULSE:  Yes.  Here, let me --

17         MS. ZIMMERMAN:  Because this is the first I am

18    hearing that he can't sort our spreadsheet.

19         MR. HULSE:  May I hand this up?  This is just --

20         THE COURT:  Please, yeah.

21         While you are looking, Ms. Zimmerman, I will make

22    an observation, which is -- I mean, I think it's obvious,

23    but these spreadsheets, as far as I'm concerned, well,

24    whether we call them Rule 408 or not, they are not going

25    into any evidence at any point, so you shouldn't be

1    concerned about, you know, sharing work product as it were.

2            MS. ZIMMERMAN:  No, we've -- we thought that we

3    provided a workable spreadsheet.  So if it is not sortable,

4    it's going to be not particularly useful for any of us.

5            We don't have a problem with July 9th.

6            MR. HULSE:  So my preference would be that

7    plaintiffs' counsel, particularly, because they are going to

8    be gathering information from those additional firms, would

9    make it sortable.

10           THE COURT:  Right.

11           MR. HULSE:  But, like I said, I mean, if -- if

12   that's not feasible for them, we can do it too.  It's just a

13   time-consuming thing.

14           THE COURT:  Right.  If there is -- again, here's

15   an observation more than an order as it were:  If there is

16   an easy way, because you have it, for you to just fix the

17   sortability issue, by all means do it.

18           If -- you are both in the same position -- you're

19   highly motivated to do it, why don't you do it.

20           But at least try to -- try to be on the same page

21   about the fix as it were.

22           MR. HULSE:  Right.  As Ms. Zimmerman says, we are

23   going to be using the spreadsheet.  It is in our mutual

24   interest.

25           THE COURT:  Right.

1          MR. HULSE:  So key for us was just that we have

2     the additional time built in to our response deadline for

3     this, and it sounds like that's amenable.

4          THE COURT:  Yeah.  Okay.  So that's -- I will

5     assume, and I am not going to -- I don't -- I guess we'll

6     issue a minute order on it.  The extension of time is

7     granted.  Your 60 days will run from July 9th.

8          MR. HULSE:  Thank you, Your Honor.

9          THE COURT:  Okay.  Okay.  Anything else that you

10    need to bring up, and is there anything that you need from

11    me?

12         MR. HULSE:  Just a couple things.  It might be

13    helpful if also -- well, given that you are doing a minute

14    entry anyway -- to provide a deadline for the plaintiffs'

15    firms that have not yet provided the information to

16    plaintiffs' colead counsel -- maybe that's the July 9th

17    deadline too -- that they need to get it in or otherwise

18    there would be a show cause as to why their cases should be

19    dismissed, but something to incentivize them.

20         THE COURT:  Something to, yeah, move them along.

21         MS. ZIMMERMAN:  Well, so one thing that we have is

22    that the order that Your Honor entered on I think it was

23    May 17th, a lot of -- a lot lawyers across the country

24    interpreted the 60 days as starting from then, and so that

25    would give them really till, whatever, July 17th.  We have

1    worked very hard with people to get them to step on the gas

2    and get things in early, but to the extent that you are

3    talking about a show cause order that would put the deadline

4    ten days before the existing deadline I don't think that

5    that would be appropriate.

6         MR. HULSE:  Right.  And we have no objection to it

7    being July 17th, just some date.

8         THE COURT:  Right.  We'll look at the May 17th

9    order.  I assume -- you know, look, the thing that, among

10   many, that has become very apparent to me in this job is

11   that the law of unintended consequences lives very well in

12   the courtroom.  So we'll look at May 17th.  I assume it's a

13   reasonable interpretation, and we'll respond accordingly.

14        MS. ZIMMERMAN:  And we are doing everything we can

15   to get people -- I mean, and they have been quite responsive

16   given that some folks out there -- they still have another,

17   what, month or so.

18        THE COURT:  Okay.  Anything else, Mr. Hulse?

19        MR. HULSE:  Well, I think the other issues on this

20   email are -- I understand Ms. Zimmerman was traveling

21   yesterday, so hopefully they are ones that we can just reach

22   resolution on amongst ourselves and not require the court's

23   intervention on.

24        THE COURT:  Yeah, why don't you -- why don't you,

25   when you have time to respond, do so; and if you need court

1    intervention, certainly do it.  We can always get on a

2    telephone call.  But if you don't, all the better.  In the

3    meantime I will spend some time with these submissions that

4    were filed yesterday, I guess.

5              MR. HULSE:  A couple days ago.

6              THE COURT:  Or Wednesday.  And I guess we'll wait

7    to see what the plaintiff responds on those.  All right?

8              MR. HULSE:  Right.

9              MS. ZIMMERMAN:  Yes.

10             MR. HULSE:  And I think they have 30 days, right?

11             MR. HARTMAN:  30 days.

12             MR. HULSE:  So you may not need to look at them

13   right now, Your Honor.

14             THE COURT:  Okay.  Fair enough.

15             Okay.  Anything else, Ms. Zimmerman?  Mr. Assaad?

16             MS. ZIMMERMAN:  I don't think so.  I don't know

17   if -- we'll obviously be in front of Your Honor on the 16th

18   of July.

19             THE COURT:  Right.

20             MS. ZIMMERMAN:  And I don't know if we need to set

21   another status conference formally or informally with Your

22   Honor.  The next MDL status conference with a couple of

23   hearings I think set -- or a couple motions set for hearing

24   is August 15th with Judge Ericksen.

25             THE COURT:  Okay.  Why don't we revisit that topic

1   on the 16th and see if we need anything between then and

2   August 15th.

3            MS. ZIMMERMAN:  Okay.

4            THE COURT:  And we will try and free up as much

5   time as possible, but -- yeah, I know, I know who the other

6   case is that's coming in, but we will certainly have enough

7   time for the argument.  Okay.  I think that's it.

8            Mr. Assaad, thanks for traveling up here from

9   Texas.

10           MR. ASSAAD:  The weather is much nicer here right

11  now than it is in Texas.

12           THE COURT:  I have been in Donna, Texas, in

13  August, which gets me back to that Far Side cartoon that I

14  started with.  It was hotter than blazes, my goodness.

15           All right.  We are in recess.  Thanks, everyone.

16           THE CLERK:  All rise.

17           (Court adjourned at 10 a.m., 06-28-2019.)

18                      *   *   *

19           I, Renee A. Rogge, certify that the foregoing is a

20  correct transcript from the record of proceedings in the

21  above-entitled matter.

22           Certified by:  /s/Renee A. Rogge
                            Renee A. Rogge, RMR-CRR
23

24

25