UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| In re: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 2666 (JNE/DTS) |

---

This Document Relates to All Actions

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RULE 11 SANCTIONS**

---

In its zeal to accuse Mr. Petitta's counsel of violating this Court's orders and those of the Walton court, 3M and its counsel made unsupportable factual allegations and materially altered factual evidence. 3M's conduct violates Fed. R. Civ. P. 11(b).

First, Defendant 3M's motion for sanctions (Doc. #1950) violated Fed. R. Civ. P. 11 when it accused three MDL lawyers of disclosing a confidential document to their *Petitta* co-counsel in violation of PTO 7. 3M has no evidence in support of this serious accusation of wrongdoing because it did not happen. Plaintiffs' counsel made clear in a publicly available letter to this Court dated January 30, 2019, that no documents have been shared, and that rather, Mr. Petitta requested discovery of information and documents based on publicly available transcripts. To put forever to rest any unresolved doubt as to whether the undersigned have shared confidential documents in violation of this Court's orders, attached to this

1

memorandum of law are affidavits from the three accused MDL lawyers as well as *Petitta* co-counsel provide sworn testimony that the document in question was never shared.

Second, the MDL lawyers did not use the "Bair Paws" *document* in support of their motion to compel in Texas. Instead, the MDL lawyers relied solely on information about Bair Paws that is currently publicly available on the Court's website. 3M's counsel knew that the publicly-available transcripts were the source of the Bair Paws information for the Petitta motion and therefore lacked a good faith basis to allege that the information came from the Bair Paws document.

Defendants' motion also violated Fed. R. Civ. P. 11 by accusing those same lawyers of disclosing aspects of Judge Hoyt's sealed Memorandum Order in *Walton*. 3M's counsel materially altered the language quoted on page 6 of its Motion for Sanctions in an effort to manufacture support for that argument. The removal of citations from the block quote makes it appear as though Plaintiff's Motion to Compel in *Petitta* contains a characterization of the *Walton* Order, which is prohibited by Judge Hoyt's Sealing Order, rather than the underlying *Walton* Motion for Sanctions, which is not subject to any restriction on characterization. Counsel for 3M should not be allowed to engage in willful misrepresentations of fact, especially in a motion accusing counsel of serious wrongdoing.

I.  **ARGUMENT**

A.  **3M Has No Factual Basis To Accuse Counsel Of Disclosing The Bair Paws Document To The Petitta Texas Lawyers**

3M violated Rule 11 by accusing Plaintiff's counsel of sharing the Bair Paws document with Petitta's Texas counsel. Federal R. Civ. P. 11(b)(3) requires evidentiary support for factual contentions. Sanctions under Fed. R. Civ. P. 11 are properly imposed when an attorney fails to make a reasonable investigation of the facts of a case before filing and signing a pleading. *Saturn Systems, Inc. v. Saturn Corp.*, 659 F.Supp. 868, 869 (D. Minn. 1987). By baselessly accusing three lawyers of knowingly violating the protective order by improperly disclosing a confidential document, 3M, itself and through its counsel who signed the pleading, Mr. Hulse, has violated Rule 11.

3M has no evidentiary support for its accusation that the Bair Paws document was shared with Texas lawyers. The only document cited after making that serious accusation is a January 30, 2019 letter from Ms. Zimmerman to this Court indicating that the source of the language at issue in the Texas matter was the public transcripts on this Court's website, not the confidential Bair Paws document itself. *See* 3M's Motion at 8.

One might excuse 3M's counsel for zealously representing its client and, in the heat of such representation, making an unfounded allegation. *See, e.g.*, *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 626-627 (8th Cir. 2003). But even if Mr. Hulse's knee-jerk reaction in response to the *Petitta* Motion to Compel was to accuse Mr. Petitta's counsel of disclosing a confidential document, he had no Rule 11 basis

to maintain that unsupported factual assertion by the time he filed his motion six months later.[1] *See* Hulse Ex. I (Letter from Genevieve Zimmerman dated January 30, 2019 describing in detail the use of publicly available court transcripts in Petitta discovery requests). Each of the accused lawyers as well as Petitta's Texas counsel have submitted sworn affidavits verifying that none of them shared the Bair Paws document. *See* Affidavit of Genevieve Zimmerman; Affidavit of Kyle Farrar; Affidavit of Gabriel Assaad; Affidavit of Alberto Garcia.

Zealous advocacy does not excuse 3M's accusation of misconduct without underlying factual support. Whether an attorney fails to balance zealous advocacy versus counsel's duty to the tribunal is governed by an "'objective reasonableness' standard." *Miller v. Bittner*, 985 F.2d 935, 938 (8th Cir. 1993). It is objectively unreasonable for 3M, and Mr. Hulse in particular, to continue accusing Mr. Petitta's counsel of serious wrongdoing when 3M has known for almost six months that transcripts on this Court's website are the source of the statements made in the

---

[1] Given the absence of evidence, query whether 3M's intent in filing the Motion for a Contempt Order and Sanctions was merely an attempt to influence this Court immediately in advance of the hearing on Defendants' Motion for Reconsideration, set for argument on June 12, 2019. Given the timing of 3Ms' filing, Plaintiffs' counsel will not have an opportunity to respond in advance of the reconsideration hearing. 3M has been aware of Plaintiff's request for all documents reflecting whether Bair Hugger or intraoperative warming is contraindicated in orthopedic surgeries in the Petitta matter since January and has been aware of Petitta's Motion to Compel since at least May 13, 2019. Yet, Counsel for Defendants waited nearly a month to take any action, and then the only action they took was to seek sanctions in this Court. As of June 10, 2019, Counsel for 3M has made no effort to limit the potential disclosure of the allegedly confidential information by asking the Texas court seal the Motion to Compel and supporting documents. The timing of the motion to the MDL Court, coupled with the failure to move for even a temporary seal in Texas, should be recognized by this Court as an indication that 3M's motion for sanctions was filed in bad faith.

*Petitta* discovery requests and subsequent Motion to Compel. Despite every opportunity to uncover factual support, 3M has not uncovered one iota of evidence in support of its frivolous factual assertion that MDL counsel shared the confidential Bair Paws document with Petitta's Texas lawyers.

### B. 3M Has No Factual Basis To Accuse Mr. Petitta's Counsel Of Violating This Court's Orders By Publicly Disclosing The Substance Of The Bair Paws Exhibit In Another Venue

Defendant's Motion accuses Plaintiff's counsel of "publicly disclosing the substance of the Bair Paws exhibit in another venue, in violation of this Court's orders." Motion for Sanctions at 11. That allegation is factually unsupportable, as the lawyers who signed the sanctions motion well know.

First, Mr. Petitta's counsel did not disclose the substance of the Bair Paws exhibit. As 3M has known for nearly six months, Mr. Petitta's counsel was careful to disclose only the information gleaned from the publicly-available transcripts.

Second, disclosure of information from those transcripts does not violate any order of this court. Nothing in PTO-7 requires counsel to treat as confidential publicly-available information that is not designed confidential. The protective order unequivocally states that information that is "available to the public may not be designated as Confidential Information." PTO 7 at 3. As demonstrated below, the information on the Court's website is public, and Plaintiff's counsel cannot have violated the protective order by referring to that publicly-available information.

It is understandable that 3M would not want the public to know that, for more than a decade, 3M and its predecessor, Arizant, have known how to reduce the risk of nosocomial transmission of pathogens by eliminating the need for

5

intraoperative warming. But to the extent 3M now wishes that the transcripts for the 2017 *Daubert* and summary judgment hearings that describe 3M's knowledge were sealed, 3M has had eighteen months to file a motion. 3M has not done so. 3M is in no position to now claim that the disclosure of information that is available to literally anyone in the entire world via the internet, and has been available in such an unfettered manner for *more than 18 months*, could possibly be deemed to violate PTO 7.

Indeed, the very same 3M lawyer that signed the motion for sanctions previously recognized that the public has the right to hear what was said in open court:

> "MR. HULSE: Well, we may disagree on some points, but I also know from experience with Your Honors that when it comes to summary judgment, it's a pretty restrictive what remains under seal. So we would like to follow the process. We have got a lot to go through, but of course the defendants will keep that in mind, the public's right to know."

Transcript dated October 26, 2017 at 135:22-136:3, *publicly available at* https://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/2017-1026-MotionsHearings-Volume-III.pdf. Mr. Hulse's concession that the public has the right to know *is less than ten pages* in the transcript after the advantages and disadvantages of Bair Paws were argued in open court:

4           All right.  And so now I turn your attention, and

5    this is the document that I think Mr. Hulse was really

6    forecasting for Your Honors.  What else did this company

7    know?  When did they know it?  And this is Exhibit 2 to our

8    motion papers, and what this is is a study protocol dated

9    June 23rd of 2007, and it's a study protocol for the Bear

10   Paws device.

11          Bear Paws is another device that is used to warm

12   patients to maintain normothermia, and what Al Van Duren

13   says in September of 2007 is that if you pre-warm a patient

14   before the surgical incision happens, you are capable of

15   preventing significant surgical hypothermia for three hours.

16   That means that you don't need to use forced air warming at

17   all if you get the patient warm enough.

18          That's Al Van Duren says in his document here, but

19   the other thing that he says, and we highlighted this in our

20   brief, and this is at Table 1.  He says, and this is, it's a

21   table that lists advantages and disadvantages of using the

22   Bear Paws prewarming versus the Bair Hugger during an

23   operation.

24          Advantages:  Inexpensive.  Bear Paws is safe.

25   Bear Paws can be used when intraoperative warming is

126

```
 1    contra-indicated (aortic cross clamp, orthopedic cases.) It
 2    also, one benefit, it does not contaminate the sterile field
 3    to use the Bear Paws before a surgery starts.
 4           Go down two lines on the same chart.  Again Al Van
 5    Duren.  This is not Dr. Augustine.  Dr. Augustine is not in
 6    the picture.  Bear Paws reduces the incidence of surgical
 7    site infection, and it reduces the potential for nosocomial
 8    transmission of pathogens by eliminating the need for
 9    intraoperative warming.
10           So their own corporate documents say that the Bair
11    Hugger may not be well indicated in orthopedic surgeries,
12    but they didn't tell the orthopedic surgeons about that, and
13    Mr. Van Duren in his corporate deposition, he admitted to
14    that fact as well.
15           So they say that pre warming with their own forced
16    air warming product is equally effective at keeping the
17    patient warm for at least three hours, which is the length
18    of time certainly within which the vast majority of the
19    cases before Your Honors were completed within three hours,
20    and it eliminates these known risks.  It eliminates the
21    risks, and they were known at least in 2007.
```

*See* Transcript dated October 26, 2017 at 125:4-126:21, ***publicly available*** as of

June 10, 2019 at http://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/

2017-1026-MotionsHearings-Volume-III.pdf

Neither did 3M attempt to seal the September 6, 2018 hearing in which Bair

Paws was extensively discussed in open court:

```
8              But, and I did want to make one point with respect
9    to counsel's comments that these are totally different
10   products.  Certainly, the prewarming with the Bair Paws,
11   that is defendant's product.  It is the exact same
12   application of the exact same technology.  The only thing
13   that happens there is that it's done before an operation and
14   that the warming therapy has stopped prior to an incision.
15   And according to the defendant's own documents, and I think
16   it's at Exhibit 1 of our motion, and I think I got that
17   wrong.
18              Pardon me, Your Honor.  It's Exhibit 3,
19   demonstrates that the defendants have known this for quite
20   some time, certainly well before Axline, certainly well
21   before the vast majority of cases have been filed in this
22   MDL.
23              So that is certainly not a different technology.
24   It is the defendant's own technology, and they're own
25   documents say that that is an effective way to warm patients
```

```
1    and that it avoids the kind of risks we're talking about
2    here.  And that you can see in the chart where they
3    summarize the pros and cons of using the Bair Paws
4    prewarming versus the Bair Hugger during an operation.  And
5    they say contraindicated in orthopedic surgery, they say the
6    Bair Paws avoids things like nosocomial infections and
7    contamination of the sterile field.  These are the most
8    critical issues before this Court.
```

*See* Transcript dated September 6, 2018 at 40:8-41:8; ***publicly available*** as of

June 10, 2019 at http://www.mnd.uscourts.gov/MDL-Bair-

Hugger/Transcripts/2018/2018-0906-Motions-Hearing.pdf.

The very same Bair Paws information that Defendant now claims was

wrongfully disclosed was also discussed by both parties and by Magistrate Judge

Noel at the October 24, 2017 hearing:

```
21         MS. CONLIN:  Good afternoon, Your Honors.  I'd
22    like to start with the Court's question about the FDA letter
23    this morning and the point that that FDA letter, and we
24    don't know what information the FDA had when it put that
25    letter out, but we do know that it says where intraoperative
```

```
1    warming is warranted, in cases which intraoperative warming
2    is warranted, and this is a document, an Arizant document,
3    that came from 3M's file, dated June 23rd of 2007.
4            And it's regarding the Bear Paws product, and the
5    Bear Paws product is a forced air warming device
6    manufactured and sold by 3M that warms a patient up and
7    blows hot air on them before surgery.  So Bear Paws is
8    typically used before surgery, Bair Hugger during surgery.
9    And if you look at the advantages listed there for using the
10   Bear Paws, warming up the patient before surgery, it says,
11   Can be used when intraoperative warming is contra-indicated,
12   and then in parentheses it says, Aortic cross clamp in
13   orthopedic cases.
14           And that's what we're talking about here is
15   orthopedic cases and the environment of use, and you heard a
16   little bit from Mr. Ciresi, and you're going to hear more
17   about it as we go through that the reason why orthopedic
18   surgeries are contra-indicated for a Bair Hugger device is
19   because it only takes one or two microbes, CFUs, to land on
20   that implant to cause an infection, and it distinguishes it,
21   and their experts do, too.
```

*See* Transcript of October 24, 2017 at 121:2-13, ***publicly available*** as of June 10,

2019   at   http://www.mnd.uscourts.gov/MDL-Bair-Hugger/Transcripts/2017/2017-

1024-MotionsHearings-Volume-I.pdf.

The discussion of Bair Paws continued with Magistrate Judge Nowl

questioning 3M's lead counsel, Mr. Blackwell:

5      MAGISTRATE JUDGE NOEL:  What about the 2007 3M

6   chart they showed of when Bair Hugger versus Bair Paws and

7   the benefits of the Bair Paw is that it's not going to cause

8   an infection?

9      MR. BLACKWELL:  The Bair Paws is not the Bair

10  Hugger.

11     MAGISTRATE JUDGE NOEL:  I understand that.

12     MR. BLACKWELL:  It's a separate and completely

13  different product, and --

14     MAGISTRATE JUDGE NOEL:  The point is that what

15  they were showing us in the exhibit, as I understand it, is

16  in attempting to sell the Bair Paws, one of the benefits was

17  that, unlike the Bair Hugger, it's not going to get

18  contamination into the site of an orthopedic surgery or

19  cardiac because it's just being used pre surgery and that's

20  one the reasons you should by a Bair Paw is --

21     MR. BLACKWELL:  I can't speak to the Bair Paws

22  document expressly.  I can't.  One of my colleagues will.

23  First of all, the mere fact that a scientist says something

24  doesn't even make it scientific.  The fact that a fact

25  witness or marketing person says it doesn't make it

*Id* at 161.

Faced with clear evidence demonstrating that the Petitta discovery requests and subsequent Motion to Compel do not evidence disclosure of a confidential document, 3M and the lawyers who signed the sanctions pleading resorted to fabricating facts.  Plaintiff did not share the Bair Paws document nor any non-

public information derived directly therefrom with Texas counsel. 3M's has known this for six months and levelled their accusation anyway. Because 3M and its counsel lacked any good faith basis to make such serious assertions, this Court should issue sanctions.

### C.      3M willfully altered its quoted language to support a factually-inaccurate accusation

3M's request for sanctions also accuses Mr. Petitta's counsel of failing to abide by Judge Hoyt's sealing order prohibiting any party from characterizing Judge Hoyt's October 29, 2015 Memorandum Order. The only factual support for 3M's request for sanctions are quotes from Plaintiff's Motion to Compel in *Petitta*. *See* Doc. #1950 at 6. Shockingly, 3M's counsel altered the quoted language in a way that changes the legal and factual grounds for 3M's motion for sanctions.

Altering quoted language is grounds for sanctions. *See* Fed. R. Civ. P. 11(b); *see also United States v. Wiley*, 922 F. Supp. 1405, 1412 (D. Minn. 1996) (finding Rule 11 sanctions would be warranted for altering quoted language in submission to court); *In re Cascade Energy & Metals Corp.*, 87 F.3d 1146, 1151 (10th Cir. 1996) (finding that Rule 11 sanctions were warranted when alteration of quote had the potential to change the meaning of quoted materials). Here, it seems apparent that 3M purposely altered the language to manufacture support for its contention that Petitta's counsel violated the *Walton* sealing order.

Looking at 3M's brief, one might reasonably be led to believe Plaintiff characterized Judge Hoyt's memorandum order by saying:

> The Walton plaintiff brought a motion for sanctions after
> learning that each of these witnesses had been solicited

13

> by 3M to enter into exclusive litigation contracts, provided
> substantial payments far above their customary
> compensation, and entered into restrictive agreements
> with 3M's attorneys under questionable circumstances.
> Immediately before consolidation, the Walton court issued
> an opinion on Plaintiff's motion, which unfortunately
> cannot be shared as it remains under seal. Alarming
> payments and improper relationships continued in
> another pre-consolidation lawsuit, Johnson v. 3M.

Doc. #1950 at 6. However, factual support for 3M's contention that Petitta's counsel characterized the Walton order vaporizes when the quote is considered with the altered citations in place. In particular, 3M deleted two critical footnotes from the quoted language. The proper quote, with the footnotes in red, would have been:

> The *Walton* plaintiff brought a motion for sanctions after
> learning that each of these witnesses had been solicited
> by 3M to enter into exclusive litigation contracts, provided
> substantial payments far above their customary
> compensation, and entered into restrictive agreements
> with 3M's attorneys under questionable circumstances.[6]
> Immediately before consolidation, the *Walton* court issued
> an opinion on Plaintiff's motion, which unfortunately
> cannot be shared as it remains under seal.[7] Alarming
> payments and improper relationships continued in
> another pre-consolidation lawsuit, Johnson v. 3M.

(emphases added). The deletion of footnotes "6" and "7" from the block quote materially alter the import of the quoted language.

Footnote 6 was a citation to Plaintiff's Motion for Sanctions in *Walton*, not Judge Hoyt's Memorandum Order. *See* Hulse Ex. H. at 5. Footnote 7 was a citation to the Memorandum Order. *Id*. The citation to the Memorandum Order was for a single non-controversial sentence that discloses no more than what is ascertainable to anyone who looks up *Walton* on PACER: an Order was issued but unfortunately cannot be shared because it is under seal. By deleting the citations and then

14

arguing the entire paragraph was a characterization of Judge Hoyt's sealed Memorandum Order, 3M fundamentally altered the meaning of the statement to support its argument that plaintiff's engaged in sanctionable conduct.

The alteration is "material" because without the alteration, counsel for 3M would have no basis to argue Petitta's counsel violated Judge Hoyt's sealing order. That sealing order contains two different levels of restrictions on information. Hulse Decl., Ex. F, 11/20/2015 Walton Order.   First, it says, as 3M quoted in its brief:

> 1. Unless prior leave of this Court is granted, neither the parties nor their counsel shall summarize, characterize, or otherwise describe in a public communication or court filing the contents of this Court's October 29, 2015, Memorandum Opinion that was filed under seal in this Court.

Hulse Decl., Ex. F, 11/20/2015 Walton Order.   But Judge Hoyt's sealing order contains a lesser restriction on use of information related to the other documents associated with the Walton Motion for Sanctions:

> 2. Any motions, briefs or memoranda submitted herein and pertaining to the October 29, 2015, Memorandum Opinion should be filed under seal.

*Id*. Importantly, Judge Hoyt's sealing order does not restrict counsel from "summariz[ing], characteriz[ing], or otherwise describ[ing]" their own Motion to Compel.

If 3M wanted Judge Hoyt to restrict counsel's ability to "summarize, characterize, or otherwise describe" the *Walton* "motions, briefs or memoranda," 3M should have asked Judge Hoyt to expand paragraph 1 of his sealing order to include

15

the "motions, brief or memoranda" in addition to the Memorandum Order. But 3M did not do so. Moreover, the sealing order does not restrict Petitta's counsel from using and relying on other non-confidential documents, such as depositions, to support its characterization of 3M's behavior. That is exactly what Petitta's Supplement to his Motion to Compel did to support the other statements in that motion, including those cited by 3M as "evidence" of counsel's violation. Moreover, Petitta's counsel provided 3M with a supplemental filing containing additional non-sealed support for the language in the Petitta Motion. Only by materially altering the content of quoted language could 3M attempt to argue that Petitta's counsel violated Judge Hoyt's sealing order. Plaintiff's respectfully request that the Court issue an appropriate sanction.

## CONCLUSION

3M violated Rule 11 by filing a motion that relies on false and unsupported factual assertions accusing Petitta's counsel of violating PTO-7. 3M's brief also violated Rule 11 by materially altering quoted material in an effort to make it look like Petitta's counsel violated Judge Hoyt's sealing order. This Court should sanction 3M for its repeated violations of Rule 11.

Dated: July 2, 2019

MESHBESHER & SPENCE LTD.                    KENNEDY HODGES, LLP

/s/ Genevieve M. Zimmerman                   /s/ Gabriel Assaad
Genevieve M. Zimmerman (MN #330292)          Gabriel Assaad – *Pro Hac Vice*
1616 Park Avenue South                       4409 Montrose Blvd., Suite 200
Minneapolis, MN 55404                        Houston, Texas 77006

Phone: (612) 339-9121                            Phone: (713) 523-0001
Email: gzimmerman@meshbesher.com                 Email: gassaad@kennedyhodges.com

FARRAR & BALL, LLP

/s/Kyle W. Farrar
Kyle W. Farrar  (MN#397942)
1010 Lamar, Suite 1600
Houston, Texas 77002
713.221.8300 Telephone
713.221.8301 Fax
Email: kyle@fbtrial.com

***Attorneys for Plaintiffs***