IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN RE: BAIR HUGGER FORCED AIR
WARMING DEVICES PRODUCTS
LIABLITY LITIGATION                    MDL:  15-2666 (JNE/DTS)

This Document Relates to:

*Petitta v. 3M Co.*, 16-cv-3878

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A
PERMANENT INJUNCTION BARRING PLAINTIFF JOHN PETITTA FROM
RELITIGATING HIS CLAIMS IN STATE COURT**

## INTRODUCTION

The All Writs Act, 28 U.S.C. § 1651(a), and the Relitigation Exception to the Anti-Injunction Act, 28 U.S.C. § 2283, authorize this Court to protect its final judgments and res judicata principles by enjoining state court proceedings. The Court should exercise its authority here by permanently enjoining Plaintiff John Petitta from relitigating claims in Texas state court that he previously dismissed with prejudice. If the Court does not exercise its statutory authority, Petitta and his counsel will continue to use the Texas state court action to collaterally attack this Court's rulings and attempt to undermine the coordinated discovery efforts in this MDL.

Other MDL courts have exercised their statutory authority to prevent state court litigation from undermining coordinated proceedings and collaterally attacking the Court's pretrial orders. *See, e.g.*, *In re Rezulin Prods. Liab. Litig. (MDL No. 1348)*, 223 F.R.D. 109, 119 (S.D.N.Y. 2004) (granting injunction as "necessary and appropriate in aid of [the MDL court's] jurisdiction so as to prevent the frustration of its prior discovery orders, ensure the preclusive effect of its order dismissing the actions of plaintiffs who willfully disregarded those prior orders, and to prevent a multiplicity of actions"); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1982) (affirming injunction based on district court's findings that plaintiffs' attorneys had "taken, and manifested an intention to continue to take, actions threatening this court's exercise of its proper jurisdiction and the effectuation of its judgments, by filing and threatening to file duplicative and harassing litigation in the courts of various states and by seeking therein orders disrupting the proceedings in M.D.L. 310").

In his Opposition, Petitta argues that he never meant to stipulate to dismissal with prejudice. But it was Petitta himself, through his counsel, who proposed and then filed a stipulation to dismiss his claims in this Court with prejudice. Petitta was represented in his federal court case by one of the three Co-Lead MDL Plaintiffs' Counsel and it was his counsel who proposed a stipulation of dismissal with prejudice. Hulse Decl. DX3 (Apr. 5, 2017 email from Levin Papantonio to 3M counsel attaching stipulation for dismissal with prejudice). In the April 20, 2017 Joint Agenda, Co-Lead Counsel and Defendants' counsel informed this Court that Petitta's federal case "was dismissed with prejudice," again confirming that there had been no mistake. Zimmerman Decl. PX5, Joint Agenda at 9. Under a clear Eighth Circuit law, Petitta's stipulation effectuated a final judgment and adjudication on the merits of his claims. *White v. Nat'l Football League*, 756 F.3d 585, 595-96 (8th Cir. 2014) ("[W]e agree with those circuits that have held that a stipulated dismissal constitutes a 'judgment' under Rule 60(b)."). Petitta's newfound contention that he was mistaken in agreeing to a dismissal with prejudice is further undermined by his failure to file a timely motion to set aside the judgment pursuant to Rule 60(b).

Plaintiff's primary legal argument is that, under the Supreme Court's decision in *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the dismissal of his federal court claims with prejudice does not preclude him from relitigating those same claims in Texas state court. He is incorrect. As discussed below, *Semtek* never held that Rule 41 dismissals with prejudice lack res judicata effect in state court. Moreover, the Supreme Court held that a federal court may enjoin state court proceedings when allowing those state court proceedings undermines the interests of the federal court. *Semtek*, 531

U.S. at 509. That is indisputably the case here, where Petitta and his counsel are attempting to use the Texas state court action to win a "re-do" of MDL discovery.

Even assuming that state law, rather than federal common law, determines the preclusive effect of Pettita's dismissal with prejudice, his state court claims are still barred. Texas law would apply under the principles set out in this Court's September 10, 2018, order in *Axline v. 3M Co.,* Case No. 17-cv-00511, and other choice-of-law rulings. Under Texas law, Petitta's claims are barred by res judicata. (Petitta does not address Texas law or argue to the contrary). Even if the Court were to apply Minnesota law, Petitta's claims are still barred. He cites no Minnesota case supporting his contention that only final adjudications that address the substance of his claims carry a res judicata effect.

For all these reasons, Defendants respectfully request that the Court enjoin Petitta from continuing to litigate his claims against 3M and Arizant in Texas state court.

## ARGUMENT

Federal courts have broad discretion in deciding whether to issue an injunction under the Relitigation Exception to the Anti-Injunction Act. *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146-47 (1988). The Relitigation Exception rests on the idea that federal courts should not be forced to rely on state court application of res judicata or estoppel principles to protect federal court judgments and decrees. *See Id.* In deciding whether to exercise its discretion to enjoin state court proceedings, this court must weigh the threat to federal interest against any possible unfairness which could result from the injunction. *Id. at* 146. A federal court "may enjoin state court proceedings at any point in time from the institution to the close of the final process," so long as the state court has not

ruled on the merits of the res judicata issue.[1] *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders*, 988 F. Supp. 486, 495 (D.N.J. 1997) (*quoting Hill v. Martin*, 296 U.S. 393, 403 (1935))(internal quotations omitted).

Moreover, the fact that Defendants waited until after the lifting of the stay in the Texas state court case to file this motion, and have participated in limited discovery and motion practice, is no bar to issuance of a permanent injunction. *See, e.g.*, *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 642 (2d Cir. 1987) (affirming injunction against state court proceedings despite moving party's active participation in those proceedings); *Samuel C. Ennis & Co.*, 542 F.2d 45, 48 (7th Cir. 1976) (state court defendants did not waive their right to federal injunction despite having waited a year to seek the injunction); *Ernst & Young, LLP v. Reilly (In re Earned Capital Corp.*, 393 B.R. 362, 367-69, 371 (Bankr. W.D. Pa. 2008) (granting permanent injunction against state court proceedings which had been pending for ten years), *aff'd*, *Reilly v. Ernst & Young LLP*, NO. 08-cv-01349, slip op. (W.D. Pa. May 26, 2009), *aff'd, Ernst & Young LLP v. Reilly (In re Earned Capital Corp.)*, No. 09-2845, summary order (3d Cir. 2009).

## I.    UNDER EIGHTH CIRCUIT LAW, PETITTA'S STATE LAW CLAIMS ARE BARRED BY RES JUDICATA.

Defendants have argued that Eighth Circuit law determines the res judicata effect of Petitta's stipulation of dismissal with prejudice. Under Eighth Circuit law, a stipulated dismissal with prejudice under Rule 41(a)(1)(A)(ii) constitutes a final judgment on the

---

[1] Petitta has now filed a motion for summary judgment on *res judicata* in the Texas state court, but that motion is not fully briefed and has not been heard by the Texas state court.

merits. *See White*, 756 F.3d at 595-96. Petitta responds by arguing that *Semtek* denies res judicata effect to a Rule 41(a)(1)(A)(ii) stipulation and, alternatively, that under *Semtek* state law determines the res judicata effect. He is incorrect on both scores.

First, *Semtek* did not hold that a dismissal with prejudice under Rule 41 is only "an adjudication on the merits" when the court has actually "pass[es] directly on the substance" of the plaintiff's claims, as Petitta asserts. Opp. at 5. The Supreme Court expressly *rejected* this narrow view. The Court observed: "Over the years the meaning of the term 'judgment on the merits' 'has gradually undergone change' Marcus, M. Redish, & E. Sherman, Civil Procedure: A Modern Approach 1140–1141 (3d ed.2000), and it has come to be applied to some judgments (such as the [Rule 41(b) judgment] involved here) that do not pass upon the substantive merits of a claim and hence do not (in many jurisdictions) entail claim-preclusive effect."[2] *Semtek*, 531 U.S. at 502.

Second, Petitta incorrectly reads *Semtek* to hold that state law *always* determines the preclusive effect of adjudications on the merits in diversity cases. In fact, the Supreme Court recognized a wide exception this rule – an exception that applies here:

> This federal reference to state law will not obtain, of course, in situations in which the state law is incompatible with federal interests. If, for example, state law did not accord claim-preclusive effect to dismissals for willful violation of discovery orders, ***federal courts' interest in the integrity of their own processes might justify a contrary federal rule***. No such conflict with potential federal interests exists in the present case.

---

[2] Petitta also confuses two distinct parts of Rule 41. Semtek addressed the meaning of "adjudication on the merits" under Rule 41(b). Petitta stipulated to the dismissal of his claims "with prejudice" under a different rule:  Rule 41(a)(1)(A)(ii). Neither *Semtek* nor any other case cited by Petitta has held that a Rule 41(a)(1)(A)(ii) dismissal with prejudice cannot preclude relitigation of the dismissed claims in state court.

*Id*. at 509 (emphasis added).

*Semtek* did not involve an MDL, or a plaintiff collaterally attacking the federal court's discovery orders in state court. Here, by contrast, this Court has a clear interest in the integrity of its own processes, which justifies application of federal common law. In its order creating the Bair Hugger MDL, the JPML observed that "[c]entralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other issues, and conserve the resources of the parties, their counsel, and the judiciary." MDL Dkt No. 1, Transfer Order at 2.

Mr. Petitta's counsel supported centralization on the same basis. Hulse 2d Decl. DX6, Pl. Mot. for Transfer at 9, 14 (arguing that "[f]ailing to transfer would force all the parties to take repetitive and/or redundant depositions and other pretrial discovery, as well as leading to inconsistent and conflicting rulings – particularly with respect to discovery and other pretrial matters, which have not reached maturity in the first filed cases. . . . All Plaintiffs will proceed under the same rulings and avoid conflicting decisions that may benefit one Plaintiff in one court over another."). The same counsel are now using Petitta's case to collaterally attack the MDL's rulings – in particular the Court's discovery rulings and orders sealing documents.[3] They have rejected all efforts to coordinate the Texas state

---

[3] Pretrial Order No. 7, which was stipulated to by Plaintiffs' Co-Lead Counsel, allows for confidential materials produced in this MDL to be shared with state court litigants upon entry of a protective order "with equivalent protections." MDL Dkt. No. 39, Pretrial Order No. 7, at 1. In Texas state court, Defendants moved for entry of a protective order with equivalent protections after Petitta's counsel (who include one of Plaintiffs' Co-Lead Counsel) refused to agree to those terms. With his co-counsel Ms. Zimmerman and Mr. Assaad present, Mr. Farrar argued to the Texas court: "And to say, well, we agreed to this in the M.D.L. I can assure I did not. I had no hand in that and I never would have agreed

court proceedings with the Bair Hugger MDL, and will not agree even to honor prior agreements they reached with Defendants in the MDL – including refusing to agree to the same protective order they stipulated to in the MDL. While the Texas state court has not ruled on these disputes, there is no reason this Court should "stand idly by and hope that [a] state court accords preclusive effect to its rulings before issuing an otherwise appropriate injunction." *Rezulin*, 223 F.R.D. at 120 (internal quotation omitted). As the Seventh Circuit has emphasized in the context of another situation where plaintiffs used a state court case to collaterally attack an MDL's discovery orders, in this context, "failure to issue an injunction may create the very needless friction between state and federal courts which the Anti-Injunction Act was designed to prevent":

> Litigants who engage in forum-shopping, or otherwise take advantage of our dual court system for the specific purpose of evading the authority of a federal court, have the potential to seriously impair the federal court's flexibility and authority to decide that case. *Atlantic Coast Line R.R.*, 398 U.S. at 295, 90 S.Ct. at 1747. Indeed, although an injunction is extraordinary relief, where such abuses exist, failure to issue an injunction may create the very 'needless friction between state and federal courts' which the Anti-Injunction Act was designed to prevent. *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S.Ct. 215, 218, 84 L.Ed. 537 (1940); *see also Baldwin*, 770 F.2d at 337 ("To the extent that the impending state court suits were vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief").

---

to this protective order because I think it has provisions that are just contrary to law. But even if Mr. Zimmerman or Mr. Assaad or anybody in the M.D.L. agreed to it, that is utterly irrelevant to this Court's determination of what a proper protective order in State Court, in Hidalgo County, Texas should be." Hulse 2d Decl. DX7, *Petitta* Tr. at 28:9-18. Mr. Farrar went on to argue that no protective order at all should be entered and that Defendants should be required to reproduce their documents without any confidentiality protection. *Id.* at 28:22-23 ("Our proposed order is no order.").

> For these reasons, we hold that the Anti–Injunction Act does not bar courts with jurisdiction over complex multidistrict litigation from issuing injunctions to protect the integrity of their rulings, including pre-trial rulings like discovery orders, as long as the injunctions are narrowly crafted to prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly.").

*Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202-03 (7th Cir. 1996)(internal quotations omitted).

Other MDL courts have granted injunctions where the plaintiffs were using the state court actions to collaterally attack pretrial orders and multiply the defendant's discovery obligations. *See, e.g.*, *In re Sprint Premium Data Plan Mktg. & Sales Pracs. Litig.*, Civil Action No. 10-cv-6334, 2012 WL 1302748, *5 (D.N.J. Dec. 5, 2012) (enjoining plaintiffs' prosecution of state court action where plaintiffs appeared to be using state court action to evade effect of MDL court's decision on motion to compel); *In re Inter Op Hip Prosthesis Liab. Litig.*, 174 F. Supp. 2d 648, 653-64 (N.D. Ohio 2001) ("[T]he Court is convinced that, given the current posture of this action, allowing the state court plaintiffs to pursue their parallel state court actions will frustrate the proceedings in this case and disrupt the orderly resolution of the MDL litigation."); *Rezulin*, 223 F.R.D. at 120; *Corrugated Container*, 659 F.2d at 1335.

The most efficient and just outcome here is for this Court to enjoin further litigation of Petitta's state court claims, in which case the Texas state court need not ever confront pretrial issues this Court has already confronted and resolved. Moreover, without an injunction, other plaintiffs whose claims have been dismissed from this MDL may file new state court actions, attempt to prevent removal by joining non-diverse defendants, and then

seek to challenge in state courts the preclusive effect of this Court's judgments. *See Rezulin*, 223 F.R.D. at 120. This would fragment a litigation that, thus far, has proceeded in a coordinated manner. The Eighth Circuit has recognized the district court's "even greater discretion" in managing coordinated litigation. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) (noting that "MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings"). Enjoining Petitta's state court claims against 3M and Arizant are an appropriate exercise of that discretion to protect the objectives of the MDL.

## II.   PETITTA'S CLAIMS ALSO ARE BARRED BY RES JUDICATA IF STATE LAW CONTROLS THE EFFECT OF THE STIPULATED DISMISSAL WITH PREJUDICE.

Even if Petitta is correct that state law determines the preclusive effect of his stipulated dismissal with prejudice (and he is not), his state court claims are still barred by res judicata, and this Court should grant the injunction.

### A.   Res Judicata Applies Under Texas Law.

In his Opposition, Petitta assumes that Minnesota law applies to his claims. Opp. at 6. He is incorrect. Pursuant to Pretrial Order No. 5 ("PTO 5") and applicable choice of law rules, Texas law applies. PTO 5 establishes the procedure for "direct filing" in the District of Minnesota. The order provides that in direct-filed actions:

> With regard to the determination of the applicable substantive law for any action filed in this District pursuant to this Order and/or Pre-Trial Order #1, in the event of a dispute between the parties concerning the applicable substantive law, the Court will apply Minnesota choice-of-law rules unless Plaintiff clearly identifies the following information in the initial complaint: (1) current residence; (2) date and location of surgery plaintiff claims Bair Hugger was used; and (3) the appropriate venue where the

action would have been filed if direct filing in this District were not available.

PTO 5, ¶ 2. Where a plaintiff identifies this information, the choice-of-law rules in the venue where the plaintiff would have filed his action if direct filing was unavailable will apply. *Id*.

Petitta direct-filed his federal court action. In his Short Form Complaint, he identified (1) his current residence, which is Texas; (2) the date and location of his surgery, also Texas; and (3) identified the Texas Southern District Court as the jurisdiction where the case would have been filed if direct filing was not available, and the court in which "remand trial is proper." *Petitta*, Dkt. No. 1, ¶ 6. Thus, pursuant to PTO 5, Texas's choice-of-law principles apply to his case.

Texas follows the Restatement (Second) of Conflict of Law. *See Enterprise Prods. Partners, L.P. v. Mitchell*, 340 S.W.3d 476, 480 (Tex. Ct. App. 2011). Section 146 of the Restatement provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issues, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 146.

Because Petitta's alleged injury occurred in Texas, Texas substantive law presumptively applies unless Petitta proves that another state's law should apply. *See Canal Ins. Co. v. XMEX Transp., LLC*, 48 F. Supp. 3d 958, 972 (W.D. Tex. 2014) ("Texas courts presume that other states' laws are the same as its own and the party advocating the use of a different

state's laws bears the burden of rebutting that presumption"). In determining whether another state has a more significant relationship to the case, which would warrant application of that state's law, courts consider the following factors:

> (1) the place of the injury; (2) the place where the conduct causing injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section [of the Restatement (Second) of the Conflict of Law] which the court may deem relevant to the litigation.

Restatement (Second) of Conflict of Laws § 145.

Petitta has not demonstrated that Minnesota has a more significant relationship to the case. 3M is domiciled in Minnesota, but under Texas' choice-of-law principles that single factor does not overcome the presumption that Texas law applies. *See, e.g.*, *Burleson v. Liggett Grp. Inc*., 111 F. Supp. 2d 825, 830 (E.D. Tex. 2000) (finding Texas to have the most significant relationship when the plaintiffs were Texas residents and were injured in Texas, and the products at issue were sold in Texas, even though the defendants made marketing decisions in other states). The analysis is no different than *Axline*, where this Court considered the Second Restatement factors and applied Ohio's rebuttal presumption that the law of the place of the injury applies. *Axline v. 3M Co., et al.*, 17-cv-00511, Order (Sept. 10, 2018).

### B.      Texas Law Bars Relitigation of Petitta's Claims.

Under Texas substantive law, Petitta's stipulation of dismissal with prejudice bars him from relitigating his claims in state court.

11

CASE 0:15-md-02666-JNE-DTS   Doc. 2042   Filed 07/10/19   Page 13 of 18

Like the Federal Rules, the Texas Rules of Civil Procedure distinguish between dismissals with and without prejudice. Tex. R. Civ. P. 500.2 defines "dismissed with prejudice as "a case has been dismissed and finally decided and may not be refiled," whereas "dismissed without prejudice" means a case "may be refiled."  Therefore, Petitta's express agreement to this dismissal with prejudice of his claims means those claims may not be refiled under the Texas rules.

Texas courts have also held that a dismissal with prejudice carries res judicata effect, and that a dismissal pursuant to a settlement also precludes further litigation. *Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App. 1992) ("In general, if the dismissal is with prejudice, res judicata applies. . . . [a]lso, if the dismissal is entered by agreement of the parties in pursuance of the compromise or settlement of a controversy, res judicata applies."), *writ den'd* (Oct. 21, 1992); *Murray v. Murray*, 611 S.W.2d 172, 174 (Tex. App. 1981) (determining that "a judgment of dismissal was entered by agreement of the parties in pursuance of a compromise of settlement of the controversy, and thus became a judgment on the merits."). Plaintiffs have not cited any Texas case holding that a stipulation of dismissal with prejudice lacks res judicata effect and Defendants have not found any such case. That is not surprising: any such holding would vitiate the distinction set forth in Tex. R. Civ. P. 500.2 between dismissals with and without prejudice.

The Texas test for whether the second suit is barred is straightforward: "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992). *See*

12

*also Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 77172 (Tex. 1979)

("The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on *causes of action* or defenses which arise out of the same *subject matter* and which might have been litigated.") Here, there is no serious dispute that Petitta's state court claims arise from the same subject matter as his claims in federal court. While Petitta halfheartedly asserts that "[t]he MDL case and Texas Case Involved Different Issues," Opp. at 11, he fails to identify any such distinction. The claims in his federal Short Form Complaint fully encompass his claims in Texas state court. In both cases, Petitta alleged negligence, breach of warranty, and strict liability.[4] *Compare* Fed. Cplt., Dkt. No. 1, and State Ct. Cplt, DX1. *See* Defs' Memo. ISO of Mtn. for Injunction. Just as in his federal case, Petitta alleges in his state court case that the Bair Hugger system is defectively designed and caused his periprosthetic joint infection.

Under Texas law, it is also irrelevant that Petitta filed his state court suit before dismissing his federal court suit. Res judicata is determined by the existence of a final

---

[4] Petitta incorrectly argues that *Smith v. Bayer*, 564 U.S. 299 (2011), requires that both the federal and states court cases be fully litigated to conclusion before *res judicata* applies. Opp. at 12 ("It is impossible to know what 'issues' would have been actually decided in Mr. Petitta's short-lived MDL case because no aspects of Mr. Petitta's case were actually decided on the merits."). *Bayer* says nothing of the sort. Moreover, if Petitta were correct, then a dismissal before a final jury verdict could never have *res judicata* effect. Until the verdict in both courts, there would always be some other "issue" that could be decided in the federal court case that might be different from an "issue" decided in the state court case. As the Eighth Circuit has said, the possibility that an injunction would "foreclose the opportunity for [a party] to relitigate issues in the state court . . . is not a legitimate harm which must be balanced" in deciding whether to enjoin the state action. *In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996).

judgment, not by when the second case was filed. *See Fernandez v. Mem'l Healthcare Sys., Inc.*, 896 S.W.2d 227, 230 (Tex. App. 1995) ("Because the federal case proceeded to judgment first, we apply . . . principles of res judicata.") Petitta fails to cite any Texas case supporting his position that res judicata only applies where a second case is filed after the dismissal of the first case.

For all these reasons, Texas law bars Petitta's claims.

### C.     Petitta's Claims Are Also Barred by Minnesota Law.

Even assuming that Minnesota law applies, Petitta is also barred from relitigating his claims. In Minnesota, "[r]es judicata applies when (1) there has been a final judgment on the merits, (2) the same cause of action is involved, (3) the parties are identical or in privity, and (4) the estopped party had a full and fair opportunity to litigate the matter." *Id. Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 715 N.W.2d 484, 488 (Minn. Ct. App. 2006), *aff'd on other grounds*, 732 N.W.2d 209 (Minn. 2007). All these requirements are met here.

Under Minnesota law, "a dismissal with prejudice is a final judgment on the merits." *Olson v. Christenson Law Office, PLLC*, 2018 WL 3421276, *3 (Minn. Ct. App. July 16, 2018) A judgment "can form the basis for res judicata" even when it "is disposed of on nonsubstantive grounds." *Id* (citing *Johnson v. Hunter*, A18-0166, 447 N.W.2d 871, 873 (Minn. 1989), *rev. den'd* (Sept. 26, 2018)). Petitta's state court claims court are fully encompassed within his federal court claims. His Texas state court claims are likewise brought against 3M, as well as Arizant (3M's former subsidiary, with whom it was in privity). Petitta had a full and fair opportunity to litigate the matter in federal court. It was

14

his choice to dismiss his federal case with prejudice. Nobody required him to do so. Petitta also has not cited any Minnesota case which supports his position that res judicata only applies where a second case is filed after the dismissal of the first case.

Much of Petitta's argument is focused on his argument that an injunction will deprive him of a "full and fair opportunity" to litigate his claims against 3M. But neither the Minnesota Supreme Court nor any other Minnesota court has endorsed his view that a stipulated dismissal with prejudice has no preclusive effect.[5] In *Hauschildt v. Beckingham,* 686 N.W.2d 829, 841 (Minn. 2004), the Minnesota Supreme Court held only that res judicata did not apply because the plaintiffs' second action would require "[e]ntirely different evidence." *Hartmann v. Minn. Dep't of Agric.*, No. A16-0755, 2017 WL 393892, at *5 (Minn. Ct. App. Jan. 30, 2017), dealt with collateral estoppel rather than res judicata. Indeed, the case law is against Petitta. In *Olson*, the Minnesota Court of Appeals rejected the plaintiffs' argument that res judicata did not apply to "procedural" dismissals that did not address the substance of the plaintiffs' claims. *Olson*, 2018 WL 3421276 at *3 ("Statute and caselaw hold that a procedural dismissal forms the basis for res judicata.").

Moreover, in Minnesota, res judicata applies not only to claims actually litigated but also "to claims that could have been litigated in the prior action." *Hauschildt,* 686 N.W.2d

---

[5] Petitta is also incorrect that Minnesota law requires Defendants to submit "admissible evidence" that application of *res judicata* would be equitable. In the key case Petitta cites for this proposition, *Rucker v. Schmidt*, 768 N.W.2d 408, 417 (Minn. Ct. App. 2009), the district court had applied *res judicata* to the plaintiff's lawsuit against the defendant's attorney, finding that the defendant and the attorney were in privity. The Minnesota Court of Appeals reversed for further factfinding on the privity determination. That holding has no bearing in this case, where 3M is a defendant in both cases and there is no dispute that Arizant is in privity with 3M.

at 840. Obviously, claims that "could have been litigated" have not been fully litigated to conclusion. If Petitta were correct that stipulating to dismiss with prejudice lacked res judicata effect, it would also mean that there is no difference between dismissal with and without prejudice – erasing a critical, express distinction in the Rules. It is difficult to imagine that the Minnesota Supreme Court would ever accept such an argument.

Nor would it "work an injustice" to enjoin Petitta from prosecuting his claims in Texas state court. *Olson*, 2018 WL 3421276 at *2. The Minnesota Court of Appeals found no injustice in applying res judicata where the plaintiffs' prior dismissal was based on their procedural error. *Id. at* *3. The greater injustice would be allowing Petitta to use a single state court suit to collaterally attack pretrial rulings in this MDL and more than three-and-a-half years of coordinated efforts by the parties and this Court.

For all these reasons, Minnesota law also bars relitigation of Petitta's claims.

## CONCLUSION

For the foregoing reasons, 3M respectfully requests that this Court, grant its motion for a permanent injunction barring Petitta from relitigating the claims asserted in his federal Short Form Complaint against 3M and Arizant in Texas state court.

Dated: July 10, 2019                    Respectfully submitted,


By: s/Benjamin W. Hulse
    Jerry W. Blackwell (MN #186867)
    Benjamin W. Hulse (MN #0390952)
    Mary S. Young (MN #0392781)
    BLACKWELL BURKE P.A.
    431 South Seventh Street, Suite 2500
    Minneapolis, MN 55415
    Phone: (612) 343-3200
    Fax: (612) 343-3205
    Email: blackwell@blackwellburke.com
           bulse@blackwellburke.com
           myoung@blackwellburke.com

    *Attorneys for Defendants 3M Company and Arizant Healthcare Inc.*