## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

In re: Bair Hugger Forced Air Warming
Devices Products Liability Litigation

MDL No. 15-2666 (JNE/DTS)

This Document Relates To:
*O'Haver*, No. 19-cv-00920
*Kolb*, No. 19-cv-02088
*Tye*, No. 19-cv-02089

---

## COMBINED OPPOSITION OF DEFENDANTS 3M COMPANY, ARIZANT HEALTHCARE INC. AND CURRENT AND FORMER 3M SALES REPRESENTATIVES TO PLAINTIFFS' MOTIONS TO VACATE JUDGMENT AND REMAND

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ........................................................................................... 4

ARGUMENT.................................................................................................. 6

   I.    THE COURT MAY NOT REMAND THESE CASES UNDER 28 U.S.C.
        § 1447(c) BECAUSE FINAL JUDGMENT HAS BEEN ENTERED.............. 6

   II.   IF THIS COURT NONETHELESS CONSIDERS THE MISSOURI
        PLAINTIFFS'S MOTIONS, IT SHOULD NOT SET ASIDE THE
        JUDGMENTS AND SHOULD DENY REMAND. ......................................... 7

        A.    The Healthcare Defendants Were Fraudulently Joined.............................. 9

        B.    The Sales Representative Defendants Were Fraudulently Joined............ 11

        C.    The Amount in Controversy Requirement Is Satisfied ............................ 19

   III.  THE COURT PROPERLY INCLUDED THE HEALTHCARE
        DEFENDANTS AND SALES REPRESENTATIVE DEFENDANTS
        IN THE JUDGMENT ....................................................................................... 20

   IV.  ALTERNATIVELY, THE COURT MAY SEVER AND DISMISS
        THE CLAIMS AGAINST THE HEALTHCARE DEFENDANTS ............... 23

   V.   THIS COURT ALSO SHOULD NOT DEFER THESE ISSUES TO
        THE TRANSFEROR COURTS FOR DECISION ......................................... 26

CONCLUSION ........................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 11

*Bohac v. Walsh*,
  223 S.W.3d 858 (Mo. Ct. App. 2007) ............................................... 16

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ............................................................ 11

*Budach v. NIBCO*,
  Case No. 2:14-cv-04324-NKL,
  2015 WL 6870145 (W.D. Mo. Nov. 6, 2015) ................................... 16

*Caperton v. Beatrice Pocahontas Coal Co.*,
  585 F.2d 683 (4th Cir. 1978) ............................................................ 24

*Carlson v. Extendicare Health Servs., Inc.*,
  Civil No. 05-1438 (MJD/SRN),
  2006 WL 8444702 (D. Minn. June 27, 2006)..................................... 7

*Catlett v. Wyeth, Inc.*,
  379 F. Supp. 2d 1374 (M.D. Ga. 2004) ............................................ 14

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*,
  61 F.3d 639 (8th Cir. 1995) .............................................................. 16

*Davidson v. Poppa*,
  No. 4:15-cv-00243-DGK (Apr. 12, 2019)......................................... 12

*DeGidio v. Centocor, Inc.*,
  No. 3:09CV721,
  2009 WL 1867676 (N.D. Ohio June 29, 2009) ........................... 24, 25

*Doe v. Alpha Therapeutic Corp.*,
  3 S.W.3d 404 (Mo. Ct. App. 1999) ................................................... 13

*Estate of Cummings by and through Montoya v. Comm. Health Sys. Inc.*,
  881 F.3d 793 (10th Cir. 2018) ......................................................... 1, 6

*Evans v. Wells Fargo Bank N.A*,
  No. 15-2725-STA-cge,
  2016 WL 1248972 (W.D. Tenn. Mar. 29, 2016).................................. 8

*Fahy v. Taser Intern., Inc.*,
  Case No. 4:10CV19 CDP,
  2010 WL 559249 (E.D. Mo. Feb. 10, 2010)...................................... 12

*Filla v. Norfolk S. R.R. Co.*,
  336 F.3d 806 (8th Cir. 2003) ........................................................................ 8

*Ford v. GACS, Inc.*,
  265 F.3d 670 (8th Cir. 2001) ...................................................................... 12

*Grass v. Eastern Assoc. Coal Corp.*,
  No. 2:05-0496,
  2007 WL 9718153 (S.D. W. Va. Oct. 24, 2007) ......................................... 6

*Gregorecz v. NES Rentals Holdings, Inc.*,
  No. 4:07CV2051MLM,
  2008 WL 441649 (E.D. Mo. Feb.14, 2008)................................................ 12

*Hagensicker v. Boston Sci. Corp.*,
  2012 WL 836804 (W.D. Mo. Mar. 12, 2012)............................................. 26

*Hines v. Green Tree Servicing, LLC*,
  554 F. App'x 534 (8th Cir. 2014) ................................................................ 8

*Hughes v. Sears, Roebuck & Co.*,
  No. 2:09-CV-93,
  2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009) ........................................ 25

*In re 3M Bair Hugger Litig.*,
  924 N.W.2d 16 (Minn. Ct. App. 2019)........................................................ 10

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
  MDL No. 15-2666,
  2019 WL 4394812 (D. Minn. Jul. 31, 2019) ................................2, 10, 11, 21

*In re Carter*,
  618 F.2d 1093 (5th Cir. 1980) ..................................................................... 7

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*,
  MDL No. 1203, Civ. A. 03-20611,
  2004 WL 2203712 (E.D. Pa. Sept. 28, 2004) ....................................... 14, 16

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
  MDL No. 05-1708 (DWF/AJB)
  2007 WL 2572048 (D. Minn. Aug. 30, 2007)....................................... 24, 25

*In re Minn. Mut. Life Ins. Co. Sales Pracs. Litig.*,
  346 F.3d 830 (8th Cir. 2003) ...................................................................... 19

*In re Rezulin Prod. Liab. Litig.*,
  133 F. Supp. 2d 272 (S.D.N.Y. 2001) ................................................... 14, 20

*In re Rezulin Prods. Liab. Litig.*,
  MDL No. 1348 00 Civ. 2843(LAK),
  2003 WL 21276425 (S.D.N.Y. June 2, 2003) ........................................... 25

*In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*,
  No. CIV. 13-1811 DWF/FLN,
  2013 WL 6511855 (D. Minn. Dec. 12, 2013) ............................................................... 25

*In re Zyprexa Prods. Liab. Litig*.,
  MDL No. 1596,
  2004 WL 2812095 (E.D.N.Y. Dec. 3, 2004) ................................................................. 26

*Johnson v. Parke-Davis*,
  114 F. Supp. 2d 522 (S.D. Miss. 2000) ......................................................................... 14

*Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*,
  624 F.2d 822 (8th Cir. 1980) .......................................................................................... 8

*Khaliki v. Helzberg Diamond Shops, Inc.,*
  No. 4:11-CV-00010-NKL,
  2011 WL 1326660 (W.D. Mo. Apr. 6, 2011) ................................................................ 16

*Kocher v. Dow Chem. Co.*,
  132 F.3d 1225 (8th Cir. 1997) ..................................................................................... 1, 8

*Krug v. Sterling Drug, Inc.*,
  416 S.W.2d 143 (Mo. 1967) ........................................................................................... 14

*Madewell v. Downs*,
  68 F.3d 1030 (8th Cir.1995) ..................................................................................... 21, 23

*Mayfield v. London Women's Care, PLLC*,
  No. 15-19-DLB,
  2015 WL 3440492 (E.D. Ky. May 28, 2015) ................................................................ 25

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir.1993) ............................................................................................ 16

*Moore v. Ford Mot. Co.*,
  332 S.W.3d 749 (Mo. 2011) ........................................................................................... 15

*Moua v. Jani-King of Minn. Inc.*,
  613 F. Supp. 2d 1103 (D. Minn. 2009) .......................................................................... 17

*Mueller v. Bauer*,
  54 S.W.3d 652 (Mo. App. Ct. 2001) .............................................................................. 11

*Quasius v. Schwan Food Co.*,
  No. 09-575 (JNE/JJG),
  2008 WL 49337648 (D. Minn. Nov. 14, 2008) ................................................... 3, 21, 23

*Ridings v. Maurice*,
  No. 15-00020-CV-W-JTM,
  2015 WL 1474080 (W.D. Mo. Mar. 31, 2015) ..................................................... 2, 13, 15

*Sears v. Likens*,
  912 F.2d 889 (7th Cir.1990) ...................................................................... 16

*Sinclair v. Dhaliwal*,
  2013 WL 3287119 (D. Or. June 28, 2013) ................................................... 9

*Slater v. Republic-Vanguard Ins. Co.*,
  650 F.3d 1132 (8th Cir. 2011) .................................................................... 7

*Smith v. Hendricks*,
  140 F. Supp. 3d 66 (D.C. Cir. 2015) .......................................................... 25

*Stefl v. Medtronic, Inc.*,
  916 S.W.2d 879 (Mo. Ct. App. 1996) ........................................................ 15

*Stone v. Zimmer, Inc.*,
  No. 09-80252-CIV,
  2009 WL 1809990 (S.D. Fla. June 25, 2009) ............................................. 25

*Sullivan v. Calvert Mem. Hosp.*,
  117 F. Supp. 3d 702 (D. Md. 2015) ........................................................... 24

*Sutton v. Davol, Inc.*,
  251 F.R.D. 500 (E.D. Cal. 2008) ............................................................... 25

*Varga v. U.S. Bank Nat'l Ass'n*,
  764 F.3d 833 (8th Cir. 2014) .................................................................... 11

*Walton v. 3M Co., et al.*,
  Civ. Action No. H-13-1164,
  2013 WL 3816600 (S.D. Tex. July 22, 2013) ...................................... 3, 14, 15

*Weimer v. Int'l Flavors & Fragrances, Inc.*,
  240 F.R.D. 431 (N.D. Iowa 2007) ............................................................. 17

*Welk v. GMAC Morg., LLC*,
  720 F.3d 736 (8th Cir. 2013) ...................................................................... 8

*Welkener v. Kirkwood Drug Store Co.*,
  734 S.W.2d 233 (Mo. App. E.D. 1987) ...................................................... 12

*Wright v. Newman*,
  735 F.2d 1073 (8th Cir. 1984) ................................................................... 12

*Zink v. Lombardi*,
  No. 12-04209-CV-C-BP
  2014 WL 11309998 (W.D. Mo. May 2, 2014) ............................................. 9

**Statutes**

28 U.S.C. § 1332(a) ...................................................................................... 5

28 U.S.C. § 1447(c) ............................................................................. 6, 26, 27

Mo. Rev. Stat. § 400.2-607(3) .......................................................................... 15

Mo. Rev. Stat. § 537.760 .................................................................................. 12

**Rules**

Fed. R. Civ. P. 12(h) ........................................................................................ 26

Fed. R. Civ. P. 21 ............................................................................................. 23

Fed. R. Civ. P. 60(b) .................................................................................. 1, 6, 8

Fed. R. Civ. P. 60(c) .......................................................................................... 6

Fed. R. Civ. P. 9(b) .......................................................................................... 16

## INTRODUCTION

The Court should deny the motions of Katherine O'Haver, Deborah Kolb, and Douglas and Bettie Tye (the "Missouri Plaintiffs") to vacate the judgments in their cases and remand them to state court. The Court also should deny the Missouri Plaintiffs' request for a suggestion of remand to the transferor courts.

As a threshold matter, the remand statute forbids district courts from remanding cases after entry of final judgment. *See, e.g.*, *Estate of Cummings by and through Montoya v. Comm. Health Sys. Inc.*, 881 F.3d 793, 803 (10th Cir. 2018) ("Section 1447(c) authorizes remand for lack of subject-matter jurisdiction only 'at any time before final judgment.'"). The Missouri Plaintiffs cite no case permitting plaintiffs to evade Section 1447(c)'s limitation by filing a Fed. R. Civ. P. 60(b)(4) motion,[1] and 3M has not found any such authority. At this juncture, the Missouri Plaintiffs' jurisdictional objections may only be heard on appeal.

If the Court nonetheless considers the MDL Plaintiffs' motions, it should not set aside the judgment. The MDL Plaintiffs have not carried their burden to prove, as they must on a Rule 60(b)(4) motion, that "no arguable basis for jurisdiction existed." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1230 (8th Cir. 1997). The Missouri Plaintiffs fraudulently joined their healthcare providers (the "Healthcare Defendants") and 3M's current and former 3M sales representatives in Missouri (the "Sales Representative

---

[1] The Missouri Plaintiffs do not cite Rule 60(b)(4), but presumably are moving to vacate the judgment as void under that Rule.

Defendants")[2] for the sole and obvious purpose of defeating diversity jurisdiction and evading transfer to this MDL.

This is a clear-cut case of fraudulent joinder. Plaintiffs do not and cannot allege that the Healthcare Defendants breached the medical standard of care by using the Bair Hugger system in the Missouri Plaintiffs' surgeries – which is why none of the more than 5,000 plaintiffs in this MDL sued their healthcare providers. As this Court concluded in its recent summary judgment orders, "the medical and scientific community has repeatedly rejected" the theory that the Bair Hugger system causes periprosthetic joint infections. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666, 2019 WL 4394812, at *20 (D. Minn. Jul. 31, 2019). Even if this Court concludes that the judgment should be vacated for their malpractice claims (and it should not), it should not remand *O'Haver* or *Tye*. Instead, the Court should exercise its broad discretion to sever and remand only the claims against the Healthcare Defendants, like several MDL courts and other federal courts have done in similar circumstances.

The Missouri Plaintiffs also fraudulently joined the Sales Representative Defendants. No Missouri court has extended products liability claims to sales representatives of product manufacturers, and in fact have rejected any such extension. *See, e.g.*, *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2015 WL 1474080, at *5 (W.D. Mo. Mar. 31, 2015). The Missouri Plaintiffs also lack any individualized allegations that could

---

[2] *Kolb* names former 3M sales representatives Rick McClary and current 3M sales representatives Jennifer Hicks, Jason Shaw, and Tony Benson. *Tye* names former 3M sales representative Kevin Acton.

support their claims, instead lumping in the Sales Representatives with 3M and Arizant through improper "group pleading."  As the Sales Representatives Defendants' unrebutted declarations (Exs. C-G) show, none of them was involved in the design, testing, or manufacture of the Bair Hugger system; none of them was involved in development of warnings and instructions; none of them sold the system allegedly used in the Missouri Plaintiffs' surgeries; and none of them recalls any communications with the Missouri Plaintiffs' doctors regarding the risks or benefits of the Bair Hugger system before the surgeries. This is not the first time a court has confronted these issues in the Bair Hugger litigation: in *Walton*, the district court rejected a similar attempt to defeat removal by suing a sales representative. *See Walton v. 3M Co., et al.*, Civ. Action No. H-13-1164, 2013 WL 3816600, at *1 (S.D. Tex. July 22, 2013).

This Court also should not vacate the judgments or substitute a partial judgment limited to 3M and Arizant. The Court is well within its discretion to grant summary judgment to the Healthcare Defendants and Sales Representative Defendants. As this Court recognized in *Quasius v. Schwan Food Co.*, No. 09-575 (JNE/JJG), 2008 WL 4933764, at *8 (D. Minn. Nov. 14, 2008), under Eighth Circuit law a district court may extend summary judgment to a co-defendant who has not moved when the basis for summary judgment also applies to that co-defendant. Here, the Missouri Plaintiffs' causation theories against all defendants are the same causation theories addressed by the Court in its recent summary judgment decision. They have not advanced any distinct causation theory as to the Healthcare Defendants and Sales Representative Defendants – nor can they do so.

3

Finally, the Court should not suggest remand to the transferor courts. Like this Court, the transferor courts are forbidden by the remand statute from remanding these cases now that final judgment has been entered. And the three transferor courts deferred decision on the Missouri Plaintiffs' jurisdictional arguments, two of them for the express purpose of ensuring these arguments would be resolved in a single court in a consistent manner.

## BACKGROUND

The Langdon & Emison firm, attorneys for the plaintiffs in these three cases, have brought more than 40 of the 5,000 cases in the MDL. (Ex. A, List of L&E cases.)  Last May, the MDL Plaintiffs lost the first bellwether trial, and faced adverse legal rulings in a bellwether case brought by Langdon & Emison, ultimately resulting in the dismissal of that case with prejudice. *Axline*, No. 17-cv-00511, ECF No. 80, Text Order.

In response to these losses, Plaintiffs' counsel embarked on an unsuccessful campaign designed to dismantle the MDL they had so aggressively populated over the preceding three years. These efforts included:

- Attempting to "withdraw" their prior consent to trial of any further bellwether cases in the MDL. *See, e.g.*, *Axline*, No. 17-cv-00511, ECF No. 12, Notice of Retraction of Lexecon Waiver.

- Asking this Court to remand all 5,000 cases in the MDL to their "home" districts around the country, an unprecedented move in any MDL of this size. (Ex. B, 7/19/18 Status Conf. Tr.)

- Warning Judge Schultz in two chambers conferences that if the Court did not reconsider its rulings on evidentiary and legal issues, Plaintiffs would begin filing actions in state court and including non-diverse parties to avoid removal.

4

After the MDL Court rejected Plaintiffs' first two stratagems, Langdon & Emison followed through on the third and filed a wave of cases in Missouri state court: *O'Haver*, *Kolb*, *Tye*, and a more recent case that 3M and Arizant removed to the Western District of Missouri but has not yet been transferred (*Williams*, No. 4:19-cv-00617-BCW). They attempted a number of different configurations of non-diverse parties, naming Missouri healthcare providers in *O'Haver,* local 3M sales representatives in *Kolb*, and both Missouri healthcare providers and sales representatives in *Tye*.

The Missouri Plaintiffs' complaints assert the same claims asserted by the plaintiffs in the Bair Hugger MDL and mimic the allegations in the MDL Master Complaint. *Cf.* MDL No. 2666, ECF No. 97, Master Long-Form Complaint and Jury Demand. The allegations likewise address the design and development of the Bair Hugger system, its FDA clearance, marketing, and the "scientific" studies upon which the MDL plaintiffs' claims are based. Instead of focusing on 3M and Arizant exclusively, however, the Missouri Plaintiffs also sued the Healthcare Defendants and Sales Representative Defendants, and purport to hold them liable for their infections. The Missouri Plaintiffs' decision to sue these fraudulently joined defendants was a blatant attempt to avoid removal and transfer to the MDL.

3M timely removed these cases to federal court under 28 U.S.C. § 1332(a), because there is complete diversity among all *properly* joined parties. The JPML then transferred them here, with remand motions pending in the transferor courts. The disposition of the motions before this Court is significant for the future of this litigation: if granted, it could provide a pathway for future plaintiffs to evade the MDL by pleading similarly frivolous

and harassing claims against 3M's sales representatives or a plaintiff's medical providers. This will vitiate the purpose of the MDL and impair judicial efficiency.

## **ARGUMENT**

## I.    **THE COURT MAY NOT REMAND THESE CASES UNDER 28 U.S.C. § 1447(c) BECAUSE FINAL JUDGMENT HAS BEEN ENTERED.**

As a threshold matter, this Court may not remand these cases to state court because final judgments already have been entered. The remand statute expressly provides: "If at any time ***before final judgment*** it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). Courts construe to forbid district courts from remanding a case after entry of final judgment. *See, e.g.*, *Estate of Cummings*, 881 F.3d at 803 ("Section 1447(c) authorizes remand for lack of subject-matter jurisdiction only 'at any time before final judgment.'"); *Grass v. Eastern Assoc. Coal Corp.*, No. 2:05-0496, 2007 WL 9718153 (S.D. W. Va. Oct. 24, 2007) ("Remand to state court after final judgment is not authorized by § 1447(c). . . . Indeed, remand is precluded by the final judgment.").

There can be no doubt that final judgments have been entered here. The Missouri Plaintiffs' motions to vacate the judgments does not make the judgments non-final. Fed. R. Civ. P. 60(c)(2) ("The motion [for relief from the final judgment] does not affect the judgment's finality or suspend its operation.").

Moreover, the 3M Defendants have found no case holding that a party can evade 28 U.S.C. § 1447(c)'s prohibition on post-judgment remand by filing a motion to vacate. If a court could vacate a judgment for lack of subject matter jurisdiction under Rule 60(b)(4),

and then remand, it would nullify the statute. That would be contrary to Congress's apparent intent when it amended the statute to its present wording. *See In re Carter*, 618 F.2d 1093, n.3 (5th Cir. 1980) ("We do note, however, that prior versions of the statute allowed remand 'at any time.' The addition of 'before final judgment' may reflect a congressional intent to restrict the district court's power to enter these orders.").

The Missouri Plaintiffs are not foreclosed from raising their jurisdictional arguments. They may still raise those arguments on appeal. *See, e.g.*, *Slater v. Republic-Vanguard Ins. Co.*, 650 F.3d 1132, 1134-35 (8th Cir. 2011) (reviewing subject matter jurisdiction objection to removal on appeal even though the objection was not addressed in the district court). But this Court cannot hear them.

## II.   IF THIS COURT NONETHELESS CONSIDERS THE MISSOURI PLAINTIFFS'S MOTIONS, IT SHOULD NOT SET ASIDE THE JUDGMENTS AND SHOULD DENY REMAND.[3]

The MDL Plaintiffs' motions are not ordinary remand motions – they are motions under Rule 60(b)(4) to set aside the judgment as void for lack of subject matter jurisdiction.

---

[3] In each of their memoranda filed in this Court, the Missouri Plaintiffs "incorporate by reference" the remand-related briefs they filed in the transferor courts. Those briefs include both memoranda and reply briefs, plus a supplemental reply in *O'Haver*. This violates Local Rule 7.1(c)(1), which authorizes only a single memorandum and reply in support of a dispositive motion. Plaintiffs have already violated L.R. 7.1(f)'s word limit as to *Tye*. Their memoranda and reply in the transferor court were respectively 7,303 and 3,720 words, and their memorandum in this court is another 1,710 words – 12,733 words in total. The 3M Defendants do not request that the Court strike any memoranda, but do request that the Court enforce the Local Rule 7.1(f) to the extent the Missouri Plaintiffs file a reply. *See Carlson v. Extendicare Health Servs., Inc.*, Civil No. 05-1438 (MJD/SRN), 2006 WL 8444702, at *6 (D. Minn. June 27, 2006) (limiting consideration of party's briefs where party violated local rules by incorporating other briefing by reference).

The ordinary standard for evaluating removal based on fraudulent joinder is whether the plaintiffs had a "reasonable basis in fact and law" for their claims against non-diverse defendants. If they do not, then subject matter jurisdiction exists. *Welk v. GMAC Morg., LLC*, 720 F.3d 736, 737 (8th Cir. 2013) (quoting *Filla v. Norfolk S. R.R. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).

But because the motions arise under Rule 60(b)(4), MDL Plaintiffs bear a heavier burden. *See, e.g.*, *Evans v. Wells Fargo Bank N.A,* No. 15-2725-STA-cge, 2016 WL 1248972, at *4 (W.D. Tenn. Mar. 29, 2016) ("[O]nce the Court entered its judgment, Plaintiffs as the parties requesting that the Court vacate its judgment pursuant to Rule 60(b)(4) arguably have the burden to show that jurisdiction is lacking and the Court's judgment is void."). Under Eighth Circuit law, a Rule 60(b)(4) motion "can succeed only if the absence of jurisdiction was so glaring as to constitute a 'total want of jurisdiction' or a 'plain usurpation of power' so as to render the judgment void from its inception. *Kocher*, 132 F.3d at 1230 (*quoting Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822, 825 (8th Cir. 1980) (en banc)); *Hines v. Green Tree Servicing, LLC*, 554 F. App'x 534 (8th Cir. 2014) (same). "[A] judgment is not void for lack of subject matter jurisdiction unless no arguable basis for jurisdiction existed." *Kocher*, 132 F.3d at 1230 (internal quotation omitted).

The Missouri Plaintiffs do not and cannot carry their burden under Rule 60(b)(4) to prove that no arguable basis for jurisdiction existed in these cases. Indeed, even under the ordinary standard of "reasonable basis in fact and law," the Missouri Plaintiffs' motion must be denied. The Missouri Plaintiffs fraudulently joined the Healthcare Defendants in

*O'Haver* and *Tye*, and the Sales Representative Defendants in *Kolb* and *Tye* for the sole and obvious purpose of evading federal jurisdiction.

### A.      The Healthcare Defendants Were Fraudulently Joined.

First, Plaintiffs lacked a reasonable basis in fact or law for their medical malpractice claims against the Healthcare Defendants. *O'Haver*, First. Am. Pet., Counts VI, X-XIII; *Tye*, First. Am. Pet., Counts I-V. In Missouri, a claim for medical malpractice requires pleading, among other things, that "an act or omission of the defendant failed to meet the requisite medical standard of care." *Zink v. Lombardi*, No. 12-04209-CV-C-BP, 2014 WL 11309998, at *7 (W.D. Mo. May 2, 2014). While stated a few different ways, Plaintiffs' fundamental allegation against the Healthcare Defendants is that they committed medical negligence by using the Bair Hugger system. But Plaintiffs do not (and cannot) allege that using the Bair Hugger system falls below the medical standard of care. *See, e.g., Sinclair v. Dhaliwal*, No. 03:12-c--00857-HZ, 2013 WL 3287119, at *3 (D. Or. June 28, 2013) (complaint's conclusory statement that medical provider's treatment fell below the standard of care, without more, was insufficient to state a claim).

Nor could they have made any such allegation. As this Court concluded in its recent summary judgment decision, the medical and scientific community has repeatedly rejected Plaintiffs' theory that the Bair Hugger system causes periprosthetic joint infections:

> Here, the medical and scientific community has repeatedly rejected the causal inferences made by Plaintiffs' experts.
>
> In 2013, the International Consensus Meeting ("ICM") on Periprosthetic Joint Infection, which involved more than 400 experts in musculoskeletal infection from 52 countries, reached a "strong consensus" (89% agree, 5% disagree, 6% abstain) as follows: "We recognize the theoretical risk

9

> posed by FAW [forced-air warming] blankets and that no studies have shown an increase in SSI [surgical site infections] related to the use of these devices. We recommend further study but no change to current practice." ECF No. 751-2, DX18 (ICM 2013) at 31.
>
> In 2017, the FDA reviewed available data and literature, was "unable to identify a consistently reported association between the use of forced air thermal regulating systems and surgical site infection," and continued to recommend use of forced-air warming systems. ECF No. 751-1, DX1 (Aug. 30, 2017 FDA letter) at 2.
>
> In 2018, the ICM on Musculoskeletal Infection reached a strong consensus (93% agree, 2% disagree, 5% abstain) that "[t]here is no evidence to definitively link [forced-air warming] to an increased risk of SSIs/PJIs." ECF No. 1720-1, DX2 (ICM 2018) at 12.

*Bair Hugger*, 2019 WL 4394812, at *20 (footnote omitted). Similarly, in affirming summary judgment for 3M and Arizant in related state court proceedings, the Minnesota Court of Appeals "defer[red] to the assessment of the relevant scientific community rejecting appellants' novel scientific theory and conclude that there is no demonstrated causal relationship between FAWDs [forced air warming devices] and increased risk of SSI." *In re 3M Bair Hugger Litig.*, 924 N.W.2d 16, 23 (Minn. Ct. App. 2019). On the well-developed factual record in this MDL and in the Minnesota state court proceedings, there is no reasonable factual or legal basis for suing the Healthcare Defendants.

Plaintiffs also argued in the transferor courts that other allegations support claims of medical negligence against these providers, including that the providers, upon information and belief, failed to clean the hose attached to the Bair Hugger system and improperly used the system. But these throw-in allegations are "so indeterminate" that they fail to state a plausible claim. *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 843 (8th Cir.

2014) (*citing Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).[4] They do not nudge their claims against the Healthcare Defendants "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These allegations are merely a pretense to defeat federal jurisdiction.

**B.      The Sales Representative Defendants Were Fraudulently Joined.**

**1.      Strict Liability and Negligence.**

The Missouri Plaintiffs lack a reasonable basis in fact or law for their strict liability and negligence claims against the Sales Representative Defendants. *Kolb*, First Am. Pet., Counts I-II; *Tye*, First Am. Pet., Counts VII-VIII. Plaintiffs do not and cannot cite any case that has extended Missouri's products liability laws or consumer protection laws to individual employees of product manufacturers. Moreover, the Missouri Plaintiffs never allege that the Sales Representative Defendants themselves sold the Bair Hugger system used in their surgeries, that the Sales Representative Defendants individually communicated with Plaintiffs or their treating physicians.

The cases Plaintiffs rely on in their remand briefs are entirely inapposite – none involves claims against an employee of the manufacturer. *Welkener* addressed independent

---

[4] Nor is there any reasonable basis for Plaintiffs' claim that the Healthcare Defendants' alleged failure to clean the Bair Hugger hose *caused* Ms. O'Haver and Mr. Tye's infections. Plaintiffs do not allege (even on information and belief) that they were infected by a pathogen that was in the Bair Hugger hose. *See Mueller v. Bauer*, 54 S.W.3d 652, 656-57 (Mo. App. Ct. 2001) (Missouri medical malpractice law requires proof that the act or omission caused the plaintiff's injury). Moreover, in its summary judgment decision, this Court concluded that "no study even considered whether contaminated air emitted from the hose could reach the surgical site and cause infection." *Bair Hugger*, 2019 WL 4394812, at *13.

parties that are part of the sales chain – specifically, retailers. *See Welkener v. Kirkwood Drug Store Co*., 734 S.W.2d 233, 241 (Mo. App. E.D. 1987). *Fahy* dealt with an independent licensed dealer, not an employee. *Fahy v. Taser Intern., Inc*., No. 4:10CV19 CDP, 2010 WL 559249, at *1 (E.D. Mo. Feb. 10, 2010).[5]

Indeed, case law is strongly against Plaintiffs' attempt to extend liability to manufacturers' employees. In *Gregorecz v. NES Rentals Holdings, Inc.*, No. 4:07CV2051MLM, 2008 WL 441649, at *4 (E.D. Mo. Feb.14, 2008), the court concluded that a supplier's sales representative was fraudulently joined, noting that he had no personal interest in the product outside his role as an employee. In *Ford v. GACS, Inc.*, 265 F.3d 670, 681 (8th Cir. 2001), the Eighth Circuit noted that Missouri courts have not extended liability beyond manufacturers and distributors. *See id.* ("We have noted that Missouri courts 'have confined the reach of [the products liability] doctrine to *distributors* either by sale, lease, or bailment.' *Wright v. Newman*, 735 F.2d 1073, 1079 (8th Cir. 1984). We have not found any Missouri cases, nor have the parties directed us to any, that have extended products liability beyond those entities." (emphasis added)).

---

[5] Because the Sales Representative Defendants were or are 3M employees, this case is unlike *Davidson v. Poppa*, No. 4:15-cv-00243-DGK (Apr. 12, 2019) (Dkt. No. 10-1), a case relied upon by Plaintiffs. There, this Court remanded a suit that named a non-diverse third-party distributor of Zimmer hip implants. The defendants did not dispute the distributor could be sued under Mo. Rev. Stat. § 537.760. They also failed to respond to the remand motion. (*Id.* at 5 & n.1.) No court case has extended Section 537.760 to employees, and Judge Kays (the author of Davidson) distinguished *Davidson* when granting a motion to stay in *Tye*. *See* No. 4:19-cv-000294, Dkt. No. 34 at 3-4 (W.D. Mo. May 21, 2019).

In *Ridings*, the district court rejected any suggestion that sales representatives constitute some "special class of defendants with some generalized duty to the public at large," as no such duty is supported by Missouri law. *Ridings*, 2015 WL 1474080, at *5 (the court "cannot discern any duty owed by the individual sales representatives to [the plaintiffs] in the absence of any communications or interactions between the sales representatives and [the plaintiffs] (and/or [the plaintiff's treating physician]"). As in *Ridings*, the Sales Representative Defendants here submitted declarations confirming (1) they played no role in the design, testing or manufacture of the Bair Hugger system, or in the development of any Bair Hugger warnings or instructions; and (2) they do not personally know, nor have ever had any direct dealings with, either Plaintiffs or any orthopedic surgeon or anesthesiologist at the hospitals where Ms. Kolb and Mr. Tye's surgeries took place.[6] (Exs. C-G.)

Plaintiffs' claims against the Sales Representative Defendants also fail because Missouri has adopted the learned intermediary doctrine. The doctrine assigns the duty to warn to the *manufacturer*, not to individual sales representatives. *See Doe v. Alpha Therapeutic Corp.*, 3 S.W.3d 404, 419 (Mo. Ct. App. 1999). Missouri law is consistent with the law of other states, which place the duty to warn on the manufacturer but not on sales representative employees. *See, e.g.*, *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, Civ. A. 03-20611, 2004 WL

---

[6] Indeed, Acton has not worked for 3M since June 2015 – nearly two years before Mr. Tye's surgery even took place. (Ex. G, Declaration of Kevin Acton ¶ 4.)

2203712 (E.D. Pa. Sept. 28, 2004) ("[S]ales representatives do not assume individual liability merely by participating in their employer's purported failure to provide adequate information."); *Catlett v. Wyeth, Inc.,* 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) (no duty of sales representative to warn injured patient under Georgia's learned intermediary doctrine); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) (same applying Mississippi law); *see also In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d 272, 287–88 (S.D.N.Y. 2001) (no strict liability for sales representative under the Alabama extended manufacturer liability doctrine).

In the transferor courts, Plaintiffs argued that, in *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo. 1967), the Missouri Supreme Court held that a sales representative may assume his employer's duty to warn. But while a manufacturer may act through its sales representatives, neither *Krug* (where no sales representative was a defendant) nor any other Missouri case holds that the sales representatives thereby become *individually* liable.

As noted above, this is not the first time plaintiffs have attempted to defeat diversity in a Bair Hugger case by pleading frivolous claims against a sales representative. In *Walton*, 2013 WL 3816600, at *1, the district court denied the plaintiff's motion to remand, concluding that 3M's sales employee was improperly joined as a defendant. The plaintiff's allegations against 3M's sales employee were nearly identical to those against the Sales Representative Defendants here, including that he "failed to inform Houston Orthopedic Surgical Hospital or the Plaintiff of the risks inherent in using the Bair Hugger FAW, including the machines' propensity to cause infections in implant surgeries." *Id*. at *2. In

14

reaching its decision, the *Walton* court stated that such bald conclusory allegations could not establish liability and that the sales employee had no duty to warn. *Id.*

### 2.     Breach of Warranty.

Plaintiffs also fail to allege sufficient facts to support their claims for breach of warranty against the Sales Representative Defendants. *Kolb*, First Am. Pet., Counts III-IV; *Tye*, First Am. Pet., Counts IX-X. They do not allege that the Sales Representative Defendants sold the Bair Hugger system used during Ms. Kolb's and Mr. Tye's surgeries. *Moore v. Ford Mot. Co.*, 332 S.W.3d 749, 756 (Mo. 2011) (plaintiff must allege that defendant actually sold the product in question in order to state a claim for strict liability); *Ridings*, 2015 WL 1474080, at *4-5 (analyzing whether sales representatives could be considered "sellers" in the context of plaintiffs' claims, including breach of warranty claims, and determining they could not). Missouri law requires an allegation that the seller made a specific *statement of fact* about the product, that the statement was *material* and *induced* the purchase of the product, and that the product did not conform to the statement. *See Stefl v. Medtronic, Inc.*, 916 S.W.2d 879, 882-83 (Mo. Ct. App. 1996). Plaintiffs lack sufficient allegations that the Sales Representative Defendants had any communication with, or made any representation or warranty to, Ms. Kolb and Mr. Tye or their physicians.

Plaintiffs also cannot dispute that they failed to give pre-suit notice of the alleged breaches of warranty, as the Missouri Commercial Code requires. *See* Mo. Rev. Stat. § 400.2-607(3)(a) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"); *Budach v. NIBCO*, Case No. 2:14-cv-04324-NKL, 2015 WL 6870145, at *4 (W.D. Mo.

15

Nov. 6, 2015) (dismissing warranty claims due to plaintiff's failure to give pre-suit notice). Section 2-607(3)(a) contains no limitations or exceptions as to the type of breach requiring notice. Plaintiffs cannot cite any Missouri law exempting these claims from the Commercial Code.

### 3.    Fraud and MMPA Claims

Plaintiff's claims for common-law and statutory fraud fail to plead facts with the requisite specificity. *Kolb*, First Am. Pet., Counts V-VIII; *Tye*, First Am. Pet., Counts XI-XIV. *Bohac v. Walsh*, 223 S.W.3d 858, 862-63 (Mo. Ct. App. 2007) (requiring, among other things, particular allegations of a material representation of fact and the hearer's reliance thereon); *id* at 864 ("Silence or nondisclosure becomes misrepresentation only when there is a duty to speak."). The Federal Rules of Civil Procedure require fraud to be pled with particularity and on an individualized basis. Fed. R. Civ. P. 9(b); *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (plaintiff must allege "the identity of the person making the misrepresentation"); *In re Diet Drugs*, 2004 WL 2203712, at *3. Rule 9(b) applies with equal force to Plaintiffs' MMPA claims. See *Khaliki v. Helzberg Diamond Shops, Inc.,* No. 4:11-CV-00010-NKL, 2011 WL 1326660, at *3-4 (W.D. Mo. Apr. 6, 2011) (dismissing MMPA claim pursuant to Fed. R. Civ. P. 9(b) for omission of "specific details of the defendant's fraudulent acts, including when and where the acts occurred and *who engaged in them*" (emphasis added)).

Rule 9(b) is not satisfied when the complaint "vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993); *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990) (holding that a

complaint that "lumps all the defendants together and does not specify who was involved in what [fraudulent] activity" fails to satisfy Rule 9(b)). When a complaint "accuses multiple defendants of participating in the scheme to defraud, the plaintiff must take care to identify which of them was responsible for the individual acts of fraud." *Weimer v. Int'l Flavors & Fragrances, Inc.*, 240 F.R.D. 431, 437 (N.D. Iowa 2007); *accord Moua v. Jani-King of Minn. Inc.*, 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009).

The Missouri Plaintiffs' complaints simply attribute the same alleged misrepresentations to 3M and the Sales Representative Defendants, alleging they are collectively liable. Take *Tye* as an example:

| Plaintiffs' Allegation in Amended Petition | Individualized Allegation? |
|---|---|
| "73. In fact, upon information and belief, Defendants 3M, Arizant, and Acton have concealed and discredited peer-reviewed scientific studies that undermine their ability to market the Bair Hugger." | No. |
| "74. Notwithstanding their knowledge of the risks of the Bair Hugger and the availability of safer alternative designs, Defendants 3M, Arizant, and Acton actively and aggressively marketed and continue to this day to market the Bair Hugger as safe for use in all surgeries, including both general and orthopedic surgeries." | No. |
| "76. Despite their knowledge, upon information and belief, Defendants 3M, Arizant, and Acton continue to market the Bair Hugger to healthcare providers and patient-consumers; to misrepresent the safety of the Bair Hugger in their statements to healthcare providers, patient-consumers, and/or submissions to the FDA; and to place the defective product into the stream of commerce." | No. |
| "85. Upon information and belief, Defendants 3M, Arizant, and Acton were responsible for educating Plaintiff Douglas Tye and his healthcare providers regarding the claimed advantages of the Bair Hugger | No. |

17

| | |
|---|---|
| device and selling the products to Plaintiff Douglas Tye through his healthcare provider agents." | |
| "86. Upon information and belief, prior to Plaintiff Douglas Tye's total knee arthroplasty surgery, Defendants 3M, Arizant, and Acton provided information to Plaintiff Douglas Tye or his healthcare providers, including but not limited to, the advantages of the Bair Hugger device compared to its competitors and information regarding the design rationale for the Bair Hugger device." | No. |
| "87. The above information was provided to Plaintiff Douglas Tye or his healthcare providers with the intended purpose of convincing and inducing Plaintiff Douglas Tye and/or his healthcare providers to use the Bair Hugger device instead of the competing forced air warming devices or other patient warming system." | No. |
| "224. Prior to Plaintiff Douglas Tye's March 13, 2017 surgery, Defendants 3M, Arizant, and Acton made false and material misrepresentations to Plaintiff Douglas Tye and/or his healthcare providers with respect to the Bair Hugger. . . ." | No. |
| "225. Upon information and belief, said Defendants knew or should have known that these representations were false. . . ." | No. |
| "226. Despite that knowledge, said Defendants continued to provide false information to Plaintiff Douglas Tye and his healthcare providers, in addition to the medical community and the public at large, about the safety and efficacy of the Bair Hugger, as detailed above." | No. |
| "227. Said Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded their obligations to provide truthful representations regarding the safety and risks of the Bair Hugger to its customers and consumer-patients, including Plaintiff Douglas Tye and his healthcare providers." | No. |
| "228. The representations were made by said Defendants with the intent that its customers and consumer-patients, including Plaintiff Douglas Tye and his healthcare providers, would rely on those representations in purchasing and using the Bair Hugger." | No. |
| "236. On information and belief, Defendants 3M, Arizant, and Acton fraudulently concealed information with respect to the Bair Hugger. . . ." | No. |

| | |
|---|---|
| "237. On information and belief, said Defendants knew that the Bair Hugger caused an increased risk of infection during surgery and that modifications that had been made to the design of the Bair Hugger were contributing to the incubation and circulation of bacteria and other pathogens in and around the operating theater." | No. |
| "238. Said Defendants represented through, including but not limited to, labeling, advertising, marketing materials, presentations, publications, notice letters, and/or regulatory submissions that the Bair Hugger had been tested and found to be safe and effective for warming patients during orthopedic surgery." | No. |
| "239. Said Defendants represented that the Bair Hugger was safer than other patient warming systems." | No. |
| "240. Said Defendants had superior access to the material facts concerning the dangers and unreasonable risks of the Bair Hugger; Plaintiff Douglas Tye and his healthcare providers had no similar access to such facts." | No. |
| "241. On information and belief, the concealment of information by said Defendants about the risks of the Bair Hugger was intentional, and said Defendants knew that their representations were false." | No. |

*Kolb* is the same: there are no specific allegations indicating what the Sales Representative Defendants said, to whom, and when. This violates Rule 9(b). It seems the Missouri Plaintiffs know nothing about the Sales Representative Defendants, and have thrown them into their complaints to defeat diversity.

### C.      The Amount in Controversy Requirement Is Satisfied.

Diversity jurisdiction will be declined "if it appears to a legal certainty that the value of the claim is actually less than the required amount." *In re Minn. Mut. Life Ins. Co. Sales Pracs. Litig.*, 346 F.3d 830, 834 (8th Cir. 2003). The Missouri Plaintiffs' complaints seek in excess of $25,000 for *each* separate and distinct claim, together with attorneys' fees and

costs. Thus, on the face of the complaints, the Missouri Plaintiffs' claimed damages exceed $75,000.00.

Indeed, *Plaintiffs'* counsel have asserted the $75,000 jurisdictional threshold has been met in the 44 other cases they have filed in the Bair Hugger MDL, including *Axline*. The Court can look to these other complaints in evaluating whether the jurisdictional threshold is satisfied. *In re Rezulin*, 133 F. Supp. 2d at 296 (concluding that amount in controversy was met because other similar complaints in the Rezulin MDL alleged damages in excess of $75,000). Notably, Plaintiffs have never agreed to seek damages under the jurisdictional threshold. *See id.* ("Plaintiffs' damages claims in these four cases are not made in good faith, a conclusion confirmed by their refusal to agree to cap their recovery below $75,000.").

## III. THE COURT PROPERLY INCLUDED THE HEALTHCARE DEFENDANTS AND SALES REPRESENTATIVE DEFENDANTS IN THE JUDGMENT.

The Missouri Plaintiffs alternatively request that the Court vacate the judgments as to the Healthcare Defendants and Sales Representative Defendants, leaving in place the judgment as to 3M and Arizant. The Court should deny this request. Under the Eighth Circuit law, the Court can and should extend its summary judgment to the Healthcare Defendants and Sales Representatives, even though they did not themselves move for summary judgment.

This Court may grant summary judgment *sua sponte* when the "party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." *Madewell v. Downs*, 68

20

F.3d 1030, 1048 (8th Cir.1995). For example, in *Quasius,* one of two defendants moved for summary judgment. This Court granted the moving defendant's summary judgment motion and also granted summary judgment *sua sponte* for the other defendant. The basis for summary judgment applied to both defendants, and the plaintiff had an adequate opportunity to explain why the summary judgment should not be extended to the nonmoving defendant. *Quasius*, 2008 WL 4933764 at *8.

Here, too, the basis for this Court's grant of summary judgment in favor of 3M applies equally to the Missouri Plaintiffs' claims against the Healthcare Defendants and Sales Representative Defendants. In its summary judgment memorandum, the Court described the two causation theories at issue in this MDL:

> Plaintiffs allege two theories about how the Bair Hugger can cause PJI. First, Plaintiffs allege that the Bair Hugger's warm air flow escapes the bottom edge of the surgical drape, creating turbulence in the operating room ("OR"), which lifts squames (shed skin flakes that can carry bacteria) into the air and into the surgical site, and increases the risk of infection. The Court has termed this theory the "airflow disruption" theory. . . .
>
> Second, Plaintiffs claim that the device, which lacks an adequate filtration system, emits contaminants into the OR, and thus, increases the bacterial load reaching the surgical site. The Court has labeled this second theory the "dirty machine" theory.

*Bair Hugger*, 2019 WL 4394812, at *1.

In these three cases, Plaintiffs parrot the allegations in Plaintiffs' Master Complaint and allege the same causation theories against all defendants, including the Healthcare Defendants and Sales Representative Defendants. In a set of general allegations directed against all defendants, they allege the airflow disruption causation theory:

21

The Bair Hugger generates a continuous stream of hot air that builds up in areas around the patient, particularly under the surgical drape covering the patient. Not all of the hot air produced by the Bair Hugger remains there, however. Much of the hot air escapes from under the surgical drape below the level of the surgical table or at the head end of the surgical table. The escaped air then creates convection currents that flow against the downward airflow of the operating theater.

Scientific studies have shown that as this warmed air rises against the downward airflow in the operating room, it deposits bacteria carried on particles from the non-sterile portions of the operating theater to the sterile surgical field and the surgical site.

These bacteria, including, but not limited to, *staphylococcus aureus* (*S aureus*), *coagulase-negative staphylococci* ("*CoNS*"), and methicillin-resistant *staphylococcus aureus* ("*MRSA*"), can and do lead to deep joint or "periprosthetic joint infections" for all types of patient populations . . . .

*O'Haver*, First. Am. Pet. ¶¶ 31-33; *Kolb*, First Am. Pet. ¶¶ 37-39; *Tye*, First Am. Pet.

¶¶ 53-55. They also allege the "dirty machines" causation theory:

As the Bair Hugger sits on or near the floor of the operating theater, often directly next to the operating table, it intakes large quantities of desquamated skin cells and other viable microorganisms that have been pushed down to the non-sterile floor of the operating theater.

Because the internal air path surfaces of the Bair Hugger cannot be easily cleaned or decontaminated, and the operating instructions for the Bair Hugger do not provide a method for cleaning or decontaminating the inside of the Bair Hugger, microorganisms build up and colonize therein. Because much of the buildup occurs on inaccessible internal pathways of the Bair Hugger that cannot be easily cleaned, decontaminated, or replaced, the Bair Hugger generates significant levels of airborne contamination downstream of its intake filter. Without an adequate filtration system at the distal hose outlet and/or adequate seals around the filters, the Bair Hugger releases contaminants into the operating theater and directly onto the surgical site itself.

*O'Haver*, First. Am. Pet. ¶ 41; *Kolb*, First Am. Pet. ¶ 46; *Tye*, First Am. Pet. ¶ 63**.** None of

the Missouri Plaintiffs' memoranda filed in this Court or their extensive briefing in the

22

transferor courts ever claims that their causation theories against the Healthcare Defendants and Sales Representative Defendants are different from the causation theories addressed in the Court's summary judgment decision.

The Missouri Plaintiffs have had an adequate opportunity to be heard on their causation theories. *Quasius*, 2008 WL 4933764 at *8; *Madewell,* 68 F.3d 1030 at 1048. Before granting summary judgment, this Court held four days of *Daubert* argument, considered extensive briefing, and oversaw a bellwether trial where the parties' causation experts testified. The Missouri Plaintiffs' counsel had 40 cases pending in the MDL at the time of those arguments and briefing (and *O'Haver* had been transferred to the MDL at the time of the briefing and hearing on 3M's Motion for Reconsideration). Even if that were adequate by itself, the Missouri Plaintiffs surely have had an adequate opportunity to be heard now, through this additional round of briefing. The Missouri Plaintiffs do not and cannot offer any compelling reason why this Court should not extend the summary judgment to the Healthcare Defendants and Sales Representative Defendants.

## IV. ALTERNATIVELY, THE COURT MAY SEVER AND DISMISS THE CLAIMS AGAINST THE HEALTHCARE DEFENDANTS.

If the Court nonetheless decides to vacate the judgment as to the Healthcare Defendants, it should exercise its discretion under Rule 21 to sever the claims against the Healthcare Defendants, while leaving in place the judgment as to the other defendants. Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.").

23

The Court has broad discretion to sever claims against non-diverse defendants, regardless of whether those defendants are properly joined. *See DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *2 (N.D. Ohio June 29, 2009) (collecting cases); *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 691 (4th Cir. 1978) ("[N]on-diverse parties whose presence is not essential under Rule 19 may be dropped to achieve diversity . . . ."). Courts routinely sever malpractice claims against healthcare providers from product liability claims against manufacturers. Severing malpractice claims allows the products liability claims to remain in the MDL, where they can be coordinated and resolved alongside hundreds or thousands of similar claims. *See, e.g.*, *Sullivan v. Calvert Mem. Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015) (concluding that severance is "particularly appropriate" where it will allow for the transfer of product liability claims to pending MDL).

The *Guidant Implantable Defibrillators* MDL is a case in point. A plaintiff named Emmett David Brown filed an action in California state court, asserting products liability claims against Guidant and medical negligence claims against the surgeon who implanted his Guidant defibrillator. Guidant removed the case to federal court, and the JPML transferred the case to the MDL court. The MDL court severed the claim against the surgeon and remanded it to state court. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB), 2007 WL 2572048, at *1 (D. Minn. Aug. 30, 2007). Like Plaintiffs O'Haver and Tye, Brown argued that the claims should not be severed because they involved the same course of events – the implant of the defibrillator – and because Brown sought to hold the defendants jointly and severally liable

24

for the same damages. *Id.* at *2. The Guidant MDL court rejected the argument. Brown's claims against the surgeon were based upon Brown's medical care, whereas the claims against Guidant were based on Guidant's design, manufacture, and warnings, and these were not the same "transaction, occurrence, or series of transactions or occurrences." *Id.* Moreover, proving the doctor's liability would not prove Guidant's liability, and vice versa. *Id.* The Guidant MDL court also rejected Brown's argument that the removal was improper because the surgeon did not consent. *Id.* at *4 ("Here, because Dr. Housman was not properly joined, his consent was neither necessary nor did the service of process on him trigger the deadline for removal.").

Many other courts have followed the same course. *See, e.g.*, *Smith v. Hendricks*, 140 F. Supp. 3d 66, 75 (D.C. Cir. 2015) ("Indeed, this conclusion accords with that of several other district courts that have considered the propriety of joinder in cases where medical malpractice claims were joined with product liability claims."); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (improperly joined medical negligence claims were severed "so as to preserve the removing Defendants' right to removal"); *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, No. CIV. 13-1811 DWF/FLN, 2013 WL 6511855, at *4 (D. Minn. Dec. 12, 2013); *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D. W. Va. Sept. 3, 2009); *Mayfield v. London Women's Care, PLLC*, No. 15-19-DLB, 2015 WL 3440492, at *6 (E.D. Ky. May 28, 2015) (same); *Stone v. Zimmer, Inc.*, No. 09-80252-CIV, 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009); *DeGidio*, 2009 WL 1867676, at *6; *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348 00 Civ. 2843(LAK), 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003); *In re*

*Zyprexa Prods. Liab. Litig.*, MDL No. 1596, 2004 WL 2812095, at \*1-2 (E.D.N.Y. Dec. 3, 2004).

The primary case Plaintiffs cited in the transferor courts to support their argument that the Court should not sever the claims against the Healthcare Defendants is *Hagensicker v. Boston Sci. Corp.*, 2012 WL 836804, at \*5 (W.D. Mo. Mar. 12, 2012), where the court "caution[ed] that its decision [not to sever] is limited to the unique nature of the facts in this case." Unlike Plaintiffs' cases, *Hagensicker* involved "two different doctors that were responsible for implanting three different medical devices." *Id.* The court was convinced that this complexity provided a unique reason to keep all the claims in one forum and not transfer the products liability claims to an MDL. *Id.* This decision is not controlling, however, and offers no reasoning that would preclude this Court from exercising its discretion to sever the claims against the Healthcare Defendants. The Court should exercise that discretion and prevent Plaintiffs from evading the Bair Hugger MDL.

If the Court severs the claims against the Healthcare Defendants, it should dismiss them pursuant to Fed. R. Civ. P. 12(h)(3). Remanding the claims against the Healthcare Defendants after entry of final judgment would (for the reasons explained *supra*) violate 28 U.S.C. § 1447(c).

## V.   THIS COURT ALSO SHOULD NOT DEFER THESE ISSUES TO THE TRANSFEROR COURTS FOR DECISION.

The Court should also deny the Missouri Plaintiffs' alternative request for a suggestion of remand to the transferor courts (namely, the Eastern District of Missouri for *Kolb*, and the Western District of Missouri for *O'Haver* and *Tye*). The transferor courts,

like this Court, lack the power to remand these cases now that final judgment has been entered. Even if that were not the case, it would make no sense to send these common jurisdictional questions back to multiple transferor courts. The transferor courts all declined to rule on the Missouri Plaintiffs' remand motions and instead deferred the overlapping jurisdictional issues to this Court for resolution for the sake of both efficiency and consistency. Ex. H, *O'Haver,* Order Granting Motion to Stay; Ex. I, *Tye*, Order Granting Motion to Stay. As the transferor court concluded in *Tye*, this Court's resolution of the jurisdictional issues "will conserve judicial resources and ensure uniform adjudication of these issues."  Ex. I.

## CONCLUSION

For the foregoing reasons, this Court should deny the Missouri Plaintiffs' motions because post-judgment remand is forbidden by the plain language of 28 U.S.C. § 1447(c). The Missouri Plaintiffs also do not and cannot carry their burden under Rule 60(b)(4) to prove that there is no arguable basis for subject matter jurisdiction, and therefore the judgment should not be vacated. Even under the ordinary remand standard, they lacked a reasonable basis in fact and law for their claims against the Healthcare Defendants and Sales Representative Defendants. Moreover, this Court was well within its discretion to extend the judgment to all defendants under *Madewell*, because the Missouri Plaintiffs' causation theories are the same as to all defendants. The Court also should deny Plaintiffs' requests for a suggestion of remand to the transferor courts, and instead resolve the jurisdictional issues itself.

Dated:  September 20, 2019

Respectfully submitted,

*s/*Benjamin W. Hulse

Jerry W. Blackwell (MN #186867)
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN 55415
Phone: (612) 343-3200
Fax: (612) 343-3205
Email:blackwell@blackwellburke.com
bhulse@blackwellburke.com
myoung@blackwellburke.com
mdavies@blackwellburke.com

***Counsel for Defendants 3M Company, Arizant
Healthcare Inc., Rick McClary, Jennifer Hicks,
Jason Shaw, Tony Benson, and Kevin Acton***

28