```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA
 2

 3    ------------------------------------------------------------
                                  )  MDL No. 15-2666
 4    In re: Bair Hugger Forced Air )        (JNE/DTS)
      Warming Devices Products      )
 5    Liability Litigation          )
                                    )  Minneapolis, Minnesota
 6    This Document Relates to:     )  December 17, 2021
      All Cases                     )
 7                                  )  DIGITAL RECORDING
                                    )
 8    ------------------------------------------------------------

 9

10

11             BEFORE THE HONORABLE DAVID T. SCHULTZ
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
12

13

14                       (STATUS CONFERENCE)

15

16

17

18

19

20

21

22

23

24
            Proceedings recorded by digital recording; transcript
25    produced by computer.
```

1    **APPEARANCES:**

2        For the Plaintiffs:        Meshbesher & Spence
                                    GENEVIEVE M. ZIMMERMAN, ESQ.
3                                    1616 Park Avenue
                                    Minneapolis, Minnesota 55404
4
                                    Ciresi Conlin, LLP
5                                    MICHAEL A. SACCHET, ESQ.
                                    Suite 4600
6                                    225 South Sixth Street
                                    Minneapolis, Minnesota 55402
7
                                    Pritzker Hageman, PA
8                                    DAVID J. SZERLAG, ESQ.
                                    Suite 2950
9                                    45 South Seventh Street
                                    Minneapolis, Minnesota 55402
10
                                    Kaster, Lynch, Farrar & Ball, LLP
11                                    KYLE W. FARRAR, ESQ.
                                    1117 Herkimer Street
12                                    Houston, Texas 77008

13                                    McDonald Worley
                                    GABRIEL ASSAAD, ESQ.
14                                    Suite 100
                                    1770 St. James Place
15                                    Houston, Texas 77056

16        For the Defendants:        Blackwell Burke, PA
                                    BENJAMIN W. HULSE, ESQ.
17                                    Suite 2500
                                    431 South Seventh Street
18                                    Minneapolis, Minnesota 55415

19        Transcriber:            LORI A. SIMPSON, RMR-CRR
                                    Suite 146
20                                    316 North Robert Street
                                    St. Paul, Minnesota 55101
21

22

23

24

25

1                        **P R O C E E D I N G S**

2                           **IN OPEN COURT**

3              THE COURT:  We are on the record in the Bair

4       Hugger MDL, Civil Number 15-2666.

5              All of the counsel for the plaintiffs, if you will

6       each note your appearances, please.

7              MS. ZIMMERMAN:  Good afternoon, Judge.  Genevieve

8       Zimmerman for plaintiffs.  Nice to see you again.

9              THE COURT:  Good afternoon.  Nice to see you

10      again.

11             MR. SACCHET:  Good afternoon, Your Honor.  Michael

12      Sacchet for plaintiffs.

13             THE COURT:  Good afternoon.

14             MR. FARRAR:  Good afternoon, Judge.  Kyle Farrar

15      for the plaintiffs.

16             THE COURT:  Good afternoon.

17             MR. ASSAAD:  Good afternoon.  Gabriel Assaad on

18      behalf of plaintiffs.

19             THE COURT:  Good afternoon.

20             MR. SZERLAG:  David Szerlag for plaintiffs.

21             THE COURT:  Good afternoon.

22             Not you, right?

23             UNIDENTIFIED SPEAKER:  I am not on the committee.

24      I do have clients.

25             THE COURT:  Okay.  Counsel for 3M?

1          MR. HULSE:  Good afternoon, Your Honor.  Ben Hulse

2     for defendants.

3          THE COURT:  All right.  Good afternoon, Mr. Hulse.

4          So there are a couple of things I'd like to

5     accomplish today.  Judge Ericksen and I met and tried to

6     figure out who was going to have the first status conference

7     and I kept saying, I thought it should be you, Judge, and

8     she kept saying, I think it should be you, Judge.  So here

9     we are.

10         I need to know essentially where people are in

11    terms of what they think is going to happen next and, you

12    know, where is the appetite, if there is one, for picking up

13    our settlement discussions that we were in the middle of

14    when I believe the case took a left turn, as it were.

15         So, Ms. Zimmerman, are you speaking on behalf of

16    the plaintiffs?

17         MS. ZIMMERMAN:  I am, Your Honor.

18         THE COURT:  Come on up to the podium if you don't

19    mind.  It's easier for me to hear with those microphones.

20         MS. ZIMMERMAN:  Well, so I appreciate the Court

21    setting the status conference.  And I will be candid with

22    the Court, as we always are.  We were interested to see what

23    the Court thought the status of the case was and if the

24    Court has plans that we ought to be advised of or if defense

25    counsel has plans that we ought to be advised of.

```
 1              THE COURT:  Yep.
 2              MS. ZIMMERMAN:  My expectation is that this case
 3    has a lot of work likely ahead of it.  I expect in many ways
 4    it -- I don't want to say that it's starting over because we
 5    now know, obviously, that the general causation experts are
 6    blessed, so to speak, from the Eighth Circuit, but I expect
 7    there will be many additional cases.  I hope they will be
 8    filed here.
 9              My expectation is that the litigation likely has
10    years in front of it and certainly don't mean to
11    short-circuit the Court's offer to re-engage in the
12    conversations that may or may not lead to settlement, and
13    some of that, obviously, is outside of our control, but, you
14    know, sort of where I think the case is going to go depends
15    a lot on sort of what the Court's vision about next steps --
16              THE COURT:  Sure.
17              MS. ZIMMERMAN:  -- certainly were as well.
18              THE COURT:  Okay.  Fair enough.  Let me hear from
19    Mr. Hulse and then I'll give you my thoughts on that or the
20    Court's thoughts on that.
21              MR. HULSE:  Thank you, Your Honor.  And I was
22    saying to Ms. Zimmerman before we started, I wasn't sure of
23    the last time I was actually in this courthouse.  I've been
24    in St. Paul a number of times, but it might have actually
25    been here in this courtroom talking about bucketizing in
```

1     2019.

2              THE COURT:  I think that's right.

3              MR. HULSE:  So sort of the way that we look at

4     this is that it's, you know, almost as if the last two and a

5     half years didn't happen in a sense and we're right back

6     where we were.

7              Where we were in the middle of 2019 was that we

8     had a depleted bellwether pool due to various motions and

9     dismissals and so forth, and we were working on this

10    bucketizing process.

11             And the prelude to the initial bucketizing order

12    that Your Honor wrote sort of set -- described very well, I

13    think, where we were at that point, which is that we saw --

14    we've got this group of 5,000 cases, but we agree that we

15    really can't get to the point of figuring out what cases

16    would make the most sense to work up for bellwethers until

17    we sort the wheat from the chaff and sort things into

18    categories.  We've got a lot of cases, but from our

19    perspective at least, a huge number of them have fundamental

20    problems that don't get you past go.

21             So we were working through the first two parts of

22    the bellwether -- not the bellwether, the bucketizing

23    process, which was product, product use, statute of

24    limitations, statute of repose, when everything got

25    suspended.

1          So our hope and expectation is that we would pick

2     that back up, that process, and that we would work it

3     through and get on to the next phase of it so that we can

4     actually get ourselves down to the number of cases and the

5     categories of cases that it makes sense to look at for

6     bellwethers, and then we'll get on with bellwether selection

7     and go through motion practice.  If they survive, we try

8     them.

9          So that's maybe not a simple process, I agree

10     it involves a lot of work, but I'm perhaps more optimistic

11     that we can make it through that process in a more

12     expeditious way.

13          On the topic of settlement, I don't -- I'm not

14     sure I agree that we were really talking about settlement

15     because our position, again, was we can't get to that point,

16     if we're going to get to it, without getting through this

17     sorting process and, you know, getting rid of the cases that

18     don't belong.

19          So that takes us essentially right back to where

20     we were in July of 2019, and our view is we ought to pick

21     that up.

22          The other thing that I wanted to mention, Your

23     Honor, is, you know, we are going to have a cert petition

24     that we'll file on February 7th.  That process will play out

25     until probably June.  That's probably when we will get the

1    Supreme Court's, you know, yea or nay on it, roughly.

2            And so, you know, we think it makes perfect sense

3    while that is playing out that we, you know, get the gears

4    back up, we get this bucketizing process moving forward as

5    much as we can so, you know, when we are through that, move

6    on to phase two of bucketizing and then on to the rest.

7            The last piece I'd add is we've got some state

8    court litigation going on that not much has happened in it.

9    Obviously, the Texas case has just come back.

10           THE COURT:  Not here, though.

11           MR. HULSE:  No, it's not -- no, Minnesota is done.

12           THE COURT:  That's done.

13           MR. HULSE:  That's right.  So there are -- a third

14   case was just filed in Missouri.  So we've got three in

15   Missouri.  One of them has a trial date in September.

16   Another of them has a trial date the following spring.  And

17   then the Texas case -- that's the one that got enjoined and

18   then came back -- is set for trial in December.

19           So it's also not as if while we're working on

20   bucketizing here we won't be trying cases too.  So those

21   cases -- so we will still be kind of in a bellwether-like

22   way learning information through that trial process.

23           And it may well be there are more state court

24   cases coming.  There's just two that have been filed.  I

25   would say plaintiffs' counsel would obviously have a better

 1    idea of how many more cases there are going to be, but we

 2    haven't seen it so far.  There have only been a handful that

 3    have been filed since the remand orders.  I don't honestly

 4    know how much appetite there is out there, when there's

 5    other big litigations, for, you know, expanding this

 6    litigation.  But all of those cases, to the extent we get

 7    them, they need to be fed into our bucketizing process as

 8    well.

 9          So bottom line is we think there's -- agree

10    there's plenty of work to do, but we think if we're -- the

11    two sides are dedicated and the Court is willing to keep

12    going with this, the bucketizing, the sorting process, that

13    that can position us for, you know, the steps after.

14          THE COURT:  Okay.  Very well.  Thank you,

15    Mr. Hulse.

16          Do you want to respond to that before I give air

17    to some musings myself?

18          MS. ZIMMERMAN:  It seems folly.

19      (Laughter)

20          THE COURT:  No.  I think -- here's where I think

21    Judge Ericksen and I thought we were, and so tell me if

22    we're wrong.  Okay?

23          One, I think we were both of the impression that

24    discovery was completed, but not -- I mean discovery for the

25    purposes of, you know, the MDL.  The cases were ready to be

1    sent back to their home jurisdictions, but maybe that's not

2    the case.

3            MS. ZIMMERMAN:  So, Your Honor, I think that

4    there's a lot of sort of potential moving parts to that.

5    Certainly the plaintiffs -- I mean, to the extent that the

6    Court thinks that there won't be additional discovery, then

7    we will bring a motion to remand all of these cases back to

8    their home jurisdictions.

9            As the Court may be aware, this is a product that

10   3M exposes 50,000 people to every single day.  And one of

11   the sort of interesting ironies, I guess, in this litigation

12   and one of the points we made to the Eighth Circuit as we

13   were arguing the appeal was that the transmission of

14   contaminants, pathogens, viruses, bacteria through the air

15   is now sort of in the commonplace understanding the way that

16   it maybe wasn't before.  But there are a number of people

17   that are being exposed every single day.

18           We know we have many, many hundreds of additional

19   cases and where they ultimately are filed depends a lot,

20   candidly, on what the Court thinks is going to happen next.

21           So if a person was exposed to a Bair Hugger

22   yesterday and they had developed an infection, there are, I

23   think, solid arguments to be made that they certainly get to

24   do discovery on what 3M has known and discussed internally

25   about this product in the nearly five years since the

1   discovery period closed.

2          So discovery closed on March 31st of 2017.  That's

3   when our general causation expert reports went in.  We did

4   depositions shortly thereafter.  So, I mean, at a minimum,

5   to start with, it's certainly our expectation that 3M needs

6   to supplement all of its discovery answers for any and all

7   responsive documents that have taken place or authored since

8   then.

9          We expect that, as we're doing in Mr. Petitta's

10  case down in Texas, there's going to be additional discovery

11  that is not limited to just what happened in the MDL.

12          So I think the difficult answer to Your Honor's

13  question is if there is no more discovery and if -- and in

14  some ways I hate to say that it's going to be completely

15  restarted and we're at square one because we don't see it

16  that way, but for new people in particular, if their cases

17  join into an MDL, they are absolutely entitled to discovery

18  on things that have happened since the conclusion of

19  discovery cut off almost five years ago now.

20          So, you know, if the answer is sort of there won't

21  be discovery because we kind of got through general

22  causation, and I'm not making a comment about that, then,

23  absolutely, there's nothing more to do here; we've done the

24  general issues and the cases are then apparently ready for

25  remand and we'll do that.  Alternatively, there may be

1    significant additional discovery that needs to be done.

2    Some of it will relate to general causation.

3         Sort of the question about where we're at in terms

4    of bucketizing and that sort of discussion also sort of goes

5    hand in hand with what kind of trials there will be.  I'm

6    not aware -- I mean, I know that there was sort of a pool of

7    cases that filed *Lexecon* waivers to start with and then they

8    retracted that and some of those were invalidated.  I'm not

9    sure that there's a pool of cases that will be available to

10   be tried to the Court sort of as we sit here.

11        THE COURT:  Yeah.

12        MS. ZIMMERMAN:  So some of that may need to be

13   redone.

14        THE COURT:  Yeah.  So, again, you know, these are

15   just -- part of the point today was, frankly, to just

16   refamiliarize ourselves and get re-engaged in the case.  And

17   some of the impressions that Judge Ericksen and I have had

18   were, you know, just based on our memory without reviewing

19   the entire file.

20        The impression or one impression -- somewhere

21   along the line we had gotten the impression or I had gotten

22   the impression that the plaintiffs were of a mind that there

23   were to be no more or they did not want any more bellwether

24   trials.  I don't think the Court shared that view

25   necessarily, but somewhere along the line we got that

1     impression.  So speak to that for a second, if you would.

2             MS. ZIMMERMAN:  So I think that's sort of a

3     difficult question because, as the Court is aware, one of

4     the four appeals that was before the Eighth Circuit had to

5     do with the one trial we did have.

6             THE COURT:  Correct, which was -- and this is

7     not -- I'm just, again, remembering.  That one -- shall we

8     say the appeal went the defendants' way on that one,

9     correct?

10            MS. ZIMMERMAN:  That's correct, Your Honor.

11            THE COURT:  Okay.  All right.  Keep going.

12            MS. ZIMMERMAN:  So, I mean, in terms of if there

13    are to be trials that sort of the parties can learn from, I

14    think it's fair to say that significant evidence was not

15    received in that trial and that, I expect, is going to

16    impact the willingness of plaintiffs -- various individual

17    plaintiffs to offer their case for trial.

18            So we're in sort of an interesting position, I

19    guess.  I mean --

20            THE COURT:  Right.

21            MS. ZIMMERMAN:  -- obviously there's a great deal

22    of discretion that's offered to the Court, but that's -- I

23    mean, certainly what the plaintiffs -- individual plaintiffs

24    and the individual plaintiffs' lawyers not at this table,

25    even, would be considering as they thought about would I

1    waive *Lexecon*, would I agree to try my case here, what

2    they'll look at is the *Gareis* transcript.

3            And based on what the past behavior was in terms

4    of *Lexecon* retractions, albeit that that was not something

5    that was allowed to go forward, I would not expect there to

6    be additional folks from out of state that would come and --

7            THE COURT:  Yeah.  Understood.  I suppose the

8    other -- to the extent that a bellwether process, if you

9    want to call it that, is still beneficial, I suppose Judge

10   Ericksen could identify some of her cases, the ones that are

11   here, for that -- set those on for trial.

12           MS. ZIMMERMAN:  Absolutely correct.  I mean, I'm

13   sure that there are a number of potential options in terms

14   of trying cases --

15           THE COURT:  Okay.

16           MS. ZIMMERMAN:  -- and sort of all of that is sort

17   of in the mix.  I do know that the Court has -- or that

18   Judge Ericksen took senior status.  We weren't sure if she

19   was still wanting to take these cases and try the cases.  I

20   mean, I just don't know.  I know that as a general matter in

21   the District of Minnesota that senior judges don't handle

22   MDLs, or that's my understanding.  I could be wrong about

23   that.

24           But what's going on or what is to come, I guess,

25   it could be a remand process that we're sort of at if we're

1   not going to do additional discovery or perhaps we're

2   looking at all sorts of additional discovery and another --

3   I mean, this case was transferred here in 2015.  So we could

4   be looking at another, you know, four or five years of

5   litigation.

6          MR. HULSE:  Your Honor, may I suggest?  It seems

7   like what we're trying -- what's happening here is trying to

8   make this litigation as unappealing for the Court as

9   possible, but --

10         THE COURT:  That's okay.

11         MR. HULSE:  So there are -- we have an idea.  I

12  wasn't intending to present it, so this may not be a fully,

13  you know, ready-for-presentation idea, but if the Court is

14  not inclined to wade through that bucketizing process and

15  wait that long, we can do a sort of hybrid bellwether

16  selection where we take, you know, a pool of cases, and we

17  do have hundreds and hundreds of cases that either have

18  *Lexecon* waivers, which were -- you know, when those were

19  retracted, the Court denied that, or that are designated for

20  trial here and we can essentially go through a bucketizing,

21  and we would suggest a more robust process than that, but

22  that kind of process to weed through them.

23         Because the issue we ran into -- so I could be a

24  little off on these numbers, but I think we had 12

25  bellwethers that we ultimately took on and only one of them

1    survived to trial.  This is part of the genesis for our

2    belief that there is a lot and probably the overwhelming

3    amount of this docket that is not fit for remand to

4    transferor courts and we need to work through it.

5         But we could do a kind of process where we sort of

6    take a selection of cases, you know, several hundred cases

7    or whatever it would be, and sort of put them through the

8    wringer to see what survives to bellwether and I think that

9    would teach us a lot.

10        I would also add that I think it would be pretty

11   rare to remand after just one bellwether trial.  I don't

12   know that it's never happened, but I certainly haven't

13   thought of it and I don't know that we ever contemplated,

14   back before our voyage to the Eighth Circuit, that we

15   wouldn't be doing at least a few more bellwethers.

16        But our fundamental viewpoint is that there's a

17   lot of problems in this docket and that before we can get to

18   that point, either of having a discussion around settlement

19   or remanding the cases to transferor courts, we need to cull

20   the wheat from the chaff.

21        THE COURT:  All right.  So a couple of things.

22   What I'm hearing is that there's -- I don't know if you have

23   had the opportunity to meet and confer.  We didn't expect

24   that you would do that.  But what I'm hearing is there's

25   some pretty fundamental disagreement about where we should

1    go from here.

2         I'm hearing on your side there's some discovery to

3    be done.  You haven't said it directly, but I'm inferring

4    that there is some thought that maybe additional expert work

5    need be done.

6         On your side I'm hearing discovery is closed, even

7    though you didn't say that exactly, and that where we were

8    in this process of categorizing cases ought to continue,

9    which, by the way, at least my memory was that process, I

10   recall it being that the genesis of it was as the first step

11   toward potential settlement discussions, but with the

12   recognition that it might also -- that it would pay

13   dividends with respect to defining bellwethers, but that it

14   wasn't undertaken for the purpose of defining bellwethers

15   per se.

16        But that's what I'm hearing.  It strikes me that

17   we -- maybe the best thing to do is to have you each go back

18   and put together proposals or case management plans or case

19   management proposals about where we go from here and then

20   have you back and we try and figure out what does happen

21   next, but maybe -- you know, do you see it that way?  Is

22   that a fruitful exercise?

23        MR. HULSE:  I think it would be fruitful.

24        And I would also add on the discovery front, I

25   mean, I think -- you know, we would acknowledge everybody

1    has probably got to supplement their expert reports, right?

2              THE COURT:  Right.

3              MR. HULSE:  We'd be open to talking to plaintiffs

4    about some targeted discovery, additional discovery, around

5    what would be necessary to update those reports.  So, like,

6    that piece I think could be fruitful.

7              I would like to -- I know my team would like to

8    discuss with them our ideas around this kind of what I call

9    the hybrid approach, a kind of hybrid bellwether

10   selection/bucketizing process that might be able to move

11   more quickly.

12             THE COURT:  Okay.  Ms. Zimmerman, I mean, do you

13   think it's a worthwhile exercise to have you each go back

14   and sort of put together your own view of what should

15   happen?

16             MS. ZIMMERMAN:  I'm going to say something

17   candidly with the Court.  We expect to bring a motion to

18   recuse.

19             THE COURT:  Oh, okay.  Me or Ericksen or both?

20             MS. ZIMMERMAN:  I don't know that we've defined

21   it.  I guess we thought Judge Ericksen, and not --

22             THE COURT:  No.  That's --

23             MS. ZIMMERMAN:  There's certain cases, I guess,

24   that just after a certain amount of history, there's just

25   going to be a concern and maybe -- it's not a comment on

1   Her Honor's ability to handle cases, she handles a lot of

2   complicated cases, but this one has got some history now and

3   we've got clients to represent.

4           So I expect that that is going to come and it's a

5   part of -- our, sort of, inquiry today was interested in if

6   the Court intends to continue moving forward.  So I guess

7   that's --

8           THE COURT:  Yeah.

9           MS. ZIMMERMAN:  -- an awkward thing to have to say

10  to the Court, but that's what we expect to do.

11          THE COURT:  So always a hard topic to raise, I

12  recognize that, and you shouldn't feel squeamish about --

13          MS. ZIMMERMAN:  Too late.

14          THE COURT:  -- how you say it or how you raise it.

15  As far as I know, Judge Ericksen is intending to continue on

16  the case.  Obviously if the plaintiffs bring a motion, it

17  will be heard and attended to and whatever the result is the

18  result is.

19          What I think would still be useful, even while

20  that motion is in process or before it's even filed,

21  whichever -- however it plays out, I think it would be good

22  to sort of send the parties back to their own corners to

23  develop what they think is an appropriate case management

24  plan going forward and we'll take it from there.

25          And then once you -- you know, if you can submit

1      those 30 days from today --

2                  MS. ZIMMERMAN:  The case management plan?

3                  THE COURT:  Pardon me?  I'm sorry.

4                  MS. ZIMMERMAN:  A proposed case management plan

5      within 30 days?

6                  THE COURT:  Yeah.  Yes.  Excuse me.  I shouldn't

7      be so slack in my language.  Monday, January 17th, if you

8      can submit those.  And I don't think those need to be --

9      well, I guess we'll file them on ECF.

10                 Go ahead.

11                 MS. ZIMMERMAN:  So with respect to the motion for

12     recusal, it would be our preference --

13                 THE COURT:  Come on up to the podium.  Are your

14     microphones on, you two?

15                 MS. ZIMMERMAN:  I don't usually have a hard time

16     with people hearing me, but maybe it's because I don't want

17     to say it.  It would be my preference to submit the motion

18     for recusal --

19                 THE COURT:  First.

20                 MS. ZIMMERMAN:  -- privately --

21                 THE COURT:  Okay.

22                 MS. ZIMMERMAN:  -- rather than on the public

23     docket to start, and then the Court can consider it and we

24     can file it publicly if necessary, but that --

25                 THE COURT:  Yeah.

1        MS. ZIMMERMAN:  And I am just sort of setting that

2    out there.  That would be, I guess, my preference as a

3    practitioner here in the District of Minnesota, to do that

4    privately.

5        THE COURT:  I think, you know -- I haven't

6    encountered this, so I have no idea.

7        MS. ZIMMERMAN:  I have never done it.

8        THE COURT:  I think what would be the smart thing

9    to do -- I can consult with Judge Ericksen, if you like, but

10   I think at a minimum, you know, file it under seal.

11       MS. ZIMMERMAN:  Sure.

12       THE COURT:  And then the Court can decide if

13   they -- if the Court wants it unsealed, it will get

14   unsealed, right?

15       MS. ZIMMERMAN:  Sure.  I have no doubt who is in

16   control of the docket.

17       THE COURT:  Well, you'd be surprised at how often

18   that question seems to confuse people.

19       MS. ZIMMERMAN:  I'm sure.  I'm sure.

20       THE COURT:  Okay.  And, you know, while that's

21   happening, you can still at least put together a case

22   management plan.

23       MS. ZIMMERMAN:  Sure.

24       THE COURT:  Because whether it's her and me or not

25   her or not me or not either of us, whatever, we can at least

```
 1    try and move things along.  Okay?

 2             MS. ZIMMERMAN:  Okay.

 3             THE COURT:  Okay.  Go ahead and go back and be

 4    seated.  Anything else from your perspective we should deal

 5    with today?

 6             MS. ZIMMERMAN:  Not that I can think of right now,

 7    Your Honor.

 8             THE COURT:  Okay.  Because I have one thing, but

 9    how about you, Mr. Hulse?

10             MR. HULSE:  No, Your Honor.

11             THE COURT:  Okay.  So we are still on the record.

12    This portion will be sealed until it's unsealed and I will

13    unseal it, but I want to make it clear to everybody not for

14    any reason other than when this is public, it will be

15    public.

16             You will be receiving from me or you will be --

17    yeah, I've had to do it in one other case.  You'll be

18    receiving a disclosure from me.  It will be sealed when it

19    is delivered to the two of you, the two sides.  All the

20    plaintiffs' lawyers, it can be shared with them.  It will be

21    unsealed shortly thereafter.

22             Let me actually inquire.  Ma'am, I'm sorry.  Are

23    you with the press?

24             MS. LORD:  No.  I'm a lawyer.  I represent --

25             THE COURT:  Okay.
```

1           MS. ZIMMERMAN:  Priscilla Lord.

2           THE COURT:  Okay.  Oh, I'm sorry.  Okay.  Very

3     well.

4           So this is all under seal until it becomes

5     unsealed, and it will be unsealed quickly, but -- see, I

6     wasn't going to do this verbally, but I will do it verbally

7     for now.

8           My personal and my family's retirement accounts

9     and investment accounts are all with an investment manager

10    who has discretion over certain funds, which is to say they

11    can buy and sell at their discretion without any preapproval

12    by me or my wife.

13          For a portion of the time that this case was

14    active, my investor, without my subjective knowledge,

15    purchased some shares in 3M.  Also without my knowledge, not

16    too long after that, I think it was less than a year, sold

17    the shares in 3M.

18          I am preparing, as I say, a disclosure.  It will

19    tell you when they were purchased, when they were sold, what

20    was decided during that period of time, what percentage of

21    my portfolio this compromises, which -- not that I have a

22    vast portfolio, but this is a very small portion.

23          It will disclose that I was completely unaware of

24    this subjectively until November of this year, 2021, which

25    is not the standard.  Okay?  I have -- you know, I am

1    completely divested; have been for quite some time.  I have

2    put an instruction in with my advisor that they may not

3    purchase any shares of 3M or any of its subsidiaries.

4          That disclosure is coming.  You -- once that

5    disclosure is made and filed, that will be unsealed, this

6    will be unsealed, and you may all do whatever you see

7    appropriate to do.  Okay?

8          But that is what's required by my rules, that I

9    have to make the disclosure.  And the advisory opinions say

10   that in the middle of a case, the remedy is to divest.

11   However, you all do with that information whatever it is you

12   see fit.  Okay?  Like I say, that's coming.

13         I think that's it for now, but one last chance.

14   Ms. Zimmerman, anything further?

15         MS. ZIMMERMAN:  No, not from us, Your Honor.

16         THE COURT:  Okay.  Mr. Hulse?

17         MR. HULSE:  No.  Thank you, Your Honor.

18         THE COURT:  Okay.  With that, we are going to go

19   off the record.

20      (Court adjourned)

21                         *     *     *

22

23

24

25

1

2

3          I, Lori A. Simpson, certify that the foregoing is a

4    correct transcript to the best of my ability from the

5    official digital recording in the above-entitled matter.

6

7                    Certified by:   *s/ Lori A. Simpson*

8                                Lori A. Simpson, RMR-CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25