# PX9

```
 1                    UNITED STATES DISTRICT COURT

 2                        DISTRICT OF MINNESOTA

 3     ---------------------------------------------------------
                                       )
 4                                     )
       In Re: Bair Hugger Forced Air   )  File No. 15-MD-2666
 5     Warming Devices Products        )  (JNE/FLN)
       Liability Litigation            )
 6                                     )  October 18, 2018
                                       )  Minneapolis, Minnesota
 7                                     )  Courtroom 12W
                                       )  9:45 a.m.
 8                                     )
                                       )
 9     ---------------------------------------------------------

10             BEFORE THE HONORABLE JOAN N. ERICKSEN
               UNITED STATES DISTRICT COURT JUDGE
11
               And THE HONORABLE DAVID T. SCHULTZ
12             UNITED STATES MAGISTRATE JUDGE

13                      (STATUS CONFERENCE)

14     APPEARANCES

15     FOR THE PLAINTIFFS:
                                  MESHBESHER & SPENCE
16                                Genevieve M. Zimmerman
                                  1616 Park Avenue
17                                Minneapolis, MN  55404

18                                CIRESI CONLIN
                                  Jan Conlin
19                                225 South 6th Street
                                  Suite 4600
20                                Minneapolis, MN

21                                KENNEDY HODGES, LLP
                                  Gabriel Assaad
22                                4409 Montrose Blvd
                                  Suite 200
23                                Houston, TX 77006

24                                KASTER LYNCH FARRAR & BALL, LLP
                                  Kyle Farrar
25                                1010 Lamar, Suite 1600
                                  Houston, TX  77002
```

1

1    question is whether what was submitted qualifies?

2            Okay.  Mr. Lee, just for your comfort, we've got

3    all four lawyers pouring over these documents right now.

4            MR. LEE:  Your Honor, I just want to note on the

5    record that defendants never put this issue in their motion.

6            MR. HULSE:  That's not accurate, Your Honor.

7            THE COURT:  All right.  But we're not talking

8    about that is more of a legal procedural matter.  Right now

9    we're focusing on the factual dispute.

10           MS. ZIMMERMAN:  Your Honor, based on our review, I

11   mean he's an Officer of the Court, and he's represented

12   that's not what happened.  There's not anything that I can

13   see --

14           THE COURT:  Just to interrupt you.  That's not

15   exactly what he's representing.  He's representing that the

16   plaintiffs may have done it.  He doesn't know.  So he's

17   representing that he didn't do it himself, but he's not

18   representing that it did not happen.

19           MS. ZIMMERMAN:  Okay.

20           THE COURT:  In fact, he specifically said the

21   plaintiffs may have done it themselves.

22           MS. ZIMMERMAN:  Okay.  Based on my review and,

23   again, I'm not an expert on handwriting.  I don't see that

24   it's so obviously whited out.  I mean, I think that the

25   signatures and the printing are similar.  I don't see any

1    white-out marks, you know, but --

2              THE COURT:  Well, I guess there's no option but to

3    take a look at it.  Ms. Zimmerman and Mr. Hulse, would you

4    hand up one?

5              (Voice of operator on phone.)

6              THE COURT:  I don't know what that was.  Mr. Lee,

7    are you still there?

8              MR. LEE:  Yes, Your Honor.

9              THE COURT:  All right.  Let's take one.

10             MR. HULSE:  I may need to organize it a little

11   bit.

12             MS. ZIMMERMAN:  And I didn't look at those yet.

13             THE COURT:  So someone on the phone put us on

14   hold, and we're getting the notices that our call is

15   important to them.  So as a result of that, I'm going to,

16   while I look at these documents, I'm going to put the

17   telephone calls on mute.

18             What we have here is all of them, right?

19             MR. HULSE:  Your Honor, I just passed up two.  I

20   can pass up the rest too.

21             THE COURT:  Oh, I see.  Okay, so *Potter* and

22   *Swales*.  All right.  Well, *Potter*, is an -- I don't know if

23   it's white out or whatever it is, but I find that the dates

24   are clearly different.  So this is not a person who is

25   routinized in their handwriting that there does not appear

24

1    that the style differences don't appear on different dates.
2    And the printed name and the signature line not only for
3    Ms. Potter but also for Mr. Potter are completely and
4    totally identical.  And even if in theory you can have one
5    person whose signature and printing was so routinized that
6    even the uptick of the pen remained the same, it's not
7    believable that that would happen with two people.  So
8    *Potter* is dismissed.
9            *Swales*, let's look at Swales.  Counsel, why are
10   there three copies?  So we've got three copies of
11   August 29th and three or four, no, no, we have four copies
12   of the August 29th.  One was in the wrong paper clip.  Is
13   there any reason why you have multiple copies of these?
14           MR. HULSE:  Multiple copies for the other parties,
15   right.
16           THE COURT:  All right.  So, Mr. Hulse, on *Swales*,
17   do you have any original s?  These are both photocopies and
18   especially the August 31st one is a little bit faint.
19           MR. HULSE:  They're the PDFs that were submitted
20   to us by plaintiffs' counsel, so we don't have an original
21   signature.  There in *Swales*, I would note the date, it's the
22   second line I believe actually, you can see the signature
23   line has been whited.
24           THE COURT:  Are you talking about the line itself?
25           MR. HULSE:  The line itself.

25

1              THE COURT:  Oh, I see.  Maybe, yeah, and that
2     might be a little bit true on the first line also.  Between
3     the A and the L, and between L and the S.  Also, under --
4     well, back in the August 29th one, you've got that same on
5     the first line, the same I don't know if partial apparent
6     obliteration of the line to the right of the S.  So I'm not
7     so persuaded by that whiting out of the line business
8     because strange things seem to be happening with the line on
9     both.  So I'm not going to -- I think it's -- I guess on
10    *Swales*, I can't really tell.
11             MS. ZIMMERMAN:  I just received an e-mail from
12    Mr. Lee.  He's trying to -- he's on mute because somebody
13    put us on hold, but he asked that he be given the
14    opportunity to provide copies of all the signatures that
15    have been submitted thus far in the *Potter* matter.  And I
16    tried to reply to see how many that might be, but he
17    certainly thinks that that would be an important issue for
18    the Court.
19             THE COURT:  Okay.  *Potter* is dismissed.  *Swales*,
20    I'm not comfortable making a decision on what I've got on
21    *Swales*.  So if you've got something else on *Swales* or
22    anybody else does, I guess I could take that.  But the
23    interesting thing about the *Swales* is that the signatures
24    and the printed are absolutely identical.  You hold them up
25    to the light, they are a hundred percent identical, so that

1      is a strong indicator that it is a cut and paste.
2              The thing that struck me, this seems to be the
3      signature of quite an old person, and the dates, she starts
4      her dates exactly the same distance from the left side of
5      the line both times and that's an indication of the sort of
6      routinization that was missing in the *Potter* case.  So I
7      mean maybe, yeah, it's not completely the same because the
8      dash between the 31 and the 2018 is obviously really
9      different from the dash between the 29 and the 2018, but I
10     can see how somebody would do that differently.  But the
11     distance from the left is something that you, you know, I
12     don't know.  Anyway.  I can't make the finding on *Swales*.
13             MR. HULSE:  Your Honor, I also have passed up the
14     *Bresnock* case, which I think, at least personally, I think
15     looks pretty clear-cut.
16             THE COURT:  And I'm going to look at *Bresnock*
17     right now.  It's almost like Bresnock never put the date on
18     the September 4th one.  The handwriting of September 4th is
19     completely different than the handwriting of the
20     August 24th.
21             MR. HULSE:  Your Honor, another possibility about
22     what may happen sometimes, Your Honor, is that --
23             THE COURT:  Wait a minute.  Wait a minute here.
24     The 9-4-18 on *Bresnock* is identical to the 9-4-18 on *Potter*.
25     Wait a minute.  Wait a minute.

```
 1                  The 9-4-18 on Bresnock is not anything like it
 2      appears not to have been made by the same person who did the
 3      date August 24, '18 on Bresnock.  The August one appears to
 4      be the same or similar handwriting to the signature of
 5      Bresnock, loopy, and what's the right word?  Kind of not --
 6      not the handwriting of a mechanical engineer.
 7                  The 9-4-18 is a more pinched, precise writing, but
 8      what's really concerning the Court right now, really
 9      concerning, is now I am comparing the 9-4-18 on Bresnock
10      with the 9-4-18 on Potter, and let's say the eight,
11      obviously, the ink mark is heavier.  This person starts
12      their 8's strongly on the right, gets lighter as the loop is
13      completed.
14                  Mr. Lee, any explanation for this September 4, '18
15      similarity between Potter and Bresnock?  You're off mute.
16      All right.  Hearing nothing.  And that's not trend Swales,
17      which is yet another reason why Swales seems different from
18      Potter and Bresnock.  All right.  Potter and Bresnock are
19      dismissed.
20                  We can go on and on about the similarities between
21      the 9-14-18 on Bresnock and Potter.  The dash lines between
22      the dates go the same distance below the line.  You know,
23      you don't have to know the first thing about handwriting to
24      see that those are probably made by the same person.  All
25      right.
```