**PX13**

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**SIXTEENTH JUDICIAL CIRCUIT, DIVISION 12**
**Honorable Jennifer M. Phillips, Judge**

| | |
|---|---|
| KATHERINE O'HAVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1816-CV30710 |
| | ) |
| 3M COMPANY, | ) |
| | ) |
| Defendant. | ) |

**TRIAL TRANSCRIPT**

Beginning on September 27, 2022 through and including October 13, 2022, the above cause came on for jury trial before the Honorable Jennifer M. Phillips of the Circuit Court of Division 12 of the Jackson County Circuit Court in Kansas City, Missouri.

---

Gail M. Eckert-Conaway, Certified Court Reporter No. 0836
Sixteenth Judicial Circuit, Division 6
Kansas City, Missouri

```
                       APPEARANCES:

For the Plaintiff:

         LANGDON & EMISON, LLC
         Brett A. Emison
         Michael W. Manners
         Danielle R. Rogers
         O. Nicole Smith
         911 Main Street – P.O. Box 220
         Lexington, MO 64067

         FARRAR & BALL, LLP
         Mr. Kyle Farrar
         1117 Herkimer
         Houston, Texas 77008

         Mr. Gabriel Assaad
         1770 St. James Place
         Suite 100
         Houston, Texas 77056

         MESHBESHER & SPENCE
         Ms. Genevieve Zimmerman
         1616 Park Avenue
         Minneapolis, MN 55404
```

For the Defendants:

>    BLACKWELL BURKE P.A.
>    Mr. Jerry S. Blackwell
>    431 S. Seventh Street
>    Ste. 2500
>    Minneapolis, MN 55415
>
>    KUCKLEMAN TORLINE KIRKLAND &
>    LEWIS
>    Mr. Stephen J. Torline
>    10740 Nall, Suite 250
>    Overland Park, KS 66211
>
>    MITCHELL WILLIAMS
>    Ms. Lyn Pruitt
>    425 W Capitol Ave.
>    Ste. 1800
>    Little Rock, AK 72201

[REPORTER'S NOTE:   This transcript contains quoted material.
Such material is transcribed as read.]

**INDEX**

**September 27, 2022**

```
Voir Dire Examination by Mr. Emison -----------------Page 32
Hardship Questions ----------------------------------Page 30
Voir Dire by Ms. Pruitt -----------------------------Page 159
Strikes for Cause -----------------------------------Page 70
```

**September 28, 2022**

```
Pre-Trial Issues ------------------------------------Page 277
Opening Statement by Mr. Emison ---------------------Page 288
Opening Statement by Ms. Rogers ---------------------Page 316
Opening Statement by Mr. Blackwell ------------------Page 327
```

    DR. JACK BOWLING
```
Direct Examination by Mr. Farrar --------------------Page 363
Cross Examination by Ms. Pruitt ---------------------Page 476
```

**September 29, 2022**

```
Pre-Trial Issues ------------------------------------Page 519
```

    DR. JACK BOWLING
```
Continued Cross Examination by Ms. Pruitt -----------Page 532
Redirect Examination by Mr. Farrar ------------------Page 582
Re-Cross Examination by Ms. Pruitt ------------------Page 616
```

    DR. SAAID ELGHOBASHI
```
Direct Examination by Ms. Zimmerman -----------------Page 619
Cross Examination by Mr. Blackwell ------------------Page 682
Redirect Examination by Ms. Zimmerman ---------------Page 704
Re-Cross Examination by Mr. Blackwell ---------------Page 712
```

**September 30, 2022**

```
Pre-Trial Issues ------------------------------------Page 717
```

    DR. WILLIAM JARVIS
```
Direct Examination by Mr. Emison --------------------Page 728
```

```
Offer of Proof - Dr. Jarvis ---------------------------Page 763
Cross Examination by Mr. Blackwell -------------------Page 841
```

**October 3, 2022**

```
    DR. WILLIAM JARVIS
Continued Cross Examination by Mr. Blackwell --------Page 927
Redirect Examination by Mr. Emison ------------------Page 962
Re-Cross Examination by Mr. Blackwell ---------------Page 1009

    DR. YADIN DAVID
Direct Examination by Mr. Farrar --------------------Page 1028
Offer of Proof - Dr. David --------------------------Page 1103
Cross Examination by Ms. Pruitt ---------------------Page 1133
```

**October 4, 2022**

```
Continued Cross Examination by Ms. Pruitt -----------Page 1165
Redirect Examination by Mr. Farrar ------------------Page 1215
Re-Cross Examination by Ms. Pruitt ------------------Page 1232

Record re: Depo Designations ------------------------Page 1238

    KATHERINE O'HAVER
Direct Examination by Ms. Rogers --------------------Page 1251
Cross Examination by Mr. Blackwell ------------------Page 1289

Record re:  Van Duren Exhibits-----------------------Page 1346
```

**October 5, 2022**

```
Pre-Trial Issues ------------------------------------Page 1354

    KATHERINE O'HAVER
Continued Cross Examination by Mr. Blackwell --------Page 1369
Redirect Examination by Ms. Rogers ------------------Page 1389
Re-Cross Examination by Mr. Blackwell ---------------Page 1408

    DR. STAN SMITH
Direct Examination by Mr. Emison --------------------Page 1410
Cross Examination by Mr. Torline --------------------Page 1443
Redirect Examination by Mr. Emison ------------------Page 1455

    DARRELL BARNES
```

```
Direct Examination by Ms. Rogers --------------------Page 1463
Cross Examination by Mr. Torline --------------------Page 1470

      MARLENE JOHNSON
Direct Examination by Ms. Rogers --------------------Page 1474
Cross Examination by Mr. Torline --------------------Page 1478
```

**October 6, 2022**

```
                       STATE RESTS

      JONATHAN BORAK
Direct Examination by Mr. Blackwell -----------------Page 1502
Cross Examination by Mr. Sacchet --------------------Page 1575

Record re: Motion for Directed Verdict --------------Page 1600
```

**October 7, 2022**

```
Pre-trial Issues ------------------------------------Page 1607

      JONATHAN BORAK
Continued Cross Examination by Mr. Sacchet ----------Page 1612
Redirect Examination by Mr. Blackwell ---------------Page 1681
Re-Cross Examination by Mr. Sacchet -----------------Page 1686

      DR. MICHAEL MONT by WebEx
Direct Examination by Mr. Blackwell -----------------Page 1693
Cross Examination by Ms. Zimmerman ------------------Page 1744

Record re: Dr. Mont's WebEx Testimony ---------------Page 1818
```

**October 11, 2022**

```
Pre-Trial Issues ------------------------------------Page 1826

      PROFESSOR JOHN ABRAHAM
Direct Examination by Mr. Blackwell -----------------Page 1842
Cross Examination by Mr. Farrar ---------------------Page 1925

                     DEFENSE RESTS

Instruction Conference ------------------------------Page 2010
```

**October 12, 2022**

Pre-Trial Issues ------------------------------------Page 2026

    PROFESSOR JOHN ABRAHAM
Continued Cross Examination by Mr. Farrar -----------Page 2035
Redirect Examination by Mr. Blackwell ---------------Page 2065
Re-Cross Examination by Mr. Farrar ------------------Page 2086

    DEVERICK ANDERSON
Direct Examination by Ms. Pruitt --------------------Page 2106
Offer of Proof – Dr. Anderson -----------------------Page 2168
Cross Examination by Mr. Assaad ---------------------Page 2188

Record re: Timing -----------------------------------Page 2249

**October 13, 2022**

Record re: Rebuttal Evidence ------------------------Page 2255

    DEVERICK ANDERSON
Continued Cross Examination by Mr. Assaad -----------Page 2258

Motion for Acquittal --------------------------------Page 2304
Motion for Mistrial ---------------------------------Page 2305
Instructions Read to Jury ---------------------------Page 2309

Closing Argument by Mr. Emison ----------------------Page 2309
Closing Argument by Mr. Blackwell -------------------Page 2353
Rebuttal Argument by Mr. Farrar ---------------------Page 2403

Verdict Returned ------------------------------------Page 2418
Jury Polled -----------------------------------------Page 2419

Court Reporter's Certificate ------------------------Page 2421

1   3M acted willfully and wantonly in a number of manners with
2   respect to the Bair Hugger including relying on its legal
3   department rather than its clinical affairs people in
4   conducting critical safety testing and failing to
5   adequately test and intentionally withholding information
6   from healthcare providers and others that put plaintiff and
7   others at a severe risk of harm.  We would ask that we be
8   permitted to provide evidence by way of a stipulation to
9   the jury regarding 3M's net worth.
10            THE COURT:  Any argument from defendant regarding
11   the submission of punitive damages?
12            MR. BLACKWELL:  Yes, Your Honor. We think that
13   would be improper in this case based on the evidence that
14   the jury has heard.  There's been zero evidence that any
15   particle admitted from the Bair Hugger contains bacteria.
16       And there have been no studies presented by the
17   plaintiffs that conclude that there is a causal nexus
18   between use and operation of the Bair Hugger and surgical
19   site infections.
20       So not only is the science lacking.  It provides no
21   basis for the idea that 3M acted with a willful, reckless
22   or wanton indifference to the rights and safety of others,
23   Your Honor.
24            THE COURT:   Okay.  The Court finds that
25   sufficient evidence has been proven to allow the submission

```
1            of punitive damages to the jury.
2                 So now the stipulation.
3                    MR. EMISON:  Yes, Your Honor.  Plaintiffs have
4            proposed and provided to Counsel for defendant a combined
5            stipulation that includes both the matter of predecessor
6            liability which was previously stipulated to and the amount
7            of defendant's net worth as of December 31, 2021 as
8            reflected in its official SCC filing.
9                    THE COURT:  Do you guys want to mark this as an
10           exhibit?
11                   MR. EMISON:  I can, yes, Your Honor.
12                   THE COURT:  Do you want to use 2230?  Let's go
13           off the record.
14   (OFF THE RECORD.)
15   (BACK ON THE RECORD.)
16                   MR. EMISON:  How about 2231?
17                   THE COURT:   I understand, Mr. Torline, the
18           defendant has an objection generally to punitive damages.
19           Do you have an objection to Plaintiff's Exhibit 2231, the
20           stipulation?
21                   MR. TORLINE:  Yes, Your Honor, on two bases.
22           Number one, on the stipulation as to the successor
23           liability.  The evidence is clear in this case from voir
24           dire, it was mentioned in opening.  Mr. Emison mentioned it
25           and there's been significant evidence that 3M is the
```

```
1         3M is moving for a directed verdict on three bases.
2              First, we move for directed verdict on the claims that
3         the plaintiff initially submitted but are no longer going
4         to pursue.  And we move for directed verdict on the
5         remaining claims in that essential elements are lacking.
6              We would also move for a directed verdict on the
7         punitive damages.  With respect to abandoned claims, Your
8         Honor, the claims that have not been pursued in this trial.
9         That would include the plaintiff's warranty claim, Counts 4
10        and 5.
11                  THE COURT:  I'm just going to interrupt you just
12        so that we don't spend time talking about counts that are
13        no longer in play.  Mr. Emison, I have – well I had a total
14        of 13 counts.  Ten through 13 it's my understanding
15        involved the defendants that have since been dismissed.
16             So 1 through and including 9 are the ones as it
17        relates to defendant 3M.  Is the plaintiff intending to
18        submit on all nine counts?
19                  MR. EMISON:  No, Your Honor.  Plaintiff does not
20        intend to submit on express warranty which I believe
21        assuming this is correct, Count 4; breach of implied
22        warning, Count 5; violation of the MMPA, Count 6; negligent
23        misrepresentation, Count 7; fraudulent misrepresentation,
24        Count 8 and fraudulent concealment, Count 9.
25                  THE COURT:  Okay.  So it looks like Counts 1
```

```
 1         through 3 are the ones that the plaintiff intends to submit
 2         to the jury?
 3                  MR. EMISON:  Negligent design and failure to
 4         warn.
 5                  THE COURT:   Yes, okay.  With that, I didn't
 6         want you to waste your five minutes on counts that didn't
 7         matter anymore.
 8                  MR. BLACKWELL:  Thank you, Your Honor.  With
 9         respect to the design defect claims, very simply according
10         to the case of Johnson versus Auto Handling Corporation 523
11         S.W.3d at page 466.  It's clear that in order for plaintiff
12         to proceed on any claims that are rooted in design defects
13         there must have been testimony and there must have been
14         evidence that the product was in substantially the same
15         condition at the relevant times of the lawsuit, the time of
16         injury as when it was delivered.
17            In this case there has been – in this trial there's
18         been zero testimony and zero evidence as to the condition
19         of the product and that they have presented no evidence
20         whatsoever.  That's at the root of foundation for pursuing
21         a design defect claim.
22            For the failure to warn claim, plaintiffs had to have
23         shown not only that the product lacked a warning but caused
24         an injury but they must have shown that the warning
25         would've altered behavior.
```

1       In this case there's been no testimony at all from a
2  person who would be making decisions in Ms. O'Haver's
3  operating room about the use of the Bair Hugger who has
4  testified at all, let alone that whatever the warning
5  plaintiffs might claim would have altered behavior.
6       We heard from Dr. Ballard. Dr. Ballard was very clear
7  and it's cited in our papers that he is not the person who
8  would make the decision about the use of a patient warming
9  device. It would be the anesthesiologist.
10      As Your Honor knows, we didn't hear anything from Dr.
11 Bible in the case at all, the anesthesiologist.
12      We heard from a corporate representative who's a
13 marketing person, not a person who's in a position to make
14 any decisions about whether or not the type of patient
15 warming is used or not the operating room.
16      To the extent plaintiff's claim that there is a
17 rebuttal of presumption that applies, that means they don't
18 have to show that the warning would've altered behavior,
19 it's questionable, Your Honor, under Missouri law whether
20 that applies to a intervenor in the first place. And we
21 think there is no jury question in that regard when the
22 person who had been making the decisions, the
23 anesthesiologist did not testify in the trial nor was there
24 any evidence related to what the anesthesiologist either
25 knew or didn't know which is important even for the

1     rebuttal of presumption.  You have to show that the warning
2     information – the warning would've made a difference as in
3     they told them something they didn't know and then that
4     would've altered the behavior.
5          The persons not even identified here.  There's been no
6     testimony of any kind.  And for that reason, no basis for
7     the failure to warn claim, Your Honor, should go forward.
8          We've heard the Court's ruling already with respect to
9     punitives.  I won't take much time other than to say we
10    think the evidence doesn't show an indifference let alone a
11    complete indifference or conscious disregard.  And that's
12    based upon everything from the Bair Hugger not emitting any
13    bacteria containing particulates; doesn't increase the
14    bacterial load in the operating room, Your Honor, and none
15    of the studies that plaintiffs have relied upon and shown
16    the jury conclude causation.
17              THE COURT:    Thank you, Counsel.  Mr. Emison.
18              MR. EMISON:  Yes, Your Honor, just very, very
19    briefly.  I know the Court has been paying very close
20    attention to the evidence as it comes in so I won't belabor
21    any of this.  But I will just say that none of the
22    essential elements are lacking.
23         There was evidence that the jury heard today, in fact,
24    from Ms. Colby from CenterPoint Hospital about the Bair
25    Hugger and how 3M maintained ownership and control of the

```
 1         Bair Hugger devices that were at the hospital and had the
 2         responsibility for maintaining those.  That satisfies our
 3         element that it was in substantially the same condition.
 4         If they weren't in substantially the condition, if they
 5         were not in working order she testified that they would get
 6         a different new model to replace the nonworking model.
 7              With regard to the warnings, Dr. Ballard – the
 8         testimony that's cited isn't accurate.  Dr. Ballard – all
 9         that establishes is Dr. Ballard does not place the Bair
10         Hugger on the patient.  Dr. Ballard controls his operating
11         room.  He very clearly testified that if he wanted to know
12         the information that 3M had not told him, the warning was
13         not given to make an informed decision about whether or not
14         to use the Bair Hugger in his surgeries.
15              And we also heard that same testimony from Ms. Colby
16         today for the hospital who said that she relied on 3M to
17         provide proper warnings about the risks and benefits so the
18         hospital could make an informed decision about what forced
19         air warming devices to provide to its healthcare providers.
20              Other than that, we would stand on our evidence, Your
21         Honor.
22                   THE COURT:  The defendant 3M's Motion for
23         Directed Verdict at the Close of Plaintiff's Evidence is
24         overruled.  Noting that, given that the plaintiff has only
25         indicated that they are going to submit on the three
```

```
 1        the close of all the evidence?
 2                 MR. TORLINE:  Yes, Your Honor.  We want to renew
 3        and raise our Motion to Judgment at the Close of All
 4        Evidence.
 5                 THE COURT:  Do you have a paper copy for me?
 6                 MR. TORLINE:  I do not.
 7                 THE COURT:     No worries.
 8                 MR. TORLINE:   We're incorporating with our
 9        Motion for Directed Verdict.  And, again, Judge, I would
10        just point out that there's been no evidence or expert
11        testimony that establishes causation as opposed with
12        correlation.  The medical literature is, as we've seen, is
13        frankly all over the board.  We think that there is not a
14        case – a submissable case for punitive damages.  There is
15        no – the heating presumption has been overcome.  Dr. Bible
16        was not called and he's not testified so there's no
17        evidence that ...
18                 THE COURT:    Hey, guys in the gallery, we're
19        trying to make a record so if you could keep your voices
20        down, I'd appreciate it.  Mr. Torline.
21                 MR. TORLINE:  That he would've heeded any warning
22        and done anything differently than what he did.  We will
23        stand on the papers that we filed.
24                 THE COURT:  Stand on your evidence and on your
25        response, Mr. Emison.
```

```
 1              MR. EMISON:  No.  We stand on our evidence.  I
 2    would incorporate the additional argument that I made at
 3    the close of arguments.
 4              THE COURT:  That defendant's Motion for Directed
 5    Verdict at the Closed of All the Evidence will be
 6    overruled.  Mr. Torline, did you have any other motions
 7    that you wanted to make?
 8              MR. TORLINE:  Yes, Your Honor.  We want to file
 9    that in open court our Motion for Mistrial.
10              THE COURT:  Okay.  And is this the previous oral
11    Motion for Mistrial or is this based upon new grounds?
12              MR. TORLINE:   I'm trying to remember what the
13    original ...
14              THE COURT:    I'm think we had at least one or
15    two requests to a mistrial.  I can't remember.
16              MR. BLACKWELL:  It's additional grounds.
17              MR. TORLINE:  Judge, what we have done here is
18    the basis of this is number one, the deposition transcripts
19    that - the snippets that were played cumulatively over the
20    last three weeks, by my count there were over 24 snippets
21    played in the plaintiff's case in chief.  The plaintiff
22    relies on 5707 which says "Deposition can be used for any
23    reason," which is true.  It does say that.  But it also
24    says, "Any part of the deposition that is admissible under
25    the rule as though the deponent were testifying in court."
```