**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION | MDL No. 15-cv-2666 (JNE/DTS) |
| | **ORDER** |

## INTRODUCTION

Plaintiffs move to disqualify the undersigned from further proceedings in this matter based upon (1) past ownership of stock in defendant 3M Company and (2) that the undersigned's spouse allegedly either appeared as a lawyer in this proceeding in 2015 or is a material witness. Additionally, plaintiffs ask that this motion, which is paired with a motion to disqualify the presiding district judge, be heard and decided by a randomly assigned judge of this district. For the reasons described in detail below, plaintiffs' motion to disqualify the undersigned is denied.

## MOTION TO REASSIGN
## DISQUALIFICATION MOTION

Before turning to the merits of plaintiffs' motion this Court must address the threshold issue. Namely, plaintiffs' request to have their motion heard and decided by another judge. The request is denied for the following reasons.

To begin, "[t]here is no requirement that a § 455 motion to disqualify be heard by a different judge than the one whose disqualification it seeks. Indeed, such motions are almost always decided by the judge whose recusal is sought." *United States v. Hogeland*, No. 10-cr-0061, 2012 WL 4868904, at *8 n.9 (D. Minn. Oct., 2012). *See also Smith v. Buck*, No. 12-cv-0163, 2013 WL 1658397, at *2 (D. Minn. Apr. 17, 2013). This practice is consistent with Eighth Circuit precedent, which recognizes that the judge whose disqualification is sought is often in the best position to determine whether he or she

should recuse. *Moran v. Clarke*, 296 F.3d 638, 649 (8th Cir. 2002). Nor is this observation unique to the Eighth Circuit. *See*, *United States v. Giorgi*, 840 F.2d 1022, 1034 (1st Cir. 1988); *United States v. Forkas*, 669 F.App'x 122 (4th Cir. 2016); *Chitimacha Tribe of La. v. Harry L.L. Co.*, 690 F.2d 1157, 1162 (5th Cir. 1982); *United States v. Hatchett*, 978 F.2d 1259 (6th Cir. 1992); *United States v. Balistrieri*, 779 F.2d 1191, 1202-03 (7th Cir. 1985); *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978).

That a judge *may* hear his or her own § 455 motion, however, does not mean that he or she *must*, or even *should*, do so. Certainly nothing in 28 U.S.C. § 455 *requires* the judge whose disqualification is sought to decide the matter or prohibits its referral to another judge. *Thomas v. Wells Fargo Bank, N.A.*, 2021 WL 7286086, at *1, n.1 (D. Minn. April 6, 2021). In this case, Plaintiffs assert, the motion should be reassigned to avoid actual or apparent bias, citing the maxim that "no man [should] be a judge in his own case."

As to the first ground, whether in fact this Court can decide the motion fairly and without bias, only the undersigned can say. If this Court had even the slightest doubt of its ability to decide the matter without bias, then the undersigned would decline to decide it. But that is not the case. This Court has and always will decide matters before it based on the facts and the law, without fear or favor. As defendants point out, there are often good reasons why the judge whose disqualification is sought might nonetheless rule on the disqualification, including knowledge of the facts giving rise to the motion to disqualify and the impact of those facts on the judge's rulings in the case. Response To Plaintiffs' Motion to Reassign at 3-4, Dkt. No. 2297. Suffice it to say, this Court is without doubt that it can decide this motion fairly, on the facts and the law.

Plaintiffs argue that even if the Court is permitted to decide this motion it should decline to do so lest it create an appearance of bias that might undermine public confidence in the judiciary. Referral of the motion is not warranted in this case on that basis. First, based upon the record in this case discussed below the Court does not believe that a reasonable person could question the undersigned's impartiality. Second, and more importantly, as a practical matter this order may be appealed to the presiding District Judge (or, if she chooses, another judge of this district), effectively giving plaintiffs the opportunity to have their motion heard a second time by someone other than the undersigned. As a matter of efficiency and fairness to both parties, the judge who ultimately decides this motion (assuming this order is appealed) will have the benefit of this Court's thinking on the matter.

Accordingly, for these reasons, the undersigned denies the plaintiffs' request to refer the motion regarding the undersigned's disqualification in the first instance.

**FACTS**

## I.    Stock Ownership

Due to the retirement of United States Magistrate Judge Franklin Noel this matter was reassigned to the undersigned on July 20, 2018. Dkt. No. 1372. At the time of reassignment the undersigned owned stock in defendant 3M Company, but was not consciously aware of that fact. Dkt. No. 2161; Transcript. The undersigned was completely divested of ownership in 3M stock on July 30, 2020. Therefore, the relevant period for purpose of this issue was from July 20, 2018 to July 30, 2020 ("the relevant period"). Further, on July 31, 2019 the District Judge granted summary judgment to 3M and plaintiffs appealed the case to the Eighth Circuit Court of Appeals on August 29, 2019. For all practical purposes, then, the period during which the case was active in this

3

court and the undersigned owned stock in 3M was one year and eleven days, from July 20, 2018 to July 31, 2019.[1]

During the relevant period the undersigned's financial advisor purchased and sold shares of 3M stock in three accounts owned by the undersigned and his wife. Dkt. No. 2161. The financial advisor had discretionary authority over those accounts, meaning it bought and sold stock without pre-approval by, or pre-notice to, the undersigned. *Id.*

During the relevant period, however, the undersigned did review, approve, and execute three annual Financial Disclosure Reports prepared by Financial Disclosure Resources LLC (FDR). FDR has direct access to the undersigned's financial advisor and receives information directly from them. All three of the Financial Disclosure Reports filed during the relevant period publicly disclose the undersigned's ownership of 3M stock.

On December 22, 2021 the undersigned disclosed in writing to the parties, detailed information regarding his ownership of 3M stock. A copy of this disclosure, which was publicly filed in ECF, is attached as Ex. 1 to this order. The Disclosure also detailed for the parties the fifteen matters that the undersigned ruled on during the relevant period. The previous week the undersigned convened a status conference with the parties to, among other purposes, disclose this information in a manner that would allow the parties an opportunity to ask any clarifying questions of the Court. The transcript of this status conference is attached as Ex. 2 to this order. At the end of the status conference the Court stated that the parties:

> [M]ay all do whatever you see appropriate to do. Okay? But
> that is what's required by my rules, that I have to make the
> disclosure. And the advisory opinions say that in the middle of

---

[1] While the matter was on appeal the undersigned ruled on two administrative matters, granting defendants' motion to redact a portion of a hearing transcript (Dkt. No. 2110) and granting in part, denying in part the parties' joint motion for continued sealing (Dkt. No. 2146).

4

a case, the remedy is to divest. However, you all do with that
information whatever it is you see fit.

Thie present motion to disqualify the undersigned was filed approximately 17 months after

that status conference and written disclosure.

## II.   Spousal Involvement in the Bair Hugger Litigation

Plaintiffs have also moved to disqualify the undersigned on grounds that his wife

has either appeared as a lawyer in the matter or is a material witness. Unbeknownst to

the undersigned, in October 2015, approximately 16 months before the undersigned

became a United States Magistrate Judge, attorneys for 3M exchanged two emails with

Fairview Health Service's Chief Legal Officer, Trudi Trysla. The undersigned was then

and is now married to Ms. Trysla.

The emails disclose that on or before October 10, 2015 a 3M attorney named

Maureen Harms contacted Ms. Trysla asking her to "facilitate a return visit" to Fairview

Southdale so that 3M experts could use an operating room there to "do some follow up

testing." Ms. Trysla directed the inquiry to someone named Jeoff Will,[2] stating that "I

assume that a discussion with you [Jeoff] is the easiest way to do so." Ms. Trysla further

indicated to Ms. Harms that "a letter about the use might be [a] good idea in case we need

to [explain to Fairview's regulators]."[3] Ms. Trysla also thanked Mr. Will for his anticipated

assistance stating, "I know 3M really appreciates it."

In response, Ms. Harms thanked Ms. Trysla for putting her in touch with Mr. Will

and provided some information to Mr. Will's attention regarding the use requested. Mr.

Will responded to Ms. Harms four days later with details as to how to access the facility

---

[2] Mr. Will's email identifies his title as "Regional Vice President of Operations, South Region."
[3] The Joint Commission on Hospital Accreditation ("Joint Commission").

and gave her the contact information of a Mr. Jacob Wager should assistance be needed while he, Mr. Will, was out of town. Mr. Will copied Ms. Trysla (and several others) on his email to Ms. Harms but did not address any questions or comments to her.

The emails do not provide details regarding the testing that 3M's experts intended to conduct other than that they would "take measurement of the OR" "to perform an airflow analysis with our forced air warming blanket." 3M agreed to cover the costs of the requested use and to clean the OR after use. There is nothing in the record to suggest that Ms. Trysla had any further communication regarding the issue or that she was present in Fairview Southdale OR 40 on Saturday, October 17, 2015 at or after 5:00 p.m., when the "airflow analysis" took place.

## ANALYSIS

### I.     Introduction

Plaintiffs move to disqualify the undersigned pursuant to 28 U.S.C. § 455, which provides in relevant part that a magistrate judge shall disqualify himself in any proceeding (1) in which his impartiality might reasonably be questioned; (2) where he knows that he and/or his family has a financial interest in a party to the proceeding; or (3) where his spouse is acting as a lawyer in the proceeding or is, to the judge's knowledge, likely to be a material witness in the proceeding. The question before the Court is whether any of the above provisions apply such that disqualification is required.[4]

---

[4] Whether or not disqualification is required, it is within the undersigned's discretion to recuse himself if prudent to do so. As explained in this order the undersigned does not find that recusal is either required or prudentially advised.

II.     **Stock Ownership**

A.      **28 U.S.C.§ 455(b)(4)**

28 U.S.C. § 455(b)(4) requires a judge to disqualify him- or herself if any member of the judge's family has "a financial interest in . . . a party to the proceeding." The statute clearly defines "financial interest" to include ownership of an equitable interest (i.e. stock), *however small.* 28 U.S.C. § 455(d)(4) (emphasis supplied). At the time this case was reassigned, the undersigned owned stock in 3M Company. Dkt. No. 2161. Therefore, the undersigned was required by 28 U.S.C. § 455(b)(4) to either immediately recuse or immediately divest of all 3M stock. *See, e.g., Kidder Peabody & Co., Inc. v. Maxus Energy*, 925 F.2d 556,561 (2nd Cir. 1991); *In re Literary Works in Electronic Databases Copyright Litigation*, 509 F.3d 136,143-44 (2nd Cir. 2007). The undersigned did not do either of these things. Rather, the undesigned continued to serve as a magistrate judge in the matter until July 30, 2020 when the financial advisor effectuated complete divestiture of 3M stock. Dkt. No. 2161. At the time plaintiffs filed this motion, then, the undersigned did not (and does not now) have a financial interest in any party to this MDL. The question then is whether the undersigned's past ownership of stock in 3M requires recusal now under § 455(b)(4).

Nothing in the language of § 455(b)(4) or the cases interpreting it *requires* the undersigned to disqualify himself now. Simply stated, § 455(b)(4) applies if the judge *has* a financial interest in a party to the litigation. 28 U.S.C. § (b)(4); *See also Union Planters Bank v. L&J Dev. Co. Inc.*, 115 F.3d 378, 382-83 (6th Cir. 1997); *Hook v. McDade*, 89 F.3d 350, 356 (7th Cir. 1996); *McCann v. Commc'ns Design Corp.*, 775 F.Supp. 1353, 1540-41 (D. Conn. 1991).  As the undersigned has no financial interest in 3M at this time, this section of the statute does not mandate recusal now.

7

**B.     28 U.S.C.§ 455(a).**

28 U.S.C. § 455(a) requires a judge to disqualify him- or herself "in any proceeding in which his impartiality might reasonably be questioned."

Plaintiffs argue that § 455(a) mandates disqualification due to the Court's past stock ownership because the undersigned knew he had a financial interest in the matter in 2018 when it was reassigned, was required at that time to recuse or divest, and that his failure to do so then mandates he do so now because, in the circumstances of this case, his impartiality might reasonably be questioned. Plaintiff's Memorandum of Law in Support of Mot. to Disqualify Judge Erickson and Magistrate Judge Schultz (Pl. Br.) at 21-22, Dkt. No. 2275. Indeed, plaintiffs' brief suggests that it would be difficult for any reasonable person not to question the undersigned's impartiality. *Id.* at 22. For the reasons discussed below the Court finds that disqualification is not mandated under § 455(a).

To begin, the mere fact that the undersigned owned stock in 3M during a portion of the litigation does not, by its terms, mandate recusal under § 455(a). Nor have plaintiffs cited any authority for such a construction of this section. Rather, it would appear that the section requires consideration of whether the facts and circumstances of that past ownership would lead a person to reasonably question the Court's impartiality. They do not.

First, the failure to immediately recuse  under § 455(b)(4) upon being assigned to the case was inadvertent. Ex. 1. Upon recognition of the issue, the undesigned made a public disclosure of the facts and circumstances leading to the error and invited the parties to raise any questions or seek such other relief (i.e. disqualification) as they deemed appropriate. Ex. 1, 2. The forthright and prompt manner in which the Court addressed the

issue support an inference of good faith, not bias. Additionally, since discovering the error the Court has prohibited its financial advisor from buying 3M stock in the future. Ex. 1. This action, too, supports the conclusion that the original error was inadvertent, lending further support to the conclusion that the undersigned's impartiality is not *reasonably* in question.

Moreover, an analysis of the Court's rulings during the relevant period also support this conclusion. During the relevant period the undersigned ruled on 15 contested matters. In three of the matters the Court ruled in plaintiffs' favor, in whole or in part. *See* Dkt. Nos. 1451, 1730, 2027. In six of the matters the Court directed all parties to (1) follow protocols for categorizing cases for the purposes of facilitating settlement discussions; (2) meet and confer on discovery issues; (3) file briefing by a certain date; or (4) clarified certain discovery procedures. *See* Dkt. Nos. 1627, 1774, 1815, 1875, 1922, 2005. In one matter the Court granted in part and denied in party the parties' joint motion for continued sealing of documents filed in the case. Dkt. No. 2146. This order was appealed to and affirmed by the 8th Circuit Court of Appeals.

The remaining five matters on which this Court ruled during the relevant period were as follows. In Docket No. 1579 the Court denied a motion by plaintiffs to substitute a party (and denied a motion to file a reply brief as moot). This order was not appealed to the district judge. In Docket No. 1710 the Court granted defendants' request for an extension of time to respond to plaintiffs' motion to compel defendants to supplement their prior discovery responses. This order was not appealed to the district judge. In Docket No. 1781 the Court denied plaintiffs' request for leave to conduct additional discovery. This order was not appealed to the district judge. In Docket No. 2110 the Court granted defendants' motion to redact a transcript of a hearing at which plaintiffs' counsel had

disclosed sealed information. This order was appealed to and affirmed by the district judge. It was not included in plaintiffs' appeal to the 8th Circuit. Finally, in Docket No. 1522 the Court granted defendants' motion to exclude certain expert testimony on the grounds that it violated the case's bifurcated pretrial scheduling order. Plaintiffs appealed that order to the District Judge (Dkt. No. 1544), who affirmed. (Dkt. No. 1580). The order was appealed to the 8th Circuit, which likewise affirmed. Dkt. Nos. 2155, 2156.

In short, the matters on which the undersigned ruled during the relevant period do not evidence a pattern of bias; nor could a reasonable person conclude based on those orders that the undersigned's impartiality was in doubt. The only significant matter the Court ruled on was the motion to exclude certain expert evidence, which was affirmed by the District Judge and the Eighth Circuit.

Since issuing the disclosure on December 22, 2021 the undersigned has issued no general orders in the MDL. This Court has issued approximately 299 orders and counting relating to motions to substitute parties after the death of a named plaintiff, denying 35 without prejudice and only 7 with prejudice. The remaining orders on party substitutions either granted the motion, extended the applicable deadlines, or ordered the parties to comply with local rules or produce supporting documentation.  In each case of a denial with prejudice, the order denying substitution was premised on the fact that the plaintiff's counsel failed to comply with pretrial order 23[5]  of the MDL. Only one of these denials has been appealed to the District Judge, who affirmed that order. *See* Case No. 18-cv-1764, Dkt. Nos. 20, 21, 29. This motion was filed the next day.

Plaintiffs argue that the Court's impartiality might reasonably be questioned because the veracity of the Court's disclosure is itself in doubt. They assert the

---

[5] Docket Number 1039.

undersigned *knew* he owned stock in 3M (but deliberately decided not to disclose it, or to disqualify himself, or to divest). Pl. Br. at 16-17, Dkt. No. 2275. That is, that the notion of inadvertent failure is belied by the fact that the undersigned disclosed ownership in 3M in publicly filed Financial Disclosure Reports. Indeed, it is true that the undersigned reviewed and signed those reports. The undersigned is responsible for knowing his family's financial situation. *See Union Planters Bank*, 115 F.3d at 382-83. These observations, however, do not equate to awareness or recognition of the issue, for the record supports the contrary conclusion. Due to the complexity of the undersigned's established financial plan (created prior to taking the bench), the Financial Disclosure Reports at issue are lengthy—each disclosing over 400 lines of discrete financial ownership interests. Thus, the undersigned's failure to divest or disqualify may have been the result of simple oversight, rather than a deliberate dishonesty. And, indeed, as disclosed, that is exactly what happened.[6]

Of course, only the undersigned can truly know what was and was not in his mind during the relevant period. And, the test is not whether the undersigned knows he was (and is) impartial, but what the person on the street might reasonably conclude as to the undersigned's impartiality. If the undersigned's disclosure in December, 2021 is taken at face value, then the Financial Reports merely establish the undersigned should have known he owned 3M stock, but not that he knew it, intentionally violated a federal statute and deliberately concealed the fact of that violation for 18 months only to then file a false disclosure on the court's public docket. There are circumstantial indicia of the Court's truthfulness. The Court promptly disclosed it publicly in a highly scrutinized matter. Dkt. No. 2161. In addition, the Court invited the parties to take whatever action they deemed

---

[6] The undersigned makes no excuse for his failure to immediately recognize the issue.

appropriate. Finally, the Court put in place procedures to prevent any future purchases of 3M stock in any account.

Responding to these circumstances plaintiffs argue that a "suspicion" could arise that the undersigned not only intentionally violated § 455(b)(4), but then divested the stock a year later, choosing to conceal the past ownership and late divestiture, only to disclose it 18 months later. It is, plaintiffs argue, the fact that such suspicion could arise that requires disqualification under § 455(a). But § 455(a) requires that the judge's impartiality might *reasonably* be questioned. Quite simply, the scenario posited by plaintiffs would require such a level of mendacious duplicity as to be beyond reasonable suspicion.

Notwithstanding, plaintiffs assert the undersigned chose to disclose what he had previously hidden when an article appeared in the Wall Street Journal. *See,* Coulter Jones, James V. Grimaldi, and Joe Palazzolo, *How the Journal Found Judges' Violations of Law and Conflicts,* Wall St. J. (Sept. 28, 2021). Plaintiffs argue that "[a]lthough the Wall Street Journal article presumably prompted Judge Schultz to finally reveal that he owned 3M stock while overseeing their MDL, he refused to recuse, unlike other judges." Pl. Br. P. 7. Plaintiffs' argument on this point is flawed.

The undersigned is in a much different position than the "other judges" to whom plaintiffs refer and on whom the Wall Street Journal's article focused, Put simply, the judges at the heart of that article owned stock in a party at the time they disposed of the case in question. For example, Judge Edgardo Ramos owned Exxon stock while presiding over a lawsuit to which Exxon was a party, and accepted an arbitration panel's decision in Exxon's favor. *Exxon Mobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163 (2d Cir. 2021). The undersigned has done no such thing, neither currently owning 3M stock, nor

entering judgment for either party while he did. Plaintiffs also cite *Roberts v. Wal-Mart La, LLC.*, 54 F.4th 852 (5th Cir. 2022), where Judge Rebecca Doherty dismissed a case against Wal-Mart while she owned stock in the company. But even where Judge Doherty had *disposed of the case*, the reviewing district judge and the Fifth Circuit both agreed that her failure to recuse had been *harmless*, *Id.* at 854. Again, the undersigned has already forthrightly divested of his 3M stock as required under § 455; no further action is required under the circumstances.

Second, plaintiffs are correct that there is in fact a connection between the Wall Street Journal article and the undersigned's disclosure, but not the sinister one which the plaintiffs suggest. As the disclosure (and the financial reports make clear) the undersigned was divested of all 3M stock on July 30, 2020, more than a year prior to the publication of the Wall Street Journal article. However, in the wake of the publication of the article the 8th Circuit mandated that each judge conduct a thorough review of their financial conflicts. *See* Eighth Circuit Judicial Council Order, November 8, 2021, attached to this Order as Ex. 3. It was that review that brought the issue to the undersigned's attention and prompted the December 2021 disclosure. That review also identified one other instance of disallowed stock ownership in an active matter. Because that ownership was on-going, the undersigned immediately disqualified himself from the case *and* disclosed the issue to the affected parties so that they may seek such additional remedies as they deemed necessary. In this case, because the undersigned had been divested for a considerable time the issue was disclosed to the parties so they could seek relief they

deemed appropriate, which they did not do, for the ensuing 17 months, until the present motion was filed.[7]

Plaintiffs have further argued that the Court misperceives the fact that the magnitude of the judge's financial interest is irrelevant to the § 455(b)(4) analysis. The Court is not confused. Section 455(b)(4) applies no matter how small the financial interest. Even a single share of stock triggers the application of this section. However, the undersigned believed that the size of the Court's interest might inform the parties' analysis of the § 455(a) issue and thus, in an abundance of candor, the Court included this information in its disclosure to the extent it would aid the parties in assessing whether the Court's impartiality might reasonably be questioned.

Finally, plaintiffs argue that because they have accused the Court of lying in its disclosure, the Court cannot possibly be impartial now or be reasonably perceived as such. The Court agrees with defendants' characterization that this argument is sophistry. A party cannot make an inflammatory accusation, then rely upon its inflammatory nature to argue that no judge facing such an accusation could possibly continue on in the litigation. To countenance such an argument is to give all parties before the Court an automatic ability to disqualify a judge.

Moreover, this argument gives the Court too little credit. In the six-and-one-half years that the undersigned has been a judge, the undersigned (like all judges) has occasionally been the focus of intemperance, and has had many orders and reports

---

[7] In addition to the foregoing, the undersigned's comprehensive review disclosed four instances of prohibited stock ownership in closed matters. These matters were also publicly disclosed on the dockets of those four matters. (Ex. 4-8) Suffice it to say that as a result of the comprehensive review the undersigned has implemented a number of additional safeguards to prevent a recurrence of this issue. The undersigned's conflict/recusal list is currently 349 pages long and includes over 4,800 entries.

appealed and objected to. This Court is not nearly so thin-skinned as plaintiffs suspect. If this Court had any concern about its continued ability to hear and decide matters fairly and impartially in this MDL it would recuse. The undersigned has no such concern.

Further, in response to the motion defendants argue that plaintiffs' motion has nothing to do with an appearance of bias but is a pretext for seeking to have this matter reassigned to two judicial officers who will be more disposed to rule in plaintiffs' favor. Def. Br. at 10-11, Dkt. No. 2295. As proof of this argument defendants point to the timing of this motion. Succinctly stated, this motion was filed shortly after Judge Ericksen affirmed the undersigned's order denying a motion to substitute a party for a plaintiff who had died. This, coupled with the fact that plaintiffs' counsel waited almost eighteen months after the disclosure of past stock ownership to seek disqualification, defendants argue, reveals plaintiffs' true motivation. And indeed, the sequence and timing of these events might reasonably lead one to conclude that plaintiffs' motivation is strategic. *See* Def. Br. at 28, Dkt. No. 2295. But this Court is not inclined to impute ill-motive when an alternative, benign explanation is at hand. Therefore, this Court will assume that the allegedly sinister timing of the motion is but an unfortunate coincidence. However, even assuming plaintiffs' long delay in seeking disqualification is the product of cautious deliberation, it nonetheless suggests that the appearance of bias is attenuated at best. For the reasons described above, this Court finds that no person familiar with the facts and circumstances of the matter could reasonably question the undersigned's impartiality.

As to the timing of this motion one last matter bears mention. Defendants argue that the motion to seek disqualification based on stock ownership is untimely and therefore waived. After all, the court disclosed the matter in December 2021 and invited the parties to seek whatever additional remedies they deemed appropriate. Plaintiffs did

not ask the undersigned to reconsider his past ruling during the relevant period. Nor did they seek immediate recusal. Defendants are correct that under applicable precedent this Court could properly find that the motion is untimely.  Def. Br. at 39-40, Dkt. No. 2295. Here again, however, if this Court harbored the slightest doubt as to its impartiality it would recuse itself regardless of the passage of time since its disclosure.

For all the foregoing reasons the Court finds that neither § 455(a) nor § 455(b)(4) *requires* the undersigned's disqualification in this matter on the basis of its past ownership of 3M stock. The Court—even if not required—would recuse if that appeared the prudent course. For the reasons discussed below, however, the Court finds that prudence dictates the opposite conclusion.

### C.    28 U.S.C. § 455(f)

28 U.S.C. § 455(f) provides a safe harbor exception to mandatory disqualification. It provides:

> (f) Notwithstanding the preceding provisions of this section, if any . . . magistrate judge . . . to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he [or his family] . . . has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the . . . magistrate judge . . . divests himself or herself of the interest that provides the grounds for the disqualification.

Here, the Court meets the criteria for the safe harbor provision of § 455(f). The Court has now devoted four and one-half years of judicial time to the matter and is intimately familiar with its procedural history and posture, and the underlying science at issue. Mediation is in the offing and, should the matter fail to settle, bellwether trials may be as well. In all the circumstances of this case it appears to the undersigned that disqualification would be imprudent and would not further the interests of the parties.

16

Plaintiffs argue that the safe harbor of § 455(f) does not apply here because he did not devote "substantial judicial time" to this MDL. Pl. Br. at 11-12, Dkt. No. 2275. As evidence, plaintiffs point out that the undersigned only decided 14 motions[8] during the relevant period, which pales in comparison to the time and effort invested by the predecessor magistrate judge. The fact that the prior magistrate judge made an even more substantial investment of judicial time in the matter does not bear on the issue. While the Court agrees that the motions the undersigned decided during the relevant period may not themselves constitute the devotion of substantial judicial time to the matter,[9] that is not the entire scope of the inquiry. Since being assigned to the matter the undersigned has reviewed hundreds, if not thousands, of pages of case-related filings and material. In addition to the fifteen rulings during the relevant period this Court has ruled on over 300 other matters.[10] Finally, though the parties have now chosen a private mediator (Dkt. No. 2169) the undersigned spent many hours preparing for and participating in a settlement process prior to the grant of summary judgment. In the event that a court-supervised settlement process is again pursued it is prudent that this investment of judicial time and effort not be lost. The Court believes it has devoted substantial judicial time to this matter.

## III.   The Alleged Involvement of The Court's Spouse in the Matter

### A.   Appearance In The Matter

28 U.S.C. § 455(b)(5)(ii) requires a judge to recuse him or herself if their spouse "is acting as a lawyer in the proceeding." "Proceeding," in turn, is broadly defined to

---

[8] The Court's disclosure indicates it ruled on 15—not 14—matters during this period.

[9] One might conclude that this allegedly minimal involvement, were it true, would undermine plaintiffs' assertion of an appearance of bias.

[10] Indeed, defendants have argued that it is the Court's rulings on one of those motions that prompted this motion to disqualify.

include "pretrial . . . stages of the litigation." 28 U.S.C. § 455(d)(1). This provision, in turn, has been the subject of significant judicial interpretation, much of which the parties have cited to the Court; little of which is instructive in this case.

Some broad principles, however, are undisputed. First, it matters not whether the judge's spouse files a notice of appearance in the matter; if the spouse acts as a lawyer in the matter—whether or not they have filed a notice of appearance—the judge is disqualified. *See, e.g.*, *McCuin v. Tex. Power & Light*, 714 F.2d 1255, 1260 (5th Cir. 1983). It is equally clear—as plaintiffs' own brief states—if the spouse *performs work for a party* regarding a case, this section requires recusal. *See* Pl. Br. at 3, Dkt. No. 2290.

The question is whether Ms. Trysla "performed work for a party" (i.e. 3M) in this case. It appears to this Court that the answer is clearly no. Defendants note that Ms. Trysla's involvement—at least so far as the present record reveals—occurred approximately two months before this MDL was constituted. This fact is of no consequence. At the time of the events in question defendants were engaged in litigation activities that related to the entirety of the eventual MDL. The mere fact that the transfer order from the Judicial Panel on Multidistrict Litigation came two months later creates no safe harbor.

The question must be resolved by analysis of the activities engaged in by Ms. Trysla. Those activities do not constitute performing work for 3M in this matter. The record reveals that Ms. Trysla received an email from a person at 3M asking her assistance in procuring 3M's use of an operating room at one of Fairview's hospitals. Dkt. No. 2281, Ex. PX26. Ms. Trysla replied by connecting 3M with a business person at Fairview who

could assist 3M with its request.[11] That business person apparently then worked with 3M to arrange the request and copied Ms. Trysla on one additional email that disclosed to 3M some of those logistics. The record does not indicate any further involvement in the matter (on behalf of Fairview) by Ms. Trysla. The record indicates that Ms. Trysla was not present for or involved in the testing 3M conducted in the operating room. Thus, Ms. Trysla's conduct was limited to receiving an email from 3M and facilitating its transmission to the relevant business person. This activity does not—to this Court's reading of the statute—fall within any reasonable interpretation of "acting as a lawyer in the proceeding."

Plaintiffs cite *Mangini v. United States*, 314 F.3d 1158, 1160-62 (9th Cir. 2003) in support of their argument that Ms. Trysla "acted as a lawyer in the proceeding." As defendants point out, however, *Mangini*, is a much different case than the present. In *Mangini*, the judge's brother-in-law, on behalf of the plaintiff communicated directly with plaintiff's expert witness. Ms. Trysla engaged in no such activities in this case. Nor do the other decisions cited by Plaintiffs support their argument that Ms. Trysla "acted as a lawyer in the proceeding."

*McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255 (5th Cir. 1983), is qualitatively different from the present situation in several respects. First, there was evidence in *McCuin* that litigants would employ Judge William Justice's brother-in-law Michael Rowan specifically to effectuate Judge Justice's recusal when they felt a different judge would be more favorable to them. 714 F.2d at 1257-59. Second, Rowan "actually participated" in the case, which the Fifth Circuit explained was a dispositive factor warranting Judge

---

[11] Ms. Trysla also informed 3M that Fairview—her client—would need to have a letter (which Ms. Trysla, in her capacity as a lawyer for Fairview—would draft) that would comply with Fairview's obligations to its regulators. It appears self-evident that Ms. Trysla was acting on behalf of Fairview in a friendly, though arm-length manner, fully consistent with her role as Fairview's counsel.

Justice's recusal. Because Rowan had "participated in discovery proceedings," he was "acting as a lawyer" and Judge Justice was required to recuse. *Id.* at 1260. Third, Rowan was counsel of record for one of the litigants in the case. *Id.* None of these circumstances apply to Ms. Trysla's conduct. There is no allegation—nor could there be—that Ms. Trysla's exceedingly minimal involvement was a litigation tactic, as the undersigned was not yet a Magistrate Judge at the time of the testing in OR 40. Nor has she "participated in discovery proceedings" or appeared as counsel of record in the case. In fact, all evidence in the record indicates Ms. Trysla was acting in Fairview's—not 3M's—interest, belying plaintiffs' accusations. *McCuin* is inapposite.

To this Court's read of the statute this case is most analogous (though by no means perfectly so) to the situation in *United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 364-66 (D. P.R. 2006) in which it was determined that the district judge's wife was not "acting as a lawyer in the proceeding" merely because she had previously represented two potential government witnesses, one of them in the same case. Neither of the potential witnesses was a party, the representation had ended before indictments were handed down and before the judge was assigned to the case, and the district judge's wife never appeared in the case.

For all of these reasons the undersigned finds that Ms. Trysla's transient involvement in facilitating communication between 3M and a Fairview business person does not mandate recusal under 28 U.S.C. § 455(b)(5)(ii).[12]

---

[12] To the extent that the emails also reference a prior visit by 3M to use a Fairview operating room the analysis is no different. Dkt. No. 2281, Ex. PX26

## B.      Ms. Trysla as a Material Witness

28 U.S.C. § 455(b)(5)(iv) also mandates a judge's disqualification if the judge knows the spouse "is likely to be a material witness in the proceeding." Plaintiffs argue that Ms. Trysla is at least a material witness in the proceeding even if she did not act as a lawyer in the proceeding. The argument is fatuous.

Ms. Trysla—whether or not known to be the undersigned's spouse—has never been deposed nor identified as a trial witness in either of the two trials that have occurred. There is nothing in the record to indicate that plaintiffs have ever disclosed her as a potential witness or deponent. Furthermore, "a material witness is one who can testify about matters having some logical connection with the *consequential facts of the case.*" *Vazquez-Botet*, 453 F.2d at 370 (emphasis added). A material witness provides non-cumulative testimony about "critical issues." *Adrian v. Mesirow Fin. Structured Settlements, LLC*, 588 F. Supp. 2d 216, 222 (D. P.R. 2008). Knowledge of mere "procedural or logistics topics" and other "non-substantive" issues do not a material witness make. *Id.* at 221-222. Based on the above-described activity of Ms. Trysla no reasonable person could conclude that she "is likely to be a material witness in the matter."[13]

---

[13] In the unlikely event that plaintiffs seek her testimony and defendants or others bring a motion to quash that testimony the undersigned would take no part in deciding such a motion. Obviously. But, even if Ms. Trysla were deposed or testified at a future trial, that fact alone would not convert her into a *material* witness in the proceeding. *See Adrian*, 588 F. Supp. 2d at 222.

**CONCLUSION**

For all the foregoing reasons the undersigned respectfully denies the motion to disqualify (Dkt. No. 2273) and motion to reassign the motion to disqualify (Dkt. No. 2285).

Dated: June 13, 2023                            \_\_\_\_s/David T. Schultz\_\_\_\_\_
                                                DAVID T. SCHULTZ
                                                U.S. Magistrate Judge