**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In re BAIR HUGGER FORCED AIR
WARMING DEVICES PRODUCTS
LIABILITY LITIGATION

This Document Relates to:

     ALL ACTIONS.

MDL No. 15-2666 (JNE/DTS)

---

**Defendants' Opposition to Plaintiffs' Objections to the Ruling of the Magistrate Judge on Plaintiffs' Motion for Disqualification**

The Court should overrule Plaintiffs' objections to Magistrate Judge Schultz's order denying their motion to disqualify him. (Dkt. 2300 (denying Dkt. 2273)). He committed no clear error, nor is his order contrary to law.

Plaintiffs' motion comes fatally late. They have long known of the circumstances supposedly compelling Judge Schultz's recusal. Plaintiffs waited nearly 17 months after they learned that Judge Schultz once owned a small amount of 3M stock to seek his disqualification on that ground. Their motion also sought disqualification due to Judge Schultz's marriage to Ms. Trudi Trysla, the chief legal officer of M Health Fairview. In 2015, before this litigation started, Ms. Trysla passed to her colleagues a request from 3M to use a Fairview operating room. Plaintiffs knew this since 2017, but they waited until 2023 to demand that Judge Schultz recuse because Ms. Trysla had "act[ed] as a lawyer" in this case or will likely be a "material witness." Plaintiffs' reason for taking a wait-and-see approach to recusal is apparent: Plaintiffs sprung the instant motion in response to a ruling

1

that was not in their favor. Judicial recusal should not be the object of gamesmanship, and Plaintiffs' motion should be denied for that reason alone.

Plaintiffs' motion also fails because Judge Schultz can invoke the safe harbor of § 455(f). He divested any 3M stock he owned on July 30, 2020, and has devoted substantial judicial time to this case over four and a half years, having ruled on hundreds of matters and learning the underlying science at issue. His recusal now is unwarranted.

Setting aside its untimeliness and the safe harbor, Plaintiffs' motion lacks merit. No reasonable observer would question Judge Schultz's impartiality in light of the facts: he disclosed his past financial interest in 3M; the 3M stock had been divested for over a year prior to his December 2021 disclosure; he put in place procedures to not acquire 3M stock again; and the character of rulings he made while holding 3M stock without recognizing the issue, which Plaintiffs either did not appeal or that were affirmed, was unremarkable. Plaintiffs' response to Judge Schultz's disclosure—which was to take no action—also indicates to the neutral observer that there was not then, nor is there now, any reasonable basis to question Judge Schultz's impartiality. Similarly, Judge Schultz reasonably concluded that Ms. Trysla's limited involvement with helping arrange the use of an operating room did not turn her into 3M's lawyer, nor a material witness.

There is no need for Judge Schultz to recuse. His order should be affirmed.

**Argument**

I.     **Absent palpable error, district courts should defer to magistrate judges' findings and conclusions.**

Although conducted *de novo*, review of a magistrate judge's order on non-dispositive matters is usually "extremely deferential." *H & T Fair Hills, Ltd. v. All. Pipeline L.P.*, No. 19-CV-1095 (JNE/BRT), 2021 WL 9493928, at *2 (D. Minn. Jan. 29, 2021). Reversal follows only if the order reveals clear error or runs contrary to law. LR 72.2(a)(3). To find clear error, a reviewing court must have a definite and firm conviction that the magistrate judge committed a mistake. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 717 (8th Cir. 2011).

II.    **The Court should affirm Judge Schultz's order because Plaintiffs cannot explain why their motion came only long after they learned the facts supposedly requiring his recusal.**

On *de novo* review, the Court may affirm Judge Schultz's ruling based solely on the tardiness of their motion. Recusal motions "must be timely made," which requires a party to raise a claim at the earliest possible moment after obtaining knowledge of the facts demonstrating its basis. *United States v. Rubashkin*, 655 F.3d 849, 858 (8th Cir. 2011); *see also In re Kan. Pub. Emps. Ret. Sys.*, 85 F.3d 1353, 1361 (8th Cir. 1996) (concluding that 11-month delay in seeking recusal rendered motion untimely under 28 U.S.C. § 455(a)).

Here, Plaintiffs chide Judge Schultz for not having disclosed his ownership of a small amount of 3M stock (making up less than one-half of 1% of the investments managed by his financial advisor, UBS) sooner during the MDL's pendency. (Dkt. 2302 at 12-13.) The simple fact is that Judge Schultz gave a complete disclosure of his prior financial

interest in December 2021, and had divested all 3M stock as of July 30, 2020. Neither can

Plaintiffs claim ignorance of Judge Schultz's and Ms. Trysla's marriage, which has long

been known in the Twin Cities legal community before this matter began. If Plaintiffs

wished to make anything of this, they could have done so once Judge Schultz was assigned

to this case in 2018, as 3M produced emails reflecting that Ms. Trysla routed a request for

3M to use a Fairview operating room in *2017*.[1] In short, Plaintiffs were armed with all the

facts they purportedly needed to pursue Judge Schultz's recusal at least 16 months before

they filed the instant motion.

Plaintiffs' timing betrays their strictly strategic motivations. Plaintiffs' choice to

hang back and see if Judge Schultz would render decisions favorable to them should not

be rewarded with another draw from the judicial deck. (*See* Dkt. 2295 at 18-19, 20 n.10

(collecting authorities).) The Court should affirm Judge Schultz's order on timeliness

grounds alone.

**III.    Even if Plaintiffs' motion was timely, Judge Schultz can rely on the safe harbor of § 455(f) because he divested his small interest in 3M and devoted significant judicial time to this matter.**

Section 455(f) applies to this case because Judge Schultz sold his 3M stock as of

July 30, 2020. Although § 455(f) is most often raised in the context of § 455(b)(4)

challenges, it should apply equally to recusal motions brought under § 455(a). The text of

§ 455(f) does not confine it to the § 455(b)(4) context; it governs "[n]otwithstanding the

---

[1]  Ms. Trysla's insignificant role in that testing is discussed further in Argument Section V, *infra*.

preceding provisions of this section," that is, § 455 as a whole. There is no reason to read § 455(f) as precluding the "elimination of a circumstance that could require disqualification" under the more general standard of § 455(a). *United States v. Lauersen*, 348 F.3d 329, 337 (2d Cir. 2003) (affirming trial judge's decision to not recuse under § 455(a) based on his "minuscule holding" of shares in corporate victim of crime), *vacated on other grounds*, 543 U.S. 1097 (2005) (remanding for application of Sixth Amendment to Federal Sentencing Guidelines).

Given his divestment, Judge Schultz appropriately found that neither the judicial system's nor the parties' interests would be served by his recusal at this point. As he detailed, Judge Schultz has devoted untold hours to presiding over this case:

> Since being assigned to the matter the undersigned has reviewed hundreds, if not thousands, of pages of case-related filings and material. In addition to the fifteen rulings during the relevant period this Court has ruled on over 300 other matters. Finally, though the parties have now chosen a private mediator the undersigned spent many hours preparing for and participating in a settlement process prior to the grant of summary judgment.

(*See* Dkt. 2300 at 16-17 (footnote and citation omitted) (discussing possibility of additional bellwether trials).) This effort qualifies as "substantial" under any definition. *See Wounded Knee Legal Def./Offense Comm. v. FBI*, 507 F.2d 1281, 1286 (8th Cir. 1974) (finding recusal was not required under 28 U.S.C. § 144 because the trial judge had dedicated substantial judicial time to the case, which consisted of "an evidentiary hearing on [an] application for temporary restraining order and preparation of a detailed memorandum decision thereon"); *In re Certain Underwriter*, 294 F.3d 297, 304 (2d Cir. 2002) (affirming denial of recusal in part because trial judge's effort to manage docket was "as necessary

and vital . . . as motion and trial practice"); *cf., e.g., Canale v. Colgate-Palmolive Co.*, No. 16-CV-3308, 2017 WL 112610, at *2 (S.D.N.Y. Jan. 10, 2017) (finding that § 455(f) was unavailable because trial judge had only issued "a one-sentence order" denying transfer and prepared for a single pre-motion conference at case's outset). Judge Schultz properly relied on § 455(f).

## IV.   On the merits, no reasonable person could question Judge Schultz's impartiality.

### A.   Plaintiffs' objections rest on § 455(a).

Plaintiffs have correctly abandoned their argument that § 455(b)(4) requires Judge Schultz's recusal. That part of the recusal statute could not apply, as Judge Schultz has not even a small financial interest in 3M today. *E.g., Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir. 1991). Instead, Plaintiffs rely on § 455(a) to press their objections to Judge Schultz's past small ownership of 3M stock, of which he was not consciously aware.

### B.   Plaintiffs misconstrue § 455(a) and ignore the proper role of Judge Schultz's subjective knowledge.

Plaintiffs misapprehend the scope of § 455(a). Under Plaintiffs' interpretation, a judicial officer's previous financial interest in a party, no matter how small or how long ago divested, would prevent that officer from ever presiding over a matter involving that party. In effect, Plaintiffs urge grafting onto § 455(a) the categorical bar on *present* financial interests found in § 455(b)(4). That is not the law and it would not make sense. As the Supreme Court noted in *Liljeberg v. Health Services Acquisition Corp.*, a § 455(a) analysis must take the measure of a case more holistically because "there is surely room

for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance." 486 U.S. 847, 862 (1988); *see also United States v. Pappert*, No. CRIM.A. 942001601KHV, 1998 WL 596707, at *7 (D. Kan. July 29, 1998) (suggesting that § 455(a) cases must be judged on their facts more than by prior decisions). The actual standard called for by § 455(a) is whether a reasonable person who knows the relevant facts would expect that a judge "*knew* of circumstances creating an appearance of partiality," irrespective of the judge's conscious awareness of those circumstances. *Liljeberg*, 486 U.S. at 850 (emphasis added). Put differently, for Judge Schultz to have been required to recuse, a reasonable person would need to "believe that [he] ha[d] a financial interest . . . and that [he] *knew* [he] had such an interest." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 305 F. Supp. 2d 323, 327 (S.D.N.Y. 2004) (emphasis added) (denying motion to recuse).

At the time the Bair Hugger MDL was reassigned to Judge Schultz on July 20, 2018, he was not consciously aware that he owned 3M stock (Dkt. 2300 at 3.) This subjective knowledge (in reality, a lack of actual knowledge as to his ownership of 3M stock) is relevant to a § 455(a) inquiry and factors into a reasonable observer's view of whether the judge in fact knew of a potential conflict. Further, as soon as he recognized the issue, Judge Schultz made a public disclosure and invited the parties to seek any relief they deemed appropriate. The evidence surrounding Judge Schultz's subjective knowledge shows that the original error was inadvertent and recusal is not required to cure a potential conflict. *Liljeberg*, 486 U.S. at 862 (observing that "[t]here need not be a draconian remedy for every violation" of § 455(a)).

7

### C.      The totality of the circumstances would not lead a reasonable person to question Judge Schultz's impartiality.

For several reasons, a neutral observer would find no reason to question Judge Schultz's impartiality. Once he recognized the issue, Judge Schultz made a full disclosure. Plaintiffs gauge the timeliness of that disclosure against the Eighth Circuit Judicial Council's order of November 8, 2021 (reproduced at Dkt. 2300-3). (*See* Dkt. 2302 at 6.) They do not, however, explain why that order should serve as a categorical yardstick. The order required that judicial officers update their conflicts lists "as soon as possible." (Dkt. 2300-3 at 1.) Judge Schultz began doing exactly that. (*See* Dkt. 2300 at 13.) This led him to recuse immediately from a matter in which he had an ongoing financial interest. (*Id.*) Here, Judge Schultz identified that he had previously owned 3M stock. He quickly made a full disclosure to the parties on December 22, 2021, a few weeks after the Eighth Circuit's order. This hardly indicates impropriety. This short delay is understandable—and, for purposes of § 455(a), irrelevant—given the extent of Judge Schultz's financial disclosure reports (nearly three dozen pages and over 400 entries in length), the workload of a busy magistrate judge, and the fact that Judge Schultz took no significant actions regarding this matter during the intervening time (*see* Dkts. 2156-2161 (encompassing period between November 8, 2021, and December 22, 2021)).

On July 30, 2020, and as a matter of normal course, Judge Schultz's financial advisor sold the small interest in 3M that his advisor had purchased on a discretionary basis. That interest *was* small, too—at its greatest extent, it comprised 72 shares of 3M stock and no more than 0.4% of the value of the assets under management by UBS on the

referenced accounts. Again confusing § 455(a) and (b), Plaintiffs assert that this should not matter, but it does. The Judicial Conference's Committee on Codes of Conduct explained as much in its Published Advisory Opinion 94. In that Opinion, the Committee interpreted Canon 3(C) of the Code of Conduct for United States Judges, which tracks § 455 in almost identical language. *See, e.g.*, *Delta Air Lines, Inc. v. Sasser*, 127 F.3d 1296, 1298 n.3 (11th Cir. 1997) (declining to recuse panel judges and observing that the Code of Conduct "sets forth (in substantially identical language) each of the [relevant] statutory recusal principles," such that analysis under either is the same). The Committee concluded that "[t]he size of [an] investment is a relevant consideration in evaluating an appearance of impropriety." No reasonable observer could find that Judge Schultz's ability to rule impartially was undercut by the tiny portion of his portfolio that at one time, long ago, comprised 3M stock purchased by a financial advisor who had discretion to buy and sell stock without any preapproval by or notice to Judge Schultz.

Courts in other jurisdictions have similarly concluded that interests as small as Judge Schultz's are negligible for purposes of § 455(a). *See, e.g.*, *United States v. Sellers*, 566 F.2d 884, 887 (4th Cir. 1977) (affirming trial judge's decision not to recuse when he owned less than 2/25ths of 1% of the victimized bank, which employed his brother as its CEO—the judge's interest was so remote that "for all practical purposes [it was] nonexistent"); *Pappert*, 1998 WL 596707, at *7 & n.8 (denying post-trial motion based on purported failure to recuse, in part because "[t]he undersigned judge's interest in [the parent company of a crime victim] amounted to approximately .0000029% of [its] total worth"); *Perpich v. Cleveland Cliffs Iron Co.*, 927 F. Supp. 226, 234 (E.D. Mich. 1996) (denying

motion for recusal because, although the trial judge did not discover until well into the case that his family had a "short-lived and relatively insubstantial stock ownership interest" in two of the defendants, he terminated the interest immediately upon discovery and made no rulings during its existence). The extent of Judge Schultz's one-time interest in 3M "certainly suggests no appearance of bias." *Pappert*, 1998 WL 596707, at *7.

If there was any doubt of this, Judge Schultz's rulings during the relevant period preclude any reasonable charge of bias. (*See* Dkt. 2300 at 9-10 (recounting decisions made between July 20, 2018, and July 31, 2019).) His decisions reflect evenhandedness. The few that were adverse to Plaintiffs, and appealed, were affirmed. (*See id.*) Judge Schultz's conduct was not only consistent with judicial neutrality but also his lack of knowledge concerning his financial advisor's undirected purchase of 3M stock. *Cf., e.g.*, *United States v. Rogers*, 119 F.3d 1377, 1384 (9th Cir. 1997) (commenting that trial judge's imposition of a sentence below that recommended by probation office eliminated "reasonable question[s] of impartiality"); *see also In re Apex Oil Co.*, 981 F.2d 302, 304 (8th Cir. 1992) (noting that a reasonable person would not question a judge's impartiality when a judge rules contrary to alleged bias).

Other steps that Judge Schultz took likewise suggest impartiality rather than bias. In December 2021, he invited Plaintiffs to take whatever action they thought necessary following his disclosure. He also implemented procedures to prevent future purchases of 3M stock on his account. (Dkt. 2300 at 12, 14.) Plaintiffs state that Judge Schultz's recusal from cases following his December 2021 disclosure "do[] not inspire faith" (Dkt. 2302 at

6), but they can only speculate as to why recusal occurred when it did in those other cases. That speculation gives no basis to require his recusal here.

Judge Schultz's straightforward, thorough, and candid measures to correct his past, near-trivial ownership of 3M stock make it unreasonable for any outside observer to find impropriety. His recusal here would be the "draconian" remedy that *Liljeberg* warns against. Plaintiffs' § 455(a) objection fails.

## V.    Judge Schultz correctly concluded that Ms. Trysla's minimal involvement with arranging an operating room did not mandate his recusal.

Plaintiffs would have the Court stretch § 455(b)(5) too far. Judge Schultz properly ruled that Ms. Trysla was neither "acting as a lawyer" in this proceeding nor was she likely to be a "material witness." *See* 28 U.S.C. 455(b)(5)(ii), (iv). Ms. Trysla had tangential involvement with certain privileged testing that 3M conducted in 2015 at Southdale Hospital in Edina, Minnesota. (Dkt. 2300 at 18-19.) In the main, Ms. Trysla (1) routed a request regarding use of an operating room for that testing from 3M's in-house attorney Maureen Harms to Jeoff Will, who served as Fairview's Regional Vice President of Operations, South Region; and (2) advised that Fairview, not 3M, would need to prepare a letter to one of its regulators explaining the testing. (*See generally* Dkt. 2281.)

Throughout this limited, arms-length interaction, Ms. Trysla acted only on behalf of Fairview. Plaintiffs, however, insist that because Ms. Trysla's "receiving and sending emails" is "95% of what many lawyers do," her involvement compels recusal under § 455(b)(5)(ii). (Dkt. 2302 at 11-12.) Buried within this simplistic assertion is the assumption that Ms. Trysla received and sent emails *on behalf of 3M*. Nothing besides

Plaintiffs' mischaracterization of a few unremarkable emails—which Plaintiffs have had in their possession since 2017—suggests that Ms. Trysla represented 3M then or at any other point. "Reality controls over uninformed perception" like that which Plaintiffs offer. *Del Vecchio v. Ill. Dep't of Corrs.*, 31 F.3d 1363, 1372 (7th Cir. 1993) (affirming denial of *habeas corpus* petition seeking recusal).

Reality also puts paid to Plaintiffs' glib charge that it would be "absurd" for Ms. Trysla to have helped coordinate the use of a Fairview operating room. It is entirely foreseeable, and understandable, for a sophisticated health care entity's lead attorney to have been informed that another company wished to conduct testing in one of its operating rooms, particularly when such testing may need to be explained to regulators. That Ms. Trysla served as 3M's initial point of contact is hardly unexpected. Plaintiffs' surprise is either feigned or misapprehends the legal industry they claim to know well. Regardless, Ms. Trysla did not "act[] as a lawyer" and her negligible involvement does not compel Judge Schultz's recusal.

Neither is Ms. Trysla likely to serve as a witness, much less a material one. If she was, Plaintiffs would have deposed her or at least listed her on initial disclosures at some point since February 2017, when 3M first produced to Plaintiffs the emails that they cite in support of their motion. (*See* Dkt. 2295 at 15.) That Plaintiffs have not done so disproves the idea that Ms. Trsyla will testify as a material witness. Judge Schultz should not need to recuse under § 455(b)(5)(iv) either.

**Conclusion**

Judge Schultz committed no error, nor do his conclusions run contrary to law. Plaintiffs' motion to disqualify him was filed intolerably late, a consequence of Plaintiffs' strategic choice. Apart from its timing, Plaintiffs' motion fails because § 455(f) affords Judge Schultz a sensible safe harbor. He has not owned 3M stock since July 30, 2020, and has devoted substantial judicial time to this case. Plaintiffs' motion falls on its merits, too. The small stake in 3M that Judge Schultz owned for a brief period and the steps he has taken since discovering it would lead any reasonable observer to find there is no appearance of partiality here. Those steps include full and complete disclosure and measures to prevent him from obtaining a disqualifying financial interest in the future. Neither does Ms. Trysla's inconsequential involvement call for Judge Schultz's recusal. The Court should overrule Plaintiffs' objections and affirm Judge Schultz's order denying Plaintiffs' motion to disqualify.

Date: July 11, 2023                           */s/ Mary S. Young*

**Norton Rose Fulbright US LLP**

Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
T: (612) 321-2800
F: (612) 321-2288
ben.hulse@nortonrosefulbright.com
mary.young@nortonrosfulbright.com

*Co-Lead Counsel for Defendants 3M
Company and Arizant Healthcare Inc.*