## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re Bair Hugger Forced Air Warming Devices Products Liability Litigation | MDL No. 15-2666 (JNE/DTS) |
| | **[PROPOSED] ORDER** |
| This Document Relates To: All Actions | |

On March 17, 2023, the Court appointed the Honorable James M. Rosenbaum, United States District Judge (Ret.) as special master for mediation purposes in this multidistrict litigation. On June 19 and 20, 2023, the parties participated in mediation with Special Master Rosenbaum pursuant to the Court's order. Special Master Rosenbaum concluded that additional trials are necessary to facilitate potential resolution of this litigation. Accordingly, Special Master Rosenbaum directed the parties to confer on a plan to achieve that goal. The parties submit this proposed order pursuant to those instructions.

Having come before the Court on the parties' proposal, it is hereby ORDERED:

**1.** *Older Cases.* Five (5) days after the parties receive a list of active Bair Hugger cases in MDL 2666 from the Court ("Selection Date"), the parties shall number the cases and use a random number generator to select a list of 250 cases ("Older Cases").

**2.** *Newer Cases.* On the Selection Date, the parties shall number the currently unfiled cases from the list of unfiled cases provided by Plaintiffs to 3M on August 15, 2022, as part of the Court-ordered mediation and use a random number generator to select a list of 125 cases ("Newer Cases"). Plaintiffs' leadership counsel shall notify Plaintiffs' counsel in each of the 125 Newer Cases that they must file their case in MDL 2666 no later

than 10 days after the Selection Date. Once filed, each Plaintiff in the group of 125 randomly selected Newer Cases shall comply with the requirements of PTO No. 14, except Plaintiff Fact Sheets ("PFSs") and medical authorizations shall be provided within 60 days. The parties shall meet and confer to resolve any related disputes. If the parties cannot reach resolution, they shall present their positions to Special Master Rosenbaum for resolution.

3. *Database.* Within 14 days of the Selection Date, the parties shall agree on a vendor to host a shared database ("Database") of PFSs and medical records for the 250 cases randomly selected from the Older Cases and the 125 cases randomly selected from the Newer Cases (collectively, "Selected Cases"). The Database will include PFSs and medical records in 3M's possession and any additional medical records in the possession of Plaintiffs' counsel. As documents are received in the Selected Cases pursuant to PTO No. 14, the parties shall add them to the Database and notify the other party. The cost of creating, maintaining, and hosting the Database shall be born equally by the parties.

4. *Screen 1: Capacity to Participate.* For each Selected Case, Plaintiffs' counsel shall confirm that the Plaintiff remains willing and able to actively participate in this litigation, including to provide deposition testimony and participate in a trial. In addition, each Plaintiff in the group of 250 randomly selected Older Cases shall provide updated medical authorizations within 60 days of the Selection Date.[1] Plaintiffs' leadership counsel shall collect the information for all Selected Cases and provide it to 3M no later

---

[1] Medical authorizations may be signed via DocuSign or a similar reputable vendor. If the medical provider requires a wet signature, the Plaintiff shall provide such a signature upon receipt of the rejected authorization.

than 60 days from the Selection Date. Each Selected Case that is confirmed as outlined in this paragraph shall be eligible to remain in the pool of cases. For any Plaintiff who is not confirmed, Plaintiff or Plaintiff's counsel shall provide a sworn statement to 3M and Special Master Rosenbaum explaining why that Plaintiff is unable to actively participate in the litigation. The parties shall meet and confer to resolve any disagreements regarding capacity, and if unable to reach resolution, present their positions to Special Master Rosenbaum within 65 days of the Selection Date. All disputes regarding capacity shall be resolved by Special Master Rosenbaum within 75 days of the Selection Date.

5.  *Screen 2: Product Use.* Within 30 days from the Selection Date, 3M shall review available sales data to determine whether there is evidence that Bair Hugger warming blankets were purchased for use at the relevant facility[2] during the twelve months prior to the date of surgery. If 3M blanket sales data do not show the purchase of Bair Hugger blankets for use at the relevant facility, 3M shall review available Bair Hugger warming unit placement data to determine whether 3M Bair Hugger warming units may have been present at the relevant facility prior to the surgery. If so, the Selected Case shall remain in the pool of cases. For any Selected Case where 3M's data do not support possible Bair Hugger use, 3M shall provide a sworn statement to Plaintiffs and Special Master Rosenbaum asserting that its sales and placement data do not support Bair Hugger use. Plaintiffs shall have 30 days from receipt of 3M's declaration to identify evidence of

---

[2] "Relevant facility" is the facility identified in the PFSs and/or list of unfiled cases referenced in paragraph 2, as well as affiliates including but not limited to the overarching healthcare system.

possible product use. The parties shall meet and confer to resolve any disagreements regarding possible product use, and if unable to reach resolution, present their positions to Special Master Rosenbaum within 65 days of the Selection Date. All disputes regarding possible product use shall be resolved by Special Master Rosenbaum within 75 days of the Selection Date. Each Selected Case with possible product use as outlined in this paragraph shall remain in the pool of cases.

**6.** *Case Selection.* From the Selected Cases that remain after applying Screens 1 and 2, including Special Master Rosenbaum's resolution of any disputes pursuant to paragraphs 4 and 5, cases will be selected 30 days later.

**a.** From the remaining Older Cases, 24 total cases will be selected as follows: Plaintiffs to select 8 cases; 3M to select 8 cases; random number generator to select 8 cases from which no more than 1 case designates the District of Minnesota in the Short Form Complaint.

**b.** From the remaining Newer Cases, 12 total cases will be selected as follows: Plaintiffs to select 4 cases; 3M to select 4 cases; random number generator to select 4 cases.

**c.** No party may select more than 3 cases designating the District of Minnesota or 4 cases designating any other federal district court as the remand court in the Short Form Complaint.

    **d.**  No party may select more than 4 cases with a latency period over 1 year, but only 2 of those 4 cases may have a latency period over 2 years.[3]

    **e.**  No party may select more than 2 cases with a PICC line or I&D only, and no more than 1 such case may be selected by random number generation.

    **7.**    *Strikes.*  Each side may exercise 1 strike to eliminate a case from the group of cases within 10 days of selection pursuant to paragraph 6.

    **8.**    *Further Proceedings*.  The parties disagree about how the 34 cases should proceed following selection.

    **Plaintiffs' Proposal for Remand**.  One thing is clear after months of mediation: additional trials are necessary to resolve this long-running litigation. The undeniable purpose of this Order, therefore, is to remand cases for trial as soon as possible, not to merely "select[] and evaluat[e] … a subset of cases that *may* be tried." *Cf. infra* at 6.

    To achieve this purpose, remand must occur immediately upon case selection so transferor courts may calendar cases for trial. 3M's proposal, on the other hand, guarantees delayed resolution by stalling remand until some unknown future date. Contrary to 3M's argument, transferor courts are equally capable of handling case-specific discovery disputes, and their independent rulings will influence the parties' positions on resolution.[4]

---

[3] "Latency period" is the time between the date of implant and the date of procedure involving the relevant infection.

[4] If this Court considers 3M's request for one jurist to resolve all case-specific discovery issues, the Court should appoint Special Master Rosenbaum to do so following remand.

This typical remand process—unlike 3M's process to delay remand by miring the Court in case-specific discovery for all 34 cases—would ensure cases are set for trial immediately.

Finally, *Walton* and *Johnson* should be remanded immediately, as both cases have been pending for nearly a decade—their 2016 trial dates long since forgotten. 3M cannot backtrack from its position at the start of this litigation, when it expressly opposed consolidation because "fact discovery is substantially complete in both cases." *See* MDL Dkt. 17 at 2, 10, 15 ("Defendants ask that *Walton* and *Johnson* not be transferred [to the MDL] so that the dispositive motions and, if necessary, trials can proceed as scheduled.").

**3M's Proposal for Case Workup.** 3M disagrees that the purpose of *this* Order is to remand cases. The purpose of this Order, from 3M's perspective, is to allow the selection and evaluation of a set of cases to better inform the parties about the docket and to provide a subset of cases that may be tried, whether in the MDL or in a transferor court.

To promote efficiency and the expeditious work up of cases for trial, 3M proposes that this Court oversee case-specific discovery for all 34 cases, including Plaintiff depositions, treating provider depositions, other fact witness depositions, and case-specific expert reports and depositions. Given this Court's knowledge of the Bair Hugger litigation, and the likelihood that similar discovery issues will arise in multiple bellwether cases, it makes sense to have those issues addressed in the MDL. When all discovery is complete, the Court can determine whether and when to suggest remand to transferor courts for trials, in consultation with the parties and the Special Master. 3M does not agree that *Walton* and *Johnson* should be singled out for special treatment, particularly given that they were worked up eight years ago without most of the parties' current expert witnesses. This Court

already heard and denied Plaintiffs' request for special treatment and early remand for *Walton* and *Johnson*. (Dkt. No. 1561.) 3M reasserts its objection here.

3M agrees its settlement objectives could be served by trying some cases in federal courts outside the District of Minnesota. However, the cases selected pursuant to this process, which is the product of the parties' negotiations pursuant to the Court-ordered mediation process, should not be deemed representative of any other case in MDL 2666, or of the MDL as a whole.

9. Unless expressly stated herein, nothing in this Order shall alter the parties' rights under PTO Nos. 14 and 23.

10. Any determinations by Special Master Rosenbaum pursuant to this Order shall not be used by any party outside the case selection process defined herein.

Dated: July 21, 2023

Respectfully submitted,

*/s/ Benjamin W. Hulse*
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
NORTON ROSE FULBRIGHT US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
Fax: (612) 321-2288
Email: ben.hulse@nortonrosefulbright.com
mary.young@nortonrosefulbright.com

**Counsel for Defendants 3M Company and Arizant Healthcare Inc.**

| | |
|---|---|
| **CIRESI CONLIN L.L.P.** | **MESHBESHER & SPENCE LTD.** |
| */s/ Michael V. Ciresi* | */s/ Genevieve M. Zimmerman* |
| Michael V. Ciresi (MN #0016949) | Genevieve M. Zimmerman (MN #330292) |
| Michael Sacchet (MN # 395817) | 1616 Park Avenue South |
| Ciresi Conlin LLP | Minneapolis, MN 55404 |
| 225 S. 6th St., Suite 4600 | Phone: (612) 339-9121 |
| Minneapolis, MN 55402 | Fax: (612) 339-9188 |
| Phone: 612.361.8202 | Email: gzimmerman@meshbesher.com |
| Email: MVC@CiresiConlin.com | |
| MAS@ciresiconlin.com | |
| | |
| **LEVIN PAPANTONIO, P.A.** | **MCDONALD WORLEY** |
| */s/ Ben W. Gordon* | */s/ Gabriel Assaad* |
| Ben W. Gordon (FL # 882836) *(pro hac vice)* | Gabriel Assaad *(pro hac vice)* |
| 316 S. Baylen Street, Suite 600 | 1770 St. James Place, Suite 100 |
| Pensacola, FL 32502-5996 | Houston, TX 77056 |
| Phone: (850) 435-7090 | Phone: 713-523-5500 |
| Fax: (850) 436-6090 | Email: gassaad@mcdonaldworley.com |
| Email: bgordon@levinlaw.com | |
| | |
| **FARRAR & BALL, LLP** | **PRITZKER HAGEMAN, P.A.** |
| */s/ Kyle W. Farrar* | */s/ David J. Szerlag* |
| Kyle W. Farrar, MN #0397942 | David J. Szerlag (MN #034476X) |
| 1117 Herkimer Street | 100 University Ave. SE |
| Houston, Texas 77008 | Minneapolis, MN 55414 |
| Telephone: 713-221-8300 | Phone: (612) 338-0202 |
| Email: kyle@fbtrial.com | Email: david@pritzkerlaw.com |

*Attorneys for Plaintiffs*