**NORTON ROSE FULBRIGHT**

August 7, 2025

Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, Minnesota 55402
United States of America

The Honorable David T. Schultz
Magistrate Judge, District of Minnesota
United States District Court
9E U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

**Ben Hulse**
**Partner**
Direct line +1 612 321 2272
ben.hulse@nortonrosefulbright.com

Tel +1 612 321 2800
Fax +1 612 321 2288
nortonrosefulbright.com

Re:     *In re Bair Hugger*, MDL No. 15-2666-JNE-DTS — PTO 14 Process

Dear Judge Schultz:

Defendants write to request a conference to address the continued noncompliance with the Court's directives on Plaintiff Fact Sheets ("PFSs") and the PTO 14 process. In particular, several plaintiffs, mostly plaintiffs represented by McDonald Worley, are continuing to submit PFSs with obvious core deficiencies and relying on the PTO 14's deficiency notice process as a method of delay, rather submitting compliant PFSs.

Here are a few examples of recurrent issues we are seeing:

1.  Submitting responses that the Court has previously ruled are inadequate.[1]

    - On both new and amended PFSs, we continue to see the same generic response: "I was active prior to my injury, but now I am limited in everything that I do, with both normal everyday tasks and recreational activities" in response to a question asking plaintiffs to describe activities that they can no longer perform or perform well. (PFS Sec. VI.1.)

---

[1] Defendants also raised this issue in their Motion to Enforce the Court's May 28, 2025 Discovery Order (Dkt. No. 2877).

Norton Rose Fulbright US LLP is a limited liability partnership registered under the laws of Texas.

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

NORTON ROSE FULBRIGHT

> Describe any activities that you can no longer perform, or cannot perform as well, since the time you allege you were injured: I was active prior to my injury, but now I am
>
> limited in everything that I do, with both normal everyday tasks and
>
> recreational activities.

The Court has instructed Plaintiffs' counsel that this answer is not adequate, and plaintiffs must provide "a specific, not a generic, answer." (June 24, 2025 Hearing Tr., 10:20–11:4; 21:15–20.)

- We also continue to receive PFSs that, in response to a question concerning discussions about the risks of surgery (PFS Sec. III.3), provide the same generic response: "I had the discussion with my doctor at the time, and it was mentioned to me about the risks of having surgery."

> Identify all persons with whom you had discussions about the risks of surgery, and describe the risks discussed: I had the discussion with my doctor at the time, and it was
>
> mentioned to me about the risks of having surgery.

We have also seen a slight variation on this in which the name of the surgeon is inserted in this boilerplate answer in place of the phrase "my doctor." For example:

> Identify all persons with whom you had discussions about the risks of surgery, and describe the risks discussed: I had the discussion with Jeffrey Arthur, M.D. at the
>
> time, and it was mentioned to me about the risks of having surgery.

We have seen this particular variation only in cases in which there is no updated verification provided for the amended PFS, thereby raising concerns over whether the edited response was supplied and confirmed by the plaintiff him or herself. The Court has instructed Plaintiffs' counsel that they must "ask the client and put down what the client says" in response to this question (June 24, 2025 Hearing Tr., 8:18–21), but this does not appear to be happening in all cases.

2

NORTON ROSE FULBRIGHT

- We continue to occasionally see "Will Supplement" in response to the question asking when the plaintiff first discovered that the Bair Hugger system was used in their surgery (PFS Sec. III.1). The Court has instructed Plaintiffs' counsel that such answers are "deficient." (May 27, 2025 Hearing Tr., 14:1–4.)

1. Do you have information that a Bair Hugger™ Patient Warming System ("Bair Hugger system") was used during the surgery allegedly connected to the infection at issue?

   X  Yes  _____  No

   If "yes," please describe that information?  I found information that the Bair Hugger was used during my surgery.

   When did you first discover this information?  Will Supplement

   How did you learn this?  From my medical records

2. <u>Failing to address all of the identified deficiencies</u>. Some plaintiffs are submitting amended PFSs in which they have amended only one or two responses out of a longer list of identified deficiencies, leaving obviously deficient responses completely unaltered in their "amended" PFS.

3. <u>Failing to provide support for product identification.</u> When asked to provide information that the Bair Hugger was used in their surgery, some plaintiffs are making this assertion:

   "Case specific discovery is not allowed and therefore Plaintiff has been unable to ascertain this information without discovery. However, based on representations by the Defendant that the Bair Hugger is 'preferred patient warming device of U.S. healthcare facilities' and that warming is the standard of card, the Bair Hugger device was more likely than not used during by surgery."

NORTON ROSE FULBRIGHT

Do you have information that a Bair Hugger™ Patient Warming System ("Bair Hugger system") was used during the surgery allegedly connected to the infection at issue?

_____ X Yes    _____ No

If "yes," please describe that information? _I found information that the Bair Hugger was used during my surgery._

When did you first discover this information? _____

How did you learn this? Case specific discovery is not allowed and therefore Plaintiff has been unable to ascertain this information without discovery. However, based on representations by the Defendant that the Bair Hugger is "preferred patient warming device of U.S. healthcare facilities" and that warming is the standard of care, the Bair Hugger device was more likely than not used during my surgery.

In addition to being self-contradictory and inconsistent with the Court's guidance on question III.1, the preamble about case-specific discovery is non-responsive. If a plaintiff has no information that a Bair Hugger System was used in their procedure, the PFS provides an option to answer "no."

4. <u>Submitting PFSs without verifications.</u>  We are seeing a higher-than-usual rate of PFSs that are being submitted without a verification – either a new PFS with no verification or an amended PFS without a corresponding updated verification. Verification "by the responding Plaintiff under oath" is required under PTO 14 (PTO 14, Dkt. No. 117, ¶ 3) and the Court has repeatedly clarified that verifications are required for both original and amended PFSs. (*See, e.g.,* Dkt. No. 1564—dismissing cases after plaintiffs failed to properly execute verifications; Dkt. No. 2920—recommending dismissal of cases for failure to serve a verified PSF.)

Although we have seen examples of some of the above from a variety of Plaintiffs' firms, PFSs submitted by McDonald Worley have been particularly egregious. McDonald Worley continues to submit PFSs with these, and other, clearly deficient responses, and has not attempted to discuss any potential disputes with Defendants' counsel. As a result, Defendants are forced to waste time reviewing PFSs that Plaintiffs' counsel already knows are deficient, while Plaintiffs' counsel buys themselves more time to locate the information plaintiffs already had an obligation to provide, or delay dismissal of cases with no product identification or unresponsive plaintiffs. Such tactics are antithetical to PTO 14, which lays out a process for resolving meaningful disputes between the Parties and is not intended to give endless opportunities for plaintiffs to submit only partially amended or knowingly deficient PFSs.

This issue is particularly pressing now, with the Court-ordered August 26, 2025 "reset" just weeks away. Defendants have yet to receive PFSs in the cases subject to the reset, but are anticipating a very high number (potentially thousands) of amended PFSs being served on the deadline of August 26, 2025. (May 28, 2025 Order, Dkt. No. 2835.) Therefore,

NORTON ROSE FULBRIGHT

Defendants request a conference to discuss these concerns at the Court's earliest convenience, rather than waiting to address these issues at the next status conference on August 28.


Very truly yours,

*/s/ Benjamin W. Hulse*

Benjamin W. Hulse
Co-lead Counsel for Defendants

BWH:ck