**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br>*Culpepper*, 17-cv-2893<br>*Miles*, 17-cv-3223 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare, Inc., (collectively, "3M") move for judgment in two cases[1] for failure to state claim upon which relief can be granted. The claims brought in both cases are time-barred under the applicable Alabama statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as

[1] 3M planned to seek dismissal of three cases, but following meet and confer efforts on this motion, Plaintiff Helen Johnson agreed to voluntarily dismiss her case. (*See Johnson*, Case No. 17-cv-0968, Dkt. 14.)

a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the inventory of MDL cases by identifying and dismissing claims that are time-barred on their face.

Second, as this Court has previously recognized, Alabama does not recognize a statute-of-limitations "discovery rule" for personal injury claims. *See Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019). Claims therefore accrue at the time of injury. As demonstrated below, this allows the Parties and Court to easily identify and take appropriate action on Alabama-based cases that are untimely on their face. Taking these steps now, on a sampling of Alabama test cases, would be an important first step in culling the inflated inventory of existing cases, and enabling the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26,

2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[2]

## BACKGROUND

On November 6, 2009, Elizabeth Culpepper ("Culpepper"), an Alabama citizen, underwent total knee replacement ("TKA") surgery in Alabama during which a Bair Hugger Forced Air Warming System (hereinafter "Bair Hugger system") was used. (Ex. B, Culpepper Compl. ¶¶ 2, 7.) Culpepper subsequently developed a periprosthetic joint infection ("PJI"), also known as a deep joint

---

[2] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and Plaintiffs never previously argued that such motion practice would be barred by PTO 22's motion deadline.

infection, which she attributes to the Bair Hugger system. (*Id.* ¶ 8.) As a result of the infection, Culpepper alleges that on December 2, 2009, she underwent irrigation and debridement, removal of poly bearing, reimplantation of Poly Tibial Component, and a catheter placement; that on May 10, 2010, she had a total explant of her left TKA, irrigation and debridement, and placement of an antibiotic spacer; and that on June 25, 2010, she had a reimplantation of her left TKA. (*Id.* ¶ 9.) Culpepper further alleges that on September 7, 2011, she was again diagnosed with an infected left TKA and received several additional procedures to treat this infection, through August 13, 2012. *Id.* On July 14, 2017, more than seven years after she was first diagnosed with an infection, Culpepper commenced her action against 3M by direct-filing her Complaint in the MDL. (*See* Ex B, Culpepper Compl.) In that Complaint, Culpepper designated the Southern District of Alabama as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* ¶ 5.)

On June 18, 2008, Plaintiff Patricia Miles ("Miles"), an Alabama citizen, underwent surgery in Alabama during which a Bair Hugger system was used. (Ex. C, Miles Compl. ¶¶ 2, 7.) Miles subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* ¶ 8.) As a result of the infection, Miles alleges that between June 2008 and February 2014, she underwent irrigation and debridement, antibiotic treatment, explant, and revision. (*Id.*

¶ 9.) Miles originally filed suit against 3M as part of multi-plaintiff action filed on December 13, 2016, and that action was removed and transferred to the MDL. (*See Weisbrod v. 3M Co., et al.*, Case No. 1:17-cv-01077, D. Minn.) On June 30, 2017, the Court severed *Weisbrod*, and on July 21, 2017, Miles direct-filed her standalone Complaint in the MDL. (*See* Ex C, Miles Compl.) In that Complaint, Miles designated the Northern District of Alabama as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* ¶ 5.)

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Under this standard, the Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no

material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred under Alabama law); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### A. Alabama's Statutes of Limitations Apply.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were direct-filed in the MDL, and have identified the Southern and Northern Districts of Alabama as their respective appropriate venues. (*See* Ex B, Culpepper Compl. ¶ 5; Ex C, Miles Compl. ¶ 5.) As federal district courts sitting in diversity, the Southern and Northern Districts of Alabama would both apply Alabama choice-of-law rules with respect to issues of state law. *Randolph v. Tennessee Valley Auth.,* 792 F. Supp. 1221, 1222 (N.D. Ala. 1992) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313

U.S. 487, 496-497 (1941)). Therefore, Alabama's choice-of-law rules dictate this Court's analysis.

Alabama follows the conflict-of-law principles of *lex fori* as to procedural matters and *lex loci delicti* as to substantive law. *See, e.g., Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So.3d 953, 957 (Ala. 2013); *Middleton v. Caterpillar Indus., Inc.*, 979 So.2d 53, 57 (Ala. 2007). In "most instances," the statute of limitations is considered to be a procedural matter. *Precision Gear*, 135 So.3d at 957. As to matters of procedure, "Alabama applies its own procedural law," in which case Alabama's two-year statute of limitations would apply. *Id.*[3]

Even if the statute of limitations was a substantive rather than procedural matter, Alabama's limitations period would still apply. "It is well settled that the traditional conflict rule of *lex loci delicti* applies to tort actions [in Alabama]." *Bodnar v. Piper Aircraft Corp.,* 392 So.2d 1161, 1162 (Ala.1981); *see also Norris v. Taylor,* 460 So.2d 151, 152 (Ala. 1984); *Dawson v. Dawson,* 138 So. 414, 415 (1931); *Alabama G.S.R. Co. v. Carroll,* 11 So. 803, 805 (1892). Under *lex loci delicti,* a tort is deemed to have occurred "where the injury occurred." *Ex parte U.S. Bank Nat. Ass'n,* 148 So.3d 1060, 1070 (Ala. 2014); *see*

[3] To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the Alabama statute of limitations would still apply because, as discussed below, Alabama substantive law applies. *See* Minn. Stat. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

*also Fitts v. Minnesota Min. & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991) (Alabama courts "determine the substantive rights of an injured party according to the law of the state where the injury occurred."). Where, as here, a plaintiff alleges injury in Alabama caused by a medical device used during a surgery that took place in Alabama, the "location of injury" is deemed to be Alabama. *See, e.g., Blackmon v. Ethicon, Inc.*, 2022 WL 161516, at *2 (S.D. Ala. Jan. 18, 2022) ("Alabama law applies to Plaintiffs' substantive claims because [her] implantation surgery and alleged injuries occurred in Alabama."); *Jones v. Depuy Synthes Prods., Inc.,* 330 F.R.D. 298, 313 (N.D. Ala. 2018) (place of injury is determined by the state where plaintiffs were implanted with medical device).

The Plaintiffs captioned above both reside in Alabama, were allegedly injured from use of a Bair Hugger system in Alabama, and allegedly underwent revisionary and remedial care in Alabama. (Ex B, Culpepper Compl. ¶ 9; Ex C, Miles Compl. ¶ 9). Culpepper underwent surgery in Phenix City, Alabama, and allegedly developed an infection and underwent revisionary procedures in Phenix City, Alabama. (Ex B, Culpepper Compl. ¶¶ 7-9.) Miles underwent surgery in Bessemer, Alabama, and allegedly developed an infection and underwent revisionary procedures in Birmingham, Alabama. (Ex C, Miles Compl. ¶¶ 7-9.) Accordingly, both Plaintiffs have alleged that their injuries occurred in Alabama, and Alabama's two-year limitations period applies

regardless of whether this Court determines it to be procedural or substantive in nature.

### B. Plaintiffs' Personal Injury Claims are Barred by Alabama's Two-Year Statute of Limitations.

Alabama imposes a two-year statute of limitations on "[a]ll actions for any injury to the person or rights of another not arising from contract." Ala. Code § 6-2-38(l). The Alabama Supreme Court has repeatedly rejected invitations to recognize the discovery rule as an exception to this limitation. *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983) ("This Court has repeatedly held that a cause of action accrues when the injury occurs, and in so doing, this Court has refused to accept the so-called 'discovery rule.'") (internal citation omitted); *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 (Ala. 2001) ("The fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a 'discovery rule.'"). Thus, "the statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues.' The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon." *Moon*, 435 So.2d at 220.

In the medical device context, courts have held that "a cause of action accrues when the device fails and injures the patient." *Mack v. CooperSurgical, Inc.*, 2024 WL 4427846, at *3 (M.D. Ala. Oct. 4, 2024); *see also Collins v. Davol,*

*Inc.*, 56 F. Supp. 3d 1222, 1229 (N.D. Ala. 2014) ("[U]nder Alabama law, a tort cause of action stemming from a defective medical device accrues when the medical device fails and injures the recipient of the device."); *Smith v. Medtronic, Inc.*, 607 So. 2d 156, 159 (Ala. 1992) ("At the time of the first legal injury, the period of limitations begins to run, whether or not the full amount of damages is apparent."); *Coleman v. Bos. Sci. Corp.*, 2020 WL 7090701, at *5, 7 (S.D. Ala. Sept. 22, 2020). A plaintiff's ignorance of the tort or injury does not "postpone the running of the statute until the tort or injury is discovered." *McWilliams v. Union Pac. Res. Co.*, 569 So.2d 702, 704 (Ala. 1990) (quotations omitted); *Chaney v. Ala West-AL, LLC*, 22 So.3d 488, 496-97 (Ala. 2008). In other words, no "discovery rule" exists to toll the statute of limitations pending a plaintiff discovery of the cause of action. *Mack,* 2024 WL 4427846, at *3; *see also Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1305-06 (11th Cir. 2000); *Partlow v. 3M Company et al.*, No. 16-cv-2144-JNE-DTS, Doc. 29 at *3 (D. Minn. Jan. 7, 2019) (concluding Alabama does not recognize discovery rule).

Alabama does permit an exception in the context of a "continuous tort," defined as "a defendant's repeated tortious conduct which [] repeatedly and continuous injure[s] a plaintiff" as "when an employer exposes its employee on a continuing basis to harmful substances and conditions." *Ex parte Abbott Lab'ys,* 342 So.3d 186, 195-196 (Ala. 2021). The continuous tort exception,

however, does not apply in "instances where there has been a single act followed by multiple consequences." *Id.* (quoting *Payton*, 801 So. 2d at 835). In *Haynie v. Howmedica Osteonics Corp.,* the plaintiff asked the court to apply the continuous tort exception on grounds that the "tibial insert in [his] knee implant underwent a continuous delamination process after it was implanted and that this process was the cause of [his] pain." 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000). The court rejected that argument, holding that "it takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated. Here, the alleged tortious conduct was a single occurrence—the defective, negligent, or wanton design or manufacture of the knee implant." *Id.* at 1294-95. Like in *Haynie*, the Plaintiffs here fail to allege any type of continuous tortious conduct; in fact, they have indicated that their injury was caused, like in *Haynie*, by a single occurrence. *Id.*

Nor can the fraudulent concealment tolling doctrine save Plaintiffs' claims, as Plaintiffs did not plead requisite facts and allegations to invoke it. As this Court has already recognized, to adequately plead fraudulent concealment tolling in Alabama, a plaintiff must allege "that Defendants' 'alleged misrepresentation . . . prevented [Plaintiff] from making inquiry into the cause of her [injury] or pursuing any claims arising from it.'" *Partlow v. 3M Company et al.*, No. 16-cv-2144-JNE-DTS, Doc. 29 at *5 (D. Minn. Jan. 7, 2019) (quoting *Scharff v. Wyeth*, 2011 WL 3320501, at *14 (M.D. Ala., Aug. 2, 2011)).

In *Scharff*, for example, the Alabama district court emphasized that the plaintiff had failed to establish that Defendants' misrepresentations caused the four-year delay in filing suit, or that she or her doctor relied on the defendant's purported misrepresentations in deciding not to file suit earlier. *Id.* Similarly here, Plaintiffs do not even attempt to plead these required elements. While they both checked "fraudulent concealment" as a theory of liability in their respective short form complaints, neither Plaintiff alleged that they or their doctors relied on misrepresentations made by 3M in opting against filing their claims sooner, nor have they alleged that 3M's misrepresentations caused their delay in filing suit. Nor are such allegations contained in the Master Long Form Complaint. (*See* Master Long Form Complaint, MDL ECF 46-1.) As such, Plaintiffs' claims cannot be saved by the fraudulent concealment tolling doctrine. *See Mack*, 2024 WL 4427846, at *5 (fraudulent concealment theory failed where plaintiffs presented no evidence showing defendants purposely prevented them from pursuing their claims); *see also Partlow v. 3M Company et al.*, No. 16-cv-2144-JNE-DTS, Doc. 29 at *4-5 (D. Minn. Jan. 7, 2019) (concluding Bair Hugger plaintiff failed to plead sufficient facts in short or master long form complaint to invoke fraudulent concealment tolling under Alabama law).

Plaintiffs here have clearly pleaded the dates on which they underwent their index surgeries with the Bair Hugger, as well as when their injuries were

sustained—which, in both instances, was long before they filed suit. *See* Ala. Code § 6-2-38; *Moon*, 435 So.2d at 220. These are all the facts that are required for the Court's statute-of-limitations analysis.

Culpepper alleges that a Bair Hugger was used in her surgery on November 6, 2009, and that it caused her to develop an infection. (Ex B, Culpepper Compl. ¶ 7, 8.) She tested positive for *S. aureus* and underwent a total explant of her left TKA, irrigation & debridement, and placement of antibiotic spacers on May 10, 2010. (*Id.* ¶ 9.) Thus, according to Culpepper's own allegations, her claims accrued under Alabama law more than seven years before she filed her Complaint on July 14, 2017.

Miles alleges that a Bair Hugger was used in her surgery on June 18, 2008, and that it caused her to develop an infection. (Ex. C, Miles Compl. ¶¶ 7, 8.) She underwent irrigation & debridement, explant, antibiotic treatment, and revision in June 2008. (*Id.* ¶ 9). Thus, according to Miles's allegations, her claims accrued eight years before she filed her Complaint in December 2016.

The Court should dismiss Plaintiffs' personal injury claims with prejudice.

### C. Plaintiffs' Consumer Fraud, Warranty, and Unjust Enrichment Claims are Time-Barred by Other Applicable Alabama Limitations Periods.

The only factual allegations of harm pleaded by Plaintiffs relate to personal injuries (*see* Ex. B, Culpepper Compl. at ¶¶ 7-9; Ex C, Miles Compl.

at ¶¶ 7-9), and so the personal injury limitations period described above should apply to (and preclude) all claims insofar as they are not based in contract or statute. *See* Ala. Code § 6-2-38(l). Plaintiffs' claims based on contract or statute—including those founded in consumer fraud, warranty, and unjust enrichment (*see* Ex B, Culpepper Compl. at ¶12; Ex C, Miles Compl. at ¶ 12)—are time-barred as a matter of law on other grounds.

First, Plaintiffs' claims under the Alabama Deceptive Trade Practices Act ("ADTPA") are time-barred because they were filed more than four years after the Plaintiffs' respective index surgeries. Under the ADTPA, "[n]o action" under the statute "may be brought . . . more than four years from the date of the transaction giving rise to the cause of action . . . ." Ala. Code § 8-19-14. Here, the "transaction" giving rise to Plaintiffs' claims were their respective index surgeries, and because Plaintiffs did not file their Complaints until more than four years after those surgeries, Plaintiffs' ADTPA claims are untimely as a matter of law. *See Collins*, 56 F. Supp. 3d at 1228 (N.D. Ala. 2014) (concluding Ala. Code § 8-19-14 "extinguished any claim Mr. Collins could have brought under the ADTPA on February 23, 2008—four years after the date of the implantation of [his] Kugel Patch").

Plaintiffs' breach of express warranty and breach of implied warranty of merchantability are likewise barred by Alabama's four-year statute of limitations on warranty claims, which accrue "when tender of delivery is

made," "regardless of the aggrieved party's lack of knowledge of the breach." Ala. Code § 7-2-725(2). Here, this accrual date can be no later than the date of the index surgery, where Plaintiffs allege they underwent surgery with the Bair Hugger. *Coleman,* 2020 WL 7090701, at *8-9 (S.D. Ala. Sept. 22, 2020) (considering date that medical device was delivered to hospital or date of implantation as possible dates for when "tender of delivery" was made).[4] Here, Culpepper's index surgery took place on November 6, 2009, and the Complaint was filed over seven years later, on July 14, 2017. (Ex. B, Culpepper Compl. at ¶¶ 7.) Miles's index surgery took place on June 18, 2008, and that case was originally commenced over eight years later, on December 13, 2016. (Ex. C, Miles Compl. at ¶¶ 7.) Accordingly, Plaintiffs' warranty claims are all untimely. *See CNH Am., LLC v. Roebuck*, 41 So.3d 41, 46 (Ala. 2009) (warranty claim time-barred when filed more than four years after tender of delivery).

Third, Plaintiffs' unjust enrichment claims are barred by Alabama's application of a two-year limitations period for claims that "clearly arise from tort injuries." *Auburn Univ. v. Int'l Bus. Machines, Corp.*, 716 F. Supp. 2d 1114,

---

[4] Although Alabama recognizes an exception to the "tender of delivery" rule in cases involving "consumer goods," a medical device like the Bair Hugger does not qualify as a "consumer good" for purposes of this exception. *See Coleman*, 2020 WL 7090701, at *9 ("The Court agrees that the catheter at issue here, like the hernia patch at issue in *Collins*, is not consistent with the definition of a "consumer good" set out by Alabama law."); *Collins*, 56 F. Supp. 3d at 1231 n.9 (N.D. Ala., 2014) (concluding medical devices are "clearly inconsistent" with definition of "consumer good" under Ala. Code § 7-9A-102(a)(23)).

1118 (M.D. Ala. 2010) (applying two-year limitations period under Ala. Code § 6-2-38(l) to unjust enrichment claim that "clearly ar[o]se from tort injuries"); *see also Branch Banking & Tr. Co. v. McDonald*, 2013 WL 5719084 at *7 (N.D. Ala. Oct. 18, 2013); *Weaver v. Nat'l Better Living Ass'n, Inc.*, 2014 WL 12614481, at *12 (N.D. Ala. July 3, 2014). Plaintiffs' unjust enrichment claims here "clearly arise from tort injuries," as they allege personal injuries allegedly sustained from a Bair Hugger device while undergoing surgery. (*See* Ex B, Culpepper Compl. at ¶¶ 2,7; Ex. C, Miles Compl. at ¶¶ 2,7.) Thus, the two-year period applies, and because Plaintiffs filed their claims more than two years after the date of surgery, their unjust enrichment claims fail.

**Chart Summarizing Relevant Details of Plaintiffs' Cases**

| **Plaintiff** | **Culpepper** | **Miles** |
|---|---|---|
| **Case Number** | 17-cv-2893 | 17-cv-3223 |
| **Plaintiff's Home State** | Alabama | Alabama |
| **Designated Jurisdiction** | S.D. Ala. | N.D. Ala. |
| **Location of Index Surgery** | Phenix City, Alabama | Bessemer, Alabama |
| **Date of Index Surgery** | November 6, 2009 | June 18, 2008 |
| **Latest Possible Date of Injury** | May 10, 2010 | June 2008 |
| **Filing Date** | July 14, 2017 | December 13, 2016 |
| **Time Between Surgery and Filing** | 7 years, 8 months, 8 days | More than 8 years |
| **Time Between Injury and Filing** | 7 years, 2 months, 4 days | More than 8 years |

On the facts as pleaded, the claims of Plaintiffs Culpepper and Miles are time-barred as a matter of law and should be dismissed.

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are all untimely as a matter of law, and should be dismissed with prejudice.

Respectfully submitted,

Date: August 25, 2025

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare, Inc.***