**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Culpepper*, 17-cv-2893<br>*Miles*, 17-cv-3223 | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiffs Elizabeth and Gerald Culpepper and Patricia Miles do not dispute that their lawsuits were filed outside of the applicable Alabama statute of limitations. Instead, they argue that the doctrine of fraudulent concealment should toll the limitations period and save their claims, and they request permission to amend their complaints to add specific allegations of fraudulent concealment. Each Plaintiff filed a Proposed Amended Complaint ("PAC") along with their Motion to Amend. However, the PACs demonstrate that granting leave to amend would be futile in these cases for two reasons. First, the PACs fail to adequately plead fraudulent concealment pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Second, even if fraudulent concealment were specifically plead as required by Rule 9(b), as this Court has previously held, accrual of the statute of limitation is tolled only until the onset

of infection when a plaintiff is on inquiry notice to discover their claims.[1] Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than four years before filing suit, any attempt to amend would be futile and their claims are untimely as a matter of law.

Accordingly, Defendants 3M Company and Arizant Healthcare Inc.'s (collectively, "3M") Motion for Judgment on the Pleadings ("MJOP") should be granted, and Plaintiffs individual Motions for Leave to Amend Complaint (*Miles*, No. 17-cv-3223 Dkt. 10; *Culpepper*, No. 17-cv-2893 Dkt. 11, hereinafter "Motions to Amend") should be denied.

## ARGUMENT

### I. 3M's MJOP Is Neither Procedurally Improper Nor Premature

Plaintiffs' assertion that 3M's MJOP is an "attempt to circumvent" PTO 1 and PTO 22 is unavailing. (*See* Joint Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3045, hereinafter "Opposition" or "Opp." at 4). While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. Regarding the dispositive motion schedule in PTO 22, Plaintiffs misinterpret the order. PTO 22 sets deadlines for general causation summary

---

[1] *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, no Plaintiffs have previously advocated for this interpretation of PTO 22, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875; (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, their cases "ha[ve] no scheduling order," (Opp. at 5), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1). The good cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP and similar motions, because the MDL inventory is littered with cases that are

facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferor courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

Equally unpersuasive are Plaintiffs' arguments that the Master Complaint and Short Form Complaints are merely "procedural devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery. (*See* Opp. at 4-6). By filing their Motions to Amend and PACs, Plaintiffs have nullified any argument that adjudicating the MJOP unfairly deprives them of an opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

Lastly, Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will "open the floodgates" for additional motion practice (Opp. at 6-7)—is a strawman that lacks legal foundation and does not justify denying 3M the relief to which it is legally entitled. Plaintiffs elected to file hundreds (if not thousands) of cases that are facially time-barred, and

Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and Defendants. Any lawyer truly concerned about judicial efficiency would review their inventory of cases and voluntarily dismiss time-barred cases, consistent with the requirements of Rule 11. Until then, Defendants may file good-faith motions that will efficiently dispose of cases that have no chance of success.

If Plaintiffs will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave Defendants with little choice but to initiate motions practice.

## II. Plaintiffs Should be Denied Leave to Amend Because the Proposed Amendments Are Futile

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). "[A] party is not entitled to amend a complaint without

making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Here, Plaintiffs' PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date Plaintiff was diagnosed with an infection. Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than four years before filing suit, the proposed amendments are futile.[2]

### A. Plaintiff Fails to Adequately Plead Fraudulent Concealment

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and

[2] Plaintiffs do not dispute 3M's arguments that their personal injury claims (including their product liability claims and their tort-based unjust enrichment claim) are subject to the two-year statute of limitations established in Ala. Code § 6-2-38(l), their claims under the Alabama Deceptive Trade Practices Act are subject to the four-year statute of limitations period established in Ala. Code § 8-19-14, and their breach of warranty claims are subject to the four-year statute of limitations in Ala. Code § 7-2-725(2).

how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880-81 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims."); *see also DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010) (explaining that Alabama law also requires that the complaint "allege the time and circumstances of the discovery of the cause of action" as well as "the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury.").

In product liability cases specifically, it is not enough for a plaintiff to allege merely that "the manufacturer had fraudulently concealed the defective and unreasonably dangerous condition of the product from the Plaintiff after they knew said product was defective and dangerous." *DGB, LLC*, 55 So. 3d at 226 (quoting *Miller v. Mobile County Bd. of Health*, 409 So.2d 420, 422 (Ala. 1981)) (cleaned up). Instead, a plaintiff must identify "the facts or circumstances by which the [manufacturer] concealed the cause of action or injury" and "what prevented [the plaintiff] from discovery facts surrounding the injury." *Id.* (quoting *Miller*, 409 So.2d at 422) (emphasis removed).

Here, the PACs fail to establish the who, what, where, when, or how of the alleged fraudulent concealment, and they allege no facts demonstrating

that any of 3M's alleged actions prevented Plaintiffs from timely filing their Complaints. The amendments offered in the PACs under "Fraudulent Concealment Tolling" merely assert that 3M was aware of the alleged risks relating to the Bair Hugger identified in the Complaint, failed to disclose those risks to physicians, and actively concealed them. (*See Culpepper* PAC, No. 17-cv-2893, Dkt. 14-1 ¶¶ 115-59; *Miles* PAC, No. 17-cv-3223, Dkt. 14-1 ¶¶ 122-68). But none of these allegations address Plaintiffs or their physicians specifically, and as this Court has already recognized, "[m]ere failure to warn of a product's risk is not enough to establish fraudulent concealment" under Alabama law. *Partlow v. 3M Company, et al.*, No. 16-cv-2144, Dkt. 29, p. 4 (Jan. 7, 2019) (citing *Cazalas v. Johns-Manville Sales Corp.*, 435 So. 2d 55, 58 (Ala. 1983) ("[M]ere failure or refusal to warn, without more, while actionable, does not rise to the level of fraudulent concealment and, hence, does not toll the running of the statute.")).

Rather, Plaintiffs must plead facts sufficient to establish that 3M misrepresented to Plaintiffs the existence of their claim such that the "alleged misrepresentation . . . prevented [Plaintiffs specifically] from making inquiry into the cause of [their injury] or pursuing any claims arising from it." *Partlow*, No. 16-cv-2144, Dkt. 29, p. 5 (citing *Scharff v. Wyeth*, No. 2:10-CV-220-WKW, 2011 WL 3320501, at *14 (M.D. Ala., Aug. 2, 2011)); *see also In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2023 WL 7548736, at

*2 (S.D. Ind. Apr. 25, 2023) (applying Alabama law and finding "[i]n the absence of allegations establishing that [the defendant] *prevented* Plaintiff from discovering the facts surrounding her alleged injury, Plaintiff may not rely on fraudulent concealment to toll the statute of limitations on her products liability and negligence claims") (emphasis original).

Here, the PACs do not include factual allegations sufficient to establish that 3M misrepresented the facts surrounding their injury to Plaintiffs, and that Plaintiffs relied on the alleged fraudulent misrepresentation made by 3M in deciding not to file timely Complaints. *See, e.g., DGB, LLC*, 55 So. 3d at 226. Indeed, the allegations in the PACs are not specific to Plaintiffs or their circumstances at all. Like the allegations this Court found insufficient to demonstrate fraudulent concealment in *Partlow*, here "Plaintiffs fail to allege fraudulent concealment by pleading only that Defendants failed to disclose information about dangers associated with the Bair Hugger," and they fail to allege that any specific misrepresentations induced reliance by Plaintiffs or their doctors or otherwise "caused [their] delay in filing suit." *Partlow*, No. 16-cv-2144, Dkt. 29, p. 5. Plaintiffs, in other words, have wholly failed to plead any salient fact specific to them individually supporting any alleged fraudulent concealment that prevented them from timely filing their Complaints.

Further, the PACs fail to allege ***when*** and ***how*** Plaintiffs discovered the alleged fraudulent concealment of Plaintiffs' specific claims, causing the

statute of limitations to accrue for the first time. The PACs do not specify the timing or manner by which Plaintiffs became aware of the alleged concealment. Instead, Plaintiffs generally allege that 3M continues to fraudulently conceal risks associated with the Bair Hugger system, (*see e.g.*, *Culpepper* PAC, No. 17-cv-2893, Dkt. 14-1 ¶¶ 134-35; *Miles* PAC, No. 17-cv-3223, Dkt. 14-1 ¶¶ 141-42), without pleading how the alleged fraudulent concealment prevented Plaintiffs from making inquiry into their cause of injury or pursing claims arising from it. Allegations of fraudulent concealment related to events that occurred after Plaintiffs filed their Complaints are irrelevant, since Plaintiffs were already on notice of their claims at the time of filing. (*See, e.g.*, *Culpepper* PAC, No. 17-cv-2893, Dkt. 14-1 ¶¶ 127-30, 140, 142, 146 (discussing expert testimony during a 2022 trial and revisions allegedly made to 2018 findings by the International Consensus on Periprosthetic Joint Infections). Because the PACs do not allege when or how Plaintiffs discovered the purported fraud, they fail to adequately plead that the doctrine of fraudulent concealment saves their otherwise time-barred claims. *See Summerhill*, 637 F.3d at 880; *DGB, LLC*, 55 So. 3d at 226; *Partlow*, No. 16-cv-2144, Dkt. 29, p. 4-5.

### B. Any Alleged Tolling of the Statute of Limitations Ends When Plaintiffs Were First Diagnosed with a PJI

Under Alabama law, the fraudulent concealment doctrine tolls the statute of limitations only until "the plaintiff discovers, or should have

discovered, the claim." *Jett v. Wooten*, 110 So. 3d 850, 853 (Ala. 2012); *see also Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1249 (N.D. Ala. 2019) ("[A] defendant's fraudulent concealment of facts pertaining to a potential claim tolls the statute of limitations until the plaintiff discovers the relevant facts."). If a defendant fraudulently conceals the plaintiff's claim from him, the limitations period begins to run when the plaintiff becomes "privy to facts which would provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud." *Auto-Owners Ins. Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001) (internal quotations, alteration, and citation omitted); *see also Jefferson Cnty. Truck Growers Ass'n v. Tanner*, 341 So. 2d 485, 488 (Ala. 1977) ("Fraud is deemed to have been discovered when it ought to have been discovered. It is sufficient to begin the running of the statute of limitations that facts were known which would put a reasonable mind on notice that facts to support a claim of fraud might be discovered upon inquiry.").

Here, once Plaintiffs knew they had an infection in 2008 and 2009, Plaintiffs were able to discover their claims through reasonable diligence, yet each waited more than four years to file their Complaint. The PACs do not explain how the alleged fraudulent concealment prevented Plaintiffs from timely filing their Complaints. At any point after Plaintiffs were diagnosed with a PJI, Plaintiffs could have requested and reviewed their medical records

and could have sought medical and legal assistance to discover their alleged causes of action. *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98, pp. 6-7 (Sept. 12, 2025) ("At any time after he was diagnosed with a periprosthetic joint infection in March 2012, [plaintiff] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries."); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103, p. 8 (Sept. 12, 2025) ("The prescription period did not await review of [Plaintiff's] medical records to start running."); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136, pp. 7-8 (Sept. 12, 2025) (similar). Plaintiffs have not alleged facts to establish they acted with due diligence, and this Court has already held that the onset of infection is sufficient to put similarly situated plaintiffs asserting similar claims against 3M on inquiry notice of their claims, triggering the statute of limitations. For these reasons, any tolling of the statute of limitations ended when Plaintiffs were first diagnosed with an infection.

The Culpeppers' PAC demonstrates that Elizabeth Culpepper's index surgery took place in 2009, resulting in an infection for which she was treated

"[f]rom 2009 to the present." (*Culpepper* PAC, No. 17-cv-2893, Dkt. 14-1 ¶¶ 30-34).[3] The Culpeppers did not file their lawsuit until July 14, 2017. (*Id.* ¶ 29).

Miles's PAC confirms that her index surgery took place in 2007; she was first diagnosed with an infection on January 23, 2008; and she underwent an irrigation and debridement and polyethylene liner exchange on February 15, 2008, to treat her infection. (*Miles* PAC, No. 17-cv-3223, Dkt. 14-1 ¶¶ 34-40). She did not file suit against 3M until December 13, 2016. (*See Weisbrod v. 3M Co., et al.*, Case No. 1:17-cv-01077, D. Minn.).

Because each of the PACs clearly shows that Plaintiffs were diagnosed with an infection more than four years before filing suit, their claims are clearly time-barred, and the proposed amendments are futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted and Plaintiffs' Motions for Leave to Amend should be denied.

---

[3] Although the Culpepper PAC is silent as to the specific date on which Elizabeth was first diagnosed with an infection, their original Short Form Complaint indicates that Elizabeth underwent the first surgical procedure to treat the infection on December 2, 2009. (*See* Culpepper Compl., Ex. B to MJOP, MDL Dkt. 2988-2 ¶ 9).

Respectfully submitted,

Date: September 29, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***