**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Menefee*, 18-cv-1078<br>*Cox*, 17-cv-1425<br>*Wongus*, 17-cv-03643 | **DEFENDANTS' COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND RESPONSE TO PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

## INTRODUCTION

Plaintiffs Arthur C. Menefee, Jacqueline Cox, and Marzell Wongus, Sr. do not dispute that their lawsuits were filed outside of the applicable Virginia statute of limitations. Instead, they argue that the doctrine of fraudulent concealment should toll the limitations period and save their claims, and they request permission to amend their complaints to add specific allegations of fraudulent concealment. Each Plaintiff filed a Proposed Amended Complaint ("PAC") along with their Motion to Amend. The PACs demonstrate that granting leave to amend would be futile in these cases for two reasons. First, the PACs fail to adequately plead fraudulent concealment pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. Second, even were fraudulent concealment specifically pleaded as required by Rule 9(b), this Court has

previously held accrual of the statute of limitation is tolled only until the onset of infection, at which time a plaintiff is on inquiry notice to discover their claims.[1] Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than four years before filing suit, their claims are untimely as a matter of law, and any attempt to amend would be futile.

Accordingly, Defendants 3M Company and Arizant Healthcare Inc.'s (collectively, "3M") Motion for Judgment on the Pleadings ("MJOP") should be granted and Plaintiffs individual Motions for Leave to Amend Complaint (*Menefee*, No. 18-cv-1078, Dkt. 11; *Cox*, No. 17-cv-1425, Dkt. 12; *Wongus*, No. 17-cv-03643, Dkt. 13, hereinafter "Motions to Amend") should be denied.

## ARGUMENT

### I. 3M's MJOP is Neither Procedurally Improper Nor Premature

Plaintiffs' assertion that 3M's MJOP is an "attempt to circumvent" PTO 1 and PTO 22 is unavailing. (*See* Joint Memorandum in Opposition to Defendants' MJOP, MDL Dkt. 3042, hereinafter "Opposition" or "Opp." at 4). While Plaintiffs note that PTO 1 stays individual discovery, this has no bearing on the MJOP, which is decided solely on the pleadings and requires no discovery. Regarding the dispositive motion schedule in PTO 22, Plaintiffs

---

[1] *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025).

misinterpret the order. PTO 22 sets deadlines for general causation summary judgment motions and bellwether case-specific summary judgment motions, but neither deadline applies here because the MJOP does not fall into either category. Further, no Plaintiffs have previously advocated for this interpretation of PTO 22, even though the Court has established protocols to address claims that are facially barred by the statute of limitations and has expressly contemplated motion practice for such claims. (*See* 3/29/2019 Categorization Order, MDL Dkt. 1875; (establishing a protocol for identifying cases that should be dismissed as untimely); 5/17/2019 Revised Categorization Order, MDL Dkt. 1922 (revising the protocol)). As Plaintiffs acknowledge, their cases "have no [] scheduling order in place," (Opp. at 5), and therefore there is no basis to argue that the MJOP is untimely.

Moreover, PTO 22 allows for modifications to its schedule "upon a showing of good cause as required by Local Rule 16.3." (PTO 22 at 1). The good cause standard under Local Rule 16.3 is consistent with the good cause standard applicable under Federal Rule of Civil Procedure 16(b). *See IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018). Determining whether good cause exists is within the Court's discretion based upon consideration of the diligence of the party seeking to modify the scheduling order and any other relevant factors. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019). Here, good cause justifies allowing the MJOP

and similar motions, because the MDL inventory is littered with cases that are facially untimely, and pleading-based motion practice is an efficient means to identify and dismiss such cases. Denying 3M's MJOP at this juncture would only waste the resources of the Court, the parties, and transferor courts. In short, even were there a procedural defect regarding the MJOP's timing (and there is not), good cause exists to excuse any technical deficiency and adjudicate the MJOP on its merits.

Equally unpersuasive are Plaintiffs' arguments that the Master Complaint and Short Form Complaints are merely "procedural devices" or that plaintiffs in remanded cases have the unfettered right to amend their pleadings and conduct discovery. (*See* Opp. at 4-6). By filing their Motions to Amend and PACs, Plaintiffs have nullified any argument that adjudicating the MJOP unfairly deprives them of an opportunity to amend their pleadings. Furthermore, as discussed more fully below, the Motions to Amend and PACs confirm that Plaintiffs' claims are untimely as a matter of law and ***cannot be amended*** to state a plausible claim against 3M, further undermining any suggestion that the MJOP is procedurally improper or premature.

Lastly, Plaintiffs' purported concern about judicial efficiency—*i.e.*, that adjudicating the MJOP will open the "floodgates" for additional motion practice, (Opp. at 6-7)—is a strawman that lacks legal foundation and does not justify denying 3M the relief to which it is legally entitled. Plaintiffs elected to

file hundreds (if not thousands) of cases that are facially time-barred, and Plaintiffs continue to pursue those meritless cases with impunity, unfairly burdening both the Court and Defendants. Any lawyer truly concerned about judicial efficiency would review their inventory of cases and voluntarily dismiss time-barred cases, consistent with the requirements of Rule 11. Until then, Defendants may file good-faith motions that will efficiently dispose of cases that have no chance of success.

If Plaintiffs will not voluntarily screen their inventories and cull meritless cases from the MDL docket, Plaintiffs leave Defendants with little choice but to initiate motions practice.

## II. Plaintiffs Should be Denied Leave to Amend Because the Proposed Amendments Are Futile

A court may deny leave to amend a complaint where amendment would be futile. *E.g.*, *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)). This includes where the amended claim would be barred by the applicable statute of limitations. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim

is time-barred."). "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014).

Here, Plaintiffs' PACs demonstrate that amendment is futile for two reasons: (1) Plaintiffs' proposed allegations are insufficient to plead fraudulent concealment for purposes of tolling the statute of limitations; and (2) even if Plaintiffs could take advantage of tolling under the fraudulent concealment doctrine, any tolling would cease upon the date Plaintiff was diagnosed with an infection. Because the PACs clearly show that Plaintiffs were diagnosed with an infection more than four years before filing suit, the proposed amendments are futile.[2]

### A. Plaintiff Fails to Adequately Plead Fraudulent Concealment

A plaintiff seeking to toll the statute of limitations on the basis of fraudulent concealment must plead the circumstances of fraudulent

[2] Plaintiffs do not dispute 3M's arguments that their personal injury claims (including their product liability claims) are subject to the two-year statute of limitations established in Va. Code Ann. § 8.01-243, their claims under the Virginia's Consumer Protection Act are subject to the two-year statute of limitations period established in Va. Code § 59.1-204.1(A), their breach of warranty claims are subject to the four-year statute of limitations in Va. Code Ann. § 8.2-725, and their unjust enrichment claims are subject to a three-year statute of limitations period established in Va. Code Ann. § 8.01-246(4).

concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

Here, the PACs fail to establish the who, what, where, when, or how of the alleged fraudulent concealment, and they allege no facts demonstrating that any of 3M's alleged actions prevented Plaintiffs from timely filing their Complaints. The amendments offered in the PACs under "Fraudulent Concealment Tolling" merely assert that 3M was aware of the alleged risks relating to the Bair Hugger identified in the Complaint, failed to disclose those risks to physicians, and actively concealed them. (*See Menefee*, No. 18-cv-1078, Dkt. 14-1, ¶¶ 118-62; *Cox*, No. 17-cv-1425, Dkt. 14-1, ¶¶ 122-66; *Wongus*, No. 17-cv-03643, Dkt. 16-1, ¶¶ 122-66). But "[m]ere silence by the person liable is not concealment, . . . there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Newman v. Walker*, 618 S.E.2d 336, 338 (Va. 2005) (quoting *Culpepper Nat'l Bank*, 89 S.E. 118, 121 (Va. 1916)); *see also Partlow v. 3M Company, et*

*al.*, No. 16-cv-2144, Dkt. 29, p. 4 (Jan. 7, 2019) ("Mere failure to warn of a product's risk is not enough to establish fraudulent concealment.").

Rather, Plaintiffs must plead that "some trick or artifice" prevented inquiry or "hinder[ed] [] discovery of the cause of action" despite "the use of ordinary diligence." *Newman*, 618 S.E.2d at 338 ("There must be something actually said or done which is directly intended to prevent discovery."); *see also Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2011) ("A plaintiff who seeks to rely upon the tolling provision . . . must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action.").

Here, the PACs do not include factual allegations sufficient to establish that 3M misrepresented the facts surrounding their injury to Plaintiffs, and Plaintiffs relied on an alleged fraudulent misrepresentation made by 3M in deciding not to file timely Complaints. Nor do the PACs allege the facts or circumstances by which 3M concealed the cause of action or injury in a way that prevented Plaintiffs from discovering the facts surrounding the injury. *Newman*, 618 S.E.2d at 339. Plaintiffs, in other words, have wholly failed to plead any salient fact specific to them individually supporting any alleged fraudulent concealment that prevented them from timely filing their Complaints.

Further, the PACs fail to allege ***when*** and ***how*** Plaintiffs discovered the alleged fraudulent concealment. The PACs do not specify the timing or manner by which Plaintiffs became aware of the alleged concealment. Instead, Plaintiffs generally allege that 3M continues to fraudulently conceal risks associated with the Bair Hugger system, (*see e.g.*, *Menefee*, No. 18-cv-1078, Dkt. 14-1, ¶¶ 137-38; *Cox*, No. 17-cv-1425, Dkt. 14-1, ¶¶ 141-42; *Wongus*, No. 17-cv-03643, Dkt. 16-1, ¶¶ 141-42), without pleading how the alleged fraudulent concealment prevented Plaintiffs from making inquiry into their cause of injury or pursing claims arising from it. Allegations of fraudulent concealment related to events that occurred after Plaintiffs filed their Complaints are irrelevant, since Plaintiffs were already on notice of their claims at the time of filing. (*See, e.g.*, *Menefee* PAC, No. 18-cv-1078, Dkt. 14-1 ¶¶ 130-133, 143, 145, 149 (discussing expert testimony during a 2022 trial and revisions allegedly made to 2018 findings by the International Consensus on Periprosthetic Joint Infections). Because the PACs do not allege when or how Plaintiffs discovered the purported fraud, they fail to adequately plead that the doctrine of fraudulent concealment saves their otherwise time-barred claims. *See Summerhill*, 637 F.3d at 880; *Newman*, 618 S.E.2d at 339.

### B. Any Alleged Tolling of the Statute of Limitations Ends When Plaintiff Was First Diagnosed with a PJI

Under Virginia law, to "receive the benefit of equitable tolling, a plaintiff has to establish that '(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'" *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 840–41 (Va. 2008) (quoting *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003)). Tolling ceases for claims tolled by fraudulent concealment when the fraud is discovered or by the exercise of due diligence reasonably should have been discovered. *McHenry v. Adams*, 448 S.E.2d 390, 392 (Va. 1994); Va. Code Ann. § 8.01-249. While "the facts which underlie a plaintiff's allegations may only gradually come to light . . . [c]ommencement of a limitations period need not … await the dawn of complete awareness." *Brumbaugh v. Princeton Partners*, 985 F.2d 157, 162 (4th Cir. 1993).

In the context of discovering fraud, due diligence is the "measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances." *Schmidt*, 661 S.E.2d at 839. "Whether such due diligence has been exercised must be ascertained by an examination of the facts and circumstances unique to each case." *STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d

394, 397 (Va. 1990). After the defendant has demonstrated that the statute of limitations has run, the burden shifts to the plaintiff "to prove that, despite the exercise of due diligence, he could not have discovered the alleged fraud within the two-year period before he commenced the action." *Schmidt*, 661 S.E.2d at 839; *see also Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962).

Here, once Plaintiffs knew they had an infection they should have been able to discover their claims through reasonable diligence, yet each waited more than four years to file their Complaint. *See, e.g.*, *Flick v. Wyeth LLC*, 2012 WL 4458181, at *2 (W.D. Va. June 6, 2012) (holding "Plaintiff's date of diagnosis is when a reasonable person exercising due diligence would have known of the basis of her claim"). The PACs do not explain how the alleged fraudulent concealment prevented Plaintiffs from timely filing their Complaints. At any point after Plaintiffs were diagnosed with a PJI, Plaintiffs could have requested and reviewed their medical records and could have sought medical and legal assistance to discover their alleged causes of action. *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98, pp. 6-7 (Sept. 12, 2025) ("At any time after he was diagnosed with a periprosthetic joint infection in March 2012, [plaintiff] could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries.");

*Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136, pp. 7-8 (Sept. 12, 2025) (same); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103, p. 8 (Sept. 12, 2025) ("The prescription period did not await review of [Plaintiff's] medical records to start running."). Plaintiffs have not alleged facts to establish they acted with due diligence, and this Court has already held that the onset of infection is sufficient to put similarly situated plaintiffs asserting similar claims against 3M on inquiry notice of their claims, triggering the statute of limitations. For these reasons, any tolling of the statute of limitations ended when Plaintiffs were first diagnosed with an infection.

The *Menefee* PAC shows that Plaintiff Arthur C. Menefee's index surgery involving the Bair Hugger System took place on April 24, 2012, and he was diagnosed with an infection on April 16, 2013. (*Menefee*, No. 18-cv-1078, Dkt. 14-1, ¶¶ 28-33). Plaintiff Menefee did not file his lawsuit until more than five years after he was first diagnosed and treated for an infection, on April 24, 2018. (*See* Menefee Complaint, No. 18-cv-1078, Dkt. 1).

The *Cox* PAC shows that Plaintiff Jacqueline Cox's index surgery involving the Bair Hugger System took place on February 22, 2011, and between April 26, 2011, and November 23, 2014, she underwent multiple additional treatments and procedures including oral antibiotics, IV antibiotics, multiple irrigation & debridement procedures, and revision, to treat her infection. (*Cox*, No. 17-cv-1425, Dkt. 14-1, ¶¶ 34-41). Plaintiff Cox did not file

her lawsuit until more than six years after she was first diagnosed and treated for an infection, on April 28, 2017. (*See* Cox Complaint No. 17-cv-1425, Dkt. 1).

The *Wongus* PAC shows that Plaintiff Marzell Wongus, Sr.'s index surgery involving the Bair Hugger System took place on April 21, 2011, and he was diagnosed with an infection on July 20, 2011. (*Wongus*, No. 17-cv-03643, Dkt. 16-1, ¶¶ 34-39). Plaintiff Wongus did not file his lawsuit until more than six years after he was first diagnosed and treated for an infection, on August 9, 2017. (*See* Wongus Complaint, No. 17-cv-03643, Dkt. 1).

Because each of the PACs clearly shows that Plaintiffs were diagnosed with an infection more than four years before filing suit, their claims are clearly time-barred, and the proposed amendments are futile.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are time-barred as a matter of law, and no amendment can change that result. Accordingly, 3M's Motion for Judgment on the Pleadings should be granted and Plaintiffs' Motions for Leave to Amend should be denied.

Respectfully submitted,

Date: September 29, 2025

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***