**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Minor*, 17-cv-2033<br>*Paine*, 18-cv-0069<br>*Taplin*, 17-cv-2848<br>*Arnold*, 24-cv-2280 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M") move for judgment in four cases for failure to state a claim upon which relief can be granted. The claims brought in each of these four cases are time-barred under the applicable Oklahoma statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations

grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the inventory of MDL cases by identifying and dismissing claims that are time-barred on their face.

Second, as discussed in greater detail below, under Oklahoma's "discovery rule," claims accrue at the time the injured party knows, or should have known of the injury. *See*, *e.g.*, *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 951 (Okla. 1984). Applying similar discovery rules, this Court recently granted summary judgment in cases that are time-barred under Iowa and Louisiana law, finding that a plaintiff is on inquiry notice of potential claims against 3M upon diagnosis of an infection. *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Here, as demonstrated below, this allows the Parties and Court to easily identify and take appropriate action on Oklahoma-based cases that are untimely on their face, given the time that has elapsed since the Plaintiffs' diagnoses. Taking these steps now, on a sampling of Oklahoma test cases, would be an important first step in culling the inflated inventory of existing cases, and enabling the

Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

---

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and Plaintiffs never previously argued that such motion practice would be barred by PTO 22's motion deadline.

## BACKGROUND

On August 3, 2009, Plaintiff Roberta Minor ("Minor"), an Oklahoma citizen, underwent a total knee arthroplasty ("TKA") surgery in Oklahoma. (Ex. B, Minor Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger Forced Air Warming System (hereinafter "Bair Hugger system") was used. (*Id.* at ¶ 7.) Minor subsequently developed a periprosthetic joint infection ("PJI"), also known as a deep joint infection, which she attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Minor alleges that between August 14, 2009, and November 4, 2010, she underwent multiple additional treatments and procedures including IV antibiotics, irrigation & debridement procedure, antibiotic spacer procedure, and revision, all in Oklahoma. (*Id.* at ¶ 9.) On June 14, 2017, more than seven years after she was first diagnosed and treated for an infection, Minor and her spouse, Plaintiff Bennie Minor, commenced their action against 3M by direct-filing their Complaint in the MDL. (*See* Minor Compl.) In that Complaint, Minor designated the Northern District of Oklahoma as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

On December 13, 2010, Plaintiff Sharon Paine ("Paine"), an Oklahoma citizen, underwent a total hip replacement ("THA") surgery in Oklahoma. (Ex. C, Paine Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used.

(*Id.* at ¶ 7.) Paine subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Paine alleges that between January 4, 2011, and November 27, 2012, she underwent multiple additional treatments and procedures including explantation and revision, resection arthroplasty, conversion THA, and an irrigation and debridement procedure, all in Oklahoma. (*Id.* at ¶ 9.) On January 9, 2018, more than seven years after she was first diagnosed and treated for an infection, Paine commenced her claims against 3M by direct-filing her Complaint in the MDL. (*See* Paine Compl.) In that Complaint, Paine designated the Northern District of Oklahoma as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

On August 3, 2009, Plaintiff Janice Taplin ("Taplin"), an Oklahoma citizen, underwent a THA surgery in Oklahoma. (Ex. D, Taplin Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used. (*Id.* at ¶ 7.) Taplin subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Taplin alleges that between August 21, 2009, and August 24, 2009, she underwent multiple additional treatments and procedures including multiple irrigation and debridement procedures, all in Oklahoma (*Id.* at ¶ 9.) On July 13, 2017, more than seven years after she was first diagnosed and treated for an infection, Taplin commenced her claims

against 3M by direct-filing her Complaint in the MDL. (*See* Taplin Compl.) In that Complaint, Taplin designated the Western District of Oklahoma as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

On August 15, 2016, Plaintiff Donna Arnold ("Arnold"), an Oklahoma citizen, underwent a TKA surgery in Oklahoma. (Ex. E, Arnold Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used. (*Id.* at ¶ 7.) Arnold subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Arnold alleges that between September 7, 2016, and July 20, 2017, she underwent revision arthroplasty, wound vac treatment, and multiple staged procedures, all in Oklahoma (*Id.* at ¶ 9.) On June 14, 2024, more than seven years after she was first diagnosed and treated for an infection, Arnold commenced her claims against 3M by direct-filing her Complaint in the MDL. (*See* Arnold Compl.) In that Complaint, Arnold designated the Northern District of Oklahoma as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th

Cir. 2009). Accordingly, the Court should "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. Oklahoma's Statutes of Limitations Apply.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction

as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were all direct-filed in the MDL and have identified the Northern District of Oklahoma (*see* Ex. B, Minor Compl. ¶ 5; Ex. C, Paine Compl. ¶ 5; Ex. E, Arnold Compl. ¶ 5) and the Western District of Oklahoma (*see* Ex. D, Taplin Compl. ¶ 5) as their respective appropriate venues. As a federal district court sitting in diversity, the Northern District of Oklahoma and the Western District of Oklahoma would apply Oklahoma choice-of-law rules with respect to issues of state law. *SFF-TIR, LLC v. Stephenson*, 452 F. Supp. 3d 1058, 1155 (N.D. Okla. 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("A federal court sitting in diversity must apply the choice-of-law rules of the state in which the federal court resides, and, therefore, a federal court in Oklahoma must apply Oklahoma's choice-of-law rules when it sits in diversity."); *Sonic Indus. LLC v. Halleran*, No. CIV-16-709-C, 2017 WL 239388, at *2 (W.D. Okla. Jan. 19, 2017). Therefore, Oklahoma's choice-of-law rules dictate this Court's analysis.

Oklahoma follows the conflict-of-law principles of *lex fori* as to procedural matters and applies the "most significant relationship" test to determine the applicable substantive law. *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974); *Shimonek v. Tillman*, 1 P.2d 154, 154 (Okla. 1931) (quoting *N. Pac. R. Co. v. Babcock*, 154 U.S. 190, 198, 14 S. Ct. 978, 981, 38 L. Ed. 958 (1894)); *see*

*also AlNahhas v. Robert Bosch Tool Corp.*, 706 F. App'x 920, 930 (10th Cir. 2017) (applying Oklahoma law to product liability action because injuries occurred in Oklahoma, even though product was manufactured in another state).

Oklahoma treats the application of statute of limitations as a procedural issue and applies the law of the forum. *See Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 51 (Okla. 2008); *Trinity Broad. Corp. v. Leeco Oil Co.*, 692 P.2d 1364, 1366 (Okla. 1984); *W. Nat. Gas Co. v. Cities Serv. Gas Co.*, 507 P.2d 1236, 1242 (Okla. 1972); *see also Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 483–84 (10th Cir. 1990) ("A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state."). Because Plaintiffs have identified the Northern District of Oklahoma (*see* Ex. B, Minor Compl. ¶ 5; Ex. C, Paine Compl. ¶ 5; Ex. E, Arnold Compl. ¶ 5) and the Western District of Oklahoma (*see* Ex. D, Taplin Compl. ¶ 5) as the appropriate venues, Oklahoma statutes of limitation should apply.[2]

Even if this Court determined that the statute of limitations was a substantive rather than procedural matter, Oklahoma's limitations period

---

[2] To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the Oklahoma statute of limitations would still apply because, as discussed below, Oklahoma substantive law applies. *See* Minn. Stat. Ann. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

would still apply. Oklahoma applies the "most significant relationship" test to determine the applicable substantive law. *Brickner*, 525 P.2d at 637. The factors considered to determine the "most significant relationship," in order of relative importance, include: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties occurred." *Edwards v. McKee*, 76 P.3d 73, 75–76 (Okla. Civ. App. 2003) (citing *Brickner*, 525 P.2d at 637). Where, as here, a plaintiff alleges injury occurred in Oklahoma, caused by a medical device used during a surgery in Oklahoma, and the plaintiff is a citizen of Oklahoma, the state with the "most significant relationship" is deemed to be Oklahoma. *See*, *e.g.*, *Recker v. C.R. Bard, Inc.*, 491 F. Supp. 3d 1029, 1032 (W.D. Okla. 2020) (applying Oklahoma law, where plaintiff alleged injury related to medical device implanted during surgery in Oklahoma).

The Plaintiffs captioned above each reside in Oklahoma, were allegedly injured from use of a Bair Hugger system in Oklahoma, and allegedly underwent revisionary and remedial care in Oklahoma. (Ex. B, Minor Compl. ¶ 9; Ex. C, Paine Compl. ¶ 9; Ex. D, Taplin Compl. ¶ 9; Ex. E, Arnold Compl. ¶ 9.) Minor underwent surgery in Owasso, Oklahoma, and subsequently developed an infection and underwent revisionary procedures in Owasso,

Oklahoma. (Ex. B, Minor Compl. ¶¶ 7-9.) Paine underwent surgery in Owasso, Oklahoma, and subsequently developed an infection and underwent revisionary procedures in Owasso, Oklahoma. (Ex. C, Paine Compl. ¶¶ 7-9.) Taplin underwent surgery in Oklahoma City, Oklahoma, and subsequently developed an infection and underwent revisionary procedures in Oklahoma City, Oklahoma. (Ex. D, Taplin Compl. ¶¶ 7-9.) Arnold underwent surgery in Oklahoma City, Oklahoma, and subsequently developed an infection and underwent revisionary procedures in Bartlesville, Oklahoma. (Ex. E, Arnold Compl. ¶¶ 7-9.) Accordingly, the Plaintiffs each have alleged that their injuries occurred in Oklahoma, and Oklahoma's statutes of limitations apply regardless of whether this Court determines it to be procedural or substantive in nature.

## II. Plaintiffs' Personal Injury Claims are Barred by Oklahoma's Two-Year Statute of Limitations.

Oklahoma law bars Plaintiffs' personal injury claims because Plaintiffs did not file their cases until more than two years after Plaintiffs were first diagnosed with infections. Under Oklahoma law, actions for personal injuries must be brought within two years after the cause of action accrues. Okla. Stat. Ann. tit. 12, § 95(A)(3). This two-year statute of limitations applies to negligence claims, products liability claims, and fraud claims. *Mallow v. Ethicon, Inc.*, No. CIV-20-01172-PRW, 2022 WL 844196, at *3 (W.D. Okla.

Mar. 21, 2022); *Cabinet Solutions, LLC v. Kelley*, 288 P.3d 254, 256 (Okla. Ct. Civ. App. 2012) ("The statute of limitations period applicable to Cabinet's claim of negligence is two years."); *Jacks v. Vanderbilt Mortgage & Finance, Inc.*, 2016 WL 5720835, at *1 (W.D. Okla. Oct. 3, 2016) ("[I]n Oklahoma, the statute of limitations on a products liability claim is two years."); *Jeter v. Wild West Gas, LLC*, 2015 WL 5970992, at *7 (N.D. Okla. Oct. 14, 2015) ("Oklahoma has a two-year statute of limitations on fraud claims.").

"Generally, a products liability action accrues at the time of a plaintiff's injury." *Wandschneider v. Tuesday Morning, Inc.*, No. 08-CV-522-TCK-FHM, 2011 WL 3319562, at *3 (N.D. Okla. Aug. 1, 2011); *see also Green v. Oilwell, Div. of United States Steel Corp.*, 767 P.2d 1348, 1350 (Okla. 1989) ("In a manufacturer's products liability action the cause of action accrues at the time of the injury."); *Mineral Acquisitions, L.L.C. v. Hamm*, 477 P.3d 1159, 1170 (Okla. Ct. App. 2020) ("Tort claims generally accrue at the time the injury to the plaintiff occurs."); *Erikson v. Farmers Grp., Inc.*, 151 F. App'x 672, 676 (10th Cir. 2005) (holding the Oklahoma discovery rule tolls the limitations period only until the plaintiff learns of the injury, even if the exact source of the injury was unknown).

While Oklahoma follows the discovery rule, *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016), the "statute of limitations is not tolled simply because a plaintiff negligently refrains from prosecuting inquiries plainly

suggested by the facts [and] it is irrelevant whether the plaintiff understood that the defendant's actions constituted a legal cause of action as long as the plaintiff knew of the facts which could give rise to such a claim." *Blue v. Universal Underwriters Life Ins. Co.*, 612 F. Supp. 2d 1201, 1204 (N.D. Okla. 2009); *see also Crawford on Behalf of C.C.C. v. OSU Med. Tr.*, 510 P.3d 824, 832 (Okla. 2022) ("After [Plaintiffs] had sufficient information to be aware of their claims, it became their duty to investigate the claims and explore theories of liability"); *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 951 (Okla. 1984) (explaining that "a plaintiff is charged with knowing facts that he could have discovered in the exercise of reasonable diligence.").

Applying similar discovery rules under Iowa and Louisiana law, this Court has already determined that the onset of an infection gives rise to inquiry notice and starts the running of the statute of limitations period even if the plaintiff does not know the precise cause of their infection because a plaintiff exercising reasonable diligence could request and review their own medical records at any time after their diagnosis and thereby uncover the facts underlying their claims. *See Jones v. 3M*, No. 23-1425, ECF 103 at 8 (Sept. 12, 2025) (dismissing claims as untimely and observing: "Jones could have requested and reviewed his medical records at any time after he was diagnosed with a periprosthetic joint infection. The prescription period did not await review of his medical records to start running. Jones's action is untimely.")

(internal citation omitted); *Pelican v. 3M*, No. 23-1818, ECF 136 at 7-8 (Sept. 12, 2025) (similar); *Skinner v. 3M*, No. 17-2149, ECF 98 at 6-7 (Sept. 12, 2025) ("At any time after [Skinner] was diagnosed with a periprosthetic joint infection in March 2012, he could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries. The limitation period did not await review of his medical records in June 2016 to start running. His action, filed in June 2017, is untimely."). Notably, Oklahoma's discovery rule is even easier to satisfy than the one applied by the Court in *Jones* and *Pelican*, requiring only that a plaintiff discover their injury, rather than any connection between that injury and a potential defendant. *Compare Crawford on Behalf of C.C.C. v. OSU Med. Tr.*, 510 P.3d 824, 832 (Okla. 2022) (holding the Oklahoma discovery rule applies to the manifestation of the injury itself, not the identification of the defendant or the legal theory of the claim), *with Bruno v. Biomet, Inc.*, 74 F.4th 620, 623 (5th Cir. 2023) (under Louisiana law, "when a plaintiff acts reasonably to discover the cause of a problem, the prescriptive period does not begin to run until he has a reasonable basis to pursue a claim against a specific defendant") (cleaned up).

Here, the statute of limitations began to run when Plaintiffs were first diagnosed with infections. At those points in time, Plaintiffs had knowledge that a "wrong" had occurred sufficient to put them on inquiry notice to seek medical and legal assistance to discover their potential claims. *See Blue*, 612 F. Supp. 2d at 1204; *Daugherty*, 689 P.2d at 951. Minor underwent treatment for her PJI beginning on August 14, 2009, and the Complaint was filed over seven years later, on July 13, 2017. (Ex. B, Minor Compl. ¶¶ 8-9). Paine underwent her first revision surgery on January 4, 2011, and the Complaint was filed over seven years later, on June 14, 2017. (Ex. C, Paine Compl. ¶¶ 7-8). Taplin underwent treatment for her PJI beginning on August 21, 2009, and the Complaint was filed over seven years later, on January 9, 2018. (Ex. D, Taplin Compl. ¶¶ 8-9). Arnold underwent treatment for her PJI beginning on September 7, 2016, and the Complaint was filed over seven years later, on June 14, 2024. (Ex. E, Arnold Compl. ¶¶ 8-9). Accordingly, Plaintiffs' personal injury claims are untimely and should be dismissed.

## III. Plaintiffs' Consumer Protection, Unjust Enrichment, and Warranty Claims Are Time-Barred by Other Applicable Oklahoma Statutes of Limitations.

The only factual allegations of harm pleaded by Plaintiffs relate to personal injuries, (*see* Ex. B, Minor Compl. ¶¶ 7-9; Ex. C, Paine Compl. ¶¶ 6-8; Ex. D, Taplin Compl. ¶¶ 7-9), and so the personal injury limitations period should apply to all claims. But even to the extent Plaintiffs purport to allege

claims not based on personal injuries—including claims founded in consumer protection, warranty, or unjust enrichment (*see* Ex. B, Minor Compl. ¶ 12; Ex. C, Paine Compl. ¶ 11; Ex. D, Taplin Compl. ¶ 12; Ex. E, Arnold Compl. ¶ 12)—those claims would still be time-barred as a matter of law.

**1. Plaintiffs' Unjust Enrichment and Consumer Protection Claims Are Time-Barred by Oklahoma's Three-Year Statute of Limitations.**

Under Oklahoma law, both unjust enrichment claims and claims arising under the Oklahoma Consumer Protection Act (OCPA) must be commenced within three years after the cause of action accrues. Okla. Stat. Ann. tit. 12, § 95(A)(2); *Scott v. Coast Pro., Inc.*, 2021 WL 3354454, at *2 (W.D. Okla. Aug. 2, 2021) ("OCPA and unjust enrichment claims are subject to a three-year statute of limitations."); *see also Legacy Crossing, L.L.C. v. Travis Wolff & Co., L.L.P.*, 229 F. App'x 672, 682 (10th Cir. 2007) ("[Plaintiff's] OCPA claim is governed by the three year limitations period found within Okla. Stat. tit. 12, § 95(A)(2) because it is 'an action upon a liability created by statute other than a forfeiture or penalty.'" (quoting *Brashears v. Sight 'N Sound Appliance Ctrs., Inc.*, 981 P.2d 1270, 1273–74 (Okla.Civ.App.1999))). Although the discovery rule applies to unjust enrichment and OCPA claims, *see Legacy Crossing*, 229 F. App'x at 682, these claims are nevertheless time-barred because the statute of limitations started running when Plaintiffs were diagnosed with infections.

As explained above, Plaintiffs' lawsuits were all filed more than seven years after each Plaintiff was first diagnosed and treated with an infection. *See supra*, p. 13. Consequently, Plaintiffs' OCPA and unjust enrichment claims are untimely and should be dismissed.[3]

**2. Plaintiffs' Breach of Warranty Claims are Time-Barred by Oklahoma's Five-Year Statute of Limitations.**

Under Oklahoma law, a claim for breach of warranty must be commenced within five years of the date that tender of delivery is made. Okla. Stat. Ann. tit. 12A, § 2-725. Accordingly, Plaintiffs' warranty claims are subject to a five-year statute of limitations period starting from, at the absolute latest, the date of the index surgery where the Bair Hugger system was used.

Here, Plaintiffs' Complaints show that each Plaintiff underwent index surgery more than seven years before filing their Complaint. Minor underwent her index surgery on August 3, 2009, and the Complaint was filed over seven

[3] Plaintiffs also plead claims under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act. (Ex. B, Minor Compl. ¶ 12; Ex. C, Paine Compl. ¶ 11; Ex. D, Taplin Compl. ¶ 12; Ex. E, Arnold Compl. ¶ 12.) However, these statutory claims do not apply extraterritorially; and thus where, as here, plaintiffs reside and are injured outside of Minnesota, these claims are unavailable. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (finding no legal support to apply Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), *aff'd*, 9 F.4th 981 (8th Cir. 2021); *Ferrari v. Best Buy Co.*, 2015 WL 2242128, at *9-*10 (D. Minn. May 12, 2015).

years later, on July 13, 2017. (Ex. B, Minor Compl. ¶ 7). Paine underwent her index surgery on December 13, 2010, and the Complaint was filed over seven years later, on June 14, 2017. (Ex. C, Paine Compl. ¶ 6). Taplin underwent her index surgery on August 3, 2009, and the Complaint was filed over seven years later, on January 9, 2018. (Ex. D, Taplin Compl. ¶ 7). Arnold underwent her index surgery on August 15, 2016, and the Complaint was filed over seven years later, on June 14, 2024. (Ex. E, Arnold Compl. ¶ 7). Accordingly, Plaintiffs' warranty claims are untimely and should be dismissed.

Moreover, Plaintiffs' claims for breach of implied warranty should be dismissed because the claim is merged into Plaintiffs' product liability claims. Under Oklahoma law, "breach of implied warranty is no longer an appropriate remedy for recovery in products liability actions except as provided in the Uniform Commercial Code." *Mears v. Astora Women's Health, LLC*, No. CIV-18-1091-R, 2019 WL 1590592, at *4 (W.D. Okla. Apr. 12, 2019) (quoting *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1365 (Okla. 1974)). Claims for breach of implied warranty "ha[ve] been merged into manufacturer's products liability." *O'Neal v. Black & Decker Mfg. Co.*, 523 P.2d 614, 615 (Okla. 1974); *see also Mittapalli v. Ford Motor Co. Inc.*, No. 06-CV- 61-GKF-SAJ, 2007 WL 2292697, at *2 (W.D. Okla. Aug. 7, 2007). Plaintiffs' implied warranty claims are therefore merged into their product liability claims and should be dismissed.

## IV. Fraudulent Concealment Does Not Apply to Save Plaintiffs' Untimely Claims.

Under Oklahoma law, "[t]he 'doctrine of fraudulent concealment' tolls the running of a statute of limitations when the defendant has prevented the plaintiff from timely discovering the [cause of action]." *Shoemaker Corp. III, Inc. v. Garrett*, 704 F. Supp. 3d 1222, 1256 (N.D. Okla. 2023) (quoting *Fulghum v. Embarq Corp.*, 785 F.3d 395, 414 (10th Cir. 2015)). To properly plead tolling based on fraudulent concealment in federal court, a plaintiff must plead the circumstances of fraudulent concealment with particularity. *See King & King Enters. v. Champlin Petroleum Co.*, 446 F. Supp. 906, 911 (E.D. Okla. 1978). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *See*, *Dummar v. Lummis*, 543 F.3d 614, 622 (10th Cir. 2008) ("[T]he absence of an allegation regarding how and when [plaintiff] learned of the alleged misconduct forecloses a claim that Defendants' fraudulent concealment prevented [plaintiff] from discovering [a cause of action].").

There are three elements of fraudulent concealment that the plaintiff must establish under Oklahoma law: "(1) the use of fraudulent means by the party who raises the ban of the statute [of limitations]; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent

concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action." *King & King Enters.*, 446 F. Supp. at 910-11 (citations omitted). To adequately plead fraudulent concealment tolling under Oklahoma law, a plaintiff must allege facts of "some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forgo inquiry." *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 55 (Okla. 2008) (quoting *Loyal Protective Ins. Co. v. Shoemaker*, 63 P.2d 960, Syl. No. 1. (Okla. 1936)). Further, Plaintiffs "must not only show that [they] did not know the facts constituting a cause of action, but that [they] exercised reasonable diligence to ascertain said facts." *Masquat*, 195 P.3d at 55 (quoting *Kansas City Life Ins. v. Nipper*, 51 P.2d 741, 742, Syl. No. 9. (Okla. 1935)); *King & King Enters.*, 446 F. Supp. at 912 ("The statute of limitations is not tolled on account of a party's failure to discover.").

Further, the effects of the doctrine of fraudulent concealment cease when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim. *See Mallow v. Ethicon, Inc.*, No. CIV-20-01172-PRW, 2022 WL 844196, at *5 n.36 (W.D. Okla. Mar. 21, 2022) ("fraudulent concealment ... tolls the statute of limitations until a plaintiff knew or should have known that they might have a cause of action"); *Richey v. Westinghouse Credit Corp.*, 667 F. Supp. 752, 756 (W.D. Okla. 1986).

Here, Plaintiffs do not plead facts to establish fraudulent concealment, nor do they plead those elements with particularity as required by Rule 9. While they each have designated "fraudulent concealment" as a liability theory in their respective short form complaints, they do not allege any facts establishing that Defendants engaged in conduct directed at deflecting litigation or obstructing their right to file. (*See generally*, Ex. B, Minor Compl.; Ex. C, Paine Compl.; Ex. D, Taplin Compl.; Ex. E, Arnold Compl.) The Master Long Form Complaint also does not supply these allegations, as it asserts in a general manner that 3M misrepresented or concealed certain information concerning the safety of the Bair Hugger system. (*See* Master Long Form Compl. ECF 97 ¶¶ 185-92.) The Master Long Form Complaint does not contain any allegations about Plaintiffs specifically; it does not address what affirmative actions 3M allegedly took to conceal information *from Plaintiffs* or whether 3M had any knowledge of *Plaintiffs'* injuries or causes of action specifically. *See Masquat*, 195 P.3d at 55. Nor does it demonstrate that *Plaintiffs* exercised reasonable care and diligence in discovering and pursuing their claims. *Id.*; *King & King Enters.*, 446 F. Supp. at 912. Plaintiffs have not demonstrated the "who, what, when, where, and how" of the fraudulent concealment allegedly directed at them specifically, nor have they alleged how and when they personally discovered any such fraud. *Dummar*, 543 F.3d at 622. As such, Plaintiffs' claims cannot be saved by the fraudulent concealment

tolling doctrine. *See Masquat*, 195 P.3d at 55; *see also Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 at 3-6 (D. Minn. Jan. 7, 2019) (concluding Bair Hugger plaintiff failed to plead sufficient facts in short or master long form complaint to invoke fraudulent concealment tolling under Alabama law).

Notably, even if Plaintiffs had provided adequate allegations as to fraudulent concealment, any tolling based on fraudulent concealment would have ceased when Plaintiffs were put on inquiry notice of their claims. *See Richey*, 667 F. Supp. at 756. Consistent with the discussion of the discovery rule outlined above and the Court's analysis of the statute of limitations issues in *Jones*, *Pelican*, and *Skinner*, Plaintiffs were on inquiry notice of their claims when they were diagnosed with and treated for their PJIs, in August 2009 (Minor and Taplin), January 2011 (Paine), and September 2016 (Arnold) at the latest. Because Plaintiffs were on inquiry notice as of the onset of their infections, the fraudulent concealment doctrine cannot save their claims.

Further, even were the statute of limitations tolled, any tolling would end when the Bair Hugger MDL was formed on December 11, 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger have been readily available in the public domain, ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. (*See generally*, Transfer Order, MDL ECF 1.) *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent

concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL").

Here, Arnold underwent her index surgery on August 15, 2016, and was treated for infection on September 7, 2016—approximately nine months after the formation of the MDL—meaning that any reasonably diligent efforts to investigate a potential claim would have led her to discover the Bair Hugger litigation. Thus, for this additional reason, and even if Plaintiffs had adequately pled fraudulent concealment tolling (which they did not), Arnold's claims would not be saved by the doctrine.

**Chart Summarizing Relevant Details of Plaintiffs' Cases**

| Plaintiff(s) | Minor | Paine | Taplin | Arnold |
|---|---|---|---|---|
| **Case Number** | 17-cv-2033 | 18-cv-0069 | 17-cv-2848 | 24-cv-2280 |
| **Plaintiff's Home State** | Oklahoma | Oklahoma | Oklahoma | Oklahoma |
| **Designated Jurisdiction** | N.D. OK | N.D. OK | W.D. OK | N.D. OK |
| **Location of Index Surgery** | Owasso, OK | Owasso, OK | Oklahoma City, OK | Bartlesville, Oklahoma |
| **Date of Index Surgery** | August 3, 2009 | December 13, 2010 | August 3, 2009 | August 15, 2016 |
| **Latest Possible Date of Injury** | August 14, 2009 | January 4, 2011 | August 21, 2009 | September 7, 2016 |
| **Filing Date** | June 14, 2017 | January 9, 2018 | July 13, 2017 | June 14, 2024 |
| **Time Between Surgery and Filing** | 7 years, 10 months, 11 days | 7 years, 27 days | 7 years, 11 months, 10 days | 7 years, 9 months, 30 days |
| **Time Between Injury and Filing** | 7 years, 10 months | 7 years, 5 days | 7 years, 10 months, 23 days | 7 years, 9 months, 7 days |

On the facts as pleaded, the claims of Plaintiffs Minor, Paine, Taplin, and Arnold are all time-barred as a matter of law and should be dismissed.

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are time-barred as a matter of Oklahoma law and should be dismissed with prejudice.

Respectfully submitted,

Date: October 31, 2025

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***