**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Carosone*, 17-cv-2921<br>*Panipinto*, 23-cv-2415<br>*Passante*, 23-cv-2432 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M") move for judgment on the pleadings in three cases for failure to state claim upon which relief can be granted. The claims brought in these cases are time-barred under the applicable New York statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations

grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the MDL of meritless cases by identifying and dismissing claims that are time-barred on their face.

Second, Plaintiffs' claims are barred by the applicable New York statutes of limitation. Under New York law, the statute of limitations begins to run on the date a plaintiff sustains an injury. *E.g.*, *Baker v. Stryker*, 770 F. App'x. 12, 14 (2d Cir. 2019). Where the date of injury is alleged in the Complaint and the expiration of the limitations period is patent, the Court should take steps under Rule 12(c) to dismiss untimely claims. Taking these steps now, on a sampling of New York cases, would be an important first step in culling the inflated inventory of existing cases, and it would enable the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions

in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

## BACKGROUND

On or about December 7, 2004, Plaintiff Patrick Carosone ("Carosone"), a resident and citizen of New York, underwent a surgery in New York, during which a Bair Hugger patient warming system ("Bair Hugger system") was used. (Ex. B, Carosone Compl. ¶¶ 2, 7.) Carosone subsequently developed a periprosthetic joint infection ("PJI"), which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Carosone alleges that he underwent treatment, including IV antibiotics, explant, and revision

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and no Plaintiff has previously argued that such motion practice would be barred by PTO 22's motion deadline.

procedures between June 2007 and December 2007. (*Id.* ¶ 9.) On July 14, 2017, over ten years after he was first treated for an infection, Carosone commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally*, Ex. B, Carosone Compl.) In the Complaint, Carosone designated the Northern District of New York as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about October 5, 2009, Plaintiff John Passante ("Passante"), a resident and citizen of New York, underwent a surgery in New York, during which a Bair Hugger system was used. (Ex. C, Passante Compl. ¶¶ 2, 7.) Passante subsequently developed a PJI, which he attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Passante alleges that between October 29, 2009, and July 16, 2013, he underwent multiple procedures, including an amputation below the knee. (*Id.* ¶ 9.) On August 10, 2023, nearly fourteen years after he was first treated for an infection, Passante commenced this action against 3M by direct filing his Complaint in this MDL. (*See generally*, Ex. C, Passante Compl.) In the Complaint, Passante designated the Northern District of New York as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

On or about April 28, 2016, Kimberly Panipinto ("Panipinto"), a resident and citizen of New York, underwent a surgery in New York, during which a Bair Hugger system was used. (Ex. D, Panipinto Compl. ¶¶ 2, 7.) Panipinto subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* ¶¶ 8-9.) As a result of the infection, Panipinto alleges that she underwent multiple additional procedures, including irrigation and debridement, on or about May 15, 2016. (*Id.* ¶ 9.) On August 9, 2023, nearly seven years after she was treated for an infection, Panipinto commenced this action against 3M by direct filing her Complaint in this MDL. (*See generally*, Ex. D, Panipinto Compl.) In the Complaint, Panipinto designated the Western District of New York as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order." (*Id.* ¶ 5.)

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Under this standard, the Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule

12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred under Alabama law); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. New York Statutes of Limitations Apply to This Case.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were direct-filed in the MDL, and have identified the Northern and Western Districts of New York as their respective appropriate venues. (*See* Ex. B, Carosone Compl. ¶ 5; Ex. C, Passante Compl.

¶ 5; Ex. D, Panipinto Compl. ¶ 5.) As federal district courts sitting in diversity, the Northern and Western Districts of New York would apply New York choice-of-law rules to issues of state law. *See, e.g.*, *Connaughton v. Nat'l R.R. Passenger Corp.*, 809 F. Supp. 1, 2 (E.D.N.Y. 1992) ("The Court must look to the choice of law rules of its forum state in diversity actions.") (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

New York choice-of-law rules require that the court apply New York statutes of limitations. *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998) ("Where jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations."). Because the ordinary choice-of-law analysis applies only to substantive issues, and statutes of limitation are considered "procedural" under New York law, the New York courts apply the New York statute of limitation without conducting a full choice of law analysis. *See Citibank, N.A. v. Friedman*, 747 F. Supp. 3d 427, 434 (E.D.N.Y. 2024) (citing *Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010)). Accordingly, New York statutes of limitation apply here. *See, e.g.*, *Howard Univ. v. Borders*, 588 F. Supp. 3d 457, 469 (S.D.N.Y. 2022) ("Traditional choice of law analysis [does] not apply to determine the applicable statute of

limitations because the issue is procedural.") (alteration original) (quoting *Abbott Laboratories v. Feinberg*, 477 F. Supp. 3d 57, 61 (S.D.N.Y. 2020)).[2]

## II. Plaintiffs' Strict Liability, Negligence, Negligent Misrepresentation, Fraudulent Misrepresentation, and Unjust Enrichment Claims are Subject to a Three-Year Statute of Limitations.

In New York, the statute of limitations for "an action to recover damages for a personal injury" is three years. N.Y. C.P.L.R. § 214(5) (McKinney). Strict liability and negligence claims are subject to this limitations period. *E.g.*, *Baker v. Stryker Corp.*, 770 F. App'x 12, 14 (2d Cir. 2019) (citing cases).

In addition, negligent misrepresentation and fraudulent misrepresentation claims are subject to this statute of limitations where the

[2] New York substantive law also applies to these cases. As to substantive issues, "[i]n tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (internal quotation and footnote omitted). Because Plaintiffs are citizens of New York, their surgeries occurred in New York, and they resided there when their alleged injuries developed, New York has the most significant interest in this case. *See, e.g.*, *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 337 (2d Cir. 2005) (observing that New York's choice of law analysis is "intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation"); *Deluca v. Portland Orthopaedics Ltd.*, 2017 U.S. Dist. LEXIS 198962, at *8 (E.D.N.Y. Dec. 2, 2017). To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the New York statute of limitations would still apply because New York substantive law applies. *See* Minn. Stat. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

lawsuit is based on personal injuries caused by a defective product and the misrepresentation allegations are merely incidental to that injury. *See Levin v. Johnson & Johnson*, No. CV 16-6631 (JS)(AYS), 2019 WL 6392503, at *5 (E.D.N.Y. June 17, 2019) ("Plaintiff's negligent misrepresentation claim stems from his products liability claim and is merely incidental to the negligence claims. Therefore, the three-year statute of limitations period applies to all three claims."), *report and recommendation adopted as modified*, No. 16-CV-6631(JS)(AYS), 2019 WL 3980876 (E.D.N.Y. Aug. 23, 2019); *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 397 (E.D.N.Y. 2018) (fraud-based claims "based on the same alleged failures to warn about the dangers of the [product] or to create less dangerous products" were subject to three-year statute of limitations); *Prohaska v. Sofamor*, S.N.C., 138 F. Supp. 2d 422, 434 (W.D.N.Y. 2001) (applying personal injury statute of limitations to fraudulent misrepresentation claim where plaintiff "alleges personal injury arising from implantation of [a medical] device" and the "fraudulent misrepresentation claim is incidental to her personal injury claim"; *Colon v. Banco Popular N. Am.*, 59 A.D.3d 300, 300–01 (N.Y. App. Div. 2009) (negligent misrepresentation claim in personal injury action subject to three-year statute of limitations); *New York Seven-Up Bottling Co. v. Dow Chem. Co.*, 96 A.D.2d 1051, 1052–53 (N.Y. App. Div. 1983) (where fraud-based claims "are only incidental to

plaintiff's cause of action sounding in products liability," the product liability statute of limitations applies to all claims), *aff'd*, 462 N.E.2d 150 (N.Y. 1984).

Similarly, unjust enrichment claims are subject to a three-year statute of limitations where the claims either: (1) are based on facts that also support personal injury causes of action subject to the three-year statute of limitations; or (2) seek monetary relief. *See City of Almaty v. Sater*, 503 F. Supp. 3d 51, 64-66 (S.D.N.Y. 2020) (a three-year statute of limitations should apply whenever a plaintiff seeks monetary relief or the claim "rests on facts that also support another claim" governed by a three-year statute of limitations); *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) ("Under New York law, the statute of limitations applicable to an unjust enrichment claim depends on the nature of the substantive remedy plaintiff seeks. The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages.") (internal citation omitted); *Spirt v. Spirt*, 83 Misc. 3d 1210(A), 211 N.Y.S.3d 910 (N.Y. Sup. Ct. 2024) ("[W]hen a cause of action for unjust enrichment is based upon the same facts as, and pleaded in the alternative to, another cause of action, the unjust-enrichment claim is subject to the same statute of limitations as the cause of action to which it is the alternative. Thus, for example, a claim for unjust enrichment stemming from allegedly tortious conduct is subject to CPLR 214's three-year limitations period for tort claims.").

Accordingly, Plaintiffs' claims for strict liability, negligence, negligent misrepresentation, fraudulent misrepresentation, and unjust enrichment are all subject to a three-year statute of limitations.

## III. New York's Statute of Limitations Runs from the Onset of Plaintiffs' Infections.

Under New York law, the statute of limitations in personal injury product liability cases "runs from the date of the *injury resulting from the malfunction*." *Baker v. Stryker*, 770 F. App'x. 12, 14 (2d Cir. 2019) (quoting *Martin v. Edwards Lab'ys*, 457 N.E.2d 1150, 1154 (N.Y. 1983)) (emphasis in original); *see also Perciballi v. Ethicon, Inc.*, 2021 WL 810339, at *4 (E.D.N.Y. March 3, 2021) (explaining that the "[limitations] period begins to run 'when the product first injured the plaintiff[,]'. . . 'even if the plaintiff is unaware that he or she has a cause of action' at the time of injury." (citations omitted)). New York's discovery rule applies to "discovery of the physical condition and not . . . the more complex concept of discovery of both the condition and the nonorganic etiology of that condition." *Haynes v. Williams*, 162 A.D.3d 1377, 1378 (N.Y. App. Div. 2018) (quoting *Matter of N.Y. Cnty. DES Litig.*, 678 N.E.2d 474, 478 (N.Y. 1997)). Once the injury occurs, "[t]he injury puts the putative plaintiff on inquiry notice, and therefore, charges him or her with responsibility for investigating, within the limitations period, all potential claims and all potential defendants." *Perciballi*, 2021 WL 810339 at *4 (citation omitted).

Consistent with this principle, this Court has already determined in other similar cases that a plaintiff is on inquiry notice of a potential claim against 3M upon diagnosis of an infection. *See Skinner v. 3M*, No. 17-2149, ECF 98 at 6-7 (Sept. 12, 2025) ("At any time after [Skinner] was diagnosed with a periprosthetic joint infection in March 2012, he could have requested and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries. The limitation period did not await review of his medical records in June 2016 to start running. His action, filed in June 2017, is untimely."); *Jones v. 3M*, No. 23-1425, ECF 103 at 8 (Sept. 12, 2025) (dismissing claims as untimely and observing: "Jones could have requested and reviewed his medical records at any time after he was diagnosed with a periprosthetic joint infection.") (internal citation omitted); *Pelican v. 3M*, No. 23-1818, ECF 136 at 7-8 (Sept. 12, 2025) (similar). Notably, New York's discovery rule is even easier to satisfy than the one applied by the Court in *Jones* and *Pelican*, requiring only that a plaintiff discover their injury, rather than any connection between that injury and a potential defendant. *Compare Perciballi*, 2021 WL 810339 at *4, *with Bruno v. Biomet, Inc.*, 74 F.4th 620, 623 (5th Cir. 2023) (under Louisiana law, "when a plaintiff acts reasonably to discover the cause of a problem, the prescriptive period does not begin to run

until he has a reasonable basis to pursue a claim against a specific defendant") (cleaned up).

Here, although "the three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms," *Baker*, 770 F. App'x at 14 (internal quotations and citation omitted), the Complaints provide information only about when Plaintiffs were treated for their PJIs. Nevertheless, Plaintiffs' causes of action must have accrued, at the latest, on the dates of treatment provided. Even using these later accrual dates, Plaintiffs' claims are all untimely.

Carosone received treatment for his PJI between June 2007 and December 2007. (Ex. B, Carosone Compl. ¶ 9.) He did not file his lawsuit until July 14, 2017, well over three years after the date of injury. Similarly, Passante was treated for his PJI beginning on October 29, 2009, but did not file until August 10, 2023. (Ex. C, Passante Compl. ¶ 9.) Finally, Panipinto underwent a procedure to treat her PJI on May 15, 2016, but did not file until August 9, 2023. (Ex. D, Panipinto Compl. ¶ 9.) Because all Plaintiffs filed their lawsuits more than three years after their injuries manifested, their claims are time-barred.

## IV. Plaintiffs' Consumer Protection Claims are Barred by a Separate Three-Year Statute of Limitations.

The statute of limitations for consumer protection claims under N.Y. Gen. Bus. Law §§ 349 and 350 is three years. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007) (citing N.Y. C.P.L.R. § 214(5)). A cause of action under these sections accrues, and the statute of limitations begins to run, "upon injury by the deceptive act or practice, *i.e.*, 'when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.'" *Id.* (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. 2001)). "Accrual is not dependent upon any later date when discovery of the alleged deceptive practice is said to occur." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (citing cases). It does not matter when a plaintiff discovered "either an injury or its specific cause," because the claim accrues "when [a p]laintiff first suffered injury." *Id.*; *see also Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (consumer protection "claims accrue when a plaintiff is injured by the actions alleged to have violated the Statute").

Plaintiffs allege that they were injured by 3M's purported violations of the consumer protection statutes to the extent they purchased and used the Bair Hugger system and "incurred related medical costs and injuries from

using the device." (Master Long Form Compl. ¶¶ 156-57.) Accordingly, Plaintiffs were allegedly injured by acts violating the consumer protection statutes when they were diagnosed with and treated for their PJIs. Following the same analysis outlined above, Plaintiffs' claims were filed more than three years after they were treated for their PJIs, and therefore their consumer protection claims are untimely.[3]

## V. Plaintiffs' Breach of Warranty Claims are Barred by the Applicable Four-Year Statute of Limitations.

The statute of limitations for breach of express and implied warranty is four years. *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001) (citing N.Y. U.C.C. Law § 2-725 (McKinney)). The cause of

[3] Plaintiffs also assert claims under the Minnesota Prevention of Consumer Fraud Act, Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, and Minnesota False Advertising Act (collectively, "Minnesota Consumer Protection Statutes"). The Minnesota claims fail as a matter of law because Plaintiffs were not injured in Minnesota. There is a "general presumption" under Minnesota law that "Minnesota statutes do not apply extraterritorially," and that presumption cannot be overcome unless the Minnesota Legislature "explicitly state[s] that it intends for a law to have extraterritorial effect." *Hull v. ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 691 (D. Minn. 2021). There is no such explicit statement in the Minnesota Consumer Protection Statutes. Accordingly, courts have not applied these statutes extraterritorially to plaintiffs who reside and were injured outside of Minnesota. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (determining there is no legal support for applying Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), *aff'd*, 9 F.4th 981 (8th Cir. 2021).

action accrues, and the statute of limitations begins to run, when tender of delivery is made "regardless of the aggrieved party's lack of knowledge of the breach." *Id.* (quoting N.Y. U.C.C. Law § 2-725 (McKinney)). Put differently, the discovery rule does not apply to breach of warranty claims.

Here, because "a cause of action against a manufacturer or distributor accrues on the date the party charged tenders delivery of the product, not on the date that some third party sells it to plaintiff," *Heller v. U.S. Suzuki Motor Corp.*, 477 N.E.2d 434, 436 (N.Y. 1985), Plaintiffs' breach of warranty claims accrued on dates *prior to* their surgeries. Nevertheless, even using their surgery dates as the dates of accrual, Plaintiffs' warranty claims are untimely.

Carosone's surgery took place on December 7, 2004, and he filed his lawsuit on July 14, 2017. (Ex. B, Carosone Compl. ¶ 7.) Passante underwent surgery on October 5, 2009, and filed his lawsuit on August 10, 2023. (Ex. C, Passante Compl. ¶ 7.) Panipinto underwent surgery on April 28, 2016, and filed her Complaint on August 9, 2023. (Ex. D, Panipinto Compl. ¶ 7.) Because more than four years elapsed between each Plaintiff's surgery and the filing of their Complaint, their breach of warranty claims are all barred.

## VI. Plaintiffs' Allegations of Fraudulent Concealment Do Not Save Their Untimely Claims.

Under New York law, where a plaintiff alleges that a defendant fraudulently concealed a case of action, the equitable estoppel doctrine may

apply to toll the statute of limitations. *See, e.g.*, *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002). Specifically, the doctrine of equitable estoppel estops a defendant from invoking a statute of limitations defense where the defendant "has taken 'affirmative steps to prevent a plaintiff from bringing a claim' within the limitations period." *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022). To properly plead tolling based on fraudulent concealment in federal court, a plaintiff must plead the circumstances of fraudulent concealment with particularity. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *Id.* at 880; *see also id.* at 881 ("By failing to allege when and how he discovered [defendant's] alleged fraud, [plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.").

Substantively, a plaintiff must plead three essential elements to establish equitable estoppel: (1) that the defendant "wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct"; (2) reasonable reliance by the plaintiff on defendant's wrongful acts; and (3) the plaintiff's "due diligence in bringing a claim when the conduct relied upon as the basis for equitable

estoppel ceases to be operational." *Roeder*, 523 F. Supp. 3d at 616-17 (internal quotations and citations omitted).

With respect to wrongful conduct by the defendant, the plaintiff must allege conduct directed at the plaintiff specifically. "[M]isrepresentations made to the community at large" are "insufficient to make out a claim for equitable estoppel," and instead "equitable estoppel is only appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff" in particular. *Roeder*, 523 F. Supp. 3d at 619 (citing *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 445 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014)). In addition, the alleged fraudulent concealment must be separate from and subsequent to the tortious conduct underlying the plaintiff's substantive claims that were allegedly concealed. *Plain v. Vassar Bros. Hosp.*, 115 A.D.3d 922, 923 (N.Y. App. Div. 2014) ("Where the alleged concealment consists of nothing but defendants' failure to disclose the wrongs they had committed, the defendants are not estopped from pleading a statute of limitations defense. A plaintiff must allege a later fraudulent misrepresentation made for the purpose of concealing the former tort." (cleaned up)); *Zumpano v. Quinn*, 849 N.E.2d 926, 929-30 (N.Y. 2006) (it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit";

equitable estoppel was not established where "Plaintiffs do not allege any specific misrepresentation to them by defendants" or any "separate and subsequent acts of wrongdoing beyond" the conduct underlying the substantive claims alleged); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 265–66 (S.D.N.Y. 2006) (citing cases demonstrating that equitable estoppel "does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying cause of action"; plaintiff must demonstrate some conduct, after the initial wrongdoing, induced the plaintiff to delay in commencing their action).

Finally, as to the essential element of due diligence, the equitable estoppel doctrine "requires a party to pass with reasonable diligence through the period it seeks to have tolled." *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 293 (N.D.N.Y. 2012) (internal quotations and citation omitted). That means a plaintiff is required to act with reasonable diligence at all times and that tolling ceases when "the fraud or concealment is, or should have been, discovered by a reasonable person in the situation." *Id.* (internal quotation and citation omitted). Plaintiff must also show that the action was brought within a reasonable time after the facts giving rise to equitable estoppel "ceased to be operational." *Id.*

Equitable estoppel is an "extraordinary remedy" that "should be invoked sparingly and only under exceptional circumstances." *Twersky*, 993 F. Supp.

2d at 442 (internal quotations and citations omitted). Plaintiff have failed to demonstrate that this remedy should be applied to their cases for multiple independent reasons.

First, Plaintiffs do not even attempt to plead the required elements of equitable estoppel based on fraudulent concealment. Although they each checked "fraudulent concealment" as a theory of liability in their respective Complaints, they do not allege any facts demonstrating that 3M made specific representations to Plaintiffs directly, that Plaintiffs specifically relied on any such representations and were wrongly induced to refrain from timely filing their actions, or that the exercised due diligence in filing once they learned of the alleged fraud. *See Roeder*, 523 F. Supp. 3d at 616-17. Nor do Plaintiffs allege when or how they discovered any alleged fraud. *See Summerhill*, 637 F.3d at 880. These allegations are also not contained in the Master Long Form Complaint. (*See* Master Long Form Complaint, MDL ECF 97.) The Master Long Form Complaint does contain some allegations concerning representations or omissions made by 3M to "the community at large" relating to the safety of the Bair Hugger. (*See, e.g.*, Master Long Form Complaint, MDL ECF 97 ¶ 52 ("Defendants have continued to market the Bair Hugger to consumers and healthcare providers and to misrepresent the safety of the device in their advertisements, statements to healthcare providers, and submissions to the FDA."); ¶¶ 56-59 (listing representations allegedly made on

3M's website and in marketing and advertising materials); ¶ 66 ("Through misrepresentations to the public, the medical community, and the FDA, Defendants actively concealed the fact that the Bair Hugger increases the risk of infection in all types of surgeries, especially orthopedic implant surgeries."). But these allegations are insufficient as a matter of law to invoke the equitable estoppel doctrine because: (1) they were made to the public at large, not to any particular Plaintiff; and (2) these are the same allegations underlying Plaintiffs' substantive claims, including their causes of action for negligence, strict liability failure-to-warn, breach of warranty, and violations of consumer protection statutes. *See Roeder*, 523 F. Supp. 3d at 619; *Twersky*, 993 F. Supp. 2d at 445; *Plain*, 115 A.D.3d at 923; *Zumpano*, 849 N.E.2d at 929-30; *Abercrombie*, 438 F. Supp. 2d at 265–66.

Second, Plaintiffs have not pled and cannot demonstrate reasonable diligence. This Court has already determined that a reasonably diligent Bair Hugger Plaintiff could investigate and discover their claims at the time they are diagnosed with a PJI. *See Skinner*, No. 17-2149, ECF 98 at 6-7; *Jones*, No. 23-1425, ECF 103 at 8; *Pelican*, No. 23-1818, ECF 136 at 7-8. Plaintiffs make no specific allegations demonstrating that they were diligent, that a reasonable person under the circumstances would not have discovered their claims, or that their actions were brought within a reasonable time after the alleged concealment ended. *See City of Syracuse*, 900 F. Supp. 2d at 293. Absent such

specific allegations, Plaintiffs have not alleged the "essential element" of diligence required to invoke equitable estoppel based on fraudulent concealment. *See Roeder*, 523 F. Supp. 3d at 616-17.

Third, even were the statute of limitations tolled, any tolling would end when the Bair Hugger MDL was formed on December 11, 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger have been readily available in the public domain, ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. (*See generally*, Transfer Order, MDL ECF 1.) *See*, *e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL"), *appeal filed*, No. 25-1258 (1st. Cir. Mar. 26, 2025).

Here, Panipinto was treated for her PJI on May 15, 2016, approximately five months after the Bair Hugger MDL was formed. Any reasonably diligent efforts to investigate the cause of her infection following her treatment would have led her to discover the Bair Hugger litigation. As a result, Panipinto cannot take advantage of the equitable estoppel based on fraudulent concealment, and her lawsuit filed on August 9, 2023, nearly seven years after she was treated for an infection, is untimely.

For Passante, even though he received treatment for his PJI before formation of the MDL (in October 2009), even if he had adequately pled fraudulent concealment, any resulting tolling would have ceased when the MDL was formed on December 11, 2015. His lawsuit filed on August 10, 2023, is untimely because it was filed more than three years later.

Carasone's lawsuit, although filed less than three years after the formation of the Bair Hugger MDL, is also untimely based on the date of his injury, and he failed to plead the essential elements of fraudulent concealment.

For these reasons, equitable estoppel does not apply, and Plaintiffs' allegations of fraudulent concealment do not save their untimely claims.

**Chart Summarizing the Relevant Details of Plaintiffs' Cases**

| **Plaintiff** | **Carosone** | **Passante** | **Panipinto** |
|---|---|---|---|
| **Case Number** | 17-cv-2921 | 23-cv-2432 | 23-cv-2415 |
| **Plaintiff's Home State** | New York | New York | New York |
| **Designated Jurisdiction** | N.D. New York | N.D. New York | W.D. New York |
| **Location of Index Surgery** | Bronx, New York | Rhinebeck, New York | Rochester, New York |
| **Date of Index Surgery** | December 7, 2004 | October 5, 2009 | April 28, 2016 |
| **Date of Injury** | June 30, 2007[4] | October 29, 2009 | May 27, 2016 |
| **Filing Date** | July 14, 2017 | August 10, 2023 | August 9, 2023 |
| **Time Between Surgery and Filing Date** | 12 years, 7 months, 8 days | 13 years, 10 months, 6 days | 7 years, 3 months, 13 days |

[4] Because Carosone alleges that he was injured beginning in June 2007, the last day of that month is used.

| | | | |
|---|---|---|---|
| **Time Between Injury and Filing Date** | 10 years, 15 days | 13 years, 9 months, 13 days | 7 years, 2 months, 14 days |

On the facts as pleaded, the claims of Plaintiffs Carosone, Passante, and Panipinto are time-barred as a matter of law and should be dismissed.

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are all untimely as a matter of law and should be dismissed with prejudice.

Respectfully submitted,

Date: October 31, 2025

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***