UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | **No. 15-md-2666-JNE-DTS** |
| This Document Relates to the Following Case: | **District Judge Joan N. Ericksen** |
| *Sharon Paine, 18-cv-00069* | **Magistrate Judge David T. Schultz** |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Sharon Paine, by and through her undersigned counsel, hereby files this Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings ("Memorandum in Opposition"), and in support states as follows:

## INTRODUCTION

Defendants have filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (the "Rule 12(c) Motion") seeking dismissal of all Plaintiff's causes of action on the grounds they are time barred under Oklahoma law. Memorandum in Support of Defendants' Motion for Judgment on the Pleadings Motion ("Def. Brief"), ECF No. 3180 at 2. As detailed herein, there are numerous reasons why the Rule 12(c) Motion should be denied. First, in the event the Court wishes to address the merits of the Rule 12(c) Motion which there are compelling reasons to not do so, Defendants' analysis of the applicable statute of limitations including when a product liability action accrues under Oklahoma's "discovery rule" is mistaken. Under Oklahoma law, a discovery rule applies in product

liability actions where the causal connection between the product and the plaintiff's injuries is not "initially known" or "common knowledge" and where Plaintiff does not negligently refrain from prosecuting an investigation of her claim. *Miller v. Glaxosmithkline*, No. 03-CV-393-K, 2005 WL 8174802, at *2 (N.D. Okla. Jan. 26, 2005); *Daugherty v. Farmers Co-op. Ass'n*, 689 P.2d 947, 950 (Okla. 1984). As discussed herein, Plaintiff initiated an investigation of her case and filed her complaint within two years of first learning that she was exposed to the Bair Hugger Forced Air Warming System's (the "Bair Hugger") and that the device could potentially be causally connected to her injuries. Accordingly, her claims were filed within Oklahoma's statute of limitations.

Second, the Rule 12(c) Motion is premature. As support for dismissal here, Defendants repeatedly cite three MDL Bair Hugger cases that were recently dismissed due to expiration of the statute of limitations. The dismissed cases underwent extensive fact and expert discovery, and the Court's rulings were based on developed factual records following the close of discovery as well as the substantive law of other states which differ from the applicable law here. In contrast, Plaintiff's case has not undergone any discovery beyond production of a Plaintiff Fact Sheet ("PFS") and supporting medical records. No depositions of Plaintiff, Plaintiff's healthcare providers who selected the Bair Hugger for use during her surgeries, Plaintiff's healthcare providers or hospital staff who purchased the Bair Hugger for use at the medical facility where Plaintiff's surgeries took place, 3M sales representatives, or other fact witnesses have occurred. Material issues of fact that are relevant to a ruling on the statute of limitations either must be accepted in Plaintiff's favor at this stage precluding dismissal or discovery should be permitted before the Court rules

on the Rule 12(c) Motion.

Third, the Rule 12(c) Motion is procedurally improper and in direct violation of the Court's orders which establish the process and timing for filing motions in individual cases. Defendants' arguments are based on allegations contained in the Master Long Form Complaint filed in 2016 and the Short Form Complaint filed in 2018. Both filings are administrative devices suitable as intentionally limited pleadings for a multidistrict litigation containing thousands of individual cases. Additionally, the Court recently established a process where selected remand cases are permitted to amend their complaints *without Defendants' consent or leave of Court*. Here, Defendants look to circumvent the procedure established by the Court and pursue dismissal even though Plaintiff has not been selected as a remand case nor had the opportunity to amend her complaint pursuant to Pre-Trial Order No. 8 or the remand process. If Defendants' approach is permitted, the Court will be forced into the difficult position of providing some plaintiffs with the opportunity to amend and conduct discovery prior to defending motions to dismiss on statute of limitations grounds while denying these rights to other plaintiffs. This result would be unjust and should be avoided. Allowing amendment of the complaint is also necessary to allege additional facts discovered since the filing of the Master Long Form Complaint nearly ten years ago, particularly related to Plaintiff's claim of fraudulent concealment.[1] For the reasons set forth herein, the Court should deny the Rule 12(c) Motion.

---

[1] Plaintiff filed a Motion for Leave to Amend Complaint on November 21, 2025. *See Paine v. 3M Company, et al.*, 18-cv-00069, Dkt. 10.

**BACKGROUND**

Sharon Paine, an Oklahoma resident, underwent a right total hip replacement on December 13, 2010, in Owasso, Oklahoma. (Exh. 1, Short Form Complaint at ¶ 6). Prior to surgery, Ms. Paine's surgeon advised her that she was at risk of infection given her body habitus and her previous history of deep infection of her lumbar spine hardware. Sharon Paine Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 34 ("Proposed Amended Complaint"). During the hip replacement surgery, a Bair Hugger was used. (Exh. 1, at ¶ 6). Due to the use of the Bair Hugger, Ms. Paine developed a periprosthetic joint infection ("PJI"). *Id*. at ¶ 7. As a result of the PJI, Ms. Paine required four additional surgeries including a right hip revision surgery with placement of an antibiotic spacer on January 4, 2011; a resection arthroplasty of the right hip with removal of the antibiotic spacer on January 25, 2011; a conversion total hip arthroplasty on August 16, 2012; and an irrigation and debridement of the right hip on November 27, 2012. *Id*. at ¶ 8. Plaintiff has not required additional surgical treatment for her injuries since 2012. *Id*.

In February 2016, Ms. Paine saw content on television indicating that patients developing deep joint infection after hip or knee replacement surgery may have a potential product liability case. Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 52. Ms. Paine promptly retained counsel to assist with an investigation of her potential claims. *Id*. In approximately January 2017, Ms. Paine first learned that she was exposed to the Bair Hugger during her right hip replacement surgery. *Id*. at ¶ 54. On January 9, 2018, Sharon Paine direct filed her Short Form Complaint in MDL No. 2666. (Exh. 1, at 1).

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is evaluated under the same standards as a motion under Fed. R. Civ. P. 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). The Court must accept all factual allegations by the non-moving party as true and draw all reasonable inferences in the non-moving party's favor. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004) (citing *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). Dismissal of a case under Fed. R. Civ. P. 12(c) is appropriate only when "no material issue of fact remains" and Defendants are "entitled to judgment as a matter of law." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Moreover, the dismissal of cases on statute of limitations grounds is disfavored at the pleadings stage because they "almost always depend on contested factual issues." *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1157 (10th Cir. 2023); *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

## ARGUMENT

### I. Oklahoma Recognizes a Discovery Rule in Product Liability Actions That Applies to Plaintiff's Claims.

As set forth herein, there are compelling reasons why the Court should not address the merits of Defendants' Rule 12(c) Motion at this stage. However, if the Court is inclined to do so, the record demonstrates that Plaintiff's claims were filed within Oklahoma's discovery rule applicable in product liability actions and the motion should be denied.

Under Oklahoma law[2], actions for personal injuries must be brought within two years of accrual of the cause of action. Okla. Stat. Ann. tit. 12, § 95(A)(3). This two-year statute of limitations applies to negligence, products liability, and fraud claims. *Mallow v. Ethicon, Inc.*, 2022 WL 844196, at *3 (W.D. Okla. Mar. 21, 2022); *AMC West Housing LP v. NIBCO, Inc*., 2019 WL 4491331, at *4 (W.D. Okla. Sept. 18, 2019) ("The statute of limitations to be applied to Plaintiff's negligence claim is two years."); *Fuchs v. Fleetwood Homes of Tx.,*149 P.3d 1099, 1101 (Okla. Ct. Civ. App. 2006) (noting that the statute of limitations on a products liability claim is two years); *McKamie v. Patterson Dental Supply, Inc*., 2013 WL 6388565, at *3 (W.D. Okla. Dec. 6, 2013) ("Fraud claims, however, are subject to a two-year statute of limitations in Oklahoma, which begins to run after the discovery of the fraud.").

Although injury claims generally accrue at the time of injury, Oklahoma courts "apply the discovery rule in products liability actions **where the causal connection between the product and the plaintiff's injuries is not initially known**." *Miller,* 2005 WL 8174802, at *5 (emphasis added). Similarly, Oklahoma courts apply the discovery rule in product liability cases where the potential causal connection between a particular injury and a product is not "common knowledge." *Daugherty*, 689 P.2d at 950. In both instances, the discovery rule tolls the running of the statute of limitations until a plaintiff acquires "sufficient information which, if pursued, would lead to the true condition of things."

---

[2] At all times relevant, Plaintiff was a resident of Oklahoma, was exposed to the Bair Hugger in Oklahoma, and underwent all relevant surgeries and follow up treatment in Oklahoma. Plaintiff does not dispute that Oklahoma law applies in her case.

*Miller,* 2005 WL 8174802, at *2; *Daugherty*, 689 P.2d at *950-951* (quoting *Young v. International Paper Co*., 155 So. 231 (1934)). Whether an action is barred by the statute of limitations is a question of fact to be determined by considering the evidence in each case. *F.D.I.C. v. Grant*, 8 F. Supp. 2d 1275, 1290 (N.D. Okla. 1998).

In Oklahoma, courts have also held that "[s]tatutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts." *See Daugherty*, 689 P.2d at 951. In negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk. *See Brewer v. Murray*, 292 P.3d 41, 46 (Okla Civ. App. 2012) (quoting William L. Prosser, Law of Torts, 324-27 (4th ed. 1971)). What is reasonable conduct under the circumstances is almost always a question of fact for the jury. *Enid Transfer & Storage Co. v. Mollenhauer,* 251 P.2d 1068, 1071 (Okla. 1953). Therefore, for the discovery rule to apply in a products liability case in Oklahoma, a plaintiff must show 1) that she did not initially know of the alleged causal connection between her injury and the product or that the causal connection was not common knowledge, and 2) that she was not negligent in failing to investigate the possible link sooner. *Miller*, 2005 WL 8174802, at *2. The *Miller* and *Daugherty* cases are instructive regarding when Oklahoma courts apply the discovery rule in product liability actions and are discussed further below.

In *Miller*, the Plaintiff attempted suicide on March 27, 1998, after taking the medication Paxil for approximately three weeks. *Miller*, 2005 WL 8174802, at *1. Plaintiff survived but sustained significant injuries which her insurance company refused to pay arguing they were self-inflicted. *Id*. Plaintiff sued the insurance company to obtain

coverage but was ultimately unsuccessful. *Id*. To refute that her injuries were self-inflicted, Plaintiff's counsel investigated potential reasons why she may have become suicidal but was unsuccessful in finding a cause. *Id*. In June 2001, Plaintiff's counsel informed Plaintiff that a jury in another state had found that Paxil caused some individuals to become suicidal. *Id*. Two years from the date of learning this information, Plaintiff filed suit against GlaxoSmithKline and moved for summary judgment that the suit was time-barred. *Id*. Plaintiff argued that her claim accrued on June 6, 2001, when she discovered the connection between Paxil and suicidality while Glaxosmithkline argued that her claim accrued on March 27, 1998, when the Plaintiff was injured. *Id*.

In granting summary judgment to Plaintiff, the *Miller* court found that "Oklahoma courts apply the discovery rule in products liability actions where the causal connection between the product and the plaintiff's injuries is not initially known." *Id*. at *2. In such instances, "the statute of limitations starts running when the plaintiff acquires sufficient information which, if pursued, would lead to the true condition of things." *Id*. (quoting *Daugherty,* 689 P.2d at 950). The Court reached this conclusion because "plaintiffs may know of their illness or injury, but lack sufficient information about the relationship between their exposure to a product and the consequent injury to maintain their cause of action." *Id*. Glaxosmithkline asserted that the discovery rule was inapplicable because Plaintiff's injuries were "immediately apparent" and the discovery rule should only apply when the injury is "latent or concealed." *Id*. In finding these arguments "untenable", the Court held that "[c]ausation is an essential, often decisive element of any products liability claim, and a plaintiff cannot sustain a cause of action until she has sufficient information

to be put on notice that the defendant many have *caused* her injury." *Id*. (emphasis in original). Applying its reasoning, the *Miller* court found that the plaintiff did not have inquiry notice of the possible causal relationship between Paxil and suicide at the time of injury in March 1998 and that the record was undisputed that the plaintiff did not have actual knowledge of the connection until plaintiff's attorney advised her about the ongoing, out of state litigation involving Paxil on June 6, 2001. *Miller*, 2005 WL 8174802, at *3.

The *Miller* court next turned to whether the plaintiff was negligent in failing to discover the possible link between Paxil and suicide at an earlier date. The court noted that during the insurance case Plaintiff's attorney investigated other possible causes for her suicidality but found none. *Id*. Glaxosmithkline argued that studies published in medical literature discussing the possible link between Paxil and an increased risk of suicidality put plaintiff on constructive notice of the causal connection. *Id*. The court found that these studies *may create an inference* that plaintiff was negligent in failing to pursue her claims but did not rule as a matter of law that the studies were sufficient evidence that Plaintiff's conduct was unreasonable. *Id*. (emphasis added) Because Glaxosmithkline argued that the same studies were inadmissible at trial, the court held that defendants had failed to offer any admissible evidence that plaintiff was negligent in prosecuting her cause of action sooner. *Id*. at *4. Accordingly, the court granted plaintiff's motion for summary judgment finding that the discovery rule applied and her claims were timely filed because the evidence in the record demonstrated that plaintiff did not initially know that her exposure to Paxil could be causally connected to her suicidality, that plaintiff filed suit within two years of obtaining this knowledge, and that the manufacturer had not offered sufficient

admissible evidence that plaintiff was negligent in not investigating her cause of action at an earlier date. *Id*.

In *Daugherty*, the plaintiff used a pesticide over several weeks in July 1975 and one month later was diagnosed by a physician with "pesticide toxicity." *Daugherty*, 689 P.2d at 948. The plaintiff was subsequently seen by two other healthcare providers in September 1975 and October 1975 who also diagnosed plaintiff with "pesticide toxicity." *Id*. Plaintiff did not file his product liability action against the pesticide manufacturer until more than two years later in May 1978. *Id*. In affirming the granting of summary judgment on statute of limitations grounds, the court found the "record thus demonstrates symptoms had become manifest **and a medical connection had been made between those symptoms and the insecticide** within three months of exposure." *Id*. at 949 (emphasis added). The court further noted that "**the toxicity potential** [of the pesticide] **was known and connected to plaintiff's maladies** soon after exposure and was noted as a possible cause in all three exhibits." *Id*. at 950 (emphasis added). The court then determined "it is undisputed that the means of knowledge existed, and as it appears from the record, the circumstances were such as to put a reasonable man upon inquiry" and, therefore, the "discovery rule does not, under this record, bar the running of the statute of limitations." *Id*. at 951. Critical to the court's reasoning in *Daugherty* was the factual record including exhibits that confirmed that multiple healthcare providers advised the plaintiff of the potential connection of the pesticide to his symptoms. *Id*. at 949-950. Because the plaintiff was aware of the possible connection between exposure to the pesticide and his illness, he

had a duty to investigate his potential claim sooner but failed to do so. Therefore, the court ruled the discovery rule was inapplicable. *Id*. at 951.

### A. **The Record Demonstrates That Plaintiff's Injury Claims Were Timely Filed.**

The *Miller* and *Daugherty* courts have established a two-part test for applying the discovery rule in product liability cases under Oklahoma law. First, plaintiff must show that she did not initially know that her exposure to a product was casually linked to her injury or that the connection was not common knowledge. Second, the plaintiff must demonstrate that she did not negligently refrain from investigating her cause of action after obtaining sufficient knowledge upon which a cause of action could be brought. The latter question involves an inquiry into whether the plaintiff's alleged inaction was reasonable under the specific facts of the case. Applying the Court's analysis in *Miller* and *Daugherty*, it is clear the discovery rule applies here.

#### 1. **Plaintiff Did Not Initially Know That the Bair Hugger Was Potentially Causally Connected to Her Injuries.**

Here, the record demonstrates that Plaintiff did not know that the Bair Hugger increased the risk of post-surgical infection until February 2016 or that she was even exposed to the Bair Hugger during hip replacement surgery until 2017. *See* Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶¶ 22, 42-48, 52-54; *see also* MDL Master Long Form Complaint, D. Minn Case No. 15-md-2666, ECF No. 46-1 at ¶ 66-67. It is axiomatic, therefore, that "the causal connection between the product and the plaintiff's injuries [was] not initially known" before February 2016 at the earliest. *Miller*, 2005 WL 8174802, at *2. Plaintiff could not have understood that her PJI was

causally connected to the Bair Hugger *before* she even knew that she was exposed to the device. Unlike the plaintiff in *Daugherty*, there is no evidence in the current record that Plaintiff was advised by a healthcare provider that her PJI was potentially linked to exposure to the Bair Hugger or that Plaintiff otherwise had sufficient knowledge of her potential claim before February 2016. *Daugherty*, 689 P.2d at 949-950; *see also Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280-1281 (10th Cir. 2013) (holding that plaintiff had sufficient knowledge to start the running of the statute of limitations because plaintiff "understood that [the medication] was causing her symptoms", that "the label for [the medication] warned" about the types of symptoms that plaintiff was experiencing, and that plaintiff undertook "contemporaneous online research on the side effects").

It was also not commonly known to the medical community or patients like Plaintiff in December 2010 that use of the Bair Hugger increases the risk of PJI. *See* Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 23. At a minimum, the factual record is undeveloped as to what was "common knowledge" about the risks of the Bair Hugger including specifically what Plaintiff's treating healthcare providers knew about the safety and efficacy of the device prior to using it on her during hip replacement. *Daugherty*, 689 P.2d at 950. If physicians using the Bair Hugger did not know about the risks of the device, it reasonably follows that knowledge was, in fact, not "common" at the time. For these reasons, Plaintiff satisfies the first prong of the two-part test in *Miller* and *Daugherty*.

**2. Plaintiff Did Not Negligently Refrain from Investigating Her Claims.**

Defendants have not offered any admissible evidence that Plaintiff was negligent in investigating her claims thereby preventing application of the discovery rule.[3] On the contrary, the evidence demonstrates that once Plaintiff had notice about the potential connection between exposure to the Bair Hugger and PJI that she began to investigate her claims. Prior to her right hip replacement surgery on December 13, 2010, Plaintiff was warned that she was at risk of infection not because the Bair Hugger was being used during surgery but due to her body habitus and prior history of infection of lumbar spine hardware. Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 34. Plaintiff was exposed to the Bair Hugger without her knowledge and while she was anesthetized. *See* Exh. 1 at ¶ 6; *see also* Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 42. Under these facts, it was not unreasonable for Plaintiff to not immediately undertake an investigation of her case at the time of injury. An important distinction to the plaintiffs in *Miller* and *Daugherty* is that the Bair Hugger is not a medication that Plaintiff consumed or a product that Plaintiff used herself.

After first learning that she may have a potential product liability claim, Plaintiff began to prosecute an investigation of her case and filed her complaint within two years of

---

[3] Defendants may reference scientific articles discussing the risks of the Bair Hugger or the formation of MDL No. 2666 as putting Plaintiff on constructive notice of the connection between the Bair Hugger and the risk of PJI. While this may create an inference that Plaintiff was allegedly negligent in failing to discover her cause of action, Defendants have consistently argued throughout this MDL that despite the medical literature or the thousands of cases filed in the MDL that the Bair Hugger does not increase the risk of PJI. *See Miller*, 2005 WL 8174802, at *3. Such evidence which remains disputed cannot establish as a matter of law Plaintiff's negligence in investigating her claims at an earlier date. *Id*. Like Glaxosmithkline in *Miller*, Defendants cannot have it both ways.

acquiring "sufficient information which, if pursued, would lead to the true condition of things." Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶ 52-54; *Daugherty*, 689 P.2d at 948. Therefore, Plaintiff did not "negligently refrain from prosecuting inquiries plainly suggested by the facts." *Id.* at 951. For these reasons, Plaintiff also satisfies the second prong of the two-part test. Accordingly, Oklahoma's discovery rule is applicable, and Plaintiff's injury claims were timely filed within the discovery rule limitations period precluding granting the Rule 12(c) Motion.

### B. Defendants' Reliance on the Court's Rulings in Other Bair Hugger MDL Cases is Misplaced.

Defendants cite the Court's rulings dismissing three Bair Hugger cases on statute of limitations grounds as support that Plaintiff's claims are time-barred. Def. Brief at 2-3, 13-14; *see also Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Defendants' reliance on these prior rulings is erroneous, and the rulings are distinguishable on several grounds. First, *Skinner*, *Jones*, and *Pelican* were decided under Iowa and Louisiana law which are not applicable here and differ substantively on the statute of limitations including the application of the discovery rule compared to Oklahoma law. To be clear, under Oklahoma law, the statute of limitations in product liability actions arising on the facts presented in Plaintiff's case does not run from the date of injury (i.e., infection) as Defendants insist. *Miller,* 2005 WL 8174802, at *2; *Daugherty*, 689 P.2d at *950-951*. Defendants keep belaboring this point despite its inaccuracy.

Second, in *Skinner*, *Jones*, and *Pelican*, the parties conducted extensive fact and expert discovery, and those cases were dismissed based on the evidence in the record following the completion of discovery. Here, Plaintiff's case has not undergone discovery beyond production of a PFS and pertinent medical records. No depositions have occurred nor is Plaintiff permitted to conduct such discovery at the present time. As a result, numerous issues of material fact remain in dispute, and discovery should be permitted on these disputed issues before the Court rules on the statute of limitations.

Third, in *Skinner*, *Jones*, and *Pelican*, the court dismissed each case on a motion for summary judgment. Here, the Court must decide the Rule 12(c) Motion based on the limited evidence in the record at the pleading stage. In doing so, the Court must accept all factual allegations by Plaintiff as true and draw all reasonable inferences in Plaintiff's favor. Because issues of material fact remain in dispute due to the lack of discovery, courts generally disfavor ruling on statute of limitations issues at the Fed. R. Civ. P. 12(c) stage. *Hogan*, 73 F.4th at 1157.

## II. <u>Plaintiff's Warranty, Consumer Protection, and Unjust Enrichment Claims Do Not Fail as a Matter of Law</u>.

Defendants correctly note that breach of express and implied warranty claims are subject to a five-year statute of limitations under Oklahoma law. Def. Brief at 17; Okla. Stat. 12A § 2-725. Defendants further assert that Plaintiff's warranty claims are time barred because they were not filed within five years of the "date of the index surgery where the Bair Hugger was used." Def. Brief at 17. However, Oklahoma's statute of limitations for warranty claims expressly provides that it does not "alter the law on tolling of the statute

of limitations[.]" Okla. Stat. 12A § 2-725(4). Additionally, the doctrine of "fraudulent concealment constitutes an implied exception to the statute of limitations" and is applicable to warranty claims. *Masquat v. Daimlerchrysler Corp*., 195 P.3d 48, 54 (Okla. 2008) (quoting *Waugh v. Guthrie Gas, Light Fuel & Improvement Co*., 131 P. 174 (Okla. 1913); *see also Morgan v. State Farm Mut. Auto Ins. Co*., 488 P. 3d 743, 753 (Okla. 2021). As stated herein, Plaintiff should be afforded the opportunity to amend her complaint to plead additional facts relevant to the statute of limitations, the discovery rule, and fraudulent concealment which tolled the statute of limitations from running on Plaintiff's warranty claims.

Defendants also correctly state that Plaintiff's claims pursuant to Oklahoma's Consumer Protection Act (OCPA) and for unjust enrichment are subject to a three-year statute of limitations to which the discovery rule can apply to toll this limitations period. Okla. Stat. Ann. tit. 12, § 95(A)(2); *Legacy Crossing, L.L.C. v Travis Wolff & Co., L.L.P.*, 229 F. App'x 672, 682 (10th Cir. 2007). However, Defendants incorrectly assert that the limitations period runs from the date of diagnosis of infection. Def. Brief at 16. This is not the applicable accrual date for product liability actions under Oklahoma law. *See Miller*, 2005 WL 8174802, at *2. Moreover, fraudulent concealment also applies to claims under the OCPA. *Legacy*, 229 F. App'x, at *682. Because the Complaint was filed within three years of accrual as defined by Oklahoma law, Plaintiff's claims under the OCPA and for unjust enrichment are timely.

## III. <u>At a Minimum, Material Issues of Fact Exist Regarding Claim Accrual and Tolling Precluding Granting the Motion</u>.

The Rule 12(c) Motion should also be denied because an analysis of whether the case was timely filed including the applicability of the discovery rule is inherently factual and is generally inappropriate for determination on a motion for judgment on the pleadings. Whether an action is barred by the applicable statute of limitations is a question of fact to be determined by considering the evidence in each individual case. *F.D.I.C.*, 8 F. Supp. 2d at 1290. This is especially true when a defendant attempts to dismiss a master or short form complaint on statute of limitations grounds. *See In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prods. Liab. Litig.*, 1:17-md-2775, 2018 WL 6067505, at *10 (D. Md. Nov. 19, 2018) ("Discovery rules are inherently fact-bound. Their application demands inquiries into the plaintiffs' states of mind and medical histories, which ordinarily cannot be resolved on the face of the [Master Complaint] and the plaintiffs' short form-complaints.").

Here, numerous facts bearing on the statute of limitations and application of the discovery rule remain undeveloped due to the lack of discovery, including what Plaintiff's treating healthcare providers knew about the efficacy and risks of the Bair Hugger, why Plaintiff's healthcare providers selected the Bair Hugger for use in her orthopedic surgeries, how Plaintiff learned about the potential causal connection of the Bair Hugger to her injuries, whether it was common knowledge that the Bair Hugger increased the risk of PJI at the time Plaintiff was exposed to the device, what Plaintiff's healthcare providers advised her about the risks of the Bair Hugger, and what Plaintiff's healthcare providers told her about the potential cause of her PJI. Plaintiff should have the opportunity to conduct discovery related to these issues before the Court rules on the statute of limitations.

## IV. **Defendants' Motion Should Be Denied as Procedurally Improper and Plaintiff Should Have the Opportunity to Amend the Complaint.**

First, Defendants' motion should be denied because Defendants have not complied with Fed. R. Civ. P. 12(c) which expressly states that a motion for judgment on the pleading can be filed "[a]fter the pleadings have closed[.]" *See* Fed. R. Civ. P. 12(c). Defendants have not answered Plaintiff's Short Form Complaint and, therefore, the pleadings are not closed. Additionally, Defendants' motion seeks to shift the burden of establishing the elements of the affirmative defense of statute of limitations to Plaintiff. Defendants' motion should be denied for these flaws alone.

Second, Defendants' motion is a clear attempt to circumvent this Court's orders governing individual cases in the MDL, specifically PTO 1 (staying discovery), PTO 4 (scheduling order), PTO 8 (master long and short form complaints), and PTO 22 (setting a schedule for dispositive motions on general causation and issues not specific to bellwether cases, and bellwether dispositive motions). These PTOs were clearly intended to establish deadlines for conducting discovery and filing dispositive motions in this MDL. For example, PTO 8 states:

> Defendants will follow deadlines outlined in Pretrial Order No. 4 with respect to motions brought pursuant to Rule 12(b)(6) against any Master Long Form or Master Short Form Complaints or future Answers asserting a failure to plead allegations with specificity, or failing to meet the requirements of Fed. R. Civ. P. 8. **Motion practice on the individual personal injury Complaints and future Answers subject to this Order shall be stayed and may proceed only according to Pretrial Order No. 4 or upon leave of the Court**.

PTO 8 at ¶ 5 (emphasis added). The Court has not ordered or stated that Defendants are allowed to file dispositive motions in non-bellwether or non-remand cases. Nor has the Court stated that discovery is no longer stayed in non-bellwether, non-remand cases.

Third, Defendants' motion is based on the allegations in the outdated Master Long Form Complaint filed nearly ten years ago and the individual Short Form Complaint filed in this case. But the MDL Master Long Form Complaint and the Short Form Complaint were purely administrative devices and were not intended to be the conclusion of substantive pleadings in cases that were direct filed in the MDL. *See* PTO 8, ECF No. 46 at 1 (stating "Plaintiffs have filed a Master Long Form Complaint and a Master Short Form Complaint **as administrative devices** to set forth potential claims detailed in the Master Long Form Complaint that individual Plaintiffs may assert against Defendants in this litigation.") (emphasis added). The concept and primary purpose of a "short form" complaint is that it is intended to be abbreviated in its subject matter to only include the most essential facts demonstrating an actionable claim and not all relevant facts in an individual case. For this very reason, the Court specifically provided in PTO 8 that **"[a]ll Plaintiffs have the express right to file and serve an Amended Complaint**, upon the showing required by the relevant Federal Rules of Civil Procedure and any applicable court order, regardless of selection for bellwether consideration, **which more fully sets forth the facts specific to their case, the causes of action and allegations against Defendants and theories of liability alleged**." ECF No. 46 at ¶ 6 (emphasis added).

In accordance with PTO 8, the Group 1 and Group 2 Scheduling Orders issued in the remand cases allow for plaintiffs to file amended complaints. *See* Exh. 2 and 3 (Group

1 and Group 2 Scheduling Orders). Specifically, these Orders provide that "[p]ursuant to PTO 8, any plaintiff wishing to amend their operative complaint shall serve and file an amended complaint by September 1, 2025" (Group 1 Order); "[p]ursuant to PTO 8, any plaintiff wishing to amend their operative complaint shall serve and file an amended complaint by September 29, 2025" (Group 2 Order). These Orders also set forth schedules for conducting discovery. *See* Ex. 2 and 3.

Defendants have filed the Rule 12(c) Motion against a non-remand plaintiff that has no scheduling order. Unlike here, the remand plaintiffs with potential statute of limitations issues are permitted to amend their complaint (without filing a motion for leave) to include additional allegations including facts relating to the discovery rule, tolling, and fraudulent concealment pursuant to the Group 1 and 2 Scheduling Orders. Remand plaintiffs will also be allowed to conduct discovery, particularly of (1) healthcare providers that purchased the Bair Hugger for use at the hospital where their surgeries occurred; (2) healthcare providers that chose to use the Bair Hugger during their surgeries; and (3) the 3M sales representatives that, upon information and belief, misrepresented the safety and efficacy of the Bair Hugger to Plaintiffs' healthcare providers and upon which the healthcare providers relied in purchasing and using the Bair Hugger device on Plaintiff. However, that opportunity has not been afforded to Plaintiff prior to the filing of the Rule 12(c) Motion.

To make the inequity to Plaintiff worse, at least one case in the Group 1 and 2 remand cases involves a plaintiff from Oklahoma. *See James Walker v. 3M Company, et al.*, No. 24-cv-00787, Dkt. 1 (March 6, 2024). The complaint in the *Walker* case was filed in 2024. *Id*. The *Walker* case was selected within remand Group 1. *In re Bair Hugger*

*Forced Air Warming Devices Product Liability Litigation*, MDL No. 15-2666, Dkt. 2799 (April 28, 2025). Pursuant to the amended scheduling order for Group 1, the plaintiff in *Walker* can amend his complaint and conduct fact and expert discovery before dispositive motions can be filed. *See Walker v. 3M Company, et al.*, No. 24-cv-00787, Dkt. 15 at 2-3. To allow one plaintiff from Oklahoma whose case was filed in 2024 the opportunity to amend the complaint and conduct fact and expert discovery before defending a motion to dismiss on statute of limitations grounds, while not allowing another plaintiff from Oklahoma[4] whose case was filed six years earlier in 2018 the same opportunities would be unfair and would conflict with one of the goals of mass tort case management of "affording similar treatment to similar cases[.]" Manual for Complex Litigation, Fourth, § 22.2 (2004).

Pursuant to Fed. R. Civ. P. 15 and Local Rules 7.1 and 15.1, Plaintiff has filed a Motion for Leave to Amend Complaint. *See* Sharon Paine Motion for Leave to File an Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 10. The accompanying proposed amended complaint includes state and case-specific factual allegations, including detailed allegations regarding facts related to the statute of limitations and application of the discovery rule as well as Defendants' fraudulent concealment of the risks and harms associated with the Bair Hugger. *See e.g.*, Proposed Amended Complaint, D. Minn Case No. 18-cv-0069, Dkt. 12-1 at ¶¶ 22-23, 34, 42-54, 180-197 (statute of limitations and discovery rule allegations) and ¶¶ 134-179) (fraudulent concealment allegations). For the reasons set forth herein and in Plaintiff's Motion for Leave to Amend Complaint, the Court

---

[4] Defendants' Rule 12(c) Motion was filed in three additional Oklahoma cases including *Minor*, 17-cv-2033; *Taplin*, 17-cv-2848; and *Arnold*, 24-cv-2280.

should allow Plaintiff to amend her Complaint to address issues raised by Defendants in the Rule 12(c) motion. To hold otherwise, would be unjust and inequitable to Plaintiff in comparison to the position of the remand plaintiffs including other Oklahoma plaintiffs who are allowed to amend per the Court's scheduling orders.

Moreover, should the Court allow Defendants to proceed with this Rule 12(c) motion, the floodgates of motion practice will spill open if that has not already happened. Defendants have chosen to file this Rule 12(c) motion (and similar motions relating to Alabama, Idaho, Michigan, New York, North Carolina, Tennessee, Texas, and Virginia statute of limitations) against only a small, select number of non-remand plaintiffs. However, as is made clear in their Rule 12(c) Motion, Defendants intend to continue to file similar motions to dismiss claims on potential statute of limitations grounds "to cull the inventory of MDL cases" at the pleadings stage. Def. Brief at 2. To be certain, if the Court permits Rule 12(c) motions to proceed in non-remand cases, Defendants will continue to file motions state by state or case by case where they perceive a potential statute of limitations issue. This will trigger an avalanche of briefing including not only Defendants' motions but the accompanying responses in opposition, replies, and motions for leave to amend plus appeals. This will take away time and resources from the Court in addressing the various motions and other issues in Group 1 and 2 remand cases and add additional delay to the litigation as a whole.

Furthermore, the Court's prior rulings on motions for judgment on the pleadings support Plaintiffs' argument that they should be granted leave to amend their complaints. In *Axline v. 3M Co.*, No. 17-511, 2018 WL 4300535, at *5 (D. Minn. Sept. 10, 2018), the

plaintiff requested leave to amend her complaint in her opposition to the motion for judgment on the pleadings but did not file a separate motion seeking leave to amend. The Court denied plaintiff's informal request to amend because Local Rule 15.1 requires a party seeking leave to provide a copy of the proposed pleading and a redlined version of the proposed pleading, and the plaintiff did neither. *Id*.

In *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, ECF No. 29 (D. Minn. Jan. 7, 2019), the Court dismissed plaintiff's consumer protection claims because the plaintiff's short form complaint erroneously named the statutes under Tennessee law rather than Alabama law (the state of her residence and where she was injured). *Id*. at 10. As a basis for dismissal, the defendants argued that plaintiff would need to file a motion for leave to amend to bring the claims under Alabama law, citing to the Court's opinion in *Axline*. *Id*. The plaintiff argued that amendment was unnecessary because the Master Long Form Complaint included the Alabama consumer protection statute. The Court held that she could not rely on the list of statutes enumerated in the Master Long Form Complaint being incorporated into her Short Form Complaint. *Id*. at 11. The Court dismissed the claim, holding that "[t]o cure this error, Plaintiff would need to file a motion for leave to amend, but Plaintiff has not done so." *Id*. Unlike the plaintiffs in *Axline* and *Partlow*, Plaintiff here sought leave to amend her complaint and also complied with Local Rule 15.1. Moreover, it is disingenuous for Defendants to argue for dismissal of a claim in *Partlow* because a plaintiff failed to amend a complaint while arguing here that Plaintiff should not be allowed to amend her complaint.

## V. **Plaintiff Should be Granted Leave to Amend the Complaint to Allege Additional Facts Related to Defendants' Fraudulent Concealment.**

"Oklahoma has long recognized fraudulent concealment as an implied exception to a statute of limitations. If a defendant fraudulently conceals material facts and thereby prevents a plaintiff from discovering his wrong or the fact that a cause of action has accrued against him, the limitations period is tolled." *See Masquat v. DaimlerChrysler Corp*., 195 P.3d 48, 54-55 (Okla. 2008); *see also Krug v. Helmerich & Payne, Inc*., 320 P.3d 1012, 1022 (Okla. 2013) ("[A] defendant is estopped from interposing the defense of a time bar when the defendant's conduct has induced the plaintiff to refrain from timely bringing an action because of defendant's false, fraudulent or misleading conduct or some act that induces the plaintiff to refrain from timely bringing the action. This is a fact question.")

Defendants assert that Plaintiff has not sufficiently pled fraudulent concealment based on the allegations in the Master Long Form Complaint and Short Form Complaint. Def. Brief at 19-23. As set forth above, these complaints are administrative devices and were not intended to be final pleadings for individual plaintiffs. Since the filing of these administrative pleadings, discovery was conducted in the MDL which uncovered numerous fraudulent acts taken by Defendants to conceal the safety and efficacy of the Bair Hugger from Plaintiff, Plaintiff's healthcare providers, and the public at large. As such, Plaintiff filed a motion for leave to amend the complaint, which includes detailed allegations of Defendants' fraudulent acts and how they prevented Plaintiff from discovering the facts surrounding her injuries and causes of action which are required to establish fraudulent concealment under Oklahoma law.

Moreover, it is Plaintiff's position that additional case-specific discovery is needed to determine if fraudulent concealment applies. Specifically, Plaintiff should be given the opportunity to depose healthcare providers that purchased the Bair Hugger for use at the hospital where Plaintiff's surgeries occurred, healthcare providers that chose to use the Bair Hugger during Plaintiff's hip replacement surgery, and the 3M sales representatives that, upon information and belief, misrepresented the safety and efficacy of the Bair Hugger to Plaintiffs' healthcare providers and upon which the healthcare providers relied in purchasing and using the Bair Hugger device on Plaintiff.

## CONCLUSION

For the reasons stated herein, Plaintiff's claims were timely filed and the Court should deny Defendants' Rule 12(c) Motion. Additionally, the Court should grant Plaintiffs' request to amend her complaint so that Plaintiff can have the same opportunity to amend her operative pleadings as provided to remand cases including other Oklahoma plaintiffs in these coordinated MDL proceedings.

Dated: November 21, 2025

Respectfully submitted,

*/s/ Kevin M. Fitzgerald*

Kevin M. Fitzgerald
FITZGERALD LAW GROUP, LLC
120 Exchange Street, Suite 200
Portland, ME 04101
Phone: (207) 874-7407
Facsimile: (207) 850-2120
Email: kfitzgerald@fitz-lawgroup.com

*Attorneys for Plaintiff*