**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Best*, 25-cv-1919<br>*Brady*, 25-cv-1808 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M"), move for judgment in two cases for failure to state claim upon which relief can be granted. The claims brought in these cases are time-barred under the applicable Mississippi statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations grounds), with others dismissed by court order, resulting in a significant waste

of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the MDL of meritless cases by identifying and dismissing claims that are time-barred on their face.

Second, Plaintiffs' claims are barred by the applicable Mississippi statutes of limitation. Although Mississippi recognizes a statute-of-limitations "discovery rule" for personal injury actions, under the rule, claims accrue at the time of injury. *Angle v. Koppers, Inc.*, 42 So.3d 1, 5 (Miss. 2010) (A cause of action under Mississippi's discovery rule "accrues upon discovery of the injury, *not discovery of the injury and its cause*."). Applying similar discovery rules, this Court recently granted summary judgment in cases that are time-barred under Iowa and Louisiana law, finding that a plaintiff is on inquiry notice of potential claims against 3M upon diagnosis of an infection. *See Skinner v. 3M Company*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Here, as demonstrated below, applying this finding allows the Parties and the Court to easily identify and take appropriate action on Mississippi-based cases that are untimely on their face, given the time that has elapsed since the Plaintiffs' diagnoses. Taking these steps now, on a sampling of Mississippi cases, would be an important first step in culling the inflated inventory of existing cases,

and it would enable the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

---

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO 22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and Plaintiffs never previously argued that such motion practice would be barred by PTO 22's motion deadline.

## BACKGROUND

On or about November 14, 2017, Plaintiff Mary Best ("Best"), a Mississippi citizen, underwent surgery in Jackson, Mississippi. During the surgery, a Bair Hugger Forced Air Warming System (hereinafter "Bair Hugger system") was allegedly used. (Ex. B, Best Compl. ¶¶ 2, 7.) Best subsequently developed a periprosthetic joint infection ("PJI"), also known as a deep joint infection, which she attributes to the Bair Hugger system. (*Id.* ¶ 8.) As a result of the infection, Best alleges that on or about December 12, 2017, she underwent numerous procedures requiring intervention, management, and surgeries. (*Id.* ¶ 9.) On April 30, 2025, more than seven years after she was first diagnosed with an infection, Best commenced her action against 3M by direct-filing her Complaint in the MDL. (*See* Best Compl.) In that Complaint, Best designated the Northern District of Mississippi as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* ¶ 5.)

On or about December 15, 2016, Plaintiff Brenda Brady ("Brady"), a Mississippi citizen, underwent surgery in Hattiesburg, Mississippi. During the surgery, a Bair Hugger system was allegedly used. (Ex. C, Brady Compl. ¶¶ 2, 7.) Brady subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* ¶ 8.) As a result of the infection, Brady alleges that on or about January 6, 2017, she underwent numerous procedures requiring

intervention, management, and surgeries. (*Id.* ¶ 9.) On April 29, 2025, more than eight years after she was first diagnosed with an infection, Brady commenced this action against 3M by direct-filing her Complaint in the MDL. (*See* Brady Compl.) In that Complaint, Brady designated the Southern District of Mississippi as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* ¶ 5.)

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under to Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Under this standard, the Court must "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to

judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming District of Minnesota's dismissal of claims as time-barred under Alabama law); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. Mississippi's Statutes of Limitations Apply.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were direct-filed in the MDL and have identified the Northern and Southern Districts of Mississippi as their respective appropriate venues. (*See* Ex. B, Best Compl. ¶ 5; Ex. C, Brady Compl. ¶ 5.) As federal district courts sitting in diversity, the Northern and Southern Districts of Mississippi would apply Mississippi choice-of-law rules with respect to issues of state law. *Bouchillon v. SAME Deutz-Fahr, Grp.,* 268 F. Supp. 3d 890, 899 (N.D. Miss. 2017) ("A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive

law will apply."). Therefore, Mississippi's choice-of-law rules dictate this Court's analysis.

In Mississippi, a "[c]hoice of law analysis involves a multi-step process." *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006). First, a court must determine "whether the conflicting laws are substantive or procedural." *Id.* at 433. Next, the court must "classify the substantive area of law" (i.e., tort, contract, or property). *Id.* Finally, Mississippi courts follow the "most significant relationship" analysis as enumerated in Restatement (Second) Conflict of Law § 145 (Am. Law Inst. 1971). *See, e.g., Mitchell v. Craft*, 211 So. 2d 509 (Miss. 1968); *Shortie v. George*, 233 So. 3d 883, 888 (Miss. Ct. App. 2017) (equating the "center-of-gravity analysis" with Restatement § 145 as the "rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties. . .").

Mississippi law should be applied here because Mississippi courts apply their own procedural law, and "statutes of limitations [are] procedural." *Zurich*, 920 So. 2d at 433; *see also Blanchard v. GEICO Gen. Ins. Co.*, 375 So. 3d 723, 728 (Miss. Ct. App. 2023) (citing *Ford v. State Farm Ins. Co.*, 625 So. 2d 792, 793-94 (Miss. 1993)) ("Because statutes of limitations are considered procedural for choice-of-law purposes, Mississippi courts ordinarily will apply our own statutes of limitations."). Therefore, under Mississippi's choice of law

rules, Mississippi's "statute of limitations for tort actions applies to a Mississippi lawsuit." *Ford,* 625 So. 2d at 794 (internal citation omitted).

However, even if the statute of limitations was a substantive rather than procedural matter, Mississippi's limitations period would still apply. Because Plaintiffs' claims derive from alleged personal injuries they attribute to the Bair Hugger system, they sound in tort, and the applicable test is the most significant relationship test. *See Shortie*, 233 So. 3d at 888-889. Under this test, Mississippi law applies.

Courts applying the most significant relationship analysis consider the following factors enumerated by the Restatement (Second) Conflict of Laws: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Dickens v. A-1 Auto Parts & Repair Inc.,* No. 1:18CV162-LG-JCG, 2020 WL 6265078, at *5 (S.D. Miss. Oct. 23, 2020). Mississippi presumes that the law of the state of injury will apply. *See, e.g.*, *Mitchell v. Craft*, 211 So. 2d 509, 516 (Miss. 1968) ("Ordinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties. . ."); *Shortie*, 233 So. 3d at 888–89 ("[W]e will first apply the law of the state where the injury occurred in order to determine the rights and liabilities of the parties. However, if we find that another state has

a more significant relationship to the occurrence and the parties, then we will ultimately apply the law of the other state." (internal citation omitted)). Other courts, including this Court, applying the § 145 (or similar) factors in medical-product-liability cases have reached the same conclusion. *See, e.g.*, *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 at 7 (D. Minn. Jan. 7, 2019) (where Alabama plaintiff was allegedly injured in Alabama during surgery with a Bair Hugger system, "Plaintiff could have expected claims arising from her surgery in Alabama to be governed by its law"); *Lewandowski v. Bayer (In re Trasylol Prods. Liab. Litig.)*, 2010 U.S. Dist. LEXIS 128951, at *12-13 (S.D. Fla. Nov. 15, 2010) (evaluating § 145 factors to apply Virginia law to Virginia plaintiff's claims involving product administered in Virginia).[2]

Here, the contacts[3] favor applying Mississippi law. Plaintiffs' alleged injuries occurred in Mississippi where a Bair Hugger system was used during

[2] That 3M is domiciled outside of Mississippi does not change this analysis. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 458 (E.D. La. 2006) (Merck's conduct "originated in New Jersey, but it was effectuated and felt by every plaintiff in their own home jurisdiction," and Merck's relationship was centered in plaintiffs' home states, where Vioxx most likely was marketed, shipped, prescribed, ingested, and allegedly caused harm); *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312, 321 (E.D.N.C. 2009) (applying law of plaintiffs' home states because sutures most likely were used "during surgeries that occurred in their home states and any adverse reaction most likely occurred in their home states").

[3] In evaluating the relevant contacts, courts may also consider a number of policy factors, including: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination

their surgeries and where they resided when they developed infections. Plaintiffs are also residents of Mississippi. (*See* Ex. B, Best Compl. at ¶¶ 7-9; Ex. C, Brady Compl. at ¶¶ 7-9.) Moreover, the relationship between the parties—to the extent there is one—is centered in Mississippi, because that is where the Plaintiffs used a Bair Hugger system. Prior to that, Plaintiffs had no relationship with Defendants. Further, given that Plaintiffs have designated federal courts in Mississippi as the appropriate venue for their cases, applying Mississippi law will serve the interests of protecting justified expectations and providing certainty, predictability, and uniformity of result. On balance, these factors weigh in favor of applying Mississippi law. As a result, the presumption that Mississippi law applies cannot be overcome. *See, e.g., Shortie*, 233 So. 3d at 888–89 (applying the law of another state only when that state has a more significant relationship to the parties and occurrence than the state of injury); *Mitchell*, 211 So. 2d at 516 ("Ordinarily, the local law of the state where the injury occurred will determine the rights and liabilities of the parties, 'unless with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.'").

---

of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in determination and application of the law to be applied. *Zurich,* 920 So. 2d at 437.

To the extent Plaintiff contends that Minnesota procedural law (versus Mississippi substantive law) should govern the applicable statute of limitations, under Minnesota's borrowing statute, the Mississippi statute of limitations would still apply because, as established above, Mississippi substantive law applies. *See* Minn. Stat. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

## II. Plaintiffs' Personal Injury Claims Are Barred by Mississippi's Three-Year Statute of Limitations.

Plaintiffs' claims are subsumed by Mississippi's Product Liability Act ("MPLA") and subject to the three-year limitations period prescribed by Miss. Code. Ann. § 15-1-49. Accordingly, because Plaintiffs filed their lawsuits more than seven years after their alleged injuries, their claims are time-barred.

### a. Plaintiffs' claims are subsumed by the MPLA

In Mississippi, "'the MPLA provides the ***exclusive*** remedy' for products-liability claims." *Elliott v. El Paso Corp.*, 181 So.3d 263, 268 (Miss. 2015) (emphasis added) (quoting *Lawson v. Honeywell Int'l, Inc.*, 75 So.3d 1024, 1027 (Miss.2011)). The MPLA governs "any action for damages caused by a product . . ." Miss. Code. Ann. § 11-1-63; *see also Elliott*, 181 So.3d at 268; *Nelson v. C.R. Bard, Inc.*, 553 F. Supp. 3d 343, 349 (S.D. Miss. 2021), *aff'd,* 44 F.4th 277 (5th Cir. 2022) ("Because this case clearly involves the recovery of damages

related to an allegedly defective product, the Court finds that the 2014 amendments to the MPLA and the decision in *Elliot* make clear that any potential MCPA claim, as well as any other common law tort claims, under the facts of this case, would be subsumed by the MPLA."); *Blouin v. Johnson & Johnson*, No. 2:17-CV-42-KS-MTP, 2017 WL 4969345, at *1 (S.D. Miss. Nov. 1, 2017) ("[T]he federal courts in this state have held that the MPLA subsumes claims of negligence, breach of implied warranty, [and] breach of express warranty. . ."); *Arnoult v. CL Med. SARL,* No. 1:14-CV-271-KS-MTP, 2015 WL 5554301, at *3 (S.D. Miss. Sept. 21, 2015) ("The MPLA specifically provides that it governs claims . . . arising from damage caused by a product."); *Knoth v. Apollo Endosurgery US, Inc.,* 425 F. Supp. 3d 678, 688 (S.D. Miss. 2019) ("The common law claim of unjust enrichment is subsumed by the MPLA.").[4]

In *Hall v. Smith & Nephew, Inc.*, the plaintiff suffered injuries, including a revision surgery, resulting from a total knee replacement. No. 5:19-CV-13-DCB-MTP, 2020 WL 3452621, at *1 (S.D. Miss. May 29, 2020). Plaintiff sued a medical device manufacturer for causing her injuries, alleging claims of

[4] To the extent that Plaintiffs assert their fraud claims are contract-based, Plaintiffs have not alleged that any contract or privity exists between Plaintiffs and 3M. Furthermore, even under this analysis Plaintiffs' claims are barred. *See, e.g., Sanderson Farms Inc. v. Ballard,* 917 So.2d 783, 789 (Miss. 2005). Fraud claims have a three-year statute of limitations and accrue at the time of the completion of a sale induced by false representations or consummation of the alleged fraud. *See id.* Under this standard, Plaintiffs' claims accrued no later than the date of surgery.

negligence, strict liability-design defect, strict liability-failure to warn, breach of express and implied warranty, negligent or fraudulent misrepresentations, fraudulent concealment, unjust enrichment, and claims pursuant to the Mississippi Consumer Protection Act ("MCPA"). *Id.* The Court held that ***all*** of plaintiff's claims were governed by the MPLA, "which provides the exclusive remedy for product liability claims." *Id.*

Similarly, Plaintiffs here allege injuries sustained during knee and hip replacement surgeries. Plaintiffs likewise assert claims of negligence, strict liability, breach of express warranty, breach of implied warranty, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment, and consumer fraud under the MCPA. Like in *Hall*, these claims are subsumed by the MPLA and governed by its three-year limitations period.

Courts consistently hold that, "where a common law claim is subsumed by the MPLA and is brought alongside products liability claims based on the same theory of recovery, the proper course is to dismiss the common law claim . . ." *Young v. Bristol-Myers Squibb Co.*, No. 416CV00108DMBJMV, 2017 WL 706320, at *4 (N.D. Miss. Feb. 22, 2017); *see also Sellers v. US Beverage Packers, LLC*, No. 3:23-CV-432-SA-JMV, 2025 WL 1402456, at *4 (N.D. Miss. May 14, 2025) ("Sellers' claims, to the extent that they are asserted as common law claims outside the scope of the MPLA, must be dismissed."). Accordingly,

Plaintiffs' common law claims are abrogated by the MPLA and must be dismissed.

**b. Plaintiffs' claims are time-barred**

"Product liability actions are subject to a three-year statute of limitation." *Austin v. Bayer Pharms. Corp.,* No. 5:13-CV-28-KS-MTP, 2013 WL 5406589, at *3 (S.D. Miss. Sept. 25, 2013); *see also Bryant v. Wyeth, Inc.,* 816 F. Supp. 2d 329, 331 (S.D. Miss. 2011), *aff'd,* 487 F. App'x 207 (5th Cir. 2012) (In a product liability case against a pharmaceutical manufacturer, "[p]laintiff's claims are governed by the three-year statute of limitations in Mississippi Code Annotated § 15–1–49."). Claims accrue "when the plaintiff discover[s], or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49(2); *see also Lincoln Elec. Co. v. McLemore,* 54 So. 3d 833, 838 (Miss. 2010) ("As clarified in *Angle*, Section 15–1–49 does not require a plaintiff to know the cause of the injury before accrual of the cause of action."). In the medical device context, an "actionable injury" is one that "put[s] a plaintiff on notice that the [injury] could have been caused" by the medical device, "even if she did not know with certainty" that defendant's conduct was the cause. *Greer v. Medtronic, Inc.,* No. CIV.A. 4:08CV042PB, 2008 WL 1884002, at *4 (N.D. Miss. Apr. 25, 2008). And although Mississippi recognizes a limited "discovery rule," it only applies where there has been a latent injury—which has been defined as "one where the 'plaintiff will be

precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question.'" *Id.*, at *3 (quoting *Donald v. Amoco Prod. Co.,* 735 So.2d 161, 168 (Miss. 1999)). Courts have refused to apply the discovery rule when a plaintiff is aware of their injuries. *See, e.g.*, *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204, 208 (Miss. 1999) (Plaintiff knew that he was injured while undergoing treatment at hospital, thus "the discovery rule does not apply because [his] injuries were not latent . . . [and] the statute of limitations began running that day. . ."); *PPG Architectural Finishes, Inc. v. Lowery*, 909 So. 2d 47, 50 (Miss. 2005) ("Implicitly then, this Court has held that if a latent injury is *not* present the discovery rule would *not* apply."); *Williams v. Ciba Vision Corp.*, 100 F. Supp. 3d 585, 592 (S.D. Miss. 2015) ("discovery rule is limited to latent injuries").

Here, where Plaintiffs have alleged dates on which they sustained injuries, the discovery rule does not apply. But even if the discovery rule did apply, it would not save Plaintiffs' claims. The plain language of Mississippi's discovery rule tolls accrual "until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Stat. Ann. § 15-1-49(2). Thus, a cause of action under § 15-1-49(2) "accrue[s] upon discovery of the injury, not discovery of the injury ***and its cause***." *Angle*, 42 So.3d at 3 (emphasis added); *see also Lincoln Elec. Co.*, 54 So. 3d at 838 ("As clarified in *Angle*, Section 15–1–49 does not require a plaintiff to know the cause of the

injury before accrual of the cause of action."); *Owens-Illinois, Inc. v. Edwards*, 573 So. 2d 704, 709 (Miss. 1990) (noting further that the "cause of the injury and the causative relationship between the injury and the injurious act or product . . . are not applicable under § 15-1-49(2)").

As this Court has previously recognized, "[a]t any time after [being] diagnosed with a [PJI], [Plaintiffs] could have requested and reviewed [their] medical records, and [they] could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers." *See Skinner,* No. 17-2149, ECF 98 at 6-7. In *Skinner*, this Court determined that the Plaintiff's claims were time-barred under Iowa law, which applies a discovery rule under which the statute of limitations begins to run on the date a plaintiff discovers, or with reasonable diligence should discover, the existence of their injury. *Id* (citing *Rivas v. Brownell*, 18 N.W.3d 211, 221 (Iowa 2025)). The Court reached the same conclusion in two cases under Louisiana law, under which the discovery rule requires not only the discovery of an injury but also a reasonable basis to pursue a claim against a specific defendant. *Jones*, No. 23-1425, ECF 103; *Pelican*, No. 23-1818, ECF 136 at 7-8 (citing, *inter alia*, *Bruno v. Biomet, Inc.*, 74 F.4th 620, 624 (5th Cir. 2023)).

Here, the same analysis applies. Upon being diagnosed with a PJI, Plaintiffs could have requested their medical records, learned that a Bair Hugger system was used during their surgeries, and obtained medical and

legal assistance to discover their causes of action. *See Skinner v. 3M*, No. 17-2149, ECF 98 at 6-7. Because Plaintiffs' symptoms and diagnoses of a PJI must have manifested before they began receiving treatment, the treatment dates alleged in Plaintiffs' complaints are the latest dates upon which the statute of limitations could have begun to run.

Plaintiffs here have clearly pleaded the dates on which they underwent their index surgeries with the Bair Hugger, *as well as when their alleged injuries were sustained*—which, in both instances, was long before they filed suit. (*See* Ex. B, Best Compl. at ¶¶ 7-9; Ex. C, Brady Compl. at ¶¶ 7-9.) Thus, even under the discovery rule exception, their claims are barred.

| **Plaintiff** | **Best** | **Brady** |
|---|---|---|
| **Date of Index Surgery** | November 14, 2017 | December 15, 2016 |
| **Latest Possible Date of Injury** | December 12, 2017 | January 6, 2017 |
| **Filing Date** | April 30, 2025 | April 29, 2025 |
| **Time Between Injury and Filing** | 7 years, 4 months, 18 days | 8 years, 3 months, 23 days |

## III. Plaintiffs' Consumer Fraud Claims are Insufficiently Pled.

Plaintiffs bring claims under the Mississippi Consumer Protection Act ("MCPA"). (*See* Ex. B, Best Compl. at ¶ 12; Ex. C, Brady Compl. at ¶ 12.) As discussed *supra*, p. 12-14, these claims are subsumed by the MPLA and therefore time-barred under its three-year limitations period. Additionally,

these claims should be dismissed for separate reasons, as they are not properly pled under statutory requirements.

The MCPA states: "In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." Miss. Code Ann. § 75-24-15(2). Plaintiffs here did not plead any facts demonstrating that they complied with this statutory requirement. Therefore, their MCPA claims are barred. *See Blouin*, 2017 WL 4969345, at *3; *Knoth v. Apollo Endosurgery US, Inc.*, 425 F. Supp. 3d 678, 688–89 (S.D. Miss. 2019) (claims dismissed because plaintiff "failed to attempt to resolve the case through an informal dispute settlement program approved by the Mississippi Attorney General, as required under Miss. Code Ann. § 75-24-15(2)."); *Ross v. Quality Homes of McComb, Inc.*, No. 5:17-CV-46-DCB-MTP, 2017 WL 5505111, at *6 (S.D. Miss. Nov. 16, 2017) (granting motion to dismiss plaintiff's MCPA claims for failing "to resolve their claims through an informal dispute resolution program, as the MCPA requires," and failing "to tie any of [their] allegations to the MCPA's thirteen examples of 'unfair' and 'deceptive' practices").

Similarly, Plaintiffs here fail to allege they attempted to resolve their MCPA complaints prior to filing their lawsuits, and they do not tie 3M's alleged consumer fraud to the specific examples set forth in the MCPA. In fact,

Plaintiffs' Short Form Complaints contain no specific allegations relating to their MCPA claims. (*See generally* Ex. B, Best Compl.; Ex. C, Brady Compl.) As such, neither Plaintiff has sufficiently pled consumer fraud because they do not address specifically how they (or their doctors) were deceived. The Master Complaint does not provide these allegations, nor can it, because it does not contain any specific information about any individual plaintiff or demonstrate how any individual plaintiff was allegedly harmed by a false, misleading, or deceptive act or practice by 3M. (*See generally*, Master Long Form Complaint, MDL ECF 46-1.) Absent any specific, individualized allegations, Plaintiffs do not plead the required elements of their MCPA claims, let alone do so with the particularity required to satisfy the heightened pleading standards of Rule 9(b). *See Coleman v. Nissan N. Am.,* No. 3:19-CV-533-CWR-FKB, 2020 WL 5237760, at *3 (S.D. Miss. Sept. 2, 2020) (fraud-based allegations must be pled with specificity and particularity under Rule 9(b)). Their MCPA claims should therefore be dismissed on this basis.

## IV. Minnesota Statutory Consumer Protection Claims Fail Because Plaintiffs Were Not Injured in Minnesota

Plaintiffs assert claims under the Minnesota Prevention of Consumer Fraud Act, Minnesota Deceptive Trade Practices Act, Minnesota Unlawful Trade Practices Act, and Minnesota False Advertising Act (collectively, "Minnesota Consumer Protection Statutes"). (Ex. B, Best Compl. at ¶ 12; Ex.

C, Brady Compl. at ¶ 12.) The Minnesota claims fail as a matter of law because Plaintiffs were not injured in Minnesota.

There is a "general presumption" under Minnesota law that "Minnesota statutes do not apply extraterritorially," and that presumption cannot be overcome unless the Minnesota Legislature "explicitly state[s] that it intends for a law to have extraterritorial effect." *Hull v. ConvergeOne, Inc.*, 570 F. Supp. 3d 681, 691 (D. Minn. 2021). There is no such explicit statement in the Minnesota Consumer Protection Statutes. Accordingly, courts have not applied these statutes extraterritorially to plaintiffs who reside and were injured outside of Minnesota. *See, e.g.*, *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (determining there is no legal support for applying Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), *aff'd*, 9 F.4th 981 (8th Cir. 2021).

Because Plaintiffs allege they were injured in Mississippi and not Minnesota, Plaintiffs cannot bring claims under the Minnesota Consumer Protection Statutes. These claims fail as a matter of law. *See Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29, at *11-13 (D. Minn. Jan. 7, 2019)

(agreeing with 3M and dismissing the Minnesota consumer protection claims where plaintiff's injury occurred outside of Minnesota).

## V. Fraudulent Concealment Does Not Apply to Save Plaintiffs' Untimely Claims.

Plaintiffs' claims also cannot be tolled under any fraudulent concealment tolling doctrine, as Plaintiffs did not plead the requisite facts and allegations to invoke it, nor could they. To establish fraudulent concealment under Mississippi law, a party must show "some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim." *Reich v. Jesco, Inc.,* 526 So. 2d 550, 552 (Miss. 1988). The burden rests on plaintiffs to show that defendants "engaged in affirmative acts of concealment" and that plaintiffs "acted with due diligence in attempting to discover" their claims. *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000). The alleged affirmative act "must in fact be designed to prevent the discovery of the ***claim***." *Channel v. Loyacono*, 954 So. 2d 415, 423 (Miss. 2007) (emphasis added).

Plaintiffs asserting fraudulent concealment must also plead their claims "with specificity and particularity under Miss. R. Civ. P. 9(b)." *Trustmark Nat. Bank v. Meador*, 81 So. 3d 1112, 1119 (Miss. 2012) (quoting *State Indus., Inc.,* 919 So.2d at 946. Plaintiffs "must state with particularity the circumstances constituting fraud," and they must state "the who, what, when, where, and how . . . *before* access to the discovery process is granted." *469 Cnty. Rd. Baldwyn*

*Props., LLC v. Manchester Anika, LLC,* No. 1:18-CV-121-SA-DAS, 2019 WL 3806376, at *3 (N.D. Miss. Aug. 13, 2019) (internal citations omitted).

Here, Plaintiffs do not even attempt to plead these required elements. While they both checked "fraudulent concealment" as a theory of liability in their respective short form complaints, Plaintiffs do not allege that they or their doctors relied on misrepresentations made by 3M in opting against filing their claims sooner, nor have they alleged that 3M's misrepresentations caused their delay in filing suit. Nor are such allegations contained in the Master Long Form Complaint. (*See* Master Long Form Complaint, MDL ECF 46-1.)

The Master Long Form Complaint, for example, does not contain any allegations about Plaintiffs specifically; it does not address what affirmative actions 3M allegedly took to conceal information *from Plaintiffs* or whether 3M had any knowledge of *Plaintiffs'* injuries or causes of action specifically, nor does it demonstrate that Plaintiffs exercised due diligence in discovering and pursuing their claims. *Trustmark Nat. Bank*, 81 So. 3d at 1119. Simply put, Plaintiffs have not demonstrated the "who, what, when, where, and how" of the fraudulent concealment allegedly directed at them specifically, nor have they alleged how and when they personally discovered any such fraud. *469 Cnty. Rd. Baldwyn Props., LLC,* 2019 WL 3806376, at *3. As such, Plaintiffs' claims cannot be saved by the fraudulent concealment tolling doctrine. *See Trustmark Nat. Bank,* 81 So. 3d at 1119 (fraudulent concealment claim fails

because plaintiff does not prove affirmative conduct or due diligence and fails to plead his claim with particularity); *see also Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 at 3-6 (D. Minn. Jan. 7, 2019) (concluding Bair Hugger plaintiff failed to plead sufficient facts in short or master long form complaint to invoke fraudulent concealment tolling).

Notably, even if Plaintiffs had provided adequate allegations as to fraudulent concealment, any tolling based on fraudulent concealment would have ceased when Plaintiffs were put on inquiry notice of their claims. *See Patel v. Hill-Rom Co., Inc.,* 194 So. 3d 898, 902–03 (Miss. Ct. App. 2016) ("A defendant's fraudulent concealment of a cause of action effectively tolls the beginning of a statute of limitations until 'the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.'" (quoting Miss. Code Ann. § 15-1-67 (Rev. 2012). Consistent with the discussion of the discovery rule outlined above and the Court's analysis of the statute of limitations issues in *Jones*, *Pelican*, and *Skinner*, Plaintiffs were on inquiry notice of their claims when they were diagnosed with and treated for their PJIs, in December 2017 (Best) and January 2017 (Brady) at the latest. *See Skinner*, No. 17-cv-2149, Dkt. 98; *Jones*, No. 23-cv-1425, Dkt. 103; *Pelican*, No. 23-cv-1818, Dkt. 136. Because Plaintiffs were on inquiry notice as of the onset of their infections, the fraudulent concealment doctrine cannot save their claims.

Finally, the Bair Hugger MDL commenced in December 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger system have been readily available in the public domain, ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. (*See generally*, Transfer Oder, MDL ECF 1); *see also City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL").

Plaintiffs here were diagnosed with infections *after* the formation of the Bair Hugger MDL and therefore had access to information about the Bair Hugger in the public domain. Brady's infection was diagnosed on January 6, 2017, approximately one year after the Bair Hugger MDL was formed; and Best's infection was diagnosed on December 12, 2017, approximately two years after the Bair Hugger MDL was formed. Any reasonably diligent efforts to investigate their potential claims would have led them to discover the Bair Hugger litigation. As a result, Plaintiffs have no reasonable basis for asserting fraudulent concealment claims, and their lawsuits, filed more than 7 years after being treated for an infection, are untimely.

Accordingly, no exception applies to toll the three-year limitations period, and the Court should dismiss Plaintiffs' personal injury claims with prejudice.

**Chart Summarizing Relevant Details of Plaintiffs' Cases**

| Plaintiff | Best | Brady |
|---|---|---|
| Case Number | 25-cv-1919 | 18-cv-2186 |
| Home State | Mississippi | North Carolina |
| Designated Jurisdiction | N.D. Miss. | S.D. Miss. |
| Location of Index Surgery | Jackson, Mississippi | Hattiesburg, Mississippi |
| Date of Index Surgery | November 14, 2017 | December 15, 2016 |
| Latest Possible Date of Injury | December 12, 2017 | January 6, 2017 |
| Filing Date | April 30, 2025 | April 29, 2025 |
| Time Between Surgery and Filing | 7 years, 5 months, 16 days | 8 years, 4 months, 14 days |
| Time Between Injury and Filing | 7 years, 4 months, 18 days | 8 years, 3 months, 23 days |

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are untimely as a matter of law, and should be dismissed with prejudice.

Respectfully submitted,

Date: December 15, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***