**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Arjona*, 25-cv-1497<br>*Harris*, 17-cv-2634<br>*Wood*, 17-cv-4690 | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants 3M Company and Arizant Healthcare Inc. (collectively, "3M") move for judgment in three cases for failure to state a claim upon which relief can be granted. The claims brought in each of these three cases are time-barred under the applicable Kansas statutes of limitations. The Court should enter judgment on the pleadings in favor of 3M and dismiss Plaintiffs' cases with prejudice.

3M seeks dismissal of these claims now, for two reasons. First, the Bair Hugger MDL has been ongoing for nearly a decade and is comprised of thousands of constituent cases, many of which are demonstrably untimely as a matter of law. At each "wave" of bellwether proceedings, Plaintiffs have voluntarily dismissed scores of cases (many based on statute of limitations

grounds), with others dismissed by court order, resulting in a significant waste of resources by both the Parties and the Court. The time has come, with a third wave of bellwether proceedings in full swing, to take steps to cull the inventory of MDL cases by identifying and dismissing claims that are time-barred.

Second, as discussed in greater detail below, under Kansas's "discovery rule," claims accrue at the time the injured party knows, or should have known of the injury. *See*, *e.g.*, *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996). Applying similar discovery rules, this Court recently granted summary judgment in cases that are time-barred under Iowa and Louisiana law, finding that a plaintiff is on inquiry notice of potential claims against 3M upon diagnosis of an infection. *See Skinner v. 3M Company, et al.*, No. 17-cv-2149, Dkt. 98 (Sept. 12, 2025) (Iowa); *Jones v. 3M Company, et al.*, No. 23-cv-1425, Dkt. 103 (Sept. 12, 2025) (Louisiana); *Pelican v. 3M Company, et al.*, No. 23-cv-1818, Dkt. 136 (Sept. 12, 2025) (Louisiana). Here, as demonstrated below, this allows the Parties and the Court to easily identify and take appropriate action on these Kansas-based cases that are untimely on their face, given the time that has elapsed since the Plaintiffs' diagnoses. Taking these steps now, on a sampling of Kansas test cases, would be an important first step in culling the inflated inventory of existing cases, and enabling the Parties and Court to focus on cases that are potentially triable and more worthy of case-specific attention.

Other MDL courts, faced with similar inventory inflation problems, have utilized statute-of-limitations motion practice to exercise control over unwieldy dockets. *See, e.g.*, *In re Cook Medical, Inc., IVC Filters Mktg., Sales Pracs. and Prods. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, Dkt. 14601 (S.D. Ind. Oct. 26, 2020) (Case Management Order No. 28, ordering plaintiffs to screen for time-barred cases based upon statute of limitations and statute of repose decisions in exemplar cases) (Ex. A). In fact, Judge Schultz previously established a framework in this MDL by which facially time-barred cases could be identified and dismissed for this very purpose. (*See* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922.) Respectfully, the time has come for the Court and the Parties to resume these efforts. The Court should grant 3M's Motion for Judgment on the Pleadings.[1]

---

[1] To the extent Plaintiffs contend that 3M's Motion is untimely under Pretrial Order No. 22's ("PTO 22") deadline for dispositive motions on "general causation and issues not specific to bellwether cases," any such argument is misguided. The intent of the PTO22 deadline, as the Parties understood it at the time and today, was to set one deadline for general causation summary judgment motions, and another deadline for bellwether case-specific summary judgment motions. This Motion does not fall into either category. Furthermore, this is not the first time that the Court and Parties have addressed the statute of limitations for facially time-barred non-bellwethers (*see* 3/29/2019 Categorization Order, Dkt. 1875; 5/17/2019 Revised Categorization Order, Dkt. 1922), and Plaintiffs never previously argued that such motion practice would be barred by PTO 22's motion deadline.

## BACKGROUND

On March 2, 2020, Plaintiff Pablo Arjona ("Arjona"), a Kansas citizen, underwent a surgery in Kansas. (Ex. B, Arjona Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger Forced Air Warming System (hereinafter "Bair Hugger system") was used. (*Id.* at ¶ 7.) Arjona subsequently developed a periprosthetic joint infection ("PJI"), also known as a deep joint infection, which he attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Arjona alleges that between April 10, 2020, and November 19, 2020, he underwent multiple additional treatments and procedures requiring intervention, management, and surgeries all in Kansas. (*Id.* at ¶ 9.) On April 16, 2025, more than five years after he was first diagnosed and treated for an infection, Arjona commenced his action against 3M by direct-filing his Complaint in the MDL. (*See* Ex. B, Arjona Compl.) In that Complaint, Arjona designated the District of Kansas as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

On March 28, 2005, Plaintiff Wanda Harris ("Harris"), a Kansas citizen, underwent a total hip replacement ("THA") surgery in Kansas. (Ex. C, Harris Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used. (*Id.* at ¶ 7.) Harris subsequently developed a PJI, which she attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Harris alleges that

between November 17, 2005, and July 3, 2006, she underwent multiple additional treatments and procedures including explantation and revision all in Kansas. (*Id.* at ¶ 9.) On July 7, 2017, more than eleven years after she was first diagnosed and treated for an infection, Harris commenced her claims against 3M by direct-filing her Complaint in the MDL. (*See* Ex. C, Harris Compl.) In that Complaint, Harris designated the District of Kansas as the jurisdiction "in which remand trial is proper and where this Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

On April 1, 2009, Plaintiff Thomas Wood ("Wood"), a Kansas citizen, underwent a total knee replacement ("TKA") surgery in Kansas. (Ex. D, Wood Compl. ¶¶ 2, 7.) During the surgery, a Bair Hugger system was used. (*Id.* at ¶ 7.) Wood subsequently developed a PJI, which he attributes to the Bair Hugger system. (*Id.* at ¶ 8.) As a result of the infection, Wood alleges that between April 29, 2009, and May 13, 2009, he underwent multiple treatments and procedures including multiple irrigation and debridement procedures and poly exchange, all in Kansas (*Id.* at ¶ 9.) On October 13, 2017, more than eight years after he was first diagnosed and treated for an infection, Wood commenced his claims against 3M by direct-filing his Complaint in the MDL. (*See* Ex. D, Wood Compl.) In that Complaint, Wood designated the District of Kansas as the jurisdiction "in which remand trial is proper and where this

Complaint would have been filed absent the direct filing order" of this Court. (*Id.* at ¶ 5.)

**Chart Summarizing Relevant Details of Plaintiffs' Cases**

| **Plaintiff(s)** | **Arjona** | **Harris** | **Wood** |
|---|---|---|---|
| **Case Number** | 25-cv-1497 | 17-cv-2634 | 17-cv-4690 |
| **Plaintiff's Home State** | Kansas | Kansas | Kansas |
| **Designated Jurisdiction** | D. Kansas | D. Kansas | D. Kansas |
| **Location of Index Surgery** | Manhattan, KS | Kansas City, KS | Kansas City, KS |
| **Date of Index Surgery** | March 2, 2020 | March 28, 2005 | April 1, 2009 |
| **Latest Possible Date of Injury** | April 10, 2020 | November 17, 2005 | April 29, 2009 |
| **Filing Date** | April 16, 2025 | July 7, 2017 | October 13, 2017 |
| **Time Between Surgery and Filing** | 5 years, 1 month, 14 days | 12 years, 3 months, 10 days | 8 years, 6 months, 12 days |
| **Time Between Injury and Filing** | 5 years, 6 days | 11 years, 7 months, 20 days | 8 years, 5 months, 14 days |

## LEGAL STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standard used for a motion to dismiss under Rule 12(b)(6). *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Accordingly, the Court should "accept as true all factual allegations set out in the complaint" and "construe the complaint in the light most favorable to the plaintiff[s], drawing all inferences in [their] favor." *Ashley Cnty, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky*

*v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A grant of judgment on the pleadings is appropriate 'where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)). An argument that claims are time-barred is properly raised in a motion under Rule 12(c). *See Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 594 (8th Cir. 2016) (affirming dismissal of claims as time-barred); *Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 (D. Minn. Jan. 7, 2019).

## ARGUMENT

### I. Kansas's Statutes of Limitations Apply.

Pursuant to Pretrial Order No. 5: Direct Filing, where a plaintiff directly files his or her complaint in the MDL and designates an alternative jurisdiction as the "appropriate venue" for trial, "the choice-of-law rules from the appropriate venue shall apply." (Pretrial Order No. 5: Direct Filing, Dkt. 37.) Here, the cases captioned above were all direct-filed in the MDL and have identified the District of Kansas as their respective appropriate venues. (*See* Ex. B, Arjona Compl. ¶ 5; Ex. C, Harris Compl. ¶ 5; Ex. D, Wood Compl. ¶ 5.)

As a federal district court sitting in diversity, the District of Kansas would apply Kansas choice-of-law rules with respect to issues of state law. *See Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 147 F. Supp. 2d 1057, 1064 (D. Kan. 2001) (citing *Am. Multi–Cinema, Inc. v. Southroads, L.L.C.*, 119 F.Supp.2d 1190, 1203 (D. Kan. 2000). Therefore, Kansas's choice-of-law rules dictate this Court's analysis.

Kansas follows the conflict-of-law principles of *lex fori* as to procedural matters and applies the *lex loci delicti* rule in tort cases, which dictates that the substantive law of the state where the injury occurred governs the dispute. *See Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985); *see also Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776, 785, 89 P.3d 908, 914 (2004).

Kansas treats the application of statutes of limitations as a procedural issue and applies the law of the forum. *See, e.g.*, *W. Video Collectors, L.P. v. Mercantile Bank of Kansas*, 23 Kan. App. 2d 703, 705, 935 P.2d 237, 239 (1997) ("Statutes of limitation are procedural in nature"); *Muzingo v. Vaught*, 18 Kan. App. 2d 823, 825, 859 P.2d 977, 979 (1993) (quoting *Green v. Kensinger*, 199 Kan. 220, 223, 429 P.2d 95, 98 (1967) ("The general rule in respect to limitation of actions is that the law of the forum governs, and if any exceptions to this rule are to be recognized, such exceptions must be found in the law of the forum itself."); *Dunn v. Dunn*, 281 P.3d 540, 548 (Kan. Ct. App. 2012) (citations omitted) ("A statute of limitations is remedial and procedural . . . [and] creates

a procedural barrier to bringing an action after a stated number of years."). Because Plaintiffs have identified the District of Kansas as the appropriate venue, Kansas statutes of limitation should apply. (*See* Ex. B, Arjona Compl. ¶ 5; Ex. C, Harris Compl. ¶ 5; Ex. D, Wood Compl. ¶ 5.)[2]

Even if this Court determined that the statute of limitations was a substantive rather than procedural matter, Kansas would apply the *lex loci delicti* rule to the dispute. *See Ling*, 703 P.2d at 735; *see also Dragon*, 277 Kan. at 785. Where, as here, the plaintiffs allege the injury occurred in Kansas, caused by use of a medical device in Kansas hospitals, the *lex loci delicti* rule dictates that Kansas is the state where the injury occurred. *Id.*

Plaintiffs here were allegedly injured by the use of a Bair Hugger system in Kansas. (Ex. B, Arjona Compl. ¶ 7; Ex. C, Harris Compl. ¶ 7; Ex. D, Wood Compl. ¶ 7.) Arjona underwent surgery in Manhattan, Kansas, developed an infection and underwent multiple additional treatments and procedures requiring intervention, management, and surgeries in Kansas. (Ex. B, Arjona Compl. ¶¶ 7-9.) Harris underwent surgery in Kansas City, Kansas, developed an infection and underwent multiple additional treatments and procedures

[2] To the extent Plaintiffs contend that Minnesota procedural law should govern the applicable statute of limitations, under Minnesota's borrowing statute, the Kansas statute of limitations would still apply because, as discussed below, Kansas substantive law applies. *See* Minn. Stat. Ann. § 541.31, subd. 1(a) ("[I]f a claim is substantively based: (1) upon the law of one other state, the limitation period of that state applies").

including explantation and revision in Kansas. (Ex. C, Harris Compl. ¶¶ 7-9.) Wood underwent surgery in Kansas City, Kansas, developed an infection and underwent multiple additional treatments and procedures including multiple irrigation and debridement procedures and poly exchange, all in Kansas. (Ex. D, Wood Compl. ¶¶ 7-9.) Accordingly, the Plaintiffs all have alleged that their injuries occurred in Kansas, and Kansas's statutes of limitations apply regardless of whether this Court determines it to be procedural or substantive.

## II. Plaintiffs' Personal Injury Claims Are Barred by Kansas's Two-Year Statute of Limitations.

Kansas law bars Plaintiffs' personal injury claims because Plaintiffs did not file their cases until more than two years after Plaintiffs were first diagnosed with infections. Under Kansas law, actions for personal injuries must be brought within two years after the cause of action accrues. *See* Kan. Stat. Ann. § 60-513(a). This two-year statute of limitations applies to negligence claims, products liability claims, and fraud claims. *Doe v. Popravak*, 2017 WL 2494958 (Kan. Ct. App. 2017); *Dierksen by & Through Dierksen v. Navistar Int'l Transp. Corp.*, 912 F. Supp. 480, 484 (D. Kan. 1996) ("the KPLA contains no separate statute of limitations; product liability claims are therefore generally subject to the two-year statute of limitations in K.S.A. § 60–513(a)(4)"); *Hiltgen v. Brady ex rel. Dorothy E. Hiltgen Tr. Dated Dec. 20,*

*1989*, 2014 WL 3907080, at *8 (Kan. Ct. App. 2014) ("K.S.A. 60–513(a)(3) provides that an action for fraud shall be brought within 2 years").

Under Kansas's discovery rule, "the limitations period starts when the 'fact of injury' is 'reasonably ascertainable.'" *Davidson v. Denning*, 914 P.2d 936, 948 (Kan. 1996); Kan. Stat. Ann. § 60-513(b). A plaintiff need not have actual knowledge of an injury for the limitations period to commence. *Id.* "[O]nce an injury becomes reasonably ascertainable a plaintiff has a duty to investigate in order to determine the extent and precise cause of injury." *McCarthy v. Peterie*, 1998 WL 36035425, at *5 (Kan Ct. App. Aug. 21, 1998).

Applying similar discovery rules under Iowa and Louisiana law, this Court has determined that the onset of an infection gives rise to inquiry notice and starts the running of the statute of limitations period even if the plaintiff does not know the precise cause of their infection. *See Jones v. 3M*, No. 23-1425, ECF 103 at 8 (Sept. 12, 2025) (dismissing claims as untimely and observing: "Jones could have requested and reviewed his medical records at any time after he was diagnosed with a periprosthetic joint infection. The prescription period did not await review of his medical records to start running. Jones's action is untimely.") (internal citation omitted); *Pelican v. 3M*, No. 23-1818, ECF 136 at 7-8 (Sept. 12, 2025) (similar); *Skinner v. 3M*, No. 17-2149, ECF 98 at 6-7 (Sept. 12, 2025) ("At any time after [Skinner] was diagnosed with a periprosthetic joint infection in March 2012, he could have requested

and reviewed his medical records, and he could have sought medical and legal assistance to discover the Bair Hugger's alleged defects and alleged dangers. He did no such investigation in the years immediately following his infection and resulting surgeries. The limitation period did not await review of his medical records in June 2016 to start running. His action, filed in June 2017, is untimely."). Notably, Kansas's discovery rule is even easier to satisfy than the Louisiana rule in *Jones* and *Pelican*, requiring only that a plaintiff discover their injury. A plaintiff need not know the connection between that injury and a potential defendant. *Compare Dumler v. Conway*, 49 Kan. App. 2d 567, 577, 312 P.3d 385, 392 (2013) (holding the Kansas discovery rule applies to the manifestation of the injury itself, not the identification of the defendant or the legal theory of the claim), *with Bruno v. Biomet, Inc.*, 74 F.4th 620, 623 (5th Cir. 2023) (under Louisiana law, "when a plaintiff acts reasonably to discover the cause of a problem, the prescriptive period does not begin to run until he has a reasonable basis to pursue a claim against a specific defendant") (cleaned up).

Here, the statute of limitations began to run when Plaintiffs were diagnosed with infections. After diagnosis, Plaintiffs knew of an "injury" sufficient to put them on inquiry notice to seek medical and legal assistance to discover their potential claims. *See Davidson*, 914 P.2d at 948; *McCarthy*, 1998 WL 36035425 at *5. Arjona started treatment for his PJI on April 10, 2020,

and the Complaint was filed over five years later, on April 16, 2025. (Ex. B, Arjona Compl. ¶¶ 8-9). Harris started treatment for her PJI on November 17, 2005, and the Complaint was filed over twelve years later, on July 7, 2017. (Ex. C, Harris Compl. ¶¶ 7-8). Wood started treatment for his PJI on April 29, 2009, and the Complaint was filed over eight years later, on October 13, 2017. (Ex. D, Wood Compl. ¶¶ 8-9). Accordingly, Plaintiffs' personal injury claims are untimely and should be dismissed.

## III. Plaintiffs' Consumer Protection, Unjust Enrichment, and Warranty Claims Are Time-Barred by Other Applicable Kansas Statutes of Limitations.

The only factual allegations of harm pleaded by Plaintiffs relate to personal injuries, (*see* Ex. B, Arjona Compl. ¶¶ 7-9; Ex. C, Harris Compl. ¶¶ 6-8; Ex. D, Wood Compl. ¶¶ 7-9), and so the personal injury limitations period should apply to all claims. To the extent Plaintiffs purport to allege claims founded in consumer protection, warranty, or unjust enrichment (*see* Ex. B, Arjona Compl. ¶ 12; Ex. C, Harris Compl. ¶ 11; Ex. D, Wood Compl. ¶ 12), those claims are still time-barred.

### 1. Plaintiffs' Unjust Enrichment and Consumer Protection Claims Are Time-Barred by Kansas's Three-Year Statute of Limitations.

Under Kansas law, both unjust enrichment claims and claims arising under the Kansas Consumer Protection Act (KCPA) must be commenced within three years after the cause of action accrues. *See* Kan. Stat. Ann. § 60-

512; *Orr v. Husch Blackwell LLP*, No. 16-2694-CM, 2017 WL 3873731, at *6 (D. Kan. Sept. 5, 2017), aff'd, 718 F. App'x 759 (10th Cir. 2018) (citing *Socophi S.P.R.L. v. Airport Sys. Int'l, Inc.*, 30 F. App'x. 862, 864 (10th Cir. 2002) ("Claims for unjust enrichment are bound by a three-year [statute of limitations]); *PHH Mortg. Corp. v. Stuber*, 766 F. Supp. 3d 1162, 1169 (D. Kan. 2025) ("A three-year statute of limitations applies to KCPA claims."); *see also Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 1 P.3d 899, 908 (2000) (concluding "that actions under K.S.A. 50-634(b) seeking damages and civil penalties are subject to the 3–year statute of limitations found in K.S.A. 60-512(2)"). Kansas law does not recognize the discovery rule in the context of unjust enrichment claims or KCPA claims. *Langston v. Mid-Am. Intercollegiate Athletics Ass'n*, 448 F. Supp. 3d 938, 953 (N.D. Ill. 2020); *Four Seasons Apartments, Ltd. v. AAA Glass Serv., Inc.*, 37 Kan. App. 2d 248, 251, 152 P.3d 101, 104 (2007) ("KCPA claims and common-law fraud claims are not the same and, therefore, the discoverability rule in K.S.A. 60–513(b) is not applicable to KCPA claims.").

As explained above, Plaintiffs' lawsuits were all filed more than five years after they were first diagnosed with infections. *See supra*, p. 13. Consequently, Plaintiffs' OCPA and unjust enrichment claims are time-barred.

Plaintiffs also plead claims under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the

Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act. (Ex. B, Arjona Compl. ¶ 12; Ex. C, Harris Compl. ¶ 11; Ex. D, Wood Compl. ¶ 12.) However, these statutory claims do not apply extraterritorially; and thus where, as here, plaintiffs reside and are injured outside of Minnesota, these claims are unavailable. *See Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29, pp. 11-13 (D. Minn. Jan. 7, 2019); *see also Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156-57 (D. Minn. 2023) (finding no legal support to apply Minnesota consumer protections statutes extraterritorially); *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 962-63 (D. Minn. 2020) (Minnesota consumer protection statutes do not apply to nonresidents alleging out-of-state injuries "[g]iven the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application"), aff'd, 9 F.4th 981 (8th Cir. 2021); *Ferrari v. Best Buy Co.*, 2015 WL 2242128, at *9–*10 (D. Minn. May 12, 2015).

**2. Plaintiffs' Breach of Warranty Claims are Time-Barred by Kansas's Four-Year Statute of Limitations.**

Under Kansas law, a claim for breach of warranty must be commenced within four years of when tender of delivery is made. Kan. Stat. Ann. § 84-2-725. Accordingly, Plaintiffs' warranty claims are subject to a four-year statute of limitations period starting from, at the absolute latest, the date of the index surgery where the Bair Hugger system was used.

Here, Plaintiffs underwent index surgeries more than five years before filing their Complaint. Arjona underwent his index surgery on March 2, 2020, and the Complaint was filed over five years later, on April 16, 2025. (Ex. B, Arjona Compl. ¶ 7). Harris underwent her index surgery on March 28, 2005, and the Complaint was filed over twelve years later, on July 7, 2017. (Ex. C, Harris Compl. ¶ 6). Wood underwent his index surgery on April 1, 2009, and the Complaint was filed over eight years later, on October 13, 2017. (Ex. D, Wood Compl. ¶ 7). Accordingly, Plaintiffs' warranty claims are untimely and should be dismissed.

Moreover, Plaintiffs' claims for breach of implied warranty should be dismissed because the claim is merged into Plaintiffs' product liability claims. Under the Kansas Product Liability Act, "K.S.A. § 60–3302(c) applies to all legal theories of product liability—'negligence, breach of express or implied warranty, and breach of or failure to discharge a duty to warn or instruct'—and merges them into one single product liability claim subject to the two-year statute of limitations in K.S.A. § 60–513." *Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158–59 (D. Kan. 2000) (quoting *Fennesy v. LBI Management, Inc.*, 18 Kan. App. 2d 61, 65–66, 847 P.2d 1350, 1355 (1993)); *see also White v. O'Dell Industries, Inc.*, No. 99–2315–JWL, 1999 WL 1096046, at *1 (D. Kan. Oct. 26, 1999). Plaintiffs' warranty claims are therefore merged

into their product liability claims and should be dismissed pursuant to Kansas's two-year statute of limitations.

### IV. Fraudulent Concealment Does Not Apply to Save Plaintiffs' Untimely Claims.

Under Kansas law, "[t]he doctrine of fraudulent concealment' tolls the running of a statute of limitations when the defendant has prevented the plaintiff from timely discovering the [cause of action]." *Fulghum v. Embarq Corp.*, 785 F.3d 395, 414 n.21 (10th Cir. 2015). To plead tolling based on fraudulent concealment in federal court, a plaintiff must plead the circumstances of fraudulent concealment with particularity. *In re Urethane Antitrust Litig.*, 235 F.R.D. 507, 518 (D. Kan. 2006). In addition to pleading the "who, what, when, where, and how" of the alleged fraudulent concealment, the plaintiff must also allege when and how they discovered the alleged fraud. *See Dummar v. Lummis*, 543 F.3d 614, 622 (10th Cir. 2008) ("[T]he absence of an allegation regarding how and when [plaintiff] learned of the alleged misconduct forecloses a claim that Defendants' fraudulent concealment prevented [plaintiff] from discovering [a cause of action].").

To establish fraudulent concealment under Kansas law, the plaintiff must plead that: "(1) the defendant had knowledge of material information the plaintiff did not have and could not have discovered through the existence of reasonable diligence; (2) the defendant had a duty to communicate that

information to the plaintiff; (3) the defendant deliberately failed to communicate the information to the plaintiff; (4) the plaintiff justifiably relied on the defendant to communicate the information; and (5) the plaintiff was injured by the defendant's failure to communicate the information." *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 910 (10th Cir.2005) (citing *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 260 (1999)).

"To constitute concealment of a cause of action within the general rule tolling the statute of limitations on that ground the concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Friends Univ. v. W. R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936, 941 (1980) (quoting 51 Am. Jur. 2d, Limitation of Actions § 148, at 719–721). Moreover, "[t]here must be some actual artifice to prevent knowledge of the fact, some affirmative act of concealment, or some misrepresentation to exclude suspicion and prevent injury." *Id.*

Further, even where the defendant has affirmatively concealed the existence of the cause of action, the plaintiff must plead that they exercised reasonable diligence and, despite such diligence, could not have discovered the existence of the cause of action. *Id.*; *see also King & King Enters. v. Champlin*

*Petroleum Co.*, 657 F.2d 1147, 1155 (10th Cir. 1981) ("The statute of limitations is not tolled on account of a party's failure to discover.").

Further, the effects of the doctrine of fraudulent concealment cease when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim. *See Cline v. S. Star Cent. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1213 (D. Kan. 2005) (quoting *Waite v. Adler*, 239 Kan. 1, 716 P.2d 524, 527 (1986)) ("[A] fraud is discovered at the time of actual discovery or when, with reasonable diligence, the fraud could have been discovered.").

Here, Plaintiffs do not plead facts to establish fraudulent concealment, nor do they plead those elements with particularity as required by Fed. R. Civ. P. 9. While they each have designated "fraudulent concealment" as a liability theory in their respective short form complaints, they do not allege any facts establishing that Defendants engaged in conduct directed at deflecting litigation or obstructing their right to file. (*See generally*, Ex. B, Arjona Compl.; Ex. C, Harris Compl.; Ex. D, Wood Compl.) The Master Long Form Complaint also does not supply these allegations, as it asserts in a general manner that 3M misrepresented or concealed certain information concerning the safety of the Bair Hugger system. (*See* Master Long Form Compl. ECF 97 ¶¶ 185-92.) The Master Long Form Complaint does not contain any allegations about Plaintiffs specifically; it does not address what affirmative actions 3M

allegedly took to conceal information *from Plaintiffs* or whether 3M had any knowledge of *Plaintiffs'* injuries or causes of action specifically. *See Friends Univ.*, 608 P.2d 936 at 941. Nor does it demonstrate that *Plaintiffs* exercised reasonable care and diligence in discovering and pursuing their claims. *Id.*; *King & King Enters.*, 657 F.2d at 1155. Plaintiffs have not demonstrated the "who, what, when, where, and how" of the fraudulent concealment allegedly directed at them specifically, nor have they alleged how and when they personally discovered any such fraud. *Dummar*, 543 F.3d at 622. As such, Plaintiffs' claims cannot be saved by the fraudulent concealment tolling doctrine. *See Friends Univ.*, 608 P.2d 936 at 941; *see also Partlow v. 3M Co.*, No. 16-cv-2144-JNE-DTS, Dkt. 29 at 3-6 (D. Minn. Jan. 7, 2019) (concluding Bair Hugger plaintiff failed to plead sufficient facts in short or master long form complaint to invoke fraudulent concealment tolling under Alabama law).

Notably, even if Plaintiffs had provided adequate allegations as to fraudulent concealment, any tolling based on fraudulent concealment would have ceased when Plaintiffs were put on inquiry notice of their claims. *See Cline,* 356 F. Supp. 2d at 1213 (holding claims accrue when "the fraud is discovered"). Consistent with the discussion of the discovery rule outlined above and the Court's analysis of the statute of limitations issues in *Jones*, *Pelican*, and *Skinner*, Plaintiffs were on inquiry notice of their claims when they were diagnosed with and treated for their PJIs, in November 2005

(Harris), April 2009 (Wood), and April 2020 (Arjona) at the latest. Because Plaintiffs were on inquiry notice as of the onset of their infections, the fraudulent concealment doctrine cannot save their claims.

Further, even were the statute of limitations tolled, any tolling would end when the Bair Hugger MDL was formed on December 11, 2015. Since that time, legal advertisements and information about potential claims against the Bair Hugger have been readily available in the public domain, ending any possible ability of defendants to fraudulently conceal the basis for a lawsuit. (*See generally*, Transfer Order, MDL ECF 1.) *See, e.g.*, *City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42 (D. Mass. 2025) (holding fraudulent concealment did not toll limitations periods where other plaintiffs filed similar complaints against defendants in a "highly publicized MDL").

Here, Arjona underwent his index surgery on March 2, 2020, and was treated for infection on April 10, 2020—over four years after the formation of the MDL—meaning that any reasonably diligent efforts to investigate a potential claim would have led him to discover the Bair Hugger litigation. Thus, for this additional reason, and even if Plaintiffs had adequately pled fraudulent concealment tolling (which they did not), Arjona's claims would not be saved by the doctrine.

## CONCLUSION

Based on the Plaintiffs' own allegations, their claims are time-barred as a matter of Kansas law and should be dismissed with prejudice.

Respectfully submitted,

Date: December 15, 2025

*s/John P. Mandler*

John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***