UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | No. 15-md-2666-JNE-DTS |
| This Document Relates to the Following Cases: *Arjona*, No. 25-cv-1497 *Harris*, No. 17-cv-2634 *Wood*, No. 17-cv-4690 | **District Judge Joan N. Ericksen** **Magistrate Judge David T. Schultz** |

**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs, Pablo Arjona, Wanda Harris, and Thomas Wood, by and through undersigned counsel, hereby file this Joint Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings, and states as follows:

## INTRODUCTION

In direct violation of the Court's numerous orders establishing deadlines and protocols for filing motions in individual cases, Defendants' Rule 12(c) motion is premature and procedurally improper. Defendants are attempting to dismiss Plaintiffs' claims based on the allegations in the Master Long Form Complaint and their Short Form Complaints, which are administrative devices, and without giving Plaintiffs an opportunity to amend their complaints pursuant to PTO 8. In the Group remand process recently established by the Court, remanded cases are allowed to amend their complaints without the need to seek consent from Defendants or leave of court. In an apparent attempt to

bypass these orders, Defendants have filed the present Rule 12(c) motion in a case that has not yet been selected for workup in the remand Group process. Just as in the remand plaintiffs, Plaintiffs herein should be allowed to amend their complaints to conform their claims to the applicable Kansas law and to add allegations regarding Defendants' fraudulent concealment, information which has become available only after the filing of the Master Long Form Complaint and Plaintiffs' Short Form Complaints.

Moreover, Defendants' analysis and application of the Kansas discovery rule is flawed. Kansas recognizes a discovery rule that is not triggered by the mere existence of an injury, but rather at the "point in time when a plaintiff knew or should have known he had an injury *caused by the negligence* of the defendant." *Gilger v. Lee Construction, Inc.*, 14 Kan. App. 2d 679, 683 (1990), aff'd in pertinent part and rev'd on other grounds by 249 Kan. 307 (1991) (emphasis in the original). Furthermore, Kansas courts have long recognized that the statute of limitations presents a question of fact that cannot be decided as a matter of law. *Olson v. State Highway Comm'n of Kansas*, 235 Kan. 20, 27, 679 P.2d 167, 174 (1984). For the reasons set forth below, the Court should deny Defendants' Rule 12(c) motion.

## BACKGROUND

Pablo Arjona, a Kansas resident, direct-filed his Short Form Complaint in this MDL on April 16, 2025. ECF No. 2893-1, at ¶ 2-3. In his complaint, Mr. Arjona alleged that he underwent a surgery on March 2, 2020. ¶ 7. During this surgery, a Bair Hugger Forced Air Warming System ('Bair Hugger") was used. *Id*. Due to the use of the Bair Hugger during this surgery, Mr. Arjona developed a periprosthetic joint infection, also known as a deep

joint infection. ¶ 8-9. As a result, Mr. Arjona underwent multiple additional treatments and procedures requiring intervention, management and surgeries between April 20, 2020, and November 19, 2020. Id. at ¶ 9.

Wanda Harris, a Kansas resident, direct-filed her Short Form Complaint in his MDL on July 7, 2017. ECF No. 3283-3 at ¶ 2. In her complaint, Ms. Harris alleged that she underwent a total left knee arthroplasty on March 28, 2005. *Id.* at ¶ 7. During this surgery, a Bair Hugger Forced Air Warming System ("Bair Hugger") was used. *Id.* Due to the use of the Bair Hugger during his surgery, Ms. Harris developed Coadgulase-Negative Staph a perioprosthetic joint infection ("PJI"). *Id.* at ¶ 8. Ms. Harris underwent an explant, antibiotic spacer, and revision between November 17, 2005 to July 3, 2006. *Id.* at ¶ 9.

Thomas Wood, a Kansas resident, direct-filed his Short Form Complaint in this MDL on October 13, 2017. ECF No. 3283-4 at ¶ 2. In his complaint, Mr. Wood alleged that he underwent a total left knee arthroplasty on April 1, 2009. *Id.* at ¶ 7. During this surgery, a Bair Hugger Forced Air Warming System ("Bair Hugger") was used. *Id.* Due to the use of the Bair Hugger during her surgery, Mr. Wood developed a perioprosthetic joint infection ("PJI"). *Id.* at ¶ 8. Mr. Wood underwent multiple additional treatments and procedures including multiple irrigation and debridement procedures and poly exchange between April 2009 and May 2009. *Id.* at ¶ 9.

## STANDARD OF REVIEW

When reviewing a motion for judgment on the pleadings, the court "accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences from the pleadings in favor of the non-moving party." *Syverson v. FirePond, Inc.*, 383 F.3d 745,

749 (8th Cir. 2004) (citing *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). The motion for judgment on the pleadings' standard "is strict: judgment on the pleadings is not appropriate unless the moving party has clearly established that no material issue of fact remains to be resolved and he is entitled to judgment as a matter of law." *Nat'l Car Rental Sys., Inc. v. Computer Assoc. Intern., Inc.*, 991 F.2d 426, 428 (8th Cir. 1993) (internal citations omitted). "In determining whether material issues of fact exist, the court must accept all facts pled by the non-moving party as true and draw all reasonable inferences in favor of the non-moving party." *Zmora v Minnesota*, No. CIV.01-1905 RHK/JMM, 2002 WL 539075, at *4 (D. Minn. Apr. 10, 2002) (citing *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990)).

## ARGUMENT

### I. Defendants' Motion is Procedurally Improper & Premature

Defendants' motion is a clear attempt to circumvent this Court's orders governing individual cases in the MDL, specifically PTO 1 (staying discovery), PTO 4 (scheduling order), PTO 8 (master long and short form complaints), and PTO 22 (establishing a schedule for dispositive motions on general causation and issues not specific to bellwether cases, and bellwether dispositive motions). These PTOs were clearly intended to establish deadlines for conducting discovery and filing dispositive motions in this MDL and to prevent precisely the kind of piecemeal, case-by-case dispositive motions Defendants now seek to pursue. For example, PTO 8 explicitly states:

> Defendants will follow deadlines outlined in Pretrial Order No. 4 with respect to motions brought pursuant to Rule 12(b)(6) against any Master Long Form or Master Short Form Complaints or future Answers asserting a

> failure to plead allegations with specificity, or failing to meet the requirements of Fed. R. Civ. P. 8. **Motion practice on the individual personal injury Complaints and future Answers subject to this Order shall be stayed and may proceed only according to Pretrial Order No. 4 or upon leave of the Court**.

PTO 8 at ¶ 5 (emphasis added). Defendants' present motion disregards this directive. The Court has not authorized dispositive motion practice directed at non-bellwether, non-remand individual cases, nor has it lifted the stay of discovery for those cases.

Defendants' attempt to advance statute of limitations defenses through a Rule 12(c) motion in selected non-bellwether cases is therefore procedurally improper. It bypasses the Court-ordered sequencing of discovery and motion practice, undermines the structure established by the governing PTOs, and invites exactly the type of fragmented litigation those orders were designed to prevent.

Moreover, the motion is premature. Discovery in non-bellwether, non-remand cases remains stayed, and Plaintiffs have not been afforded any opportunity to develop the factual record necessary to address Defendants' statute of limitations arguments. Defendants' position would require this Court to resolve fact intensive accrual and notice issues on an undeveloped record, contrary to the MDL's case management structure and the express limitations on individual motion practice set forth in PTO 8.

## II. Plaintiffs Here Should Receive the Same Treatment as Remand Plaintiffs to Amend Their Complaints

Further, Defendants' motion is based on the allegations in the outdated Master Long Form Complaint and individual Short Form Complaints. But the MDL Master Long Form Complaint, and the associated Short Form Complaint, were purely administrative and were

not intended to be the conclusion of substantive pleadings in cases that were direct-filed in the MDL. *See* PTO 8, ECF No. 46 at 1 (stating "Plaintiffs have filed a Master Long Form Complaint and a Master Short Form Complaint *as administrative devices* to set forth potential claims detailed in the Master Long Form Complaint that individual Plaintiffs may assert against Defendants in this litigation.") (emphasis added). Because the Master Long Form Complaint and Master Short Form Complaint are administrative devices, the Court expressly provided in PTO 8 that "[a]ll Plaintiffs *have the express right to file and serve an Amended Complaint*, upon the showing required by the relevant Federal Rules of Civil Procedure and any applicable court order, regardless of selection for bellwether consideration, which more fully sets forth the facts specific to their case, the causes of action and allegations against Defendants and theories of liability alleged." ECF No. 46 at ¶ 6. Defendants' attempt to obtain dispositive relief based on the administrative pleadings disregards both the limited purpose of those filings and Plaintiffs' expressly preserved right to amend.

That understanding is reflected in the Court's handling of remand cases. In accordance with PTO 8, the Group 1 and Group 2 Scheduling Orders issued in the remand cases allow for plaintiffs to file amended complaints. *See* Exhibits 1 and 2 (Group 1 and Group 2 Scheduling Orders). Specifically, these Orders provide that "[p]ursuant to PTO 8, any plaintiff wishing to amend their operative complaint shall serve and file an amended complaint by **September 1, 2025**" (Group 1 Order); "[p]ursuant to PTO 8, any plaintiff wishing to amend their operative complaint shall serve and file an amended complaint by **September 29, 2025**" (Group 2 Order). These Orders also set forth schedules for

conducting case specific discovery. *See* Exhibits 1 and 2.

Defendants present motion, however, is directed at non-remand cases for which no scheduling order exists and in which discovery remains stayed. Unlike the remand plaintiffs, who are permitted, without seeking leave, to amend their pleadings to address issues such as statute of limitations and fraudulent concealment and to conduct discovery, Plaintiffs here have been afforded neither opportunity. Yet Defendants seek to dismiss their claims on administrative pleadings before Plaintiffs are allowed to plead case specific facts or develop any factual record.

This disparate treatment is neither fair nor consistent with the MDL's governing orders. Remand plaintiffs will also be allowed to conduct discovery, particularly of: (1) the healthcare providers that purchased the Bair Hugger for use at the hospital where their surgeries occurred; (2) the healthcare providers that chose to use the Bair Hugger during their surgeries; and (3) the 3M sales representatives that, upon information and belief, misrepresented the safety and efficacy of the Bair Hugger to Plaintiffs' healthcare providers and upon which the healthcare providers relied in purchasing and using the Bair Hugger device on Plaintiffs. This information is central to proving fraudulent concealment. Plaintiffs here have not been allowed that same opportunity, yet Defendants now ask the Court to dispose of their claims as a matter of law.

Plaintiffs have filed a Motion for Leave to File an Amended Complaint. *See* Arjona Motion for Leave (Case No. 25-cv-1497); Harris Motion for Leave (Case No. 17-cv-2634,); Wood Motion for Leave (Case No. 17-cv-4690). The accompanying proposed amended complaints include state and case specific allegations, including detailed

allegations regarding Defendants fraudulent concealment of the harms associated with the Bair Hugger. *See e.g.*, Arjona Proposed Amended Complaint at ¶¶ 35-40, 161-165 (discovery rule allegations) and ¶¶ 119-165 (fraudulent concealment allegations) (Case No. 25-cv-1497). For the reasons set forth in this motion, the Court should allow Plaintiffs to amend their complaints to address issues raised by Defendants in the Rule 12(c) motion. To hold otherwise, would be patently unjust and inequitable to Plaintiffs in comparison to the position of the remand plaintiffs who are allowed to amend per the Court's Scheduling Orders.

## III. Judicial Efficiency Militates Towards Denying Defendants' Motion

Moreover, should the Court allow Defendants to proceed with this Rule 12(c) motion, the floodgates of motion practice would open. Defendants have chosen to file this Rule 12(c) motion (and the similar motions relating to Virginia, Alabama, Idaho, Texas, Maine, Michigan, North Carolina, Oklahoma, Tennessee, New York, South Dakota, Mississippi, and Nebraska statute of limitations) against only a small, select number of non-remand plaintiffs. As is made clear in their motion, Defendants intend to continue to file Rule 12(c) motions to dismiss claims on potential statute of limitations grounds. Should the Court allow these Rule 12(c) motions to proceed in non-remand cases, it is anticipated that Defendants will continue to file motions in any state or case where there is potential statute of limitations issues. This will open the floodgates to a multitude of briefs including not only Defendants' motions but the accompanying responses and motions for leave to amend. This will take away time and resources from the Court in handling and deciding motions in the remand cases.

As such, granting Defendants' Rule 12(c) motion in these non-remand cases would invite a wave of fragmented, state-by-state motion practice, impose substantial burdens on the Court, and frustrate the orderly case management structure of this MDL. Judicial efficiency, and basic fairness, therefore weigh strongly in favor of denying the motion and allowing Plaintiffs to proceed in the manner contemplated by the Court's Pretrial Orders.

## IV. Kansas Law Recognizes a Discovery Rule that Begins to Run When the Plaintiff Knew or Should Have Known He Had an Injury Caused by the Defendant's Negligence

Determining when a cause of action accrues under Kan. Stat. Ann. § 60-513 requires ascertaining when the plaintiff obtained knowledge that she had been injured by the tortious conduct of another. Under Kansas tort law, personal injury claims are subject to a two-year statute of limitations. Kan. Stat. Ann. § 60-513(a)(4). However, § 60-513(b), further qualifies that in a tort, a claim does not accrue "until the act giving rise to the cause of action first causes substantial injury, or, if the 'fact of injury' is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the 'fact of injury' becomes reasonably ascertainable to the injured party." Thus, where the "fact of injury" is not reasonably ascertainable at the time of the initial act, Kansas law expressly delays the commencement of the limitations period until "the point in time when plaintiff knew or should have known she had an injury *caused by defendant's acts or omissions*." *Thurston v. Page*, 931 F. Supp. 765, 767 (1996)(emphasis added). That is precisely the circumstance presented here.

### A. Plaintiffs' "Fact of Injury" was Not "Reasonably Ascertainable" at the Time of the Initial Act

Under Kansas law, accrual turns on two related but distinct inquiries: (1) when the "fact of injury" occurred, and (2) when the fact of injury was reasonably ascertainable. As Kansas courts have explained, "the term 'fact of injury' is a term of art and has not been interpreted literally by the courts of this state." *Gilger*, 14 Kan. App. 2d 679, 683 (1990), aff'd in pertinent part and rev'd on other grounds by 249 Kan. 307 (1991). Rather, "[t]here are a number of cases where the plaintiffs knew that something was wrong or knew there was an injury but did not know what caused that injury." *Id.* "In those circumstances, Kansas courts have "interpreted the term 'fact of injury' to be that point in time when a plaintiff knew or should have known he had an injury *caused by the negligence* of the defendant." *Id.* (emphasis in the original).

Accordingly, accrual is not determined merely by when a plaintiff becomes aware that he has suffered some injury, rather the operative question is whether the plaintiff knew or should reasonably have known that the injury was caused by another's negligence. *Id.* Stated differently, a cause of action against a particular defendant does not accrue until the plaintiff knows or should know that his injury was caused by the defendant's wrongful "acts or omissions." *Id.*; see also *Thurston*, 931 F. Supp. 765, 767–68 (D. Kan. 1996); *Asselin v. Shawnee Mission Medical Center*, 903 F. Supp. 1454, 1457 (D. Kan. 1995).

*Hecht v. First Nat'l Bank & Trust Co.*, 208 Kan. 84 (1971) further illustrates this principle. There, the plaintiff developed a serious skin condition during radiation treatment. *Id.* at 87–88. Although she knew something was wrong, her physicians assured her that the condition was a normal result of treatment and would resolve. *Id.* Relying on those reassurances, the plaintiff delayed further investigation. *Id.* The court recognized that although the plaintiff was aware of an injury, she lacked knowledge that it was attributable to wrongful conduct, and therefore the "fact of injury" had not yet become reasonably ascertainable for limitations purposes.

The same reasoning applies here. Each Plaintiff underwent orthopedic surgery and was later diagnosed with an infection. But Plaintiffs were not aware that a Bair Hugger warming device had been used during their procedures, nor did they have any knowledge, actual or constructive, of any potential risk or causal connection between that device and their infections at the time of their injury. Rather, Plaintiffs only knew that they had an infection, not that their infection was an "injury caused by defendant's acts or omissions." *Thurston* 931 F. Supp. at 767. They did not know, and could not reasonably have known, that their injuries were attributable to the negligent acts or omissions of Defendants. Without knowledge of the device's use or its potential role in causing their infection, Plaintiffs had no basis to recognize a claim against Defendants.

Because Plaintiffs lacked any knowledge that their injuries were caused by the Bair Hugger warming device or by Defendants' wrongful conduct, their infections were not actionable and were not "reasonably ascertainable" for purposes of accrual at the time of diagnosis. Plaintiffs had nothing to act upon until they later learned of the device and

the potential causal relationship between forced air warming and infection in their specific orthopedic procedures.

### B. The Statute of Limitations Presents a Question of Fact That Cannot be Resolved as a Matter of Law

Furthermore, Kansas courts have long recognized that the statute of limitations presents a question of fact that cannot be decided as a matter of law and "have repeatedly held that where the evidence is in dispute as to when the fact of injury first became reasonably ascertainable to plaintiffs, it is an issue for determination by the trier of fact. *Olson v. State Highway Comm'n of Kansas*, 235 Kan. 20, 26, 679 P.2d 167, 173 (1984). As the Kansas Supreme Court explained in *Osterhaus v. Toth, 291 Kan. 759, 788 (2011)*, whether a reasonable investigation would have revealed the conduct complained of, and when the fact of injury was reasonably ascertainable, are inherently factual determinations which simply cannot be resolved through summary judgment.

Here, the pleadings and record clearly present factual disputes concerning when Plaintiffs could reasonably have discovered that their injuries were caused by the use of a Bair Hugger warming device and by Defendants' alleged negligence. Kansas law therefore precludes dismissal on statute of limitations grounds at this stage. Plaintiffs should, at the very least, be afforded the opportunity to amend or to develop the factual record, as the question of accrual under Kan. Stat. Ann. § 60-513 is one for the trier of fact, not for resolution as a matter of law on a motion for judgment on the pleadings.

## V. Plaintiffs Should Be Granted Leave to Amend to Allege Additional Facts Related to Defendants' Fraudulent Concealment

Kansas recognizes the doctrine of fraudulent concealment. *Fulghum v. Embarq Corp.*, 785 F.3d 395, 414 n.21 (10th Cir. 2015). ("The doctrine of fraudulent concealment' tolls the running of a statute of limitations when the defendant has prevented the plaintiff from timely discovering the [cause of action]"). Defendants contend that Plaintiffs have not pled fraudulent concealment based on the allegations in the Master Long Form Complaint and their Short Form Complaints. Mot. at 19-21. That argument ignores both the limited purpose of those pleadings and the procedural posture of these cases. As set forth above, the Master Long Form Complaint and Short Form Complaints were intended to be administrative devices.

Since the filing of the Master Long Form Complaint and Short Form Complaints, discovery was conducted in the MDL which has uncovered numerous fraudulent acts by Defendants aimed at concealing the safety risks and lack of efficacy of the Bair Hugger from Plaintiffs, their physicians, and the public at large. As such, Plaintiffs filed a motion for leave to amend their complaints, which include detailed allegations of Defendants' fraudulent acts and how they prevented them from discovering the facts surrounding their injuries which are required to establish fraudulent concealment under Kansas law.

Moreover, it is Plaintiffs' position that additional case specific discovery is needed to fully determine the applicability of fraudulent concealment. Specifically, Plaintiffs need to depose the physicians at their hospitals who decided to purchase and use the Bair Hugger during their surgeries, including the extent to which those decisions were made in reliance

on the misrepresentations by Defendants' sales representatives regarding the safety and efficacy of the Bair Hugger. Without such discovery, Plaintiffs cannot fairly be expected to plead or prove the full scope of Defendants' concealment.

Accordingly, rather than adjudicating Defendants' statute of limitations arguments based on administrative pleadings and an undeveloped record, the Court should grant Plaintiffs leave to amend to plead the newly discovered facts bearing on fraudulent concealment and allow the discovery necessary to address those allegations.

## CONCLUSION

For the reasons set forth above, the Court should deny Defendants Rule 12(c) motion as the discovery rule applies to Plaintiffs' claims and in addition the Court should grant Plaintiffs' motions for leave to amend, so that Plaintiffs can have the same opportunity as the remand plaintiffs to amend their operative pleadings.

Dated: January 20, 2026

Respectfully submitted,

*/s/ Clifford Walston*
Clifford Walston (TX Bar No. 24037666)
Walston, PC
4411 San Felipe Street
Suite 600
Houston, TX 77027
cliff@walstonlegal.com
(713) 300-9600

*Attorney for Pablo Arjona*

*/s/ Seth Sharrock Webb*
Seth Sharrock Webb (#51236)
BROWN AND CROUPPEN, P.C.
4900 Daggett Avenue
St. Louis, MO 63110
Phone: (314)-561-6260
sethw@getb.com

*Attorney for Wanda Harris*

*/s/ Robert D. Cain, Jr.*
Martin D. Crump (MSB #10652)
Robert D. Cain, Jr. (MSB #104283)
Davis & Crump, P.C.
2601 14th Street
Gulfport, MS 39501
Phone: (228) 863-6000
Fax: (228) 864-0907
martincrump@daviscrump.com
robert.cain@daviscrump.com

*Attorneys for Thomas Wood*

## CERTIFICATE OF SERVICE

I, Cliff Walston, hereby certify that on January 20, 2026, I have electronically filed the foregoing Plaintiffs' Joint Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings with the Clerk of Court using the CM/ECF System, which will send notification to all counsel of record.

*/s/ Clifford Walston*
Clifford Walston