KASTER LYNCH FARRAR & BALL LLP

TEXAS | FLORIDA

KYLE W. FARRAR | PARTNER
Kyle@klfblaw.com

May 28, 2026

Hon. David T. Schultz, U.S.M.J.
United States District Court for the District of Minnesota
300 South 4th St, Chambers 9W, Minneapolis, MN 55415

Re: In re Bair Hugger Forced Air Warming Devices Products Liability Litigation; Case No. 15-md-2666; – Callender Bowlin cases.

Dear Judge Schultz:

I have been reading the letters regarding the Callender Bowlin clients, and as a relatively neutral observer but as one of the only active members of Plaintiffs' leadership, I cannot help but ask the question, who cares? Why is 3M spending its time, and this Court's time, on whatever witch hunt this is? Why is the Court acquiescing by ordering deposition and having hearing on cases that are stayed pursuant to Court Order?

3M admits it does nothing substantive with the fact sheets. The only reason they exist as this point is to allow Norton Rose associates to bill hours finding "deficiencies." 3M does not order medical records, does not interview fact witnesses, does not do any actual substantive work based on the fact sheets of cases that are stayed by Court order. So what is the harm that has befallen 3M if a paralegal signed a fact sheet?

3M does not claim that the information contained in the fact sheets is inaccurate or misleading. There is no evidence that any information contained in a fact sheet is wrong. This dispute is whether a client gave permission to his/her lawyer to sign a document containing true facts. Again, who cares?

The only thing in the letters that could even been considered a "harm" to 3M is it claims its allegations, if true, "undermined the integrity of the MDL." The sole utility of this MDL currently is to dismiss cases where dead Plaintiffs had the audacity to not inform their lawyers they died. I am confident the Court will continue to dismiss with prejudice these dead peoples' claims, regardless of whether the Callender Bowlin firm had authority to sign a fact sheet for their clients.

This Court read the October 29, 2015 Order from Judge Hoyt in the Southern District of Texas regarding 3Ms counsel's conduct in this litigation. If the issue is who or what "undermined the integrity of the MDL" that order must be addressed first. But instead, the Court's time and resources are spent on whether nursing home residents in stayed cases recall the scope and timing of authority granted to his counsel on an individual case that is, again, stayed by Court Order. No matter the answer to 3Ms questions, nothing in these letters or depositions will advance this MDL in any meaningful way.

If Mr. Hulse is to be believed, and the issue this Court ought to concern itself with is fraud, then look no further than what the most recent Judge who presided over a Bair Hugger trial said at the conclusion of evidence, in considering whether Plaintiff had offered sufficient evidence of fraud to bust the cap on punitive damages under Texas law. The Honorable Judge Garrison noted:

> Honor.
>
> THE COURT: I -- there is just so much evidence that 3M engaged in fraud. I mean, this case
>
> Sheri Ullrich, Official Court Reporter, 832-927-2418
>
> 178
>
> reeks of it. So I have got to think about Question 8 and I'll decide that one later.
>
> Here is your document back.
>
> MR. TRENT: Thank you, Your Honor.

(Kelso Tr. Trans. 3/13/26, 177:24-178:2) When trial reconvened, the Court found Plaintiff met his burden to bust the cap in Texas.…

But instead of concerning itself with the thousands of people injured by this product, somehow this Court is presented with questions about whether Callender Bowlin's CPA testifying Mr. Bowlin was a good human being waives attorney client privilege. (side note here, it does not and that argument is absurd).

If the Court is entertaining random questions from the gallery, query whether 3M has standing to raise an objection to whether the signature was unauthorized? If it existed, that complaint would seemingly be between the client and their counsel.

I cannot help but wonder how many tens of thousands of dollars has counsel for 3M billed trying to determine if an elderly client committed to a nursing home gave a law firm authority to

sign a document that 3M is going to essentially throw in the trash or not? I’d guess nobody at Norton Rose believes it to be wasted money, as they are the only ones who gain anything from this odyssey. But for the rest of us, who cares? The cost of defense was represented to be nearly $50 Million when the Eighth Circuit decision was issued in August 2021. How many multiples of that have been paid in the nearly five years since that decision, and to what end?

Rule 1 is worth reflection:

> These rules govern the procedures in all actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

Respectfully submitted,

Kyle W. Farrar