**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

In re BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION

This Document Relates to:
GROUP 1-5 ACTIONS

MDL No. 15-2666 (JNE/DTS)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER OF GROUP 1-5 CASES**

---

Following the recent letter from plaintiffs' counsel declaring this MDL a failure (Dkt. No. 3432), a portion of plaintiffs' leadership[1] now seek a premature order transferring Group 1-5 trial candidate cases out of the MDL. The Court should deny their motion (the "Transfer Motion"). Instead, the Court should continue to follow the scheduling orders it set for these cases – schedules that were negotiated and jointly requested by many of the plaintiffs' counsel now litigating these cases. As each workup group's schedule reaches conclusion, the Court should decide what makes the most sense for each case in that group, based on the input of the parties who have worked up those cases.

## ARGUMENT

Much of the Transfer Motion repeats a lopsided historical narrative found in plaintiffs' recent letter and other submissions to the Court. (Dkt. No. 3452-2 at 1-5.) 3M takes this to be "performance for the crowd" rather than an attempt to persuade the Court. 3M focuses this Opposition solely on the Transfer Motion's claim that the MDL does not

---

[1] The motion was signed only by one of the court-appointed lead counsel. It is unclear to 3M whether the other co-lead counsel support the Transfer Motion.

produce enough trials and therefore that the Group 1-5 cases should be transferred immediately, before discovery concludes.

While it is true that many of the Bair Hugger cases selected to be worked up do not result in trials, the reason is the weakness of the cases themselves rather than some procedural misstep by the Court. In the first wave of 14 bellwethers (all worked up in the MDL), 12 were dismissed, one was de-designated as a bellwether, and one was tried to a defense verdict which was then affirmed on appeal. In the second wave of 34 cases (where 26 cases were transferred out of the MDL from the beginning), 25 have been dismissed, 3 settled, 1 was tried to a mistrial, and 5 others remain at various stages of workup.

The fate of these "Wave 1" and "Wave 2" bellwether cases proves that it is not the MDL that prevents cases from getting to trial. The most common reason cases do not make it to trial is that they are dismissed, usually voluntarily by the plaintiffs themselves after their counsel take a hard look at the facts.[2] Some other plaintiffs recognize the enormous difficulty in proving specific causation, or overcoming legal hurdles such as statute of limitations, and decide to resolve their cases with 3M.

This brings us to "Wave 3." Last year, Plaintiffs' leadership called for a significant increase in the number of bellwether cases to increase the number of cases that might reach trial. The Court agreed to that request, ordering the workup of 150 cases (including subsets selected by the parties' leadership) and periodic "refills" to replace cases dismissed by the

---

[2] *See, e.g.*, *Hyden v. 3M*, No. 3:24-cv-00283, Dkt. No. 71 (N.D. Ind. May 23, 2025) (Wave 2 plaintiff stipulated to dismissal with prejudice after 3M filed summary judgment and Fed. R. Evid. 702 motions); *Alvord v. 3M,* No. 3:24-cv-00377 (M.D. Tenn. May 2, 2025) (same).

parties or on motion. The Court has made clear it will decide what happens next in these cases at the end of discovery.

So far, this process has rapidly moved a very large number of cases through discovery – likely far faster than would have occurred if the cases had been transferred.

| Group | Discovery Open | Discovery Close | Discovery Length | Current Status |
|---|---|---|---|---|
| 1 | 8/1/25 | 6/30/26 | 333 days | Expert discovery |
| 2 | 8/29/25 | 7/28/26 | 333 days | Expert discovery |
| 3 | 9/29/25 | 6/28/26 | 272 days | No active cases left in this group[3] |
| 4 | 11/13/25 | 8/12/26 | 272 days | Expert discovery |
| 5 | 2/12/26 | 1/11/27 | 322 days | Fact discovery |

Working up these cases together in the MDL is efficient. *See* 28 U.S. Code § 1407 (coordinated pretrial proceedings are appropriate where they "will promote the just and efficient conduct of such actions."); Transfer Order, Dkt. No. 1. The scheduling orders provided for orderly amendment of complaints and a streamlined process for resolving discovery disputes. Some plaintiffs' counsel have used this workup process as an opportunity to negotiate settlements of their cases with 3M. That is not a failure of the process; it is part of its success. Plaintiffs' counsel who negotiate settlements are not betraying their clients; they are making rational decisions in the interests of their clients.

The core premise of the Transfer Motion is that a case transferred today, in the middle of discovery, will get to trial more quickly than a case transferred at the end of

[3] Notably, the same counsel now complaining about the long road to trial requested that their Group 3 cases be pushed back to Group 5, implicitly pushing back any trial of those cases by six months.

discovery. There is very little evidence to support this view, and much evidence from the Wave 2 cases against it. Some transferee courts may set cases quickly for trial and others may not. That will depend on each transferee court's preferences and caseload.

Another premise of the Transfer Motion is that plaintiffs would win trials if they could just extract their cases from the MDL. Their track record over 13 years of litigation says otherwise. Plaintiffs' leadership have tried four Bair Hugger cases, one in the MDL and three in other venues of their choosing: the Eastern District of Pennsylvania (*Boncher*); Jackson County, Missouri (*O'Haver*); and Harris County, Texas (*Kelso*). They have won none of them. This is no surprise given the requirement to prove specific causation in these cases, on top of the fundamental flaws in plaintiffs' general causation theories.

3M respectfully suggests that plaintiffs' counsel take this time to apply real scrutiny to their case inventories, considering product ID, statutes of limitations and repose, whether there is a confirmed PJI, time to onset of infection, obvious alternative causation in the medical records, and their own clients' desire and capacity to continue litigation. 3M's counsel are ready to meet and confer with plaintiffs' counsel to address and resolve these issues in the docket. This is the process recommended by Magistrate Judge Schultz during the last status conference. In the meantime, the pending Wave 3 cases are moving through the discovery process outlined in the Court's scheduling orders and they will be ready for potential transfer in the coming months, in the order they have been assigned, as the Court deems appropriate following consultation with the counsel in those cases. There is no need to revisit the Court's carefully crafted case workup plan, which was initiated at Plaintiffs' own request. The Court should deny the Transfer Motion.

Dated: June 9, 2026

Respectfully submitted,

*s/Benjamin W. Hulse*
Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
Email: ben.hulse@nortonrosefulbright.com
mary.young@nortonrosfulbright.com

***Co-Lead Counsel for Defendants 3M Company and Arizant Healthcare Inc.***