**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION

MDL No. 15-md-2666 (JNE/DTS)

**ORDER & REPORT AND RECOMMENDATION**

This Document Relates to Case Numbers:
17-cv-2921 (Carosone)
23-cv-2432 (Passante)

---

## INTRODUCTION

Plaintiffs Patrick Carosone and John Passante allege that they developed periprosthetic joint infections following surgeries in which a Bair Hugger Forced Air Warming Device (Bair Hugger) was used. *See* Mandler Decl., Ex. B ¶¶ 7–8, Dkt. No. 3189-2 (Carosone Compl.); Ex. C ¶¶ 7–8, Dkt. No. 3189-3 (Passante Compl.). Plaintiffs assert multiple causes of action against Defendants 3M Company and Arizant Healthcare, Inc., (collectively 3M) sounding in negligence, strict liability, warranty, fraud, and consumer protection. *See* Carosone Compl. 3–4; Passante Compl. 3–4.[1]

3M moves for judgment on the pleadings, arguing that Plaintiffs' claims are barred by New York's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 11–23, Dkt. No. 3187. Carosone opposes the motion, contending it is premature and leave to amend should be granted. *See* Pl.'s Mem. in Opp'n 3–10, Dkt. No. 3231. Passante has not responded. *See generally* Docket.

---

[1] 3M originally filed its Rule 12(c) motion against Case No. 23-cv-2415 (Panipinto) as well. Because that case later settled, the request for dismissal is moot as to that matter.

For the reasons set forth below, the Court finds that 3M's Rule 12(c) motion is not premature, that the claims asserted in the operative complaints are barred or otherwise fail as a matter of law and that Carosone's proposed amendments would be futile. As for Passante, his failure to respond amounts to a waiver. Accordingly, the Court denies Carosone's motion for leave to amend and recommends granting 3M's Motion for Judgment on the Pleadings.

## FINDINGS OF FACT

### I. Plaintiff-Specific Background[2]

#### A. Patrick Carosone

Carosone directly filed his Individual Short Form Complaint on July 14, 2017. Carosone Compl. 5. He alleges that a Bair Hugger device was used during his right knee replacement surgery on December 7, 2004, and that he developed a periprosthetic joint infection (PJI) as a result. *Id.* ¶¶ 7–8. He alleges that from June to December 2007 he received treatment for the infection, including antibiotics, explant surgery, and revisions. *Id.* ¶ 9.

#### B. John Passante

Passante directly filed his Individual Short Form Complaint on August 10, 2023. Passante Compl. 5. He alleges that on October 5, 2009, a Bair Hugger device was used during an unspecified surgery, causing him to develop a PJI. *Id.* ¶¶ 7–8. He alleges that from October 29, 2009, through July 16, 2013, he underwent "multiple procedures," including a below-the-knee amputation. *Id.* ¶ 9.

---

[2] The Court incorporates by reference a discussion of MDL background and pretrial orders from prior decisions on similar motions for judgment on the pleadings. Dkt. No. 3447 at 2.

## II. Plaintiffs' Claims and Pending Motions

In their short form complaints, Plaintiffs assert thirteen causes of action: negligence (Count I); strict liability—failure to warn, defective design, and defective manufacture (Count II); breach of express warranty (Count III); breach of implied warranty of merchantability under New York law (Count IV); violation of the Minnesota Prevention of Consumer Fraud Act (Count V); violation of the Minnesota Deceptive Trade Practices Act (Count VI); violation of the Minnesota Unlawful Trade Practices Act (Count VII); violation of the Minnesota False Advertising Act (Count VIII); consumer fraud and/or unfair and deceptive trade practices under New York law (Count IX); negligent misrepresentation (Count X); fraudulent misrepresentation (Count XI); fraudulent concealment (Count XII); and unjust enrichment (Count XIII). Carosone Compl. 3–4; Passante Compl. 3–4.

Carosone has also moved for leave to amend his Individual Short Form Complaint. Dkt. No. 9 (Carosone 17-cv-2921). In his proposed amended complaint, he asserts ten causes of action: negligence (Count I); failure to warn (Count II); design defect (Count III); breach of express warranty (Count IV); breach of implied warranty (Count V); consumer fraud and/or unfair and deceptive trade practices (Count VI); negligent misrepresentation (Count VII); fraudulent misrepresentation (Count VIII); fraudulent concealment (Count IX); and unjust enrichment (Count X). Webb Decl., Ex. 1 ¶¶ 170–284, Dkt. No. 12-1 (Carosone 17-cv-2921) (hereinafter Prop. Am. Compl.).

On October 31, 2025, 3M moved for judgment on the pleadings. Dkt. No. 3186. 3M argues that Plaintiffs' claims are barred by New York's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 11–23. Carosone opposes the motion, arguing that it is premature and that he should be granted leave to amend his complaint

pursuant to PTO 8. *See* Pl.'s Mem. in Opp'n 3–10. Passante has not responded to the motion or moved for leave to file an amended complaint. *See generally* Docket.

## CONCLUSIONS OF LAW

### I. Legal Standards

#### A. Motion for Leave to Amend

Federal Rules of Civil Procedure Rule 15 provides that "[t]he court should freely give leave" to amend or supplement a pleading before trial, "when justice so requires." Fed. R. Civ. P. 15(a)(2). While there is no absolute right to amend, courts are only justified in denying a request to amend for "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).

3M argues Carosone's motion for leave to amend must be denied because the amendments are futile. *See* Defs.' Reply 2–15, Dkt. No. 3254. To determine futility, the Court applies the same test that is applied for a motion to dismiss a complaint under Rule 12(b)(6). *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (denial of motion for leave to amend on the basis of futility means the court reached the legal conclusion the amended complaint could not withstand a Rule 12(b)(6) motion to dismiss). Rule 12(b)(6) requires a complaint to plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Likewise, a proposed amended

complaint that fails to state a plausible cause of action under the *Twombly* and *Iqbal* pleading standard will be denied as futile. *Id.* at 850–51.

### B. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is also governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In determining whether a plaintiff has stated a plausible claim, the Court considers only the materials necessarily encompassed by the pleadings and the exhibits attached to the complaint. *See Cox v. Mortgage Elect. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012).

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." When considering a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party, but does not accept conclusory allegations of law. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002). "Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law." *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697 (8th Cir. 2013).

## II. Choice of Law

In an MDL, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 999 F.3d 534,

539 (8th Cir. 2021) (applying Texas's claim preclusion law rather than Minnesota's). Under PTO 5, though plaintiffs may directly file in this District, such direct filing is for purposes of pretrial proceedings only; it does not make the District of Minnesota the transferor court. Dkt. No. 5 ¶ 3. Rather, PTO 5 provides that the Court will apply Minnesota choice-of-law rules unless the plaintiff identifies in their initial complaint: (1) their current residence; (2) the date and location of the surgery at issue; and (3) the appropriate venue where the action would have been filed absent direct filing in this District. *Id.* at ¶ 2. If that information is provided, the choice-of-law rules of the identified venue apply. *Id.*

Carosone provided the information required by PTO 5. His initial complaint identifies his residence as New York, alleges that the surgery at issue occurred on December 7, 2004, at the New York Westchester Square Medical Center in Bronx, New York, and identifies the Northern District of New York as the proper venue absent direct filing. Carosone Compl. ¶¶ 2, 5, 7.

Therefore, the Court applies New York's choice-of-law rules. "In tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quoting source omitted). New York has the most significant interest in this case because Carosone is a New York resident whose surgery occurred there. New York courts, however, consider the statute of limitations "procedural rather than substantive." *Howard Univ. v. Borders*, 588 F. Supp. 3d 457, 469 (S.D.N.Y. 2022). For that reason, "[t]raditional choice of law analysis [does] not apply to determine the applicable statute of limitations[,]" *id.* (quoting *Abbott Laboratories v. Feinberg*, 477 F. Supp. 3d 57, 61 (S.D.N.Y. 2020)), and "New York courts generally apply New York's statutes of limitations, even when the injury giving rise to the

action occurred outside New York[,]" *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998). To the extent Minnesota procedural law may apply, the result would be the same. Under Minnesota's borrowing statute, "Minnesota applies the limitations period of the state whose substantive law governs a claim." *Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 595 (8th Cir. 2016). Accordingly, the Court applies New York law, including New York's statute of limitations, to Carosone's claims.[3]

## III. Motion for Leave to Amend

Because Carosone's proposed amendments bear directly on the viability of his claims and, in turn, on 3M's Motion for Judgment on the Pleadings, the Court addresses the motion for leave to amend first. As explained below, because all asserted claims are barred by the applicable statute of limitations, the Court finds that amendment would be futile. Accordingly, Carosone's motion for leave to amend is denied.

### A. Statute of Limitations

#### 1. Counts I–III, VI–X

Counts I–III assert claims for negligence, failure to warn, and design defect. In New York, the statute of limitations for "an action to recover damages for an injury" is three years. N.Y. C.P.L.R. § 214(5). This includes products liability claims alleging strict liability and negligence. *Baker v. Stryker Corp.*, 770 F. App'x 12, 14 (2d Cir. 2019) (collecting cases); *see also Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 165 (S.D.N.Y. 2022). The three-year limitations period begins to run on the date of injury. *Id.*[4]

---

[3] Carosone does not argue to the contrary in his response brief. *See* Pl.'s Mem. in Opp'n 8–11 (applying New York law).

[4] Although New York has a discovery rule, it only applies to injuries "caused by the latent effects of exposure to any substance or combination of substances[.]" N.Y. C.P.L.R. § 214-c(2). Because § 214-c(2) was enacted to address toxic torts, "[g]overning case law

Generally, the date of the injury is "the date when plaintiff first noticed symptoms[.]" *Perciballi v. Ethicon, Inc.*, No. 20-cv-5178, 2021 WL 810339, at *4 (E.D.N.Y. Mar. 3, 2021) (quoting *Baker*, 770 F. App'x at 14).

Counts VII–IX (negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment) sound in fraud. Although § 213(8) sets a six-year limitations period for actions "based upon fraud," § 213(8) cannot be invoked "[w]here the allegations of fraud are only incidental to another cause of action[.]" *N.Y. Seven-Up Bottling Co. v. Dow Chem. Co.*, 466 N.Y.S.2d 478, 480 (N.Y. App. Div. 1983), *aff'd by* 462 N.E.2d 150 (N.Y. 1984)). *Seven-Up Bottling Co.* is instructive. There, the plaintiff built a bottling plant insulated with Styrofoam manufactured and marketed by Dow. *Id.*at 1052. The roof began to leak shortly after construction was finished. *Id.* The plaintiff sued, alleging Dow defectively designed the Styrofoam insulation and fraudulently represented the Styrofoam was a suitable material for insulation. *Id.* The court held that the six-year limitations period for fraud claims did not apply, reasoning that § 213(8) "is only applicable when there would be no injury but for the fraud." *Id.* at 1053. Because "the genesis of plaintiff's claim is that it was injured by a defective product," both claims were subject to the three-year statute of limitations for personal injuries. *Id.* at 1052–53.

There is no daylight between *Seven-Up Bottling Co.* and this case. Carosone alleges one injury: a PJI. *Compare* Prop. Am. Compl. ¶ 180 ("As a direct and proximate result of Defendants' [negligence], Plaintiff suffered an infection. . . ."), *with id.* ¶ 276 ("As

---

holds that [Carosone's] injury does not arise from latent exposure to a substance within the meaning of § 214-c[.]" *Baker*, 770 F. App'x 12 at 15 (reaching this conclusion as to a Stryker implant). Carosone concedes as much by failing to argue to the contrary. *Doll v. Trellis Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) (collecting cases).

a direct and proximate result of Defendants' [fraudulent concealment], Plaintiff suffered an infection. . . ."). For all of Carosone's fraud claims, the theory is that 3M's omissions and misrepresentations resulted in the use of the allegedly defective Bair Hugger device in his surgery. So here, as in *Seven-Up Bottling Co.*, the genesis for Carosone's claims is an injury caused by an allegedly defective product. It follows that his fraud claims rise and fall with his personal injury claims for statute of limitations purposes. *See Seven-Up Bottling Co.*, 466 N.Y.S.2d at 480 ("Since we find that plaintiff's strict products liability action is time barred, its cause of action sounding in fraud must likewise be dismissed[.]").

Carosone disagrees, arguing that his fraud claims are governed by § 213(8). Pl.'s Mem. in Opp'n 8–10. For support, he relies on *Swersky v. Dreyer & Traub*, 643 N.Y.S.2d 33 (N.Y. App. Div. 1996), *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146 (2d Cir. 1995), and *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993). Pl.'s Mem. in Opp'n 8–10. But each of those cases addressed the merits of fraud claims on a motion to dismiss or at summary judgment, not the applicable statute of limitations. *Swersky*, 643 N.Y.S.2d at 35–38; *Banque Arabe*, 57 F.3d at 153–58; *Brass*, 987 F.2d at 150–53. The merits of fraud claims under New York law are not relevant to the question at hand—whether § 213(8) or § 214(5) applies. And he offers no additional argument on this issue. *See* Pl.'s Mem. in Opp'n 8–10. Absent a meaningful reason to diverge from *Seven-Up Bottling Co.*, the Court applies § 214(5)'s three-year limitations period to Counts VII–IX.

Count X is a claim for unjust enrichment. "[T]he statute of limitations applicable to an unjust enrichment claim depends on the nature of the substantive remedy plaintiff seeks." *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013) (citing *Loengard v.*

*Santa Fe Indus., Inc.,* 70 N.Y.2d 262, 266 (N.Y. 1987)). "The limitations period is six years where plaintiff seeks an equitable remedy, but three years where plaintiff seeks monetary damages." *Id.* (citing *Ingrami v. Rovner,* 847 N.Y.S.2d 132, 135 (N.Y. App. Div. 2007)). The limitations period begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (quoting *Coombs v. Jervier,* 906 N.Y.S.2d 267, 269 (N.Y. App. Div. 2010)). As a remedy for his unjust enrichment claim, Carosone seeks monetary damages for his injuries (i.e., the PJI) allegedly caused by the Bair Hugger device. Prop. Am. Compl. ¶ 284. Because he seeks monetary, not equitable, relief, New York's three-year limitations period applies. The alleged wrongful act—which is difficult to divine from the proposed amended complaint—must have necessarily occurred before Carosone sought treatment for his PJI.

Count VI is Carosone's consumer protection claim under New York General Business Law §§ 349 and 350. New York courts have concluded that claims under §§ 349 and 350 are governed by C.P.L.R. § 214(2)'s three-year limitations period. *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007) (collecting cases). The limitations period begins to run "when plaintiff is injured by the deceptive act or practice that violated the statute," not "upon any later date when discovery of the alleged deceptive practice is said to occur." *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011). Here, that three-year period started to run (at the latest) when Carosone began treatment for his PJI.

Applying § 214, Carosone went to the hospital "with complaints of right knee pain and inflammation" in June 2007 and was diagnosed with a PJI. *See* Prop. Am. Compl.

¶ 38. Therefore, Counts I–III and VI–X accrued (at the latest) in June 2007 when Carosone began experiencing symptoms and sought treatment. Because Carosone filed suit in 2017, well past the three-year limitations period, Counts I–III and VI–X are time-barred.

**2. Counts IV and V**

Counts IV and V are Carosone's express and implied breach of warranty claims. Breach of warranty claims "are governed by the four year statute of limitations contained in Article 2 of the New York's Uniform Commercial Code[.]" *Orlando v. Novurania of Am., Inc.*, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001). "The action accrues when the breach occurs and, in the absence of a warranty explicitly extending to future performance, a breach occurs when tender of delivery is made." *Heller v. U.S. Suzuki Motor Corp.*, 477 N.E.2d 434, 435 (N.Y. 1985). "[T]he statute begins to run when 'the product is placed in the stream of commerce or at the time of sale by the manufacturer.'" *Baker*, 770 F. App'x at 15 (quoting *Schrader v. Sunnyside Corp.*, 747 N.Y.S.2d 26, 28 (N.Y. App. Div. 2002)). Because a medical device is necessarily sold or placed in the stream of commerce before being used during a surgery, the limitations period in medical products liability cases begins to run (at the latest) when the surgery occurred. *See Baker*, 770 F. App'x at 15; *see also Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 176 (S.D.N.Y. 2022) ("Here, the device at issue, which was implanted into Rouviere, must have been placed in the stream of commerce or been sold prior to the device being implanted into Rouviere on August 14, 2012."). Carosone's surgery took place on December 20, 2005, more than ten years before he filed suit in 2017. New York's four-year statute of limitations thus bars his breach of warranty claims.

### 3. Tolling

Carosone argues that the statute of limitations period for his fraud claims was tolled under C.P.L.R. § 213(8). Pl.'s Mem. in Opp'n. 8–11. Section 213(8) provides that for actions based upon fraud, "the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8). According to Carosone, because his fraud claims are governed by § 213(8), and the proposed amended complaint adequately pleads his inability to discovery the fraud due to 3M's fraudulent concealment, his fraud claims are not futile. Pl.'s Mem. in Opp'n 8–11. The problem for Carosone is that § 214(5), not § 213(8), governs his fraud claims. Supra, Part III.A.1. Therefore, Carosone's reliance on § 213(8)'s discovery rule—and 3M's alleged fraudulent concealment—is misplaced.

In theory, where a plaintiff alleges that a defendant fraudulently concealed a cause of action, the doctrine of equitable estoppel could toll the statute of limitations. *Pearl v. City of Long Beach*, 296 F.3d 76, 81–88 (2d Cir. 2002) (describing the doctrine). The doctrine applies when "a plaintiff is 'induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.) (quoting *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713, 716 (1978)). But Carosone did not invoke equitable estoppel in his response; his response brief did not discuss equitable estoppel, let alone identify the doctrine's elements or cite any cases applying it. *See* Pl.'s Mem. in Opp'n 8–11. Instead, he only invoked § 213(8)'s discovery rule. The failure to raise an argument is a waiver. *Doll v.*

*Trellis Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) (collecting cases). Because Carosone has failed to invoke equitable estoppel, the argument has been waived.

### B. Conclusion as to Amendment

As explained above, Carosone's proposed amendments are barred by New York's statutes of limitations. Because his proposed claims are time-barred, amendment would be futile as those claims could not withstand a Rule 12(b)(6) motion to dismiss. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). Accordingly, the Court denies Carosone's motion for leave to amend.

## IV. Motion for Judgment on the Pleadings

Having found that Carosone's proposed amended complaint would be futile, the Court turns to 3M's Motion for Judgment on the Pleadings. 3M argues that Plaintiffs' claims are either barred by New York's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 11–23. Carosone counters that the motion is premature and should not be considered at this stage. *See* Pl.'s Mem. in Opp'n 4–8. As explained below, the Court finds the motion is not premature, that Counts I–IV and IX–XIII are barred by New York's statutes of limitations, and that Counts V–VIII fail as a matter of law. Accordingly, the Court recommends granting 3M's Motion for Judgment on the Pleadings in its entirety.

### A. Timing of the Rule 12(c) Motion

Carosone argues that 3M's motion is premature. See Pl.'s Mem. in Opp'n 4–8. Having already found that 3M's motions for judgment on the pleadings are not premature, R. & R. 5–10, Dkt. No. 3445, the Court incorporates its prior analysis by reference.

### B. Counts I–IV and IX–XIII

In Counts I–IV and IX–XIII, Carosone asserts claims for negligence, strict liability, breach of express warranty, breach of implied warranty of merchantability under New York law, consumer fraud and deceptive trade practices under New York law, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and unjust enrichment. Carosone Compl. 3–4. These claims fail for the same reasons set forth above. *See supra*, Part III.A. Because Counts I–IV and IX–XIII are barred by New York's statutes of limitations, the Court recommends that 3M's motion be granted as to those counts.

### C. Counts V–VIII

Counts V–VIII assert claims under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act. Carosone Compl. 4. "[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156 (D. Minn. 2023) (quoting *Ferrari v. Best Buy Co.*, 14-cv-2956, 2015 WL 2242128 at *9 (D. Minn. May 12, 2015)). Furthermore, "there is a presumption against the extra-territorial application of a state's statutes." *Johannessohn v. Polaris Indus., Inc.*, 450

F. Supp. 3d 931, 961-62 (D. Minn. 2020) (quoting *Arnold v. Cargill, Inc.*, No. CIV. 012086, 2002 WL 1576141, at *2 (D. Minn. July 15, 2002)).

Here, Carosone cannot assert claims under Minnesota's consumer protection statutes. He is a New York resident whose alleged injury occurred in New York. Courts have repeatedly held that nonresidents may not assert claims under Minnesota's consumer protection statutes where the alleged injury or conduct occurred outside of Minnesota. *See, e.g., Butler v. 3M Co.*, No. 2:24-CV-01587, 2024 WL 5054884, at *5 (S.D. Ohio Dec. 9, 2024) (holding a nonresident lacked standing to assert claims under Minnesota's consumer protection statutes because the alleged injury occurred out-of-state); *Rouse*, 694 F. Supp. 3d at 1157 (same); *Ferrari*, 2015 WL 2242128 at *10 (same); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1233–34 (D. Kan. 2015). Accordingly, the Court recommends the motion be granted as to Counts V–VIII.

**D. Passante's Failure to Respond**

Passante never responded to 3M's Rule 12(c) motion, nor did he file a request for leave to amend his complaint. The failure to respond to a motion or argument constitutes a waiver. *Doll v. Trellis Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) (collecting cases). Waiver alone is sufficient to grant a request for dismissal when a party completely fails to respond. *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013). Because he failed to respond, the Court recommends granting 3M's Motion for Judgment on the Pleadings as to Passante.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED:** Plaintiff Patrick Carosone's Motion for Leave to Amend Complaint (Dkt. No. 9, 17-cv-2921) is **DENIED**.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT: Defendants' Motion for Judgment on the Pleadings (Dkt. No. 3186) be GRANTED in its entirety and WITH PREJUDICE.

Dated: July 22, 2026

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court. It is not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).