**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IN RE BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION

MDL No. 15-md-2666 (JNE/DTS)

**ORDER & REPORT AND RECOMMENDATION**

This Document Relates to Case Number:
25-cv-1497 (Arjona)
17-cv-2634 (Harris)
17-cv-4690 (Wood)

---

## INTRODUCTION

Plaintiffs Pablo Arjona, Wanda Harris, and Thomas Wood allege they developed periprosthetic joint infections following surgeries in which a Bair Hugger Forced Air Warming Device (Bair Hugger) was used. *See* Mandler Decl., Ex. B ¶¶ 7-8, Dkt. No. 3283-2 (Arjona Compl.); Ex. C ¶¶ 7-8, Dkt. No. 3283-3 (Harris Compl.); Ex. D ¶¶ 7-8, Dkt. No. 3283-4 (Wood Compl.). Plaintiffs assert multiple causes of action against Defendants 3M Company and Arizant Healthcare, Inc., (collectively 3M) sounding in negligence, strict liability, warranty, fraud, and consumer protection. *See* Arjona Compl. 3-4; Harris Compl. 3-4; Wood Compl. 3-4.

3M moves for judgment on the pleadings, arguing Plaintiffs' claims are barred by Kansas's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 10-21, Dkt. No. 3281. Plaintiffs oppose the motion, contending it is premature and leave to amend should be granted. *See* Pls.' Mem. in Opp'n 4-14, Dkt. No. 3313.

For the reasons set forth below, the Court finds that 3M's Rule 12(c) motion is not premature, that the claims asserted in the operative complaints are barred or otherwise

fail as a matter of law and that Plaintiffs' proposed amendments would be futile. Accordingly, the Court denies Plaintiffs' motions for leave to amend and recommends that 3M's Motion for Judgment on the Pleadings be granted.

## FINDINGS OF FACT

### I. Plaintiff-Specific Background[1]

#### A. Pablo Arjona

Plaintiff Pablo Arjona directly filed his Individual Short Form Complaint on April 16, 2025. Arjona Compl. 5. He alleges a Bair Hugger device was used during an unspecified surgery on March 2, 2020, and he developed a periprosthetic joint infection (PJI) as a result. *Id.* ¶¶ 7-8. He alleges that from April 10, 2020 to November 19, 2020, he received extensive treatment for the infection. *Id.* ¶ 9.

#### B. Wanda Harris

Plaintiff Wanda Harris directly filed her Individual Short Form Complaint on July 7, 2017. Harris Compl. 5. She alleges that on March 28, 2005, a Bair Hugger device was used during her left total knee arthroplasty, causing her to develop a PJI. *Id.* ¶¶ 7-8. She alleges that from November 17, 2005 and July 3, 2006, she underwent treatment for the infection, including explantation, placement of an antibiotic spacer, and irrigation and debridement procedures *Id.* ¶ 9.

#### C. Thomas Wood

Plaintiff Thomas Wood directly filed his Individual Short Form Complaint on October 13, 2017. Wood Compl. 5. He alleges a Bair Hugger device was used during his

[1] The Court incorporates by reference a discussion of MDL background and pretrial orders from prior decisions on similar motions for judgment on the pleadings. Dkt. No. 3447 at 2.

right total knee arthroplasty on April 1, 2009, which caused him to develop a PJI. *Id.* ¶¶ 7-8. He alleges that in April and May 2009, he underwent multiple and irrigation and debridement procedures to treat the infection. *Id.* ¶ 9.

## II. Plaintiffs' Claims and Pending Motions

In their Individual Short Form Complaints, Plaintiffs assert eighteen causes of action: negligence (Count I); strict liability—failure to warn, defective design, and defective manufacture (Count II); breach of express warranty (Count III); breach of implied warranty of merchantability under Kansas law (Count IV); violation of the Minnesota Prevention of Consumer Fraud Act (Count V); violation of the Minnesota Deceptive Trade Practices Act (Count VI); violation of the Minnesota Unlawful Trade Practices Act (Count VII); violation of the Minnesota False Advertising Act (Count VIII); consumer fraud and/or unfair and deceptive trade practices under Kansas law (Count IX); negligent misrepresentation (Count X); fraudulent misrepresentation (Count XI); fraudulent concealment (Count XII); loss of consortium (Count XIII); unjust enrichment (Count XIV); common law fraud (Count XV); constructive fraud (Count XVI); gross negligence (Count XVII); and negligence infliction of emotional distress (Count XVIII).[2] Arjona Compl. 3-4; Harris Compl. 3-4; Wood Compl. 3-4.

Plaintiffs have also moved for leave to amend their Individual Short Form Complaints. Dkt. No. 14 (Arjona 25-cv-1497); Dkt. No. 18 (Harris 17-cv-2634); Dkt. No. 16 (Wood 17-cv-4690). In their proposed amended complaints, Plaintiffs assert eleven

---

[2] Although Plaintiffs' claims are discussed collectively for ease of reference, Harris and Wood do not assert claims for loss of consortium, common law fraud, constructive fraud, gross negligence, and negligent infliction of emotional distress (Counts XIII and XV-XVIII). *See* Harris Compl. 4; Wood Compl. 4.

causes of action: negligence (Count I); gross negligence (Count II); failure to warn (Count III); design defect (Count IV); breach of express warranty (Count V); breach of implied warranty (Count VI); consumer fraud and/or unfair and deceptive trade practices under Kansas law (Count VII); negligent misrepresentation (Count VIII); fraudulent misrepresentation (Count IX); fraudulent concealment (Count X); and unjust enrichment (XI). Walston Decl., Ex. 1 ¶¶ 169-291, Dkt. No. 16-1 (Arjona 25-cv-1497) (hereinafter Arjona Prop. Am. Compl.); Webb Decl., Ex. 1 ¶¶ 167-281, Dkt. No. 22-1 (Harris 17-cv-2634) (hereinafter Harris Prop. Am. Compl.); Cain, Jr. Decl., Ex. 1 ¶¶ 171-293, Dkt. No. 20-1 (Wood 17-cv-4690) (hereinafter Wood Prop. Am. Compl.).[3]

On October 1, 2025, 3M moved for judgment on the pleadings, Dkt. No. 3086, arguing Plaintiffs' claims are barred by Kansas's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 10-21. Plaintiffs oppose the motion, arguing it is premature and they should be granted leave to amend their complaints pursuant to PTO 8. *See* Pls.' Mem. in Opp'n 4-14.

## CONCLUSIONS OF LAW

### I. Legal Standards

#### A. Motion for Leave to Amend

Federal Rules of Civil Procedure Rule 15 provides that "[t]he court should freely give leave" to amend or supplement a pleading before trial, "when justice so requires." Fed. R. Civ. P. 15(a)(2). While there is no absolute right to amend, courts are only justified in denying a request to amend for "undue delay, bad faith, dilatory motive, repeated failure

[3] In her proposed amended complaint, Harris does not assert a claim for gross negligence (Count II). *See* Harris Prop. Am. Compl. ¶¶ 167-281.

to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).

3M argues Plaintiffs' motions for leave to amend must be denied because the amendments are futile. *See* Defs.' Reply 6-18, Dkt. No. 19 (Arjona 25-cv-1497); Dkt. No. 24 (Harris 17-cv-2634); Dkt. No. 23 (Wood 17-cv-4690). To determine futility, the Court applies the same test that is applied for a motion to dismiss a complaint under Rule 12(b)(6). *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (denial of motion for leave to amend on the basis of futility means the court reached the legal conclusion the amended complaint could not withstand a Rule 12(b)(6) motion to dismiss). Rule 12(b)(6) requires a complaint to plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Likewise, a proposed amended complaint that fails to state a plausible cause of action under the *Twombly* and *Iqbal* pleading standard will be denied as futile. *Id.* at 850-51.

**B. Motion for Judgment on the Pleadings**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is also governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In determining whether a plaintiff has stated a plausible claim, the Court considers only the materials necessarily encompassed by the pleadings and the exhibits attached to the complaint. *See Cox v. Mortgage Elect. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012).

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." When considering a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party, but does not accept conclusory allegations of law. *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). "Judgment on the pleadings is appropriate if there is no material issue of fact to be resolved and the moving party is entitled to judgment as a matter of law." *Buddy Bean Lumber Co. v. Axis Surplus Ins. Co.*, 715 F.3d 695, 697 (8th Cir. 2013).

## II. Choice-of-Law

In an MDL, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996); *see also In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 999 F.3d 534, 539 (8th Cir. 2021) (applying Texas's claim preclusion law rather than Minnesota's). Under PTO 5, though plaintiffs may directly file in this District, such direct filing is for purposes of pretrial proceedings only; it does not make the District of Minnesota the transferor court. Dkt. No. 5 ¶ 3. Rather, PTO 5 provides that the Court will apply Minnesota choice-of-law rules unless the plaintiff identifies in their initial complaint: (1) their current residence; (2) the date and location of the surgery at issue; and (3) the appropriate venue where the action would have been filed absent direct filing in this District. *Id.* ¶ 2. If that information is provided, the choice-of-law rules of the identified venue apply. *Id.*

Plaintiffs provided the information required by PTO 5. Arjona's initial complaint identifies his residence as Kansas, alleges that the surgery at issue occurred on March 2, 2020, at Manhattan Surgical Hospital, in Manhattan, Kansas, and identifies the District of Kansas as the proper venue absent direct filing. Arjona Compl. ¶¶ 2, 5, 7. Harris's initial complaint likewise identifies her residence as Kansas, alleges that the surgery at issue occurred on March 28, 2005, at Providence Medical Center in Kansas City, Kansas, and identifies the District of Kansas as the proper venue absent direct filing. Harris Compl. ¶¶ 2, 5, 7. Lastly, Wood identified his residence as Kansas, alleges that the surgery at issue occurred on April 1, 2009, at the University of Kansas Hospital in Kansas City, Kansas, and identifies the District of Kansas as the proper venue absent direct filing. Wood Compl. ¶¶ 2, 5, 7. Accordingly, under PTO 5, Kansas choice-of-law rules govern.

In Kansas, tort claims are governed by the doctrine of *lex loci delicti*, under which "courts apply the substantive law of the state where the wrong occurs, meaning the place where the injury was sustained." *Dragon v. Vanguard Indus*., Inc., 89 P.3d 908, 914 (Kan. 2004). Generally, statutes of limitations are procedural matters, *Knoll v. Olathe Sch. Dist. No. 233*, 439 P.3d 313, 316 (Kan. 2019), and Kansas applies its own procedural law, *see M & I Marshall & Ilsley Bank v. Higdon*, 556 P.3d 498, 503 (Kan. 2024) ("All procedural matters are governed by the law of the forum state."). To the extent Minnesota procedural law may apply, the result would be the same. Under Minnesota's borrowing statute, "Minnesota applies the limitations period of the state whose substantive law governs a claim." *Blake Marine Grp. v. CarVal Invs. LLC*, 829 F.3d 592, 595 (8th Cir. 2016). Because Kansas's substantive law governs, the Court applies Kansas law, including Kansas's statutes of limitations, to Plaintiffs' claims..

## III. Motion for Leave to Amend

Because Plaintiffs' proposed amendments bear directly on the viability of their claims and, in turn, on 3M's Motion for Judgment on the Pleadings, the Court addresses Plaintiffs' motions for leave to amend first. As explained below, because all asserted claims are barred by the applicable statute of limitations, the Court finds that amendment would be futile. Accordingly, Plaintiffs' motions for leave to amend are denied.

### A. Counts I-XI

In Kansas, the statute of limitations for personal injury actions is two years. Kan. Stat. Ann. § 60-513(a)(4). 3M argues that all of Plaintiffs' claims are subject to this two-year limitations period because "[t]he only factual allegations of harm pleaded by Plaintiffs relate to personal injuries[.]" Defs.' Mem. 13. By failing to dispute this point, Pls.' Mem. in Opp'n 9-12, Plaintiffs have waived any contrary argument, *Doll v. Trellis Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084, at *3 (D. Minn. Sept. 30, 2024) (collecting cases).

Under Kansas law, the statute of limitations begins to run when "the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party[.]" Kan. Stat. Ann. § 60-513(b). "The term 'substantial injury' in K.S.A. 60-513(b) means 'the victim must have sufficient ascertainable injury to justify an action for recovery of the damages'; in other words, 'actionable injury.' " *Lopez v. Davila*, 526 P.3d 674, 683 (Kan. Ct. App. 2023) (quoting *LCL, LLC v. Falen*, 422 P.3d 1166, 1174 (Kan. 2018)). Although Kansas recognizes a limited discovery rule, "[i]t is only when the injured party is unaware of the fact of injury (i.e., unaware that he or she has been injured) that

the limitation period starts later." *Dumler v. Conway*, 312 P.3d 385, 391-92 (Kan. Ct. App. 2013).

Here, Plaintiffs had sustained a substantial injury, at the latest, when they first sought treatment for their alleged PJIs. By that point, Plaintiffs were aware that they had developed post-operative infections requiring medical intervention. Such injuries were sufficiently ascertainable to support a cause of action and therefore constituted "substantial injury" under § 60-513(b). *See Lopez*, 526 P.3d at 683. The fact that Plaintiffs may not have known the alleged cause of their injuries—or may not yet have associated those injuries with the Bair Hugger device—does not delay accrual under Kansas law. *See Foxfield Villa Assocs., LLC v. Robben*, 449 P.3d 1210, 1216 (Kan. Ct. App. 2019) (holding that the "limitation period beg[an] once [plaintiff] knew it was injured, not when [plaintiff] discovered *who* injured it."); *see also Friends Univ. v. W. R. Grace & Co.*, 608 P.2d 936, 940 (Kan. 1980) (holding the statute of limitations began to run when the plaintiff's roof started to leak even, though the plaintiff "had not determined the exact scientific cause of the leaking"). Rather, the delayed-accrual provision applies only when a plaintiff is unaware that he or she has been injured in the first instance. *See Dumler*, 312 P.3d at 391-92; *see also Wagner v. Ranney*, 303 P.3d 1278 (Kan. Ct. App. 2013) (holding that a plaintiff's failure to associate her injury with the defendant's conduct did not postpone accrual where the injury itself was immediately apparent). Because Plaintiffs necessarily knew they had been injured when they sought treatment for their infections, the discovery rule does not apply.

Arjona alleges he first received treatment on April 10, 2020, but did not sue until April 16, 2025; Harris first received treatment on November 17, 2005, but did not sue until

July 7, 2017; and Wood first received treatment on April 29, 2009, but did not sue until October 13, 2017. Arjona Prop. Am. Compl. ¶ 32; Harris Prop. Am. Compl. ¶ 35; Wood Prop. Am. Compl. ¶ 35. Because each Plaintiff filed suit well beyond Kansas's two-year statute of limitations, Counts I-XI are time-barred.

Plaintiff's reliance on *Hecht v. First Nat'l Bank & Trust Co*. does not alter this conclusion. 490 P.2d 649 (Kan. 1971). There, the Kansas Supreme Court held that summary judgment was inappropriate because there was a genuine dispute as to when the plaintiff's radiation injury became "substantial" and reasonably ascertainable. *See id.* at 654-57. Although the plaintiff experienced an adverse skin reaction during radiation therapy, her treating physicians repeatedly advised that the condition was healing and likely temporary, and the record did not conclusively establish when she could reasonably have known that she had sustained a permanent, actionable injury. *See id.* Here, by contrast, there is no comparable dispute regarding the existence of Plaintiffs' injuries. Plaintiffs allege that they developed post-operative infections requiring medical treatment and were aware of those infections when they sought care. Their argument is not that they were unaware of their injuries, but that they did not know the injuries were allegedly caused by the Bair Hugger device. Kansas law, however, distinguishes between knowledge of an injury and knowledge of its cause. See *Foxfield Villa Assocs*., 449 P.3d at 1216; *Friends Univ.,* 608 P.2d at 940; *Dumler*, 312 P.3d at 391-92; *Wagner*, 303 P.3d at 1278. Because Plaintiffs' injuries were sufficiently ascertainable when they required treatment, *Hecht* does not support delaying accrual until Plaintiffs allegedly discovered the Bair Hugger device's potential involvement.

Plaintiffs further argue that "Kansas law [] precludes dismissal on statute of limitations grounds at this stage." Pls.' Mem. in Opp'n 12. Not so. Several Kansas courts have dismissed claims that were, on their face, untimely under the statute of limitations. *Bott v. State*, 638, 521 P.3d 740, 749 (Kan. Ct. App. 2022) (affirming dismissal where plaintiff failed to bring cause of action within two years after suffering an actionable injury); *Doyle v. Nordstrom NA*, 478 P.3d 340 (Kan. Ct. App. 2021) (dismissing fraud claim that was brought "outside of the statute of limitations period"); *Meyer Land & Cattle Co. v. Lincoln Cnty. Conservation Dist.,* 31 P.3d 970, 974 (Kan. Ct. App. 2001) ("when a complaint establishes on its face that the applicable statute of limitations has run on one or more claims, those claims are subject to dismissal"). As in *Bott*, *Doyle,* and *Meyer*, Plaintiffs' claims are untimely on their face and therefore subject to dismissal.

**B. Tolling**

Plaintiffs argue that the statute of limitations must be tolled because 3M fraudulently concealed the risks of the Bair Hugger device. Kansas law is not entirely clear as to whether fraudulent concealment tolls the statute of limitations for claims that do not sound in fraud. *See Freebird, Inc. v. Merit Energy Co*., 883 F. Supp. 2d 1026, 1036 (D. Kan. 2012) (noting that "the Kansas Supreme Court has not been entirely consistent in applying the fraudulent concealment doctrine to toll the statute of limitations"). The Kansas Supreme Court has stated that the doctrine applies only when a plaintiff's claim is validly grounded in fraud. *Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996) (holding fraudulent concealment "only tolls the time in which a fraud action may be filed if the plaintiff's claim for relief is validly grounded in fraud on its face.") (citing *McCoy v. Wesley Hospital & Nurse Training School*, 362 P.2d 841 (Kan. 1961)). Under this rule, a plaintiff

may not rely on allegations of concealment to toll the limitations period where the underlying claim is, in substance, one for negligence or another non-fraud theory. *See id.* (holding that fraudulent concealment could not extend the limitations period for a medical malpractice claim); *see also Pritchard v. Nichols Commc'ns, Inc.*, No. 86,875, 2002 WL 35657581, at *2 (Kan. Ct. App. 2002) ("A claim of fraudulent concealment cannot be sustained when the claim is for negligence."). Federal courts applying Kansas law have likewise concluded that the doctrine generally applies only to claims sounding in fraud. *See, e.g., Miller v. Gen. Motors, LLC,* 773 F. Supp. 3d 461, 516 (E.D. Mich. 2025) ("Miller's implied warranty claim is not a fraud claim, so fraudulent concealment does not toll the statute of limitations."); *Twin Creek Env't Servs., LLC v. Pace Analytical Servs., LLC*, No. 17-2633, 2018 WL 1151513, at *3 (D. Kan. Mar. 5, 2018) (holding fraudulent concealment "does not toll the statute of limitations for an action founded on contract.").

*Friends University v. W.R. Grace & Co.*, however, creates some uncertainty. 608 P.2d 936, 940 (Kan. 1980). There, the plaintiff asserted claims for negligence, strict liability, and breach of warranty, and argued that the defendants' conduct tolled the applicable limitations periods. *Id*. at 938-39. Rather than reject the argument because the claims did not sound in fraud, the Kansas Supreme Court considered whether the defendants had affirmatively induced the plaintiff to delay filing suit or had engaged in conduct designed to prevent discovery of the cause of action. *Id.* at 941-42. Based on *Friends*, the Tenth Circuit later observed that the rule limiting fraudulent concealment to claims grounded in fraud "no longer appears to be true." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 633 (10th Cir. 1993). But *Friends* did not expressly hold that fraudulent concealment applies to non-fraud claims. And in *Bonin*, decided after *Friends*

and *Baker*, the Kansas Supreme Court explicitly held that fraudulent concealment does not extend the limitations period unless the plaintiff's claim is validly grounded in fraud. *Bonin,* 929 P.2d at 762. Thus, although *Friends* leaves some uncertainty as to the scope of the doctrine, the weight of Kansas authority supports the conclusion that fraudulent concealment applies only to claims that sound in fraud.

Here, Plaintiffs' claims do not, in substance, sound in fraud. Although Plaintiffs' claims are labeled as fraudulent misrepresentation, fraudulent concealment, and consumer fraud, the gravamen of Plaintiffs' allegations is personal injuries resulting from an allegedly defective product—the Bair Hugger device. Plaintiffs allege no injuries independent of the product itself. At bottom, this is a products liability action pleaded under multiple theories. *See Kirtland v. Tri-State Ins*. Co., 556 P.2d 199, 201 (Kan. 1976) (holding that "the nature of the cause of action determines the applicable statute of limitations."). Accordingly, under *Bonin* and the weight of Kansas authority, the fraudulent concealment doctrine likely does not toll the limitations periods applicable to Plaintiffs' claims. Regardless, even assuming the doctrine could apply, Plaintiffs have not plausibly alleged the facts necessary to invoke it.

"In order to toll a limitations period on the basis of fraudulent concealment, the plaintiff must establish affirmative conduct by the defendant, distinct from any conduct supporting a cause of action for damages, that prevented the plaintiff from realizing or bringing a timely cause of action." *Doe v. St. Benedict's Abbey*, 189 P.3d 580 (Kan. Ct. App. 2008). Moreover, the plaintiff must "explain why due diligence did not lead or could not have led to discovery of the facts and the cause of action." *Friends Univ*., 608 P.2d at 941 (citation omitted). "An essential element of fraudulent concealment is the plaintiff's

reliance upon the defendant's attempts to prevent the plaintiff from bringing suit." *St. Benedict's Abbey*, 189 P.3d at 580.

Plaintiffs do not plead the facts necessary to toll their claims. In particular, Plaintiffs fail to plausibly allege that they relied on any act or representation by 3M that actually prevented them bringing their claims. *See Sellens v. Am. States Ins. Co.,* 97 P.3d 1072 (Kan. Ct. App. 2004) (explaining that fraudulent concealment requires an act of an "affirmative nature designed to prevent, *and which does prevent*, discovery of the cause of action.") (internal quotation marks and citation omitted). Plaintiffs do not identify what specific representation they encountered, when they encountered it, how they relied on it, or how that reliance prevented them from bringing their claims within the applicable limitations period. *See St. Benedict's Abbey*, 189 P.3d at 580 (holding the fraudulent concealment doctrine did not apply because plaintiff "failed to demonstrate reliance upon any conduct of the [defendant] that prevented [plaintiff] from discovering his claims"). They do not allege that they sought information but were affirmatively misled in a manner that prevented suit. And they do not allege that any particular act by 3M caused them to forgo investigation or postpone filing. *See Doe v. Popravak*, 421 P.3d 760, 770 (Kan. Ct. App. 2017) (affirming dismissal where plaintiff failed to allege "what actions . . . the defendants took to prevent him from discovering" his claims). Instead, Plaintiffs allege generally that they relied upon 3M's misrepresentations in deciding to use the Bair Hugger device. *See* Arjona Prop. Am. Compl. ¶ 162; Harris Prop. Am. Compl. ¶ 136; Wood Prop. Am. Compl. ¶ 160. Such an attenuated and conclusory allegation does not establish that Plaintiffs relied on 3M's alleged efforts to prevent suit.

Nor do Plaintiffs explain why reasonable diligence could not have led to discovery of their potential claims. Plaintiffs' proposed amended complaints cite twenty-five published studies, spanning from 1997 to 2022, that allegedly disclose an increased risk of infection associated with the Bair Hugger device. *See* Arjona Prop. Am. Compl. ¶ 107; Harris Prop. Am. Compl. ¶ 107; Wood Prop. Am. Compl. ¶ 106. And, as to Arjona, the Bair Hugger MDL had been pending for years—and thousands of related actions had been publicly filed—before his March 2020 surgery and subsequent infection. Given the easily accessible and highly publicized information allegedly linking Bair Hugger to PJIs, a reasonably diligent plaintiff could—and would—have discovered a potential claim. *See City of Bos. v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42-43 (D. Mass. 2025), *aff'd sub nom. City of Bos. v. OptumRx, Inc.*, 169 F.4th 58 (1st Cir. 2026). The same MDL specific reasoning does not apply to Harris and Wood because they filed their actions in 2017, within two years after the MDL was established in December 2015. Unlike Arjona, they cannot be charged with ignoring years of publicly available MDL litigation. Their allegations nevertheless remain deficient for the more fundamental reason that neither identifies any affirmative act by 3M on which she or he actually relied upon in delaying suit. Because Plaintiffs fail to allege reliance, prevention of suit, or the exercise of reasonable diligence, fraudulent concealment does not toll the applicable statutes of limitations.

### C. Conclusion as to Amendment

As explained above, all of Plaintiffs' proposed amendments are barred by Kansas's statutes of limitations, and the Court finds there is no plausible basis for tolling. Because each of the proposed claims is time-barred, amendment would be futile as those claims

could not withstand a Rule 12(b)(6) motion to dismiss. *See Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 897 (8th Cir. 2015) ("A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) as barred by a statute of limitations if the complaint itself shows that the claim is time-barred."). Accordingly, the Court denies Plaintiffs' motions for leave to amend.

## IV. Motion for Judgment on the Pleadings

Having found that Plaintiffs' proposed amended complaints would be futile, the Court turns to 3M's Motion for Judgment on the Pleadings. 3M argues that Plaintiffs' claims are either barred by Kansas's statutes of limitations or otherwise fail as a matter of law. *See* Defs.' Mem. 10-21. Plaintiffs counter that the motion is premature and should not be considered at this stage. *See* Pls.' Mem. in Opp'n 4-14. As explained below, the Court finds the motion is not premature, that Counts I-IV and IX-XVIII are barred by Kansas's statutes of limitations, and that Counts V-VIII fail as a matter of law. Accordingly, the Court recommends that 3M's Motion for Judgment on the Pleadings be granted in its entirety.

### A. Timing of the Rule 12(c) Motion

Plaintiffs argue that 3M's Motion for Judgment on the Pleadings is premature. See Pls.' Mem. in Opp'n 4-8. The Court has found that 3M's motions for judgment on the pleadings are not premature. R. & R. 5-10, Dkt. No. 3445. Rather than restating its analysis here, the Court incorporates its prior analysis by reference. *See id.*

### B. Counts I-IV and IX-XVIII

In Counts I-IV and IX-XVIII, Plaintiffs assert claims for negligence, strict liability, breach of express warranty, breach of implied warranty of merchantability, consumer

fraud and deceptive trade practices under Kansas law, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, loss of consortium, unjust enrichment, common law fraud, constructive fraud, gross negligence, and negligent infliction of emotional distress. Arjona Compl. 3-4; Harris Compl. 3-4; Wood Compl. 3-4. These claims fail for the same reasons set forth above. *See supra* Part III.A-B.

Because Counts I-IV and IX-XVIII are barred by Kansas's statutes of limitations and are not subject to tolling, the Court recommends that 3M's motion be granted as to those counts.

**C. Counts V-VIII**

Counts V-VIII assert claims under the Minnesota Prevention of Consumer Fraud Act, the Minnesota Deceptive Trade Practices Act, the Minnesota Unlawful Trade Practices Act, and the Minnesota False Advertising Act. Arjona Compl. 4; Harris Compl. 4; Wood Compl. 3. "[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156 (D. Minn. 2023) (quoting *Ferrari v. Best Buy Co.*, 14-cv-2956, 2015 WL 2242128 at *9 (D. Minn. May 12, 2015)). Furthermore, "there is a presumption against the extra-territorial application of a state's statutes." *Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 961-62 (D. Minn. 2020) (quoting *Arnold v. Cargill, Inc.*, No. CIV. 012086, 2002 WL 1576141, at *2 (D. Minn. July 15, 2002)).

Here, Plaintiffs cannot assert claims under Minnesota's consumer protection statutes. Plaintiffs are Kansas residents and their alleged injuries occurred in Kansas. Courts have repeatedly held that nonresidents may not assert claims under Minnesota's consumer protection statutes where the alleged injury or conduct occurred outside of

Minnesota. *See, e.g., Butler v. 3M Co.*, No. 2:24-CV-01587, 2024 WL 5054884, at *5 (S.D. Ohio Dec. 9, 2024) (holding a nonresident lacked standing to assert claims under Minnesota's consumer protection statutes because the alleged injury occurred out-of-state); *Rouse*, 694 F. Supp. 3d at 1157 (same); *Ferrari*, 2015 WL 2242128 at *10 (same); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1233-34 (D. Kan. 2015). Accordingly, the Court recommends the motion be granted as to Counts V-VIII.

**ORDER**

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. Plaintiff Pablo Arjona's Motion for Leave to Amend Complaint (Dkt. No. 14, 25-cv-1497) is **DENIED**.

2. Plaintiff Wanda Harris's Motion for Leave to Amend Complaint (Dkt. No. 18, 17-cv-2634) is **DENIED**.

3. Plaintiff Thomas Wood's Motion for Leave to Amend Complaint (Dkt. No. 16, 17-cv-4690) is **DENIED**.

**RECOMMENDATION**

For the reasons set forth above, the Court RECOMMENDS THAT:

1. Defendant 3M Company's Motion for Judgment on the Pleadings (Dkt. No. 3280) be GRANTED in its entirety and WITH PREJUDICE.

Dated: August 4, 2026

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court. It is not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).