**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE BAIR HUGGER FORCED AIR WARMING PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to Case Numbers:*<br><br>25-cv-1808 (Brady)<br><br>25-cv-1919 (Best) | MDL No. 15-md-2666 (JNE/DTS)<br><br>**PLAINTIFFS BEST AND BRADY'S OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND** |

Plaintiffs Mary Best and Brenda Brady, by and through their undersigned counsel, respectfully object, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and D. Minn. LR 72.2, to the Report and Recommendation issued on July 27, 2026 (Dkt. No. 3543) ("R&R"), to the extent it recommends that Defendants' Motion for Judgment on the Pleadings be granted as to Counts I–IV and IX–XVII of Plaintiffs' operative complaints on statute of limitations grounds, and to the extent it denies Plaintiffs' Motions for Leave to Amend as futile on the same ground. As explained below, the R&R's determination that Plaintiffs failed to plead facts sufficient to toll the statute of limitations under Mississippi Code §15-1-67 misapplies Mississippi law and resolves fact questions that Mississippi courts reserve for a jury.

Plaintiffs do not object to the R&R's findings regarding the timing of Defendants' Rule 12(c) motion or the dismissal of Counts V–VIII (the Minnesota statutory consumer-protection claims). Plaintiffs' objections are limited to the R&R's fraudulent-concealment/tolling analysis, its application of that analysis to Counts I–IV and IX–XVII, and its related denial of leave to amend.

## STANDARD OF REVIEW

The R&R recommends that the District Court grant 3M's dispositive Motion for Judgment on the Pleadings. In addition, in the accompanying order, the R&R denies Plaintiffs' related motions for leave to amend as futile, stating that the proposed amendments could not survive the same statute of limitations analysis. Because that recommendation and the futility determination rest on the identical fraudulent concealment analysis and are dispositive of Plaintiffs' claims, the portions of the R&R addressed here are subject to de novo review. *See*, 28 U.S.C. §636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b); *see also Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (denial of leave to amend on futility grounds means the court concluded the amended complaint could not withstand a Rule 12(b)(6) motion to dismiss, i.e., the same standard applied to a dispositive motion).

## BACKGROUND

Mary Best is a Mississippi resident who underwent surgery on November 14, 2017, at St. Dominic Hospital in Jackson, Mississippi, during which a Bair Hugger Forced Air Warming Device ("Bair Hugger") was used. *See* Best Compl. ¶¶ 2, 5, 7. She developed a periprosthetic joint infection ("PJI") and began treatment on December 12, 2017. *Id.* ¶ 9.

Brenda Brady is also a Mississippi resident who underwent surgery on December 15, 2016, at the Orthopedic Institute in Hattiesburg, Mississippi, during which a Bair Hugger was also used. *See* Brady Compl. ¶¶ 2, 5, 7. She likewise developed a PJI and began treatment on January 6, 2017. *Id.* ¶ 9.

Both Plaintiffs directly filed short-form complaints in April 2025 as required by the Court's orders and thereafter moved for leave to amend to add detailed allegations of 3M's fraudulent concealment of the risks associated with the Bair Hugger. Best's and Brady's proposed amended complaints contain word-for-word identical allegations, under identical paragraph numbers, in the paragraphs discussed in this brief (including ¶¶ 36–40 and 119–165). Accordingly, this brief cites those shared paragraphs as "Am. Compl. ¶ __," referring equally to both proposed amended complaints.

Among other claims, Plaintiffs allege that, before the execution of a "Partnership Program Agreement" with Plaintiffs' treating hospital systems, 3M made affirmative statements creating a false impression that the Bair Hugger was safe and effective for use in orthopedic surgery, which 3M knew to be false. *See* Am. Compl. ¶ 130. In addition, Plaintiffs allege that 3M then provided Bair Hugger units to those hospitals under the Agreement, which were used and billed to patients including Plaintiffs, during their surgeries. *Id.* ¶¶ 135–137. Additionally, Plaintiffs allege that their healthcare providers relied on 3M's misrepresentations in purchasing and using the device. *Id.* ¶ 136. Specifically, Plaintiffs further allege that 3M's paid litigation expert, Dr. Michael Mont—whom 3M paid over $200,000—edited every line of the findings of the 2018 International Consensus Meeting on Periprosthetic Joint Infections before publication, and that the head

of that Consensus process, Dr. Javad Parvizi, was simultaneously a paid 3M consultant at $5,000 per day, which are facts undisclosed in the published findings. *Id.* ¶¶ 134, 148–152.

The R&R held that Mississippi law governs Plaintiffs' claims, R&R 5–7, and that the Mississippi Product Liability Act's three-year limitations period, Miss. Code §15-1-49(1), bars Counts I–IV and IX–XVII because Plaintiffs' claims accrued, at the latest, when they began treatment for their PJIs, more than three years before they filed suit in 2025. *See* R&R at p. 8. The R&R then rejected Plaintiffs' argument that the limitations period was tolled by 3M's fraudulent concealment under Miss. Code §15-1-67, reasoning that (1) much of Plaintiffs' concealment allegations describe omissions rather than affirmative acts, (2) the allegations concerning the 2018 consensus-meeting edits and the Partnership Program Agreement lacked particularity and were too "thin" and (3) Plaintiffs failed to plausibly allege that 3M's conduct actually prevented discovery of their claims given twenty-five published studies (1997–2022) linking the Bair Hugger to infection risk and the publicity surrounding this MDL. *Id.* at pp. 9–11. On that basis, the R&R also found amendment futile and recommended denial of Plaintiffs' motions for leave to amend. *Id.* at p. 12.

## ARGUMENT

### I. The R&R Resolves Fact Questions That Mississippi Law Commits to the Jury.

In concluding that Plaintiffs' allegations were too "thin," the R&R is implicitly acknowledging that Plaintiffs' have made allegations (which must be accepted as true)

supporting a fraudulent concealment claim, but yet it is passing judgment on the weight of Plaintiffs' evidence as though it were the finder of fact. However, under Mississippi law, whether a defendant committed an affirmative act sufficient to invoke the fraudulent concealment tolling statute, and whether a plaintiff exercised due diligence in discovering her claim are questions of fact for the jury, not questions of law to be resolved by a court. *Robinson v. Cobb*, 763 So. 2d 883, 888–89 (Miss. 2000). In *Robinson*, the Mississippi Supreme Court reversed a grant of summary judgment because the defendant's affirmative acts of concealment presented "a fact question that should have been left for jury determination," and because whether the plaintiffs "were diligent in their efforts to discover [the cause of action] is a question of fact, not one of law." Id. at 888, 889. The court emphasized that on a challenge to fraudulent-concealment tolling, "we do not rule on the issues, but rather we determine whether there are issues to be tried." Id. at 887.

The R&R does not dispute that *Robinson* governs; indeed, it is the very case Plaintiffs cited below. *See* R&R at p. 11 (acknowledging Plaintiffs' argument that "fraudulent concealment is a jury question" under Robinson). But rather than applying *Robinson's* framework—asking whether Plaintiffs plausibly alleged an affirmative act and due diligence—the R&R weighed the sufficiency and persuasiveness of Plaintiffs' allegations, describing them as "thin," lacking in "detail," and "attenuated and conclusory." *See* R&R at pp. 9–11. That is an evidentiary weighing exercise appropriate to summary judgment or trial, not the plausibility inquiry that governs a Rule 12(c) motion. *See* *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). Because Plaintiffs

clearly allege affirmative acts, *Robinson* requires that Plaintiff's fraudulent concealment theory proceed past the pleadings.

## II. Plaintiffs Plausibly and With Particularity Alleged Affirmative Acts of Concealment Not Mere Silence.

The R&R recognizes that, under Mississippi law, "only subsequent affirmative acts of concealment suffice to toll the statute of limitations," and that continued silence alone is not enough. *See* R&R at p. 9 (citing *Hull v. Wyeth*, No. 3:05-cv-177, 2012 WL 4857589, at *3 (S.D. Miss. Oct. 11, 2012); *Com. Bank v. Smith Shellnut Wilson LLC*, 270 So. 3d 136, 155–56 (Miss. Ct. App. 2018)). However, the R&R's characterization of Plaintiffs' allegations as resting on omissions draws on a single sentence in paragraph 132 of the proposed amended complaints, that 3M "failed to correct the false impression left by its statements and conduct." *See* R&R 9 (quoting Best Prop. Am. Compl. at ¶132). That single sentence does not stand alone. It follows directly from prior paragraphs including paragraph 130 that alleges that 3M made affirmative statements creating a false impression that the Bair Hugger was safe for use in orthopedic surgery. Statements that Plaintiffs allege 3M knew to be false at the time they were made. *See* Am. Compl. at ¶130. Likewise, paragraph 132 is immediately followed by paragraph 133, which alleges that 3M "took affirmative steps to conceal this information from medical professionals, including Plaintiff's medical providers." *Id.* ¶133. Read together, as the plausibility standard requires, these paragraphs allege an ongoing course of affirmative misrepresentation and concealment, not passive silence. *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (court must draw all reasonable inferences in the non-moving party's favor).

The R&R also faults Plaintiffs' allegation that 3M edited the findings of the 2018 International Consensus Meeting for providing "no detail regarding the findings, the edits, or the impact of those findings." *See* R&R at p. 10 (citing Best Prop. Am. Compl. at ¶134). However, the paragraphs immediately following that allegation supply the detail the R7R purports to require. Specifically, Plaintiffs allege (1) that the head of the Consensus process, Dr. Javad Parvizi, was a paid 3M consultant at $5,000 per day, (2) that 3M's litigation expert, Dr. Michael Mont, who was over $200,000 by 3M, testified he read and edited every line of the Consensus findings before publication, (3) that one of 3M's attorneys was given an advance draft and emailed Dr. Mont asking him to make changes to the final statement, and (4) that none of this was disclosed in the published Consensus statement. *See* Am. Compl. at ¶¶ 148–152. Those are very specific, particularized allegations identifying the who, what, and when type of particularity required of allegations of fraudulent concealment. *See Nevins v. Jelliffe*, No. 3:16-cv-472, 2017 WL 1017659 at *3–4 (S.D. Miss. Mar. 15, 2017).

The R&R likewise faults Plaintiffs for claiming that "unspecified statements led to the execution of a 'Partnership Program Agreement' without describing the agreement or why it matters." *See* R&R at p. 10. However, the proposed amended complaints in fact do describe both. Specifically, they allege that (1) 3M's false statements about the Bair Hugger's safety led to the execution of the Agreement, (2) that 3M provided Bair Hugger units to Plaintiffs' treating hospitals under the Agreement's terms, (3) that those units were used during Plaintiffs' own surgeries, (4) that the hospitals charged Plaintiffs for their use, and (5) that Plaintiffs' healthcare providers relied on 3M's misrepresentations in deciding

to purchase and use the device. *See* Am. Compl. at ¶¶ 135–137. Those allegations explain both what the Agreement did and why it matters. It is the vehicle through which 3M's affirmative misrepresentations reached the very providers who used the device on Plaintiffs during their surgeries.

Taken together, these are affirmative representations and affirmative conduct (not just silence) are of exactly the kind Mississippi identifies as sufficient to assert a fraudulent concealment claim, i.e some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim. *Reich v. Jesco, Inc.*, 526 So. 2d 550, 552 (Miss. 1988). Whether these allegations are ultimately borne out by the evidence is a question the jury to determine after discovery on the issues, not a basis to dismiss the claim at the pleading stage. *Robinson*, 763 So. 2d at 887.

## III. Whether Published Literature and the MDL Placed Plaintiffs on Inquiry Notice Is a Jury Question and Not a Basis for Judgment on the Pleadings.

The R&R further held that, because Plaintiffs' proposed amended complaints cite twenty-five published studies (1997–2022) discussing an increased infection risk associated with the Bair Hugger, and because "thousands of cases had already been filed in this well-publicized MDL" by the time of Plaintiffs' surgeries, "a reasonably diligent plaintiff could—and would—have discovered a potential claim." *See* R&R at p. 11. That holding cannot be squared with *Robinson*, particularly in the context of a medical device subject to the learned intermediary doctrine under Mississippi law. Miss. Code §11-1-63(c)(ii). Whether a plaintiff exercised reasonable diligence and whether scientific literature directed at physicians is sufficient to put an individual patient on inquiry notice

of a causal link between her own infection and a medical device used in her own surgery is "a question of fact, not one of law," to be decided by the jury. *Robinson*, 763 So. 2d at 889; *Stephens v. Equitable Life Assur. Soc'y of U.S.*, 850 So. 2d 78, 84 (Miss. 2003).

That is especially true where, as here, Plaintiffs allege that 3M was simultaneously representing to the medical community (including Plaintiffs' own treating physcians andinstitutions, through the Partnership Program Agreement) that the Bair Hugger was safe. *See* Am. Compl. at ¶¶ 130, 135–137. Whether a lay patient, relying on her medical providers, should be charged as a matter of law with knowledge gleaned from the scientific literature or the existence of an MDL in the face of the device manufacturer's contrary affirmative assurances is precisely the type of competing factual narrative *Robinson* commits to the jury, not a legal conclusion available on a motion for judgment on the pleadings. *See Robinson*, 763 So. 2d at 888–89.

Plaintiffs' proposed amended complaints also directly address the diligence the R&R found lacking. Each Plaintiff alleges that she was (1) unaware a Bair Hugger was even used during her surgery because she was under anesthesia and none of her healthcare providers informed her a warming device had been used, (2) that none of her medical records linked the device to her infection, and (3) that upon discovery of her infection she reviewed her available medical records and inquired with her treating providers about potential causes. *See* Am. Compl. ¶¶ 36–40, 161–162, 164. Whether that investigation was reasonable under the circumstances (including in the face of 3M's affirmative safety representations to each Plaintiff's own treating institution) is, again, a question Robinson commits to the jury, not one the R&R could resolve on the pleadings by pointing to

published literature neither Plaintiff nor her providers is alleged to have seen. *See Robinson*, 763 So. 2d at 889.

**IV. Because Plaintiffs Plausibly Alleged Tolling, the Denial of Leave to Amend as Futile Should Also Be Reversed.**

The R&R denied Plaintiffs' motions for leave to amend solely because it concluded that the proposed amendments would remain time-barred and that tolling did not apply. *See* R&R at p. 12. Because that conclusion rests on the same flawed fraudulent concealment analysis addressed above, the futility determination cannot stand. *See Zutz*, 601 F.3d at 850 (denial of leave to amend for futility requires that the amended complaint could not withstand a Rule 12(b)(6) motion). Leave to amend should be "freely give[n] … when justice so requires," and may be denied only for undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility, none of which are present in this matter. Fed. R. Civ. P. 15(a)(2); *see also, Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).

**CONCLUSION**

For the foregoing reasons, Plaintiffs Mary Best and Brenda Brady respectfully request that the Court decline to adopt the portions of the R&R (Dkt. No. 3543) recommending that Defendants' Motion for Judgment on the Pleadings be granted as to Counts I–IV and IX–XVII, and reverse the denial of Plaintiffs' Motions for Leave to Amend, and instead deny the motion as to those counts and grant Plaintiffs leave to file their proposed amended complaints.

Respectfully submitted,

*/s/ Clifford Walston*
Clifford Walston

**Walston, PC**
4411 San Felipe Street
Suite 600
Houston, TX 77027
cliff@walstonlegal.com
(713) 300-9600

**CERTIFICATE OF SERVICE**

I, Clifford Walston, hereby certify that on August 10, 2026, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification to all counsel of record.

*/s/ Clifford Walston*
Clifford Walston