**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br>*Carosone*, 17-cv-2921 | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO REPORT & RECOMMENDATION** |

## INTRODUCTION

Recognizing that his lawsuit is untimely under the New York statute of limitations applicable to personal injury claims, Plaintiff Patrick Carosone argues for the first time in his Objections to the Magistrate Judge's well-reasoned Report and Recommendation ("R&R") (ECF 3537) that different rules should apply because this is supposedly a toxic tort case. This argument is both meritless and waived. On the merits, the toxic tort discovery rule does not apply because the Bair Hugger system is not a toxic substance, and bacteria that occur naturally unrelated to the Bair Hugger are not the kind of harmful substances that the New York toxic tort discovery rule was designed to address. But even if the toxic tort discovery rule applied, it would not change the outcome—Plaintiff discovered his infection in 2007 and did not file suit until 2017, well beyond the three-year limitations period under any applicable

rule. Finally, Plaintiff never raised the toxic tort discovery rule in opposition to 3M's Motion for Judgment on the Pleadings, and therefore waived the argument and cannot rely on it now for the first time in his Objections. Accordingly, 3M respectfully requests that the Court overrule Plaintiff's objections, adopt the R&R in its entirety, and dismiss Plaintiff's case with prejudice.

## LEGAL STANDARD

A party may serve and file specific written objections to the proposed findings and recommendations in an R&R. *United States v. Jones*, 731 F. Supp. 3d 1088, 1091 (D. Minn. 2024) (citing Fed. R. Civ. P. 72(b)(2); D. Minn. LR 72.2(b)(1)). The objections must specify the challenged rulings and the basis for the objections. *Id.*

The Court reviews *de novo* any proposed ruling on a dispositive motion that is "properly objected to." *Id.* (citing Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3)). Portions of the R&R that are not objected to, non-specific objections, and objections that "merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). Rulings on nondispositive motions are likewise reviewed under the deferential "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3).

Here, Plaintiff objects to the R&R's recommendation that his claims be dismissed as time-barred, arguing that it is "clearly erroneous and contrary to law."[1] (Plaintiff's Objections to R&R ("Obj."), ECF 3572 at 2.) A finding is "clearly erroneous" when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Maccani*, 526 F. Supp. 3d 420, 430 (N.D. Iowa 2021), *aff'd*, 49 F.4th 1126 (8th Cir. 2022) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)). "A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minnesota*, 254 F.R.D. 553, 556 (D. Minn. 2008) (internal quotation marks and citation omitted).

## **ARGUMENT**

Because this is not a toxic tort case, the R&R correctly found that New York's statutory toxic tort discovery rule does not apply. Plaintiff does not dispute the R&R's conclusion that, in personal injury cases, the three-year statute of limitations begins to run on the date of injury and there is no discovery rule. (*See* R&R at 7; *see generally*, Obj.; N.Y. C.P.L.R. § 214(5).) New

---

[1] Plaintiff conflates two issues. Presumably, he objects to the "Order" denying his request to amend and to the "Recommendation" that 3M's Motion for Judgment on the Pleadings be granted. These issues are analyzed distinctly under the Federal Rules of Civil Procedure and the applicable local rules. Because the denial of leave to amend is a nondispositive motion, the clearly erroneous standard applies. D. Minn. LR 72.2(a)(3). And while *de novo* review may apply to a proper objection to the recommendation, Plaintiff's arguments fail under either standard.

York, however, does have a statutory discovery rule that applies only to toxic tort cases; it states:

> [T]he three year period within which an action to recover damages for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property must be commenced shall be computed from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier.

N.Y. C.P.L.R. § 214-c(2). Magistrate Judge Schultz found that this discovery rule does not apply in this case for two reasons: (1) Plaintiff did not argue that this rule applies, and therefore waived any argument in favor of its application; and (2) Plaintiff's alleged injury did not arise from latent exposure to a toxic substance within the meaning of the statute. (R&R at 7-8 n.4.) These conclusions were both legally and factually correct. But even if they were not, application of § 214-c(2) would not change the result.

## I. The Toxic Tort Discovery Rule Does Not Apply Because this is Not a Toxic Tort Case.

New York's toxic tort discovery rule does not apply to this case. Section 214-c(2) applies only to injuries "caused by the latent effects of exposure to any substance or combination of substances." An injury caused by a medical device does not fall within the statute's purview. *Baker v. Stryker Corp.*, 770 F. App'x 12, 15 (2d Cir. 2019). The statute was enacted specifically to address toxic torts,

which involve latent diseases caused by exposure to harmful chemical or industrial substances:

> [Section 214-c] was enacted to overcome the effect of a line of Court of Appeals decisions holding that toxic tort claims accrue upon "impact" or exposure even though the resulting illness may not be manifested for a long time thereafter. These decisions were regarded as overly harsh because they barred claims by individuals suffering from the latent effects of a harmful substance before the harm was even discovered. The goal of the Legislature in adopting CPLR 214–c was to provide relief to injured New Yorkers whose claims would otherwise be dismissed for untimeliness simply because they were unaware of the latent injuries until after the limitations period had expired.
>
> It is apparent from this history that, in enacting a new "discovery" rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced.

*Matter of New York Cnty. DES Litig.*, 678 N.E.2d 474, 478 (N.Y. 1997) (internal citations omitted).

Consistent with that history and purpose, courts apply § 214-c only in cases involving "victims exposed to toxic or harmful substances such as DES [diethylstilbestrol], tungsten-carbide, asbestos, chlordane or polyvinyl chloride." *Noce v. Wilmorite, Inc.*, 631 N.Y.S.2d 476, 479 (N.Y. Sup. Ct. 1995). Ordinary tort claimants not injured by toxic chemical or industrial substances have not received the benefit of § 214-c. *See id.* (cold air is not a "substance" for purposes of § 214-c(2), even if it caused pneumonia); *Patterson v. City of New York*, 289 A.D.2d 213, 215 (N.Y. Sup. Ct. 2001) (compressed air is not a "toxic

substance" even though breathing it can be harmful); *Blanco v. Am. Tel. & Tel. Co.*, 689 N.E.2d 506, 509 (N.Y. 1997) (keyboard that caused stress injury is not a toxic substance); *see also Giordano v. Mkt. Am., Inc.*, 15 N.Y.3d 590, 598, 941 N.E.2d 727 (2010) ("[T]he whole point of CPLR 214-c was to deal with substance exposure cases. No other kind of case is discussed in the legislative history[.]").

Plaintiff points to § 214-c(1)'s inclusion of the word "implantation" in its definition of "exposure" to argue that the Legislature intended the statute to cover his claims. (Obj. at 5.) This argument distorts the statute's text and purpose. Section 214-c(1) defines "exposure" to include "direct or indirect exposure by absorption, contact, ingestion, inhalation, implantation or injection." These are modes of exposure—they describe how a toxic substance enters the body. The word "implantation" refers to a toxic substance being implanted in the body, not to every medical procedure involving an implant, and not to all "latent biological processes initiated during medical procedures." (*See* Obj. at 5.) Plaintiff cites no authority for his proposed reading of the statute, and adopting it would make § 214-c applicable to virtually every surgery and every medical device case. Such a result would be illogical and has not been endorsed by any court.

The Bair Hugger system is not a toxic substance; it is medical equipment that warms patients with air. The bacteria that allegedly entered the surgical

site and caused an infection are not toxic substances; they are naturally occurring living microorganisms commonly found in hospital environments. The mere fact that Plaintiff alleges that his infection was caused by bacteria moved or deposited by the Bair Hugger system (an allegation that 3M denies) is insufficient to transform this case into a toxic tort. Although the statute speaks of "any substance," it has been limited in its application to "toxic substances." *See Blanco*, 689 N.E.2d at 509 ("While CPLR 214–c does nominally cover situations where a plaintiff is injured due to 'contact' with a 'substance,' it is plain from reading the statute as a whole that the types of substances intended to be covered are toxic substances."). Indeed, the cases in which § 214-c applies involve exposure to manufactured chemical or industrial toxins with known latent pathological effects on the human body. *See, e.g.*, *Scheidel v. A.C. & S. Inc.*, 258 A.D.2d 751 (N.Y. Sup. Ct. 1999) (asbestos caused asbestosis); *Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 942 N.Y.S.2d 765, 771 (N.Y. Sup. 2012), *aff'd as modified*, 121 A.D.3d 50 (N.Y. 2014) (exposure to underground contaminants); *Whitney v. Agway Inc.*, 238 A.D.2d 782, 784 (N.Y. Sup. Ct. 1997) (exposure to pesticides). Bacteria causing a surgical site infection are not manufactured products and bear no resemblance to these toxic substances.

Further, accepting Plaintiff's theory would require this Court to hold that any device or instrumentality that moves, redirects, or deposits naturally

occurring bacteria is a "toxic substance" within the meaning of § 214-c. That conclusion has no support in the statute's text, history, or caselaw, and it would produce absurd results. Under that logic, a hospital ventilation system that circulated airborne pathogens, a drain that backed up sewage containing bacteria, or even a door that allowed outside air into a sterile environment would all become sources of "toxic tort" liability subject to the discovery rule. The Legislature did not enact § 214-c to cover the ordinary transmission of common bacteria during medical procedures; it enacted the statute to address the unique injustice faced by plaintiffs exposed to synthetic industrial and chemical toxins—such as asbestos, drugs, and pesticides—whose injuries remained undetectable for years or decades after exposure. The mechanism of injury here is fundamentally different in kind from the paradigmatic toxic tort, and no amount of creative labeling can transform a surgical site infection into a latent toxic exposure.

Plaintiff contends that whether injuries caused by "biological contaminants circulated by that Bair Hugger device fall within New York's discovery rule is a novel question that should be resolved, at the very least, at the summary judgment stage on an *Erie* guess following adequate discovery on these issues, or, alternatively, on a certified question to the New York State Court of Appeals." (Obj. at 6-7.) But no further information is needed to determine the appropriate result under New York law. New York's highest

court has already explained the purpose and application of § 214-c(2). *See DES Litig.*, 678 N.E.2d at 478. And even accepting as true Plaintiff's theory of the mechanism of injury, this case simply does not fall within the category of a toxic tort. Instead, the facts here align more closely with the cases in which courts have found that air is ***not*** a toxic substance. *Noce*, 631 N.Y.S.2d at 479 (cold air); *Patterson*, 289 A.D.2d at 215 (compressed air).

Because this is not a toxic tort case where the allegedly defective product is a toxic substance, § 214-c(2) does not apply. The Magistrate Judge correctly applied the personal injury statute of limitations rather than the toxic tort discovery rule.

## II. Even if the Toxic Tort Discovery Rule Applied, Plaintiff's Lawsuit is Still Untimely.

Even if the toxic tort discovery rule applied, it would not save Plaintiff's untimely claims. Under § 214-c(2), the statute of limitations begins to run "from the date of discovery of the injury by the plaintiff." N.Y. C.P.L.R. § 214-c(2). Discovery occurs "when the injured party discovers the primary condition on which the claim is based." *DES Litig.*, 678 N.E.2d at 475. The plaintiff must be aware of "the manifestations or symptoms of the latent disease that the harmful substance produced," but need not know the precise cause of the disease or injury or the exact substance to which he was exposed. *Id.* at 478.

*See also Scheidel*, 258 A.D.2d at 753 ("Discovery of the cause of the symptoms is not relevant[.]").

Here, the primary condition on which Plaintiff's claims are based is his periprosthetic joint infection. (*See generally*, Carosone Compl. ¶ 8.) Plaintiff's own allegations establish that he was treated for this infection in June through December of 2007. (*Id.* ¶¶ 8-9.) Plaintiff, therefore, was aware of his infection and its physical symptoms in June 2007 when he began treatment, which triggered the running of the three-year statute of limitations, even under § 214-c(2). *See DES Litig.*, 678 N.E.2d at 475-78. His lawsuit, filed nearly ten years later in July 2017, is therefore untimely. Even though Plaintiff claims that he did not know what caused his infection, caselaw makes clear that this lack of knowledge does not toll the limitations period—all that is required is knowledge of the injury. *See id.* at 478 ("[W]hen the Legislature used the phrase 'discovery of the injury' it meant discovery of the physical condition and not, as plaintiff argues, the more complex concept of discovery of both the condition and the nonorganic etiology of that condition."); *Scheidel*, 258 A.D.2d at 753.

Plaintiff does not even attempt to explain how applying § 214-c(2) would change the outcome of the statute of limitations analysis. (*See generally*, Obj. at 4-7.) That's because it would not. Regardless of whether the Court applies the personal injury statute of limitations in N.Y. C.P.L.R. § 214(5), which does

not contain a discovery rule, or the toxic tort discovery rule in § 214-c(2), the three-year period for filing Plaintiff's lawsuit began to run in 2007 when his infection manifested. This action is therefore untimely.

## III. Plaintiff Waived Any Argument that the Toxic Tort Discovery Rule Applies by Failing to Raise that Issue in Response to 3M's Motion for Judgment on the Pleadings.

Plaintiff argues that the R&R is clearly erroneous to the extent that it relied upon *Doll v. Trellis Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084 (D. Minn. Sept. 30, 2024), to find waiver because that case is distinguishable. (Obj. at 2-3.) Plaintiff further argues that, under *Minnesota Chamber of Commerce v. Choi*, 765 F. Supp. 3d 821, 857 (D. Minn. 2025), he did not have to specifically argue that the toxic tort discovery rule applies because "[t]he core issue of when the injury occurred was already actively briefed and disputed across all of Plaintiff's foundational filings." (*Id.* at 3-4.) These arguments misapprehend and misapply the waiver doctrine.

As stated in both *Doll* and *Choi*, the failure to respond to an opposing party's argument is construed as a waiver. *Doll*, 2024 WL 4355084, at *3 (collecting cases); *Choi*, 765 F. Supp. at 857 (citing *Doll*). This is an established principle in this Circuit, as courts are not required to address arguments that are not adequately raised or developed. *See*, *e.g.*, *Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) (where "brief does not support [a party's] assertion with any argument or legal authority, he has waived the

issue and we do not address it"); *Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 857 n.12 (8th Cir. 2013), as corrected (Sept. 9, 2013) (arguments were abandoned where party "failed to adequately develop [them] in its brief" and did not provide supporting legal authorities or record citations); *Cubillos v. Holder*, 565 F.3d 1054, 1058 n.7 (8th Cir. 2009) (arguments not adequately developed are deemed waived).

*Choi* did not change the rule. In *Choi*, this Court merely recognized that waiver does not occur where a party fails to "provid[e] extensive analysis of [a] question" that has already been adequately addressed by the parties in prior briefing. 765 F. Supp. 3d at 857. That is not the case here.

As Plaintiff acknowledges, his brief in response to 3M's Motion for Judgment on the Pleadings "omitt[ed] an explicit statutory citation to § 214-c(2) or the word 'discovery.'" (Obj. at 4; *see also* ECF 3231 (Plaintiff's response brief).) He never asserted, let alone presented an argument supported by legal authority, that this is a toxic tort case or that § 214-c(2)'s discovery rule applies. *Choi* thus reinforces, rather than undermines, the waiver finding.

Plaintiff argues that because the words "contaminated" and "contaminants" were used in the Master Long Form Complaint and his Short Form Complaint, he somehow preserved an argument that § 214-c(2) applies. (Obj. at 4.) That argument conflates factual allegations with legal theories and should be rejected. The use of the word "contaminants" to describe bacteria

that entered Plaintiff's surgical site is a factual description of the alleged mechanism of injury; it says nothing whatsoever about the applicable statute of limitations and certainly does not signal reliance on a specialized discovery rule for toxic torts. If the waiver rule requires a party to adequately support and develop a legal argument to preserve it, it follows that the party must at minimum identify what the legal argument is. Plaintiff never previously asserted—even in a perfunctory manner—that § 214-c(2)'s toxic tort discovery rule applies to his claims. *See Muehlbauer v. Colvin*, No. CV 14-3253 (MJD/JJK), 2015 WL 5854022, at *8 (D. Minn. Oct. 6, 2015) (issues "raised in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Milligan*, 230 F.3d at 360; *Hortica-Florists' Mut. Ins. Co.*, 729 F.3d at 857 n.12; *Cubillos*, 565 F.3d at 1058 n.7. Magistrate Judge Schultz therefore correctly found the issue to be waived.

Moreover, because Plaintiff did not raise the toxic tort discovery rule in his briefing addressing 3M's Motion for Judgment on the Pleadings, he cannot now raise the issue as a ground for finding error in the R&R. "The Eighth Circuit has recognized that a party may not make arguments in his objections to a magistrate judge's report when those arguments have not been presented to the magistrate judge[.]" *United States v. Harper*, 634 F. Supp. 3d 594, 600 (N.D. Iowa 2022) (citing cases); *see also Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 947-48 (D. Minn. 2006) ("A party cannot, in his objections to

an R & R, raise arguments that were not clearly presented to the magistrate judge."). Indeed, "the purpose of referring cases to a magistrate for recommended disposition would be contravened if parties were allowed to present only selected issues to the magistrate, reserving their full panoply of contentions for the trial court." *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff's new argument that the toxic tort discovery rule applies to his claims, raised for the first time in his Objections, is waived. Magistrate Judge Schultz did not err (much less clearly err) in refusing to consider the argument, and Plaintiff cannot raise the issue now.

## CONCLUSION

For the foregoing reasons, the R&R correctly analyzed the statute of limitations issue and was neither clearly erroneous nor contrary to law. 3M respectfully requests that this Court adopt the R&R in its entirety and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

Date: August 19, 2026

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare, Inc.***