**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br><br>*Arjona*, 25-cv-1497<br>*Harris*, 17-cv-2634<br>*Wood*, 17-cv-4690 | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO REPORT & RECOMMENDATION** |

## INTRODUCTION

This Court can and should exercise its authority to streamline this MDL by disposing of cases filed "well beyond [the] statute of limitations." (Magistrate Judge's Order & Report and Recommendation ("R&R"), ECF 3563 at 10.) The R&R correctly concluded that Plaintiffs' claims are time-barred under Kansas's two-year statute of limitations, that fraudulent-concealment tolling does not save them, and that Plaintiffs' proposed amendments would be futile. Plaintiffs raise three objections, none of which succeed.

First, Plaintiffs contend that the R&R committed a "factual and record-based error" by finding waiver on the question of which limitations period applies. (Objections, ECF 3610 at 3.) But the waiver ruling addressed only the limitations period, not Plaintiffs' separate discovery-rule argument, which the

R&R considered and rejected on the merits. Second, Plaintiffs argue that their periprosthetic joint infections ("PJIs") were not "actionable injuries" until the Bair Hugger's alleged role became public. (*Id.* at 3-7.) But Kansas law starts the limitations period when the plaintiff knows of the injury, not when the plaintiff later identifies its alleged cause. Third, Plaintiffs invoke fraudulent-concealment tolling based on 3M's pre-injury marketing and the Plaintiffs' surgical teams' alleged reliance on 3M's "safety profile." (*Id.* at 7-8.) But Kansas law requires personal reliance by the plaintiff on conduct that actually prevented timely suit, which Plaintiffs do not plead.

The Court should therefore reject Plaintiffs' objections, adopt the R&R, and dismiss Plaintiffs' time-barred claims.

## LEGAL STANDARD

A party may serve and file specific written objections to the proposed findings and recommendations in an R&R. *United States v. Jones*, 731 F. Supp. 3d 1088, 1091 (D. Minn. 2024) (citing Fed. R. Civ. P. 72(b)(2); D. Minn. LR 72.2(b)(1)). The objections must specify the challenged rulings and the basis for the objections. *Id.*

The Court reviews *de novo* any proposed ruling on a dispositive motion that is "properly objected to." *Id.* (citing Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3)). Portions of the R&R that are not objected to, non-specific objections, and objections that "merely repeat arguments presented to and considered by

a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). Rulings on nondispositive motions are likewise reviewed under the deferential "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). However, "[w]hen a motion to amend a pleading is opposed on grounds of futility and a party seeks review of the magistrate judge's determination of the issue of futility, the district judge will review the futility determination de novo." D. Minn. LR 72.2(a)(3)(c).

## ARGUMENT

### I. Plaintiffs' Waiver Argument Is Without Merit.

The R&R correctly concluded that Plaintiffs waived any argument contesting that Kansas's two-year personal-injury statute is controlling. Plaintiffs contend that the R&R committed a "factual and record-based error" by concluding they waived any argument about the applicable limitations period. (Objections at 3.) But Plaintiffs conflate two distinct issues: which limitations period applies and when that period began to run.

The R&R correctly found waiver only as to the first issue. Plaintiffs did not dispute 3M's showing that "the only factual allegations of harm pleaded by Plaintiffs relate to personal injuries." (R&R, ECF 3563 at 8; *see* ECF 3281 at 13.) The R&R therefore properly treated Kansas's two-year personal-injury statute as controlling.

Plaintiffs' reliance on their discovery-rule briefing does not undermine that ruling. Accrual is a separate question, and the R&R did not find Plaintiffs waived it.

Instead, the R&R addressed the discovery-rule argument on the merits and correctly rejected it, concluding that each Plaintiff sustained a substantial, ascertainable injury no later than the first treatment for the alleged PJI. (R&R, ECF 3563 at 8-11.)

## II. Plaintiffs' PJIs Were Actionable Injuries Under Kansas Law.

Under Kansas law, Plaintiffs' PJIs were actionable injuries when Plaintiffs knew they had serious infections requiring medical treatment. At that point, Plaintiffs had sustained substantial, ascertainable injuries sufficient to support a claim for damages, and the limitations period began to run regardless of whether they had yet identified the Bair Hugger as the alleged cause.

Plaintiffs' central objection is that the R&R erroneously separated "knowledge of a physical condition from knowledge of its tortious cause." (Objections at 3.) They contend that under Kansas law, the "fact of injury" requirement in § 60-513(b) is an "integrated standard" requiring both awareness of harm and a reasonable basis to connect it to a tortious act. (*Id.* (citing *Gilger v. Lee Constr.*, 820 P.2d 390, 396 (Kan. 1991)).) They further argue that their PJIs were merely baseline surgical complications and did not

become "actionable" until the Bair Hugger's alleged design defects were publicly revealed. (Objections at 4–5.) These arguments misunderstand Kansas law.

Kansas starts the limitations clock when the plaintiff is aware of the injury itself—not when the plaintiff later identifies the injury's cause. *Foxfield Villa Assocs., LLC v. Robben*, 449 P.3d 1210, 1216 (Kan. Ct. App. 2019). The relevant statute—Section 60-513(b)—focuses on when the alleged act first caused "substantial injury" and, if that injury was not immediately reasonably ascertainable, when the fact of injury became reasonably ascertainable. The R&R properly relied on *Lopez v. Davila* for the settled definition that "substantial injury" means that "the victim must have sufficient ascertainable injury to justify an action for recovery of the damages"; in other words, an "actionable injury." 526 P.3d 674, 683 (Kan. Ct. App. 2023). Plaintiffs' PJIs meet that standard. By the time Plaintiffs sought treatment, they knew they had serious infections requiring medical intervention, including explantation, antibiotic spacers, irrigation and debridement, and revision surgery.

Plaintiffs' reliance on *Gilger v. Lee Constr.*, 820 P.2d at 396, and *Davidson v. Denning*, 914 P.2d 936, 947 (Kan. 1996), does not alter this conclusion. Neither decision holds that a plaintiff who knows of a substantial, treatable injury may postpone accrual until identifying the precise tortious cause or responsible defendant. And even if they did (they do not), the

consistent line of subsequent Kansas authority cited in the R&R makes clear that knowledge of the injury itself—not knowledge of its tortious origin—triggers the limitations period. *See Foxfield Villa Assocs.*, 449 P.3d at 1216 (holding the "limitation period beg[an] once [plaintiff] knew it was injured, not when [plaintiff] discovered who injured it"); *Dumler v. Conway*, 312 P.3d 385, 391–92 (Kan. Ct. App. 2013) ("It is only when the injured party is unaware of the fact of injury (i.e., unaware that he or she has been injured) that the limitation period starts later."). Plaintiffs do not dispute that they were aware of their PJIs when they sought treatment. That awareness is sufficient under Kansas law to start the clock, regardless of whether Plaintiffs had yet connected those infections to the Bair Hugger.

Plaintiffs' attempt to distinguish the cases the R&R relied on also falls flat. Although it is true that those cases arose in different factual settings, the governing principles remain the same throughout and apply equally here. For example, in *Friends University*, the limitations period began when the roof started leaking even though the plaintiff had not determined the exact cause. *Friends Univ. v. W. R. Grace & Co.*, 608 P.2d 936, 940 (Kan. 1980). Likewise, although *Foxfield Villa* involves a real estate contract, it confirms that accrual turns on knowledge of injury, not knowledge of the responsible party. 449 P.3d at 1216. Together, these cases establish that once a plaintiff knows of an

existing injury, the limitations period begins to run even if the plaintiff has not yet identified the precise cause, mechanism, or responsible defendant.

Plaintiffs' effort to distinguish *Dumler* is also unpersuasive, and their characterization of that case is inaccurate. *Dumler* involved a plaintiff whose car hit mud and field debris left on a rural highway during harvest season by farm equipment, 312 P.3d at 567; it had nothing to do with a "severe complication directly tied to surgical treatment." (Objections at 6-7.) Nonetheless, even though the plaintiff in *Dumler* did not initially know who had left the mud on the road, there was no dispute that she knew she was injured on the date of the accident. Under these circumstances, the court held that accrual was not delayed until the plaintiff identified the defendant responsible for leaving the debris and mud on the road. *Dumler*, 312 P.3d at 391-93. The court explained that Section 60-513 contains no requirement that an injured party identify the person who caused the injury. *Id.* Instead, the relevant triggering events are the act causing injury, substantial injury, and the injured party's awareness of the fact of injury. *Id.* The same principle applies here. Like in *Dumler*, Plaintiffs knew they were injured when they sought treatment for their PJIs. The fact that they had not settled on a Bair Hugger causation theory did not delay accrual.

Plaintiffs' later efforts to identify the Bair Hugger as a possible cause—and their characterization of its mechanism as scientifically disputed—

therefore did not restart or postpone the limitations period. The R&R therefore correctly concluded that the discovery rule does not save claims filed years after Kansas's two-year period.

## III. Fraudulent Concealment Does Not Toll Plaintiffs' Claims.

Next, the R&R correctly finds that Plaintiffs failed to properly plead the elements to invoke tolling of the statute of limitations due to fraudulent concealment. Plaintiffs argue that 3M's pre-injury marketing of the Bair Hugger as a sterile device was an affirmative act of concealment with a "continuing character" under *Friends University*. They also contend that the surgical teams' alleged reliance on 3M's safety profile satisfies Kansas's reliance requirement. (Objections at 7-8.) Neither argument supports tolling. The fraudulent-concealment doctrine does not apply to claims that do not sound in fraud. And even if the doctrine were available, Plaintiffs have not pleaded affirmative concealment, personal reliance, or due diligence as Kansas law requires.

First, Plaintiffs do not object to the R&R's threshold determination that fraudulent concealment likely applies only to claims "validly grounded in fraud on its face." (R&R, ECF 3563 at 11-13 (quoting *Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996)).) Portions of an R&R that draw no specific objection are reviewed only for clear error, not *de novo*. *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). There is no clear error here.

Although Plaintiffs attach fraud-based labels to some counts, the gravamen of their allegations is personal injury caused by an allegedly defective product. They allege no injury independent of the product itself. This is, at bottom, a products-liability action pleaded under multiple theories, so tolling under *Bonin* is unavailable. That conclusion independently resolves the tolling issue.

Second, even if tolling were theoretically available, Kansas requires more than allegations of general marketing or nondisclosure. Plaintiffs must plead affirmative conduct, separate from the conduct underlying the claim, that was designed to prevent discovery of the cause of action and that actually prevented timely suit. *Doe v. St. Benedict's Abbey*, 189 P.3d 580, *8 (Kan. Ct. App. 2008); *Sellens v. Am. States Ins. Co.*, 97 P.3d 1072, *3 (Kan. Ct. App. 2004) (quoting *Friends University*, 608 P.2d at 941). They also must plead reliance on that conduct and explain why due diligence would not have led to timely discovery of the claim. *See, e.g.*, *St. Benedict's Abbey*, 189 P.3d at *8.

Plaintiffs plead none of those elements. They identify no specific representation they saw, when they saw it, how they relied on it, or how that reliance caused them to delay filing. They do not allege that, after developing PJIs, they sought information about the cause of their infections and were affirmatively misled. Nor do they allege that any act by 3M caused them to forgo investigation or delay suit. Kansas courts reject tolling on such allegations. *See St. Benedict's Abbey*, 189 P.3d at *8-9; *Doe v. Popravak*, 421

P.3d 760, 769-71 (Kan. Ct. App. 2017). Federal pleading rules likewise require the "who, what, when, where, and how" of concealment and discovery. *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

Plaintiffs' timing argument does not change the result. They say the R&R improperly required a post-injury representation, but the R&R imposed no such rule. It found that Plaintiffs failed to plead any conduct on which they personally relied in delaying suit. *Friends University* recognized that pre-injury concealment may have a continuing character, but it still requires affirmative concealment, reliance, and due diligence. 608 P.2d at 941. Alleged reliance by surgical teams on 3M's safety profile does not establish that any Plaintiff relied on a specific representation after developing a PJI or delayed filing because of it. Without those allegations, fraudulent-concealment tolling fails regardless of when the alleged conduct occurred.

## IV. Plaintiffs' Own Allegations and the Public Record Refute Any Claim of Concealment.

Finally, even if Plaintiffs could somehow invoke fraudulent-concealment tolling, their own allegations defeat it. Plaintiffs cannot maintain that 3M prevented them from discovering the alleged fraud while also alleging that the facts underlying that fraud were publicly available for years. Put differently, Plaintiffs' tolling theory is logically inconsistent with their own allegations that published studies dating back to 1997 identified infection risks associated

with Bair Hugger use. Those allegations establish that the information underlying Plaintiffs' fraud claims was publicly available, undermining any contention that 3M concealed it.

Indeed, Plaintiffs' proposed amended complaints cite twenty-five published studies, spanning from 1997 to 2022, that allegedly disclose an increased risk of infection associated with the Bair Hugger device. (*See* R&R, ECF 3563 at 15.) Moreover, with respect to Arjona, by the time of his index surgery in March 2020, thousands of cases had already been filed in this well-publicized MDL. Plaintiffs cannot have it both ways: they cannot allege that Bair Hugger risks were documented in decades of published literature and simultaneously claim that 3M's concealment prevented them from discovering those same risks.

## **CONCLUSION**

For the foregoing reasons, 3M respectfully requests that this Court overrule Plaintiffs' Objections, adopt the R&R in its entirety, and dismiss Plaintiffs' claims with prejudice.

Respectfully submitted,

Date: August 28, 2026

*s/John P. Mandler*

John P. Mandler (#194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare, Inc.***