**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | MDL No. 15-md-02666-JNE-DTS |
| This Document Relates to the Following Cases:<br>*Paine*, 18-cv-0069 | **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO REPORT & RECOMMENDATION** |

## INTRODUCTION

This Court can and should exercise its authority to streamline this MDL by dismissing cases "barred by the applicable statute of limitations . . . ." Magistrate Judge's Order & Report and Recommendation ("R&R"), ECF 3571 at 9. The R&R correctly applied Oklahoma law to conclude that Plaintiff Sharon Paine did not plead sufficient facts to invoke either the discovery rule or fraudulent concealment, and that amendment would be futile. Paine's objections do not identify any legal or factual error. Instead, they largely repackage arguments the R&R already considered and correctly rejected. The Court should therefore overrule the objections, adopt the R&R, and dismiss Paine's claims with prejudice.

## LEGAL STANDARD

A party may serve and file specific written objections to the proposed findings and recommendations in an R&R. *United States v. Jones*, 731 F. Supp. 3d 1088, 1091 (D. Minn. 2024) (citing Fed. R. Civ. P. 72(b)(2); D. Minn. LR 72.2(b)(1)). The objections must specify the challenged rulings and the basis for the objections. *Id.*

The Court reviews *de novo* any proposed dispositive ruling "properly objected to." *Id.* (citing Fed. R. Civ. P. 72(b)(3); D. Minn. LR 72.2(b)(3)). Unobjected-to portions, non-specific objections, and objections that "merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). Nondispositive rulings are likewise reviewed under the deferential "clearly erroneous or contrary to law" standard. Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). However, "[w]hen a motion to amend a pleading is opposed on grounds of futility and a party seeks review of the magistrate judge's determination of the issue of futility, the district judge will review the futility determination de novo." D. Minn. LR 72.2(a)(3)(c).

## ARGUMENT

### I. The R&R Correctly Determined That Oklahoma's Discovery Rule Does Not Save Paine's Time-Barred Claims.

As explained below, the R&R correctly applied Oklahoma law to determine that "Paine fails to plausibly allege facts sufficient to invoke the discovery rule." R&R at 16. That conclusion follows from two independent defects in Paine's allegations: she was on inquiry notice when she developed her post-surgical infection, and she failed to plead facts showing reasonable diligence thereafter.

Paine objects that Oklahoma's discovery rule does not delay accrual of her claims. *See* Plaintiff's Objection to Report & Recommendation Regarding Defendants' Motion for Judgment on the Pleadings and Plaintiff's Motion to Amend Complaint ("Objections or Obj."), ECF 3613 at 4-9. She contends she did not know of any alleged causal connection between the Bair Hugger and PJIs and that such a connection was not "common knowledge" at the time of her injury. *Id.* at 6-8. She further asserts that she "exercised reasonable diligence," and that diligence is a jury question. *Id.* at 8-9. Each argument fails.

#### A. Paine Was on Inquiry Notice When She Developed Her Post-Surgical Infection.

As a threshold matter, Paine "fail[s] to plausibly allege that she exercised reasonable diligence in investigating the cause of her injury." R&R at 18. That failure alone prevents her from invoking Oklahoma's discovery rule. *See, e.g.,*

*Daugherty v. Farmers Co-op. Ass'n*, 1984 OK 72, ¶ 13, 689 P.2d 947, 951 (Okla. 1984). Even if the discovery rule applied, it would delay accrual only until Paine was diagnosed and treated for her infection. R&R at 17. Thus, Paine was on notice in January 2011 yet waited more than seven years to file suit—rendering her claims untimely even under the discovery rule.

Under Oklahoma law, the statute of limitations begins to run when the plaintiff "knows or, in the exercise of reasonable diligence, should have known of the injury." *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016). The discovery rule delays accrual only until the plaintiff acquires "sufficient information which, if pursued, would lead to the true condition of things." *Miller v. GlaxoSmithKline*, 2005 WL 8174802, at *2 (W.D. Okla. Aug. 30, 2005). Once on inquiry notice, a plaintiff must exercise reasonable diligence; the statute is not tolled during a period of inaction. *Samuel Roberts Noble Found., Inc. v. Vick*, 840 P.2d 619, 625 (Okla. 1992). The discovery rule does not delay accrual until the plaintiff learns the precise mechanism of injury or identifies the exact defective product. *AMC West Housing LP v. NIBCO, Inc.*, No. CIV-18-1065-D, 2019 WL 4491331, at *5 (W.D. Okla. Sept. 18, 2019).

Here, Paine claims that she developed a PJI following hip replacement surgery in 2010, requiring four corrective surgeries from January 2011 to November 2012. Obj. at 3. The development of a post-surgical infection—a specific, identifiable injury—is the point at which Oklahoma law charges a

plaintiff with knowledge sufficient to trigger a duty of inquiry. *See Hi-Tex, LLC v. Vorel,* No. CIV-21-1125-D, 2025 WL 1679640, at *9 (W.D. Okla. June 13, 2025) (quoting *Bryer v. ConocoPhillips, Co.*, No. CIV-15-1218-HE, 2017 WL 5203043, at *4 (W.D. Okla. May 9, 2017) ("When a plaintiff, despite awareness of an injury, has failed with reasonable diligence to ascertain its cause, Oklahoma courts have not hesitated to apply the bar of the statute of limitations."). Thus, the R&R was correct to conclude that "once Paine developed her infection, she was on notice of her alleged injury and Oklahoma law required her to exercise reasonable diligence to investigate its cause." R&R at 17.

Paine's "common knowledge" argument does not excuse her lack of diligence. *See* Obj. at 5. Paine argues that "the only reasonable inference that can be drawn" is that the causal connection between the Bair Hugger and PJI was not "commonly known" at the time of her injury. Obj. at 6-7. This argument misapprehends the relevant legal standard. In *Miller v. GlaxoSmithKline*, 2005 WL 8174802, at *2, the court recognized the problem that exists when "plaintiffs may know of their illness or injury, but lack sufficient information about the relationship between their exposure to a product and the consequent injury to maintain their cause of action." That is not the case here, where Paine's proposed Amended Complaint references published scientific and medical articles dating back to 1997 discussing an association between the

Bair Hugger device and PJIs. *See* Am. Compl. ¶¶ 95-117. Moreover, the "common knowledge" element does not excuse the independent obligation of diligence once an injury manifests. *Daugherty*, 689 P.2d at 950.

In *Daugherty*, the Court distinguished cases involving "common knowledge" of an association between injury and cause from cases where an injury's cause was "beyond the pale of human knowledge" and no "extant literature and knowledge in the medical . . . fields" existed. *Id.* at 950-951. Paine's own allegations cite at least twenty-four published studies from 1997 to 2022 discussing an association between the Bair Hugger and post-surgical infection. *See* Am. Compl. ¶¶ 95-117. Those allegations confirm that common knowledge existed from which Plaintiff could have investigated the potential cause of her injury. Paine cannot simultaneously allege that abundant publicly available information supports her claims *and* that no reasonable person could have discovered the alleged causal connection earlier.

Accordingly, based on Paine's own allegations, she was on notice no later than January 2011, when she underwent treatment for an infection. Obj. at 3. She waited until January 9, 2018, to file her lawsuit against 3M—more than five years beyond any extension afforded by the discovery rule. Therefore, the R&R correctly determined that her claims are time-barred.

### B. Paine Did Not Exercise Reasonable Diligence

Paine's discovery-rule argument fails for the additional reason that she does not plead reasonable diligence after her infection. Even accepting all facts in her favor, Paine fails to explain her delay in filing suit. Assuming the alleged causal link was *not* common knowledge, Paine was still required to exercise reasonable diligence upon developing her infection. *Boettcher v. Conoco Phillips, Co.*, 721 F. App'x 823, 825 (10th Cir. 2018) (affirming district court's dismissal of time-barred claims because, even accepting as true the fact that plaintiffs did not discover the alleged cause of their injuries until four years after their injury, "the complaint contained no facts addressing how [they] exercised reasonable diligence or why they were unable to discover the cause of [their injuries] prior to 2015"); *Daugherty,* 689 P.2d at 951 ("A plaintiff is chargeable with knowledge of facts which he ought to have discovered in the exercise of reasonable diligence."). But as the R&R rightly concluded, "Paine does not plausibly allege that she exercised reasonable diligence to discover her injury. She merely asserts that even if she had exercised due diligence, she would have been unable to discover the facts necessary to file suit." R&R at 16.

This conclusion is fully supported by Paine's own allegations. Her proposed Amended Complaint admits: "After suffering her infection, Plaintiff did not perform any internet or other research about the Bair Hugger or the potential cause of her periprosthetic joint infection . . ." (Am. Compl. ¶ 49.)

Instead, she attributed her infection to her pre-existing risk factors and conducted no further inquiry. *Id.* This is the opposite of reasonable diligence—it is a concession of no diligence whatsoever.

Paine recharacterizes her pre-surgical conversation with her physician—in which the physician identified obesity and prior infection as risk factors—as an inquiry into causation. *See* Obj. at 8. But this argument conflates a routine informed-consent discussion with an affirmative investigation into the cause of her injury. A pre-operative discussion of general surgical risks is not an investigation into what caused a subsequent infection. Oklahoma law requires something more: reviewing medical records, consulting additional physicians, hiring counsel, or otherwise pursuing the potential cause of injury. *See Kansas City Life Ins. Co. v. Nipper,* 1935 OK 1127, ¶ 32, 174 Okla. 634, 51 P.2d 741, 747 ("It was the duty of plaintiff to exercise some degree of diligence and make some effort to learn her rights and not close her eyes and depend solely upon her adversary informing her of her rights.").

Paine's reliance on *Miller v. GlaxoSmithKline* is also misplaced. R&R at 18. In *Miller*, the plaintiff actually investigated: she consulted physicians and experts who affirmatively told her there was no connection between the defendant's product and her injury. *Id.* at *5. There, it was the defendant's own experts' representations that lulled the plaintiff into inaction. Here, the contrast is stark—Paine conducted *no investigation at all*. She did not review

her medical records, consult additional physicians, seek expert opinions, or hire counsel until 2016. *See* Am. Compl. ¶ 52. Accepting her physician's pre-operative risk assessment as a complete explanation for a post-operative complication—without any follow-up—is precisely the kind of inaction Oklahoma law penalizes. *Noble Found.*, 840 P.2d at 625 ("[S]tatutes of limitation were not designed to help those who negligently refrain from prosecuting inquiries plainly suggested by the facts.").

Nor can Paine avoid dismissal by repeating that diligence is generally a fact question for the jury. That principle applies when the parties dispute facts material to notice or diligence. Paine relies on *Oklahoma ex rel. Doak v. Eisneramper LLP*, 2016 WL 3963211, at *5-6 (W.D. Okla. 2016), but *Doak* is distinguishable because it involved genuinely disputed facts; here, Paine's own admissions concede she made no investigation. *See* Am. Compl. ¶ 49 ("After suffering her infection, Plaintiff did not perform any internet or other research about the Bair Hugger or the potential cause of her periprosthetic joint infection . . ."). When the plaintiff's own admissions are undisputed, the issue is not what a jury might conclude about the reasonableness of her conduct; it is whether her allegations, taken as true, *plausibly invoke* the discovery rule. When the complaint admits a complete absence of investigation, the court may resolve the limitations issue as a matter of law. *See Kester v. Janssen Pharm., Inc.*, No. 20-00283-PRW, 2022 WL 1597162, at *3 (E.D. Okla. May 19, 2022);

*Crawford on Behalf of C.C.C. v. OSU Med. Tr.*, 2022 OK 25, ¶ 22, 510 P.3d 824, 836 (Okla. 2022).

In conclusion, the R&R rightly determined that even under Oklahoma's discovery rule, Paine was on notice at the time her infection was diagnosed and failed to exercise diligence in investigating her claims. R&R at 16-18. Accordingly, her claims are time-barred.

## II. The R&R Correctly Determined That Plaintiffs' Fraudulent Concealment Allegations Are Insufficient.

Paine also objects that the R&R improperly rejected her fraudulent concealment arguments. She points to: (1) the International Consensus Meeting on Periprosthetic Joint Infections ("2018 Consensus"), in which 3M's consultants allegedly participated and which was published in 2018; (2) the Partnership Program Agreement ("PPA") through which hospitals purchased Bair Hugger devices; and (3) general safety representations about the Bair Hugger. (Obj. at 9-11.) But none of these alleged acts plausibly prevented Paine from discovering her claim, and none excuses her admitted failure to investigate.

### A. Oklahoma Law Requires Affirmative Acts That Actually Prevented Discovery.

Under Oklahoma law, fraudulent concealment tolls the statute of limitations only when the defendant committed "some actual artifice to prevent knowledge of the fact; some affirmative act of concealment or some

misrepresentation to exclude suspicion and prevent inquiry." *Kansas City Life Ins. Co.*, 51 P.2d at 747. Stated differently, Paine must allege not merely that 3M engaged in general misconduct, but that 3M's specific conduct actually prevented her from discovering her claim. *See Dinwiddie v. Suzuki Motor of Am., Inc.,* 111 F. Supp. 3d 1202, 1211 (W.D. Okla. 2015) ("'[S]ome misrepresentation ***which induces the other party to inaction***, or to forgo inquiry [is required].'") (emphasis added).

Paine's allegations do not satisfy that standard. Her allegations about the 2018 Consensus, the PPA, and general safety representations concern corporate conduct directed at the medical community or the market generally—not any specific statement to Paine that prevented her from investigating the cause of her infection. Paine points to these general statements to obscure the fact that she cannot identify a single specific representation made to her that prevented her from investigating the cause of her infection or otherwise induced her not to take action. *Dinwiddie*, 111 F. Supp. 3d at 1211.

First, Paine cannot rely on the 2018 International Consensus Meeting statement because it postdated both her surgery and the filing of this lawsuit. It is indisputable that the Consensus was published in 2018—well after Paine's 2010 surgery and after she filed this lawsuit. The 2018 Consensus statement

cannot have prevented Paine from discovering her claims because it had not even been published when she filed her lawsuit.

The merits of Paine's 2018 Consensus argument are equally flawed. After noting the fees paid to 3M consultants and experts, the thrust of Paine's argument is that "none of this was *disclosed* in the published Consensus statement." Obj. at 10 (emphasis added). Failure to disclose does not satisfy the affirmative act of concealment requirement. *See, e.g.*, *Masquat v. DaimlerChrysler Corp.,* 2008 OK 67, ¶ 18, 195 P.3d 48, 55 (Okla. 2008) (quoting *Loyal Protective Ins. Co. v. Shoemaker,* 1936 OK 491, ¶ 0, 63 P.2d 960, Syl. No. 1 ("The mere failure to disclose such material facts is not sufficient to prevent the running of the statute.").

Moreover, even if the alleged editing of the 2018 Consensus Meeting findings could somehow be characterized as an affirmative act, Paine fails to allege any causal connection between those findings and her inability to discover their claims. Paine does not allege (nor can she) that she or her healthcare providers ever encountered, read, or relied upon the 2018 Consensus findings. She does not allege that the 2018 Consensus findings somehow reached her before their publication or influenced her decision-making in any way. Without such a causal nexus—i.e., an allegation that the act prevented discovery of the claim—the tolling doctrine cannot apply. *AMC W. Hous. LP v. NIBCO, Inc.*, No. CIV-18-959-D, 2019 WL 4491331, at *6 (W.D.

Okla. Sept. 18, 2019) ("Defendant's acts of concealment, as alleged by Plaintiff, did not prevent Plaintiff from discovering the cause of its injury.").

Second, Paine asserts that the "findings of the Consensus"—which, again, were published in 2018—"contributed to the execution of the Partnership Program Agreement ('PPA') and Plaintiff's hospital's purchase of the Bair Hugger used in her surgery." Obj. at 10. But based on this timeline, the PPA would have been executed *after* 2018 and thus could not possibly have been relied upon by Plaintiff or her providers in advance of her 2010 surgery—or as an explanation for her delay in filing suit until January 2018. This assertion clearly does not square with Plaintiff's theory that the PPA is "the vehicle through which 3M's affirmative misrepresentations reached Plaintiff's physicians" (Obj. at 11), nor does it explain how the PPA prevented Paine from investigating a post-surgical infection that she knew she had. Paine's failure to iron out the chronological wrinkles as it relates to the PPA show that it clearly was not something that had an impact on her decision-making, let alone one that "induce[d] [her] to inaction." *Dinwiddie,* 111 F. Supp. 3d at 1211.

Third, Paine's reliance on general safety representations fares no better. She asserts that the Amended Complaint sufficiently alleges affirmative acts of fraudulent concealment in 3M's communications about the Bair Hugger's safety, but those allegations still do not identify any specific statement that reached Paine or prevented her from investigating. *See* Obj. at 9-10. The R&R

correctly cited paragraph 148 of the Amended Complaint as *one* example that "a substantial portion of the conduct Plaintiffs rely on consists of omissions, not affirmative acts." R&R at 12. There can be no doubt that the Magistrate Judge reviewed all of Paine's allegations—including those cited specifically in her Objections (Obj., at 10)—when he stated that "Plaintiffs repeatedly allege that 3M failed to warn, failed to disclose, and failed to correct false impressions about the Bair Hugger . . . That is not enough." R&R at 12. Paine's reference to other paragraphs of the Amended Complaint is unavailing because the result is the same: even when read as a whole, the Amended Complaint fails to allege affirmative acts of concealment taken toward Paine specifically. In fact, Paine does not allege that she even read or otherwise encountered the communications that supposedly prevented her from further investigation. Thus, the proposed amended complaint as a whole fails to meet Rule 9(b)'s requirements. *See Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (plaintiff must allege "the who, what, when, where, and how" of the alleged fraud).

**B. Oklahoma Law Requires the Exercise of Due Diligence.**

Finally, as discussed in detail *supra*, Section I(B), Paine has failed to show diligence in pursuit of her claims. General safety representations made to the medical community, such as those set forth in the proposed amended complaint, do not excuse individual plaintiffs from their independent

obligation to exercise reasonable diligence once they suffer an injury. Oklahoma charges plaintiffs with knowledge of facts discoverable through reasonable inquiry. *Masquat*, 195 P.3d at 55.

Even accepting all allegations as true, Paine does not allege that she personally encountered any 3M representation, that any representation deterred her from investigating, or that she took *any* affirmative steps toward investigation that were thwarted by 3M's conduct. In fact, Paine's allegations fail to show that these acts or omissions were designed to prevent, and did prevent, discovery of her claims. Consequently, she cannot establish the required elements of fraudulent concealment, and her claims cannot be tolled. *Cole v. NIBCO, Inc.*, No. CV137871FLWTJB, 2016 WL 10536025, at *9 (D.N.J. Feb. 26, 2016) (fraudulent concealment claim fails under Oklahoma law "because [plaintiff] does not allege that the Defendant's purported misrepresentations prevented him from discovering his injuries").

**III. The R&R Correctly Denied Paine's Motion for Leave to Amend.**

Those same defects also support the R&R's denial of leave to amend. Because Paine's claims cannot be tolled under Oklahoma's discovery rule or the fraudulent concealment doctrine, the Magistrate Judge correctly determined that "amendment would be futile." R&R at 19.

"Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint

could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). If the Amended Complaints show that the claims are time-barred, dismissal is proper. *See Wong*, 789 F.3d at 897.

Paine's Amended Complaint fails to plead the elements necessary to permit application of the discovery rule or the fraudulent concealment tolling doctrine, and absent such tolling, her claims are time-barred. Therefore, where the Amended Complaint "shows that the claim is time-barred," dismissal is the appropriate result. *Id.*

**CONCLUSION**

Accordingly, this Court should overrule Paine's Objections, adopt the R&R, and dismiss all claims with prejudice.

Respectfully submitted,

Date: September 2, 2026

*s/John P. Mandler*
John P. Mandler (#0194438)
M. Joseph Winebrenner (#0387889)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
john.mandler@faegredrinker.com
joe.winebrenner@faegredrinker.com

Benjamin W. Hulse (MN #0390952)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
ben.hulse@nortonrosefulbright.com

***Counsel for Defendants 3M Company and Arizant Healthcare Inc.***