**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE: Bair Hugger Forced Air Warming Products Liability Litigation | **No. 15-md-2666-JNE-DTS** |
| This Document Relates to the Following Cases: | **District Judge Joan N. Ericksen** |
| All cases listed in Defendants' Omnibus Motion for Judgment on the Pleadings (Dkt. 3793) [1]: | **Magistrate Judge David T. Schultz** |

**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION FOR JUDGMENT ON THE PLEADINGS (MICHIGAN)**

Plaintiffs in the cases listed in Defendants' Omnibus Motion for Judgment on the Pleadings, Dkt. 3793 (collectively, "Plaintiffs"), by and through undersigned counsel, file this Joint Memorandum in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings, and state as follows:

## INTRODUCTION

3M asks the Court to dismiss forty-three Michigan cases in their entirety on the pleadings by treating its earlier Michigan ruling (Dkt. 3448, adopted at Dkt. 3647) as binding on plaintiffs who were not parties to it, who have never litigated the question, and

[1] Three plaintiffs have not joined this omnibus opposition and are filing their own opposition briefs. They are Bladzik, Clay (18-cv-1360), Brinks, James (24-cv-1160), and Vanochten, Darleen (19-cv-0489).

whose pleadings 3M has never answered. The motion should be denied for four independent reasons.

First, the motion is procedurally improper. Rule 12(c) is available only after the pleadings are closed, and 3M has never answered Plaintiffs' Short Form Complaints, which are the operative pleadings. Had 3M instead moved under Rule 12(b)(6), each Plaintiff could have amended once as a matter of course, without leave and without futility review. Fed. R. Civ. P. 15(a)(1)(B). The motion also bypasses the pretrial orders that govern individual cases in this MDL.

Second, Michigan's fraudulent-concealment statute, Mich. Comp. Laws § 600.5855, tolls the limitations period. The statute runs from when a plaintiff discovers, or should have discovered, "the existence of the claim or the identity of the person who is liable for the claim." A post-operative infection tells a patient she has been injured. It does not tell the patient that a 3M warming device was used during the surgery, let alone that the device may have been a cause of the infection. The Master Long Form Complaint pleads 3M's affirmative misrepresentations to the FDA and to the physicians on whom Plaintiffs relied, including a tape-barrier representation that "remains uncorrected to this very day," a claim of HEPA compliance that 3M continues to make, and years of public statements, many of them made after Plaintiffs' surgeries, that the device does not affect operating-room airflow and that concerns about contamination have "no factual basis." Once concealment is pleaded, as it is here, nothing in the pleadings establishes when any Plaintiff discovered or should have discovered her claim against 3M, and that question is one of fact.

Third, Plaintiffs preserve their position that a Michigan products claim does not accrue on the date a device is used, because, as the Michigan Supreme Court has read Mich. Comp. Laws § 600.5827, "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted." Plaintiffs do not concede it.

Fourth, 3M's conduct equitably estops it from relying on the statute.

## BACKGROUND

### I. 3M's Serial Rule 12(c) Motions

Beginning in late 2025, 3M began filing Rule 12(c) motions on statute-of-limitations grounds against selected non-bellwether, non-remand Plaintiffs, state by state. The Court has since ruled on motions under the laws of twelve states. *See* Dkt. 3794 at 5 (collecting orders). On June 5, 2026, the Magistrate Judge recommended judgment on the pleadings against three Michigan Plaintiffs, Zann, McIlrath, and Hurkmans, and the Court adopted that recommendation on September 4, 2026. Dkt. 3448; Dkt. 3647. 3M now moves against forty-three additional Michigan Plaintiffs, seeking dismissal of every claim, arguing that the Court may apply Dkt. 3448 as law of the case "without revisiting its legal reasoning in each individual case." Dkt. 3794 at 5.

### II. The Litigation History the Public Saw

The MDL was created in December 2015. Transfer Order, Dkt. 1. On July 31, 2019, this Court excluded Plaintiffs' general-causation experts and entered summary judgment for 3M. The Eighth Circuit did not reverse that ruling until August 16, 2021. *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768 (8th Cir.

2021). For more than two years, therefore, the public record of this litigation was a federal court's determination that Plaintiffs' causation evidence was inadmissible.

## STANDARD OF REVIEW

When reviewing a motion for judgment on the pleadings, the Court accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences in that party's favor. *Syverson v. FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). Judgment on the pleadings is not appropriate unless the moving party clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 428 (8th Cir. 1993). A Rule 12(c) motion is reviewed under the same standard as a Rule 12(b)(6) motion. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). "Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008); *see* Fed. R. Civ. P. 8(c)(1). Accordingly, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (internal quotation marks and citation omitted); *accord Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025) (per curiam). "A plaintiff need not plead facts responsive to an affirmative defense before that defense is raised." *Boyd v. Target Corp.*, 750 F. Supp. 3d 999, 1022 (D. Minn. 2024) (internal quotation marks and citation omitted). And where the parties' timeliness arguments amount to "a factual dispute over when [the plaintiff] knew or should have known of the alleged fraud," that dispute "will not be resolved by the Court

on a motion to dismiss." *Id.* Indeed, "questions of actual or constructive knowledge are fact-intensive inquiries often left undecided even at summary judgment." *In re Cattle Antitrust Litig.*, No. 19-cv-1222 (JRT/HB), 2021 WL 7757881, at *10 (D. Minn. Sept. 14, 2021).

## ARGUMENT

### I. 3M's Motion Is Procedurally Improper.

#### A. 3M's Motion Should Be Denied As Premature Because The Pleadings Are Not Closed

Rule 12(c) permits a motion for judgment on the pleadings only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). The pleadings are not closed until the defendant has answered the operative complaint, and a Rule 12(c) motion filed before then is premature. In *Grinnell Mutual Reinsurance Co. v. Orcutt*, the Court denied a Rule 12(c) motion because a defendant had not answered: "Because the pleadings are not closed, the Court denies [the] motion for judgment on the pleadings." No. 19-cv-2156 (JNE/TNL), 2024 WL 1095807, at *2 (D. Minn. Mar. 13, 2024); *see also NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015) ("Rule 12(c) requires all pleadings to be closed before a motion may be filed."). This District has repeatedly reached the same result, holding a Rule 12(c) motion "premature" and denying it where no answer to the operative pleading was on file. *See Ikechi v. Verizon Wireless*, No. 10-cv-4554 (JNE/SER), 2011 WL 2118797, at *9 (D. Minn. Apr. 7, 2011), *R. & R. adopted*, 2011 WL 2118791 (D. Minn. May 25, 2011).

That is precisely the posture here. Each plaintiff on which 3M now seeks relief under

12(c) commenced his or her litigation by filing and serving a short form complaint. *See* Fed. R. Civ. P. 3. PTO 8 ordered that the allegations in the Master Long Form Complaint were deemed to have been pled in each Short Form Complaint. 3M never filed or served an answer to any of these Michigan Plaintiffs' Complaints. 3M responded only to the Master Long Form Complaint.

Although 3M has argued that the Master Answer is responsive to the plaintiffs' short form complaints, that is plaintly not true. By its own terms, 3M's Master Answer purports to respond solely to "the allegations in the Master Complaint" which was incorporated into individual complaints. Master Answer, MDL Dkt. 66, at preamble (defining "Master Complaint" as the "Plaintiffs' Master Long Form Complaint and Jury Demand") and Preliminary Statement (applying 3M's Master Answer responses to "allegations in the Master Complaint" "incorporated into" previously and future filed "complaints"). 3M's Master Answer does not respond to the short form complaints and no amount of contortion or generous interpretation can be interpreted as a responsive "answer" to the short form complaint such that the pleadings could be closed. That failure is particularly evident in this motion for judgment based on statute of limitations, 3M never filed a pleading responsive to the very allegations on which its statute of limitations defenses arise. *See* Master Short Form Compl. ¶ 9.

No order of this Court deems the Master Answer a response to the Short Form Complaint. This Court has already held that the Master and Short Form Complaints "are not mere 'administrative devices'" but operative pleadings. *In re Bair Hugger Forced Air Warming Prods. Liab. Litig.*, No. 15-MD-2666 (JNE/DTS), 2026 WL 2690660, at *3–4

(D. Minn. June 5, 2026); *see In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590–92 (6th Cir. 2013) (a master pleading is an operative pleading—not a mere administrative summary—where it is served, used to set the defendants' deadline to answer, and tested on a motion to dismiss). As the operative pleading that commenced each individual action brought by these Michigan plaintiffs, the short form Complaint required a responsive answer (*see* Fed. R. Civ. P. 7(a)(2); 12(a)(1)(A)), yet 3M never filed one. The pleadings in these cases are therefore not closed, and 3M's Rule 12(c) motion is premature. The Court should deny it.

**B. 3M cannot use Rule 12(c) to avoid Plaintiffs' right to amend as a matter of course.**

Had 3M challenged Plaintiffs' pleadings by a motion under Rule 12(b)(6), as the Rules contemplate before an answer, each Plaintiff would have been entitled to amend once as a matter of course within "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). That amendment requires neither the Court's leave nor 3M's consent, and it is not subject to the futility review the Court applied to the motions for leave in the earlier Michigan cases. *See* Dkt. 3448 at 5–6, 9, 21. 3M's choice of a Rule 12(c) label, before any answer, cannot strip Plaintiffs of that right. The Court should deny the motion. If the Court were instead inclined to treat the motion as one under Rule 12(b)(6), Plaintiffs ask that it say so and allow each Plaintiff 21 days from its order to amend as a matter of course, so that each Plaintiff may do so. *See* Fed. R. Civ. P. 6(b)(1)(A), 15(a)(1)(B). No Plaintiff has previously amended. *See* Dkt. 3794-1 at 2–5 & n.1 (3M's index, citing each Plaintiff's original complaint, Dkt. 1, as the operative complaint).

### C. The motion circumvents the pretrial orders governing individual cases.

Plaintiffs also preserve the objections the Court addressed in *Hugo*, Dkt. 3445 and Dkt. 3680, and respectfully submit that they warrant reconsideration as the motions multiply. 3M's motion is an attempt to circumvent the Court's orders governing individual cases, specifically PTO 1, Dkt. 7 (staying discovery), PTO 4, Dkt. 27 (scheduling order), PTO 8, Dkt. 46 (master pleadings), and PTO 22, Dkt. 700 (dispositive-motion schedule). PTO 8 provides:

> Defendants will follow deadlines outlined in Pretrial Order No. 4 with respect to motions brought pursuant to Rule 12(b)(6) against any Master Long Form or Master Short Form Complaints or future Answers asserting a failure to plead allegations with specificity, or failing to meet the requirements of Fed. R. Civ. P. 8. Motion practice on the individual personal injury Complaints and future Answers subject to this Order shall be stayed and may proceed only according to Pretrial Order No. 4 or upon leave of the Court.

PTO 8 ¶ 5. The Court has not lifted that stay for non-bellwether, non-remand cases, and 3M did not seek leave before filing. The motion is also untimely under PTO 22, which set a deadline, long since passed, for dispositive motions on "issues not specific to bellwether cases." PTO 22 ¶ 12. The timeliness of an individual non-bellwether Plaintiff's claims is such an issue, and 3M has not sought leave to file out of time.

### D. These Plaintiffs should receive the same process the Court gives remand Plaintiffs.

In accordance with PTO 8, the Court's Group scheduling orders for remand cases permit Plaintiffs to amend without seeking consent or leave. *See* Scheduling Order at 3, No. 16-cv-3283, Dkt. 32 (D. Minn. July 23, 2025) (Group 1); Scheduling Order at 2, No.

18-cv-2783, Dkt. 13 (D. Minn. Aug. 13, 2025) (Group 2); Scheduling Order at 3, No. 16-cv-0057, Dkt. 15 (D. Minn. Sept. 21, 2026) (Group 6). The Group 6 order, entered September 21, 2026, again provides that any Plaintiff wishing to amend may serve and file an amended complaint by a designated deadline. Scheduling Order at 3, No. 16-cv-0057, Dkt. 15. The Court has also granted leadership leave to move to amend the Master Long Form and Short Form Complaints in light of evidence that post-dates the master pleadings. Dkt. 3455; Dkt. 3524. One of the main purposes of an MDL is to avoid inconsistent rulings that are unavoidable under the current approach.

Remand Plaintiffs also receive discovery. In the Group 6 cases, for example, 3M's initial disclosures must identify each 3M sales representative who was in contact with the healthcare providers where the plaintiff alleges exposure to the Bair Hugger, and 3M must produce those representatives' communications with the providers. Scheduling Order at 1–2, No. 16-cv-0057, Dkt. 15. Fact discovery follows. *Id.* at 2. That evidence is central to fraudulent concealment, and it is uniquely within 3M's and the providers' possession. Plaintiffs here have been given neither an amendment deadline nor the right to conduct discovery, yet 3M asks the Court to dismiss their claims with prejudice.

**E. 3M's reliance on law of the case is misplaced.**

3M asks the Court to apply Dkt. 3448 to these Plaintiffs "without revisiting its legal reasoning in each individual case." Dkt. 3794 at 5. But cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). Law of the case governs later stages of the same case. *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 807 F.2d 1433,

1440–41 (8th Cir. 1986). Plaintiffs were not parties to *Zann*, *McIlrath*, or *Hurkmans*, did not brief the questions decided there, and are entitled to be heard on their own pleadings. The doctrine is, moreover, discretionary: "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see Little Earth*, 807 F.2d at 1440 ("Law of the case is a doctrine of discretion, not a command to the courts."). That discretion should not be exercised to bind Plaintiffs who never had an opportunity to litigate the issue, particularly where the same questions are pending before the Eighth Circuit.

Finally, the procedural posture now presents the problem Plaintiffs anticipated: once 3M was permitted to proceed by Rule 12(c) motions in non-remand cases, it would file them state by state and firm by firm. 3M has now filed Rule 12(c) motions under the laws of at least twelve states, with oppositions due on staggered schedules across the MDL. Each motion generates responses and motions to amend, consuming the Court's and the parties' resources that the remand process was designed to conserve. Judicial efficiency and basic fairness favor denying the motion and allowing these cases to proceed in the manner the pretrial orders contemplate.

## II. Section 600.5855 Tolls the Limitations Period.

### A. The statute.

Michigan's fraudulent-concealment statute provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring

> the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. Laws § 600.5855. Absent a fiduciary relationship, a plaintiff must plead the acts or misrepresentations that comprised the fraudulent concealment and must prove that the defendant committed affirmative acts or misrepresentations designed to prevent subsequent discovery. *Mays v. Snyder*, 323 Mich. App. 1, 39, 916 N.W.2d 227 (2018), *aff'd sub nom. Mays v. Governor of Mich.*, 506 Mich. 157, 954 N.W.2d 139 (2020); Dkt. 3448 at 15; *see Dillard v. Schlussel*, 308 Mich. App. 429, 443, 865 N.W.2d 648 (2014) (absent a fiduciary relationship, fraudulent concealment requires an affirmative act or representation).

Dkt. 3448 rejected tolling because the Zann, McIlrath, and Hurkmans pleadings offered generic allegations untethered to plaintiff-specific facts, and because those plaintiffs were deemed on notice once they developed post-operative infections. Dkt. 3448 at 15–20. Plaintiffs respectfully submit that both conclusions misread § 600.5855, and neither can be applied to these Plaintiffs on the pleadings.

### B. The limitations period runs from discovery of the claim or of the identity of the person liable, and an infection revealed neither.

Section 600.5855 is not limited to concealment of an injury. It applies when a defendant "fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim," and the two-year period runs from when the plaintiff "discovers, or should have discovered, the existence of the claim or the identity of the

person who is liable for the claim." Mich. Comp. Laws § 600.5855. The Legislature thus recognized that a plaintiff may know she has been hurt and still not know who hurt her.

Michigan courts measure discovery of a claim by the plaintiff's awareness of an injury and its possible cause. "Once a claimant is aware of an injury and its possible cause, the plaintiff is aware of a possible cause of action." *Moll v. Abbott Labs.*, 444 Mich. 1, 24, 506 N.W.2d 816 (1993), *abrogated on other grounds by Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 479 Mich. 378, 738 N.W.2d 664 (2007); *see Meyer & Anna Prentis Family Found., Inc. v. Barbara Ann Karmanos Cancer Inst.*, 266 Mich. App. 39, 48, 698 N.W.2d 900 (2005). But the "cause" that matters is not a medical mechanism in the abstract. Under *Moll*, a plaintiff discovers her claim when she discovers, or through reasonable diligence should have discovered, her injury and "the causal connection between plaintiff's injury and the defendant's breach." 444 Mich. at 16. The plaintiff in *Moll* knew both: her physician told her that her condition could have resulted from in utero exposure to DES, and her mother's medical records confirmed that DES had been administered. *Id.* at 9–10.

Nothing in the pleadings shows that Plaintiffs knew either. A post-operative infection tells a patient that she has been injured and that the injury followed her surgery. It does not tell her that anyone's wrongful conduct caused it, much less that the cause was a forced-air warming device made by a company whose name she had no reason to know. The Master Long Form Complaint alleges that 3M's misrepresentations left Plaintiffs and their physicians "unaware" of the device's risk, which they "could not have reasonably known or have learned through reasonable diligence." Master Long Form Compl. ¶¶ 66–

67, Dkt. 97. 3M's argument that the infection itself put each Plaintiff on notice, *see* Dkt. 3833 at 6–9 (3M's reply in the Tennessee cases), collapses the two things the statute keeps separate: knowing of an injury, and knowing of a claim against the person liable for it.

The Michigan Court of Appeals applies this inquiry defendant by defendant, asking when the plaintiff "knew, or through diligent inquiry should have known, of his possible causes of action against defendant." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 646, 692 N.W.2d 398 (2004). In *Doe*, everything connecting the archdiocese to the injury was in plain view: the abuser was a priest under its direction and supervision, the abuse occurred on its property, and the priest told the plaintiff the acts were approved by the Church. *Id.* at 644–45. The archdiocese hid only its prior knowledge of the priest's conduct, which went to the degree of its fault, not to whether it was connected to the injury; "it should have been clear to him that defendant either knew of Burkholder's abuse or should have known about it." *Id.* at 645. Here, what 3M concealed was the connection itself. A patient knows her surgeon and her hospital; she has no reason to know what warming equipment the hospital chose, who made it, or that it can carry contaminated air to the surgical site. Nothing in the pleadings suggests that any Plaintiff was told a forced-air warming device was used, or that anything she was told or given linked her infection to it. Whether framed as concealment of "the existence of the claim" or of "the identity of the person who is liable," the period could not begin to run against 3M until Plaintiffs knew, or should have known, that 3M's device was involved.

Nor is this a case in which liability was "discoverable from the outset." *Prentis*, 266 Mich. App. at 48; *Dillard*, 308 Mich. App. at 443. In *Prentis*, the facts giving rise to

the claim were in public records and the plaintiff's own board designee attended the meetings at which the challenged transaction was approved. In *Dillard*, the facts emerged through ordinary post-judgment discovery. Here, the facts that would reveal 3M's liability were in others' hands: whether the device was used at all was known to the surgical team, and whether 3M knew its risks and whether its statements about the device were false were known to 3M. 3M had "sole access to the material facts," and it made its misrepresentations intending that physicians and patients, including Plaintiffs and their physicians, would rely on them. Master Long Form Compl. ¶¶ 66–67, 188–190. 3M cannot treat the infection as the trigger for inquiry notice while concealing the information that would have made any inquiry fruitful.

### C. Plaintiffs plead specific affirmative misrepresentations to the FDA, the medical community, and the public that continued after they were injured.

The Master Long Form Complaint identifies affirmative misrepresentations, with the who, what, and when that 3M says are missing.

1. The tape barrier. In a June 1997 letter to the FDA, 3M admitted that "air blown intraoperatively across the surgical wound may result in airborne contamination." Master Long Form Compl. ¶ 53. It then told the FDA that a tape barrier in all Bair Hugger models would "prevent air from migrating toward the surgical site." *Id.* ¶ 54. That was false: many models have no taped edge, and a tape barrier cannot stop heated air from carrying contaminants from the non-sterile floor to the surgical site. *Id.* ¶ 55. The statement "remains uncorrected to this very day." *Id.*

2. HEPA compliance. In July 2000, 3M told the FDA that the Bair Hugger's filtration system satisfied HEPA standards, which require removal of at least 99.97% of particles 0.3 micrometers or larger. *Id.* ¶ 45. The device removes no more than 63.8% of those particles, yet 3M has marketed it, and "continue[s] to market" it, as HEPA-compliant and/or equivalent with a MERV 14. *Id.* ¶ 46.

3. Statements that the device does not disturb the sterile field. For years, 3M's website stated that "[a]ir velocity within the operating room is many times stronger than that of a forced-air warming blanket" and that the air from the blanket "is drawn away through the laminar system's return air inlets." *Id.* ¶ 56. A 3M marketing video stated that the Bair Hugger "does NOT influence the effectiveness of laminar flow system" and called contrary claims "inaccurate and irresponsible," and a 3M advertisement that appeared in medical publications "as early as 2010" asserted that "simple logic makes it clear that forced air warming has no impact on laminar conditions." *Id.* ¶¶ 58–59. Those statements were false: the device's waste heat drives contaminated air from the floor into the sterile field. *Id.* ¶¶ 57, 60.

4. "No factual basis." In a July 2012 statement published in *Healthcare Purchasing News*, 3M's public relations and communications specialist asserted: "[S]ome conductive-warming manufacturers have alleged that forced-air warming increases bacterial contamination of operating rooms or interrupts laminar airflow. These accusations have no factual basis." *Id.* ¶ 61. The statement ignored a body of peer-reviewed research documenting those effects, including a 2011 study titled "Forced-air warming and ultra-

clean ventilation do not mix." *Id.* ¶¶ 62–63. Rather than warn, 3M "doubled down" on its efforts to promote the device. *Id.* ¶ 64.

Each is an affirmative act or representation. The Master Long Form Complaint alleges that through these misrepresentations to the public, the medical community, and the FDA, 3M "actively concealed" the Bair Hugger's risk of infection; that 3M made them intending that physicians and patients, including Plaintiffs and their physicians, would rely on them; and that 3M took "every step imaginable to conceal and discredit" the science that contradicted them. Master Long Form Compl. ¶¶ 19, 66, 186–190.

*Doe*'s timing rule does not defeat tolling here. *Doe* held that "only actions after the alleged injury could have concealed plaintiff's causes of action against defendant," because "actions taken before the alleged injury would not have been capable of concealing causes of action that did not yet exist." 264 Mich. App. at 641. The pre-injury conduct at issue there was the archdiocese's knowledge of the priest's earlier abuse and its failure to act on it, which was the substance of the plaintiff's negligence claim, not an act designed to keep him from discovering it. *Id.* at 641, 643. *Doe*'s timing rule also does not reach concealment of the identity of the person liable. Reliance on *Doe* is "misplaced" where the plaintiff alleges that the defendant's identity, not merely the cause of action, was concealed, because the *Doe* plaintiff "only claimed that the cause of action had been concealed and made no claim that the defendant archdiocese's identity . . . had been concealed." *Hope-Jackson v. Washington*, 311 Mich. App. 602, 618 n.3, 877 N.W.2d 736 (2015); *see also McCormick v. Mich. State Univ.*, 33 N.W.3d 877, 881 n.4 (Mich. 2026) (Welch, J., concurring in denial of leave) (*Doe*'s timing statement is "a single conclusory and unsupported sentence").

Plaintiffs allege exactly that: what 3M concealed was its own connection to their injuries. *See* Section II.B, *supra*. Two further features of this case also place it outside *Doe*'s holding.

First, 3M's concealment did not stop before Plaintiffs were injured. It continued afterward. 3M's own index shows that all forty-three Plaintiffs had surgery between 2003 and February 2018, thirty-eight of them in 2012 or earlier. Dkt. 3794-1 at 2–5. The Master Long Form Complaint, filed in August 2016, alleges that 3M's tape-barrier representation "remains uncorrected to this very day," that 3M "continue[s] to market" the device as HEPA-compliant, and that 3M "continue[s] to extol the benefits of the Bair Hugger to the public and healthcare providers." Master Long Form Compl. ¶¶ 46, 55, 61. Its examples include an advertisement that appeared in medical publications "as early as 2010," the July 2012 statement that concerns about contamination had "no factual basis," a marketing video still available in November 2013, and website statements still available in January 2016. *Id.* ¶¶ 56, 58–59, 61. For the thirty-eight Plaintiffs whose surgeries were in 2012 or earlier, the statements 3M continued to make through 2016 came years after surgery. They are post-injury affirmative acts even under *Doe*'s timing rule. A misrepresentation that remains in place, uncorrected, after a plaintiff is injured conceals her claim every day it stands. Dkt. 3448 held that a defendant's "failure to retract an alleged misrepresentation does not constitute concealment," relying on a decision holding that the defendants' "denials of wrongdoing" were not affirmative concealment. Dkt. 3448 at 17 (citing *Tebo v. Desai*, No. 212379, 2000 WL 33391101, at *2 (Mich. Ct. App. Dec. 15, 2000)). A denial of wrongdoing gives the plaintiff nothing she can rely on as fact. 3M's tape-barrier

statement is different: it is a specific representation of fact about how the device works, made to the regulator responsible for clearing it, and 3M continued to make affirmative statements about the device's effect on operating-room airflow after Plaintiffs' surgeries. Master Long Form Compl. ¶¶ 54–56, 58–59, 61. In *Doe*, by contrast, the archdiocese's pre-abuse conduct was knowledge and inaction; it made no statement of fact that stayed in circulation.

Second, *Doe*'s premise, that conduct before an injury cannot conceal a claim that does not yet exist, assumes that the concealing act does its work when it is committed. That assumption fails for a prescription medical device. Under Michigan law, the manufacturer of a prescription product owes its duty to warn to "the medical profession, not the patient." *Smith v. E.R. Squibb & Sons, Inc.*, 405 Mich. 79, 88, 273 N.W.2d 476 (1979); *see Brown v. Drake-Willock Int'l, Ltd.*, 209 Mich. App. 136, 149, 530 N.W.2d 510 (1995) ("the reasoning and policy behind the learned intermediary rule applies not only to prescription drugs, but also to prescription devices"). The physician is therefore the patient's channel of information about the device: the manufacturer speaks to the physician, and the patient relies on the physician. Plaintiffs' physicians relied on 3M's misrepresentations, and what those physicians could tell Plaintiffs depended on what 3M had told them. Master Long Form Compl. ¶¶ 65–67, 190–191. 3M instead represented to the FDA, the medical community, and the public that the device was HEPA-compliant, that a tape barrier kept its air away from the surgical site, that it had no effect on the operating room's laminar airflow, and that concerns about contamination had "no factual basis." *Id.* ¶¶ 45–46, 53–59, 61. Even where those statements preceded a Plaintiff's

surgery, they did their concealing work afterward, by leaving her physicians "unaware" of the device's risk when she developed an infection. *Id.* ¶ 67. That fits the definition of fraudulent concealment *Doe* applied: "some arrangement or contrivance of an affirmative character designed to prevent *subsequent* discovery." 264 Mich. App. at 642–43 (emphasis added). A misrepresentation planted with the learned intermediary is fully capable of concealing the claim once it arises, because the learned intermediary is the person to whom the patient must turn to discover it. The archdiocese's undisclosed knowledge in *Doe*, by contrast, was never communicated to anyone and could not have shaped what the plaintiff later learned.

For the same reason, 3M is wrong that a plaintiff must identify a specific statement she personally encountered. Dkt. 3794 at 15; *see also* Dkt. 3834 at 6–7. A surgical patient is not party to the dealings between 3M and the physicians and hospitals who choose the warming equipment, and concealment directed at the physicians to whom 3M owed its warnings is concealment from her. The statute asks whether the defendant concealed the claim "from the knowledge of the person entitled to sue," Mich. Comp. Laws § 600.5855, not to whom the concealing statements were addressed, and *Doe*'s definition turns on whether the conduct was "designed to prevent subsequent discovery," 264 Mich. App. at 642–43, not on who heard it. Many of 3M's statements, moreover, were not confined to physicians: 3M made them on its public website, in a marketing video, and in published advertisements and press statements. Master Long Form Compl. ¶¶ 56, 58–59, 61. A plaintiff-specific rule would also mean that fraudulent concealment could never toll a claim involving a widely distributed product, because the manufacturer cannot know in advance

who will be harmed. *See Evans v. Trinity Indus., Inc.*, 137 F. Supp. 3d 877, 884 (E.D. Va. 2015) (applying Virginia law) (because "it would be virtually impossible for a defendant to know the identity of each individual who has been harmed" (internal quotation marks and citation omitted), requiring plaintiff-specific concealment would mean that "fraudulent concealment could never operate to toll the limitations period in the vast majority of products liability suits").

Finally, the post-injury conduct in *Doe* failed for reasons absent here. It was "mere silence" toward "the public at large," which the plaintiff conceded was "a conspiracy of silence"; the one representation alleged, that the priest was fit to serve, was one the plaintiff knew from experience to be false; and he found the archdiocese's knowledge "through his own investigation." 264 Mich. App. at 645–46 & n.2. Here, 3M made affirmative representations of fact that neither Plaintiffs nor their physicians could test, about a risk 3M had known of since "as early as 1997" and about which it "had sole access to the material facts." Master Long Form Compl. ¶¶ 187–188.

**D. Whether Plaintiffs should have discovered their claims earlier is a question of fact the pleadings do not resolve.**

Once fraudulent concealment is pleaded, the question becomes when the plaintiff discovered, or should have discovered, her claim, and the pleadings do not answer it. 3M's index draws each Plaintiff's surgery and filing dates from her complaint, Dkt. 3794-1 at 2–5, but nothing in the pleadings establishes when, if ever, any Plaintiff learned that a forced-air warming device was used in her surgery, that 3M made it, or that it may have caused her infection. The Master Long Form Complaint alleges the opposite: Plaintiffs and their

physicians "were therefore unaware and could not have reasonably known or have learned through reasonable diligence of the significantly increased risk of infection associated with the Bair Hugger." Master Long Form Compl. ¶ 67; *see id.* ¶ 191. 3M cannot supply forty-three discovery dates that no pleading contains.

Under § 600.5855, "[q]uestions of concealment and diligence are questions of fact." *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 649–50 (E.D. Mich. 2014) (internal quotation marks and citation omitted). At the pleading stage, a complaint need only allege facts permitting the Court plausibly to infer that a reasonable person would not have discovered the fraud. *Id.* at 650. The Master Long Form Complaint meets that standard. Master Long Form Compl. ¶¶ 66–67, 191.

3M has argued that because a patient's own medical records may reflect that a forced-air warming device was used, the information was within the patient's control. Dkt. 3833 at 9–10, 13. But a notation of the equipment used in an operating room is not notice that the equipment caused an infection, and nothing in the pleadings suggests that any Plaintiff's records link the Bair Hugger to her infection. Whether a reasonable lay patient, whose physicians were themselves "unaware" of the device's risk, Master Long Form Compl. ¶ 67, would have requested and parsed her operative records for a cause her physicians had not identified is the kind of diligence question that cannot be resolved on the pleadings. *Gomba*, 62 F. Supp. 3d at 649–50.

The decisions on which Dkt. 3448 relied for the contrary conclusion were decided on developed or admitted facts and involved plaintiffs who knew the operative facts. In *Yu v. Migliazzo*, No. 338847, 2018 WL 3244140, at *3 (Mich. Ct. App. July 3, 2018) (per

curiam), the plaintiffs admitted signs of leaking years earlier and did not investigate until the leak worsened. In *Ciborowski v. Pella Window & Door Co.*, No. 257091, 2005 WL 3478159, at *4 (Mich. Ct. App. Dec. 20, 2005), the plaintiffs knew both the product and the problem, leaking windows, and the court found no diligence because they did not investigate the cause. In *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-md-2004 (CDL), No. 4:12-cv-102, 2015 WL 4644626, at *1 (M.D. Ga. Aug. 4, 2015), the plaintiff's treating nurse practitioner told her that the sling was coming through her vaginal wall and needed to be removed. Here, by contrast, nothing in the pleadings shows that anyone told Plaintiffs a warming device was used, and their physicians, the targets of 3M's concealment, were themselves unaware of its risk. Master Long Form Compl. ¶¶ 65–67. The Court's rulings in *Skinner*, *Pelican*, and *Jones* likewise rested on summary-judgment records, applied other states' laws, and are on appeal. Dkt. 3486 at 8 & n.3.

### E. Published studies and the existence of the MDL did not place Plaintiffs on notice as a matter of law.

3M argues that the published literature cited in the master pleadings, and the publicity surrounding this MDL, charged every Plaintiff with notice. Dkt. 3448 at 19; *see* Dkt. 3833 at 10–11, 14. Courts have repeatedly declined to hold, as a matter of law, that publicly available medical literature places a lay plaintiff on inquiry notice. *Cutter v. Biomet, Inc.*, 244 F. Supp. 3d 793, 799–800 (N.D. Ind. 2017) (medical-journal articles, news reports, and FDA websites; declining to set an MDL-wide bar date); *In re Risperdal Litig.*, 223 A.3d 633, 650–52 (Pa. 2019) (medical literature, newspaper articles, and

attorney advertising). The authority 3M has relied on for its MDL-as-notice theory, *see* Dkt. 3833 at 10–11, *City of Boston v. Express Scripts, Inc.*, 765 F. Supp. 3d 31, 42–43 (D. Mass. 2025), *aff'd sub nom. City of Boston v. OptumRx, Inc.*, 169 F.4th 58 (1st Cir. 2026), involved a municipality that had itself sued opioid manufacturers years earlier, whose own counsel served as co-lead counsel in the parallel MDL, and whose means of knowledge the court treated as "equivalent to actual knowledge." Nothing in the pleadings suggests that any Plaintiff, an individual patient without medical training, had anything like that knowledge. Nor is there any tension between alleging that 3M knew of the risk from the scientific literature and alleging that Plaintiffs could not have discovered their claims, *see* Dkt. 3833 at 14: a manufacturer is charged with knowing the literature about its own product, and a lay patient is not. *See Cutter*, 244 F. Supp. 3d at 799–800.

The litigation record that 3M says put Plaintiffs on notice in fact told them the opposite. From July 31, 2019, until the Eighth Circuit reversed on August 16, 2021, the public state of this MDL was a federal court's ruling that Plaintiffs' general-causation evidence was inadmissible. A reasonable patient who came across this MDL during that period would have learned that the claims had failed. That is not the kind of notice that triggers a duty to sue, and at a minimum it presents a question of fact.

3M's notice theory also ignores the differences among the Plaintiffs it asks the Court to dismiss together. 3M's own index shows surgeries ranging from 2003 to 2018 and suits filed from 2017 to 2025. Dkt. 3794-1 at 2–5. Some Plaintiffs had surgery more than a decade before this MDL existed; others had surgery after it was well underway. Whether, and when, publicity about this litigation reached any particular Plaintiff, and what it would

have told her at that point, *see* Background C, *supra*, cannot be answered once for all forty-three Plaintiffs, much less on the pleadings. 3M's omnibus motion treats all Plaintiffs as identically situated; they are not.

The Court's own rulings recognize the distinction. In *Hugo*, the Court held that a plaintiff's awareness of his infection may have put him on notice of a possible injury-based claim but did not establish, as a matter of law, that he had discovered facts showing that 3M's representations were false or misleading, and it found plausible that the information underlying the fraud claims did not become reasonably discoverable until the litigation began. Dkt. 3445 at 20–21. The same result is warranted here.

## III. Plaintiffs Preserve Their Position That Their Claims Did Not Accrue on the Date of Surgery.

Plaintiffs respectfully preserve, and do not concede, their position that Dkt. 3448 erred in holding that a Michigan products claim accrues when the device is first used during surgery. Dkt. 3448 at 9–12; Dkt. 3486 at 2–3. A claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. Although Michigan has no common-law discovery rule, *Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 479 Mich. 378, 391–92, 738 N.W.2d 664 (2007), the Michigan Supreme Court has held that "[t]he wrong is done when the plaintiff is harmed rather than when the defendant acted." *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 231 n.5, 661 N.W.2d 557 (2003) (per curiam); *accord Trentadue*, 479 Mich. at 388; *Frank v. Linkner*, 500 Mich. 133, 147, 894 N.W.2d 574 (2017) (the "wrong" is "the date on which the defendant's breach harmed the plaintiff, as opposed to the date

on which defendant breached his duty" (internal quotation marks and citation omitted)). A forced-air warming device harms no one when it is switched on; the harm is the deep joint infection that develops afterward. Federal courts applying Michigan law to medical devices have declined to fix accrual at implantation where the complaint alleges a later injury. *Tice v. Zimmer Holdings, Inc.*, No. 1:15-cv-134, 2015 WL 4392985, at *3 (W.D. Mich. July 15, 2015) ("the complaint does not allege that Mr. Tice was harmed by the Devices immediately after they were implanted"); *Peter v. Stryker Orthopaedics, Inc.*, 581 F. Supp. 2d 813, 817 (E.D. Mich. 2008) (claim accrued when implant fractured). The decisions on which Dkt. 3448 relied, *Smith v. Stryker Corp.*, No. 294916, 2011 WL 445646 (Mich. Ct. App. Feb. 8, 2011), and *White v. Medtronic, Inc.*, No. 18-11590, 2019 WL 1339613 (E.D. Mich. Feb. 20, 2019), *R. & R. adopted*, 2019 WL 1330923 (E.D. Mich. Mar. 25, 2019), *aff'd on other grounds sub nom. White v. Medtronic Sofamor Danek, Inc.*, 808 F. App'x 290 (6th Cir. 2020), are unpublished and cannot displace *Boyle*. *See* Mich. Ct. R. 7.215(C)(1). And *White* tied accrual to the surgery only because that was when the injury occurred: the claim accrued at the time of surgery "since that is the date the injury occurred." *White*, 2019 WL 1339613, at *11. To the extent any Plaintiff's claim turns on the date of harm, that date is a question of fact not resolved by the pleadings. *Joyce*, 635 F.3d at 367.

**IV. 3M Is Equitably Estopped From Asserting the Statute of Limitations.**

Independent of § 600.5855, Michigan law recognizes equitable estoppel. The Michigan Supreme Court has observed that equitable tolling "has a legal basis arising out of our common law, and it may be invoked when traditional equitable reasons compel such

a result." *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 204, 747 N.W.2d 811 (2008) (contractual limitations period). Equitable estoppel bars a limitations defense where a party, by representations, admissions, or silence, intentionally or negligently induces another to believe facts; the other party justifiably relies on that belief; and the other party would be prejudiced if the first party were permitted to deny those facts. *Twp. of Williamstown v. Sandalwood Ranch, LLC*, 325 Mich. App. 541, 553, 927 N.W.2d 262 (2018); *Stone v. Mrozek*, No. 358253, 2022 WL 17364762, at *4 (Mich. Ct. App. Dec. 1, 2022) (per curiam). Unlike the fraudulent-concealment statute, silence can support estoppel where the silent party had a duty to speak. *Conagra, Inc. v. Farmers State Bank*, 237 Mich. App. 109, 141, 602 N.W.2d 390 (1999) ("Silence or inaction may form the basis for an equitable estoppel only where the silent party had a duty or obligation to speak or take action."). Dkt. 3448 held that the plaintiffs there could not invoke equitable estoppel "based on fraudulent concealment" because § 600.5855 "supplies the applicable tolling rule." Dkt. 3448 at 20–21. Plaintiffs' estoppel theory rests on different conduct. Section 600.5855 reaches only affirmative acts, and Dkt. 3448 held that a failure to warn is not one. *Id.* at 17. Estoppel premised on silence in breach of a duty to speak therefore addresses conduct the statute does not reach, and the statute cannot displace a remedy for conduct outside its scope.

As a device manufacturer, 3M had a duty to warn Plaintiffs' physicians of the Bair Hugger's risks, and those physicians relied on 3M for truthful information. Master Long Form Compl. ¶¶ 65, 72–75. The Master Long Form Complaint alleges misrepresentations made with the intent that Plaintiffs and their physicians would rely on them, *id.* ¶¶ 66, 190,

and 3M's failure to warn in breach of that duty, *id.* ¶¶ 17, 64, 72. A plaintiff invoking estoppel must act within a reasonable time after the estopping conduct ends, *see Doe v. Racette*, 313 Mich. App. 105, 110, 880 N.W.2d 332 (2015), and when that conduct ended, and what Plaintiffs knew, cannot be determined from the pleadings.

### V. Plaintiffs' Fraud-Based and Consumer-Protection Claims Are Not Time-Barred.

3M argues that Plaintiffs' fraud-based claims, governed by the six-year period in Mich. Comp. Laws § 600.5813, and their Michigan Consumer Protection Act claims, governed by Mich. Comp. Laws § 445.911(9), *see* Master Long Form Compl. ¶ 162(x), are barred because each was filed more than six years after surgery. Dkt. 3794 at 11–13. 3M contends that the MCPA claims accrued at the time of the transaction and that the fraud-based claims accrued "when the alleged misrepresentation was made." *Id.* at 11–12. Those arguments fail for the reasons above. The fraud-based claims rest on 3M's concealment, and § 600.5855 applies by its terms to "any claim." The same affirmative acts, the same diligence, and the same fact questions described in Section II defeat dismissal of the fraud-based and MCPA claims on the pleadings. Fraud also requires reliance and resulting injury, so a fraud claim cannot have accrued before the Plaintiff was harmed. *See Boyle*, 468 Mich. at 231–32 & n.5 (fraud claim accrues under § 600.5827 when the wrong is done, which is when the plaintiff is harmed); Section III, *supra*.

3M's remaining arguments are derivative. Loss-of-consortium claims survive with the injured spouse's claims. *See* Dkt. 3794 at 14. As to punitive damages, Dkt. 3794 at 13–14, Plaintiffs do not pursue punitive damages as a standalone count. Exemplary

damages, which 3M acknowledges "Michigan permits," *id.* at 13, remain recoverable as an element of damages on Plaintiffs' timely claims.

Finally, 3M raises the reach of the Minnesota consumer-protection statutes only in a footnote, and only "[t]o the extent Plaintiffs assert" such claims. Dkt. 3794 at 12 n.3. That conditional argument does not bear on the timeliness question 3M's motion presents, and it is no basis to dismiss any Plaintiff's case.

## VI. If the Court Finds Any Claim Deficient, It Should Set a Deadline for Plaintiffs to Seek Leave to Amend Before Entering Judgment.

If the Court reaches the merits and finds any Plaintiff's claims deficient as pleaded, it should not enter judgment without first setting a deadline for that Plaintiff to move for leave to amend under Rule 15(a)(2) and Local Rule 15.1(b). The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Once judgment is entered, however, "interests of finality dictate that leave to amend should be less freely available after a final order has been entered." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 823 (8th Cir. 2009). Plaintiffs have never amended, discovery in their cases has been stayed, 3M has never answered their Short Form Complaints, and no amendment deadline has been set in their cases. *See* Section I, *supra*. Plaintiffs should not lose the opportunity Rule 15(a)(2) affords because 3M chose to proceed by an omnibus Rule 12(c) motion rather than in the manner the pretrial orders contemplate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Omnibus Motion for Judgment on the Pleadings or, if the Court treats the motion as one under Rule 12(b)(6), allow each Plaintiff 21 days from its order to amend as a matter of course; and, if the Court finds any Plaintiff's claims deficient, set a deadline for that Plaintiff to move for leave to amend before entering judgment.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Genevieve M. Zimmerman*

Genevieve M. Zimmerman (MN #330292)
**MESHBESHER & SPENCE, LTD.**
1616 Park Avenue South
Minneapolis, MN 55404
(612) 339-9121
gzimmerman@meshbesher.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Kyle W. Farrar*

Kyle W. Farrar (MN #0397942)
**FARRAR & BALL**
1117 Herkimer
Houston, TX 77008
(713) 221-8300
kyle@fbtrial.com

*Plaintiffs' Steering Committee*

*/s/ Daniel C. Burke*
Daniel C. Burke
BERNSTEIN LIEBHARD LLP
10 E. 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
Email: dburke@bernlieb.com

*/s/ Robert D. Cain, Jr.*
Martin D. Crump (MSB #10652)
Robert D. Cain, Jr. (MSB #104283)

Davis & Crump, P.C.
2601 14th Street
Gulfport, MS 39501
Phone: (228) 863-6000
Fax: (228) 864-0907
martincrump@daviscrump.com
robert.cain@daviscrump.com

*Attorneys for Kimberly LeBeau and James Shaw*

/s/ Mark Callender
Mark Callender
CALENDAR BOWLIN, PLLC
4299 San Felipe, Suite 300
Houston, TX 77027
Phone: (713) 300-8700
Email: Mark@CBTrial.com

/s/ Nick Clevenger
Partner | CPY Law LLC
4717 Grand Ave., Suite 425
Kansas City, MO 64112
Office: (816) 839-5150
nick@cpylaw.com

/s/ Joseph Fantini
Joseph J. Fantini, Esquire
Rosen Injury Lawyers
101 Greenwood Ave., Suite 440
Jenkintown, PA 19046
Phone: 215-310-9649
jfantini@roseninjurylawyers.com

*Attorneys for Plaintiff*

/s/Kristine K. Kraft
Kristine K. Kraft
**Schlichter Bogard LLC**
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Direct Dial: 314-884-7706

T: 314-621-6115
F: 314-621-7151

*/s/ M. Palmer Lambert*
Pendley, Baudin & Coffin
3500 N. Causeway Blvd., Suite 402
Metairie, Louisiana 70002
Tel: (504) 355-0086
Fax: (504) 355-0089
Email: PLambert@pbclawfirm.com

*/s/ Emma Sikora Paulus*
Emma Sikora Paulus (74362MO)
Joseph A. Frank (38241MO)
BROWN AND CROUPPEN, P.C. 4900
Daggett Avenue
St. Louis, MO 63110
Phone: (314) 561-6260
emmas@getbc.com
joef@getbc.com

*/s/ Jason C. Webster*
Jason C. Webster
State Bar No. 24033318
**Webster Vicknair MacLeod**
24 Greenway Plaza, Suite 600
Houston, Texas 77046
(713) 581-3900 Telephone
(713) 581-3907 Facsimile
Service: 3mbairhugger@wvmlaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Genevieve M. Zimmerman, hereby certify that on October 30, 2026, I electronically filed the foregoing Plaintiffs' Joint Memorandum in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings with the Clerk of Court using the CM/ECF System, which will send notification to all counsel of record.

MESHBESHER & SPENCE, LTD.

*/s/ Genevieve M. Zimmerman*
Genevieve M. Zimmerman (MN #330292)
1616 Park Avenue
Minneapolis, MN 55404
Telephone: (612) 339-9121
gzimmerman@meshbesher.com

Plaintiffs' Co-Lead Counsel