**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION

This Document Relates to:
ALL ACTIONS

MDL No. 15-2666 (JNE/DTS)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Court should deny the Motion for Partial Summary Judgment.[1] Since 2016, the parties and the Court have operated under the shared understanding—based on the plain language of Pretrial Order Nos. 4 and 8, the latter of which was originally negotiated by the parties' leadership and then approved by the Court—that: (1) 3M's Answer to the Master Complaint serves as a denial of all general and specific causation allegations in all member cases in the MDL; and (2) 3M is not required to file answers to Short Form Complaints. Indeed, Pretrial Order No. 8 ***expressly*** stays 3M's obligation to file answers in individual cases. That should be the end of the issue.

Since Pretrial Order Nos. 4 and 8, the Court has entered many other Orders reflecting that shared understanding and longstanding practice, including its recent Orders on 3M's Rule 12(c) motions on statutes of limitations and repose. Rule 12(c) motions can only be filed when the pleadings are closed, and the Court has now granted those motions

---

1 As discussed below, this Motion is not truly a motion for summary judgment. It does not seek adjudication on the merits. It is a motion for partial *default*. Even if a procedural mechanism existed for such a motion (and it does not), Movants have not satisfied the requirements for a default judgment under Fed. R. Civ. P. 55(a)–(b).

in many cases where 3M has filed no case-specific answer. (ECF Nos. 3639, 3640, 3642, 3647, 3680, 3681, 3682, 3683, 3684, 3687, 3690, 3694, 3695 (Orders Accepting R&Rs.)

If the Motion's two signatories[2] (hereinafter, "Movants") had truly believed that 3M was in default in thousands of MDL cases, one would have expected them, as officers of the Court and members of the Plaintiffs' leadership, to say so at one of dozens of status conferences held or in one of hundreds of briefs filed in this MDL. The Court should reject this misbegotten attempt to overthrow the last decade of consistent practice.

## BACKGROUND

### A. The Parties Agreed Upon—and the Court Approved—a Structure to Streamline Pleading and Motion Practice.

In the early days of this MDL, and with the parties' input, the Court issued Pretrial Order No. 4 (ECF No. 27, "PTO 4"). PTO 4 directed the parties to negotiate the process for master pleadings. It directed Plaintiffs' leadership to file the Master Complaint and Master Short Form Complaint ("SFC") and directed 3M to answer the Master Complaint or move to dismiss by specific deadlines. (PTO 4 at 1.)

This was followed by Pretrial Order No. 8. (ECF No. 46, "PTO 8.") PTO 8 governs the form and effect of the Master Complaint and individual SFCs in this litigation. (*Id.*) The Master Complaint applies to "all individual personal injury Complaints filed by Plaintiffs and their counsel" that are part of this MDL. (*Id.* at 1.) The Master Complaint

---

2 Genevieve Zimmerman is the only one of the four Court-appointed Co-Lead Counsel to sign the motion. The other signatory is Kyle Farrar, one of 13 members of Plaintiffs' Steering Committee.

saved Plaintiffs' counsel the trouble of having to prepare detailed complaints in every case, and provided a common set of allegations that could be challenged via motion practice.

Although PTO 8 characterizes the Master Complaint and SFC as "administrative devices to set forth potential claims . . . that individual Plaintiffs may assert against Defendants in this litigation," it also states that all "allegations [in the Master Complaint] are deemed pled, and all parties named therein are deemed named, in any previously filed Complaint and in any Short Form Complaint hereafter filed, *nunc pro tunc*, to the date each such Complaint was originally filed." (*Id.*; *see also* ECF No. 3445, Order & Report and Recommendation at 7 (concluding that the Master Complaint and SFC together constitute the operative pleadings); ECF No. 3680 (accepting ECF No. 3445 over the plaintiff's objection).) Nothing in PTO 8 required 3M to file answers to individual SFCs—if it had, one would have expected that it also would have provided for a master short form answer. It did not.

To further "the interests of judicial economy," PTO 8 further directed plaintiffs to file individual SFCs. And for the same implicit reason, the Court expressly stayed future answers to those complaints—to proceed only as outlined in PTO 4. (*See* PTO 8 at 2 ("Motion practice on the individual personal injury Complaints ***and future Answers*** subject to this Order shall be stayed and may proceed only according to Pretrial Order No. 4 or upon leave of the Court." (emphasis added).)

This led to the previously unchallenged process that has been followed for the last decade. Plaintiffs filed the Master Complaint and individual SFCs, 3M answered the Master Complaint—not individual SFCs—and that was the end of the story except in

individual cases where the Court granted leave to file individualized long-form complaints or in bellwether cases where 3M decided to file a case-specific answer to assert additional case-specific affirmative defenses. Forcing 3M to answer thousands of SFCs would have served no purpose (Plaintiffs already knew 3M denied the allegations), except to bury the Court in paper. (*See* ECF No. 3432 (letter from Mr. Farrar, a signatory to this motion, to the Court questioning the value of doing work that is "not[] substantive" "on cases that are stayed pursuant to Court Order").) In sum, the parties struck a mutually beneficial bargain, which the Court then approved: no individual long-form complaints, and no individual answers to SFCs.

**B. The Master Complaint Applies to All Plaintiffs.**

The Master Complaint is intended to be a comprehensive recitation of factual allegations and legal claims. Filed by "MDL Plaintiffs, by and through the undersigned and their individual counsel," it alleges that "Plaintiffs were injured due to the use of the Bair Hugger, which has caused and will continue to cause bacteria to enter the surgical site," causing infections that "have caused Plaintiffs surgical debridement, premature prosthetic replacement, extended hospital stays, and amputations." (ECF No. 97 at 1; *id.* ¶ 20.) The Master Complaint also alleges that Plaintiffs "experienced severe medical complications, injuries, and damages from the Bair Hugger"; bacteria from the Bair Hugger system "can and do lead to deep joint or 'periprosthetic joint infections' ["PJIs"] for all types of patient populations, including Plaintiffs herein"; and "as a direct and proximate result of [use of the Bair Hugger system], Plaintiffs suffered infections." (*id.* ¶¶ 20, 42–43; *see, e.g.*, *id.* ¶ 77.)

The Master Complaint alleges that ***each plaintiff*** in the MDL had a surgery that involved use of the Bair Hugger system (an allegation that has proved false for many) and that *each plaintiff* suffered a PJI as a result of the Bair Hugger system's use in that surgery. These are allegations of ***specific*** causation. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 788 (8th Cir. 2021) (distinguishing between general causation ("whether the Bair Hugger can cause a PJI") and specific causation ("whether the Bair Hugger did cause a particular PJI")). The Master Complaint also includes a menu of legal claims that each plaintiff then chooses from by checking boxes in the SFC. The SFC also includes space for a small set of case-specific details: name, spouse name, surgery date, and individual damages.

### C. The Master Answer Expressly Applies and Denies Both General and Specific Causation for All Plaintiffs in the MDL.

3M's position has been consistent all along. The Master Answer included a preliminary statement that denied the allegations in the Master Complaint and denied that the Bair Hugger system "caused injury or damage to Plaintiffs." (ECF No. 105, Master Answer at 1.) The Master Answer also addressed its own applicability to future complaints: "To the extent the allegations in the Master Complaint are incorporated into all complaints previously filed directly in or transferred to this proceeding, as well as any complaints that may in the future be filed directly in or transferred to this MDL proceeding, ***3M's Master Answer is intended to respond to the same***." (*Id.* at 2 (emphasis added).) 3M further denied that Plaintiffs were damaged by the Bair Hugger system and that bacteria from the Bair Hugger system caused prosthetic joint infections. (*Id.* ¶¶ 20, 42–43; *see*, *e.g.*, *id.* ¶ 77.)

Finally, 3M denied it was "liable to Plaintiffs in any manner whatsoever and denies that Plaintiffs are entitled to any of the relief requested" and asserted as affirmative defenses that Plaintiffs' injuries were not caused by 3M. (*Id.* at 22–23.)

### D. The Court's Orders Reflect that the Master Answer Is Effective in All MDL Member Cases.

The Court has issued several orders reflecting its own understanding that the Master Answer fulfills 3M's obligation to answer in all MDL cases.

***Dismissals.*** Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff may not dismiss an action without a court order or stipulation once the opposing party has answered or moved for summary judgment. In *Robinson*, No. 23-cv-1016, the plaintiff died before the case was filed. (ECF No. 2448 at 36–37.) When 3M identified this issue, Robinson's counsel filed a unilateral notice of voluntary dismissal rather than a stipulated dismissal with 3M's consent. The Court concluded that the notice of voluntary dismissal was "ineffective," implicitly concluding that the SFC had been answered, as 3M had not moved for summary judgment in the case. (*Id.* at 37.)

***Rule 12(c) Motions.*** Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings only "[a]fter the pleadings are closed." In recent months, Judge Schultz has recommended granting twelve Rule 12(c) motions filed by 3M based on statutes of limitations and repose. (ECF Nos. 3537, 3445, 3447, 3448, 3449, 3543, 3546, 3556, 3562, 3563, 3571, 3573.) In all of the cases subject to those motions, 3M relied on the Master Answer to "close the pleadings" and did not file individual answers to the SFCs. The Court accepted all those R&Rs based on its *de novo* review, finding no legal error. (ECF Nos.

3639, 3642, 3647, 3680, 3681, 3682, 3684, 3687, 3690, 3694, 3695; *see also* ECF No. 3640 (no objection filed), 3683 (same).)[3] Moreover, in his June 5, 2026 Order & Report & Recommendation, Judge Schultz expressly rejected the plaintiff's argument that the pleadings were not "closed" for the purposes of Rule 12(c).[4] (ECF No. 3445 at 4–8.) The Court adopted that R&R. (ECF No. 3680.)

**E. Ms. Zimmerman and Mr. Farrar Agreed with 3M's View of the Master Answer Until Filing This Motion.**

The motion signatories themselves seem to have changed their position on this issue very recently. One of the cases subject to 3M's Rule 12(c) motions was *Passante*, No. 23-cv-2432, a case filed by Ms. Zimmerman. Ms. Zimmerman did not argue in opposition to 3M's Rule 12(c) motion (ECF No. 3186) that 3M's Rule 12(c) motion was improper because the pleadings were not closed. In fact, she did not oppose the motion at all.

Motion signatory Mr. Farrar has also acknowledged the operative nature of the Master Answer through his conduct. At the August 28, 2025, status conference, Judge Schultz directed the parties to identify cases where plaintiffs had filed unilateral notices of voluntary dismissal instead of stipulating with 3M. (Ex. 1, 8/28/25 Tr. at 36:1–14; 39:22–41:25.) Following the status conference, the parties identified Mr. Farrar's case *Wilson*,

---

[3] Plaintiffs have appealed some of these decisions. (ECF Nos. 3697, 3759, 3786, 3793.)

[4] The plaintiff did not argue that the pleadings were open because 3M had failed to answer; instead, he argued that the Master Complaint and Short Form complaint were merely "administrative" and that the pleadings did not close until the plaintiff filed a long-form complaint at a time of his choosing. (ECF No. 3445 at 4–8.)

No. 23-cv-2376, as one of those cases. Mr. Farrar proceeded to correct his error by agreeing to a stipulated dismissal. (*Wilson*, No. 23-cv-2376, ECF No. 9.)

### F. When The Same Argument Was Raised about a Similar Order in the *Stryker* MDL, that Court Rejected It as "Inconsistent with Leadership Counsels' and the Court's Intent."

Pretrial Order No. 8 was not created from whole cloth. The parties modeled it on a pretrial order from the earlier *Stryker* MDL, No. 13-md-2441 (D. Minn.). (*Compare*, *e.g.*, PTO 8 *with* Ex. 2, *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, Pretrial Order No. 10, No. 13-md-2441 (D. Minn. 2014).) One of the present Motion's signatories, Ms. Zimmerman, also served as co-lead counsel in the *Stryker* MDL.[5]

Just like PTO 8, the *Stryker* MDL Court's Pretrial Order No. 10 directed the filing of master pleadings but did not expressly state that a master answer would respond to all complaints. (Ex. 2.) And, like PTO 8, it provided: "Motion practice on the individual personal injury Complaints and future Answers subject to this Order shall be stayed and may proceed only upon leave of the Court." (*Id.* ¶ 5.)

Following settlement, several plaintiffs in the *Stryker* MDL filed notices of voluntary dismissal without prejudice. The MDL court rejected these dismissals as invalid, apparently after receiving input from the parties' leadership, deeming the unilateral dismissals "inconsistent ***with leadership counsels'*** and the Court's intentions regarding the use of master pleadings to create efficiencies and aid in the administration of this case."

[5] Stryker Rejuvenate, Contacts, Plaintiffs' Lead Counsel: https://www.mnd.uscourts.gov/content/stryker-rejuvenate. Ben W. Gordon, Jr. also served as co-lead counsel in both MDLs. Notably, he has not signed the Motion here.

(Ex. 3, *Stryker*, Am. Pretrial Order No. 29, No. 13-md-2441 (D. Minn. May 27, 2015.) (emphasis added).) To resolve the issue definitively, the *Stryker* MDL Court issued an order in May 2015 (a year before this Court's PTO 8 was entered) providing that the master answers were deemed filed, *nunc pro tunc*, "to the date each Master Answer was filed . . . . Further, each Master Answer is deemed an answer to each complaint filed in each member case as contemplated by Fed. R. Civ. P. 8(b) . . . with the effect of, among other things, prohibiting the filing of notices of voluntary dismissals in member cases . . . ." (*Id.* at 2–3.) Following a review of the docket, 3M has found no indication that Ms. Zimmerman opposed the *Stryker* MDL Court's order and disagreed with the rest of leadership counsel.

**ARGUMENT**

The Court should deny the Motion for several independent reasons.

***First***, PTO 8 expressly provides that any obligation to answer in individual cases is stayed following the filing of the Master Answer. While the wording is slightly different, this provision has the same effect as the equivalent provisions Movants cite from the Philips CPAP MDL and Taxotere MDLs, which likewise stay the obligation to file any further answer in individual cases. (ECF No. 3815, Mem. at 8, citing Zimmerman Dec. Exs. D and E.) Movants ignore this provision of PTO 8, and it is fatal to their motion.

***Second***, the Motion, if granted, would upend a decade-old agreement reached by the parties' leadership and endorsed by the Court through PTO 4 and PTO 8. The PTO 4/PTO 8 framework—based on the framework adopted in the *Stryker* MDL—for a Master Long-Form Complaint, Short Form Complaints, and Master Answer was a win-win-win in the interest of efficient proceedings. Plaintiffs do not have to prepare long-form complaints

in every case; 3M does not have to file answers in every case; and the Court does not have to address motion practice based on individual long-form complaints and answers in every case. This streamlined process helped accomplish the "just and efficient conduct" of matters transferred to or filed in this MDL. 28 U.S.C. § 1407(a).

***Third*****,** this Court has repeatedly concluded in many orders that the Master Answer is effective in all cases through its rulings on voluntary dismissals and Rule 12(c) motions where 3M had not filed answers in individual cases. Never once in the history of this MDL has the Court concluded that the Master Answer failed to close the pleadings or that it had no legal effect in individual cases. The Court's view is consistent with the view of the *Stryker* MDL Court concerning its equivalent pretrial order.

***Fourth*****,** Movant's position is contrary to Fed. R. Civ. P. 8(e), which provides that "[p]leadings must be construed so as to do justice." Construing the Master Answer as anything other than legally operative and responsive to case-specific allegations after a decade would be contrary to justice. If Movants wanted 3M to file individual answers to their complaints, the time to ask for that was during their negotiations in 2016. Indeed, if 3M's Master Answer is a nullity, then so is Plaintiffs' Master Complaint, and this MDL can be terminated for lack of any viable claims.

***Fifth***, although Movants are correct that the Advisory Committee comments to the newly adopted Fed. R. Civ. P. 16.1[6] are "unequivocal" that the Federal Rules of Civil Procedure "continue to apply in all MDL proceedings," the comments also state that the

[6] Of course, Rule 16.1 went into effect on December 1, 2025, nearly ten years after this MDL was formed.

"relationship between the consolidated pleadings and individual pleadings filed in or transferred to the MDL proceedings depends on the purpose of the consolidated pleadings in the MDL proceeding." In other words, the effect of consolidated pleadings remains left to the MDL court's determination.

***Sixth***, Movants are plainly wrong that 3M has not denied specific causation. Just as the Master Complaint alleges specific causation for all individual Plaintiffs, the Master Answer specifically denies causation for all individual plaintiffs. 3M specifically denied that the Bair Hugger system had caused any plaintiff's infection. (ECF No. 105 at 1–2, ¶¶ 20, 43, 66; *id.* at 23–24 (Fourth and Sixth Affirmative Defenses).) Movants' claim that the Master Answer "never touches" specific causation (Mem. at 18) is flat wrong. Moreover, there is no dispute that 3M has denied *general* causation, and that denial by itself is enough to preclude judgment. If there is no general causation (i.e., the Bair Hugger system cannot ever be "ruled in" as a potential cause by an expert), there can be no specific causation. And as Movants have repeatedly emphasized elsewhere, the Eighth Circuit held that general causation is a disputed issue to be resolved by a jury (notwithstanding the medical consensus favoring 3M). *Bair Hugger*, 9 F.4th at 778–90.

***Seventh***, Movants are also wrong that 3M has changed its position and that judicial estoppel applies. Like the Court and Plaintiffs' leadership until recently, 3M has taken the consistent position that the Master Answer is effective to answer Short Form Complaints in individual cases. *See Hughes v. Canadian Nat'l Ry. Co.*, 105 F.4th 1060, 1069 (8th Cir. 2024) (for judicial estoppel to apply, a party must deliberately change a position that it had previously succeeded on to derive an unfair advantage); *see also Keathley v. Buddy Ayers*

*Constr., Inc.*, 608 U.S. 647, 654 (2026).[7] If judicial estoppel were to be applied here, it should apply to Movants themselves. They have had the benefit of filing thousands of cases over a decade without preparing long-form complaints for every one of those cases.

***Finally***, this Motion for all intents and purposes is a motion for a mass default, not a summary judgment—it seeks partial judgment against 3M not on the merits but because 3M has purportedly "failed to plead or otherwise defend" thousands of cases. *See Feeney v. AT & E, Inc.*, 472 F.3d 560, 562 (8th Cir. 2006) ("The district court's grant of summary judgment was the functional equivalent of a default judgment against Mitan, because it granted judgment without discussing the merits of the claim, based solely on Mitan's failure to reply.") There is no such thing as a "partial" default judgment under Rule 55. Even if there was, a party cannot move for default judgment without first applying to the clerk for an entry of default. Fed. R. Civ. P. 55(a)–(b). That has not occurred here. As Movants note, the Federal Rules of Civil Procedure still apply within an MDL.

## CONCLUSION

For all these reasons, the Court should deny the Motion for Partial Summary Judgment.

[7] Justices Thomas and Gorsuch concurred in *Keathley*, suggesting that the Supreme Court "reexamine" the doctrine, given a lack of "clear authority" and "limited support" for the doctrine. *Id.* at 658.

Dated: November 5, 2026

Respectfully submitted,

*s/Benjamin W. Hulse*

Benjamin W. Hulse (MN #0390952)
Mary S. Young (MN #0392781)
Norton Rose Fulbright US LLP
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402
Phone: (612) 321-2800
Email: ben.hulse@nortonrosefulbright.com
mary.young@nortonrosefulbright.com

***Co-Lead Counsel for Defendants 3M Company and Arizant Healthcare Inc.***